```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


--------------------------------X
                                :
UNITED STATES OF AMERICA,       :
                                :  19-CR-00576 (BMC-1)
         v.                     :
                                :  February 27, 2020
GENARO GARCIA LUNA,             :  Brooklyn, New York
                                :
              Defendant.        :
                                :
--------------------------------X


     TRANSCRIPT OF CRIMINAL CAUSE FOR DETENTION HEARING
            BEFORE THE HONORABLE ROBERT M. LEVY
               UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For the Government:        ERIN REID, ESQ.
                           United States Attorney's Office
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201


For the Defendant:         CESAR DeCASTRO, ESQ.
                           VALERIE GOTLIB, ESQ.
                           7 World Trade Center, 34th Floor
                           New York, New York 10007


Spanish Interpreter:       MICHAEL MICHELENA


Court Transcriber:         MARY GRECO
                           TypeWrite Word Processing Service
                           211 N. Milton Road
                           Saratoga Springs, New York 12866
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service

```
                                                                2
 1   (Proceedings began at 11:28 a.m.)
 2              THE CLERK:  Criminal Cause for a Bail Application,
 3   19-CR-576, The United States v. Genaro Garcia Luna.  Counsel,
 4   your name for the record.
 5              MS. REID:  Good morning, Your Honor.  Erin Reid for
 6   the Government.
 7              THE COURT:  Good morning.
 8              MR. DeCASTRO:  Good morning, Your Honor.  Cesar
 9   DeCastro and Valerie Gotlib for Mr. Garcia Luna.
10              THE COURT:  Good morning.
11              THE INTERPRETER:  Also present Spanish interpreter
12   Mario Michelena, previously sworn.  Good morning, Your Honor.
13              THE COURT:  All right.  This is on for a bail
14   application, is that correct?
15              MR. DeCASTRO:  That's correct, Judge.
16              THE COURT:  Perhaps we should start with the
17   defendant's proposed package.
18              MR. DeCASTRO:  Sure.  So Judge, I assume the Court
19   has my written bail application.
20              THE COURT:  I do.
21              MR. DeCASTRO:  The proposed package is a $1 million
22   bond which would be cosigned by three financially responsible
23   individuals and one moral suasion person, and to be further
24   secured by a property in Ona, Florida worth approximately $1.2
25   million.
```

3

 1    I guess I should start with what the Government filed
 2 early this morning which was -- I think there's a reference in
 3 their letter to the fact that the suretors, two of the suretors
 4 are no longer interested.
 5    THE COURT: Right.
 6    MR. DeCASTRO: So first, my position is I don't think
 7 I have to have all the suretors here or a package ready. I
 8 think we can still talk about it in the abstract. That being
 9 said, after I received that notice that they're referring to by
10 counsel last night, which was by the way contrary to everything
11 I've been hearing and I reached out to that counsel [inaudible]
12 but my client's family has received calls from the suretors and
13 they indicated that they are still willing to sign. In fact,
14 they were asking whether they should fly here for this morning.
15 So I don't understand what's going on there. I think that's
16 something that certainly we could work out. But those
17 suretors, my understanding is, remain willing and able to
18 cosign a bond.
19    The Government also makes a point that without those
20 suretors, the other proposed suretors don't make a lot of money
21 essentially. Well, with those suretors we're talking about
22 approximately $650,000 annual income. Certainly if there was
23 reason to move on the bond, judgments could be entered against
24 people. There's no requirement that the Government would
25 instantaneously have $1 million. But that being said, we

4

propose properties, a property that is equal to $1.2 million.

The Government has indicated that now in its early morning filing that those, that property and any other properties owed to the United States would be likely subject to forfeiture. I'd like to note first that in January in speaking to counsel that was potentially coming into this case the Government indicated that -- excuse me one second. So around January 7th, four days after an arraignment in this court, a month after he had been arrested and detained in Texas, the Government indicated that they had taken no affirmative steps to restrain or forfeit any of Mr. Luna's United States properties. And while they were not waiving a right to seek it, they hadn't engaged in any actions. That signals to me that they're not able to trace any of the alleged crimes, which by the way are alleged to be 15 years ago, tracing any of those monies to these particular properties. I don't think there's any reason to believe that there's any issue with the property.

That being said, he can't do anything with the properties right now in order to even obtain counsel. Therefore, United States taxpayers are going to be funding this defense. The Court granted an application to, our application, to the CJA in this matter based on an inability for Mr. Garcia Luna to have access to any liquid assets. And so the Government's belief that him proposing to put up properties that are his retirement, properties that he has earned,

5

1  properties he earned through his labor -- he is cash poor and
2  [inaudible] property but that doesn't mean he would easily put
3  up something he paid $1.2 million for and just flee.
