THE LAW FIRM OF

# CÉSAR DE CASTRO, P.C.

ATTORNEY AT LAW

7 World Trade Center, 34th Floor
New York, New York 10007

646.200.6166 Main
212.808.8100 Reception
646.839.2682 Fax
www.cdecastrolaw.com

February 25, 2020

*Via* **ECF**

The Honorable Brian M. Cogan
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *United States v. Genaro Garcia Luna,* 19 Cr. 576 (BMC)
      Application for Release Pending Trial

Dear Judge Cogan:

We respectfully submit this request to release Genaro Garcia Luna pending trial. Mr. Garcia Luna is not a flight risk and should be released pending trial because: (1) he has sufficient ties to this country; he has lived and has been a lawful permanent resident in the United States since approximately 2012, his wife and children live here, and he owns property in the United States that he can pledge to secure a bond; (2) he does not have the ability to flee – Mr. Garcia Luna provided the government with his passport and green card, he has no available assets, and the thought that he would flee to Mexico where he has no access to its financial system and will likely face arrest and prosecution, is absurd; (3) Mr. Garcia Luna was aware of these allegations for more than a year before his arrest and did not flee the United States; and (4) his pretrial detention at the Metropolitan Detention Center ("MDC") under the current security measures limits his ability to meet with counsel and adequately assist in his defense.

A modest bail package with Pretrial Services supervision that includes location monitoring would assure Mr. Garcia Luna's return to this Court. Flight would be nearly impossible. Even though an unsecured bond would be sufficient in this case, we propose a package that leaves little doubt that Mr. Garcia Luna will remain in the United States and make all of the required court appearances. We respectfully request that the Court release Mr. Garcia Luna on a $1,000,000 personal recognizance bond secured by the signature of three financially responsible individuals, one moral suasion co-signer, and fully secured by real estate owned by Mr. Garcia Luna worth approximately $1,200,000. He would further be subject to standard Pretrial Services supervision with the addition of location monitoring.

1

The Legal Standard

Pretrial detention is confined to a "limited group of offenders." *See United States v. Saehan*, 493 F.3d 63, 75 (2d Cir. 2007)(citing *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)(quoting S.Rep. No. 98-225, at 7 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189)). Bail should only be denied in "extreme cases." *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986)(citing *United States v. Abrahams*, 575 F.2d 3 (1st Cir. 1978)).

Judges deciding whether to grant or deny a defendant release pending trial are "well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance." *United States v. Montalvo-Murillo*, 495 U.S. 711, 723 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). In determining whether "there are conditions of release that will reasonably assure the appearance of the person and the safety of the community, the court is to consider the factors laid out in section 3142(g) of the Bail Reform Act, 18 U.S.C. §§ 3141, et seq. Critically, "[t]he law requires reasonable assurance but does not demand absolute certainty, which would be only a disguised way of compelling commitment in advance of judgment." *United States v. Alston*, 420 F.2d 176, 178 (D.C. Cir. 1969).

At all times, the ultimate burden of persuasion rests with the government. *Id*. The government cannot simply rely on the alleged commission of a serious crime and potential lengthy prison sentence to justify detaining a defendant based on risk of flight. *See United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988)(noting that in other cases dealing with risk of flight, the Second Circuit has "required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight.")

The factors set forth in the Bail Reform Act are: (1) the history and characteristics of the defendant; (2) the nature and circumstances of the offense; (3) the weight of the evidence; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). In narcotics matters, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure" the defendant's continued appearance in court and the safety of the community – all that a defendant in a presumption case need do in order to rebut the presumption is come "forward with evidence that he does not pose a danger to the community or a risk of flight." *See* § 3142(e)(3)(A); *United States v. Vasconcellos*, 519 F. Supp. 2d 311, 319 (N.D.N.Y. 2007) (granting bail pending trial to defendant facing ten year mandatory minimum despite statutory presumption that he was a flight risk and a danger to the community where defendant "offered evidence in contravention of those risks, namely, ties to the community and conditions of release that would ameliorate those risks" – a bond in the amount of $150,000, home detention, electronic monitoring and travel restrictions).

