# THE LAW FIRM OF
# CÉSAR DE CASTRO, P.C.
### ATTORNEY AT LAW

7 World Trade Center, 34th Floor
New York, New York 10007

646.200.6166 Main
212.808.8100 Reception
646.839.2682 Fax
www.cdecastrolaw.com

March 30, 2020

***Via* ECF and E-Mail**

The Honorable Ramon E. Reyes
United States Magistrate Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   *United States v. Genaro Garcia Luna,* 19 Cr. 576 (BMC)
>        Reply to Government's Opposition to Bail Pending Trial

Dear Judge Reyes:

The government's opposition to Mr. Garcia Luna's robust bail package simply repeats its arguments rejected by Magistrate Judge Levy, contains factual inaccuracies, and fails to demonstrate why the current bail package would not ensure Mr. Garcia Luna's appearance in Court. The proposed bail package consisting of moral suasion and financially responsible suretors, as well as four properties is more than sufficient to ensure Mr. Garcia Luna's appearance in Court.

1.   Risk of Flight

Despite reserving the right to argue for the safety of the community, the government is seeking Mr. Garcia Luna's detention solely on the ground that Mr. Garcia-Luna is a flight risk. Instead of proposing a package that it would deem sufficient, it continues to argue detention despite Magistrate Judge Levy's specific conclusion that there exists conditions that could assure Mr. Garcia Luna's return to this Court. In opposition to the defendant's new robust bail package that addresses the shortcoming identified by Magistrate Judge Levy, the government relies on the same arguments regarding flight and the details of its case that it made in writing and before Magistrate Judge Levy.

The government relies on the same fantastical arguments that, if released and on electronic monitoring, Mr. Garcia Luna will somehow drive from Washington D.C. to the Mexican border, either enter Mexico by car or on foot and live in the mountains to evade capture. It now argues that Mr. Garcia Luna will make that Iliad with his wife and children who will abandon their lives here in the United States, which includes both of his children's United States college educations.

1

The government repeats its arguments that Mr. Garcia would flee to his native country where it has been publicly stated that he will face criminal charges based on the charges in this case.

With location monitoring, the proposed bail package will sufficiently ensure Mr. Garcia Luna's return to Court.

2.  Co-Signers Perez and Giraldo

In its March 30, 2020 submission, as it did at the outset of the February 27, 2020 bail hearing, the government has indicated that two proposed co-signers are not willing to follow-through signing a bond for Mr. Garcia Luna. On February 28, 2020, both co-signers at issue then (Mr. Ramirez and Ms. Sarmiento), despite the government's claims to the contrary, reaffirmed in person their willingness to act as suretors. Now, it makes the same claims regarding two different suretors. Its claim is true with respect to Ms. Perez, who, after speaking with the government, has been advised by counsel that signing on this bond could have adverse effects on her son's United States immigration application for which she is his sponsor. Accordingly, we are no longer proposing Ms. Perez as a potential co-signer, therefore, removing approximately $19,000 in annual salary from the bond equation. The annual salaries of the remaining co-signers combined still remains over $1 million without Ms. Perez.

With respect to Mr. Giraldo, the government is wrong. Mr. Giraldo is, in fact, still willing to co-sign for Mr. Garcia Luna and offer his property as collateral. *See* Email from his counsel Annexed Hereto as Exhibit "A."

3.  Carlos Villar

Like Mr. Ramirez and Ms. Sarmiento on February 28, 2020, and Mr. Giraldo in connection with the current application, the government makes inaccurate representations regarding Mr. Villar's suitability as a suretor for Mr. Garcia Luna. In its submission earlier today, the government states that Mr. Villar, a retired FBI agent who is pledging his residence and a rental property (collectively worth approximately $1.3 million), and his wife would not be proper co-signers because they had not had sufficient contact with Mr. Garcia Luna in the recent past. It writes that "Suretor A and Suretor B have only a tenuous relationship with the defendant." Government's March 30, 2020 Opposition, at 11. This is false.

