MPR:RCH/EMR
F. #2019R00927

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 3 0 2020  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

GENARO GARCIA LUNA,
LUIS CARDENAS PALOMINO and
RAMON PEQUENO GARCIA,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 19-576 (S-1) (BMC)
(T. 18, U.S.C., §§ 1001(a)(2), 3238,
2 and 3551 et seq.; T. 21, U.S.C.,
§§ 841(b)(1)(A)(ii)(II), 846, 848(a),
848(c), 853(a), 853(p), 959(d),
960(b)(1)(B)(ii), 963 and 970)

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

    1.     From approximately 2001 to the present, the Sinaloa Cartel was one of the world's largest and most prolific drug trafficking organizations.

    2.     The Sinaloa Cartel had a structure that included thousands of members, including: (a) the leadership of the Sinaloa Cartel, who were the ultimate decision makers in the organization with respect to its drug trafficking and money laundering activities, as well as its corruption and enforcement activities undertaken to preserve and protect its illegal activities; (b) security personnel, who protected the leadership of the Sinaloa Cartel and engaged in violent acts to further the goals of the organization; (c) plaza bosses, who controlled certain territories for the Sinaloa Cartel and were responsible for transporting

drugs through those territories; (d) transporters, such as boat and submarine crews, pilots and truck drivers, who transported drugs from Colombia through Mexico and into the United States; (e) money launderers, who funneled drug proceeds from the United States back to Mexico; and (f) corrupt public officials, who provided protection for the Sinaloa Cartel in exchange for bribes.

3.      While at times there were rifts and infighting among the leaders of the Sinaloa Cartel, they generally coordinated their criminal activities, shared and controlled Mexico's trafficking routes, resolved conflicts over territory, minimized inter-organization violence and ensured that the Sinaloa Cartel received the protection of corrupt public officials.

4.      The Sinaloa Cartel operated through cooperative arrangements and close coordination with South American cocaine sources of supply.   The Sinaloa Cartel directed a large scale narcotics transportation network involving the use of land, air and sea transportation assets, shipping multi-ton quantities of cocaine from South America, through Central America and Mexico, and finally into the United States.   The vast majority of drugs trafficked by the Sinaloa Cartel were imported into the United States, where they were consumed.

5.      The Sinaloa Cartel's drug sales in the United States generated billions of dollars in profit.   The drug proceeds were laundered back to Mexico, and often the drug money was physically transported from the United States to Mexico in vehicles containing hidden compartments and through other clandestine means.

6.      The Sinaloa Cartel used the corruption of public officials in Mexico as a means and method of achieving the goals of its drug trafficking enterprise.   The

defendants GENARO GARCIA LUNA, LUIS CARDENAS PALOMINO and RAMON

PEQUENO GARCIA were high-level officials in the Mexican government who protected

the Sinaloa Cartel in exchange for millions of dollars of bribe payments.   In exchange for

the bribes, the defendants GENARO GARCIA LUNA, LUIS CARDENAS PALOMINO and

RAMON PEQUENO GARCIA abused their public offices by committing the following acts

in furtherance of the Sinaloa Cartel's drug trafficking activities, among others:

      (a)     Agreeing not to interfere with the Sinaloa Cartel's drug

shipments in Mexico, which typically consisted of multi-ton quantities of narcotics, and the

vast majority of which were destined for the United States;

      (b)     Providing access to sensitive law enforcement information about

law enforcement operations against the Sinaloa Cartel;

      (c)     Targeting rival cartel members for arrest, instead of Sinaloa

Cartel members, and providing sensitive law enforcement information about rival cartel

members; and

      (d)     Placing other corrupt officials in positions of power in certain

areas of Mexico controlled by the Sinaloa Cartel.

COUNT ONE
(Continuing Criminal Enterprise)

      7.     The allegations contained in paragraphs one through six are realleged

and incorporated as if fully set forth in this paragraph.

      8.     In or about and between January 2001 and the present, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant GENARO GARCIA LUNA, together with others, did knowingly and intentionally

engage in a continuing criminal enterprise, in that the defendant GENARO GARCIA LUNA committed violations of Title 21, United States Code, Sections 841, 846, 959, 960 and 963, including Counts Two through Four and Violations One through Six set forth below, which violations were part of a continuing series of violations of those statutes undertaken by the defendant GENARO GARCIA LUNA, in concert with five or more other persons, with respect to whom the defendant GENARO GARCIA LUNA occupied supervisory and management positions, and from which continuing series of violations the defendant GENARO GARCIA LUNA obtained substantial income and resources.   The continuing series of violations, as defined by Title 21, United States Code, Section 848(c), includes, but is not limited to, the violations charged in Counts Two through Four and the following violations set forth below:

Violation One
(International Cocaine Distribution –
Approximately 5,000 Kilograms of Cocaine)

9.    On or about September 13, 2008, within the extraterritorial jurisdiction of the United States, the defendant GENARO GARCIA LUNA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2.

