

U.S. Department of Justice

United States Attorney
Eastern District of New York

MPR:EMR/RCH
F. #2019R00927

271 Cadman Plaza East
Brooklyn, New York 11201

August 7, 2020

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Genaro Garcia Luna
                Criminal Docket No. 19-576 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in response to defendant Genaro Garcia Luna's motion to access a wide range of information and materials related to the selection and service of the grand jury that returned the superseding indictment in the above-captioned case (the "Grand Jury"). Dkt. No. 48, filed on August 4, 2020 (the "Motion" or "Mot.").[1] The defendant seeks these materials because, he alleges, "[t]he unusual circumstances of the superseding indictment . . . may have compromised [the defendant]'s right to a grand jury selected from a fair cross section of the community." Mot. at 1. According to the defendant, these purportedly "unusual circumstances" are that the Grand Jury "[sat] in Central Islip as opposed to Brooklyn," at a time when "[n]o grand jury sitting in the Brooklyn courthouse has yet mustered a quorum" due to the COVID-19 pandemic. Id. The defendant asserts that he is entitled to over 20 categories of detailed information and materials so that he can determine whether, pursuant to the Jury Selection

---

[1] Similar motions were filed in other cases returned by this Grand Jury and are currently pending before several judges in the District. In United States v. Mattis, 20-CR-203 (BMC), this Court directed the government to "provide defendants with data reflecting the county of residence, zip code, and to the extent available, the race and age of the individuals listed in the Master Jury Wheel from which the Grand Jury that indicted defendants was selected." See July 15, 2020 Order. As set forth below, the government does not object to the same information being provided to the defendant in this case.

and Service Act, 28 U.S.C. §§ 1861, et seq. ("JSSA"), he has a "potentially meritorious challenge" to the grand jury selection procedure in the Eastern District of New York.[2]  Id.

As an initial matter, the purported "unusual circumstances" related to the COVID-19 pandemic on which the defendant bases his motion have had no bearing on whether the Grand Jury was selected from a fair cross section of the community.  The Grand Jury at issue was empaneled in the Central Islip courthouse in October 2019—many months before the start of the pandemic—and has remained empaneled since then.  And, like all grand juries sitting in Brooklyn and Central Islip, the Grand Jury was selected from a list of residents drawn from all five counties of the Eastern District of New York.

Furthermore, for the reasons set forth below, the defendant is not entitled under the JSSA to the vast majority of the information and materials he seeks because it is not necessary to allow him to assess whether to move to dismiss the indictment on the purported ground that the Grand Jury was not selected at random from a fair cross section of the community.  The government does not, however, object to the parties inspecting a limited set of data—namely, the county of residence, zip code, and, to the extent available, the race and age of the individuals listed in the Master Jury Wheel from which the Grand Jury was selected—which is sufficient for the defendant to determine whether, in his view, a motion to dismiss is warranted.[3]

I.      Background

   A.   The Jury Plan in the Eastern District of New York

The Jury Selection Plan of the United States District Court for the Eastern District of New York, which was last amended on October 30, 2006 (the "Jury Plan"), sets

---

[2] Because the defendant is concerned that 28 U.S.C. § 1867(a) may bar a future motion to dismiss on timeliness grounds, he also has moved to dismiss the indictment and requested leave of the Court to supplement his motion to dismiss once he has had the opportunity to inspect the requested grand jury selection records. Mot. at 2.  The defendant's motion to dismiss is baseless and premature and accordingly should be denied without prejudice.  The government does not object to granting the defendant leave to file a timely renewed motion after inspecting the data to which he is entitled, which is discussed further below.

[3] Consistent with the relevant case law, the defendant agrees that personally identifiable information—including but not limited to grand juror names, addresses and social security numbers—should not be provided to the parties or otherwise disseminated publicly.  See, e.g., United States v. Gotti, No. (S4) 02-CR-743, 2004 WL 32858, at *10-11 (S.D.N.Y. Jan. 6, 2004) (citing United States v. Hansel, 70 F.3d 6, 8 (2d Cir. 1996) (holding that a district court may deny access to the names and personal information of grand jurors without violating the defendant's right to challenge the grand jury selection process)).

forth the procedures for selecting juries sitting in the Brooklyn and Central Islip Courthouses. See https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf. The Jury Plan provides:

> All litigants in federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community. All citizens shall have the opportunity to be considered for service on grand and petit jurors and shall have an obligation to serve as jurors when summoned for that purpose. No citizens shall be excluded from service as a grand or petit juror on account of race, color, religion, sex, national origin, or economic status.

