HDM/RCH
F. #2019R00927

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -                          No. 19-CR-576 (BMC)

GENARO GARCIA LUNA,

        Defendant.

– – – – – – – – – – – –X

THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR A PRETRIAL CONFERENCE PURSUANT TO
<u>THE CLASSIFIED INFORMATION PROCEDURES ACT</u>

                                              BREON PEACE
                                              United States Attorney
                                              Eastern District of New York

Ryan C. Harris
Hiral D. Mehta
Erin M. Reid
Philip Pilmar
Marietou Diouf
Assistant United States Attorneys
       (Of Counsel)

# **PRELIMINARY STATEMENT**

The defendant, Genaro Garcia Luna, has been indicted with: (i) engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Sections 848(a) and 848(c); (ii) participating in an international cocaine distribution conspiracy, in violation of Title 21, United States Code, Sections 963, 960(b)(1)(B)(ii) and 959(d); (iii) participating in a conspiracy to distribute and possess with intent to distribute at least five kilograms of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(ii)(II); (iv) participating in a conspiracy to import at least five kilograms of cocaine, in violation of Title 21, United States Code, Sections 963 and 960(b)(1)(B)(ii); and (v) making material false statements, in violation of Title 18, United States Code, Section 1001(a)(2).

The government respectfully submits this memorandum of law to apprise the Court of the applicability of the Classified Information Procedures Act, 18 U.S.C. App. 3, §§ 1-16 ("CIPA"), to matters relating to classified information that may arise in connection with this case, both before and during trial. In addition, the government submits this memorandum of law in support of the government's motion for a pretrial conference, pursuant to Section 2 of CIPA, to consider such matters. The date of the next status conference in this matter is October 27, 2021. The government requests that the Section 2 conference be held approximately 45 days after that date.

## BACKGROUND

As in all cases that may implicate classified information, the government herein provides the Court with a detailed description of the procedures mandated by the CIPA statute for protecting such classified information.

The Supreme Court has long acknowledged the importance of protecting the nation's secrets from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." CIA v. Sims, 471 U.S. 159, 175 (1985) (quoting Snepp v. United States, 444 U.S. 507, 509 n.3 (1980) (per curiam)); accord Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Accordingly, federal courts have long recognized that it "is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." United States v. Lemonakis, 485 F.2d 941, 963 (D.C. Cir. 1973).

The Classified Information Procedures Act contains a set of procedures by which federal district courts rule on pretrial matters concerning the discovery, admissibility, and use of classified information in criminal cases. See United States v. Baptista-Rodriguez, 17 F.3d 1354, 1363 (11th Cir. 1994). The Act's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material at trial and the government's right

to protect classified material in the national interest." United States v. Pappas, 94 F.3d 795, 799 (2d Cir. 1996) (citing United States v. Wilson, 571 F. Supp. 1422, 1426 (S.D.N.Y. 1983)). In other words, "CIPA, which establishes certain procedures for the handling of classified information in criminal cases, is designed 'to protect[ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'" United States v. Abu-Jihaad, 630 F.3d 102, 140 (2d Cir. 2010) (quoting United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008)); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 115 (2d Cir. 2008) ("CIPA establishes rules for the management of criminal cases involving classified information."). Therefore, CIPA evidences "Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial" while also ensuring that the defendant's right to present evidence in his defense is not compromised. United States v. Apperson, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006) (citing United States v. O'Hara, 301 F.3d 563, 568 (7th Cir. 2002)).

The Act, however, neither creates a new right of discovery nor expands the rules governing the admissibility of evidence. See United States v. Johnson, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); accord see United States v. Dumeisi, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); United States v. Smith, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc). CIPA does not "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." United

4

States v. Varca, 896 F.2d 900, 905 (5th Cir. 1990); accord United States v. McVeigh, 923 F. Supp. 1310, 1314 (D. Colo. 1996) ("CIPA does not enlarge the scope of discovery or of Brady."). Rather, CIPA applies preexisting general discovery law in criminal cases to classified information and restricts discovery of classified information to protect the government's national security interests. See, e.g., United States v. Klimavicius-Viloria, 144 F.3d 1249, 1261 (9th Cir. 1998); United States v. Yunis, 867 F.2d 617, 621 (D.C. Cir. 1989).

