RCH/HDM/EMR/PP/MED
F. #2019R00927

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                               Docket No. 19-CR-576 (BMC)

GENARO GARCIA LUNA,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF MOTION FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Ryan C. Harris
Hiral D. Mehta
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Assistant U.S. Attorneys
    (Of Counsel)

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL BACKGROUND.............................................................................. 2

    I.     The Charges ............................................................................. 2

    II.    The Defendant's History of Interference with the Judicial Process ................. 2

    III.   The Defendant's Means to Harm the Jury ......................................... 3

    IV.   Widespread Media Coverage ...................................................... 5

ARGUMENT....................................................................................... 6

    I.     Legal Standards ...................................................................... 6

    II.    Discussion .......................................................................... 10

          A.    The Seriousness of the Charges Against the Defendant
                Weigh in Favor of an Anonymous and Partially Sequestered
                Jury.................................................................. 10

          B.    The Defendant's Past Interference with and Present Means to
                Interfere with the Judicial Process Support Anonymity and
                Partial Sequestration............................................. 11

          C.    Extensive Press Coverage Justifies an Anonymous and
                 Partially Sequestered Jury...................................... 14

          D.    Protection of the Defendant's Rights .................................. 17

CONCLUSION................................................................................... 19

i

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

United States v. Al Farekh,
   No. 15-CR-268 (BMC) (E.D.N.Y. June 16, 2017) (Dkt. No. 102) ..................................... 9, 16

United States v. Ashburn,
   13-CR-0303 (NGG), 2014 WL 5800280 (E.D.N.Y. Nov. 7, 2014) ........................................... 8

United States v. Aulicino,
   44 F.3d 1102 (2d Cir. 1995) ......................................................................................................... 8

United States v. Cacace,
   No. CR-08-240-14 (BMC), 2013 WL 4775531 (E.D.N.Y. Sep. 6, 2013) .......................... 9, 17

United States v. Barnes,
   604 F.2d 121 (2d Cir. 1979) ......................................................................................................... 7

United States v. Galestro,
   No. 06-CR-285 (ARR), 2008 WL 2783359 (E.D.N.Y. July 15, 2008) ..................................... 18

United States v. Gotti,
   459 F.3d 296 (2d Cir. 2006) .................................................................................................. 6, 12

United States v. Guzman Loera,
   No. 09-CR-0466 (BMC) (E.D.N.Y. Feb. 5, 2018) (Dkt. No. 187) .................................. passim

United States v. Kadir,
   718 F.3d 115 (2d Cir. 2013) ................................................................................. 14, 15, 17, 18

United States v. Kelly,
   No. 19-CR-286 (AMD), 2020 WL 8482693 (E.D.N.Y. Oct. 8, 2020)............................ passim

United States v. Mayes,
   No. 12-CR-385 (ARR), 2013 WL 6175824 (E.D.N.Y. Nov. 25, 2013)................................... 12

United States v. Paccione,
   949 F.2d 1183 (2d Cir. 1991) ................................................................................... 6, 8, 15, 16

United States v. Persico,
   No. 10-CR-147 (SLT), 2012 WL 1188243 (E.D.N.Y. Apr. 6, 2012) ........................................ 8

United States v. Pica,
   692 F.3d 79 (2d Cir. 2012) .............................................................................................. 6, 7, 9

United States v. Quinones,
    511 F.3d 289 (2d Cir. 2007) ................................................................. 6

United States v. Stewart,
    590 F.3d 93 (2d Cir. 2008) ............................................................. 13, 14

United States v. Tutino,
    883 F.2d 1125 (2d Cir. 1989) ............................................................... 7

United States v. Vario,
    943 F.2d 236 (2d Cir. 1991) ....................................... 7, 11, 12, 14, 16

United States v. Wilson,
    493 F. Supp. 2d 397 (E.D.N.Y. 2006) ............................... 8, 10, 11, 17

United States v. Wong,
    40 F.3d 1347 (2d Cir. 1994) ................................................................. 8

