**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      v.

GENARO GARCIA LUNA,                                         19 CR. 576 (BMC)

               Defendant.

**GENARO GARCIA LUNA'S MEMORANDUM OF LAW IN OPPOSITION TO THE
GOVERNMENT'S MOTION FOR AN ANONYMOUS AND PARTIALLY
SEQUESTERED JURY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND........................................................................................ 2

SECOND CIRCUIT PRECEDENT DOES NOT SUPPORT THE COURT GRANTING
THE DRASTIC MEASURES SOUGHT BY THE GOVERNMENT AT THE EXPENSE
OF MR. GARCIA LUNA'S CONSITUTIONAL RIGHT TO A FAIR TRIAL........................... 5

    I.      Mr. Garcia Luna Is Not Charged With Violent Crimes........................................... 7

    II.     Mr. Garcia Luna Poses NO Threat To The Judicial Process ................................... 9

    III.    Any Media Concerns Can Be Ameliorated By Less Drastic Measures
           Than Those Sought By The Government And Without Eroding Mr. Garcia
           Luna's Presumption of Innocence ........................................................................ 15

    IV.    The Court Should Consider The Impact That Sequestration Has On The
           Health Of The Jury And The Costs Of A Sequestered Jury ................................... 17

    V.     An Anonymous And Partially Sequestered Jury Would Unfairly Prejudice
           Mr. Garcia Luna's Presumption Of Innocence And Ability To Adequately
           Conduct *Voir Dire*.............................................................................................. 18

CONCLUSION............................................................................................................ 21

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brady v. Maryland*,
  373 U.S. 83 (1963)..............................................................................................4

*In re Globe Newspaper Co.,*
  920 F.2d 88 (1st Cir. 1990)..............................................................................16

*Press-Enter. Co. v. Superior Ct. of California, Riverside Cty.,,*
  464 U.S. 501 (1984)............................................................................................5

*United States v. Amuso,*
  21 F.3d 1251 (2d Cir. 1994)...............................................................................6

*United States v. Ashburn,*
  No. 13-CR-0303 (NGG), 2014 U.S. Dist. LEXIS 158657 (E.D.N.Y. Nov. 7,
  2014) .............................................................................................................13, 14

*United States v. Augustine,*
  No. 18-CR-393 (SJ) (RML), 2021 U.S. Dist. LEXIS 113126 (E.D.N.Y. June
  16, 2021) ......................................................................................................17, 18

*United States v. Aulicino,*
  44 F.3d 1102 (2d Cir. 1995)..............................................................................11

*United States v. Eppolito,*
  No. 05-CR-192 (JBW), 2006 U.S. Dist. LEXIS 3121 (E.D.N.Y. Jan. 30, 2006)..........5, 13, 18

*United States v. Gambino,*
  818 F. Supp. 536, (E.D.N.Y. 1993) ..................................................................13

*United States v. Gotti,*
  No. 02-CR-743 (RCC), 2004 WL 2274712 (S.D.N.Y. Oct. 7, 2004) ...........6, 8, 11

*United States v. Guzman Loera,*
  No. 09-CR-466 (BMC) (E.D.N.Y.) ........................................................... *passim.*

*United States v. Kadir*,
  718 F.3d 115 (2d Cir. 2013)..............................................................................19

*United States v. Locascio,*
  357 F. Supp. 2d 558 (E.D.N.Y. 2005) .............................................................8-9

*United States v. Melendez,*
  743 F. Supp. 134 (E.D.N.Y. 1990) .....................................................................6

*United States v. Mostafa*,
  7 F. Supp. 3d 334 (S.D.N.Y. 2014) ...................................................6, 16, 19

*United States v. Muyet*,
  945 F. Supp. 586 (S.D.N.Y. 1996) ...............................................................7

*United States v. Quiñones,*,
  511 F.3d 289 (2d Cir. 2007).................................................................11, 20

*United States v. Raniere*,
  No. 18-CR-204 (NGG) (E.D.N.Y.) .........................................................17

*United States v. Ray*,
  No. 20-CR-110 (LJL) (S.D.N.Y.) ............................................................16

*United States v. Shkreli*,
  264 F. Supp. 3d 417, 420 (E.D.N.Y. 2017) .......................................16, 17

*United States v. Silver*,
  No. 15-CR-093 (VEC) (S.D.N.Y.) ..........................................................16

*United States v. Spicer*,
  No. 10-CR-657 (SJ) (RML), 2013 U.S. Dist. LEXIS 133646 (E.D.N.Y. Sep.
  18, 2013) ...................................................................................................18

*United States v. Suarez*,
  No. 16-CR-403 (JFB), 2020 U.S. Dist. LEXIS 243083 (E.D.N.Y. Dec. 28,
  2020) .....................................................................................................9, 11

*United States v. Thai*,
  29 F.3d 785 (2d Cir. 1994)........................................................................19

*United States v. Vario*,
  943 F.2d 236 (2d Cir. 1991).................................................................9, 16

*United States v. Wilson*,
  493 F. Supp. 2d 397 (E.D.N.Y. 2006) ...................................................8, 11

*United States v. Wong*,
  40 F.3d 1347 (2d Cir. 1994).....................................................................10

