RCH/SK/EMR/PP/MED
F. #2019R00927

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                    Docket No. 19-CR-576 (BMC)

GENARO GARCIA LUNA,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X


## GOVERNMENT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY

                                                                              BREON PEACE
                                                                              United States Attorney
                                                                              Eastern District of New York
                                                                              271 Cadman Plaza East
                                                                              Brooklyn, New York 11201


Ryan C. Harris
Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Assistant U.S. Attorneys
     (Of Counsel)

# TABLE OF AUTHORITIES

Rosales-Lopez v. United States, 451 U.S. 182 (1981) ........................................................... 9

United States Kaziu, 559 F. App'x 32 (2d Cir. 2014) ............................................................ 8

United States v. Ashburn, No. 13-CR-0303 (NGG), 2014 WL 5800280 (E.D.N.Y. Nov. 7, 2014) ................................................................................................................................... 5

United States v. Augustine, No. 18-CR-393 (E.D.N.Y.) ........................................................ 7

United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995) ......................................................... 7

United States v. Barnes, 604 F.2d 121 (2d Cir. 1979) ........................................................... 9

United States v. Kasimov, No. 15-CR-95 (WFK) (E.D.N.Y.) ................................................ 2

United States v. Kelly, No. 19-CR-286 (AMD), 2020 WL 8482693 (E.D.N.Y. Oct. 8, 2020) ...... 8

United States v. Loera, No. 09-CR-466 (BMC) (E.D.N.Y.) .................................................. 8

United States v. Pugh, No. 15-CR-116 (NGG), 2015 WL 8481877 (E.D.N.Y. Dec. 9, 2015) ...... 2

United States v. Quattrone, 402 F.3d 304 (2d Cir. 2005) ...................................................... 6

United States v. Singh, No. 21-CR-397 (CBA) (E.D.N.Y.) .................................................... 5

United States v. Stewart, 590 F.3d 93 (2d Cir. 2008) ............................................................ 4

United States v. Thomas, 757 F.2d 1359 (2d Cir. 1985) ........................................................ 4

United States v. Tutino, 883 F.2d 1125 (2d Cir. 1989) .......................................................... 8

United States v. Vario, 943 F.2d 236 (2d Cir. 1991) ............................................................. 5

United States v. Wilson, 493 F. Supp. 2d 397 (E.D.N.Y. 2006) ............................................ 3

United States v. Wilson, 925 F. Supp. 2d 410 (E.D.N.Y. 2013) ............................................ 6

## PRELIMINARY STATEMENT

The government respectfully submits this reply brief in further support of its motion for an anonymous and partially sequestered jury. See Dkt. No. 80 ("Gov't's Mot."). In his opposition brief, the defendant does not contest that the charges against him are serious, that the Sinaloa Cartel inspires fear, that the Indictment alleges that defendant used his position as a government official to aid and abet the Sinaloa Cartel, or that this case continues to generate significant press coverage. Nor does he address the government's proposal for mitigating any prejudice that might follow from an anonymous and partially sequestered jury. Instead, the defendant contends that (1) because he is not charged with violent conduct, the charges are not serious enough to warrant an anonymous and partially sequestered jury; (2) the defendant poses no threat to the judicial process and has no ability to interfere with it; (3) the publicity surrounding this case is unlikely to interfere with the jurors' ability to perform their duty; (4) COVID-19 and economic concerns counsel against a partially sequestered jury; and (5) an anonymous and partially sequestered jury will unconstitutionally burden his presumption of innocence. See Dkt. No. 88 ("Def.'s Opp'n"). For the reasons discussed below and in the Government's Motion, however, an anonymous and partially sequestered jury is both warranted and appropriate under the facts of this case and governing case law.

## ARGUMENT

The Government's Motion explained the need for an anonymous and partially sequestered jury given the seriousness of the charges, the fear caused by the Sinaloa Cartel's campaign of violence in the United States and around the world, the defendant's abuse of the judicial process and the extensive press coverage this case has received. The defendant's arguments to the contrary should be rejected.

