SK/RCH/EMR/PP/MED
F. #2019R00927

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                            Docket No. 19-CR-576 (BMC)

GENARO GARCIA LUNA,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X


MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S
FIRST MOTIONS *IN LIMINE*


                                             BREON PEACE
                                             United States Attorney
                                             Eastern District of New York
                                             271 Cadman Plaza East
                                             Brooklyn, New York 11201


Saritha Komatireddy
Ryan C. Harris
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motions in limine (1) to admit evidence at trial of certain crimes and acts not detailed in the indictment—specifically, evidence of the defendant's attempts to silence journalists through harassment and bribes, and his willingness to tamper with witnesses—as direct evidence of the crimes charged and/or pursuant to Federal Rule of Evidence 404(b); and (2) to preclude the admission of evidence or argument by the defendant regarding topics which are either irrelevant or would likely confuse the issues, mislead the jury or result in unfair prejudice to the government.

For the reasons set forth herein, the Court should grant the government's motions in limine.

BACKGROUND[1]

I. Overview

Between 2001 and 2012, the defendant was a high-ranking official in the Mexican government. Specifically, from 2001 to 2005, the defendant was the head of Mexico's Federal Investigation Agency. From 2006 to 2012, the defendant served in a cabinet-level position as Mexico's Secretary of Public Security and, in that capacity, controlled Mexico's Federal Police Force. While holding public office, the defendant used his official positions to assist the Sinaloa Cartel, a notorious Mexican drug cartel, in exchange for multi-million-dollar bribes.

---

[1] The factual background set forth below is a summary of facts that the government expects to prove at trial through witness testimony, as well as physical, documentary and other evidence. The government has not endeavored to set forth all facts that it expects to prove at trial.

2

The Sinaloa Cartel has been one of the world's largest and most prolific drug trafficking organizations since approximately 1989. During the entire time it has been in operation, the Sinaloa Cartel has directed a large-scale narcotics transportation network involving the use of land, air and sea transportation assets, shipping multi-ton quantities of cocaine from South America, through Central America and Mexico, and finally into the United States. In addition, the cartel has manufactured and imported into the United States multi-ton quantities of heroin, methamphetamine and marijuana.

The Sinaloa Cartel has used the corruption of public officials, including the defendant, as a means and method of achieving the goals of this international and multibillion-dollar drug trafficking empire. In addition, the cartel has engaged in horrific violence, including murders, kidnapping and acts of torture, in order to protect against challenges from rivals, to fight for territory, and to silence those who would cooperate with law enforcement.

II.   The Defendant's Corrupt Assistance to the Sinaloa Cartel

Between at least 2001 and 2012, the defendant used the political power that he gained from his official positions to assist the Sinaloa Cartel in exchange for tens of millions of dollars in payments. Indeed, at trial, the government expects that numerous witness, including several former high-ranking members of the Sinaloa Cartel, will testify about bribes paid to the defendant in exchange for his protection.

In exchange for these bribes, the defendant provided the Sinaloa Cartel with, among other things, safe passage for its drug shipments, sensitive law enforcement information about investigations into the cartel, and information about rival drug cartels. These payments allowed the cartel at times to receive warnings in advance of law enforcement efforts to apprehend cartel members and to allow cartel members to be released if arrested. During the

3

time that the defendant protected the Sinaloa Cartel in exchange for bribes, the cartel was able to send multi-ton drug loads to the Eastern District of New York, including Brooklyn and Queens.

In 2012, the defendant relocated from Mexico to Miami, Florida, where he continued to conceal his corrupt assistance to the Sinaloa Cartel. In 2018, he submitted an application for naturalization to the Department of Homeland Security ("DHS"). In that paperwork, the defendant falsely denied any past criminal conduct.

III. The Defendant's Arrest and Indictment

On December 4, 2019, a grand jury in the Eastern District of New York returned an indictment charging the defendant with: (i) one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of Title 21, United States Code, Sections 841 and 846; (ii) one count of cocaine importation conspiracy, in violation of Title 21, United States Code, Sections 952 and 963; (iii) one count of international cocaine distribution conspiracy, in violation of Title 21, United States Code, Sections 959 and 963; and (iv) one count of making false statements, in violation of Title 18, United States Code, Section 1001. Law enforcement agents arrested the defendant in Dallas, Texas on December 9, 2019.

