```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :    MORANDUM DECISION AND
                                    Plaintiff,             :    ORDER
                                                           :
            - against -                                    :    19-cr-576 (BMC)
                                                           :
GENARO GARCIA LUNA,                                        :
                                                           :
                                    Defendant.             :
                                                           :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Before the Court is the government's motion for an anonymous and partially sequestered jury. For the reasons set forth below, the government's motion is granted.

## BACKGROUND

The government seeks "an anonymous and partially sequestered jury to protect the integrity of the trial and the jury's impartiality by (1) preventing harassment, intimidation, or other interference with the jurors and (2) mitigating any fear in the minds of the jurors of any such harassment, intimidation, or other interference." These measures are necessary, the government argues, because the trial involves exceptionally serious charges; Genaro Garcia Luna has the means to interfere with the judicial process; and this case has drawn intense media scrutiny.

Mr. Garcia Luna responds that granting such a motion will give the government an unconstitutional advantage by eroding his presumption of innocence and his ability to conduct a meaningful voir dire. He also observes that none of the charges against him are crimes of violence nor does the government have evidence showing he has a history of violence. Lastly,

Mr. Garcia Luna acknowledges that this case has the potential for substantial publicity but argues that juries have never been anonymized and sequestered because of this alone. He maintains that other, less extreme, procedures can be used to protect the jurors' identities from the press.

**DISCUSSION**

A district court may order the empaneling of an anonymous jury when it concludes that there is a "strong reason to believe the jury needs protection," and if it takes "reasonable precautions to minimize any prejudicial effects on the defendant and [ ] ensure that his fundamental rights are protected." United States v. Stewart, 590 F.3d 93, 124 (2d Cir. 2009) (quoting United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); see also United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012); United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985).

In making its determination, the court considers: (1) the dangerousness of the defendant, demonstrated by the seriousness of the charged crimes, including whether the defendant is charged with participating in a large-scale criminal enterprise, and the defendant's criminal history, see Paccione, 949 F.2d at 1192; United States v. Tutino, 883 F.2d 1125, 1132-33 (2d Cir. 1989); Thomas, 757 F.2d at 1364-65; (2) whether the defendant or his associates have engaged in past attempts to interfere with the judicial process, see Paccione, 949 F.2d at 1192; Tutino, 883 F.2d at 1132-33; (3) whether the defendant has the means to harm the jury, see United States v. Melendez, 743 F. Supp. 134, 137 (E.D.N.Y. 1990); United States v. Coonan, 664 F. Supp. 861, 862 (S.D.N.Y. 1987); and (4) whether the trial is likely to attract media attention, as may be illustrated by the nature and degree of pretrial publicity, see Paccione, 949 F. 2d at 1192; United States v. Vario, 943 F.2d 236, 240 (2d Cir.1991); Thomas, 757 F.2d at 1364-65 & n.1. When

2

reviewing these factors, the court can rely on the government's proffer of facts. See United States v. Wong, 40 F.3d 1347, 1376-77 (2d Cir. 1994) (accepting the government's pretrial proffer concerning the Green Dragons's history of extensive interference with the judicial process); Paccione, 949 F.2d at 1193.

Mr. Garcia Luna is charged with participating in a continuing criminal enterprise, the Sinaloa drug cartel, that has repeatedly violated 21 U.S.C. §§ 841, 846, 959, 960, and 963 – conspiring to distribute, as well as possessing and distributing, thousands of kilograms of cocaine. Mr. Garcia Luna did not personally use violence during his participation in the charged conspiracies and the overarching criminal enterprise. But during his tenure as a high-ranking Mexican law enforcement officer, Mr. Garcia Luna allegedly facilitated the cartel's violence and drug smuggling by providing the cartel with information and protection at a very high level. Although the amount of evidence concerning the activities of the cartel will likely be less than it has been in other Sinaloa Cartel cases against different defendants, the government will still need to introduce evidence establishing the scope of the cartel's drug smuggling and violence.

The government's proffered facts are offered to show that Mr. Garcia Luna repeatedly prioritized his personal gain over his sworn duties as a public servant and, in exchange for millions of dollars, assured the continued success and safety of one of the world's most notorious and violent drug trafficking organizations. Moreover, whether charged with it or not, Mr. Garcia Luna cannot deny knowledge of the cartel's violent activities, and it is not a major jump to infer that he may have had access to some of the individuals responsible for that violence. This pervasive violence and the broad reach of the cartel makes it reasonably likely that jurors may become fearful for their individual safety if not provided with anonymity. See

3

United States v. Kadir, 718 F.3d 115, 121 (2d Cir. 2013); United States v. Stewart, 590 F.3d 93, 124-25 (2d Cir. 2009).

