```
1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2  ------------------------------x
                                        19-CR-576(BMC)
3  UNITED STATES OF AMERICA,
                                        United States Courthouse
4                                       Brooklyn, New York

5         -versus-                      July 15, 2022
                                        10:30 a.m.
6  GENARO GARCIA LUNA,

7              Defendant.

8  ------------------------------x

9       TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE BRIAN M. COGAN
10                UNITED STATES DISTRICT JUDGE

11 APPEARANCES

12 For the Government:        UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  SARITHA KOMATIREDDY, ESQ.
                                   RYAN C. HARRIS, ESQ.
15                                 ERIN REID, ESQ.
                              Assistant United States Attorneys
16
   For the Defendant:         BY:  CESAR DECASTRO, ESQ.
17                                 SHANNON MCMANUS, ESQ.

18 Also Present:              Estrellita Plested, Interpreter
                              Maristela Verastegui, Interpreter
19
   Court Reporter:            Rivka Teich, CSR, RPR, RMR, FCRR
20                            Phone:  718-613-2268
                              Email:  RivkaTeich@gmail.com
21
   Proceedings recorded by mechanical stenography.  Transcript
22 produced by computer-aided transcription.

23

24

25
```

*Rivka Teich CSR, RPR, RMR FCRR*
*Official Court Reporter*

STATUS CONFERENCE

1          (Video conference.)

2          THE COURTROOM DEPUTY:  All Rise.  19-CR-576, United

3    States vs. Genaro Luna.

4          State your name for the record, starting with the

5    Government.

6          MS. KOMATIREDDY:  Good morning, your Honor.  This is

7    Saritha Komatireddy for the United States. I'm joined in my

8    office by AUSAs Ryan Harris, Erin Reid and Philip Pilmar.

9          MR. DE CASTRO:  Good morning, your Honor.  Cesar de

10   Castro and Shannon McManus for Mr. Garcia Luna.

11         THE COURT:  Good morning, all.  I see Mr. Garcia

12   Luna is present.  Good morning, sir.

13         I'll first note for the record that we have a

14   Spanish interpreter interpreting for Mr. Garcia Luna, who has

15   been previously sworn.

16         The first order of business is that I assume

17   everyone is consenting to doing what is a fairly routine

18   status conference by video; is that correct?

19         I'll hear from the Government first after the

20   translation.

21         MS. KOMATIREDDY:  Yes, your Honor.

22         THE COURT:  Mr. De Castro?

23         MR. DE CASTRO:  Yes, I discussed it with

24   Mr. Garcia Luna, and he knows of his rights to be in person.

25   We both would prefer that this be in video today.

STATUS CONFERENCE

THE COURT: Because this is a routine status conference, I don't think I need to make a finding under the CARES Act. I will simply note that everyone has consented to proceeding by video.

I have the Government's agenda letter. I think it's self-explanatory. Clearly one of the things we still need to talk about is a schedule for jury questionnaires. Is there any chance that the parties have discussed or even agreed upon a schedule?

MS. KOMATIREDDY: Your Honor, as an initial matter, I think it would be helpful to get some guidance from the Court on whether the Court would like to do the jury questionnaire administration distribution and the individual voir dire starting on October 24 or in advance of that and work backwards.

THE COURT: My experience is that it's a multi-week process. If we were to start on October 24, we wouldn't start trial for a minimum of two or three weeks after that, and since we have time, I'd like to front-load it. So let me propose a timetable and tell me what you think of it.

MR. DE CASTRO: Your Honor, if I may, before we go there, if that's okay.

THE COURT: Sure.

MR. DE CASTRO: I think maybe it makes sense also, because one of the issues I wanted to raise today was whether

1  we think this can get done in October in the first place.  I
2  think maybe that conversation -- we should have that first.
3              THE INTERPRETER:  The interpreter requests the
4  repetition of the last part.
5              MR. DE CASTRO:  Whether we can get this done in
6  October, which is our current trial date.
7              THE COURT:  Okay.  Tell me, Mr. De Castro.
8              MR. DE CASTRO:  When the Court set October 24 as the
9  trial date, it also set January 9 as a backup trial date, and
10 I think the Court stated, if I recall correctly, the reason
11 for that and we all agreed that there was a lot to do before
12 that date we weren't sure if we would be able to accomplish
13 everything in time.
14             I alerted the Government, I think, last week.  We
15 talked a little bit informally earlier this week that my view
16 is that, given the current circumstances, that we were more on
17 track for the backup trial date than we were the October trial
18 date.  My understanding is that the Government wants to keep
19 the October trial date, but my view is that the backup trial
20 date is much more realistic.
21             THE COURT:  Before I hear from the Government, tell
22 me why you think you can't meet the October 24 trial date.
23             MR. DE CASTRO:  Sure.  I think I should note first
24 I'm just concerned about it.  I'm not saying definitely no,
25 but my feelings are that we're not getting there, and let me

1  tell you those reasons.

