SK/RCH/EMR/PP/MED
F. #2019R00927

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                      Docket No. 19-CR-576 (S-1) (BMC)

GENARO GARCIA LUNA,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X


REPLY MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S
<u>FIRST MOTIONS *IN LIMINE*</u>


                                                   BREON PEACE
                                                   United States Attorney
                                                   Eastern District of New York
                                                   271 Cadman Plaza East
                                                   Brooklyn, New York 11201

Saritha Komatireddy
Ryan C. Harris
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this reply memorandum of law in support of its motions in limine to admit evidence at trial of certain crimes and acts not detailed in the superseding indictment.[1] See Dkt. No. 94 (the "Government's Motion" or Gov't Mot.") In his opposition brief, the defendant neither engages in a genuine analysis of the proffered evidence, nor does he attempt to distinguish the numerous Second Circuit cases that have permitted similar evidence at trial. Instead, in an effort to harass and dissuade potential government witnesses from testifying, the defendant unnecessarily attempts to guess the names of individuals who were anonymized in the government's motion and engage in a character assassination of these individuals, essentially requesting that the Court exclude their testimony because the defendant alleges it will be "incredible." But not only are the defendant's allegations ill-founded, they are also not proper considerations for the purpose of deciding the Government's Motion. Any attacks on the credibility of trial witnesses are only properly addressed on cross-examination. Accordingly, for the reasons discussed below and in the Government's motion, the Court should grant the Government's Motion.

ARGUMENT

A. The Defendant's Threats, Bribes and Harassment of Journalists

As outlined in the Government's Motion, the government seeks to introduce evidence that, during the charged time period, the defendant threatened, harassed and bribed journalists who investigated his crimes. Despite his arguments to the contrary, the defendant's

---

[1] The defendant does not respond in detail to the government's motion to preclude irrelevant, confusing or misleading evidence or argument, but writes that he does not intend, "at this time," to raise a selective prosecution defense or make references to the potential punishment the defendant faces. (Def.'s Opp'n at 1 n.1.) The Court should therefore grant the government's motion to preclude.

1

attempts to limit investigations into his participation in a vast narcotics conspiracy, whether through threats, intimidation, or bribes, is highly probative of his involvement in the drug trafficking activities of the Sinaloa Cartel as the cartel relied on the defendant remaining the chief law enforcement officer in Mexico so that he could continue to work on their behalf from within the government.

As an initial matter, the defendant spends much of his brief attacking the credibility of a specific journalist he believes will testify against him regarding a campaign of harassment waged by the defendant, evidence which he derides as "unsubstantiated" and "incredible." The defendant entirely ignores that the government also seeks to introduce evidence that, in approximately 2009 or 2010, the defendant used money amassed from a corrupt kickback scheme to pay bribes to a news organization to prevent journalists at the organization from publishing negative stories about his associations with drug cartels. (Gov't Mot. at 5.)

What is more, the defendant's attacks on the individuals he has chosen to harass in his motion are not only ill-founded, but also irrelevant because, even if the Court did have concerns about the credibility of a government witness, they would go to the weight of the witness's testimony and not its admissibility. "To be relevant [under Rule 401], evidence need not constitute conclusive proof of a fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" United States v. Mostafa, 16 F. Supp. 3d 236, 248 (S.D.N.Y. 2014) (quoting McKoy v. North Carolina, 494 U.S. 433, 440 (1990)). The fact that the defendant does not think the jury should credit a witness's account is immaterial under Rules 401 and 403, and the defendant will have ample opportunity to cross-examine any government witnesses using the lines of attack previewed in his brief.

The defendant also claims that the government's evidence is not relevant because numerous stories containing allegations against the defendant were published in the Mexican press, and therefore, "the government cannot claim that Mr. Garcia Luna somehow flew under the radar while taking bribes from the cartel." (Def.'s Opp'n at 16-17.) But the fact that the defendant was not more successful at intimidating journalists does not render his conduct inadmissible. Even though it is true that allegations were made against the defendant in the Mexican press, the government's evidence will show that the defendant's efforts to harass journalists and quash news stories were an attempt to prevent – and did prevent – additional negative coverage that could have led to his removal from power and the end to his corrupt assistance to the Sinaloa Cartel. In fact, the government anticipates presenting evidence that the defendant's efforts to bribe an editor at a news organization were successful and that the defendant was able to quash a story about his corrupt activities. The defendant's active and continual efforts while working for the Sinaloa Cartel to bribe and harass journalists are directly relevant to, and inextricably intertwined with, his corrupt assistance in the Cartel's drug trafficking activities because, if he were removed from his position, he would no longer have been able to use his power inside the government to further the Cartel's drug trafficking.

