**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

United States of America,

       -   v. -

Genaro Garcia Luna, et al.,

              Defendant.

19 Cr. 576 (BMC)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GENARO GARCIA LUNA'S: (1) MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b); AND (2) MOTION FOR A BILL OF PARTICULARS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 7(f)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I. MR. GARCIA LUNA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b) .................................................................................1

    A. PRELIMINARY STATEMENT .................................................................................1

    B. RELEVANT FACTS .................................................................................................2

    C. ARGUMENT .............................................................................................................4

        *1. A Motion to Dismiss Pursuant to Fed. R. Crim. Proc. 12(b) Prior to Trial Is Appropriate Where the Relevant Facts as Assumed Are not in Dispute ...........4*

        *2. For Purposes of this Motion, Mr. Garcia Luna Withdrew From Any Alleged Conspiracy in 2012 When he Left the Mexican Government .............................5*

        *3. Mr. Garcia Luna's Denial of Having Committed Prior Crimes Did Not Reestablish a Link to the Charged Conspiracies.................................................7*

II. MR. GARCIA LUNA'S MOTION FOR A BILL OF PARTICULARS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 7(f).......................................................13

    A. PRELIMINARY STATEMENT ...............................................................................13

    B. RELEVANT FACTS ...............................................................................................13

    C. TO PERMIT MR. GARCIA LUNA TO PROPERLY PREPARE HIS DEFENSE, THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE THE DEFENSE WITH A BILL OF PARTICULARS, INCLUDING A LIST OF THE NAMES OF ALLEGED UNINDICTED CO-CONSPIRATORS.............................15

    D. CONCLUSION .......................................................................................................22

**TABLE OF AUTHORITIES**

**Cases**

*Grunewald v. United States*, 353 U.S. 391 (1957) .................................................................7, 9, 12

*Smith v. United States*, 568 U.S. 106 (2013) ..................................................................................5

*United States v. Allen*, 492 F. App'x 273 (3d Cir. 2012) .............................................................11

*United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998).................................................................16

*United States v. Bazezew*, 783 F. Supp. 2d 160 (D.D.C. 2011)...................................................18

*United States v. Berger*, 224 F.3d 107 (2d Cir. 2000).............................................................8, 10

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000) .........................................16, 17

*United States v. Borelli*, 336 F.2d 376 (2d Cir. 1964)............................................................6, 10

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987)...............................................16, 17, 18

*United States v. Clarkson Auto Elec., Inc.*, No. 10 Cr. 6111G, 2014 WL 3906324

    (W.D.N.Y. Aug. 8, 2014) .......................................................................................................16

*United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp.3d 69 (D.D.C. 2019) .............20

*United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988).............................................................16

*United States v. Eisen*, 974 F.2d 246 (2d Cir.1992) ....................................................................10

*United States v. Eppolito*, 543 F.3d 25 (2d Cir. 2008) ..................................................................5

*United States v. Goldberg*, 401 F.2d 644 (2d Cir. 1968)..............................................................11

*United States v. Grammatikos,* 633 F.2d 1013 (2d Cir.1980) ........................................................5

*United States v. Greenfield*, 44 F.3d 1141 (2d Cir. 1995).............................................................6

*United States v. Hoskins*, 44 F.4th 140 (2d Cir. 2022).................................................................11

*United States v. Ikoli*, No. 16 Cr. 148 (AJN), 2017 WL 396681 (S.D.N.Y. Jan. 26, 2017)..........17

*United States v. Jailall*, No. 00 Cr. 69 (RWS), 2000 WL 1368055

(S.D.N.Y. Sept. 20, 2000) ............................................................................17, 18

*United States v. Kang*, 715 F. Supp. 2d 657 (D.S.C. 2010) ...........................................8

*United States v. Lino,* No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan 2, 2001) ..............17

*United States v. Luna,* No. 05 Cr. 58 (SRU), 2006 WL 1668006 (D. Conn. May 17, 2006)........18

*United States v. Nachamie*, 91 F. Supp.2d 565 (S.D.N.Y. 2000)...........................................18, 19

*United States v. Nerlinger*, 862 F.2d 967 (2d Cir. 1988) ..................................9, 10, 11

*United States v. Sampson*, 898 F.3d 270 (2d Cir. 2018).................................................................4

*United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ...18, 19

*United States v. Sperling*, 506 F.2d 1323 (2d Cir. 1974) .............................................16

*United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998)................................................19

*United States v. Urso*, 369 F. Supp. 2d 254 (E.D.N.Y. 2005)........................................17

**Statutes**

18 U.S.C. § 3282(a) .............................................................................................................5

21 U.S.C. § 848 ..................................................................................................................16

**Rules**

Fed. R. Crim Proc. 12(b) ..........................................................................................4, 5, 12

Fed. R. Crim. Proc. 7(f) ...............................................................................................16, 21

## I.     MR. GARCIA LUNA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)

### A.  PRELIMINARY STATEMENT

The first four counts of the superseding indictment must be dismissed.  The indictment and the discovery provided by the government establish that: (1) Mr. Garcia Luna was charged more than five years after he left the Mexican government in 2012, before the time he is alleged to have assisted the charged conspiracies; (2) even if he was a member of the conspiracies, an allegation he vehemently denies, his retirement from public service in 2012 served as withdrawal from the charged conspiracies; and (3) a mere denial on an immigration from in 2018 that he previously committed crimes does not re-establish a link to the conspiracies.

