# EXHIBIT A

2018096380210  2901561 032510 62 e838626 062218 14:59 062118 N400-ELIS-660060

## Part 12. Additional Information About You (Person Applying for Naturalization) (continued)

A- | 2 | 0 | 5 | 6 | 9 | 3 | 4 | 9 | 3

19. Did you **EVER** receive any type of military, paramilitary (a group of people who act like a military group but are not part of the official military), or weapons training? ☐ Yes ☒ No

20. Did you **EVER** recruit (ask), enlist (sign up), conscript (require), or use any person under 15 years of age to serve in or help an armed force or group? ☐ Yes ☒ No

21. Did you **EVER** use any person under 15 years of age to do anything that helped or supported people in combat? ☐ Yes ☒ No

**If any of Item Numbers 22. - 28. apply to you, you must answer "Yes" even if your records have been sealed, expunged, or otherwise cleared.** You must disclose this information even if someone, including a judge, law enforcement officer, or attorney, told you that it no longer constitutes a record or told you that you do not have to disclose the information.

22. Have you **EVER** committed, assisted in committing, or attempted to commit, a crime or offense for which you were **NOT** arrested? ☐ Yes ☒ No

23. Have you **EVER** been arrested, cited, or detained by any law enforcement officer (including any immigration official or any official of the U.S. armed forces) for any reason? ☐ Yes ☒ No

24. Have you **EVER** been charged with committing, attempting to commit, or assisting in committing a crime or offense? ☐ Yes ☒ No

25. Have you **EVER** been convicted of a crime or offense? ☐ Yes ☒ No

26. Have you **EVER** been placed in an alternative sentencing or a rehabilitative program (for example, diversion, deferred prosecution, withheld adjudication, deferred adjudication)? ☐ Yes ☒ No

27. A. Have you **EVER** received a suspended sentence, been placed on probation, or been paroled? ☐ Yes ☒ No
    B. If you answered "Yes," have you completed the probation or parole? ☐ Yes ☒ No

28. A. Have you **EVER** been in jail or prison? ☐ Yes ☒ No
    B. If you answered "Yes," how long were you in jail or prison? Years ☐ Months ☐ Days ☐

29. If you answered "No" to **ALL** questions in **Item Numbers 23. - 28.**, then skip this item and go to **Item Number 30.**

    If you answered "Yes" to any question in **Item Numbers 23. - 28.**, then complete this table. If you need extra space, use additional sheets of paper and provide any evidence to support your answers.

| Why were you arrested, cited, detained, or charged? | Date arrested, cited, detained, or charged. (mm/dd/yyyy) | Where were you arrested, cited, detained, or charged? (City or Town, State, Country) | Outcome or disposition of the arrest, citation, detention, or charge (no charges filed, charges dismissed, jail, probation, etc.) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

0000000279

# EXHIBIT B

THE LAW FIRM OF

# César de Castro, P.C.

ATTORNEY AT LAW

The District
111 Fulton Street – 602
New York, New York 10038
631.460.3951 Main
646.285.2077 Mobile
646.839.2682 Fax
cdecastro@cdecastrolaw.com
cdecastrolaw.com

April 15, 2022

*Via* **E-Mail**

Ryan C. Harris
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

        Re:    *United States v. Genaro Garcia Luna,* 19 Cr. 576 (BMC)

Dear AUSA Harris,

On behalf of Genaro Garcia Luna, we write to request the government provide the defense with: (1) particulars regarding the charges alleged in the indictment as they relate to Mr. Garcia Luna; and (2) materials favorable to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 5(f).  The indictment in this case alleges an eighteen-year conspiracy dating back to 2001 and provides little to no detail regarding the acts alleged to be committed by Mr. Garcia Luna.  Without additional particulars, Mr. Garcia Luna cannot adequately prepare for trial and prevent trial surprises.

