UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

GENARO GARCIA LUNA, *et al.*,

                Defendant.

19 Cr. 576 (BMC)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GENARO GARCIA LUNA'S MOTION: (1) TO DISMISS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b); AND (2) FOR A BILL OF PARTICULARS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 7(f)**

I.  **MR. GARCIA LUNA'S MOTION TO DISMISS IS SUPPORTED BY UNDISPUTED FACTS**

In its opposition to Mr. Garcia Luna's motion to dismiss, the government correctly states that a defense of withdrawal from a conspiracy is an affirmative defense at trial. It further articulates the correct legal standard that a jury, not the Court before trial, must decide an issue or dispute of fact. What the government fails to acknowledge is that in this instance there are no disputes of fact. The disagreement between the parties is about what legal conclusions should be drawn from the undisputed facts – specifically whether the undisputed facts should lead to the conclusion that Mr. Garcia Luna withdrew from the alleged conspiracy and that the 2019 indictment is therefore time-barred. That is a question of law that can be decided by this Court before trial.

The government has forecast a two-month long trial featuring the testimony of dozens of witnesses, many of whom must come to Brooklyn from out of state or out of the country. The prosecution team consists of several lawyers and support staff, as does the court financed defense team. It would be an enormous waste of time and resources for the Court to wait to decide a question of law until the end of the trial when the same question could also be decided before trial because there are no facts in dispute.

In its opposition, the government did not dispute that Mr. Garcia Luna openly left his position in the Mexican government in 2012, retired from public life, and moved to the United States. Nor did it offer facts or allegations to suggest that his retirement did not end his alleged association with the cartel. Instead, it simply cited to *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008), where the Second Circuit found that the defendants' retirement from the NYPD and move to Las Vegas was insufficient to establish withdrawal from their conspiracy with organized crime. What the government left out of its *Eppolito* analogy, however, was that the

1

defendants in that case continued their association with some of their co-conspirators after their move to Las Vegas, and continued to commit crimes that were arguably part of the original conspiracy. *See id.*

We do not dispute that if the government had so much as a *shred of an allegation* that, between 2014 and 2019, Mr. Garcia Luna continued to have contact with Sinaloa cartel traffickers, continued to assist them in some way, or continued to commit some kind of crimes or even engaged in activities that furthered the goals of the charged conspiracy, there would be no basis for this motion. Mr. Garcia Luna's motion to dismiss invited the government to come forward with some, any, allegation that could establish at trial that his alleged participation in a conspiracy with the Sinaloa cartel continued after 2012. The government did not do so. It did not, because it cannot.

Instead, the government doubled down on its claim that Mr. Garcia Luna's denial on his 2018 naturalization application that he had previously committed crimes and his post-arrest statements of innocence are sufficient to demonstrate that "he never abandoned the conspiracy." Gov't Opp. at 9. However, as set forth in our memorandum of law in support of the motion to dismiss, concealment of a conspiracy cannot generally constitute an act in furtherance of the conspiracy. *See* Memo of Law, at 7. Indeed, the government can cite to no case anywhere that stands for the proposition that post arrest denials of culpability can reestablish a link to a previously abandoned conspiracy. No such case exists, because it would fly in the face of the Supreme Court's rejection of the government's argument in *Grunewald v. United States*, 353 U.S. 391 (1957).

Even the decision in *United States v. Berger*, 224 F.3d 107, 119 (2d Cir. 2000), in which the Second Circuit found efforts to mislead investigators extended the life of the conspiracy. The

2

Circuit's conclusion was based on the fact that defendant Goldstein made false statements to agents more than one year before his arrest, "falsely stating that he had worked as TYY's Administrator, falsely identifying other supposed administrators, and falsely describing the supposed educational offerings at the sham school." *Id.* Those false statements were affirmatively misleading and designed to send investigators who were still in the early stages of their investigation to bark up wrong trees. They were not generic, post arrest, proclamations of innocence, as is the case here. If simple denials of culpability could extend the life of a conspiracy (or establish re-connection to an abandoned one), it "would for all practical purposes wipe out the statute of limitations in conspiracy cases." *Grunewald*, at 399. That is not the law.

In the absence of any further allegations by the government that Mr. Garcia Luna extended his alleged participation in the charged conspiracy past his retirement from government in 2012, the Court is left with two questions of law, neither of which involves disputed facts. First, did Mr. Garcia Luna's retirement from government, which indisputably was public, well known in Mexico, and by definition deprived drug traffickers access to a high ranking government official, constitute a withdrawal from the alleged conspiracy? In other words, was news of Mr. Garcia Luna's retirement and departure from public life communicated "in a manner reasonably calculated to reach co-conspirators?" *Eppolito*, 543 F.3d at 49. Given the public nature of Mr. Garcia Luna's retirement and move to the United States, and given that, as alleged, his participation in the conspiracy consisted of the use of his government powers to assist the cartel, the Court can easily find as a matter of law that Mr. Garcia Luna withdrew from the alleged conspiracy in 2012.

Second, did Mr. Garcia Luna take any actions that would have reconnected him to the conspiracy within five years prior to the filing of the indictment? More specifically, did his

3

denials of culpability, both in his naturalization application and his post-arrest statements constitute a re-establishment of his participation in the conspiracy?  Given the clear law on this subject, the Court can also easily conclude, as a matter of law, that these undisputed actions did *not* constitute a re-connection to the alleged conspiracy.

