```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :   **MEMORANDUM DECISION AND**
                                    Plaintiff,              :   **ORDER**
                                                            :
                - against -                                 :   19-cr-576 (BMC)
                                                            :
GENARO GARCIA LUNA,                                         :
                                                            :
                                    Defendant.              :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Defendant Genaro Garcia Luna's moves to dismiss, pursuant to Fed. R. Crim. 12(b) and moves for a bill of particulars, pursuant to Rule 7(f). For the foregoing reasons, both motions are denied.

## BACKGROUND

From approximately 2001 to the present, the Sinaloa Cartel has been one of the world's largest and most prolific drug trafficking organizations. The Cartel has directed a large-scale narcotics transportation network, over land, air, and sea, that distributes multi-ton quantities of cocaine and other drugs from South America, through Central America and Mexico, and finally into the United States. The Cartel's drug sales in the United States have generated billions of dollars in profit, which is then laundered back to Mexico. The Cartel consists of thousands of members, including: the leadership who are the decision makers with respect to drug trafficking and money laundering; the security personnel who protect the leadership; the plaza bosses who control territories and transport drugs through those territories; the transporters such as boat/submarine crews, pilots, and drivers who transport drugs from Colombia through Mexico

and into the United States; the money launderers who funnel drug proceeds from the United States back to Mexico; and finally, the corrupt public officials, who protect the Cartel in exchange for bribes. The Government alleges that Mr. Garcia Luna belonged to this latter category of individuals who aided the Cartel in achieving the goals of its drug trafficking enterprise.

From 2001 until 2012, Mr. Garcia Luna held various high-ranking positions in the Mexican government; from 2001 until 2005, he was the head of Mexico's Federal Investigative Agency, and from 2006 until 2012, he served as Mexico's Secretary of Public Security, thereby controlling Mexico's Federal Police Force. The Government alleges that in or about January 2001, Mr. Garcia Luna became a member of the Sinaloa Cartel Conspiracy, whereby he received millions of dollars in bribes in exchange for using his official position to assist the Sinaloa Cartel, including by agreeing not to interfere with their drug shipments, tipping them off to law enforcement operations, targeting rival Cartel members for arrest, and placing other corrupt officials in positions of power.

On December 4, 2019, the Government obtained an indictment against Mr. Garcia Luna. The Superseding Indictment charges Mr. Garcia Luna with conspiring with members of the Sinaloa Cartel to possess, import, and distribute large quantities of narcotics in the United States. He is also charged with making false statements to USCIS. Mr. Garcia Luna was arrested on December 10, 2019 and has remained detained since that time.

Mr. Garcia Luna moves to dismiss the first four counts of the Superseding Indictment on statute of limitations grounds. The statute of limitations on these counts is five years. Mr. Garcia Luna claims that his "retirement" from public service in 2012 effected a withdrawal from the charged Conspiracy, such that by the time he was charged on December 4, 2019, more

than five years had elapsed since his alleged participation in the Conspiracy. The Government responds that its ability to prove its charges is an issue for the jury at trial, and defendant has not met his burden of proving the affirmative defense of withdrawal from the Conspiracy.

Mr. Garcia Luna also asks the Court to order the Government to produce a detailed bill of particulars, including the names of unnamed coconspirators and trial witnesses. He argues this is necessary for Mr. Garcia Luna's lawyers to adequately prepare for trial. The Government responds that it has already provided the defense with "an extraordinary volume of early § 3500 material," including for 15 law enforcement witnesses and six potential cooperating witnesses, and will continue to do so on a rolling basis in advance of trial.

## DISCUSSION

I.      Motion to Dismiss

Mr. Garcia Luna moves to dismiss the first four counts of the Superseding Indictment[1] as time-barred. He argues that the Government has not pointed to any activities by Mr. Garcia Luna after December 4, 2014 in furtherance of the Conspiracy. Mr. Garcia Luna relies on Grunewald v. United States, 353 U.S. 391 (1957), to argue that Counts I-IV must fall because the Government has not identified any overt acts in furtherance of the Conspiracy after 2012. The Government responds that lying to the FBI and on a naturalization application constituted acts in furtherance of the Conspiracy. Both sides' arguments proceed from a false premise.

