

January 9, 2023

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**United States v. Genaro Garcia Luna**
**Ind. No. 19-Cr-576 (BMC)**

Your Honor:

The defense respectfully submits this motion *in limine* to preclude the government from introducing evidence of Mr. Garcia Luna's activities as a private citizen after he moved to the United States, including evidence of wealth he amassed or acquired after 2012. As the government knows, Mr. Garcia Luna's assets while living in the United States after 2012 were acquired through private business income. In over a million pages of discovery disclosures, thousands of pages of 18 U.S.C. § 3500 disclosures, and its hundreds of proposed exhibits, the government cannot establish a link between alleged bribes while Mr. Garcia Luna was a Mexican government official before 2012, and displays and accumulation of wealth or luxury after 2012 when he was in private business. Without a connection, such evidence is irrelevant under Fed. R. Evid. 401 and 402, and substantially more prejudicial than probative under Rule 403.

I.    Background

Between 2001 and 2012, Mr. Garcia Luna was a high-ranking official in the Mexican government. He was first the head of Mexico's Federal Investigation Agency and then served in a cabinet-level position as Mexico's Secretary of Public Security. In 2012, when the administration of Mexican President Calderon came to an end, Mr. Garcia Luna retired from government and moved to Miami, Florida. There he went into business with established partners, offering security consulting to foreign governments and companies. His primary client was the government of Mexico. Over the course of the next several years, Mr. Garcia Luna and his partners were paid significant sums for their consulting work and the security/intelligence platforms they offered to the Mexican government. These earnings allowed Mr. Garcia Luna, over time, to become wealthy and to acquire substantial assets.

Through its interviews of witnesses, including Mr. Garcia Luna's business partners, accountants, and lawyers, the government knows that when he arrived in Miami in late 2012,

early 2013, he had no wealth to speak of, and could not afford a luxurious lifestyle. Because his business partners wanted to ensure Mr. Garcia Luna's continued involvement with their business, they provided him a place to live in Miami – a large expensive house with a dock and boat for his use – as well as other perks. The government knows that he did not own the house and boat.[1] Once the funds started coming in through Mr. Garcia Luna's consulting business, he was able to accumulate wealth and assets.

## II.    Legal Standard

Federal Rule of Evidence 401 defines "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action." Rule 402, in turn, provides that irrelevant evidence is not admissible. *See, e.g., Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) ("If an item of evidence tends to prove a fact that is of consequence to the determination of the action, it is relevant. If it does not tend to prove a material fact, it is irrelevant.") (internal quotation marks omitted).

Pursuant to Rule 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice." *United States v. Miller*, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) (citation omitted). Courts also have broad discretion to exclude evidence if it has an "undue tendency to suggest decision on an improper bias, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Adv. Comm. Notes. Specifically, evidence should be precluded under Rule 403 if it risks "misleading the jury and permitting the jury to speculate..." *United States v. Delance*, 694 F. App'x 829, 834 (2d Cir. 2017).

## III.    Argument

The government should be precluded from introducing evidence of Mr. Garcia Luna's activities as a private citizen after he moved to the United States, including evidence of wealth he amassed or acquired after 2012. First, evidence of Mr. Garcia Luna's wealth as a private citizen after he left government is not relevant absent a connection to the charged crimes. Second, even if such evidence were marginally relevant, which it is not, the prejudice of introducing this evidence far outweighs its probative value.

### A.    Relevance

Evidence of wealth is relevant in this case only if that wealth is connected to the allegations against Mr. Garcia Luna. For example, evidence of unexplained wealth and possession of luxury assets while he lived in Mexico on a government official's income might be

---

[1] *See e.g.* Exhibit A, ███████████████████████████████████████████████████████████████████████████ Because this motion seeks preclusion of this evidence, specific references to it are redacted in this filing.

relevant to the allegation that he accepted cash bribes.  Similarly, evidence, if it existed, that Mr. Garcia Luna arrived in Miami in 2012, deposited millions into a bank account, and then used that money to start a company would be relevant.  However, there is no evidence that Mr. Garcia Luna arrived in the United States with substantial capital or assets.  Mr. Garcia Luna's earnings in the years following his departure from the Mexican government are explained and documented and led to his increased wealth and acquisition of assets.  Those earnings are unconnected to the allegations in this case.[2]  The government has zero evidence that Mr. Garcia Luna's purported displays of wealth and luxury between 2013 and 2019 were linked in any way to bribes he allegedly received before he left the government.

