THE LAW FIRM OF

# César de Castro, P.C.

ATTORNEY AT LAW

The District
111 Fulton Street - 602
New York, New York 10038
631.460.3951 Office
646.285.2077 Mobile
646.839.2682 Facsimile
cdecastro@cdecastrolaw.com
cdecastrolaw.com

January 10, 2023

*Via* ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Garcia Luna* 19 Cr. 576 (BMC)

Dear Judge Cogan,

We write this motion in opposition to the government's second motion *in limine,* and request that the Court: (1) require the government to identify the specific aspects of Mr. Garcia Luna's post-arrest statements it intends to introduce; and (2) permit the defense to introduce evidence of meetings between Mr. Garcia Luna and senior United States officials in the form of photographs and written statements of those officials.

**I.      Relevant Facts**

Mr. Garcia Luna served as a high-ranking government official in Mexico from 2000 until 2012. He served first as head of Mexico's Federal Investigations Agency from 2001 to 2006, and as Mexico's Cabinet Secretary for Public Security until his retirement from public service in 2012. While serving as a government official under two administrations, Mr. Garcia Luna had countless meetings with United States lawmakers, members of the United States law enforcement community, and high-ranking United States policy makers in the executive branch, including a former President and former Attorney Generals regarding the parties' shared efforts in combatting the cartels. Many of these United States officials were acting in their official capacities overseeing the Merida Initiative, a partnership between the United States and Mexico whereby the United States provided Mexico with billions of dollars in anti-narcotics equipment and training. Based on the government's pretrial disclosures, it is clear that the government intends to prove, through various witnesses including United States government officials, the

details of the Merida initiative and the joint efforts by the United States and Mexico to combat and destroy Mexico's drug cartels. That evidence will include Mr. Garcia Luna meeting with United States government officials.

Following his retirement from public office, Mr. Garcia Luna moved to the United States and lived life as a private citizen, and shortly after was granted permanent legal residency. On December 10, 2019, Mr. Garcia Luna was arrested pursuant to the indictment in this case. Upon his arrest Mr. Garcia Luna waived his *Miranda* rights and spoke to the arresting agents. Mr. Garcia Luna's post-arrest statements were not recorded by law enforcement because agents claimed that the recording system was malfunctioning. Accordingly, despite the availability of numerous smart phones with recording capabilities, Mr. Garcia Luna's post arrest statements were not recorded, and the defense has only been provided with a summary.

## II. The Government Must First Be Required To Identify The Specific Portions Of Mr. Garcia Luna's Post Arrest Statements It Intends To Introduce

The government has failed to provide the necessary detail regarding the statements it intends to introduce for the defense or the Court to meaningfully determine what other portions of the statement are necessary for context under the rule of completeness. *See* Fed R. Evid. 106. Accordingly, until it does so, its motion should be denied.

## III. The Defense Should Be Permitted To Introduce Evidence Of Mr. Garcia Luna's Meetings With United States Government Officials As Well As Commendations And Awards He Received From The United States For His Efforts Combatting The Mexican Drug Cartels

As the government does not deny, Mr. Garcia Luna met with countless United States government officials and lawmakers regarding the Mexican – United States alliance to fight the Mexican drug cartels and specifically the importation of narcotics from Mexico to the United States. Evidence of these meetings are: (1) relevant; (2) not unduly prejudicial to any party; (3) not character evidence; and (4) not hearsay. The existence of the meetings and evidence memorializing them is not character evidence or hearsay, it is relevant fact. The government intends to introduce evidence of Mr. Garcia Luna's role in the United States – Mexican wars against the cartels, but it attempts to improperly prevent the defense from introducing additional evidence of this alliance. The close alliance between Mr. Garcia Luna and all levels of United States law enforcement, the enemy of all drug cartels, is certainly probative as to whether the uncorroborated statements of witnesses can be believed that he was truly a member of the cartels himself and received payment to protect those cartel members from the reaches of law enforcement. After all, the overwhelming majority of the government's witnesses were arrested and extradited to the United States while Mr. Garcia Luna was a public official.

Furthermore, any out of court statements made by senior United States officials pertaining to Mr. Garcia Luna's role fighting narcotics trafficking are admissible as opposing party statements, and in some instances, are not hearsay at all but will be admissible for the effect on the listener. Therefore, the Court should deny the government's motion and permit the defense to offer evidence of meetings between Mr. Garcia Luna and senior United States officials and any documented statements made by these officials.

Rule 401 defines relevant evidence as having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401, (Notes of Advisory Committee). Relevance is not determined in a vacuum. *See id.* Once evidence is determined to be relevant, it should usually be admitted. For purposes of Rule 401, exclusion of relevant information is an extraordinary remedy that must be used sparingly. *See Weiss v La Suisse, Societe d'Assurances sur la Vie*, 293 F. Supp. 2d 397, (S.D.N.Y. 2003). After determining if the evidence passes the low bar of relevance, the Court may then decide "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In this case, evidence of Mr. Garcia Luna's close relationship with United States law enforcement and lawmakers is highly relevant. First, we anticipate that the government itself intends to introduce evidence of Mr. Garcia Luna's role as it relates to the United States – Mexico alliance in fighting the cartels. The United States spent billions of dollars yearly on equipment and resources that were sent to the Mexican government. During his time as Secretary of Public Security, Mr. Garcia Luna was instrumental in utilizing that equipment and resources against the cartel. He did so in close consultation with the United States.

