

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SK/EMR/PP/MED/AA
F. #2019R00927

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 14, 2023

<u>By ECF and Email</u>

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Genaro Garcia Luna</u>
      <u>Criminal Docket No. 19-576 (S-1) (BMC)</u>

Dear Judge Cogan:

   The government respectfully submits this reply brief in further support of its motion <u>in limine</u> (Gov. Mem., ECF No. 150) and in response to the defendant's brief in opposition (Def. Mem., ECF No. 163) to preclude the defendant from introducing (a) statements he made during his post-arrest interview; (b) certain documents which constitute impermissible hearsay; and (c) certain awards, letters, or photographs depicting meetings between him and senior U.S. government officials.[1]

 I. <u>Argument</u>

   A. <u>The Court Should Preclude the Defendant from Introducing His Post-Arrest Statements</u>

   In its opening motion, the government indicated that it may offer defendant's post-arrest lies about his involvement in the charged conspiracy as evidence of his failure to withdraw from the conspiracy. Def. Mem. 2. At the same time, the government moved to preclude the defendant from introducing any other portions of his post-arrest statements because they contain inadmissible hearsay. <u>See</u> <u>id.</u> (citing <u>United States v. Johnson</u>, 507 F.3d 793, 796-97 (2d Cir. 2007) (holding that the court properly bifurcated a defendant's post-arrest statement and precluded the defense from introducing a self-serving portion of the statement)); <u>United States v. Guzman Loera</u>, No. 09-cr-00466 (BMC), ECF No. 245 (E.D.N.Y. June 7, 2018) (granting motion to

---

[1] The defendant did not respond to the government's argument about introducing evidence or advancing arguments regarding the dismissal of charges against another former Mexican government official. Accordingly, the Court should grant this unopposed request.

preclude defendant's hearsay statements and noting that the "rule of completeness does not require the introduction of self-serving statements" (citation omitted)).

The defense does not substantively respond, arguing instead that the government "failed to provide the necessary detail regard the statements it intends to introduce." Def. Mem. 2. Although the government cited eight statements in a single post-arrest interview which it anticipates introducing, Gov. Mem. 2, as courtesy to the defense, the government attaches the post-arrest statement hereto and highlights the portions the government intends to introduce.

> B. The Court Should Preclude the Defendant's Introduction of Certain Documents from U.S. Government Officials and Evidence or Argument About the Defendant Meeting with Prominent U.S. Government Officials

The defendant should be precluded from introducing evidence or argument about statements, awards, photographs, and meetings he had with prominent U.S. government officials. Such evidence or argument should be excluded as inadmissible hearsay, irrelevant, unduly prejudicial, and improper character evidence. The defendant claims that the government "attempts to improperly prevent the defense from introducing [] evidence of [the] alliance" between "Mr. Garcia Luna and all levels of United States law enforcement," including evidence supposedly "memorializing" such alliance. Def. Mem. 2.

To be clear, the government does not object to the defendant calling appropriate witnesses to introduce pertinent evidence of good character. See Fed. R. Evid. 404(a), 405(a); United States v. Damblu, 134 F.3d 490, 494-95 (2d Cir. 1998). Indeed, the government provided the names of several individuals who might serve as such witnesses during pretrial discovery in this case precisely so that the defendant would be equipped well in advance of trial to call these individuals as witnesses should he wish to do so.[2] What the government does object to are (a) out-of-court statements to substitute for that live testimony, and (b) testimony and evidence of photographs, meetings, statements, and awards (and in particular those for which there is no foundation or which have nothing to do with the charged crimes) instead of appropriate character testimony under Rules 404 and 405.

> i. Improper Character Evidence

The defendant is not entitled to introduce evidence or testimony of statements, awards, photographs and meetings because they constitute character evidence, which may only be admitted in the form of reputation or opinion testimony. The recommendation letters, awards, and pictures of the defendant meeting with prominent U.S. officials are, at best, specific instances of character evidence, which are improper under Rules 404 and 405. See Gov. Mem. 7.

