

January 15, 2023

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

<u>United States v. Genaro Garcia Luna</u>
Ind. No. 19-Cr-576 (BMC)

Your Honor:

The government's opposition to Mr. Garcia Luna's motion to preclude the government from introducing evidence of his activities and wealth after 2012 lays bare the precise basis for the motion: the government cannot establish a connection between Mr. Garcia Luna's life in Miami as a private citizen after 2012 and the allegations in the indictment. Without some connection, some link, between bribes allegedly received as a Mexican government official and the wealth Mr. Garcia Luna accumulated through his consulting work after 2012, this evidence is not relevant under Fed. R. Evid. 401, and has no basis for admission under Rule 404(b).[1] Moreover, introduction of such evidence would lead to jury confusion, speculation, and improperly shift the burden to the defense to prove that Mr. Garcia Luna's wealth was not derived from cash bribes, a fact of which the government is well aware. As such, admission would be substantially more prejudicial than probative under Rule 403.

**Background**

The government offers several justifications for its effort to introduce evidence about Mr. Garcia Luna's post-government business activities and his accumulation of wealth. None of them has merit. Much of the government's opposition focuses on Mr. Garcia Luna's business with the government of Mexico between 2012-2019, none of which has to do with an alleged conspiracy with the Sinaloa cartel. To be clear, Mr. Garcia Luna is charged with conspiring with the Sinaloa cartel by accepting bribes while he was a Mexican government official (between 2000 and 2012) to facilitate the cartel's criminal activities. He is not charged with

---

[1] It bears noting that this issue is conspicuously missing from the government's 404(b) motion filed six months ago on June 15, 2022. *See* ECF Doc. No. 94.

misconduct related to business he conducted with Mexican government officials after he left the government and worked in the private sector.

Moreover, some of the government's facts warrant clarification. For example, the government states that after Mr. Garcia Luna left government and moved to Miami, the "international businessmen" who he had purportedly cultivated as partners while still in government, "immediately provided him with a multi-million-dollar home and yacht in Miami and a lucrative consulting contract." Govt. Opp. at 2. As the government knows, these business partners gave Mr. Garcia Luna *access* to a residence that came with the use of a boat – they did not give him the property. In fact, they allowed Mr. Garcia Luna to use the residence because he did not yet have sufficient income to establish his own proper home.[2] Nor did Mr. Garcia Luna "move[] assets from Mexico to the United States," unless the government is referring to cars that he brought over to Florida. The government has no evidence that the cars were purchased with tainted funds, and whatever the value of those cars may have been, it was a miniscule fraction of the amounts of cash bribes Mr. Garcia Luna allegedly accepted.

**Discussion**

In its opposition to the defense motion, the government makes four meritless arguments that require a response. *First*, it contends that Mr. Garcia Luna's "activities after he left office provides proof of his membership in the conspiracy while he was in office." Govt. Opp. at 4. In support of this conclusion, the government suggests that Mr. Garcia Luna's ability to be a successful consultant after he left government somehow demonstrates the power and duration of his relationship with co-conspirators. It does no such thing.

Mr. Garcia Luna was a cabinet minister in the Mexican government. He had a number of close colleagues in the government. He was well known and well liked. Like many Mexican (or American) members of a presidential administration who move into the private sector after leaving office, Mr. Garcia Luna leveraged his government connections and experience into a lucrative private sector position. This common public sector to private sector transition has nothing whatsoever to do with the allegations in the indictment – that Mr. Garcia Luna accepted bribes from the Sinaloa cartel in his capacity as a government official – and the government has not, and cannot, offer evidence to show that the two were connected.

---

[2] The government disputes that Mr. Garcia Luna arrived in Miami without significant wealth and claims that this "reflects a selective view of the witness interviews and other evidence obtained during this investigation and provided to the defense in discovery." Gov. Opp. at 2 n.1. Yet it offers no evidence to the contrary. The defense assertion is based on detailed statements made by ███ ████████████████████████, in an extensive interview with the government in March 2020. *See* Exhibit A to Def. Mot., ████████████████. The interview notes reflect the following: ███ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ This does not seem to be a "selective view," but if the government has evidence to suggest that Mr. Garcia Luna arrived in Miami in 2012 with substantial assets in hand, it should point it out.


