

U.S. Department of Justice

United States Attorney
Eastern District of New York

SK/EMR/PP/MED/AA
F. #2019R00927

271 Cadman Plaza East
Brooklyn, New York 11201

January 24, 2023

By ECF and Email

TO BE FILED UNDER SEAL

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Genaro Garcia Luna
                Criminal Docket No. 19-576 (S-1) (BMC)

Dear Judge Cogan:

        The government respectfully submits this letter in response to the defendant's motion to preclude certain anticipated testimony from government witness Tirso Martinez Sanchez. The defendant moves to prelude two categories of testimony: (i) evidence that Mr. Martinez's co-conspirators in the Sinaloa Cartel offered to assist Mr. Martinez by connecting him with the defendant Genaro Garcia Luna during the 1990s and early 2000s; and (ii) jailhouse statements made in 2014 by a fellow inmate to Mr. Martinez regarding the assistance that the fellow inmate received by the defendant Genaro Garcia Luna. In doing so, the defendant essentially seeks to excise from Mr. Martinez's testimony all of the portions that pertain specifically to the defendant. The government respectfully submits that the statements in the first category are admissible as co-conspirator statements and verbal acts. The government does not seek to admit the second category of statements, as the government recognizes these statements to be hearsay.

        With respect to the statements by Mr. Martinez's co-conspirator ("Jorge"), the defendant argues that the statements are not in furtherance of the charged conspiracy because at least some of them occurred before the dates charged in the indictment. However, as this Court is well aware, the Sinaloa Cartel is a long-running drug trafficking conspiracy that both predates and postdates the 2001-2020 time period.[1]

        Moreover, the statements are direct and relevant evidence of the charged crimes for several reasons. First, they provide important background information and direct evidence

---

[1] In any event, co-conspirator statements are admissible so long as they are statements in furtherance of <u>any</u> conspiracy, even if not the charged conspiracy. <u>See</u> <u>United States v. Abu-Jihaad</u>, 531 F. Supp. 2d 289, 294 (D. Conn. 2008) (The "conspiracy that serves as

that the defendant was in a position to form the relationships he later relied on as part of the conspiracy. Indeed, in his opening statement, defense counsel referred to the defendant's activities during the 1990s at length. Trial Tr. 28-29 (the defendant "started his public service career in 1989. From 1989 to 1997, he was first an analyst, then Deputy Director of CISEN: The Center of Investigation and National Security. That's kind of like our NSA. From 1998 to 2000, he was a supervisor in the Preventive Federal Police. From 2000 to 2001: he was the Director of Planning and Operations for the Federal Judicial Police").[2] However, the statements in question demonstrate that during the same time period the defendant was connected to members of the Sinaloa Cartel. Second, the statements tend to show that the defendant was known to members of the Sinaloa Cartel as an asset available to the cartel, and that certain members of the Sinaloa Cartel offered the defendant's assistance to others in furtherance of drug trafficking activities. See, e.g., United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) (admitting evidence to explain the development, evolution, and mutual trust of relationship between co-conspirators). Third, the statements are further relevant because Mr. Martinez's co-conspirator's offer to connect Mr. Martinez with the defendant inform Mr. Martinez's subsequent understanding of who in the Mexican federal government was being paid off by the Sinaloa Cartel to protect that train route when he is running drugs into the United States (which route forms the basis for Violations Four, Five, and Six of Count One). Finally, "Jorge's" offer to Mr. Martinez to connect Mr. Martinez with the defendant in 2000 or 2001 (in the charged time period) provides further evidence that members of the cartel understood that the defendant was available to assist them with their drug trafficking enterprise and was not the "enemy" of the cartel as defense counsel referred to the defendant in his opening statement. Trial Tr. 31.

       The defendant argues that the statements should be precluded because they lack indicia of reliability. Not so. The statements are made in the context of Mr. Martinez receiving large quantities of cocaine in Mexico for further distribution. These are classic co-conspirator statements, admissible because they are made in the context of attempting to further a specific goal and not as a post-hoc recollection. It is notable that Mr. Martinez recalls his co-conspirator offering to connect Mr. Martinez with the defendant, but Mr. Martinez also proffered that he did not avail himself of that connection—undermining any notion that Mr. Martinez is fabricating the statement for the benefit of the government's case. The defendant argues that the statements are double hearsay, but most of the statements are not—they consist of Jorge offering to connect Mr. Martinez with the defendant. The defendant also argues that because of the timing of when Mr. Martinez first mentioned these co-conspirators to investigators, the co-conspirators

---

the vehicle for introduction of the co-conspirator's statements need not be charged in the indictment.").

[2]    The defense opening further went into details from this time period and referred to the defendant's actions during this time period as a basis to question the reliability of one of the government's witnesses: "That's called the PJF, you may hear that from the witness stand. Then new president, Vicente Fox Quesada, had Mr. Garcia Luna dissolve the Federal Judicial Police and, instead, create the Federal Ministerial Police; tasked with fighting corruption and organized crime. That was known as AFI. In an effort to clean up what had been a corrupt organization, Mr. Garcia Luna removed thousands of agents. The federal police reform resulted in the loss of jobs to individuals not meeting higher standards, and we expect you will hear from a least one of those who lost their position because of those higher standards. Who lost their job because of Mr. Garcia Luna." Trial Tr. 29.

themselves are made up—those arguments can be made to the jury but are not a basis to preclude the statements entirely.

For the foregoing reasons, the Court should deny the defendant's motion to preclude evidence that Mr. Martinez's co-conspirators in the Sinaloa Cartel knew the defendant and offered to assist Mr. Martinez by connecting him with the defendant.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Adam Amir
Assistant U.S. Attorneys
(718) 254-7000

cc:   Defense Counsel (by ECF)
      Clerk of Court (BMC) (by ECF)