

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SK/EMR/PP/MED/AA
F. #2019R00927

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 4, 2023

By ECF and Email

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Genaro Garcia Luna
             Criminal Docket No. 19-576 (S-1) (BMC)

Dear Judge Cogan:

      The government respectfully submits this opposition in response to the defendant's motion to preclude evidence filed February 1, 2023. See ECF No. 193. In his motion, the defendant seeks to preclude the government from introducing evidence that the defendant paid bribes to a Mexican newspaper to prevent negative press against him.[1] As the defendant concedes, in August 2022 the Court granted the government's June 2022 motion in limine to admit this evidence "to the extent that the Government can lay a foundation that ties Mr. Garcia Luna directly to those alleged allegations." See ECF No. 117. Because the government can directly tie the defendant to these bribes, and because the defendant has opened the door to this evidence both in his opening statement and in his questioning of witnesses throughout the trial, the Court should deny the defendant's motion for reconsideration and permit the government to admit the proposed evidence.

    A. The Court Should Deny the Defendant's Motion to Reconsider its Decision to Permit the Government to Introduce Evidence of His Bribes to a Mexican Newspaper

      The defendant's motion to preclude has already been considered, and rejected, by the Court. See ECF No. 117. Nevertheless, in his February 1, 2023 motion, the defendant asserts that he is in "a better position to refine his response" to the proposed evidence now that he is in

---

[1] In the government's initial motion in limine filed on June 15, 2022, the government informed the Court that the source of the money for the bribes was from government kickbacks, see ECF No. 94, evidence that the defendant is now also seeking to preclude. Because it is possible to elicit evidence of the defendant's payment of bribes to the newspaper without eliciting the source of the funds, the government will not introduce evidence that the source of the money came from government kickbacks.

possession of the § 3500 material for Mr. Villareal-Hernandez, who will testify about the defendant's bribes to El Universal, a Mexican newspaper. See Def. Mot. at 1. But the facts that the defendant lays out in his motion are not meaningfully different from those set forth in the government's initial motion in limine, where the government moved to introduce evidence that "in approximately 2009 or 2010, the defendant used money amassed from a corrupt kickback scheme to pay bribes to a news organization to prevent journalists at the organization from publishing negative stories about him," ECF No. 94, and in its reply to the defendant's response to that motion, in which the government included additional facts, among them "that the defendant's efforts to bribe an editor at a news organization were successful and that the defendant was able to quash a story about his corrupt activities," ECF No. 112.

As the government argued in its initial motion in limine, evidence of the defendant's payment of bribes to El Universal to stop the newspaper from publishing negative stories about him is "inextricably intertwined with evidence regarding the charged offense" and "necessary to complete the story of the crime on trial," United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000), including how he was able to corruptly assist the Sinaloa Cartel for years without detection or arrest. Indeed, as explained more below, now that the defendant has repeatedly elicited evidence of his positive reputation in the press, evidence of his efforts to stop any reporting that threatened that reputation is highly relevant to complete the narrative at trial. In addition, the evidence that the defendant took efforts to stop reporting that connected him to drug cartels is also admissible for the non-propensity purpose of showing the defendant's consciousness of guilt. See United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991).

Moreover, the Court has already considered, and rejected, the defendant's argument that the proposed evidence is more prejudicial than probative, which the defendant argued in his July 13, 2023 response to the government's motion in limine. See ECF No. 106. The risk of any prejudice is even less now that the government does not seek to introduce evidence that the source of the money for the bribes was from illegal kickbacks.

In the Court's August 2022 decision on the government's in limine motion, the Court held that it would permit the government to introduce evidence of the defendant's efforts to bribe journalists as long as the government could "lay a foundation that ties Mr. Garcia Luna directly to th[e] alleged allegations." ECF No. 117. The defendant does not dispute the fact that the government can lay that foundation here. Indeed, Mr. Villareal-Hernandez is expected to testify about direct conversations with the defendant about his bribes to El Universal, as well as direct actions taken by the defendant to pay those bribes. The Court should permit the government to present this evidence to the jury.

