

U.S. Department of Justice

United States Attorney
Eastern District of New York

SK/EMR/PP/MED/AA
F. #2019R00927

271 Cadman Plaza East
Brooklyn, New York 11201

February 8, 2023

By ECF and Email

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Genaro Garcia Luna
Criminal Docket No. 19-576 (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in response to the defendant's motion to preclude cross-examination of the defendant, should he testify, on post-2012 conduct. The Court should deny the motion. The Court previously precluded post-2012 wealth from the government's case-in-chief on grounds of relevance. However, should the defendant take the stand, he will put his credibility at issue. In those circumstances, the government is entitled to cross-examine the defendant on all matters that pertain to the substance of his claims and his credibility. This necessarily includes his conduct after 2012.

As the Supreme Court has observed: "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." Michelson v. United States, 335 U.S. 469 (1948). "The government is not limited on cross-examination of defense witnesses to those portions of an event which are favorable to the defense." United States v. Raper, 676 F.2d 841, 847 (D.C. Cir. 1982). Rather, it is well-settled that a criminal defendant is subject to cross-examination on all matters related to his credibility. See, e.g., United States v. Edwards, 342 F.3d 168, 181 (2d Cir. 2003). Prior lies, false claims, and other conduct showing dishonesty is highly probative of a defendant's credibility. See United States v. Sperling, 726 F.2d 69, 75 (2d Cir. 1984); United States v. Zandi, 769 F.2d 229, 236–37 (4th Cir. 1985) (government permitted to cross-examine drug trafficking defendant, for impeachment purposes, on deceptive financial conduct and information); Fed. R. Evid. 608(b).

In this case, there are a number of post-2012 matters that bear on the defendant's credibility, and the government should be permitted to cross-examine the defendant about them. These include false statements the defendant made in his citizenship application, to law enforcement, and to various journalists and media outlets; efforts to pay for positive media specifically to tamp down reporting related to his association with El Chapo; deceptive financial

conduct in which the defendant used corporate shell companies and third parties to purchase property, pay employees, and pay personal expenses for himself and his family, specifically for the purpose of concealing the true source of the funds (see ECF No. 161-1, Ex. A at 10 (referencing the use of a shell company to pay the defendant "because they didn't want to have a direct link with him" and because they "Tried to hide as much as they could")); theft, concealment, and money laundering activities (see ECF No. 161-1, Ex. B (civil complaint to which default judgment has been entered against the defendant)); and deceptive professional conduct and false marketing in which the defendant purported to provide a novel algorithm for public safety while simply repackaging and reselling publicly available information. The government should also be permitted to cross-examine the defendant on evidence relevant to refuting his withdrawal defense, including that his post-2012 consulting activities did not involve reporting on or fighting the Sinaloa Cartel.

In addition, the government should be permitted to cross-examine the defendant to refute claims that he has made at trial (and that he will make on direct). For example, defense counsel has argued that the fact that the defendant was appointed counsel in connection with his criminal case means that he did not have access to funds. However, financial documents related to one of the defendant's shell companies reflect that, approximately one year before the defendant's arrest, he paid more than $3.7 million in cash for property in Miami, Florida, which he still had an ownership interest in at the time of his arrest.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Saritha Komatireddy
Erin M. Reid
Philip Pilmar
Marietou E. Diouf
Adam Amir
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense Counsel (by ECF)
      Clerk of Court (BMC) (by ECF)