**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SK/EMR/PP/MED/AA
F. #2019R00927

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 9, 2023

By ECF and Email

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>   Re:   United States v. Genaro Garcia Luna
>         Criminal Docket No. 19-576 (BMC)

Dear Judge Cogan:

In anticipation of the Court's preparation of its jury charge, the government respectfully submits the enclosed supplemental requests to charge.

>                       Respectfully submitted,
>
>                       BREON PEACE
>                       United States Attorney
>
> By:    /s/
>        Saritha Komatireddy
>        Erin M. Reid
>        Philip Pilmar
>        Marietou E. Diouf
>        Adam Amir
>        Assistant U.S. Attorneys
>        (718) 254-7000

cc:   Defense Counsel (by ECF)
      Clerk of Court (BMC) (by ECF)

SUPPLEMENTAL REQUEST NO. 1

The defense has suggested that this case reflects vindictiveness on the part of the government. Trial Tr. 26-27 (defense opening) ("This will be a very public and angry display by your government abandoning its strategic partners . . . ."). Therefore, the government respectfully requests the following instruction regarding government motive.

Government Motive

Please remember that the Government is not on trial, and I instruct you to disregard any arguments that may have been made to the contrary. There is no evidence that the Government operated under any kind of improper motive. You must base your decision only on the evidence or lack of evidence that has been presented at trial in determining whether the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt.

Authority

Adapted from Charge of the Hon. Brian M. Cogan in United States v. Guzman Loera, 09-CR-466 (BMC).

SUPPLEMENTAL REQUEST NO. 2

The defense has referred to the sentences of individuals who are not witnesses in this case, in an apparent attempt to invite a consideration of sentencing disparities between local street dealers and international drug kingpins, and conjure a sense of systemic injustice. Trial Tr. 338 (cross-examination on whether street dealers "might have gone to jail for a long time"). The sentences of individuals who are not witnesses in this case are entirely irrelevant.

The defense has also referred to the charges and sentences of individuals who are witnesses in this case. These matters are relevant to the extent that they go to the witness's credibility. However, they are irrelevant (and in some cases misleading) to the extent that they invite consideration of the possible punishment that the defendant may face if convicted. For example, on cross-examination of Poveda Ortega, defense counsel established that Poveda Ortega's importation charge carried a mandatory minimum of 20 years in prison and his continuing criminal enterprise charge carried a mandatory minimum of life in prison. Trial Tr. 904. However, those same charges in this case carry lower mandatory minimums (of 10 years and 20 years respectively).

Therefore, the government respectfully requests the following instruction regarding the sentences of other individuals.

Sentences of Other Individuals

You have heard testimony in this case about the sentences of individuals who are unrelated to this case. The question of punishment of a criminal defendant is decided entirely by the sentencing court, based on a number of factors and considerations that are specific to that defendant's case, and you should not think about the sentences of other individuals in determining whether the defendant in this case is guilty or not guilty of the crimes charged. You have also heard testimony in this case about how cooperating witnesses get sentenced. The question of punishment of a cooperating witness is a duty that rests exclusively upon the sentencing court, and you should not think about that except as it may affect the witness's credibility.

You have also heard testimony in this case about the possible punishments that criminal defendants may face under various drug trafficking charges. The possible punishments that criminal defendants may face vary from case to case, depending on the specific

3

circumstances of that defendant's case, and you should not assume that the possible punishments that you have heard about apply here. Indeed, you should not think about the possible punishment that the defendant may face in determining whether the defendant in this case is guilty or not guilty of the crimes charged.

Authority

      Adapted from Charge of the Hon. Brian M. Cogan in <u>United States v. Guzman Loera</u>, 09-CR-466 (BMC).

SUPPLEMENTAL REQUEST NO. 3

The defense has suggested that various witnesses in this case will or have received immigration benefits purely in exchange for testifying in this case. However, as discussed during trial, many of the witnesses in this case face threats to themselves and their family because of their prior cooperation or simply because of the fact that they are cooperating, and the driving concern for whether they receive deferred action, asylum, or other relocation assistance is safety. Trial Tr. 845-46; Trial Tr. 339 (witness receiving immigration assistance after having previously testified in Chapo trial); Trial Tr. 617 (witness who received threats after previously signing extradition affidavits); Trial Tr. 1186-87 (witness with asylum case after having previously testified against other Mexican public officials). In other words, these witnesses are eligible to receive relocation and immigration assistance completely independent of their participation in this case. Therefore, the government respectfully requests the following instruction regarding relocation based on safety.

Relocation of Witnesses for Their Safety

You have heard testimony in this case about witnesses who have been relocated, or that their families have been relocated, to the United States. You have also heard testimony in this case about witnesses facing threats. The government is not alleging that the defendant has had any involvement in such threats.[1] However, under the laws and policies of the United States, individuals who face threats to their safety, or are at risk of being harmed if they were to be deported, may be eligible for deferred action, asylum, or other relocation assistance. In these circumstances, the assistance they receive is driven by safety concerns, and is wholly independent of their participation in this case.