4          He is not a flight risk in this case.  This is a
5  presumption case.  I submit that it has been easily rebutted.
6  The opposition, the Government's reply I suppose, is full of
7  sound bites and generalities but has little to no specifics
8  about how Mr. Garcia Luna will flee or what incentive he has to
9  flee.  Nothing in the Government's filings have drawn our
10 application into question.  When we were in this court on
11 January 21st before Judge Cogan, I was explaining to the Court
12 the harsh conditions under which Mr. Garcia Luna had been
13 detained.
14     (Microphone stopped working correctly at 11:34:55 a.m.)
15          MR. DeCASTRO:  [Inaudible].  I bring it up for a
16 different reason.  I bring it up because Judge Cogan looked at
17 the Government and said that we should not be doing surety by
18 association.  And that's exactly what's going on here
19 throughout [inaudible].  [Inaudible] prominent government
20 Mexican corrupt officials.  In their filing they are
21 essentially saying the current Mexican government is corrupt
22 [inaudible].  [Inaudible].  [Inaudible] proceeding by general
23 proffer which [inaudible] Mexican government and about corrupt
24 [inaudible].  [Inaudible].
25         (Microphone begins working again at 11:36:49 a.m.)

1        If they want to identify those ties, we can deal with
2   those but they can't sufficiently come -- they can't come in
3   and say he's a flight risk because he's Mexican and he has
4   access to corrupt Mexicans.  First, yes, he is Mexican.  He is
5   a lawful permanent resident of the United States.  The
6   Government has his lawful, his green card.  He applied for
7   citizenship here in the United States indicating that he wants
8   to remain in the United States.  His wife who is here today,
9   his daughter who is here today, his son who's not here today,
10  are all United States citizens.  They came to the United States
11  in 2012 and they made their life here.
12       What happened when allegations, the specific
13  allegations that this cooperating witness made regarding Mr.
14  Garcia Luna became public in 2018, what did Mr. Garcia Luna do?
15  Did he reach out to the alleged corrupt Mexican government
16  officials and say move everything, get me back there so I can
17  be on the lam for however long it takes?  No.  He remained here
18  and continued to work.  That I cannot emphasize more.  That
19  tells you what will happen if this Court sets bail and accepts
20  the robust package that we have proposed.
21       A couple of things before I summarize my position,
22  Judge, is is some of the issues in the Government's filing that
23  I'd like to talk about.  One, address the suretors issue with
24  respect to the availability of the suretors.  If it's true that
25  the two suretors are no longer willing -- and I will speak to

7

1  their counsel and the Government has access to them, the
2  Government has had communications with their counsel I think
3  for more than a month now because they subpoenaed those
4  individuals, so I've addressed that issue.  But I think we have
5  other suretors if possible.  We can -- I already am aware of
6  one other and potentially a second as well.
7           The claim that the Government makes in its filing
8  from today was that the house they lived in, if the Court
9  recalls, the house that they -- I'll call it the Golden Beach
10 house, that he owns this property through some sort of shell
11 company or something like that.  He didn't own that property.
12 He didn't own that property.  That is owned by a company
13 certainly, not owned by him.  He has no interest.  And in fact,
14 he paid rent for that property.  He paid $5,800 in rent.  In
15 fact, his wife is the tenant on the actual rental agreement.
16 So he does not own that property.
17          I've addressed the issue with respect to their
18 references all over powerful resources by a powerful correct
19 Mexican officials, yet they've identified nothing.  Mr. Garcia
20 Luna has sufficient ties to the United States.  He was living
21 here.  He is a green card holder.  His wife and children are
22 citizens.  He has properties here in the United States.  He is
23 cash poor.  That's why the CJ application was granted by Judge
24 Cogan.  He has properties that he cannot use.  The Government
25 has his passport.  The Government has his green card.  He is

8

1  blocked from the Mexican financial system.  The president of
2  the country has said he is under investigation by the Attorney
3  General's office.  I have been informed by counsel in Mexico
4  that if he were to go to Mexico he would be arrested and
5  detained.  He has been aware --
6          THE COURT:  I'm sorry, who informed you of that?
7          MR. DeCASTRO:  Counsel in Mexico.  His counsel in
8  Mexico.
9          THE COURT:  His counsel?
10         MR. DeCASTRO:  Yes, his counsel.  I suppose I can
11 tell you a little bit about that, Judge, that they blocked him
12 from the Mexican financial system and there is a lawyer in
13 Mexico that is trying to challenge that.  My understanding is
14 it's a very lengthy and difficult process but --
15         THE COURT:  What does it mean to be blocked from the
16 Mexican financial system?
17         MR. DeCASTRO:  Right.  So what it means there as it's
18 been explained to me by different lawyers is that he, not his
19 wife, his accounts are not frozen, but here we would freeze
20 some accounts, we would freeze property.  He himself cannot
21 utilize this.  In fact, neither can his wife or his children.