The fact that the defendant faces a mandatory minimum sentence if convicted does not justify his detention when, like here, the defendant presents the Court with evidence of his roots in his community. *See United States v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986); *see also Friedman*, 837 F.2d at 50. Once the defendant satisfies this burden of production, the presumption in favor of detention is considered rebutted but remains a factor to be considered among those weighed by the district court. *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011).

2

Furthermore, a district court must consider and articulate on the record the extent to which it considered any alternatives to incarceration and, if so, on what basis they were rejected because many courts have set bail for defendants despite a flight risk. *See Berrios-Berrios*, 791 F.2d at 251 (citing several cases in which bail set for defendants with significant flight issues – *United States v. Bigelow*, 544 F.2d 904 (6th Cir. 1976), *United States v. Wright*, 483 F.2d 1068 (4th Cir. 1973), and *United States v. Soto Rivera*, 581 F. Supp. 561 (D. P.R. 1984)).

<u>Mr. Garcia Luna is Not a Flight Risk</u>

In this case, Mr. Garcia Luna does not pose an actual risk of flight. There is virtually no risk that he will flee should he be released.[1] Since 2012, Mr. Garcia Luna has spent the majority of his time in the United States. He moved his entire family here, both his children are United States citizens and attending United States universities, he owns property in this country, is a lawful permanent resident, and intended to secure his United States citizenship.

The government's argument for detention is extremely weak. Even though this is a presumption matter, the ultimate burden of persuasion rests with the government and it cannot simply rely on the alleged commission of a serious crime, potential lengthy prison sentence, and specious arguments about Mr. Garcia Luna's connections to El Chapo to justify his detention. The allegations that Mr. Garcia Luna, a famous Mexican public servant, more than a decade ago met in a public restaurant with a leader of the Sinaloa Cartel and received $3 to $5 million in a bag (which, of course given the value and that you cannot readily get $100 bills in Mexico, would have had to have been an incredibly large bag weighing in excess of 60 to 100 pounds), are absurd. The government has alluded to cooperator corroboration but has not detailed any ability to even prove the existence of these alleged funds, let alone trace them to Mr. Garcia Luna.

But most importantly, the cooperating witness testified to these incredible facts in November 2018. Mr. Garcia Luna remained in the United States despite these allegations for more than a year before his arrest in this case. He remained in the United States because: (1) the United States is his home where he had chosen to remain, grow his business, and become a citizen; (2) he knew then, as he does now, that the allegations are untrue; and (3) he trusted the United States law enforcement community to see through the vengeful claims of an individual that was caught and imprisoned as part of Mexican law enforcement operations in which Mr. Garcia Luna was aware and had a hand in authorizing.

Furthermore, Mr. Garcia Luna would not and could not flee to Mexico. Mr. Garcia Luna voluntarily surrendered his passport at the time of his arrest. Mr. Garcia Luna voluntarily surrendered his lawful permanent resident card at the time of his arrest. Mr. Garcia Luna consented to law enforcement searching his home and further allowed them to search all of his electronic devices, providing them with the passwords. He spoke with agents for hours after his arrest. Mr. Garcia Luna has done everything consistent with his innocence and, more importantly, there is nothing to suggest that he would flee the United States or fail to return to

---

[1] The government has conceded that Mr. Garcia Luna does not pose a danger to the community, and, thus, the government has only moved for his detention on its claims that he will try to flee to Mexico. It claims this despite the public comments of the current Mexican president that Mexico will help the United States in this prosecution and Mexico has launched its own criminal investigations into Mr. Garcia Luna. *See* Villamil, Justin and Rios, Loreno, *Mexico Probes Former Top Cop Accused of Taking El Chapo Bribes*, December 11, 2019, Bloomberg, https://www.bloomberg.com/news/articles/2019-12-11/mexico-probes-ex-cop-charged-with-taking-millions-in-drug-bribes (last visited February 25, 2020).

3

this Court. Mr. Garcia Luna has no access to the Mexican financial system, and he is being investigated criminally in Mexico. There is nowhere for Mr. Garcia Luna to flee should he be released, nor would he have any reason to flee. There is no basis for the government's belief that this well known and recognizable former Mexican public official will somehow obtain travel documents sufficient for him to travel, leave his whole family behind, travel to Mexico, and somehow allude Mexican authorities. As noted above, if he wanted to flee, he could have when these allegations were made public in November 2018. He did not then and he does not intend to now. He remains resolute to fight these allegations and establish his innocence.