The government appears to be basing these conclusions on its conversation with Mr. Villar's wife and the answers she gave regarding when *she* had last seen or spoke with Mr. Garcia Luna. Mr. Villar has had frequent and very recent contact with Mr. Garcia Luna. Mr. Villar, in an e-mail to the undersigned wrote the following:

> Genaro and I speak frequently and looking back we e-mail a minimum of once a month. In 2019, we have 14 e-mails going back and forth. The last time I was with Genaro was in January 2019. I can tell you, he is one of the best friends I have ever had. When I was shot in Mexico while I was the Acting FBI Legal Attache, Genaro immediately placed guards around my room as we did not know why I had been shot. After I was released from the hospital and returned to my

2

> apartment, Genaro would send someone to my apartment on a daily basis to check up on me. My son was also with me and Genaro's men would take him grocery shopping. My own ambassador did not even come to the hospital not check up on me. Genaro has been to my house here in Park City, Utah on several occasions. When I saw Genaro and his family, I was saddened to see him living in a small two bedroom apartment which he was renting in Aventura. With the New Mexican administration, he had los[t] several contracts and was struggling financially. I really don't know what to tell you, except that Genaro is a true and dear friend. I trust him 100 percent. My wife and I have no problem putting up our properties for his release. He will not flee. He would never do anything to hurt his children or wife. I pray that the judge will see him as I do and give him the opportunity to prove himself innocent.
>
> The USA's office called me and my wife, I was a little put off when she told me they were asking her about how much she made and how much I made. She was afraid that she had not answered the questions correctly and was freaking out believing she may have put herself in legal problems. I explained to her that she need not worry about that as the USA's office have our tax returns and that speaks for itself.

Email from Carlos Villar Annexed Hereto as Exhibit "B." Mr. Villar also added that he had seen Mr. Garcia Luna's family on December 26 and 27, 2020. *Id.*

Furthermore, the government, repeatedly relying on a Southern District case from 1991, *United States v. Collazo*, 90 CR 824, 1991 WL 89637 (S.D.N.Y. May 21, 1991), claims that Mr. Villar and the other proposed suretors are not adequate because they lack sufficient moral suasion over Mr. Garcia Luna. However, *Collazo* contains no discussion of what constitutes sufficient moral suasion. Instead, the district court found that the one proposed suretor who was not related to the defendant, lacked sufficient moral suasion, but it did not explain why or delineate the factors that were relevant to this determination. Furthermore, a decade after *Collazo*, a district court in the Southern District issued an opinion in which it clarified that proposed suretors are not required to both exercise moral suasion over a defendant and possess sufficient assets. *United States v. Batista*, 163 F. Supp. 2d 222, 226 (S.D.N.Y. 2001) ("a defendant who presents some individuals with moral suasion and others who are financially responsible may satisfy the requirements of bail.")

Not only is Mr. Villar an appropriate co-signer financially, but he also serves as an appropriate co-signer for moral suasion as well.

4. <u>Conclusion</u>

Mr. Garcia Luna respectfully requests that he be released on a $2 million personal recognizance bond secured by: (1) the signature of three moral suasion co-signers who have all already been approved as appropriate co-signers by Pretrial Services; (2) the signature of six financially responsible individuals who have all been approved as appropriate co-signers by Pretrial Services; (3) a property owned by Mr. Garcia Luna valued at approximately $1.2 million; (4) the

3

residence of retired FBI Agent Carlos Villar valued at approximately $1 million in which he has approximately $900,000 in equity; (5) the property owned outright by Carlos Villar valued at approximately $300,000; (6) the residence of Cesar Giraldo valued at approximately $489,000 in which he has approximately $175,000 in equity; and (7) the residence of Andres Merro valued at approximately $440,000 in which he has approximately $91,000 in equity. Mr. Garcia Luna would also be subject to standard Pretrial Services supervision with the addition of location monitoring. And Mr. Garcia Luna would reside in the Washington, D.C. area (or New York City if the Court required it) with his family.

Respectfully submitted,

/s/

César de Castro
Valerie A. Gotlib


cc:     Michael P. Robotti
        Ryan Harris
        Erin Reid
        (Assistant United States Attorneys *via* ECF)

# Exhibit A

Case 1:19-cr-00576-BMC   Document 37-3   Filed 04/16/20   Page 6 of 9 PageID #: 332
Case 1:19-cr-00576-BMC   Document 35-1   Filed 03/30/20   Page 2 of 2 PageID #: 300



**Valerie Gotlib <vgotlib@cdecastrolaw.com>**

## Fwd: Luna Bond
1 message

**Cesar de Castro** <cdecastro@cdecastrolaw.com>  Mon, Mar 30, 2020 at 5:08 PM
To: Valerie Gotlib <vgotlib@cdecastrolaw.com>

César de Castro
The Law Firm of César de Castro, P.C.
7 World Trade Center, 34th Floor
New York, New York 10007
646.200.6166 (main)
646.285.2077 (mobile)
646.839.2682 (fax)
cdecastrolaw.com

This communication (including any attachments) may contain privileged or confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, or distribution of this communication, or the taking of any action based on it, is strictly prohibited.