<u>Violation Two</u>
(International Cocaine Distribution –
Approximately 23,000 Kilograms of Cocaine)

10.      On or about October 30, 2007, within the extraterritorial jurisdiction of the United States, the defendant GENARO GARCIA LUNA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2.

<u>Violation Three</u>
(International Cocaine Distribution –
Approximately 19,000 Kilograms of Cocaine)

11.      On or about March 18, 2007, within the extraterritorial jurisdiction of the United States, the defendant GENARO GARCIA LUNA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2.

<u>Violation Four</u>
(Cocaine Distribution –
Approximately 1,997 Kilograms of Cocaine)

12.      On or about January 28, 2003, within the Eastern District of New York and elsewhere, the defendant GENARO GARCIA LUNA, together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled

substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii)(II), and Title 18, United States Code, Section 2.

Violation Five
(Cocaine Distribution –
Approximately 1,925 Kilograms of Cocaine)

13.     On or about August 16, 2002, within the Northern District of Illinois and elsewhere, the defendant GENARO GARCIA LUNA, together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii)(II), and Title 18, United States Code, Section 2.

Violation Six
(Cocaine Distribution –
Approximately 1,923 Kilograms of Cocaine)

14.     On or about May 24, 2002, within the Eastern District of New York and elsewhere, the defendant GENARO GARCIA LUNA, together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii)(II), and Title 18, United States Code, Section 2.

(Title 21, United States Code, Sections 848(a) and 848(c); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT TWO
(International Cocaine Distribution Conspiracy)

15.     The allegations contained in paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

16.     In or about and between January 2001 and the present, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants GENARO GARCIA LUNA, LUIS CARDENAS PALOMINO and RAMON PEQUENO GARCIA, together with others, did knowingly and intentionally conspire to distribute a controlled substance, intending, knowing and having reasonable cause to believe that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 959(a) and 960(a)(3).   The amount of cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 963, 960(b)(1)(B)(ii) and 959(d); Title 18, United States Code, Sections 3238 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Distribute and Possess with Intent to Distribute Cocaine)

17.     The allegations contained in paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

18.     In or about and between January 2001 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GENARO GARCIA LUNA, LUIS CARDENAS PALOMINO and RAMON

PEQUENO GARCIA, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).   The amount of cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 846 and 841(b)(1)(A)(ii)(II); Title 18, United States Code, Sections 3551 et seq.)

## COUNT FOUR
(Conspiracy to Import Cocaine)

19.     The allegations contained in paragraphs one through six are realleged and incorporated as if fully set forth in this paragraph.

20.     In or about and between January 2001 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GENARO GARCIA LUNA, LUIS CARDENAS PALOMINO and RAMON PEQUENO GARCIA, together with others, did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 952(a) and 960(a)(1).   The amount of cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and

the conduct of other conspirators reasonably foreseeable to them, was five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 963 and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 3551 et seq.)

## COUNT FIVE
### (Making False Statements)

21.     On or about June 1, 2018, within the Eastern District of New York and elsewhere, the defendant GENARO GARCIA LUNA did knowingly and intentionally make one or more materially false, fictitious and fraudulent statements and representations, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: a statement to the United States Customs and Immigration Services ("USCIS"), in that the defendant falsely stated and represented to USCIS that he had never committed, assisted in committing and attempted to commit a crime or offense for which he had not been arrested, when, in fact, the defendant then and there knew and believed he had committed, assisted in committing and attempted to commit crimes and offenses for which he had not been arrested.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT ONE
### (Continuing Criminal Enterprise)

22.     The United States hereby gives notice to the defendant charged in Count One that, upon his conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offense to forfeit any property constituting, or derived

from, proceeds obtained, directly or indirectly, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, and any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

23.     If any of the above-described forfeitable property, as a result of any act or omission of said defendant:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH FOUR

24.     The United States hereby gives notice to the defendants charged in Counts Two through Four that, upon their conviction of any of the offenses charged in Counts Two through Four, the government will seek forfeiture in accordance with Title 21, United States Code, Sections 853(a) and 970, which require any person convicted of such offenses to forfeit: (a) any property constituting, or derived from, any proceeds obtained

directly or indirectly as the result of such offenses, and (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses.

25.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a), 853(p) and 970)

A TRUE BILL

_____
FOREPERSON

_____
SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2019R00927
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

GENARO GARCIA LUNA,
LUIS CARDENAS PALOMINO, and
RAMON PEQUENO GARCIA

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 1001(a)(2), 1451(e), 3238, 2 and 3551 et seq.; T. 21,
U.S.C., §§ 846, 841(b)(1)(A)(ii)(II), 848(a), 848(c), 853(a), 853(p),
959(d), 960(b)(1)(B)(ii), 963 and 970)

*A true bill.*

_____
                                                                    *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
                                                                         *Clerk*

*Bail, $* _____

*Michael Robotti, Ryan Harris and Erin Reid, Assistant U.S. Attorneys*
*(718) 254-7000*