Jury Plan § 2.

In furtherance of this policy, the Jury Plan provides, among other procedures, that the names of jurors "shall be selected at random from the voter registration lists of all the counties within the Eastern District of New York supplemented by lists for these counties from the New York State Department of Motor Vehicles." Id. § 4. The Jury Plan also sets forth the procedures for selecting individuals from this initial list to be included in the master jury wheels, qualified jury wheels, jury panels and ultimately in the grand and petit juries. Id. §§ 5-14.

B.  The Grand Jury In This Case

The Grand Jury, sitting in the Central Islip courthouse, returned a superseding indictment against the defendant on July 30, 2020. See ECF No. 47. The Grand Jury was empaneled on October 10, 2019, pursuant to the procedures set forth in the Jury Plan. The Grand Jury sat regularly on Thursdays between October 10, 2019 and March 12, 2020, the last day on which it was able to muster a quorum prior to the COVID-19 pandemic. See Chief Judge Mauskopf's Administrative Order 2020-11 ("Order 2020-11") (noting that "no regular grand jury in this district has had a quorum since March 13, 2020"). Because of the COVID-19 pandemic, the Grand Jury did not sit between March 13, 2020 and June 10, 2020. On July 30, 2020, the Grand Jury was able to achieve a quorum, and it heard and voted on the indictment in this case.

C.  The Defendant's Motion

In support of his motion to access "records and papers" related to the grand jury selection process, the defendant has attached (1) the declaration of a consultant whom the defendant has hired to "review the construction and implementation of the Master Jury Wheel and Qualified Jury Wheel that was used to select Grand Jurors in this case," and (2) an attachment containing a list of 23 requests for information and materials that the consultant purportedly requires to complete his review. See ECF Dkt. No. 48-1 ("Declaration of Jeffrey Martin" and "Attachment 1").

3

II.     Argument

   The defendant is not entitled under the JSSA to the vast majority of the information and materials he seeks because he does not need it to assess whether to move to dismiss the indictment on the purported ground that the Grand Jury was not selected at random from a fair cross section of the community.  However, in light of the applicable law, as set forth below, the government does not object to the parties inspecting a limited set of data—namely, the county of residence, zip code, and, to the extent available, the race and age of the individuals listed in the Master Jury Wheel from which the Grand Jury was selected—which is sufficient for the defendant to determine whether, in his view, a motion to dismiss is warranted.[4]

  A. Applicable Law

   The JSSA provides in relevant part that a defendant "may move to dismiss the indictment . . . against him on the ground of substantial failure to comply with the provisions" of the statute in selecting the grand jury.[5]  28 U.S.C. § 1867(a).  Further, the

---

[4] In United States v. Mattis, et al., 20-CR-203 (BMC), United States v. Cruz, 20-CR-206 (WFK), United States v. Fludd, 20-CR-204 (MKB), United States v. Morrison, et al., 20-CR-216 (AMD), and United States v. Torres, 20-CR-225 (ARR)—cases in which the defendants sought the identical grand jury selection materials as the defendant in this case— this Court, as well as Judges William F. Kuntz, Margo K. Brodie, Ann M. Donnelly, and Allyne R. Ross, respectively, ordered the government to provide to the defendant this limited set of data: namely, the county of residence, zip code, and, to the extent available, the race and age of the individuals listed in the Master Jury Wheel from which the Grand Jury was selected.  See ECF Orders in Mattis, Cruz, Fludd, Morrison, and Torres, dated July 15, 2020, July 1, 2020, July 16, 2020, July 24, 2020, and July 27, 2020, respectively.  The government received this data from the EDNY jury administrator on July 10, 2020, and has since provided it to defense counsel in these five cases.  See Mattis ECF Dkt. No. 32, Cruz ECF Dkt. No. 13; Fludd ECF Dkt. No. 12; Morrison ECF Dkt. No. 20; Torres ECF Dkt. No. 11.  Upon issuance of an order from this Court, the government will promptly provide the same data to the defendant in this case.  In addition, in United States v. Shader, 20-CR-202 (DLI), and United States v. Helena, et al., 20-CR-215 (DLI), Judge Dora L. Irizarry ordered the Clerk of the Court to provide to the parties the following data: juror number, race, gender, Hispanic ethnicity, year of birth, zip code, city, county and jury division of the individuals listed in the source lists (the voter registration list and the New York State Department of Motor Vehicles list) and in the Master Jury Wheel from which the Grand Jury was selected.  See Shader ECF Dkt. No 16, dated July 17, 2020; Helena ECF Dkt. No. 15, dated July 20, 2020.  The government understands that the Clerk of the Court is in the process of providing this data to the parties in Shader and Helena.