I. PRETRIAL CONFERENCES, PROTECTIVE ORDERS AND DISCOVERY UNDER CIPA

    A. CIPA: Relevant Definitions

Under CIPA, "classified information" includes any information or material that has been determined by the United States Government pursuant to law or regulation to require protection against unauthorized disclosure for reasons of national security. 18 U.S.C. App. III § 1(a). "National security" refers to the national defense and foreign relations of the United States. Id. at § 1(b). Notably, CIPA applies equally to classified testimony and classified documents. See United States v. Lee, 90 F. Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing United States v. North, 708 F. Supp. 399, 399-400 (D.D.C. 1988)); see also Kasi v. Angelone, 200 F. Supp. 2d 585, 596-97 (E.D. Va. 2002) (applying CIPA to classified testimony).

    A. Pretrial Conferences

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3, § 2. After such a motion is filed, Section 2 states that the district court "shall promptly hold a

pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." Id.

C. Protective Orders

Section 3 of CIPA requires the Court, upon the request of the United States, to issue an order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case . . . ." 18 U.S.C. App. 3, § 3. The key Senate Report on CIPA, issued by the Senate Committee on the Judiciary, provides that the terms of a protective order may include, but need not be limited to, provisions:

> (1) prohibiting the disclosure of the information except as authorized by the court; (2) requiring storage of material in a manner appropriate for the level of classification assigned to the documents to be disclosed; (3) requiring controlled access to the material during normal business hours and at other times upon reasonable notice; (4) requiring the maintenance of logs recording access by all persons authorized by the court to have access to the classified information in connection with the preparation of the defense; (5) requiring the making and handling of notes taken from material containing classified information; and (6) authorizing the assignment of government security personnel and the provision of government storage facilities.

S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299 (1980).

D. Discovery of Classified Information by the Defendant

Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such

6

classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. App. 3, § 4.

Like Rule 16(d)(1) of the Federal Rules of Criminal Procedure, Section 4 of CIPA provides that the United States may demonstrate that the use of such alternatives is warranted through an in camera, ex parte submission to the Court, and the Second Circuit has repeatedly affirmed district court decisions entering protective orders based on such submissions. See, e.g., Abu-Jihaad, 630 F.3d at 142-143 (recognizing that "a district court's decision to conduct ex parte hearings manifests no abuse of discretion"); Aref, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)); see also United States v. Kandic, No. 17-CR-449 (NGG), ECF No. 41, at 4 (E.D.N.Y. Jan. 22, 2019) (granting government's motion to file CIPA Section 4 motion ex parte and in camera); United States v. Ying Lin, No. 15-CR-601 (DLI), ECF No. 71 (E.D.N.Y. Apr. 6, 2017) (same); United States v. Isa, No. 11-CR-819 (RRM), ECF No. 65 (E.D.N.Y. Sept. 19, 2016) (same); United States v. Al Farekh, No. 15-CR-268 (BMC), 2016 WL 4444778, at *2 (E.D.N.Y. Aug. 23, 2016) (same); United States v. Velentzas, No. 15-CR-213 (SJ), 2016 WL 4250304, at *3 (E.D.N.Y. Aug. 10, 2016) (same); see also United States v. Yunis, 867 F.2d 617, 622-23 (D.C. Cir. 1989); United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988); United States v. Pringle, 751 F.2d 419, 427 (1st Cir. 1984).