PRELIMINARY STATEMENT

The Court should grant the government's motion for an anonymous[1] and partially sequestered[2] jury to protect the integrity of the trial and the jury's impartiality by (1) preventing harassment, intimidation, or other interference with the jurors and (2) mitigating any fear in the minds of the jurors of any such harassment, intimidation, or other interference.  This case involves exceptionally serious charges; the defendant has a history of interference with the judicial process (e.g., corruptly using his position as a senior law enforcement official with the Mexican government to enable the Sinaloa Cartel to traffic multi-ton quantities of illegal drugs and evade arrest and lying on official forms); the defendant has the means to interfere with the judicial process; and this case has drawn intense media scrutiny.  See, e.g., Government's Memorandum of Law in Support of Pretrial Detention, Dkt. No. 4 ("Detention Memo") at 3-7.  Each of those facts lends support for an anonymous and partially sequestered jury.  Moreover, because the Court can take reasonable precautions to minimize the risk of prejudice from an anonymous and partially sequestered jury, including instructing the jury that anonymity and partial sequestration are routine and designed to protect jurors' privacy, there is no risk that the defendant's fundamental rights will be infringed.  Finally, this case presents many of the same "strong and credible reasons to believe that the jury needs protection" that this Court found compelling in the trial of the defendant's co-conspirator, Joaquin Guzman Loera, see United States v. Guzman Loera, No. 09-CR-0466 (BMC) (E.D.N.Y. Feb. 5, 2018) (Dkt. No. 187), and that Judge Donnelly did in the recent trial of

---

[1] The names, addresses, and specific places of employment of the venire and the jury will not be revealed to the parties and the press.

[2] The jury will be transported to and from the courthouse by the U.S. Marshals Service ("USMS") each trial day and will be sequestered from the public while in the courthouse during each trial day.

Robert Sylvester Kelly ("R. Kelly"), see United States v. Kelly, No. 19-CR-286 (AMD), 2020 WL 8482693, at *1 (E.D.N.Y. Oct. 8, 2020). Accordingly, and for the reasons set forth below, the government respectfully requests that the Court grant its motion for an anonymous and partially sequestered jury.

FACTUAL BACKGROUND

I.      The Charges

Between 2001 and 2012, the defendant was a high-ranking official in the Mexican government. Specifically, from 2001 to 2005, the defendant was the head of Mexico's Federal Investigative Agency. From 2006 to 2012, the defendant served as Mexico's Secretary of Public Security and, in that capacity, controlled Mexico's Federal Police Force. While holding public office in Mexico, the defendant used his official positions to assist the Sinaloa Cartel, a notorious Mexican drug cartel, in exchange for multi-million-dollar bribes. On December 9, 2019, the defendant was arrested on drug trafficking charges related to his assistance to the Sinaloa Cartel. On July 30, 2020, a grand jury sitting in the Eastern District of New York returned a five-count Superseding Indictment in United States v. Genaro Garcia Luna, 19-CR-576 (BMC) (the "Indictment"). The Indictment alleges a long history of criminal conduct, charging the defendant with: (1) engaging in a continuing criminal enterprise; (2) conspiracy to distribute and possess with intent to distribute cocaine; (3) cocaine importation conspiracy; (4) international cocaine distribution conspiracy; and (5) making false statements.

II.     The Defendant's History of Interference with the Judicial Process

As the government has previously detailed, the defendant's history of criminal activity has included corruption and facilitating the Sinaloa Cartel's perpetuation of drug trafficking and violence. See, e.g., Detention Memo at 3. Specifically, the defendant accepted multi-million-dollar cash bribes in exchange for allowing the Sinaloa Cartel to move multi-ton

2

quantities of cocaine out of South America, through Central America and Mexico, and into the United States. For those payments, he not only ensured the safety of the Cartel's drug shipments but provided intelligence to the Sinaloa Cartel and protected Cartel members from arrest. See id. And, as the Court is aware from the trial of Guzman Loera, the Sinaloa Cartel has engaged in horrific violence to protect against challenges from rivals, to fight for territory and to silence those who would cooperate with law enforcement. The government expects that numerous witnesses with a history of participating in this violent conduct on behalf of the Sinaloa Cartel will testify that they paid the defendant for his critical assistance to the Sinaloa Cartel.

Further, the defendant has continued to take active efforts to conceal his corrupt assistance to the Sinaloa Cartel. After moving to the United States in 2012, the defendant submitted an application for naturalization in 2018, in which he affirmatively lied about his past criminal conduct on behalf of the Sinaloa Cartel. See Detention Memo at 4. And finally, as set forth in more detail in the government's December 1, 2020 sealed and ex parte submission in support of a protective order authorizing delayed notification of certain Rule 16 materials (Dkt. No. 55), the government has concerns that the defendant and his co-conspirators could undertake a campaign of harassment, intimidation and/or violence against witnesses and their families.

III.    The Defendant's Means to Harm the Jury

The defendant has made a career out of subverting justice. As noted above, he amassed a personal fortune of millions of dollars from his corrupt dealings with the Sinaloa Cartel while serving as a senior Mexican law enforcement official. The defendant's surreptitious assistance to the Sinaloa Cartel while in a high-ranking position of public trust in the Mexican government allowed the Sinaloa Cartel to undertake its criminal activities unabated. Further, after arriving in the United States in 2012, he was largely able to live off his fortune while taking various

measures to conceal his wealth.  The defendant has the financial resources to intimidate or otherwise harm the jury.