## PRELIMINARY STATEMENT

The Court should deny the government's attempt to gain an unconstitutional advantage in its prosecution of Mr. Garcia Luna by seeking to erode his presumption of innocence and his ability to conduct a meaningful *voir dire* through its motion for an anonymous and partially sequestered jury.  Genaro García Luna is a fifty-three-year-old former Mexican government official and engineer.  Mr. Garcia Luna began working for the Mexican government in 1989 and retired in 2012 after more than two decades of service.  Prior to retiring, he served as Secretary of Public Security of Mexico.  Since 2012, Mr. Garcia Luna has spent the majority of his time in the United States.  He moved his entire family here, both his children are United States citizens, he is a lawful permanent resident, and intended to secure his United States citizenship.  Mr. Garcia Luna has been detained since his arrest on December 9, 2019.  During the twenty-eight months that Mr. Garcia Luna has been detained he has been a model inmate with no disciplinary infractions.

The government has moved the Court for an anonymous and partially sequestered jury. The government's primary justification for asking the Court to impose these drastic measures is based not on the seriousness of the charges against Mr. Garcia Luna, but on his alleged decade old connection to the Sinaloa cartel, which was previously run by Joaquin Guzman Loera, and the seriousness of the conduct attributed to Mr. Guzman Loera and the Sinaloa cartel.  But Mr. Garcia Luna is not charged with any crimes of violence or with being a member of the Sinaloa cartel.  The government makes specious and unfounded arguments as to why we should break from the federal trial norm and utilize an anonymous and partially sequestered jury.  It does so without articulating any specific proof that supports the conclusion that Mr. Garcia Luna will interfere with the judicial process during trial.  None of the allegations against Mr. Garcia Luna

1

fit the legal factors supporting the use of an anonymous jury.   He does not have a history of violence.  He does not have a history of interfering with the judicial process.  Nothing in his past or present weighs in favor of an anonymous and partially sequestered jury.

Lastly, the government highlights the publicity surrounding Mr. Garcia Luna's case as justification.  This is the only factor to which it cites that is grounded in fact, however, it misapplies the publicity of this case in its analysis.  The sole fact that Mr. Garcia Luna's upcoming trial is expected to draw media attention does not factor in favor of an anonymous jury.  The media coverage to date has been largely focused internationally and the Court has tools at its disposal to safeguard jurors' identities from the press while still allowing the defense to conduct a proper *voir dire* of the potential jurors.   In this case, there is simply no reason to break from the norm and order an anonymous and partially sequestered jury.  The potential message it sends to potential and the ultimate jurors infringes on the presumption of innocence and Mr. Garcia Luna's ability to conduct meaningful *voir dire*.

## FACTUAL BACKGROUND

Mr. Garcia Luna was arrested in Dallas, Texas on December 9, 2019.  The government has charged Mr. Garcia Luna with participating in an eighteen-year international narcotics conspiracy involving more than 50 tons of cocaine.  The indictment alleges that Mr. Garcia Luna used his position as a high-level official in the Mexican government to protect and further the drug trafficking activities of the Sinaloa Cartel in exchange for multi-million-dollar bribes. While the indictment includes six specific instances of cocaine distribution in which Mr. Garcia Luna is alleged to have conspired, there is nothing in the indictment that sheds any light as to what acts Mr. Garcia Luna allegedly committed that would give rise to any criminal liability on his part.  Critically, there is nothing in the voluminous discovery that the defense has reviewed

2

thus far that speaks to the allegations in the indictment.  To date, the only specific allegation against Mr. Garcia Luna of which the defense is aware comes from a cooperating witness who testified against Mr. Guzman Loera in November of 2018.  That individual incredulously testified that Mr. Garcia Luna, a famous Mexican public servant, more than a decade ago met in a public restaurant with a leader of the Sinaloa Cartel and received $3 to $5 million in a bag. The government has alluded to cooperator corroboration but has not detailed any ability to even prove the existence of these alleged funds, let alone trace them to Mr. Garcia Luna.

The cooperating witness testified to these incredible facts in November 2018, a year before Mr. Garcia Luna was arrested during which time he lived openly in the United States and no harm has come to anyone connected to the specious allegations.  Following his arrest, Mr. Garcia Luna has had all of his bank accounts frozen in both the United States and Mexico, and, thus, qualified for representation pursuant to the Criminal Justice Act.

As the Court is aware, there exists a relatively extensive procedural history regarding Mr. Garcia Luna's applications for pretrial release.  Following a bail hearing conducted over two days on February 27 and 28, 2020, Magistrate Judge Robert M. Levy considered a proposed bail package.  *See* Dkt. Nos. 27, 28.  After hearing lengthy argument and conferring with Pretrial Services, Magistrate Judge Levy concluded that there *could* be conditions that would reasonably ensure Mr. Garcia Luna's return to court, but he felt that the package needed to be more robust. *See* Dkt. No 28.