1

*First*, the defendant concedes that the charges he faces are serious. Def.'s Opp'n at 13. He argues, however, that the charges are not serious enough to warrant an anonymous jury because he is not a member of the Sinaloa Cartel and because he was charged with accepting bribes, not with committing violent acts. This argument ignores that the government has alleged that, while operating as a high-ranking Mexican government official and indeed because of that fact, the defendant conspired with the Sinaloa Cartel and utilized his position to facilitate the Cartel's trafficking of narcotics and allow the Cartel to commit extraordinarily violent acts.

An individual does not need be charged with directly participating in violence for an anonymous and partially sequestered jury to be warranted. Indeed, courts routinely grant such applications where a defendant is alleged to have provided material support to terrorist organizations. See, e.g., United States v. Kasimov, No. 15-CR-95 (WFK), Dkt. No. 398 (E.D.N.Y. Sep. 11, 2019) (granting government's request for an anonymous, partially sequestered jury in case involving defendant charged with conspiring and attempting to provide material support to ISIS); United States v. Pugh, No. 15-CR-116 (NGG), 2015 WL 8481877 (E.D.N.Y. Dec. 9, 2015) ("The question is not whether Defendant himself poses a threat to the jury, but rather whether there is good reason to believe that the jury needs protection.").

As argued in its opening motion, at trial, the government expects that numerous witnesses will testify about the Sinaloa Cartel's violent acts and that the defendant, the highest ranking law enforcement official in Mexico with authority over many other police officers government officials, was a crucial member of the conspiracy.[1] The government also anticipates

---

[1] The government responded to the defendant's request for a bill of particulars on May 1, 2022, and agreed to review its Jencks Act material and identify those materials that can be produced to the defendant well in advance of trial on a rolling basis for early disclosure,

2

that evidence at trial will establish that the defendant directly contributed to the violent acts of the Sinaloa Cartel by providing government personnel and resources to the Sinaloa Cartel to aid its violent conduct. Thus, the allegations in the Indictment and the proffered trial evidence establish the potential dangerousness of the defendant and his co-conspirators, as "demonstrated by the seriousness of the charged crimes, including whether the defendant is charged with participating in a large scale criminal enterprise." United States v. Wilson, 493 F. Supp. 2d 397, 398 (E.D.N.Y. 2006).

*Second*, the defendant attempts to argue that he or his criminal associates pose no threat of interference to the judicial process by comparing his alleged conduct to that of his co-conspirator Joaquín Guzman Loera. While this case does not involve the same public threats that materialized in Guzman Loera's case, there is still a substantial risk to the jury. The defendant's argument that accepting bribes has no bearing on whether he poses a threat to the integrity of the judicial process ignores the fact that the defendant used and abused his position of public trust to aid and abet one of the most violent and notorious criminal organizations in the world. In addition to accepting bribes, the defendant used his position to direct other law enforcement officers to operate on the Sinaloa Cartel's behalf and disclosed confidential law enforcement information about investigations into the Cartel, directly undermining the integrity of the judicial process. The allegations in the Indictment and the proffered trial evidence paint a clear picture of a defendant who has no qualms about interfering with the functioning and the integrity of the judicial process.

---

understanding that there is no legal authority requiring such advanced production, in order to facilitate the defendant's trial preparation.

The defendant also argues that he has no current ability to interfere with the judicial process because his assets have been restrained. Def.'s Opp'n. at 12. This argument is belied by the discovery produced in this case, which reflects that the defendant has obscured his ownership of multiple properties in the United States and that his family has moved and hid millions of dollars of unexplained wealth during the pendency of his criminal case. As just one example, in May 2020, one of the defendant's companies funneled $350,000 to a real estate associate and then used that associate to fund personal expenses for the defendant's family through at least 2021.