On July 30, 2020, a grand jury in the Eastern District of New York returned a five-count Superseding Indictment. The Superseding Indictment added an additional charge against the defendant for participating in a continuing criminal enterprise ("CCE") in violation of Title 21, United States Code, Section 848.

4

ARGUMENT

I. Certain Evidence of Other Acts Is Directly Relevant to and Inextricably Intertwined with the Evidence of the Charged Crimes, or, in the Alternative Is Admissible Under Federal Rule of Evidence 404(b)

At trial, the government seeks to introduce evidence that, during the charged time period, the defendant threatened, harassed and bribed journalists who were investigating his crimes, and that, following his arrest, he evinced a willingness to tamper with witnesses. Specifically, the government seeks to introduce evidence that, between approximately 2008 and 2013, the defendant subjected a journalist to a multi-year campaign of harassment and threats as a result of the journalist's investigation into the defendant. The government also seeks to introduce evidence that, in approximately 2009 or 2010, the defendant used money amassed from a corrupt kickback scheme to pay bribes to a news organization to prevent journalists at the organization from publishing negative stories about him.

In addition, the government seeks to introduce evidence that, following his arrest in this case, the defendant had conversations with another person ("Individual 1"), several of which were surreptitiously recorded by law enforcement authorities, in which the defendant discussed threatening violence and tampering with witnesses against him, and referred to at least one witness by name. Specifically, the government seeks to introduce evidence that, in the fall of 2020, based on the defendant's statements to Individual 1 that he wished to harm witnesses against him, law enforcement officers provided Individual 1 with the telephone number of an undercover agent to pass to the defendant. The agent was purporting to go by the name "Greg" and to be a member of the Russian mafia.

The government further seeks to introduce at least one recorded conversation, made on or about November 11, 2020, in which the defendant and Individual 1 engaged in the following discussion, in substance and in part:

| | |
|---|---|
| Defendant: | Nobody has confidence with the Russians, what, whatever he say, whatever [U/I], what, like, like I said "No, they work with this guy." Exactly the same thing. |
| Individual 1: | Like I said for setting up with Raymond or Reynaldo. |
| Defendant: | [U/I] Rey. Reynaldo [U/I]. [2] |
| Individual 1: | Reynaldo? |
| Defendant: | Reynaldo. I think that [U/I] [U/I] gotta see [U/I] because he's [U/I]. |
| Individual 1: | Yeah. To set him up [U/I]. |
| Defendant: | [U/I] Luis, Luis [U/I]. [3] |
| Individual 1: | Kill the witnesses, kill the . . . |
| Defendant: | Family. |
| Individual 1: | The family. |

---

[2] Jesus "El Rey" Zambada ("Rey Zambada") testified as a witness at Chapo Guzman's trial. See United States v. Joaquin Archivaldo Guzman Loera, et al., 09 CR 466 (S-4) (BMC), Trial Transcript, February 14, 15, 19, and 20, 2019 ("Tr."). Among other things, Rey Zambada testified about payments he made to the defendant on behalf of the Sinaloa Cartel, in exchange for the defendant's protection. (Tr. 1102-1106).

[3] Luis Cardenas Palomino is a charged co-defendant of the defendant. Specifically, Cardenas Palomino is charged in the Superseding Indictment with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846, cocaine importation conspiracy, in violation of 21 U.S.C. §§ 952 and 963, and international cocaine distribution conspiracy, in violation of 21 U.S.C. §§ 959 and 963.