In addition, the record before the Court contains evidence that Mr. Garcia Luna was personally involved in conduct that further illustrates the need for an anonymous jury. In an ex parte filing, the government has articulated a legitimate concern that Mr. Garcia Luna, as a former high-ranking government official with deep ties to both the Mexican government and the Sinaloa Cartel, likely has the intent and resources to engage in witness intimidation and harassment. The leap from witness intimidation or harassment to jury tampering is not substantial. See Pica, 692 F.3d at 88 (A court can empanel an anonymous jury based solely on the "demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf."); Vario, 943 F.2d at 241; see also United States v. Dervishaj, No. 13-cr-668, 2015 WL 13842838, at *1 (E.D.N.Y. Mar. 19, 2015) ("[w]itness intimidation believed to have been perpetrated by a defendant or associates of that defendant will suffice" to empanel an anonymous jury); cf. United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994) (upholding an anonymous jury order, in part, because the government claimed the defendants killed a civilian witness in an effort to subvert the prosecution of a pending robbery). Although I recognize that the government has not yet provided this discovery to Mr. Garcia Luna because it is not required to at this point and there are reasons based on the nature of the discovery not to disclose it now (although I expect the discovery will be shortly provided), the Court is permitted to consider it in determining the need for an anonymous jury. Cf. Paccione, 949 F.2d at 1193 (accepting that a court can consider ex parte and in camera affirmations in support of an anonymous jury motion).

Next, the government has demonstrated that this case is likely to generate substantial

4

press coverage. Since Mr. Garcia Luna's arrest in December 2019, there have been dozens of news stories concerning his role in the Mexican government and his relationship to the Sinaloa Cartel. This publicity militates "in favor of an anonymous jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public." Vario, 943 F.2d at 240 (internal quotation marks and citation omitted); see also Paccione, 949 F.2d at 1192-93 (discussing risk of media's "inappropriate contact" with jurors); United States v. Khan, 591 F. Supp. 2d 166, 171 (E.D.N.Y. 2008). Therefore, the likelihood of publicity also suggests the need for an anonymous jury.

Lastly, a searching voir dire and jury instructions explaining that the use of an anonymous jury is a frequent occurrence in federal court will ameliorate any potential prejudice to Mr. Garcia Luna. To further alleviate any risk, the Court will also seek the parties' input on any additional questions they want to be put to the panel at the in-person inquiry. These measures will ensure the jurors' safety without unduly burdening the defendant. See Wong, 40 F.3d at 1377; United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995) ("[T]he use of an anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a careful voir dire designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities."); Tutino, 883 F.2d at 1133; United States v. Barnes, 604 F.2d 121, 140 (2d Cir. 1979). The Second Circuit has repeatedly held that permitting and facilitating this type of thorough voir dire allows defendants to identify bias among jurors, thereby alleviating any risk created by not knowing jurors' names, addresses, and places of employment. See Thai, 29 F.3d at 801; Wong, 40 F.3d at 1377; United States v. Tutino, 883 F.2d 1125, 1133 (2d Cir. 1989);

United States v. Persico, 832 F.2d 705, 717 (2d Cir. 1987); Thomas, 757 F.2d at 1364-65. Moreover, any potential prejudice will be further mitigated when this Court informs the jury that their names are not being publicly disclosed and their travel facilitated by the U.S. Marshalls out of respect and concern for their privacy. See Thai, 29 F.3d at 801; see, e.g., Kadir, 718 F.3d at 121 (courts can minimize prejudicial effects to defendants by "giving the jurors a plausible and nonprejudicial reason for not disclosing their identities and . . . [conducting] a voir dire designed to uncover bias") (internal quotations omitted); United States v. Galestro, No. 06-cr-285, 2008 WL 2783359, at *3, n.3 (E.D.N.Y. July 15, 2008) ("Jurors are generally told that such steps are not unusual and are taken to ensure their privacy and impartiality in light of the media and public attention the trial is expected to receive.").

## CONCLUSION

The government's motion for an anonymous and partially sequestered jury is

GRANTED.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
　　　July 2, 2022

6