2  Some of those reasons are, first, in terms of
3  materials that I need to review and my team needs to review.
4  So the record is clear, we're -- the Government has produced
5  somewhere in the neighborhood of 1,070,000 pages of material
6  plus audio and video. I certainly have had a lot of those
7  materials for some time. But for context, just since
8  February, the Government produced approximately 90,000 pages
9  of material, plus they are starting to produce 3500 material.
10 And one thing I've asked the Government is to give me an
11 estimate as to the volume of that material. My understanding
12 from the Government is that they are not able to tell me that,
13 the volume of that material, partially because of maybe the
14 way it's stamped. It's not, I guess, Bates-stamped per page.

15 So it's very hard for me to say how I'm going to
16 review a volume of material that I know is voluminous, is the
17 heart of the case, but I have no idea how much.

18 Furthermore, I know the Court has the Government's
19 opening motions in limine. We have responded. But I
20 anticipate that there probably will be some more motion
21 practice depending on -- at least from my side, depending on
22 what I see in 3500, and, in fact, the Government in their
23 motion said it was their first motions in limine. So I don't
24 know if they anticipate a whole other round of motions in
25 limine as well.

         Of course, there's just our own defense witnesses, our own preparation, and the outstanding CIPA material that I have, of course, also no idea if those are materials that I have to review and do so in a whole other process.

         And lastly, we also have to keep in mind that once I have the 3500 materials, I have to sit with Mr. Garcia Luna -- or someone does -- to review it with him.  He's not permitted to have it.  And if we don't know what that volume is, I have no idea how long that will take and I have no idea -- I have to manage that with the never-ending lockdowns of the MDC.

         THE COURT:  Remind me, Mr. De Castro:  Do you have any support helping you with these tasks besides Mr. McManus?

         MR. DE CASTRO:  I do, your Honor.  On the financial piece of it, which is a volume of material, there's someone there.  And then I have a paralegal.  Another lawyer, Ms. Gottlieb, is not here today.  She's traveling.  She's on the case as well.

         THE COURT:  And Ms. Komatireddy, what is your concern slipping to January 9?

         MS. KOMATIREDDY:  Your Honor, we have several concerns.  At the outset, we oppose having an adjournment, in part because this trial date was set significantly in advance in order to account for all of the issues that Mr. De Castro just delineated.

         First of all, with respect to the materials that

1   have been turned over, as Mr. De Castro noted, those million
2   pages were turned over -- most of them were turned over a
3   significant amount of time ago.  Since February, while there
4   have been approximately 90,000 pages of material turned over,
5   most of them are bank records or early disclosure of 3500
6   material.
7           Second, with respect to whether the Government has
8   additional motions in limine, I understand we did file on ECF
9   that it was our first motions in limine, but that was just a
10  matter of sort of how we ordinarily demarcate things.  The
11  parties jointly proposed a motion schedule in this case.
12  Those are our motions in limine.  In every trial there are
13  some additional motions that come up closer to the trial.  I
14  expect that will happen from both sides, but smaller
15  evidentiary issues.  With respect to our mainstay motions with
16  respect to 404(b), et cetera, those are our primary motions in
17  limine.
18          With respect to defense witnesses, I would note that
19  the defense has had more than a year to get its own witnesses
20  in order.  I don't think that's a basis for delay.
21          And with respect to CIPA, I will be careful here,
22  but I will note that my expectation is that once the
23  CIPA process is completed, the disclosures will be manageable
24  for the defense.
25          THE INTERPRETER:  The interpreter would ask relief.

1 Another interpreter has joined the conference.

2 THE COURT: Yes. Go ahead.

3 MS. KOMATIREDDY: Counsel requested the status of
4 remaining 3500 in order to plan the trial date. We are in the
5 process of obtaining a more accurate page count, but I think
6 it's fair to say that we're looking at thousands of pages, not
7 tens of thousands of pages, as well as some devices and
8 recordings.