Even if the Court were to find that the government's proposed evidence is more properly admitted under Rule 404(b), the evidence is certainly admissible for the non-propensity purpose of showing the defendant's consciousness of guilt. To admit evidence under Rule 404(b), the court need only determine whether the jury could "reasonably conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681, 689 (1988). The government's burden of proof is by a preponderance of the evidence, United States v. Ramirez, 894 F.2d 565, 569 (2d Cir. 1990), and "the testimony of a single witness can be enough to permit

3

a reasonable jury to find a defendant committed a prior act by a preponderance of the evidence," United States v. Mohamed, 148 F. Supp. 3d 232, 241 (E.D.N.Y. 2015) (citing cases). Given that the government expects to introduce testimony from witnesses with direct knowledge of the defendant's attempts to bribe and intimidate journalists, the government will easily establish by a preponderance of the evidence that the defendant was involved in this conduct.

Notably, the defendant's brief does not mention or attempt to refute the government's argument that this evidence is properly admitted under Rule 404(b) as consciousness of guilt. Nor does he attempt to distinguish the numerous Second Circuit cases that have admitted similar evidence for this purpose. (See Gov't Mot. at 10-13.) The defendant attempting to silence multiple journalists on multiple occasions is highly probative of his "state of mind," and the jury should hear such evidence with a proper limiting instruction so they can determine the defendant's intent during the charged time period. See United States v. Mickens, 926 F.2d 1323, 1329 (2d Cir. 1991) (evidence that a defendant made a hand gesture in the shape of a gun as a key prosecution witness entered the courtroom to testify was properly admitted as proof of the defendant's consciousness of guilt).

Instead, the defendant cites United States v. Stein, 521 F. Supp. 2d 266 (S.D.N.Y. 2007), and United States v. Elias, No. 18-CR-33 (NGG), 2022 WL 715486, at *1 (E.D.N.Y. Mar. 10, 2022), as two examples where courts denied the admission of Rule 404(b) evidence because the proffered evidence was unnecessary to understand the charged conduct. The facts in those cases could not be further from the instant case. In Stein, the indictment charged the defendants with using four different tax shelters, and the government sought to admit evidence relating to uncharged tax shelters to show knowledge or intent of the charged tax shelters. 521 F. Supp. 2d at 270. The Court denied the government's motion, finding that the government proffered

"imprecise explanations of why the uncharged transactions were fraudulent and cursory assertions of alleged similarities" and holding that, even if the evidence was admissible under Rule 404(b), it would confuse the jury and cause unduly delays because the trial was scheduled to last four to five months and the jury already had to resolve "difficult questions as to the economic realities of the transactions." Id. at 269- 271. In Elias, in a trial regarding a Hobbs Act robbery, the court precluded evidence of the defendants' gang affiliation and their burning a vehicle not used in the robbery because this evidence had little probative value to explaining the robbery and the relationship between the defendants, especially given the strong evidence of financial discussions between the defendants prior to and after the robbery. 2022 WL 715486 at *3. Because the government here seeks to admit the defendant's conduct under Rule 404(b) to show his consciousness of guilt, the fact that some courts have denied the admission of Rule 404(b) evidence in factually distinct circumstances when that evidence was offered for a different purpose is irrelevant to this Court's determination.

The defendant also claims, without any factual basis, that the government's proposed testimony would necessarily be hearsay and "likely double and triple hearsay." (Def.'s Opp'n at 16.) But the government is only seeking to introduce admissible evidence, either through a witness's direct knowledge or an appropriate hearsay exception. Any hearsay objections can be dealt with at the appropriate time during trial.

Accordingly, the Court should permit evidence regarding the defendant's efforts to harass, silence, or bribe journalists as either direct evidence or as other acts evidence pursuant to Rule 404(b).