In a superseding indictment filed in July 2020, Genaro Garcia Luna was charged with participating in several overlapping conspiracies, international cocaine conspiracy, conspiracy to import cocaine, conspiracy to possess and distribute cocaine, and he was charged with being a member of a in a continuing criminal enterprise.  These charges all relate to the same alleged conduct, that Mr. Garcia Luna, first as head of Mexico's Federal Investigations Agency (2001-2005) and then as Mexico's Secretary of Public Security (2006-2012), conspired with the Sinaloa drug cartel and its narcotics trafficking activities by accepting bribes in exchange for lenient law enforcement.  Although the superseding indictment claims that the conspiracy between Mr. Garcia Luna and the cartel extended from 2001 to the present, the government has never alleged that Mr. Garcia Luna engaged in any conspiratorial conduct after 2012, when he left the Mexican government and moved to the United States to pursue a private career, except for denying in one question of a 2018 immigration form that he had ever committed crimes, for which he was not arrested.  Even if Mr. Garcia Luna had participated in a conspiracy with the Sinaloa cartel

between 2001 and 2012, which he did not, it is evident that by retiring from public life and leaving Mexico in 2012, Mr. Garcia Luna withdrew from any alleged conspiracy. The statute of limitations for the offenses with which Mr. Garcia Luna is charged is five years. Because he was not charged until December 2019, more than five years after his retirement in 2012, and because a mere denial of having committed crimes does not reestablish a link to any conspiracy, the first four counts of the indictment should be dismissed.

## B. RELEVANT FACTS

The parties agree that Mr. Garcia Luna served as head of Mexico's Federal Investigations Agency from 2001 to 2005, and as Mexico's Cabinet Secretary for Public Security between 2006 and 2012. It is also undisputed that Mr. Garcia Luna very publicly retired from his prominent position in the Mexican government when the administration of Mexican President Felipe Calderon ended in 2012. *See e.g.* Govt. Memorandum in Support of First Motions *in Limine*, ECF Doc. 94, filed 6/15/22, at 4 (acknowledging that Mr. Garcia Luna left public life in 2012 and moved to Miami, Florida to pursue work in the private sector that same year).

The government's general theory of Mr. Garcia Luna's culpability is summed up in its memorandum in support of its first motions *in Limine*:

> While holding public office, the defendant used his official positions to assist the Sinaloa Cartel, a notorious Mexican drug cartel, in exchange for multimillion-dollar bribes. . . Between at least 2001 and 2012, the defendant used the political power that he gained from his official positions to assist the Sinaloa Cartel in exchange for tens of millions of dollars in payments. . . During the time that the defendant protected the Sinaloa Cartel in exchange for bribes, the cartel was able to send multi-ton drug loads to the Eastern District of New York, including Brooklyn and Queens. In 2012, the defendant relocated from Mexico to Miami, Florida, where he continued to conceal his corrupt assistance to the Sinaloa Cartel. In 2018, he submitted an application for naturalization to the Department of Homeland Security ("DHS"). In that paperwork, the defendant falsely denied any past criminal conduct.

*Id.* at 2-4; *see also* Gov. Detention Memo, ECF. Doc. 4, filed 12/10/19 at 3 ("Evidence obtained by law enforcement has revealed that, *while he was a public official* in Mexico, the defendant received millions of dollars in bribes from the Sinaloa Cartel in exchange for providing protection for its drug trafficking activities.") (emphasis added).

As noted, Mr. Garcia Luna's position as a public law enforcement official in Mexico ended in 2012. He moved to Miami and lived life as a private citizen. In 2013, shortly after his arrival in the United States, he was granted permanent legal residency. In 2018, he applied for United States citizenship. As part of the application process, Mr. Garcia Luna completed a lengthy questionnaire. Question No. 22 on the questionnaire asked the following: "Have you ever committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested." Mr. Garcia Luna checked the box "no." *See* Discovery Bates No. 0000000279, attached as Exhibit "A". The government points to this question and Mr. Garcia Luna's answer to suggest that he "falsely denied any past criminal conduct." *See* Gov. Memorandum in Support of First Motions *in Limine*, at 4.

On December 4, 2019, the government obtained an indictment against Mr. Garcia Luna charging him with participation in an international cocaine distribution conspiracy in violation of 21 U.S.C. §§ 963, 960(b)(l)(B)(ii); conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841; conspiracy to import cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a); and making false statements in his naturalization application in violation of 18 U.S.C. § 1001. Mr. Garcia Luna was arrested on December 10, 2019, and has remained detained since that time. On July 30, 2020, the government obtained a superseding indictment, which added two co-defendants to Mr. Garcia Luna's case, and additionally charged him with participating in a continuing criminal enterprise in violation of 21 U.S.C. § 848.