The government has produced mountains of documents and materials with little to no guidance as to which materials are relevant.  The government has repeatedly stated that evidence of Mr. Garcia Luna's guilt is contained in financial records produced as discovery to the defense.  To date, the government has made 14 productions with containing 1,135,199 pages of materials.  By our count, of those 1,135,199 pages, 208,173 are financial or business records from a total of 76 entities, consisting of 22 individuals and 54 businesses.  The defense, including financial expert members, have not reviewed any financial discovery that supports the government's allegation that Mr. Garcia Luna received millions of dollars in bribes from the Sinaloa Cartel while he was working as a Mexican government official.  Notably, the Mexican government has alleged in a lawsuit of which you are aware, that Mr. Garcia Luna acquired millions of dollars from it through a complicated unlawful government contracting scheme.  The allegations contained in this lawsuit specifically attribute any wealth amassed by Mr. Garcia Luna to contracts he had with the Mexican government, not bribes from the Sinaloa Cartel.

Additionally, while the Indictment details six specific instances of cocaine distribution violations against Mr. Garcia Luna, there is nothing in the voluminous discovery produced to date that

provides any information about Mr. Garcia Luna's alleged participation, role, or connection in those events. Accordingly, the defense is left with little to no ability to adequately prepare for the case the government intends to present at trial.

Furthermore, the defense is confident that there exists additional *Brady* and Rule 5(f) material in the form of documents, witnesses, and statements not yet identified and produced to the defense to which it is entitled. While the government did, in fact, produce protected materials to the defense pursuant to its obligations under *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972) on March 1, 2021, the government has a continuing duty to disclose *Brady* material to the defense. We believe that there are at least three categories of additional *Brady* material currently in the government's possession that must be produced to the defense. First, during his time as a Mexican government official Mr. Garcia Luna had numerous meetings with politicians and officials in the highest levels of the American government. Prior to those meetings, the American government would have conducted detailed background checks of Mr. Garcia Luna to ensure that such meetings would pose no threat or embarrassment to America. The results thereof and all materials generated in connection with such background checks should be produced to the defense. In light of the fact that these meetings occurred, such background checks must have given United States officials sufficient comfort that Mr. Garcia Luna was not involved or suspected to be involved in any criminal conduct and, thus, constitutes *Brady* material.

Second, the government should produce a list of all individuals (and accompanying materials) who have been interviewed by the government in connection with any investigation (including but not limited to investigations of and related to the following individuals: Joaquín Archivaldo Guzmán Loera, Salvador Cienfuegos Zepeda, and Ivan Reyes Arzate): (1) who participated in or were aware of the conspiracy in which Mr. Garcia Luna is charged and who, when asked about Mr. Garcia Luna, disclaimed any knowledge of him; and (2) where such individuals had knowledge of Mr. Garcia Luna but failed to proffer any information that implicated him in any type of criminal activity. Third, Mr. Garcia Luna applied for American citizenship. In connection with his application, it is likely that the government conducted a fulsome background investigation. The results of such an investigation and any communications concerning Mr. Garcia Luna's application for American citizenship may also constitute *Brady* material.

Not only are these materials necessary for the preparation of Mr. Garcia Luna's defense, but they also constitute material subject to disclosure pursuant to the government's continued disclosure requirements pursuant to *Brady* and Rule 5(f).

### I.       The Indictment and Lack of Any Illuminating Discovery

The government has charged Mr. Garcia Luna with participating in an eighteen-year international narcotics conspiracy involving more than 50 tons of cocaine. The indictment alleges that Mr. Garcia Luna used his position as a high-level official in the Mexican government to protect and further the drug trafficking activities of the Sinaloa Cartel in exchange for multi-million-dollar bribes. As noted above, while the indictment includes six specific instances of cocaine distribution in which Mr. Garcia Luna is alleged to have conspired, there is nothing in the indictment that sheds any light as to what acts Mr. Garcia Luna allegedly committed that would give rise to any criminal liability on his part.

In meeting its discovery obligations, the government has turned over thousands of voluminous electronic files, financial records, reports, wiretap reports, videos, audios, and photographs. The defense has been diligently making its way through the discovery materials.