Accordingly, under the unusual circumstances of this case, where there is not a factual dispute that must be resolved by a jury, the Court should dismiss the first four counts of the indictment as time-barred.  Alternatively, the Court should hold a pretrial hearing to further flesh out these issues, rather than expend the inordinate time and resources to conduct a two-month long trial, only to reach the same conclusion at that time.

**II.     THE GOVERNMENT'S FAILURE TO PRODUCE ANY INFORMATION AS TO ANY CRIMINAL CONDUCT ATTRIBUTABLE TO MR. GARCIA LUNA FOR AN EIGHT-YEAR PERIOD OF THE CHARGED CONSPIRACY NECESSITATES A BILL OF PARTICULARS**

To date, approximately two months before trial and three years since Mr. Garcia Luna's arrest, the government has failed to provide the defense with the required disclosures for it to adequately and zealously defend the charges.  Since early 2020, the defense has asked the government for specific information concerning the criminal conduct it believes to be attributable to Mr. Garcia Luna.  The defense waited to make the instant motion in the hopes that the government would make the requested disclosures sufficiently in advance of trial to allow the defense to adequately prepare.  The request for this Court to issue a bill of particulars came only after the government has denied our repeated requests for further illuminating evidence and information.  The government has consistently responded by providing the same vague information contained in the indictment and the government's opposition to the instant motion is no exception.

4

As discussed above in our reply to the government's opposition to the motion to dismiss, the government has failed to even suggest, let alone demonstrate, that it possesses any evidence that Mr. Garcia Luna participated in any conspiracy with the Sinaloa cartel after 2012.  Despite this, it alleges that "[t]he indictment fairly apprises the defendant of the accusations against him: that from January 2001 through July 2020, the defendant conspired with members of the Sinaloa Cartel by accepting bribes and providing assistance to its drug trafficking activities."  Gov't Opp. at 14.  In support, the government cites four types of actions the defendant is alleged to have taken in furtherance of the conspiracy.  However, none of the four alleged actions are actions that Mr. Garcia Luna would have been capable of taking after his retirement in 2012.  The bribes that Mr. Garcia Luna allegedly accepted were in the early to mid 2000's, and any ability to assist the Sinaloa cartel ended when he retired from government and moved to the United States in 2012.  Now, more than three years after his arrest and the government's productions of over a million pages of information and two months before trial, the defense has no insight into what conduct Mr. Garcia Luna is alleged to have engaged in furtherance of the charged conspiracy after 2012.

While the government goes to great lengths to extol the disclosures it has made to the defense to date in the form of discovery material and 18 U.S.C. § 3500 material, it conspicuously fails to disclose that none of those materials provides any specifics with respect to criminal acts taken by Mr. Garcia Luna after 2012.  Of the six cooperating witnesses for which it supplied § 3500 material, two of the witnesses have never even claimed to have met Mr. Garcia Luna.  Of the witnesses that did claim to know Mr. Garcia Luna, their contradicting narratives make it impossible to ascertain what actions Mr. Garcia Luna will actually be accused of at trial.  Instead, the vast majority of the § 3500 material proves the existence of Mexican cartels, a fact that is not in dispute in this case.  One of the § 3500 witnesses did not even begin working with

5

the cartels until long after Mr. Garcia Luna left office, and there is not even a hint of an allegation that Mr. Garcia Luna was involved with their criminal activity at all. Mr. Garcia Luna was tasked with combatting the cartels while in government and the fact that cartels existed and continue to operate, is uncontroverted.

Furthermore, the government takes credit for a substantial portion of early disclosure of what it describes as § 3500 material (the notes and reports of approximately 25 witnesses) when, in fact, the materials were actually *Brady* material, which it was obligated to disclose to the defense when it received the information. Each of those individuals denied any knowledge of Mr. Garcia Luna engaging in any type of criminal conduct and many of them, including at least two individuals who were members of United States law enforcement, reported to the government that they could not believe that Mr. Garcia Luna had anything to do with any type of criminal conduct.

It is now two months prior to trial and the defense has no more clarity as to the criminal conduct in which Mr. Garcia Luna is alleged to have engaged than it did when Mr. Garcia Luna was first arrested approximately three years ago. The Court must order the government to provide the defense with the requested particulars in order to allow it to mount an adequate defense to charges which subject him to the potential of life imprisonment.

## **CONCLUSION**

For the forgoing reasons, this Court should: (1) dismiss the first four counts of the indictment; and (2) if it denies the motion to dismiss, order the government to provide a bill of particulars.

Dated: November 9, 2022

                                           _/s/_____
                                           César de Castro
                                           Valerie Gotlib
                                           Shannon McManus
                                           The Law Firm of César de Castro P.C.
                                           111 Fulton Street – 602
                                           New York, NY 10038
                                           (631)-460-3951
                                           cdecastro@cdecastrolaw.com
                                           vgotlib@cdecastrolaw.com
                                           smcmanus@cdecastrolaw.com

                                           Florian Miedel, Esq.
                                           MIEDEL & MYSLIWIEC LLP
                                           80 Broad Street, Suite 1900
                                           New York, New York 10004
                                           212-616-3042


                                           *Attorneys for Defendant,*
                                           *Genaro Garcia Luna*