Grunewald held that "*where substantiation of a conspiracy charge requires proof of an overt act,* it must be shown both that the conspiracy still subsisted within the [five] years prior

---

[1] The first four counts of the Superseding Indictment are: (1) engaging in a continuing criminal enterprise (CCE) to distribute cocaine, (2) intentionally conspiring to distribute cocaine, (3) conspiracy to distribute with intent to distribute cocaine, and (4) conspiracy to import cocaine. Although Count I is not a conspiracy charge, because conspiracy is a lesser included offense of a CCE charge, courts conduct the same statute of limitations analysis for conspiracy and CCE. See, e.g. United States v. Bessemer, No. CRIM. 88-00246, 1988 WL 107612, at *3-4 (E.D. Pa. Oct. 13, 1988), aff'd, 914 F.2d 244 (3d Cir. 1990).

3

to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period." Id. at 396-97 (emphasis added). But the federal narcotics conspiracies charged in Counts I-IV do not require an overt act to be pleaded or proven. See United States v. Grammatikos, 633 F.2d 1013, 1023 (2d Cir. 1980) ("[S]chemes to import or distribute controlled substances are the subjects of specifically drawn statutes, and the rule in this and other circuits is that overt acts in furtherance of such specifically prohibited agreements need be neither pleaded nor proven."); see also United States v. Shabani, 513 U.S. 10, 15 (1994) ("[A]n overt act is not required to establish a violation of 21 U.S.C. § 846.").

To satisfy the statute of limitations where there is no overt act requirement in the conspiracy charged, all the Government must show is that conspiracy was "not terminated more than five years prior to the filing of the indictment." United States v. Martinez, 1995 WL 10849, at *2 (S.D.N.Y. Jan. 12, 1995). Mr. Garcia Luna is correct that the post-2014 acts identified by the Government (i.e., lying to the FBI and on a naturalization form) are mere acts of concealment that, per Grunewald, would not extend the life of an otherwise terminated conspiracy. But unlike the conspiracy in Grunewald, which ended the day the defendants obtained "no prosecution" rulings from the Bureau of Internal Revenue, the Sinaloa Cartel Conspiracy was never terminated and continues to this day.

Even when a conspiracy continues, the law provides an opportunity for individual participants to withdraw. Mr. Garcia Luna can still succeed in challenging Counts I-IV on statute of limitations grounds if he can establish that he withdrew from the Conspiracy before December 4, 2014. But that is a question for the jury.

Mr. Garcia Luna claims that he withdrew from the Conspiracy when he stepped down from public service in 2012 and moved to Miami. There may be numerous reasons why Mr.

4

Garci Luna stepped down from public service, but they are not unequivocally referable to withdrawal from the Conspiracy. Although these facts may be probative of an intent to withdraw from the Conspiracy, withdrawal is an extremely high standard, and "proof merely that he ceased conspiratorial activity is not enough." United States v. Eppolito, 543 F.3d 25, 49 (2d Cir. 2008). Instead, Mr. Garcia Luna must show that he performed an affirmative act "establish[ing] that he disavowed his criminal associations" by either "making of a clean breast to the authorities, or communicati[ng] abandonment in a manner reasonably calculated to reach co-conspirators." United States v. Leslie, 658 F.3d 140, 143 (2d Cir. 2011). A jury could, for example, find that rather than affirmatively abandoning the Conspiracy by retiring in 2012, Mr. Garcia Luna was pushed out for political reasons. That would hardly be "making a clean breast." Such factual questions "must be decided by a jury in the first instance on the basis of a full evidentiary record." United States v. Hoskins, 73 F. Supp. 3d 154, 163 (D. Conn. 2014).

II. Motion for a Bill of Particulars

Mr. Garcia Luna also requests a bill of particulars as to the criminal acts taken by Mr. Garcia Luna after 2012. This is largely a reiteration of Mr. Garcia Luna's statute of limitations argument. As I see it, the Government has only identified two post-2012 criminal acts: lying to the FBI and lying on his naturalization application. And although those were not acts "in furtherance of" the Conspiracy, Mr. Garcia Luna still has the burden to show, by a preponderance of the evidence, that he withdrew from the Conspiracy more than five years before his indictment.

The Government's witness list and § 3500 materials were due on September 23, 2022. To the extent the Government makes any late disclosures, Mr. Garcia Luna can raise those with the Court at that time. Moreover, the parties are expected to give appropriate advance notice of

the witness(es) they expect to call on a given trial date to ensure the opposing party has adequate time to prepare.

## CONCLUSION

For the foregoing reasons, Mr. Garcia Luna's motions are DENIED.

**SO ORDERED.**

_____
Digitally signed by Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
        November 21, 2022