Despite having no evidence to show that Mr. Garcia Luna's assets in Florida are linked to drug cartel bribes, the government nevertheless seeks to introduce examples of the trappings of Mr. Garcia Luna's wealth through exhibits and testimony.  For example, proposed government Exhibits 862-884 include a series of photos depicting the luxurious nature of Mr. Garcia Luna's residences in the United States.  Exhibit 884 shows that he spent several million dollars to purchase office space in 2018.[3]  The purpose of these examples of luxury after 2012 is purely to suggest to the jury, without proof, that Mr. Garcia Luna must have accepted bribes to afford this kind of lifestyle.

The government might have an argument if it was aware of no explanation for Mr. Garcia Luna's wealth in Florida.  In that case, the government might argue that the unexplained wealth tended to suggest that its source came from unlawful bribes.  But the government knows better.  The government has scoured Mr. Garcia Luna's financial records.  It has interviewed numerous witnesses in Florida who worked with or for him, who sold him properties, who assisted in his investments.  Most, if not all, of the interviews with these individuals were turned over to the defense as *Brady* material, precisely because none had any information that Mr. Garcia Luna's wealth came with him from Mexico.  His wealth accrued on the basis of his post 2012 employment.

Given the lack of evidence connecting Mr. Garcia Luna's wealth after 2012 to allegations of bribes while still in the Mexican government, examples of luxurious behavior, fancy residences, and significant expenditures are simply not relevant to the jury's determination. This evidence is irrelevant because it "does not tend to prove a material fact." *Arlio*, 474 F.3d at 52.  Because it is irrelevant, it should not be admitted.

---

[2] In fact, Mr. Garcia Luna and his business partner are named in a lawsuit in which the Mexican government accused them of money laundering and illegal contracting in connection with contracts their companies had with Mexico. *See* Exhibit B, relevant pages, Filing # 135011567 E-Filed 09/21/2021,11th Judicial Circuit, Circuit Court Miami Dade County.  In the lawsuit, the government of Mexico specifically stated: "GARCIA LUNA has been arrested and charged in the Eastern District of New York for several offenses *unrelated* to the illegal contracting and money-laundering scheme alleged herein." *Id.* at 33 (emphasis added).

[3] The government witness list also contains several individuals who will presumably offer testimony about Mr. Garcia Luna's life after he left Mexico. ██████████████████████████████ .
None of these witnesses can establish a link between their testimony about Mr. Garcia Luna's life in Miami after 2012 and alleged bribes in Mexico.

        B.      <u>Rule 403</u>

Even if there were some marginal relevance to evidence of Mr. Garcia Luna's activities and wealth while he lived in Florida, which there is not, its minimal probative value would be substantially outweighed by its prejudicial effect. With no evidence linking the taking of bribes before 2012 to the accumulation of wealth after 2012, the government's efforts to show Mr. Garcia Luna living a life of luxury in Miami after 2012 are profoundly prejudicial because they invite the jury to speculate, without evidence or foundation, that his way of life in Miami was only possible because of bribes he accepted earlier. Once the jury sees photographs of yachts, and beautiful houses, apartments, and offices, introduced by the government purportedly in support of some evidence of guilt, the jury will improperly surmise that Mr. Garcia Luna's post 2012 wealth was a consequence of the charged crimes.

A second prejudicial consequence of admitting examples of luxurious living without connection to the charged crimes is that it would shift the burden to Mr. Garcia Luna to correct the record. He has the constitutional right not to testify or to present evidence. But if the jury were permitted to see examples of Mr. Garcia Luna's wealth after 2012, he would have no choice but either to testify or to present evidence demonstrating the legitimate income he received from his consulting business. To keep the jury from speculating about the sources of his wealth, he would be required to establish, for example, that his initial residences and other perks, including a boat, were paid for by his business partners. He would have to bring witnesses to explain the circumstances and details of his post-2012 private business, and offer an accounting that correlated his earnings with the wealth he acquired. All of this would be necessary not because this evidence was somehow important or relevant to his defense, but simply to rebut the purposely false impression left by the government's evidence.

## IV.    <u>Conclusion</u>

Without some proof to support the allegation that Mr. Garcia Luna's post 2012 accumulation of wealth was connected to the alleged taking of bribes during his tenure in the Mexican government, evidence of his activities and examples of luxurious living after he left office are not relevant. The government knows the sources of his wealth and possesses no evidence to the contrary. Such evidence would be overwhelmingly prejudicial and would shift the burden of proof because it would require Mr. Garica Luna to present evidence to rebut the misimpression such evidence would leave on the jury. Accordingly, the Court should preclude the government from offering evidence of Mr. Garcia Luna's wealth or assets in the United States, which includes but is not limited to photographs, bank accounts, mortgage applications, and similar material, along with related testimony by witnesses.

Thank you for your consideration.

Sincerely,

/s/

Florian Miedel
Cesar de Castro
Valerie Gotlib
Shannon McManus
*Counsel for Genaro Garcia Luna*

Cc: All counsel (ECF)