Second, naturally United States law enforcement was a gravely feared enemy of the cartels. The evidence of Mr. Garcia Luna's almost constant contact with high levels of United States law enforcement is certainly relevant to the question of whether he was working for or against the drug cartels. The defense is entitled to show the jury that Mr. Garcia Luna was a partner of the United States and not any drug cartels.

Evidence of Mr. Garcia Luna's meetings with United States law enforcement and lawmakers is also not prejudicial to either party. In fact, as noted above, we fully expect the government to introduce this general fact. Allowing the jury to see and understand who Mr. Garcia Luna met with from the United States as part of the war against the drug cartels does not unfairly prejudice either party or mislead the jury.

This evidence is not character evidence. They are facts relevant to the narrative that is this entire case and goes to the heart of whether the government's witnesses are to be believed that Mr. Garcia Luna was a trusted ally of theirs (and, thus, an enemy of the United States) or whether he was a trusted and effective partner of the United States in the war against the drug cartels.

The government improperly relies on *United States v. Doyle*, 130 F.3d 523 (2d Cir. 1997). In *Doyle*, a defendant who was accused of illegally exporting sanctioned goods to Libya, was precluded from offering other evidence of cooperation with the United States government unrelated to the charged shipments. This argument went towards the defendant's propensity for not violating United States law prohibiting dealing with Libya. *Doyle* is distinguishable here, as the evidence of meetings between Mr. Garcia Luna and senior United States government officials are directly related to Mr. Garcia Luna's time in the Mexican Government. Where the defendant in *Doyle* was attempting to introduce evidence unrelated to the charged conduct, Mr. Garcia Luna's meetings with senior United States officials are directly related to Mr. Garcia

Luna's role as a collaborator with the United States in dismantling the drug cartels, and the cartel's knowledge of such.

*United States v. Hernandez*, No. 15-CR-379 (PKC) (S.D.N.Y. Oct. 2, 2019) does not help the government either. The defense attempted to introduce the fact that Mr. Hernandez's brother was photographed with a United States politician to show that the defendant's brother was close to that politician and, thus, it was unlikely that the defendant was trafficking in narcotics. *See Hernandez* Dkt. No. 97 at 41-42. The relationship between the defendant's brother in *Hernandez* and the United States politician had no bearing on the defendant's charged conduct. Conversely, in the meetings between Mr. Garcia Luna and Senior United States government officials, the parties discussed their joint efforts in dismantling the very cartels with which Mr. Garcia Luna is accused of conspiring.[1]

Furthermore, statements made by government officials, too, are relevant, non-prejudicial, and not character evidence for the reasons stated above. Documents such as commendations and awards are not hearsay, and should be permitted to be introduced, as they are opposing party statements. *See* Fed. R. Evid. 801(d)(2). In its argument, the government reads *United States v. Yildiz*, 355 F.3d 80, 81 (2d Cir. 2004) and *United States v. Kampiles,* 609 F.2d 1233, 1246 (7th Cir. 1979), too broadly as they relate to statements made by informants and agents. Here, should the defense wish to admit statements made by United States policymakers, the statements would not be hearsay, as they are in fact opposing party statements. In *Yildiz* the court ruled that an informant's statement could not be used against the government, because the relationship between the informant and the government was too fragile. 355 F.3d at 82 *("'Like the Third Circuit,' we do not believe that the authors of Rule 801(d)(2)(D) intended statements by informers as a general matter to fall under the rule, given their tenuous relationship with the police officers with whom they work.") (citing Lippay v. Christos*, 996 F.2d 1490, 1499 (3d Cir. 1993)). The statements from United States government officials here are distinguishable. The statements are not being made by informants beholden to their handlers. Rather, these statements are being made by representatives of the United States government, who are directly responsible for driving government policy. These officials, some of which were the head of the Department of Justice, are distinguishable from agents and informants.

Additionally, if any of these meetings or statements were known by members of the cartel, the statements would be admissible to show the effect on the listener. *See* Fed. R. Evid. 801. If members of the cartel were aware of how closely Mr. Garcia Luna was working with senior United States officials to hunt them down, it would make it far less likely that the cartels would think Mr. Garcia Luna could be bribed.

---

[1] While at this point this evidence is not being introduced to prove specific instances of good character, such a purpose would be appropriate under Federal Rule of Evidence 405(b). The government has charged Mr. Garcia Luna with making false statements in violation of 18 U.S.C. § 1001. Despite the government's claim that Mr. Garcia Luna's "character is not an 'essential element of the charge'", (Dkt. No. 150 at 6) truthfulness is in fact an element of 18 U.S.C. § 1001, where the charge is "making false statements".

4

## IV. Conclusion

For the forgoing reasons, this Court should: (1) require the government to identify the specific portions of Mr. Garcia Luna's post-arrest statement it intends to introduce; and (2) permit the defense to introduce evidence of meetings between Mr. Garcia Luna and senior United States officials.

_____
César de Castro
Valerie Gotlib
Shannon McManus
The Law Firm of César de Castro P.C.
111 Fulton Street – 602
New York, NY 10038
(631)-460-3951
cdecastro@cdecastrolaw.com
vgotlib@cdecastrolaw.com
smcmanus@cdecastrolaw.com

Florian Miedel, Esq.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, New York 10004
212-616-3042

Attorneys for Defendant,
Genaro Garcia Luna