The defendant argues that the above-referenced evidence is not character evidence because "[t]hey are facts relevant to the narrative" that the defendant was "a trusted ally." Def. Mem. 3. In other words, the defendant seeks to introduce specific incidents of good character to show his trustworthiness. That is improper. See Fed. R. Evid. 405; United States v. Benedetto,

---

[2] And the defense indicated that it was gathering such witnesses. See July 15, 2022 Status Conf. Tr. at 5-6 (defense counsel requesting adjournment of trial in part because of its need to identify and prepare its "own defense witnesses").

2

571 F.2d 1246, 1250 (2d Cir. 1978) (explaining that Rule 405 contains a "general prohibition against direct testimony about specific acts" of good character). Indeed, "[c]haracter evidence encompasses evidence of a defendant's prior commendations and awards," Reeder v. Bishop, 2019 WL 3732050, at *7 (N.D.N.Y. Aug. 8, 2019), and thus courts have excluded such evidence, including in the specific context of corrupt law enforcement, see United States v. Washington, 106 F.3d 983, 999 (D.C. Cir. 1997) (affirming district court exclusion of commendations to a corrupt law enforcement officer because "the [defendant's] dedication … in investigating drug dealing and carjacking is neither pertinent to nor an essential element of his supposed lack of predisposition to engage in the corrupt criminal activity with which he was charged"). And in any event, the defendant's argument contains a logical gap: for meetings, photographs or awards from U.S. government officials to suggest the defendant's trustworthiness, it would mean that U.S. government officials only meet with, communicate with, or award foreign officials who are vetted and found free of corruption. As discussed below, that is not correct and would require the defendant to lay a proper foundation at trial for it to be relevant.

The defendant also asserts—without citation to any case law—that the crime of false statements contains character as an "essential element" because "truthfulness is in fact an element of 18 U.S.C. § 1001, where the charge is making false statements." Def. Mem. 4 n.1. But a person can violate the false statement law whether it is the defendant's first ever falsehood or whether the defendant is a serial liar known to have a character of dishonesty; in either case, propensity for truth is not any element of the offense, much less an "essential" one. Indeed, it is exceedingly rare that a statute contains character as an essential element. See Wharton's Criminal Evidence § 4:21 (15th ed.) ("[I]n criminal cases, character is an essential element of a charge, claim or defense only in very limited circumstances."); Federal Evidence § 4:27 (4th ed.) ("To begin with the central point, it is rare in criminal cases—indeed, almost unheard of—to find that character is an element in a charge or defense.").

    ii. Relevance and Prejudice

In addition to being improper character evidence, the Court should preclude evidence of the defendant meeting with U.S. government officials, receiving letters or awards from them, or taking photographs with them because such evidence is irrelevant and unduly prejudicial. See Fed. R. Evid. 402, 403. As an initial matter, the statements, awards, photographs, and meetings that the defendant appears to want to introduce[3] do not even relate to the charged crimes—many even predate the charges in this case and cannot be interpreted as a comment on the conduct at issue in this case. See, e.g., ECF No. 151, at 28 (1999 FBI award); 88 (1996 ATF award); 90 (2003 letter of appreciation re: terrorism).

The defendant wrongly argues that "evidence of Mr. Garcia Luna's close relationship with United States law enforcement and lawmakers is highly relevant" because it shows that "he was a partner of the United States and not any drug cartels." Def. Mem. 3. But that argument presupposes several critical facts lacking an adequate foundation: (1) that the letters, photographs, or meetings with U.S. government officials relate to the defendant's efforts against

---

[3] The defense has not indicated what specific material it intends to introduce and does not elaborate in its opposition brief. The government reserves the right to object to evidence not contained in the attachment to its opening motion. See ECF No. 151.