Nor is it relevant if Mr. Garcia Luna continued to have relationships or professional connections with other government officials who allegedly took bribes and remained in the Mexican government, unless those post 2012 connections somehow furthered the conspiracy. It is simply not probative of the allegations in the indictment if Mr. Garcia Luna corresponded or met with Mexican government officials in order to negotiate contracts with the government for his private business. It is also not significant that Mr. Garcia Luna eventually hired some former Mexican government officials for his consulting firm, unless – once again – the government has information to establish *both* that the people he hired were alleged co-conspirators in the charged conspiracies, *and* that the work they did for Mr. Garcia Luna at his firm after 2012 was somehow connected to the allegations in the indictment. The government has proffered neither, precisely because no such connection exists.

*Second*, the government argues that evidence of Mr. Garcia Luna's post 2012 life in the United States is probative of refuting a statute of limitations and conspiracy withdrawal defense. The government suggests that because Mr. Garcia Luna maintained property in Mexico that he acquired during his time in government and to which he returned on occasion after 2012, and because he was able to travel between both countries and conduct business in Mexico – he "continued to receive benefits from the conspiracy years after he left office," which would defeat a defense of withdrawal. Govt. Opp. at 4.

The government cannot, however, actually identify what those benefits might have been because there were no such benefits. According to the indictment, the benefits Mr. Garcia Luna allegedly received from the conspiracy were vast amounts of cash in the form of bribes from drug cartels. Those alleged bribes stopped, according to the government and for obvious reasons, when he left the Mexican government. Subsequent travel to Mexico or an ability to conduct business with his former government colleagues do not show that he continued to receive those benefits. Indeed, even if Mr. Garcia Luna had accepted bribes to use his government power to assist the cartel, he was of little use to the cartel as a private citizen. That means, even under the government's theory, the bribes would have stopped and the relationship was over, which is one explanation for why he could travel unbothered in Mexico. Ultimately, though, the government simply has no evidence of a continuing conspiratorial relationship between Mr. Garcia Luna and his alleged co-conspirators after 2012.

If the government wants to suggest that by staying in his home in Mexico during his business trips after 2012 he somehow continued to reap the benefits of the conspiracy, it is free to do so. The defense has not moved to preclude government exhibits or evidence related to his Mexican assets. But the government does not need to show the trappings of Mr. Garcia Luna's life in the United States, or the details of his business after 2012, to establish that he on occasion stayed in his properties in Mexico after he departed government. His business activities and accumulation of wealth in the United States after 2012 are unrelated to whether he kept his Mexican property and occasionally resided in it. The government can establish the latter without the former.

If the government wants to defeat a withdrawal defense, it can offer evidence to show that Mr. Garcia Luna's participation in the charged conspiracy continued after he left government in 2012. His business relationship with the Mexican government as part of his post-government consulting business does not further the government's goal because the two are unrelated and unconnected.

*Third*, the government contends that Mr. Garcia Luna's business activities after 2012 are relevant to show why it cannot locate or trace the millions of dollars he allegedly received from the Sinaloa cartel. This argument is particularly hard to understand. The government states that Mr. Garcia Luna's business acumen, which he developed over the years with his business partners, somehow demonstrates that he had the wherewithal to move money through "shell companies, straw buyers, real estate transactions, cash businesses, foreign bank accounts and family members and employees." Govt. Opp. at 5. The problem is that the government has no evidence of Mr. Garcia Luna moving money acquired from bribes through shell companies, real estate transactions, etc. In other words, the government wants to use Mr. Garcia Luna's business expertise developed after 2013 as "evidence" to explain its lack of evidence. The government's proposal is confusing, speculative, and prejudicial, and should be rejected.

Moreover, the government's argument makes little factual sense. Mr. Garcia Luna possessed no shell companies, foreign bank accounts, cash businesses and the like when he worked in the Mexican government, and there is no evidence he laundered bribes through such entities. Therefore, the government's logic only works if Mr. Garcia Luna brought millions in cash to the U.S. from Mexico, waited several years to build up a legitimate profitable business, and then laundered his illegally acquired cash through that business. If the government had such evidence it would have presented it. It does not.[3]

Instead, the government offers a speculative theory unsupported by even a shred of evidence. This dangerous speculation is precisely why the defense filed its motion *in limine*. If the government wants to explain why it cannot find the alleged bribe money, it needs to come up with a different theory than to try to persuade the jury that Mr. Garcia Luna's legitimate business activities and his accounted for income years later somehow established his *ability* to move money surreptitiously. It is simply not relevant.