B. The Defendant Has Repeatedly Opened the Door to Evidence of Press Reporting About Him During the Trial

The Court should also deny the defendant's motion to preclude evidence of his efforts to bribe El Universal to prevent negative stories about him because, at trial, he has repeatedly opened the door to evidence about his public reputation and reporting in the Mexican press. For example, in his opening statement, the defendant told the jury that he was "the man that represented the public face for the all-out war against the Mexican drug cartels," and argued

that the government's witnesses selected him "for revenge" because of that public role. See Tr. 26; 27; 34; 35.

Similarly, on cross-examination the defendant has asked witness after witness about frequent reporting about the defendant "in the news," "on TV," and in publicly-broadcast "speeches." See Tr. 223; 576; 691; 806-807. For example, defense counsel engaged in the following colloquy with Sergio Villarreal Barragan:

> Q. Now, on direct examination, you testified about Mr. Garcia Luna's various positions in government, right?
>
> A. Yes.
>
> Q. And that was not a secret, right?
>
> A. No.
>
> Q. He's a very public figure, correct?
>
> A. Yes.
>
> Q. He was in the news a lot?
>
> A. Yes.
>
> Q. On TV?
>
> A. Yes.
>
> Q. On the evening news at times, right?
>
> A. Well, we didn't watch the news, but maybe if you happen to be watching TV you would catch him on it.
>
> Q. Stories and stories would be written about him, right?
>
> A. Yes. He was very well-known?
>
> Q. Very famous?
>
> A. Yes.

Tr. 223, 1-18.

Similarly, in his cross-examination of Oscar Nava-Valencia, defense counsel asked these questions:

> Q. Mr. Garcia Luna, he was famous in Mexico; right?
>
> A. Yes.

3

| | Q. | People knew who he was? |
| --- | --- | --- |
| | A. | Yes, he was talked about a lot. |
| | Q. | He was in the news? |
| | A. | Yes. |
| | Q. | He gives speeches that people watch on TV; right? |
| | A. | Yes. He also gave speeches, yes. |

Tr. 573, 3-10.

Defense counsel asked similar questions of Raul Arellano-Aguilera:

| | Q. | And he was, at that point now, giving speeches and in the public eye; right? |
| --- | --- | --- |
| | A. | Yes. |
| | Q. | He was on television and he was on news shows? |
| | A. | Yes. |
| | Q. | And he was bringing a general message to the public that under his leadership AFI would fight against crime; right? |
| | A. | That's what he said. |

Tr. 691, 18-25.

Finally, with Israel Avila, defense counsel engaged in the following colloquy:

| | Q. | So, Mr. Avila, Genaro Garcia Luna was a very famous person in Mexico; correct? |
| --- | --- | --- |
| | A. | Correct |
| | Q. | People knew who he was; right? |
| | A. | Yes. |
| | Q. | He was on the news; right? |
| | A. | Yes. |
| | Q. | In the newspapers? |
| | A. | Yes. |

4

> Q. You saw him speaking on TV; right?
>
> A. Yes.
>
> Q. He gave speeches; right?
>
> A. I think so.

Tr. 806, 19-25; 807, 1-6.

In addition to these questions, the defendant has also introduced the topic of his public reputation in other ways – including by putting photographs of himself with high-level American government officials into evidence. In short, the defendant has opened the door to the government's proposed evidence of his bribes to El Universal by repeatedly eliciting evidence of his positive reputation in the press. Given the immense focus that the defense has already placed on the public reporting on him and on his reputation at trial, it would be misleading to the jury to preclude the government from introducing evidence of the defendant's efforts to massage that reputation through bribes to El Universal.

C. Conclusion

For the foregoing reasons, the Court should deny the defendant's motion and permit the government to introduce evidence of the defendant's payment of bribes to El Universal to stop negative press against him.

Respectfully submitted,

BREON PEACE
United States Attorney

By: \_\_\_/s/_____
Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Adam Amir
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense Counsel (by ECF)
    Clerk of Court (BMC) (by ECF)