---

[1] The Court originally suggested the following language: "the Government has no evidence that the defendant has had any involvement in any such efforts." Trial Tr. 846. However, the government does have evidence that the defendant contemplated harming witnesses in this case. Therefore, the government has suggested the revised language above.

5

## SUPPLEMENTAL REQUEST NO. 4

The defense has referenced the fact that certain witnesses did not previously receive cooperation agreements. Trial Tr. 789; Trial Tr. 1304 (defense counsel suggesting that the reason why Veytia did not receive a cooperation agreement was that prosecutors "could not corroborate the information that [Veytia] had provided").[2] These references are irrelevant and improperly usurp the role of the jury, and the Court has already decided that such opinions are not admissible. Therefore, the government respectfully requests the following instruction regarding the role of the jury.

### Role of Jury

Some of the witnesses in this case previously received a cooperation agreement and some did not. I instruct you that there are many reasons that a witness may not receive a cooperation agreement, and the reasons that these witnesses did not receive a cooperation agreement have nothing to do with the witness's credibility. You alone are the judges of the facts in this case, and you alone are the judges of the witnesses' credibility.

---

[2] This reference was particular flagrant—as the Court had already granted the government's motion to preclude such cross-examination—and was particularly prejudicial as it misleadingly suggested that Veytia's information about <u>this</u> defendant had not been corroborated whereas, as defense counsel well knows, this defendant was not even at issue at the time. Although the Court subsequently struck this question and answer from the record, the government is concerned that the bell was not unrung.

SUPPLEMENTAL REQUEST NO. 5

The defense has argued that the Court's appointment of counsel in this case supports the conclusion that the defendant did not receive millions of dollars in bribes from the Sinaloa Cartel. Trial Tr. 28, 331, 376. However, as the Court has observed, "it happens sometimes that attorneys are appointed for clients that have lots and lots of money." Trial Tr. 37. Indeed, in this case, the government is aware that approximately one year before the defendant's arrest, he paid more than $4 million in cash for multiple properties in Miami, Florida (held in the names of shell companies), that he still had an ownership interest in those properties at the time of his arrest, and that he sought to hire the law firm Quinn Emanuel using those properties as collateral. That arrangement fell through because the government would not promise to refrain from seizing the properties. The government has identified and prepared a magistrate clerical to testify regarding the process for the appointment of counsel; however, the Court indicated that it preferred to give an instruction on the matter. Trial Tr. 624. Therefore, the government respectfully requests the following instruction regarding the appointment of counsel.

Appointment of Counsel

You have heard references in this case to the appointment of counsel. The Court appoints counsel when a defendant requests it and completes a financial affidavit regarding the money and property in his own name. The process for appointment of counsel does not involve any vetting or independent financial investigation, does not require the defendant to submit supporting documentation, and does not include an inquiry into money and property held in corporate names or the names of family members and associates. You should not infer one way or the other from the appointment of counsel that the defendant does or does not have access to money, and it should play no role in deciding whether or not the government has proven the charges in this case beyond a reasonable doubt.

SUPPLEMENTAL REQUEST NO. 6

        The trial has involved various references to cooperation agreements, 5K1.1 letters, and Rule 35 motions. The jury may benefit from further explanation of these concepts. Therefore, the government respectfully requests the following instruction regarding the sentencing of cooperating witnesses.

Sentencing of Cooperating Witnesses

        I want to reiterate my instruction on sentencing cooperating witnesses. When someone cooperates with the Government, the Government does not determine what sentence they are going to get. What the Government will do, if it is satisfied with the witness's cooperation, is write to the sentencing judge what is known as a 5K1 letter. That letter sets forth the nature of the crimes that the cooperating witness has committed and all the cooperation that the witness has undertaken. The judge then takes that letter, together with a lot of other information about the cooperating witness and all of the crimes that the cooperating witness has committed, and it is the judge exclusively who decides the appropriate sentence, not the Government. All that a cooperating witness gets from the Government, if the Government is satisfied with their cooperation, is this 5K1 letter. The letter is significant because, if a cooperating witness receives one, the judge may sentence that witness below any mandatory minimum sentence that would otherwise apply. It is the Government's decision as to whether to submit the letter, but it is the judge's decision alone what the sentence should be. Similarly, you may have heard testimony about what the lawyers referred to as a Rule 35 sentencing reduction. In certain circumstances Rule 35 operates similarly to Rule 5K1 except that Rule 35 applies to a cooperator who has already been sentenced and then gives cooperation after he has been sentenced, whereas 5K1 applies to a cooperator who has not yet been sentenced. Otherwise they're quite similar. As with a 5K1 letter, the ultimate sentence, and whether or not a defendant receives a reduction, is up to the sentencing court, not the government.

Authority

        Adapted from Charge of the Hon. Brian M. Cogan in <u>United States v. Guzman Loera</u>, 09-CR-466 (BMC).