22 So if he were to, for example, ask for his bank statements,
23 simply I have a bank account, I want my bank statements,
24 blocked.  I would like to open a bank account, blocked.  I
25 would like to do anything related to the banking system, he

9

1  would be blocked.  At least that's how it's been described to
2  me.
3           The other two points just to sum up are that he's
4  been aware of these allegations for more than a year knowing
5  the United States Government is investigating.  Yet he remains
6  here.  And I can't emphasize that more.
7           The Bail Reform Act requires the least restrictive
8  conditions or a combination of conditions reasonably to assure
9  his appearance.  The Government is only moving on flight.
10 Pretrial detention is an exceptional, exceptional step.  But
11 what the Government's proposing is the most restrictive
12 conditions.  He is entitled to bail and he should be
13 permitted -- he should be released.
14          THE COURT:  Thank you.  Yes?
15          MS. REID:  Thank you, Your Honor.  As outlined in our
16 letter filed today and also our December 10, 2020 detention
17 letter, the Government's position obviously is that there's no
18 combination of conditions that can assure the defendant's
19 appearance at trial.  But in addition, Your Honor, the proposed
20 bail package is just woefully inadequate to make that assurance
21 and to rebut the presumption that he should remain detained
22 pending trial.
23          So I want to start briefly with the package.  And
24 let's just be clear about the package that's being proposed.
25 Originally, it was a $1 million bond secured by three financial

10

suretors and one moral suasion suretor.  Two of the financial suretors have informed the Government and defense counsel through their lawyer that they would not sign a bond for the defendant or where informed the Government that they agree to serve as sureties without fully understanding that they would be personally liable for the amount of the bond.

Furthermore, the lawyer informed the Government and defense counsel that they do not own any real property in the USA and are otherwise financially unable to guarantee the proposed $1 million bond.  As such, they can't serve as sureties.  So there's really one financial surety that's being proposed, Your Honor, and that, as outlined in the Government's letter, that person is just not sufficient for a few reasons. The first primarily is that the Government does not see how he can possibly sign a $1 million bond when according to his 2018 taxes his income was approximately $45,000.

In addition, Your Honor, the suretor, the proposed suretor, is inextricably intertwined with the defendant's financial dealings.  All of his income appears to come from companies owned by the defendant.  He's an employee of the defendant.  And the money then is all traced to the defendant. In addition, Your Honor, and very importantly, the Government has not been able to interview the suretor.  Obviously, he's also not here for the court's interview.  But the Government has actually been trying to reach the suretor since the middle

1  of January and related to his role as an employee of the
2  defendant, to serve him with a subpoena.  Federal agents have
3  reached out to him many, many times and have never received a
4  call back.  They actually went to his house multiple times and
5  could not reach him.  And I also tried to reach him today and
6  was unable to at a number provided by defense counsel.
7           So Your Honor, I don't think any of these financial
8  suretors are sufficient.  To the extent that there are others,
9  we would of course consider them.  But today there's no
10 financial suretor that can sign a $1 million bond for the
11 defendant.  In --
12          THE COURT:  Let me stop you for a second.  So right
13 now there seems to be a factual dispute between what the
14 Government's saying and what the defense is saying.  And you
15 stated that the two suretors who are withdrawing had informed
16 both you and the defense that they're withdrawing.  Do you know
17 anything that can help shed some light on this factual
18 dispute?
19          MS. REID:  Yes.  I have an email, Your Honor, from a
20 lawyer which was sent to Mr. DeCastro as well as the
21 Government, and I can pass it up.  That's what I was reading
22 from earlier.
23          THE COURT:  Okay. Thanks.  Has defense counsel seen
24 this?
25          MR. DeCASTRO:  Yes, Judge.  I was sent to me.  I

12

1  also, I think as I alluded to earlier, I sent counsel a message
2  last night because that was contrary to one, my conversations
3  with him earlier in the day, which of course positions can
4  change.  I understand.  And those suretors have reached out to
5  family, not at my request because we didn't -- and they are the
6  ones saying as late as today if you want us to come up to New
7  York, we will.  So I understand.  I have not been able to talk
8  to that counsel since the email.