Even if Mr. Garcia Luna wanted to flee upon his release, he does not have the financial wherewithal to do so. In the United States, Mr. Garcia Luna has little to no liquid assets. He is the majority owner of two business entities in the United States. Since his arrest, both businesses have lost all of its contracts and the companies have been shuttered. Both entities maintain bank accounts with little to no balances. With respect to real estate, Mr. Garcia Luna has ownership interest in certain real estate, some of which is being offered as part of the instant bail package. The properties that would not be encumbered as part of this bail package cannot be sold without assurances from the United States Attorney's Office – that it will not provide – that the government will not seek to forfeit that property. In Mexico, Mr. Garcia Luna also has little to no assets available. Mr. Garcia Luna has been blocked from engaging in any financial transactions within the Mexican financial system. This means that he is unable to access or engage in transactions with any of his assets in Mexico either.

Bail in this case is required. Detention is not necessary. Mr. Garcia Luna can overcome the presumption of detention and is entitled to the least restrictive condition or combination of conditions that will reasonably assure his appearance in this Court. The bail package we have proposed is more than adequate

The alternative to reasonable release conditions is Mr. Garcia Luna's continued tortuous detention by the Bureau of Prisons which poses a danger to Mr. Garcia Luna's health and safety and adversely affects his ability to meaningfully assist his counsel in mounting his defense. Mr. Garcia Luna was arrested without incident on December 9, 2019, in Texas. Following his presentment in Texas, Mr. Garcia Luna was ordered detained. From December 9, 2019, until his transport to this Court on January 2 or 3, 2020, Mr. Garcia Luna was held in extremely punitive conditions. He was held in the Special Housing Unit ("SHU") in Texas for approximately one month and not permitted any telephone calls or contact with anyone other than his Texas counsel. When he arrived in New York, his conditions remained equally punitive. He was housed in the MDC's SHU where he remained in solitary confinement and again only allowed to communicate with his counsel. While Mr. Garcia Luna was in the MDC's SHU, counsel visits were restricted in that Mr. Garcia Luna was handcuffed during all meetings. When we informed MDC SHU correction officers that Mr. Garcia Luna had been in the SHU for approximately one month, they callously responded that "he has only been in the SHU since his arrival here as far as we are concerned."

Mr. Garcia Luna was finally moved out of the SHU and placed in a special unit for his protection, we were told. Since his transfer to this unit, counsel visits have been extraordinarily difficult given apparent separations that are in place and other security measures that limit his movement. The result is that counsel have to frequently wait upwards of two hours, and at times as much as four hours, before they will bring him for counsel visits. This case has been designated complex by the Court, the government has indicated that it intends to produce

4

voluminous discovery, and it anticipates litigation under the Classified Information Procedures Act. This case will likely not go to trial until 2021. No useful purpose is served by Mr. Garcia Luna's continued detention while this matter is prepared for trial. His current conditions make it extremely difficult for him to adequately assist in mounting his defense. A fully secured personal recognizance bond is sufficient to assure Mr. Garcia's return to Court and will allow him to adequately assist counsel in his defense.

Mr. Garcia Luna should be bailed pending trial. This Court should see through the government's attempts to detain Mr. Garcia Luna simply by alleging his association with El Chapo. The government cannot establish any basis to believe that Mr. Garcia Luna would attempt to evade prosecution. After all, he remained in this country even after these allegations became public more than one year ago. With Mr. Garcia Luna's substantial contacts to the United States, co-signers located in the United States, valuable United States real estate in the United States, and the inability to flee to Mexico or any other country, release on a fully secured $1,000,000 personal recognizance bond with Pretrial Services supervision including location monitoring, is more than sufficient to assure Mr. Garcia Luna's appearance in this Court.

Respectfully submitted,

/s/

César de Castro
Valerie A. Gotlib


cc: Michael P. Robotti
Ryan Harris
Erin Reid
(Assistant United States Attorneys *via* ECF)