Begin forwarded message:

> **From:** Albert Z Levin <albert@albertlevinlaw.com>
> **Date:** March 30, 2020 at 3:06:27 PM EDT
> **To:** cdecastro@cdecastrolaw.com
> **Cc:** cesar giraldo <cesarg@potenzahrc.com>
> **Subject: Luna Bond**
>
> Hi- Mr Giraldo will serve as a suretor on the bond for Luna. Prosecutors have requested to speak with him tomorrow. FYI
>
> Albert Z Levin, P.A.
> 40 N.W. 3rd Street Suite 200
> Miami, Fl. 33128
> 305-379-7101

# Exhibit B



**Valerie Gotlib <vgotlib@cdecastrolaw.com>**

# Fwd: Questions Re: Genaro Garcia Luna
1 message

**Cesar de Castro** <cdecastro@cdecastrolaw.com>  Mon, Mar 30, 2020 at 3:51 PM
To: Valerie Gotlib <vgotlib@cdecastrolaw.com>

César de Castro
The Law Firm of César de Castro, P.C.
7 World Trade Center, 34th Floor
New York, New York 10007
646.200.6166 (main)
646.285.2077 (mobile)
646.839.2682 (fax)
cdecastrolaw.com

This communication (including any attachments) may contain privileged or confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, or distribution of this communication, or the taking of any action based on it, is strictly prohibited.

Begin forwarded message:

> **From:** CARLOS VILLAR SR
> **Date:** March 30, 2020 at 3:45:34 PM EDT
> **To:** Cesar de Castro <cdecastro@cdecastrolaw.com>
> **Subject: Re: Questions Re: Genaro Garcia Luna**
>
> Hello Counselor. In answer to your question, Genaro and I speak frequently and looking back we e-mail a minimum of once a month. In 2019, we have 14 e-mails going back and forth. The last time I was with Genaro was in January 2019. I can tell you, he is one of the best friends I have ever had. When I was shot in Mexico while I was the Acting FBI Legal Attache, Genaro immediately placed guards around my room as we did not know why I had been shot. After I was released from the hospital and returned to my apartment, Genaro would send someone to my apartment on a daily basis to check up on me. My son was also with me and Genaro's men would take him grocery shopping. My own ambassador did not even come to the hospital not check up on me. Genaro has been to my house here in Park City, Utah on several occasions. When I saw Genaro and his family, I was saddened to see him living in a small two bedroom apartment which he was renting in Aventura. With the New Mexican administration, he had los several contracts and was struggling financially. I really don't know what to tell you, except that Genaro is a true and dear friend. I trust him 100 percent. My wife and I have no problem putting up our properties for his release. He will not flee. He would never do anything to hurt his children or wife. I pray that the judge will see him as I do and give him the opportunity to prove himself innocent.
>
> The USA's office called me and my wife, I was a little put off when she told me they were asking her about how much she made and how much I made. She was afraid that she had not answered the questions correctly and was freaking out believing she may have put herself in legal problems. I explained to her that she need not worry about that as the USA's office have our tax returns and that speaks for itself.
>
> The last e-mail I received from Genaro was on Thanksgiving Day where he expressed some beautiful words for me and my family.
>
> Carlos Villar

On Mar 30, 2020, at 1:27 PM, Cesar de Castro <cdecastro@cdecastrolaw.com> wrote:

Good afternoon Mr. Villar. When was the last time you saw Genaro Garcia Luna? When was the last time you spoke with him? How often would you speak or stay in contact with him via telephone and/or email? Thank you.

Best,

César de Castro
The Law Firm of César de Castro, P.C.
7 World Trade Center, 34th Floor
New York, New York 10007
646.200.6166 (main)
646.285.2077 (mobile)
646.839.2682 (fax)
cdecastrolaw.com

This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose, and is protected
by law. If you are not the intended recipient, you should delete this communication
and/or shred the materials and any attachments and are hereby notified that
any disclosure, copying, or distribution of this communication, or the taking of any action
based on it, is strictly prohibited.