[5] The Fifth and Sixth Amendments guarantee a criminal defendant a jury selected from a fair cross section of the community.  Taylor v. Louisiana, 419 U.S. 522, 530 (1975); United States v. LaChance, 788 F.2d 856 (2d Cir. 1986).  The JSSA extends this

4

JSSA states, in relevant part, that "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation" of such a motion. 28 U.S.C. § 1867(f). "The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." Id.

As the Supreme Court has held, Section 1867(f) "makes clear that a litigant has essentially an unqualified right to inspect jury lists. It grants access in order to aid parties in the 'preparation' of motions challenging jury-selection procedures." Test v. United States, 420 U.S. 28, 30 (1975) (emphasis added). Moreover, "[b]ecause the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions." United States v. Royal, 100 F.3d 1019, 1025 (1st Cir. 1996).

Nonetheless, defendants "do not have an absolute right of access to all materials relating to the grand jury selection." United States v. Gotti, No. (S4) 02-CR-743, 2004 WL 32858, at *11 (S.D.N.Y. Jan. 6, 2004) (granting defendants access to the master jury list but denying access to the names and addresses of individuals on the master jury list and those who served on the grand jury itself); United States v. Davis, No. 06-CR-911, 2009 WL 637164, at *15-16 (S.D.N.Y. Mar. 11, 2009) (observing that "there is no absolute right of access to all materials relating to grand jury selection" and disclosing only "the District's Master Plan for jury selection"). A defendant's "unqualified right to records or papers encompasses only such data as [a defendant] needs to challenge the jury selection process." United States v. O'Reilly, No. 05-CR-80025, 2008 WL 115537, at *3 (E.D. Mich. Jan. 10, 2008).

Accordingly, numerous courts have held that only the master jury list from which the grand jury was selected need be disclosed for a defendant to assess whether to challenge the grand jury selection process. See Gotti, 2004 WL 32858, at *11 (citing United States v. Davenport, 824 F.2d 1511, 1515 (7th Cir. 1987) (holding that the defendant had "not demonstrated why other records besides those available jury lists might be required" to establish "an alleged deficiency" in the jury selection process); United States v. Harvey, 756 F.2d 636, 642-43 (8th Cir. 1985) (master grand jury list with names and addresses redacted provided the defendant with "the ability to determine whether the master grand jury list represented a racial and economic cross-section of the community"); and United States v. McLernon, 746 F.2d 1098, 1123 (6th Cir. 1984) (holding that the defendants' "unqualified

---

requirement to federal grand juries. 28 U.S.C. § 1861 ("It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.").

right to inspection was satisfied by disclosure of the Master Lists and the relevant demographic data about the general pool from which the specific grand jurors were selected" and that "refusing to provide [defendants] with the names, addresses, and demographics of the specific grand jurors who returned indictment against them" was not error)).

The master jury list is "sufficient to comply with" the Supreme Court's decision in Test because "[i]t is not the actual selection of the grand jury which would constitute the violation but whether the jury was selected 'at random from a fair cross section of the community.'" Gotti, 2004 WL 32858, at *11 (quoting United States v. Nichols, 248 F. Supp. 2d 1027, 1034-35 (D. Kan. 2003) (denying defendants' request for jury questionnaires of the jurors placed in the master and qualified jury wheels) (rev'd on other grounds)); see also United States v. Brown, No. 96-1361, 116 F.3d 466, 466 (2d Cir. 1997) (noting defendant's "right to obtain relevant grand jury lists containing information regarding the ethnicity of the members of his grand jury pool") (unpublished disposition).