"CIPA 'overlays the framework appearing in Fed. R. Crim. P. 16, which itself authorizes district courts to restrict discovery of evidence in the interest of national security.'" Velentzas, 2016 WL 4250304, at *2 (quoting United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at *1 (E.D.N.Y. June 24, 2011)); see also Aref, 533 F.3d at 78. Indeed, CIPA's legislative history makes clear that the Court may consider national security interests in determining whether to deny, restrict, or defer discovery. See S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980) (citing "the protection of information vital to the national security" as one consideration justifying limitations on discovery); see also Abu-Jihaad, 630 F.3d at 140 (making clear that district courts have the power under Federal Rule of Criminal Procedure 16(d)(1) "to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security" (quoting United States v. Stewart, 590 F.3d 93, 130 (2d Cir. 2009))); Aref, 533 F.3d at 78 (same).[1]

---

[1] The United States acknowledges that courts within the Second Circuit analogize CIPA to the common law state-secrets privilege, and accordingly expect that the government's claim of privilege be lodged by an appropriate head of agency. See Aref, 533 F.3d at 80. However, the United States maintains that CIPA itself does not require that the government's privilege be initiated by an agency head, and that the procedural requirements of the state-secrets privilege that differ from the text of CIPA do not apply to criminal cases. See, e.g., United States v. Rosen, 557 F.3d 192, 198 (4th Cir. 2009); United States v. El-Mezain, 664 F.3d 467, 521-22 (5th Cir. 2011).

Based upon the Second Circuit's holding in Aref, summarized above, the government anticipates that it will file a declaration from the head of the agency invoking the claim of privilege. This is typically a Cabinet-level or otherwise very senior government official. Based upon past experience, compliance with this requirement can, on occasion, be time-consuming depending upon the complexity of the information at issue and the need to coordinate across multiple government agencies.

As the Second Circuit has observed, "CIPA does not itself create a government privilege against the disclosure of classified information; it presupposes one." Stewart, 590 F.3d at 130. "The privilege it presupposes has its origins in the common-law privilege against disclosure of state secrets . . . which 'allows the government to withhold information from discovery when disclosure would be inimical to national security.'" Abu-Jihaad, 630 F.3d at 140-41 (internal citations omitted, quoting Zuckerbraun v. Gen. Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991)). "CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable. Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense." United States v. Boulos, No. 13-CR-612 (ENV), 2015 WL 502170, at *1 (E.D.N.Y. Feb. 3, 2015) (internal citations omitted).

The application of the government's privilege against disclosure of classified information is a multi-step process. "First, the district court must determine whether the material in dispute is discoverable, and if so, whether the state-secrets privilege applies." Stewart, 590 F.3d at 131. If the material in dispute is discoverable, "the state-secrets privilege applies if '(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" Abu-Jihaad, 630 F.3d at 141 (quoting Aref, 533 F.3d at 80). "If the evidence is discoverable but the information is privileged, the

9

court must next decide whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense." Aref, 533 F.3d at 80 (internal quotation marks omitted).

In determining whether deletion or substitution of classified information is appropriate, a court must balance the government's national security interest against the defendant's right to present his defense. For example, under CIPA, a court may permit the government to produce exculpatory or helpful information "in a form that will preserve its sensitivity," including summaries that omit classified information that is "not helpful to the defense." Al Farekh, 2016 WL 4444778, at *2-3; see also United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989) ("[A] defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'"). The fact that defense counsel possesses a security clearance does not itself entitle counsel to receive classified information in discovery. As courts in this Circuit have repeatedly recognized "clearances do not mandate . . . access to immaterial classified information for which counsel has no legitimate need." United States v. Babafemi, No. 13-CR-109 (JG), 2014 WL 1515277, at *3 (E.D.N.Y. Apr. 18, 2014) (citing Exec. Order No. 13,526, 75 Fed. Reg. 707, 720 (Dec. 29, 2009) ("A person may have access to classified information provided that . . . the person has a need-to-know the information.")); Zazi, 2011 WL 2532903, at *3 (same); see also United States v. Libby, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of