More significant, perhaps, than the resources the defendant has amassed is the defendant's deep-rooted ties to the highest levels of the Sinaloa Cartel.  The defendant was a crucial member of the Sinaloa Cartel's criminal enterprise and his corrupt activities within the Mexican government allowed the Sinaloa Cartel to traffic multi-ton quantities of narcotics and commit horrifying acts of violence.  For his efforts, the defendant received substantial payments directly from, among others, Mayo Zambada and Rey Zambada, the current and one of the former leaders of the Sinaloa Cartel, respectively.  See Detention Memo at 3-4.  In exchange for these payments, Garcia Luna provided significant protection and assistance to the Sinaloa Cartel by Mexican law enforcement.  The defendant's connections also extend to former high-level corrupt officials, including his two codefendants who currently remain in Mexico.  These other high-level corrupt officials, along with other members of the Sinaloa Cartel, are likely willing to assist the defendant given the extent and importance of his involvement.  See Detention Memo at 7.  These powerful individuals are in positions where they may intimidate or harm jurors.  For their part, jurors would rightly be concerned about efforts to intimidate or threaten their lives based on the anticipated trial testimony which will inform them of the defendant's connections to the highest level of the Sinaloa Cartel.  Accordingly, given the high-profile nature of the defendant and his extensive ties to one of the world's most dangerous criminal organizations, jurors may not be willing or able to provide impartial verdicts if their identities are publicly known.

IV.   Widespread Media Coverage

        This case has engendered substantial media coverage and public interest.  Even before the defendant's arrest in 2019, the defendant was a public figure.[3]  The defendant's notoriety increased significantly as a result of the extensive press coverage of his corruption as detailed at the Guzman Loera trial.[4]  Since his arrest, the public interest in the defendant has further intensified.  Dozens of articles about the defendant have been published in a wide array of major news outlets in this country and others in the wake of the arrest.[5]  Unlike most cases, moreover, the interest of the public and the press has continued through the Court's resolution of legal motions and other procedural matters, with the courtroom full of reporters and sketch artists at

---

    [3] See, e.g., Daniel Kurtz-Phelan, "The Long War of Genaro García Luna," N.Y. Times Magazine (July 13, 2008), available at https://www.nytimes.com/2008/07/13/magazine/13officer-t.html; John Lyons, "Mexico's Cops Seek Upgrades," Wall Street Journal (Oct. 24, 2009), available at https://www.wsj.com/articles/SB125251965257196475.

    [4] See, e.g., Alan Feuer, "El Chapo Jury Hears About Bribes to Mexico's Public Security Secretary," N.Y. Times (Nov 20, 2018), available at https://www.nytimes.com/2018/11/20/nyregion/el-chapo-jury-hears-about-bribes-to-mexicos-public-security-secretary.html; Robert Valencia, "El Chapo Trial: Drug Cartels Offered $50m Bribe to Mexico's Top Security Official to Turn Blind Eye to Trafficking, Witness Says," Newsweek (Nov. 20, 2018), available at https://www.newsweek.com/el-chapo-trial-drug-cartels-offered-50m-bribe-mexicos-top-security-official-1225082.

    [5] See, e.g., Kirk Semple, Paulina Villegas, "Arrest of Top Crime Fighter Stuns Mexico, Where Corruption Is All Too Routine," N.Y. Times (Dec. 11, 2019), available at https://www.nytimes.com/2019/12/11/world/americas/mexico-garcia-luna-indictment.html; José de Córdoba, Juan Montes, "Mexico Ex-Security Chief Arrested by U.S. on Drugs-Linked Bribery Charge," Wall Street Journal (Dec. 10, 2019), available at https://www.wsj.com/articles/mexico-ex-security-chief-arrested-by-u-s-on-drugs-linked-bribery-charge-11576002251.

hearings prior to the pandemic.[6]  This coverage is not limited to domestic media outlets, as the Mexican news media have published numerous stories on this prosecution.[7]

This widespread press coverage has continued to the present[8] and is likely to continue, and only increase, up to and during trial.  The expected media attention may put significant pressure on jurors to reach a verdict based on considerations other than the evidence presented at trial, for example, to either avoid the notoriety associated with the defendant or to seek out fame.