Accordingly, by application submitted on March 25, 2020, Mr. Garcia Luna proposed an enhanced bail package.  The Court referred the application to the duty magistrate and on March 31, 2020, the Honorable Magistrate Judge Ramon E. Reyes held a bail hearing.  After hearing argument from the parties, Magistrate Judge Reyes disagreed with Magistrate Judge Levy and

3

found that he believed that there were no conditions or combination of conditions that could

ensure Mr. Garcia Luna's presence in Court.  Therefore, he denied the bail application.  *See* Dkt.

No. 36.

Mr. Garcia Luna appealed Judge Reyes' ruling to this Court.  *See* Dkt. No. 37.  After

reviewing the parties' motions, this Court agreed with Judge Reyes' ruling, citing Mr. Garcia

Luna's risk of flight, access to financial resources, the weight of the evidence, and lack of ties to

this community.  *See* Dkt. No. 39.  This Court did not point to any fear of interfering with the

judicial process or risk to the community when denying Mr. Garcia Luna bail.  Since his arrest,

Mr. Garcia Luna has been serving his time at the Metropolitan Detention Center without

incident.  Only his family, loved ones, and counsel have visited him.  Mr. Garcia Luna and

counsel have attempted to compile a more robust bail package for this Court's review, but have

been unable to do so.

Pursuant to Rule 16, the government has produced over 1,200,000 pages of discovery and

audio recordings.  With most of these documents bearing little to no relation to Mr. Garcia Luna,

by letter dated April 15, 2022, defense counsel requested a bill of particulars from the

prosecution to help avoid a trial surprise.  In the same letter, defense counsel also requested the

government turn over additional materials in the government's possession that the defense

believes the government is required to turn over pursuant to *Brady v. Maryland*, 373 U.S. 83

(1963).  To date, the government has not responded to the defense's letter.

**SECOND CIRCUIT PRECEDENT DOES NOT SUPPORT THE COURT GRANTING THE DRASTIC MEASURES SOUGHT BY THE GOVERNMENT AT THE EXPENSE OF MR. GARCIA LUNA'S CONSITUTIONAL RIGHT TO A FAIR TRIAL**

The government's motion for an anonymous and partially sequestered jury focuses largely on the actions of the Sinaloa Cartel, and not on the actions of Mr. Garcia Luna. Mr. Garcia Luna is not accused of being a member of the cartel or organizing or performing any of their illegal activity. In its motion, the government relies heavily on the violent actions of the cartel as reasons to fear for the jury's safety and reasons the jury may fear for their own safety. The government's assertion that the cartel's actions, as opposed to Mr. Garcia Luna's, predicate an anonymous and partially sequestered jury does not comport with caselaw in this Circuit.

The typical practice in criminal cases is for jurors' identities to be public and for jurors to not be sequestered. *See, e.g., Press-Enter. Co. v. Superior Ct. of California, Riverside Cty.*, 464 U.S. 501, 505 (1984) ("since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown.") This is because "the use of an anonymous jury may undermine the presumption of innocence and interfere with the defendant's ability to conduct an effective *voir dire*[.]" *United States v. Eppolito*, No. 05-CR-192 (JBW), 2006 U.S. Dist. LEXIS 3121, at *1 (E.D.N.Y. Jan. 30, 2006) (denying the government's motion for an anonymous jury and noting that the use of such a jury is "contrary to general history and policy"). Jurors can view the need for anonymity as a precaution against an unpredictable and violent defendant; attributes that are equated with guilt, thereby prejudicing the jury before the first witness is called. *See* Christopher Keleher, *The Repercussions of Anonymous Juries*, 44 U.S.F. L. Rᴇv. 531, 553 (2010). Just as an anonymous jury encroaches on a defendant's presumption of innocence so does a partially sequestered jury as it "serve[s] to remind the jury each day as they arrive and as they leave that this trial requires

5

special handling.  Whether the Court provides the jury with a 'neutral' explanation may not eliminate that ongoing and repeated reminder." *United States v. Mostafa*, 7 F. Supp. 3d 334, 338 (S.D.N.Y. 2014).  As noted above, anonymous juries also prejudice defendants by hampering their ability to conduct meaningful *voir dire*, this is because it prevents a defendant from gaining a full picture of a prospective juror which may in turn prevent the defendant from uncovering any potential biases harbored by a prospective juror.  *See* Christopher Keleher, *The Repercussions of Anonymous Juries*, 44 U.S.F. L. REV. 531, 555-56 (2010).

The empaneling of an anonymous and partially sequestered jury is a rare step that the courts may take, only when appropriate.  *See United States v. Melendez*, 743 F. Supp. 134, 136 (E.D.N.Y. 1990) (noting that the Second Circuit has upheld the use of the procedure under "appropriate circumstances").  These are considered drastic remedies however, and courts must balance the defendant's Sixth Amendment rights against the jury's fear of retaliation or outside influence.  *See id.* at 135.  The court, when deciding to empanel an anonymous or partially sequestered jury, must have a "[s]trong reason to believe that the jury needs protection." *United States v Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994).

When weighing if a jury should be anonymous and partially sequestered, courts often rely on the factors set forth in *United States v. Gotti*, No. 02-CR-743 (RCC), 2004 WL 2274712 (S.D.N.Y. Oct. 7, 2004).  Specifically, they weigh: (1) the seriousness of the charges; (2) the threat of corruption of the judicial Process; and (3) the expectation of publicity.  *Id.* at *2.