As the Second Circuit has stated, "even a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict." United States v. Thomas, 757 F.2d 1359, 1364 (2d Cir. 1985). There is a legitimate concern in this case that jurors may fear that an associate of the defendant or a member of the Sinaloa Cartel will target them if their identities are made public during trial. See United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2008) (noting "the reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety"). Accordingly, an anonymous jury is also warranted because legitimate concerns and fears raised by potential jurors could risk interference with the judicial process.

*Third*, the defendant concedes that there has been press coverage of this case and that there will likely be press coverage of the trial but argues that because the defendant is not as notorious as his co-conspirator Guzman Loera, an anonymous jury is unwarranted. Def.'s Opp'n at 15–16. Of course, the question is not whether the defendant's trial will receive as much press attention as Guzman Loera's.

When analyzing the question of whether the trial is likely to attract media attention and publicity, "the question does not turn on the volume of pre-trial news coverage alone; rather, courts consider both the amount and nature of the publicity." United States v. Ashburn, No. 13-

4

CR-0303 (NGG), 2014 WL 5800280, at *12 (E.D.N.Y. Nov. 7, 2014). With respect to the amount of publicity, the Second Circuit in United States v. Vario held that the district court did not err in determining that significant media attention was likely at trial, even though only one pre-trial article had been written. 943 F.2d 236, 240 (2d Cir. 1991). Here, as described in the Government's Motion, there have been a substantial number of articles written about the defendant's case and there is likely to be a large number of publications covering the trial.[2]

        The defendant suggests that a gag order restricting press reporting about the jurors could better accomplish the objective of protecting the jury in this case. Def.'s Opp'n at 17. But Second Circuit case law makes clear that a prior restraint restricting publication of juror identities is itself "one of the most extraordinary remedies known to our jurisprudence"; indeed, the Second Circuit has directed courts to consider jury anonymity as an alternative to prior restraints forbidding the publication of juror identities. See United States v. Quattrone, 402 F.3d 304, 312 (2d Cir. 2005) (district court's order forbidding media publications from publishing juror names violated the First Amendment); see also United States v. Wilson, 925 F. Supp. 2d 410, 412 (E.D.N.Y. 2013) ("Before the court may impose any sort of 'gag order,' it must, among other things, determine whether other available remedies would effectively mitigate the prejudicial publicity. . . . These possible measures include . . . an anonymous jury and sequestration of jurors.") (internal quotation marks and citations omitted). And such prior restraint, even if legally

---

[2] The defendant argues that COVID-19 protocols will restrict the amount of foreign press that attends the trial and that the jury may not see the press in the courtroom. Def.'s Opp'n at 15. The defendant's speculation on what COVID protocols will be in place six months from now should not alter the Court's analysis; indeed, some courts in this district have begun allowing members of the public into the courtroom to view trials. See United States v. Singh, No. 21-CR-397 (CBA) (E.D.N.Y.). Further, regardless of the COVID protocols in the courtroom, the jury will be able to observe press outside the courthouse as the press often takes photographs and attempts to question individuals entering and leaving the courthouse during high profile trials.

5

justified, would not protect the jury from interference or harm by the defendant and his criminal associates.

*Fourth*, the defendant argues that partial sequestration during trial poses an unacceptable risk to the jurors' health and safety given the ongoing COVID-19 pandemic. Def.'s Opp'n at 17–18. The government takes COVID-19 and the risks posed by the pandemic seriously and will of course work with the Court to ensure that proper safety measures are in place during trial. But the defendant has offered no facts or argument that support a finding that the jurors would face any heightened risk from "close contact" with the limited number of United States Marshals Service personnel escorting them when compared to the contacts any member of society has on a daily basis, whether on the subway, bus, taxi or any other mode of transportation that jurors would likely take to travel to and from the courthouse. And any heightened risk could of course be mitigated by the jurors and the U.S. Marshals Service wearing masks during these brief periods of transportation.