| | |
|---|---|
| Defendant: | [U/I]. |
| Individual 1: | Yeah. |
| Defendant: | But I, I say that it's the same thing you have the guy works [U/I] and he works with experience [U/I] I know who, who [U/I]. |
| Individual 1: | Yeah, Greg. Greg. |
| Defendant: | Know the guy. |
| Individual 1: | He could help with a lot, I'm telling you. |
| Defendant: | That's because now Greg can do the [U/I]. You know, I know Greg. [U/I] because they went with his side and now they're on the other side [U/I] work at this, and I have people who live in in Korea, and I have [U/I] that you can say, 'cause if I don't explain how they work. They work [U/I] they work with that [U/I] and they change everything but they [U/I] and after they, they [U/I] can use [U/I]. And this guy knows this guy. And how he knows this guy? Because he knows this guy who knows [U/I], and he took out the witness. "Hey, I know the witness. I know who, I know the witness, you gotta know the witness, he probably didn't [U/I]." Your [U/I]. |
| Individual 1: | And that's it [U/I]. |
| Defendant: | You are [U/I]. |
| Individual 1: | That's it. |
| Defendant: | I [U/I] peoples, and he [U/I]. |
| Individual 1: | Some part, some part, it's, you know, can't be a witness. |
| Defendant: | Yeah. [U/I] nothing. They, they kill people. |

Finally, the government seeks to introduce evidence that, on or about December 31, 2020, Individual 1 and the Defendant called "Greg," the undercover agent, together.

7

A.     The Proposed Evidence Is Directly Relevant to and Inextricably Intertwined with the Evidence of the Charged Crimes

    i.     Legal Standard

Evidence of uncharged criminal activity is not considered "other crimes" evidence under Rule 404(b) "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted); accord United States v. Reed, 576 F. App'x 60, 61 (2d Cir. 2014) (summary order). In addition, the Second Circuit has explained that, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Accordingly, "[r]elevant evidence is not confined to that which directly establishes an element of the crime." Id.; see also Fed. R. Evid. 401, 402. Indeed, as the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

Evidence of threats by a defendant against a witness against him can be admitted as direct evidence of the crime when the threats show "familiarity" with a charged conspiracy, United States v. Tracy, 12 F.3d 1186, 1195 (2d Cir.1993), or are "inextricably intertwined with the evidence regarding the charged offense," United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007). Thus in Tracy, the Second Circuit found no abuse of discretion when evidence of death threats by a defendant were admitted to show that he "was a member of the conspiracy

8

and played a role that gave him ... familiarity with [its] operation," including acting as its "enforcer." 12 F.3d at 1195. In Quinones, the Second Circuit upheld the admission of a defendant's threats to a witness because they contained an admission to the charged murder. 511 F.3d at 309. In United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992), a defendant's offer to a cooperating witness to arrange a murder was admissible to show the membership in a conspiracy and the lengths to which defendant would go to protect a narcotics operation. See also United States v. Herron, No. 10-CR-0615 NGG, 2014 WL 1894313, at *5 (E.D.N.Y. May 12, 2014) (evidence of witness tampering was admissible as direct proof of the charged crimes because, among other things, it was probative of an enterprise's efforts to "[p]reserv[e] and protect[ ] the power ... and criminal ventures of the enterprise through the use of intimidation, threats of violence and acts of violence," and the enterprise's ability to "[k]eep[ ] victims and rivals in fear," and it also established the defendant's consciousness of guilt).

  ii. Argument

  Here, as in Quinones, the evidence of the defendant's efforts to threaten, harass, and bribe journalists who were investigating his crimes during the charged time period is "inextricably intertwined with evidence regarding the charged offense" and "necessary to complete the story of the crime on trial." Carboni, 204 F.3d at 44. Indeed, as in Concepcion, the defendant's attempts to limit investigations into his participation in a vast narcotics conspiracy and CCE is highly probative of his involvement in those crimes and of the lengths to which he would go to conceal his illegal activity. See also United States v. Khan, 591 F. Supp. 2d 202, 205 (E.D.N.Y. 2008) ("[i]ntimidation, violence, and the payment of debts is generally understood to be intertwined with the management and operation of narcotics

9

conspiracies."). Moreover, evidence of the defendant's efforts to silence journalists helps explain how he was able to corruptly assist the Sinaloa Cartel for years without detection or arrest. Furthermore, to the extent that the defendant attempts to introduce examples of his positive reputation into evidence, the evidence of his harassment, threats and bribes to journalists who threatened that reputation will be highly relevant to complete the narrative at trial.