9 But our primary concern, your Honor -- there are a
10 couple of additional concerns. As your Honor is aware,
11 witness security and movement in these kinds of cases is
12 complicated and really does involve threats to life and limb.
13 The Government has already begun moving witnesses and
14 preparing in anticipation of an October trial date. We have
15 particular concerns in light of counsel's filing earlier this
16 week that when we turn over material, whether it be in
17 discovery or 3500, or suggest what the evidence might be at
18 trial as we did in our motions in limine, that counsel will
19 then turn that around and file a brief, which he filed just a
20 couple days ago, that calls out individuals that the defendant
21 believes may be witnesses at trial and then engages in a
22 character assassination of those individuals in order to
23 dissuade them from being witnesses.

24 For that reason, although before this week we have
25 approached this process with an intention to turn over 3500

1  months in advance of the trial, which we have already begun
2  doing, in light of counsel's filing, regardless of when the
3  trial date is, we are reluctant to turn over any 3500 until
4  close to that trial date.
5        In short, the defendant should not be permitted more
6  time to sit with the 3500 in order to either intimidate
7  witnesses or try his case in the press before trying it in
8  court.
9        MR. DE CASTRO:  May I respond?
10       THE COURT:  Sure.
11       MR. DE CASTRO:  First of all, I must respond when
12 the Government is now accusing me of intimidating witnesses or
13 attempting to do so by filing a response to its motions
14 identifying these issues.  They filed the motions.  It's their
15 issue about bringing these issues to light.  Furthermore, it
16 has nothing to do with 3500 material, so they're mixing that
17 issue.  It is completely a red herring.
18       On June 6, I ran into a member of the prosecution
19 team and told them I did not believe we were headed towards an
20 October trial when asked.  Last week or the week before last,
21 I spoke with Mr. Harris and specifically told him that I am
22 not the type of lawyer that is going to game this and try to
23 get all of their 3500 and then ask for an adjournment.  I
24 understand that when we talk about the trial date, it reflects
25 when they will produce their 3500.

1    THE COURT: Mr. De Castro, before you go on, if I
2 understand what you just said, it is that you expected if I
3 kicked the trial date to January 9, that will co-extensively
4 delay the Government's production of 3500 material. Is that
5 what you're saying?

6    MR. DE CASTRO: Yes. And they have said all
7 along -- and I think we've had a perfectly fine working
8 relationship until they decided to attack me today -- was that
9 they would try to produce any 3500 that didn't involve any
10 sort of their view of sensitive material so that we could work
11 towards that same trial date.

12   I think the other thing that is important to note is
13 that still, sitting here today, they do not know the volume of
14 3500 material. It's bizarre to me. And second, my experience
15 with 3500 material for 20 years is that it's largely
16 single-spaced. So if we're talking about interviews,
17 hundreds, if not thousands of pages of interview notes that
18 are single-spaced that I have to review, we have to review
19 with Mr. Garcia Luna that is the heart of the case, that is
20 very significant.

21   What is extraordinary to me is that after trying
22 this case already, or at least the large portion of these
23 witnesses have already testified in a prior trial is my
24 understanding, that they do not know the volume.

25   One last thing, Judge. My apologies. The

1  suggestion that -- there was a suggestion that I'm somehow

2  trying this case or affecting the press.  I'd ask -- I point

3  out that they can Google or do whatever search they want and

4  go look for all the quotes that Mr. De Castro gives in all of

5  the hundreds of cases I've handled it would be on one hand.

6  So I'm not doing anything in the press.

7             THE COURT:  The case is in a little bit unusual of a

8  position.

9             MS. KOMATIREDDY:  I'm sorry to interrupt.  I

10 apologize to this.  I'm told the public line is not working.

11 I just wanted to raise it to the Court's attention.

12            THE COURT:  If the public line is not working, what

13 do the parties propose?  We should proceed or reconvene?

14            MS. KOMATIREDDY:  Your Honor, my proposal -- I don't

15 know if it's something that Mr. Scott is able to fix it or

16 not.  My proposal would be to proceed and make the transcript

17 available in an expedited fashion.

18            THE COURT:  Is that okay with you, Mr. De Castro?

19            MR. DE CASTRO:  That's fine with me, Judge.

20            THE COURT:  Under the circumstances, especially

21 considering that Mr. Garcia Luna is at the MDC and it's not

22 easy to arrange either his presence or these videoconferences,

23 we're going to proceed.  I will ask the court reporter to

24 please expedite preparation of the transcript from this

25 conference so that the public can have the access that they

*Rivka Teich CSR, RPR, RMR FCRR*
*Official Court Reporter*

1  are supposed to.