    B.    <u>The Defendant's Willingness to Tamper with Witnesses</u>

The government also seeks to introduce at least one recording between the defendant and another person ("Individual 1") in which the defendant discussed threatening

violence and tampering with witnesses against him. In response, the defendant engages in a character attack of Individual 1 and claims the recordings are incomprehensible, and therefore, inadmissible. As noted above, however, credibility determinations go to the weight of a witness's testimony and not its admissibility. Moreover, the evidence of the conduct at issue consists of recordings of the defendant, and therefore, Individual 1's criminal history or alleged motivation for making the recordings are irrelevant to the Court's or the jury's determination on the probative value of the recordings.

In addition, the defendant's argument regarding the quality of the recordings is contrary to established Second Circuit precedent as courts are instructed to take an inclusive approach to the admissibility of partially audible recordings. For example, in United States v. Bryant, 480 F.2d 785 (2d Cir. 1973), the audio recording at issue was imperfect: "some parts of the tape were totally inaudible" and "other parts were so garbled that only some jurors were able to understand what was being said." Id. at 790. Nevertheless, the Second Circuit concluded "the mere fact of some inaudibility does not require exclusion . . . ." Id. The Court held that the district court did not abuse its discretion in admitting the recordings because the audible portions of the contested recording had potential evidentiary value, the chain of recorded conversation was "never completely broken," and "the jury was fully apprised of the possible inaccuracy and unreliability of the tape through the testimony of witnesses and the arguments of counsel." Id.; see also United States v. Arango-Correa, 851 F.2d 54, 58 (2d Cir. 1988) ("Our decisions in this area reveal a clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative.").

Although the recorded conversations between the defendant and Individual 1 may be imperfect or inaudible from time to time, there are also long passages in which the audio is

6

clear: most notably, a moment when the defendant mentions to Individual 1 an interest in killing not only cooperating witnesses but also their families.[2] Considering these facts, it is difficult to see how the instant recordings materially differ from those admitted in Bryant. As in Bryant, at no point is the chain of the recorded conversation here ever completely broken while the defendant and Individual 1 discuss the potential witness tampering, nor are the unintelligible portions ever so substantial as to render the recordings wholly untrustworthy or incomprehensible. Moreover, the defendant will have every opportunity at trial to provide the jury with an alternate transcript or dispute the government's view that the recordings are highly probative.

The defendant also argues that the recordings are irrelevant under Rule 401 because, to the extent the defendant discusses potential witnesses or co-conspirators, those individuals were already known to him due to his positions of power in the Mexican government or public testimony, and therefore, do not reflect his knowledge of the conspiracy. This argument ignores the facts of the recording. The conversation is not a casual exchange about the defendant's purported work against drug cartels, but instead a deliberate discussion of tampering with an individual the defendant believes would be a witness against him. The defendant's use of identifying information in that discussion is highly relevant to the charged crimes.

Moreover, as with the government's proposed evidence on the defendant's efforts to silence journalists, the defendant has failed to respond to the government's argument that his discussion about killing a witness's family or discussing how a purported member of the Russian

---

[2] The Second Circuit has advised that, "[b]efore either tapes or transcripts are submitted to the jury, the judge should listen to the tapes and examine the transcripts in camera, receiving both sides' objections to the proposed evidence." United States v. Chiarizio, 525 F.2d 289, 293 (2d Cir. 1975). A transcript of this portion of the recording is included in the Government's Motion, Gov't Mot. at 6, and a complete transcript and the audio recording were provided to the Court on June 17, 2022. See ECF No. 97, Exhibits A and B.

mafia could "set up" a witness is admissible under Rule 404(b) as consciousness of guilt. For the reasons described in the Government's Motion, the defendant's expressed desire to tamper with witnesses after his arrest is admissible for this non-propensity purpose, and is also more probative then prejudicial. See Gov't Mot. at 10-13.

Accordingly, the Court should permit evidence regarding the defendant's threatening violence and tampering with witnesses against him as either direct evidence or as other acts evidence pursuant to Rule 404(b).

## CONCLUSION

For the foregoing reasons and the reasons stated in the government's motion, the Court should grant the government's motions in limine in their entirety.

Dated: Brooklyn, New York
      July 27, 2022

                                    Respectfully submitted,

                                    BREON PEACE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York

                  By:      /s/
                                    Saritha Komatireddy
                                    Ryan C. Harris
                                    Erin M. Reid
                                    Philip Pilmar
                                    Marietou E. Diouf
                                    Assistant United States Attorneys
                                    (718) 254-7000