## C.  ARGUMENT

*1.  A Motion to Dismiss Pursuant to Fed. R. Crim. Proc. 12(b) Prior to Trial Is Appropriate Where the Relevant Facts as Assumed Are not in Dispute*

A motion to dismiss under Fed. R. Crim Proc. 12(b) prior to trial can be decided by the Court when there are no factual disputes between the parties.  Accordingly, although Genaro Garcia Luna absolutely and unequivocally denies the allegations and charges in the superseding indictment, for purposes of this motion he accepts the government's allegations as true.

There is no factual dispute that Mr. Garcia Luna left his public position in the Mexican government in 2012 and moved to the United States.  Moreover, the retirement was publicly known, was widely reported in the media, and therefore reasonably reached members of the Sinaloa drug cartel.  Everyone in Mexico knew that the administration of President Felipe Calderon had ended and that Mr. Garcia Luna was therefore no longer a member of the Mexican government.  According to the prosecution, Mr. Garcia Luna's only involvement in the conspiracies was the alleged assistance he provided the cartel as a member of the Mexican government.  Therefore, Mr. Garcia Luna's public retirement from government constituted withdrawal from the alleged conspiracy.

For the first four counts of the superseding indictment not to be foreclosed by the statute of limitations, the government has to point to activities by Mr. Garcia Luna after December 4, 2014, that furthered the objectives of the alleged conspiracy.  In its pleadings, the government has identified only one such alleged act: the allegedly false claim by Mr. Garcia Luna in his naturalization application that he had not committed crimes in the past.

The question of law to be resolved by this Court before trial is whether Mr. Garcia Luna's undisputed denial of prior crimes is sufficient to reestablish a link to the alleged conspiracy.  *See e.g. United States v. Sampson*, 898 F.3d 270, 278–79 (2d Cir. 2018) ("To be

clear, Rule 12(b) allows a party to raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits. In some circumstances, moreover, a party may raise and establish a statute-of-limitations defense via a Rule 12(b) motion. . .").  Here, because the relevant facts are not in dispute (Mr. Garcia Luna's public resignation from the Mexican government in 2012 and his denial of prior crimes on the naturalization questionnaire), the Court can and should resolve this legal question before trial.

2. *For Purposes of this Motion, Mr. Garcia Luna Withdrew From Any Alleged Conspiracy in 2012 When he Left the Mexican Government*

In this case, Mr. Garcia Luna asserts that even if he had been a member of the charged conspiracies, which he was not, his resignation from his position in the Mexican government in 2012, constituted a withdrawal from any such conspiracy and the first four counts of the superseding indictment are therefore time-barred.

Pursuant to the statute of limitations, 18 U.S.C. § 3282(a), the prosecution of a narcotics conspiracy is barred unless the government obtains an indictment charging the offense within five years after it was committed.  To determine whether an indictment charging a narcotics conspiracy falls within the statute of limitations period "the conspiracy may be deemed terminated when, in a broad sense, its objectives have either been accomplished or abandoned." *United States v. Grammatikos,* 633 F.2d 1013, 1023 (2d Cir.1980).  Alternatively, even if the conspiracy is not concluded, "[a] defendant who withdraws [from the conspiracy] outside the relevant statute-of-limitations period has a complete defense to prosecution." *Smith v. United States*, 568 U.S. 106, 107 (2013).  In *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008), the Second Circuit Court of Appeals summarized the withdrawal defense as follows:

> For a defendant to show that he withdrew from the conspiracy, proof merely that he ceased conspiratorial activity is not enough. He must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators. And the defendant must not take any subsequent acts to promote the conspiracy or receive any additional benefits from the conspiracy.

(internal citations and quotation marks omitted)[1]; *see also United States v. Borelli*, 336 F.2d 376, 388 (2d Cir. 1964) (withdrawal requires an affirmative action such as "communication of the abandonment in a manner reasonably calculated to reach co-conspirators.").

Mr. Garcia Luna's public resignation from government, his departure from public life, and his move to the United States all were sufficient to "reasonably" reach any alleged co-conspirators. The end of the Calderon administration and the election of a new government in 2012, were widely reported in the media and well-known to every Mexican citizen. Mr. Garcia Luna served as Mexico's equivalent of the U.S. Secretary for Homeland Security in the Calderon administration, and it was therefore well known that his term in that post concluded with the end of the administration. Given the prominence of his position and its end, it is also obvious that members of the Sinaloa cartel who allegedly benefitted from Mr. Garcia Luna's powerful position understood that those benefits ended with his resignation.

The government seemingly concedes this point, stating that Mr. Garcia Luna's alleged actions on behalf of the Sinaloa cartel all took place during his time in the Mexican government. *See* Gov. Memorandum in Support of First Motions *in Limine* at 2-4; Gov. Detention

---

[1] As the Second Circuit has stated, "the point of such 'affirmative evidence' requirements, though, is not to compel a conspirator to inform on his or her co-conspirators or to warn-off possible victims, admirable as those actions might be. It is rather to make sure that a withdrawal did occur and is not simply being invented *ex post.*" *United States v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995). Here, there is no dispute that Mr. Garcia Luna publicly resigned from his position in the Mexican government and entered private life.