The discovery reveals a vast and far-reaching narcotics investigation, delving into the activities of notorious international drug trafficking cartels. The discovery also includes hundreds of thousands of pages of financial records, none of which are indicative of the criminality charged in the indictment. Despite the incredible scope of the government's investigation and breadth of the provided discovery, the defense team has not observed a single item of evidence implicating Mr. Garcia Luna in the charged conduct. After more than twenty-seven months since Mr. Garcia Luna was arrested and detained, the government has not yet produced a single piece of evidence suggesting he undertook any act in furtherance of the conspiracy charged against him beyond the general allegation that he received bribes in exchange for providing some type of assistance to drug traffickers at some point or points during an eighteen-year time period. To date, the government has not produced any evidence of payments, shipments, laundered funds, or even orders given by Mr. Garcia Luna in furtherance of the alleged conspiracy. Without the particular information requested herein, the defense is forced to wait until the disclosure of any CIPA materials and the disclosure of the Section 3500 materials thirty days before trial to learn of the evidence the government intends to use at trial to prove Mr. Garcia Luna guilty of charges against him. By taking this approach, the government is ensuring that the defense is limited to preparing its defense in earnest only thirty days before trial while the government has had years to prepare for trial.

In the absence of *any* particulars provided by the government, and any discovery illuminating Mr. Garcia Luna's role in the alleged conspiracy, it is impossible for the defense to prepare for trial. Moreover, as discussed in greater detail below, the defense is aware of the existence of other information in the possession of the government that undermines and refutes the government's case, and this information has not been provided to the defendant.

The government has produced no information that refutes or calls into question Mr. Garcia Luna's insistence of his innocence.

## II. Particulars Needed in Order to Prepare for Trial

As noted above, in the absence of *any* particulars provided by the government, and any discovery illuminating Mr. Garcia Luna's role in the alleged conspiracy, it is impossible for the defense to prepare for trial. The government has produced mountains of documents, hours of audio and other media, with little to no guidance as to its relevance to Mr. Garcia Luna. In fact, in prior conversations with the government, your office has acknowledged that little to none of the produced Rule 16 material will provide any detail or assistance in providing any material details regarding Mr. Garcia Luna's involvement and alleged acts in furtherance of the charged conspiracy. The government should provide the defense with particulars in order to allow us to prepare our defense. *See United States v. Bortnovsky*, 820 F.2d 572, 574, 575 (2d Cir. 1987) ("[t]he Government [does] not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided"); *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."). For purposes of this request, we assume the

3

government's familiarity with the caselaw regarding its obligations to provide the defense with an ability to prepare its defense and avoid undue surprise, especially in matters where the government's Rule 16 productions have been voluminous and do not contain any sort of materials summarizing or directing the defense to relevant and important materials.

We respectfully request that you provide us, at a minimum, with the following by way of a bill of particulars:

1) Alleged Bribes Paid to Mr. Garcia Luna
   a) Identify, where in the volumes of discovery thus far produced the defense can find evidence related to this.
   b) Identify the number and specifics details of each alleged bribe Mr. Garcia Luna is alleged to have accepted.
   c) Identify the names of the individuals who were physically present when Mr. Garcia Luna allegedly received sums of money representing bribes.

2) Violation One – September 13, 2008 International Cocaine Distribution of Approximately 5,000 Kilograms of Cocaine
   a) Identify, where in the volumes of discovery thus far produced the defense can find evidence related to this.
   b) Identify the individuals Mr. Garcia Luna allegedly conspired with in furtherance of Violation One.
   c) Detail any agreement allegedly made by Mr. Garcia Luna in furtherance of Violation One.
   d) Detail any acts allegedly taken by Mr. Garcia Luna in furtherance of Violation One.

3) Violation Two – October 30, 2007 International Cocaine Distribution of Approximately 23,000 Kilograms of Cocaine
   a) Identify, where in the volumes of discovery thus far produced the defense can find evidence related to this.
   b) Identify the individuals Mr. Garcia Luna allegedly conspired with in furtherance of Violation Two.
   c) Detail any agreement allegedly made by Mr. Garcia Luna in furtherance of Violation Two.
   d) Detail any acts allegedly taken by Mr. Garcia Luna in furtherance of Violation Two.

4) Violation Three – March 18, 2007 International Cocaine Distribution of Approximately 19,000 Kilograms of Cocaine
   a) Identify, where in the volumes of discovery thus far produced the defense can find evidence related to this.
   b) Identify the individuals Mr. Garcia Luna allegedly conspired with in furtherance of Violation Three.
   c) Detail any agreement allegedly made by Mr. Garcia Luna in furtherance of Violation Three.
   d) Detail any acts allegedly taken by Mr. Garcia Luna in furtherance of Violation Three.