3

the cartels, and (2) that when U.S. government officials met, communicated, or gave awards to the defendant, they were aware of or were endorsing his actions or vouching for his character.[4]

For these reasons, courts have excluded evidence of meetings with senior U.S. government officials as irrelevant, more prejudicial than probative, or improper character evidence. In a trial against a former Honduran public official who was convicted of engaging in drug trafficking, the defendant sought to introduce evidence of a meeting with Ambassador Nikki Haley. See United States v. Hernandez, No. 15-CR-379 (PKC), ECF No. 97 at 37, 41-42 (S.D.N.Y. Oct. 2, 2019). In excluding the evidence, the court asked defense counsel "how is [meeting Haley] probative of anything relevant in this case? Why isn't it a disguised form of character evidence?" In his opposition, the defendant attempts to distinguish Hernandez on the ground that meetings between senior Honduran government and U.S. government officials "had no bearing on the defendant's charged conduct." But Hernandez involved similar allegations of government ties with drug trafficking organization and a familiar defense: that U.S. government officials would not meet with Honduran government officials if they or their allies were corrupt or involved in the drug trade.

While evidence of meetings, letters and awards has no probative value, on the other side of the ledger, there is a serious risk of undue prejudice. See Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of … confusing the issues, misleading the jury, undue delay, wasting time[.]"). Introduction of such evidence would waste the court and the jury's time by creating a mini trial on the nature of the defendant's meetings with government officials and the methodology of the government's awards. It also would mislead the jury by wrongly suggesting—without adequate factual foundation—that the individuals providing the statements, awards, photographs, and meetings were speaking about the defendant's work against the cartels or that they vetted the defendant and only extended those accolades and courtesies after concluding that the defendant was not corrupt.

---

[4] Indeed, U.S. government officials regularly engage in diplomacy with senior members of foreign governments who are engaged in illegal conduct, human rights abuses, and corruption. For instance, President George W. Bush was photographed meeting with the governor of Mexican state Tamaulipas Tomás Yarrington, who was convicted of accepting over $3.5 million in illegal bribe money and using it to fraudulently purchase property in the United States. See United States v. Yarrington Ruvalcaba, No. 1:12-cr-00435 (S.D. Tex. Mar 25, 2021); *Yerington, former Mexican governor, extradited from Italy to Texas*, San Antonio Express-News (Apr. 20, 2018), https://www.expressnews.com/news/local/article/Yarrington-former-Mexican-governor-has-been-12851316.php#photo-15425649. Likewise, Secretary of State Hillary Clinton met with Russian President Vladimir Putin. These meetings—made by officials to advance diplomatic goals—hardly represent endorsements by the U.S. government (or even by those U.S. government officials) of a foreign government official's honesty or ethics.

iii. Hearsay

Even if such recommendation letters and awards by prominent government officials are relevant, non-prejudicial, and not improper character evidence, they would still be inadmissible hearsay. See Gov. Mem. 5-6.

The defendant posits that such evidence is not hearsay because "any out of court statements made by senior United States officials pertaining to Mr. Garcia Luna's role fighting narcotics trafficking are admissible as opposing party statements." See Def. Mem. 2. And he further argues that the Second Circuit's decision in United States v. Yildiz, 355 F.3d 80, 80 (2d Cir. 2004), which restricted the party opponent rule against the government in criminal cases, stands only for its bare facts: that a government "informant's statement could not be used against the government." Def. Mem. 4; see also id. (statement by government informant inadmissible as party opponent statement "because the relationship between the informant and the government was too fragile"). But Yildiz is not so limited. Rather, the court "affirm[ed] the common law rule that a government agent's out-of-court statements are not admissible for their truth in a criminal prosecution as admissions by a party opponent." Yildiz, 355 F.3d at 80 (citing United States v. Santos, 372 F.2d 177, 180-81 (2d Cir. 1967)). To be sure, Yildiz identified a narrow exception: "sworn statements submitted to a judicial officer, which the government might be said to have adopted" can be admitted as party opponent statements against the government. Id. at 82. However, none of the letters of recommendation or awards represent sworn statements submitted to a judicial officer, and the defendant does not suggest they are.