*Lastly*, the government seems to argue that Mr. Garcia Luna's accumulation of wealth when he worked in the private sector after he left government demonstrates that getting rich was his goal all along – that his 20 plus years in government were all geared toward one objective, to become as wealthy as possible. This argument truly strains all logic. First, Mr. Garcia Luna is not the first and will not be the last government official who eventually leaves government and becomes wealthy in the private sector. Vice President Dick Cheney comes to

---

[3] As discussed in the motion *in limine*, the government is well aware of how Mr. Garcia Luna accumulated his wealth after 2012. It is, presumably, one of the reasons why the government never moved to freeze Mr. Garcia Luna's U.S. based assets – it cannot connect them to the charged crimes. *See Luis v. United States*, 578 U.S. 5, 20 (2016) ("cases such as *Caplin & Drysdale* and *Monsanto* permit the Government to freeze a defendant's assets pretrial, but the opinions in those cases highlight the fact that the property at issue was "tainted," *i.e.*, it did not belong entirely to the defendant. We have found no decision of this Court authorizing unfettered, pretrial forfeiture of the defendant's own "innocent" property—property with no connection to the charged crime."). The government says that it will "fairly and accurately describe the sources of the defendant's post 2012 wealth." Govt. Opp. at 6. Unless it explicitly states that Mr. Garcia Luna's post 2012 wealth is *not* the patriation of bribe money, it is not fairly and accurately describing the sources of his wealth.

mind. The fact that someone ultimately enters the business world after years of public service hardly undermines that person's motivation and dedication during their time in government.

Second, even if it were true that during his time in government Mr. Garcia Luna established relationships with "wealthy and powerful international businessmen [to] acquire future benefactors" (Gov. Opp. at 5), what connection does that behavior have to the charged offenses? The government does not and cannot allege that these "powerful businessmen" were co-conspirators in the alleged conspiracy. How would Mr. Garcia Luna's alleged relationship with drug traffickers have helped him cultivate connections with international businessmen? Moreover, it is hard to follow the government's leap that Mr. Garcia Luna's alleged motivation to monetize his government work made it more likely than not that he conspired with the Sinaloa cartel. If Mr. Garcia Luna's sole purpose in government was to eventually be able to cash out in the private sector, and he therefore spent much of his time developing relationships with potential business partners, why did he need to take bribes (and perhaps risk that ultimate career path)? Conversely, if he took millions of dollars in bribes from the Sinaloa cartel, why did he need to partner with powerful businessmen so he could become wealthy in the private sector? The two literally have nothing to do with one another, and the argument simply exposes how hard the government is straining to admit fundamentally irrelevant and prejudicial evidence.

## Conclusion

Ultimately, this issue is straightforward. Evidence of Mr. Garcia Luna's business activities and accumulation of wealth in his private life after 2012 is prejudicial because it could cause the jury to speculate, without foundation, that there must have been some relationship between the alleged bribes from the Sinaloa cartel and his post 2012 wealth and assets. The reality, however, is that there is no connection. The government had the opportunity to proffer such a link in its opposition, but for the reasons set forth above it failed to do so. Even if he had conspired with the cartel, which he did not, Mr. Garcia Luna's transactional relationship with the cartel ended when he left government and he was no longer of any use to them. At that point he began a second career as an international consultant in which he accumulated wealth by legitimate means, completely unrelated to the cartels.

Absent such a connection, the evidence is not relevant. For the same reasons, it is also not admissible under Rule 404(b).[4] None of his business activities or acquisition of wealth after 2012 shed light on the allegations contained in the indictment. They are not connected, let alone "intertwined." Accordingly, the Court should grant Mr. Garcia Luna's Motion *in limine*, and deny the government's cross motion.

---

[4] The government's belated 404(b) motion does not actually identify what other "wrongs, crimes, or acts" Mr. Garcia Luna allegedly committed after he left Mexico in 2012.

Miedel & Mysliwiec • 80 Broad Street, Suite 1900 • New York, New York 10004 • (T) 212-616-3042 • (F) 800-507-8507 • www.fmamlaw.com

Thank you for your consideration.

                                                Sincerely,

                                                   /s/

                                                Florian Miedel
                                                Cesar de Castro
                                                Valerie Gotlib
                                                Shannon McManus
                                                *Counsel for Genaro Garcia Luna*

Cc: All counsel (ECF)