9            THE COURT:  All right.  So for the record, do you
10 want this marked as an exhibit for the record?
11           MS. REID:  Sure, that's fine, Your Honor.
12           THE COURT:  So I'm going to mark this as Government's
13 Exhibit 1.  For the record, this is an email dated Wednesday,
14 February 26th, that's yesterday, at 7:50 p.m.  And it was sent
15 to the US Attorney's office and to defense counsel's office.
16 And for the rest, it speaks for itself.  Okay.  But
17 categorically says as such they cannot serve as sureties.
18 Should you have any further questions or concerns, please
19 contact the undersigned.
20           MR. DeCASTRO:  And if I can -- so that's the one
21 issue I wanted to [inaudible] and email to him was it seems to
22 me there's some sort of a misconception and maybe someone in
23 the room can correct me if I'm wrong, but that having practiced
24 in this courthouse for quite a of time, there's no requirement
25 that the suretor have assets or make the amount of the bond.

13

1  That would require any $1 million bond for a combination of
2  suretors to be $1 million.  Of course, the Court could
3  [inaudible].  But in my experience, the Government generally
4  has no issue with people who sometimes make as low as 25,000
5  securing bonds that are upwards of 100,000.  And I'm sure the
6  Court has seen that in its experience as well.  So I don't
7  really understand.
8         I also don't understand the Government's argument is
9  that he should be detained, yet these suretors are inadequate.
10 Okay.  Take the position that you should have different
11 suretors.  That's fine.  But are they conceding that, I mean I
12 assume they're not, that a package is appropriate and a package
13 that they deem appropriate would be appropriate with suretors
14 that meet their requirements would be sufficient.  If that's
15 the case, then they need to tell us that and we'll go get those
16 suretors.
17         THE COURT:  All right.  So I think that -- well, I'm
18 not going to speak for the Government, but as I understood what
19 the Government was saying, that a bond is not appropriate in
20 this situation but alternatively if it were, this bond is not
21 sufficient.  And with respect to these two suretors, as I heard
22 from counsel, the email says that the two individuals agreed to
23 serve as sureties for the client without fully understanding
24 that they would be personally liable for the amount of the bond
25 should Mr. Garcia Luna fail to appear in court in the future.

14

1  That's a fairly categorical statement.  Then the next statement
2  is that -- has to do with whether they own real property in the
3  US or they can guarantee the bond amount.  So it sounds to me
4  that's not the primary reason why they don't want to be on the
5  bond.  Sounds like the primary reason they don't want to be on
6  the bond, at least from this, is that they don't want to be
7  personally liable.
8           MR. DeCASTRO:  Right.  And I think what's strange
9  about it is that first, I guess the Court should also know that
10 they provided all of their personal information to me.  They
11 provided their tax returns.  That's how I know their income and
12 statements which I provided to the Government.  And they
13 provided that, both of these suretors.  I've seen another --
14 that's another pending question for this counsel because it's a
15 little confusing.  And in my conversations with him and now
16 what's being reported to me and the suretors reaching out
17 saying this is not true, we don't know why our lawyer is saying
18 this, you know, I can't talk for them so I don't --
19          THE COURT:  Right.
20          MR. DeCASTRO:  I'm not trying to.  I'm just trying to
21 talk to counsel to see does he have some misconception or if
22 they don't want to be suretors, that's fine.  But --
23          THE COURT:  All right.  So you're in a difficult
24 position at this time at ten to 12 on the 27th, not even just
25 barely 15 hours after you got the email, to respond to this.  I

1  think -- well, I can ask the Government this question but I
2  think I know the answer.  Are there any conditions or
3  combinations of conditions that you think would justify
4  reasonable belief that the plaintiff -- that there would not be
5  a reasonable risk of flight?
6           MS. REID:  No, Your Honor.  However, I think the
7  Court accurately summarized our position which is of course in
8  the alternative we would want to review suretors and a package
9  submitted and have the opportunity to respond to that.  But and
10 I can detail the other reasons for the Government's position
11 and respond to some of defense counsel's arguments if you'd
12 like.
13          THE COURT:  No, I think you actually put everything
14 in the record before and the first issue for the Court is what
15 is the package that's being offered and is it sufficient?
16 Pretrial Services had said, had recommended detention because
17 there's no combination of conditions.  I have not reached that
18 conclusion and I don't have a conclusion on that because I
19 haven't seen what conditions or combinations of conditions are
20 being presented.  So before I make any kind of a ruling, I need
21 to see what kind of a package is actually out there.