B.   Application

Granting access to the county of residence, zip code, race and age of the individuals listed in the relevant Master Jury Wheel is sufficient for the defendant to determine whether to move to dismiss the indictment. See, e.g., Gotti, 2004 WL 32858, at *11; Brown, 116 F.3d at 466; Nichols, 248 F. Supp. 2d at 1034-35; McLernon, 746 F.2d at 1123; Davenport, 824 F.2d at 1515; Harvey, 756 F.2d at 642-43. More specifically, with this information, the defendant will be able to assess whether, in his view, the Master Jury Wheel from which the Grand Jury was selected represented a fair demographic cross section of the Eastern District of New York, and accordingly whether he believes a motion to dismiss is warranted.

The additional information and materials the defendant seeks are not necessary to assessing whether a challenge to the grand jury selection process is warranted under Section 1867 of the JSSA. Of the defendant's 23 requests in Attachment 1 to his Motion (the "Requests"), many seek data from a stage in the jury selection process that follows the creation of the Master Jury Wheel—data to which, as discussed above, courts have typically held a defendant is not entitled. See Request No. 10 (procedures related to prospective jurors who did not respond to jury qualification form); No. 11 (number of persons who failed to return completed jury qualification form); No. 12 (number of persons who failed to complete form and were summoned by the clerk); No. 14 (number of persons summoned from the qualified jury wheel); No. 16 (qualified jury wheel data); No. 17 (status codes for potential jurors); No. 18 (the juror number for persons who failed to return a completed juror qualification form and were then summoned); No. 19 (juror number for potential grand jurors); No. 21 (juror qualification and summons forms for persons summoned); No. 22 (disposition of each summoned potential grand juror in this case); No. 23 (attendance record for each grand juror). In addition, several of the Requests seek data related to the Master Jury Wheel and the Qualified Jury Wheel that does not advance the defendant's assessment of whether the grand jury was selected from a fair cross section of the community. See Request No. 4 (concerning vendors involved in the creation of the jury wheels); No. 6

6

(specific forms); No. 7 (statistical or demographic analyses); No. 9 (calculation of the proportional representation of counties).

Requests Nos. 2 and 3—which seek information regarding any effects of the COVID-19 pandemic on the Jury Plan or the selection of grand juries—are also irrelevant to the issue at hand. As an initial matter, the selection of the Grand Jury, which was empaneled in October 2019 and has remained empaneled since then, was not affected by the pandemic. The changes that have been made as a result of the pandemic are added measures to ensure the health and safety of the grand jurors while in the courthouse, including, for example, temperature checks before entering the grand jury chamber. Furthermore, any effect that the pandemic may have had on which members of the Grand Jury attended the July 30, 2020 session is not at issue under Section 1867. See Gotti, 2004 WL 32858, at *11 (holding that the potential violation at issue is the failure of a grand jury to be selected at random from a fair cross section of the community).

Finally, the defendant's remaining requests have effectively been resolved by this letter brief. Specifically, the government confirms its understanding that the Jury Plan was in effect when the Grand Jury was selected and empaneled (Request No. 1); that the Grand Jury was selected from the entire Eastern District of New York, pursuant to the Jury Plan (Request No. 5); that the Master Jury Wheel from which the Grand Jury was selected was refilled in September 2019, pursuant to the Jury Plan (Request No. 8); that the Grand Jury was empaneled on October 10, 2019, and that summonses typically are mailed approximately 30 days before a grand jury is empaneled (Request No. 13); and that the limited Master Jury Wheel data listed above is sufficient for the defendant to assess whether a motion to dismiss is warranted (Request Nos. 15 and 20).

III. Conclusion

For the foregoing reasons, the defendant's motion to access data related to the grand jury selection process should be denied with the exception of certain limited data—the county of residence, zip code, and, to the extent available, the race and age of the individuals listed in Master Jury Wheel from which the Grand Jury was selected—that is sufficient for

7

the defendant to determine whether, in his view, a motion to dismiss the indictment is warranted.

                                      Respectfully submitted,

                                      SETH D. DUCHARME
                                      Acting United States Attorney

                        By:    /s/
                                      Michael P. Robotti
                                      Ryan Harris
                                      Erin Reid
                                      Assistant U.S. Attorneys
                                      (718) 254-7000

cc:    Counsel of record (by ECF)
        Clerk of Court (BMC) (by ECF)