security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

II.     NOTICE OF DEFENDANT'S INTENT TO DISCLOSE AND PRETRIAL EVIDENTIARY RULINGS

Sections 5 and 6 of CIPA apply when a criminal defendant possesses classified information and seeks to disclose such information during the course of a trial or proceeding.[2] See, e.g., Baptista-Rodriguez, 17 F.3d at 1363; Sarkissian, 841 F.2d at 965-66; United States v. Collins, 720 F.2d 1195, 1199 (11th Cir. 1983). There are three critical pretrial steps in the handling of classified information under CIPA after such information has been provided to the defendant through discovery. First, the defendant must specify in detail the precise classified information he reasonably expects to disclose at trial. Second, the Court, upon motion of the government, shall hold a hearing pursuant to Section 6(a) to determine the use, relevance, and admissibility of the proposed evidence. Third, following the Section 6(a) hearing and formal findings of admissibility by the Court, the United States may move to substitute an admission of relevant facts or summaries for classified information that the Court rules admissible.

A.      The Requirement to Provide Notice of Disclosure

The linchpin of CIPA is Section 5(a), which requires a defendant who intends to disclose (or cause the disclosure of) classified information to provide timely pretrial written notice of his intention to the Court and the government. Section 5(a) expressly requires that such notice "include a brief description of the classified information," and the leading case

---

[2] At this time, the government does not foresee proceedings under Sections 5 or 6.

under Section 5(a) holds that such notice "must be <u>particularized</u>, setting forth <u>specifically</u> the classified information which the defendant reasonably believes to be necessary to his defense." <u>United States v. Collins</u>, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added); <u>see also</u> <u>Yunis</u>, 867 F.2d at 623 ("[A] defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'"); <u>United States v. Smith</u>, 780 F.2d 1102, 1105 (4th Cir. 1985) (<u>en</u> <u>banc</u>). This requirement applies to both documentary exhibits and oral testimony, whether it is anticipated to be brought out on direct or cross-examination. See <u>United States v. Hitselberger</u>, 991 F. Supp. 2d 91, 95 (D.D.C. 2013) (CIPA's disclosure requirement applies "regardless of the witness or the document through which that information is to be revealed.") (quoting <u>United States v. Poindexter</u>, 725 F. Supp. 13, 33 (D.D.C. 1989)).

If a defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit the implementation of CIPA procedures, Section 5(b) authorizes the Court to "preclude disclosure of any classified information." 18 U.S.C. App. 3, § 5(b); <u>see also</u> <u>United States v. Badia</u>, 827 F.2d 1458, 1464-66 (11th Cir. 1987) (upholding preclusion of disclosure of classified information at trial because defendant failed to comply with notice requirements of CIPA § 5). Similarly, if the defendant attempts to disclose at trial classified information that is not described in his Section 5(a) notice, preclusion is the appropriate remedy under Section 5(b) of CIPA. See <u>United States v. Pappas</u>, 94 F.3d 795, 799 (2d Cir. 1996) ("[A] defendant shall not disclose classified information 'in connection with a trial or pretrial proceeding' until the required notice has been given."); <u>United States v. Smith</u>, 780

12

F.2d 1102, 1105 (4th Cir. 1985) ("[D]efendant is forbidden from disclosing any such information absent the giving of notice"); see generally United States v. North, 708 F. Supp. 399 (D.D.C. 1988).

      B.      The Pretrial Hearing on Disclosure

Prior to trial, pursuant to Section 6(a) of CIPA, upon motion of the government, the Court must hold a hearing "to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. App. 3, § 6(a). The statute expressly provides that if the Section 6(a) motion is filed before trial or the relevant pretrial proceeding, "the court shall rule [on the use, relevance, or admissibility of the classified information at issue] prior to the commencement of the relevant proceeding." Id. (emphasis added).