<u>ARGUMENT</u>

I.  <u>Legal Standards</u>

The Second Circuit has long recognized that anonymous juries are often necessary to protect the integrity of a trial and to ensure an impartial jury and that, when properly used, they do not infringe upon a defendant's constitutional rights.  <u>See</u>, <u>e.g.</u>, <u>United States v. Pica</u>, 692 F.3d 79, 81 (2d Cir. 2012); <u>United States v. Quinones</u>, 511 F.3d 289, 291 (2d Cir. 2007); <u>United States v. Gotti</u>, 459 F.3d 296, 345 (2d Cir. 2006); <u>United States v. Paccione</u>, 949 F.2d 1183, 1192 (2d

_____

[6] <u>See</u>, <u>e.g.</u>, Jim Mustian, "Indicted Former Mexico Security Chief Not Interested in Plea,"; <u>NBC New York</u> (Jan. 22, 2020), <u>available</u> <u>at</u> https://www.nbcnewyork.com/news/local/crime-and-courts/indicted-former-mexico-security-chief-not-interested-in-plea/2263218/.; Noah Goldberg, "Ex-Mexican security chief charged with millions in cartel bribes held without bail," <u>Daily News</u> (Feb. 28, 2020), <u>available</u> <u>at</u> https://www.nydailynews.com/news/crime/ny-ex-mexican-security-chief-genaro-garcia-luna-held-without-bail-20200228-tcpgpauwjvgcdhppqphjbcqtda-story.html.

[7] <u>See</u>, <u>e.g.</u>, Tony Payan, Guadalupe Correa-Cabrera, "Genaro García Luna y las lecciones de la Historia," <u>Sin Embargo</u> (June 29, 2020), <u>available</u> <u>at</u> https://www.sinembargo.mx/29-06-2020/3813825; Jonathan Nácar, "La Portada | Expediente García Luna: la investigación de la UIF," <u>EjeCentral</u> (June 25, 2020), <u>available</u> <u>at</u> https://www.ejecentral.com.mx/la-portada-expediente-garcia-luna-la-investigacion-de-la-uif/.

[8] <u>See</u>, <u>e.g.</u>, Ryan Devereaux, "High-Stakes Prosecution of U.S.-Backed Mexican Drug War Commander Set for Trial," <u>The Intercept</u> (Oct. 27, 2021), <u>available</u> <u>at</u> https://theintercept.com/2021/10/27/dea-mexico-drug-war-trial-genaro-garcia-luna/.

Cir. 1991); United States v. Vario, 943 F.2d 236, 239 (2d Cir. 1991); United States v. Tutino, 883

F.2d 1125, 1132 (2d Cir. 1989); United States v. Barnes, 604 F.2d 121, 133-43 (2d Cir. 1979).

Anonymous juries are necessary when potential jurors are vulnerable to pressure

and influence by "defendants' friends or enemies, or harassment by the public." Vario, 943 F.2d

at 240 (internal quotation marks and citation omitted). The Second Circuit has also indicated that

even where such improper influence does not occur, jurors' awareness that their identities are

publicly known may impair their impartiality, justifying anonymity as a means of ensuring an

impartial jury. See Barnes, 604 F.2d at 141 ("If the anonymous juror feels less pressure as the

result of anonymity, this is as it should be a factor contributing to his impartiality.") (internal

quotation marks and citation omitted).

To determine whether to use an anonymous jury, a district court must undertake a

two-step inquiry. First, the court must assess whether there is "strong reason to believe that the

jury needs protection." Pica, 692 F.3d at 88 (internal quotation marks omitted). Second, if the

court determines that anonymity is necessary to protect the jury, the court should take "reasonable

precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental

rights are protected." Id.

With respect to the first prong of the inquiry, courts in this circuit have considered

several factors in weighing whether the jury needs protection, including (1) "the dangerousness of

the defendant, demonstrated by the seriousness of the charged crimes, including whether the

defendant is charged with participating in a large-scale criminal enterprise, and the defendant's

criminal history;" (2) "whether the defendant or his associates have engaged in past attempts to

interfere with the judicial process"; (3) "whether the defendant has access to means to harm the

jury"; and (4) "whether the trial is likely to attract media attention and publicity." United States

v. Wilson, 493 F. Supp. 2d 397, 398 (E.D.N.Y. 2006).  In weighing those factors, the Court may

rely on the government's proffer of facts showing that the jury needs protection.  See United States

v. Persico, No. 10-CR-147 (SLT), 2012 WL 1188243, at *1 (E.D.N.Y. Apr. 6, 2012) (citing United

States v. Wong, 40 F.3d 1347, 1376-77 (2d Cir. 1994)).  Notably, all of these factors need not be

present; "anonymity is appropriate when some combination of these factors is present."  United

States v. Ashburn, 13-CR-0303 (NGG), 2014 WL 5800280, at *3 (E.D.N.Y. Nov. 7, 2014)

(internal quotation marks omitted).