In this case, none of the allegations against Mr. Garcia Luna would fit those requiring an anonymous or partially sequestered jury.  He does not have a history of violence.  He does not have a history of interfering with the judicial process.  Nothing in his past or present weighs in favor of an anonymous and partially sequestered jury.  The fact that Mr. Garcia Luna's

upcoming trial is expected to draw media attention, alone, does not necessarily call for an anonymous jury. And even if it did, any negative factors stemming from media coverage can properly be mitigated by this Court through recognized alternative measures while still safeguarding Mr. Garcia Luna's presumption of innocence and his ability to conduct meaningful *voir dire*.

Furthermore, the negative health implications of partial sequestration of the jury in the time of COVID-19 and the prohibitively steep financial cost are compelling additional factors weighing against granting the government's motion.

## I.   Mr. Garcia Luna Is Not Charged With Violent Crimes

Mr. Garcia Luna is not being charged with, or even alleged to have participated in, any acts of violence. He is not alleged to have directed anyone who in turn participated in any acts of violence or intimidation. He is charged with accepting money to somehow assist the actions of Mexican cartel members. While the charges, if convicted, could result in a lengthy prison sentence, none of his alleged crimes would suggest that a jury standing in judgment would feel the need to be protected from him. The government instead advocates for an anonymous and partially sequestered jury in an attempt to have the Court sanction its view that Mr. Garcia Luna is somehow a danger to them. The government attempts to improperly connect Mr. Garcia Luna to the crimes of El Chapo through the "'history of violence' that this Court attributed to Guzman Loera and the Sinaloa Cartel." (Gov. Mot. at 11) (quoting *United States v. Guzman Loera*, et al., No. 09-CR-466 (BMC), Feb. 5, 2018 Mem. & Order at 3.

In deciding if the seriousness of a defendant's charges warrant an anonymous jury, courts primarily cite charges of violence. *See, e.g., United States v. Muyet*, 945 F. Supp. 586, 593 (S.D.N.Y. 1996) (finding that murders, drive-by shootings, and the other acts of

violence charged in the indictment strongly supported the empaneling of an anonymous jury because they would engender reasonable fear in a juror); *United States v. Wilson*, 493 F. Supp. 2d 397, 399 (E.D.N.Y. 2006) (noting in respect to a defendant charged with intentionally murdering two police officers in an attempt to obstruct justice that such "charges are of the utmost seriousness, indeed as serious as any charge can be, and demonstrate both the extreme dangerousness of the defendant and a willingness to obstruct justice" and that "[b]ased on these charges alone" the court "would seriously consider empaneling an anonymous jury").  The government must prove that the charges against Mr. Garcia Luna rise to the level of serious charges pertaining to the jury's safety.  Pointing to the actions done by El Chapo and his associates is insufficient.

The government's motion relies heavily on actions this Court took in the El Chapo trial. However, the government's attempts to equate the security concerns present in *Guzman Loera* with any alleged concerns here are not supported by the record.  One need only compare the charges against Mr. Garcia Luna, which fail to include a single count of violence, with those against Mr. Guzman Loera.  Mr. Guzman Loera was alleged to have directed and ordered "hundreds of acts of violence including murders, assaults, kidnappings, assassinations and acts of torture."  *See Guzman Loera* (Dkt. No. 14 at 3-4).

The actual charges in Mr. Garcia Luna's indictment only include nonviolent charges. These charges are categorically different than charges that would have any weight under the first prong of the analysis in *Gotti*.  Mr. Garcia Luna is charged with accepting bribes, not offering bribes.  The two charges are not, and cannot be seen as synonymous.  *See United States v. Locascio*, 357 F. Supp. 2d 558, 561 (E.D.N.Y. 2005) ("The concern in this case is not that anonymity is necessary to assuage jurors' fears for their personal safety.  Rather, the concern is

8

that if jurors' identities are revealed they can easily be contacted and offered bribes."). Mr. Garcia Luna has not been accused of bribing anybody, and does not have the means to bribe any members of the jury.

Finally, the government attempts to, through the alleged acceptance of bribes, credit Mr. Garcia Luna with all of the crimes of the Sinaloa Cartel. But they have alleged no personal involvement of Mr. Garcia Luna in any acts that would be relevant to a determination that any additional protective measures need to be in place for the trial jury. At no point do they accuse Mr. Garcia Luna of being an actual member of the cartel with any soldiers willing to assist him. Accepting the government's indictment allegations, they allege his association with a criminal organization. Mere association is not sufficient to warrant an anonymous jury. *United States v. Suarez*, No. 16-CR-403 (JFB), 2020 U.S. Dist. LEXIS 243083, at \*4-5 (E.D.N.Y. Dec. 28, 2020) (citing *United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991)) ("As to the first factor [when determining if a strong reason to believe that the jury needs protection], the mere invocation of words such as 'organized crime' or 'mob' is insufficient to warrant jury anonymity."). The charges against Mr. Garcia Luna are certainly serious, however, they bear no rational connection to any potential safety threats of the trial jury. Accordingly, the government cannot establish that the charges that Mr. Garcia Luna is being charged with, when viewed under the lens of the jury's safety, rise to the level of "serious" justifying the drastic measures they seek. Nor can the government credibly establish that Mr. Garcia Luna poses a threat to the judicial process.