The defendant primarily cites Judge Johnson's decision in United States v. Augustine in support of his argument that a partially sequestered jury poses an unacceptable risk to the health of the jury. No. 18-CR-393, Dkt. Nos. 152 & 158 (E.D.N.Y. June 16, 2021) (granting the government's request for an anonymous jury but denying its request for partial sequestration). Augustine was decided in June 2021, when less than 50% of New Yorkers were fully vaccinated against COVID-19. Id. at 3. Today, 84% of adult New York State residents are fully vaccinated. See https://coronavirus.health.ny.gov/vaccination-progress-date (last visited May 6, 2022). While the COVID-19 pandemic remains ongoing, there are appropriate measures that can be put in place to protect the health of the jurors. The defendant's concerns that partial sequestration will increase

6

the risk of contracting COVID-19 is unwarranted and does not outweigh the other factors which strongly support the need for a partially sequestered jury.

*Fifth*, the defendant argues that an anonymous and partially sequestered jury will impermissibly infringe on his constitutional rights and prejudice the jury against him. Def.'s Opp'n at 17, 18–20. However, as explained in the Government's Motion, the use of an anonymous jury does not infringe on a defendant's rights provided that (1) "the jurors [are given] a plausible and nonprejudicial reason for not disclosing their identities"; and (2) "the court conducts a voir dire designed to uncover any bias as to the issues or the defendants." United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995).

The defendant claims the jurors will "automatically assume that revealing their names would put themselves at harm and, thus, he is a person they should fear." Def.'s Opp'n at 17. This argument ignores the government's proposal that that the Court advise the jury that their names are not being disclosed to the government, the defendant or the public out of respect and concern for their privacy, and that transportation is being provided for them to protect their privacy and to ensure that the trial can proceed expeditiously. Gov't Mot. at 17–18. The jurors may also accurately be informed that their identities are being withheld due to anticipated media interest, which would prevent any arguable inference that the defendant himself poses a danger to them. See e.g., United States Kaziu, 559 F. App'x 32, 38 (2d Cir. 2014) ("the district court told jurors that their identities were being hidden only because of the extensive media coverage and did not implicate [the defendant's] dangerousness"); United States v. Tutino, 883 F.2d 1125, 1133 (2d Cir. 1989) (upholding anonymous jury procedure where the jury was instructed that "It is a common practice followed in many cases in Federal court to keep the names and identities of the jurors in confidence. This is in no way unusual."); United States v. Kelly, No. 19-CR-286 (AMD), 2020

7

WL 8482693, at *3 (E.D.N.Y. Oct. 8, 2020) (explanation that "anonymous jurors are commonplace in high profile cases because of media interest" will not unduly burden defendant); United States v. Loera, No. 09-CR-466 (BMC), Dkt. No. 187 at 4 (E.D.N.Y. Feb. 5, 2018) ("any potential prejudice to the defendant will be mitigated when the Court advises the jury that their names are not being publicly disclosed out of respect and concern for their privacy . . . and [] neither the Government nor the defendant will know their identities"). The Court should have confidence in time-tested methods for protecting the integrity of the judicial process.

Further, the use of an anonymous jury will not conflict with the defendant's right to conduct meaningful voir dire. The Court has substantial discretion in controlling and limiting the voir dire process. See Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981) ("federal judges have been accorded ample discretion in determining how best to conduct the voir dire"); United States v. Barnes, 604 F.2d 121, 137 (2d Cir. 1979) (trial court has "broad discretion" in conducting voir dire). A full voir dire may be conducted about subjects other than the juror's name, address and employer's name, and the parties and counsel will have an unrestricted opportunity to observe the jurors during this process. Accordingly, under the circumstances presented, empaneling an anonymous jury will not prejudice the defendant.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the Government's Motion for an anonymous and partially sequestered jury.

Dated:       Brooklyn, New York
               May 6, 2022

                                    BREON PEACE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

             By:      /s/
                                      Ryan C. Harris
                                    Saritha Komatireddy
                                    Erin M. Reid
                                    Philip Pilmar
                                    Marietou E. Diouf
                                    Assistant U.S. Attorneys
                                    (718) 254-7000