Similarly, the defendant's post-arrests conversations about tampering with witnesses and his efforts to reach out to the undercover agent are direct evidence of his guilt. Like the threats in Tracy, the defendant's recorded statements, including his reference to at least one witness by name, shows his role in the charged conspiracy, as well as his familiarity with the witnesses against him and their knowledge of his crimes. See also United States v. Nunn, 940 F.2d 1128, 1130–31 (8th Cir. 1991) (upholding the admission of evidence regarding a defendant's threat to a potential informant as "relevant evidence of [the defendant's] knowledge of and participation in the conspiracy"). As a result, the proposed evidence is admissible as direct evidence of the defendant's guilt, and the Court should permit the government to introduce that evidence at trial.

B.  Evidence of the Defendant's Other Acts Is Admissible Under Rule 404(b)

In the alternative, to the extent the Court finds that the evidence described above constitutes "other acts" under Federal Rule of Evidence 404(b), it is admissible for the non-propensity purpose of showing the defendant's consciousness of guilt.

i.  Legal Standard

Evidence of uncharged crimes or "other acts" may be admitted pursuant to Rule 404(b) for permissible purposes, including to prove motive, opportunity, intent, preparation,

plan, knowledge, identity or absence of mistake or accident. Fed. R. Evid. 404(b)(2); see United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988). Rule 404(b) evidence is only admissible if, under Rule 403, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or by considerations of judicial economy such as the needless presentation of cumulative evidence. Id.

The Second Circuit has established a three-prong test for the admission of "other crimes" evidence under Rule 404(b). First, a trial court must determine that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity. See United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991). Second, the trial court must determine that the evidence is relevant under Rules 401 and 402 of the Federal Rules of Evidence and that its probative value is not substantially outweighed by the danger of unfair prejudice. See Pitre, 960 F.2d at 1119; Mickens, 926 F.2d at 1328. So long as the evidence "'[does] not involve conduct any more sensational or disturbing than the crime[] with which [the defendant has been] charged,'" that balancing test is likely to be met. See Pitre, 960 F.2d at 1120 (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). Third, the court must provide an appropriate limiting instruction to the jury, if one is requested. See Pitre, 960 F.2d at 1119.

As long as the balancing test is met, evidence of threats by a defendant against a potential witness against him can be used to show a defendant's "guilty knowledge." United States v. Bein, 728 F.2d 107, 114–15 (2d Cir. 1984); Mickens, 926 F.2d at 1328-1329; see also Tracy, 12 F.3d at 1195; United States v. James, No. 02 CR 0778 (SJ), 2007 WL 1579978, at *1–2 (E.D.N.Y. May 31, 2007); United States v. Brazel, 102 F.3d 1120, 1153 (11th Cir.1997) (evidence that defendant threatened a witness is "relevant to consciousness of

11

guilt"); Nunn, 940 F.2d at 1130–31 (evidence that defendant threatened an informant probative of consciousness of guilt); but see United States v. Morgan, 786 F.3d 227, 232 (2d Cir. 2015) (evidence of death threats not properly admitted when it was not "inextricably intertwined with the evidence regarding the charged offense" and bore no relation to the offense for which the defendant was being tried) (quoting Quinones, 511 F.3d 309). Thus, for example, in Mickens, evidence that a defendant made a hand gesture in the shape of a gun as a key prosecution witness entered the courtroom to testify was properly admitted as proof of the defendant's consciousness of guilt. 926 F.2d at 1328-1329. In Tracy, the Second Circuit upheld the admission of a defendant's death threats for the same reason. 12 F.3d at 1195. In James, Judge Johnson permitted the government to introduce multiple statements by a defendant about his plan to kill and retaliate against witnesses against him, noting that "[b]ecause evidence of a desire to kill witnesses is such strong evidence of consciousness of guilt, this Court cannot conclude that the probity of such evidence would be substantially outweighed by the danger of unfair prejudice." 2007 WL 1579978, at *1–2.

  ii.  Discussion

Like the threats in Mickens, James, and Tracy, evidence of the defendant's efforts to silence journalists through harassment and bribes during the charged time period and his willingness to tamper with witnesses after his arrest is admissible for the non-propensity purpose of showing the defendant's consciousness of guilt. See also Bein, 728 F.2d at 114–15.