2  Mr. De Castro, if I understood what you were saying

3  at the beginning when you started to speak, it sounded like

4  you are not at this time moving to adjourn the trial to the

5  January 9 date.  Or are you?

6  MR. DE CASTRO:  I'm sorry.  It's hard for me to say.

7  THE COURT:  Let me put it this way.  I took what you

8  were saying to me that gives me a heads-up that it might come

9  to that.  Is that a fair characterization?

10  MR. DE CASTRO:  Yes, Judge.  I would characterize it

11  as this:  I gave the Government a heads-up that I need more

12  information to be able to say I can do this in October.  You

13  know, they act like we didn't set a January 9 backup date.  We

14  did that.  But then I think it's more like January 9.  And

15  they have provided no new information that tells me there is

16  any chance I can do this in October.  So, I mean, it's tough

17  to say.  I think there is no way -- I'm feeling like there's

18  no way I can do this in October, given what they are just

19  continuing to -- the representations they're making and the

20  documents they're giving me.

21  I think as -- just to be safe, why don't we just

22  keep the safe date that we've all -- I have blocked off both

23  of them.  There's not an issue, and we definitely should be

24  prepared.

25  THE COURT:  Let me ask you -- my other question,

 1  Mr. De Castro, is the volume of the 3500 material is really
 2  not material to this decision, is it?  Because, as you say, if
 3  we're going to adjourn the trial, then we're going to adjourn
 4  the production date for the 3500 material, and whether it's
 5  ten pages or 10 million pages, it won't materially affect the
 6  amount of time that you have to review that material.
 7            Isn't that right?
 8            MR. DE CASTRO:  It does and it doesn't.  The
 9  Government's prior position before today was they were going
10  to try to get me 3500 as quickly as possible of lots of the
11  witnesses so I would have been getting, I presume, a lot of
12  them and then they would hold off on others.
13            Today their position is, well, now that you've filed
14  a motion response, we're now going to give you 3500 whenever
15  we decide to give it to you.  So --
16            And, of course, as the Court knows, the -- their
17  obligation is really to give it to me after the witnesses
18  testify.  So I'm in a really tough spot here.
19            THE COURT:  One more question, Mr. De Castro.  I
20  don't know how much practice experience Mr. McManus or
21  Ms. Gottlieb have.  I will say Mr. McManus looks very young to
22  me, but so do a lot of people.
23            Given the magnitude of this case, Mr. De Castro,
24  would it assist you if I authorized under CJA either an
25  additional senior attorney like yourself to be cocounsel or a

1 less experienced attorney to help with document review?

2 MR. DE CASTRO: Judge, I thought of that as well.
3 But then there is the process of just getting someone up to
4 speed. It takes time. Ms. Gottlieb has been working with me
5 since 2013, I believe, and has tried many cases with me.
6 She's now a member of the Southern District of New York panel.
7 We've tried six-month-long cases, two-month-long cases, and
8 two-day-long cases. She's very experienced.

9 Mr. McManus is young. He has life experience, some
10 prior to law school experience. He's two years out of Fordham
11 Law.

12 THE COURT: I'm reading your website.

13 MR. DE CASTRO: And, Judge, of course I never turn
14 down help, number one. So yes, I would certainly welcome
15 that.

16 But it brings me back to, again, when we do get to
17 3500 production? What is the volume? If it's 100 pages,
18 that's one thing. If it's tens of thousands, well, that could
19 mean -- not tens of thousands. That could mean 9,000 pages.
20 I don't know what it is.

21 THE COURT: Okay. Here's what I'm going to do. I'm
22 not going to rule on it at the moment. There are a couple of
23 things I want to have happen.

24 Number one, I'm going to direct the Government
25 within the next ten days to give Mr. De Castro an estimate of

the volume of the 3500 material. That estimate is to be within a 10 to 15 percent margin of error.

Second, I am dubious about the Government's suggestion that Mr. De Castro may be taking advantage of the magnitude of the case in order either to discourage witnesses, although I know the Government is not ascribing that to him personally, or to allow more publicity about sensitive matters in the case.

I will say, Ms. Komatireddy, as Mr. De Castro pointed out, he kind of responded to the motion in limine that you filed. He didn't have much choice in that. I would suggest if there are any further such motions and the Government is concerned about that, one way to ameliorate, although I know not eliminate, the potential that the Government is concerned about is simply to use pseudonyms or numbers for these witnesses that come out in the pretrial motion practice.