Memorandum at 3 ("Evidence obtained by law enforcement has revealed that, *while he was a public official* in Mexico, the defendant received millions of dollars in bribes from the Sinaloa Cartel in exchange for providing protection for its drug trafficking activities.") (emphasis added). Indeed, nowhere in the superseding indictment, in any other pleading, or in the discovery does the government argue that Mr. Garcia Luna took any affirmative actions in furtherance of the narcotics conspiracy after 2012.

### 3. *Mr. Garcia Luna's Denial of Having Committed Prior Crimes Did Not Reestablish a Link to the Charged Conspiracies*

Having failed to allege that Mr. Garcia Luna committed any acts in furtherance of the conspiracies after 2012, the government appears to suggest that his general answer about prior crimes on an immigration form in 2018 somehow re-established his link to the conspiracies. The government cannot show that Mr. Garcia Luna's participation in the conspiracies was even feasible after 2012, and its claim that a general denial of criminal conduct sufficiently connected him back to the conspiracies is incorrect.

In 1957, the Supreme Court thoroughly analyzed the question of whether concealment of a conspiracy can constitute an act in furtherance of the conspiracy. In *Grunewald v. United States*, 353 U.S. 391 (1957), the court rejected the government's theory that an agreement to conceal a conspiracy should be deemed part of the conspiracy and could extend its duration for statute of limitations purposes. The court cautioned:

> allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the

conspirators' traces.  Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators.

*Id.* at 399; *see also e.g. United States v. Kang*, 715 F. Supp. 2d 657, 675 (D.S.C. 2010) ("Moreover, it defies common sense to suggest that concealment is not fundamental in every conspiracy.  The court rejects the government's contention that somehow the concealment alleged in this case is different or unique, rather than part and parcel of any conspiracy to commit accounting fraud.").

Because concealment suggests the hiding of something specific, the undisputed facts here arguably do not even rise to "concealment."  Mr. Garcia Luna was asked a generic question on a standard naturalization questionnaire about whether he had previously committed any crimes for which he had not been arrested.  He responded, "no."  The form did not ask about specific ties to the Sinaloa drug cartel, he did not conceal the names of other members of the alleged conspiracy, he did not mislead investigators who were specifically examining the activities of the cartel or send them in some fruitless direction.  A generic denial of having committed crimes did nothing to further the objectives of the charged conspiracies.

These undisputed facts set Mr. Garcia Luna's case apart from *United States v. Berger*, 224 F.3d 107 (2d Cir. 2000), in which the Second Circuit found that an act of concealment did extend the life of the conspiracy.  In *Berger*, the defendants were purported to be employed in an institution called Toldos Yakov Yosef Seminary (TYY), which was supposed to serve as a school for children in a Hassidic community and had received $11 million in Pell Grants from the government.  *Id.* at 111-112.  TYY was a sham and existed only on paper, designed to defraud the government.  In 1991, defendant Goldstein officially resigned from TYY and notified government funders of that resignation.  At trial, Goldstein argued that his resignation,

which occurred more than five years before the indictment, constituted a withdrawal from the conspiracy. In affirming the jury's rejection of that defense, the Second Circuit pointed to statements Goldstein made to a DOE investigator in 1996. According to the Court,

> Goldstein lied to law enforcement agents by falsely stating that he had worked as TYY's Administrator, falsely identifying other supposed administrators, and falsely describing the supposed educational offerings at the sham school. Even if Goldstein truly severed all ties to the conspiracy after his resignation in 1991, these lies—which occurred well within the five-year period preceding the filing of the indictment—reestablished his link by helping to conceal the conspiracy from investigators.

*Id.* at 119.

Goldstein's actions, however, were fundamentally different than Mr. Garcia Luna's generic denial of having previously committed any crimes. Mr. Garcia Luna's denial was not directed at investigators examining the precise conduct for which he was later accused, he did not conceal the identities of co-conspirators, and he did not falsely misrepresent the activities of the cartel. Even if Mr. Garcia Luna had been involved in a criminal conspiracy until 2012, his blanket denial was, as the Supreme Court said, "nothing more than that the conspirators do not wish to be apprehended—a concomitant, certainly, of every crime since Cain attempted to conceal the murder of Abel from the Lord." *Grunewald*, at 405–06.