5) <u>Violation Four – January 28, 2003 Cocaine Distribution of Approximately 1,997 Kilograms of Cocaine</u>
   a) Identify, where in the volumes of discovery thus far produced the defense can find evidence related to this.
   b) Identify the individuals Mr. Garcia Luna allegedly conspired with in furtherance of Violation Four.
   c) Detail any agreement allegedly made by Mr. Garcia Luna in furtherance of Violation Four.
   d) Detail any acts allegedly taken by Mr. Garcia Luna in furtherance of Violation Four.

6) <u>Violation Five – August 16, 2002 Cocaine Distribution of Approximately 1,925 Kilograms of Cocaine</u>
   a) Identify, where in the volumes of discovery thus far produced the defense can find evidence related to this.
   b) Identify the individuals Mr. Garcia Luna allegedly conspired with in furtherance of Violation Five.
   c) Detail any agreement allegedly made by Mr. Garcia Luna in furtherance of Violation Five.
   d) Detail any acts allegedly taken by Mr. Garcia Luna in furtherance of Violation Five.

7) <u>Violation Six – May 24, 2002 Cocaine Distribution of Approximately 1,923 Kilograms of Cocaine</u>
   a) Identify, where in the volumes of discovery thus far produced the defense can find evidence related to this.
   b) Identify the individuals Mr. Garcia Luna allegedly conspired with in furtherance of Violation Six.
   c) Detail any agreement allegedly made by Mr. Garcia Luna in furtherance of Violation Six.
   d) Detail any acts allegedly taken by Mr. Garcia Luna in furtherance of Violation Six.

### III.     **Specific *Brady* and Rule 5(f) Requests**

The government has a duty to disclose material evidence favorable to a defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Kyles v. Whitley*, 514 U.S. 419 (1995), and Federal Rule of Criminal Procedure 5(f). The Second Circuit articulated the *Brady* rule in *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) as a "constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." "'Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness.' The focus is on whether the exculpatory and impeachment evidence, if suppressed, 'would deprive the defendant of a fair trial.'" *Id.* at 135 (quoting *United States v. Bagley*, 473 U.S. 667 (1985)).

Ms. Garcia Luna requests all *Brady* and Rule 5(f) material, including but not limited to the following:

1) The results of and all materials generated in connection with any and all background checks concerning Mr. Garcia Luna, including but not limited to those conducted in advance of Mr.

Garcia Luna interacting with the below listed individuals[1] around the below listed time periods, conducted by the United States at any point during the years 2001 through 2012.

a) John David Ashcroft, United States Attorney General: November 2002;
b) Karen Tandy, Administrator of the Drug Enforcement Administration (DEA): August 2003, February 2007, June 2009;
c) Robert Swan Mueller, Director of the Federal Bureau of Investigation (FBI): October 2004, November 2008;
d) Raul Carballido, Head of FBI Operations in Mexico: March 2006, multiple meetings in 2007;
e) Julie Lyn Myers Wood, Assistant Secretary of Homeland Security for Immigration and Customs Enforcement (ICE): February 2007, August 2007, June 2008;
f) Michael Chertoff, Secretary of Homeland Security: February 2007;
g) Uttam Dhillon, Director of the Office of Counternarcotics Enforcement at the United States Department of Homeland Security: May 2007;
h) Anthony J. Placido, Chief Intelligence Officer for the DEA: November 2007;
i) David L. Gaddis, DEA Regional Director for Canada, Mexico, and Central America: multiple meetings during the years 2007, 2008, and 2009;
j) Michael Bernard Mukasey, United States Attorney General: January 2008;
k) John McCain, United States Senator and Republican Candidate for President: July 2008;
l) John Michael McConnell, United States Director of National Intelligence: August 2008;
m) Justin Jackson, Deputy Director of the National Clandestine Service at the Central Intelligence Agency (CIA): January 2009, June 2009;
n) Hillary Clinton, United States Secretary of State: March 2009, March 2010, April 2011, September 2012;
o) Eric Holder Jr., United States Attorney General: April 2009, April 2011, January 2012, September 2012;
p) Barak Obama, President of the United States: April 2009;
q) Lanny A. Breuer, United States Assistant Attorney General for the Criminal Division: September 2009, October 2010, February 2011, April 2011;
r) Various CIA Officials: October 2009;
s) John Morton, Director of ICE: multiple meetings in 2009, November 2010, and May 2011;
t) Joseph Evans, DEA Regional Director for Canada, Mexico, and Central America: multiple meetings during the years 2009, 2010, 2011, and 2012;
u) Leon Edward Panetta, Director of the CIA: March 2010;
v) Michael Morell, Director of the CIA: November 2010;
w) Rodney G. Benson, Chief of Intelligence at the DEA: July 2011;
x) Janet Napolitano, United States Secretary of Homeland Security: January 2012, February 2012;
y) John Andrew Boehner, Speaker of the United States House of Representatives: January 2012; and
z) David Howell Petraeus, Director of the CIA: January 2012.