The fact that some statements were made by "representatives of the United States government, who are directly responsible for driving government policy," as the defendant argues, Def. Mem. 4, does not change the analysis. The defendant cites no case law for the novel proposition that statements by "policymakers" are exempt from the hearsay rules. To the contrary, such officials have nothing to do with the litigation; they are "disinterested" in the case's outcome and thus their statements are not "the product of the adversary process and hence less appropriately described as admissions of a party." See United States v. Kampiles, 609 F.2d 1233, 1246 (7th Cir. 1979) (explaining rationale for excluding investigative agents from party opponent rule). Nothing about the seniority of the speakers or their role in policymaking alters the fact that they are out-of-court, unsworn speakers, whose statements are offered for their truth.

Consistent with the rule in Yildiz and Santos, courts have also barred the defense from introducing formal reports by government officials or commissions. In United States v. Durrani, 659 F. Supp. 1183 (D. Conn. 1987), aff'd, 835 F.2d 410 (2d Cir. 1987), the court barred introduction at trial of a report produced by the Tower Commission, which was established by President Ronald Regan in response to the Iran-Contra Affair. Despite the defendant's argument that the report was "a party admission by the United States government," the court relied on Second Circuit law that "flatly rejected this theory" and recognized that such statements "are not admissible as evidence of the fact against the government in a criminal case." Likewise, in United States v. Garza, 448 F.3d 294, 299 (5th Cir. 2006), the court barred introduction of a report written by an investigator at the Department of Justice. Because the report "related to a different case" and the "results of [the] investigation [were] never adopted by the Department of Justice," the Court found that it would violate the hearsay rules to admit the report. The Court should hold the same here.

The defendant also argues that such statements are not offered for their truth, but for the effect on the listener—here, whether it was "likely" that members of the Sinaloa Cartel thought he could be bribed. But this argument is flawed for two independently sufficient reasons. First, the defendant has not established a foundation for this argument—that is, he has not shown that cartel leaders were aware of the private letters of recommendation and awards he received from various U.S. officials, nor could he do so. The defendant offers only a hypothetical. See Def. Mem. 4 ("If members of the cartel were aware…."); George v. Celotex Corp., 914 F.2d 26, 30 (2d Cir. 1990) (holding that the effect-on-the-listener doctrine would not apply because the listener "could not have been put on notice [of the report] because there was no proof at trial that [he] ever saw the [] report"). Second, the effect-on-the-listener doctrine is generally intended to permit certain background information to enable a witness to explain his or her subsequent conduct—not to invite a propensity inference on the core issue in the case, whether the defendant was "likely" or unlikely to have participated in the conspiracy. See Def. Mem. 4; United States v. Simmons, 11 F.4th 239, 264 (4th Cir. 2021) (finding non-hearsay statement introduced to show how it "caused [the listener] to react just days later") (vacated on other grounds).

* * *

Excluding statements, awards, photographs, and meetings with prominent U.S. government officials does not prejudice the defendant or deprive him of a defense, as the defendant remains able to call the referenced individuals as witnesses, pursuant to Rules 404 and 405, and present "testimony about the [defendant's] reputation or by testimony in the form of an opinion," which would then be subject to cross-examination. See Fed. R. Evid. 405(a). Should the Court permit the defendant to introduce any photographs, awards, or letters from U.S. officials without their live testimony, the government will seek to call the persons referenced in that material to establish the limitations of their knowledge and their lack of endorsement.[5]

---

[5] For this reason, at a minimum, the Court should preclude any evidence of commendations by persons who are unavailable (e.g., because they are deceased or outside the Court's subpoena power).

6

II. Conclusion

For the foregoing reasons, and the reasons outlined in the government's opening brief, the Court should grant government's motion in limine.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Adam Amir
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense Counsel (by ECF)
     Clerk of Court (BMC) (by ECF)