22          MR. DeCASTRO:  I mean Judge, we have two other people
23 that [inaudible].  I don't think -- I mean I think this Court
24 could rule on a package with an appropriate amount of cosigners
25 and a bond amount.  If the Court believes the bond amount is

16

1  not enough, we can propose a higher bond amount and fully
2  secure it with one of the properties.
3         THE COURT:  All right.  But I need to see who the
4  cosigners would be, the suretors, and I need to have them
5  interviewed by Pretrial Services and by the Government and --
6         MR. DeCASTRO:  Which, by the way, I offered Pretrial
7  to do on Tuesday.  Or on Monday actually.  And they have
8  declined to do that.  I offered to send all the information
9  from all the suretors in an email to them on Monday.  I said do
10 you want all the potential suretors, do you want them here so I
11 can give you everything?  They said no.  So again in another
12 position where they're saying only if you tell them.
13         THE COURT:  Well, all right, but I'm going to direct
14 that at this point.  I'm going to request that Pretrial
15 Services interview the suretors, that the Government have an
16 opportunity as well, and that all the financial information
17 that is relevant for these interviews be presented to both the
18 Government and to Pretrial Services so that they can properly
19 evaluate.  I don't know how much time that's going to take.
20         MR. DeCASTRO:  With respect to property location, the
21 Government already has the property information but I can send
22 that today.  I can send the suretor -- the suretor information
23 I've already sent to the Government.  I will send that to
24 Pretrial.  I can send the two that are in question today as
25 well and then try to reach out to their counsel and find out

1  what's going on.
2          THE COURT:  Right.  And my suggestion, given the
3  adamance of the Government's position and the position that
4  Pretrial Services has taken is that you try to present the
5  strongest package that you can so the Court can evaluate that
6  at one time.  So if that means more suretors or more property,
7  that's what you need to do.
8          MR. DeCASTRO:  Okay.  The other thing I should note
9  from the Pretrial report was that they're doing an analysis on
10 danger but the Government hasn't even moved on danger in this
11 case.
12         THE COURT:  Well, I saw that footnote.  Is that
13 accurate?
14         MS. REID:  Your Honor, at this time our position is
15 about the risk of flight which I think is sufficient to support
16 our position.
17         THE COURT:  Okay.  All right.  So in terms of timing,
18 do you want to schedule another appearance or just come back to
19 court when you're ready?
20         MR. DeCASTRO:  I think maybe what makes the most
21 sense is I'll provide the information to all the parties and
22 then I can reach out to the clerk's office about it and we can
23 come back tomorrow maybe if we have a -- I don't know if
24 there'll be an availability or --
25         THE COURT:  And again, it depends on what the

18

1  Government needs to do in order to satisfy itself.  Do you know
2  who the suretors are yet?
3              MS. REID:  No, Your Honor.  I mean I have been
4  provided info for the two that are on the email about.  The
5  third one we've never been able to reach like I said.  I don't
6  know who the other two new potential suretors are but I'm sure
7  Mr. DeCastro will provide their information.
8              THE COURT:  Okay.  And there may be some
9  investigation the Government wants to do.  You know, they may
10 have to make available their financial -- well, you've already
11 offered that.
12             MR. DeCASTRO:  I provided it to -- just so the
13 record's clear, I provided them the information on four people.
14 That includes bank statements, tax returns, identification like
15 a passport photo.  And I can do that for anybody additional.  I
16 will also provide them, which I think they have already, but
17 just to be clear, the property which we would be proposing and
18 any other properties that we would propose as well.
19             THE COURT:  Are they in this area or --
20             MR. DeCASTRO:  They're in Florida.
21             THE COURT:  In Florida.  Okay.  What does Pretrial
22 Services need in addition to what we've been discussing?
23             PRETRIAL OFFICER:  Just the surety information.  If
24 he can provide that, we'll contact them.
25             THE COURT:  Okay.  Can you do it by phone or do you

```
                                                               19
 1   need to actually have them here?
 2               PRETRIAL OFFICER:  We can do it by phone.
 3               THE COURT:  Okay.  Anything else from the Government?
 4               MS. REID:  Not at this time.  Thank you, Your Honor.
 5               THE COURT:  From defense?
 6               MR. DeCASTRO:  Thank you, Judge.
 7               THE COURT:  Okay.  Thanks.
 8               THE DEFENDANT:  Thank you.
 9   (Proceedings concluded at 11:56 a.m.)
10                              *  *  *  *  *  *
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

20

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

*Mary Greco*

Mary Greco

Dated: March 22, 2020