Section 6(b) of CIPA requires that before any hearing is conducted under subsection (a), the United States must notify the defendant of the hearing and identify the classified information which will be at issue. If the information was not previously made available to the defendant, the United States may, with the Court's approval, provide a generic description of the material to the defendant. Thus, as Congress recognized in enacting CIPA, "the Government would not have to disclose the identity of an undercover intelligence agent not previously disclosed to the defendant; instead, the Government would describe the information as 'the identity of an undercover intelligence agent' if this meets with court approval." S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4301 (1980).

13

At the Section 6(a) hearing, the Court hears the defense proffer and the arguments of counsel, then rules whether the classified information identified by the defense is relevant under Rule 401 of the Federal Rules of Evidence.³ Smith, 780 F.2d at 1106; see generally Yunis, 867 F.2d at 622. The Court's inquiry does not end there, however, for under Rule 402 of the Federal Rules of Evidence, "[n]ot all relevant evidence is admissible at trial." Id. The Court must also determine whether the evidence is cumulative, "prejudicial, confusing, or misleading," so that it should be excluded under Rule 403 of the Federal Rules of Evidence. United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984). At the conclusion of the Section 6(a) hearing, the Court must state in writing the reasons for its determination as to each item of classified information.

    C.    Substitution in Lieu of Disclosure

In the event that the Court rules that one or more items of classified information are admissible, the United States has the option of proposing a "substitution" for the classified information at issue, pursuant to Section 6(c) of CIPA. 18 U.S.C. App. 3, § 6(c). The United States may move for permission to provide the defense either a substitute statement admitting relevant facts that the classified information would tend to prove, or substitute a summary of the classified information that would otherwise be disclosable. See In re

---

³ CIPA does not change the "generally applicable evidentiary rules of admissibility." United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984); accord Babafemi, 2014 WL 1515277, at *1. Rather, CIPA alters the timing of rulings concerning admissibility, so as to require them to be made before trial. United States v. Poindexter, 698 F. Supp. 316, 318 (D.D.C. 1988); accord Zazi, 2011 WL 2532903, at *1; Smith, 780 F.2d at 1106.

Terrorist Bombings, 552 F.3d at 116. The Court must grant the motion for substitution "if it finds that the [substituted] statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." Id.

If the Court determines that the item of classified information at issue is relevant and admissible and denies the government's motion for substitution, Section 6(e)(1) of CIPA permits the government to object to the classified information's disclosure. 18 U.S.C. App. 3, § 6(e)(1). In such cases, the Court "shall order that the defendant not disclose or cause the disclosure of such information." Id. Section 6(e) then sets forth a sliding scale of remedies that the Court may impose in such a case. Id. at § 6(e).

III. OTHER RELEVANT CIPA PROCEDURES

    A. Interlocutory Appeal

Section 7(a) of CIPA provides for an interlocutory appeal by the United States from any decision or order of the trial judge "authorizing the disclosure of classified information," imposing sanctions on the United States "for nondisclosure of classified information," or for "refusing a protective order sought by the United States to prevent the disclosure of classified information." 18 U.S.C. App. 3, § 7(a). The term "disclosure" relates both to information which the court orders the United States to divulge to the defendant as well as to information already possessed by the defendant which he or she

intends to make public. Section 7(b) requires the Court of Appeals to give expedited consideration to any interlocutory appeal filed under subsection (a). Id. § 7(b).

B. Rules Governing Introduction of Classified Information

In order to prevent "unnecessary disclosure" of classified information, section 8(b) permits the Court to order admission into evidence of only a part of a writing, recording or photograph. Alternatively, the Court may order into evidence the entire writing, recording or photograph with all or part of the classified information contained therein excised. Excision of such classified information may not be authorized, however, if fairness requires that the whole document, recording or photograph be considered.