       As for the second prong of the test for empaneling an anonymous jury – the

requirement of "reasonable precautions to minimize any prejudicial effects on the defendant" – the

Second Circuit has explained that a court should "conduct a voir dire designed to uncover bias as

to issues in the cases and as to the defendant himself," and reduce the possibility that the jury will

infer that the defendant is dangerous by providing the jurors a "plausible and nonprejudicial reason

for not disclosing their identities or for taking other security measures."  Paccione, 949 F.2d at

1192; see also United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995).  An anonymous and

partially sequestered jury may be informed, for example, that "the reason for their anonymity and

partial sequestration is to maintain their personal privacy and their ability to render a fair verdict

in light of [] media and public attention," and that the reason for transportation provided by the

USMS is "to protect their privacy and to ensure a timely start to each day of what promises to be

a long trial."  Wilson, 493 F. Supp. 2d at 401 (citing Aulicino, 44 F.3d at 1116); see also Kelly,

2020 WL 8482693, at *3 ("[T]he Court will explain that anonymous jurors are commonplace in

high profile cases because of media interest, and that anonymity will protect the jurors' privacy

and to enable them to discharge their responsibilities as jurors in an independent, impartial and fair

manner.").

"Within these parameters, the decision whether or not to empanel an anonymous jury is left to the district court's discretion."  Pica, 692 F. 3d at 88 (internal quotation marks and citation omitted).  Considering these same factors, this Court has empaneled anonymous and partially sequestered juries.  As noted above, this Court used this procedure in Guzman Loera, finding that the pattern of violence employed by the defendant and his co-conspirators, the existence of dangerous individuals who claimed to want to help the defendant and the significant media attention warranted an anonymous jury.  See Guzman Loera, Feb. 5, 2018 Mem. & Order at 3.    In United States v. Cacace, this Court granted the use of an anonymous and partially sequestered jury based on the seriousness of the murder-in-aid of racketeering charge against the defendant, the possibility that the defendant might be dangerous, the defendant's demonstrable prior "capacity and willingness to resort to physical violence," and substantial media interest in the case.  No. CR-08-240-14 (BMC), 2013 WL 4775531 at *3-4 (E.D.N.Y. Sep. 6, 2013).  Similarly, in approving the use of an anonymous jury in a terrorism trial, this Court cited (1) the seriousness of the crimes with which the defendant was charged; (2) the possibility that the judicial process could be compromised due to the likelihood that jurors may be afraid of retaliation from the defendant or his associates, which could impact their ability to carry out their duties; and (3) expected substantial media coverage.  United States v. Al Farekh, No. 15-CR-268 (BMC) (E.D.N.Y. June 16, 2017) (Dkt. No. 102).  Other judges in this district have also used this procedure.  For instance, in Wilson, the court determined that, because of (1) the seriousness of the charges against the defendant, who was charged with murdering two police officers; (2) the defendant's alleged membership in a criminal enterprise that engaged in robbery, murder and narcotics trafficking; (3) the defendant's history of attempts to interfere with the judicial process, including coercing witnesses not to testify or cooperate; and (4) the significant press coverage in

the case, an anonymous and partially sequestered jury was warranted.  493 F. Supp. 2d at 399-401.

More recently, in the trial of R. Kelly, the court granted the government's motion for an

anonymous and partially sequestered jury where the defendant had engaged in an enterprise to

recruit women and girls to engage in illicit sexual activity, secured witnesses' silence, suborned

perjury and attempted to influence a jury in a previous trial.  See Kelly, 2020 WL 8482693, at

*1-2.

II.     Discussion

   Applying the standards and considering the facts set forth above, the government

respectfully submits that it is necessary to keep anonymous and not reveal the names, addresses,

and other identifying information of both the venire and the final jurors, as well as to require that

the jury be partially sequestered during the trial.[9]

   A. The Seriousness of the Charges Against the Defendant Weigh in Favor of
     an Anonymous and Partially Sequestered Jury

   First, the defendant is charged with exceptionally serious crimes.  Count One of the

Indictment alleges that the defendant engaged in a continuing criminal enterprise while occupying

high-ranking law enforcement positions in the Mexican government, a charge which carries a

mandatory minimum sentence of 20 years' imprisonment.   The Sinaloa Cartel, with the

defendant's support, engaged in extraordinary violence, including the use of hitmen to carry out

hundreds of acts of violence.  The Sinaloa Cartel also distributed extremely large quantities of

cocaine and other narcotics into the United States.

---

    [9] The government also submits, however, that it is appropriate for the USMS, which
will be responsible for maintaining the safety and security of the jury during the course of the trial,
to know the names and addresses of the jurors.  The USMS will keep that information confidential
and will not reveal it to counsel for the government, the defense, or any other third party.