## II.    Mr. Garcia Luna Poses No Threat To The Judicial Process

The government's argument that Mr. Garcia Luna has a history of interfering with the legal process, and that he can today, is completely without merit. Their interpretation of interfering with the legal process is so broad that it swallows the rule. At no point has Mr.

Garcia Luna been accused of interfering with the judicial process in the manner that would warrant an anonymous jury.  Furthermore, Mr. Garcia Luna is financially indigent and does not have means to interfere with the judicial process.

The allegations made by the government of past interference are references to alleged misuse of his government position by accepting bribes and making false statements on his citizenship application.  These actions are categorically different from interference with the judicial process.  While this Court may rely on the government's proffer of facts that show that the jury requires protection, it must be noted that the Mexican Government refutes these claims. *See United States v. Wong*, 40 F.3d 1347, 1376-77 (2d Cir. 1994).  The Mexican Government presumably argues that the same transactions that the government points to as evidence of receiving bribes are in fact the proceeds of government contracts.  This of course is impossible to verify without a Bill of Particulars from the government, so the defense must make assumptions based on the more than 1,200,000 documents that we have received in discovery to date.

Even if the Court relies on the government's proffer of facts, we are dealing with entirely different circumstances than the Court was faced with when deciding on the motion for an anonymous and partially sequestered jury in *Guzman Loera.*  As  recognized in connection with the delayed disclosure motions in *Guzman Loera*, because of his history and "based on the substantial risk that [Mr. Guzman Loera's] communications with people outside the prison could result in death or bodily harm to people cooperating with the Government", the Court largely upheld the special administrative measures under which the government sought to have Mr. Guzman Loera incarcerated, including restrictions on his communications and solitary confinement.  *Id.* at Dkt No. 176 at 2.  Mr. Garcia Luna is not being detained under any compatible restrictions.  For more than two years Mr. Garcia Luna has been incarcerated at the

Metropolitan Detention Center.  During this time, solely for his own protection or COVID-19 related reasons, he has been incarcerated in a special unit and subjected to many separation orders.  There has been no need to have special restrictions in place to provide safety to the public.

In addition to the nonviolent accusation of accepting bribes as a history of interference with the judicial process, the government points to alleged false statements made on Mr. Garcia Luna's application for citizenship.  These allegations have no relevance to the jury's safety and should not be considered in the context of the second prong of the factors set in *Gotti*.  To start, the government's reasoning is circular.  Mr. Garcia Luna cannot have lied on his immigration forms without it first being proven that the rest of the charges are true.  While it is true that this Court "can rely on the Government's proffer of facts showing that the jury needs protection" *Guzman Loera,* Dkt. No. 187 at 2), Mr. Garcia Luna making a false statement on an immigration form does not rise to interfering with the judicial process for reasons of empaneling an anonymous jury.  As noted earlier, when looking at conduct that interferes with the judicial process, courts point to acts such as intimidating or killing witnesses, victims, cooperators, or government officials.  *See Suarez* at *6 (anonymous jury found appropriate "based in large part on evidence of defendants' acts of intimidation toward their crime victims, their attempts to kill certain of those victims, and the murder of [a victim] because of his refusal to retreat from his complaints to the police"); *United States v. Quiñones*, 511 F.3d 289, 295 (2d Cir. 2007) (defendants charged with murdering a confidential informant for cooperating with the police); *Wilson*, 493 F. Supp. 2d at 398 (defendant charged with murdering two police officers); *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) (co-conspirators were alleged to have sought to bribe a witness in a prior prosecution).  Nowhere in these examples are the act of

taking bribes, let alone making false statements on an immigration form.  Following the government's reasoning, an anonymous jury might be warranted in a trial for filing false tax forms.  The charge against Mr. Garcia Luna of making false statements is of no moment when considering the safety of the jury, and should be disregarded completely.  The entirety of the charges, and any facts proffered about Mr. Garcia Luna's past actions, are not indicative of a history of interfering with the judicial process.

In terms of an ability to interfere with the judicial process currently, the government's motion also fails in its analysis.  Irrespective of the Court's findings regarding any past interference with the judicial process, Mr. Garcia Luna does not have the present-day ability to interfere.  Mr. Garcia Luna has been housed at the Metropolitan Detention Center since his arrest in 2019 without incident.  As the Court might be aware, defense counsel has attempted to compile a more sufficient bail package for the Court's consideration.  While Mr. Garcia Luna has the strong support of his family and friends in this matter, he does not have the requisite resources available to him to put a sufficiently robust bail package forward for this Court's review.  Simply, even if he wished to interfere with the process, he would not have the ability to. The government cites Mr. Garcia Luna's wealth as going towards his means to harm the jury. Gov. Mot. at 3-4.  The government does not mention that Mr. Garcia Luna's bank accounts have been frozen in both the United States and Mexico, and this Court has thus appointed him CJA counsel.