Moreover, the probative value of this evidence is not substantially outweighed by its prejudicial effect. Indeed, as noted above, the evidence is directly relevant to the charged crimes. In addition, the proposed evidence is no more prejudicial than the evidence that the

12

defendant (i) conspired with the leaders of the Sinaloa Cartel, one of the world's most notorious and violent drug cartels, to import multi-ton quantities of drugs into the United States; (ii) supported the Cartel as it waged bloody wars for control across Mexico; (iii) provided sensitive law enforcement information about rival cartels that the Cartel used to its advantage in those wars; (iv) warned the Cartel about planned law enforcement operations against it; and (v) permitted the Cartel to operate with impunity for decades.

In any event, any potential prejudice to the defendant can be effectively mitigated by a cautionary instruction limiting the jury's consideration of the evidence to the purposes for which it is offered. See, e.g., Mickens, 926 F.2d at 1328-29; James, 2007 WL 1579978, at *2; United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006) (the law presumes that juries follow limiting instructions).

II.   The Court Should Preclude Irrelevant and Unfairly Prejudicial Evidence and Argument

The government moves in limine to preclude the admission of evidence or argument by the defendant regarding topics which are either irrelevant or would likely confuse the issues, mislead the jury, and result in unfair prejudice to the government, including references to selective prosecution or to his potential punishment after trial.

A.   Legal Standard

Rule 401 defines "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action." Rule 402, in turn, provides that irrelevant evidence is not admissible. See, e.g., Arlio v. Lively, 474 F.3d 46, 52 (2d Cir. 2007) ("If an item of evidence tends to prove a fact that is of consequence to the determination of the action, it is relevant. If it does not tend to prove a material fact, it is irrelevant.") (internal quotation marks omitted).

Pursuant to Rule 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice." United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009). Courts also have broad discretion to exclude evidence if it has an "undue tendency to suggest decision on an improper bias, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. Indeed, the Court may preclude the introduction of evidence under Rule 403 even if it is intended to further a purported defense theory. See United States v. Roberts-Rahim, No. 15-CR-243 (DLI), 2015 WL 6438674, at *9 (E.D.N.Y. Oct. 22, 2015).

B.     Preclusion of References to Selective Prosecution

The government anticipates that the defendant may attempt to argue that corruption in Mexico is pervasive, that he did the best that he could in a corrupt system, and that the government selectively targeted him for prosecution in this case. For the reasons set forth below, the Court should preclude the defendant from raising these arguments before the jury.

"The Supreme Court has observed that a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury." United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) (citing United States v. Armstrong, 517 U.S. 456, 463 (1996)); accord United States v.

14

Berrigan, 482 F.2d 171, 175 (3d Cir. 1973) ("The question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution."); United States v. Taylor, 562 F.2d 1345, 1355 (2d Cir. 1977) (finding defense of selective prosecution waived because it was not raised prior to trial); United States v. Marcum, 16 F.3d 599, 602 (4th Cir. 1994) (noting that selective prosecution concerns constitutional defects in prosecution, not guilt or innocence of defendant); United States v. Jones, 52 F.3d 924, 927 (11th Cir. 1995) ("[S]elective prosecution is a defect in the institution of the prosecution that has no bearing on the determination of factual guilt."); United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983) ("[T]he issue of selective prosecution is one to be determined by the court . . . as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged.").

Any claim alleging a defect in instituting the prosecution based on alleged improper governmental motives must be raised with the Court in advance of trial. See Fed. R. Crim. P. 12(b)(3)(A); United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011). A claim not made prior to the deadline set by the Court for motions is waived. See Fed. R. Crim. P. 12(e). Because the government's alleged motive in bringing charges against a defendant is irrelevant to guilt, by asking the jury to focus on the government's conduct, the defense would be encouraging the jury to decide the case based on something other than the elements of the charged crimes. That is impermissible. See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (holding that arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt"); see also United States v. Thomas, 116 F.3d 606, 615-16 (2d Cir. 1997) (noting

15

that "trial courts have the duty to forestall or prevent jury nullification"). Courts therefore regularly preclude criminal defendants from presenting such arguments to the jury in the opening and summation, as well as in cross-examinations of the government's witnesses.