I will also say in order to help me decide whether to adjourn the trial now or just leave it open as to whether we're going to adjourn the trial, if the Government really has more evidence than I've seen that there is a potential for witness discouragement, then I want an ex parte affidavit on that in a week. Based on everything I've heard today, that, to me, would be the most important reason to keep the current trial date.

                    I do think if the Government has been able to keep its witnesses in the fold this long, then I don't think they are going to have a likelihood of losing them before January instead of end of October, unless I get a very specific showing from the Government.

                    So for now we're going to keep the present date. But I will not be surprised if the case gets kicked to January 9, based on what I'm hearing.

                    Mr. De Castro, if you need more help, send me an application. All right?

                    On the current assumption that we're going to keep the current schedule, let's talk about the jury questionnaires, which is where I started. I'd like an agreed-upon questionnaire on September 9. The parties can put into it whatever they want, but I would recommend, as is the case with these questionnaires, that we eliminate conflicts and incompatibility in the questionnaires. In other words, I don't want to hear a juror say to me, well, my employer will only pay for two weeks of jury duty. Let's screen that out. Let's also screen out things like it's my 50th wedding anniversary; I've got a prepaid trip to Paris.

                    If the parties can't agree on particular things that one side thinks should be in and the other should not, just mark it up and I'll rule on what you've submitted.

                    If we do that, and just in case there are any

1  disputes I have to resolve, we will have the questionnaires

2  distributed to a potential jurors on the 19th of September.

3  The jurors will fill those out in court either on the 19th,

4  Monday, or maybe they will have to continue, depending how

5  long they are, on Tuesday the 20th.  The parties will then get

6  those by the end of that week on the 23rd, and then by

7  October 7th the best thing that could happen would be if they

8  give me an agreed pool of people who should be called in.  If

9  they agree on enough people, then those will be the ones we

10 call in.  If they don't agree, then I'll have to reach into

11 each side's proposals and decide -- or maybe we'll just call

12 in at random.  I think that's better.  We'll call in this

13 random if they don't agree on a pool.

14         That means please don't put anyone in your proposed

15 call in list that clearly has something that's going to take

16 them out of this trial.  If you get me that on the 7th, then

17 we will have time, I believe.  I'll check with the jury clerk

18 office, but I believe the clerk will be able to call in or

19 have everyone call in and check whether they should come in by

20 the following weekend.  That will be Sunday, the 16th.  That

21 will give them a week to clear their affairs and they'll be

22 able to come in on the 24th for selection.

23         I will note that's just my proposal.  If the parties

24 want to do something different, they should talk to each

25 other, and anything they agree to, as long as it doesn't jam

me or the jury selection department up too much, is probably going to be acceptable to me.

Anything else we need to cover today?

MS. KOMATIREDDY: Yes, your Honor.

First of all, with respect to the pending motions in limine, counsel filed his response on Wednesday, July 13. We don't have a reply date on the calendar. We would request July 27 for reply.

THE COURT: I think the local rules say seven days in the absence of a schedule set by the Court, but I have no problem giving you until the 27th.

MS. KOMATIREDDY: Thank you, Judge.

Lastly, we would just ask that the Court continue to exclude time and make a finding that there is still a good basis under the Speedy Trial Act for the exclusion of time between now and the current sort of trial October 24 based first on the pendency of motions in limina, second on the complexity of the case, and third on the defense counsel's stated need to prepare for trial.

THE COURT: I assume Mr. De Castro no opposition to excluding time.

MR. DE CASTRO: No opposition, Judge. I think you have excluded until the 24th. Anyway, you designated it complex, and I agree.

THE COURT: There are obviously ample grounds for

1 excluding time.  All three of the reasons that the Government

2 stated:  The complexity of the case, the pendency of motions,

3 and the need of defense counsel to do everything he can to

4 prepare.

5           Anything else from you, Mr. De Castro?

6           MR. DE CASTRO:  No, Judge.  Thank you.

7           THE COURT:  Thank you all for calling in.  We'll see

8 what happens with the trial date.  Like I say, we'll keep the

9 current one for now, but it won't shock me if we let it slip.

10           We are adjourned.

11           (Whereupon, the matter was concluded.)

12           *    *    *    *    *

13 I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.

14

15 */s/ Rivka Teich*
Rivka Teich, CSR RPR RMR FCRR

16 Official Court Reporter
Eastern District of New York

17

18

19

20

21

22

23

24

25