Indeed, this case is much more akin to *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988), in which the Second Circuit agreed that Nerlinger's resignation and subsequent lack of activities in support of the conspiracy constituted withdrawal. Nerlinger was a trader in the New York office of First Commodity Corporation of Boston, Inc. (FCCB). He was eventually drawn into a criminal conspiracy with his co-defendants to defraud account holders of FCCB. "According to the indictment, the principal objective of the conspiracy was to defraud legitimate customers of FCCB by assigning profitable trades to the salesmen's accounts. Nerlinger's role in

that scheme was to open and maintain an account at FCCB into which DeAngelis could direct trades in exchange for fifty percent of the profits." *Id.* at 974. At a certain point, Nerlinger resigned from FCCB and closed the account through which the fraud had occurred. *Id.* at 970. At trial, Nerlinger argued that his resignation from FCCB and closing of the account constituted withdrawal from the conspiracy. The Second Circuit agreed:

> By closing his FCCB account, Nerlinger foreclosed his continuing in that role and relinquished any claim to subsequent profits. The only question is whether his closing of the account constitutes an "affirmative action" in light of the rules that mere cessation of conspiratorial activity is not enough, and that withdrawal must be accompanied by a communication of the abandonment in a manner reasonably calculated to reach co-conspirators. Nerlinger's closing of the account does satisfy this standard because it disabled him from further participation and made that disability known to DeAngelis. That is enough. Nothing in *Borelli* or any other case requires the hiring of a calligrapher to print formal notices of withdrawal to be served upon coconspirators.

*Id.* at 974.

Likewise, Mr. Garcia Luna resigned from the Mexican government (where he allegedly had the power to assist the Sinaloa cartel), left the country and entered private life. These circumstances "disabled him from further participation," and the government has made and will make no claim that he took any further actions on behalf of the alleged conspiracy other than to deny criminal conduct in a standard application.[2] In other words, while resignation from the

---

[2] To the extent that the government claims, as it has done obliquely in other pleadings, that Mr. Garcia Luna's participation in the charged conspiracies somehow also continued past his resignation from public office in 2012 because he allegedly continued to live off the fruits of his criminality, that is a meritless argument. The Second Circuit has stated that a "defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of the conspiracy and continues to *receive* benefits from the conspiracy's operations," not if those benefits were received before withdrawal but remnants of the funds remained after withdrawal. *Berger*, 224 F.3d at 119 (emphasis added). *See also United States v. Eisen,* 974 F.2d 246, 269 (2d Cir.1992) (the defendant's resignation from the conspiring law firm was not sufficient to constitute a withdrawal because he "continued to be entitled to a percentage of the recovery on

conspiracy without more is not enough to constitute withdrawal, the creation of circumstances where continued participation was not feasible certainly is. It is pointless for the cartel to bribe a private person with no governmental powers. *See United States v. Hoskins*, 44 F.4th 140, 156 (2d Cir. 2022) (noting that in *Nerlinger* "it was not solely the defendant's resignation that constituted withdrawal, but rather the fact that the defendant also closed an account used to perpetuate fraud.")*; see also United States v. Goldberg*, 401 F.2d 644, 648 (2d Cir. 1968) ("[I]n Scheftel's case there is more than the mere absence of evidence of activity after the cutoff date; there is uncontroverted, affirmative evidence that Scheftel abandoned the illegal enterprise in a manner reasonably calculated to reach co-conspirators.") (internal citation and quotation marks omitted). Mr. Garcia Luna's denial of any criminal conduct in one question on an immigration form is insufficient to establish that he re-established a connection with the charged conspiracies.

Accordingly, the government has made clear that its entire theory is that through his powers as a prominent government official, Mr. Garcia Luna assisted the activities of the Sinaloa Cartel in exchange for bribes. That assistance was foreclosed when he retired from public life in 2012, a fact well known and obvious to the Sinaloa Cartel. The government has not alleged that Mr. Garcia Luna took bribes or assisted the cartel in any other way once he was in private life. Accordingly, for the reasons described above, even when viewed in the light most favorable to government, Mr. Garcia Luna withdrew from the alleged conspiracies in 2012.

---

all cases he tried including those giving rise to his pre-[resignation] racketeering acts."); *United States v. Allen*, 492 F. App'x 273, 278 (3d Cir. 2012) ("Although Allen claims that he withdrew from the conspiracy before December 3, 2004, five years before the government obtained the Indictment charged in the conspiracy, we find that Allen did not affirmatively withdraw from the conspiracy prior to the SOL. There was testimony from one of the FBI Special Agents that RRG received wire transfers for funds from March 23, 2004 to December 7, 2004.").

Furthermore, Mr. Garcia Luna's denial of criminal conduct on his 2018 naturalization form was insufficient to reconnect him to the charged narcotics conspiracies. That blanket denial could have had no impact whatsoever on the goals of the conspiracies and it is inconceivable under *Grunewald* that this denial could constitute an act in furtherance of the conspiracy. Therefore, the statute of limitations precludes prosecution of the first four counts of the superseding indictment and they should be dismissed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

## II.   MR. GARCIA LUNA'S MOTION FOR A BILL OF PARTICULARS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 7(f)

### A.  PRELIMINARY STATEMENT

The Court should order the government to produce a detailed bill of particulars, including the names of unnamed coconspirators and trial witnesses.  Such production is necessary for the defense to adequately prepare and avoid surprise at trial.  The defense has reviewed thousands of documents containing millions of pages, and hundreds of hours of audio and video recordings. To date, we have yet to encounter any evidence demonstrating Mr. Garcia Luna's involvement in the charged conspiracy.  Moreover, given the breadth of the conspiracy charged, the lack of detail in the indictment and the lack of probative materials in the government's vast discovery materials, it is impossible for Mr. Garcia Luna's lawyers to adequately prepare for trial without additional particulars from the government.  Other than allegations made by a cooperator at the Guzman Loera trial that Mr. Garcia Luna allegedly accepted millions in cash from a cartel member over 15 years ago, the defense has no idea what alleged conduct by Mr. Garcia Luna the government intends to prove at trial.  Although the government has told the defense that the specific alleged criminal conduct by Mr. Garcia Luna will become clear in the 18 U.S.C. § 3500 materials, the government now states that it will not produce that material until shortly before the trial.  Without the specific information sought herein, counsel are forced to mount a defense without knowing what to defend against, and such a position runs afoul of Mr. Garcia Luna's constitutional rights.