---

[1] All titles listed are of those held by each individual at the time they met with Mr. Garcia Luna.

2) A list of all individuals interviewed by the government in connection with any and all investigations, including but not limited to investigations of and related to the below listed individuals, who when asked about Mr. Garcia Luna disclaimed any knowledge of him, and where such individuals had knowledge of Mr. Garcia Luna but failed to proffer any information that implicated him in any type of criminal activity, such statements should be produced in their entirety.

   a) Joaquín Archivaldo Guzmán Loera;
   b) Salvador Cienfuegos Zepeda; and
   c) Ivan Reyes Arzate.

3) Documents or statements of any witnesses and identify any witnesses involved in or having knowledge of the alleged conspiracy who have either stated that Mr. Garcia Luna was not involved in the conspiracy or failed to identify Mr. Garcia Luna as a member of the conspiracy. The government has alleged that while he was employed as a high-level official in the Mexican government, Mr. Garcia Luna was a member of an international drug trafficking conspiracy for at least eighteen years. Given the scope of the Government's charging theory and allegations, individuals with familiarity with this alleged conspiracy who have not named Mr. Garcia Luna as being involved constitute *Brady* witnesses and must be disclosed along with notes and memoranda regarding the information they provided.

4) Any and all documents in the possession of the United States, regarding Mr. Garcia Luna's application for American Citizenship.

## IV. Conclusion

In the Indictment the government has alleged an incredibly broad conspiracy dating back to 2001. The Indictment fails to allege any particularity as to criminal conduct allegedly committed by Mr. Garcia Luna in furtherance of the sweeping alleged conspiracy or otherwise nor does it serve meaningful notice to the defense of the acts in which the government believes Mr. Garcia Luna participated. Furthermore, the voluminous discovery produced by the government pursuant to Rule 16, has provided little to no assistance in identifying the specific conduct in which Mr. Garcia Luna is alleged to have participated. We respectfully request that the government direct the defense to the relevant discovery already produced and provide further particulars as identified above.

Furthermore, the defense is confident that there exists *Brady* and Rule 5(f) material and witnesses not yet identified and produced to the defense to which it is entitled.

Respectfully submitted,

    /s/

César de Castro
Valerie A. Gotlib
Shannon McManus

cc: Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Assistant United States Attorneys

# **EXHIBIT C**



May 1, 2022

<u>By E-Mail</u>

Cesar DeCastro, Esq.
111 Fulton Street - 602
New York, NY 10038

    Re: United States v. Genaro Garcia Luna
       <u>Criminal Docket No. 19-576 (BMC)</u>

Dear Counsel:

   The government writes in response to your April 15, 2022, letter requesting: (a) certain particulars regarding the charged crimes; and (b) materials favorable to the defense pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 5(f). We respond to your requests below:

I.  <u>Request for a Bill of Particulars</u>

1. <u>Alleged Bribes Paid to Mr. Garcia Luna</u>: As set forth in the indictment, the government anticipates that the evidence at trial will establish that the defendant accepted millions of dollars in bribe payments from numerous members of the Sinaloa Cartel in exchange for abusing his public office and taking official acts in furtherance of the Sinaloa Cartel's drug trafficking activities. Details regarding these bribes, including the names of the individuals who paid these bribes, the amount of those bribes, and the official acts initiated by the defendant in exchange for those bribes, will be found in materials produced by the government pursuant to 18 U.S.C. § 3500. In order to facilitate your preparation for trial, the government will agree to review this Jencks Act material and identify those materials that can be produced to you well in advance of trial on a rolling basis for early disclosure, understanding that there is no legal authority requiring such advanced production. <u>See</u>, <u>e.g.</u>, <u>United States v. Morgan</u>, 690 F. Supp. 2d 274, 285-86 (S.D.N.Y. 2010) ("Courts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material. Similarly, courts in this Circuit have repeatedly refused to compel disclosure of impeachment or <u>Giglio</u> material well in advance of trial.").