Section 8(c) establishes a procedure for addressing the problems that may emerge during the taking of testimony from a witness who possesses classified information not previously found to be admissible. If the defendant knows that a question or a line of inquiry would result in disclosure of classified information, CIPA mandates that he give the United States immediate notice under Section 5 of the Act; Section 8(c), in effect, serves as a supplement to the Section 6(a) procedures, addressing circumstances that might not have been anticipated in advance of the taking of testimony. Thus, upon objection of the United States to a defense question or line of inquiry not covered in a Section 6(a) proceeding, the Court must take suitable action to avoid the improper disclosure of classified information by a witness.

C. <u>Security Procedures</u>

Section 9 of CIPA required the Chief Justice of the United States to prescribe security procedures for the protection of classified information in the custody of federal courts. On February 12, 1981, Chief Justice Burger promulgated these procedures.

**ARGUMENT**

In this case, the defendant, Genaro Garcia Luna, has been indicted for: (i) engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Sections 848(a) and 848(c); (ii) participating in an international cocaine distribution conspiracy, in violation of Title 21, United States Code, Sections 963, 960(b)(1)(B)(ii) and 959(d); (iii) participating in a conspiracy to distribute and possess with intent to distribute at least five kilograms of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(ii)(II); (iv) participating in a conspiracy to import at least five kilograms of cocaine, in violation of Title 21, United States Code, Sections 963 and 960(b)(1)(B)(ii); and (v) making material false statements, in violation of Title 18, United States Code, Section 1001(a)(2). These charges relate to the defendant's corrupt assistance while he was the Mexican Secretary of Public Security to, <u>inter</u> <u>alia</u>, the Sinaloa Cartel, one of the largest and most violent criminal organizations in the world. Due to the nature of the charges, the United States anticipates that issues relating to classified information may arise in connection with this prosecution. Specifically, classified material may exist that could be subject to disclosure in advance of trial under applicable rules, statutes, and case law. The disclosure of

such material would raise issues of national security that the Court should address before the material is provided to the defense.

Accordingly, the United States respectfully moves for a pretrial conference pursuant to Section 2 of CIPA to establish a motion schedule relating to any classified information. The government further requests that this conference be held approximately 45 days after the status conference in this matter currently scheduled for October 27, 2021. Prior to the Section 2 pretrial conference, the government will endeavor to complete its efforts to identify the universe of potentially discoverable classified material and determine its potential applicability, nature, and volume. At the Section 2 conference, the government will provide an estimate of the time necessary to conduct a complete review of any potentially discoverable classified information. Based on that estimate, the government will request a schedule for the filing of motions, pursuant to Sections 3 and 4 of CIPA, if necessary, relating to the deletion, substitution, or disclosure pursuant to a protective order of classified information otherwise subject to discovery under the Federal Rules of Criminal Procedure and applicable law. 18 U.S.C. App. 3, § 4.

Because of the classified nature of any such information identified by the government, the government will not be able to describe or discuss the information in open court at the Section 2 conference. Accordingly, should the government identify potentially discoverable classified information, the government seeks authorization pursuant to Section 4 of CIPA to make an in camera, ex parte submission regarding classified materials that the government believes should be subject to deletion, substitution, or disclosure pursuant to a

protective order.  Id.  As detailed above, courts in this Circuit have consistently held that in camera, ex parte submissions to a district court in matters involving national security are proper.  See, e.g., Abu-Jihaad, 630 F.3d at 140; Aref, 533 F.3d at 78.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that during the next status conference in this matter, the Court schedule a pretrial conference pursuant to Section 2 of CIPA, at which the Court will establish a discovery and motion schedule relating to any classified information.

Dated:      Brooklyn, New York
              October 19, 2021

                                          BREON PEACE
                                          UNITED STATES ATTORNEY
                                          Eastern District of New York
                                          271 Cadman Plaza East
                                          Brooklyn, New York 11201

                           By:    /s/_____
                                          Ryan C. Harris
                                          Hiral D. Mehta
                                          Erin M. Reid
                                          Philip Pilmar
                                          Marietou Diouf
                                          Assistant U.S. Attorneys
                                          (718) 254-7000