Although the defendant did not run the Sinaloa Cartel as his coconspirator Guzman Loera did, the defendant played an integral role in its actions.  As this Court noted in Guzman Loera, "it seems likely that the 'trial evidence' in the present case "will depict a pattern of violence . . . [that] would cause a juror to reasonably fear for his own safety."  See Guzman Loera, Feb. 5, 2018 Mem. & Order at 3 (quoting Vario, 942 F.2d at 241).  Here, the government expects that numerous witnesses will testify regarding the violent acts of the Sinaloa Cartel and that the defendant was a crucial member of the conspiracy.  Accordingly, the defendant is complicit with "the history of violence" that this Court attributed to Guzman Loera and the Sinaloa Cartel.  Id. This history of violence by the Sinaloa Cartel alone should "be sufficient to warrant an anonymous and partially sequestered jury."  Id.  Thus, the allegations in the Indictment and the proffered trial evidence establish the potential dangerousness of the defendant and his co-conspirators, as "demonstrated by the seriousness of the charged crimes, including whether the defendant is charged with participating in a large-scale criminal enterprise."  Wilson, 493 F. Supp. 2d at 398.

      B.    The Defendant's Past Interference with and Present Means to Interfere with the Judicial Process Support Anonymity and Partial Sequestration

As detailed above, the defendant has a history of interference with the judicial process and has the means to interfere with the judicial process in the future.  Specifically, he used his position of public trust as a high-ranking law enforcement official to receive multi-million-dollar bribes while he surreptitiously facilitated the Sinaloa Cartel's criminal enterprise.  Using that position, he directed law enforcement officers to protect the Sinaloa Cartel's activities, including providing safe passage for the Cartel's drug shipments and security personnel for its high-ranking members.  He also disclosed sensitive law enforcement information about investigations into the Sinaloa Cartel.  Additionally, as set forth in the government's December 1,

11

2020, ex parte submission, the defendant has manifested an intent to obstruct justice regarding his own crimes. [10]

This conduct supports an anonymous and partially sequestered jury, even though charges of obstruction of justice have not been filed against the defendant. See, e.g., United States v. Mayes, No. 12-CR-385 (ARR), 2013 WL 6175824, at *4-5 (E.D.N.Y. Nov. 25, 2013) (empaneling anonymous and partially sequestered jury based in part on government's proffer of obstructive conduct even though "the defendants are not charged in the indictment with witness tampering, jury tampering, or obstruction of justice"). Additionally, the Second Circuit has approved the use of anonymous and partially sequestered juries in other instances where the scale of a defendant's criminal organization provides its affiliates with a well-connected network, where the defendant and his associates have shown a likelihood of obstruction of justice, and where the pattern of violence by the defendant's criminal associates may cause a juror to reasonably fear his safety. See, e.g., Gotti, 459 F.3d at 345-46 (defendant's membership in powerful crime organization is factor supporting anonymous jury); Vario, 943 F.2d at 240 (while mere invocation of organized crime is not sufficient to justify anonymous jury, a defendant's connection to a

---

[10] As noted in the government's publicly filed motion for a protective order, which accompanied the December 1, 2020 ex parte submission, the ex parte submission outlined the government's substantiated concerns that the defendant and his co-conspirators could undertake a campaign of harassment, intimidation and/or violence against witnesses and/or their family members prior to trial in order to punish them for their cooperation, dissuade them from testifying against him at trial and deter the cooperation of others. See Dkt. No. 54. Although the government submits that the ex parte submission is properly before the Court for its consideration in deciding this motion, the government respectfully submits that, even in the absence of that filing, there is a more than sufficient basis for the Court to order an anonymous and partially sequestered jury given the seriousness of the charges against the defendant, that the Sinaloa Cartel routinely used violence in furtherance of its enterprise, the defendant's corrupt activities as Mexico's chief law enforcement officer, the defendant's connections to co-conspirators in Mexico and his financial resources in the United States, the extensive media attention this case will continue to receive and the fear that jurors may feel if their identity is publicly known.

broader criminal enterprise may merit anonymous jury where there is a "demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant and his associates such as would cause a juror to reasonably fear for his own safety").

As previously set forth in the Detention Memo, the defendant was deeply involved with a sprawling drug trafficking enterprise with legions of members and accepted enormous sums of money during a decade-long campaign of corruption, resulting in his own consolidation of wealth and the propagation of extreme violence in Mexico and the distribution of tons of narcotics into the United States.  See Detention Memo at 3.  In short, the defendant and the Sinaloa Cartel have a long and storied history of interference with the judicial process in Mexico and they have the means to do so in this case, even in the United States.  Guzman Loera, Feb. 5, 2018 Mem. & Order at 3 ("Given the length and breadth of defendant's alleged continuing criminal enterprise – which the Government asserts took place over 25 years and two continents – defendant's claim that the activities of his associates and allies are limited to Mexico is simply not credible."). Although this case does not involve the same public threats that materialized in Guzman Loera's case, there remains a substantial risk to the jury, especially given the defendant's history of corrupting the judicial process while in power in Mexico and the Sinaloa Cartel's reach into the United States.  See United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2008) (upholding use of anonymous jury in part because charges against lawyer and translator for material support of terrorism "were in significant part about their alleged corruption of the judicial process"). Therefore, a member of the jury could reasonably fear for his or her safety if their identity is publicly known.  In addition, even absent actual risk to the jurors, potential jurors may fear retaliation from the defendant's associates — and therefore may be unable to adequately perform