The Government's argument that Mr. Garcia Luna has "deep-rooted ties to the highest levels of the Sinaloa Cartel", Gov. Mot. at 4, is not supported by any facts proffered.  Any allegations of connections that Mr. Garcia Luna may have had in the past are immaterial when considering his current ability.  The government has not showed, or even alleged, that the

connections exist in present day.  At least one court in this district has rejected the empaneling of

an anonymous jury on charges of tampering, retaliation, and obstruction of justice, based

partially on the defendants' remote connection to the people that they were protecting from the

justice system.  *See Eppolito* at \*5 ("While the defendants have been charged with numerous acts

of tampering, retaliation, and obstruction of justice, the most recent of these acts is alleged to

have occurred in 1991.  The defendants have since retired from their positions as New York City

police detectives and moved across the country to Las Vegas, where they have now lived for

more than a decade").  Mr. Garcia Luna has not been charged with tampering, retaliation, or

obstruction of justice.  He is not in contact with a single person with which the government is

alleging that he has "deep rooted connections", and the government does not claim that any such

connection has continued since Mr. Garcia Luna left his post as a public official.  Ordering an

anonymous jury would prejudice Mr. Garcia Luna unfairly by implying he is a current member

of the cartel or that he was a member prior to his arrest, when no such allegation has been made.

When deciding the issue of an anonymous and sequestered jury in *Guzman Loera* the

Court also had to factor, and did in fact rely on, individuals that described themselves as allies of

Guzman Loera and would act on his behalf.  *Guzman Loera* Dkt. No. 187.  There has been no

alleged threat from anyone, either in the United States or Mexico, to commit any acts of violence

on behalf of Mr. Garcia Luna.  Mr. Garcia Luna has never been a member of the Sinaloa Cartel.

Even if he were, Judge Garaufis stated in *United States v. Ashburn* No. 13-CR-0303 (NGG),

2014 U.S. Dist. LEXIS 158657 (E.D.N.Y. Nov. 7, 2014) that "'[i]t is not enough that other

members of the organized crime family with which they are allegedly aligned may have'

participated in or directed efforts to obstruct justice."  *Id*. at \*22 (quoting *United States v.

Gambino*, 818 F. Supp. 536, 540 (E.D.N.Y. 1993)).

The government's only allegation of an intent to interfere is through an *ex parte* letter that the defense is not entitled to review.  This is further proof that the defense needs to be provided a Bill of Particulars.  From what the defense has reviewed, out of the more than 1,200,000 documents provided, there are no recordings that represent any legitimate threat to anybody else on behalf of Mr. Garcia Luna.  If the government is referring to a barely audible jail recording by Mr. Garcia Luna's cellmate where he is being pestered with questions from a known jailhouse informant desperate for the government to support his bail application, such allegations should not be relied upon by the Court.  *See Ashburn* at *31-32 ("The court therefore takes note of these allegations for the record, since they are summarized in the Government's Reply Letter [] but declines to rely on the substance of the sealed, *ex parte* submission as support for empaneling an anonymous jury.")  *See United States v. Herron*, 2 F. Supp. 3d 391 at 398 (E.D.N.Y. 2014).  In fact, the government has not relied on those recordings as no additional charges have been brought against Mr. Garcia Luna.

Without the ability to interfere with the judicial process and no history of interference, the jury has no reason to fear for its safety.  In fact, empaneling an anonymous jury is the only reason the jury would believe that they required protection from Mr. Garcia Luna.  If the parties pose no threat to the jury, and the only threat comes from press coverage, an anonymous jury is not appropriate.

III.  **Any Media Concerns Can Be Ameliorated By Less Drastic Measures Than Those Sought By The Government And Without Eroding Mr. Garcia Luna's Presumption of Innocence**

It is likely that Mr. Garcia Luna's trial will be the subject of news stories, as it has been so far, and there will likely be press representation at the trial.  As the Court has observed, however, in person reporting has been much lighter than it was before the pandemic began.  It is expected that there will be more reporters physically present once Mr. Garcia Luna's trial begins, but scale of coverage will be magnitudes lower than the trial of Mr. Guzman Loera.  In the Guzman Loera trial, the government was prosecuting the world's largest drug lord, with international notoriety.  The Guzman Loera trial also had high levels of visible security in place in part due to the defendant's infamous escape from a Mexican jail just a few years prior and his extremely violent history.  With helicopters hovering around the courthouse, a press spectacle was unavoidable.  This was coupled with Mr. Guzman Loera's wife, a notorious figure in her own right, showing up to court every day.  And on top of all that, Mr. Guzman Loera's trial took place before the pandemic, when it was much easier for foreign press to enter the United States.

This scale of coverage will not be present at Mr. Garcia Luna's trial.  He is a retired Mexican public official virtually unknown in the United States outside of the group of American diplomats and government officials that worked with him to combat the cartels.  The resulting coverage will pale in comparison.  Furthermore, with the COVID-19 protocols in the Eastern District of New York put in place for trials, most if not all of the press will be relegated to an overflow room, out of sight of the jury.  Unless the jury is told that this case is extraordinary, to them will appear as any other trial would.