In Farhane, for example, the court sustained an objection by the government to defense counsel's argument in summation that the government had targeted the defendant for prosecution based on his religion. Farhane, 634 F.3d at 166. The court then instructed the jury as follows:

> Ladies and gentlemen, the decision of the government to investigate an individual or the decision of a grand jury to indict an individual is none of your concern. The only concern this jury has is whether or not the government has or has not proved each element [ ] of the crimes charged beyond a reasonable doubt.

Id. On appeal, the Second Circuit held that there was "no error in the district court's challenged rulings with respect to the defense summation" because "a selective prosecution defense alleges a defect in the institution of the prosecution, and as such is an issue for the court rather than the jury." Id. at 167 (internal quotations omitted).

Similarly, in United States v. Stewart, the court granted the government's motion to preclude the defense from cross-examining government witnesses or arguing to the jury that the government's prosecution was driven by an improper motive. No. 03-CR-717, 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004). The court explained:

> [T]he defense wishes to elicit from witnesses who are cooperating with the Government their understanding of the Government's eagerness to obtain evidence against Ms. Stewart. But any evidence that raises questions of prosecutorial bias against Stewart has no bearing on the issues properly before the jury, including the credibility of cooperating witnesses. Therefore, such evidence is inadmissible. The defendants are, of course, free to raise questions about the credibility and reliability of cooperating witnesses. But defendants may not use their ability

16

>to impeach such witnesses to introduce impermissible evidence of prosecutorial motive.

Id. at *1.

As in Farhane and Stewart, this Court should preclude the defendant from presenting to the jury improper arguments concerning alleged governmental motives for arresting the defendant, because such arguments may only be presented to the Court. Indeed, the government submits that any statements and arguments regarding selective prosecution or targeting would result in unfair prejudice to the government, confusing the issues, and misleading the jury and invite jury nullification. See Fed. R. Evid. 403; Rosado, 728 F.2d at 93; Thomas, 116 F.3d at 615-16.

Thus, the Court should preclude the defendant from alleging selective prosecution or improper governmental motive in prosecuting the defendant during jury addresses, cross-examination, or the presentation of evidence in the case.

C.   Preclusion of References to Potential Punishment

The Court should also preclude the defendant from referencing his potential punishment at trial. Evidence and argument regarding the possible punishment the defendant may face if convicted should be precluded because it is irrelevant. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

Moreover, such evidence and argument improperly "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. Indeed, jurors are

routinely instructed not to consider a defendant's punishment in determining a defendant's guilt:

> The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Sand et al., Modern Federal Jury Instructions ("Sand"), Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Heslop, 225 F.3d 647, at *3 (2d Cir. 2000) (summary order) (affirming propriety of instruction that jury must not consider potential punishment); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

For these reasons, courts have repeatedly precluded evidence and argument regarding the potential sentences a defendant may face on the grounds that such evidence is irrelevant, unfairly prejudicial, and outside the province of the jury. See, e.g., United States v. Naim, No. 13-CR-660, Docket Order (E.D.N.Y. Nov. 24, 2014); see also United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences"); United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity

18

of his possible punishment); United States v. DiMarzo, 80 F.3d 656, 660 (1st Cir. 1996) (district court "soundly excluded" evidence of potentially harsh sentence).[4]

---

[4] The government reserves the right to revisit this issue should the defendant exercise his right to testify at trial and thereby put his credibility at issue.

CONCLUSION

For the foregoing reasons, the Court should grant the government's motions in limine in their entirety.

Dated: Brooklyn, New York
       June 15, 2022

                                    Respectfully submitted,

                                    BREON PEACE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York

                            By:     /s/
                                    Saritha Komatireddy
                                    Ryan C. Harris
                                    Erin M. Reid
                                    Philip Pilmar
                                    Marietou E. Diouf
                                    Assistant United States Attorneys
                                    (718) 254-7000