### B.  RELEVANT FACTS

Mr. Garcia Luna was arrested in Dallas, Texas on December 9, 2019.  The government has charged Mr. Garcia Luna with participating in an eighteen-year international narcotics conspiracy involving more than 50 tons of cocaine.  The indictment alleges that Mr. Garcia Luna

13

used his position as a high-level official in the Mexican government to protect and further the drug trafficking activities of the Sinaloa Cartel in exchange for multi-million-dollar bribes. While the indictment includes six specific instances of cocaine distribution in which Mr. Garcia Luna is alleged to have conspired, the indictment does not contain specific acts that would give rise to criminal liability by Mr. Garcia Luna. To date, the only specific allegation against Mr. Garcia Luna of which the defense is aware comes from the cross-examination of a cooperating witness who testified against Mr. Guzman Loera in November 2018. That individual offered the dubious testimony that Mr. Garcia Luna, a well-known Mexican government official, met in a public restaurant with a leader of the Sinaloa Cartel and received $3 to $5 million in a bag. The government has not provided discovery that establishes the existence of these alleged funds, let alone traces them to Mr. Garcia Luna.

Pursuant to Rule 16, the government has produced over 1,200,000 pages of discovery and audio recordings. With most of these documents bearing little to no relation to Mr. Garcia Luna, by letter dated April 15, 2022, defense counsel requested a bill of particulars from the prosecution to help avoid a trial surprise. *See* letter annexed hereto at Exhibit "B." The government responded on May 1, 2022, stating that the specific information being sought by the defense would be found in § 3500 material and that the government would "identify those materials that can be produced to you *well in advance of trial* on a rolling basis for early disclosure[.]" Letter annexed hereto at Exhibit "C" (emphasis added). Contrary to this representation, during the most recent status conference on July 15, 2022, the government expressed that it does not intend to turn over any additional § 3500 material until close to the trial date. *See* Hearing Tr. at 8-9. It offered as a basis for its change of position the false accusation

that in responding to the government's first motions *in Limine*, the defense engaged in witness intimidation and attempted to try the case in the press.

The Court found that the defense engaged in no misconduct in its response. *See* Dkt. No. 117 at 4-5.

After more than thirty-three months since Mr. Garcia Luna was arrested and detained, and after the production of more than 1 million pages of discovery, the government has not yet disclosed a single piece of evidence suggesting he undertook any act in furtherance of the charged conspiracy beyond the general allegation that he received bribes in exchange for providing some kind of unspecified assistance to drug traffickers at some point or points during an eighteen-year time period. The government has yet to produce any evidence of payments, shipments, laundered funds, or even orders given by Mr. Garcia Luna in furtherance of the alleged conspiracy. Without the particular information requested herein, the defense is forced to wait until close to the trial date when the government turns over the majority of the § 3500 material which is estimated to be an additional 7,500 mostly single-spaced pages and 4,900 audio recordings of unknown length. By taking this approach, the government is ensuring that the defense is limited to preparing its defense in earnest only on the eve of trial while the government has had years to prepare.

### C. TO PERMIT MR. GARCIA LUNA TO PROPERLY PREPARE HIS DEFENSE, THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE THE DEFENSE WITH A BILL OF PARTICULARS, INCLUDING A LIST OF THE NAMES OF ALLEGED UNINDICTED CO-CONSPIRATORS

In order to provide Mr. Garcia Luna with a constitutionally protected defense pursuant to the Sixth Amendment to the United States Constitution, avoid unnecessary trial surprise, and provide him with a fair and just trial, the Court should order the government to provide Mr. Garcia Luna with a bill of particulars.

Pursuant to Federal Rule of Criminal Procedure 7(f), the Court may order the government to file a bill of particulars. The government should provide the defense with particulars when it is needed for it to prepare its defense. *See United States v. Bortnovsky*, 820 F.2d 572, 574, 575 (2d Cir. 1987); *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000).

When the allegations in an indictment are broad in scope, a bill of particulars is especially appropriate. *See United States v. Clarkson Auto Elec., Inc.*, No. 10 Cr. 6111G, 2014 WL 3906324, at *2 (W.D.N.Y. Aug. 8, 2014) (citing *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998) (finding bill of particulars appropriate where "a conspiracy count covers a complex series of events over a number of years" but denying the claim under harmless error); *United States v. Davidoff*, 845 F.2d 1151, 1154-55 (2d Cir. 1988) ("The decision to grant or deny a bill of particulars is within the sound discretion of the district court.").