2. <u>Violation One – September 13, 2008:</u>  Evidence regarding this shipment of narcotics was produced to the defendant on February 21, 2020, and may be located at Bates numbers 00000023187-00000023217.  All other information sought about this shipment, including any actions the defendant may have taken regarding it, will be contained in the government's production of Jencks Act material.

3. <u>Violation Two – October 30, 2007:</u>  Evidence regarding this shipment was produced to the defendant on February 21, 2020, and may be located at Bates numbers 0000026353-0000026508.  All other information sought about this shipment, including any actions the defendant may have taken regarding it, will be contained in the government's production of Jencks Act material.

4. <u>Violation Three – March 18, 2007:</u>  Evidence regarding this shipment was produced to the defendant on February 21, 2020, and may be located at Bates numbers 000000023218-00000023663.  All other information sought about this shipment, including any actions the defendant may have taken regarding it, will be contained in the government's production of Jencks Act material.

5. <u>Violation Four – January 28, 2003:</u>  Evidence regarding this shipment was produced to the defendant on February 21, 2020, and may be located at Bates numbers 00000023713-00000023803. All other information sought about this shipment, including any actions the defendant may have taken regarding it, will be contained in the government's production of Jencks Act material.

6. <u>Violation Five – August 16, 2002:</u>  Evidence regarding this shipment was produced to the defendant on February 21, 2020, and may be located at Bates numbers 00000023804-00000024004. All other information sought about this shipment, including any actions the defendant may have taken regarding it, will be contained in the government's production of Jencks Act material.

7. <u>Violation Six – May 24, 2002:</u>  Evidence regarding this shipment was produced to the defendant on February 21, 2020, and may be located at Bates numbers 0000024005-00000024028.  All other information sought about this shipment, including any actions the defendant may have taken regarding it, will be contained in the government's production of Jencks Act material.

II. <u>Request for *Brady* and Rule 5(f) Materials</u>

1. <u>Request for Background Checks:</u>  The Prosecution Team does not possess any background checks conducted on the defendant in advance of any meetings with U.S. government officials.  To the extent the Prosecution Team acquires such material, it will review those materials and comply with its discovery obligations.

2. <u>List of All Individuals Interviewed by the Government:</u>  The government is not required to list every individual interviewed in connection with its investigation.  <u>See, e.g.</u>, <u>United States v. Hollenbeck</u>, Criminal Docket No. 15-49 (LJV) (JJM), 2015 WL 13746403, at *8 (W.D.N.Y. Dec. 15, 2015) (in the absence of <u>Brady</u>, "there is no requirement that the prosecution turn over the sum of its non-productive investigation activities to a defendant"); <u>United States v. Mozer-Browne</u>, Criminal Docket No. 06-444 (LMM), 2007 WL 1467428, at *1 (S.D.N.Y. May 16, 2007) (noting that in the absence of <u>Brady</u> there is no disclosure obligation for statements or lists of witnesses the government has interviewed but does not intend to call at trial).

3. <u>Statements of Witnesses Who Denied Defendant was Involved in Conspiracy or Failed to Identify that Defendant was Involved:</u>  On March 1, 2021, the government produced notes of approximately 25 individuals pursuant to 18 U.S.C. § 3500, as well as its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  Today the government is disclosing additional materials to you by separate letter pursuant to Federal Rule of Criminal Procedure 16, 18 U.S.C. § 3500, <u>Brady</u>, and <u>Giglio</u>.  The government will continue to review its files and produce any discoverable material pursuant to its various obligations.

4. <u>Defendant's Citizenship Application:</u>  Documents regarding the defendant's citizenship application were produced on February 21, 2020, and may be located at Bates numbers 00000000265-00000000289.  A certified copy of the defendant's citizenship application was produced on February 11, 2022, and may be located at Bates numbers 0001081962-0001082053.

Please do not hesitate to contact us regarding any additional questions or requests.

Very truly yours,

BREON PEACE
United States Attorney

By:   /s/
Ryan C. Harris
Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Assistant U.S. Attorneys
(718) 254-7000