their duties as jurors — if their identities are publicly available.  See id. (upholding use of anonymous jury in part because there was "widespread pretrial publicity" and there was "the reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety); Vario, 943 F.2d at 241 ("trial evidence [depicting] a pattern of violence by the defendants and his associates such as would cause a juror to reasonably fear for his own safety" and "would be sufficient in and of itself in an appropriate case to warrant an anonymous jury regardless of whether the defendant was a reputed mobster or associated with a recognized organized crime family").  As such, this factor supports anonymity and partial sequestration.

     C.     Extensive Press Coverage Justifies an Anonymous and Partially Sequestered Jury

The intense media scrutiny that this case has received and will continue to receive is the final factor in support of an anonymous and partially sequestered jury.  See United States v. Kadir, 718 F.3d 115, 121 (2d Cir. 2013) (observing that "extensive media coverage" is a "significant" factor in considering whether to empanel an anonymous jury).  As set forth above, numerous press reports have been published around the world documenting the role of the defendant in his public office, the testimony about the defendant during the Guzman Loera trial, the defendant's subsequent indictment and arrest, as well as the ongoing legal proceedings. Members of the press have both appeared outside of the courthouse and filled the gallery at every in-person court appearance.  Moreover, the significance of the defendant's role as a leader of the Mexican War on Drugs coupled with the extent of the bribes he has accepted has highlighted issues

of corruption at the highest levels of the Mexican government, enhancing global public interest in the defendant and his trial.[11]

      The press coverage of the defendant's trial is likely to be substantial and strongly supports the anonymity and partial sequestration requested in this motion.  Notably, courts have ordered anonymous juries in cases with substantial media coverage, even where neither the defendant nor his associates had any documented history of jury tampering.  See Kadir, 718 F.3d at 121 (affirming court's decision to empanel an anonymous jury where defendants were charged with terrorism offenses and there was extensive media coverage of the case; Court held that there was sufficient basis for anonymous jury even in absence of allegation that defendant wished to tamper with jury).  The fact that jurors are aware that their identities are public may subtly or unconsciously impair their impartiality in a case with this degree of media attention.  Cf. United States v. Shkreli, No. 15-CR-637 (KAM) (E.D.N.Y.), Mem. & Order dated June 25, 2017, Dkt. No. 259 (observing that in a "high profile case in which there has been ongoing pre-trial media coverage," disclosure of juror names would increase the risk that jurors would fear the pressure of public identification and "not be candid").  Anonymity and partial sequestration will also protect jurors from inappropriate contact.  See Paccione, 949 F.2d at 1193 (stating that the anonymity and partial sequestration were appropriate because the "case had been front-page news and that the

---

[11] See, e.g., Ryan Devereaux, "High-Stakes Prosecution of U.S.' Backed Mexican Drug War Commander Set for Trial," The Intercept (Oct. 27, 2021), available at https://theintercept.com/2021/10/27/dea-mexico-drug-war-trial-genaro-garcia-luna/.   David Agren, "Architect of Mexico's war on drugs held in Texas for taking cartel bribes," The Guardian (Dec. 10, 2019) available at https://www.theguardian.com/world/2019/dec/10/mexico-genaro-garcia-luna-sinaloa-cartel-drug-cartel; Tom Winter, Adiel Kaplan, "Former top Mexican cop charged with protecting El Chapo's cartel," Euronews (Dec. 10, 2019), available at https://www.euronews.com/2019/12/10/former-top-mexican-cop-charged-protecting-el-chapo-s-cartel-n1099081.

trial could be expected to be the subject of extensive publicity, exposing the jurors to inappropriate contacts that could compromise the trial"); Al Farekh, June 16, 2017 Mem. & Order at 3 (citing Paccione, 949 F.2d at 1193).

        This Court has previously held that an anonymous and partially sequestered jury was appropriate for the trial of the defendant's coconspirator, Guzman Loera.  See Guzman Loera, Feb. 5, 2018 Mem. & Order at 4.  There, the Court expressed concern that such "publicity can 'enhance the possibility that jurors' names would become public and thus expose them to intimidation by the defendants' friends or enemies, or harassment by the public."  Id. at 3–4 (quoting Vario, 943 F.2d at 240 (internal citations omitted)); see also Kelly, 2020 WL 8482693, at *3 (finding anonymous and partially sequestered jury warranted given, among other factors, the "intensity of media attention given to this case").  Although this trial may not generate as much media attention as Guzman Loera, there will be similar potential fear in jurors' minds for their safety as this trial will also lead to extensive domestic and international media coverage and the two defendants are both integral members of the same criminal enterprise.