Any such concern that the Court may have regarding the jury's protection from being subjected to unwanted attention and any such attention impairing their ability to reach a fair

verdict, must be balanced against Mr. Garcia Luna's presumption of innocence.  *See United States v. Shkreli*, 264 F. Supp. 3d 417, 420 (E.D.N.Y. 2017) ("As the First Circuit has concluded, although 'privacy concerns following a publicized trial are real — and may understandably include some nervousness about personal security — those unfocused fears must be balanced against the loss of public confidence in our justice system that could arise if criminal juries very often consisted of anonymous persons,' which would 'not comport with democratic values of accountability and openness.'") (quoting *In re Globe Newspaper Co.*, 920 F.2d 88, at 97-98 (1st Cir. 1990).  Further, these concerns can be assuaged by their identity being disclosed only to the parties, and not to the press and public at large.

This case is not expected to receive the same attention as the Guzman Loera trial (CITE See Government Brief at 16).  Far fewer Americans know who Mr. Garcia Luna is than knew who Guzman Loera was prior to his trial.  Even with the coverage that this trial will receive, an anonymous jury is not justified.  *See Mostafa*, 7 F. Supp. 3d at 337 ("The fact that a case may receive press attention—even a great deal of press attention—is itself insufficient to justify the impact on a defendant's trial that empaneling an anonymous jury may have") (citing *Vario*, 943 F.2d at 240).  Furthermore, as has been evidenced by the in-person court appearances and media coverage, the majority of the media coverage has been published by Mexican media outlets, publications that the jury may not be even aware of.  In this Circuit, in other trials with large amounts of media coverage, courts have not ordered anonymous and partially sequestered juries. *See, e.g., United States v. Silver*, No. 15-CR-093 (VEC) (S.D.N.Y.); *United States v. Ray*, No. 20-CR-110 (LJL) (S.D.N.Y.).  We believe this to be the appropriate approach in the instant case as well, where risk of harm to the jury by Mr. Garcia Luna does not exist.

Because there is no threat of contact with jurors from the parties in the case, there is no reason to withhold jurors' identities from the parties.  If the Court determines that some form on anonymity is required to protect the jury's identity from potential press coverage, there are alternative measures that can be enforced that are less prejudicial to Mr. Garcia Luna.  The court in *Shkreli*, issued an order to not release jurors' names to the public until after trial, and to order no sketches or photographs of jurors during the trial.  *Id.* at Dkt. Nos. 259, 325.  This district agreed with this practice in *United States v. Raniere*, No. 18-CR-204 (NGG).  If the jury is told that their names are being withheld from Mr. Garcia Luna, they will automatically assume that revealing their names would put themselves at harm and, thus, he is a person they should fear.  Such a presumption of guilt is highly prejudicial to Mr. Garcia Luna, and completely unnecessary to ensure the jury's safety.

## IV.    The Court Should Consider The Impact That Sequestration Has On The Health Of The Jury And The Costs Of A Sequestered Jury

As with the decision whether to empanel an anonymous jury, when deciding if partial sequestration is appropriate, the court must consider the jury's safety.  Additionally, the fiscal implications of a sequestered jury are not insignificant, and courts take their finite resources into account when coming to their decision.  We are just now starting to see COVID-19 restrictions loosen, even as case numbers are on the rise,[1] and the most recent GDP numbers report a decrease in the First Quarter of 2022 of 1.4 percent.[2]

At least one court in this District has cited health concerns from COVID as factors weighing against sequestering a jury.  *United States v. Augustine*, No. 18 CR 393 (SJ) (RML), 2021 U.S. Dist. LEXIS 113126, at *3 (E.D.N.Y. June 16, 2021) ("In the current climate, partial

---

[1] CDC, COVID DATA TRACKER (APRIL 29, 2022), https://covid.cdc.gov/covid-data-tracker/#trends_dailycases

[2] BUREAU OF ECON. ANALYSIS, GROSS DOMESTIC PRODUCT FIRST QUARTER 2022 ADVANCE ESTIMATE (2022), https://www.bea.gov/index.php/news/2022/gross-domestic-product-first-quarter-2022-advance-estimate

sequestration presents an unacceptable risk to the health and safety of the jurors and to the court staff charged with partially sequestering the jury").  While courtrooms are still socially distanced, a sequestered jury would require close contact with at the minimum one non-household member of the USMS every day.  This would come as many New York residents are canceling their plans as restrictions loosen.[3]

The possibility of another recession also plays a factor in deciding to partially sequester a jury, as United States and world economic indicators show cause for concern.[4]  Many courts have foregone this practice for fiscal reasons.  *See, e.g., United States v. Spicer*, No. 10-CR-657 (SJ) (RML), 2013 U.S. Dist. LEXIS 133646 (E.D.N.Y. Sep. 18, 2013); *Augustine*; *Eppolito*. Judicial resources are sparse, and will likely become more so if the economy continues on its current trajectory.  The expense of empaneling a sequestered jury must be considered.  Mr. Garcia Luna's case, we estimate, will last around three months.  This could go longer and, thus, raise the court's cost to keep a jury sequestered.  And that does not include deliberations.  While health and monetary concerns cannot be ignored in deciding the current motion, the strongest argument weighing against granting the government's motion is deleterious effect doing so will have on Mr. Garcia Luna's presumption of innocence and ability to adequately conduct *voir dire*.