Where, as is the case here, an individual is charged with violating 21 U.S.C. § 848, the government must prove that the individual "occupied a position as organizer or a managerial or supervisory position with respect to a continuing narcotics trafficking operation in concert with five or more other persons, and that he received substantial income or resources from the operation." *United States v. Sperling*, 506 F.2d 1323, 1344 (2d Cir. 1974). A bill of particulars may be necessary in order for the government to satisfy this exacting standard and for the defense to be in position to adequately defend against such charges. *Id.* at 1344-45 (affirming § 848 conviction where "[t]he indictment as amplified by the bill of particulars made it crystal clear" to the defendant what the nature of the government's case was "and afforded him an opportunity fairly and adequately to prepare his defense.").

For Mr. Garcia Luna's defense team to properly prepare for trial, the Court should order the government to amplify the superseding indictment with a bill of particulars The superseding

indictment alleges an eighteen-year conspiracy dating back to 2001, and yet provides virtually no details regarding the acts allegedly committed by Mr. Garcia Luna in furtherance of that conspiracy. Similarly, the government has produced mountains of discovery material which, after a thorough review by defense counsel, provides no evidence or documents implicating Mr. Garcia Luna in any criminal conduct, and the government has not provided any meaningful guidance as to which materials might be relevant to him.

Furthermore, the government cannot hide behind its production of millions of pages of documents as part of its Rule 16 obligations as a rationale for failing to provide the defense with particulars. Voluminous discovery only supports the rationale for a detailed bill of particulars. *See Bin Laden*, 92 F. Supp. 2d at 234 ("It is no solution to rely solely on the quantity of information disclosed by the Government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."). Numerous courts in this Circuit have recognized that voluminous discovery is not a substitute for a bill of particulars. "[A] bill of particulars is appropriately granted where the government's pre-trial discovery disclosures are so voluminous that the defendant remains in the dark about the specific acts of which he is accused." *United States v. Urso*, 369 F. Supp. 2d 254, 271–72 (E.D.N.Y. 2005) (citing *Bortnovsky*, 820 F.2d at 575). "[T]he Government cannot meet its burden by dumping voluminous discovery upon the defendants without any sort of guidance." *United States v. Ikoli*, No. 16 Cr. 148 (AJN), 2017 WL 396681, at *6 (S.D.N.Y. Jan. 26, 2017) (citing *Bortnovsky*, 820 F.2d at 575 and *United States v. Jailall*, No. 00 Cr. 69 (RWS), 2000 WL 1368055, at *8 (S.D.N.Y. Sept. 20, 2000)); *see also United States v. Lino,* No. 00 Cr. 632 (WHP), 2001 WL 8356, at *4 (S.D.N.Y. Jan 2, 2001) ("The Second Circuit nevertheless has made clear that the Government does 'not fulfill its obligations merely by providing mountains of documents to

defense counsel who were left unguided' as to the nature of the charges pending) (citing *Bortnovsky*, 820 F.2d at 574).  A bill of particulars can be "necessary to bring focus to the massive amounts of discovery produced and the lengthy, open-ended conspiracy charged." *United States v. Luna,* No. 05 Cr. 58 (SRU), 2006 WL 1668006, at *3 (D. Conn. May 17, 2006). In *Jailall*, the court would have granted the defense a bill of particulars but the government had included detailed charts within the discovery summarizing and analyzing the voluminous bank records.  2000 WL 1368055, at *8.

In *United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001), Judge Sweet granted, in part, the defense request for a bill of particulars and held that the defendant was entitled to more information in order for him to prepare for and not be subject to surprise at trial.  The government had produced 85 boxes with more than 100,000 pages.  Citing *Bortnovsky* and *United States v. Nachamie*, 91 F. Supp.2d 565, 571 (S.D.N.Y. 2000) and others, Judge Sweet reasoned:

> In [*Nachamie*], a bill of particulars was ordered where the defendants were
> charged with conspiracy to commit Medicare fraud, and the government
> "produced over 200,000 pieces of paper in hundreds of boxes and files, relating to
> 2,000 Medicare claims."  The [*Nachamie*] court noted that the government had
> "not yet informed the defendants which of these claims were false and in what
> way they were false," and, relying on *Bortnovsky*, ordered a bill of particulars
> specifying the names of unindicted co-conspirators, the identity and details of
> each and every allegedly false claim submitted and/or filed as part of the
> conspiracy, and the identity and details of the allegedly false documents used in
> the conspiracy.

*Savin*, 2001 WL 243533, at *3.  Judge Sweet found that, without more particulars, the defendant would be forced to comb through a mountain of documents and to attempt to guess which of the numerous transactions over a six-year period were alleged by the government to be illegal.  *Id.*

In *United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011), the court ordered the government to provide a bill of particulars that included at least the following:

> (1) a description of any overt act taken by each of the 16 remaining defendants . . . ; (2) the identities of all persons the government claims to have been co-conspirators during the course of the alleged conspiracy, regardless of whether they have been indicted or previously have pled guilty and regardless of whether they will be called as trial witnesses; and (3) the approximate date of any conversations between any of the 16 remaining defendants and any purported co-conspirators.