        Accordingly, to preserve their impartiality and ability to fairly consider the evidence without fear of public intrusion or reprisal, and to prevent inappropriate contact, the jurors' identities should be anonymous as to the public and they should be kept together during lunch recesses and transported by the USMS to and from an undisclosed location each trial day. See, e.g., Kelly, 2020 WL 8482693, at *4 ("Partial sequestration will keep members of the media and the general public from following jurors as they enter and leave the courthouse, protect the jurors from inappropriate and potentially harassing or intimidating contact, and prevent jurors from obtaining information that is not in the record.").

D.      Protection of the Defendant's Rights

The Court can take simple precautions to ensure that the relief requested by the government will not infringe upon the defendant's rights.  See Kadir, 718 F.3d at 120 (explaining that if a "district court determines that an anonymous jury is appropriate, the court must take reasonable precautions to minimize any prejudicial effects on the defendant and to ensure protection of his fundamental rights") (internal quotation marks and citation omitted).  As in Guzman Loera, "any potential prejudice to defendant will be mitigated when the Court advises the jury that their names are not being publicly disclosed out of respect and concern for their privacy, which is true, and that neither the Government nor defendant will know their identities."  Guzman Loera, Feb. 5, 2018 Mem. & Order at 4.  These precautions will ensure that "any potential prejudice to [the] defendant will be mitigated," and, given that the government does not expect the jury to hear any evidence that the defendant personally committed violence, "it is speculative . . . that the jurors will" be prejudiced against the defendant "because their privacy has been protected."  Id. As this Court noted, "it is just as arguable, perhaps even more so, that the protection of their identities will promote the jury's impartial consideration of the evidence."  Id.

A defendant has two concerns that are potentially impacted by a decision to empanel an anonymous jury: (1) the right to make informed choices during the jury selection process; and (2) the right to be tried by jurors who are not prejudiced by reason of their anonymity. See Wilson, 493 F. Supp. 2d at 401.  The first concern can be alleviated using a jury questionnaire as well as a thorough and probing voir dire.  As this Court has previously explained in empaneling an anonymous jury, a jury questionnaire is an appropriate means of minimizing potential prejudice to a defendant when an anonymous jury is empaneled in a case with intense media scrutiny. Cacace, 2013 WL 4775531 at *5.  The second concern can be alleviated by informing the jurors that partial anonymity is being ordered to protect their privacy, which the Second Circuit has

17

expressly sanctioned as an appropriate "plausible and nonprejudicial" reason for not disclosing jurors' identities. Kadir, 718 F.3d at 120-21 (upholding decision where court instructed the jury that, "given the media interest in this case, anonymity would protect the jurors' rights of privacy and assist them in discharging [their] responsibility as jurors independently, fairly and impartially") (internal quotation marks and citation omitted, alterations in original). The Court can also explain jurors' partial anonymity by telling prospective jurors, accurately, that anonymity would allow them to feel more comfortable in giving candid answers to the questions asked in voir dire.

As for the jury's partial sequestration, the government proposes that the Court instruct the jury that transportation is being provided to protect their privacy and to ensure that the trial can proceed expeditiously.[12] This explanation has been routinely given in cases where transportation to and from court is provided. See Guzman Loera, Feb. 5, 2018 Mem. & Order at 4 ("The Court will instruct the jurors that their daily transportation and escort within the courthouse are provided to protect their privacy and to ensure that the trial proceeds expeditiously."); United States v. Galestro, No. 06-CR-285 (ARR), 2008 WL 2783359, at *3 n.3 (E.D.N.Y. July 15, 2008) ("Jurors are generally told that such steps are not unusual and are taken to ensure their privacy and impartiality in light of the media and public attention the trial is expected to receive.").

---

[12] The Court can also provide similar instructions for any other security measures that the USMS might employ which might be apparent to the jury (as opposed to, for example, "behind the scenes" monitoring and security assessments that the USMS may conduct which will not be noticed by jurors and therefore do not need to be explained to them). In order for the Court to craft such instructions, the government proposes that it and the USMS brief the Court, ex parte, shortly before jury selection concerning the specific security measures that the USMS intends to employ with regard to jury security.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court grant the government's motion for an anonymous and partially sequestered jury.

Dated:      Brooklyn, New York
              December 2, 2021

                            BREON PEACE
                            UNITED STATES ATTORNEY
                            Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201

              By:      /s/_____
                            Ryan C. Harris
                            Hiral D. Mehta
                            Erin M. Reid
                            Philip Pilmar
                            Marietou E. Diouf
                            Assistant U.S. Attorneys
                            (718) 254-7000