### V.    An Anonymous and Partially Sequestered Jury Would Unfairly Prejudice Mr. Garcia Luna's Presumption Of Innocence And Ability To Adequately Conduct *Voir Dire*

By its nature, empaneling an anonymous and partially sequestered jury will prejudice Mr. Garcia Luna's presumption of innocence.  It is the Court's responsibility, if it does determine that an anonymous and partially sequestered jury is appropriate, to minimize the prejudicial

---

[3] Roni Caryn & Emily Erdos, *Mask Ruling Underscores Deep Split in* Attitudes, N.Y. TIMES (Apr. 23, 2022) https://www.nytimes.com/2022/04/23/health/mask-mandate-transportation-response.html
[4] IMF, WORLD ECONOMIC OUTLOOK (Apr. 2022),
https://www.imf.org/en/Publications/WEO/Issues/2022/04/19/world-economic-outlook-april-2022

effect on Mr. Garcia Luna.  *See United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013)

(quoting *United States v. Thai*, 29 F.3d 785 at 801 (2d Cir. 1994)).  But minimizing a prejudicial

effect is not the same thing as eliminating it.  Studies show that a large discrepancy exists

between the verdicts of anonymous juries compared to their non anonymous counterparts.

Writing on the results of one such study in the University of San Francisco Law Review, author

Christopher Keleher wrote:

> Anonymity certainly had an impact on how jurors viewed the defendants.
> Anonymous jurors were more prone to convict. They also had less compunction
> about imposing the most severe punishment. The disparity between anonymous
> and non-anonymous jurors cannot be dismissed as negligible. A fifteen percent
> increase in convictions is significant. Not being identifiable makes jurors less
> concerned about the rights of defendants.

*The Repercussions of Anonymous Juries*, 44 U.S.F. L. REV. 531, 561 (2010).  A 15 percent

discrepancy is certainly not insignificant and is indicative of a defendant's inability to be judged

fairly with an anonymous jury.

Even when instructing a jury that these measures are not uncommon, especially when

coupled with semi sequestration, both courts and independent studies have pointed out the

negative impact on the defendant's presumption of innocence.  *See Mostafa*, 7 F. Supp. 3d at 338

(in a case where the government moved for an anonymous jury, daytime sequestration, and

transportation to and from an undisclosed location during trial, "the Court is almost more

concerned with the 'other protective measures' that the Government requests than with the

anonymous jury; those measures serve to remind the jury each day as they arrive and as they

leave that this trial requires special handling.  Whether the Court provides the jury with a

'neutral' explanation may not eliminate that ongoing and repeated reminder").  Citing a study on

the practical effect of anonymous juries, in an article in the Cornell Law Review, Author

Leonardo Mangat stated that:

The potentially concerning effects of anonymity, however, ought to make courts strongly consider other alternatives before empaneling an anonymous jury. One notable mock jury experiment studying the impacts of anonymity on juror decision-making reported that anonymous jurors returned approximately 15% more guilty verdicts than their non-anonymous counterparts. In fact, that same study gave different sets of anonymous jurors different curative instructions: one instruction stated that anonymity was meant to protect jurors from outside harassment and the other stated that anonymity was meant to protect the jurors' safety. That study found that neither instruction significantly affected the verdicts anonymous juries rendered--in other words, the curative instruction did not have the curative effect that courts assumed it would have. This is, of course, worrying; it calls into question the efficacy that curative instructions have when it comes to ameliorating the effects of anonymity.

*A Jury of Your (Redacted): The Rise and Implications of Anonymous Juries*, 103 Cornell L. Rev. 1621, 1642–43 (2018). Empaneling an anonymous jury, despite the mitigation efforts that must be put in place, will undoubtedly prejudice Mr. Garcia Luna, and the defense will have to fight against the jury's presumption that Mr. Garcia Luna is a dangerous criminal from the beginning of trial.

Finally, beyond the prejudicial effect that an anonymous jury would have on Mr. Garcia Luna, such measures would additionally inhibit the ability to adequately conduct *voir dire.* When deciding if an anonymous jury is warranted, the court must weigh "the defendant's interest in conducting meaningful *voir dire* and in maintaining the presumption of innocence, against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." *Quiñones*, 511 F.3d at 295. Mr. Garcia Luna's inability to know the identity of the prospective jury pool will severely limit his ability to object to those who may be biased against him. Without the potential jurors' names being revealed to Mr. Garcia Luna, he and his defense team will be unable to root out any bias. Avoiding such bias is crucial to guaranteeing Mr. Garcia Luna a fair trial.

## CONCLUSION

To guarantee that Mr. Garcia Luna receives a fair trial this Court must deny the government's motion for an anonymous and partially sequestered jury.

Dated: April 29, 2022

                                           _____/s/_____

César de Castro
Valerie Gotlib
Shannon McManus
**The Law Firm of César de Castro P.C.**
111 Fulton Street – 602
New York, NY 10038
(631)-460-3951
cdecastro@cdecastrolaw.com
vgotlib@cdecastrolaw.com
smcmanus@cdecastrolaw.com

*Attorneys for Defendant,*
*Genaro Garcia Luna*

21