783 F. Supp. 2d at 168–69.

In addition to the general particulars necessary to illuminate the charges in this extremely broad conspiracy, the Court has the discretion to also order the government to provide the defense with the names of unnamed and unindicted co-conspirators. Although disclosure of unnamed co-conspirators is "not warranted as a matter of routine," there is nothing "routine" about an indictment that charges a prominent public official with taking bribes from the very same actors that he investigated and fought as part of a decade-long career in law enforcement. *Savin*, 2001 WL 243533, at *5. Judge Sweet's decision in *Savin* lists factors that courts might consider in determining whether to order disclosure of such information:

> In determining whether a defendant is entitled to the names of his unnamed co-conspirators, the following factors have been considered useful: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government has otherwise provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the government's investigation.

*Id.* (citing *Nachamie*, 91 F. Supp. 2d at 572 and *United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (granting request for names of unindicted co-conspirators where there were approximately 18 such persons, some of whom defendant may never have met, and conspiracy lasted more than three years)).

Ultimately, Judge Sweet ordered the government to provide the defense with the names of unindicted co-conspirators, holding that:

[t]he number of unindicted co-conspirators is potentially quite large, as no fewer than six corporations, each with its own personnel, was potentially involved in the alleged "intercompany transfers." The conspiracy may have spanned up to six years. The notice of the particulars of the charges provided by the indictment is not sufficient, as discussed above. The pretrial disclosure has been extraordinarily voluminous. There is no evidence of danger to co-conspirators, and, indeed, related civil actions concerning the same underlying events are being prosecuted without incident in this regard. Finally, the government does not contend that its investigation may be harmed and, given the extensive investigation which has already been accomplished due to the civil litigation, any such harm would be negligible.

2001 WL 243533, at *5.

In *United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp.3d 69, 74-75 (D.D.C. 2019), the court held that, despite a thorough indictment listing twenty-six overt acts, a bill of particulars, including the names of uncharged co-conspirators, was necessary. In ordering the disclosure of co-conspirators, the court noted that "this case, however, is not the typical case." *Id.* at 75. Like the instant case, *Concord Mgmt.* involved an international conspiracy carried out largely on foreign soil by at least thirteen individuals beyond jurisdiction of the court. The government had produced voluminous discovery with much of it restricted due to national security concerns. Despite the detailed indictment, the defense was not in a position to identify co-conspirators before trial, and the court therefore ordered the government to disclose a list of the alleged unnamed co-conspirators. *See id.* at 75-76.

Here, too, the Court should order the government to disclose the names of alleged co-conspirators as part of its bill of particulars. Mr. Garcia Luna is entitled to a vigorous defense, which includes a thorough investigation of the facts. Most alleged co-conspirators, if not all, are located in Mexico, which creates additional hurdles for the defense investigation. If the government discloses the names of alleged co-conspirators only on the eve of trial, it will be practically impossible to conduct an adequate investigation because there will be no time to

travel to Mexico to attempt to interview potential witnesses and unindicted co-conspirators. Without receiving this information within a reasonable period before the start of the trial, the defense is hamstrung and cannot adequately represent Mr. Garcia Luna.

Accordingly, the Court should exercise its discretion and order the government to provide a detailed bill of particulars including a list of unnamed/unindicted co-conspirators. When this request was made directly to the government in a letter dated April 15, 2022 (*see* Exhibit B), the government responded with no particulars and simply stated that such information would become apparent with the disclosure of its § 3500 material. *See* Exhibit C. That material will not, apparently, be turned over until close to the start of trial. *See* July 15, 2022 Hearing Tr. at 8-9. The government's current position not only contradicts its initial representation to the defense, which was its rationale for not providing further particulars, but it is contrary to the standard practice employed by the government for complex trials in this Circuit. Given the anticipated length of the trial combined with the enormous duration and breadth of the alleged conspiracy, the government's refusal to provide the defense with any specific information about Mr. Garcia Luna's alleged criminal conduct deprives counsel of the opportunity to mount an adequate defense.

Pursuant to Federal Rule of Criminal Procedure 7(f), the defense respectfully requests the Court to order the government to provide the defense with a detailed bill of particulars, as set forth in Exhibit B, which should also include the names of all alleged indicted and unindicted co-conspirators. Disclosure of this information is necessary to provide Mr. Garcia Luna with an adequate and constitutionally required defense.

## D. CONCLUSION

For the forgoing reasons, this Court should: (1) dismiss the first four counts of the indictment; and (2) if it denies the motion to dismiss, order the government to provide a bill of particulars.

Dated: October 14, 2022

<div style="margin-left:50%">

_____
César de Castro
Valerie Gotlib
Shannon McManus
The Law Firm of César de Castro P.C.
111 Fulton Street – 602
New York, NY 10038
(631)-460-3951
cdecastro@cdecastrolaw.com
vgotlib@cdecastrolaw.com
smcmanus@cdecastrolaw.com

Florian Miedel, Esq.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, New York 10004
212-616-3042

*Attorneys for Defendant,*
*Genaro Garcia Luna*

</div>