1

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
 2
       - - - - - - - - - - - - - X
 3
       UNITED STATES OF AMERICA,      : 19-CR-00576(BMC)
 4                                    :
                                      :
 5                                    :
            -against-                 : United States Courthouse
 6                                    : Brooklyn, New York
                                      :
 7                                    :
                                      : January 17*, 2023
 8     GENARO GARCIA LUNA,            : 9:00 a.m.
                                      :
 9            Defendant.              :
                                      :
10
       - - - - - - - - - - - - - X
11

12          TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
              BEFORE THE HONORABLE HONORABLE PEGGY KUO
13                 UNITED STATES MAGISTRATE JUDGE

14

15     A P P E A R A N C E S:

16     For the Government:  BREON PEACE
                            United States Attorney
17                          Eastern District of New York
                               271 Cadman Plaza East
18                             Brooklyn, New York 11201
                            BY:  SARITHA KOMATIREDDY
19                               ERIN M. REID
                                 PHILIP PILMAR
20                               MARIETOU E. DIOUF
                                 Assistant United States Attorney
21
       For the Defendant:   THE LAW FIRM OF CESAR DE CASTRO, P.C.
22                             111 Fulton Street - 602
                               New York, New York 10038
23                          BY:  CESAR DE CASTRO, ESQ.
                                 SHANNON MICHAEL MCMANUS, ESQ.
24

25
```

2

(Continued)

                              MIEDEL & MYSLIWIEC, LLP
                                   80 Broad Street, Suite 1900
                                   New York, New York 10004
                              BY:  FLORIAN MIEDEL, ESQ.


 For the Defendant:      GOTLIB LAW, PLLC
                              225 Broadway, Suite 2815
                              New York, New York 10038
                              BY:  VALERIE ALICE GOTLIB, ESQ.


Court Reporter:          LEEANN N. MUSOLF, RPR, CCR
                              Phone:  718-613-2374
                              Fax: 718-613-2267
                              Email:  Lmusolf.edny@gmail.com.

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Jury Selection                                    3

1          (In open court.)

2          THE COURTROOM DEPUTY:  This is criminal cause for

3    jury selection.  Docket No. 19-CR-576, United States versus

4    Genaro Garcia Luna et al.  Magistrate Judge Peggy Kuo

5    presiding.

6          As a reminder, persons granted remote access to

7    proceedings are reminded of the general prohibition against

8    photographing, recording, and rebroadcasting of court

9    proceedings.  Violation of these prohibitions may result in

10   sanctions, including removal of court issued media

11   credentials, restricted entry to future hearings, denial of

12   entry to future hearings, or any other sanctions deemed

13   necessary by the Court.

14         Counsel, starting with the government, please state

15   your appearances for the record.

16         MS. KOMATIREDDY:  Good morning, Your Honor.

17         Saritha Komatireddy for the United States.  I'm

18   joined by my colleagues, AUSAs Erin Reid, Philip Pilmar and

19   Marieto Diouf, as well as Special Agent James Cain, who is

20   here representing both of our agencies on this case, the Drug

21   Enforcement Administration and Homeland Security

22   Investigations.

23         (Pause in proceedings.)

24         THE COURTROOM DEPUTY:  We're back on the record.

25   Will counsel for defense please state their appearances for

Jury Selection                                         4

1    the record.

2              MR. DE CASTRO:  For Mr. Garcia Luna,

3    Cesar de Castro, Valerie Gotlib, Florian Miedel,

4    Shannon McManus, and joining us at counsel's table are

5    paralegal Austin Dean and Kimberly Tavares.

6              Good morning, Your Honor.

7              THE COURT:  Good morning, everyone.  Sorry for the

8    technical delay.

9              There are two Spanish language interpreters.  Do you

10   need to be sworn in, or identify yourselves on the record,

11   please.

12             THE INTERPRETER:  Diana Donatti.

13             THE INTERPRETER:  And Pablo Donatti, Your Honor.

14             (Whereupon, DIANA DONATTI was sworn as interpreter.)

15             (Whereupon, PABLO DONATTI was sworn as interpreter.)

16             THE COURT:  Thank you.

17             And for the interpreters, please let us know if you

18   have any technical difficulties because I know you're

19   translating through electronic means.

20             Let me remind everyone that this courtroom, even

21   though it does not have spectators in the gallery, there's a

22   live video feed to another room where the audience members can

23   see and hear the proceedings.

24             And I want to go over some of the mechanics of what

25   we're doing.  The 30 jurors who have been summoned to come in

1    today, who have already filled out questionnaires, will be

2    across the hall in another courtroom.  My chambers staff will

3    bring them back and forth one by one.  So we'll go in order.

4    You've got the list of people.  I'm not sure everybody has

5    shown up.  So in a minute, I will go through exactly who is

6    here today and we'll just go down the line.  Each person will

7    come in individually, they'll come to that podium and they

8    will answer questions there.

9            I wanted to let you know that I will start with the

10   answer to question 69, which is the hardship question, because

11   if there's an issue there, then they can be excused without

12   the need for further questioning.

13           As far as the questioning goes, I went through each

14   of the questionnaires to see what answers were given.  I can

15   surmise, in most cases, which answers need some follow-up, but

16   there may be instances where I'm not entirely sure what the

17   parties want to address with that individual juror, so I may

18   start by asking a question.

19           If I miss something or you want to follow-up, I

20   would ask you to just alert me to the question number rather

21   than the substance, in the first instance, or if it's a

22   follow-up, obviously, if it's a substance, just say could we

23   ask the juror about that question.  I would like it do the

24   questioning myself rather than have counsel doing the

25   questioning, but I may invite you to ask follow-up questions

1  if I think that would be helpful.

2         There were a couple of questionnaires where people

3  voiced concern or expressed concern about crimes committed

4  outside the United States being prosecuted here.  I wasn't

5  sure how the parties wanted me to address that because some

6  people said things like, well, if the crime occurred outside

7  the United States, why are we prosecuting it.  And I don't

8  want to get too much into the substance of the allegations

9  here, but maybe I'll start with the government.

10        How would you like me to address the juror's concern

11 if that is the question?

12        MS. KOMATIREDDY:  Your Honor, in those situations,

13 our primary concern that the juror is able to follow the

14 instructions of the Court, and we expect, also, that it is

15 appropriate to instruct the juror that that case is

16 appropriately brought in the United States as far as

17 jurisdiction is concerned.

18        My suggestion would be to instruct the juror of

19 that, and then ask if they can accept that as a matter of law

20 and put aside any concern they have about crime -- the ability

21 of the U.S. Government to prosecute conduct that occurs

22 outside the United States.

23        THE COURT:  Okay.

24        Mr. DeCastro.

25        MR. DE CASTRO:  Judge, my thought -- sorry -- my

1  thought was maybe just start with asking them to follow-up and

2  can they explain their answer.  Because normally, I know the

3  parties are concerned about tainting the rest of the jury

4  pool, but there's no one else here.  So, I assume, let them

5  talk and then -- and then maybe do what the government said,

6  which is well, if I instruct you that, can you follow that

7  instruction.

8              THE COURT:  Okay.  Well, I'll ask them -- because in

9  some cases, like I said, they simply say if the crime was

10  committed outside the United States, we should not be

11  prosecuting it here.  So I can ask them, you expressed some

12  concern about that principle, can you tell me more.  And then

13  I can follow by saying the issue of jurisdiction and

14  prosecution here has already been decided, can you follow the

15  law as the judge instructs you.

16             MR. DE CASTRO:  I think that works, Judge.

17             THE COURT:  All right, great.

18             There were also a couple of questions where people

19  put down an answer, for example, if a family member were in

20  law enforcement or had applied for a law enforcement job, but

21  then the follow-up question was, can you be fair, and they say

22  yes.

23             So for those types of questions, do we need to ask

24  them about the family members or is it enough they said they

25  can be fair notwithstanding ties to law enforcement?  I'm just

1  using that as an example.

2        MS. KOMATIREDDY:  For those types of questions,

3  Your Honor, I think, overall, someone can be fair and

4  impartial is not be basis for be cause strike.  With that

5  being said, I think that both parties had the view, even if

6  someone's questionnaire has acceptable answers across the

7  board, it would be helpful to talk to the juror be little bit.

8  It would help us inform our peremptory strikes.  And, so,

9  along those lines, it would be helpful.

10        THE COURT:  Okay.

11        Mr. DeCastro.

12        MR. DE CASTRO:  Yes, Judge.  We agree.  I think it

13  just bears following up in terms of the law enforcement to

14  make sure they didn't just check it really quick.

15        THE COURT:  Right, okay.

16        And then there were a few jurors for whom I didn't

17  see answers that seemed to require follow-up, and, so, I

18  wonder if there were specific questions you wanted me to ask.

19        I will ask everybody, is there any reason you can't

20  be fair and impartial, as the final question, but reading -- I

21  think there were two of the questionnaires, it wasn't apparent

22  to me what you wanted to have as a follow-up.

23        MS. KOMATIREDDY:  Your Honor, we can suggest those

24  to you on the fly.  I noticed these as well.  There were some

25  that I think we wanted to just get a sense of the juror.  So

1  even just asking about -- we'll suggest those on the fly.  I

2  know which ones they are.

3         THE COURT:  Okay.  And, then, I have, like I said,

4  my staff bringing the jurors in one by one and there will be

5  always somebody outside waiting so we don't have delay in

6  terms of bringing people in and out.

7         Would you prefer we talk about each juror before

8  they come in and just for you to flag the questions you want

9  me to ask or do you want me just to start and then you can

10  follow-up?  I don't know what's going to end up being more

11  efficient.

12         Again, I did my best to try to guess at what your

13  follow-up questions might be, but we can certainly take 30

14  seconds before each juror comes in and you can just tell me

15  what your proposed follow-up questions are.

16         MS. KOMATIREDDY:  I think the 30 seconds would be

17  helpful, Your Honor.

18         MR. DE CASTRO:  Agreed.

19         THE COURT:  Okay.  Let's do that.

20         The last thing is, I know it is often awkward when

21  the juror is here, for the parties to say you're moving to

22  strike the juror for cause.  So I propose that if you think

23  the juror should be stricken for cause, that you say no

24  objection, and it will be no objection to have the juror

25  stricken, all right?

1          So if one side says no objection and the other side

2     says no objection, then I will know that you agree the juror

3     will be stricken for cause and I will, unless there's a good

4     reason, probably then follow your lead and have the juror

5     excused.

6          So rather than -- again, in the event, for example,

7     one party moves to strike and the other one objects and the

8     juror ends up not being stricken, the juror has now heard you

9     asked to have the juror stricken.  So that's why I've devised

10    that way of communicating so that the juror doesn't take

11    offense at what you're saying.

12         Does that make sense to you?

13         MS. KOMATIREDDY:  Your Honor, I'm just a little

14    afraid I may mess up the code.  If it would be possible to

15    have the juror step out so in the event there's argument to be

16    had, we can do that, or --

17         THE COURT:  We can do it -- I have found that to

18    work very well because there will be some jurors for whom in

19    the first few seconds, it's very obvious.

20         MS. KOMATIREDDY:  So no objection means neither side

21    has an objection to strike?

22         THE COURT:  Yeah.  No objection means no objection

23    to striking the person.

24         MR. DE CASTRO:  And what if --

25         THE COURT:  If one side says no objection, the other

1   one can say, I'd like to have conversation, and then I will

2   ask the juror to step out.

3             MR. DE CASTRO:  Okay.  And just so I know, what's

4   going to prompt that?  Are you gonna --

5             THE COURT:  Just --

6             MR. DE CASTRO:  Just say it at any time?

7             THE COURT:  Just say it at any time because then it

8   will stop the questioning.

9             MR. DE CASTRO:  Got it.

10            THE COURT:  Again, it's an efficiency move.  And it

11  may not be as applicable in a case like this where you've

12  already been through the questionnaire, but I've found in a

13  normal jury selection, a juror comes up and immediately says,

14  I've got a prepaid vacation or I have this health problem or

15  I'm just not going to be fair or something where it's pretty

16  obvious that there's a good cause for the juror to be

17  stricken, it does not make sense to keep asking questions at

18  that point, all right?

19            So either side has the ability to just interrupt and

20  say no objection, and if the other sides says no objection, I

21  know we can excuse the juror and not ask any further

22  questions.  But if one side says no objection, the other one

23  can say, can we discuss this, and then I will ask the juror to

24  step out for a moment and we can talk outside the juror's

25  presence.  You'll get the hang of it.  It actually works

1    pretty well.

2            So, does anybody have any questions before we -- I

3    am not sure all the jurors are across the hall yet, but once

4    they are, we can start.  So does anybody have any questions?

5            MR. DE CASTRO:  No, Judge.

6            THE COURT:  No?  All right.  So let me look at the

7    list of the jurors who have reported this morning just to see

8    if anyone is missing.  The list I've been given has everyone

9    there, but that makes me think this is not the check in list.

10   I think this is just the list of people who have been called

11   in.  When Ryan comes back, he'll let us know if anyone is

12   missing, but even if anyone is missing, we'll start with

13   whoever is here.

14           My proposal is we go until 12:30-ish, unless we

15   finish the morning's group of jurors before then, and then

16   pick up again in the afternoon.  Whoever -- by sometime in the

17   early afternoon, we should have a good idea of how many people

18   we would like to have called in tomorrow because the jury

19   office needs to let them know.  So right after the lunch

20   break, I might ask people to weigh in depending on how quickly

21   the selection goes this morning.

22           MS. KOMATIREDDY:  Your Honor, I'm not sure we

23   expressly discussed this, but we are looking to qualify 40; is

24   that correct?

25           THE COURT:  That's correct.

 1            MS. KOMATIREDDY:  Okay.

 2            THE COURT:  So if we get all 40 today, we're done

 3   and then we'll go into peremptory challenges.  So for the

 4   peremptory challenges, what I was proposing is that the

 5   jurors -- at that point, there will be 40, and we can bring

 6   them into a courtroom where you can see the jurors and then

 7   you can exercise your strikes.

 8            Again, in the interest of efficiency, I have, in

 9   other cases, done a silent peremptory challenge process where

10   there's a piece of paper and the strikes and the boxes are

11   left blank and the -- each side will do their strikes in the

12   order to which they're entitled and pass the piece of paper

13   back and forth.  If there is a Batson challenge, of course,

14   you can let the Court know and we can discuss it, but

15   otherwise, you just do it that way.  And if we do it that way,

16   then the jurors can be in the courtroom while it's happening.

17            Again, that seems to work pretty well.  If you would

18   like to do it differently, you can let me know.  Otherwise, we

19   would have to be at sidebar, and I know during Covid, we

20   didn't want to do too many sidebars.  But when we get to that

21   point, we can discuss exactly how you'd like to do that, but

22   that's my proposal.

23            For the government, any questions before we call in

24   the first juror?

25            MS. KOMATIREDDY:  No.

1           THE COURT:  And for the defense?

2           MR. DE CASTRO:  No, Your Honor.  Thank you.

3           THE COURT:  Let's take a break and when my deputy

4  comes back and let's me know the jurors are across the hall,

5  we'll start.

6           (Pause in the proceedings.)

7           THE COURT:  I just want to let the parties know one

8  more thing because this courtroom is being live-streamed into

9  the public area, if the parties want to have a private

10 conversation with the Court, a sidebar conversation, let me

11 know and we'll do that over here.  Just because there aren't

12 other people here, does not mean we're at sidebar while we're

13 in open court.

14          Thank you.

15          (Pause in proceedings.)

16          THE COURT:  So we're back on the record.  I had

17 understood that the parties wanted me to address the jurors as

18 a group first or should I just bring them in one by one?  My

19 intention was to bring them in one by one, but I had heard

20 from my deputy, that the parties might want me to address them

21 together, and if so, please let me know what your proposal is

22 for how that should be done.

23          MS. KOMATIREDDY:  Not from us, Your Honor.  We defer

24 to the Court.

25          MR. DE CASTRO:  No interest in that.

1          THE COURT:  Okay, great.  So they can just bring in

2     the first juror.

3          MS. KOMATIREDDY:  Your Honor, would you like our

4     comments on the first?

5          THE COURT:  Yes, please.  Go ahead.

6          MS. KOMATIREDDY:  Juror Number 2 indicated seven

7     different places in his questionnaire, that he cannot be fair.

8     He also has a lengthy answer to the hardship question at the

9     end.  I think this one slipped through.  While there are some

10    jurors who marked that "can't be fair" check box a couple of

11    times, this is a real outlier, so we expect this will probably

12    be a strike for cause.

13         THE COURT:  Thank you.

14         Did the defense want to add anything?

15         MR. DE CASTRO:  No, Your Honor.

16         THE COURT:  Okay.

17         Juror No. 2, please step up.

18         (Prospective juror number 2 enters.)

19         THE COURT:  Good morning.  How are you doing?

20         THE POTENTIAL JUROR:  Good morning.

21         THE COURT:  You can take your mask off if you feel

22    more comfortable, but you can leave it on as well.

23         You answered you might have a hardship in terms of

24    sitting on this jury.  Can you tell us about that?

25         THE POTENTIAL JUROR:  Yes.  Unfortunately, the

1  company that I work, for the owner is currently going to

2  hospice care, and we're reorganizing in the next couple of

3  months to figure out how we're going to continue the business,

4  and I'm part of the management team that's part of that

5  process.  So more or less, if I'm gone for more than about

6  five days, the business is going to have major hardships.

7         MR. DE CASTRO:  No objection.

8         MS. KOMATIREDDY:  No objection, Your Honor.

9         THE COURT:  Thank you for letting us know.  You can

10  go back to the jury courtroom on the second floor.

11         (Prospective juror number 2 is excused.)

12         THE COURT:  Next is Juror No. 3.

13         MS. KOMATIREDDY:  This individual did indicate they

14  have a prebooked vacation but it would only interfere with one

15  trial day.  Our view is someone with one week off, obviously,

16  we struck for hardship, but in a two-month trial, one trial

17  day here or there is, in our view, not a big deal.

18         THE COURT:  How about for the defendant?  This is

19  the vacation from February 17th to the 21st.  The 17th is a

20  Friday, the 21st is the Tuesday after President's Day.

21         MR. DE CASTRO:  Your Honor, I think it just bears

22  follow-up -- I think it bears following up.  I know it's a

23  long trial.  If it's one day here or there, we're in trouble

24  then.

25         THE COURT:  Okay.

1        MS. KOMATIREDDY:  In terms of follow-up questions,

2   we would request 20, 47 and 48.

3        THE COURT:  Okay.

4        (Prospective juror number 3 enters.)

5        Good morning.  You can come up to the podium.

6   You're Juror No. 3.  How are you doing?

7        THE POTENTIAL JUROR:  I'm good.  How are you?

8        THE COURT:  Good.  You told us you have a vacation

9   planned in February?

10        THE POTENTIAL JUROR:  I do.

11        THE COURT:  Tell us about that.

12        THE POTENTIAL JUROR:  I'm going to Mardi Gras

13   President's Day weekend.  My flight is that Friday, which I

14   think is the 17th, and then I come back that Monday, which is

15   President's Day.

16        THE COURT:  Okay.  So if you -- on Friday, is it in

17   the evening or afternoon?

18        THE POTENTIAL JUROR:  In the morning.

19        THE COURT:  Morning flight, okay.  And you're coming

20   back Monday, which is a holiday anyway, so you would be

21   available Tuesday?

22        THE POTENTIAL JUROR:  Yes.

23        THE COURT:  So, potentially, you would lose that one

24   day, Friday?

25        THE POTENTIAL JUROR:  Mh-hmm.

1     THE COURT:  Okay, thank you.  You also indicated you

2  have friends or family who are lawyers and also friends who

3  are public defenders.  Can you tell us about that -- how close

4  are you with these individuals?

5     THE POTENTIAL JUROR:  Well, my dad is a personal

6  injury defense attorney.

7     THE COURT:  Okay.

8     THE POTENTIAL JUROR:  One of my roommates from law

9  school is now a public defender.  Then, there's other people

10 from law school that I know that are public defenders.

11    THE COURT:  Okay.  And do you think the fact that

12 you have connections to lawyers and public defenders would

13 affect your ability to be fair to both sides in this case?

14    THE POTENTIAL JUROR:  No, not at all.

15    THE COURT:  Is there any reason you can think of

16 that you would not be a fair and impartial juror?

17    THE PROSPECTIVE JUROR:  No.

18    THE COURT:  Thank you very much.  You can go back to

19 the courtroom across the hall.

20    THE PROSPECTIVE JUROR:  Okay, thank you.

21    THE COURT:  Thank you.

22    (Prospective juror number 3 exits.)

23    THE COURT:  So we can also, if the parties are not

24 moving to strike immediately, we can hold off on people who

25 might merit for the discussion until later on.  So just to let

1   you know, we can do another round of strikes afterwards, if

2   that makes sense.

3           MS. KOMATIREDDY:  For the Court's awareness,

4   Judge Cogan does not intend to have trial on Fridays.  So I

5   think this juror can be seated.

6           THE COURT:  I see.  Thanks for letting me know.

7           So Juror No. 4 is the next one.

8           THE COURTROOM DEPUTY:  Hold on.

9           THE COURT:  Hold on.  We're going to have short

10  discussions on each juror before they get called in.

11          So, on Juror No. 4, what issues would you like to

12  raise?

13          MR. DE CASTRO:  I would ask about 71, which is

14  whether you're getting paid.  I know that relates to people's

15  hardship.

16          THE COURT:  All right.

17          And from the government?  Does the government have

18  anything?

19          MS. KOMATIREDDY:  No, Your Honor.

20          THE COURT:  All right.  Juror No. 4.

21          (Prospective juror number 4 enters.)

22          THE COURT:  Good morning.  Are you Juror No. 4?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Okay.  How are you doing today?

25          THE PROSPECTIVE JUROR:  Good.

1          THE COURT:  You can just stand at the podium.  You

2    can take your bag and put it on the chair if you would like.

3          THE PROSPECTIVE JUROR:  Thank you.

4          THE COURT:  How are you?

5          THE POTENTIAL JUROR:  Good.  How are you?

6          THE COURT:  I'm fine.  Thank you.

7          In your questionnaire, you indicated you weren't

8    sure if you would get paid --

9          THE PROSPECTIVE JUROR:  That's correct.

10          THE COURT:  -- if you were to sit on the jury.  Were

11    you able to make any inquiries?

12          THE PROSPECTIVE JUROR:  No, I wasn't able to make

13    any inquiries because I haven't had a chance, but I will

14    definitely send an email to my team to ask them -- or to my

15    work.

16          THE COURT:  Okay.  And do you know of any reason

17    that you could not be fair and impartial if you were picked as

18    a juror in this case?

19          THE PROSPECTIVE JUROR:  The only drawback that I

20    would have is if I'm not being paid by work.  To be on jury

21    duty, that would be substantial loss of income for me because

22    I'm a single parent and I don't have additional income other

23    than what -- from my employer.  So that would be my only

24    drawback.

25          THE COURT:  Right.  So, then, if you could find an

1   opportunity today to make that inquiry and let the Court know,

2   then that would be helpful.

3           THE PROSPECTIVE JUROR:  I won't be able to find out

4   today, but I will be able to find out tomorrow.

5           THE COURT:  All right.  Great.  Thank you very much.

6           THE PROSPECTIVE JUROR:  You're welcome.

7           THE COURT:  You can go back to the jury room.

8           THE PROSPECTIVE JUROR:  Thank you.

9           (Prospective juror number 4 exits.)

10          THE COURT:  Next is Juror No. 6.  What would the

11  government like me to ask?

12          MR. DE CASTRO:  Judge, 55, 67, and 66.

13          THE COURT:  I'm sorry, 55, 57?

14          MR. DE CASTRO:  67 and 66.

15          MS. KOMATIREDDY:  Your Honor, 24, 42, 49, 50, and

16  67.

17          THE COURT:  All right.  So, say that again.  24?

18          MS. KOMATIREDDY:  42, 49, 50, the defense's as well,

19  55, 56, 66, and 67.

20          THE COURT:  Okay.  So, for 24, it's about travel

21  outside of the United States.  What in particular do you want

22  to know?

23          MS. KOMATIREDDY:  She's indicated travel to Mexico.

24  We just want to make sure she's put aside any outside

25  knowledge.

1           THE COURT:  All right.  Juror No. 6.

2           (Prospective juror number 6 enters.)

3           THE COURT:  Hello, Juror No. 6.  How are you doing?

4           THE PROSPECTIVE JUROR:  Fine, thank you.  How are

5      you?

6           THE COURT:  I'm fine, thank you.  If you want to

7      keep your mask on, that's fine.  You can also take it off.

8           You answered the questionnaire and there are a

9      couple of things we wanted to follow-up on.  I will start with

10     the answer you gave when you were asked about whether you had

11     any opinions or beliefs about law enforcement, and you said

12     you had some negative connotations.

13          So can you tell us about your answer there.

14          THE PROSPECTIVE JUROR:  Sure.  Where do I start.

15          So, I'm obviously black and I live in America.  And

16     as a person who has public health training and a focus on

17     social determinants of health, I have studied a bunch about

18     the ways in which structural forces in this country, including

19     criminal justice and criminal justice involvement, has been

20     disproportionally impacting communities of color, having read

21     books like The New Jim Crow, have influenced my opinions about

22     the criminal justice system in this country.

23          THE COURT:  All right.  And do you think that -- I

24     mean, obviously living in society, one has access to news and

25     one has views.  The question is whether you can put aside any

1  preconceptions you have and be fair and impartial in this case

2  to both the government and its witnesses and to the defendant

3  and his witnesses.  Can you be fair to both sides in this

4  case?

5          THE PROSPECTIVE JUROR:  I believe I could if that is

6  what is required.  If that's required, then yes.  Sorry, I am

7  really nervous.  This is really scary.

8          THE COURT:  Well, the issue would be, for example,

9  if there were law enforcement officers, whether you would

10  immediately just not believe them, or whether you would be

11  fair and listen and either believe them or not believe them

12  based on your assessment of this particular witness in this

13  particular case.

14          THE PROSPECTIVE JUROR:  I understand.  I would not

15  immediately dismiss their testimony.  I would listen as

16  impartially as one could.  Any emotional reaction that I would

17  have physiologically, I would -- I mean, I've been to therapy,

18  I know how to control my emotions, and would be able to

19  consider the testimony objectively and intellectually based on

20  the instructions that Judge Cogan would give.

21          THE COURT:  So if Judge Cogan instructed you on the

22  law and you thought -- and you disagreed with what you thought

23  the law should be, would you still be able to apply the law as

24  Judge Cogan instructs you?

25          THE PROSPECTIVE JUROR:  Yes, I believe so.

1          THE COURT:  Thank you.  So you also talked about

2     your concern about prosecutions of things that happen outside

3     the United States.

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And would you -- the issue of

6     jurisdiction of this case has been decided.  The case can be

7     brought in the United States.

8          THE PROSPECTIVE JUROR:  Okay.

9          THE COURT:  And, so, the question for you will be

10    whether, again, if you're instructed on what the law is, and

11    some of the testimony involves things that occurred outside

12    the United States, could you follow the law as Judge Cogan

13    instructs you?

14         THE PROSPECTIVE JUROR:  Yes, I believe that I could.

15    I have many other experience, professional and otherwise,

16    following instructions that, you know, may not align with my

17    personal beliefs.  I fell be able to compartmentalize those

18    two as needed.

19         THE COURT:  All right.  Great.  Thank you.  And then

20    you also said you had traveled outside the United States,

21    including in Mexico?

22         THE PROSPECTIVE JUROR:  Correct.

23         THE COURT:  Does that travel affect your ability to

24    be fair and impartial when you're sitting on a jury that's

25    deciding things that involve Mexico?

1           THE PROSPECTIVE JUROR:  I don't think so.  I mean, I

2    enjoyed my vacations there but I, by no means, have an

3    overwhelmingly positive or overwhelmingly connotation of that

4    country and the people who govern it.

5           THE COURT:  And you said you may have some problems

6    avoiding watching the news if you were to sit on this trial.

7    Can you tell me a bit --

8           THE POTENTIAL JUROR:  Sure.  I listen to BBC World

9    Service and the WNYC daily.  It's usually on in the background

10   in my office.  And when I work from home, it's on at home.  I

11   listen to many news pod-casts.  I mean, obviously, I can just

12   not listen to them.  I also live with a partner who is also

13   very informed, listens to a lot of news, and he often will

14   just tell me what he read.

15          THE COURT:  Right.

16          THE PROSPECTIVE JUROR:  So I do have a concern

17   about, like, even if I control myself, somehow getting exposed

18   to information from other sources close to me is a concern.

19          THE COURT:  Right.  Well, if you were to listen to

20   the radio or watch T.V. and you saw or heard something, a news

21   report that covered the trial, for example, you would then

22   just turn it off immediately so hopefully you wouldn't hear

23   anything incriminating or problematic in the first two

24   seconds.  But as soon as you heard it, you would turn the

25   radio off.  And then the same thing with your partner, if your

1  partner started to say something about the case, you would say

2  don't talk about that, I can't hear anything about that.

3          Would you be able to create that environment for

4  yourself?

5          THE PROSPECTIVE JUROR:  Yes, if that is required.  I

6  was concerned if I had accidental exposure, that would be a

7  problem.

8          THE COURT:  Right.  If it were to be in the nature

9  of, and our next report is about this trial, and you turned it

10  off immediately at that point, it would be fine.  You know

11  just know there's coverage, but if you heard something

12  specific about something that happened, then that might be a

13  problem.  But if you were -- the moment you heard something

14  start and you were able to turn it off, then that would be

15  okay.

16          THE PROSPECTIVE JUROR:  Yeah, I feel comfortable

17  doing that.

18          THE COURT:  Would that work for you?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Great.

21          Were there any other questions from the parties?

22          MS. KOMATIREDDY:  50 and 66, Your Honor.

23          THE COURT:  Okay.  So, you also said that you felt

24  the country's War on Drugs has largely and disproportionally

25  destroyed the lives of black and brown people in the

1  United States, and you also don't think that this War on Drugs

2  on curved drug use.  Can you talk a little bit about that?

3         THE PROSPECTIVE JUROR:  That opinion has been

4  largely formed through reading.  As I referenced previously,

5  having read books like The New Jim Crow by Michelle Alexander.

6  So I do hold that opinion somewhat strongly, but it's a part

7  of the lens with which I consider the actions of the law

8  enforcement and criminal justice agencies within the

9  United States.

10        However, while I hold that opinion, I wanted to

11 disclose these opinions in the questionnaire as instructed.

12 If I am selected and required to consider the instructions

13 given and consider the law as I've told them, I feel capable

14 of following those instructions, but those opinions have been

15 largely formed through reading, not through personal

16 experience.

17        THE COURT:  All right.  Well, thank you for being

18 open with us about those opinions.  But could you set -- I

19 think I heard you say this, but I just want to confirm that

20 you could set aside those opinions and decide the case just

21 based on the evidence presented, even if it involved drugs

22 and, you know, perhaps, would be encompassed in the

23 War on Drugs, could you do that and be fair in this particular

24 case?

25        THE PROSPECTIVE JUROR:  Yes, Your Honor.

1          THE COURT:  All right.  And then I think I you

2     answered the question about being exposed to media.  Did you

3     have any questions about what you would have to do to make

4     sure you're not exposed accidently to news reports?

5          THE PROSPECTIVE JUROR:  No.  I think it's clear if

6     there's any leads saying that the next report would be on X, I

7     would shut it off immediately.  If my partner or anyone else

8     started to talk to me, I would say I can't hear that, don't

9     talk to me about that.  I think the boundaries I would have to

10    set are clear.

11         THE COURT:  Thank you very much.

12         Are there any follow-up from either side?

13         MR. DE CASTRO:  No, Your Honor.

14         MS. KOMATIREDDY:  No, Your Honor.  Thank you.

15         THE COURT:  Thank you so much.  You can go back to

16    the jury room across the hall.

17         THE PROSPECTIVE JUROR:  All right.  Thank you.

18         (Prospective juror number 6 exits.)

19         THE COURT:  The next juror is Juror No. 7.  What

20    questions would you like --

21         MS. KOMATIREDDY:  Your Honor, for clarity on one

22    thing.  I know when we are not striking for a hardship, when

23    someone walks out the door, is that, that that person is being

24    seated, or that we have the opportunity to move to strike for

25    cause at a later time after the morning session?

1        THE COURT:  I will give you an opportunity to strike

2   for cause later, but if there's something you want to say

3   immediately, you can do that so that the juror -- potentially,

4   we don't have to have the juror go all the way back to the

5   other room before we ask follow-up questions.  What did you

6   want to ask?

7        MS. KOMATIREDDY:  I think we'll hold on this one.

8   Thank you, Your Honor.

9        THE COURT:  Okay.  Juror No. 7.

10        (Prospective juror number 7 enters.)

11        THE COURT:  Good morning.  You're Juror No. 7?

12        THE PROSPECTIVE JUROR:  Good morning.  Yes.

13        THE COURT:  How are you doing?

14        THE PROSPECTIVE JUROR:  Good.  How are you?

15        THE COURT:  I'm good.  So, I wanted to ask you a

16   couple of questions about your answers on the questionnaire.

17   The first is that you thought you may have heard something

18   about this case.  So, can you tell us what you heard about

19   this case?

20        THE PROSPECTIVE JUROR:  Well, just I recognized -- I

21   just recognized the name of the gang and I thought that

22   related to the El Chapo case and just, you know, not too deep,

23   but the headlines end of it, you know.  That's all.

24        THE COURT:  Okay.  Do you think that would affect

25   your ability to be fair in this case?

1              THE PROSPECTIVE JUROR:  I don't think so.

2              THE COURT:  Okay.  And then you also said that you

3      have a cousin who is a real estate lawyer.  Can you tell us --

4      but you said you're not close.  So do you --

5              THE PROSPECTIVE JUROR:  We talk a couple of times a

6      year.

7              THE COURT:  Okay.

8              THE PROSPECTIVE JUROR:  Yeah, nothing -- we don't

9      talk about shop.

10             THE COURT:  Okay.  And if you're instructed on the

11     law and your cousin may have told you something else about

12     what the law is, would you be able to follow the judge's

13     instruction rather than what your cousin said?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Okay.  And you said that you think that

16     marijuana should be legal.

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  But not other drugs, right?

19             THE PROSPECTIVE JUROR:  Right.

20             THE COURT:  And, again, does this affect your

21     ability to be fair in this case that might involve drugs?

22             THE PROSPECTIVE JUROR:  Yeah.  I do have some

23     friends or family who do have substance abuse problems.  So I

24     have really strong feeling about those kinds of drugs coming

25     into the country.

1      THE COURT:  And do you think those strong feelings

2  might affect your ability to be fair in this case that involve

3  drug trade?

4      THE PROSPECTIVE JUROR:  Maybe.

5      THE COURT:  Tell me about that.

6      THE PROSPECTIVE JUROR:  I've just seen how it ruins

7  peoples' lives, especially people close to me.  So I, you

8  know, prefer people who are involved in that trade be

9  punished.

10     THE COURT:  Okay.  But the issue would be whether

11  the person on trial here did the things that he's accused of

12  doing.

13     THE PROSPECTIVE JUROR:  Right.

14     THE COURT:  Right?  And, so, you could have views

15  that somebody who breaks the law should be punished, but the

16  issue, if you're a juror, is whether this particular did the

17  things he's accused of doing.  So could you be fair in this

18  case?

19     THE PROSPECTIVE JUROR:  Yes.

20     THE COURT:  And you would put aside your general

21  views about the harmfulness of drugs to be fair to the parties

22  in this case, both the defendant who is accused of being

23  involved in criminal activity, and to the government that's

24  accusing him?

25     THE PROSPECTIVE JUROR:  Yes.

1           THE COURT:  Okay.  Do you have anything else you

2   would like to raise with us in terms of your ability to be

3   fair and impartial?

4           THE PROSPECTIVE JUROR:  No.

5           THE COURT:  Okay.

6           Any follow-up?

7           MS. KOMATIREDDY:  No, Your Honor.

8           THE COURT:  Thank you very much.  You can go back to

9   the jury room.

10          (Prospective juror number 7 exits.)

11          THE COURT:  So, Juror No. 8, there's a timing

12  question.  It didn't look like there is anything else.

13          MS. KOMATIREDDY:  I'm sorry, I didn't hear you.

14          THE COURT:  There is a hardship question.

15          MR. DE CASTRO:  I had 69 and 70.

16          THE COURT:  69, yeah.  But beyond that?  And 47.

17          MS. KOMATIREDDY:  Right, Your Honor.  In general,

18  because the Court is not sitting on Fridays, we expect that

19  folks would still be able to do some work on their regular

20  jobs on Fridays.  And this is not specific in terms of the

21  scheduling of these sessions or whether someone else at work

22  can do this for them.

23          THE COURT:  Okay.  So we can bring in Juror No. 8.

24          (Prospective juror number 8 enters.)

25          THE COURT:  Good morning.  You can come right up.

1   How are you?

2           THE PROSPECTIVE JUROR:  Good.  How are you?

3           THE COURT:  You can leave your mask on or take it

4   off, whatever is more comfortable for you.

5           You said that you have some -- you answered that you

6   might have an issue with scheduling because of your work.  Can

7   you tell us about that?

8           THE PROSPECTIVE JUROR:  Yes.  Well, my boss -- I've

9   been helping her with a company requirement we have.  They're

10  requiring us -- each of our teams to have diversity, equity

11  and inclusion conversations.  I've been helping her prepare

12  for and facilitate those all month and it's very important

13  that I'm present for those.  And just the overall nature of my

14  work.

15          I'm in book publishing and I'm responsible for 30

16  active projects, and that would go to my boss and, she's also

17  recovering from a broken rib and I'm kind of having some

18  anxiety about how much that would put on her.

19          THE COURT:  These DEI conversations, are they

20  something that could happen on Friday?  Because the Court is

21  not sitting on Friday.

22          THE PROSPECTIVE JUROR:  They're kind of like an

23  all-month thing.  We've been preparing and having meetings and

24  facilitating things and doing research and pulling things

25  together.  So I -- I don't know for sure whether we could

1   schedule it for that because they're, like, for the whole --

2   for my whole department and they're -- we have to have them by

3   the end of the month, so.

4           THE COURT:  And are there other people who could

5   step in and do that work for you or help you, fill in for you?

6           THE PROSPECTIVE JUROR:  At this point, because I've

7   already been helping her, it would be harder for that to

8   happen.

9           THE COURT:  And you said your boss is recovering

10  from a broken rib?

11          THE PROSPECTIVE JUROR:  Yeah.

12          THE COURT:  Is she working or unable to work?

13          THE PROSPECTIVE JUROR:  Well, we all work from home,

14  so at least there's that, that she can work from home and be

15  recovering hopefully better but I don't know her -- her

16  details of that, but I just know that's an extra thing she's

17  dealing with.

18          THE COURT:  Is there any way for you to find out

19  from your work whether there is availability to help fill in

20  for the days you're not available, and if you worked on

21  Fridays and did what you needed to do on Friday, whether that

22  would work?

23          THE PROSPECTIVE JUROR:  I just don't think with my,

24  you know, with the volume of my workload, I could do that.  I

25  just don't see how this could be fusible, especially if this

Case 1:19-cr-00576-BMC   Document 226   Filed 02/28/23   Page 35 of 338 PageID #: 13665

1    is up to eight-weeks of a commitment.

2              THE COURT:  How many other co-workers do you have?

3              THE PROSPECTIVE JUROR:  There are 11 people on my

4    team.

5              THE COURT:  And none of those people could help you

6    out?

7              THE PROSPECTIVE JUROR:  I mean, they do all have

8    their own full schedules as well, and with the

9    unpredictability of how this has kind of gone so far, we

10   haven't really been able to reschedule my things with them or

11   anything.

12             THE COURT:  And could the things you're talking

13   about, the conversations, be rescheduled sometime beyond

14   March?

15             THE PROSPECTIVE JUROR:  It's the company requirement

16   that we do them by the end of this month.

17             THE COURT:  And that's not something that your

18   company could reschedule to a different month?

19             THE PROSPECTIVE JUROR:  I -- we were just told that

20   we had to do them by the end of -- this month.  I don't know

21   what their -- I don't know if we are able to make an

22   exception.

23             THE COURT:  Okay.  All right.  You also mentioned

24   that you have friends who have been law clerks here?

25             THE COURT:  Are they people who are currently law

1    clerks?

2              THE PROSPECTIVE JUROR:  I don't really know the

3    details.  I know one of them is in Connecticut, one of them is

4    in Colorado.  I don't recall know anything else besides that.

5              THE COURT:  Do you talk to them about the law?

6              THE PROSPECTIVE JUROR:  Not particularly.

7              THE COURT:  Okay.  Because the important thing would

8    be, if they told you something about what the law is and the

9    judge in this case told you the law is something different, is

10   whether you would accept the judge's instruction rather than

11   what your friends told you?

12             THE PROSPECTIVE JUROR:  No, I don't talk to them

13   about that kind of thing.

14             THE COURT:  Okay, great.  So It's the just the

15   scheduling issue?

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Any follow-up for the lawyers?

18             MR. DE CASTRO:  I have no objection.

19             MS. KOMATIREDDY:  We'd like to discuss, Your Honor.

20             THE COURT:  Why don't you step out a moment and I'd

21   like to talk to the lawyers for a minute.

22             THE POTENTIAL JUROR:  Yes.

23               (Prospective juror number 8 exits.)

24             MS. KOMATIREDDY:  Your Honor, it does not appear

25   there's any hardship for the juror herself.  What she's

1   expressed is an apparent, I won't even call it a hardship,

2   inconvenience, for the employer.  It's a large book publishing

3   company.  If one individual alone has 30 book projects, I

4   expect this is a larger company.  It's a company that the

5   juror has indicated will pay her for jury service.

6           THE COURT:  Did she say it is a large company?

7           MS. KOMATIREDDY:  I'm surmising it's a large company

8   based on the face that she said there's 11 people on her team

9   alone, and she, alone, handles 30 book projects.  If the

10  employer wants to come in here and defend the hardship, that's

11  one thing, but I don't think this is the kind of thing that

12  the courts regularly recognize as a hardship for an actual

13  person who's going to get paid for jury service.

14          MR. DE CASTRO:  Judge, a couple things.  This is why

15  I like in-person proceedings.  She's very uncomfortable,

16  really does not want to be here and I don't see it as

17  something coming from a bad place.  I think she's very, very

18  worried about whether she can handle this project and that

19  they're leaning on her, with her boss having a real physical

20  issue, and I would just say, I mean, I know we are concerned

21  that a lot of people will express hardships, but from our

22  perspective, I would let her go for hardship.

23          (Continued on the following page.)

24

25

1              (Continued.)

2              MS. KOMATIREDDY:  Your Honor, in terms of the lack

3     of comfort, that is entirely being imposed by her boss, a

4     company, again, where everyone is working remotely.  It seems

5     to be it's improper for the employer to get away with this

6     kind of behavior, to pressure their employee to try to get out

7     of jury service.  There is no actual issue with the juror.

8     She's feeling pressure from her company.  I would ask that the

9     Court call the employer and instruct them that that's

10    inappropriate.  Jury service is part of our civic duty and

11    it's not appropriate to have an employee come in here slightly

12    nervous because they're afraid of upsetting their boss.

13             THE COURT:  Well, I think given the circumstances,

14    she -- I don't think it's every case.  I think said there is a

15    specific deadline coming up here.  If things need to be done,

16    she has a specific circumstance where her boss is recovering,

17    she said, from a broken rib and it's difficult to have

18    somebody fill in for her.

19             There are other juries that she could sit on that

20    could be a shorter trial and I think based on the

21    circumstances here, I will have her stricken for cause.

22             Okay.  Let's move on.

23             So, you can tell her that she is excused.  Juror No.

24    8 is excused.

25             Let's bring in Juror No. 9.  Before we bring in

1    Juror No. 9.

2              MR. DE CASTRO:  62, I have.

3              THE COURT:  Okay.  And from the Government?

4              MS. KOMATIREDDY:  42, 46, 47, 62.

5              THE COURT:  Okay.

6              (Prospective Juror No. 9 enters.)

7              THE COURT:  Hi.  Juror No. 9, step right up to the

8    podium, please.

9              How are you doing?

10             THE PROSPECTIVE JUROR:  Good.  How are you?

11             THE COURT:  I'm good.  You answered -- there are a

12   couple of answers on the questionnaire that we want to follow

13   up on --

14             THE PROSPECTIVE JUROR:  Can I lean?  Can I lean on

15   this?

16             THE COURT:  Sure.  But just make sure that you are

17   standing close enough for the microphone to pick you up?

18             THE PROSPECTIVE JUROR:  Okay.

19             THE COURT:  So you said in answer to the question

20   about cooperating witnesses.

21             THE PROSPECTIVE JUROR:  Uh-hum.

22             THE COURT:  You might have some problems because you

23   would wonder if they were lying to lessen their sentence.  Can

24   you talk about that a little bit?

25             THE PROSPECTIVE JUROR:  Yes, I thought when I read

1    the question, it wasn't cooperating witnesses, as much as

2    people who were also accused of things, but were giving

3    testimony and I figured they could lie to get a lesser

4    sentence.  I wouldn't know.

5            THE COURT:  Right.  Well, you know, one of the jobs

6    as a juror is to listen to people and decide if they're

7    telling the truth or not.

8            THE PROSPECTIVE JUROR:  Yeah.

9            THE COURT:  So for every witness, you're supposed to

10   be asking yourself is this person telling the truth or not

11   and --

12           THE PROSPECTIVE JUROR:  Uh-hum.

13           THE COURT:  Whether they have a motive to lie is one

14   of the things that you would consider.  So the question is

15   whether you would be inclined not to believe somebody just

16   because they might have a motive to lie or have committed a

17   crime or whether you would be able to assess their credibility

18   based on all the normal things you would do in regular life to

19   decide if someone was telling the truth or not.

20           THE PROSPECTIVE JUROR:  I would do my best to find

21   out if they were telling the truth.  I wouldn't lie to you and

22   say that it would not be colored with the fact that they might

23   be a criminal whose been convicted of something, not just

24   hearsay.

25           THE COURT:  Well, that would one of the things you

1   would take into account.

2            THE PROSPECTIVE JUROR:  Yes.

3            THE COURT:  If you feel based on everything else,

4   that they were telling the truth, whether you would believe

5   them or you would not just automatically believe them.

6            THE PROSPECTIVE JUROR:  No, I would believe them.

7            THE COURT:  You would believe them based on their

8   credibility of the --

9            THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  So you wouldn't necessarily believe them

11  or not believe them automatically?

12           THE PROSPECTIVE JUROR:  My judgment would be

13  colored, I believe.  However, after hearing it and hearing

14  everything, I would then try and make up my mind.

15           THE COURT:  Do you think you could set aside your

16  initial thought --

17           THE PROSPECTIVE JUROR:  I could try as much as I

18  can.

19           THE COURT:  Okay.  Well, that's all we can ask of

20  jurors, is that they do their best and you know better than

21  anyone else whether you could do it or not.

22           So do you think you could do it?

23           THE PROSPECTIVE JUROR:  Yes.

24           THE COURT:  Okay.  Then you also answered that you

25  or someone you knew had been stopped, questioned,

1  investigated or prosecuted, but you thought you could be,

2  fair.

3          THE PROSPECTIVE JUROR:  Just traffic stops and

4  things like that, you know.

5          THE COURT:  Okay.  And, so, was there anything about

6  those encounters that -- was it you personally?

7          THE PROSPECTIVE JUROR:  Yeah, I mean, I have had

8  family who have been pulled over too.  They've had no bad

9  interactions, neither have I.

10          THE COURT:  So, you said no bad interactions.  So,

11  would you still be fair, notwithstanding that you have had

12  these encounters?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  You also said that you have an

15  ex-brother-in-law who is a criminal lawyer or investigator.

16  Did you talk to him much about criminal law?

17          THE PROSPECTIVE JUROR:  I haven't spoken to him

18  since I got divorced about 10 or 11 years ago.

19          THE COURT:  All right.  So the question there would

20  be whether, you know, sometimes when people are talking to

21  lawyers they learn or hear certain things.  And, so, the

22  question is if Judge Cogan, at the end of the trial, told you

23  what the law is and you think, oh, my ex-brother-in-law told

24  me something different, whether you would accept what Judge

25  Cogan told you?

1          THE PROSPECTIVE JUROR:  I would accept it because we

2    never told me anything about the law.  We didn't have

3    conversations, yeah.

4          THE COURT:  Fair enough.  Great.  Is there any

5    reason why you could not be fair and impartial in this case?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Any follow up?

8          MR. DE CASTRO:  No.

9          THE COURT:  Thank you very much.  Go back into the

10   jury assembly room.

11         THE PROSPECTIVE JUROR:  Thank you.

12         (Prospective juror No. 9 exits.)

13         THE COURT:  Juror No. 10, what questions would you

14   like me to follow up on?

15         MR. DE CASTRO:  I have 55, 56, 62, 66, 67, but maybe

16   the first order is a hardship.

17         THE COURT:  Great.  Okay.  For the Government,

18   anything other than that?

19         MS. KOMATIREDDY:  I see 44's father's is a retired

20   police officer and this individual had been a legal secretary.

21         MR. DE CASTRO:  Yes.

22         MS. KOMATIREDDY:  Your Honor, we will start with 69

23   on this one and then otherwise 24, 37, 52, 55, 56, 62, and 66.

24         THE COURT:  Okay.  Great.  Juror No. 10.

25         (Prospective Juror No. 10 enters.)

1          THE COURT:  Come up to the podium.  You can leave

2    your mask on or you can take it off, whatever you are

3    comfortable with.

4          How are you doing?

5          THE PROSPECTIVE JUROR:  Okay.

6          THE COURT:  So I wanted to ask you some questions

7    about the answers that you gave.  And I'll start with your

8    answer to the question whether you had a hardship with serving

9    on this jury and you said that you are teacher and that you

10   had some concerns.  Can you tell us about that?

11         THE PROSPECTIVE JUROR:  So, in addition -- well,

12   one, I'm a teacher.  This late in the year, it would be -- I'm

13   not sure if my position would be filled fully.  So I feel like

14   it's not really fair to the kids.

15         In addition, which I didn't write because I got

16   quite nervous when I read the synopsis of the case.  My son

17   goes to the same school that I work in.  And I work in a

18   different borough than we live in.  So my son wouldn't have

19   anybody to take him home from school or from, you know,

20   getting him to school and getting him home from school would

21   be an issue for as long as the trial would be.

22         THE COURT:  Yes.

23         THE PROSPECTIVE JUROR:  In addition, we have things

24   -- they had said the timeframe of the trial -- we have twice

25   planned for, which may or may not be affected and as you can

1   tell, I'm very anxious.

2          THE COURT:  Yes.

3          THE PROSPECTIVE JUROR:  -- about this.  This makes

4   me very nervous.

5          THE COURT:  Tell me about what you're anxious about.

6          THE PROSPECTIVE JUROR:  When I read about the case,

7   it made me very uncomfortable.  I have anxiety.  I'm in

8   therapy.  I got -- just what I do know about the people

9   involved I find very alarming.

10          MR. DE CASTRO:  Your Honor, no objection.

11          MS. KOMATIREDDY:  No objection.

12          THE COURT:  Thank you very much.  You are excused.

13   Go back to the jury room on the second floor.  Thank you for

14   your services.

15          THE PROSPECTIVE JUROR:  Okay.

16          (Prospective juror No. 10 excused.)

17          THE COURT:  Juror No. 11, do you have any -- there

18   were a lot of yeses, a lot of answers yes.

19          MR. DE CASTRO:  Judge, it might be easier to do the

20   ones we are not going to follow up on.

21          THE COURT:  Okay.

22          MR. DE CASTRO:  No, I'm just kidding.

23          I had like 35, 36, 40, 42, I mean, we should start

24   with hardship.

25          MS. KOMATIREDDY:  It might have been one that

1    slipped through.  We would agree to strike for cause based on

2    the questionnaire, he says approximately 10 times they cannot

3    be fair and impartial.

4              MR. DE CASTRO:  We agree, Judge.

5              THE COURT:  Okay.  So tell Juror No. 11 that

6    juror -- well, have the juror come in and I will let the juror

7    know.

8              (Prospective Juror No. 11 enters.)

9              THE COURT:  Hi, Juror No. 11.  How are you doing?

10             THE PROSPECTIVE JUROR:  Good.  How are you?

11             THE COURT:  Good.  So I just wanted to let you know

12   that you are excused.

13             THE PROSPECTIVE JUROR:  Thank you very much.

14             THE COURT:  So go back to the second floor jury

15   room.

16             THE PROSPECTIVE JUROR:  Thank you.

17             (Prospective juror No. 11 excused.)

18             THE COURT:  So Juror No. 12 is not here yet, and we

19   will go to Juror No. 13.  So for Juror No. 13.

20             MR. DE CASTRO:  I had 52 and 58.

21             THE COURT:  All right.

22             MR. DE CASTRO:  35 as well.

23             MS. KOMATIREDDY:  42, and that's it.

24             THE COURT:  Okay.  Juror No. 13.

25             (Prospective Juror No. 13 enters.)

1          THE COURT:  Juror No. 13, come right up to the

2    podium.

3          THE PROSPECTIVE JUROR:  Here?

4          THE COURT:  You can stand there.  The chair is there

5    if you want to put down your bag.

6          THE PROSPECTIVE JUROR:  Thank you.

7          THE COURT:  How are you doing?

8          THE PROSPECTIVE JUROR:  Good.  How are you?

9          THE COURT:  Good.  We had follow-up questions for

10   you based on the answers you gave on the questionnaire.  You

11   stated that one of your college friends is in the FBI and your

12   boyfriend is an ADA.

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Can you tell us about those connections?

15         THE PROSPECTIVE JUROR:  She was my friend in high

16   school and we keep in touch.  I know she works in the FBI.  I

17   don't know what she does exactly.  I think does paperwork.

18   And my boyfriend is in narcotics in Suffolk County.

19         THE COURT:  And do you think the fact that you have

20   these connections in law enforcement and prosecution would

21   affect your ability to be fair to the defense as well as to

22   the Government in this case?

23         THE PROSPECTIVE JUROR:  The defense is the other

24   side?

25         THE COURT:  The defendant, yes.  So in this case the

1  Government has accused the defendant of committing crimes, and

2  as a juror, it is your job to listen to the evidence and be

3  fair to the defendant, as well to the Government.

4          THE PROSPECTIVE JUROR:  Yeah.

5          THE COURT:  The reason I'm asking the question is

6  because you have the friend who works for the FBI and your

7  boyfriend who is a criminal prosecutor.

8          THE PROSPECTIVE JUROR:  Yeah, I don't think it would

9  be a problem.

10         THE COURT:  Do you think you would favor the

11  Government because your boyfriend represents the Government in

12  Suffolk County?

13         THE PROSPECTIVE JUROR:  No.  I don't know.  I mean,

14  I'm a guidance counselor, so I feel like I'm used to being

15  impartial.

16         THE COURT:  So I don't think that would be a

17  problem.  All right.

18         And the fact that your friend is an FBI agent, there

19  may be law enforcement officers who testified and the question

20  -- and as a juror, it's your job to assess the credibility of

21  the witness.

22         THE PROSPECTIVE JUROR:  Uh-hum.

23         THE COURT:  It wouldn't be good if you were to say

24  I'm not going to believe someone or I'm always going to

25  believe someone just because of the job they are doing.

1          THE PROSPECTIVE JUROR:  Right.

2          THE COURT:  Would you be able to assess the

3    credibility of a FBI agent who testified?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Or a law enforcement officer?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Okay.  Now, you also said that you a

8    moving violation --

9          MR. DE CASTRO:  Your Honor, I'm sorry.

10         THE COURT:  I'm sorry.

11         MR. DE CASTRO:  I'm sorry to interrupt.  Could you

12   just follow up on if she speaks with her boyfriend about his

13   cases, if you don't mind.

14         THE COURT:  Sure.

15         So, do you speak to his boyfriend about the cases

16   that he is prosecuting?

17         THE PROSPECTIVE JUROR:  Yes.  He has told me about

18   cases.  Uh-hum.

19         THE COURT:  Because if he is prosecuting narcotics

20   cases, this is a narcotics case.

21         THE PROSPECTIVE JUROR:  Right.

22         THE COURT:  And, so, the concern would be whether

23   you have gained any information from him that would affect

24   your ability to be fair in this case.

25         THE PROSPECTIVE JUROR:  I mean, I haven't talked to

1    him about this case, but we have talked about cases that he

2    has been working on previously.

3              THE COURT:  Do you think --

4              THE PROSPECTIVE JUROR:  So I'm familiar with a

5    little bit of what happens in the courtroom.

6              THE COURT:  Right.

7              THE PROSPECTIVE JUROR:  Uh-hum.

8              THE COURT:  And would it cause -- would you be

9    able -- if you thought the Government did not make out its

10   case, would that be -- would you be thinking I should convict

11   because my boyfriend's a prosecutor and he would want me to

12   find somebody guilty?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  So you would be fair to the defendant as

15   well as to the prosecution?

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Can you set aside anything your

18   boyfriend may have said about what the law is?

19             THE PROSPECTIVE JUROR:  I mean, that could be a

20   little bit challenging.

21             THE COURT:  Tell me about that.

22             THE PROSPECTIVE JUROR:  I mean, just because I see

23   the other side of it.  I don't know.  I'd like to think of him

24   as fair at his job also, so.

25             THE COURT:  And people can be fair but they have

1   particular views.

2            THE PROSPECTIVE JUROR:  Right.

3            THE COURT:  So you need to be impartial.

4            THE PROSPECTIVE JUROR:  Right.

5            THE COURT:  When he's in court, he's representing

6   one side.  And when you're juror, you're not representing one

7   side; you have to look at both sides and make that

8   determination.

9            THE PROSPECTIVE JUROR:  Uh-hum.

10           THE COURT:  Could you be fair and be impartial?

11           THE PROSPECTIVE JUROR:  I would definitely try.

12           THE COURT:  Do you think you could do it?

13           THE PROSPECTIVE JUROR:  Yeah.

14           THE COURT:  Okay.  And if you -- if your boyfriend

15  had said this is what the law says in terms of what the

16  criminal offense -- you know, some drug offense and Judge

17  Cogan instructed you on the law and you hear it and say well,

18  that's different from what my boyfriend said, would you be

19  able to follow the instruction on what the law is as far as

20  what Judge Cogan tells you and not what your boyfriend may

21  have said?

22           THE PROSPECTIVE JUROR:  Yes, of course.

23           THE COURT:  Do you have any concerns about your

24  ability to be fair and impartial?

25           THE PROSPECTIVE JUROR:  Not particularly, no.

 1              THE COURT:  No?  All right.

 2              Now, you also said you had a moving violation that

 3     is pending trial.

 4              THE PROSPECTIVE JUROR:  Uh-hum.

 5              THE COURT:  Is that a criminal case or it's --

 6              THE PROSPECTIVE JUROR:  Not that I am aware.

 7              THE COURT:  It is just a traffic violation case.

 8              THE PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  So is there anything about that case

10     pending that might cause you not to be fair in this case?

11              THE PROSPECTIVE JUROR:  No.  I was just putting it

12     out there.

13              THE COURT:  Okay.  So then I wanted to know about

14     the show that you saw about El Chapo on Netflix.  You didn't

15     finish the show.

16              THE PROSPECTIVE JUROR:  Oh, yeah.

17              THE COURT:  What did you learn?

18              THE PROSPECTIVE JUROR:  It was Narcos.  I watched

19     the first three episodes of Narcos and I lost interest.

20              THE COURT:  You what?

21              THE PROSPECTIVE JUROR:  I lost interest.

22              THE COURT:  Okay.  That is a fictionalized.  Is it a

23     documentary?

24              THE PROSPECTIVE JUROR:  No, it's not a documentary,

25     I think it is based on real events.

1          THE COURT:  So --

2          THE PROSPECTIVE JUROR:  But it's not completely

3    truth, I don't think.

4          THE COURT:  So do you think having seen at least

5    some episodes of Narcos would affect your ability to be fair

6    in a case that involved either that drug cartel or something

7    similar to it?

8          THE PROSPECTIVE JUROR:  No.  It was fictionalized.

9    It was just TV.

10         THE COURT:  Great.  And then, finally, you've said

11   you've seen students who have abused substances, and so that

12   causes you concern about drugs.  So can you tell us about

13   that?

14         THE PROSPECTIVE JUROR:  Just -- I mean, I see an

15   uptick in drugs and people selling drugs to children, which I

16   have feelings about, obviously.  And the fact that they're

17   able to get their hands on substances, so ... I just I guess

18   I've seen the other side of it.

19         THE COURT:  Which other side of it?

20         THE PROSPECTIVE JUROR:  The other side of like how

21   drugs get into the country and how they are distributed from

22   there and how they affect our youths.

23         THE COURT:  Well, you know, this case involves

24   allegations of drug importation.  So do you think you could

25   set aside your feelings about drug use and drug importation

1   and be fair in this particular case to the person who has been

2   accused of doing those things?

3               THE PROSPECTIVE JUROR:  I think when it comes to my

4   kids, it's hard, but I guess if it's not involving any

5   children, I could be fair.

6               THE COURT:  Well, I don't know that the evidence

7   will be specifically about kids --

8               THE PROSPECTIVE JUROR:  Right.

9               THE COURT:  -- but it will be about drugs coming

10  into the country.

11              THE PROSPECTIVE JUROR:  So, in that sense, then,

12  yes.

13              THE COURT:  Then yes?

14              THE PROSPECTIVE JUROR:  I would be -- I would

15  consider myself fair and impartial.

16              THE COURT:  So you think you could be fair even if

17  -- even if the case involved evidence of drugs coming into the

18  country and you might think that those drugs would end up in

19  the hands of children?

20              THE PROSPECTIVE JUROR:  Not that --

21              THE COURT:  The issue is whether you could be fair

22  to the parties in this case.

23              THE PROSPECTIVE JUROR:  I think in that sense, I

24  would probably say no.

25              THE COURT:  Tell me what you mean.

Prospective Juror No. 13                            55

1            THE PROSPECTIVE JUROR:  If it did have to involve

2    children, I don't know that I would be able to be fair and

3    impartial in that sense.

4            THE COURT:  Like I said, the case is unlikely to

5    involve evidence directly -- --

6            THE PROSPECTIVE JUROR:  Right.

7            THE COURT:  -- about children, but it is about the

8    importation -- its allegations of importation of large amounts

9    of narcotics coming in the country.

10           THE PROSPECTIVE JUROR:  Right.

11           THE COURT:  So I wanted to -- since you have said

12   drugs, you don't like the fact that drugs are ending up being

13   sold to children --

14           THE PROSPECTIVE JUROR:  Uh-hum.

15           THE COURT:  -- whether you could put that aside and

16   be fair to the parties in this case and assess whether the

17   allegations are proven or not.  The question isn't whether it

18   is good.

19           THE PROSPECTIVE JUROR:  Right.

20           THE COURT:  It is whether the Government has proven

21   beyond a reasonable doubt that these particular crimes were

22   committed by this particular person.  So could you be fair in

23   this case even though you are thinking about these other

24   things in the back of your head?

25           THE PROSPECTIVE JUROR:  In that case, yes, if we are

1    going by the facts of what's happening, yes.

2           THE COURT:  So you would be fair to the parties in

3    this case, notwithstanding what you've seen with regard to

4    drugs and drug use?

5           THE PROSPECTIVE JUROR:  Correct.

6           THE COURT:  All right.  Any follow up?

7           MS. KOMATIREDDY:  Not from the Government, Your

8    Honor.

9           THE COURT:  All right.  Thank you very much.

10          THE PROSPECTIVE JUROR:  Thank you.

11          (Prospective juror 13 exits.)

12          THE COURT:  I have Juror No. 14.

13          MR. DE CASTRO:  Judge, before we do that, maybe --

14          THE COURT:  Yes.

15          MR. DE CASTRO:  -- can I just address -- I think

16   that's a tough one.

17          THE COURT:  Yeah.

18          MR. DE CASTRO:  She's going back and forth.  She is

19   waffling on the issue.  The minute the Government gets up and

20   says -- I'm not saying they will, but the minute the

21   Government gets up and says bringing drugs into your

22   communities and your children and everybody else, now she's

23   off, she's done.  That could potentially affect her fairness.

24   I don't think we should be risking that.  She really couldn't

25   figure it out.  We think it's a cause challenging.

1           MS. KOMATIREDDY:  We disagree, Your Honor.  I think

2    everyone is against drugs being sole to children.  Every

3    single person on the jury, we would hope, holds that view.

4           The question is, in this case, what is disputed is

5    whether the defendant was involved in assisting drug

6    traffickers.  And, so, I think Your Honor got to it at the

7    last question you asked or a further follow-up question may be

8    necessary on that, but I think the question is this is not

9    about whether drugs are bad, giving drugs to children is bad;

10   this is about whether the defendant was involved in assisting

11   or facilitating that, and that's an open question for the jury

12   to decide.

13          I think when the Court asked the juror that question

14   at the end, she definitely nodded.  If we're just talking

15   about the facts of this case and looking at whether the

16   defendant is guilty of the things he is accused of, then she

17   could be fair.

18          MR. DE CASTRO:  Judge --

19          THE COURT:  Yes.

20          MR. DE CASTRO:  -- the Government's witnesses are

21   going to be drug -- most of them are drug importers.  They are

22   narcotic dealers, cooperators, whatever, huge ones, making

23   tons of money selling drugs in our communities, selling that

24   ultimately gets to, arguably, children, and whatever.  I just

25   -- this is in this juror's head back and forth.  I deal with

1    kids.  She is a social worker in the schools.  She has her

2    boyfriend that is a prosecutor.  I just think she's a clear

3    cause challenge.

4         THE COURT:  So I did try to probe with this juror as

5    much as possible and each time she said that she could be

6    fair.  She was forthright in telling us what is in her head

7    and what she sees in her work and the concerns she has, but

8    each time I asked if she could be fair, she said she could be

9    fair.  If there are any follow-up questions you wanted me to

10   ask, I could certainly ask them, but I think that I tried to

11   get that.

12        MR. DE CASTRO:  No.  I think you were thorough, but,

13   you know, ultimately she said I could try, then you probed,

14   and oh, yes, I could be fair.  But then you started talking

15   about children.  Then, oh, wait, I can't be fair.  And then

16   ultimately she said well, if you tell me that, then that's

17   okay.

18        If the Government is not going mention a child or a

19   community, then I think we're good.  I doubt that's happening.

20   I have a feeling they may be arguing that the scores of drugs,

21   how it affects our community, how it affects our schools, how

22   it affects everything, I think that is too much for this

23   juror.  That's my record.

24        THE COURT:  I could ask her more specifically even

25   if somebody said at trial the affects on community, could you

1   be fair.

2            MR. DE CASTRO:  Sure.

3            THE COURT:  Do you want to have that follow up?

4            MR. DE CASTRO:  Yes.

5            THE COURT:  Okay.  You can bring Juror No. 13 back.

6   Hold on one sec.  You can have Juror No. 13 come back, please.

7            MS. KOMATIREDDY:  Your Honor, likewise, we would

8   request that the Court ask -- putting -- the question in this

9   case is not whether drugs are good or bad for children; the

10  question is whether the defendant was involved in trafficking

11  drugs.

12           THE COURT:  Right.  While we are waiting for that

13  juror, do you have thoughts on Juror No. 14?

14           I think Juror No. 13 is back.

15           (Prospective Juror No. 13 enters.)

16           THE COURT:  Hi, Juror No. 13.  We had just a few

17  follow-up questions.

18           So I wanted to make sure that you understood that

19  the trial is not going to be about whether drugs or good or

20  bad; it's going to be about whether this particular individual

21  was involved in drug trafficking.

22           Do you think you could be fair in focusing on this

23  trial?

24           THE PROSPECTIVE JUROR:  Yes.

25           THE COURT:  All right.  And you talked about how you

1  could see the affects on drugs on the community.  If, in the

2  course of the trial, someone were to make a comment about

3  drugs are devastating our communities, it's bad for our

4  children, do you think that would affect your ability to be

5  fair in this case?

6              THE PROSPECTIVE JUROR:  I think I would agree with

7  the statement.

8              THE COURT:  Right.

9              THE PROSPECTIVE JUROR:  I guess that would affect my

10  decision.

11              THE COURT:  Okay.  So, if you were to agree with

12  that statement --

13              THE PROSPECTIVE JUROR:  Uh-hum.

14              THE COURT:  -- would it then lead you to agree with

15  the statement that this person is therefore guilty of the

16  crimes charged or are they two separate things?

17              THE PROSPECTIVE JUROR:  Well, they would be separate

18  things.

19              THE COURT:  So if a person said drugs are having a

20  terrible affect on our community, including our children and

21  you agreed with it, would it lead you to, therefore, accept

22  all the other things that that person said or would you assess

23  the other things that that person said just the way you would

24  anybody else?

25              THE PROSPECTIVE JUROR:  Right.  Then I would be able

1  to assess it separately.  I think the statement can be true,

2  but that doesn't necessarily mean that the person is doing

3  that, I guess.

4          THE COURT:  Okay.  So, again, you said that you

5  would agree with that statement --

6          THE PROSPECTIVE JUROR:  Uh-hum.

7          THE COURT:  If a witness, for example, made that

8  statement and you agreed with it, would you then agree with

9  everything else that the witness said or would you be

10  assessing what the witness said -- each thing what the witness

11  said to assess whether you accept it or not?

12          THE PROSPECTIVE JUROR:  No.  I would be assessing

13  everything they were saying.

14          THE COURT:  Thank you.  Were there any other

15  follow-up questions you wanted?

16          MR. DE CASTRO:  No, Your Honor.

17          THE COURT:  Thank you very much for coming back.

18          THE PROSPECTIVE JUROR:  Okay.

19          (Prospective juror 13 exits.)

20          THE COURT:  So, for Juror No. 14, what questions

21  would you like me to focus on?

22          MR. DE CASTRO:  I have 49, 58, 66, and 70.

23          MS. KOMATIREDDY:  And as well as 62-C for us, Your

24  Honor.

25          THE COURT:  Okay.  Juror No. 14.

1              (Prospective Juror No. 14 enters.)

2              THE COURT:  Hi, Juror No. 14.

3              THE PROSPECTIVE JUROR:  Hi.

4              THE COURT:  You can come up here and put your coat

5     down if you'd like.  How are you doing?

6              THE PROSPECTIVE JUROR:  I'm okay.  How are you?

7              THE COURT:  Good.  Thank you.

8              I had some follow-up questions for you based on the

9     answers you gave on the questionnaire.

10             THE PROSPECTIVE JUROR:  Okay.

11             THE COURT:  I'll start with your statement that you

12    would need to work in the operation and Fridays to keep up

13    with your work.  Can you tell us about that?

14             THE PROSPECTIVE JUROR:  Yes.  So I am the head of an

15    HR department for a global company and if I'm not there,

16    unfortunately, it will be really difficult for my team and the

17    company to move forward with personnel things.  It's also the

18    timeframe for our annual compensation, so all the employees,

19    it would be difficult for them, so I would have to work

20    evenings or weekends to keep up with that.

21             I actually have a letter from my employer, my boss

22    about that.  I'm not sure if I should give that to you.

23             THE COURT:  You can hold on to that for now.

24             Okay.  You said you would have to work on Fridays.

25    The Court doesn't sit on Fridays, so you could work Fridays

1   even if you were a juror?

2            THE PROSPECTIVE JUROR:  Yes.  Yes.

3            THE COURT:  Okay.  And then on the evenings and the

4   weekends, could you work on the weekends?

5            THE PROSPECTIVE JUROR:  I mean, it would be

6   extraordinarily stressful to work a full day after a full day

7   of jury duty for that amount of time especially.

8            THE COURT:  Right.  But could you do it if you had

9   to?

10           THE PROSPECTIVE JUROR:  No, I mean.

11           THE COURT:  No?

12           THE PROSPECTIVE JUROR:  I don't know how -- I mean,

13  will I live?  Sure.  But it will be really difficult, yeah.

14           THE COURT:  All right.  So let me ask a couple of

15  other follow-up questions.  One of the questions you said that

16  the case sounds intimidating.

17           THE PROSPECTIVE JUROR:  Uh-hum.

18           THE COURT:  Tell me about that.

19           THE PROSPECTIVE JUROR:  Just seeing some of the

20  names on the list in the questionnaire and just reading a

21  little bit about the case and what it's about, it's surely

22  intimidating.  Yeah.

23           THE COURT:  How would that affect your ability to be

24  fair?

25           THE PROSPECTIVE JUROR:  I don't know.

1          THE COURT:  Would it?

2          THE PROSPECTIVE JUROR:  I don't know.  I don't know

3    how it would.  I've clearly never been in this situation

4    before and the intimidation is definitely from reading what I

5    read in the questionnaire.

6          I don't know for sure if it would influence my

7    ability, but I know how I feel now.

8          THE COURT:  Yes.

9          THE PROSPECTIVE JUROR:  And how I felt when I was

10   reading about the questions on the questionnaire.  That's

11   something to consider I guess for myself.

12         THE COURT:  Right.  Well, I know the case has gotten

13   a lot of attention and based on what you have heard about it,

14   you used the word intimidating.

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Under the circumstances, could you still

17   be fair and sit and listen as a juror and render a verdict

18   just based on the evidence you heard one way or the other?

19         THE PROSPECTIVE JUROR:  I don't know for sure, but I

20   would try.

21         THE COURT:  What is your hesitation?

22         THE PROSPECTIVE JUROR:  I guess just whenever any

23   person is intimidated or scared it does influence how they

24   apply their judgement.  And so that I just assume on a basic

25   level, you know, that I would not be absent from that kind of

1  reaction.

2          THE COURT:  So based on what you're feeling now, do

3  you already feel like you want to render a verdict one way or

4  the other or you don't know because you haven't heard the

5  evidence?

6          THE PROSPECTIVE JUROR:  The second, yeah.

7          THE COURT:  As you were sitting in the trial, do you

8  think you could focus on assessing the evidence as presented

9  to you and applying the law?

10          THE PROSPECTIVE JUROR:  I honestly don't know --

11  sorry to interrupt.

12          THE COURT:  Go ahead.

13          THE PROSPECTIVE JUROR:  I honestly don't know if I

14  could, especially just reading in the questionnaire and then

15  kind of thinking of how I might feel, like, actually in the

16  room with the person.  I don't know how that would impact my

17  ability to focus on it one way or the other, yeah.

18          THE COURT:  Well, you're in the room right now with

19  the defendant.

20          THE PROSPECTIVE JUROR:  Good to know.

21          THE COURT:  How do you feel?

22          THE PROSPECTIVE JUROR:  I didn't know that.

23          THE COURT:  How do you feel?

24          THE PROSPECTIVE JUROR:  A little intimidated.

25          THE COURT:  The question is being in this courtroom,

Prospective Juror No. 14                         66

1   it's a federal court, and, you know, those kinds of things can

2   be intimidating.

3           THE PROSPECTIVE JUROR:  Right.

4           THE COURT:  And it's not a normal thing for

5   non-lawyers.  But the question is whether you can focus on

6   your job as a juror?

7           THE PROSPECTIVE JUROR:  I would hope so for sure.

8           THE COURT:  And whether you could be fair and not

9   immediately decide one way or the other, or that, in the

10  course of the trial, you might feel like I better render a

11  verdict this way rather than the other way because of some

12  fear you have.  I'm just trying to assess that.

13          THE PROSPECTIVE JUROR:  Yeah.  Being honest, I would

14  certainly try to be fair and, you know, assess the evidence.

15  I think that, like, any person who read the words like -- I

16  shouldn't speak for any person.  When I read the word cartel

17  and just reading, and movies, and television, and books,

18  things like that, it's a little scary to be involved, but I

19  certainly would try to do my duty.

20          MR. DE CASTRO:  Your Honor, we have no objection.

21          THE COURT:  All right.  So thank you for being so

22  open with us.  You're excused.

23          THE PROSPECTIVE JUROR:  Thank you.

24          THE COURT:  Why don't you go down to the second

25  floor.

1                (Prospective juror 14 exits.)

2                THE COURT:  Juror No. 15.  Are there any questions

3    you want me to focus on?

4                MR. DE CASTRO:  I have -- what do you think?  I have

5    43, 44, 69, 70 and 71.

6                THE COURT:  Okay.  For the Government?

7                MS. KOMATIREDDY:  That's what we have too, Your

8    Honor.

9                THE COURT:  Great.  Juror No. 15.

10               (Prospective Juror No. 15 enters.)

11               THE COURT:  Hi, Juror No. 15.  You can come up to

12   the podium.  Put your coat down if you'd like.

13               How are you?

14               THE PROSPECTIVE JUROR:  Good.

15               THE COURT:  Good.  So I wanted to follow up with a

16   couple of answers you gave, and I'll start with your answer

17   that your employer may have a problem with you missing work.

18               THE PROSPECTIVE JUROR:  Yes.

19               THE COURT:  Can you tell us about that?

20               THE PROSPECTIVE JUROR:  Yes.  So my former boss just

21   quit last week so I'm taking over his position and because the

22   trial would be so long, it might be a problem.

23               THE COURT:  Is -- will there be a replacement for

24   the person who quit?

25               THE PROSPECTIVE JUROR:  I would be the replacement.

1         THE COURT:  Okay.  Is there somebody who would do

2    your job?

3         THE PROSPECTIVE JUROR:  No.

4         THE COURT:  How big is the company that you work

5    for.

6         THE PROSPECTIVE JUROR:  About, over 100 people.

7         THE COURT:  Out of those 100 people, there's nobody

8    who could cover four?

9         THE PROSPECTIVE JUROR:  No, I'm in a small

10   department.  There's only three people.  Well, two now.

11        THE COURT:  You said you weren't hire if you would

12   be paid your salary.

13        THE PROSPECTIVE JUROR:  Correct.

14        THE COURT:  Do you know if you could find out?

15        THE PROSPECTIVE JUROR:  I could, yeah.

16        THE COURT:  Would it makes a difference, if you were

17   paid your salary, would you be able to sit during the trial?

18        THE PROSPECTIVE JUROR:  Yes.

19        THE COURT:  Even though it would be a hardship for

20   your employer, you could still do it?

21        THE PROSPECTIVE JUROR:  Yes, that's fine.

22        THE COURT:  Is there any reason you couldn't be fair

23   and impartial if you were picked as a juror?

24        THE PROSPECTIVE JUROR:  No.

25        THE COURT:  Then you also talked about how your

1   father was a correctional officer in the '90s.

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  So do you think the fact that your --

4   did your father talk about work?

5              THE PROSPECTIVE JUROR:  No, I was like two when he

6   was a correction officer.  I knew nothing about any of that.

7              THE COURT:  Even once you grew up, did he talk about

8   it?

9              THE PROSPECTIVE JUROR:  No.  He went to work for

10  Sanitation.  When I grew up that was his job.  He worked for

11  Sanitation.

12             THE COURT:  And the fact that there's law

13  enforcement in your background, would that affect your ability

14  to be fair and impartial in this case?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  You also said you had an uncle that was

17  incarcerated in the early '90s?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Would that fact that you had that family

20  connection affect your ability to be fair in a criminal case?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  So you think you cd be fair and

23  impartial in this case?

24             THE PROSPECTIVE JUROR:  Correct.

25             THE COURT:  Great.  Any follow up?

Prospective Juror No. 15                              70

1          MR. DE CASTRO:  No.  I guess just find out the pay

2    issue.

3          THE COURT:  Okay.  So could you find out sometime

4    today?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Just call your employer and find out if

7    you would get paid to serve on this jury?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Okay.  Thank you.

10         (Prospective juror 15 exits.)

11         THE COURT:  Juror No. 17.  I have question 49, the

12   juror says I fully sUPport NYPD.

13         MR. DE CASTRO:  Yes.  And I had 71, too, which I

14   think is the pay question.

15         THE COURT:  The juror also said there is a problem

16   understanding English, so I think I will also ask about that.

17   Anything else?

18         MS. KOMATIREDDY:  Your Honor, this is the individual

19   who --

20         THE COURT:  Juror No. 17.

21         MS. KOMATIREDDY:  Right.  With respect to the

22   English, they have been in this country for something like 12

23   years.

24         THE COURT:  The answers indicated a proficiency,

25   since the question was checked off yes, I thought I would ask.

1    MS. KOMATIREDDY:  The only follow up would be --
2    never mind, it's fine.
3    THE COURT:  All right.  Juror No. 17.
4    (Prospective Juror No. 17 enters.)
5    THE COURT:  Step up to the podium.  You can put your
6    coat down on the chair if you'd like.
7    How are you doing?
8    THE PROSPECTIVE JUROR:  Good.  Thank you.
9    THE COURT:  Good.  I wanted to just ask a couple of
10   follow-up questions.  You mentioned that you are not sure if
11   you would get paid by your employer.  Do you know?  Have you
12   been able to find out if you were to get paid?
13   THE PROSPECTIVE JUROR:  I don't know how many days
14   do I get paid.
15   THE COURT:  Is there a way for you to find out if
16   you would get paid for the full time?
17   THE PROSPECTIVE JUROR:  I know I get paid full-time,
18   but I don't know how long, how many weeks.
19   THE COURT:  I see.  Can you ask?
20   THE PROSPECTIVE JUROR:  Yeah, I can ask.
21   THE COURT:  And you said that you have some concern
22   with your English ability?
23   THE PROSPECTIVE JUROR:  I'm not very fluently in the
24   legal words.
25   THE COURT:  All right.  Well, the lawyers will do

1  their very best to speak in regular English and explain any

2  legal terms.  Do you think you could do that?

3  THE PROSPECTIVE JUROR:  Yes.

4  THE COURT:  Do you think you can follow?

5  THE PROSPECTIVE JUROR:  I'll try.

6  THE COURT:  And you use English in your work, right?

7  THE PROSPECTIVE JUROR:  Yeah.

8  THE COURT:  So you're fine.  And your answers on the

9  questionnaire, did you have any problems filling out the

10  questions?

11  THE PROSPECTIVE JUROR:  No.

12  THE COURT:  Very good.

13  You also said that you fully support the NYPD?

14  THE PROSPECTIVE JUROR:  Yes.

15  THE COURT:  Can you tell us about that?

16  THE PROSPECTIVE JUROR:  I support NYPD for the great

17  job they do for our city, and I grew up in military family and

18  that's the reason I would like -- I support them.

19  THE COURT:  All right.  Does it mean that if an NYPD

20  officer or other law enforcement officer testified you would

21  definitely believe them or would you listen to that witness'

22  testimony just like anybody else?

23  THE PROSPECTIVE JUROR:  I would listen --

24  THE COURT:  Okay.

25  THE PROSPECTIVE JUROR:  -- testimony.

1          THE COURT:  And if you thought that their testimony

2     was not credible, would you be able to find them not

3     credible --

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  -- or would you support them anyway?

6          THE PROSPECTIVE JUROR:  No, I would not -- I mean, I

7     would look at the proofs, the facts.

8          THE COURT:  Okay.  Great.

9          And given that you support the NYPD, does that mean

10    that you would -- could you be fair to a defendant who is

11    accused of a crime but is presumed innocent?

12         THE PROSPECTIVE JUROR:  Yeah.

13         THE COURT:  You could be fair?

14         THE PROSPECTIVE JUROR:  Yeah.

15         THE COURT:  Could you be fair to both sides, both

16    the defendant and the prosecution?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Do you have any concerns about being a

19    fair and impartial juror?

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  All right.  Great.  Any questions?

22         Thank you very much.

23         THE PROSPECTIVE JUROR:  Thank you.

24         THE COURT:  Why don't you go back to the jury room.

25         (Prospective juror 17 exits.)

1          THE COURT:  Do the parties want a break?  We've been

2    going a full morning.

3          MR. DE CASTRO:  Sure.

4          THE COURT:  Let's take a 10-minute break just to

5    stretch and get a glass of water.  Thank you.

6          (Recess taken.)

7          (Continued on next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                    Jury Selection                    75
```

1           THE COURTROOM DEPUTY:  Back on the record for jury

2    selection.

3           THE COURT:  All right, everyone.  Before we bring in

4    Juror No. 18, I want to see if anybody had any discussions for

5    cause strikes that we can bring up now.

6           MS. KOMATIREDDY:  24, Your Honor.

7           THE COURT:  24 what?

8           Did you mean the question for Juror No. 18.

9           MS. KOMATIREDDY:  That's what I meant.

10           But Your Honor asked about the cause strikes from

11    the morning, Your Honor?

12           THE COURT:  Yes.  Or we could do that later.

13           MS. KOMATIREDDY:  Whatever you prefer, we can do.

14           THE COURT:  I mean, if you're ready to talk about it

15    now, we have a break.  But if you're not prepared --

16           MR. DE CASTRO:  We prefer to just keep going.

17           THE COURT:  Okay.

18           Mr. De Castro, do you have any questions you want to

19    ask this juror, 24?

20           MR. DE CASTRO:  18, I think there was just 71, which

21    was the pay, I think.

22           THE COURT:  Okay.  Great.

23           Number 18.

24           MS. KOMATIREDDY:  Just to be clear, your Honor, 24

25    is just an excuse to talk to him.  Otherwise --

1          THE COURT:  We never need an excuse.  I can always

2     talk to them about fairness.

3          Well, the pay, this individual is retired, so I

4     think --

5          MR. DE CASTRO:  Yes, Judge.  I was looking at a

6     different number.  My apologies.

7          THE COURT:  That's okay.

8          (Prospective Juror No. 18 enters.)

9          THE COURT:  Good morning, Juror No. 18.  Come on up

10    to this podium, please.  Put your coat on the chair.  That's

11    fine.

12         How are you doing?

13         THE PROSPECTIVE JUROR:  I'm good.  Thank you.

14         THE COURT:  So I wanted to see if you had anything

15    you wanted to let the Court know about that we did not ask on

16    the questionnaire.

17         THE PROSPECTIVE JUROR:  The only thing I can think

18    of is, you know, for the nature of the trial, safety.

19         THE COURT:  Okay.  And do you think that any -- I

20    mean, we would do the best we can in terms of providing for

21    the safety and security of all the people involved in the

22    case.

23         Do you think your concern about the safety would

24    affect your ability to be fair and impartial?

25         THE PROSPECTIVE JUROR:  I don't think it would

1  affect my ability to be fair.  It's just, you know, sometimes

2  you're talking about bad people.

3            THE COURT:  All right.  Well, you know, that's

4  understandable.  People read, you know, certain things.

5            THE PROSPECTIVE JUROR:  Read, movies.  We're all

6  human.

7            THE COURT:  Sure.  Yes, yes.

8            And like I said, the Court will do what it can.  You

9  have seen all the security measures in place here.  And as we

10 move along, there will be additional security measures taken.

11           But could you set aside those concerns and be fair

12 and impartial and render a just verdict?

13           THE PROSPECTIVE JUROR:  Yes.

14           THE COURT:  And you talked about bad people, but in

15 this case the defendant is presumed innocent.

16           THE PROSPECTIVE JUROR:  I understand.

17           THE COURT:  Could you accept that?

18           THE PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Okay.  You mentioned that you had

20 traveled to Mexico.  Does the fact that you've been to Mexico

21 make any difference to you in terms of being able to serve on

22 this jury?

23           THE PROSPECTIVE JUROR:  No, not at all.

24           I've been three times to Mexico.

25           THE COURT:  Okay.  Great.

1          THE PROSPECTIVE JUROR:  Had a good time each time.

2          THE COURT:  And you're retired; is that right?

3          THE PROSPECTIVE JUROR:  I am.

4          THE COURT:  So is there any reason at all that you

5     could not be fair and impartial if you were picked as a juror?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Any followup questions?

8          MR. DE CASTRO:  No, Judge.

9          THE COURT:  Thank you very much.

10          Go back to the other room, please.

11          (Prospective Juror No. 18 exits.)

12          THE COURT:  Juror No. 19.  I have 52, that the juror

13     may have read or heard something about the case, 54, 55 and

14     69.

15          Anything else?

16          MS. KOMATIREDDY:  That's what we had, Your Honor.

17          THE COURT:  Okay.  Great.

18          Juror No. 19.

19          (Prospective Juror No. 19 enters).

20          THE COURT:  You can come up to the podium, please.

21          This one here.  And if you want to put your bag on

22     that chair, feel free.

23          How are you doing?

24          THE PROSPECTIVE JUROR:  Good.

25          THE COURT:  All right.  We have just a couple of

1  followup questions for you based on the answers you gave on

2  the questionnaire, and I will start with your answer about any

3  hardship.

4            You said that you're caring for an elderly parent.

5  Can you tell us about that?

6            THE PROSPECTIVE JUROR:  Yeah.  So basically my dad

7  had a stroke and he's not that good on his left side.  So

8  generally if he needs anything, I'm there to kind of help him

9  out.

10           THE COURT:  Okay.  And how often does that happen?

11           THE PROSPECTIVE JUROR:  I would say sometimes, here

12  and there.  Not that often, but you know.

13           THE COURT:  All right.  And if you are at work --

14  you're working, right?

15           THE PROSPECTIVE JUROR:  Yeah.

16           THE COURT:  When you're at work, what happens when

17  he needs help?

18           THE PROSPECTIVE JUROR:  I'm hybrid, so sometimes I

19  stay home.  And then there are times when I'm not home, then I

20  have my brother to kind of help out also.

21           THE COURT:  Okay.  So if you were picked as a juror

22  in this case, could your brother help out if your father

23  needed help?

24           THE PROSPECTIVE JUROR:  Yeah.

25           THE COURT:  All right.  Great.  Thank you for

1    letting us know about that.

2            You also indicated that you may have heard or read

3    something about this case about the -- you didn't tell us what

4    it is, so can you tell us a little bit about what you may have

5    heard about this case?

6            THE PROSPECTIVE JUROR:  I'm sorry, I don't know --

7            THE COURT:  Let me see.

8            The question was that you said that there was

9    information -- it's a little confusing because the way the

10   question was asked.  But the question was whether you had read

11   or heard anything about this case and you said no.

12           THE PROSPECTIVE JUROR:  Yeah.

13           THE COURT:  But then you said -- the question was

14   would information you heard or read about the case affect your

15   ability to be fair and impartial and you said yes.  And so --

16           THE PROSPECTIVE JUROR:  Oh.  Oh, okay.

17           THE COURT:  I wasn't sure if that meant you did

18   hear --

19           THE PROSPECTIVE JUROR:  No, I don't know anything

20   about this case.

21           THE COURT:  You don't know anything about this case?

22           THE PROSPECTIVE JUROR:  Yeah.

23           THE COURT:  Okay.  And then you were asked how

24   closely you follow media coverage of allegations of corruption

25   in the Mexican government.  You said not too closely.  And

1    then the followup was, is there anything about that coverage

2    that would prevent you from being fair and you said yes.  So

3    then, again, I wasn't sure if you were following information

4    about corruption in the Mexican government and how much

5    because you said it would affect your ability to be fair.

6                 THE PROSPECTIVE JUROR:  Yes.  So the -- I don't know

7    anything about this case, first of all.

8                 But like yes, I do go on, like, the internet and I

9    do see, like, oh, how corruption in Mexico is kind of like

10   rampant, so that's what I mean.  Yeah.

11                THE COURT:  Okay.  So there will be evidence in this

12   case likely that touches on corruption in the Mexican

13   government.  But if you're a juror, you wouldn't be making a

14   decision about all corruption.  You would be focused on the

15   allegations in this case against the defendant.

16                So could you be fair and focus on the evidence in

17   this case and render a just verdict?

18                THE PROSPECTIVE JUROR:  Yes.

19                THE COURT:  Okay.  Thank you.

20                So then you were asked about whether you had any

21   personal feelings about the U.S. Government's prosecution of

22   someone whose alleged conduct mainly occurred outside the U.S.

23   and you said that you believe the U.S. Government's

24   prosecution is justified if the defendant is dealing with

25   drugs.

Prospective Juror No. 19                              82

1              So can you talk a little bit more about that?

2              THE PROSPECTIVE JUROR:  Yes.  I assume there's a

3    reason why they got caught by the U.S. and if they know

4    they're dealing drugs within the U.S.

5              THE COURT:  Right.  Okay.  Sure.

6              So have you made up your mind about this case

7    already or are you going to keep an open mind and listen to

8    the evidence?

9              THE PROSPECTIVE JUROR:  I'll keep an open mind.

10             THE COURT:  So you haven't concluded yet whether the

11   person is dealing with drugs or not because you're waiting to

12   hear the evidence; is that right?

13             THE PROSPECTIVE JUROR:  Yes, yes.

14             THE COURT:  And if the evidence shows beyond a

15   reasonable doubt that he was doing these crimes, then could

16   you render a verdict of guilty?

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  And if the government did not prove

19   beyond a reasonable doubt that this defendant did what he's

20   alleged to have done, would you be able to render a verdict of

21   not guilty?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Is there any reason that you could not

24   be fair and impartial in this case?

25             THE PROSPECTIVE JUROR:  I don't have a reason, no.

1          THE COURT:  You would be fair?

2          THE PROSPECTIVE JUROR:  Yeah.

3          THE COURT:  Okay.  And then you were not sure if you

4    would get paid your salary during jury duty.

5          THE PROSPECTIVE JUROR:  Yeah.  I only -- I spoke

6    with HR and they told me two, three days.  I don't know what

7    happens next.  So yeah.

8          THE COURT:  And so if HR doesn't pay you after three

9    days, what happens?

10         THE PROSPECTIVE JUROR:  I don't know.  I need to go

11   more into details with them.  I'm not sure what will happen,

12   to be honest.

13         THE COURT:  Would that create a hardship for you if

14   you weren't paid?

15         THE PROSPECTIVE JUROR:  Yes, yes.

16         THE COURT:  Okay.  And you're sure about that they

17   told you three days and no more?

18         THE PROSPECTIVE JUROR:  That's what they say in the

19   manual.

20         THE COURT:  That's what it says in the manual?

21         THE PROSPECTIVE JUROR:  I will speak with them again

22   just to --

23         THE COURT:  Yes.  Why don't you talk to somebody and

24   just say you're being considered for a jury trial that could

25   take several weeks, could they pay you if you're picked beyond

1    three days if you're picked for the jury.

2                THE PROSPECTIVE JUROR:  Yeah.  Yeah.

3                THE COURT:  Okay.  Any followup questions?

4           So why don't you find out and then you can let one

5    of the staff, the jury staff know whether you will get paid or

6    not.

7                THE PROSPECTIVE JUROR:  Okay, yeah.

8           How can I contact them?

9                THE COURT:  Hold on one second.

10          You can tell the jury office on the second floor

11   when you find out and they'll let me know.

12               THE PROSPECTIVE JUROR:  Okay.  Thank you.

13               THE COURT:  Okay.  Great.  Thank you very much.

14               (Prospective Juror No. 19 exits.)

15               MR. MIEDEL:  Your Honor?

16               THE COURT:  Yes.

17               MR. MIEDEL:  It might just be worth, given what some

18   of the people have said recently, to remind the jurors that

19   this trial is scheduled or expected to last up to eight weeks.

20               THE COURT:  Yes.

21               MR. MIEDEL:  Because I think there seems to be some

22   confusion amongst people about how long this is actually

23   supposed to go on for.

24               THE COURT:  All right.  I will do that.

25          The questionnaire said through early March.

1          MR. MIEDEL:  Right.

2          THE COURT:  I guess eight weeks makes it a little

3   clearer.

4          MR. DE CASTRO:  And I think when they hear weeks,

5   it's one thing.  When you say by the way, it's two months,

6   then, like, sometimes it just clicks differently in people's

7   heads, I don't know.

8          THE COURT:  Okay.  So should I say two months?

9          MR. MIEDEL:  Sure.

10         MR. DE CASTRO:  Yes, sure.  I hear weeks and I say

11  is it three, four, maybe weeks or whatever.

12         THE COURT:  So Juror No. 21 had a lot of answers,

13  but let me see what you want me to focus on.

14         MR. DE CASTRO:  I had 34, 35, 40, 43, 44, 49, 56,

15  57, 58.

16         MS. KOMATIREDDY:  And 42.

17         THE COURT:  And 42, all right.

18         MR. DE CASTRO:  Just a couple.

19         Okay.  Juror No. 21.

20         (Prospective Juror No. 21 enters.)

21         THE COURT:  Hi Juror No. 21, come up to the podium,

22  please.  This one here.

23         And then you can put your -- this one, closer to us.

24  Yes.

25         And you can put your coat and the bag on the chair

1   if you'd like.

2           THE PROSPECTIVE JUROR:  Thank you.

3           THE COURT:  You can also keep your mask on or take

4   it off, whatever you're comfortable with.

5           How are you doing?

6           THE PROSPECTIVE JUROR:  I'm great.  Thank you.

7           THE COURT:  So we had a couple of followup questions

8   based on the answers you gave on the questionnaire.

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  I will start with the work that you do.

11          And you mentioned that you are with the MTA Police?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  So the fact that you are, that counts as

14  law enforcement.

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  And so the fact that you work for law

17  enforcement, do you think you could be fair and impartial in a

18  case that involves criminal accusations?

19          THE PROSPECTIVE JUROR:  I believe so.

20          THE COURT:  So do you think when you're assessing

21  the evidence that you'll consider the testimony of law

22  enforcement officers just like any other witness and not give

23  them any special favor?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  And if the evidence proved beyond a

1   reasonable doubt that this defendant committed the crimes he's

2   alleged to have committed, you would render a verdict of

3   guilty, but if the government did not prove the case beyond a

4   reasonable doubt, that you would be able to render a verdict

5   of not guilty?

6                THE PROSPECTIVE JUROR:  Correct.

7                THE COURT:  Okay.  So you also said that you have an

8   uncle who is in the FBI and a cousin who is a police officer?

9                THE PROSPECTIVE JUROR:  Yes.

10               THE COURT:  So that also goes to your law

11  enforcement ties.

12               THE PROSPECTIVE JUROR:  Yes.

13               THE COURT:  Do you think that affects your ability

14  to be fair in this case?

15               THE PROSPECTIVE JUROR:  No, it does not.

16               THE COURT:  And you also said that six years ago you

17  reported an assault to the police and the person was not

18  caught.

19               Does that affect your view of the police and law

20  enforcement and justice?

21               THE PROSPECTIVE JUROR:  No.

22               THE COURT:  You also said that you or someone you

23  know had some police contact and you said that that also would

24  not affect your ability to be fair; is that correct?

25               THE PROSPECTIVE JUROR:  Correct.

Prospective Juror No. 21                    88

1          THE COURT:  You said you had a brother who was

2   incarcerated 30 years ago for drug possession.

3          Does that affect your ability to be fair?

4          THE PROSPECTIVE JUROR:  No, it does not.

5          THE COURT:  Okay.  And you mentioned, in answer to

6   one of the questions, that you believe law enforcement

7   officers are hard-working individuals that put their lives on

8   the line every day to protect and serve us.

9          THE PROSPECTIVE JUROR:  I do.

10          THE COURT:  So given that view, do you think you

11   could be fair and impartial when one side involves law

12   enforcement and the other side is not?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  So you would treat both sides equally

15   and not favor one or the other?

16          THE PROSPECTIVE JUROR:  That's correct.

17          THE COURT:  Okay.  And you said that you believed

18   that hard drugs should not be legal and you have seen people

19   who have used drugs do well and also drop out of school and

20   have some negative consequences.

21          So do you think your views on the harms of drugs

22   would affect your ability to be fair in a case that involves

23   drug trafficking?

24          THE PROSPECTIVE JUROR:  No, I do not.

25          THE COURT:  Is there any reason you would not be

Prospective Juror No. 21                          89

1   fair and impartial if you were picked as a juror in this case?

2          THE PROSPECTIVE JUROR:  I wouldn't know.

3          THE COURT:  You wouldn't know?

4          THE PROSPECTIVE JUROR:  Uh-uh.

5          THE COURT:  So tell me what your concerns are about

6   your ability to be fair.

7          THE PROSPECTIVE JUROR:  I just will base my judgment

8   based on the evidence, what's in hand and what can be proven.

9   And that's all I can really say.

10         THE COURT:  Okay.  Great.

11         And we want jurors who are fair and who will listen

12  to the evidence and judge it, and so that is why we are asking

13  the questions about whether you can be fair.

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Let me ask you again.  Given your law

16  enforcement ties and background, if there were a witness who

17  was a law enforcement officer, would you automatically believe

18  the person or do you think you could be fair and --

19         THE PROSPECTIVE JUROR:  I can be fair.

20         THE COURT:  Okay.  And if the government did not

21  prove its case beyond a reasonable doubt, would you be able to

22  render a verdict of not guilty?

23         THE PROSPECTIVE JUROR:  Yes, I can.

24         THE COURT:  Any followup questions?

25         MS. KOMATIREDDY:  May we have a brief sidebar?

```
                         Sidebar                      90
```

1          THE COURT:  Okay.

2          (The following occurred at sidebar.)

3          MS. KOMATIREDDY:  Your Honor described the case as

4    one where law enforcement is on one side and the other side is

5    not.  I just wanted to alert to the fact that the defendant is

6    a former law enforcement officer.

7          THE COURT:  Okay.

8          MS. KOMATIREDDY:  I just wanted to in case that

9    affected Your Honor's question.  I wanted to make sure.

10          I don't think that there's any followup required.  I

11    just want to make sure I corrected the record.

12          THE COURT:  Yes.  I wasn't focused on that.

13          Is there a curative question that I can ask?

14          MS. KOMATIREDDY:  No, Your Honor.  I don't think

15    it's necessary.

16          MR. DE CASTRO:  You could say people who are in law

17    enforcement, if you know this case involves someone who was in

18    law enforcement, do you have any particular views about

19    corruption or anything like that.

20          THE COURT:  Corruption in law enforcement?

21          MR. DE CASTRO:  Mm-hm.

22          THE COURT:  Okay.

23          MR. DE CASTRO:  That makes sense.

24          MS. REID:  Yes, I think that's fine.

25          THE COURT:  Thank you.

Prospective Juror No. 21                      91

1          (Sidebar ends.)

2          THE COURT:  All right, Juror No. 21.  I just had a

3   followup question.

4          We talked a lot about people in law enforcement and

5   I wanted to see if you had any views or opinions about

6   corruption in law enforcement or by people in law enforcement

7   that would affect your ability to be fair in this case.

8          I talked a little bit earlier about law enforcement

9   and I made it sound as if it's law enforcement on one side and

10  non-law enforcement on the other side, but this case may

11  involve people who were in law enforcement and are accused of

12  committing crimes.  So I just wanted to see whether that would

13  affect your ability to be fair in this case.

14          THE PROSPECTIVE JUROR:  Yes, I can be fair.

15          THE COURT:  Okay.  Great.  I just wanted to clarify

16  that.

17          THE PROSPECTIVE JUROR:  Okay.

18          THE COURT:  Thank you very much.

19          THE PROSPECTIVE JUROR:  Thank you.

20          THE COURT:  You can go back into the jury room

21  across the hall.

22          (Prospective Juror No. 21 exits.)

23          THE COURT:  For Juror No. 22 we, can talk about the

24  hardship question about childcare.

25          What else would you like me to focus on?

1           MR. DE CASTRO:  I have 47, 56, and 58.

2           THE COURT:  Okay.

3           MS. KOMATIREDDY:  And I have 42 and 43.

4           THE COURT:  Okay.  So we will start with 69.

5       Juror No. 22, please.

6       (Prospective Juror No. 22 enters.)

7           THE COURT:  Hi, Juror No. 22.

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  Step right up to the podium, please.

10          And we had a couple of questions about the answers

11      that you gave on your questionnaire.

12          THE PROSPECTIVE JUROR:  Sure.

13          THE COURT:  The first thing I want to ask is about

14      your answer to the hardship question.

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  You talked about child care.

17          THE PROSPECTIVE JUROR:  Yes.  I have a seven-year

18      old daughter who I pick up from school every day.  And if the

19      trial goes until 4:30 every day, I won't make it there.

20          THE COURT:  And there is no one else who can do

21      that?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  You don't have any other family members?

24          THE PROSPECTIVE JUROR:  No.  My mom is gone and my

25      mother-in-law is already raising my sister-in-law's three

1  children.

2          THE COURT:  And you couldn't get a babysitter or a

3  neighbor?

4          THE PROSPECTIVE JUROR:  I'm actually picking my

5  daughter up at aftercare at that point, which is also 4:30 in

6  the afternoon.  So school ends for her at 3:00.  Actually,

7  2:55, and I pick her up at 4:30 when I leave work.  And my

8  wife is a nurse and she doesn't get home until 6:00 at night.

9          THE COURT:  Right.  Okay.  So you would need to pick

10 up your daughter at 4:30 every day?

11         THE PROSPECTIVE JUROR:  Mm-hm.

12         THE COURT:  All right.  Thank you for letting us

13 know about that.

14         MR. DE CASTRO:  No objection, Judge.

15         MS. KOMATIREDDY:  No objection, Judge.

16         THE COURT:  So you are excused.

17         THE PROSPECTIVE JUROR:  Thank you very much.

18         THE COURT:  Thank you very much.  Go back down to

19 the second floor.

20         (Prospective Juror No. 22 exits.)

21         THE COURT:  Juror No. 23, I will ask about question

22 71, about being paid.

23         MR. DE CASTRO:  Yup.

24         THE COURT:  And 44.  And I think that's it.

25         MR. DE CASTRO:  That's what we have.

1          MS. KOMATIREDDY:  37, Your Honor.

2          THE COURT:  37?  You want to know about the prior

3     jury service?

4          MS. KOMATIREDDY:  Yes, Your Honor.  Thank you.

5          THE COURT:  What do you want to know about it?

6          MS. KOMATIREDDY:  Just if she could speak about it.

7     It says that there was not a verdict.  I'm curious if that was

8     because the case settled and pled out, or just the reason.

9          THE COURT:  Okay.  So you want to know why there was

10    no verdict?

11         MS. KOMATIREDDY:  Right.

12         THE COURT:  All right.  Juror No. 23, please.

13         (Prospective Juror No. 23 enters.)

14         THE COURT:  Good morning, Juror No. 23.  You can

15    come right on up to the podium.  You can just stand there.

16    You can put your bag on the chair.  And you could keep your

17    mask on, if you're more comfortable, or you can take it off.

18         THE PROSPECTIVE JUROR:  All right.  Sure.

19         THE COURT:  So we had a couple of followup questions

20    based on the answers that you gave.

21         And the first is that you said that you weren't sure

22    if you would be paid for jury duty.  Can you tell us about

23    that?

24         THE PROSPECTIVE JUROR:  Yes.  Because the school I

25    work at, I'm not sure if they -- if they're going to count

1   this as one of my sick days or -- I'm not really sure how it

2   works.  I'm not sure.

3            THE COURT:  Is it a public school?

4            THE PROSPECTIVE JUROR:  No.  Private school.

5            THE COURT:  So can you find out?

6            THE PROSPECTIVE JUROR:  Yes.

7            THE COURT:  Why don't you ask them and find out, if

8   you're sitting on a trial for eight weeks, whether they would

9   pay you.

10            THE PROSPECTIVE JUROR:  I can ask them whenever I go

11   back up to -- tomorrow, for example, I will ask them about

12   that.

13            THE COURT:  Okay.  Great.

14            But other than the pay, it would be okay for you to

15   sit on the jury --

16            THE PROSPECTIVE JUROR:  Yes.

17            THE COURT:  -- for eight weeks?

18            Okay.  You also mentioned that you had been on a

19   jury before and that you didn't reach a verdict.  Do you know

20   why you didn't?  Did you not deliberate or what happened?

21            THE PROSPECTIVE JUROR:  No.  It was only one day.  I

22   was dismissed at the end of the day and they said that's it.

23            THE COURT:  I see.

24            So you were an alternate juror?

25            THE PROSPECTIVE JUROR:  No.

1          THE COURT:  No?

2          THE PROSPECTIVE JUROR:  I'm not sure what's an

3   alternate juror.

4          THE COURT:  You said you were dismissed before the

5   trial ended?

6          THE PROSPECTIVE JUROR:  No.  It was from 8:00 to

7   5:00.

8          THE COURT:  Oh.  You just came in for jury duty?

9          THE PROSPECTIVE JUROR:  Yeah.

10          THE COURT:  But you weren't picked for the jury?

11          THE PROSPECTIVE JUROR:  No, no.

12          THE COURT:  So you never heard evidence?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Okay.  Great.  Thank you for the

15   clarification.

16          You also mentioned you have a brother who applied

17   for the NYPD?

18          THE PROSPECTIVE JUROR:  Yeah.

19          THE COURT:  And he's currently applying; is that

20   right?

21          THE PROSPECTIVE JUROR:  Yeah.

22          And he just got one more step, which is the physical

23   exam, I believe.  Yeah.  And that's -- I believe that's the

24   last step in the process.

25          THE COURT:  So the fact that your brother is

1   applying to become a police officer, do you think you can be

2   fair to law enforcement and not -- let's put it this way.

3           If a person who testified was a law enforcement

4   officer, would you treat that testimony the same as anybody

5   else or would you automatically believe that person because

6   the witness is law enforcement?

7           THE PROSPECTIVE JUROR:  No, I would treat them as

8   everyone else.

9           THE COURT:  Treat the same as everyone else?

10          THE PROSPECTIVE JUROR:  Yeah.

11          THE COURT:  And you would assess their credibility

12  just like anybody else, not just because they're a police

13  officer you would think one way or the other?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  And in a case that involves an

16  accusation by the government and there will be law enforcement

17  witnesses testifying and then the other side is a defendant,

18  would you be fair to both sides?

19          THE PROSPECTIVE JUROR:  I would, yes.

20          THE COURT:  Okay.  Great.

21          Is there any reason you could not be a fair juror in

22  this case?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  All right.  Great.

25          So why don't you find out about whether you will get

1  paid for those eight weeks, if you got picked to serve on this

2  jury for eight weeks, and let the jury office on the second

3  floor know.

4          THE PROSPECTIVE JUROR:  Do I give them a call right

5  now or do I go tomorrow and let you guys --

6          THE COURT:  If there is a way for you to call them

7  now and we can get the answer today.  But otherwise, you can

8  let them know tomorrow.

9          THE PROSPECTIVE JUROR:  Okay.  So I'll go to the

10 lobby, get my phone and then come back, you said to the second

11 floor?

12         THE COURT:  Okay, yes.  Do that, please.

13         THE PROSPECTIVE JUROR:  Sure.  Thank you.

14         THE COURT:  Actually, after you call them, come

15 back, let the people on the second floor -- why don't you come

16 back here and let one of my staff know and they will let me

17 know.  You don't have to stop on the second floor.

18         THE PROSPECTIVE JUROR:  You said eight weeks, right?

19         THE COURT:  Eight weeks, yes.

20         THE PROSPECTIVE JUROR:  Okay.

21         THE COURT:  Thank you.

22         (Prospective Juror No. 23 exits.)

23         THE COURT:  All right.  Juror No. 26 gave a lot of

24 "yes" answers.

25         Hardship answers about being paid five days, a

1    lawyer in a small firm.

2              Has worked for the Innocence Project.

3              Has views on the War on Drugs.

4              Question 49, might have some skepticism about the

5    government.

6              Anything else?

7              MR. DE CASTRO:  I have no problem, Judge.

8              THE COURT:  All right.  Let's bring Juror No. 26 in.

9              MR. DE CASTRO:  Judge, I don't have any problem.  We

10   have -- I mean, there's so many questions on this, I mean, but

11   the hardship itself, I don't know.

12             MS. KOMATIREDDY:  If he has no objection, we don't

13   object to striking.

14             MR. DE CASTRO:  No objection.

15             THE COURT:  So we'll strike this juror.

16             Let me bring in Juror No. 26 so I can let her know

17   she will be excused.

18             (Prospective Juror No. 26 enters.)

19             THE COURT:  Hi.  Juror No. 26?

20             THE PROSPECTIVE JUROR:  Hi.

21             THE COURT:  Hi.

22             Don't bother walking up.  You're excused.

23             THE PROSPECTIVE JUROR:  Oh, thank you.

24             THE COURT:  You can go down to the second floor.

25             (Prospective Juror No. 26 exits.)

1         THE COURT:  So Juror No. 27.

2         MR. DE CASTRO:  We have 40, 44, 45, 47, 62.  There's

3    some -- the person actually used the explanation sheet, so

4    there's a whole on that.

5         THE COURT:  Okay.

6         For the government, anything in particular?

7         Retired, Sanitation Department.

8         All right.  Juror No. 27.

9         (Prospective Juror No. 27 enters.)

10        THE COURT:  Hi, Juror No. 27.  Come up to the

11   podium, please.

12        Right up here.

13        Here, here.  Here, sir.

14        THE PROSPECTIVE JUROR:  In this one?

15        THE COURT:  The podium.

16        THE PROSPECTIVE JUROR:  Oh.  Oh, okay.

17        THE COURT:  Try to make it easy for you.

18        THE PROSPECTIVE JUROR:  I didn't know I was going to

19   be a star here.

20        THE COURT:  No, that's fine.

21        You can take your mask off if you're more

22   comfortable.

23        So we just have a couple of followup questions for

24   you based on the answers you gave.

25        THE PROSPECTIVE JUROR:  Okay.  Sure.

1          THE COURT:  And I'll start with the answer that you

2    gave with regard to a cooperating witness.  You said you would

3    find it hard to accept only one witness?

4          THE PROSPECTIVE JUROR:  Correct.

5          THE COURT:  Especially a cooperating witness.

6          Can you tell us about that?

7          THE PROSPECTIVE JUROR:  Yes.  I just feel like if

8    it's a cooperating witness, from what I recall that would be

9    someone that could have made a deal to testify, so I --

10   basically I just feel that that person could be there for

11   their own purpose.  So I feel like I would need a couple of

12   witnesses and I'm a little wary about a cooperating witness.

13         THE COURT:  Right, right.  Well, you know, there

14   will be many witnesses who testify.

15         THE PROSPECTIVE JUROR:  Correct.  I can see that

16   from the list.

17         THE COURT:  And for every person who testifies,

18   you're supposed to assess the credibility of that witness and

19   among the things you can consider is whether the person has a

20   motive to lie.

21         THE PROSPECTIVE JUROR:  Right.

22         THE COURT:  And so if you consider that as part of

23   your consideration of a cooperating witness's testimony,

24   that's perfectly fine.

25         THE PROSPECTIVE JUROR:  Okay, yes.

1        THE COURT:  The only question is -- the law says
2   that testimony of one witness could be enough.  It doesn't
3   have to be, but it could be.  And so the question is whether
4   you would follow the law.
5        THE PROSPECTIVE JUROR:  Yes, I could do that.  Yes.
6        THE COURT:  Okay.  So if there was one witness who
7   was a cooperating witness who testified, would you still
8   require corroborating evidence or could that be enough
9   evidence in your mind?
10       THE PROSPECTIVE JUROR:  Well, I guess I don't know
11  if we would be able to find out if -- why they were
12  cooperating.  I don't know if that's something that would be
13  made public or to the jurors.
14       THE COURT:  Yes, I'm sure the circumstances of that
15  testimony will be a topic of evidence.
16       THE PROSPECTIVE JUROR:  Okay.
17       THE COURT:  So you would have access to the evidence
18  about the circumstances of the cooperation.
19       THE PROSPECTIVE JUROR:  Okay.  In that case I think
20  I could be fair.
21       THE COURT:  So even if there was only one witness
22  who testified, if you found that witness credible and you
23  found that the government proved its case beyond a reasonable
24  doubt, that would be enough?
25       THE PROSPECTIVE JUROR:  I think so.

1        THE COURT:  All right.  So then let me ask you about

2   a couple of other things.

3        You said that you had a neighbor who worked for the

4   New York Law Department, you have a friend who was a lawyer,

5   another friend -- or maybe it's the same friend -- a friend

6   who was mugged, and a friend who worked at the Border Patrol

7   and is deceased.

8        THE PROSPECTIVE JUROR:  Right.

9        THE COURT:  Would any of these ties with law

10  enforcement -- let's start there.

11       Would any ties with law enforcement affect your

12  ability to be fair and impartial?

13       THE PROSPECTIVE JUROR:  No, I don't think so.  And I

14  think that's what I put on my questionnaire.

15       THE COURT:  Okay.  And so if there was a witness who

16  was testifying who is law enforcement, would you automatically

17  believe that person or not believe the person just because he

18  or she is law enforcement?

19       THE PROSPECTIVE JUROR:  No, I think I would probably

20  treat them the same as I would a cooperating witness.  You

21  know, if I felt like they were telling the truth, then, you

22  know, following the law, I feel like I could be impartial.

23       THE COURT:  And then as far as your friend who is a

24  lawyer, did you ever talk about criminal law?

25       THE PROSPECTIVE JUROR:  No.  No, not really.

1          THE COURT:  The question there would be if

2     Judge Cogan instructed you on what the law is and you heard

3     something different from this friend, whether you would follow

4     Judge Cogan's instruction?

5          THE PROSPECTIVE JUROR:  No, no, we never discuss --

6     I just know it was family and I know he works for the City Law

7     Department.  So yeah, so I never discussed law with him.

8          THE COURT:  So you would follow Judge Cogan's

9     instructions?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Okay.  Great.

12          Is there anything that you think the Court should

13     know about that would make you not be fair and impartial?

14          THE PROSPECTIVE JUROR:  No.

15          Actually, I just have a question in terms of COVID

16     protocol.

17          THE COURT:  Yes.

18          THE PROSPECTIVE JUROR:  If I'm selected for the

19     jury, do -- I know in some cases I guess they mandate that you

20     have to wear a mask, so I'm a little concerned about that.  So

21     I don't know if that would be something that it would be up to

22     Judge Cogan to decide if people have to wear masks depending

23     where they are.  So far -- knock on wood, so far I haven't had

24     COVID.  So I'm getting older, so.

25          THE COURT:  Sure.  And we hope it stays safe and

1  we're taking a lot of precautions.  We ask jurors to have

2  their masks during the jury selection because you're in closed

3  quarters.  It will be up to Judge Cogan, but I anticipate that

4  if you have concerns about COVID safety, you can raise them

5  with him.

6              THE PROSPECTIVE JUROR:  Okay.

7              THE COURT:  Okay?

8              Any other questions?

9              THE PROSPECTIVE JUROR:  No, I think that's about it.

10              THE COURT:  Wonderful.

11              Any followup?

12              MS. KOMATIREDDY:  Page 25, Your Honor.

13              THE COURT:  So you also said that you weren't sure

14  why Mr. Luna is being tried in the United States?

15              THE PROSPECTIVE JUROR:  Correct.

16              THE COURT:  You're assuming he was involved in

17  illegal enterprises while living in the U.S., but you're not

18  sure?

19              THE PROSPECTIVE JUROR:  Right.  I was just curious.

20  I don't know if that's something that would be part of -- you

21  know, apparently it wasn't on the questionnaire, so I'm just

22  curious.  And if you could answer it, you could answer it.  If

23  you can't --

24              THE COURT:  So you'll hear evidence at trial of

25  where things happened.

Prospective Juror No. 27                    106

1          THE PROSPECTIVE JUROR:  Okay.

2          THE COURT:  But whether the case is properly tried

3    in the United States has already been decided that it's proper

4    to be tried here.

5          THE PROSPECTIVE JUROR:  Okay.

6          THE COURT:  There will be evidence about things that

7    happened in different places.  Judge Cogan will instruct you

8    as far as what you need to find in order to, you know, make

9    certain findings in your verdict.  So you'll be instructed on

10   that.

11         THE PROSPECTIVE JUROR:  Okay.

12         THE COURT:  Do you think you could follow that?

13         THE PROSPECTIVE JUROR:  Yes, yes.  I was just

14   curious.

15         THE COURT:  Okay.  So whatever Judge Cogan tells

16   you, even if things happened outside of the United States,

17   they might still be properly prosecuted here.

18         THE PROSPECTIVE JUROR:  Yes.  I'm sure if it's going

19   on here, it must have been okay to...

20         THE COURT:  Yes.  Okay.  So just the jurisdictional

21   question has been decided.  The other things will be up to

22   you.

23         THE PROSPECTIVE JUROR:  Okay.

24         THE COURT:  Okay?

25         Anything else?

1          Wonderful.  Thank you very much.  You can have a

2   seat back in the other room.

3          THE PROSPECTIVE JUROR:  Okay.  In the other room?

4          THE COURT:  Yes.

5          THE PROSPECTIVE JUROR:  Okay.  Thank you.

6          (Prospective Juror No. 27 exits.)

7          THE COURT:  Juror 28 also has a lot of answers.

8          Anything you want me to focus on?

9          MR. DE CASTRO:  36, 39, 40, 42, 43, 44, 45, 47.  Oh,

10  maybe not 45.  48, 56, 58.

11         THE COURT:  Okay.  So I'll go through those

12  questions.

13         In the meantime, Juror 23 has an answer, so we will

14  have that juror called back after this one.

15         MS. KOMATIREDDY:  Your Honor, on Juror 28, we'd also

16  add 62(b).

17         THE COURT:  Yes.

18         Okay.  Juror No. 28.

19         (Prospective Juror No. 28 enters.)

20         THE COURT:  Hi, Juror No. 28.  Come up to this

21  podium.  You can put your bag and coat on the chair if you

22  would like.

23         THE COURTROOM DEPUTY:  This podium.

24         THE COURT:  Overshot.  There.

25         Okay.  How are you doing?

1          THE PROSPECTIVE JUROR:  Good.  Thank you,

2    Your Honor.

3          THE COURT:  Good.

4          So we just had a couple of followup questions based

5    on the answers that you gave on the questionnaire.

6          THE PROSPECTIVE JUROR:  Sure.

7          THE COURT:  You mentioned that you have some family

8    members who are in law enforcement.

9          So my first question is whether you can be fair and

10   impartial to both sides in a criminal prosecution case.

11         THE PROSPECTIVE JUROR:  I would hope.

12         THE COURT:  You would hope?

13         Do you think you can?

14         THE PROSPECTIVE JUROR:  Yeah.  I mean, yeah, you

15   know.

16         THE COURT:  Do you have any concerns?

17         THE PROSPECTIVE JUROR:  I -- well, I have a

18   background in certain things.  And, you know, I pride myself

19   on being fair and just, but it doesn't mean that we don't have

20   our own biases.  I mean, it seems very black and white, some

21   of the questions, and I don't mean to go into a gray area,

22   but.

23         THE COURT:  Sometimes there is a gray area and

24   that's fair.  We just want you to be as open with us as

25   possible because it's important to know.

1           You mentioned that you had been a police officer

2    yourself?

3           THE PROSPECTIVE JUROR:  I was.

4           THE COURT:  And so do you think, having been a

5    police officer involved in law enforcement, you could be fair

6    in a criminal prosecution where an individual is being accused

7    of --

8           THE PROSPECTIVE JUROR:  I would certainly challenge

9    myself to that, yes.

10          THE COURT:  Okay.

11          And if there were a witness who were law

12   enforcement, would you give that witness the same weight as

13   witness's testimony -- the same as any other witness or would

14   you give it more weight?

15          THE PROSPECTIVE JUROR:  Well, I would find it to be

16   a more informed witness than somebody who didn't have a law

17   enforcement background.

18          THE COURT:  All right.  But you are only going to

19   hear in court what they testify to.

20          THE PROSPECTIVE JUROR:  Right.

21          THE COURT:  So would you then believe them more

22   because they're law enforcement?

23          THE PROSPECTIVE JUROR:  I'm sorry?

24          THE COURT:  Would you believe them more than

25   somebody else who was not law enforcement?

Prospective Juror No. 28                          110

1          THE PROSPECTIVE JUROR:  I don't know if I would

2    believe them more, but I would think that their witnessing

3    would have more information that would be privy to a witness

4    that couldn't have that sort of information.

5          THE COURT:  Right.

6          THE PROSPECTIVE JUROR:  Yeah.

7          THE COURT:  And certainly if they were asked about

8    it, they would tell you what they know and where they got

9    access to that information.  But if they weren't asked about

10   it, would you just assume that they knew more?

11         THE PROSPECTIVE JUROR:  Yes, I would.  Because I

12   think they would be privy to information that somebody

13   wouldn't ordinarily have.  At least that's been my -- you

14   know, that's been my experience for people who are in law

15   enforcement.

16         THE COURT:  Okay.  Thank you for letting us know

17   about that.

18         You also talked about working in the mental health

19   and substance abuse area.

20         THE PROSPECTIVE JUROR:  That's right.

21         THE COURT:  You would have concerns about sitting in

22   judgment of others?

23         THE PROSPECTIVE JUROR:  In something that was a drug

24   case or something that has to do with that, I definitely have

25   certain feelings around that.  I have been an LCSW.  I'm a

1    director of a mental health clinic and also substance abuse

2    for over 30 years, so I do have some feelings surrounding

3    things that have to do with drugs.  Not that I don't take the

4    individual and make them solely responsible for their own

5    recovery, but I certainly do have certain feelings surrounding

6    the idea of people that flood our streets with drugs, yeah.

7              THE COURT:  So you have feelings about drugs and

8    their effect on society --

9              THE PROSPECTIVE JUROR:  Right.

10             THE COURT:  -- and the harm, as you mentioned, that

11   it causes.  Would that affect your ability to be fair in this

12   particular case where an individual has been accused of drug

13   trafficking and being involved in drug trafficking,

14   notwithstanding your general feelings whether you can be fair

15   in this case?

16             THE PROSPECTIVE JUROR:  I don't think I could be

17   completely bias -- I mean, completely neutral to something.  I

18   mean, I would have my own feelings and I would hope -- and

19   again, to just speak what I said before, I would hope that I

20   could challenge myself to being able to give sort of an

21   evenness, if you will, onto something like that.  But I mean,

22   do have certain feelings surrounding just because of the kind

23   of work that I've done and due to the devastation that I've

24   seen especially in and around addictions.

25             THE COURT:  Right.  Okay.  And I know it's a hard

1    question and I keep asking it.

2              THE PROSPECTIVE JUROR:  Right.

3              THE COURT:  But you know yourself better than

4    anyone.

5              So the question --

6              THE PROSPECTIVE JUROR:  I challenge myself to my own

7    biases.  But I mean it's 30 years of conditioning --

8              THE COURT:  Sure.

9              THE PROSPECTIVE JUROR:  -- in a field that, you

10   know, I happen to love.

11             THE COURT:  And that's terrific.  That's great that

12   people love their work.  And so certainly you have strong

13   feelings about things.

14             THE PROSPECTIVE JUROR:  Yeah.

15             THE COURT:  But the question is whether you can set

16   aside the feelings to assess the evidence in this case against

17   this particular individual based on this particular evidence.

18             THE PROSPECTIVE JUROR:  Yeah, I -- I would hope so.

19   I would hope that I could -- if I was sitting on a jury that I

20   could render a fair and impartial thought.  But I also know

21   that there's a challenge around that, yeah.

22             THE COURT:  If you were accused of a drug

23   trafficking crime, would you want you to be on the jury?

24             THE PROSPECTIVE JUROR:  Say that again?  I'm sorry.

25             THE COURT:  Would you want a person like you to be

1   on a jury if you were to stand at trial?

2            THE PROSPECTIVE JUROR:  Probably not.

3            THE COURT:  No?  Why not?

4            THE PROSPECTIVE JUROR:  Just for all the things I

5   mentioned before.  If I knew that about the person that was on

6   the jury, I'm not sure that I would be completely comfortable

7   with somebody with my background.

8            THE COURT:  So are you saying you couldn't set

9   aside --

10           THE PROSPECTIVE JUROR:  I'm not saying I couldn't.

11   You asked me --

12           THE COURT:  Sure.

13           THE PROSPECTIVE JUROR:  -- a sort of hypothetical

14   question.

15           THE COURT:  Right.

16           THE PROSPECTIVE JUROR:  And again, could I sit on a

17   jury and render a fair and impartial verdict to somebody, I

18   would try to listen to what was going on in court.  I'm

19   certainly not going to come in -- I may come -- I shouldn't

20   say that.  I may not come in or I may come in with

21   preconceived notions about certain things, especially things

22   around crime and drugs.  Having said that, I don't think that

23   that would be the total sum of what would be going on in court

24   and I would certainly try to be paying attention to the things

25   that were going on in court.

1           THE COURT:  Right.

2           THE PROSPECTIVE JUROR:  As well as understanding

3    that I do have some biases while I'm working on those.

4           THE COURT:  Right.

5           THE PROSPECTIVE JUROR:  I mean, I've been in

6    recovery for over 34 years, so certainly I look at myself and

7    I take my own daily inventory on a regular basis.  So, you

8    know, that may be an advantage, but to say that I wouldn't

9    come in here with certain preconceived, given my background

10   and stuff, I can't say that.

11          THE COURT:  Right.

12          THE PROSPECTIVE JUROR:  I couldn't honestly say

13   that.

14          THE COURT:  Sure.  I appreciate your candor.

15          It's also a question of whether you can -- everybody

16   has feelings.  Some people have very strong feelings.  It's a

17   question of whether you can set them aside.  And it's one

18   thing to try.  But like I said, you know yourself better than

19   us, so I don't know how successful you would be, so I'm

20   asking.

21          THE PROSPECTIVE JUROR:  I'm not sure.

22          THE COURT:  You're not sure.

23          THE PROSPECTIVE JUROR:  I hope that I would be.

24          THE COURT:  Okay.  All right.  That's fine.

25          So let me just see.  You had talked about

1   cooperating witnesses and you said that you had some concerns

2   about whether they would be truthful.

3             THE PROSPECTIVE JUROR:  I'm sorry, say it again?

4             THE COURT:  You said you believe cooperating

5   witnesses testimony less.

6             THE PROSPECTIVE JUROR:  Yeah.  I guess I think when

7   somebody is being made a deal, you know, I would have to

8   question.  And I would certainly like to have that exposed out

9   in a courtroom situation to see exactly where they're -- how

10  is it that they were actually witnessing something.  Because

11  they're being offered a deal of some sort, so certainly I

12  think that there's a driving force to them being on whoever's

13  side that they happen to be on.  So yeah, I do question

14  sometimes the idea of cooperating witnesses.

15            THE COURT:  Right, right.

16            THE PROSPECTIVE JUROR:  I love that expression, by

17  the way.

18            THE COURT:  But for every witness who testifies, the

19  juror needs to make a credibility assessment.

20            THE PROSPECTIVE JUROR:  Absolutely.

21            THE COURT:  To believe or not believe.

22            THE PROSPECTIVE JUROR:  That's absolutely true.

23  Every witness, yeah.  Just because somebody is coming in here

24  and not supposedly receiving something, I don't know what

25  their motive might be anyway.

1      THE COURT:  Right.  And certainly you will be

2  presented information about the person's motive and you can

3  assess that and take that into account in assessing

4  credibility.

5          THE PROSPECTIVE JUROR:  Yes.  And that's what I

6  meant by trying to take in a bigger picture in the court, the

7  trial.

8          THE COURT:  All right.  Great.

9

10         (Continued on the next page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Continuing.)

2          THE COURT:  Do you have any concerns about being

3    fair and impartial if you were picked to sit as a juror in

4    this case?

5          THE POTENTIAL JUROR:  I think I'm a fair and

6    impartial person, but I do think I have certain feelings about

7    things that touch me very personally.

8          THE COURT:  Right.

9          THE POTENTIAL JUROR:  You know, and, you know, drugs

10   and that kind of crime, it does touch me on a more personal

11   basis.

12         MS. KOMATIREDDY:  No objection, Your Honor.

13         MR. DE CASTRO:  No objection.

14         THE COURT:  All right, then.  Thank you very much.

15   You're excused.  You can go back to the second floor.  Thank

16   you.

17         (Prospective Juror number 28 exits.)

18         THE COURT:  As the parties can see, I will usually

19   keep asking questions until I hear no objection.  So if you

20   want to cut the questions short, please --

21         MR. DE CASTRO:  I think on that one you knew what

22   other position would be.  I didn't want to bother -- I didn't

23   want to interrupt.

24         THE COURT:  No, I just wanted to let you know I will

25   just keep asking because I feel like I should keep probing.

1  But at any point you feel comfortable jumping in, feel free.

2  Juror No. 23 wanted to come back and tell us.

3           (Prospective juror number 23 enters.)

4           THE COURT:  Hi, Juror No. 23.  Thank you so much for

5  contacting your employer.  You said you have an answer for us

6  now?

7           THE POTENTIAL JUROR:  Yeah.  They said either do it

8  three days max or whatever the legal days are.

9           THE COURT:  Three days max or?

10          THE POTENTIAL JUROR:  Whatever the legal days are.

11          THE COURT:  Whatever the legal days are?

12          THE PROSPECTIVE JUROR:  Yeah, that's what she said.

13          THE COURT:  I'm not entirely sure if there's a

14  legally-mandated amount of time.  Do the parties know?

15          MS. KOMATIREDDY:  I think if the Court informs them

16  it's an eight-week trial, that that's what the length of

17  service will be, I think that that's fine.

18          THE COURT:  All right.  Thank you very much.  Just

19  go back.

20          THE POTENTIAL JUROR:  Sure.

21          (Prospective juror number 23 exits.)

22          THE COURT:  So your understanding is that if the

23  Court says she's picked for an eight-week trial, that they

24  won't pay if they've committed to quote, unquote the legal

25  time?

1       MR. DE CASTRO:  I've never seen that.  I don't think

2   you can mandate an employer -- it's not public school, it's

3   private school.  I think she's in private school.

4       THE COURT:  I think she said private school.  I'm

5   not entirely sure, but that's all the juror had as

6   information.

7       MR. DE CASTRO:  I'm not sure.

8       MS. KOMATIREDDY:  What I've seen in the past,

9   Your Honor, is that the judge will inform -- will either call

10  for I've Judge Garaufis do this, call the employer, say this

11  is the length of the trial, this is what they expect, and

12  usually they comply.

13      THE COURT:  Okay.  I think it would be nice to have

14  some certainty so we're not misunderstanding.

15      MR. DE CASTRO:  Because it sounds like, Judge, what

16  the witness was told was, we will pay what we're required to

17  pay you.  So if that's the case and there's no legal

18  requirement under the Department of Labor, the last thing we

19  want to do is five days in, she's like, oh my god, I can't pay

20  my rent.

21      THE COURT:  That's my concern.  So I wanted to get a

22  commitment in advance because what the legal amount, as we've

23  discussed, I don't know that there's a statutory legal amount,

24  but if the legal amount is what the Court orders, then that

25  would be fine.  So --

1           MR. DE CASTRO:  What I -- and I don't think there

2    is -- I don't think there is a -- an employer is mandated to

3    pay for a certain amount.  That's why they also pay -- there's

4    that nominal fee.

5           THE COURT:  Exactly.  I would hate to have her come

6    back.  Can you just have Juror No. 23 come back.

7           And in the meantime, Juror 29, what would you like

8    me to focus on?

9           MR. DE CASTRO:  I have 40, 56, and I think 71.  This

10   is Juror No. 29, right?

11          THE COURT:  Yes.

12          MS. KOMATIREDDY:  We have nothing further,

13   Your Honor.

14          THE COURT:  Okay.

15          (Prospective juror number 23 enters.)

16          THE COURT:  Sorry to call you back.  I just want to

17   be clear because we're concerned about getting a clearer

18   answer from your employer.  So can you call your employer back

19   and just say this trial is going to last for two months, eight

20   weeks, and just confirm that if the Court tells them that,

21   that they will pay you for that time?  Because when you said

22   legal time --

23          THE POTENTIAL JUROR:  Yeah.  She said whichever

24   period is -- she said either three days or whatever the legal

25   period is.

1          THE COURT:  Right, but we don't know what the

2    employer means by legal period.  There's no statute that says

3    you have to pay X amount.  So we're just concerned about your

4    employer understanding what it is.  And if they can pay you

5    for the eight weeks of the trial, that's great, but if they

6    tell us, oh, we thought we only had to pay five days or

7    something like that, then we would be a little more worried.

8          THE PROSPECTIVE JUROR:  I asked her about eight

9    weeks.  She said no, we're not going to pay eight weeks.

10          THE COURT:  Okay.

11          THE POTENTIAL JUROR:  That's what she said.  Then

12    she clarified more and said it's either three days or whatever

13    the legal days are.  So I thought there was a minimum amount

14    of days.

15          THE COURT:  That's what it sounds like your employer

16    thinks as well.  They said they will not pay eight weeks?

17          THE POTENTIAL JUROR:  I asked her straightforward,

18    will you guys pay me if I stay up to eight weeks.  She said

19    no.

20          MR. DE CASTRO:  No objection.

21          MS. KOMATIREDDY:  No objection.

22          THE POTENTIAL JUROR:  Should I call them --

23          THE COURT:  No, that's clear.  You're excused.  Go

24    back to the second floor.  Thank you so much for all that

25    extra work.

1            (Prospective juror number 23 excused.)

2            THE COURT:  All right.  Juror 29.

3            (Prospective juror number 29 enters.)

4            THE COURT:  Come up to the podium here.  How are you

5    doing?

6            THE POTENTIAL JUROR:  Good, thank you.

7            THE COURT:  We just had some questions following up

8    on the answers you gave on the questionnaire.  You indicated

9    that your brother and father were mugged in the early 80s.

10           THE PROSPECTIVE JUROR:  Yeah.

11           THE COURT:  And the police report was filed and

12   nothing happened.  Do you think that would affect your ability

13   to be fair in this case, which is a criminal case?

14           THE POTENTIAL JUROR:  Probably not.

15           THE COURT:  All right.  You said probably not.  Do

16   you have any concern about it?

17           THE POTENTIAL JUROR:  I mean, they -- they didn't do

18   anything, so.

19           THE COURT:  Okay.  "They" meaning who?

20           THE POTENTIAL JUROR:  The cop -- police.

21           THE COURT:  Police, all right.  Do you think the

22   fact that the police didn't do anything affects your view --

23   affects your ability to be fair in a case that involves law

24   enforcement?

25           THE POTENTIAL JUROR:  I don't think so.

1          THE COURT:  No?

2          THE POTENTIAL JUROR:  I don't think so.

3          THE COURT:  You also said that you feel like

4    marijuana should not have been legalized.  Can you talk about

5    that?

6          THE PROSPECTIVE JUROR:  Yeah.  To me, it's still a

7    drug.  I mean, again, in my opinion, just my opinion, I think

8    legalizing is probably is going to increase more usage of it.

9          THE COURT:  Okay.  And does your view of drug use

10   affect your ability to be fair in a case that involves

11   allegations of drug trafficking?

12         THE POTENTIAL JUROR:  No.

13         THE COURT:  You also indicated you weren't sure if

14   you would get paid if you were to sit on this jury.

15         THE POTENTIAL JUROR:  I haven't checked.

16         THE COURT:  Can you check with your employer?

17         THE PROSPECTIVE JUROR:  Yeah.

18         THE COURT:  It says here it's a financial company?

19         THE POTENTIAL JUROR:  Yes.

20         THE COURT:  So why don't you get your phone and call

21   them and just find out -- if this jury that you're being

22   considered for is eight weeks, it's two months long, so I just

23   want to know if they'll pay you.

24         THE POTENTIAL JUROR:  Yeah, that's the other

25   problem.  I didn't know it's eight weeks.  I do take care of

1   my elder mom.

2          THE COURT:  Okay.  So tell me about that.

3          THE POTENTIAL JUROR:  She lives very close to my

4   house, like, five minutes, so I do take care of her.

5          THE COURT:  And this is an elderly parent?

6          THE POTENTIAL JUROR:  Yeah, my mom.

7          THE COURT:  What kind of care does your mom need?

8          THE PROSPECTIVE JUROR:  She has diabetes and blood

9   pressure, so.

10          THE COURT:  How often do you take care of her now?

11          THE PROSPECTIVE JUROR:  I mean, whenever she needs

12   it.

13          THE COURT:  And when you're at work, what happens?

14          THE PROSPECTIVE JUROR:  Two days, I go to work and

15   then my sister-in-law will take care of her, but she works

16   also.

17          THE COURT:  So you said you work two days?

18          THE POTENTIAL JUROR:  Yeah.

19          THE COURT:  Okay.  And you take care of her the

20   other three days -- or the other five days?

21          THE POTENTIAL JUROR:  Yeah, I'm working from home so

22   if she calls me, then I will just go.

23          THE COURT:  And if you were to sit on this jury,

24   would there be --

25          THE POTENTIAL JUROR:  I think eight weeks, probably.

1          THE COURT:  There's nobody else who could take

2     care --

3          THE POTENTIAL JUROR:  No.  Like I said, my

4     sister-in-law works also, so.

5          THE COURT:  So, I'm just trying to think.  If you're

6     only working two days max --

7          THE POTENTIAL JUROR:  Two days, I'm working from

8     home.

9          THE COURT:  Oh, I see.

10         THE POTENTIAL JUROR:  So I can go at any time.

11         THE COURT:  What kind of care does she need?  Is it

12    she'll call you because she needs assistance, or?

13         THE POTENTIAL JUROR:  Yeah, she needs assistance,

14    insulin, checking on sugar, those kinds of things.

15         MR. DE CASTRO:  No objection, Your Honor.

16         THE COURT:  I heard a no objection?

17         MR. DE CASTRO:  That's from us.

18         MS. KOMATIREDDY:  We would like follow-up,

19    Your Honor.

20         THE COURT:  Okay.  Can you step outside for a

21    moment?  I just want to talk to the lawyers.

22         THE POTENTIAL JUROR:  Okay.

23         (Prospective Juror number 29 exits.)

24         THE COURT:  Okay.

25         MS. KOMATIREDDY:  Your Honor, it sounds like this

1    can be covered.  One of the Fridays we don't sit, he'll be

2    there for that day.  And with respect to the others, it's not

3    a situation which it's constant care.  It is a check-in as

4    needed.  It doesn't sound like it's that frequent.  It sounds

5    like others can do that.

6            It's also not clear to me why it should make a

7    difference, with respect to that reason, it's not clear to me

8    why it should make a difference if the trial is eight weeks.

9    If the trial were shorter, he seemed to be willing to do it

10   despite his mother's situation, but when you said eight weeks,

11   is when he raised that concern.

12           MR. DE CASTRO:  Judge, I think what he's saying is

13   that it's more likely that she is going to be calling me if

14   I'm here for eight weeks, than if it's just a couple of weeks,

15   and my sister-in-law can fill in.  He has to go -- I need my

16   insulin -- I forget where he lives.  We're not just going to

17   be able to drop the trial day and go run for him to go, you

18   know --

19           THE COURT:  It says Nassau.

20           MR. DE CASTRO:  Yeah, Nassau.  So go all the way out

21   to Long Island to try to give her a shot or try to find

22   somebody.  I just think it doesn't make much sense.

23           MS. KOMATIREDDY:  I would also note, Your Honor,

24   he's married and has two adult children.

25           THE COURT:  And therefore?

1          MS. KOMATIREDDY:  And, therefore, there are others

2     in his family that can play this role.

3          THE COURT:  How do we know they live nearby?

4          MS. KOMATIREDDY:  We don't, Your Honor, but we can

5     inquire.

6          THE COURT:  Let me find out about the days he's

7     working now because the Friday issue is a good point.  And he

8     also doesn't know if he'll get paid, so that's still an

9     outstanding question.  Let's have him come back.

10          (Prospective juror number 29 enters.)

11          THE COURT:  Hi.  Thank you for your patience.  So

12     what days each week do you currently work away from home?

13          THE POTENTIAL JUROR:  Tuesdays and Thursdays.

14          THE COURT:  And those days, you said your

15     sister-in-law can cover for you?

16          THE POTENTIAL JUROR:  MICH-hmm.

17          THE COURT:  Are those days she's not working or how

18     is it she can cover those days?

19          THE POTENTIAL JUROR:  She works from -- like, until

20     one, so it kind of works out some.

21          THE COURT:  Okay.

22          THE POTENTIAL JUROR:  Sometime I can change work,

23     Tuesday to Monday or something like that if she has other

24     plans.

25          THE COURT:  Right, I see.  Because the Court would

Prospective Juror No. 29                           128

1   not be sitting on Friday.  So if you could switch your work so

2   that you were working on Friday, then there would only be one

3   day where --

4              THE POTENTIAL JUROR:  I would still be.

5              THE COURT:  I'm sorry?

6              THE POTENTIAL JUROR:  It would still be, like, two

7   days, right?

8              THE COURT:  Well, you wouldn't be available because

9   you would be here listening to evidence Monday through

10  Thursday, and then you would be -- I'm sorry, it's the other

11  way around, you would then be available on Friday to help her

12  because you could work from home.  For example --

13             THE PROSPECTIVE JUROR:  Still two more days I still

14  got to figure out.

15             THE COURT:  Are there other family members who can

16  help?  I notice you have grown children.  Do they live nearby?

17             THE POTENTIAL JUROR:  I mean, they are working.

18             THE COURT:  Because it doesn't sound like your

19  mother needs somebody by her side, it's just that if she

20  happens to need --

21             THE PROSPECTIVE JUROR:  In the morning, checking the

22  blood pressure, insulin, that any need -- check.

23             THE COURT:  And could somebody check on her before

24  they went to work in the morning if it's every morning?

25             THE POTENTIAL JUROR:  They could, but --

1          THE COURT:  Yeah.

2          THE POTENTIAL JUROR:  I guess they have their life,

3   right?

4          THE COURT:  Well, I mean, if they needed to help out

5   because you had something else that you --

6          THE POTENTIAL JUROR:  Eight weeks.

7          THE COURT:  I know, I know.  And, you know, we

8   realize it's an imposition, but it's an imposition for

9   everybody.  Everybody has other things going on.  So the

10   question is whether you could make it work or whether it just

11   wasn't possible for you.

12          THE POTENTIAL JUROR:  It will be very tough, but --

13          THE COURT:  Yeah, okay.  So why don't you find out

14   from your employer about if you would get paid if you were

15   sitting on this jury for eight weeks.

16          THE POTENTIAL JUROR:  Okay.

17          THE COURT:  And then you can -- when you come back,

18   let one of my staff members know, and when you come back, you

19   can give us the answer.

20          THE POTENTIAL JUROR:  Okay.

21          THE COURT:  Okay, great.  Thank you.

22          (Potential juror number 29 exits.)

23          THE COURT:  So we'll get an answer to the pay, but

24   otherwise, he said he could make it work, so.

25          Juror No. 30, what would you like me to focus on?

1           MS. KOMATIREDDY:  Forty, Your Honor.

2           MR. DE CASTRO:  I'm sorry, Judge, on the last juror,

3    did you say he could make it work?

4           THE COURT:  He said he could make it work.  That's

5    what I heard him say.

6           MR. DE CASTRO:  I got the opposite because he was

7    like, eight weeks, Judge.

8           THE COURT:  And I said could you make arrangements

9    and he sort of was like it would be a hardship and I said it's

10   a hardship for anybody he said okay.

11          MR. DE CASTRO:  Okay.

12          THE COURT:  But he'll come back to us for the answer

13   on the pay.  And if there's follow-up questions, you can let

14   me know.

15          MR. DE CASTRO:  For sure.

16          THE COURT:  We have Juror No. 30, and the government

17   is requesting I follow-up on question 40.

18          Mr. DeCastro?

19          MR. DE CASTRO:  Forty-five.

20          THE COURT:  Forty-five?

21          MR. DE CASTRO:  I think that's right.  Yeah, Queens

22   District Attorney's Office.

23          THE COURT:  I'm looking at 40 and I don't know

24   what -- 40 says -- the answer was no.  So what am I following

25   up on?

Prospective Juror No. 30                    131

1          MS. KOMATIREDDY:  I'm sorry, Your Honor, I'll just

2    clear that up.

3          MR. DE CASTRO:  I think it was 43 is the yes answer.

4          MS. KOMATIREDDY:  I'm sorry, Your Honor, I meant 43,

5    yeah.

6          THE COURT:  Okay.  Mr. DeCastro, that was good

7    mind-reading.  Okay.  Let's have Juror No. 30.

8          (Prospective Juror number 30 enters.)

9          THE COURT:  Hi, Juror No., 30.  Come right up to

10   this podium.  How are you doing?

11         THE POTENTIAL JUROR:  I'm fine, thanks.  How are

12   you?

13         THE COURT:  Great.  We just have a few follow-up

14   questions.

15         THE POTENTIAL JUROR:  Okay.

16         THE COURT:  You said you have a brother who was

17   incarcerated about 20 years ago.

18         THE POTENTIAL JUROR:  Yes.

19         THE COURT:  Do you think that experience with a

20   close family member will affect your ability to be fair in a

21   criminal case?

22         THE POTENTIAL JUROR:  No.

23         THE COURT:  No?  Okay.  Do you feel that he was

24   treated fairly?

25         THE POTENTIAL JUROR:  Yeah -- it was.

1          THE COURT:  Do you have any views about the criminal

2    justice system based on that experience?

3          THE POTENTIAL JUROR:  No, no.

4          THE COURT:  Okay.  And you also said that you have a

5    cousin who worked for the Queens DA's Office.  The fact that

6    you have this family member who worked as a prosecutor, would

7    that affect your ability to be fair in a criminal trial?

8          THE POTENTIAL JUROR:  She wasn't a prosecutor.  I

9    believe she was more like a secretary or -- but she wasn't a

10   prosecutor.

11         THE COURT:  Okay, but in the Prosecutor's Office?

12         THE PROSPECTIVE JUROR:  Yes, in the Prosecutor's

13   Office.

14         THE COURT:  Okay.  Think that would affect your

15   ability to be fair in this case?

16         THE POTENTIAL JUROR:  No.

17         THE COURT:  Is there any reason you would not be a

18   fair and impartial juror if you were picked?

19         THE PROSPECTIVE JUROR:  Not that I could think of,

20   to be honest.

21         THE COURT:  I don't want you to come up with a

22   reason.  I just want to make sure you had a chance to tell us

23   everything.

24         THE POTENTIAL JUROR:  No, no.

25         THE COURT:  Did you have any questions?

1      THE POTENTIAL JUROR:  Well, there was one item --

2   the question you spoke, the one about my brother being

3   incarcerated, like, when I read this question, not that it was

4   vague, but I also have a son who is currently going through

5   the legal system for something in Jersey.  So I don't know if

6   that -- I have to throw that in there, or --

7      THE COURT:  Yes.  Well, thank you for letting us

8   know.  Is he accused of a crime or is he a witness of a crime?

9      THE POTENTIAL JUROR:  Accused, but he's not

10   incarcerated at the moment.

11      THE COURT:  So pending a trial?

12      THE POTENTIAL JUROR:  Yeah, pending, but waiting

13   still the first, everything.

14      THE COURT:  What's he accused of?

15      THE PROSPECTIVE JUROR:  Gun possession.

16      THE COURT:  Is there anything about the fact that

17   that criminal proceeding against your son is pending, that

18   would be in your mind and affect your ability to be fair?

19      THE POTENTIAL JUROR:  No.  The only thing is I have

20   to go to court with him on Monday.  So that's the only thing

21   that would stop anything from going forward.  Or hindering,

22   rather.

23      THE COURT:  Okay.  So this coming Monday.

24      THE POTENTIAL JUROR:  The 23rd.  That's in Jersey.

25      THE COURT:  What time?

1      THE POTENTIAL JUROR:  I believe it's 9:00 a.m.  It's

2  usually 9:00 a.m.

3      THE COURT:  How quickly could you get back here?

4      THE POTENTIAL JUROR:  To be honest, usually when we

5  go, it's like a two -- because I live in Queens, it's, like, a

6  two-hour ride.  So I would say -- depending on how long we

7  stay there.  We usually don't stay there that long.  Maybe,

8  noon, one, two.  Something like that, yeah.

9      THE COURT:  Okay.  And why do you have to go with

10  your son?

11      THE POTENTIAL JUROR:  Moral support.

12      THE COURT:  Moral support?

13      THE POTENTIAL JUROR:  Yeah.

14      THE COURT:  But if you had to come --

15      THE POTENTIAL JUROR:  If --

16      THE COURT:  Somebody else would go with him?

17      THE POTENTIAL JUROR:  Yeah, I would send my brother

18  and then I would just have to figure out how to get here,

19  that's all, which isn't hard.

20      THE COURT:  Anything else?

21      THE PROSPECTIVE JUROR:  No, that's it.  That's all I

22  can think of.

23      THE COURT:  Thank you so much.

24      THE POTENTIAL JUROR:  You're welcome.

25      THE COURT:  Why don't you go back to the room across

1  the hall.

2          (Prospective juror number 30 exits.)

3          THE COURT:  Thirty-one.

4          MR. DE CASTRO:  I have 58, I believe.

5          THE COURT:  Okay.

6          MR. DE CASTRO:  He answered yes.  I don't know if

7  it's just an issue of drugs and their view on drugs.

8          THE COURT:  Yeah.  And then I'll, also, since there

9  was prior grand jury service, I'll point out that grand jury

10  uses a different standard.  So let's have -- anything from the

11  government?  Any requests?

12          MS. KOMATIREDDY:  No thank you, Your Honor.

13          THE COURT:  Okay.  Juror No. 31, please.

14          (Prospective juror number 31 enters.)**31

15          THE COURT:  Hi, Juror No. 31.  Come up to this

16  podium here.  You can put your stuff on the chair and just

17  stand at the podium because there's a microphone.  How are you

18  doing?

19          THE POTENTIAL JUROR:  Good.  How are you?

20          THE COURT:  I'm good, thank you.  We just had a

21  couple of follow-up questions for you based on your answers to

22  the questionnaire.  One of the questions asks about personal

23  experiences with you or your family members regarding drug use

24  and you said you have a family member who is 400 days clean

25  and you said it's a mental health issue.

1            This is a case that involves accusations of drug

2    trafficking and I'd like to know whether the fact that you

3    have this experience with your family member would affect your

4    ability to be fair if you were picked as a juror?

5            THE POTENTIAL JUROR:  No.

6            THE COURT:  Okay.  It also says here, or you

7    answered that you had sat as a grand juror previously?

8            THE POTENTIAL JUROR:  Yes.

9            THE COURT:  So, as you know, as a grand juror, the

10   burden of proof is probable cause.  In a criminal trial, you

11   would have to find beyond a reasonable doubt in order to

12   convict.

13           THE POTENTIAL JUROR:  Yes.

14           THE COURT:  Can you apply that different higher

15   standard of proof?

16           THE POTENTIAL JUROR:  Yes.

17           THE COURT:  Okay.  Is there any reason that you

18   could not be fair and impartial if you were picked as a juror

19   in this case?

20           THE POTENTIAL JUROR:  No.

21           THE COURT:  All right.  Any follow-up questions?

22   No?  Okay.

23           Thank you very much.  You can go back across the

24   hall.

25           (Prospective juror number 31 exits.)**Jury Selection

```
                         Jury Selection                      137

 1           THE COURT:  We have Juror No. 32, has an

 2   ex-boyfriend who worked customs at JFK and there are some

 3   projects, there's a hardship answer.  Also English?

 4           MR. DE CASTRO:  Yeah.  Thirty-two has three, there's

 5   also a hardship here, or at least a hardship filled out.  I

 6   have 3, 35, 44 and then the hardship are what I have.  I'm

 7   sorry, only English there was not three.

 8           THE COURT:  The person said no but also had some

 9   comment?

10           MS. KOMATIREDDY:  Right, we had that.

11           THE COURT:  And it's worth questioning.  That's

12   fine.

13           MR. DE CASTRO:  Sure.

14           THE COURT:  So let's have juror 32.  After 32, 29

15   has an answer as to whether he'll get paid or not.

16           (Prospective juror number 32 enters.)**32

17           THE COURT:  Hi, Juror No. 32.  Come up to this

18   podium, please.  And you could put your coat on the chair if

19   you want.

20           How are you doing?

21           THE POTENTIAL JUROR:  I'm good.  How are you?

22           THE COURT:  You can move your coat down and move

23   over to the podium so you can just stand.

24           THE PROSPECTIVE JUROR:  Right here?

25           THE COURT:  Yeah.  How are you doing?
```

1       THE POTENTIAL JUROR:  I'm good.  How are you?

2       THE COURT:  I'm good.  Thank you.  We just have a

3  couple of follow-up questions based on your questionnaire

4  answers.  You said that you generally didn't have difficulty

5  with English but you did want us to know that you were born in

6  Russia and had some concerns.

7       THE POTENTIAL JUROR:  Yeah, because I was born in

8  Russia, and, like, I'm an accountant.  And obviously

9  accountant can understand very well.  But when it comes to the

10  legal issues, I may not -- miss a lot of terms.

11       THE COURT:  Okay.  Thank you for letting us know.

12  The lawyers always try their best to explain legal terms

13  because even somebody who was born in the United States, if

14  they're not a lawyer, is going to understand legal terms.  So

15  as long as you can understand what we're talking about now and

16  you didn't have problems with the questionnaire, then that

17  language ability seems to be good.

18       THE POTENTIAL JUROR:  I'm really much better than

19  hearing something, so, that might be different -- might be

20  different.

21       THE COURT:  Right.  And have you understood things

22  that have been happening in court, as far as your jury service

23  so far?

24       THE POTENTIAL JUROR:  Have I understood what?

25       THE COURT:  Do you understand what I'm saying?

1          THE PROSPECTIVE JUROR:  Yes, I understand what

2    you're saying.

3          THE COURT:  And you work in English, right?

4          THE POTENTIAL JUROR:  Yes.

5          THE COURT:  Great.  How long have you been in this

6    country?

7          THE POTENTIAL JUROR:  Since 2009.  So how many

8    years, I'm an accountant.

9          THE COURT:  That's fine, I got it.  And the

10   important thing is that you're able to understand English

11   enough to work and all those things.  So the legal stuff, the

12   lawyers will do their best to help on, Judge Cogan will as

13   well, to explain legal terms to you.  So you shouldn't have to

14   worry about that, okay?

15         THE POTENTIAL JUROR:  Okay.

16         THE COURT:  So you also said you had some concerns

17   about being paid and the work.  So tell us about that.

18         THE POTENTIAL JUROR:  Well, I'm a full-time employee

19   and it depend on how long the case is going to be.  If it's

20   few days, then it shouldn't be a problem, but if it's weeks,

21   then I don't know if I'm going to get paid because I'm not

22   going to work, probably, if it's --

23         THE COURT:  Right.  It's eight weeks long is what we

24   think.

25         THE POTENTIAL JUROR:  I don't know.  And -- and

1   another concern, who will do my job, my work, if I will be out

2   not able to work for eight weeks.  Because my work assigned to

3   me, my deadlines, I have to prepare everything to certain

4   dates.

5          THE COURT:  Okay.  Well, you know, many jurors are

6   working and they're able to have other people cover for them

7   when they're away.

8          THE POTENTIAL JUROR:  I don't think -- I don't think

9   they would cover.  I think they would just make me work all

10  these hours.  So I don't know how it's going to be.  I know

11  today, even though my workday is nine to five, because I have

12  work that has to be done today, I don't know how I'm going to

13  finish that just because I'm -- I'm here, so.

14         THE COURT:  Right.  And have you talked to your

15  employer about how long you would get paid?

16         THE POTENTIAL JUROR:  I didn't talk to him, but as

17  soon as I told him the first time that I have to go to the

18  jury duty, he was trying to make me tell, like, oh, you know

19  you have to work, you know, this is, like, you have essential

20  work to deliver.  And so -- he wouldn't even understand me the

21  first time when I had to come in here.

22         THE COURT:  Okay.  What kind of business is it and

23  how big is it?

24         THE POTENTIAL JUROR:  The company?

25         THE COURT:  Yeah.

1           THE POTENTIAL JUROR:  Well, the office where I --

2    where I work is 100 employees.  But in, overall, I think all

3    over the world, it's about 100,000 people.

4           THE COURT:  And they can't find anyone else to cover

5    your job?

6           THE POTENTIAL JUROR:  Because we divide it by the

7    departments.  So mine is investment oversight and it's a new

8    team and we only two people and another two people they just,

9    like -- they -- they're allocated between departments.  But in

10   mine, it's only me and my senior control.  And then other two

11   people who are only, like, half the time.

12          THE COURT:  All right.  So since you don't know if

13   you're going to get paid, can you call your employer and just

14   find out if you were to get paid if you were to be picked to

15   sit on an eight-week trial?

16          THE POTENTIAL JUROR:  Yeah, I can ask.

17          THE COURT:  Yeah, I think if you can ask, we'll

18   know.

19          THE POTENTIAL JUROR:  But what if I get paid, then I

20   will be here and I will still have to do my work.  So to be at

21   1:00 a.m. or something, I don't think anyone can cover.

22   Maybe, I don't know.  I just --

23          THE COURT:  Well, usually, people don't like to be

24   on jury duty and don't want their employees, but they find a

25   way to make it work.  And especially a company the size that

1   you're talking about, if they were told you have to sit on a

2   jury, then they would have to make it work.  I just need to

3   know about whether you will get paid.  So if you get paid,

4   then the rest of it, the company will have to work out.  So if

5   you could find out, that would be useful.

6           THE POTENTIAL JUROR:  The company may work out, me

7   trying to work after the jury duty.  That's -- and with level

8   of stress I have right now.  I don't think I can do it.

9           THE COURT:  All right.  So do you think you would be

10  able to focus on this case or would you be worried it?

11          THE POTENTIAL JUROR:  I would be worried.  I'm

12  worried right now sitting there because I don't think my boss

13  was expecting me even for these amount of hours being here.

14          THE COURT:  All right.  So could you just make a

15  phone call to your employer and just ask and let them know the

16  judge asked to find out whether if you were to be on the jury

17  for eight weeks if you would be paid?

18          THE POTENTIAL JUROR:  I can ask.

19          THE COURT:  Then just let the staff know.

20          THE POTENTIAL JUROR:  I don't have my phone.

21          THE COURT:  We're going to take a break.

22          MR. DE CASTRO:  And, judge, Fridays off.

23          THE COURT:  Right, and we're not sitting on Fridays

24  either.  We're going to take a break anyway, so go get your

25  phone.

1           THE PROSPECTIVE JUROR:  Okay.

2           THE COURT:  Call your employer and get an answer to

3    that and let us know.  That would help us.  Thank you.

4           THE POTENTIAL JUROR:  Okay, thank you.

5           (Prospective juror number 32 exits.)** Jury

6    Selection

7           MR. DE CASTRO:  Judge, did you want to follow-up on

8    those -- on questions just in case, or?

9           THE COURT:  For which juror?

10          MR. DE CASTRO:  For this juror.

11          THE COURT:  Sure.

12          MR. DE CASTRO:  Well, she's gone.

13          THE COURT:  That's okay.  When she comes back and

14   let's us know.  If you have questions, just write them down.

15          MR. DE CASTRO:  I think there's a couple.

16          MS. KOMATIREDDY:  There was a law enforcement

17   question.

18          THE COURT:  The law enforcement one, yeah.

19          MS. KOMATIREDDY:  Recent airport.

20          THE COURT:  Great.  And Juror No. 29 had an answer

21   as far as whether he'll get paid.  Let's have him come in.

22          So, then for the other jurors, it's 12:30, let's

23   take a lunch break.  We can come back at 1:30.

24          MS. KOMATIREDDY:  Yes, Your Honor.

25          THE COURT:  So we'll just have this one juror and

1   everybody else can go.

2            (Prospective Juror number 29 enters.)**29

3

4            Hi, Juror No. 29.  You were going to check with your

5   employer?

6            THE POTENTIAL JUROR:  Yeah.  So it's a call center.

7   So I called and left a message, but I did a quick Google, they

8   said ten days.  But, again, it's a Google, so I don't know.

9            THE COURT:  Right.  And then after that, you

10  wouldn't get paid?

11           THE POTENTIAL JUROR:  Yeah.

12           THE COURT:  Yeah.

13           THE POTENTIAL JUROR:  That's what it seems like,

14  but, again, I left a message at the call center.

15           THE COURT:  All right.  Thank you for letting us

16  know.  I'll talk with the lawyers.  I think we're breaking for

17  lunch anyway, so we'll get back to you.

18           THE POTENTIAL JUROR:  Okay.

19           (Prospective juror number 29 exits.)**Jury Selection

20           THE COURT:  All right.  How reliable is a Google

21  search?

22           MR. DE CASTRO:  That's what we're chatting about.  I

23  want to know what the search was.

24           MS. KOMATIREDDY:  I think it's worth waiting to

25  actually get an answer from employer, Your Honor.

1     THE COURT:  Yeah, the call center will get back to

2  us.  So why don't we take a lunch break, come back at 1:30 and

3  pick up with Juror No. 33 and then we have the rest of the

4  jury for the afternoon.  Let's just see how far we go.

5         We're in pretty good shape, but I still think we

6  need to get through -- I would advise getting enough jurors

7  for the full day tomorrow.  We might get to 40 before the end

8  of the day tomorrow, but I think it's probably -- do you think

9  we should call in 60 jurors for tomorrow?

10        MS. KOMATIREDDY:  I do, Your Honor.  I think also,

11  there's a number -- at least there's these five jurors we

12  asked for follow-up.  So I think it may be worth picking a few

13  more than 40 in case we have additional jurors who come back

14  after having checked with their employer, with the eight

15  weeks, I would suggest we pick 50 just to be on the safe side.

16        THE COURT:  All right.  We have 34 jurors for this

17  afternoon.  I'm hopeful we will get through them.  At the rate

18  we're going, I don't think we'll have too many left over.  So

19  I think if we call in the full 60 tomorrow, with an allowance

20  for some not being able to show up, we'll have a full roster

21  for questioning tomorrow.  So I'll ask the jury office to

22  request 60 for tomorrow.  Let's pick up at 1:30 with

23  Juror No. 33 and try to get through all the jurors today.

24        (A luncheon recess was taken.)

25

1          AFTERNOON SESSION

2          THE COURTROOM DEPUTY:  All rise.

3          THE COURT:  Please be seated.  We are back on the

4     record for jury selection.  We will resume with Juror No. 33.

5     I would propose that we go through the four from this morning

6     that we didn't get to.  Juror No. 44 from this afternoon --

7     I'm sorry.  I didn't realize the defendant wasn't here.  Okay.

8          (Defendant present.)

9          THE COURT:  We are back on the record.  We are going

10    to resume with the jurors that we didn't get to this morning.

11    There are four of them and Juror No. 44 from this afternoon

12    has something -- has a medical appointment later, so we are

13    going to get to that juror next and then we can talk about any

14    for cause strikes.

15          Once we have had a chance to discuss those, we will

16    excuse them and move on to the afternoon.  Any questions?

17          MS. KOMATIREDDY:  No, Your Honor.

18          THE COURT:  Let's bring in Juror No 33.

19          MS. KOMATIREDDY:  On 33, Your Honor, we would

20    request questioning on 36, 37, 41, 43, 49, 55, 62, and 65.

21          THE COURT:  All right.

22          MR. DE CASTRO:  I think, Judge, we would just add

23    40, if they didn't say that already, and 55.  And 55, 56, 62

24    and 66.

25          THE COURT:  All right.

1               (Prospective Juror No. 33 enters.)

2               THE COURT:  Juror No. 33, come up to the podium,

3     please.

4               THE PROSPECTIVE JUROR:  Hi.

5               THE COURT:  How are you doing.

6               THE PROSPECTIVE JUROR:  Good.

7               THE COURT:  We had a couple of follow-ups questions

8     for you based on the answers you gave on the questionnaire.  I

9     will start with your brother's tragic death.

10              THE PROSPECTIVE JUROR:  Yeah.

11              THE COURT:  You mentioned it in the questionnaire

12    and how it might affect your ability to be fair and impartial.

13    So can you talk about that a little bit?

14              THE PROSPECTIVE JUROR:  Yeah, it was -- I guess it

15    started as a road-rage incident and then it's pretty much

16    classic manslaughter and whatever.  They apprehended the guy

17    who stabbed him right away.  He spent a year or so in jail

18    until the trial came up.  It was quite a long trial.  Maybe

19    three weeks.  It seemed very straightforward.  He wasn't the

20    initial aggressor.  A guy flashed a knife and chased him.

21    They squared off and my brother got stabbed and died right on

22    the street.  And at the end of the trial, they let him go,

23    they said it was justified, self-defense.  It was very hard to

24    believe that it was self-defense.

25              THE COURT:  I'm so sorry about the loss of your

1   brother.

2           THE PROSPECTIVE JUROR:  It was a long time ago.  It

3   hurts to talk about.

4           THE COURT:  It still affects you.  The question is

5   how would this impact your ability to be fair in a criminal

6   case.  Obviously it is a different type of case, but it is a

7   criminal justice system and you mentioned you have some

8   distrust in the criminal justice system.

9           THE PROSPECTIVE JUROR:  Correct.  I would like to

10  say I could rise above it and be completely impartial.  But it

11  would be impossible to say without treating the people and

12  hearing the people.

13          THE COURT:  And that's good, because if you are

14  coming into this with an open mind and you're waiting to hear

15  and see from the witnesses, that's exactly what we want from a

16  juror.  The question is whether going into it you have some

17  inclination to want to convict or want to acquit that's not

18  linked to the evidence in the case?

19          THE PROSPECTIVE JUROR:  I would say I could do my

20  best to be impartial.

21          THE COURT:  Right.  Do you think you could set aside

22  any feelings you might have about what happened your brother's

23  case and be fair to both sides?

24          THE PROSPECTIVE JUROR:  I think I could be fair.  Do

25  I want to go through it and dredge up a lot of old stuff, I

1   don't think so.  It would be hard for me.

2           THE COURT:  I understand.

3           MR. DE CASTRO:  Your Honor, we have no objection.

4           MS. KOMATIREDDY:  No objection.

5           THE COURT:  So, thank you very much for your

6   service.  You are excused.  You can go back down to the second

7   floor.

8           THE PROSPECTIVE JUROR:  Thank you.

9           (Prospective juror No. 33 excused.)

10          THE COURT:  Juror No. 34, what would you like me to

11  focus on?

12          MR. DE CASTRO:  I have 34, 36, 40, 50, 55, 56 and

13  66.

14          THE COURT:  All right.  Anything else?

15          MS. KOMATIREDDY:  Same.

16          THE COURT:  Same ones.  All right.  Let's bring in

17  Juror No. 34.

18          (Prospective Juror No. 34 enters.)

19          THE COURT:  Hi, Juror No. 34.  How are you doing?

20          THE PROSPECTIVE JUROR:  Good.  Thank you.

21          THE COURT:  Good.  So we just had a couple of

22  questions to ask you as a follow up to the answers you gave on

23  the questionnaire.

24          THE PROSPECTIVE JUROR:  Sure.

25          THE COURT:  So you mentioned that you own investment

Prospective Juror No. 34                                    150

1    properties and you say anything pertaining to crime in real

2    estate you might be biased.  Can you tell us about that?

3                 THE PROSPECTIVE JUROR:  Well, I'm a landlord, so if

4    there are any issues with tenants as far as the law is

5    concerned, I might be biased regarding that.

6                 THE COURT:  Okay.  This is not that type of case?

7                 THE PROSPECTIVE JUROR:  I know.

8                 THE COURT:  So do you think you could be fair in

9    this case that involves allegations of drug trafficking?

10                THE PROSPECTIVE JUROR:  Yeah, I believe so.

11                THE COURT:  And you mentioned that you had been

12   robbed on the subway, you were punched, and money was taken

13   from you.  Do you think that experience would affect your

14   ability to be fair in this case.

15                THE PROSPECTIVE JUROR:  No, I don't think so.

16                THE COURT:  Do you feel like the -- did you report

17   that?

18                THE PROSPECTIVE JUROR:  No.

19                THE COURT:  You said you never reported it?

20                THE PROSPECTIVE JUROR:  I never reported it.

21                THE COURT:  I see.  Okay.

22                You mentioned that you believe drugs should be

23   legalized and that would make drug cartels unable to do their

24   business in the U.S.

25                THE PROSPECTIVE JUROR:  That's true.

1        THE COURT:  So this is a case that happens to

2   involve allegations of involvement in a drug cartel.  Do you

3   think you could be fair in this case to the particular

4   defendant who is standing trial?

5        THE PROSPECTIVE JUROR:  Yeah, I believe so, but, you

6   know, I believe that we are -- the U.S. is partially

7   responsible, so, that's my opinion.

8        THE COURT:  Sure.  And if you -- notwithstanding

9   that general belief, the question is whether you could be fair

10  in this case, both to the Government -- we have the United

11  States Attorneys --

12       THE PROSPECTIVE JUROR:  Yes.

13       THE COURT:  -- Office personnel representing the

14  Government and then we have a defendant and his counsel.  So

15  can you be fair in a case like this to both sides?

16       THE PROSPECTIVE JUROR:  I hope so.

17       THE COURT:  What is your hesitation?

18       THE PROSPECTIVE JUROR:  I don't know.  It all

19  depends what happens in the case.

20       THE COURT:  Well, I mean, what happens -- it depends

21  what happens in the case is actually the kind of juror we

22  want.  We want a juror who comes in with an open mind, listens

23  to the evidence, makes assessments on credibility and comes up

24  with a verdict that's based on evidence in this case and what

25  the judge will instruct you.  So can you do that?

1          THE PROSPECTIVE JUROR:  Yeah, I think so.

2          THE COURT:  Okay.  And so, even if you -- whatever

3   your views may be about the way the United States is handling

4   drug cartels, as you mentioned it, if Judge Cogan instructs

5   you on what the law is, will you be able to follow it or will

6   you say I don't agree with that, I'm going to go another way?

7          THE PROSPECTIVE JUROR:  I don't know.

8          THE COURT:  You don't know?

9          THE PROSPECTIVE JUROR:  No.

10          THE COURT:  If Judge Cogan says this is what the law

11   says, you will say no, I'll do something else?

12          THE PROSPECTIVE JUROR:  I will try to, let's put it

13   that way.

14          THE COURT:  Again, tell me about your hesitation.

15          THE PROSPECTIVE JUROR:  Well, in the back of my mind

16   I'm always going to be thinking about that, what happens with

17   the drug situation.

18          THE COURT:  Right.  Well, again, the drug situation

19   is the drug situation.

20          THE PROSPECTIVE JUROR:  Right.

21          THE COURT:  In this case, it's one man standing

22   trial and the Government has made accusations against him.

23          THE PROSPECTIVE JUROR:  I know.

24          THE COURT:  Your only job as a juror will be to find

25   him guilty or not guilty.  Can you do that just based on the

1   evidence in the case and the law as Judge Cogan will instruct

2   you?

3           THE PROSPECTIVE JUROR:  I think so.

4           THE COURT:  All right.  And did you have any other

5   things you wanted to let the Court know that we should know in

6   terms of your ability to be fair and impartial?

7           THE PROSPECTIVE JUROR:  No, I don't think so.

8           THE COURT:  All right.  Any follow up?

9           MR. DE CASTRO:  No, Your Honor.

10          THE COURT:  Thank you.  You can go back across the

11  hall.

12          THE PROSPECTIVE JUROR:  Thank you.

13          (Prospective juror 34 exits.)

14          THE COURT:  Okay, Juror No. 35, there are a lot of

15  questions.  I am start with the hardship question.

16          Anything else you want me to focus on?

17          MR. DE CASTRO:  Yes, a lot on this one, Judge.

18          Well, 22.  So this is Juror No. 35.  22, 40, 45, 47,

19  49, 50, 37 -- sorry about that -- 52, 54, 55, 56, 66, 67 and,

20  of course, Your Honor said you will start with 69, the

21  hardship.

22          THE COURT:  All right.  How about the Government?

23          MS. KOMATIREDDY:  Same, Your Honor.

24          THE COURT:  So let's bring in Juror No. 35.

25          (Prospective Juror No. 35 enters.)

1          THE COURT:  Hi.

2          THE PROSPECTIVE JUROR:  Hello.

3          THE COURT:  You're Juror No. 35.  You can put your

4    coat and bag on the chair if you would like.

5          THE PROSPECTIVE JUROR:  Thanks very much.

6          THE COURT:  We have a couple of follow-up questions

7    based on the answers you gave.

8          THE PROSPECTIVE JUROR:  Okay.

9          THE COURT:  I will start with your answer to the

10   hardship question.  You said you have some issues in terms of

11   serving on this trial.

12         THE PROSPECTIVE JUROR:  Just that I'm working on a

13   big work project.  It probably sounds silly.  I work for a

14   financial services company.  We're switching banks, from one

15   bank to another, and I'm lead on the project, and it requires

16   a lot of time and like daytime meetings, so it would be

17   challenging to manage that alongside the jury.

18         THE COURT:  Are you the only person who will being

19   handle that?

20         THE PROSPECTIVE JUROR:  Probably not the only, no.

21   I'm like the most experienced and knowledgeable about it, but

22   I guess they could probably figure something else out.

23         THE COURT:  Okay.  The Court will not sit on Friday,

24   so you will at least have Fridays if you have to go to work if

25   they needed.

1          THE PROSPECTIVE JUROR:  Yeah.

2          THE COURT:  It sounds like a big financial

3    institution.  You might be the best person but they might be

4    able to find somebody to back you up, is that right?

5          THE PROSPECTIVE JUROR:  I think so.

6          THE COURT:  Can you stand closer to the podium for

7    the microphone.

8          THE PROSPECTIVE JUROR:  Sorry.  I mean, I know that

9    they would want me to.

10          THE COURT:  Of course.

11          THE PROSPECTIVE JUROR:  Obviously this is important

12    to, so.

13          THE COURT:  You said you weren't sure if you would

14    get paid.  Do you know?

15          THE PROSPECTIVE JUROR:  Actually, I did look into

16    that and I would be paid.  They have, like, an insurance

17    policy that helps pay for people on jury duty.

18          THE COURT:  Right.  Fantastic.  Let me ask you about

19    some of your other answers.  You said that you strongly

20    disapprove -- well, you said the war on drugs to be

21    ill-advised.  Can you talk about that?

22          THE PROSPECTIVE JUROR:  Yeah, I just -- my friend

23    works for a non-profit that has done a lot of work showing how

24    the war on drugs has negatively impacted particularly

25    communities of color in the U.S.  I just think that a lot of

1    times it just feels like people who just get caught up in a

2    difficult system get punished for things that aren't their

3    fault and that people of different races are held to different

4    standards sometimes.

5              THE COURT:  Okay.  And do you think that that would

6    impact your ability to be fair to the defendant in this

7    particular case?

8              THE PROSPECTIVE JUROR:  I mean, what I tried to do

9    in answering my questions is explain where I'm coming from.  I

10   would try my best to put aside any of that stuff.  So, yeah, I

11   don't know if that's -- how to answer that.  I would do my

12   best to put aside anything and treat everybody fairly.

13             THE COURT:  Right.  And could you be fair to the

14   Government in this case, as well as the defendant?

15             THE PROSPECTIVE JUROR:  I guess the one thing in the

16   questionnaire that confused me is like -- I wrote it down.  I

17   wasn't sure why, like, if this isn't a United States citizen

18   who committed crimes in the U.S., and if it's corruption from

19   another government why is it our business in the United

20   States?  That was a little confusing to me.  But I guess if

21   that's what I am told that's what I need to do, I would follow

22   instructions and do it properly.

23             THE COURT:  Right.  And that's exactly what we want

24   in a juror, somebody who will follow the instructions and

25   listen to the evidence and make an assessment in this

1   particular case.  And just to let you know, the issue of

2   whether the case can be brought in the United States even if

3   acts were committed outside the United States, a judge has

4   already said that it's fine, it can go forward here.

5             THE PROSPECTIVE JUROR:  Right.

6             THE COURT:  Like you said, you would follow the

7   instructions and just look at the evidence that is put to the

8   jury.  I think you can do that.

9             THE PROSPECTIVE JUROR:  Yeah.

10            THE COURT:  Great.

11            You also said that -- well, you said that you are

12  skeptical of the criminal justice system and its fairness.  Is

13  that the same thing that you talked about earlier on the war

14  on drugs or is it something different?

15            THE PROSPECTIVE JUROR:  Yeah, just in general I feel

16  like our system tends to sometimes punish people from less

17  privileged economic backgrounds and stuff like that, so I

18  worry about that sometimes.

19            THE COURT:  Maybe I'm repeating myself.

20            THE PROSPECTIVE JUROR:  I'm sorry.

21            THE COURT:  No.  It's my fault.  Do you think you

22  could put that aside and be fair in this particular case?

23            THE PROSPECTIVE JUROR:  I think so, yeah.

24            THE COURT:  All right.  You mentioned that you have

25  parents who are lawyers?

1          THE PROSPECTIVE JUROR:  Yes, both my parents are

2     lawyers.

3          THE COURT:  And a former roommate is a public

4     defender.

5          THE PROSPECTIVE JUROR:  Yes.  I guess run into a lot

6     of lawyers.

7          THE COURT:  But you're not a lawyer?

8          THE PROSPECTIVE JUROR:  No, I'm not a lawyer.

9          THE COURT:  And having all of these lawyers around

10    you, do they talk about law, legal issues, criminal law?

11         THE PROSPECTIVE JUROR:  Yeah, I mean, less criminal

12    law, my dad worked for a corporation, was a lawyer for them.

13    But we talked a lot about law in general growing up and stuff.

14         THE COURT:  Okay.  So at the end of the trial, Judge

15    Cogan is going to instruct you on what the law is.  As a

16    juror, you would have to follow that law.  The concern is

17    always with people who are surrounded by lawyers that lawyers

18    tell them what the law is.  And if Judge Cogan told you

19    something but you're like my dad or roommate told me something

20    different, will you follow what Judge Cogan told you or would

21    you say no, dad must be right?

22         THE PROSPECTIVE JUROR:  If I'm here and being told

23    to follow -- I'm kind of like a follower by nature, I guess.

24    So if you told me I needed to follow that rule, I would do so,

25    unless this is a huge miscarriage of justice, but that seems

1   like it would be at odds with the judge telling us the rules

2   of the law of the nation.

3           THE COURT:  So you would follow the law as the judge

4   instructs you?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  All right.  You also said you strongly

7   approve against Government corruption, like people generally

8   are going against corruption --

9           THE PROSPECTIVE JUROR:  Yes.  I was going to say is

10  there anybody who is in favor of government corruption.

11          THE COURT:  The question is whether you can be fair

12  in this case both to somebody who is accused of engaging in

13  behavior that might constitute Government corruption to both

14  the person and the Government that it is accusing?

15          THE PROSPECTIVE JUROR:  Like, so just about fairness

16  to the person, is that giving them an open mind to be shown

17  that they didn't do the corruption or do I have to be okay

18  with them committing corruption?

19          THE COURT:  No.  It would be about whether this

20  person committed corruption or not.

21          THE PROSPECTIVE JUROR:  Yeah.

22          THE COURT:  The charge is not necessarily

23  corruption.

24          THE PROSPECTIVE JUROR:  Got it.

25          THE COURT:  Some of the activity may involve that.

1   So that's what the question is, not whether you approved it.

2            THE PROSPECTIVE JUROR:  Got it.

3            THE COURT:  But whether the person did it.  Does

4   that make sense?

5            THE PROSPECTIVE JUROR:  Yes.  I think so.

6            THE COURT:  Okay.  And you also talked about you I

7   thought marijuana should be legal.  This case involves cocaine

8   trafficking.  Do you think that will be an issue for you in

9   terms of being fair?

10            THE PROSPECTIVE JUROR:  I don't think so.  I guess I

11   don't think cocaine should be legal.  I don't know if that has

12   bearing or not.

13            THE COURT:  And, in fact, it's not.

14            THE PROSPECTIVE JUROR:  Yeah.

15            THE COURT:  Then you also said you disapprove of

16   many NYPD policies.  Will that impact your ability to be fair

17   in this case?

18            There is law enforcement.  So NYPD is law

19   enforcement.

20            THE PROSPECTIVE JUROR:  Yeah, I mean, I -- I have to

21   be honest that, like, I'm not generally like predispose to

22   think fondly on the NYPD just based on experiences I have seen

23   and stuff, but I've -- I feel, like I said, if you put me in

24   with the facts, I will try my best to look at the facts and

25   not let any of those personal opinions come into the picture.

1      THE COURT:  All right.  Would that affect your

2   ability to assess credibility, you know, if there were a law

3   enforcement officer testifying, would you tend to not believe

4   her just because she's law enforcement?

5      THE PROSPECTIVE JUROR:  No.  I don't think not --

6   but I feel, like, with any witness, I would be interested in

7   the corroborating evidence just because I think sometimes

8   people with good intentions can get things wrong or misheard

9   something.  So I don't think, like, inherently no, she's

10  definitely lying.  I think, in general, I try to take things

11  with a little bit of skepticism.

12      THE COURT:  And, you know, that's fine, because

13  you'll be instructed that when you assess a witness'

14  credibility you can take into account motive to lie, ability

15  to observe, those kinds of things.  That's completely

16  appropriate for everyone.

17      THE PROSPECTIVE JUROR:  Okay.

18      THE COURT:  The question is whether you are going to

19  do it differently for law enforcement or somebody who is not

20  law enforcement or would you treat the witness -- you would

21  assess the testimony in the -- go through that same process.

22      THE PROSPECTIVE JUROR:  I would try to do it the

23  same, yeah.

24      THE COURT:  Okay.  Do you think you will be

25  successful, to be fair to both law enforcement and non-law

1    enforcement witnesses?

2              THE PROSPECTIVE JUROR:  I think, yeah.

3              MS. KOMATIREDDY:  We have no objection, Your Honor.

4              THE COURT:  Do you want further discussion or is

5    that no objection?

6              MR. DE CASTRO:  I think further discussion.

7              THE COURT:  Okay.

8              So, let me just see.  I have one last question.  You

9    said you weren't sure you could avoid the internet because of

10   your work.  If you are a juror, it's not that you would have a

11   news blackout.

12             THE PROSPECTIVE JUROR:  Right.

13             THE COURT:  But if you heard something that was

14   about this trial, you would have to turn it off.

15             THE PROSPECTIVE JUROR:  I've already done that.  I'm

16   a Brian Lehr listener.  He's a reporter for WNYC.  I saw there

17   was a segment about this and I just didn't listen to that one.

18   I think I can do that.  I got nervous and said no internet.  I

19   just do all my work on the internet.

20             THE COURT:  But that's what you do.

21             THE PROSPECTIVE JUROR:  I would avoid, like -- if I

22   would come into contact, I would just not read that article or

23   not listen to that piece of news or whatever, yeah.

24             THE COURT:  Great.  So I'm going to talk to the

25   lawyers for a minute.

1            THE PROSPECTIVE JUROR:  Okay.

2            THE COURT:  If you don't mind, please step outside

3    and we'll let you know when we're ready.

4            THE PROSPECTIVE JUROR:  Okay.

5            (Prospective juror 35 exits.)

6            THE COURT:  All right.  So I heard a motion to

7    strike for cause?

8            MS. KOMATIREDDY:  Yes, Your Honor.

9            Our view is that this juror should be struck for

10   cause for multiple reasons.  I think there were multiple

11   instances of obvious hesitancy in her ability to set aside her

12   prior disposition.  In response to Your Honor's question about

13   law enforcement officers, rather than stating she would treat

14   those law enforcement witnesses in the way she would treat any

15   other witness, she held them to a different standard.  She

16   indicated that she would require additional evidence other

17   than their word.  While that's fine as a general matter,

18   putting a different standard on those specific types of

19   witnesses as compared to other witnesses is inappropriate.

20           In addition, it also flies in the face of one of the

21   other questions we asked, which is that no specific type of

22   evidence is required in this case.  The jury is to look at all

23   of evidence and decide whether it meets the standard of beyond

24   a reasonable doubt, but her articulations sua sponte that she

25   would be looking for specific types of evidence is concerning

1    to us.

2              In addition, I think that her demeanor of multiple

3    hesitant answers saying -- that are in connection with both

4    her views on the judicial system as a whole, and also holding

5    people to different standards, whether she would be able to

6    put aside her views on the system in response to question 50.

7    And, finally, whether she would be able to follow the law.

8    She initially agreed with Your Honor, but ultimately included

9    an exception that if she felt there was a miscarriage of

10   justice she would do what she believed instead of following

11   the law.  That's a fundamental expression of jury

12   nullification.

13             For all of those reasons, we think this juror should

14   be struck for cause.

15             I would also note that she has a preplanned trip in

16   March.

17             THE COURT:  I will ask about the trip because I was

18   focused on the work.

19             Let me hear from Mr. de Castro.

20             MR. DE CASTRO:  Judge, I don't think she's a cause.

21   I think Your Honor rehabilitated any potential issue.  The

22   fact that she paused in answering her questions, what I saw

23   was a juror that wanted to reflect upon the question and give

24   as open an answer as she could, which is actually, quite

25   frankly, her questionnaire is sort of thoughtful.

Prospective Juror No. 35                        165

1          You know, she told you things like I'm a rule

2    follower, yes, if Judge Cogan tells me that's the law, that's

3    the law, I will follow it.  I don't think there's really an

4    issue of cause here.

5          THE COURT:  All right.  I will follow up with

6    question about the trip and I will also follow up about the

7    requirement for corroboration.  I did hear that and I meant to

8    ask her if the law said you could convict based on just

9    testimony, would you follow that, but I did not hear her say

10   that to apply only to law enforcement officers, so I will

11   certainly ask her about that.

12         I think that in response to my questioning she did

13   say she thought she could be fair.  Even though she would

14   start out by saying I could try to be fair, she did end up

15   saying I believe I could be fair.  So I can certainly probe

16   her a little bit more on that just to be sure of it and see

17   where it goes.

18         If we could have her come back.

19         (Prospective Juror No. 35 enters.)

20         THE COURT:  Hi, Juror No. 35.  We just had a couple

21   of follow-up questions.

22         THE PROSPECTIVE JUROR:  Hi.

23         THE COURT:  So I saw that you put down you've got a

24   trip planned in March.  Can you tell me about that?

25         THE PROSPECTIVE JUROR:  Yes, it's from Thursday,

Prospective Juror No. 35                              166

1   March 2nd to Sunday, March 5th.  It's my little sister's

2   bachelorette party.

3           THE COURT:  Okay.  Are the tickets -- well, I guess

4   you can't re-schedule it because it's her party?

5           THE PROSPECTIVE JUROR:  It's her party, I can't

6   reschedule.

7           THE COURT:  Is it like in the morning or in the

8   afternoon?

9           THE PROSPECTIVE JUROR:  The flight I've booked is in

10  the morning.

11          THE COURT:  Because the Court doesn't sit on Friday.

12          THE PROSPECTIVE JUROR:  Right.

13          THE COURT:  So you could probably miss the Friday.

14          All right.  Then you had talked about wanting

15  corroborating evidence and not just the eyewitness testimony.

16  Is that only for law enforcement or for all witnesses?

17          THE PROSPECTIVE JUROR:  I would say I would want as

18  much as possible from everyone just because, like I said, I

19  understand that in some situations, there's nothing, but

20  eyewitness evidence, but that feels like it's a lot just to go

21  off one person's description of something versus having

22  documents or something else that can back it up.

23          THE COURT:  Right.  And if Judge Cogan were to

24  instruct you that actually the law allows you to consider

25  uncorroborated evidence as long as you find the witness

1  credible --

2           THE PROSPECTIVE JUROR:  Got it.

3           THE COURT:  -- you know, you have to find the

4  witness credible first.

5           THE PROSPECTIVE JUROR:  But I guess if that's all we

6  have, I have to make a decision, I cloud do that.  Like, I

7  think it makes me really nervous about being wrong because

8  obviously there's a lot at stake for people in trials like

9  this.  So, you know, I would work off what we have.  I would

10 hope to have as much evidence as possible to make an informed

11 decision.

12          THE COURT:  Right.  And I think the most important

13 thing is you would do that for every witness.  It isn't about

14 what the witness' does or what the witness' background is, you

15 would assess the witness' credibility?

16          THE PROSPECTIVE JUROR:  I would do that.

17          THE COURT:  Let me go back to your sister's trip.

18 Is it possible to change the flight to Thursday night and get

19 there Thursday night rather than Thursday morning?

20          THE PROSPECTIVE JUROR:  I don't know if that's

21 possible with my ticket and the impact on my relationship with

22 my sister.  So, I have to be late to your bachelorette party.

23 I don't know.  If you are asking me if it's physically

24 possible?  Yes.  Is it preferable?  No.  Yeah.

25          THE COURT:  That's fine.  Were there any follow-up

1  questions?

2          MR. DE CASTRO:  No, Your Honor.

3          THE COURT:  Great.  Thank you very much.

4          THE PROSPECTIVE JUROR:  Thank you, I appreciate it.

5          (Prospective juror 35 exits.)

6          THE COURT:  So --

7          MS. KOMATIREDDY:  Your Honor, I think we have to

8  strike this juror for cause.  This is a cooperator case.  This

9  goes to the very heart of our evidence and she has already

10  expressed an inability to really follow the instruction that

11  she could, on a witness's word, to convict should she find

12  that witness --

13          THE COURT:  Well, she said that she's a

14  rule-follower and if she were told that she could make a

15  finding based just on corroborated evidence, that she would.

16          MS. KOMATIREDDY:  Your Honor, this goes to Mr. de

17  Castro's point earlier about why demeanor matters.  There are

18  certainly jurors we have let through after questioning that

19  said I will try my best and we take their word for it.  This

20  juror is visibly and explicitly hesitating.  She said herself

21  it makes her nervous about attempting to follow that rule of

22  believing a witness without requiring some additional

23  corroboration like documents.  That is the heart of the issue

24  in this case and we don't think we can get a fair trial with

25  that juror on the venire.

1    THE COURT:  Well, I think she would be fair.  I do

2  have some concerns about her travel plans.

3    Mr. de Castro, do you have any thoughts on her

4  sister's bachelorette party?

5    MR. DE CASTRO:  None.  It is one trial day in eight

6  weeks.  I believe the Government was the one that said earlier

7  well, it's just one trial day.

8    I can tell you that if we're in March, we are going

9  to love to have an extra trial day break to give us all a

10  breather.  So I don't have any issue with that.  I don't think

11  she is cause.  The Government can strike.  They can use their

12  peremptory.  That's their business.

13    THE COURT:  Were there any follow-up questions that

14  you wanted me to ask?

15    MS. KOMATIREDDY:  Your Honor --

16    THE COURT:  The answers she gave were that she could

17  be fair and that she would follow the instructions.  But if

18  you thought that there was something that I missed, I'm

19  certainly happy to ask another question to see what her answer

20  is.

21    MS. KOMATIREDDY:  Yes, Your Honor.  In that case, I

22  would ask follow-up questioning on specific type of evidence.

23  Specifically, if you could ask the question that the law

24  permits the testimony of a single witness, including a

25  cooperator witness, can be sufficient to convict a defendant

1  of a charged crime, can you -- are you able to convict an

2  individual of a crime based on a single witness' testimony

3  without documents, without video, without anything other than

4  the testimony?

5          MR. DE CASTRO:  Judge, you asked that question.

6          THE COURT:  I will ask again because I may --

7          MR. DE CASTRO:  That's fine.  That's fine.

8          THE COURT:  -- because I may have missed some

9  nuance.

10          MR. DE CASTRO:  Sure.  I mean, just for the record,

11  I think what her answer was, and I guess she can clarify

12  again, is I would love to have corroboration, but if that's

13  all I have to work with, I will do what I have to do, I will

14  make an assessment.

15          THE COURT:  Well, I will ask that and then I'll ask

16  more explicitly about the nullification issue because I did

17  hear that one and I think that's fair to ask a little bit

18  more.

19          MS. KOMATIREDDY:  With the Court's indulgence, the

20  other question I would request is she noted in her previous

21  comments just now she would want as much as evidence as

22  possible.  If the Court could instruct her that's not the

23  standard.  The standard is proof beyond a reasonable doubt.

24  Not all proof, not as much proof as possible.  Can she accept

25  that the standard is proof beyond a reasonable doubt and not

1   the standard that she articulated?

2           THE COURT:  Okay.  Let's have Juror No. 35 come

3   back.

4           (Prospective Juror No. 35 enters.)

5           THE COURT:  Hi, Juror No. 35.  Sorry, just a couple

6   more questions.

7           THE PROSPECTIVE JUROR:  It's okay.

8           THE COURT:  So, just to follow up on the issue of as

9   much proof as possible.  I think I heard you say that you

10  would want to have as much proof as possible.

11          The standard for conviction is beyond a reasonable

12  doubt.  That's what the Government needs to prove in order for

13  there to be a guilty verdict.  It's not as much as proof as

14  possible.

15          THE PROSPECTIVE JUROR:  Got it.

16          THE COURT:  And you can't ask for more proof than

17  what's been presented to you.  Could you convict based on

18  proof -- could you convict based on proof beyond a reasonable

19  doubt even if you thought --

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:   -- you want as much as possible?

22          THE PROSPECTIVE JUROR:  This is -- I don't mean to

23  parse hairs or split hairs.

24          THE COURT:  That's okay.  That's fair.

25          THE PROSPECTIVE JUROR:  What is the definition of

Prospective Juror No. 35                          172

1   reasonable that the Government uses or what's beyond a

2   reasonable doubt?  How do you define reasonable?

3            THE COURT:  It's exactly what it sounds like.  It's

4   not all doubt but it's reasonable doubt, so it's beyond a

5   reasonable doubt.

6            THE PROSPECTIVE JUROR:  Got it.  Yeah, I would

7   follow the instructions for that level of proof.

8            THE COURT:  And then you also had talked about your

9   hesitancy to convict based on a single witness without

10  corroboration.  The judge will instruct you that you could

11  convict on just the testimony of a single witness who's

12  cooperating with the Government if you found that witness to

13  be credible.  So could you do that or would you say no, I need

14  more, if you felt that that met beyond a reasonable doubt?

15           THE PROSPECTIVE JUROR:  I could get to I guess

16  beyond a reasonable doubt with one person if -- I'm so sorry.

17  Sorry.

18           THE COURT:  It's very abstract.

19           THE PROSPECTIVE JUROR:  It's so abstract, but I

20  guess all I could say is I would do my best.  I like want to

21  do the right thing and stuff and like I said, follow

22  instructions and all of that.

23           THE COURT:  And you think you could do it?

24           THE PROSPECTIVE JUROR:  Yeah.

25           THE COURT:  Last question is at one point you said

1   you would follow the judge's instructions on the law, and I

2   said even if you disagreed with it and you said well, you kind

3   of -- you might have been saying there would be a circumstance

4   where you wouldn't follow the law.  I just wanted to

5   understand whether that's the case or whether you would follow

6   the law even if you disagreed with it?

7            THE PROSPECTIVE JUROR:  I guess in the context of

8   being on a jury you're instructed to follow the law despite

9   any Personal convictions you might have otherwise, that's

10  correct, right?

11           THE COURT:  Uh-hum.

12           THE PROSPECTIVE JUROR:  So, yes, I would -- I would

13  do that if I was on the jury.  I think it would be hard if I

14  felt like there was a severe, like, miscarriage of justice.  I

15  would find it personally upsetting.  But if you're asking

16  whether I could do it under the instruction I've been given, I

17  could.  Does that make sense?

18           THE COURT:  Yes.  And then the follow up for you is

19  would you?

20           THE PROSPECTIVE JUROR:  Are you like -- if you tell

21  me to, I will, yes.

22           THE COURT:  Yes.  So if Judge Cogan said this is

23  what the law is and you think I don't agree with it, you would

24  still follow the law?

25           THE PROSPECTIVE JUROR:  Yeah.  It doesn't sound

1    particularly pleasant, I have to say.

2              THE COURT:  But you would do it?

3              THE PROSPECTIVE JUROR:  Yeah.

4              THE COURT:  All right.  Thank you.  Any follow-up

5    questions before we let this witness go back across the hall?

6              MS. KOMATIREDDY:  No, Your Honor.  Thank you.

7              MR. DE CASTRO:  No, Your Honor.

8              THE PROSPECTIVE JUROR:  Can I say one more thing?  I

9    think they could find another person.  I have to be honest.

10   I'm a little nervous about the potential impact on my career

11   not being around for this project.

12             I totally understand you guys need to do what you

13   need to do.  I wanted to say that.

14             THE COURT:  I appreciate that.  Let me ask you,

15   would that impact you're sitting on the jury?  Would you be

16   sitting there worried about your career or would you be

17   focused on the trial?

18             THE PROSPECTIVE JUROR:  In here, yeah, it's very

19   good, that you would get my full, undivided attention.  I

20   think after hours I will be thinking about work.  When I'm in

21   here, I will focus, yeah.

22             THE COURT:  Great.  Thank you so much.

23             THE PROSPECTIVE JUROR:  Thank you.

24             (Prospective juror 35 exits.)

25             THE COURT:  I heard her say very clearly she could

1  be fair, Your Honor.  I realize I may be trying the Court's

2  patience.  I think this person is trying to give the right

3  answers.

4          THE COURT:  No, she is actually trying to get out

5  of jury service because she's worried about her job.  So the

6  fact that she gave the answers that she did, I find her

7  credible.  So we're done.

8          Anything else --

9          MS. KOMATIREDDY:  No, Your Honor.

10          THE COURT:  -- beyond repeating what you said?

11          MS. KOMATIREDDY:  No.

12          THE COURT:  All right.  Juror No. 36.

13          (Prospective Juror No. 36 enters.)

14          THE COURT:  Hi, Juror No. 36.  You can put your bag

15  and your coat there if you want.

16          So I had a couple of follow-up questions for you.

17  You said that there would be a hardship for you sitting on

18  this jury because it's tax season.

19          THE PROSPECTIVE JUROR:  Correct.

20          THE COURT:  Can you talk about that?

21          THE PROSPECTIVE JUROR:  Correct.  I work for a top

22  12 accounting firm in Manhattan.  Our busy season starts next

23  week and that will run through until April 18th, the tax

24  deadline day.  During that time I will be devoting 60 to 70

25  hours per week, including weekends to my job.

1          THE COURT:  Okay.  How big is the firm that you work

2    with?

3          THE PROSPECTIVE JUROR:  We have -- this is only my

4    second year, so I'm brand-new to the company, but we have

5    offices across the country, as well as oversees.

6          THE COURT:  And would there be people who could

7    cover for you if you were called to serve on this jury?

8          THE PROSPECTIVE JUROR:  I'm already devoted to 400

9    hours for clients that I've been serving for the past six

10   months.  They're expecting me to get that work done.  I'm sure

11   it will be very difficult to find people, especially the

12   knowledge I have with the group.  I think that would be a

13   little difficult.

14         THE COURT:  The trial is scheduled to end in early

15   March.  You would have another month before the tax deadline.

16         THE PROSPECTIVE JUROR:  Correct, but these clients,

17   it could vary depending on a when they send their information

18   in, so this could be any time between February and, like I

19   said, April.

20         THE COURT:  You also said you have a vacation?

21         THE PROSPECTIVE JUROR:  Correct.  In two days.

22         THE COURT:  In two days?

23         THE PROSPECTIVE JUROR:  Correct.

24         THE COURT:  You're going to Vermont.

25         THE PROSPECTIVE JUROR:  Correct.

Prospective Juror No. 36                      177

1          THE COURT:  That can't be postponed.

2          THE PROSPECTIVE JUROR:  I took off already.  I have

3   scheduled PTO approved by my company.  I could potentially ask

4   them, but that has been approved for two weeks now.

5          THE COURT:  You say until the 23rd, would you be

6   coming back on the 23rd?

7          THE PROSPECTIVE JUROR:  Correct.  I would be leaving

8   Vermont on the 23rd in the morning.

9          Because the Court doesn't sit on Friday.  Friday

10  wouldn't be a problem?

11         THE PROSPECTIVE JUROR:  Uh-hum.

12         THE COURT:  But you're saying Thursday -- well,

13  actually, it's this week.  Trial won't even start necessarily.

14         THE PROSPECTIVE JUROR:  Correct.  I was just told to

15  put anything down, so I included that.

16         THE COURT:  Thank you.  Thank you for letting us

17  know.

18         You also talked about some law enforcement ties,

19  that you have a roommate and friends who are with NYPD, or

20  other police departments.

21         THE PROSPECTIVE JUROR:  Correct.  A lot of my

22  collegiate teammates -- I played sports in college -- they're

23  Nassau and Suffolk police, and my sister's boyfriend is NYPD

24  officer.

25         THE COURT:  And The fact that you have these

1   connections with law enforcement, would that affect your

2   ability to be fair?

3               THE PROSPECTIVE JUROR:  No.

4               THE COURT:  So you would assess the credibility of a

5   law enforcement witness just like anyone else?

6               THE PROSPECTIVE JUROR:  Correct.

7               THE COURT:  And You said you got some news

8   notifications about this case or about when El Chapo was

9   arrested.  Can you talk about that?

10              THE PROSPECTIVE JUROR:  Correct.  I have a bunch of

11  apps on my phone, just news apps.  I see a bunch different

12  notifications.  I just remember that I saw something after I

13  look at the statement A on the back of the packet just related

14  to individuals that were listed.  And I, you know, didn't

15  really open the notification.  I just saw it, deleted it, just

16  like a bunch of the other ones that I do.

17              THE COURT:  As you stand there today, do you have

18  any view on this case?

19              THE PROSPECTIVE JUROR:  No.  No.

20              THE COURT:  Would you be able to avoid the news --

21              THE PROSPECTIVE JUROR:  Yes.

22              THE COURT:  -- if picked?

23              THE PROSPECTIVE JUROR:  Yes.

24              THE COURT:  Okay.  And you say here you're not sure

25  if you would be paid your salary.

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  Can you talk about that?

3            THE PROSPECTIVE JUROR:  That's just because I'm

4    still new to the firm, I would say, that I don't know their

5    policy directly.  That's something that I would have to

6    inquire.

7            THE COURT:  So could you find out because we have

8    had some people who have told us that their employers, after

9    they have inquired, it turns out that they can pay them.

10            THE PROSPECTIVE JUROR:  Uh-hum.  I just don't know

11    if tax season would affect that.  I would have to get

12    clarification.  Like I said, it's just a lot of clients that I

13    cover and a lot of hours, I would have to see with them.

14            THE COURT:  Okay.  If you could make the inquiry and

15    then let the jury office know that I asked you to find out,

16    that would be useful.

17            THE PROSPECTIVE JUROR:  Will do.

18            THE COURT:  Any follow-up questions?

19            MS. KOMATIREDDY:  No, Judge.

20            MR. DE CASTRO:  No.

21            THE COURT:  Thank you.

22            THE PROSPECTIVE JUROR:  Thank you so much.

23            (Prospective juror 36 exits.)

24            THE COURT:  All right.  We will have Juror No. 44.

25            (Prospective Juror No. 44 enters.)

Prospective Juror No. 44                          180

1    THE COURT:  Hi, come on up to the podium.  You can

2    put your coat and bag down if you want.

3    How are you doing?

4    THE PROSPECTIVE JUROR:  Good.  How are you?

5    THE COURT:  Good.  I understand that you need to

6    leave a little bit early today because your husband is having

7    surgery.

8    THE PROSPECTIVE JUROR:  I'm asking to be excused

9    from jury duty actually.

10   THE COURT:  Go ahead.

11   THE PROSPECTIVE JUROR:  Can I continue?

12   THE COURT:  Go ahead.

13   THE PROSPECTIVE JUROR:  He has a knee surgery and it

14   has been cancelled for a few months.  They just got a

15   cancellation with a new doctor.  All of this unfolded

16   basically after the first visit to the jury duty and now he's

17   not going to be able to walk.  I have his doctor's letter.  He

18   cannot put weight on his knee and he's the one who takes my

19   kids to school in the morning.  And I have a five year-old and

20   nine-year-old.  I brought their birth certificates.  I realize

21   now that there was a form to fill out, you know, before you go

22   on jury duty.  But it also said four or five days, maybe

23   longer and, you know, the time -- I haven't been to jury duty,

24   and in four to five days he was able to -- he drops them off

25   in the morning and I pick them up afterwards.  I have an early

1    dismissal, 2:50.  I can pick them up within time, but now I

2    have to do everything and I won't be able to come in time.

3                MR. DE CASTRO:  We have no objection.

4                MS. KOMATIREDDY:  We have no objection.

5                THE COURT:  That's fine.  Thank you for letting us

6    know.  You are excused.

7                THE PROSPECTIVE JUROR:  Do you need this?

8                THE COURT:  I don't need that.  I take your word for

9    it.

10                THE PROSPECTIVE JUROR:  I really appreciate it.

11   Thank you.  Like I said, this unfolded like right --

12                THE COURT:  Sure.  I understand.

13                THE PROSPECTIVE JUROR:  Thank you so much.

14                THE COURT:  Thank you for your service.

15                THE PROSPECTIVE JUROR:  Have a good one.

16                THE COURT:  You too.

17                THE PROSPECTIVE JUROR:  Bye.

18                (Prospective juror 44 excused.)

19                THE COURT:  Okay.  Let's just take a quick break

20   here for the lawyers.  You can tell me if there are any for

21   cause motions that you didn't make that you would like to make

22   now.  Let's start with Mr. de Castro.

23                MR. DE CASTRO:  No, Judge.  Actually, let me just

24   confer with my colleagues.

25                THE COURT:  Okay.

1          MR. DE CASTRO:  We have no further cause.

2          THE COURT:  For the Government?

3          MS. KOMATIREDDY:  Yes, Your Honor, we have two, and

4   we have one request for a follow up that we thought about over

5   the break.

6          First, with respect to the follow up, Your Honor,

7   Juror No. 27, it's unclear to us --

8          THE COURT:  Hold on one second.  Juror No. 27.

9          MS. KOMATIREDDY:  Juror No. 27, in considering his

10  answers further, it seemed to be that he was worried.  He

11  mentioned that he had not gotten COVID yet and he had asked

12  about the mask wearing policy.  It's our understanding that

13  the masks will be optional, not mandatory.  I just wanted to

14  check that he would feel comfortable serving on a jury.  If

15  that's the case, the attorneys are not intending to wear

16  masks, the witnesses will not be wearing masks.  I just wanted

17  to mark that as a potential follow-up area for that juror.

18         THE COURT:  All right.  I can certainly ask him.

19  When people ask about COVID policies, it can go two ways,

20  right:  Some people don't want to wear masks because they're

21  uncomfortable and the others would rather that everybody wore

22  masks.  I don't remember which way it went.

23         Mr. de Castro?

24         MR. DE CASTRO:  I thought you were clear on that.

25  He asked the question.  You answered him and he said okay.

1    And that was sort of it.

2          THE COURT:  They are still here, so I can bring him

3    in and just ask him the question.

4          MR. DE CASTRO:  Yes.

5          THE COURT:  Because I'm not presiding, so I don't

6    set the courtroom policy, so I would just like to be clear on

7    what his concern is.

8          MR. DE CASTRO:  Correct.  I understand.

9          THE COURT:  Like I said, it goes two ways.

10          MS. KOMATIREDDY:  I want to make sure he is focused

11   on the evidence, Your Honor, and not his personal health.

12          With respect to Juror No. 29, I know there was some

13   back and forth about his -- whether he will be paid and he --

14   we don't yet have an answer on that; is that right, Your

15   Honor?

16          The one who Googled it.

17          (Continued on next page.)

18

19

20

21

22

23

24

25

Jury Selection                              184

1        THE COURT:  Juror 29 did the Google search and I
2   asked him to -- I think we wanted to hear from what the call
3   center said.  I don't think I told him that.  I can tell
4   him -- I can have him brought back and then ask him if he
5   heard from the call center.  And if not, to let us know as
6   soon as he does.
7        MS. KOMATIREDDY:  I'm not sure what the defendant's
8   position is on this, given his multiple ways of -- I
9   understand he has this issue with his mother, so we don't have
10  an objection, if the defense doesn't have objection, letting
11  him go for hardship.
12       MR. DE CASTRO:  We had no objection before.
13       THE COURT:  Okay.  So let him go for hardship?
14       MR. DE CASTRO:  Yes.
15       THE COURT:  Okay.
16       MS. KOMATIREDDY:  With respect to Juror No. 34, the
17  individual who indicated he's a landlord and would have issues
18  with tenants, that is not an issue.
19       Our concern is that in expressing that he believes
20  the U.S. is partially responsible for the situation with
21  respect to the drugs.  In response to Your Honor's question
22  whether he could be fair and impartial, he equivocated.  He
23  said:  I don't know; yeah, I think so, but in the back of my
24  mind that will always be there.  We thought that was
25  insufficient.  We were concerned that that is something that

Jury Selection                                    185

 1   will predisposition him to be biased against the government.

 2   We would ask to move to strike for cause on that.

 3          THE COURT:  Okay.  So I can ask him, even if it's in

 4   the back of his mind, whether he could set it aside.  I didn't

 5   write down that it will always be there, so I can clarify that

 6   part of it.  I heard him say:  I hope I can be fair.  I can

 7   press him again to the point where he would say either he

 8   doesn't know or I can't be fair or I believe I can be fair.

 9          MS. KOMATIREDDY:  And finally, Your Honor, on Juror

10   No. 9.  This is the juror who repeatedly stated that their

11   judgment would be colored by their view on cooperating

12   witnesses.  And they stated it would be colored by the fact

13   that they are a criminal, they're convicted, and they're

14   actually convicted of being a criminal and it's not just

15   hearsay.

16          We have two concerns.

17          One is that they repeatedly said -- again, in

18   response to Your Honor's questions, they kept caveating it

19   with:  I'll try my best, but my judgment will be colored.  We

20   don't think that that's unequivocal fairness and impartiality.

21          And second, in his reference to something being just

22   hearsay, I will note that quite a body of the evidence in this

23   case involves coconspirator statements, which are admissible

24   under the hearsay rules, but our concern is that he will not

25   accept the evidence, presented evidence, given his remark

1   about hearsay.

2           THE COURT:  So you're saying hearsay is permissible?

3           MS. KOMATIREDDY:  Hearsay is permissible,

4   Your Honor.  It will be permissible in this trial as evidence

5   in this case.

6           And my concern, again, is that this is another

7   instance of an individual who will not accept a witness's

8   testimony alone as sufficient, should that witness be found

9   credible.

10          THE COURT:  Well, he didn't say that.  But if he

11  said -- I didn't note the hearsay part of it.  And it

12  surprises me that hearsay -- normally people think hearsay

13  would not be admissible, let alone sufficient.  So if you're

14  saying that hearsay is permissible in this case and the Judge

15  instructs him so, whether he could follow that instruction?

16          MS. KOMATIREDDY:  Yes, Your Honor.

17          My concern is that an individual who is not a lawyer

18  coming in and saying it's just hearsay, that I interpreted as

19  someone saying something about someone else is not sufficient

20  proof.

21          THE COURT:  That's not always what people say.

22          MS. KOMATIREDDY:  It's not.  And if there's further

23  inquiry on that to clarify, I would appreciate it.  Our

24  concern is that, again, the evidence in this case consists of

25  witness testimony and I wouldn't want a juror who cannot

1  accept that the witness testimony alone can be sufficient

2  evidence.

3          THE COURT:  All right.

4          MR. DE CASTRO:  First of all, what she's talking

5  about is not hearsay.  And Judge Cogan will instruct them it

6  is not hearsay, coconspirator statements.  He's an intelligent

7  man, he understands, he'll follow instructions, but the

8  government wants followup.

9          THE COURT:  I can follow up just to say -- you know,

10  I didn't hear him say hearsay.  And I will inquire as to

11  whether he will be able to follow the instruction that there

12  does not have to be corroborating evidence.  Okay?

13          So can we get Jurors 27, 29, 34 and 9 lined up?

14          It should be very short.

15          Any order is fine.

16          (Prospective Juror No. 9 enters.)

17          THE COURT:  Hi, Juror No. 9.

18          I had a couple of followup questions for you.

19          You had said, when we talked this morning, that your

20  judgment would be colored with regard to cooperating

21  witnesses.  And you also said something along the lines of you

22  would want something more, like a corroborating evidence.

23          Maybe I wrote it down wrong, but did you say

24  something about how you -- can you talk a little bit more

25  about when you said your judgment would be colored?

Prospective Juror No. 9                    188

1        THE PROSPECTIVE JUROR:  Well, you had asked me if I

2   would be able to render fairly.  And I said that I would,

3   having heard everything.  Because if I just heard that they

4   had taken a deal and they were going to testify, it might be

5   colored.  But if there was more with it, I would be able to.

6        THE COURT:  And what would be the more?

7        THE PROSPECTIVE JUROR:  It would have to be in

8   context.  I wouldn't be able to answer that.

9        THE COURT:  If at the end of the day the more just

10  came in as part of their testimony, in other words, if there

11  wasn't physical evidence like fingerprints, you know, things

12  like that or somebody else saying it, if it was just on their

13  testimony, would that be something that you -- and the Judge

14  instructed you that testimony alone is sufficient to convict,

15  would you still want more or would you say okay, that's

16  enough?

17       THE PROSPECTIVE JUROR:  If the Judge instructed me,

18  I would accept it.

19       THE COURT:  And even if there was, that would be

20  enough, you would still say yes?

21       THE PROSPECTIVE JUROR:  Yes.

22       THE COURT:  Okay.  Was there any followup question?

23       MS. KOMATIREDDY:  No, thank you, Judge.

24       THE COURT:  Great.  Thank you so much.

25       (Prospective Juror 9 exits.)

1              (Prospective Juror No. 27 enters.)

2              THE COURT:  Hello.  You're juror No. 27?

3              THE PROSPECTIVE JUROR:  27.

4              THE COURT:  So you had told us this morning that you

5    had some concerns about COVID, you had a question about it.

6              THE PROSPECTIVE JUROR:  Right.  Yup.

7              THE COURT:  Was there a specific concern about

8    COVID?

9              THE PROSPECTIVE JUROR:  No.  I'm just worried about

10   getting it, you know, because I'm -- I'm not 70 yet, but close

11   to it.  So far, like I said, knock on wood, I haven't had it.

12   But I am a little concerned because a bunch of my friends who

13   hadn't gotten it have gotten it over the last month or so.  So

14   a little concerned.

15             THE COURT:  And would it concern you if you were

16   wearing a mask but other people weren't?

17             THE PROSPECTIVE JUROR:  Yeah, a little bit.  I mean,

18   I guess I could say I'll survive, in quotes, but it wouldn't

19   be a deal breaker.  But I'd be happier if I was wearing a mask

20   that was in a confined space.

21             THE COURT:  Okay.  Because I understand that the

22   parties presenting the case and the witnesses will not be

23   wearing a mask, but they would be far away.

24             THE PROSPECTIVE JUROR:  Yeah.  If I'm in the jury

25   box and everyone's wearing a mask or we're separated, you

1    know, that would probably be okay.

2            THE COURT:  But it might be a jury box that looks

3    like this one, where people are not very far apart.

4            THE PROSPECTIVE JUROR:  Yeah.  Well, if everyone was

5    wearing a mask in the jury box.  I don't know if that's

6    something the Judge would do, so that would be somewhat of a

7    concern, but I don't know if it would be a deal breaker or

8    not.

9            THE COURT:  Yes, I mean, I don't know, because some

10   people --

11           THE PROSPECTIVE JUROR:  Yeah.

12           THE COURT:  I will have a discussion with the

13   lawyers about that.

14           But if there were jurors who for some reason would

15   not wear a mask, would that be an issue for you?

16           THE PROSPECTIVE JUROR:  I guess if I could sit next

17   to the people -- if we have a masked and a non-masked section?

18           And a no-smoking section.

19           THE COURT:  Okay.  I hear you.  I hear you.  Thank

20   you for letting me know.  That's a good idea.

21           THE PROSPECTIVE JUROR:  Is that it?

22           THE COURT:  Yes.

23           THE PROSPECTIVE JUROR:  Thank you.

24           THE COURT:  Thanks.

25           (Prospective Juror No. 27 exits.)

1              (Prospective Juror No. 29 enters.)

2              THE COURT:  Juror 29, yes.  So you're excused.  You

3    can go to the second floor.

4              THE PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  All right.  Thank you.

6              (Prospective Juror No. 29 exits.)

7              (Prospective Juror No. 34 enters.)

8              THE COURT:  Hi.  Come up.  We have just a few

9    followup questions for you.

10             So earlier you said that you thought the

11   United States was partially responsible for the drug

12   situation.

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  And that it was in the back of your mind

15   and would always be there.

16             So I just wanted to clarify whether you could set

17   aside that thought and be fair to the parties in the case even

18   if the case involved drug trafficking?

19             THE PROSPECTIVE JUROR:  I'm not sure.

20             THE COURT:  You're not sure?

21             THE PROSPECTIVE JUROR:  Not sure.

22             THE COURT:  Okay.  What is causing you to be unsure?

23             THE PROSPECTIVE JUROR:  Well, I mean, the history of

24   making things illegal, like during Prohibition and stuff like

25   that, where, you know, if you make things illegal, basically

1  there's going to be a lot of criminality because there's

2  always going to be people trying to make profit off of it.

3  And they can make huge profits off of it if it's illegal.

4        THE COURT:  And, you know, those are policy

5  questions about whether it works or it doesn't work, if it's a

6  good idea or not a good idea.

7        THE PROSPECTIVE JUROR:  Of course.  I'm saying, if

8  you do that and then you say -- and then you go to people who

9  are profiting because of the illegality, then it's

10  questionable.

11        THE COURT:  And so how would that play out for you?

12  If you were to sit on the jury and you heard evidence that

13  convinced you beyond a reasonable doubt that a person was

14  guilty of drug trafficking, would you say I'm not going to

15  render a guilty verdict because I just don't think this is a

16  good idea?

17        THE PROSPECTIVE JUROR:  Yeah.  Maybe.  Maybe.

18        THE COURT:  Yeah?  Okay.

19        Even if the evidence was there?

20        THE PROSPECTIVE JUROR:  Yeah.  I think so.

21        THE COURT:  All right.

22        MR. DE CASTRO:  No objection.

23        THE COURT:  Thank you.

24        So why don't you go to the second floor.  You're

25  excused.

1      THE PROSPECTIVE JUROR:  Thank you very much.

2      (Prospective Juror No. 34 exits.)

3      THE COURT:  So I think that takes care of all the

4  morning people, as well as Juror No. 34.

5      Is there anything else before we bring in the

6  afternoon batch?

7      MS. KOMATIREDDY:  With respect to Juror No. 27,

8  Your Honor, I believe based on our observations of

9  Judge Cogan's policies, he does not require all the jurors to

10  wear masks.

11      THE COURT:  Yes, but I would think there could be an

12  accommodation for reshuffling the jurors either at the end,

13  for example, or next to jurors with masks.

14      MS. KOMATIREDDY:  We totally defer to the Court,

15  Your Honor.  I'm just letting you know.

16      THE COURT:  Okay.  So if you could -- if he ends up

17  being seated as a juror, remind Judge Cogan that we had this

18  discussion.  I'm sure he'll bring it up as well.  But I think

19  it could be done because it's just a question of moving people

20  around and you would have to keep track of where he's sitting.

21  But I will check with Judge Cogan as well, to see if that can

22  be accommodated.

23      MS. KOMATIREDDY:  Thank you, Judge.

24      THE COURT:  Okay.

25      So do the parties -- should we just go ahead and

1   launch in the afternoon batch and take a break after a

2   half-hour or so?

3            MS. KOMATIREDDY:  Yes.

4            MR. DE CASTRO:  That would be -- a break would be

5   great, Judge.

6            The only question I had was, we skipped 12.  I think

7   you said 12 didn't come, right?

8            THE COURT:  They didn't show up.

9            MR. DE CASTRO:  Okay.  Just making sure.  Thank you.

10           THE COURT:  No problem.

11           So since we've got a late start this afternoon,

12   should we just bring in Juror No. 37?

13           Oh.  Oh, yes, you're right.

14           So what I wanted to do is let the morning group go.

15   They don't need to come in tomorrow.  I don't think we're

16   going to be done and ready tomorrow, so we'll have them come

17   in 8:30 on Thursday.  So if we are ready for peremptories,

18   we'll do that then.  If we're not ready, then they can wait a

19   little bit until we're done.  If it looks like we're not going

20   to be done on Thursday, we can call them come back on Friday.

21   I'm sure nobody will have a problem with that.  But I don't

22   see a need for them to come back tomorrow.

23           Does anybody have any objection to doing it that

24   way?

25           MS. KOMATIREDDY:  No objections, Your Honor.  I

Case 1:19-cr-00576-BMC   Document 226   Filed 02/28/23   Page 195 of 338 PageID #: 13825

1   think it wouldn't be Friday, it would be Monday in that case.

2           THE COURT:  Why not?

3           MS. KOMATIREDDY:  Because the Judge doesn't want to

4   sit on Fridays.

5           THE COURT:  Yes, but I am here.  So I would take the

6   jury on Friday if we needed to.  We wouldn't start the trial

7   until Monday.

8           MS. KOMATIREDDY:  I understand.

9           THE COURT:  But if we haven't finished picking the

10  jury by Thursday, I intend to sit on Friday to pick the jury

11  so Judge Cogan could be ready to go Monday.

12          MS. KOMATIREDDY:  I understand, Judge.

13          THE COURT:  But in any event, I will ask the jurors

14  to be brought in so I can tell them to come back on Thursday

15  morning at 8:30.  Okay?  And then we'll bring the next.

16          Just the morning people.

17          (Prospective jurors enter.)

18          THE COURT:  Hello, everyone.  It's great to see you

19  all again.  I know you've all be patiently waiting since this

20  morning and I had a chance to speak with all of you.

21          MR. DE CASTRO:  I'm sorry to interrupt.  I'm so

22  sorry.

23          THE COURT:  That's okay.

24          MR. DE CASTRO:  Could we have a very, very quick

25  sidebar?

```
                          Sidebar                        196
```

1            THE COURT:  Apologies.  Let me talk to the lawyers

2    for a minute.

3            (The following occurred at sidebar.)

4            MR. DE CASTRO:  I'm sorry about that, Judge.

5            THE COURT:  That's okay.

6            MR. DE CASTRO:  We were just wondering if it made

7    sense for the Court's deputy, before they leave, to see if

8    they got answers on the pay.  Because some people were

9    calling.  We had six people, I think, that were still going to

10   give an answer.  Because of course if they got an answer, they

11   don't have to come tomorrow or whatever.  We don't think it

12   needs to be in open court, just if the Court's deputy wants to

13   inquire of those people.

14           THE COURT:  I didn't keep a list.

15           MR. DE CASTRO:  I have a list.  I will confirm.

16           THE COURT:  Okay.

17           MS. KOMATIREDDY:  Thank you, Judge.

18           (Sidebar ends.)

19           THE COURT:  All right.  Sorry about that.

20           So I know you've all been patiently waiting since

21   this morning.  So for you all, you're excused for the day.

22   And also, you don't have to come in tomorrow.  But please come

23   here on Thursday morning at 8:30 so that we can resume the

24   jury selection process.

25           There are a couple of other jurors.  You probably

1   saw them.  We'll be talking to them this afternoon.  There

2   will be some other jurors coming in tomorrow.  So we

3   anticipate that you don't need to come in tomorrow.  And you

4   don't need to call in to find out whether you need to come in.

5   Just come here Thursday morning at 8:30 and we will resume the

6   jury selection process.

7              Now, there are a couple of you who were supposed to

8   call your employers to find out whether you're going to get

9   paid during the jury service time.  So for those of you,

10  please, if you are on your way out, let my staff know if

11  you've already gotten an answer from your employer about your

12  pay.  You can let Lindsey know -- she's waving at you --

13  whether you know already.  And if you know, she'll write it

14  down.  If you don't yet have an answer, when you do know,

15  please call the jury office and let them know that Judge Kuo

16  is waiting to hear the answer to that question and relate it

17  to them.  And then we'll let you know the result of our

18  discussion.  Okay?

19             But for the rest of you who don't have an issue that

20  needs to be followed up on, we'll just see you here again

21  Thursday morning at 8:30.  And.

22             Then the rest of you, if you have that particular

23  question, please let Lindsey know what the situation is or

24  call the jury staff on Tuesday if you don't know.

25             Thank you again.  You've all been wonderful.  This

Jury Selection                              198

1   has been a very pleasant day.  And so we'll pick up again on

2   Thursday morning.  Thank you very much.  Enjoy your evening.

3            (Prospective jurors exit.)

4            THE COURT:  All right.  So shall we call in Juror

5   No. 37.

6            Before we do that, what would you like me to

7   question, this juror has a 99-year-old mother in the hospital,

8   so I'll start there.

9            MR. DE CASTRO:  For 37, I have 20, 35, 47, 48, 49,

10  56, 66, and there's a hardship.

11           THE COURT:  Okay.

12           MS. KOMATIREDDY:  That covers ours as well,

13  Your Honor.

14           THE COURT:  Okay.  For 20, Mr. De Castro, the person

15  says is an elected government official.  What do you want

16  to --

17           MR. DE CASTRO:  I thought we would just find out

18  if --

19           THE COURT:  Without revealing the identity.

20           MR. DE CASTRO:  What are you?  There's lots of

21  government officials in this case, so it's sort of one of

22  these.

23           THE COURT:  Oh, I see.  Okay.  So I can ask it that

24  way rather than identifying.

25           MR. DE CASTRO:  Right, exactly.

1           Where?  Like what kind of?  What kind of, really.

2           THE COURT:  Yes, got it.

3           And what kind of followup would there be?

4           MR. DE CASTRO:  Suppose, you know, just municipal

5    what level of government, what does that mean you do

6    generally?

7           THE COURT:  And then I would ask a followup question

8    if there is -- the defendant here was an elected government

9    official?

10          MR. DE CASTRO:  No.

11          THE COURT:  Was a government official.

12          MR. DE CASTRO:  A government official of a country

13   appointed, but selected I guess.

14          THE COURT:  Okay.  Great.

15          (Prospective Juror No. 37 enters.)

16          THE COURT:  Hi, Juror No. 37.  Come up here, please.

17          How are you doing?

18          THE PROSPECTIVE JUROR:  Fine.  Thank you.

19          THE COURT:  You can feel free to put your coat and

20   your bag on the chair.

21          We just had a few followup questions on the answers

22   you gave on the questionnaire.

23          And I'll start with your hardship answer.

24          You said your mother is in the hospital?

25          THE PROSPECTIVE JUROR:  Well, she's been released to

1  a nursing home, but she's been in and out of the hospital

2  since December 5th.

3          THE COURT:  I'm sorry to hear that.

4          What does that require of you in terms of care?

5          THE PROSPECTIVE JUROR:  Well, you know, essentially

6  she's -- I'm her power of attorney, so, you know, the nursing

7  facility where she is right now, I mean, they'll contact me if

8  they need to, you know, do anything or get permission to do

9  anything.

10          THE COURT:  And are they contacting you now,

11  throughout the day, or how does that work?

12          THE PROSPECTIVE JUROR:  Not throughout the day.  I

13  mean, I have -- you know, she has aides with her that do keep

14  in touch with us during the day.  But if there's, you know,

15  any kind of emergency, they would need to be able to reach me,

16  you know, essentially.

17          THE COURT:  Okay.  I mean, there are different

18  degrees --

19          THE PROSPECTIVE JUROR:  She's in heart failure.

20          THE COURT:  I see.  Okay.

21          So is it the kind of -- I hate to probe on this and,

22  you know, I don't want to sound heartless, but is it the kind

23  of situation where an emergency is likely to happen or it's

24  sort of in a steady state where it might happen, but you're

25  not sure?

1          THE PROSPECTIVE JUROR:  Well, she's not -- you know,

2    she's stable now.  And, you know essentially, you know,

3    anything could happen at any time because she's 99, and, you

4    know, her condition may be deteriorating.  But she's not in

5    hospice and nobody has, you know, told us that, you know, it's

6    imminent.

7          THE COURT:  Okay.  So let me move on to some other

8    questions.

9          You said that you're an elected government official.

10   I don't want you to identify yourself, but what level is it,

11   municipal, federal, state level?

12         THE PROSPECTIVE JUROR:  Town.

13         THE COURT:  Town.  Okay.

14         And in this case there is a government official on

15   trial, not elected but appointed.  Do you think that your

16   background would affect your ability to be fair and impartial

17   to this defendant?

18         THE PROSPECTIVE JUROR:  I don't think that

19   background would affect my ability to be fair and impartial.

20         THE COURT:  And then you also said that you -- you

21   expressed a view about the drug cartels.

22         Let me see what you wrote.  You believe El Chapo

23   Sinaloa Cartel and associates are drug dealers and murderers.

24   Can you tell me a little bit more about how that might affect

25   your ability to be fair and impartial in this jury?

1          THE PROSPECTIVE JUROR:  Well, I mean, essentially

2    there has been a lot of information about them for a long

3    period of time and, you know, I have to say, you know,

4    honestly, it's probably prejudiced my opinion about who they

5    are and what they do.

6          THE COURT:  Right.

7          THE PROSPECTIVE JUROR:  You know, I do think that

8    they present a great threat to this country and have been.

9          THE COURT:  And when you say "they"?

10          THE PROSPECTIVE JUROR:  Well, I would say the drug

11   cartels.

12          THE COURT:  Okay.  Well, this case will be about

13   whether a particular individual is involved in that.  And so

14   do you think you could be fair in assessing whether somebody,

15   specifically the defendant in this case, is guilty of the

16   crimes charged?

17          THE PROSPECTIVE JUROR:  I think that I can be fair

18   in any case.

19          THE COURT:  Have you already prejudged whether this

20   particular defendant is involved in the drug dealing?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  No.  Okay.

23          And of the things you've heard and read, have you

24   heard anything about Mr. Garcia Luna?

25          THE PROSPECTIVE JUROR:  I've never heard of him.

1              THE COURT:  No.  Okay.

2              Any followup questions?

3              Oh, wait.  I have one about law enforcement.

4              So you said that when you were running for office,

5      you were endorsed by police departments and unions and you're

6      very supportive of law enforcement.

7              Could you assess the testimony of a law enforcement

8      witness the same as any other witness or would you give them

9      more weight just because they're law enforcement?

10             THE PROSPECTIVE JUROR:  Well, I think that I could

11     assess their testimony the same as anybody else.

12             THE COURT:  Okay.  And would you be fair to both the

13     defendant and the prosecution in this case?

14             THE PROSPECTIVE JUROR:  I would be.

15             THE COURT:  All right.  Any followup?

16             MR. DE CASTRO:  47 and 48, Judge.

17             THE COURT:  Okay.  Let me see.

18             Ah, yes.  You said your son is in -- just graduated

19     law school.  Congratulations.

20             THE PROSPECTIVE JUROR:  Thank you.

21             THE COURT:  And passed the Bar and his application

22     is pending, including that he interned in a D.A.'s office.

23             So would the fact that your son worked for a D.A.'s

24     office impact your ability to be fair in this case, or would

25     you tend to favor prosecution?

1            THE PROSPECTIVE JUROR:  No, it wouldn't.

2            THE COURT:  And then you talked about your son had

3    applied for an EDNY internship.  Was that with the court or

4    the U.S. Attorney's Office?

5            THE PROSPECTIVE JUROR:  It was with the U.S.

6    Attorney's Office.

7            THE COURT:  And so again, it has to do with your

8    son's involvement with prosecutors' offices, would that affect

9    your ability to be fair, especially given that the government

10   is represented in this case?  I don't know whether or not he

11   was accepted or not with the internship.  So would it affect

12   your view of that office in any way?

13           THE PROSPECTIVE JUROR:  No.

14           MR. DE CASTRO:  Judge, can I ask which -- or can the

15   Court ask which U.S. Attorney's office?

16           THE COURT:  It was EDNY.

17           MR. DE CASTRO:  I'm sorry.

18           THE COURT:  Anything else?

19           MS. KOMATIREDDY:  No, thank you, Judge.

20           THE COURT:  Is there any reason you could not be

21   fair and impartial?

22           THE PROSPECTIVE JUROR:  No.

23           THE COURT:  Okay.  Thank you.

24           THE PROSPECTIVE JUROR:  That's it?

25           THE COURT:  You can go back across now.

1          (Prospective Juror No. 37 exits.)

2          THE COURT:  So I had some concern about his mother's

3    health and I don't know how the parties feel about it.  It's

4    so hard to predict if you have a mother who is 99 in the

5    hospital.

6          MR. DE CASTRO:  My only followup I was going to

7    suggest, Judge -- I didn't want to do it on the record -- just

8    to make sure his mind is not elsewhere.  He was just a little

9    bit --

10         THE COURT:  Yes, I could sense that.

11         MR. DE CASTRO:  It seems like he was sad and

12   concerned for her.  I want to make sure his mind isn't

13   elsewhere.

14         THE COURT:  And especially somebody who has to leave

15   their cell phone downstairs and if something should happen.

16         He didn't want to say that it's dire, but I did pick

17   up that vibe and I just wanted to see what the parties felt

18   about it.

19         MR. DE CASTRO:  That was my only request, that you

20   follow up just to make sure his mind -- he's not going to have

21   his phone during the day, his mind and he's going to give us

22   all of his attention.  That's all.

23         MS. KOMATIREDDY:  Your Honor, I was just curious to

24   hear his answers on that.  Hearing that she's stable, she's in

25   a nursing home, that gave me assurance that he's not there

Jury Selection                               206

1   responsible for her care on a day-to-day basis, unlike some

2   other jurors.  That's why I thought it was fine.  He's also

3   someone carrying out public duties every day and this is a

4   different type of public duty.

5          THE COURT:  Yes, but he doesn't have his cell phone,

6   you know, and understanding how things are when somebody is in

7   the hospital or the nursing home when things happen, even a

8   few hours delay sometimes is a problem.

9          I just wasn't sure how the parties felt about it.

10         MS. KOMATIREDDY:  We didn't have a concern.

11         THE COURT:  You don't have a concern?

12         MS. KOMATIREDDY:  We do not have a concern.

13         MR. DE CASTRO:  My concern is, I would like you to

14  follow up with him, Judge.

15         THE COURT:  Just about the mind?

16         MR. DE CASTRO:  Yes.  And what the Court expressed

17  regarding lack of contact with the outside world during the

18  day.

19         THE COURT:  Well, if the other juror is here, let's

20  have that juror come in and we can have 37 come back after

21  this.

22         So Juror 38 also has a hardship answer, so I'll

23  start there.

24         (Prospective Juror No. 38 enters.)

25         THE COURT:  Hi, Juror No. 38.  Come on up to the

1    podium, please.

2            THE COURTROOM DEPUTY:  You can put your things on

3    the chair if you would like.

4            THE COURT:  All right.  We just had a few followup

5    questions --

6            THE PROSPECTIVE JUROR:  Hi.

7            THE COURT:  - -based on your answers.

8            And I'll just start with your response to the

9    question about whether sitting on this trial would be a

10   hardship, and you said eight weeks would be a hardship.

11           THE PROSPECTIVE JUROR:  An incredible hardship with

12   my job, yeah.

13           THE COURT:  Okay.  Tell me about it.

14           THE PROSPECTIVE JUROR:  Oh.  Well, I basically

15   manage my department under my direct manager at work and we

16   run a multimillion-dollar-a-year business and it's very --

17           THE COURT:  How many dollar-a-year?

18           THE PROSPECTIVE JUROR:  Multimillion dollars.

19           And it would be very hard for me to be away for

20   really any duration because my coworker is on maternity leave

21   and I just started training somebody brand new.

22           THE COURT:  How big is your company?

23           THE PROSPECTIVE JUROR:  The company itself, it's a

24   worldwide company.  There's about 150 employees worldwide.  In

25   my specific office in New York, I think we have about 75

1    employees.

2              THE COURT:  How many?

3              THE PROSPECTIVE JUROR:  75.

4              THE COURT:  75?

5              THE PROSPECTIVE JUROR:  Yeah.

6              But each of our departments are very individual and

7    unique.  We don't have much interaction with, like, our other

8    products, I guess would best word it.

9              THE COURT:  Okay.  And what would happen if you're

10   not there?

11             THE PROSPECTIVE JUROR:  Orders wouldn't be placed,

12   orders wouldn't ship.  We would severely hinder a lot of our

13   customers' business, to be honest.

14             THE COURT:  Well, the good news is that the Court

15   doesn't sit on Friday, so you can still work on Friday.  So

16   you wouldn't be missing the four other days of work.

17             And if other people could fill in for you?

18             THE PROSPECTIVE JUROR:  There isn't because my

19   coworker is on maternity leave and I'm training somebody brand

20   new who, to be honest, is not grasping the job at all.  We're

21   a small team, three people.

22             THE COURT:  And if the things didn't get sent out

23   now but got sent out a little bit later?

24             THE PROSPECTIVE JUROR:  It's very -- it's time

25   sensitive.  I work in a production company.  We produce goods

1   out of China and we ship worldwide.  And our shipments are on

2   a constant basis, it's not -- we can't plan too much ahead

3   because it's a constantly evolving business.

4            THE COURT:  What kind of business?

5            THE PROSPECTIVE JUROR:  We produce chemicals.

6            THE COURT:  Chemicals?

7            THE PROSPECTIVE JUROR:  Mm-hm.

8            THE COURT:  For what kind of chemicals?

9            THE PROSPECTIVE JUROR:  It's various chemicals.

10           Polyvinyl alcohol is their biggest.

11           THE COURT:  For production?

12           THE PROSPECTIVE JUROR:  For production.

13           We produce it in China.  Its usage varies from

14  construction materials to toilet paper to paper towels to

15  packaging needs, construction needs.

16           But then we also have many smaller products, many

17  chemicals that have various uses.

18           THE COURT:  And then you also said you weren't sure

19  if you would be paid?

20           THE PROSPECTIVE JUROR:  My company has never told us

21  if we would be.  I would hope.  I would assume I would, but I

22  can't say for sure.

23           THE COURT:  Right.  Okay.  So that's something that,

24  if you could ask, just get some clarification on it.  Because

25  we've had several people tell us yes after they asked.

1          THE PROSPECTIVE JUROR:  Yes.  When I told them that,

2     you know, this is happening, what's going on, and they were

3     just, like, okay.

4          THE COURT:  Eight weeks just sounds like a lot.

5          THE PROSPECTIVE JUROR:  Exactly.  They're just like

6     umm.

7          THE COURT:  So I also wanted to ask you about the

8     answer you gave to one of the questions when you were asked

9     about single witness testimony, including a cooperating

10    witness.  And you said a single witness alone should never be

11    a deciding factor alone, there should always be something else

12    to convict.

13         THE PROSPECTIVE JUROR:  Yeah, because single

14    witnesses could be -- depending on the nature of what is being

15    discussed, it could be unreliable and I feel like there should

16    always be something supporting it.

17         THE COURT:  Well, if it turns out that the law says,

18    actually, you could convict just on testimony --

19         THE PROSPECTIVE JUROR:  Well, I'm not saying the law

20    is wrong.  It's just like me personally, I feel like, you

21    know.

22         THE COURT:  So if it turned out that you're being

23    asked to convict based on just a single testimony and you were

24    instructed that the law permits that, would you not do it?

25         THE PROSPECTIVE JUROR:  It's not that I wouldn't do

1   it.  I would just question it, you know, and just pay

2   attention to the details because --

3           THE COURT:  Well, paying attention to the details is

4   good.

5           THE PROSPECTIVE JUROR:  Yeah.

6           THE COURT:  But requiring more may not be because if

7   the law says -- you know, sometimes there isn't physical

8   evidence, for example.  But if you find the witness credible,

9   then it's --

10          THE PROSPECTIVE JUROR:  Yeah, it's situational.

11          You know, like I just, in some circumstances,

12  100 percent.  And in some circumstances, like, I really would

13  need something else to justify this.  It just depends on, you

14  know, the nature of what it is.

15          THE COURT:  Okay.  And then just to clarify, the

16  standard is beyond a reasonable doubt.

17          THE PROSPECTIVE JUROR:  Mm-hm.

18          THE COURT:  It's not 100 percent, right?

19          THE PROSPECTIVE JUROR:  Mm-hm.

20          THE COURT:  So it's not beyond all doubt, but beyond

21  a reasonable doubt.

22          THE PROSPECTIVE JUROR:  Right.

23          THE COURT:  So if you heard testimony and there was

24  no physical or corroborating evidence, there was testimony

25  from one person and you thought that person was credible,

Prospective Juror No. 38                    212

1   could you then convict based on that or are you going to say

2   testimony is not enough, I need more?

3                THE PROSPECTIVE JUROR:  It would depend on the

4   circumstances, but I would think probably.

5                THE COURT:  Okay.  So could you envision a

6   circumstance where you would convict on just testimony?

7                THE PROSPECTIVE JUROR:  Honestly, no.

8                THE COURT:  No?

9                THE PROSPECTIVE JUROR:  I don't.

10               Unless you're standing, like, this close to

11  something and you're seeing it happening with your own eyes.

12               THE COURT:  Well, if that person was standing there

13  and saw it with his own eyes and told you about it, would that

14  be enough or that still wouldn't be enough?

15               THE PROSPECTIVE JUROR:  It would depend on what the

16  situation is.  Like I can't say without, like, context.  It

17  would be hard to dispute, but I couldn't say with absolute

18  certainty.

19               THE COURT:  Okay.  So you can't say with absolute

20  certainty --

21               THE PROSPECTIVE JUROR:  That I would believe it.

22               THE COURT:  -- that you would believe it?

23               THE PROSPECTIVE JUROR:  Mm-hm.

24               THE COURT:  But you can't -- it's a little bit --

25  these are very difficult questions because they're so

1   hypothetical, right?

2           THE PROSPECTIVE JUROR:  Yeah, that's exactly what it

3   is.  Yeah.  Like, I want to say, yeah, I would if it was that,

4   you know.  But based on circumstances, based on context, you

5   know, I couldn't say that 100 percent I would find that

6   believable or not believable, but.

7           THE COURT:  So the question is -- let me lay out a

8   hypothetical.  If a witness testified and you learned that the

9   person was testifying as a result of a cooperation agreement

10  with the government and the person testified as to something

11  that he knew or saw and then there wasn't any corroboration,

12  the only person that says that nobody else was there, nobody

13  else can corroborate it and then the Judge instructed you that

14  that could be enough, right, you don't need other things,

15  right?

16          THE PROSPECTIVE JUROR:  Yeah, I just -- in my bones,

17  I just can't accept that.  I'm sorry.

18          THE COURT:  Okay.

19          Any objection?

20          MR. DE CASTRO:  No.

21          MS. KOMATIREDDY:  No objection.

22          THE COURT:  Thank you for being upfront with us

23  here.

24          THE PROSPECTIVE JUROR:  Like, I want to say it would

25  be enough, but I just know there would always be something in

1   my mind saying no.

2           THE COURT:  Thank you for being forthright with us.

3           You're excused, so go back to the jury room on the

4   second floor.

5           THE PROSPECTIVE JUROR:  Thank you.

6           (Prospective Juror No. 38 excused.)

7           THE COURT:  Bring Juror 37 back.

8           (Prospective Juror No. 37 enters.)

9           THE COURT:  37, so thank you for coming back.

10          I just had a followup question for you.

11          We've talked a bit about your mother's situation and

12  I wanted to know, if you were picked as a juror, would you be

13  able to focus on the evidence in this case or would you be

14  distracted by your mother's situation?

15          THE PROSPECTIVE JUROR:  Well, essentially, you know,

16  I would -- I'm able to function and go to work and do what I

17  need to do.  But, you know, my biggest concern is that, you

18  know, if something happens to her during this case and during

19  this trial.  You know, you mentioned that it might be eight

20  weeks or more and, you know, I just -- I don't know what --

21  how that would be handled, especially if, you know, somehow

22  she took a turn for the worst and passed away right during the

23  trial, like worst case scenario.

24          THE COURT:  I understand.

25          MR. DE CASTRO:  No objection.

1              THE COURT:  Okay.  Thank you for letting us know.

2     You're excused.

3              THE PROSPECTIVE JUROR:  Thank you.

4              THE COURT:  Okay.  Thank you.

5              (Prospective Juror No. 37 exits.)

6              MS. KOMATIREDDY:  I'm sorry, Your Honor, we didn't

7     consent to that.  I didn't say a thing.

8              THE COURT:  I --

9              MS. KOMATIREDDY:  I understand Mr. De Castro said no

10    objection.

11             THE COURT:  I made the decision.

12             Do you want to be heard?

13             MS. KOMATIREDDY:  Well, I guess it's too late.

14             THE COURT:  Well, no.  If you want, I'll hear you.

15             MS. KOMATIREDDY:  I think, Your Honor, I understand

16    that personal emergencies can happen during a trial.  We're

17    going to have six alternates.  If we had to lose one for that

18    reason, that's okay.  I had a trial where someone's mother

19    passed away, we took a week off and resumed because it was a

20    long trial.  That happens sometimes.  There's no for-cause

21    reason.  That's not a for-cause reason to strike.  The person

22    is stable.  She could live months, years or weeks, we don't

23    know that.  But he's someone who continues to go work and he

24    can come to jury service.

25             THE COURT:  Well, I will put on the record that my

1  observation of his demeanor is that he is very affected by his

2  mother's situation and even though he said he would function

3  -- as he said, he said I am able to function -- he seemed

4  emotionally affected by her situation to have a 99-year-old

5  mother who was in the hospital and has just been released to

6  the nursing home.  That is not an ideal situation to me.  She

7  may be stable enough to leave the hospital, but the likelihood

8  of something happening, I think, is greater than is necessary

9  risk to take in this case.  So given the totality of those

10  circumstances, I am excusing him.

11          All right.  Let's go to Juror No. 40.

12          MR. DE CASTRO:  I think we're on 39.

13          THE COURT:  Are we on 39?

14          MR. DE CASTRO:  I think so.

15          Am I wrong?

16          THE COURT:  I don't have 39.

17          MR. DE CASTRO:  Sorry.

18          THE COURT:  Okay.  So Juror 40.

19          MR. DE CASTRO:  I have 55, 56, and 71.

20          THE COURT:  Anything from the government?

21          MS. KOMATIREDDY:  Number 55, Your Honor.

22          THE COURT:  Juror No. 40.

23          (Prospective Juror No. 40 enters.)

24          THE COURT:  Hi, Juror No. 40.

25          Step up to the podium, please.

1           How are you doing?

2           THE PROSPECTIVE JUROR:  Hello.  Good.

3           THE COURT:  Good.

4           So I just had a couple of followup questions based

5    on the answers you gave.

6           You were asked about any personal feelings about the

7    United States Government prosecuting someone whose alleged

8    conduct occurred mainly outside the United States, and you

9    wrote the government where activity took place should

10   prosecute.

11          THE PROSPECTIVE JUROR:  Correct.

12          THE COURT:  So if it turns out that the -- if the

13   Judge instructs you in this case that the case can be

14   prosecuted here, you know, the law is settled, that there's

15   authority to prosecute here, would you follow the Judge's

16   instruction or would you still say I'm not going to convict

17   because I don't think it should be prosecuted here?

18          Do you understand the question?

19          THE PROSPECTIVE JUROR:  Are you saying convict

20   versus, you know, deliberate?

21          THE COURT:  Okay.  So tell me.

22          THE PROSPECTIVE JUROR:  Follow what the Judge says

23   and based on what I would deem -- yeah, I would deliberate,

24   sure.

25          THE COURT:  Okay.  Well, I'm not saying you should

1    convict before you heard the evidence.

2            THE PROSPECTIVE JUROR:  It sounded like that.

3            THE COURT:  I apologize.

4            THE PROSPECTIVE JUROR:  I didn't want to --

5            THE COURT:  No, no, no, no.  I take your point.

6    Thank you.  Thank you for pointing that out.

7            What I mean to say is, since you said that you don't

8    think the government should -- when you say here the

9    government where the activity took place should prosecute.

10           THE PROSPECTIVE JUROR:  Correct.

11           THE COURT:  And so if some of the activity didn't

12   take place in the United States but it were being prosecuted

13   here, would that affect your ability to be fair and impartial?

14           THE PROSPECTIVE JUROR:  No.

15           THE COURT:  No.  Okay.

16           So you would accept the Judge's instruction that --

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT: -- that can be prosecuted here and you

19   should deliberate?

20           THE PROSPECTIVE JUROR:  Yes.

21

22           (Continued on the next page.)

23

24

25

1   (Continuing.)

2          THE COURT:  And then you said here -- the question

3   is about legalization of drugs and you said it should all be

4   legal.  So tell me about that.

5          THE PROSPECTIVE JUROR:  Well, I just see it as,

6   historically, the government has used it as a way to subjugate

7   a certain class of people.  So, I don't -- because of that,

8   should there be any, you know, should there be legal or

9   illegal, I don't think there should be.  The whole basis of

10  the law around, you know, the narcotics is, you know, is it to

11  be legal or illegal.  I don't think so only because, you know,

12  the basis of the foundation of those laws is based on the

13  subjugation of people.

14         THE COURT:  So if you were picked as a juror in this

15  case and the judge instructed you that importation of cocaine

16  is illegal, would you still be fair?

17         THE PROSPECTIVE JUROR:  Correct.

18         THE COURT:  Okay.  And could you apply that law --

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  And I know you said earlier that I said

21  convict versus deliberate, but what I do mean in this case, is

22  if you found that the government presented proof beyond a

23  reasonable doubt of this defendant's involvement in the drug

24  trade and met all of the elements of the crime, could you

25  convict, or would you say I don't believe in these laws,

1  therefore, I'm not going to convict?

2            THE PROSPECTIVE JUROR:  Yeah, I would -- yes.

3            THE COURT:  Okay.  Just to clarify, yes?

4            THE PROSPECTIVE JUROR:  To convicting, yes.

5            THE COURT:  So you would apply the law as the judge

6  told you, even if you disagree with it?

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  Okay.  I'm not saying you should, I'm

9  just saying could you?  You have to listen to the evidence,

10 assess credibility and find that the government has proven its

11 case beyond a reasonable doubt.

12           THE PROSPECTIVE JUROR:  Yes.

13           THE COURT:  Is there any reason you could not be

14 fair in this case to both the government and the defendant?

15           THE PROSPECTIVE JUROR:  No.

16           THE COURT:  You mentioned that you're not sure if

17 you would get paid if you were picked as a juror.  What kind

18 of employer do you have?

19           THE PROSPECTIVE JUROR:  I work for -- tell you the

20 name?

21           THE COURT:  No, don't tell me the name but what kind

22 of business?

23           THE PROSPECTIVE JUROR:  Finance.

24           THE COURT:  So can you find out if they'll pay you

25 for the eight weeks that you'll be sitting on the jury?

1         THE PROSPECTIVE JUROR:  I -- I have a flexible

2  schedule, so I'll do my work before and after so it wouldn't

3  affect.

4         THE COURT:  So that issue is not an impediment to

5  your sitting on the jury?

6         THE PROSPECTIVE JUROR:  No.

7         THE COURT:  Okay, great.  Is there any reason you

8  could not be a fair and impartial juror in this case?

9         THE PROSPECTIVE JUROR:  No.

10        THE COURT:  No?  All right.

11        Any follow-up questions?

12        MS. KOMATIREDDY:  I do have one, Your Honor.  May I

13  approach?

14        THE COURT:  Do you have a number?

15        MS. KOMATIREDDY:  It's a substantive question.

16        THE COURT:  It's something different?

17        MS. KOMATIREDDY:  Yeah.

18        THE COURT:  You know what, juror 40, can you just

19  step out for a minute, let me talk to the lawyers.  Or do you

20  want to do the sidebar?

21        MS. KOMATIREDDY:  Either one, Your Honor, whichever

22  you prefer.

23        THE COURT:  Okay.

24        (Prospective juror number 40 exits.)

25        MS. KOMATIREDDY:  Your Honor, given the juror's

Prospective Juror No. 40                    222

1    comments that historically the government has used drug laws

2    as a way to subjugate a certain class of people, does the

3    juror have any animis or bias against the government that

4    would make it difficult for him to be fair and impartial

5    either hearing evidence from government witnesses or hearing

6    argument from government lawyers.

7               THE COURT:  Okay.  You can bring him back.

8               (Prospective juror number 40 enters.)

9               THE COURT:  All right, juror 40.  I just have a

10   follow-up question for you.  You said earlier that you believe

11   historically, the government has used the drug laws to

12   subjugate a certain class of people.  I want to find out if

13   you have any anonymous or bias towards the government that

14   would get in the way of your being fair and impartial

15   assessing the testimony of government witnesses and also

16   hearing argument from government lawyers?

17              THE PROSPECTIVE JUROR:  I know I shouldn't, but I

18   still -- you know, I will put a higher burden on the people on

19   the government.  To your question, yes, I would.  Yes.

20              THE COURT:  Okay.  And you couldn't put that aside,

21   or could you?

22              THE PROSPECTIVE JUROR:  I would try, yeah.

23   Absolutely, I would try.

24              THE COURT:  Okay, and that's great.  Do you think

25   you could?

Prospective Juror No. 41                    223

1          THE PROSPECTIVE JUROR:  I think the answer for me is

2   in the grays.  I don't think I could say yes or no to that.

3   Sorry.

4          THE COURT:  No, that's okay.  We want you to be

5   truthful, so that's a good degree of honesty.

6          MR. DE CASTRO:  No objection.

7          THE COURT:  Thank you very much for your service.

8   You're excused.

9          (Prospective juror number 40 is excused.)

10          THE COURT:  For Juror No. 41, I only have 43, where

11   a friend is incarcerated.  Is there anything else?

12          MR. DE CASTRO:  I think -- I believe, if I'm not

13   incorrect, they also checked the 71, but that's all I have, as

14   well.

15          THE COURT:  You're right.

16          For the government?

17          MS. KOMATIREDDY:  Sorry, Your Honor, just looking.

18   The same, Your Honor, 43.

19          THE COURT:  Okay.

20          (Prospective juror number 41 enters.)

21          THE COURT:  Hi, Juror No. 41.  You can come up to

22   this podium and if you want to, put your bag or your coat on

23   the chair, feel free.  I just have a couple of follow-up

24   questions based on the answers you gave on the questionnaire.

25   You can keep your mask on or you can take it off.  Whatever is

1  comfortable for you.  You indicated you had a friend who is

2  incarcerated?

3         THE PROSPECTIVE JUROR:  Yes.

4         THE COURT:  Can you tell me what that is for?

5         THE PROSPECTIVE JUROR:  That is before I -- long

6  before I met him.  It is -- I don't remember the exact, but he

7  is on the sex offender registry, but -- and he passed away on

8  December 7th last year, but he was cleared somewhere in

9  January of last year, and that's all.  But he wasn't a threat

10 to me at all.

11        THE COURT:  Right, okay.  And do you feel that he

12 was treated fairly by the justice system or unfairly?

13        THE PROSPECTIVE JUROR:  I don't know because

14 before -- he was out when I met him and he -- I think in

15 general -- generally, he was brought down and he was taken off

16 the registry.

17        THE COURT:  Okay.  And, so, the important thing is

18 to know whether that will affect your ability to be fair and

19 impartial.

20        THE PROSPECTIVE JUROR:  Yes, because -- because

21 before I met him, and those decisions were made long before I

22 met him, so.

23        THE COURT:  All right.  So you could be fair to the

24 government and to the defendant in this case?

25        THE PROSPECTIVE JUROR:  Yes, yes.

1              THE COURT:  Okay, great.  You also said you weren't

2      sure if you would get paid if you were sitting on the jury?

3              THE PROSPECTIVE JUROR:  I clarified that.

4              THE COURT:  You can find out?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Can you do that and then call the jury

7      office and then --

8              THE PROSPECTIVE JUROR:  No.  I think I'm getting

9      paid.  I know about that.

10             THE COURT:  Oh, you know about it?  Because you have

11     here you're not working right now.

12             THE PROSPECTIVE JUROR:  Yes, I am unemployed.

13             THE COURT:  Okay.  So then that is okay.

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  And then you will get paid the jury fee.

16     That will be fine.  Great.

17             Any follow-up questions?

18             MS. KOMATIREDDY:  Not from the government.  Thank

19     you.

20             THE COURT:  Is there any reason you cannot be a fair

21     and impartial juror?

22             THE PROSPECTIVE JUROR:  No.  I will be impartial and

23     I will abide by -- you know, I can be impartial, you know, all

24     of that.

25             THE COURT:  Okay, wonderful.  Thank you so much.

1   You can go back across the hall.

2         THE PROSPECTIVE JUROR:  Okay, thank you.  I have to

3   go back and sit in --

4         THE COURT:  Yeah, just go back in the room.  It

5   won't be very long.  We're toward the end of the day.  Take

6   your time.

7         THE PROSPECTIVE JUROR:  Thank you very much.

8         (Prospective juror number 41 exits.)

9         THE COURT:  Juror No. 45.

10        MS. KOMATIREDDY:  Your Honor, questions 40, 43, 52,

11  56, and 58.

12        MR. DE CASTRO:  And the hardship.

13        THE COURT:  Yup, but I think that's a Florida

14  vacation at the end of March.

15        MR. DE CASTRO:  Yeah, I mean, it's just the inquiry.

16        THE COURT:  All right.  So let's bring the juror in.

17        (Prospective juror number 45 enters.)

18        THE COURT:  Hi, Juror No. 45.  How are you doing?

19        THE PROSPECTIVE JUROR:  Good.  How are you?

20        THE COURT:  Good.  We just have a few follow-up

21  questions based on the answers you gave.  So the first thing

22  is that you said you or someone you know was a victim of some

23  robberies -- oh, it says you, that it happened to you.  So can

24  you tell me if the fact that you were a victim of a robbery in

25  those instances would affect your ability to be fair in this

1   criminal trial?

2           THE PROSPECTIVE JUROR:  No, it wouldn't affect it.

3           THE COURT:  And you didn't report it; is that right?

4           THE PROSPECTIVE JUROR:  No.

5           THE COURT:  All right.  So, you also said that you

6   or someone you know had some contact with law enforcement

7   either by being stopped or investigated or arrested?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  Can you just tell me a little bit more

10  about what happened?

11          THE PROSPECTIVE JUROR:  That's my brother, who is

12  deceased, and this was in the early eighties when he first

13  started getting in trouble.

14          THE COURT:  Yes, you did mention that in one of the

15  others answers.  Robbery and there was a probation violation,

16  right?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Would the fact that you your brother

19  went through that affect your ability to be fair in this case?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Do you feel that he was treated fairly

22  or unfairly?

23          THE PROSPECTIVE JUROR:  Yes.  My brother, yes.

24          THE COURT:  You mentioned you heard that El Chapo

25  was arrested but you didn't follow-up because you weren't

1  interested?

2          THE PROSPECTIVE JUROR:  Yeah.  This was I think a

3  few years ago, I heard something in the news but honestly, I

4  wasn't interested in that stuff, but.

5          THE COURT:  Okay.  Well, this trial has some

6  connection to that.  Do you feel like what you already know

7  has predisposed you to --

8          THE PROSPECTIVE JUROR:  No, because I don't remember

9  too many details.  I feel like this was awhile ago.

10  Definitely before Covid, so more than three years ago, I think

11  I heard something, but, again, I don't have T.V., so.

12          THE COURT:  Okay.  It's on the radio too, sometimes.

13  All right.  And you also said you're a little annoyed that

14  marijuana has been legalized.  Can you tell me a little bit

15  more about the views on the drug laws?

16          THE PROSPECTIVE JUROR:  Yeah.  I smell it in my

17  neighbor, I smell it when I'm out and about.  I feel like it's

18  always in my face now.  Who wants to smell that.  I'm not into

19  using drugs so it's kind of annoying having to smell marijuana

20  in the neighborhood.

21          THE COURT:  Yeah, okay.  This case involves

22  allegations of importation of cocaine.  Do you have any strong

23  views about that?

24          THE PROSPECTIVE JUROR:  No.  No.

25          THE COURT:  All right.  And then you also mention

1   your brother suffering from drug addiction.  Would that

2   experience affect your ability to be fair to both the

3   defendant and the prosecution in this case?

4            THE PROSPECTIVE JUROR:  No, it wouldn't affect it.

5            THE COURT:  Okay.  And then finally, you said

6   there's a scheduling issue because you've got a vacation in

7   Florida but that doesn't start until March 19th?

8            THE PROSPECTIVE JUROR:  Correct.

9            THE COURT:  Okay.  So I think the parties are fairly

10  confident we'll be done by then.  Is there any reason that you

11  could not be fair and impartial and serve on this jury?

12           THE PROSPECTIVE JUROR:  No, not at all.

13           THE COURT:  Wonderful.  Thank you very much.

14           THE PROSPECTIVE JUROR:  Thank you.

15           (Prospective juror number 45 exits.)

16           THE COURT:  So Juror No. 46 does not have anything.

17  I will just ask if this juror has any reason --

18           THE COURTROOM DEPUTY:  No show.

19           THE COURT:  Oh, 46 didn't show up.  So we'll put 46

20  aside.

21           THE COURTROOM DEPUTY:  Forty-six did not appear.

22           MR. DE CASTRO:  Got it.

23           THE COURT:  So let's move on to 48.  So this is -- I

24  have sister has a pending case in Manhattan federal court.

25           MR. DE CASTRO:  I have 35, 38, 44, 49, 55, and 68.

1          MS. KOMATIREDDY:  Forty-one from us, Your Honor.

2          THE COURT:  Forty-one.  Forty-one is not answered.

3     Is that why you want me to ask?

4          MS. KOMATIREDDY:  Yes, Your Honor.

5          THE COURT:  But forty-one is a follow-up to 40 where

6     the answer was no.

7          MS. KOMATIREDDY:  Sorry, that's our mistake.

8          THE COURT:  Okay.  So let's bring in Juror No. 48.

9          (Prospective juror number 48 enters.)

10         THE COURT:  Hello, Juror No. 48.  You can come up to

11    this podium.  If you want to drop your bag and coat off on the

12    chair, feel free and you can also leave your mask on or take

13    it off if you're more comfortable.

14         THE PROSPECTIVE JUROR:  Thank you.

15         THE COURT:  We have a couple follow-up questions for

16    you.  You mentioned you have a sister who has a pending case

17    in Manhattan federal court.  Do you think that experience

18    would affect your ability to be fair and impartial in this

19    case in Brooklyn federal court?

20         THE PROSPECTIVE JUROR:  I know that I put on the

21    paper -- I don't know, and I want to believe I won't be bias

22    but I don't really know.

23         THE COURT:  Okay.  So can you talk a little bit

24    about what is causing you not to feel confident in that

25    answer?

Prospective Juror No. 48                    231

1      THE PROSPECTIVE JUROR:  Not just trusting the

2  system, so.

3      THE COURT:  Okay.

4      THE PROSPECTIVE JUROR:  And, like, my sister has

5  similar kind of charges.  She's a government Employee, as

6  well, so it's very similar.  I just don't know.

7      THE COURT:  So when you say you don't trust the --

8  and you said that in an answer to one of the questions, you

9  said I don't fully trust those agencies, government agencies.

10      THE PROSPECTIVE JUROR:  Yes.

11      THE COURT:  Can you be a little bit more specific?

12      THE PROSPECTIVE JUROR:  With my experience with all

13  my family members who have been in the justice system, I just

14  don't trust it.  Like I stated, all my mother's nephews have

15  been in prison for drug-related offenses, so I just don't feel

16  comfortable, like, have full trust in it.

17      THE COURT:  And how would that lack of trust show

18  up?  Would that affect your believing testimony?  Would it

19  affect your not listening to government lawyers or not

20  following the judge's instructions?  Tell me a little bit.

21      THE PROSPECTIVE JUROR:  I would follow the judge's

22  instructions, but the answer prior to that, I don't know if I

23  would believe certain things or be -- I don't want to say bias

24  but some -- I don't know, I guess I'm a good judge of

25  character, but I don't know if my sister's case would be in my

1   head like what if this was her, type of situation and I don't

2   want to do that.

3           MR. DE CASTRO:  No objection.

4           MS. KOMATIREDDY:  No objection.

5           THE COURT:  Okay.  Thank you for letting us know.

6   You're excused.

7           THE PROSPECTIVE JUROR:  Okay.

8           THE COURT:  Go back to the second floor.

9           (Prospective juror number 48 is excused.)

10          THE COURT:  So Juror No. 49 has a hardship answer,

11  mother struggled with addiction and was incarcerated 43, 58,

12  and 69.  Anything else?

13          MS. KOMATIREDDY:  That's all we had, Your Honor.

14          MR. DE CASTRO:  I'm sorry, Judge --

15          THE COURT:  And 71.

16          MR. DE CASTRO:  Yes.  Thank you.

17          THE COURT:  Okay.

18          Juror No. 49.

19          (Prospective juror number 49 enters.)

20          THE COURT:  Good afternoon, Juror No. 49.  Come up

21  here.  You can leave your coat on the chair.

22          THE PROSPECTIVE JUROR:  Thank you.

23          THE COURT:  We just had a couple of follow-up

24  questions for you.

25          THE PROSPECTIVE JUROR:  Sure.

Prospective Juror No. 49                    233

1        THE COURT:  And I'll start with your hardship

2   answer.  You said you have an 18-month old son and you might

3   have some child care issues?

4        THE PROSPECTIVE JUROR:  Yeah, that's right.  We have

5   a nanny as needed, but if she has to come full-time, that's

6   going to become a little cost prohibitive for us, especially

7   with only one income coming in right now.

8        THE COURT:  Are you working?  Because it's not clear

9   here what your work situation is.

10       THE PROSPECTIVE JUROR:  I'm not working currently.

11  I'm a freelance film editor.  My jobs go project to project,

12  and in between projects, I'm usually in search of the next

13  one.  I can say, if this goes eight weeks as it is indicated,

14  possibly doing that that would potentially affect my ability

15  to jump on the next opportunity that's coming along.  They

16  come up rather quickly but I can't usually -- I already know

17  of a few that are going to come up within that time and if

18  I -- if I'm in jury duty, that might have some impact on my

19  next job.

20       MR. DE CASTRO:  We have no objection.

21       MS. KOMATIREDDY:  No objection, Your Honor.

22       THE COURT:  All right.

23       Thank you, you're excused.

24       THE PROSPECTIVE JUROR:  Thanks a lot.

25       THE COURT:  You can go back to the second floor.

1           THE PROSPECTIVE JUROR:  Yup.

2           (Prospective juror number 49 is excused.)

3           THE COURT:  Juror No. 50 has a lot of answers.

4    Where do we start?

5           THE PROSPECTIVE JUROR:  49 and 50, Your Honor, to

6    start.

7           THE COURT:  Okay.

8           MR. DE CASTRO:  We have 2, 36, 44, 49, and 57.

9           THE COURT:  Okay.  Juror No. 50.

10          (Prospective juror number 50 enters.)

11          THE COURT:  Hi, Juror No. 50.  Come up to the

12   podium.  You can leave your coat and things on the chair if

13   you would like.  We just have a couple of follow-up questions

14   based on the answers you gave on the questionnaire, and I will

15   start with your statement that you believe the War on Drugs

16   did a lot of damage to our country and you said

17   President Nixon is a disgrace for us.

18          So can you tell us a little bit more about how that

19   might affect your ability to be fair in this case?  Can you

20   just move a little bit closer to the podium because there's a

21   microphone there.  That's great.

22          THE PROSPECTIVE JUROR:  I do feel that even though

23   the purpose of the War on Drugs was to try to stop drugs in

24   the streets.  I think it is just -- just negative.  I mean,

25   for a current case like this, honestly, doesn't really matter.

1  Like, if you did this crime, then you did the crime and you

2  should suffer whatever repercussions.  So I'll say it

3  shouldn't really affect me.

4          THE COURT:  Okay.  So let me just see if I can

5  explore that a little bit more.  So could you set aside your

6  feeling about the War on Drugs and look on the evidence just

7  in this case and this defendant who is on trial?

8          THE PROSPECTIVE JUROR:  Yes, yes.

9          THE COURT:  And at the end of the case, the judge

10 will instruct you on what the law is and it could include a

11 description of what the law is currently that illegalizes

12 drugs, right, because it says drug importation is illegal,

13 conspiracy to distribute drugs is illegal.

14          Could you follow that instruction, or would you say,

15 I don't think it's a good idea and so I'm not going to apply

16 the law that way?

17          THE PROSPECTIVE JUROR:  I mean, if the law is

18 written as such, then I would agree to apply it if asked.

19          THE COURT:  Okay.  So you would be able to apply the

20 law even if you disagreed with it?

21          THE PROSPECTIVE JUROR:  Yeah.

22          THE COURT:  And then with regard to the

23 United States' response to the drug cartels, you have a

24 similar answer where you said you believe our approach to drug

25 policy and relations with Latin America made the cartels

1   worse.  So would that affect your ability to be fair in this

2   case?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Okay.  So you could listen to the

5   testimony of law enforcement officers talking about drug

6   importation, drug trafficking laws, and give it fair weight?

7              THE PROSPECTIVE JUROR:  I believe so.

8              THE COURT:  Okay.  And, likewise, would you be able

9   to listen to people who talked about their involvement,

10  potentially, in drug trafficking and give that fair weight?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Okay.  You also talked about the drug

13  laws being inconsistent and needing reform.  So this, again,

14  goes to that question about if you think the law should be

15  different.  But the laws are what they are.  Would you be able

16  to apply them or will you say I'm not going to apply the laws

17  because I think it should be something else?

18             THE PROSPECTIVE JUROR:  That's a tough one.  Do you

19  have a sample you can give me?

20             THE COURT:  Well, if the law was something that you

21  say I don't think that's what the law should be, if I could

22  change the law, then I would do it differently, and,

23  therefore, I'm not going to apply that law.

24             THE PROSPECTIVE JUROR:  Okay.

25             THE COURT:  Would you apply the law as it's written,

Prospective Juror No. 50                    237

1   even if it's not what you believe in or agree with, or would

2   you say, I'm going to go a different way because I think the

3   law should be something else?

4            THE PROSPECTIVE JUROR:  That's tough.  If it's

5   something like -- I don't know.  I think that crack and weed

6   are not on the same level, for example, and if the law says, I

7   don't know, put him away for more time for the weed than

8   crack, honestly, I'm not going to agree with that.

9            THE COURT:  But would you apply the law?  It's more

10  a question about whether you would follow the law or not

11  follow the law and do something other than what the law says.

12           THE PROSPECTIVE JUROR:  Yeah.  I would have to

13  follow the law then if it's written and says such.

14           THE COURT:  Okay.  And would you be able to do it?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  And would you do it?

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  Okay.  So, then -- there was -- and I'm

19  not clear what you were referring to, but you were asked if

20  there's anything in your religious beliefs or personal or

21  political background that would prevent you from sitting a

22  judgment of another person, and you said if I believe there's

23  a bias of the treatment of the individual or if I know from my

24  knowledge that something is inaccurate, this will go into my

25  decision.

Prospective Juror No. 50                238

1      THE PROSPECTIVE JUROR:  That was more of a vague

2  approach.  Like -- let me come up with an example.  If I know

3  that -- let me say this.  In my line of work, if you tell me

4  there's evidence that, I don't know, some website operates a

5  certain way, in my line of work, if I believe that's an

6  incorrect assessment, I'm not changing my mind on that.

7      THE COURT:  Okay, I understand.  But if it were

8  during the course of trial about whether something happened or

9  didn't, right, you weren't there, right, so you would have to

10  assess whether this person is telling the truth and that

11  happened or that person is not telling the truth or it didn't

12  happen, or somebody else says it happened this way or it

13  happened another way, and then at the end of it, you would

14  have to render a verdict of guilty or not guilty, could you do

15  that?

16      THE PROSPECTIVE JUROR:  Yeah.

17      THE COURT:  So there isn't something that would stop

18  you from saying who am I to say if somebody is guilty or not?

19  You would you be able to say this is my verdict?

20      THE PROSPECTIVE JUROR:  Yeah.

21      THE COURT:  Okay.  Then I will ask you about your --

22  you said there's a medical appointment.  And when you wrote

23  it, you said next week.  So I'm not sure when that's supposed

24  to be.

25      THE PROSPECTIVE JUROR:  That happened already.

1          THE COURT:  So that's not an impediment.  Great.  Is

2     there any reason you could not be fair and impartial in this

3     case?

4          THE PROSPECTIVE JUROR:  No.  I mean, other than

5     human bias that we all have.

6          THE COURT:  Okay.  So tell me about the human bias.

7     What do you mean by that?

8          THE PROSPECTIVE JUROR:  I mean, we all have our

9     respective world views.  No matter what we try to do, we all

10    have some kind of bias.  Like, that's the hardest part in

11    science to try to be as object -- as objective as possible.  I

12    mean, try that daily.  So beyond that, I would say I'm

13    decently objective.

14         THE COURT:  Okay.  But the question is -- because

15    being a juror is not like living regular life because it's a

16    specific thing and you're going to be asked to look at a

17    specific case and the evidence presented to you.  People have

18    certain beliefs in their lives and they've come to believe

19    certain things and, perhaps, believe strongly in it.  The

20    question is whether you can set that aside and just focus on

21    the evidence here and make a decision based on what you see

22    and hear in court.  Can you do that?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Okay.  You did say -- I forgot to ask

25    this earlier in a question where you said that you have a

1  co-worker who was charged in a similar manner and was fired.

2  What are you referring to there?

3            THE PROSPECTIVE JUROR:  There was -- if I

4  remember -- I might have the details, if I do remember them

5  right, but I'm pretty sure it was some kind of federal coke

6  bust and he was involved in it.  Yeah.  I don't think we even

7  know what his part was, but that happened and he got

8  terminated.

9            THE COURT:  Okay.

10            THE PROSPECTIVE JUROR:  I felt -- I don't know if

11  that matters.  It was just something I thought I should bring

12  up.

13            THE COURT:  Yes, absolutely.  We like to know about

14  things that may affect you.  And, so, was that drug-related or

15  what kind of bust was it?

16            THE PROSPECTIVE JUROR:  Drug bust.  So federal drug

17  bust thing.

18            THE COURT:  Do you know what happened to him after

19  he was fired?

20            THE PROSPECTIVE JUROR:  No.  Honestly, I didn't

21  think of it until I'm like, oh yeah, that happened.

22            THE COURT:  And do you think that would affect your

23  ability to be fair?

24            THE PROSPECTIVE JUROR:  Oh, no.  Not at all.

25            THE COURT:  Okay.  Do you have any strong feelings

1   about law enforcement, because I think it says here you're

2   father was retired law enforcement, right?

3              THE PROSPECTIVE JUROR:  MICH-hmm.  I mean, if I'm

4   pulled over by a police officer, I mean, I guess that's

5   everybody, but I get that nervousness, like I don't know

6   what's going to happen, but -- I don't know.

7              THE COURT:  Yeah.

8              THE PROSPECTIVE JUROR:  My dad was a cop and that's

9   all.

10             THE COURT:  Well, sometimes, when you have family

11  members who are law enforcement, it might lead you to have a

12  predisposition one way or the other whether to believe them

13  just because they're law enforcement or not believe them

14  because they're law enforcement.  So the question is whether

15  you have that kind of bias?

16             THE PROSPECTIVE JUROR:  No.  I mean, cops -- some

17  cops tell the truth, some tell lies.  Just -- that's something

18  I learned from his line of work.

19             THE COURT:  Okay.

20             Any follow-up questions?

21             MR. DE CASTRO:  I do, Judge, maybe sidebar or I can

22  ask the Court.  Whatever.

23             THE COURT:  All right.

24             So, can you just step out for a minute?  Let me talk

25  to the lawyers.  I just need to talk to them for a minute, but

1    I don't want you to be here when we talk.

2              (Prospective juror number 50 exits.)

3              THE COURT:  Yes, Mr. De Castro.

4              MR. DE CASTRO:  Actually, I think both parties agree

5    that he can be struck.

6              THE COURT:  Great.  Let's call him back.  He can

7    take his coat and he can go.

8              (Prospective juror number 50 enters.)

9              THE COURT:  Juror No. 50, thank you so much for your

10   service.  You're excused.  You can go back to the second

11   floor.

12             (Prospective juror number 50 is excused.)

13             THE COURT:  Juror 53 has a vacation planned

14   March 6th.  Is that going to be an issue?

15             MR. DE CASTRO:  Maybe.  I, also on top of the

16   hardship, have 44, 49, and 56.

17             MS. KOMATIREDDY:  Our question on this was to just

18   to understand how long that vacation is, if it's a weekend or

19   something longer.

20             THE COURT:  I see.  Okay, great.

21             Juror No. 53.

22             (Prospective juror number 53 enters.)

23             THE COURT:  Hi, Juror No. 53.  How are you doing?

24             THE PROSPECTIVE JUROR:  Good.  How are you?

25             THE COURT:  Good.  We just have some follow-up

1  questions for you.  You said here that you've got a vacation

2  planned in early March.  You said it starts March 6th.  How

3  long is that supposed to be?

4          THE PROSPECTIVE JUROR:  It's a week.

5          THE COURT:  It's a week, all right.  Are those

6  tickets refundable or are those --

7          THE PROSPECTIVE JUROR:  I think I'm past the -- past

8  the point of refunding.  It's a cruise.

9          THE COURT:  It's a what?

10         THE PROSPECTIVE JUROR:  It's a cruise.

11         THE COURT:  It's a cruise, okay.

12         MR. DE CASTRO:  No objection.

13         MS. KOMATIREDDY:  We have no objection.

14         THE COURT:  You're excused.  Have fun on the cruise.

15 Thank you for you service.

16         (Prospective juror number 53 is excused.)

17         THE COURT:  Fifty-five had a lot of answers.  We

18 have child care issues, former NYPD, 55.

19         MR. DE CASTRO:  Yeah, we have 2, 35, 36, 39, 44, 55

20 as the Court said, 58, 66 and then the hardship question.

21         THE COURT:  Anything from the government?

22         MS. KOMATIREDDY:  We would add 36 and 50.

23         THE COURT:  Thirty-six and 50.

24         MS. KOMATIREDDY:  I think also number 1, Your Honor.

25         THE COURT:  Yeah.  Okay.  So I'll start with 69.

1        Juror No. 55.

2        (Prospective juror number 55 enters.)**55

3        MR. DE CASTRO:  Judge, wondering if we want to take

4   a break maybe after.

5        THE COURT:  And we'll take a break after this.

6        Hi, Juror No. 55.  Come to the podium.  You can

7   leave your bag on the chair if you're more comfortable with

8   that.  How are you doing?

9        THE PROSPECTIVE JUROR:  Good.

10        THE COURT:  Good.  So we just had a few follow-up

11   questions for you based on the answers you gave.

12        THE PROSPECTIVE JUROR:  Sure.

13        THE COURT:  We'll start with your child care issues.

14   So tell us about that.

15        THE PROSPECTIVE JUROR:  I have 16-month twins, and

16   my wife and I both work.  We have care sometimes during the

17   week.  Sometimes -- we have paid care and we also have family,

18   as well.  It's just kind of if the trial were to go after

19   5:00 p.m., plus my commute back to Long Island, it would be

20   difficult on my wife, and in the morning, as well.

21        THE COURT:  Okay.  And you said here that family

22   could assist.?

23        THE PROSPECTIVE JUROR:  Yeah.

24        THE COURT:  So it might be difficult for awhile, but

25   you might be able to manage?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay, great.  Thank you.  So let me ask

3    you about a couple of questions.

4          MR. DE CASTRO:  Your Honor, also travel.  I'm sorry.

5          THE COURT:  Oh.  You said you'll be traveling

6    out-of-state for business from January 30th to February 6th.

7          THE PROSPECTIVE JUROR:  That's correct.

8          THE COURT:  And then, also, from the 16th -- well,

9    January 16th to 18th.

10          THE PROSPECTIVE JUROR:  Correct.

11          THE COURT:  Today's the 17th, but you're not on

12    travel, you're here.

13          THE PROSPECTIVE JUROR:  What did I say?

14          THE COURT:  You said you'll be traveling

15    January 16th to 18th for business, going to Austin.

16          THE PROSPECTIVE JUROR:  No, that should have been --

17    I apologize.  It's the last week of the month.

18          THE COURT:  Oh, I see.

19          THE PROSPECTIVE JUROR:  So it's that -- sorry.

20          THE COURT:  That's all right.  So you said here the

21    last week of January 30th through February 6th, you are

22    traveling.

23          THE PROSPECTIVE JUROR:  Correct, yes.

24          THE COURT:  Is that for work?

25          THE PROSPECTIVE JUROR:  That is for work, yes.

```
                         Jury Selection                    246
```

1      THE COURT:  Okay.  And is that something that can be

2    rescheduled or someone else can go?

3      THE PROSPECTIVE JUROR:  No.  That's actually for the

4    company I work for.  It's a sales kickoff.  It's a

5    company-wide thing.  I think about 150 people from across the

6    country will be there.

7      THE COURT:  So that's the whole week it looks like?

8      THE PROSPECTIVE JUROR:  MICH-hmm.

9      THE COURT:  And it's not something that you could

10   participate in virtually, or?

11     THE PROSPECTIVE JUROR:  No, no.

12     THE COURT:  Okay.  All right.  So let me ask you

13   about some of these other answers that you gave.

14     THE PROSPECTIVE JUROR:  Sure.

15     THE COURT:  You said in response to one of the

16   questions that you think the War on Drugs is unwinnable.  So

17   can you explain how that might affect your ability to be fair

18   and impartial, if at all?

19     THE PROSPECTIVE JUROR:  I -- let me try to think --

20   back to my answer.  It just seems like --

21     THE COURT:  You can change your answer, too.

22     THE PROSPECTIVE JUROR:  Yeah, no, I think it's just

23   really two sides that are kind of dumping money into a problem

24   that it kind of can't possibly be solved I guess.  I don't

25   know.  There's a market for drugs and there's -- it just seems

1    like no amount of money or anything like that will actually

2    solve that problem.

3            THE COURT:  Okay.  And --

4            THE PROSPECTIVE JUROR:  Not that I know what the

5    answer to what that problem is at all, it just seems it's been

6    going on for a very long time.

7            THE COURT:  Fair enough.  But notwithstanding that

8    belief, could you set it aside and be fair in this case that

9    involves allegations of drug trafficking?

10           THE PROSPECTIVE JUROR:  Yes, I could.

11           THE COURT:  All right.  So you also said you know

12   something about this case.  You said you know too much about

13   the people, places, history, and methods of the people

14   involved, and then also when you were asked whether you knew

15   anything this case, you said you were aware of who the

16   Sinaloa Cartel is and their reputation as an international

17   drug ring.

18           So can you tell us about your knowledge of the case

19   and how that might affect your ability to be a juror?

20           THE PROSPECTIVE JUROR:  I've just heard of them

21   before either in other cases or through the news.  I -- how

22   would that affect my -- I -- I mean, from what I've seen on

23   the news and things based on real life events I guess, weather

24   it's T.V. or movies, things like that.

25           MR. DE CASTRO:  We have no objection here, Judge.

1              THE COURT:  Okay.

2              Do you think that will effect your ability to be

3     fair to this defendant in this case?

4              THE PROSPECTIVE JUROR:  I believe it might, yes.

5              THE COURT:  How so?

6              THE PROSPECTIVE JUROR:  Just based on -- I think

7     that what the defendant is being accused of is very possible,

8     I guess, very likely that these things have happened.

9              MS. KOMATIREDDY:  We have no objection, Judge.

10             THE COURT:  All right.  Thank you very much.  So,

11    thank you for your service.  You're excused.  You can go back

12    to the second floor jury room.

13             THE PROSPECTIVE JUROR:  Thank you.

14             (Prospective juror number 55 is excused.)**Jury

15    Selection

16             THE COURT:  So let's take a ten-minute break.  Come

17    back at 4:25.

18             (A recess was taken.)

19             (Continued on the following page.)

20

21

22

23

24

25

```
 1              (Defendant present.)

 2              THE COURTROOM DEPUTY:  All rise.

 3              THE COURT:  We are back on the record.

 4              The next juror is 56.  I propose that we keep going

 5    until 5:30.  And at that point -- shortly before then, I'll

 6    see if the parties want to make any for-cause arguments before

 7    we adjourn for the day.  All the jurors qualified up to that

 8    point I will excuse and have them come back Thursday.  The

 9    ones we didn't get to today, we will have back tomorrow for

10    questioning.

11              Any problem with that?

12              MR. DE CASTRO:  No problem.

13              THE COURT:  All right.  Let's call in Juror No. 56.

14              MS. KOMATIREDDY:  We didn't have anything specific

15    for this juror, Your Honor.

16              THE COURT:  Okay.

17              MR. DE CASTRO:  What number, 56, Judge?

18              THE COURT:  Yes.

19              MR. DE CASTRO:  I think I had 2, 44, 56 and 71.

20              (Prospective Juror No. 56 enters.)

21              THE COURT:  Hi, Juror No. 56.

22              THE PROSPECTIVE JUROR:  Hello.

23              THE COURT:  Come up to the podium.  You can drop

24    your stuff off at that chair.  How are you?

25              THE PROSPECTIVE JUROR:  Good.  How are you?
```

1          THE COURT:  Thank you for your patience.  Let's

2   start with the answer that you gave about your salary.

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  You said that you would not get paid

5   while you were on jury duty.

6          THE PROSPECTIVE JUROR:  Well, actually, the

7   information we were given, I don't think it would conflict

8   with my work schedule currently.

9          THE COURT:  Wonderful.  That's good to hear.

10          THE PROSPECTIVE JUROR:  But I would not get paid,

11   no.

12          THE COURT:  Well, but you would get paid anyway,

13   right?

14          THE PROSPECTIVE JUROR:  You learn something knew

15   every day.

16          THE COURT:  So you would have a work schedule that

17   would accommodate you sitting here during the day for jury

18   duty?

19          THE PROSPECTIVE JUROR:  Yeah.

20          THE COURT:  Excellent.

21          You also said that your father is a firefighter or

22   was a firefighter.  Do you think that would affect your

23   ability to be fair and impartial in assessing law enforcement

24   witnesses?

25          THE PROSPECTIVE JUROR:  No, I don't believe so.  I

1   mean, the fire department.  I'm from Michigan.  He just put

2   out fires and car accidents.

3            THE COURT:  So would you assess the testimony of a

4   law enforcement officer just as you would for any other

5   person?

6            THE PROSPECTIVE JUROR:  Yes.

7            THE COURT:  And then you also said that you thought

8   marijuana should be legal, not the other --

9            THE PROSPECTIVE JUROR:  Yeah.

10           THE COURT:  -- other drugs.  So this is a case that

11   involves cocaine, allegations of cocaine trafficking.  Do you

12   think your views about marijuana being legal would affect your

13   ability to be fair in assessing the evidence in this case?

14           THE PROSPECTIVE JUROR:  No, I don't believe that

15   would affect me.

16           THE COURT:  Okay.  Are there any issues that you

17   want to bring to our attention in terms of your ability to be

18   fair as a juror?

19           THE PROSPECTIVE JUROR:  No.

20           MR. DE CASTRO:  Just number two, Judge.

21           THE COURT:  Okay.

22           So, in response to one of the questions, you said I

23   understand taking bribes is illegal and that cocaine is

24   illegal.  So, I wanted to understand if you think that would

25   affect your ability to be fair in this case?  The question was

Prospective Juror No. 59                              252

1    whether you had a personal knowledge of the charges in this

2    case and you said yes.

3              THE PROSPECTIVE JUROR:  Maybe I misunderstood the

4    question.  I thought it was just asking like if I had an

5    understanding of what was being presented in front of me.

6              THE COURT:  Okay.  So, the allegations, not the

7    specific facts of this case; is that correct?

8              THE PROSPECTIVE JUROR:  Yeah.  I don't know anything

9    about this case.

10             THE COURT:  Okay.  Anything else from the parties?

11             MR. DE CASTRO:  No, Judge.

12             MS. KOMATIREDDY:  No, Judge.

13             THE COURT:  Thank you.  You can go back across the

14   hall.

15             THE PROSPECTIVE JUROR:  Thank you.

16             (Prospective juror 56 exits.)

17             THE COURT:  Juror No. 59.

18             MR. DE CASTRO:  We have 20, 47, 52, 56, 60, and I

19   think there is a hardship question.

20             THE COURT:  Okay.

21             MS. KOMATIREDDY:  That covers as well, Your Honor.

22             THE COURT:  Okay.

23             (Prospective Juror No. 59 enters.)

24             THE COURT:  Hi, Juror No. 59.

25             THE PROSPECTIVE JUROR:  Yes.

1           THE COURT:  Come up here.  You can drop your stuff

2    off on the chair.  If you want to keep your mask on, you can,

3    or you can take if off if you want.

4           THE PROSPECTIVE JUROR:  Yes.

5           THE COURT:  Stand closer to the podium because there

6    is a microphone.

7           So you said that you have a scheduling conflict.

8    You have a doctor's appointment and a procedure on January

9    30th?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Is that something that could be

12   rescheduled?

13          THE PROSPECTIVE JUROR:  No.  It took six months to

14   make the appointment for the doctor and the medical procedure

15   I need to be taken care of.

16          THE COURT:  I see.  Is it aftercare or one of those

17   things that you are done with the procedure and walk out?

18          THE PROSPECTIVE JUROR:  It depends on what the

19   result is.

20          THE COURT:  I see.  Okay.

21          MR. DE CASTRO:  No objection.

22          MS. KOMATIREDDY:  I'm sorry, Your Honor, may we just

23   check something?

24          THE COURT:  Okay.

25          MS. KOMATIREDDY:  Could we have further inquiry,

1   Your Honor?

2              THE COURT:  Continue with the questioning?

3              MS. KOMATIREDDY:  Yes, Your Honor.  Thank you.

4              THE COURT:  Okay, so you also said in response to a

5   question about the right of somebody not to testify in his or

6   her defense, you said if a person is innocent, you think they

7   want to clear their name.

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  So if the judge instructed you that a

10  person has the right to remain silent, would you hold it

11  against them?

12             THE PROSPECTIVE JUROR:  I would still think he or

13  she would want to clear their name and give their side of the

14  story.

15             THE COURT:  So do you think if someone didn't tell

16  their side of the story --

17             THE PROSPECTIVE JUROR:  I would hold it against

18  them.

19             MS. KOMATIREDDY:  No objection, Your Honor.

20             THE COURT:  All right.  So, you're excused.  Thank

21  you.

22             THE PROSPECTIVE JUROR:  Thank you.

23             (Prospective juror No. 59 excused.)

24             THE COURT:  Juror No. 61.

25             MR. DE CASTRO:  We had just number 56 on that one.

1          THE COURT:  Okay.  How about the Government?

2          MS. KOMATIREDDY:  We didn't have anything else, Your

3    Honor.

4          THE COURT:  All right.  Juror No. 61.

5          (Prospective Juror No. 61 enters.)

6          THE COURT:  Come up to the podium.  If you want to

7    drop your bag off at the chair, that would be great.

8          How are you doing?

9          THE PROSPECTIVE JUROR:  Good.  How are you?

10          THE COURT:  Fine.  Thank you.  Sorry.  So we have a

11    couple of follow-up questions to your answers on the

12    questionnaire.

13          THE PROSPECTIVE JUROR:  Sure.

14          THE COURT:  You said that you believe hard drugs

15    should be legal in the U.S. except marijuana.

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Can you tell me a little bit about that?

18          THE PROSPECTIVE JUROR:  Well, I believe marijuana is

19    more highly used and based on the system, I feel like it could

20    be more controlled by the Government, whereas as the other

21    ones are harder, are more life-threatening and damaging.

22          THE COURT:  So this case involves allegations of

23    cocaine trafficking.  Do you think your views on drugs would

24    have any affect on your ability to be fair and impartial in

25    this case?

1          THE PROSPECTIVE JUROR:  No.

2          MS. KOMATIREDDY:  2, Your Honor please.

3          THE COURT:  And you said you or someone you knew had

4    contact with law enforcement, but you said it wouldn't affect

5    your ability to be fair.  But can you just describe what those

6    experiences were.

7          THE PROSPECTIVE JUROR:  With law enforcement, yes, I

8    had a cousin that was in trouble for a DUI and was in

9    immigration services.  He got in trouble with that.

10         THE COURT:  Okay.

11         THE PROSPECTIVE JUROR:  And my brother is in the

12   military, so, like law enforcement.  He's with military

13   police, things like that.

14         THE COURT:  I see.

15         THE PROSPECTIVE JUROR:  Nothing more than that.

16         THE COURT:  Okay.  So the fact that your brother is

17   in the military police, would that affect your ability to be

18   fair and impartial in a case that involved law enforcement?

19         THE PROSPECTIVE JUROR:  Yeah, I mean, he is an

20   officer, he is not military police.

21         THE COURT:  I see.

22         THE PROSPECTIVE JUROR:  It wouldn't affect anyway.

23         THE COURT:  Okay.  So you said he is an officer in

24   the military.

25         THE PROSPECTIVE JUROR:  Yes, U.S. Army.

Prospective Juror No. 61                    257

1          THE COURT:  For some reason, I thought you said
2   police, not police.
3          THE PROSPECTIVE JUROR:  Oh, no, not police.
4          THE COURT:  You said your cousin was in trouble for
5   what?
6          THE PROSPECTIVE JUROR:  It was a DUI.
7          THE COURT:  DUI?
8          THE PROSPECTIVE JUROR:  Yeah.
9          THE COURT:  Does your cousin's experience affect
10  your ability to be fair and impartial in a criminal case?
11          THE PROSPECTIVE JUROR:  No, not at all.
12          THE COURT:  Is there any reason you could not be a
13  fair and impartial juror?
14          THE PROSPECTIVE JUROR:  Not that I can think of.
15          THE COURT:  Great.  Any follow up?
16          MS. KOMATIREDDY:  No, Judge.
17          THE COURT:  Great.  Why don't you go back across the
18  hall.  Thank you.
19          THE PROSPECTIVE JUROR:  All right.
20          (Prospective juror 61 exits.)
21          THE COURT:  Juror No. 62.
22          MR. DE CASTRO:  We have 34, 35, 36, 47, 49, 54, 56,
23  57, 62, 66, and 69.
24          MS. KOMATIREDDY:  Us as well, Your Honor.
25          THE COURT:  All right.  So let's have Juror No. 62.

1          (Prospective Juror No. 62 enters.)

2          THE COURT:  Hi.  Come right up here.  You can leave

3    your mask on if you want.  You can take it off if you feel

4    more comfortable.  So we just have a couple of follow-up

5    questions for you based on the answers you gave.

6          THE PROSPECTIVE JUROR:  Sure.

7          THE COURT:  You said that you are a nurse

8    practitioner and need to work.  Can you tell us about that?

9          THE PROSPECTIVE JUROR:  I left work to come here.

10   There is a nursing shortage.  There is no limit to no

11   coverage.  Even though I am here during the week, I will still

12   be working the weekends.  I'm working this Saturday and

13   Sunday.  Today is technically considered a workday, so I

14   worked and came here and I'm working tomorrow.

15         THE COURT:  Are you working day shifts or night

16   shifts?

17         THE PROSPECTIVE JUROR:  Day shifts, 5:30 in the

18   morning to 6:00 p.m. at night.

19         THE COURT:  So if you were picked to sit on the

20   jury, would you have to work night shifts or --

21         THE PROSPECTIVE JUROR:  I don't know, but I'm also a

22   manager.  I manage the surgical clinical care unit and I

23   manage the trauma team at the hospital.  I'm also in a

24   managerial role.  I have to oversee scheduling and payroll and

25   stuff like that.

1              MR. DE CASTRO:  No objection.

2              MS. KOMATIREDDY:  No objection.

3              THE COURT:  Thank you.  You're excused.

4              THE PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  You can go back to the second floor.

6              (Prospective juror No. 62 excused.)

7              THE COURT:  Juror No. 64.

8              MR. DE CASTRO:  The defense has 35, 40, 44, and 47.

9              MS. KOMATIREDDY:  I believe that includes 40.

10             THE COURT:  Juror No. 64, please.

11             (Prospective Juror No. 64 enters.)

12             THE COURT:  Hi, Juror No. 64.  Come right up to the

13     podium.  You can put your bag on the chair and your coat.  How

14     are you doing?

15             THE PROSPECTIVE JUROR:  Good.

16             THE COURT:  We have a couple of follow-up questions.

17     You mentioned that you have some family members who are

18     members of the New York Police Department and somebody who is

19     a judge.

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Do you think that tie to law enforcement

22     would cause you to be -- would prevent you from being fair and

23     impartial as a juror in this criminal case?

24             THE PROSPECTIVE JUROR:  No, I don't think so.

25             THE COURT:  Do you think you would assess the

1    testimony of law enforcement witnesses the same as other

2    people or would you tend to believe or not believe them just

3    because they are law enforcement?

4            THE PROSPECTIVE JUROR:  I wouldn't say I'm biased,

5    but I would probably have a slight... I would probably take --

6    not take their word for it, but I would have a slight bias

7    unless proven otherwise just because I know so many family

8    members who are police officers.

9            THE COURT:  Okay.  When you say biased, how would

10   that --

11           THE PROSPECTIVE JUROR:  I mean, I would give them

12   the benefit of the doubt in a way.

13           THE COURT:  Okay.  And so, if you listen to their

14   testimony and -- would you be -- would you ever not believe

15   them?

16           THE PROSPECTIVE JUROR:  Yes, I would not believe

17   them, yeah.  It's not like I would be oh, no, they can say no

18   wrong or do no wrong.

19           THE COURT:  Of course.  I'm trying to figure out

20   what benefit of the doubt means in the context of a trial

21   where you're being asked to assess the credibility of

22   witnesses, weigh the evidence, and render a just verdict.

23           THE PROSPECTIVE JUROR:  Right.  So I guess it

24   wouldn't be...I mean, there would -- I'm trying to think.

25           THE COURT:  Take your time.  It's a hard question.

1    THE PROSPECTIVE JUROR:  Yeah.

2         I mean, I think I would be impartial if what they

3    said was either proven or something was said to say that's not

4    true, I would be logical about it, you know.  It's not like I

5    would say like they cannot do anything wrong or say anything

6    wrong or... so, I don't know.  I think I could be impartial.

7         THE COURT:  Well, one of the things you would be

8    instructed to do as a juror is to assess the testimony of

9    witnesses.

10        THE PROSPECTIVE JUROR:  Right.

11        THE COURT:  And to not favor one person or another

12   just because of what they do for a living or where they come

13   from, for example.

14        THE PROSPECTIVE JUROR:  Right.

15        THE COURT:  So the question is whether you would be

16   fair, because there are two sides in this trial, right?

17        THE PROSPECTIVE JUROR:  Uh-hum.

18        THE COURT:  So you need to be fair to both sides and

19   you put your thumb on the scale and said I'm going to favor

20   one side or the other, then that might be an issue.

21        THE PROSPECTIVE JUROR:  Right.  I mean, I think I

22   could be fair.

23        THE COURT:  So even if you have a slight biased, you

24   said, would you be able to put that aside?

25        THE PROSPECTIVE JUROR:  Yes, I could.  Uh-hum.

1          THE COURT:  So does that mean you would start maybe

2   with the bias but you would overcome it?

3          THE PROSPECTIVE JUROR:  Yes.  I don't even know bias

4   is the right word.

5          THE COURT:  What would be a better word?

6          THE PROSPECTIVE JUROR:  Well, I guess I would ...

7   maybe it is a good word.

8          THE COURT:  That's fine.

9          THE PROSPECTIVE JUROR:  I'm kind of expecting tongue

10  and cheek unless told otherwise.

11         THE COURT:  That's fine.  Let me move on to another

12  question.

13         You have a sister-in-law whose niece is a lawyer,

14  and you have a long-time friend who is an ADA.

15         THE PROSPECTIVE JUROR:  And a judge.

16         THE COURT:  And especially the fact the friend who

17  is an assistant district attorney.  That's a prosecutor?

18         THE PROSPECTIVE JUROR:  Right.

19         THE COURT:  In this case, there are prosecutors and

20  defense lawyers.  So, would you favor one side or the other

21  just because you have a friend who played that role?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  So you would listen to both sides

24  fairly?

25         THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  And consider the evidence?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  And then you told us about this tragic

4    incident where your mother was killed in 1988.

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Does that experience cause you to be not

7    fair and impartial in any way?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Does it affect --

10         THE PROSPECTIVE JUROR:  No.

11         THE COURT:  No?  Okay.

12         I think those are the questions.  Let me just make

13   sure I got it.

14         You also said that you had heard about El Chapo.  Do

15   you know anything else about the case?

16         THE PROSPECTIVE JUROR:  No, just general news when

17   he escaped and the tunnel, stuff like that, that's it.

18         THE COURT:  And you might hear of El Chapo in this

19   trial.  Do you think knowing those things would affect your

20   ability to be fair?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  Is there any reason you have any doubts

23   about your ability to be fair and impartial?

24         THE PROSPECTIVE JUROR:  No, I don't think so.

25         THE COURT:  All right.  Any follow up?

1          MS. KOMATIREDDY:  Not from the Government, Your

2     Honor.

3          MR. DE CASTRO:  Nothing, Judge.

4          THE COURT:  Thank you.  Why don't you go back across

5     the hall.

6          THE PROSPECTIVE JUROR:  Thank you.

7          (Prospective juror 64 exits.)

8          THE COURT:  Juror No. 67.

9          MR. DE CASTRO:  I think we have 35, 44 and 56 on

10    that.

11         THE COURT:  Okay.

12         MS. KOMATIREDDY:  That covers us as well, Your

13    Honor.

14         THE COURT:  I will also ask about the robberies in

15    the '90s.

16         (Prospective Juror No. 67 enters.)

17         THE COURT:  Hi, Juror No. 67.  Come up to this

18    podium.  You can drop your things off on the chair.  You can

19    leave your mask on or off, whatever you are comfortable with.

20    How are you doing?

21         THE PROSPECTIVE JUROR:  Good, Your Honor.

22         THE COURT:  We just have a couple of follow-up

23    questions for you.  The first thing you mentioned is your

24    father is a former New York City fire department fire marshal

25    and he attended the fire academy in the '90s.

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Does the fact that you have this law

3    enforcement tie affect your ability to be fair and impartial

4    in this case?

5          THE PROSPECTIVE JUROR:  Absolutely not.

6          THE COURT:  So this is a criminal trial and you will

7    likely hear testimony from law enforcement officers, as well

8    as non-law enforcement and you will hear argument from

9    Government lawyers and prosecutors, as well as defense

10   lawyers.  Will you be able to be fair to both sides?

11         THE PROSPECTIVE JUROR:  Yes, I will, Your Honor.

12         THE COURT:  Okay.  You also mentioned that -- one

13   second.  You think that marijuana should be legal.

14         This case involves cocaine and allegations of

15   trafficking cocaine.  Do you think your views on the legality

16   of marijuana will have an affect on your ability to be fair

17   and impartial?

18         THE PROSPECTIVE JUROR:  No, Your Honor.

19         THE COURT:  Is there any reason that you would not

20   be fair and impartial if you were picked as a juror?

21         THE PROSPECTIVE JUROR:  Not that I can think of,

22   Your Honor.

23         THE COURT:  Great.  Thank you very much.  You can go

24   back across the hall.

25         THE PROSPECTIVE JUROR:  Thank you.

Prospective Juror No. 68                    266

1            (Prospective juror 67 exits.)

2            THE COURT:  For Juror No. 68, I have --

3            MR. DE CASTRO:  Yes.  We had the hardship question,

4    plus 55, 56, 62, and 66.

5            THE COURT:  Okay.

6            MS. KOMATIREDDY:  34 also, Your Honor.

7            THE COURT:  Okay.

8            MS. KOMATIREDDY:  Thank you.

9            (Prospective Juror No. 68 enters.)

10           THE COURT:  Hi, Juror No. 68.  Come up to this

11   podium, please.

12           THE PROSPECTIVE JUROR:  Hi.

13           THE COURT:  You can put your bag down.

14           THE PROSPECTIVE JUROR:  Thank you.

15           THE COURT:  Hi.  Let me start with your concern

16   about your elderly mother.  Tell us about that.

17           THE PROSPECTIVE JUROR:  Me to tell you?

18           THE COURT:  Yes.  What is the concern in terms of

19   your ability to serve on the jury?

20           THE PROSPECTIVE JUROR:  She can -- she falls

21   periodically.  She gets lonely.  Simple things.  We've had to

22   take her to the hospital a few times.  It hasn't happened

23   lately, but she is 87.  She has asthma and has some breathing

24   difficulty because of it.  She does live alone.  My brother

25   goes to visit her at least three times a week.  I live a

1    little farther.  I visit her at twice a week.  So, by and

2    large she manages.  My concern is only the emergency

3    situations.

4              THE COURT:  Right.  Since it sounds like your

5    brother lives closer, if there were an emergency, he could,

6    during the day when you were here, he could go tend to it.

7              THE PROSPECTIVE JUROR:  He could.  He could.  He

8    also works, and yes, he could, he could potentially.  And

9    depending on how my husband is doing, he could go.  He also

10   has MS and there are days he can't move.

11             THE COURT:  Of course.  Are you working?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  So when you are working and there is an

14   emergency, then you could take time off and go tend to your

15   mother; is that how it works?

16             THE PROSPECTIVE JUROR:  I do.  I have some

17   flexibility in my schedule.

18             MR. DE CASTRO:  We have no objection, Judge.

19             THE COURT:  Continue questioning?

20             MS. KOMATIREDDY:  I'm sorry, Your Honor.

21             We have no objection.

22             THE COURT:  All right.  Well, thank you very much.

23   You are excused.  So you can go back to the jury office.  You

24   don't need to serve on this jury.

25             THE PROSPECTIVE JUROR:  Thank you.

1          THE COURT:  Thank you for your service.

2          (Prospective juror 68 exits.)

3          THE COURT:  Juror 70.

4          MR. DE CASTRO:  We have a lot on number 70.

5          43, 47, 49, 55, 56, 58, 61, 60 --

6          THE INTERPRETER:  Your Honor, we apologize.  The

7     transmitter is dead and we have to get another one.

8          THE COURT:  Yes, that's fine.  We don't have one in

9     the courtroom?

10          THE INTERPRETER:  No, we brought it from downstairs.

11          THE COURT:  That's fine.

12          MR. DE CASTRO:  Judge, I think I can finish this.

13     62 and 69.

14          THE COURT:  Okay.

15          (Pause.)

16          THE COURT:  The next juror is 70.

17          THE INTERPRETER:  We are back on, Your Honor.

18          THE COURT:  Thank you.

19          (Prospective Juror No. 70 enters.)

20          THE COURT:  Hi.  You can come up to the podium.  You

21     can drop off your bag and your jacket.

22          How are you doing?

23          THE PROSPECTIVE JUROR:  I'm all right.

24          THE COURT:  Thank you for your patience.  We had a

25     couple of follow-up questions and we will start with in

1    response to one of the questions you said you tend not to

2    trust law enforcement at face value.  Can you tell us a little

3    bit about that?

4              THE PROSPECTIVE JUROR:  I think people in power tend

5    to lie to further their interests.  And police especially,

6    so....

7              THE COURT:  And, so, if there were police or law

8    enforcement witnesses, would you not believe their testimony?

9              THE PROSPECTIVE JUROR:  I'm not sure.  I suppose it

10   would depend on the situation.

11             THE COURT:  Okay.

12             MR. DE CASTRO:  No objection, Judge.

13             MS. KOMATIREDDY:  No objection, Judge.

14             THE COURT:  Okay, so you are excused.  Why don't you

15   go back to the second floor.  Thank you.

16             (Prospective juror No. 70 excused.)

17             THE COURT:  So we have the hardship question and

18   then there is an issue about the burden of proof and also 56.

19             MS. KOMATIREDDY:  That's what we are tracking also,

20   Your Honor.

21             MR. DE CASTRO:  Right.

22             THE COURT:  This is Juror No. 73.

23             MR. DE CASTRO:  I think there is pay and then the

24   explanation page.

25             THE COURT:  Okay.  The explanation page is the same

```
 1   as the hardship.
 2                MR. DE CASTRO:  Yes.
 3                (Prospective Juror No. 73 enters.)
 4                THE COURT:  Hi, Juror No. 73, come up to the podium,
 5   please, and you can drop your bag off if you want.  How are
 6   you doing?
 7                THE PROSPECTIVE JUROR:  Good you.  How are you,
 8   ma'am?
 9                THE COURT:  We had a couple of follow-up questions
10   based on the answers you gave.  I will start with the hardship
11   question.  You said you are a single mom and you work?
12                THE PROSPECTIVE JUROR:  Yes, ma'am.
13                THE COURT:  From 4:30 to 6:00 in the morning?
14                THE PROSPECTIVE JUROR:  It's morning 4:30 to 6
15   o'clock.
16                THE COURT:  4:30 in the morning until six o'clock in
17   the evening?
18                THE PROSPECTIVE JUROR:  Yes.
19                THE COURT:  I had it reversed.
20                THE PROSPECTIVE JUROR:  Yes.
21                THE COURT:  You said you're a single mom.  How many
22   children do you have?
23                THE PROSPECTIVE JUROR:  Two.
24                THE COURT:  But you said your mother is coming.
25                THE PROSPECTIVE JUROR:  Tomorrow.
```

1    THE COURT:  From Bangladesh.

2    THE PROSPECTIVE JUROR:  Yeah.

3    THE COURT:  So she can help with the childcare?

4    THE PROSPECTIVE JUROR:  Me.

5    THE COURT:  I'm not sure.

6    THE PROSPECTIVE JUROR:  Yeah.

7    THE COURT:  So that should help you if you are

8    coming --

9    THE PROSPECTIVE JUROR:  Now, he is coming, but he is

10   not able.  He's a little older.  So in a few months, I think

11   take care of my child.

12   THE COURT:  So if you are picked to sit on this

13   jury, would you be able to do that because somebody is helping

14   to watch your children?

15   THE PROSPECTIVE JUROR:  Not now.

16   THE COURT:  No?

17   THE PROSPECTIVE JUROR:  No.

18   THE COURT:  Why not?

19   THE PROSPECTIVE JUROR:  So like my -- the younger

20   one is small and the bigger one is okay, but I'm going with my

21   mom to social security office so I have to fix her medication,

22   so I have lots of work during the one or two months.  That's

23   why I'm pretty busy that time.

24   THE COURT:  How old are your children?

25   THE PROSPECTIVE JUROR:  So one is like 16 and the

1   younger one is 13.

2          THE COURT:  13 and 16?

3          THE PROSPECTIVE JUROR:  Yeah.

4          THE COURT:  So they are teenagers?

5          THE PROSPECTIVE JUROR:  Yes, almost teenagers.

6          THE COURT:  All right.  So what kind of childcare do

7   they need?

8          THE PROSPECTIVE JUROR:  Childcare?

9          THE COURT:  Yes, you said that you have to watch

10  your kids, I thought.  Maybe it's not a problem.

11         THE PROSPECTIVE JUROR:  No.  I take care of my

12  child, one child with her father, one with me.

13         THE COURT:  I see.  Okay.  Is this going to be a

14  problem if you have to sit on the jury?

15         THE PROSPECTIVE JUROR:  Little bit problem.

16         THE COURT:  So tell me what the problem is?

17         THE PROSPECTIVE JUROR:  So after like months -- and

18  one more thing.  My manager, my boss is going to Pakistan and

19  during this whole month I have to take care of the whole

20  business.  It's goes to me.  He is going like end of this

21  month.

22         THE COURT:  All right.  Okay, so how is that causing

23  a problem for you?

24         THE PROSPECTIVE JUROR:  So I have to take care of

25  the store when he going to Pakistan.

1          THE COURT:  All right.  And are there other people

2   who can take care of the store?

3          THE PROSPECTIVE JUROR:  Yes, but I'm the assistant

4   and he is the manager.  When he is not here, so like

5   responsibility goes to me.

6          THE COURT:  I see.  So it's the two of you in the

7   store?

8          THE PROSPECTIVE JUROR:  Yeah.

9          THE COURT:  When he is gone, it's just you in the

10  store?

11         THE PROSPECTIVE JUROR:  Yeah.

12         MR. DE CASTRO:  We have no objection.

13         MS. KOMATIREDDY:  We have no objection.

14         THE COURT:  Thank you very much.  You are excused.

15  Go to the second floor jury room.  Thank you for your service.

16         THE PROSPECTIVE JUROR:  Thank you so much, ma'am.

17  So I'm done?

18         THE COURT:  You're done.  Go to the second floor.

19  Let them know that you are excused.

20         THE PROSPECTIVE JUROR:  Thank you so much.

21         (Prospective juror No. 73 excused.)

22         THE COURT:  75 has a short list, 44 and 69.

23         MR. DE CASTRO:  That's what I have, Judge.

24         MS. KOMATIREDDY:  That's it for us too, Your Honor.

25         THE COURT:  Okay.

1              (Prospective Juror No. 75 enters.)

2              THE COURT:  You can come up to this podium, and if

3    you want to put your knapsack on the chair, that's fine.

4              How are you doing?

5              THE PROSPECTIVE JUROR:  Good.

6              THE COURT:  You indicated you may have a hardship

7    because of work and study.  Tell us about that.

8              THE PROSPECTIVE JUROR:  So I'm a graduate student at

9    St. George University and I'm also a tax accountant.  So it

10   would be a busy tax season.  It would be challenging to be

11   here for the full trial.

12             THE COURT:  Are you taking classes during the day or

13   in the evening?

14             THE PROSPECTIVE JUROR:  In the evening.

15             THE COURT:  So is it the kind of situation where

16   maybe you can't work if you are on jury duty but you could

17   still take classes?

18             THE PROSPECTIVE JUROR:  Well, I would have to be on

19   campus in Patchogue, Long Island, so I wouldn't be able to

20   make it back on time.

21             THE COURT:  I see.  So the classes are in person?

22             THE PROSPECTIVE JUROR:  Yeah.

23             THE COURT:  Is it every night?

24             THE PROSPECTIVE JUROR:  No, it's Wednesday nights.

25             THE COURT:  Wednesday nights.  What time do though

1   classes start?

2            THE PROSPECTIVE JUROR:  6:15.  It's either 6:00 or

3   6:15, I forget which.

4            THE COURT:  And it takes you how long to get from

5   here to there?

6            THE PROSPECTIVE JUROR:  I don't know.  Probably just

7   under two hours based on the subway and the trains.

8            MR. DE CASTRO:  No objection, Judge.

9            MS. KOMATIREDDY:  No objection, Your Honor.

10            THE COURT:  So you're excused.

11            THE PROSPECTIVE JUROR:  Thank you.

12            THE COURT:  Thank you for your service.  You can go

13   to the second floor.

14            THE PROSPECTIVE JUROR:  Thank you.

15            (Prospective juror No. 75 excused.)

16            THE COURT:  Juror No. 76.

17            MR. DE CASTRO:  We have 47, 52, 55, 56 and 69.

18            THE COURT:  Okay.  Anything else from the

19   Government?

20            MS. KOMATIREDDY:  I think that covers us as well.

21            THE COURT:  Okay.  Juror No. 76.

22            (Prospective Juror No. 76 enters.)

23            THE COURT:  Hi.  Juror No. 76, how are you doing?

24            THE PROSPECTIVE JUROR:  Very good.  Thank you.

25            THE COURT:  Good.  So you indicated on your

1   questionnaire that you may have a hardship sitting on this

2   jury, can you tell us about that?

3               THE PROSPECTIVE JUROR:  Several things.  First thing

4   I listed is my mom is in late-stage lung cancer.

5               THE COURT:  I'm sorry.

6               THE PROSPECTIVE JUROR:  She is leaving China.  I've

7   been on short notice to make a trip.  So that's number one.

8               Number two is I have a 7-year-old and I'm currently

9   working from home and my wife working in hospital, so she has

10  to go to hospital on a daily basis.

11              I'm basically taking like morning bus stop, school

12  bus drop off, and in the evening I have to pick her up.

13              So the third thing is, I think I listed is, I

14  actually have a business trip just coming up in early

15  February.  So that's the hardship.

16              THE COURT:  Okay.

17              MR. DE CASTRO:  We have no objection.

18              MS. KOMATIREDDY:  No, Your Honor.

19              THE COURT:  Thank you for letting us know.  You are

20  excused.

21              THE PROSPECTIVE JUROR:  Thank you.

22              THE COURT:  You can go back to the second floor.

23              (Prospective juror 76 exits.)

24              THE COURT:  So Juror No. 77 doesn't have anything,

25  but I got a note that over lunch, prior to arriving, well, the

1  juror went to lunch prior to arriving and the news was on

2  reporting about this case.  He told Judge Cogan's deputy that

3  he heard information about the case before he could remove

4  himself.  So I will ask this juror about what he may have

5  heard.  But others from the questionnaire I didn't see

6  anything else to question him about.

7          Anything from either party?

8          MR. DE CASTRO:  One second, Your Honor.  I'm frozen

9  here.

10          I lists a martial arts hardship.  I suppose you have

11  to follow up on it.

12          THE COURT:  I may have completely missed it.

13  Martial arts class.  You're right.

14          MS. KOMATIREDDY:  You might want I might ask about

15  29 just to --

16          THE COURT:  I'm sorry?

17          MS. KOMATIREDDY:  29.

18          THE COURT:  29, okay.

19          I'm not understanding the 29 because it is listed as

20  news sources not applicable.

21          MS. KOMATIREDDY:  Yes.  I'm just wondering if you

22  would elaborate.  Does he really never watch the news or

23  what's going on there?

24          THE COURT:  Okay.  Juror No. 77.

25          (Prospective Juror No. 77 enters.)

1          THE COURT:  Hi.  Step up to this podium, please.

2     How are you doing?

3          THE PROSPECTIVE JUROR:  Good.

4          THE COURT:  Good.  If you want to leave your things

5     on that chair, that's fine.  You can leave your mask on or you

6     can take it off, whatever is more comfortable for you.

7          We had a couple of follow-up questions for you, but

8     we also got a note over lunch you may have heard some news

9     about this case.  I just wanted to ask you about that.

10          THE PROSPECTIVE JUROR:  Okay.

11          THE COURT:  So what did you hear about this case?

12          THE PROSPECTIVE JUROR:  I didn't hear nothing.

13          THE COURT:  No?

14          THE PROSPECTIVE JUROR:  Nothing.

15          THE COURT:  Okay, I just got a note from the

16     courtroom deputy that you spoke to him and said that you may

17     have heard reporting about the case before you could avoid it.

18     Do you remember what you heard?

19          THE PROSPECTIVE JUROR:  I didn't hear anything about

20     the case.

21          THE COURT:  You didn't hear anything?

22          THE PROSPECTIVE JUROR:  Nah.

23          THE COURT:  Did you report to staff that you did

24     hear something or did I get the jurors mixed up?

25          THE PROSPECTIVE JUROR:  I don't know.

1          THE COURT:  You don't know.  That's fine.

2          So let me ask you when you were asked about the

3    hardship about sitting on the jury, you said martial arts.

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Classes, are those in the evening or

6    during the day?

7          THE PROSPECTIVE JUROR:  Those are afternoon.

8          THE COURT:  Do you teach or are you attending?

9          THE PROSPECTIVE JUROR:  Attend.  I'm a student.

10         THE COURT:  And is this something you do

11   professionally or is this a hobby?

12         THE PROSPECTIVE JUROR:  Well, likely just learn how

13   to defend myself.

14         THE COURT:  Okay.

15         THE PROSPECTIVE JUROR:  Yeah.

16         THE COURT:  And is it something that you've been

17   taking a long time or is it just like a few months of session?

18         THE PROSPECTIVE JUROR:  I'm taking this from 2019.

19         THE COURT:  So if you missed a couple of weeks of

20   class --

21         THE PROSPECTIVE JUROR:  I could make it up.

22         THE COURT:  You could make it up?

23         THE PROSPECTIVE JUROR:  Yeah.

24         THE COURT:  So if you were picked to sit on the

25   jury, you could make up these classes and that wouldn't be a

1   problem; is that right?

2              THE PROSPECTIVE JUROR:  Uh-hum.

3              THE COURT:  Yes.

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Great.  We have a transcript, so when

6   you nod, it doesn't show up.  You need to say yes or no.

7              And then, I noticed that for one of the questions it

8   asks how you get your news and you said it wasn't applicable.

9   So do you get news at all or you just don't have any news at

10  all?

11             THE PROSPECTIVE JUROR:  Not at all.

12             THE COURT:  No?  Even on your phone.

13             THE PROSPECTIVE JUROR:  Not at all.

14             THE COURT:  News notification?

15             THE PROSPECTIVE JUROR:  No news notifications.  I

16  don't read them.

17             THE COURT:  You don't see things like on your social

18  media page or anything like that?

19             THE PROSPECTIVE JUROR:  Nah.

20             THE COURT:  No?  Okay.  Is there any reason that you

21  could not be fair and impartial if you were picked as a juror?

22             THE PROSPECTIVE JUROR:  I don't --

23             THE COURT:  Do you think you could be fair to both

24  the Government and the defendant in this case?

25             THE PROSPECTIVE JUROR:  Repeat the question again.

1           THE COURT:  Do you think you could be fair to both

2    the Government that's prosecuting this case and the defendant

3    who has been accused of committing crimes?  Can you be fair to

4    both sides if you were picked as a juror?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Could you listen to the evidence and

7    follow the law as Judge Cogan instructs you?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  And is there anything else you think the

10   Court should know about your ability to serve as a juror in

11   this case?

12          THE PROSPECTIVE JUROR:  Repeat.

13          THE COURT:  Is there anything you think the Court

14   should know?  Maybe we didn't ask the right question.  Is

15   there anything you think we should know in making your

16   assessment about whether you would be a fair and impartial

17   juror?

18          THE PROSPECTIVE JUROR:  No.

19          THE COURT:  Okay.  Any follow-up question?

20          MR. DE CASTRO:  None, Judge.

21          MS. KOMATIREDDY:  No, Judge.

22          THE COURT:  Thank you very much.  You can go back

23   across the hall.

24          THE PROSPECTIVE JUROR:  I do need to come back?

25          THE COURT:  Yes.  We will let you know.  Just go

1   across the hall and we will let you know what you need to do.

2            (Prospective juror 77 exits.)

3            THE COURT:  Can you give me a moment?

4            MR. DE CASTRO:  We need a moment too, Judge.

5            (Pause.)

6            THE COURT:  So --

7            MS. KOMATIREDDY:  Your Honor, the parties both agree

8   that the juror should be removed for cause.

9            MR. DE CASTRO:  We agree, Judge.

10           THE COURT:  I just got confirmation that he spoke to

11  my intern and gave that information.  So it is a little bit

12  strange that he doesn't even know what we are talking about,

13  so we can excuse him.  You can bring him back and I will

14  excuse him.

15           Let's bring in the next juror if Juror No. 78 is

16  available.

17           (Continued on next page.)

18

19

20

21

22

23

24

25

1              (Prospective Juror No. 78 enters.)

2              THE COURT:  You can come up here to the podium, sir.

3              You can put your coat on the chair if that's more

4    comfortable for you.

5              We just have a few followup questions.

6              THE PROSPECTIVE JUROR:  Sure.

7              THE COURT:  So you indicated on the questionnaire

8    that you have some family members who are law enforcement.

9              Can you tell me how close you are to those family

10   members?

11             THE PROSPECTIVE JUROR:  Um, one is an -- they're

12   both through marriage.

13             On my wife's side, her uncle is NYPD.

14             And I have an uncle on -- cousins on my mom's side,

15   Suffolk County PD.

16             THE COURT:  And does the fact that you have these

17   family connections in law enforcement, do you think that will

18   affect your ability to be fair in a case that involves

19   potentially law enforcement on one side and others?

20             THE PROSPECTIVE JUROR:  No, I don't see it being a

21   problem at all.

22             THE COURT:  Would you be able to assess the

23   credibility of a law enforcement witness just like any other

24   person, any other witness?

25             THE PROSPECTIVE JUROR:  Yes, Your Honor.

Prospective Juror No. 78                    284

1           THE COURT:  Okay.  And you sat on a civil trial.

2           In a civil case, the burden of proof is

3   preponderance of the evidence.  In a criminal case, it's

4   beyond a reasonable doubt, it's a higher standard.

5           Do you think you can apply that higher standard?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  Okay.  And you talked about having had a

8   traffic stop with police officers.

9           Does that affect your ability to be fair?

10          THE PROSPECTIVE JUROR:  Not at all.

11          THE COURT:  Okay.  And then you also talked about

12  some family members have used drugs.

13          Would that affect your ability to be fair in a case

14  that involves allegations of drug trafficking?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Is there any reason that you could not

17  be a fair and impartial juror?

18          THE PROSPECTIVE JUROR:  I don't see why I -- not

19  that I know of.

20          THE COURT:  Okay.  Wonderful.  That's perfectly

21  great.

22          So you could go back across the hall.  Thank you.

23          THE PROSPECTIVE JUROR:  Okay.  Thank you.

24          (Prospective Juror No. 78 exits.)

25          MR. DE CASTRO:  Before you bring in the next person.

1           MS. KOMATIREDDY:  There's no one else.

2           Sorry, Judge.  There's no one else, right, for

3    today?

4           THE COURT:  Oh, yes.  We've got 80, 81, 83, 84 and

5    85.

6           MR. DE CASTRO:  Judge, what I was going to say was,

7    when you address the law enforcement question, could you also

8    mention that Mr. Garcia Luna was law enforcement as well?

9           THE COURT:  Yes.  I don't know how to ask the

10   question the way I normally ask it, which is really about

11   fairness.  And so I guess I would just say law enforcement

12   like anyone else, instead of saying one side and the other.

13          MR. DE CASTRO:  Right.  Exactly.

14          Or you can even just say Mr. Garcia Luna was law

15   enforcement, too.  Would you have any feelings about that?

16          THE COURT:  Okay.  I worry a little bit about saying

17   too much.

18          MR. DE CASTRO:  Sure.

19          THE COURT:  Is that something the government thinks

20   would be okay to say?  I was just going to say a little bit

21   less rather than a little bit more.

22          MR. DE CASTRO:  My only concern is that when you say

23   that sort of general, their thought is going to be with the

24   government, naturally, and have no idea that it also could

25   affect us, so.

Prospective Juror No. 77                    286

1          Let me confer with the government.

2          THE COURT:  Okay.

3          (Pause in proceedings.)

4          MS. KOMATIREDDY:  I think it's fine, Your Honor.  I

5    understand the concern.

6          We just ask that it be a reference to foreign law

7    enforcement so that there's not an assumption he was U.S. law

8    enforcement.

9          THE COURT:  I see.  Okay.

10         Was, right?

11         MR. DE CASTRO:  Correct.

12         THE COURT:  Okay.  Let's have 77 in and I can just

13   excuse him.

14         (Prospective Juror No. 77 enters.)

15         THE COURT:  Juror 77, you're excused.  So you can go

16   back to the second floor.  Thank you.

17         (Prospective Juror No. 77 exits.)

18         THE COURT:  So Juror No. 80, can you tell me what

19   questions you would like me to focus on?

20         MR. DE CASTRO:  That's a very good question for this

21   one.  I don't think we -- we didn't really have any followups.

22   And the hardship answer is:  I have no hardships.

23         THE COURT:  Yes.

24         MS. KOMATIREDDY:  We didn't have any followups

25   either, Your Honor.

1           THE COURT:  Okay.  I'll do a quick is there any

2    reason you can't be fair.

3           MS. KOMATIREDDY:  Yes.

4           MR. DE CASTRO:  Yes.

5           THE COURT:  Juror No. 80.

6           And have 81 ready as well.

7           And make sure 81 is ready as well.  Okay?

8           Juror No. 80, you can come up to the podium.

9           (Prospective Juror No. 80 enters.)

10          THE COURT:  How are you doing?

11          THE PROSPECTIVE JUROR:  Good.

12          THE COURT:  Great.

13          If you want to put your bag down on the chair,

14   that's fine, but just step to the podium because there's a

15   microphone there.

16          And if you want to keep your mask on, that's great.

17   Or you can take it off if you're more comfortable.

18          So I wanted to know whether you have -- if there's

19   any reason that you could not be fair and impartial if you

20   were picked as a juror in this case.

21          THE PROSPECTIVE JUROR:  Oh, no.

22          THE COURT:  All right.  And when we asked if you had

23   any hardship with the timing, you said you don't have any

24   problem with the timing; is that right?

25          THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Okay.  Great.  So I think those are all

2    our questions.

3          THE PROSPECTIVE JUROR:  Oh, thank you.

4          THE COURT:  Thank you very much.

5          Why don't you go back across the hall and we'll let

6    you know what happens next.

7          MS. KOMATIREDDY:  Sorry, Your Honor.  Can we -- I

8    just wanted to make sure I didn't miss anything, Your Honor.

9          THE COURT:  Hold on a moment.

10         MS. KOMATIREDDY:  We're all set.

11         THE COURT:  No problem.  Thank you.

12         (Prospective Juror No. 80 exits.)

13         THE COURT:  Juror No. 81.

14         MR. DE CASTRO:  Judge, I mean we saw this as a clear

15   hardship.  Works nights, takes care of his parents during the

16   date and works night.  I don't know how he or she would do it.

17         THE COURT:  Any issue on the hardship?

18         MS. KOMATIREDDY:  If you give me a minute,

19   Your Honor?

20         THE COURT:  Please.

21         MS. KOMATIREDDY:  Your Honor, that's fine.

22         THE COURT:  Okay.  So have Juror No. 81 come in and

23   I will excuse him.

24         (Prospective Juror No. 81 enters.)

25         THE COURT:  You're juror No. 81?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay.  I want to let you know that

3     you're excused.

4          THE PROSPECTIVE JUROR:  Oh, thank you.

5          THE COURT:  So you can go down to the second floor

6     and let them know that you've been excused.

7          THE PROSPECTIVE JUROR:  Thank you, Your Honor.

8          THE COURT:  All right.  Thank you.

9          (Prospective Juror No. 81 exits.)

10          THE COURT:  Juror No. 83, I have that she is

11     currently applying for jobs.

12          MR. DE CASTRO:  And has a hearing, but doesn't tell

13     us the date.

14          THE COURT:  Right.

15          Any other questions?

16          MR. DE CASTRO:  I have 47 and 52 as well.

17          THE COURT:  Also, half-brother was mugged when he

18     was a teen.  That's 40.

19          Anything else?

20          MS. KOMATIREDDY:  And 69, Your Honor.

21          THE COURT:  Yes.

22          MS. KOMATIREDDY:  The reference to a pending

23     hearing.

24          THE COURT:  Yes.  Okay.

25          (Prospective Juror No. 83 enters.)

1          THE COURT:  Juror No. 83, come on up to the podium.

2          How are you doing?

3          THE PROSPECTIVE JUROR:  I'm good.

4          THE COURT:  Good.  If you want to put your bag down,

5    feel free.  If you want to leave your mask off, take it off,

6    whatever you feel comfortable with.

7          I understand you're currently applying for jobs; is

8    that right?

9          THE PROSPECTIVE JUROR:  Mm-hm.

10          THE COURT:  Do you have any prospects?

11          THE PROSPECTIVE JUROR:  I have an invitation to

12    schedule an interview, but I haven't confirmed the day yet

13    because I had to come here, so I didn't want to select a date

14    and then had to come here.

15          THE COURT:  If you were picked as a juror, the Court

16    doesn't sit on Fridays, so you could schedule anything you

17    want on a Friday.

18          THE PROSPECTIVE JUROR:  Okay.

19          THE COURT:  So is that going to work for you, you

20    think?

21          THE PROSPECTIVE JUROR:  Yeah.

22          THE COURT:  You also said there's a hearing with the

23    Department of Labor.  Do you know when that is?

24          THE PROSPECTIVE JUROR:  I think that's been

25    canceled.  That's been dealt with.

1          THE COURT:  That's canceled.  Okay, great.

2          So then you also said that your brother was mugged

3    when he was a teenager.

4          THE PROSPECTIVE JUROR:  Mm-hm.

5          THE COURT:  Would that affect your ability to be

6    fair in a criminal case?

7          THE PROSPECTIVE JUROR:  No.  That happened like

8    20 years ago.

9          THE COURT:  Oh, okay.  And then you also said that

10   your sister-in-law is an employment lawyer.

11         Do you talk about legal issues?

12         THE PROSPECTIVE JUROR:  No.

13         THE COURT:  Okay.  The important thing there is that

14   when Judge Cogan instructs you on what the law is, you would

15   follow his instruction rather than anything anyone else may

16   have told you.

17         Can you do that?

18         THE PROSPECTIVE JUROR:  Mm-hm.

19         THE COURT:  Okay.  And then you said you knew or you

20   heard something about El Chapo?

21         THE PROSPECTIVE JUROR:  Yeah.  I listen to the news

22   like every day, like for a while.

23         THE COURT:  And do you think that you could be fair

24   in a case in which his activities might be mentioned?

25         THE PROSPECTIVE JUROR:  Mm-hm.

Prospective Juror No. 83                          292

1        THE COURT:  Have you made up your mind yet about who

2    is guilty and who is not guilty in this case?

3        THE PROSPECTIVE JUROR:  I don't know anything about

4    the case.

5        THE COURT:  Will you keep an open mind?

6        THE PROSPECTIVE JUROR:  Mm-hm.

7        THE COURT:  Is there any reason you could not be

8    fair and impartial?

9        THE PROSPECTIVE JUROR:  No.

10        THE COURT:  Any followup questions?

11        MR. DE CASTRO:  No, Your Honor.

12        MS. KOMATIREDDY:  No, Your Honor.  Thank you.

13        THE COURT:  Thanks very much.  You can go back

14    across the hall.

15        THE PROSPECTIVE JUROR:  Thank you.

16        (Prospective juror exits No. 83 exits.)

17        THE COURT:  Juror No. 84 has a lot of answers.

18        MR. DE CASTRO:  Just, I think in at least two places

19    if there is a trial, that probably means there's enough for a

20    conviction.  We think this is a clear cause.  I think that's

21    twice on this questionnaire.

22        MS. KOMATIREDDY:  Your Honor, we didn't see it as a

23    bar because it's an accurate statement of the law.  The grand

24    jury returns an indictment, means there's probable cause.

25        THE COURT:  And how about the traveling by Uber

Prospective Juror No. 83                    293

1    every day issue?

2            MS. KOMATIREDDY:  We just thought it merited further

3    inquiry.

4            THE COURT:  Okay.

5            MS. KOMATIREDDY:  Also, Your Honor, I would just

6    note, this is going to be a partial sequestered jury, so the

7    marshals will be doing --

8            THE COURT:  Really?

9            MS. KOMATIREDDY:  -- anonymous and partial

10   sequestered jury.

11           Yes, Your Honor.

12           THE COURT:  All right.  So maybe that's not going to

13   be an issue.

14           Should I tell him that from a transportation

15   perspective not to worry?

16           Oh, okay.  Got it.  Okay.

17           All right.  So I understand that they don't know

18   that and that I shouldn't really discuss it at this point.

19           So I will ask about 49, which is if there's

20   evidence, there's probability guilty.

21           And then there's also Number 60, if the person is

22   innocent why not tell their side of the story.

23           So I'll focus on those and I'll see what else comes

24   up.

25           So, 84.

```
 1              (Prospective Juror No. 84 enters. )

 2              THE COURT:  Hi, Juror No. 84.

 3              THE PROSPECTIVE JUROR:  Hi.

 4              THE COURT:  You can pull up to this podium.

 5              MR. DE CASTRO:  Judge, and Number 4, too, I would

 6    think to focus on.

 7              THE COURT:  Yes.

 8              You can leave your mask on if you're more

 9    comfortable.

10              THE PROSPECTIVE JUROR:  I am.

11              THE COURT:  So you mentioned in the questionnaire

12    that you have a medical issue?  Coronary artery --

13              THE PROSPECTIVE JUROR:  Yeah, a couple of medical

14    issues.

15              THE COURT:  Tell us.

16              THE PROSPECTIVE JUROR:  Recently I was diagnosed

17    with esophagitis, which is inflammation of the esophagus, and

18    I have coronary artery disease.  And I'm a cancer survivor, a

19    breast cancer survivor.

20              THE COURT:  Right.  Okay.

21              And are these chronic conditions or are they things

22    that --

23              THE PROSPECTIVE JUROR:  Chronic.

24              THE COURT:  They're chronic.  So you've been

25    managing it for some time?
```

1          THE PROSPECTIVE JUROR:  Long time, yeah.

2          THE COURT:  And so what is your concern in terms of

3     sitting as a juror?

4          THE PROSPECTIVE JUROR:  Um, like today was such a

5     long day and I'm not used to being up this late.  I usually

6     take a nap in the afternoon and usually I wake up, like,

7     around 8 or 9.  And, you know, I'm retired, so I -- you know,

8     this is like my time for me trying to get myself better,

9     healthier.

10         THE COURT:  Right.  Right, okay.  I appreciate your

11    letting us know that.

12         MR. DE CASTRO:  We have no objection.

13         MS. KOMATIREDDY:  We have no objection.

14         THE COURT:  Okay.  So you're excused.

15         THE PROSPECTIVE JUROR:  Thank you.

16         THE COURT:  Go back to the second floor.

17         THE PROSPECTIVE JUROR:  Thank you.

18         (Prospective Juror No. 84 exits.)

19         THE COURT:  And last juror, 85.

20         MR. DE CASTRO:  From the defense perspective,

21    there's followup on the hardship issue because the business he

22    runs is his own or her own business.

23         34, 49, 50, 56, 58.

24         THE COURT:  Okay.

25         How about the government?

1              MS. KOMATIREDDY:  That covers us as well,

2    Your Honor.

3              THE COURT:  Okay.  You can bring in the juror.

4              (Prospective Juror No. 85 enters.)

5              THE COURT:  Hi, Juror No. 85.  Come on up to the

6    podium.

7              How are you doing?

8              THE PROSPECTIVE JUROR:  Okay.

9              THE COURT:  Thank you for your patience.  I know

10   it's been a long day.

11             So we had a couple of followup questions.

12             And I'll start with your answer to the hardship

13   question.  You said you run a business and this is going to be

14   a problem to sit on the jury?

15             THE PROSPECTIVE JUROR:  That's true, yes.

16             THE COURT:  So tell me about the hardship.

17             THE PROSPECTIVE JUROR:  I have a security business

18   in Staten Island.  And it's just three employees:  Myself, my

19   wife, and a trainee.  And if I'm not there, there's not going

20   to be anybody to run the business.

21             THE COURT:  Do you own the business?

22             THE PROSPECTIVE JUROR:  I own the business, yes.

23             THE COURT:  And there's nobody else who could do it?

24   Your wife and the trainee alone could not handle it?

25             THE PROSPECTIVE JUROR:  She's not licensed.

1          THE COURT:  They're not licensed?

2          THE PROSPECTIVE JUROR:  She's a bookkeeper.

3          THE COURT:  So you're a licensed locksmith?

4          THE PROSPECTIVE JUROR:  Yeah.  New York and

5     New Jersey, yes.

6          THE COURT:  I see.

7          MR. DE CASTRO:  We have no objection.

8          MS. KOMATIREDDY:  No objection, Your Honor.

9          THE COURT:  Okay.  You're excused.

10          Thank you very much.  You can go down to the second

11     floor.

12          (Prospective Juror No. 85 exits.)

13          THE COURT:  We got through all the jurors.

14          Are there any for-cause arguments before we wrap up?

15          MS. KOMATIREDDY:  Could we just have a few minutes,

16     Your Honor?

17          THE COURT:  Yes.

18          MR. DE CASTRO:  Nothing from the defense,

19     Your Honor.

20          THE COURT:  Okay.

21          MR. DE CASTRO:  If I can comment on the accuracy of

22     the Court.  5:30.

23          Well, I'm sorry, you were off, 5:31.

24          THE COURT:  I can only do it when the attorneys are

25     also watching the time.

1          We will similarly ask them to come back on Thursday

2   morning.

3          MS. KOMATIREDDY:  Thank you for allowing us to check

4   our notes, Your Honor.  We don't have anything further.

5          THE COURT:  Okay, great.

6          So bring all the jurors.  I'll let them know that

7   they can skip tomorrow and come back Thursday morning.

8          (Prospective jurors enter.)

9          THE COURT:  You can fill in any seat.  You can

10  spread out.  This is only going to take a minute.

11         That's everyone?

12         Okay.  You can sit down.

13         Thank you, everybody, for your patience.  I know

14  it's been a long day and thank you for staying later.  So

15  we're done for the day and you do not have to come in

16  tomorrow, but I would like you to come in on Thursday morning

17  at 8:30 so that we can continue the jury selection.  There

18  will be a different group of jurors coming in tomorrow and

19  we'll ask them questions just like we did with you today and

20  then everybody will meet on Thursday morning so that hopefully

21  at that point we can complete the process.  All right?  So

22  8:30 on Thursday morning.  You don't have to come in tomorrow

23  and you don't have to call in tomorrow.  Just know that 8:30

24  on Thursday morning we'll see you and that's all you need to

25  do.  All right?  Have a good evening and thank you again for

1   your patience.

2              (Prospective jurors exit.)

3              THE COURT:  All right.  Thank you, everybody.  This

4   has been a long day, but productive.  We got through all the

5   jurors.  I'm very proud of all of you.

6              We had one juror who did not show up, Number 12.

7   And 46, sorry.  So those people will be summonsed to come in

8   tomorrow.

9              We've also asked the next 60 to come in, 30 in the

10  morning, 30 in the afternoon.  Hopefully they'll all be here.

11             Please take a look at the numbers.  I didn't keep

12  track of how many qualified jurors we have at the moment.  But

13  remember, the magic number is 40.  So if we get to 40 before

14  lunch, then we can end early because the whole batch isn't

15  coming back until Thursday.  So we won't be able -- we have

16  26.  So we have 26 qualified jurors.

17             MR. DE CASTRO:  We have 26.

18             And then there's like five that we needed to find

19  out if they're getting paid.

20             THE COURT:  Yes.  So we're not there yet.  It's

21  possible but probably unlikely that we'll finish in the

22  morning, so most likely we'll need the afternoon.  So make

23  sure you reviewed all the questionnaires for the day.  And so

24  whatever happens tomorrow, like I said, we'll have to finish

25  Thursday morning.

Jury Selection                                300

1          I am hopeful that Thursday morning we have them come

2   in and we can do the peremptory strikes and then we're done.

3   So that would be nice.  We'll be in touch with Judge Cogan's

4   chambers in terms of when he'll pick up, assuming that we're

5   done with the jury selection on Thursday.

6          And I think this is good.  All right.

7          Any questions or things you need to say?

8          Yes?

9          MS. KOMATIREDDY:  One question, Your Honor.

10         I understand that there are approximately 125 jurors

11  who came in this morning and filled in questionnaires.

12  Your Honor had issued an order asking us to provide a list of

13  those tonight.  Is that something you would still like us to

14  do?

15         THE COURT:  I don't think that will be necessary.

16         MS. KOMATIREDDY:  Okay.  And we can do it on Friday

17  if needed.

18         THE COURT:  Exactly.

19         So why don't we go through tomorrow and if

20  tomorrow's group of jurors yields such a small number that

21  we're concerned about running out of jurors, then that might

22  be necessary.  But we still have the third batch of jurors

23  from last week that we could talk to on Thursday.

24         MS. KOMATIREDDY:  Yes, Your Honor.

25         THE COURT:  So it's very unlikely that we will need

1    the jurors from today, but we'll see.  You know, fingers

2    crossed it doesn't become a problem, but we should know by the

3    end of the day on Thursday if we have not hit that -- reached

4    40 qualified jurors.  Then we might have to look at that.

5              MS. KOMATIREDDY:  Thank you, Judge.

6              THE COURT:  Anything else?

7              MR. DE CASTRO:  Thank you.

8              THE COURT:  All right.  So 9:00 tomorrow morning.

9    Until then, we are adjourned.  Thank you.

10

11             (Matter adjourned to Wednesday, January 18, 2023 at

12   9:00 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'90s** [4] - 69:1, 69:17, 264:15, 264:25

# 1

**1** [1] - 243:24
**10** [6] - 42:18, 43:13, 43:24, 43:25, 45:16, 46:2
**10-minute** [1] - 74:4
**100** [6] - 68:6, 68:7, 141:2, 211:12, 211:18, 213:5
**100,000** [1] - 141:3
**10004** [1] - 2:2
**10038** [2] - 1:22, 2:5
**11** [8] - 35:3, 37:8, 42:18, 45:17, 46:5, 46:8, 46:9, 46:17
**111** [1] - 1:22
**11201** [1] - 1:18
**12** [6] - 46:18, 70:22, 175:22, 194:6, 194:7, 299:6
**125** [1] - 300:10
**12:30** [1] - 143:22
**12:30-ish** [1] - 12:14
**13** [14] - 46:19, 46:24, 46:25, 47:1, 56:11, 59:5, 59:6, 59:14, 59:15, 59:16, 61:19, 272:1, 272:2
**14** [7] - 56:12, 59:13, 61:20, 61:25, 62:1, 62:2, 67:1
**15** [5] - 67:2, 67:9, 67:10, 67:11, 70:10
**150** [2] - 207:24, 246:5
**16** [2] - 271:25, 272:2
**16-month** [1] - 244:15
**16th** [3] - 245:8, 245:9, 245:15
**17** [6] - 1:7, 70:11, 70:20, 71:3, 71:4, 73:25
**17th** [4] - 16:19, 17:14, 245:11
**18** [8] - 75:4, 75:8, 75:20, 75:23, 76:8, 76:9, 78:11, 301:11
**18-month** [1] - 233:2
**18th** [3] - 175:23, 245:9, 245:15
**19** [4] - 78:12, 78:18, 78:19, 84:14
**19-CR-00576(BMC** [1] - 1:3
**19-CR-576** [1] - 3:3
**1900** [1] - 2:2
**1988** [1] - 263:4
**19th** [1] - 229:7
**1:00** [1] - 141:21
**1:30** [3] - 143:23, 145:2, 145:22

# 2

**2** [8] - 15:6, 15:17, 15:18, 16:11, 234:8, 243:19, 249:19, 256:2
**20** [6] - 17:2, 131:17, 198:9, 198:14, 252:18, 291:8
**2009** [1] - 139:7
**2019** [1] - 279:18
**2023** [2] - 1:7, 301:11
**21** [6] - 85:12, 85:19, 85:20, 85:21, 91:2,

91:22
**21st** [2] - 16:19, 16:20
**22** [7] - 91:23, 92:5, 92:6, 92:7, 93:20, 153:18
**225** [1] - 2:5
**23** [13] - 93:21, 94:12, 94:13, 94:14, 98:22, 107:13, 118:2, 118:3, 118:4, 118:21, 120:6, 120:15, 122:1
**23rd** [4] - 133:24, 177:5, 177:6, 177:8
**24** [8] - 21:15, 21:17, 21:20, 43:23, 75:6, 75:7, 75:19, 75:24
**25** [1] - 105:12
**26** [9] - 98:23, 99:8, 99:16, 99:18, 99:19, 99:25, 299:16, 299:17
**27** [14] - 100:1, 100:8, 100:9, 100:10, 107:6, 182:7, 182:8, 182:9, 187:13, 189:1, 189:2, 189:3, 190:25, 193:7
**271** [1] - 1:17
**28** [6] - 107:7, 107:15, 107:18, 107:19, 107:20, 117:17
**2815** [1] - 2:5
**29** [22] - 120:7, 120:10, 122:2, 122:3, 125:23, 127:10, 129:22, 137:14, 143:20, 144:2, 144:4, 144:19, 183:12, 184:1, 187:13, 191:1, 191:2, 191:6, 277:15, 277:17, 277:18, 277:19
**2:50** [1] - 181:1
**2:55** [1] - 93:7
**2nd** [1] - 166:1

# 3

**3** [5] - 16:12, 17:4, 17:6, 18:22, 137:6
**30** [17] - 4:25, 9:13, 9:16, 33:15, 37:3, 37:9, 88:2, 111:2, 112:7, 129:25, 130:16, 131:7, 131:8, 131:9, 135:2, 299:9, 299:10
**30th** [3] - 245:6, 245:21, 253:9
**31** [4] - 135:13, 135:14, 135:15, 136:25
**32** [6] - 137:1, 137:14, 137:16, 137:17, 143:5
**33** [8] - 145:3, 145:23, 146:4, 146:18, 146:19, 147:1, 147:2, 149:9
**34** [17] - 85:14, 114:6, 145:16, 149:10, 149:12, 149:17, 149:18, 149:19, 153:13, 184:16, 187:13, 191:7, 193:2, 193:4, 257:22, 266:6, 295:23
**35** [23] - 45:23, 46:22, 85:14, 137:6, 153:14, 153:18, 153:24, 153:25, 154:3, 163:5, 165:19, 165:20, 168:5, 171:2, 171:4, 171:5, 174:24, 198:9, 229:25, 243:19, 257:22, 259:8, 264:9
**36** [12] - 45:23, 107:9, 146:20, 149:12, 175:12, 175:13, 175:14, 179:23, 234:8, 243:19, 243:22, 257:22
**37** [16] - 43:23, 94:1, 94:2, 146:20, 153:19, 194:12, 198:5, 198:9, 199:15, 199:16, 205:1, 206:20, 214:7, 214:8, 214:9, 215:5
**38** [5] - 206:22, 206:24, 206:25, 214:6,

229:25
**39** [5] - 107:9, 216:12, 216:13, 216:16, 243:19
**3:00** [1] - 93:6

# 4

**4** [7] - 19:7, 19:11, 19:20, 19:21, 19:22, 21:9, 294:5
**40** [34] - 12:23, 13:2, 13:5, 45:23, 85:14, 100:2, 107:9, 120:9, 130:17, 130:23, 130:24, 145:7, 145:13, 146:23, 149:12, 153:18, 216:11, 216:18, 216:22, 216:23, 216:24, 221:18, 221:24, 222:8, 222:9, 223:9, 226:10, 230:5, 259:8, 259:9, 289:18, 299:13, 301:4
**400** [2] - 135:24, 176:8
**41** [5] - 146:20, 223:10, 223:20, 223:21, 226:8
**42** [9] - 21:15, 21:18, 39:4, 45:23, 46:23, 85:16, 85:17, 92:3, 107:9
**43** [12] - 67:5, 85:14, 92:3, 107:9, 131:3, 131:4, 146:20, 223:10, 223:18, 226:10, 232:11, 268:5
**44** [19] - 67:5, 85:14, 93:24, 100:2, 107:9, 137:6, 146:6, 146:11, 179:24, 179:25, 181:18, 229:25, 234:8, 242:16, 243:19, 249:19, 259:8, 264:9, 273:22
**44's** [1] - 43:19
**45** [8] - 100:2, 107:9, 107:10, 153:18, 226:9, 226:17, 226:18, 229:15
**46** [5] - 39:4, 229:16, 229:19, 299:7
**47** [15] - 17:2, 32:16, 39:4, 92:1, 100:2, 107:9, 153:18, 198:9, 203:16, 252:18, 257:22, 259:8, 268:5, 275:17, 289:16
**48** [9] - 17:2, 107:10, 198:9, 203:16, 229:23, 230:8, 230:9, 230:10, 232:9
**49** [22] - 21:15, 21:18, 61:22, 70:11, 85:14, 99:4, 146:20, 153:19, 198:9, 229:25, 232:10, 232:18, 232:19, 232:20, 234:2, 234:5, 234:8, 242:16, 257:22, 268:5, 293:19, 295:23
**4:25** [1] - 248:17
**4:30** [7] - 92:19, 93:5, 93:7, 93:10, 270:13, 270:14, 270:16

# 5

**50** [19] - 21:15, 21:18, 26:22, 145:15, 149:12, 153:19, 164:6, 234:3, 234:5, 234:9, 234:10, 234:11, 242:2, 242:8, 242:9, 242:12, 243:22, 243:23, 295:23
**52** [8] - 43:23, 46:20, 78:12, 153:19, 226:10, 252:18, 275:17, 289:16
**53** [5] - 242:13, 242:21, 242:22, 242:23, 243:16
**54** [3] - 78:13, 153:19, 257:22
**55** [23] - 21:12, 21:13, 21:19, 43:15,

43:23, 78:13, 146:20, 146:23, 149:12,
153:19, 216:19, 216:21, 229:25,
243:18, 243:19, 244:1, 244:2, 244:6,
248:14, 266:4, 268:5, 275:17
**56** [30] - 21:19, 43:15, 43:23, 85:14,
92:1, 107:10, 120:9, 146:23, 149:12,
153:19, 198:10, 216:19, 226:11,
242:16, 249:4, 249:13, 249:17,
249:19, 249:20, 249:21, 252:16,
252:18, 254:25, 257:22, 264:9, 266:4,
268:5, 269:18, 275:17, 295:23
**57** [4] - 21:13, 85:15, 234:8, 257:23
**58** [11] - 46:20, 61:22, 85:15, 92:1,
107:10, 135:4, 226:11, 232:11,
243:20, 268:5, 295:23
**59** [4] - 252:17, 252:23, 252:24, 254:23
**5:00** [2] - 96:7, 244:19
**5:30** [3] - 249:5, 258:17, 297:22
**5:31** [1] - 297:23
**5th** [2] - 166:1, 200:2

## 6

**6** [6] - 21:10, 22:1, 22:2, 22:3, 28:18,
270:14
**60** [8] - 145:9, 145:19, 145:22, 175:24,
252:18, 268:5, 293:21, 299:9
**602** [1] - 1:22
**61** [5] - 254:24, 255:4, 255:5, 257:20,
268:5
**62** [14] - 39:2, 39:4, 43:15, 43:23, 100:2,
146:20, 146:23, 257:21, 257:23,
257:25, 258:1, 259:6, 266:4, 268:13
**62(b)** [1] - 107:16
**62-C** [1] - 61:23
**64** [5] - 259:7, 259:10, 259:11, 259:12,
264:7
**65** [1] - 146:20
**66** [14] - 21:12, 21:14, 21:19, 26:22,
43:15, 43:23, 61:22, 146:24, 149:13,
153:19, 198:10, 243:20, 257:23, 266:4
**67** [10] - 21:12, 21:14, 21:16, 21:19,
43:15, 153:19, 264:8, 264:16, 264:17,
266:1
**68** [5] - 229:25, 266:2, 266:9, 266:10,
268:2
**69** [15] - 5:10, 32:15, 32:16, 43:22, 67:5,
78:14, 92:4, 153:20, 232:12, 243:25,
257:23, 268:13, 273:22, 275:17,
289:20
**6:00** [4] - 93:8, 258:18, 270:13, 275:2
**6:15** [2] - 275:2, 275:3
**6th** [4] - 242:14, 243:2, 245:6, 245:21

## 7

**7** [5] - 28:19, 29:9, 29:10, 29:11, 32:10
**7-year-old** [1] - 276:8
**70** [10] - 32:15, 61:22, 67:5, 175:24,
189:10, 268:3, 268:4, 268:16, 268:19,

269:16
**71** [10] - 19:13, 67:5, 70:13, 75:20,
93:22, 120:9, 216:19, 223:13, 232:15,
249:19
**718-613-2267** [1] - 2:9
**718-613-2374** [1] - 2:8
**73** [4] - 269:22, 270:3, 270:4, 273:21
**75** [6] - 207:25, 208:3, 208:4, 273:22,
274:1, 275:15
**76** [5] - 275:16, 275:21, 275:22, 275:23,
276:23
**77** [8] - 276:24, 277:24, 277:25, 282:2,
286:12, 286:14, 286:15, 286:17
**78** [3] - 282:15, 283:1, 284:24
**7th** [1] - 224:8

## 8

**8** [6] - 32:11, 32:23, 32:24, 36:23, 38:24,
295:7
**80** [7] - 2:2, 285:4, 286:18, 287:5, 287:8,
287:9, 288:12
**80s** [1] - 122:9
**81** [8] - 285:4, 287:6, 287:7, 288:13,
288:22, 288:24, 288:25, 289:9
**83** [5] - 285:4, 289:10, 289:25, 290:1,
292:16
**84** [6] - 285:4, 292:17, 293:25, 294:1,
294:2, 295:18
**85** [5] - 285:5, 295:19, 296:4, 296:5,
297:12
**87** [1] - 266:23
**8:00** [1] - 96:6
**8:30** [8] - 194:17, 195:15, 196:23, 197:5,
197:21, 298:17, 298:22, 298:23

## 9

**9** [11] - 38:25, 39:1, 39:6, 39:7, 43:12,
185:10, 187:13, 187:16, 187:17,
188:25, 295:7
**99** [2] - 201:3, 205:4
**99-year-old** [2] - 198:7, 216:4
**9:00** [5] - 1:8, 134:1, 134:2, 301:8,
301:12

## A

**a.m** [5] - 1:8, 134:1, 134:2, 141:21,
301:12
**abide** [1] - 225:23
**ability** [87] - 6:20, 11:19, 18:13, 24:23,
29:25, 30:21, 31:2, 32:2, 47:21, 49:24,
51:24, 53:5, 60:4, 63:23, 64:7, 65:17,
69:13, 69:20, 71:22, 76:24, 77:1,
80:15, 81:5, 87:13, 87:24, 88:3, 88:22,
89:6, 91:7, 91:13, 103:12, 111:11,
122:12, 122:23, 123:10, 131:20,
132:7, 132:15, 133:18, 136:4, 138:17,
147:12, 148:5, 150:14, 153:6, 156:6,

160:16, 161:2, 161:14, 163:11, 178:2,
201:16, 201:19, 201:25, 203:24,
204:9, 218:13, 224:18, 226:25,
227:19, 229:2, 230:18, 233:14,
234:19, 236:1, 240:23, 246:17,
247:19, 248:2, 250:23, 251:13,
251:17, 251:25, 255:24, 256:5,
256:17, 257:10, 263:20, 263:23,
265:3, 265:16, 266:19, 281:10,
283:18, 284:9, 284:13, 291:5
**able** [66] - 6:13, 20:11, 20:12, 21:3, 21:4,
23:18, 23:23, 24:17, 26:3, 26:14,
30:12, 32:19, 35:10, 35:21, 40:17,
49:2, 50:9, 51:19, 53:17, 55:2, 60:25,
68:17, 71:12, 73:2, 77:21, 82:20, 87:4,
89:21, 102:11, 111:20, 126:17,
139:10, 140:2, 140:6, 142:10, 145:20,
152:5, 155:4, 164:5, 164:7, 170:1,
178:20, 180:17, 180:24, 181:2,
187:11, 188:2, 188:5, 188:8, 200:15,
214:13, 214:16, 216:3, 235:19, 236:8,
236:15, 237:14, 238:19, 244:25,
261:24, 265:10, 271:10, 271:13,
274:19, 283:22, 299:15
**absent** [1] - 64:25
**absolute** [2] - 212:17, 212:19
**absolutely** [4] - 115:20, 115:22, 240:13,
265:5
**Absolutely** [1] - 222:23
**abstract** [2] - 172:18, 172:19
**abuse** [3] - 30:23, 110:19, 111:1
**abused** [1] - 53:11
**academy** [1] - 264:25
**accept** [15] - 6:19, 36:10, 42:24, 43:1,
60:21, 61:11, 77:17, 101:3, 170:24,
185:25, 186:7, 187:1, 188:18, 213:17,
218:16
**acceptable** [1] - 8:6
**accepted** [1] - 204:11
**access** [4] - 3:6, 22:24, 102:17, 110:9
**accidental** [1] - 26:6
**accidently** [1] - 28:4
**accidents** [1] - 251:2
**accommodate** [1] - 250:17
**accommodated** [1] - 193:22
**accommodation** [1] - 193:12
**account** [3] - 41:1, 116:3, 161:14
**accountant** [4] - 138:8, 138:9, 139:8,
274:9
**accounting** [1] - 175:22
**accuracy** [1] - 297:21
**accurate** [1] - 292:23
**accusation** [1] - 97:16
**accusations** [3] - 86:18, 136:1, 152:22
**Accused** [1] - 133:9
**accused** [17] - 31:11, 31:17, 31:22,
40:2, 48:1, 54:2, 57:16, 73:11, 91:11,
109:6, 111:12, 112:22, 133:8, 133:14,
159:12, 248:7, 281:3
**accusing** [2] - 31:24, 159:14

**acquit** [1] - 148:17
**actions** [1] - 27:7
**active** [1] - 33:16
**activities** [1] - 291:24
**activity** [5] - 31:23, 159:25, 217:9, 218:9, 218:11
**acts** [1] - 157:3
**actual** [2] - 37:12, 38:7
**ADA** [2] - 47:12, 262:14
**add** [4] - 15:14, 107:16, 146:22, 243:22
**addiction** [2] - 229:1, 232:11
**addictions** [1] - 111:24
**addition** [5] - 44:11, 44:15, 44:23, 163:20, 164:2
**additional** [5] - 20:22, 77:10, 145:13, 163:16, 168:22
**address** [7] - 5:17, 6:5, 6:10, 14:17, 14:20, 56:15, 285:7
**adjourn** [1] - 249:7
**adjourned** [2] - 301:9, 301:11
**Administration** [1] - 3:21
**admissible** [2] - 185:23, 186:13
**adult** [1] - 126:24
**advance** [1] - 119:22
**advantage** [1] - 114:8
**advise** [1] - 145:6
**advised** [1] - 155:21
**affect** [83] - 18:13, 24:23, 29:24, 30:20, 31:2, 47:21, 49:23, 53:5, 53:22, 56:23, 60:4, 60:9, 60:20, 63:23, 69:13, 69:20, 76:24, 77:1, 80:14, 81:5, 87:19, 87:24, 88:3, 88:22, 91:7, 91:13, 103:11, 111:11, 122:12, 123:10, 131:20, 132:7, 132:14, 133:18, 136:3, 147:12, 150:13, 161:1, 178:1, 179:11, 201:16, 201:19, 201:24, 204:8, 204:11, 218:13, 221:3, 224:18, 226:25, 227:2, 227:19, 229:2, 229:4, 230:18, 231:18, 231:19, 233:14, 234:19, 235:3, 236:1, 240:14, 240:22, 246:17, 247:19, 247:22, 250:22, 251:12, 251:15, 251:25, 255:24, 256:4, 256:17, 256:22, 257:9, 263:9, 263:19, 265:3, 265:16, 283:18, 284:9, 284:13, 285:25, 291:5
**affected** [4] - 44:25, 90:9, 216:1, 216:4
**affects** [9] - 58:21, 58:22, 58:25, 60:1, 87:13, 122:22, 122:23, 148:4
**afraid** [2] - 10:14, 38:12
**aftercare** [2] - 93:5, 253:16
**afternoon** [19] - 12:16, 12:17, 17:17, 93:6, 145:4, 145:17, 146:6, 146:11, 146:16, 166:8, 193:6, 194:1, 194:11, 197:1, 232:20, 279:7, 295:6, 299:10, 299:22
**AFTERNOON** [1] - 146:1
**afterwards** [2] - 19:1, 180:25
**agencies** [4] - 3:20, 27:8, 231:9
**agent** [2] - 48:18, 49:3
**Agent** [1] - 3:19

**aggressor** [1] - 147:20
**ago** [9] - 42:18, 87:16, 88:2, 131:17, 148:2, 228:3, 228:9, 228:10, 291:8
**agree** [17] - 8:12, 10:2, 46:1, 46:4, 60:6, 60:11, 60:14, 61:5, 61:8, 152:6, 173:23, 235:18, 237:1, 237:8, 242:4, 282:7, 282:9
**agreed** [3] - 60:21, 61:8, 164:8
**Agreed** [1] - 9:18
**agreement** [1] - 213:9
**ahead** [6] - 15:5, 65:12, 180:10, 180:12, 193:25, 209:2
**aided** [1] - 2:11
**aides** [1] - 200:13
**airport** [1] - 143:19
**al** [1] - 3:4
**alarming** [1] - 45:9
**alcohol** [1] - 209:10
**ALERIE** [1] - 2:6
**alert** [2] - 5:20, 90:5
**Alexander** [1] - 27:5
**ALICE** [1] - 2:6
**align** [1] - 24:16
**all-month** [1] - 33:23
**allegations** [16] - 6:8, 53:24, 55:8, 55:17, 80:24, 81:15, 123:11, 150:9, 151:2, 228:22, 247:9, 251:11, 252:6, 255:22, 265:14, 284:14
**alleged** [4] - 81:22, 82:20, 87:2, 217:7
**allocated** [1] - 141:9
**allowance** [1] - 145:19
**allowing** [1] - 298:3
**allows** [1] - 166:24
**almost** [1] - 272:5
**alone** [11] - 37:3, 37:9, 186:8, 186:13, 187:1, 188:14, 210:10, 210:11, 266:24, 296:24
**alongside** [1] - 154:17
**alternate** [2] - 95:24, 96:3
**alternates** [1] - 215:17
**AMERICA** [1] - 1:3
**America** [2] - 22:15, 235:25
**amount** [10] - 63:7, 118:14, 119:22, 119:23, 119:24, 120:3, 121:3, 121:13, 142:13, 247:1
**amounts** [1] - 55:8
**animis** [1] - 222:3
**annoyed** [1] - 228:13
**annoying** [1] - 228:19
**annual** [1] - 62:18
**anonymous** [2] - 222:13, 293:9
**answer** [59] - 5:8, 5:10, 7:2, 7:19, 15:8, 22:10, 22:13, 39:19, 44:8, 67:16, 79:2, 88:5, 92:14, 98:7, 101:1, 105:22, 107:13, 118:5, 120:18, 129:19, 129:23, 130:12, 130:24, 131:3, 137:3, 137:15, 143:2, 143:20, 144:25, 154:9, 156:11, 164:24, 169:19, 170:11, 183:14, 188:8, 196:10, 197:11, 197:14, 197:16, 199:23, 206:22,

**answered** [10] - 15:23, 22:8, 28:2, 33:5, 39:11, 41:24, 135:6, 136:7, 182:25, 230:2
**answering** [2] - 156:9, 164:22
**answers** [52] - 5:14, 5:15, 8:6, 8:17, 29:16, 39:12, 44:7, 45:18, 47:10, 62:9, 67:16, 70:24, 72:8, 79:1, 85:12, 86:8, 92:10, 94:20, 98:24, 98:25, 100:24, 107:7, 108:5, 122:8, 135:21, 138:4, 147:8, 149:22, 154:7, 155:19, 164:3, 169:16, 175:3, 175:6, 182:10, 196:8, 199:21, 205:24, 207:7, 217:5, 223:24, 226:21, 227:15, 234:3, 234:14, 243:17, 244:11, 246:13, 255:11, 258:5, 270:10, 292:17
**anticipate** [2] - 105:3, 197:3
**anxiety** [2] - 33:18, 45:7
**anxious** [2] - 45:1, 45:5
**anyway** [7] - 17:20, 73:5, 115:25, 142:24, 144:17, 250:12, 256:22
**apart** [1] - 190:3
**apologies** [2] - 76:6, 196:1
**apologize** [3] - 218:3, 245:17, 268:6
**apparent** [2] - 8:21, 37:1
**appear** [2] - 36:24, 229:21
**appearances** [2] - 3:15, 3:25
**applicable** [3] - 11:11, 277:20, 280:8
**application** [1] - 203:21
**applied** [3] - 7:20, 96:16, 204:3
**apply** [15] - 23:23, 64:24, 136:14, 165:10, 219:18, 220:5, 235:15, 235:18, 235:19, 236:16, 236:23, 236:25, 237:9, 284:5
**applying** [5] - 65:9, 96:19, 97:1, 289:11, 290:7
**appointed** [2] - 199:13, 201:15
**appointment** [4] - 146:12, 238:22, 253:8, 253:14
**appreciate** [6] - 114:14, 168:4, 174:14, 181:10, 186:23, 295:10
**apprehended** [1] - 147:16
**approach** [3] - 221:13, 235:24, 238:2
**appropriate** [3] - 6:15, 38:11, 161:16
**appropriately** [1] - 6:16
**approve** [1] - 159:7
**approved** [3] - 160:1, 177:3, 177:4
**apps** [2] - 178:11
**April** [2] - 175:23, 176:19
**area** [5] - 14:9, 108:21, 108:23, 110:19, 182:17
**arguably** [1] - 57:24
**arguing** [1] - 58:20
**argument** [4] - 10:15, 222:6, 222:16, 265:8
**arguments** [2] - 249:6, 297:14
**Army** [1] - 256:25

**arrangements** [1] - 130:8
**arrested** [3] - 178:9, 227:7, 227:25
**arriving** [2] - 276:25, 277:1
**artery** [2] - 294:12, 294:18
**article** [1] - 162:22
**articulated** [1] - 171:1
**articulations** [1] - 163:24
**arts** [3] - 277:10, 277:13, 279:3
**aside** [27] - 6:20, 21:24, 22:25, 27:20, 31:20, 41:15, 50:17, 53:25, 55:15, 77:11, 112:16, 113:9, 114:17, 148:21, 156:10, 156:12, 157:22, 163:11, 164:6, 185:4, 191:17, 222:20, 229:20, 235:5, 239:20, 247:8, 261:24
**assault** [1] - 87:17
**assembly** [1] - 43:10
**assess** [27] - 40:17, 48:20, 49:2, 55:16, 60:22, 61:1, 61:11, 66:12, 66:14, 97:11, 101:18, 112:16, 116:3, 161:2, 161:13, 161:21, 167:15, 178:4, 203:7, 203:11, 220:10, 238:10, 251:3, 259:25, 260:21, 261:8, 283:22
**assessing** [9] - 61:10, 61:12, 65:8, 86:20, 116:3, 202:14, 222:15, 250:23, 251:13
**assessment** [6] - 23:12, 115:19, 156:25, 170:14, 238:6, 281:16
**assessments** [1] - 151:23
**assigned** [1] - 140:2
**assist** [1] - 244:22
**assistance** [2] - 125:12, 125:13
**Assistant** [1] - 1:20
**assistant** [2] - 262:17, 273:3
**assisting** [2] - 57:5, 57:10
**associates** [1] - 201:23
**assume** [5] - 7:4, 64:24, 82:2, 110:10, 209:21
**assuming** [2] - 105:16, 300:4
**assumption** [1] - 286:7
**assurance** [1] - 205:25
**asthma** [1] - 266:23
**attempting** [1] - 168:21
**attend** [1] - 279:9
**attended** [1] - 264:25
**attending** [1] - 279:8
**attention** [7] - 64:13, 113:24, 174:19, 205:22, 211:2, 211:3, 251:17
**attorney** [3] - 18:6, 200:6, 262:17
**Attorney** [2] - 1:16, 1:20
**Attorney's** [4] - 130:22, 204:4, 204:6, 204:15
**Attorneys** [1] - 151:11
**attorneys** [2] - 182:15, 297:24
**audience** [1] - 4:22
**AUSAs** [1] - 3:18
**Austin** [2] - 4:5, 245:15
**authority** [1] - 217:15
**automatically** [5] - 41:5, 41:11, 89:17, 97:5, 103:16

**availability** [1] - 34:19
**available** [5] - 17:21, 34:20, 128:8, 128:11, 282:16
**avoid** [4] - 162:9, 162:21, 178:20, 278:17
**avoiding** [1] - 25:6
**aware** [2] - 52:6, 247:15
**awareness** [1] - 19:3
**awhile** [2] - 228:9, 244:24
**awkward** [1] - 9:20

## B

**babysitter** [1] - 93:2
**bachelorette** [3] - 166:2, 167:22, 169:4
**background** [11] - 25:9, 69:13, 89:16, 108:18, 109:17, 113:7, 114:9, 167:14, 201:16, 201:19, 237:21
**backgrounds** [1] - 157:17
**bad** [10] - 37:17, 42:8, 42:10, 57:9, 59:9, 59:20, 60:3, 77:2, 77:14
**bag** [20] - 20:2, 47:5, 78:21, 85:25, 94:16, 107:21, 154:4, 175:14, 180:2, 199:20, 223:22, 230:11, 244:7, 255:7, 259:13, 266:13, 268:21, 270:5, 287:13, 290:4
**Bangladesh** [1] - 271:1
**bank** [1] - 154:15
**banks** [1] - 154:14
**Bar** [1] - 203:21
**bar** [1] - 292:23
**base** [1] - 89:7
**based** [56] - 23:12, 23:19, 27:21, 37:8, 38:20, 40:18, 41:3, 41:7, 46:1, 47:10, 52:25, 62:8, 64:13, 64:18, 65:2, 79:1, 86:8, 89:8, 94:20, 100:24, 108:4, 112:17, 132:2, 135:21, 138:3, 147:8, 151:24, 152:25, 154:7, 160:22, 165:8, 168:15, 170:2, 171:17, 171:18, 172:9, 193:8, 207:7, 210:23, 212:1, 213:4, 217:4, 217:23, 219:12, 223:24, 226:21, 234:14, 239:21, 244:11, 247:23, 248:6, 255:19, 258:5, 270:10, 275:7
**basic** [1] - 64:24
**basis** [8] - 8:4, 114:7, 117:11, 206:1, 209:2, 219:9, 219:12, 276:10
**batch** [4] - 193:6, 194:1, 299:14, 300:22
**Batson** [1] - 13:13
**BBC** [1] - 25:8
**be...I** [1] - 260:24
**bearing** [1] - 160:12
**bears** [2] - 8:13, 16:21, 16:22
**become** [3] - 97:1, 233:6, 301:2
**BEFORE** [1] - 1:12
**behavior** [2] - 38:6, 159:13
**belief** [2] - 151:9, 247:8
**beliefs** [4] - 22:11, 24:17, 237:20, 239:18
**believable** [2] - 213:6

**believes** [1] - 184:19
**benefit** [2] - 260:12, 260:20
**best** [16] - 9:12, 40:20, 41:20, 72:1, 76:20, 138:12, 139:12, 148:20, 155:3, 156:10, 156:12, 160:24, 168:19, 172:20, 185:19, 208:8
**better** [8] - 34:15, 41:20, 66:10, 112:3, 114:18, 138:18, 262:5, 295:8
**between** [3] - 141:9, 176:18, 233:12
**beyond** [29] - 32:16, 35:13, 55:21, 82:14, 82:19, 83:25, 86:25, 87:3, 89:21, 102:23, 136:11, 163:23, 170:23, 170:25, 171:11, 171:18, 172:1, 172:4, 172:14, 172:16, 175:10, 192:13, 211:16, 211:20, 219:22, 220:11, 239:12, 284:4
**bias** [11] - 111:17, 222:3, 222:13, 230:21, 231:23, 237:23, 239:5, 239:6, 239:10, 241:15, 260:6, 262:2, 262:3
**biased** [6] - 150:2, 150:5, 185:1, 260:4, 260:9, 261:23
**biases** [3] - 108:20, 112:7, 114:3
**big** [7] - 16:17, 68:4, 140:23, 154:13, 155:2, 176:1, 207:22
**bigger** [2] - 116:6, 271:20
**biggest** [2] - 209:10, 214:17
**birth** [1] - 180:20
**bit** [38] - 8:7, 25:7, 27:2, 39:24, 50:5, 50:20, 63:21, 80:4, 82:1, 91:8, 147:13, 161:11, 165:16, 170:17, 180:6, 187:24, 189:17, 194:19, 201:24, 205:9, 208:23, 212:24, 214:11, 227:9, 228:14, 230:23, 231:11, 231:20, 234:18, 234:20, 235:5, 255:17, 269:3, 272:15, 282:11, 285:16, 285:20, 285:21
**black** [3] - 22:15, 26:25, 108:20
**blackout** [1] - 162:11
**blank** [1] - 13:11
**blood** [2] - 124:8, 128:22
**board** [1] - 8:7
**body** [1] - 185:22
**bones** [1] - 213:16
**book** [4] - 33:15, 37:2, 37:3, 37:9
**booked** [1] - 166:9
**bookkeeper** [1] - 297:2
**books** [3] - 22:21, 27:5, 66:17
**Border** [1] - 103:6
**born** [3] - 138:5, 138:7, 138:13
**borough** [1] - 44:18
**boss** [11] - 33:8, 33:16, 34:9, 37:19, 38:3, 38:12, 38:16, 62:21, 67:20, 142:12, 272:18
**bother** [2] - 99:22, 117:22
**boundaries** [1] - 28:9
**box** [4] - 15:10, 189:25, 190:2, 190:5
**boxes** [1] - 13:10
**boyfriend** [9] - 47:12, 47:18, 48:7, 48:11, 49:12, 49:15, 50:18, 51:14, 51:18, 51:20, 58:2, 137:2, 177:23

**boyfriend's** [1] - 50:11
**brand** [3] - 176:4, 207:21, 208:19
**brand-new** [1] - 176:4
**break** [17] - 12:20, 14:3, 74:1, 74:4, 75:15, 142:21, 142:24, 143:23, 145:2, 169:9, 181:19, 182:5, 194:1, 194:4, 244:4, 244:5, 248:16
**breaker** [2] - 189:19, 190:7
**breaking** [1] - 144:16
**breaks** [1] - 31:15
**breast** [1] - 294:19
**breather** [1] - 169:10
**breathing** [1] - 266:23
**BREON** [1] - 1:16
**Brian** [1] - 162:16
**bribes** [1] - 251:23
**brief** [1] - 89:25
**bring** [32] - 5:3, 13:5, 14:18, 14:19, 15:1, 32:23, 38:25, 59:5, 75:3, 75:5, 99:8, 99:16, 146:18, 149:16, 153:24, 183:2, 193:5, 193:18, 194:12, 195:15, 214:7, 222:7, 226:16, 230:8, 240:11, 251:17, 282:13, 282:15, 284:25, 296:3, 298:6
**bringing** [3] - 9:4, 9:6, 56:21
**Broad** [1] - 2:2
**Broadway** [1] - 2:5
**broken** [3] - 33:17, 34:10, 38:17
**Brooklyn** [3] - 1:6, 1:18, 230:19
**brother** [23] - 42:15, 42:23, 79:20, 79:22, 88:1, 96:16, 96:25, 122:9, 131:16, 133:2, 134:17, 147:21, 148:1, 227:11, 227:18, 227:23, 229:1, 256:11, 256:16, 266:24, 267:5, 289:17, 291:2
**brother's** [2] - 147:9, 148:22
**brought** [8] - 6:16, 24:7, 157:2, 180:20, 184:4, 195:14, 224:15, 268:10
**brown** [1] - 26:25
**bunch** [5] - 22:17, 178:10, 178:11, 178:16, 189:12
**burden** [4] - 136:10, 222:18, 269:18, 284:2
**bus** [2] - 276:11, 276:12
**business** [22] - 16:3, 16:6, 140:22, 150:24, 156:19, 169:12, 207:16, 208:13, 209:3, 209:4, 220:22, 245:6, 245:15, 272:20, 276:14, 295:21, 295:22, 296:13, 296:17, 296:20, 296:21, 296:22
**bust** [4] - 240:6, 240:15, 240:16, 240:17
**busy** [3] - 175:22, 271:23, 274:10
**BY** [4] - 1:18, 1:23, 2:3, 2:6
**bye** [1] - 181:17

---

**C**

---

**Cadman** [1] - 1:17
**Cain** [1] - 3:19
**campus** [1] - 274:19
**canceled** [2] - 290:25, 291:1

**cancellation** [1] - 180:15
**cancelled** [1] - 180:14
**cancer** [3] - 276:4, 294:18, 294:19
**candor** [1] - 114:14
**cannot** [6] - 15:7, 46:2, 180:18, 186:25, 225:20, 261:5
**capable** [1] - 27:13
**car** [1] - 251:2
**care** [27] - 16:2, 92:16, 123:25, 124:4, 124:7, 124:10, 124:15, 124:19, 125:2, 125:11, 126:3, 193:3, 200:4, 206:1, 233:3, 243:18, 244:13, 244:16, 244:17, 253:15, 258:22, 271:11, 272:11, 272:19, 272:24, 273:2, 288:15
**career** [2] - 174:10, 174:16
**caring** [1] - 79:4
**carrying** [1] - 206:3
**cartel** [3] - 53:6, 66:16, 151:2
**Cartel** [2] - 201:23, 247:16
**cartels** [6] - 150:23, 152:4, 201:21, 202:11, 235:23, 235:25
**case** [221] - 3:20, 6:15, 11:11, 18:13, 20:18, 23:1, 23:4, 23:13, 24:6, 26:1, 27:20, 27:24, 29:18, 29:19, 29:22, 29:25, 30:21, 31:2, 31:18, 31:22, 36:9, 38:14, 43:5, 44:16, 45:6, 47:22, 47:25, 49:20, 49:24, 50:1, 50:10, 52:5, 52:7, 52:9, 52:10, 53:6, 53:23, 54:1, 54:17, 54:22, 55:4, 55:16, 55:23, 55:25, 56:3, 57:4, 57:15, 59:9, 60:5, 63:16, 63:21, 64:12, 69:14, 69:20, 69:23, 76:22, 77:15, 78:13, 79:22, 80:3, 80:5, 80:11, 80:14, 80:20, 80:21, 81:7, 81:12, 81:15, 81:17, 82:6, 82:24, 86:18, 87:3, 87:14, 88:22, 89:1, 89:21, 90:3, 90:8, 90:17, 91:7, 91:10, 91:13, 94:8, 97:15, 97:22, 102:19, 102:23, 106:2, 108:10, 110:24, 111:12, 111:15, 112:16, 117:4, 119:17, 122:13, 122:23, 123:10, 131:21, 132:15, 136:1, 136:19, 139:19, 142:10, 143:8, 145:13, 148:6, 148:18, 148:23, 150:6, 150:9, 150:14, 151:1, 151:3, 151:10, 151:15, 151:19, 151:21, 151:24, 152:21, 153:1, 156:7, 156:14, 157:1, 157:2, 157:22, 159:12, 160:7, 160:17, 163:22, 168:8, 168:24, 169:21, 173:5, 178:8, 178:18, 182:15, 185:23, 186:5, 186:14, 186:24, 189:22, 191:17, 191:18, 195:1, 198:21, 201:14, 202:12, 202:15, 202:18, 203:13, 203:24, 204:10, 214:13, 214:18, 214:23, 216:9, 217:13, 219:15, 219:21, 220:11, 220:14, 221:8, 224:24, 227:19, 228:21, 229:3, 229:24, 230:16, 230:19, 231:25, 234:19, 234:25, 235:7, 235:9, 236:2, 239:3, 239:17, 247:8, 247:12, 247:15, 247:18, 248:3, 251:10, 251:13, 251:25, 252:2, 252:7, 252:9, 255:22,

255:25, 256:18, 257:10, 259:23, 262:19, 263:15, 265:4, 265:14, 277:2, 277:3, 278:9, 278:11, 278:17, 278:20, 280:24, 281:2, 281:11, 283:18, 284:2, 284:3, 284:13, 287:20, 291:6, 291:24, 292:2, 292:4
**cases** [10] - 5:15, 7:9, 13:9, 49:13, 49:15, 49:18, 49:20, 50:1, 104:19, 247:21
**CASTRO** [222] - 1:21, 1:23, 4:2, 6:25, 7:16, 8:12, 9:18, 10:24, 11:3, 11:6, 11:9, 12:5, 14:2, 14:25, 15:15, 16:7, 16:21, 19:13, 21:12, 21:14, 28:13, 32:15, 36:18, 37:14, 39:2, 43:8, 43:15, 43:21, 45:10, 45:19, 45:22, 46:4, 46:20, 46:22, 49:9, 49:11, 56:13, 56:15, 56:18, 57:18, 57:20, 58:12, 59:2, 59:4, 61:16, 61:22, 66:20, 67:4, 70:1, 70:13, 74:3, 75:16, 75:20, 76:5, 78:8, 85:4, 85:10, 85:14, 85:18, 90:16, 90:21, 90:23, 92:1, 93:14, 93:23, 93:25, 99:7, 99:9, 99:14, 100:2, 107:9, 117:13, 117:21, 119:1, 119:7, 119:15, 120:1, 120:9, 121:20, 125:15, 125:17, 126:12, 126:20, 130:2, 130:6, 130:11, 130:15, 130:19, 130:21, 131:3, 135:4, 135:6, 137:4, 137:13, 142:22, 143:7, 143:10, 143:12, 143:15, 144:22, 146:22, 149:3, 149:12, 153:9, 153:17, 162:6, 164:20, 168:2, 169:5, 170:5, 170:7, 170:10, 174:7, 179:20, 181:3, 181:23, 182:1, 182:24, 183:4, 183:8, 184:12, 184:14, 187:4, 192:22, 194:4, 194:9, 195:21, 195:24, 196:4, 196:6, 196:15, 198:9, 198:17, 198:20, 198:25, 199:4, 199:10, 199:12, 203:16, 204:14, 204:17, 205:6, 205:11, 205:19, 206:13, 206:16, 213:20, 214:25, 216:12, 216:14, 216:17, 216:19, 223:6, 223:12, 226:12, 226:15, 229:22, 229:25, 232:3, 232:14, 232:16, 233:20, 234:8, 241:21, 242:4, 242:15, 243:12, 243:19, 244:3, 245:4, 247:25, 249:12, 249:17, 249:19, 251:20, 252:11, 252:18, 253:21, 254:25, 257:22, 259:1, 259:8, 264:3, 264:9, 266:3, 267:18, 268:4, 268:12, 269:12, 269:21, 269:23, 270:2, 273:12, 273:23, 275:8, 275:17, 276:17, 277:8, 281:20, 282:4, 282:9, 284:25, 285:6, 285:13, 285:18, 285:22, 286:11, 286:20, 287:4, 288:14, 289:12, 289:16, 292:11, 292:18, 294:5, 295:12, 295:20, 297:7, 297:18, 297:21, 299:17, 301:7
**Castro** [9] - 4:3, 75:18, 164:19, 169:3, 181:22, 182:23, 198:14, 215:9, 242:3
**Castro's** [1] - 168:17
**casts** [1] - 25:11

**caught** [3] - 82:3, 87:18, 156:1
**CAUSE** [1] - 1:12
**causes** [2] - 53:12, 111:11
**causing** [3] - 191:22, 230:24, 272:22
**caveating** [1] - 185:18
**CCR** [1] - 2:8
**cd** [1] - 69:22
**cell** [2] - 205:15, 206:5
**center** [5] - 144:6, 144:14, 145:1, 184:3, 184:5
**certain** [19] - 42:21, 77:4, 106:9, 108:18, 110:25, 111:5, 111:22, 113:21, 114:9, 117:6, 120:3, 140:3, 219:7, 222:2, 222:12, 231:23, 238:5, 239:18, 239:19
**certainly** [19] - 9:13, 58:10, 66:14, 66:19, 109:8, 110:7, 111:5, 112:12, 113:19, 113:24, 114:6, 115:8, 115:11, 116:1, 165:11, 165:15, 168:18, 169:19, 182:18
**certainty** [3] - 119:14, 212:18, 212:20
**certificates** [1] - 180:20
**Cesar** [1] - 4:3
**CESAR** [2] - 1:21, 1:23
**chair** [27] - 20:2, 47:4, 71:6, 76:10, 78:22, 85:25, 94:16, 107:21, 135:16, 137:18, 154:4, 199:20, 207:3, 223:23, 230:12, 232:21, 234:12, 244:7, 249:24, 253:2, 255:7, 259:13, 264:18, 274:3, 278:5, 283:3, 287:13
**challenge** [7] - 13:9, 13:13, 58:3, 109:8, 111:20, 112:6, 112:21
**challenges** [2] - 13:3, 13:4
**challenging** [4] - 50:20, 56:25, 154:17, 274:10
**chambers** [2] - 5:2, 300:4
**chance** [4] - 20:13, 132:22, 146:15, 195:20
**change** [4] - 127:22, 167:18, 236:22, 246:21
**changing** [1] - 238:6
**Chapo** [8] - 29:22, 52:14, 178:8, 201:22, 227:24, 263:14, 263:18, 291:20
**character** [1] - 231:25
**charge** [1] - 159:22
**charged** [4] - 60:16, 170:1, 202:16, 240:1
**charges** [2] - 231:5, 252:1
**chased** [1] - 147:20
**chatting** [1] - 144:22
**check** [12] - 8:14, 12:9, 15:10, 123:16, 126:3, 128:22, 128:23, 144:4, 182:14, 193:21, 253:23, 298:3
**check-in** [1] - 126:3
**checked** [4] - 70:25, 123:15, 145:14, 223:13
**checking** [2] - 125:14, 128:21
**cheek** [1] - 262:10
**chemicals** [5] - 209:5, 209:6, 209:8, 209:9, 209:17
**child** [8] - 58:18, 92:16, 233:3, 243:18, 244:13, 271:11, 272:12

**childcare** [4] - 91:24, 271:3, 272:6, 272:8
**children** [20] - 53:15, 54:5, 54:19, 55:2, 55:7, 55:13, 56:22, 57:2, 57:9, 57:24, 58:15, 59:9, 60:4, 60:20, 93:1, 126:24, 128:16, 270:22, 271:14, 271:24
**China** [3] - 209:1, 209:13, 276:6
**chronic** [3] - 294:21, 294:23, 294:24
**circumstance** [3] - 38:16, 173:3, 212:6
**circumstances** [10] - 38:13, 38:21, 64:16, 102:14, 102:18, 211:11, 211:12, 212:4, 213:4, 216:10
**citizen** [1] - 156:17
**City** [2] - 104:6, 264:24
**city** [1] - 72:17
**civic** [1] - 38:10
**civil** [2] - 284:1, 284:2
**clarification** [3] - 96:15, 179:12, 209:24
**clarified** [1] - 121:12, 225:3
**clarify** [7] - 91:15, 170:11, 185:5, 186:23, 191:16, 211:15, 220:3
**clarity** [1] - 28:21
**class** [5] - 219:7, 222:2, 222:12, 277:13, 279:20
**classes** [6] - 274:12, 274:17, 274:21, 275:1, 279:5, 279:25
**classic** [1] - 147:16
**clean** [1] - 135:24
**clear** [17] - 28:5, 28:10, 58:2, 75:24, 120:17, 121:23, 126:6, 126:7, 131:2, 182:24, 183:6, 233:8, 237:19, 254:7, 254:13, 288:14, 292:20
**cleared** [1] - 224:8
**clearer** [2] - 85:3, 120:17
**clearly** [4] - 64:3, 174:25
**clerks** [2] - 35:24, 36:1
**clicks** [1] - 85:6
**clients** [3] - 176:9, 176:16, 179:12
**clinic** [1] - 111:1
**clinical** [1] - 258:22
**close** [10] - 18:3, 25:18, 30:4, 31:7, 39:17, 124:3, 131:20, 189:10, 212:10, 283:9
**closed** [1] - 105:2
**closely** [2] - 80:24, 80:25
**closer** [5] - 85:23, 155:6, 234:20, 253:5, 267:5
**cloud** [1] - 167:6
**co** [2] - 35:2, 240:1
**co-worker** [1] - 240:1
**co-workers** [1] - 35:2
**coat** [19] - 62:4, 67:12, 71:6, 76:10, 85:25, 107:21, 137:18, 137:22, 154:4, 175:15, 180:2, 199:19, 223:22, 230:11, 232:21, 234:12, 242:7, 259:13, 283:3
**cocaine** [10] - 160:7, 160:11, 219:15, 228:22, 251:11, 251:23, 255:23, 265:14, 265:15

**coconspirator** [2] - 185:23, 187:6
**code** [1] - 10:14
**Cogan** [30] - 19:4, 23:20, 23:21, 23:24, 24:12, 42:22, 42:25, 51:17, 51:20, 104:2, 104:22, 105:3, 106:7, 106:15, 139:12, 152:4, 152:10, 153:1, 158:15, 158:18, 158:20, 165:2, 166:23, 173:22, 187:5, 193:17, 193:21, 195:11, 281:7, 291:14
**Cogan's** [5] - 104:4, 104:8, 193:9, 277:2, 300:3
**coke** [1] - 240:5
**colleagues** [2] - 3:18, 181:24
**college** [2] - 47:11, 177:22
**collegiate** [1] - 177:22
**color** [2] - 22:20, 155:25
**Colorado** [1] - 36:4
**colored** [4] - 40:22, 41:13, 185:11, 185:12, 185:19, 187:20, 187:25, 188:5
**comfort** [1] - 38:3
**comfortable** [17] - 15:22, 26:16, 33:4, 44:3, 86:4, 94:17, 100:22, 113:6, 118:1, 182:14, 224:1, 230:13, 231:16, 244:7, 258:4, 264:19, 278:6, 283:4, 287:17, 290:6, 294:9
**coming** [4] - 17:19, 30:24, 37:17, 38:15, 54:9, 54:17, 55:9, 61:17, 115:23, 133:23, 148:14, 156:9, 177:6, 186:18, 197:2, 214:9, 233:7, 233:15, 270:24, 271:8, 271:9, 276:14, 298:18, 299:15
**comment** [3] - 60:2, 137:9, 297:21
**comments** [2] - 15:4, 170:21, 222:1
**commitment** [1] - 35:1, 119:22
**committed** [10] - 6:3, 7:10, 40:16, 55:22, 87:1, 87:2, 118:24, 156:18, 157:3, 159:20
**committing** [4] - 48:1, 91:12, 159:18, 281:3
**communicating** [1] - 10:10
**communities** [5] - 22:20, 56:22, 57:23, 60:3, 155:25
**community** [5] - 58:19, 58:21, 58:25, 60:1, 60:20
**commute** [1] - 244:19
**company** [29] - 16:1, 33:9, 35:15, 35:18, 37:3, 37:4, 37:6, 37:7, 38:4, 38:8, 62:15, 62:17, 68:4, 123:18, 140:24, 141:25, 142:4, 142:6, 154:14, 176:4, 177:3, 207:22, 207:23, 207:24, 208:25, 209:20, 246:4, 246:5
**company-wide** [1] - 246:5
**compared** [1] - 163:19
**compartmentalize** [1] - 24:17
**compensation** [1] - 62:18
**complete** [1] - 298:21
**completely** [7] - 53:2, 111:17, 113:6, 148:10, 161:15, 277:12
**comply** [1] - 119:12
**Computer** [1] - 2:11

**Computer-aided** [1] - 2:11
**computerized** [1] - 2:10
**concern** [39] - 6:3, 6:10, 6:13, 6:20, 7:12, 24:2, 25:16, 25:18, 49:22, 53:12, 71:21, 76:23, 119:21, 122:16, 126:11, 140:1, 158:16, 183:7, 184:19, 185:24, 186:6, 186:17, 186:24, 189:7, 189:15, 190:7, 205:2, 206:10, 206:11, 206:12, 206:13, 214:17, 266:15, 266:18, 267:2, 285:22, 286:5, 295:2
**concerned** [13] - 6:17, 7:3, 26:6, 37:20, 104:20, 120:17, 121:3, 150:5, 184:25, 189:12, 189:14, 205:12, 300:21
**concerning** [1] - 163:25
**concerns** [16] - 44:10, 51:23, 58:7, 73:18, 77:11, 89:5, 105:4, 108:16, 110:21, 115:1, 117:2, 138:6, 139:16, 169:2, 185:16, 189:5
**concluded** [1] - 82:10
**condition** [1] - 201:4
**conditioning** [1] - 112:7
**conditions** [1] - 294:21
**conduct** [3] - 6:21, 81:22, 217:8
**confer** [2] - 181:24, 286:1
**confident** [2] - 229:10, 230:24
**confined** [1] - 189:20
**confirm** [3] - 27:19, 120:20, 196:15
**confirmation** [1] - 282:10
**confirmed** [1] - 290:12
**conflict** [2] - 250:7, 253:7
**confused** [1] - 156:16
**confusing** [2] - 80:9, 156:20
**confusion** [1] - 84:22
**congratulations** [1] - 203:19
**Connecticut** [1] - 36:3
**connection** [3] - 69:20, 164:3, 228:6
**connections** [5] - 18:12, 47:14, 47:20, 178:1, 283:17
**connotation** [1] - 25:3
**connotations** [1] - 22:12
**consent** [1] - 215:7
**consequences** [1] - 88:20
**consider** [12] - 23:19, 27:7, 27:12, 27:13, 40:14, 54:15, 64:11, 86:21, 101:19, 101:22, 166:24, 263:1
**consideration** [1] - 101:23
**considered** [3] - 83:24, 123:22, 258:13
**considering** [1] - 182:9
**consists** [1] - 186:24
**conspiracy** [1] - 235:13
**constant** [2] - 126:3, 209:2
**constantly** [1] - 209:3
**constitute** [1] - 159:13
**construction** [2] - 209:14, 209:15
**contact** [7] - 84:8, 87:23, 162:22, 200:7, 206:17, 227:6, 256:4
**contacting** [2] - 118:5, 200:10
**context** [5] - 173:7, 188:8, 212:16, 213:4, 260:20

**continue** [5] - 16:3, 180:11, 254:2, 267:19, 298:17
**Continued** [9] - 2:1, 37:23, 38:1, 74:7, 116:10, 183:17, 218:22, 248:19, 282:17
**continues** [1] - 215:23
**Continuing** [2] - 117:1, 219:1
**control** [2] - 23:18, 25:17, 141:10
**controlled** [1] - 255:20
**conversation** [3] - 11:1, 14:10
**conversations** [4] - 33:11, 33:19, 35:13, 43:3
**convict** [23] - 50:10, 136:12, 148:17, 165:8, 168:11, 169:25, 170:1, 171:17, 171:18, 172:9, 172:11, 188:14, 210:12, 210:18, 210:23, 212:1, 212:6, 217:16, 217:19, 218:1, 219:21, 219:25, 220:1
**convicted** [4] - 40:23, 185:13, 185:14
**convicting** [1] - 220:4
**conviction** [2] - 171:11, 292:20
**convictions** [1] - 173:9
**convinced** [1] - 192:13
**cooperating** [17] - 39:20, 40:1, 101:2, 101:5, 101:8, 101:12, 101:23, 102:7, 102:12, 103:20, 115:1, 115:4, 115:14, 172:12, 185:11, 187:20, 210:9
**cooperation** [2] - 102:18, 213:9
**cooperator** [2] - 168:8, 169:25
**cooperators** [1] - 57:22
**cop** [2] - 122:20, 241:8
**cops** [2] - 241:16, 241:17
**coronary** [2] - 294:12, 294:18
**corporation** [1] - 158:12
**Correct** [7] - 24:22, 148:9, 176:21, 219:17, 229:8, 245:10, 245:23
**correct** [30] - 12:24, 12:25, 20:9, 56:5, 68:13, 69:24, 87:6, 87:24, 87:25, 88:16, 101:4, 101:15, 105:15, 173:10, 175:19, 175:21, 176:16, 176:23, 176:25, 177:7, 177:14, 177:21, 178:6, 178:10, 183:8, 217:11, 218:10, 245:7, 252:7, 286:11
**corrected** [1] - 90:11
**correction** [1] - 69:6
**correctional** [1] - 69:1
**corroborate** [1] - 213:13
**corroborated** [1] - 168:15
**corroborating** [6] - 102:8, 161:7, 166:15, 187:12, 187:22, 211:24
**corroboration** [5] - 165:7, 168:23, 170:12, 172:10, 213:11
**corruption** [17] - 80:24, 81:4, 81:9, 81:12, 81:14, 90:19, 90:20, 91:6, 156:18, 159:7, 159:8, 159:10, 159:13, 159:17, 159:18, 159:20, 159:23
**cost** [1] - 233:6
**counsel** [3] - 3:25, 5:24, 151:14
**Counsel** [1] - 3:14
**counsel's** [1] - 4:4

**counselor** [1] - 48:14
**count** [1] - 94:25
**country** [15] - 22:18, 22:22, 25:4, 30:25, 53:21, 54:10, 54:18, 55:9, 70:22, 139:6, 176:5, 199:12, 202:8, 234:16, 246:6
**country's** [1] - 26:24
**counts** [1] - 86:13
**County** [3] - 47:18, 48:12, 283:15
**couple** [50] - 6:2, 7:18, 15:10, 16:2, 22:9, 29:16, 30:5, 37:14, 39:12, 63:14, 67:16, 71:9, 78:25, 85:18, 86:7, 92:10, 94:19, 100:23, 101:11, 103:2, 108:4, 126:14, 135:21, 138:3, 143:15, 147:7, 149:21, 154:6, 165:20, 171:5, 175:16, 187:18, 196:25, 197:7, 217:4, 223:23, 230:15, 232:23, 234:13, 245:3, 255:11, 258:4, 259:16, 264:22, 268:25, 270:9, 278:7, 279:19, 294:13, 296:11
**course** [11] - 13:13, 51:22, 60:2, 66:10, 153:20, 155:10, 192:7, 196:10, 238:8, 260:19, 267:11
**COURT** [1525] - 1:1, 4:7, 4:16, 6:23, 7:8, 7:17, 8:10, 8:15, 9:3, 9:19, 10:17, 10:22, 10:25, 11:5, 11:7, 11:10, 12:6, 12:25, 13:2, 14:1, 14:3, 14:7, 14:16, 15:1, 15:5, 15:13, 15:16, 15:19, 15:21, 16:9, 16:12, 16:18, 16:25, 17:3, 17:8, 17:11, 17:16, 17:19, 17:23, 18:1, 18:7, 18:11, 18:15, 18:18, 18:21, 18:23, 19:6, 19:9, 19:16, 19:20, 19:22, 19:24, 20:1, 20:4, 20:6, 20:10, 20:16, 20:25, 21:5, 21:7, 21:10, 21:13, 21:17, 21:20, 22:1, 22:3, 22:6, 22:23, 23:8, 23:21, 24:1, 24:5, 24:9, 24:19, 24:23, 25:5, 25:15, 25:19, 26:8, 26:18, 26:20, 26:23, 27:17, 28:1, 28:11, 28:15, 28:19, 29:1, 29:9, 29:11, 29:13, 29:15, 29:24, 30:2, 30:7, 30:10, 30:15, 30:18, 30:20, 31:1, 31:5, 31:10, 31:14, 31:20, 32:1, 32:5, 32:8, 32:11, 32:14, 32:16, 32:23, 32:25, 33:3, 33:19, 34:4, 34:9, 34:12, 34:18, 35:2, 35:5, 35:12, 35:17, 35:23, 35:25, 36:5, 36:7, 36:14, 36:17, 36:20, 37:6, 38:13, 39:3, 39:5, 39:7, 39:11, 39:16, 39:19, 39:22, 40:5, 40:9, 40:13, 40:25, 41:3, 41:7, 41:10, 41:15, 41:19, 41:24, 42:5, 42:10, 42:14, 42:19, 43:4, 43:7, 43:9, 43:13, 43:17, 43:24, 44:1, 44:6, 44:22, 45:2, 45:5, 45:12, 45:17, 45:21, 46:5, 46:9, 46:11, 46:14, 46:18, 46:21, 46:24, 47:1, 47:4, 47:7, 47:9, 47:14, 47:19, 47:25, 48:5, 48:10, 48:16, 48:23, 49:2, 49:5, 49:7, 49:10, 49:14, 49:19, 49:22, 50:3, 50:6, 50:8, 50:14, 50:17, 50:21, 50:25, 51:3, 51:5, 51:10, 51:12, 51:14, 51:23, 52:1, 52:5, 52:7, 52:9, 52:13, 52:17, 52:20, 52:22, 53:1, 53:4, 53:10, 53:19, 53:23,

54:6, 54:9, 54:13, 54:16, 54:21, 54:25, 55:4, 55:7, 55:11, 55:15, 55:20, 56:2, 56:6, 56:9, 56:12, 56:14, 56:17, 57:19, 58:4, 58:24, 59:3, 59:5, 59:12, 59:16, 59:25, 60:8, 60:11, 60:14, 60:19, 61:4, 61:7, 61:14, 61:17, 61:20, 61:25, 62:2, 62:4, 62:7, 62:11, 62:23, 63:3, 63:8, 63:11, 63:14, 63:18, 63:23, 64:1, 64:8, 64:12, 64:16, 64:21, 65:2, 65:7, 65:12, 65:18, 65:21, 65:23, 65:25, 66:4, 66:8, 66:21, 66:24, 67:2, 67:6, 67:9, 67:11, 67:15, 67:19, 67:23, 68:1, 68:4, 68:7, 68:11, 68:14, 68:16, 68:19, 68:22, 68:25, 69:3, 69:7, 69:12, 69:16, 69:19, 69:22, 69:25, 70:3, 70:6, 70:9, 70:11, 70:15, 70:20, 70:24, 71:3, 71:5, 71:9, 71:15, 71:19, 71:21, 71:25, 72:4, 72:6, 72:8, 72:12, 72:15, 72:19, 72:24, 73:1, 73:5, 73:8, 73:13, 73:15, 73:18, 73:21, 73:24, 74:1, 74:4, 75:3, 75:7, 75:12, 75:14, 75:17, 75:22, 76:1, 76:7, 76:9, 76:14, 76:19, 77:3, 77:7, 77:14, 77:17, 77:19, 77:25, 78:2, 78:4, 78:7, 78:9, 78:12, 78:17, 78:20, 78:25, 79:10, 79:13, 79:16, 79:21, 79:25, 80:7, 80:13, 80:17, 80:21, 80:23, 81:11, 81:19, 82:5, 82:10, 82:14, 82:18, 82:23, 83:1, 83:3, 83:8, 83:13, 83:16, 83:20, 83:23, 84:3, 84:9, 84:13, 84:16, 84:20, 84:24, 85:2, 85:8, 85:12, 85:17, 85:21, 86:3, 86:7, 86:10, 86:13, 86:16, 86:20, 86:25, 87:7, 87:10, 87:13, 87:16, 87:22, 88:1, 88:5, 88:10, 88:14, 88:17, 88:25, 89:3, 89:5, 89:10, 89:15, 89:20, 89:24, 90:1, 90:7, 90:12, 90:20, 90:22, 90:25, 91:2, 91:15, 91:18, 91:20, 91:23, 92:2, 92:4, 92:7, 92:9, 92:13, 92:16, 92:20, 92:23, 93:2, 93:9, 93:12, 93:16, 93:18, 93:21, 93:24, 94:2, 94:5, 94:9, 94:12, 94:14, 94:19, 95:3, 95:5, 95:7, 95:13, 95:17, 95:23, 96:1, 96:4, 96:8, 96:10, 96:12, 96:14, 96:19, 96:25, 97:9, 97:11, 97:15, 97:20, 97:24, 98:6, 98:12, 98:14, 98:19, 98:21, 98:23, 99:8, 99:15, 99:19, 99:21, 99:24, 100:1, 100:5, 100:10, 100:15, 100:17, 100:20, 101:1, 101:5, 101:13, 101:17, 101:22, 102:1, 102:6, 102:14, 102:17, 102:21, 103:1, 103:9, 103:15, 103:23, 104:1, 104:8, 104:11, 104:17, 104:25, 105:7, 105:10, 105:13, 105:16, 105:24, 106:2, 106:6, 106:12, 106:15, 106:20, 106:24, 107:4, 107:7, 107:11, 107:17, 107:20, 107:24, 108:3, 108:7, 108:12, 108:16, 108:23, 109:4, 109:10, 109:18, 109:21, 109:24, 110:5, 110:7, 110:16, 110:21, 111:7, 111:10, 111:25, 112:3, 112:8, 112:11, 112:15, 112:22, 112:25, 113:3, 113:8, 113:12, 113:15, 114:1, 114:4, 114:11, 114:14,

114:22, 114:24, 115:4, 115:15, 115:18, 115:21, 116:1, 116:8, 117:2, 117:8, 117:14, 117:18, 117:24, 118:4, 118:9, 118:11, 118:13, 118:18, 118:22, 119:4, 119:13, 119:21, 120:5, 120:11, 120:14, 120:16, 121:1, 121:10, 121:15, 121:23, 122:2, 122:4, 122:7, 122:11, 122:15, 122:19, 122:21, 123:1, 123:3, 123:9, 123:13, 123:16, 123:18, 123:20, 124:2, 124:5, 124:7, 124:10, 124:13, 124:17, 124:19, 124:23, 125:1, 125:5, 125:9, 125:11, 125:16, 125:20, 125:24, 126:19, 126:25, 127:3, 127:6, 127:11, 127:14, 127:17, 127:21, 127:25, 128:5, 128:8, 128:15, 128:18, 128:23, 129:1, 129:4, 129:7, 129:13, 129:17, 129:21, 129:23, 130:4, 130:8, 130:12, 130:16, 130:20, 130:23, 131:6, 131:9, 131:13, 131:16, 131:19, 131:23, 132:1, 132:4, 132:11, 132:14, 132:17, 132:21, 132:25, 133:7, 133:11, 133:14, 133:16, 133:23, 133:25, 134:3, 134:9, 134:12, 134:14, 134:16, 134:20, 134:23, 134:25, 135:3, 135:5, 135:8, 135:13, 135:15, 135:20, 136:6, 136:9, 136:14, 136:17, 136:21, 137:1, 137:8, 137:11, 137:14, 137:17, 137:22, 137:25, 138:2, 138:11, 138:21, 138:25, 139:3, 139:5, 139:9, 139:16, 139:23, 140:5, 140:14, 140:22, 140:25, 141:4, 141:12, 141:17, 141:23, 142:9, 142:14, 142:19, 142:21, 142:23, 143:2, 143:9, 143:11, 143:13, 143:18, 143:20, 143:25, 144:9, 144:12, 144:15, 144:20, 145:1, 145:16, 146:3, 146:9, 146:18, 146:21, 146:25, 147:2, 147:5, 147:7, 147:11, 147:25, 148:4, 148:13, 148:21, 149:2, 149:5, 149:10, 149:14, 149:16, 149:19, 149:21, 149:25, 150:6, 150:8, 150:11, 150:16, 150:19, 150:21, 151:1, 151:8, 151:13, 151:17, 151:20, 152:2, 152:8, 152:10, 152:14, 152:18, 152:21, 152:24, 153:4, 153:8, 153:10, 153:14, 153:22, 153:24, 154:1, 154:3, 154:6, 154:9, 154:18, 154:23, 155:2, 155:6, 155:10, 155:13, 155:18, 156:5, 156:13, 156:23, 157:6, 157:10, 157:19, 157:21, 157:24, 158:3, 158:7, 158:9, 158:14, 159:3, 159:6, 159:11, 159:19, 159:22, 159:25, 160:3, 160:6, 160:13, 160:15, 161:1, 161:12, 161:18, 161:24, 162:4, 162:7, 162:13, 162:20, 162:24, 163:2, 163:6, 164:17, 165:5, 165:20, 165:23, 166:3, 166:7, 166:11, 166:13, 166:23, 167:3, 167:12, 167:17, 167:25, 168:3, 168:6, 168:13, 169:1, 169:13, 169:16, 170:6, 170:8, 170:15, 171:2, 171:5, 171:8, 171:16, 171:21, 171:24, 172:3,

172:8, 172:18, 172:23, 172:25, 173:11, 173:18, 173:22, 174:2, 174:4, 174:14, 174:22, 174:25, 175:4, 175:10, 175:12, 175:14, 175:20, 176:1, 176:6, 176:14, 176:20, 176:22, 176:24, 177:1, 177:5, 177:12, 177:16, 177:25, 178:4, 178:7, 178:17, 178:20, 178:22, 178:24, 179:2, 179:7, 179:14, 179:18, 179:21, 179:24, 180:1, 180:5, 180:10, 180:12, 181:5, 181:8, 181:12, 181:14, 181:16, 181:19, 181:25, 182:2, 182:8, 182:18, 183:2, 183:5, 183:9, 184:1, 184:13, 184:15, 185:3, 186:2, 186:10, 186:21, 187:3, 187:9, 187:17, 188:6, 188:9, 188:19, 188:22, 188:24, 189:2, 189:4, 189:7, 189:15, 189:21, 190:2, 190:9, 190:12, 190:19, 190:22, 190:24, 191:2, 191:5, 191:8, 191:14, 191:20, 191:22, 192:4, 192:11, 192:18, 192:21, 192:23, 193:3, 193:11, 193:16, 193:24, 194:8, 194:10, 195:2, 195:5, 195:9, 195:13, 195:18, 195:23, 196:1, 196:5, 196:14, 196:16, 196:19, 198:4, 198:11, 198:14, 198:19, 198:23, 199:2, 199:7, 199:11, 199:14, 199:16, 199:19, 200:3, 200:10, 200:17, 200:20, 201:7, 201:13, 201:20, 202:6, 202:9, 202:12, 202:19, 202:22, 203:1, 203:12, 203:15, 203:17, 203:21, 204:2, 204:7, 204:16, 204:18, 204:20, 204:23, 204:25, 205:2, 205:10, 205:14, 206:5, 206:11, 206:15, 206:19, 206:25, 207:4, 207:7, 207:13, 207:17, 207:22, 208:2, 208:4, 208:9, 208:14, 208:22, 209:4, 209:6, 209:8, 209:11, 209:18, 209:23, 210:4, 210:7, 210:17, 210:22, 211:3, 211:6, 211:15, 211:18, 211:20, 211:23, 212:5, 212:8, 212:12, 212:19, 212:22, 212:24, 213:7, 213:18, 213:22, 214:2, 214:7, 214:9, 214:24, 215:1, 215:4, 215:8, 215:11, 215:14, 215:25, 216:13, 216:16, 216:18, 216:20, 216:22, 216:24, 217:3, 217:12, 217:21, 217:25, 218:3, 218:5, 218:11, 218:15, 218:18, 219:2, 219:14, 219:18, 219:20, 220:3, 220:5, 220:8, 220:13, 220:16, 220:21, 220:24, 221:4, 221:7, 221:10, 221:14, 221:16, 221:18, 221:23, 222:7, 222:9, 222:20, 222:24, 223:4, 223:7, 223:10, 223:15, 223:19, 223:21, 224:4, 224:11, 224:17, 224:23, 225:1, 225:4, 225:6, 225:10, 225:13, 225:15, 225:20, 225:25, 226:4, 226:9, 226:13, 226:16, 226:18, 226:20, 227:3, 227:5, 227:9, 227:14, 227:18, 227:21, 227:24, 228:5, 228:12, 228:21, 228:25, 229:5, 229:9, 229:13, 229:16, 229:19, 229:23, 230:2, 230:5, 230:8, 230:10, 230:15, 230:23, 231:3, 231:7,

231:11, 231:17, 232:5, 232:8, 232:10, 232:15, 232:17, 232:20, 232:23, 233:1, 233:8, 233:22, 233:25, 234:3, 234:7, 234:9, 234:11, 235:4, 235:9, 235:19, 235:22, 236:4, 236:8, 236:12, 236:20, 236:25, 237:9, 237:14, 237:16, 237:18, 238:7, 238:17, 238:21, 239:1, 239:6, 239:14, 239:24, 240:9, 240:13, 240:18, 240:22, 240:25, 241:7, 241:10, 241:19, 241:23, 242:3, 242:6, 242:9, 242:13, 242:20, 242:23, 242:25, 243:5, 243:9, 243:11, 243:14, 243:17, 243:21, 243:23, 243:25, 244:5, 244:10, 244:13, 244:21, 244:24, 245:2, 245:5, 245:8, 245:11, 245:14, 245:18, 245:20, 245:24, 246:1, 246:7, 246:9, 246:12, 246:15, 246:21, 247:3, 247:7, 247:11, 248:1, 248:5, 248:10, 248:16, 249:3, 249:13, 249:16, 249:18, 249:21, 249:23, 250:1, 250:4, 250:9, 250:12, 250:16, 250:20, 251:3, 251:7, 251:10, 251:16, 251:21, 252:6, 252:10, 252:13, 252:17, 252:20, 252:22, 252:24, 253:1, 253:5, 253:11, 253:16, 253:20, 253:24, 254:2, 254:4, 254:9, 254:15, 254:20, 254:24, 255:1, 255:4, 255:6, 255:10, 255:14, 255:17, 255:22, 256:3, 256:10, 256:14, 256:16, 256:21, 256:23, 257:1, 257:4, 257:7, 257:9, 257:12, 257:15, 257:17, 257:21, 257:25, 258:2, 258:7, 258:15, 258:19, 259:3, 259:5, 259:7, 259:10, 259:12, 259:16, 259:21, 259:25, 260:9, 260:13, 260:19, 260:25, 261:7, 261:11, 261:15, 261:18, 261:23, 262:1, 262:5, 262:8, 262:11, 262:16, 262:19, 262:23, 263:1, 263:3, 263:6, 263:9, 263:11, 263:18, 263:22, 263:25, 264:4, 264:8, 264:11, 264:14, 264:17, 264:22, 265:2, 265:6, 265:12, 265:19, 265:23, 266:2, 266:5, 266:7, 266:10, 266:13, 266:15, 266:18, 267:4, 267:11, 267:13, 267:19, 267:22, 268:1, 268:3, 268:8, 268:11, 268:14, 268:16, 268:18, 268:20, 268:24, 269:7, 269:11, 269:14, 269:17, 269:22, 269:25, 270:4, 270:9, 270:13, 270:16, 270:19, 270:21, 270:24, 271:1, 271:3, 271:5, 271:7, 271:12, 271:16, 271:18, 271:24, 272:2, 272:4, 272:6, 272:9, 272:13, 272:16, 272:22, 273:1, 273:6, 273:9, 273:14, 273:18, 273:22, 273:25, 274:2, 274:6, 274:12, 274:15, 274:21, 274:23, 274:25, 275:4, 275:10, 275:12, 275:16, 275:18, 275:21, 275:23, 275:25, 276:5, 276:16, 276:19, 276:22, 276:24, 277:12, 277:16, 277:18, 277:24, 278:1, 278:4, 278:11, 278:13, 278:15, 278:21,

278:23, 279:1, 279:5, 279:8, 279:10, 279:14, 279:16, 279:19, 279:22, 279:24, 280:3, 280:5, 280:12, 280:14, 280:17, 280:20, 280:23, 281:1, 281:6, 281:9, 281:13, 281:19, 281:22, 281:25, 282:3, 282:6, 282:10, 283:2, 283:7, 283:16, 283:22, 284:1, 284:7, 284:11, 284:16, 284:20, 285:4, 285:9, 285:16, 285:19, 286:2, 286:9, 286:12, 286:15, 286:18, 286:23, 287:1, 287:5, 287:10, 287:12, 287:22, 288:1, 288:4, 288:9, 288:11, 288:13, 288:17, 288:20, 288:22, 288:25, 289:2, 289:5, 289:8, 289:10, 289:14, 289:17, 289:21, 289:24, 290:1, 290:4, 290:10, 290:15, 290:19, 290:22, 291:1, 291:5, 291:9, 291:13, 291:19, 291:23, 292:1, 292:5, 292:7, 292:10, 292:13, 292:17, 292:25, 293:4, 293:8, 293:12, 294:2, 294:4, 294:7, 294:11, 294:15, 294:20, 294:24, 295:2, 295:10, 295:14, 295:16, 295:19, 295:24, 296:3, 296:5, 296:9, 296:16, 296:21, 296:23, 297:1, 297:3, 297:6, 297:9, 297:13, 297:17, 297:20, 297:24, 298:5, 298:9, 299:3, 299:20, 300:15, 300:18, 300:25, 301:6, 301:8

**Court** [36] - 2:8, 3:13, 6:14, 13:14, 14:10, 14:24, 21:1, 32:18, 33:20, 38:9, 57:13, 59:8, 62:25, 76:15, 77:8, 104:12, 118:15, 118:23, 119:24, 120:20, 127:25, 153:5, 154:23, 166:11, 170:22, 177:9, 193:14, 204:15, 206:16, 208:14, 241:22, 243:20, 281:10, 281:13, 290:15, 297:22

**court** [19] - 3:1, 3:8, 3:10, 14:13, 51:5, 66:1, 109:19, 113:18, 113:23, 113:25, 116:6, 133:20, 138:22, 196:12, 204:3, 229:24, 230:17, 230:19, 239:22

**Court's** [5] - 19:3, 170:19, 175:1, 196:7, 196:12

**Courthouse** [1] - 1:5

**courtroom** [13] - 4:20, 5:2, 13:6, 13:16, 14:8, 16:10, 18:19, 50:5, 65:25, 115:9, 183:6, 268:9, 278:16

**COURTROOM** [10] - 3:2, 3:24, 19:8, 75:1, 107:23, 146:2, 207:2, 229:18, 229:21, 249:2

**courts** [1] - 37:12

**cousin** [7] - 30:3, 30:11, 30:13, 87:8, 132:5, 256:8, 257:4

**cousin's** [1] - 257:9

**cousins** [1] - 283:14

**cover** [9] - 68:8, 127:15, 127:18, 140:6, 140:9, 141:4, 141:21, 176:7, 179:13

**coverage** [4] - 26:11, 80:24, 81:1, 258:11

**covered** [2] - 25:21, 126:1

**covers** [5] - 198:12, 252:21, 264:12,

275:20, 296:1

**Covid** [2] - 13:19, 228:10

**COVID** [7] - 104:15, 104:24, 105:4, 182:11, 182:19, 189:5, 189:8

**coworker** [2] - 207:20, 208:19

**crack** [2] - 237:5, 237:8

**create** [2] - 26:3, 83:13

**credentials** [1] - 3:11

**credibility** [16] - 40:17, 41:8, 48:20, 49:3, 97:11, 101:18, 115:19, 116:4, 151:23, 161:2, 161:14, 167:15, 178:4, 220:10, 260:21, 283:23

**credible** [12] - 73:2, 73:3, 102:22, 167:1, 167:4, 172:13, 175:7, 186:9, 211:8, 211:25

**crime** [16] - 6:6, 6:20, 7:9, 40:17, 73:11, 112:23, 113:22, 117:10, 133:8, 150:1, 170:1, 170:2, 219:24, 235:1

**crimes** [10] - 6:3, 48:1, 55:21, 60:16, 82:15, 87:1, 91:12, 156:18, 202:16, 281:3

**criminal** [37] - 3:2, 22:19, 22:22, 27:8, 31:23, 40:23, 42:15, 42:16, 48:7, 51:16, 52:5, 69:20, 86:18, 103:24, 108:10, 109:6, 122:13, 131:21, 132:1, 132:7, 133:17, 136:10, 148:5, 148:7, 148:8, 157:12, 158:10, 158:11, 185:13, 185:14, 227:1, 257:10, 259:23, 265:6, 284:3, 291:6

**CRIMINAL** [1] - 1:12

**criminality** [1] - 192:1

**crossed** [1] - 301:2

**Crow** [2] - 22:21, 27:5

**cruise** [4] - 243:8, 243:10, 243:11, 243:14

**curative** [1] - 90:13

**curious** [5] - 94:7, 105:19, 105:22, 106:14, 205:23

**current** [1] - 234:25

**curved** [1] - 27:2

**customers'** [1] - 208:13

**customs** [1] - 137:2

**cut** [1] - 117:20

---

**D**

**D.A.'s** [2] - 203:22, 203:23

**DA's** [1] - 132:5

**dad** [6] - 18:5, 79:6, 158:12, 158:19, 158:21, 241:8

**daily** [4] - 25:9, 114:7, 239:12, 276:10

**damage** [1] - 234:16

**damaging** [1] - 255:21

**date** [3] - 288:16, 289:13, 290:13

**dates** [1] - 140:4

**daughter** [3] - 92:18, 93:5, 93:10

**day-to-day** [1] - 206:1

**days** [42] - 16:6, 34:20, 71:13, 83:6, 83:9, 83:17, 84:1, 95:1, 98:25, 118:8, 118:9, 118:10, 118:11, 119:19,

120:24, 121:6, 121:12, 121:13, 121:14, 124:14, 124:17, 124:20, 125:6, 125:7, 127:6, 127:12, 127:14, 127:17, 127:18, 128:7, 128:13, 135:24, 139:20, 144:8, 176:21, 176:22, 180:22, 180:24, 208:16, 267:10

**daytime** [1] - 154:16

**De** [4] - 4:3, 75:18, 198:14, 215:9

**de** [6] - 164:19, 168:16, 169:3, 181:22, 182:23, 242:3

**DE** [222] - 1:21, 1:23, 4:2, 6:25, 7:16, 8:12, 9:18, 10:24, 11:3, 11:6, 11:9, 12:5, 14:2, 14:25, 15:15, 16:7, 16:21, 19:13, 21:12, 21:14, 28:13, 32:15, 36:18, 37:14, 39:2, 43:8, 43:15, 43:21, 45:10, 45:19, 45:22, 46:4, 46:20, 46:22, 49:9, 49:11, 56:13, 56:15, 56:18, 57:18, 57:20, 58:12, 59:2, 59:4, 61:16, 61:22, 66:20, 67:4, 70:1, 70:13, 74:3, 75:16, 75:20, 76:5, 78:8, 85:4, 85:10, 85:14, 85:18, 90:16, 90:21, 90:23, 92:1, 93:14, 93:23, 93:25, 99:7, 99:9, 99:14, 100:2, 107:9, 117:13, 117:21, 119:1, 119:7, 119:15, 120:1, 120:9, 121:20, 125:15, 125:17, 126:12, 126:20, 130:2, 130:6, 130:11, 130:15, 130:19, 130:21, 131:3, 135:4, 135:6, 137:4, 137:13, 142:22, 143:7, 143:10, 143:12, 143:15, 144:22, 146:22, 149:3, 149:12, 153:9, 153:17, 162:6, 164:20, 168:2, 169:5, 170:5, 170:7, 170:10, 174:7, 179:20, 181:3, 181:23, 182:1, 182:24, 183:4, 183:8, 184:12, 184:14, 187:4, 192:22, 194:4, 194:9, 195:21, 195:24, 196:4, 196:6, 196:15, 198:9, 198:17, 198:20, 198:25, 199:4, 199:10, 199:12, 203:16, 204:14, 204:17, 205:6, 205:11, 205:19, 206:13, 206:16, 213:20, 214:25, 216:12, 216:14, 216:17, 216:19, 223:6, 223:12, 226:12, 226:15, 229:22, 229:25, 232:3, 232:14, 232:16, 233:20, 234:8, 241:21, 242:4, 242:15, 243:12, 243:19, 244:3, 245:4, 247:25, 249:12, 249:17, 249:19, 251:20, 252:11, 252:18, 253:21, 254:25, 257:22, 259:1, 259:8, 264:3, 264:9, 266:3, 267:18, 268:4, 268:12, 269:12, 269:21, 269:23, 270:2, 273:12, 273:23, 275:8, 275:17, 276:17, 277:8, 281:20, 282:4, 282:9, 284:25, 285:6, 285:13, 285:18, 285:22, 286:11, 286:20, 287:4, 288:14, 289:12, 289:16, 292:11, 292:18, 294:5, 295:12, 295:20, 297:7, 297:18, 297:21, 299:17, 301:7

**dead** [1] - 268:7

**deadline** [3] - 38:15, 175:24, 176:15

**deadlines** [1] - 140:3

**deal** [8] - 16:17, 57:25, 101:9, 115:7, 115:11, 188:4, 189:19, 190:7

**dealers** [2] - 57:22, 201:23

**dealing** [5] - 34:17, 81:24, 82:4, 82:11, 202:20

**dealt** [1] - 290:25

**Dean** [1] - 4:5

**death** [1] - 147:9

**DeCastro** [4] - 6:24, 8:11, 130:18, 131:6

**deceased** [2] - 103:7, 227:12

**December** [2] - 200:2, 224:8

**decently** [1] - 239:13

**decide** [7] - 27:20, 40:6, 40:19, 57:12, 66:9, 104:22, 163:23

**decided** [4] - 7:14, 24:6, 106:3, 106:21

**deciding** [2] - 24:25, 210:11

**decision** [7] - 60:10, 81:14, 167:6, 167:11, 215:11, 237:25, 239:21

**decisions** [1] - 224:21

**deem** [1] - 217:23

**deemed** [1] - 3:12

**deep** [1] - 29:22

**defend** [2] - 37:10, 279:13

**defendant** [43] - 1:9, 16:18, 23:2, 31:22, 47:25, 48:1, 48:3, 50:14, 57:5, 57:10, 57:16, 59:10, 65:19, 73:10, 73:16, 77:15, 81:15, 81:24, 82:19, 87:1, 90:5, 97:17, 146:7, 146:8, 151:4, 151:14, 156:6, 156:14, 169:25, 199:8, 201:17, 202:15, 202:20, 203:13, 220:14, 224:24, 229:3, 235:7, 248:3, 248:7, 249:1, 280:24, 281:2

**Defendant** [2] - 1:21, 2:4

**defendant's** [2] - 184:7, 219:23

**defender** [2] - 18:9, 158:4

**defenders** [3] - 18:3, 18:10, 18:12

**defense** [15] - 3:25, 14:1, 15:14, 18:6, 47:21, 47:23, 147:23, 147:24, 184:10, 254:6, 259:8, 262:20, 265:9, 295:20, 297:18

**defense's** [1] - 21:18

**defer** [2] - 14:23, 193:14

**define** [1] - 172:2

**Definitely** [1] - 228:10

**definitely** [7] - 20:14, 51:11, 57:14, 64:4, 72:21, 110:24, 161:10

**definition** [1] - 171:25

**degree** [1] - 223:5

**degrees** [1] - 200:18

**DEI** [1] - 33:19

**delay** [3] - 4:8, 9:5, 206:8

**deleted** [1] - 178:15

**deliberate** [5] - 95:20, 217:20, 217:23, 218:19, 219:21

**deliver** [1] - 140:20

**demeanor** [3] - 164:2, 168:17, 216:1

**denial** [1] - 3:11

**department** [6] - 34:2, 62:15, 68:10,

207:15, 251:1, 264:24

**Department** [6] - 100:7, 103:4, 104:7, 119:18, 259:18, 290:23

**departments** [5] - 141:7, 141:9, 177:20, 203:5, 208:6

**DEPUTY** [10] - 3:2, 3:24, 19:8, 75:1, 107:23, 146:2, 207:2, 229:18, 229:21, 249:2

**deputy** [6] - 14:3, 14:20, 196:7, 196:12, 277:2, 278:16

**describe** [1] - 256:5

**described** [1] - 90:3

**description** [2] - 166:21, 235:11

**despite** [2] - 126:10, 173:8

**destroyed** [1] - 26:25

**details** [7] - 34:16, 36:3, 83:11, 211:2, 211:3, 228:9, 240:4

**deteriorating** [1] - 201:4

**determinants** [1] - 22:17

**determination** [1] - 51:8

**devastating** [1] - 60:3

**devastation** [1] - 111:23

**devised** [1] - 10:9

**devoted** [1] - 176:8

**devoting** [1] - 175:24

**diabetes** [1] - 124:8

**diagnosed** [1] - 294:16

**Diana** [1] - 4:12

**DIANA** [1] - 4:14

**died** [1] - 147:21

**difference** [4] - 68:16, 77:21, 126:7, 126:8

**different** [28] - 15:7, 35:18, 36:9, 42:24, 44:18, 51:18, 76:6, 104:3, 106:7, 135:10, 136:14, 138:19, 138:20, 148:6, 156:3, 157:14, 158:20, 163:15, 163:18, 164:5, 178:11, 200:17, 206:4, 221:16, 236:15, 237:2, 298:18

**differently** [4] - 13:18, 85:6, 161:19, 236:22

**difficult** [11] - 38:17, 62:16, 62:19, 63:13, 156:2, 176:11, 176:13, 212:25, 222:4, 244:20, 244:24

**difficulties** [1] - 4:18

**difficulty** [2] - 138:4, 266:24

**Diouf** [1] - 3:19

**DIOUF** [1] - 1:20

**dire** [1] - 205:16

**direct** [1] - 207:15

**directly** [2] - 55:5, 179:5

**director** [1] - 111:1

**disagree** [2] - 57:1, 220:6

**disagreed** [4] - 23:22, 173:2, 173:6, 235:20

**disapprove** [2] - 155:20, 160:15

**disclose** [1] - 27:11

**discuss** [7] - 11:23, 13:14, 13:21, 36:19, 104:5, 146:15, 293:18

**discussed** [4] - 12:23, 104:7, 119:23,

210:15

**discussion** [6] - 18:25, 162:4, 162:6, 190:12, 193:18, 197:18
**discussions** [2] - 19:10, 75:4
**disease** [1] - 294:18
**disgrace** [1] - 234:17
**dismiss** [1] - 23:15
**dismissal** [1] - 181:1
**dismissed** [2] - 95:22, 96:4
**disposition** [1] - 163:12
**disproportionally** [2] - 22:20, 26:24
**dispute** [1] - 212:17
**disputed** [1] - 57:4
**distracted** [1] - 214:14
**distribute** [1] - 235:13
**distributed** [1] - 53:21
**DISTRICT** [2] - 1:1, 1:1
**district** [1] - 262:17
**District** [2] - 1:17, 130:22
**distrust** [1] - 148:8
**diversity** [1] - 33:10
**divide** [1] - 141:6
**divorced** [1] - 42:18
**Docket** [1] - 3:3
**doctor** [2] - 180:15, 253:14
**doctor's** [2] - 180:17, 253:8
**documentary** [2] - 52:23, 52:24
**documents** [3] - 166:22, 168:23, 170:3
**dollar** [2] - 207:16, 207:17
**dollar-a-year** [1] - 207:17
**dollars** [1] - 207:18
**Donatti** [2] - 4:12, 4:13
**DONATTI** [2] - 4:14, 4:15
**done** [23] - 13:2, 13:9, 14:22, 38:15, 56:23, 82:20, 111:23, 140:12, 155:23, 162:15, 175:7, 176:10, 193:19, 194:16, 194:19, 194:20, 229:10, 253:17, 273:17, 273:18, 298:15, 300:2, 300:5
**door** [1] - 28:23
**doubt** [29] - 55:21, 58:19, 82:15, 82:19, 87:1, 87:4, 89:21, 102:24, 136:11, 163:24, 170:23, 170:25, 171:12, 171:19, 172:2, 172:4, 172:5, 172:14, 172:16, 192:13, 211:16, 211:20, 211:21, 219:23, 220:11, 260:12, 260:20, 284:4
**doubts** [1] - 263:22
**down** [26] - 5:6, 7:19, 47:5, 62:5, 66:24, 67:12, 71:6, 93:18, 99:24, 137:22, 143:14, 149:6, 156:16, 165:23, 177:15, 180:2, 185:5, 187:23, 197:14, 224:15, 266:13, 287:13, 289:5, 290:4, 297:10, 298:12
**downstairs** [2] - 205:15, 268:10
**drawback** [2] - 20:19, 20:24
**dredge** [1] - 148:25
**driving** [1] - 115:12
**drop** [10] - 88:19, 126:17, 230:11,

249:23, 253:1, 255:7, 264:18, 268:21, 270:5, 276:12
**drops** [1] - 180:24
**drug** [55] - 27:2, 31:3, 51:16, 53:6, 53:24, 53:25, 56:4, 57:5, 57:21, 59:21, 88:2, 88:23, 110:23, 111:12, 111:13, 112:22, 123:7, 123:9, 123:11, 135:23, 136:1, 150:9, 150:23, 151:2, 152:4, 152:17, 152:18, 152:19, 191:11, 191:18, 192:14, 201:21, 201:23, 202:10, 202:20, 219:23, 222:1, 222:11, 228:15, 229:1, 231:15, 235:12, 235:23, 235:24, 236:5, 236:6, 236:10, 236:12, 240:14, 240:16, 247:9, 247:17, 284:14
**Drug** [2] - 3:20, 240:16
**drug-related** [2] - 231:15, 240:14
**drugs** [55] - 27:21, 30:18, 30:21, 30:24, 31:21, 53:12, 53:15, 53:21, 54:9, 54:17, 54:18, 55:12, 56:4, 56:21, 57:2, 57:9, 57:23, 58:20, 59:9, 59:11, 59:19, 60:1, 60:3, 60:19, 81:25, 82:4, 82:11, 88:18, 88:19, 88:21, 111:3, 111:6, 111:7, 113:22, 117:9, 135:7, 150:22, 155:20, 155:24, 157:14, 184:21, 219:3, 228:19, 234:23, 235:12, 235:13, 246:25, 251:10, 255:14, 255:23, 284:12
**Drugs** [8] - 26:24, 27:1, 27:23, 99:3, 234:15, 234:23, 235:6, 246:16
**due** [1] - 111:23
**DUI** [3] - 256:8, 257:6, 257:7
**dumping** [1] - 246:23
**duration** [1] - 207:20
**during** [24] - 13:19, 68:17, 83:4, 105:2, 175:24, 191:24, 197:9, 200:14, 205:21, 206:17, 214:18, 214:22, 215:16, 238:8, 244:16, 250:17, 258:11, 267:6, 271:22, 272:19, 274:12, 279:6, 288:15
**duties** [1] - 206:3
**duty** [20] - 20:21, 38:10, 63:7, 66:19, 83:4, 94:22, 96:8, 140:18, 141:24, 142:7, 155:17, 180:9, 180:16, 180:22, 180:23, 206:4, 233:18, 250:5, 250:18, 274:16

## E

**early** [11] - 12:17, 69:17, 84:25, 122:9, 176:14, 180:6, 180:25, 227:12, 243:2, 276:14, 299:14
**easier** [1] - 45:19
**East** [1] - 1:17
**EASTERN** [1] - 1:1
**Eastern** [1] - 1:17
**easy** [1] - 100:17
**economic** [1] - 157:17
**editor** [1] - 233:11
**EDNY** [2] - 204:3, 204:16

**effect** [2] - 111:8, 248:2
**efficiency** [2] - 11:10, 13:8
**efficient** [1] - 9:11
**Eight** [1] - 129:6
**eight** [36] - 35:1, 84:19, 85:2, 95:8, 95:17, 98:1, 98:2, 98:18, 98:19, 118:16, 118:23, 120:19, 121:5, 121:8, 121:9, 121:16, 121:18, 123:22, 123:25, 124:25, 126:8, 126:10, 126:14, 129:15, 130:7, 139:23, 140:2, 141:15, 142:17, 145:14, 169:5, 207:10, 210:4, 214:19, 220:25, 233:13
**eight-week** [3] - 118:16, 118:23, 141:15
**eight-weeks** [1] - 35:1
**eighties** [1] - 227:12
**either** [18] - 11:19, 23:11, 28:12, 53:6, 118:7, 119:9, 120:24, 121:12, 142:24, 185:7, 193:12, 222:5, 227:7, 247:21, 261:3, 275:2, 277:7, 286:25
**Either** [1] - 221:21
**El** [8] - 29:22, 52:14, 178:8, 201:22, 227:24, 263:14, 263:18, 291:20
**elaborate** [1] - 277:22
**elder** [1] - 124:1
**elderly** [3] - 79:4, 124:5, 266:16
**elected** [4] - 198:15, 199:8, 201:9, 201:15
**electronic** [1] - 4:19
**elements** [1] - 219:24
**elsewhere** [2] - 205:8, 205:13
**email** [1] - 20:14
**Email** [1] - 2:9
**emergencies** [1] - 215:16
**emergency** [5] - 200:15, 200:23, 267:2, 267:5, 267:14
**emotional** [1] - 23:16
**emotionally** [1] - 216:4
**emotions** [1] - 23:18
**employee** [3] - 38:6, 38:11, 139:18
**Employee** [1] - 231:5
**employees** [6] - 62:18, 141:2, 141:24, 207:24, 208:1, 296:18
**employer** [30] - 20:23, 37:2, 37:10, 38:5, 38:9, 62:21, 67:17, 68:20, 70:6, 71:11, 118:5, 119:2, 119:10, 120:2, 120:18, 121:2, 121:4, 121:15, 123:16, 129:14, 140:15, 141:13, 142:15, 143:2, 144:5, 144:25, 145:14, 197:11, 220:18
**employers** [2] - 179:8, 197:8
**employment** [1] - 291:10
**encompassed** [1] - 27:22
**encounters** [2] - 42:6, 42:12
**end** [24] - 9:10, 15:9, 29:23, 34:3, 35:16, 35:20, 42:22, 54:18, 57:14, 95:22, 145:7, 147:22, 158:14, 165:14, 176:14, 188:9, 193:12, 226:5, 226:14, 235:9, 238:13, 272:20, 299:14, 301:3
**ended** [1] - 96:5
**ending** [1] - 55:12
**endorsed** [1] - 203:5

**ends** [5] - 10:8, 91:1, 93:6, 193:16, 196:18
**Enforcement** [1] - 3:21
**enforcement** [101] - 7:20, 7:25, 8:13, 22:11, 23:9, 27:8, 47:20, 48:19, 49:5, 69:13, 72:20, 86:14, 86:17, 86:22, 87:11, 87:20, 88:6, 88:12, 89:16, 89:17, 90:4, 90:6, 90:17, 90:18, 90:20, 91:4, 91:6, 91:8, 91:9, 91:10, 91:11, 97:2, 97:3, 97:6, 97:16, 103:10, 103:11, 103:16, 103:18, 108:8, 109:5, 109:12, 109:17, 109:22, 109:25, 110:15, 122:24, 143:16, 143:18, 160:18, 160:19, 161:3, 161:4, 161:19, 161:20, 161:25, 162:1, 163:13, 163:14, 165:10, 166:16, 177:18, 178:1, 178:5, 203:3, 203:6, 203:7, 203:9, 227:6, 236:5, 241:1, 241:2, 241:11, 241:13, 241:14, 250:23, 251:4, 256:4, 256:7, 256:12, 256:18, 259:21, 260:1, 260:3, 265:3, 265:7, 265:8, 269:2, 269:8, 283:8, 283:17, 283:19, 283:23, 285:7, 285:8, 285:11, 285:15, 286:7, 286:8
**engaging** [1] - 159:12
**English** [10] - 70:16, 70:22, 71:22, 72:1, 72:6, 137:3, 137:7, 138:5, 139:3, 139:10
**enjoy** [1] - 198:2
**enjoyed** [1] - 25:2
**enter** [2] - 195:17, 298:8
**enterprises** [1] - 105:17
**enters** [68] - 15:18, 17:4, 19:21, 22:2, 29:10, 32:24, 39:6, 43:25, 46:8, 46:25, 59:15, 62:1, 67:10, 71:4, 76:8, 85:20, 92:6, 94:13, 99:18, 100:9, 107:19, 118:3, 120:15, 122:3, 127:10, 131:8, 147:1, 149:18, 153:25, 165:19, 171:4, 175:13, 179:25, 187:16, 189:1, 191:1, 191:7, 199:15, 206:24, 214:8, 216:23, 222:8, 223:20, 226:17, 230:9, 232:19, 234:10, 242:8, 242:22, 249:20, 252:23, 255:5, 258:1, 259:11, 264:16, 266:9, 268:19, 270:3, 274:1, 275:22, 277:25, 283:1, 286:14, 287:9, 288:24, 289:25, 294:1, 296:4
**enters)** [1] - 78:19
**enters.)**29** [1] - 144:2
**enters.)**31** [1] - 135:14
**enters.)**32** [1] - 137:16
**enters.)**55** [1] - 244:2
**entirely** [4] - 5:16, 38:3, 118:13, 119:5
**entitled** [1] - 13:12
**entry** [2] - 3:11, 3:12
**environment** [1] - 26:3
**envision** [1] - 212:5
**episodes** [2] - 52:19, 53:5
**equally** [1] - 88:14
**equity** [1] - 33:10
**equivocated** [1] - 184:22

**ERIN** [1] - 1:19
**Erin** [1] - 3:18
**escaped** [1] - 263:17
**esophagitis** [1] - 294:17
**esophagus** [1] - 294:17
**especially** [31] - 31:7, 34:25, 63:7, 65:14, 101:5, 111:24, 113:21, 141:25, 176:11, 204:9, 205:14, 214:21, 233:6, 262:16, 269:5
**ESQ** [4] - 1:23, 1:23, 2:3, 2:6
**essential** [1] - 140:19
**essentially** [5] - 200:5, 200:16, 201:2, 202:1, 214:15
**estate** [2] - 30:3, 150:2
**et** [1] - 3:4
**evening** [8] - 17:17, 198:2, 270:17, 274:13, 274:14, 276:12, 279:5, 298:25
**evenings** [2] - 62:20, 63:3
**evenness** [1] - 111:21
**event** [3] - 10:6, 10:15, 195:13
**events** [2] - 52:25, 247:23
**evidence** [75] - 27:21, 48:2, 54:6, 54:17, 55:5, 64:18, 65:5, 65:8, 66:14, 81:11, 81:16, 82:8, 82:12, 82:14, 86:21, 86:25, 89:8, 89:12, 96:12, 102:8, 102:9, 102:15, 102:17, 105:24, 106:6, 112:16, 112:17, 128:9, 148:18, 151:23, 151:24, 153:1, 156:25, 157:7, 161:7, 163:16, 163:22, 163:23, 163:25, 166:15, 166:20, 166:25, 167:10, 168:9, 168:15, 169:22, 170:21, 183:11, 185:22, 185:25, 186:4, 186:24, 187:2, 187:12, 187:22, 188:11, 192:12, 192:19, 211:8, 211:24, 214:13, 218:1, 220:9, 222:5, 235:6, 238:4, 239:17, 239:21, 251:13, 260:22, 263:1, 281:6, 284:3, 293:20
**evolving** [1] - 209:3
**ex** [3] - 42:15, 42:23, 137:2
**ex-boyfriend** [1] - 137:2
**ex-brother-in-law** [2] - 42:15, 42:23
**exact** [1] - 224:6
**Exactly** [1] - 120:5
**exactly** [12] - 5:5, 13:21, 47:17, 115:9, 148:15, 156:23, 172:3, 198:25, 210:5, 213:2, 285:13, 300:18
**exam** [1] - 96:23
**example** [7] - 7:19, 8:1, 10:6, 23:8, 25:21, 61:7, 95:11, 128:12, 193:13, 211:8, 237:6, 238:2, 261:13
**excellent** [1] - 250:20
**except** [1] - 255:15
**exception** [2] - 35:22, 164:9
**excuse** [9] - 11:21, 75:25, 76:1, 146:16, 249:8, 282:13, 282:14, 286:13, 288:23
**excused** [56] - 5:11, 10:5, 16:11, 38:23, 38:24, 45:12, 45:16, 46:12, 46:17, 66:22, 93:16, 99:17, 99:22, 117:15, 121:23, 122:1, 149:6, 149:9, 180:8, 181:6, 181:18, 191:2, 192:25, 196:21,

214:3, 214:6, 215:2, 223:8, 223:9, 232:6, 232:9, 233:23, 234:2, 242:10, 242:12, 243:14, 243:16, 248:11, 254:20, 254:23, 259:3, 259:6, 267:23, 269:14, 269:16, 273:14, 273:19, 273:21, 275:10, 275:15, 276:20, 286:15, 289:3, 289:6, 295:14, 297:9
**excused.)**Jury** [1] - 248:14
**excusing** [1] - 216:10
**exercise** [1] - 13:7
**exit** [2] - 198:3, 299:2
**exits** [54] - 18:22, 21:9, 28:18, 32:10, 36:23, 43:12, 56:11, 61:19, 67:1, 70:10, 73:25, 78:11, 84:14, 91:22, 93:20, 98:22, 99:25, 107:6, 117:17, 118:21, 125:23, 129:22, 135:2, 143:5, 153:13, 163:5, 168:5, 174:24, 179:23, 188:25, 190:25, 191:6, 193:2, 205:1, 215:5, 221:24, 226:8, 229:15, 242:2, 252:16, 257:20, 264:7, 266:1, 268:2, 276:23, 282:2, 284:24, 286:17, 288:12, 289:9, 292:16, 295:18, 297:12
**exits.)**Jury** [2] - 136:25, 144:19
**expect** [5] - 6:14, 15:11, 32:18, 37:4, 119:11
**expected** [1] - 84:19
**expecting** [3] - 142:13, 176:10, 262:9
**experience** [12] - 24:15, 27:16, 110:14, 131:19, 132:2, 136:3, 150:13, 229:2, 230:17, 231:12, 257:9, 263:6
**experienced** [1] - 154:21
**experiences** [3] - 135:23, 160:22, 256:6
**explain** [6] - 7:2, 72:1, 138:12, 139:13, 156:9, 246:17
**explanation** [3] - 100:3, 269:24, 269:25
**explicitly** [2] - 168:20, 170:16
**explore** [1] - 235:5
**exposed** [4] - 25:17, 28:2, 28:4, 115:8
**exposure** [1] - 26:6
**express** [1] - 37:21
**expressed** [6] - 6:3, 7:11, 37:1, 168:10, 201:21, 206:16
**expressing** [1] - 184:19
**expression** [2] - 115:16, 164:11
**expressly** [1] - 12:23
**extra** [3] - 34:16, 121:25, 169:9
**extraordinarily** [1] - 63:6
**eyes** [2] - 212:11, 212:13
**eyewitness** [2] - 166:15, 166:20

## F

**face** [4] - 37:8, 163:20, 228:18, 269:2
**facilitate** [1] - 33:12
**facilitating** [2] - 33:24, 57:11
**facility** [1] - 200:7
**fact** [30] - 18:11, 40:22, 47:19, 48:18, 53:16, 55:12, 69:3, 69:3, 69:12, 69:19, 77:20, 86:13, 86:16, 90:5, 96:25, 122:22, 132:5, 133:16, 136:2, 160:13,

164:22, 175:6, 177:25, 185:12,
203:23, 226:24, 227:18, 256:16,
262:16, 265:2, 283:16

**factor** [1] - 210:11

**facts** [6] - 56:1, 57:15, 73:7, 160:24,
252:7

**failure** [1] - 200:19

**fair** [215] - 7:21, 7:25, 8:3, 8:20, 11:15,
15:7, 15:10, 18:13, 18:16, 20:17, 23:1,
23:3, 23:11, 24:24, 27:23, 29:25,
30:21, 31:2, 31:17, 31:21, 32:3, 42:2,
42:11, 43:5, 44:14, 46:3, 47:21, 48:3,
49:24, 50:14, 50:24, 50:25, 51:10,
51:24, 52:10, 53:5, 54:1, 54:5, 54:15,
54:16, 54:21, 55:2, 55:16, 55:22, 56:2,
57:17, 58:6, 58:8, 58:9, 58:14, 58:15,
59:1, 59:22, 60:5, 63:24, 64:17, 66:8,
66:14, 68:22, 69:14, 69:20, 69:22,
73:10, 73:13, 73:15, 73:19, 76:24,
77:1, 77:11, 78:5, 80:15, 81:2, 81:5,
81:16, 82:24, 83:1, 86:17, 87:14,
87:24, 88:3, 88:11, 88:22, 89:1, 89:6,
89:11, 89:13, 89:18, 89:19, 91:7,
91:13, 91:14, 97:2, 97:18, 97:21,
102:20, 103:12, 104:13, 108:9,
108:19, 108:24, 109:5, 111:11,
111:14, 112:20, 113:17, 117:3, 117:5,
122:13, 122:23, 123:10, 131:20,
132:7, 132:15, 132:18, 133:18, 136:4,
136:18, 147:12, 148:5, 148:23,
148:24, 150:8, 150:14, 151:3, 151:9,
151:15, 153:6, 156:6, 156:13, 157:22,
159:11, 160:9, 160:16, 161:25,
165:13, 165:14, 165:15, 168:24,
169:1, 169:17, 170:17, 171:24, 175:1,
178:2, 184:22, 185:6, 185:8, 191:17,
201:16, 201:19, 201:25, 202:14,
202:17, 203:12, 203:24, 204:9,
204:21, 218:13, 219:16, 220:14,
221:8, 222:4, 222:14, 224:18, 224:23,
225:20, 226:25, 227:19, 229:2,
229:11, 230:18, 234:19, 236:1, 236:6,
236:10, 239:2, 240:23, 246:17, 247:8,
248:3, 250:23, 251:13, 251:18,
251:25, 255:24, 256:5, 256:18,
257:10, 257:13, 259:22, 261:16,
261:18, 261:22, 263:7, 263:20,
263:23, 265:3, 265:10, 265:16,
265:20, 280:21, 280:23, 281:1, 281:3,
281:16, 283:18, 284:9, 284:13,
284:17, 287:2, 287:19, 291:6, 291:23,
292:8

**Fair** [2] - 43:4, 247:7

**fairly** [7] - 131:24, 156:12, 188:2,
224:12, 227:21, 229:9, 262:24

**fairness** [6] - 56:23, 76:2, 157:12,
159:15, 185:20, 285:11

**falls** [1] - 266:20

**familiar** [1] - 50:4

**family** [27] - 7:19, 7:24, 18:2, 30:23,

42:8, 69:19, 72:17, 92:23, 104:6,
108:7, 127:2, 128:15, 131:20, 132:6,
135:23, 135:24, 136:3, 231:13,
241:10, 244:17, 244:21, 259:17,
260:7, 283:8, 283:9, 283:17, 284:12

**fantastic** [1] - 155:18

**far** [16] - 5:13, 6:16, 35:9, 51:19, 103:23,
104:23, 106:8, 138:22, 138:23,
143:21, 145:4, 150:4, 189:11, 189:23,
190:3

**father** [8] - 69:1, 69:4, 79:22, 122:9,
241:2, 250:21, 264:24, 272:12

**father's** [1] - 43:19

**fault** [2] - 156:3, 157:21

**favor** [8] - 48:10, 86:23, 88:15, 159:10,
203:25, 261:11, 261:19, 262:20

**Fax** [1] - 2:9

**FBI** [6] - 47:11, 47:16, 48:6, 48:18, 49:3,
87:8

**fear** [1] - 66:12

**February** [6] - 16:19, 17:9, 176:18,
245:6, 245:21, 276:15

**federal** [7] - 66:1, 201:11, 229:24,
230:17, 230:19, 240:5, 240:16

**fee** [2] - 120:4, 225:15

**feed** [1] - 4:22

**feelings** [20] - 31:1, 53:16, 53:25, 81:21,
110:25, 111:2, 111:5, 111:7, 111:14,
111:18, 111:22, 112:13, 112:16,
114:16, 117:6, 148:22, 217:6, 240:25,
285:15

**fell** [1] - 24:17

**felt** [9] - 26:23, 64:9, 103:21, 164:9,
172:14, 173:14, 205:17, 206:9, 240:10

**few** [20] - 8:16, 10:19, 59:16, 131:13,
139:20, 145:12, 180:14, 191:8,
199:21, 206:8, 207:4, 226:20, 228:3,
233:17, 244:10, 266:22, 271:10,
279:17, 283:5, 297:15

**fictionalized** [2] - 52:22, 53:8

**field** [1] - 112:9

**Fifty** [1] - 243:17

**Fifty-five** [1] - 243:17

**figure** [6] - 16:3, 56:25, 128:14, 134:18,
154:22, 260:19

**figured** [1] - 40:3

**filed** [1] - 122:11

**fill** [7] - 34:5, 34:19, 38:18, 126:15,
180:21, 208:17, 298:9

**filled** [4] - 5:1, 44:13, 137:5, 300:11

**filling** [1] - 72:9

**film** [1] - 233:11

**final** [1] - 8:20

**finally** [4] - 53:10, 164:7, 185:9, 229:5

**Finance** [1] - 220:23

**financial** [3] - 123:18, 154:14, 155:2

**findings** [1] - 106:9

**fine** [39] - 20:6, 22:6, 22:7, 26:10, 68:21,
71:2, 72:8, 76:11, 90:24, 100:20,
101:24, 114:24, 118:17, 119:25,

131:11, 137:12, 139:9, 157:4, 161:12,
163:17, 167:25, 170:7, 181:5, 187:15,
199:18, 206:2, 225:16, 255:10, 262:8,
262:11, 268:8, 268:11, 274:3, 278:5,
279:1, 286:4, 287:14, 288:21

**Fine** [1] - 22:4

**fingerprints** [1] - 188:11

**fingers** [1] - 301:1

**finish** [6] - 12:15, 52:15, 140:13, 268:12,
299:21, 299:24

**finished** [1] - 195:9

**fire** [4] - 251:1, 264:24, 264:25

**fired** [2] - 240:1, 240:19

**firefighter** [2] - 250:21, 250:22

**fires** [1] - 251:2

**FIRM** [1] - 1:21

**firm** [4] - 99:1, 175:22, 176:1, 179:4

**first** [52] - 5:21, 10:19, 13:24, 14:18,
15:2, 15:4, 25:23, 29:17, 43:16, 52:19,
81:7, 92:13, 94:21, 108:9, 133:13,
140:17, 140:21, 167:4, 180:16, 182:6,
187:4, 226:21, 227:12, 264:23, 276:3

**five** [13] - 16:6, 98:25, 119:19, 121:6,
124:4, 124:20, 130:19, 130:20,
140:11, 145:11, 180:19, 180:22,
180:24, 243:17, 299:18

**fix** [1] - 271:21

**flag** [1] - 9:8

**flashed** [1] - 147:20

**flexibility** [1] - 267:17

**flexible** [1] - 221:1

**flies** [1] - 163:20

**flight** [4] - 17:13, 17:19, 166:9, 167:18

**flood** [1] - 111:6

**floor** [31] - 16:10, 45:13, 46:14, 66:25,
84:10, 93:19, 98:3, 98:11, 98:15,
98:17, 99:24, 117:15, 121:24, 149:7,
191:3, 192:24, 214:4, 232:8, 233:25,
242:11, 248:12, 259:5, 269:15,
273:15, 273:18, 275:13, 276:22,
286:16, 289:5, 295:16, 297:11

**FLORIAN** [1] - 2:3

**Florian** [1] - 4:3

**Florida** [2] - 226:13, 229:7

**fluently** [1] - 71:23

**fly** [2] - 8:24, 9:1

**focus** [21] - 22:16, 61:21, 65:8, 65:17,
66:5, 67:3, 81:16, 85:13, 91:25, 107:8,
120:8, 129:25, 142:10, 149:11,
153:16, 174:21, 214:13, 239:20,
286:19, 293:23, 294:6

**focused** [5] - 81:14, 90:12, 164:18,
174:17, 183:10

**focusing** [1] - 59:22

**folks** [1] - 32:19

**follow** [138] - 5:15, 5:19, 5:22, 5:25,
6:13, 7:1, 7:6, 7:13, 7:14, 7:21, 8:17,
8:22, 9:10, 9:13, 9:15, 10:4, 16:22,
17:1, 22:9, 24:12, 28:12, 29:5, 30:12,
32:6, 36:17, 39:12, 43:7, 43:14, 45:20,

47:9, 49:12, 51:19, 56:6, 57:7, 58:9, 59:3, 59:17, 61:15, 62:8, 63:15, 67:15, 69:25, 71:1, 71:10, 72:4, 80:24, 102:4, 104:3, 104:8, 106:12, 125:18, 130:13, 130:17, 131:13, 135:21, 136:21, 138:3, 143:7, 145:12, 147:7, 149:22, 152:5, 153:8, 154:6, 156:21, 156:24, 157:6, 158:16, 158:20, 158:23, 158:24, 159:3, 164:7, 165:3, 165:5, 165:6, 165:9, 165:21, 167:25, 168:10, 168:21, 169:13, 169:17, 169:22, 171:8, 172:7, 172:21, 173:1, 173:4, 173:5, 173:8, 173:18, 173:24, 174:4, 175:16, 179:18, 182:4, 182:6, 182:17, 186:15, 187:7, 187:9, 187:11, 205:20, 206:14, 217:15, 217:22, 221:11, 222:10, 223:23, 225:17, 226:20, 227:25, 230:5, 230:15, 231:21, 232:23, 234:13, 235:14, 237:10, 237:11, 237:13, 241:20, 242:25, 244:10, 255:11, 257:15, 258:4, 259:16, 263:25, 264:22, 268:25, 270:9, 277:11, 278:7, 281:7, 281:19, 291:15

**follow-up** [65] - 5:15, 5:19, 5:22, 5:25, 7:1, 7:21, 8:17, 8:22, 9:10, 9:13, 9:15, 16:22, 17:1, 22:9, 28:12, 29:5, 32:6, 36:17, 47:9, 57:7, 58:9, 59:17, 61:15, 62:8, 63:15, 71:10, 125:18, 130:13, 130:17, 131:13, 135:21, 136:21, 138:3, 143:7, 145:12, 154:6, 165:21, 167:25, 169:13, 169:22, 174:4, 175:16, 179:18, 182:17, 221:11, 222:10, 223:23, 225:17, 226:20, 227:25, 230:5, 230:15, 232:23, 234:13, 241:20, 242:25, 244:10, 255:11, 258:4, 259:16, 264:22, 268:25, 270:9, 278:7, 281:19

**follow-ups** [1] - 147:7
**followed** [1] - 197:20
**follower** [3] - 158:23, 165:2, 168:14
**following** [14] - 8:13, 16:22, 24:16, 27:14, 37:23, 81:3, 90:2, 103:22, 122:7, 130:24, 164:10, 196:3, 231:20, 248:19
**followup** [29] - 78:7, 79:1, 81:1, 84:3, 86:7, 89:24, 90:10, 91:3, 94:19, 100:23, 105:11, 108:4, 187:8, 187:18, 188:22, 191:9, 199:3, 199:7, 199:21, 203:2, 203:15, 205:6, 207:4, 214:10, 217:4, 283:5, 292:10, 295:21, 296:11
**followups** [2] - 286:21, 286:24
**fondly** [1] - 160:22
**FOR** [1] - 1:12
**for-cause** [4] - 215:20, 215:21, 249:6, 297:14
**force** [1] - 115:12
**forces** [1] - 22:18
**foreign** [1] - 286:6
**forget** [2] - 126:16, 275:3

**forgot** [1] - 239:24
**form** [1] - 180:21
**formed** [2] - 27:4, 27:15
**former** [5] - 67:20, 90:6, 158:3, 243:18, 264:24
**forth** [5] - 5:3, 13:13, 56:18, 57:25, 183:13
**forthright** [1] - 58:6, 214:2
**forty** [1] - 230:5
**Forty** [7] - 130:1, 130:19, 130:20, 229:21, 230:1, 230:2
**Forty-five** [2] - 130:19, 130:20
**Forty-one** [3] - 230:1, 230:2
**forty-one** [1] - 230:5
**Forty-six** [1] - 229:21
**forward** [3] - 62:17, 133:21, 157:4
**foundation** [1] - 219:12
**four** [7] - 68:8, 85:11, 146:5, 146:11, 180:22, 180:24, 208:16
**frankly** [1] - 164:25
**free** [6] - 78:22, 118:1, 199:19, 223:23, 230:12, 290:5
**freelance** [1] - 233:11
**frequent** [1] - 126:4
**Friday** [24] - 16:20, 17:13, 17:16, 17:24, 33:20, 33:21, 34:21, 127:7, 128:1, 128:2, 128:11, 154:23, 166:11, 166:13, 177:9, 194:20, 195:1, 195:6, 195:10, 208:15, 290:17, 300:16
**Fridays** [14] - 19:4, 32:18, 32:20, 34:21, 62:12, 62:24, 62:25, 126:1, 142:22, 142:23, 154:24, 195:4, 290:16
**friend** [16] - 47:15, 48:6, 48:18, 103:4, 103:5, 103:6, 103:23, 104:3, 155:22, 223:11, 224:1, 262:14, 262:16, 262:21
**friends** [8] - 18:2, 30:23, 35:24, 36:11, 47:11, 177:19, 189:12
**front** [1] - 252:5
**frozen** [1] - 277:8
**full** [14] - 35:8, 63:6, 71:16, 71:17, 74:2, 139:18, 145:7, 145:19, 145:20, 174:19, 231:16, 233:5, 274:11
**full-time** [3] - 71:17, 139:18, 233:5
**fully** [4] - 44:13, 70:12, 72:13, 231:9
**Fulton** [1] - 1:22
**fun** [1] - 243:14
**function** [3] - 214:16, 216:2, 216:3
**fundamental** [1] - 164:11
**fusible** [1] - 34:25
**future** [2] - 3:11, 3:12

# G

**gained** [1] - 49:23
**gallery** [1] - 4:21
**gang** [1] - 29:21
**Garaufis** [1] - 119:10
**GARCIA** [1] - 1:8
**Garcia** [5] - 3:4, 4:2, 202:24, 285:8, 285:14

**GENARO** [1] - 1:8
**Genaro** [1] - 3:4
**general** [12] - 3:7, 31:20, 32:17, 111:14, 151:9, 157:15, 158:13, 161:10, 163:17, 224:15, 263:16, 285:23
**generally** [6] - 79:8, 138:4, 159:7, 160:21, 199:6, 224:15
**George** [1] - 274:9
**given** [16] - 5:14, 12:8, 27:13, 38:13, 73:9, 84:17, 88:10, 89:15, 114:9, 173:16, 184:8, 185:25, 204:9, 216:9, 221:25, 250:7
**glass** [1] - 74:5
**global** [1] - 62:15
**god** [1] - 119:19
**gonna** [1] - 11:4
**goods** [1] - 208:25
**Google** [4] - 144:7, 144:8, 144:20, 184:1
**Googled** [1] - 183:16
**Gotlib** [1] - 4:3
**GOTLIB** [2] - 2:4, 2:6
**govern** [1] - 25:4
**government** [63] - 3:14, 6:9, 7:5, 13:23, 19:17, 21:11, 23:2, 31:23, 80:25, 81:4, 81:13, 82:18, 87:3, 89:20, 97:16, 99:5, 100:6, 102:23, 130:16, 135:11, 156:19, 159:10, 185:1, 187:8, 198:15, 198:21, 199:5, 199:8, 199:11, 199:12, 201:9, 201:14, 204:9, 213:10, 216:20, 217:9, 218:8, 218:9, 219:6, 219:22, 220:10, 220:14, 222:1, 222:3, 222:5, 222:6, 222:11, 222:13, 222:15, 222:16, 222:19, 223:16, 224:24, 225:18, 231:5, 231:9, 231:19, 243:21, 285:19, 285:24, 286:1, 295:25
**Government** [38] - 1:16, 6:21, 39:3, 43:17, 47:22, 48:1, 48:3, 48:11, 50:9, 55:20, 56:7, 56:19, 56:21, 58:18, 67:6, 151:10, 151:14, 152:22, 153:22, 156:14, 159:7, 159:13, 159:14, 169:6, 169:11, 171:12, 172:1, 172:12, 182:2, 217:7, 255:1, 255:20, 264:1, 265:9, 275:19, 280:24, 281:2
**Government's** [3] - 57:20, 81:21, 81:23
**graduate** [1] - 274:8
**graduated** [1] - 203:18
**grand** [5] - 135:9, 136:7, 136:9, 292:23
**granted** [1] - 3:6
**Gras** [1] - 17:12
**grasping** [1] - 208:20
**gray** [2] - 108:21, 108:23
**grays** [1] - 223:2
**great** [55] - 7:17, 15:1, 36:14, 43:4, 43:17, 43:24, 53:10, 67:9, 69:25, 72:16, 73:8, 73:21, 75:22, 77:25, 78:17, 79:25, 84:13, 86:6, 89:10, 91:15, 95:13, 96:14, 97:20, 97:24, 104:11, 112:11, 116:8, 121:5, 129:21, 157:10, 162:24, 168:3, 174:22, 188:24, 194:5, 195:18, 199:14, 202:8,

221:7, 222:24, 225:1, 234:21, 242:20, 245:2, 255:7, 257:15, 257:17, 265:23, 280:5, 284:21, 287:12, 287:16, 288:1, 291:1, 298:5

**Great** [9] - 21:5, 24:19, 26:20, 131:13, 139:5, 143:20, 225:16, 239:1, 242:6

**greater** [1] - 216:8

**grew** [3] - 69:7, 69:10, 72:17

**group** [6] - 12:15, 14:18, 176:12, 194:14, 298:18, 300:20

**growing** [1] - 158:13

**grown** [1] - 128:16

**guess** [39] - 9:12, 53:17, 54:4, 60:9, 61:3, 64:11, 64:22, 70:1, 85:2, 102:10, 104:19, 115:6, 129:2, 147:14, 154:22, 156:15, 156:20, 158:5, 158:23, 160:10, 166:3, 167:5, 170:11, 172:15, 172:20, 173:7, 189:18, 190:16, 199:13, 208:8, 215:13, 231:24, 241:4, 246:24, 247:23, 248:8, 260:23, 262:6, 285:11

**guidance** [1] - 48:14

**guilty** [20] - 50:12, 57:16, 60:15, 82:16, 82:21, 87:3, 87:5, 89:22, 152:25, 171:13, 192:14, 192:15, 202:15, 238:14, 238:18, 292:2, 293:20

**Gun** [1] - 133:15

**guy** [2] - 147:16, 147:20

**guys** [3] - 98:5, 121:18, 174:12

## H

**hairs** [2] - 171:23

**half** [3] - 141:11, 194:2, 289:17

**half-brother** [1] - 289:17

**half-hour** [1] - 194:2

**hall** [20] - 5:2, 12:3, 14:4, 18:19, 28:16, 91:21, 135:1, 136:24, 153:11, 174:5, 226:1, 252:14, 257:18, 264:5, 265:24, 281:23, 282:1, 284:22, 288:5, 292:14

**hand** [1] - 89:8

**handle** [3] - 37:18, 154:19, 296:24

**handled** [1] - 214:21

**handles** [1] - 37:9

**handling** [1] - 152:3

**hands** [2] - 53:17, 54:19

**hang** [1] - 11:25

**happier** [1] - 189:19

**happy** [1] - 169:19

**hard** [14] - 54:4, 88:7, 88:18, 101:3, 111:25, 134:19, 147:23, 149:1, 173:13, 205:4, 207:19, 212:17, 255:14, 260:25

**hard-working** [1] - 88:7

**harder** [2] - 34:7, 255:21

**hardest** [1] - 239:10

**hardship** [62] - 5:10, 15:8, 15:23, 16:16, 19:15, 28:22, 32:14, 35:23, 37:1, 37:10, 37:12, 37:22, 43:16, 44:8, 45:24, 68:19, 79:3, 83:13, 91:24,

92:14, 98:25, 99:11, 130:9, 130:10, 137:3, 137:5, 137:6, 153:15, 153:21, 154:10, 175:17, 184:11, 184:13, 198:10, 199:23, 206:22, 207:10, 207:11, 226:12, 232:10, 233:1, 242:16, 243:20, 252:19, 266:3, 269:17, 270:1, 270:10, 274:6, 276:1, 276:15, 277:10, 279:3, 286:22, 287:23, 288:15, 288:17, 295:21, 296:12, 296:16

**hardships** [3] - 16:6, 37:21, 286:22

**harm** [1] - 111:10

**harmfulness** [1] - 31:21

**harms** [1] - 88:21

**hate** [2] - 120:5, 200:21

**head** [5] - 55:24, 57:25, 58:6, 62:14, 232:1

**headlines** [1] - 29:23

**heads** [1] - 85:7

**health** [8] - 11:14, 22:16, 22:17, 110:18, 111:1, 135:25, 183:11, 205:3

**healthier** [1] - 295:9

**hear** [37] - 4:23, 25:22, 26:2, 28:8, 32:13, 42:21, 51:17, 80:18, 82:12, 85:4, 85:10, 105:24, 109:19, 117:19, 148:14, 164:19, 165:7, 165:9, 170:17, 184:2, 187:10, 190:19, 197:16, 200:3, 205:24, 215:14, 239:22, 250:9, 263:18, 265:7, 265:8, 278:11, 278:12, 278:19, 278:21, 278:24

**heard** [47] - 10:8, 14:19, 25:20, 25:24, 26:11, 26:13, 27:19, 29:17, 29:18, 64:13, 64:18, 65:4, 78:13, 80:2, 80:5, 80:11, 80:14, 96:12, 104:2, 125:16, 130:5, 162:13, 163:6, 171:9, 174:25, 184:5, 185:6, 188:3, 192:12, 202:23, 202:24, 202:25, 211:23, 215:12, 218:1, 227:24, 228:3, 228:11, 247:20, 263:14, 277:3, 277:5, 278:8, 278:17, 278:18, 291:20

**hearing** [11] - 41:13, 138:19, 148:12, 205:24, 222:5, 222:16, 289:12, 289:23, 290:22

**hearings** [2] - 3:11, 3:12

**hearsay** [15] - 40:24, 185:15, 185:22, 185:24, 186:1, 186:2, 186:3, 186:11, 186:12, 186:14, 186:18, 187:5, 187:6, 187:10

**heart** [3] - 168:9, 168:23, 200:19

**heartless** [1] - 200:22

**held** [2] - 156:3, 163:15

**hello** [5] - 154:2, 189:2, 195:18, 217:2, 249:22

**Hello** [2] - 22:3, 230:10

**help** [8] - 8:8, 34:5, 34:19, 35:5, 79:8, 79:17, 79:20, 79:22, 79:23, 128:11, 128:16, 129:4, 139:12, 143:3, 271:3, 271:7

**helpful** [5] - 6:1, 8:7, 8:9, 9:17, 21:2

**helping** [4] - 33:9, 33:11, 34:7, 271:13

**helps** [1] - 155:17

**herself** [2] - 36:25, 168:20

**hesitancy** [2] - 163:11, 172:9

**hesitant** [1] - 164:3

**hesitating** [1] - 168:20

**hesitation** [3] - 64:21, 151:17, 152:14

**Hi** [11] - 118:4, 127:11, 131:9, 135:15, 137:17, 144:4, 223:21, 226:18, 234:11, 242:23, 244:6

**hi** [42] - 39:7, 46:9, 59:16, 62:2, 62:3, 67:11, 85:21, 92:7, 99:19, 99:20, 99:21, 100:10, 107:20, 147:4, 149:19, 154:1, 165:20, 165:22, 171:5, 175:14, 180:1, 187:17, 191:8, 199:16, 206:25, 207:6, 216:24, 249:21, 252:24, 258:2, 259:12, 264:17, 266:10, 266:12, 266:15, 268:20, 270:4, 275:23, 278:1, 294:2, 294:3, 296:5

**high** [1] - 47:15

**higher** [4] - 136:14, 222:18, 284:4, 284:5

**highly** [1] - 255:19

**himself** [1] - 277:4

**hinder** [1] - 208:12

**hindering** [1] - 133:21

**hire** [1] - 68:11

**historically** [3] - 219:6, 222:1, 222:11

**history** [2] - 191:23, 247:13

**hit** [1] - 301:3

**hm** [11] - 90:21, 93:11, 209:7, 211:17, 211:19, 212:23, 290:9, 291:4, 291:18, 291:25, 292:6

**hmm** [4] - 17:25, 127:16, 241:3, 246:8

**hobby** [1] - 279:11

**hold** [10] - 18:24, 27:6, 27:10, 29:7, 62:23, 84:9, 182:8, 254:10, 254:17, 288:9

**Hold** [3] - 19:8, 19:9, 59:6

**holding** [1] - 164:4

**holds** [1] - 57:3

**holiday** [1] - 17:20

**home** [18] - 25:10, 34:13, 34:14, 44:19, 44:20, 79:19, 93:8, 124:21, 125:8, 127:12, 128:12, 200:1, 205:25, 206:7, 216:6, 276:9

**Homeland** [1] - 3:21

**honest** [8] - 66:13, 83:12, 132:20, 134:4, 160:21, 174:9, 208:13, 208:20

**Honestly** [1] - 240:20

**honestly** [8] - 65:10, 65:13, 114:12, 202:4, 212:7, 228:3, 234:25, 237:8

**honesty** [1] - 223:5

**Honor** [162] - 3:16, 4:6, 4:13, 6:12, 8:3, 8:23, 9:17, 10:13, 12:22, 14:2, 14:23, 15:3, 15:15, 16:8, 16:21, 19:19, 21:15, 26:22, 27:25, 28:13, 28:14, 28:21, 29:8, 32:7, 32:17, 36:19, 36:24, 38:2, 43:22, 45:10, 49:9, 56:8, 57:1, 57:6, 59:7, 61:16, 61:24, 66:20, 67:8, 70:18, 75:6, 75:10, 75:11, 75:24, 78:16,

84:15, 90:3, 90:14, 94:1, 94:4, 105:12, 107:15, 108:2, 117:12, 119:9, 120:13, 125:15, 125:19, 125:25, 126:23, 127:4, 130:1, 131:1, 131:4, 135:12, 143:24, 144:25, 145:10, 146:17, 146:19, 149:3, 153:9, 153:20, 153:23, 162:3, 163:8, 164:8, 164:21, 168:2, 168:7, 168:16, 169:15, 169:21, 174:6, 174:7, 175:1, 175:9, 182:3, 182:6, 183:11, 183:15, 185:9, 186:4, 186:16, 193:8, 193:15, 194:25, 198:13, 205:23, 215:6, 215:15, 216:21, 221:12, 221:21, 221:25, 223:17, 223:18, 226:10, 230:1, 230:4, 232:13, 233:21, 234:5, 243:24, 245:4, 249:15, 252:21, 253:22, 254:1, 254:3, 254:19, 255:3, 256:2, 257:24, 264:2, 264:13, 264:21, 265:11, 265:18, 265:22, 266:6, 267:20, 268:6, 268:17, 269:20, 273:24, 275:9, 276:18, 277:8, 282:7, 283:25, 286:4, 286:25, 288:7, 288:8, 288:19, 288:21, 289:7, 289:20, 292:11, 292:12, 292:22, 293:5, 293:11, 296:2, 297:8, 297:16, 297:19, 298:4, 300:9, 300:12, 300:24

**Honor's** [4] - 90:9, 163:12, 184:21, 185:18

**HONORABLE** [2] - 1:12

**hope** [14] - 57:3, 66:7, 104:25, 108:11, 108:12, 111:18, 111:19, 112:18, 112:19, 114:23, 151:16, 167:10, 185:6, 209:21

**hopeful** [2] - 145:17, 300:1

**hopefully** [4] - 25:22, 34:15, 298:20, 299:10

**hospice** [2] - 16:2, 201:5

**hospital** [11] - 198:7, 199:24, 200:1, 205:5, 206:7, 216:5, 216:7, 258:23, 266:22, 276:9, 276:10

**hour** [2] - 134:6, 194:2

**hours** [8] - 140:10, 142:13, 174:20, 175:25, 176:9, 179:13, 206:8, 275:7

**house** [1] - 124:4

**HR** [3] - 62:15, 83:6, 83:8

**huge** [3] - 57:22, 158:25, 192:3

**hum** [17] - 39:21, 40:12, 48:22, 49:18, 50:7, 51:9, 52:4, 55:14, 60:13, 61:6, 63:17, 173:11, 177:11, 179:10, 261:17, 261:25, 280:2

**human** [3] - 77:6, 239:5, 239:6

**hurts** [1] - 148:3

**husband** [2] - 180:6, 267:9

**hybrid** [1] - 79:18

**hypothetical** [3] - 113:13, 213:1, 213:8


## I

**idea** [9] - 12:17, 111:6, 115:14, 190:20, 192:6, 192:16, 235:15, 285:24

**ideal** [1] - 216:6

---

**identify** [2] - 4:10, 201:10

**identifying** [1] - 198:24

**identity** [1] - 198:19

**ill** [1] - 155:21

**ill-advised** [1] - 155:21

**illegal** [11] - 105:17, 191:24, 191:25, 192:3, 219:9, 219:11, 219:16, 235:12, 235:13, 251:23, 251:24

**illegality** [1] - 192:9

**illegalizes** [1] - 235:11

**immediately** [9] - 11:13, 18:24, 23:10, 23:15, 25:22, 26:10, 28:7, 29:3, 66:9

**immigration** [1] - 256:9

**imminent** [1] - 201:6

**impact** [9] - 65:16, 148:5, 156:6, 160:16, 167:21, 174:10, 174:15, 203:24, 233:18

**impacted** [1] - 155:24

**impacting** [1] - 22:20

**impartial** [76] - 8:4, 8:20, 18:16, 20:17, 23:1, 24:24, 32:3, 43:5, 46:3, 48:15, 51:3, 51:10, 51:24, 54:15, 55:3, 68:23, 69:14, 69:23, 73:19, 76:24, 77:12, 78:5, 80:15, 82:24, 86:17, 88:11, 89:1, 103:12, 103:22, 104:13, 108:10, 112:20, 113:17, 117:3, 117:6, 132:18, 136:18, 147:12, 148:10, 148:20, 153:6, 184:22, 201:16, 201:19, 201:25, 204:21, 218:13, 221:8, 222:4, 222:14, 224:19, 225:21, 225:22, 225:23, 229:11, 230:18, 239:2, 246:18, 250:23, 255:24, 256:18, 257:10, 257:13, 259:23, 261:2, 261:6, 263:7, 263:23, 265:3, 265:17, 265:20, 280:21, 281:16, 284:17, 287:19, 292:8

**impartiality** [1] - 185:20

**impartially** [1] - 23:16

**impediment** [2] - 221:4, 239:1

**important** [8] - 33:12, 36:7, 108:25, 139:10, 155:11, 167:12, 224:17, 291:13

**importation** [8] - 53:24, 53:25, 55:8, 219:15, 228:22, 235:12, 236:6

**importers** [1] - 57:21

**imposed** [1] - 38:3

**imposition** [2] - 129:8

**impossible** [1] - 148:11

**improper** [1] - 38:5

**in-person** [1] - 37:15

**inability** [1] - 168:10

**inaccurate** [1] - 237:24

**inappropriate** [2] - 38:10, 163:19

**incarcerated** [8] - 69:17, 88:2, 131:17, 133:3, 133:10, 223:11, 224:2, 232:11

**incident** [2] - 147:15, 263:4

**inclination** [1] - 148:17

**inclined** [1] - 40:15

**include** [1] - 235:10

**included** [2] - 164:8, 177:15

**includes** [1] - 259:9

---

**including** [8] - 3:10, 22:18, 24:21, 60:20, 169:24, 175:25, 203:22, 210:9

**inclusion** [1] - 33:11

**income** [3] - 20:21, 20:22, 233:7

**inconsistent** [1] - 236:13

**inconvenience** [1] - 37:2

**incorrect** [2] - 223:13, 238:6

**increase** [1] - 123:8

**incredible** [1] - 207:11

**incriminating** [1] - 25:23

**indicate** [1] - 16:13

**indicated** [16] - 15:6, 18:1, 20:7, 21:23, 37:5, 70:24, 80:2, 122:8, 123:13, 163:16, 184:17, 224:1, 233:13, 274:6, 275:25, 283:7

**indictment** [1] - 292:24

**individual** [18] - 5:17, 16:13, 37:3, 43:20, 59:20, 70:18, 76:3, 109:6, 111:4, 111:12, 112:17, 170:2, 184:17, 186:7, 186:17, 202:13, 208:6, 237:23

**individually** [1] - 5:7

**individuals** [3] - 18:4, 88:7, 178:14

**indulgence** [1] - 170:19

**inflammation** [1] - 294:17

**influence** [2] - 64:6, 64:23

**influenced** [1] - 22:21

**inform** [2] - 8:8, 119:9

**information** [16] - 25:18, 49:23, 80:9, 80:14, 81:3, 110:3, 110:4, 110:9, 110:12, 116:2, 119:6, 176:17, 202:2, 250:7, 277:3, 282:11

**informed** [3] - 25:13, 109:16, 167:10

**informs** [1] - 118:15

**inherently** [1] - 161:9

**initial** [2] - 41:16, 147:20

**injury** [1] - 18:6

**Innocence** [1] - 99:2

**innocent** [4] - 73:11, 77:15, 254:6, 293:22

**inquire** [4] - 127:5, 179:6, 187:10, 196:13

**inquired** [1] - 179:9

**inquiries** [2] - 20:11, 20:13

**inquiry** [6] - 21:1, 179:14, 186:23, 226:15, 253:25, 293:3

**instance** [2] - 5:21, 186:7

**instances** [3] - 5:16, 163:11, 226:25

**instead** [2] - 164:10, 285:12

**institution** [1] - 155:3

**instruct** [13] - 6:15, 6:18, 7:6, 38:9, 106:7, 151:25, 153:1, 158:15, 166:24, 170:22, 172:10, 187:5, 235:10

**instructed** [16] - 23:21, 24:10, 27:11, 30:10, 51:17, 104:2, 106:9, 161:13, 173:8, 188:14, 188:17, 210:24, 213:13, 219:15, 254:9, 261:8

**instruction** [13] - 7:7, 30:13, 36:10, 51:19, 104:4, 168:10, 173:16, 186:15, 187:11, 217:16, 218:16, 235:14, 291:15

**instructions** [16] - 6:14, 23:20, 24:16, 27:12, 27:14, 104:9, 156:22, 156:24, 157:7, 169:17, 172:7, 172:22, 173:1, 187:7, 231:20, 231:22
**instructs** [9] - 7:15, 23:24, 24:13, 152:4, 159:4, 186:15, 217:13, 281:7, 291:14
**insufficient** [1] - 184:25
**insulin** [3] - 125:14, 126:16, 128:22
**insurance** [1] - 155:16
**intellectually** [1] - 23:19
**intelligent** [1] - 187:6
**intend** [2] - 19:4, 195:10
**intending** [1] - 182:15
**intention** [1] - 14:19
**intentions** [1] - 161:8
**interaction** [1] - 208:7
**interactions** [2] - 42:9, 42:10
**interest** [4] - 13:8, 14:25, 52:19, 52:21
**interested** [3] - 161:6, 228:1, 228:4
**interests** [1] - 269:5
**interfere** [1] - 16:14
**intern** [1] - 282:11
**international** [1] - 247:16
**interned** [1] - 203:22
**internet** [4] - 81:8, 162:9, 162:18, 162:19
**internship** [2] - 204:3, 204:11
**interpreted** [1] - 186:18
**INTERPRETER** [5] - 4:12, 4:13, 268:6, 268:10, 268:17
**interpreter** [2] - 4:14, 4:15
**interpreters** [2] - 4:9, 4:17
**interrupt** [5] - 11:19, 49:11, 65:11, 117:23, 195:21
**interview** [1] - 290:12
**intimidated** [2] - 64:23, 65:24
**intimidating** [4] - 63:16, 63:22, 64:14, 66:2
**intimidation** [1] - 64:4
**inventory** [1] - 114:7
**investigated** [2] - 42:1, 227:7
**Investigations** [1] - 3:22
**investigator** [1] - 42:15
**investment** [2] - 141:7, 149:25
**invitation** [1] - 290:11
**invite** [1] - 5:25
**involve** [8] - 24:25, 30:21, 31:2, 55:1, 55:5, 91:11, 151:2, 159:25
**involved** [21] - 27:21, 31:8, 31:23, 45:9, 53:6, 54:17, 57:5, 57:10, 59:10, 59:21, 66:18, 76:21, 105:16, 109:5, 111:13, 191:18, 202:13, 202:20, 240:6, 247:14, 256:18
**involvement** [5] - 22:19, 151:2, 204:8, 219:23, 236:9
**involves** [20] - 24:11, 53:23, 86:18, 88:11, 88:22, 90:17, 97:15, 122:23, 123:10, 136:1, 150:9, 160:7, 185:23, 228:21, 247:9, 251:11, 255:22,

265:14, 283:18, 284:14
**involving** [1] - 54:4
**Island** [4] - 126:21, 244:19, 274:19, 296:18
**issue** [39] - 5:11, 7:13, 23:8, 24:5, 31:10, 31:16, 33:6, 36:15, 37:20, 38:7, 44:21, 54:21, 56:19, 70:2, 127:7, 135:7, 135:25, 157:1, 160:8, 164:21, 165:4, 168:23, 169:10, 170:16, 171:8, 184:9, 184:18, 190:15, 197:19, 221:4, 229:6, 242:14, 261:20, 269:18, 288:17, 293:1, 293:13, 294:12, 295:21
**issued** [2] - 3:10, 300:12
**issues** [12] - 19:11, 138:10, 150:4, 154:10, 158:10, 184:17, 233:3, 243:18, 244:13, 251:16, 291:11, 294:14
**item** [1] - 133:1
**itself** [2] - 99:11, 207:23

## J

**jacket** [1] - 268:21
**jail** [1] - 147:17
**James** [1] - 3:19
**January** [8] - 1:7, 224:9, 245:6, 245:9, 245:15, 245:21, 253:8, 301:11
**Jersey** [3] - 133:5, 133:24, 297:5
**JFK** [1] - 137:2
**Jim** [2] - 22:21, 27:5
**job** [17] - 7:20, 48:2, 48:20, 48:25, 50:24, 66:6, 68:2, 69:10, 72:17, 140:1, 141:5, 152:24, 175:5, 175:25, 207:12, 208:20, 233:19
**jobs** [5] - 32:20, 40:5, 233:11, 289:11, 290:7
**joined** [1] - 3:18
**joining** [1] - 4:4
**judge** [25] - 7:15, 36:9, 56:13, 89:12, 99:9, 119:9, 142:16, 142:22, 151:25, 157:3, 159:1, 159:3, 172:10, 204:14, 219:15, 220:5, 231:24, 235:9, 254:9, 259:19, 262:15, 268:12, 285:6, 288:14, 294:5
**Judge** [103] - 3:4, 6:25, 7:16, 8:12, 12:5, 19:4, 21:12, 23:20, 23:21, 23:24, 24:12, 37:14, 42:22, 42:24, 45:19, 46:4, 51:16, 51:20, 57:18, 76:5, 78:8, 93:14, 93:15, 99:7, 104:2, 104:4, 104:8, 104:22, 105:3, 106:7, 106:15, 119:10, 119:15, 126:12, 130:2, 130:7, 139:12, 143:7, 146:22, 152:4, 152:10, 153:1, 153:17, 158:14, 158:18, 158:20, 164:20, 165:2, 166:23, 170:5, 173:22, 179:19, 181:23, 186:14, 187:5, 188:13, 188:17, 188:23, 190:6, 193:9, 193:17, 193:21, 193:23, 194:5, 195:3, 195:11, 195:12, 196:4, 196:17, 197:15, 203:16, 204:19, 205:7, 206:14, 213:13, 217:13, 217:22,

232:14, 241:21, 244:3, 247:25, 248:9, 249:17, 251:20, 252:11, 252:12, 257:16, 264:3, 267:18, 269:12, 269:13, 273:23, 275:8, 277:2, 281:7, 281:20, 281:21, 282:4, 282:9, 285:2, 291:14, 300:3, 301:5
**JUDGE** [1] - 1:13
**judge's** [5] - 30:12, 36:10, 173:1, 231:20, 231:21
**Judge's** [2] - 217:15, 218:16
**judgement** [1] - 64:24
**judgment** [8] - 41:12, 89:7, 110:22, 185:11, 185:19, 187:20, 187:25, 237:22
**judicial** [1] - 164:4
**jump** [1] - 233:15
**jumping** [1] - 118:1
**juries** [1] - 38:19
**jurisdiction** [3] - 6:17, 7:13, 24:6
**jurisdictional** [1] - 106:20
**juror** [222] - 5:17, 5:23, 6:13, 6:15, 6:18, 8:7, 8:25, 9:7, 9:14, 9:21, 9:22, 9:23, 9:24, 10:2, 10:4, 10:8, 10:9, 10:10, 10:15, 11:2, 11:13, 11:16, 11:21, 11:23, 13:24, 15:2, 15:18, 16:11, 17:4, 18:16, 18:22, 19:5, 19:10, 19:21, 20:18, 21:9, 22:2, 28:18, 28:19, 29:3, 29:4, 29:10, 31:16, 32:10, 32:24, 36:23, 36:25, 37:5, 38:7, 40:6, 43:12, 45:16, 46:6, 46:17, 48:2, 48:20, 51:6, 56:11, 57:13, 58:4, 58:23, 59:13, 61:19, 63:1, 64:17, 66:6, 67:1, 68:23, 70:10, 70:12, 70:15, 73:19, 73:25, 75:19, 78:5, 78:12, 79:21, 81:13, 89:1, 95:24, 96:3, 97:21, 99:15, 107:7, 107:14, 115:19, 117:3, 118:3, 118:21, 119:5, 120:15, 122:1, 122:3, 127:10, 129:22, 130:2, 132:18, 135:2, 135:14, 136:4, 136:7, 136:9, 136:18, 136:25, 137:14, 137:16, 143:5, 143:9, 143:10, 143:25, 144:19, 146:13, 148:16, 149:9, 151:21, 151:22, 152:24, 153:13, 156:24, 158:16, 162:10, 163:5, 163:9, 164:13, 164:23, 168:5, 168:8, 168:20, 168:25, 174:24, 179:23, 181:18, 182:17, 184:1, 185:10, 186:25, 189:2, 191:2, 193:17, 198:7, 206:19, 206:20, 214:12, 216:22, 219:14, 220:17, 221:8, 221:18, 221:24, 222:3, 222:8, 222:9, 223:9, 223:20, 225:21, 226:8, 226:16, 226:17, 229:15, 229:17, 230:9, 232:9, 232:19, 234:2, 234:10, 239:15, 242:2, 242:8, 242:12, 242:22, 243:16, 244:2, 247:19, 248:14, 249:4, 249:15, 251:18, 252:16, 254:23, 257:13, 257:20, 259:6, 259:23, 261:8, 264:7, 265:20, 266:1, 268:2, 268:3, 268:16, 269:16, 273:21, 275:15, 276:23, 277:1, 277:4, 280:21, 281:4, 281:10,

281:17, 282:2, 282:8, 282:15, 284:17, 286:15, 287:5, 287:8, 287:20, 288:13, 288:25, 289:10, 290:1, 290:15, 292:16, 292:17, 295:3, 295:19, 296:3, 299:6

**Juror** [245] - 15:6, 15:17, 16:12, 17:6, 19:7, 19:11, 19:20, 19:22, 21:10, 22:1, 22:3, 28:19, 29:9, 29:11, 32:11, 32:23, 38:23, 38:25, 39:1, 39:6, 39:7, 43:13, 43:24, 43:25, 45:17, 46:5, 46:8, 46:9, 46:18, 46:19, 46:24, 46:25, 47:1, 56:12, 59:5, 59:6, 59:13, 59:14, 59:15, 59:16, 61:20, 61:25, 62:1, 62:2, 67:2, 67:9, 67:10, 67:11, 70:11, 70:20, 71:3, 71:4, 75:4, 75:8, 76:8, 76:9, 78:11, 78:12, 78:18, 78:19, 84:14, 85:12, 85:19, 85:20, 85:21, 91:2, 91:22, 91:23, 92:5, 92:6, 92:7, 93:20, 93:21, 94:12, 94:13, 94:14, 98:22, 98:23, 99:8, 99:16, 99:18, 99:19, 99:25, 100:1, 100:8, 100:9, 100:10, 107:6, 107:13, 107:15, 107:18, 107:19, 107:20, 117:17, 118:2, 118:4, 120:6, 120:7, 120:10, 122:2, 125:23, 129:25, 130:16, 131:7, 131:8, 131:9, 135:13, 135:15, 137:1, 137:17, 143:20, 144:2, 144:4, 145:3, 145:23, 146:4, 146:6, 146:11, 146:18, 147:1, 147:2, 149:10, 149:17, 149:18, 149:19, 153:14, 153:18, 153:24, 153:25, 154:3, 165:19, 165:20, 171:2, 171:4, 171:5, 175:12, 175:13, 175:14, 179:24, 179:25, 182:7, 182:8, 182:9, 183:12, 184:16, 185:9, 187:16, 187:17, 188:25, 189:1, 190:25, 191:1, 191:6, 191:7, 193:2, 193:4, 193:7, 194:12, 198:4, 199:15, 199:16, 205:1, 206:22, 206:24, 206:25, 214:6, 214:7, 214:8, 215:5, 216:11, 216:18, 216:23, 216:24, 223:10, 223:21, 226:9, 226:18, 229:16, 230:8, 230:10, 232:10, 232:18, 232:20, 234:3, 234:9, 234:11, 242:9, 242:13, 242:21, 242:23, 244:1, 244:6, 249:13, 249:20, 249:21, 252:17, 252:23, 252:24, 254:24, 255:4, 255:5, 257:21, 257:25, 258:1, 259:7, 259:10, 259:11, 259:12, 264:8, 264:16, 264:17, 266:2, 266:9, 266:10, 268:19, 269:22, 270:3, 270:4, 274:1, 275:16, 275:21, 275:22, 275:23, 276:24, 277:24, 277:25, 282:15, 283:1, 284:24, 286:14, 286:17, 286:18, 287:9, 288:12, 288:22, 288:24, 289:9, 289:25, 294:1, 294:2, 295:18, 296:4, 296:5, 297:12

**JUROR** [1074] - 15:20, 15:25, 17:7, 17:10, 17:12, 17:18, 17:22, 17:25, 18:5, 18:8, 18:14, 18:17, 18:20, 19:23, 19:25, 20:3, 20:5, 20:9, 20:12, 20:19, 21:3, 21:6, 21:8, 22:4, 22:14, 23:5, 23:14, 23:25, 24:4, 24:8, 24:14, 24:22,

25:1, 25:8, 25:16, 26:5, 26:16, 26:19, 27:3, 27:25, 28:5, 28:17, 29:12, 29:14, 29:20, 30:1, 30:5, 30:8, 30:14, 30:17, 30:19, 30:22, 31:4, 31:6, 31:13, 31:19, 31:25, 32:4, 33:2, 33:8, 33:22, 34:6, 34:11, 34:13, 34:23, 35:3, 35:7, 35:15, 35:19, 36:2, 36:6, 36:12, 36:16, 36:22, 39:10, 39:14, 39:18, 39:21, 39:25, 40:8, 40:12, 40:20, 41:2, 41:6, 41:9, 41:12, 41:17, 41:23, 42:3, 42:7, 42:13, 42:17, 43:1, 43:6, 43:11, 44:5, 44:11, 44:23, 45:3, 45:6, 45:15, 46:10, 46:13, 46:16, 47:3, 47:6, 47:8, 47:13, 47:15, 47:23, 48:4, 48:8, 48:13, 48:22, 49:1, 49:4, 49:6, 49:17, 49:21, 49:25, 50:4, 50:7, 50:13, 50:16, 50:19, 50:22, 51:2, 51:4, 51:9, 51:11, 51:13, 51:22, 51:25, 52:4, 52:6, 52:8, 52:11, 52:16, 52:18, 52:21, 52:24, 53:2, 53:8, 53:14, 53:20, 54:3, 54:8, 54:11, 54:14, 54:20, 54:23, 55:1, 55:6, 55:10, 55:14, 55:19, 55:25, 56:5, 56:10, 59:24, 60:6, 60:9, 60:13, 60:17, 60:25, 61:6, 61:12, 61:18, 62:3, 62:6, 62:10, 62:14, 63:2, 63:5, 63:10, 63:12, 63:17, 63:19, 63:25, 64:2, 64:9, 64:15, 64:19, 64:22, 65:6, 65:10, 65:13, 65:20, 65:22, 65:24, 66:3, 66:7, 66:13, 66:23, 67:14, 67:18, 67:20, 67:25, 68:3, 68:6, 68:9, 68:13, 68:15, 68:18, 68:21, 68:24, 69:2, 69:5, 69:9, 69:15, 69:18, 69:21, 69:24, 70:5, 70:8, 71:8, 71:13, 71:17, 71:20, 71:23, 72:3, 72:5, 72:7, 72:11, 72:14, 72:16, 72:23, 72:25, 73:4, 73:6, 73:12, 73:14, 73:17, 73:20, 73:23, 76:13, 76:17, 76:25, 77:5, 77:13, 77:16, 77:18, 77:23, 78:1, 78:3, 78:6, 78:24, 79:6, 79:11, 79:15, 79:18, 79:24, 80:6, 80:12, 80:16, 80:19, 80:22, 81:6, 81:18, 82:2, 82:9, 82:13, 82:17, 82:22, 82:25, 83:2, 83:5, 83:10, 83:15, 83:18, 83:21, 84:2, 84:7, 84:12, 86:2, 86:6, 86:9, 86:12, 86:15, 86:19, 86:24, 87:6, 87:9, 87:12, 87:15, 87:21, 87:25, 88:4, 88:9, 88:13, 88:16, 88:24, 89:2, 89:4, 89:7, 89:14, 89:19, 89:23, 91:14, 91:17, 91:19, 92:8, 92:12, 92:15, 92:17, 92:22, 92:24, 93:4, 93:11, 93:17, 94:18, 94:24, 95:4, 95:6, 95:10, 95:16, 95:21, 95:25, 96:2, 96:6, 96:9, 96:11, 96:13, 96:18, 96:21, 97:7, 97:10, 97:14, 97:19, 97:23, 98:4, 98:9, 98:13, 98:18, 98:20, 99:20, 99:23, 100:14, 100:16, 100:18, 100:25, 101:4, 101:7, 101:15, 101:21, 101:25, 102:5, 102:10, 102:16, 102:19, 102:25, 103:8, 103:13, 103:19, 103:25, 104:5, 104:10, 104:14, 104:18, 105:6, 105:9, 105:15, 105:19, 106:1, 106:5, 106:11, 106:13, 106:18, 106:23, 107:3, 107:5, 108:1, 108:6, 108:11, 108:14, 108:17, 109:3,

109:8, 109:15, 109:20, 109:23, 110:1, 110:6, 110:11, 110:20, 110:23, 111:9, 111:16, 112:2, 112:6, 112:9, 112:14, 112:18, 112:24, 113:2, 113:4, 113:10, 113:13, 113:16, 114:2, 114:5, 114:12, 114:21, 114:23, 115:3, 115:6, 115:16, 115:20, 115:22, 116:5, 117:5, 117:9, 118:7, 118:10, 118:12, 118:20, 120:23, 121:8, 121:11, 121:17, 121:22, 122:6, 122:10, 122:14, 122:17, 122:20, 122:25, 123:2, 123:6, 123:12, 123:15, 123:17, 123:19, 123:24, 124:3, 124:6, 124:8, 124:11, 124:14, 124:18, 124:21, 124:25, 125:3, 125:7, 125:10, 125:13, 125:22, 127:13, 127:16, 127:19, 127:22, 128:4, 128:6, 128:13, 128:17, 128:21, 128:25, 129:2, 129:6, 129:12, 129:16, 129:20, 131:11, 131:15, 131:18, 131:22, 131:25, 132:3, 132:8, 132:12, 132:16, 132:19, 132:24, 133:1, 133:9, 133:12, 133:15, 133:19, 133:24, 134:1, 134:4, 134:11, 134:13, 134:15, 134:17, 134:21, 134:24, 135:19, 136:5, 136:8, 136:13, 136:16, 136:20, 137:21, 137:24, 138:1, 138:7, 138:18, 138:24, 139:1, 139:4, 139:7, 139:15, 139:18, 139:25, 140:8, 140:16, 140:24, 141:1, 141:6, 141:16, 141:19, 142:6, 142:11, 142:18, 142:20, 143:1, 143:4, 144:6, 144:11, 144:13, 144:18, 147:4, 147:6, 147:10, 147:14, 148:2, 148:9, 148:19, 148:24, 149:8, 149:20, 149:24, 150:3, 150:7, 150:10, 150:15, 150:18, 150:20, 150:25, 151:5, 151:12, 151:16, 151:18, 152:1, 152:7, 152:9, 152:12, 152:15, 152:20, 152:23, 153:3, 153:7, 153:12, 154:2, 154:5, 154:8, 154:12, 154:20, 155:1, 155:5, 155:8, 155:11, 155:15, 155:22, 156:8, 156:15, 157:5, 157:9, 157:15, 157:20, 157:23, 158:1, 158:5, 158:8, 158:11, 158:22, 159:5, 159:9, 159:15, 159:21, 159:24, 160:2, 160:5, 160:10, 160:14, 160:20, 161:5, 161:17, 161:22, 162:2, 162:12, 162:15, 162:21, 163:1, 163:4, 165:22, 165:25, 166:5, 166:9, 166:12, 166:17, 167:2, 167:5, 167:16, 167:20, 168:4, 171:7, 171:15, 171:20, 171:22, 171:25, 172:6, 172:15, 172:19, 172:24, 173:7, 173:12, 173:20, 173:25, 174:3, 174:8, 174:18, 174:23, 175:19, 175:21, 176:3, 176:8, 176:16, 176:21, 176:23, 176:25, 177:2, 177:7, 177:11, 177:14, 177:21, 178:3, 178:6, 178:10, 178:19, 178:21, 178:23, 179:1, 179:3, 179:10, 179:17, 179:22, 180:4, 180:8, 180:11, 180:13, 181:7, 181:10, 181:13, 181:15, 181:17, 188:1, 188:7, 188:17, 188:21, 189:3, 189:6, 189:9, 189:17,

189:24, 190:4, 190:11, 190:16, 190:21, 190:23, 191:4, 191:13, 191:19, 191:21, 191:23, 192:7, 192:17, 192:20, 193:1, 199:18, 199:25, 200:5, 200:12, 200:19, 201:1, 201:12, 201:18, 202:1, 202:7, 202:10, 202:17, 202:21, 202:25, 203:10, 203:14, 203:20, 204:1, 204:5, 204:13, 204:22, 204:24, 207:6, 207:11, 207:14, 207:18, 207:23, 208:3, 208:5, 208:11, 208:18, 208:24, 209:5, 209:7, 209:9, 209:12, 209:20, 210:1, 210:5, 210:13, 210:19, 210:25, 211:5, 211:10, 211:17, 211:19, 211:22, 212:3, 212:7, 212:9, 212:15, 212:21, 212:23, 213:2, 213:16, 213:24, 214:5, 214:15, 215:3, 217:2, 217:11, 217:19, 217:22, 218:2, 218:4, 218:10, 218:14, 218:17, 218:20, 219:5, 219:17, 219:19, 220:2, 220:4, 220:7, 220:12, 220:15, 220:19, 220:23, 221:1, 221:6, 221:9, 222:17, 222:22, 223:1, 224:3, 224:5, 224:13, 224:20, 224:25, 225:3, 225:5, 225:8, 225:12, 225:14, 225:22, 226:2, 226:7, 226:19, 227:2, 227:4, 227:8, 227:11, 227:17, 227:20, 227:23, 228:2, 228:8, 228:16, 228:24, 229:4, 229:8, 229:12, 229:14, 230:14, 230:20, 231:1, 231:4, 231:10, 231:12, 231:21, 232:7, 232:22, 232:25, 233:4, 233:10, 233:24, 234:1, 234:5, 234:22, 235:8, 235:17, 235:21, 236:3, 236:7, 236:11, 236:18, 236:24, 237:4, 237:12, 237:15, 237:17, 238:1, 238:16, 238:20, 238:25, 239:4, 239:8, 239:23, 240:3, 240:10, 240:16, 240:20, 240:24, 241:3, 241:8, 241:16, 242:24, 243:4, 243:7, 243:10, 244:9, 244:12, 244:15, 244:23, 245:1, 245:7, 245:10, 245:13, 245:16, 245:19, 245:23, 245:25, 246:3, 246:8, 246:11, 246:14, 246:19, 246:22, 247:4, 247:10, 247:20, 248:4, 248:6, 248:13, 249:22, 249:25, 250:3, 250:6, 250:10, 250:14, 250:19, 250:25, 251:6, 251:9, 251:14, 251:19, 252:3, 252:8, 252:15, 252:25, 253:4, 253:10, 253:13, 253:18, 254:8, 254:12, 254:17, 254:22, 255:9, 255:13, 255:16, 255:18, 256:1, 256:7, 256:11, 256:15, 256:19, 256:22, 256:25, 257:3, 257:6, 257:8, 257:11, 257:14, 257:19, 258:6, 258:9, 258:17, 258:21, 259:4, 259:15, 259:20, 259:24, 260:4, 260:11, 260:16, 260:23, 261:1, 261:10, 261:14, 261:17, 261:21, 261:25, 262:3, 262:6, 262:9, 262:15, 262:18, 262:22, 262:25, 263:2, 263:5, 263:8, 263:10, 263:16, 263:21, 263:24, 264:6, 264:21, 265:1, 265:5, 265:11, 265:18, 265:21, 265:25, 266:12,

266:14, 266:17, 266:20, 267:7, 267:12, 267:16, 267:25, 268:23, 269:4, 269:9, 270:7, 270:12, 270:14, 270:18, 270:20, 270:23, 270:25, 271:2, 271:4, 271:6, 271:9, 271:15, 271:17, 271:19, 271:25, 272:3, 272:5, 272:8, 272:11, 272:15, 272:17, 272:24, 273:3, 273:8, 273:11, 273:16, 273:20, 274:5, 274:8, 274:14, 274:18, 274:22, 274:24, 275:2, 275:6, 275:11, 275:14, 275:24, 276:3, 276:6, 276:21, 278:3, 278:10, 278:12, 278:14, 278:19, 278:22, 278:25, 279:4, 279:7, 279:9, 279:12, 279:15, 279:18, 279:21, 279:23, 280:2, 280:4, 280:11, 280:13, 280:15, 280:19, 280:22, 280:25, 281:5, 281:8, 281:12, 281:18, 281:24, 283:6, 283:11, 283:20, 283:25, 284:6, 284:10, 284:15, 284:18, 284:23, 287:11, 287:21, 287:25, 288:3, 289:1, 289:4, 289:7, 290:3, 290:9, 290:11, 290:18, 290:21, 290:24, 291:4, 291:7, 291:12, 291:18, 291:21, 291:25, 292:3, 292:6, 292:9, 292:15, 294:3, 294:10, 294:13, 294:16, 294:23, 295:1, 295:4, 295:15, 295:17, 296:8, 296:15, 296:17, 296:22, 296:25, 297:2, 297:4

**juror's** [4] - 6:10, 11:24, 57:25, 221:25

**jurors** [54] - 4:25, 8:16, 9:4, 10:18, 12:3, 12:7, 12:15, 13:5, 13:6, 13:16, 14:4, 14:17, 15:10, 41:20, 84:18, 89:11, 102:13, 105:1, 140:5, 143:22, 145:6, 145:9, 145:11, 145:13, 145:16, 145:23, 146:10, 168:18, 190:14, 193:9, 193:12, 193:13, 195:13, 195:17, 196:25, 197:2, 198:3, 206:2, 249:7, 278:24, 297:13, 298:6, 298:8, 298:18, 299:2, 299:5, 299:12, 299:16, 300:10, 300:20, 300:21, 300:22, 301:1, 301:4

**Jurors** [1] - 187:13

**JURY** [1] - 1:12

**jury** [122] - 3:3, 7:3, 11:13, 12:18, 15:24, 16:10, 20:10, 20:20, 21:7, 24:24, 28:16, 32:9, 37:5, 37:13, 38:7, 38:10, 43:10, 44:9, 45:13, 46:14, 57:3, 57:11, 63:7, 70:7, 73:24, 75:1, 77:22, 83:4, 83:24, 84:1, 84:5, 84:10, 91:20, 94:3, 94:22, 95:15, 95:19, 96:8, 96:10, 98:2, 104:19, 105:2, 112:19, 112:23, 113:1, 113:6, 113:17, 123:14, 123:21, 124:23, 129:15, 135:9, 138:22, 140:18, 141:24, 142:2, 142:7, 142:16, 145:4, 145:21, 146:4, 154:17, 155:17, 157:8, 163:22, 164:11, 173:8, 173:13, 174:15, 175:5, 175:18, 176:7, 179:15, 180:9, 180:16, 180:22, 180:23, 182:14, 189:24, 190:2, 190:5, 192:12, 195:6, 195:10, 196:24, 197:6, 197:9,

197:15, 197:24, 201:25, 214:3, 215:24, 220:25, 221:5, 225:2, 225:6, 225:15, 229:11, 233:18, 248:12, 250:5, 250:17, 258:20, 266:19, 267:23, 267:24, 271:13, 272:14, 273:15, 274:16, 276:2, 279:3, 279:25, 292:24, 293:6, 293:10, 296:14, 298:17, 300:5

**Jury** [1] - 143:5

**justice** [14] - 22:19, 22:22, 27:8, 87:20, 132:2, 148:7, 148:8, 157:12, 158:25, 164:10, 173:14, 224:12, 231:13

**justified** [2] - 81:24, 147:23

**justify** [1] - 211:13

## K

**keep** [23] - 11:17, 22:7, 47:16, 62:12, 62:20, 75:16, 82:7, 82:9, 86:3, 94:16, 112:1, 117:19, 117:25, 193:20, 196:14, 200:13, 223:25, 249:4, 253:2, 287:16, 292:5, 299:11

**kept** [1] - 185:18

**kickoff** [1] - 246:4

**kidding** [1] - 45:22

**kids** [6] - 44:14, 54:4, 54:7, 58:1, 180:19, 272:10

**killed** [1] - 263:4

**Kimberly** [1] - 4:5

**kind** [42] - 33:17, 33:22, 35:9, 36:13, 37:11, 38:6, 64:25, 65:15, 79:8, 79:20, 81:9, 111:22, 117:10, 124:7, 125:11, 127:20, 140:22, 151:21, 158:23, 173:2, 199:1, 199:3, 200:15, 200:21, 200:22, 209:4, 209:8, 220:17, 220:21, 228:19, 231:5, 239:10, 240:5, 240:15, 241:15, 244:18, 246:23, 246:24, 262:9, 272:6, 274:15

**kinds** [4] - 30:24, 66:1, 125:14, 161:15

**knapsack** [1] - 274:3

**knee** [2] - 180:13, 180:18

**knife** [1] - 147:20

**knock** [2] - 104:23, 189:11

**knowing** [1] - 263:19

**knowledge** [5] - 21:25, 176:12, 237:24, 247:18, 252:1

**knowledgeable** [1] - 154:21

**Komatireddy** [1] - 3:17

**KOMATIREDDY** [206] - 1:18, 3:16, 6:12, 8:2, 8:23, 9:16, 10:13, 10:20, 12:22, 13:1, 13:25, 14:23, 15:3, 15:6, 16:8, 16:13, 17:1, 19:3, 19:19, 21:15, 21:18, 21:23, 26:22, 28:14, 28:21, 29:7, 32:7, 32:13, 32:17, 36:19, 36:24, 37:7, 38:2, 39:4, 43:19, 43:22, 45:11, 45:25, 46:23, 56:7, 57:1, 59:7, 61:23, 67:7, 70:18, 70:21, 71:1, 75:6, 75:9, 75:13, 75:24, 78:16, 85:16, 89:25, 90:3, 90:8, 90:14, 92:3, 93:15, 94:1, 94:4, 94:6, 94:11, 99:12, 105:12, 107:15, 117:12,

118:15, 119:8, 120:12, 121:21,
125:18, 125:25, 126:23, 127:1, 127:4,
130:1, 131:1, 131:4, 135:12, 137:10,
143:16, 143:19, 143:24, 144:24,
145:10, 146:17, 146:19, 149:4,
149:15, 153:23, 162:3, 163:8, 168:7,
168:16, 169:15, 169:21, 170:19,
174:6, 175:9, 175:11, 179:19, 181:4,
182:3, 182:9, 183:10, 184:7, 184:16,
185:9, 186:3, 186:16, 186:22, 188:23,
193:7, 193:14, 193:23, 194:3, 194:25,
195:3, 195:8, 195:12, 196:17, 198:12,
204:19, 205:23, 206:10, 206:12,
213:21, 215:6, 215:9, 215:13, 215:15,
216:21, 221:12, 221:15, 221:17,
221:21, 221:25, 223:17, 225:18,
226:10, 230:1, 230:4, 230:7, 232:4,
232:13, 233:21, 242:17, 243:13,
243:22, 243:24, 248:9, 249:14,
252:12, 252:21, 253:22, 253:25,
254:3, 254:19, 255:2, 256:2, 257:16,
257:24, 259:2, 259:9, 264:1, 264:12,
266:6, 266:8, 267:20, 269:13, 269:19,
273:13, 273:24, 275:9, 275:20,
276:18, 277:14, 277:17, 277:21,
281:21, 282:7, 285:1, 286:4, 286:24,
287:3, 288:7, 288:10, 288:18, 288:21,
289:20, 289:22, 292:12, 292:22,
293:2, 293:5, 293:9, 295:13, 296:1,
297:8, 297:15, 298:3, 300:9, 300:16,
300:24, 301:5
**Kuo** [2] - 3:4, 197:15
**KUO** [1] - 1:12

## L

**Labor** [2] - 119:18, 290:23
**lack** [3] - 38:2, 206:17, 231:17
**landlord** [2] - 150:3, 184:17
**language** [2] - 4:9, 138:17
**large** [5] - 37:2, 37:6, 37:7, 55:8, 267:2
**largely** [3] - 26:24, 27:4, 27:15
**larger** [1] - 37:4
**last** [17] - 9:20, 57:7, 67:21, 84:19,
96:24, 119:18, 120:19, 130:2, 162:8,
172:25, 189:13, 224:8, 224:9, 245:17,
245:21, 295:19, 300:23
**late** [6] - 44:12, 167:22, 194:11, 215:13,
276:4, 295:5
**late-stage** [1] - 276:4
**lately** [1] - 266:23
**Latin** [1] - 235:25
**launch** [1] - 194:1
**law** [198] - 6:19, 7:15, 7:20, 7:25, 8:13,
18:8, 18:10, 22:11, 23:9, 23:22, 23:23,
24:10, 24:12, 27:7, 27:13, 30:11,
30:12, 31:15, 35:24, 35:25, 36:5, 36:8,
36:9, 42:15, 42:16, 42:23, 43:2, 47:20,
48:19, 49:5, 50:18, 51:15, 51:17,
51:19, 65:9, 69:12, 72:20, 86:14,

86:16, 86:21, 87:10, 87:19, 88:6,
88:11, 89:15, 89:17, 90:4, 90:6, 90:16,
90:18, 90:20, 91:4, 91:6, 91:8, 91:9,
91:10, 91:11, 92:25, 97:2, 97:3, 97:6,
97:16, 102:1, 102:4, 103:9, 103:11,
103:16, 103:18, 103:22, 103:24,
104:2, 104:7, 108:8, 109:5, 109:11,
109:16, 109:22, 109:25, 110:14,
122:23, 124:15, 125:4, 126:15,
127:15, 143:16, 143:18, 150:4, 152:5,
152:10, 153:1, 158:10, 158:12,
158:13, 158:15, 158:16, 158:18,
159:2, 159:3, 160:18, 161:2, 161:4,
161:19, 161:20, 161:25, 163:13,
163:14, 164:7, 164:11, 165:2, 165:3,
165:8, 165:10, 166:16, 166:24,
169:23, 173:1, 173:4, 173:6, 173:8,
173:23, 173:24, 177:18, 178:1, 178:5,
203:3, 203:6, 203:7, 203:9, 203:19,
210:17, 210:19, 210:24, 211:7,
217:14, 219:10, 219:18, 220:5, 227:6,
235:10, 235:11, 235:16, 235:17,
235:20, 236:5, 236:14, 236:20,
236:21, 236:22, 236:23, 236:25,
237:3, 237:6, 237:9, 237:10, 237:11,
237:13, 241:1, 241:2, 241:11, 241:13,
241:14, 250:23, 251:4, 256:4, 256:7,
256:12, 256:18, 259:21, 260:1, 260:3,
262:13, 265:2, 265:7, 265:8, 269:2,
269:7, 281:7, 283:8, 283:17, 283:19,
283:23, 285:7, 285:8, 285:11, 285:14,
286:6, 286:7, 291:10, 291:14, 292:23
**LAW** [2] - 1:21, 2:4
**Law** [2] - 103:4, 104:6
**law's** [1] - 92:25
**laws** [9] - 219:12, 219:25, 222:1,
222:11, 228:15, 236:6, 236:13,
236:15, 236:16
**lawyer** [12] - 30:3, 42:15, 99:1, 103:4,
103:24, 138:14, 158:7, 158:8, 158:12,
186:17, 262:13, 291:10
**lawyers** [29] - 18:2, 18:12, 36:17, 36:21,
42:21, 66:5, 71:25, 125:21, 138:12,
139:12, 144:16, 157:25, 158:2, 158:6,
158:9, 158:17, 162:25, 181:20,
190:13, 196:1, 221:19, 222:6, 222:16,
231:19, 241:25, 262:20, 265:9, 265:10
**lay** [1] - 213:7
**LCSW** [1] - 110:25
**lead** [5] - 10:4, 60:14, 60:21, 154:15,
241:11
**leads** [1] - 28:6
**lean** [2] - 39:14
**leaning** [1] - 37:19
**learn** [4] - 42:21, 52:17, 250:14, 279:12
**learned** [2] - 213:8, 241:18
**least** [8] - 34:14, 53:4, 110:13, 137:5,
145:11, 154:24, 266:25, 292:18
**leave** [20] - 15:22, 33:3, 44:1, 93:7,
180:6, 196:7, 205:14, 207:20, 208:19,

216:7, 230:12, 232:21, 234:12, 244:7,
258:2, 264:19, 278:4, 278:5, 290:5,
294:8
**leaving** [2] - 177:7, 276:6
**LEEANN** [1] - 2:8
**left** [6] - 13:11, 79:7, 144:7, 144:14,
145:18, 258:9
**legal** [34] - 30:16, 43:20, 71:24, 72:2,
88:18, 118:8, 118:10, 118:11, 118:24,
119:17, 119:22, 119:23, 119:24,
120:22, 120:24, 121:2, 121:13, 133:5,
138:10, 138:12, 138:14, 139:11,
139:13, 158:10, 160:7, 160:11, 219:4,
219:8, 219:11, 251:8, 251:12, 255:15,
265:13, 291:11
**legality** [1] - 265:15
**legalization** [1] - 219:3
**legalized** [3] - 123:4, 150:23, 228:14
**legalizing** [1] - 123:8
**legally** [1] - 118:14
**legally-mandated** [1] - 118:14
**Lehr** [1] - 162:16
**length** [2] - 118:16, 119:11
**lengthy** [1] - 15:8
**lens** [1] - 27:7
**less** [5] - 16:5, 115:5, 157:16, 158:11,
285:21
**lessen** [1] - 39:23
**lesser** [1] - 40:3
**letter** [2] - 62:21, 180:17
**letting** [17] - 16:9, 19:6, 80:1, 93:12,
110:16, 133:7, 138:11, 144:15,
177:16, 181:5, 184:10, 190:20,
193:15, 215:1, 232:5, 276:19, 295:11
**level** [7] - 64:25, 142:7, 172:7, 199:5,
201:10, 201:11, 237:6
**licensed** [3] - 296:25, 297:1, 297:3
**lie** [7] - 40:3, 40:13, 40:16, 40:21,
101:20, 161:14, 269:5
**lies** [1] - 241:17
**life** [6] - 4:22, 40:18, 129:2, 239:15,
247:23, 255:21
**life-threatening** [1] - 255:21
**likelihood** [1] - 216:7
**likely** [7] - 81:12, 126:13, 200:23, 248:8,
265:7, 279:12, 299:22
**likewise** [2] - 59:7, 236:8
**limit** [1] - 258:10
**Lindsey** [2] - 197:12, 197:23
**line** [5] - 5:6, 88:8, 238:3, 238:5, 241:18
**lined** [1] - 187:13
**lines** [2] - 8:9, 187:21
**linked** [1] - 148:18
**list** [11] - 5:4, 12:7, 12:8, 12:9, 12:10,
63:20, 101:16, 196:14, 196:15,
273:22, 300:12
**listed** [4] - 178:14, 276:4, 276:13,
277:19
**listen** [24] - 23:11, 23:15, 25:8, 25:11,
25:12, 25:19, 40:6, 48:2, 64:17, 72:21,

72:23, 82:7, 89:11, 113:18, 156:25, 162:17, 162:23, 220:9, 236:4, 236:9, 260:13, 262:23, 281:6, 291:21
**listener** [1] - 162:16
**listening** [2] - 128:9, 231:19
**listens** [2] - 25:13, 151:22
**lists** [1] - 277:10
**live** [11] - 14:8, 22:15, 25:12, 44:18, 63:13, 127:3, 128:16, 134:5, 215:22, 266:24, 266:25
**live-streamed** [1] - 14:8
**lives** [7] - 26:25, 31:7, 88:7, 124:3, 126:16, 239:18, 267:5
**living** [4] - 22:24, 105:17, 239:15, 261:12
**LLP** [1] - 2:1
**lmusolf.edny@gmail.com** [1] - 2:9
**lobby** [1] - 98:10
**locksmith** [1] - 297:3
**logical** [1] - 261:4
**lonely** [1] - 266:21
**long-time** [1] - 262:14
**look** [14] - 12:6, 32:12, 51:7, 73:7, 114:6, 155:15, 157:7, 160:24, 163:22, 178:13, 235:6, 239:16, 299:11, 301:4
**looking** [6] - 12:23, 57:15, 76:5, 130:23, 163:25, 223:17
**looks** [3] - 190:2, 194:19, 246:7
**lose** [2] - 17:23, 215:17
**loss** [2] - 20:21, 147:25
**lost** [2] - 52:19, 52:21
**love** [5] - 112:10, 112:12, 115:16, 169:9, 170:12
**Luna** [6] - 3:4, 4:2, 105:14, 202:24, 285:8, 285:14
**LUNA** [1] - 1:8
**lunch** [8] - 12:19, 143:23, 144:17, 145:2, 276:25, 277:1, 278:8, 299:14
**luncheon** [1] - 145:24
**lung** [1] - 276:4
**lying** [2] - 39:23, 161:10

## M

**ma'am** [3] - 270:8, 270:12, 273:16
**magic** [1] - 299:13
**Magistrate** [1] - 3:4
**MAGISTRATE** [1] - 1:13
**major** [1] - 16:6
**man** [2] - 152:21, 187:7
**manage** [5] - 154:17, 207:15, 244:25, 258:22, 258:23
**management** [1] - 16:4
**manager** [4] - 207:15, 258:22, 272:18, 273:4
**managerial** [1] - 258:24
**manages** [1] - 267:2
**managing** [1] - 294:25
**mandate** [1] - 104:19, 119:2
**mandated** [2] - 118:14, 120:2

**mandatory** [1] - 182:13
**Manhattan** [3] - 175:22, 229:24, 230:17
**manner** [1] - 240:1
**manslaughter** [1] - 147:16
**manual** [2] - 83:19, 83:20
**March** [13] - 35:14, 84:25, 164:16, 165:24, 166:1, 169:8, 176:15, 226:14, 229:7, 242:14, 243:2
**Mardi** [1] - 17:12
**Marieto** [1] - 3:19
**MARIETOU** [1] - 1:20
**marijuana** [11] - 30:16, 123:4, 160:7, 228:14, 228:19, 251:8, 251:12, 255:15, 255:18, 265:13, 265:16
**mark** [1] - 182:17
**marked** [1] - 15:10
**market** [1] - 246:25
**marriage** [1] - 283:12
**married** [1] - 126:24
**marshal** [1] - 264:24
**marshals** [1] - 293:7
**martial** [3] - 277:10, 277:13, 279:3
**mask** [24] - 15:21, 22:7, 33:3, 44:2, 86:3, 94:17, 100:21, 104:20, 182:12, 189:16, 189:19, 189:23, 189:25, 190:5, 190:15, 223:25, 230:12, 253:2, 258:3, 264:19, 278:5, 287:16, 290:5, 294:8
**masked** [2] - 190:17
**masks** [9] - 104:22, 105:2, 182:13, 182:16, 182:20, 182:22, 193:10, 193:13
**materials** [1] - 209:14
**maternity** [2] - 207:20, 208:19
**Matter** [1] - 301:11
**matter** [4] - 6:19, 163:17, 234:25, 239:9
**matters** [2] - 168:17, 240:11
**max** [3] - 118:8, 118:9, 125:6
**McManus** [1] - 4:4
**MCMANUS** [1] - 1:23
**mean** [78] - 14:12, 22:24, 23:17, 25:1, 25:11, 35:7, 37:20, 42:7, 45:23, 48:13, 49:25, 50:19, 50:22, 53:14, 54:25, 61:2, 63:5, 63:10, 63:12, 72:19, 73:6, 73:9, 75:8, 75:14, 76:20, 81:10, 99:10, 108:14, 108:19, 108:20, 108:21, 111:17, 111:18, 111:21, 112:7, 114:5, 122:17, 123:7, 124:11, 128:17, 129:4, 151:20, 155:8, 156:8, 158:11, 160:20, 170:10, 171:22, 189:17, 190:9, 191:23, 199:5, 200:7, 200:13, 200:17, 202:1, 218:7, 219:21, 226:15, 234:24, 235:17, 239:4, 239:7, 239:8, 239:12, 241:3, 241:4, 241:16, 247:22, 251:1, 256:19, 260:11, 260:24, 261:2, 261:21, 262:1, 288:14
**meaning** [1] - 122:19
**means** [8] - 4:19, 10:20, 10:22, 25:2, 121:2, 260:20, 292:19, 292:24
**meant** [5] - 75:9, 80:17, 116:6, 131:4,

165:7
**meantime** [2] - 107:13, 120:7
**measures** [2] - 77:9, 77:10
**mechanics** [1] - 4:24
**media** [4] - 3:10, 28:2, 80:24, 280:18
**medical** [5] - 146:12, 238:22, 253:14, 294:12, 294:13
**medication** [1] - 271:21
**meet** [1] - 298:20
**meetings** [2] - 33:23, 154:16
**meets** [1] - 163:23
**member** [5] - 7:19, 131:20, 132:6, 135:24, 136:3
**members** [15] - 4:22, 7:24, 92:23, 108:8, 128:15, 129:18, 135:23, 231:13, 241:11, 259:17, 259:18, 260:8, 283:8, 283:10, 284:12
**mental** [3] - 110:18, 111:1, 135:25
**mention** [4] - 58:18, 227:14, 228:25, 285:8
**mentioned** [28] - 35:23, 71:10, 77:19, 86:11, 88:5, 95:18, 96:16, 108:7, 109:1, 111:10, 113:5, 147:11, 148:7, 149:25, 150:11, 150:22, 152:4, 157:24, 182:11, 214:19, 220:16, 227:24, 230:16, 259:17, 264:23, 265:12, 291:24, 294:11
**merit** [1] - 18:25
**merited** [1] - 293:2
**mess** [1] - 10:14
**message** [2] - 144:7, 144:14
**met** [6] - 172:14, 219:24, 224:6, 224:14, 224:21, 224:22
**methods** [1] - 247:13
**Mexican** [3] - 80:25, 81:4, 81:12
**Mexico** [7] - 21:23, 24:21, 24:25, 77:20, 77:24, 81:9
**Mh** [1] - 17:25
**Mh-hmm** [1] - 17:25
**MICH** [3] - 127:16, 241:3, 246:8
**MICH-hmm** [3] - 127:16, 241:3, 246:8
**MICHAEL** [1] - 1:23
**Michelle** [1] - 27:5
**Michigan** [1] - 251:1
**microphone** [6] - 39:17, 135:17, 155:7, 234:21, 253:6, 287:15
**MIEDEL** [7] - 2:1, 2:3, 84:15, 84:17, 84:21, 85:1, 85:9
**Miedel** [1] - 4:3
**might** [57] - 9:13, 12:20, 14:20, 15:23, 18:25, 26:12, 30:21, 31:2, 33:6, 39:22, 40:16, 40:22, 45:19, 45:25, 52:10, 54:18, 65:15, 66:10, 67:22, 84:17, 99:4, 106:17, 115:25, 138:19, 145:7, 147:12, 148:22, 150:2, 150:5, 155:3, 159:13, 173:3, 173:9, 188:4, 190:2, 200:24, 201:24, 214:19, 233:2, 233:18, 234:19, 240:4, 241:11, 244:24, 244:25, 246:17, 247:19, 248:4, 261:20, 263:18, 277:14,

291:24, 300:21, 301:4

**military** [6] - 72:17, 256:12, 256:17, 256:20, 256:24

**mind** [26] - 41:14, 49:13, 71:2, 82:6, 82:7, 82:9, 102:9, 131:7, 133:18, 148:14, 151:22, 152:15, 159:16, 163:2, 184:24, 185:4, 191:14, 205:8, 205:12, 205:20, 205:21, 206:15, 214:1, 238:6, 292:1, 292:5

**mind-reading** [1] - 131:7

**mine** [2] - 141:7, 141:10

**minimum** [1] - 121:13

**minute** [12] - 5:5, 36:21, 56:19, 56:20, 162:25, 196:2, 221:19, 241:24, 241:25, 248:16, 288:18, 298:10

**minutes** [2] - 124:4, 297:15

**miscarriage** [3] - 158:25, 164:9, 173:14

**misheard** [1] - 161:8

**miss** [4] - 5:19, 138:10, 166:13, 288:8

**missed** [4] - 169:18, 170:8, 277:12, 279:19

**missing** [5] - 12:8, 12:12, 67:17, 208:16

**mistake** [1] - 230:7

**misunderstanding** [1] - 119:14

**misunderstood** [1] - 252:3

**mixed** [1] - 278:24

**mm-hm** [11] - 90:21, 93:11, 209:7, 211:17, 211:19, 212:23, 290:9, 291:4, 291:18, 291:25, 292:6

**mom** [8] - 92:24, 124:1, 124:6, 124:7, 270:11, 270:21, 271:21, 276:4

**mom's** [1] - 283:14

**moment** [9] - 11:24, 26:13, 36:20, 125:21, 133:10, 282:3, 282:4, 288:9, 299:12

**Monday** [9] - 17:14, 17:20, 127:23, 128:9, 133:20, 133:23, 195:1, 195:7, 195:11

**money** [4] - 57:23, 150:12, 246:23, 247:1

**month** [12] - 16:16, 33:12, 33:23, 34:3, 35:16, 35:18, 35:20, 176:15, 189:13, 245:17, 272:19, 272:21

**months** [13] - 16:3, 85:5, 85:8, 120:19, 123:22, 176:10, 180:14, 215:22, 253:13, 271:10, 271:22, 272:17, 279:17

**Moral** [2] - 134:11, 134:12

**Morning** [1] - 17:19

**morning** [59] - 3:16, 4:6, 4:7, 12:7, 12:21, 15:19, 15:20, 17:5, 17:18, 19:22, 28:25, 29:11, 29:12, 32:25, 74:2, 75:11, 76:9, 94:14, 128:21, 128:24, 146:5, 146:10, 166:7, 166:10, 167:19, 177:8, 180:19, 180:25, 187:19, 189:4, 193:4, 194:14, 195:15, 195:16, 195:20, 196:21, 196:23, 197:5, 197:21, 198:2, 244:20, 258:18, 270:13, 270:14, 270:16, 276:11, 298:2, 298:7, 298:16, 298:20, 298:22,

298:24, 299:10, 299:22, 299:25, 300:1, 300:11, 301:8

**morning's** [1] - 12:15

**most** [5] - 5:15, 57:21, 154:21, 167:12, 299:22

**mother** [13] - 92:25, 128:19, 184:9, 198:7, 199:24, 205:4, 215:18, 216:5, 232:11, 263:4, 266:16, 267:15, 270:24

**mother's** [6] - 126:10, 205:2, 214:11, 214:14, 216:2, 231:14

**mother-in-law** [1] - 92:25

**motion** [1] - 163:6

**motions** [1] - 181:21

**motive** [6] - 40:13, 40:16, 101:20, 115:25, 116:2, 161:14

**move** [14] - 11:10, 28:24, 38:22, 62:17, 77:10, 137:22, 146:16, 185:2, 201:7, 229:23, 234:20, 262:11, 267:10

**moves** [1] - 10:7

**movies** [3] - 66:17, 77:5, 247:24

**moving** [5] - 9:21, 18:24, 49:8, 52:2, 193:19

**MR** [224] - 4:2, 6:25, 7:16, 8:12, 9:18, 10:24, 11:3, 11:6, 11:9, 12:5, 14:2, 14:25, 15:15, 16:7, 16:21, 19:13, 21:12, 21:14, 28:13, 32:15, 36:18, 37:14, 39:2, 43:8, 43:15, 43:21, 45:10, 45:19, 45:22, 46:4, 46:20, 46:22, 49:9, 49:11, 56:13, 56:15, 56:18, 57:18, 57:20, 58:12, 59:2, 59:4, 61:16, 61:22, 66:20, 67:4, 70:1, 70:13, 74:3, 75:16, 75:20, 76:5, 78:8, 84:15, 84:17, 84:21, 85:1, 85:4, 85:9, 85:10, 85:14, 85:18, 90:16, 90:21, 90:23, 92:1, 93:14, 93:23, 93:25, 99:7, 99:9, 99:14, 100:2, 107:9, 117:13, 117:21, 119:1, 119:7, 119:15, 120:1, 120:9, 121:20, 125:15, 125:17, 126:12, 126:20, 130:2, 130:6, 130:11, 130:15, 130:19, 130:21, 131:3, 135:4, 135:6, 137:4, 137:13, 142:22, 143:7, 143:10, 143:12, 143:15, 144:22, 146:22, 149:3, 149:12, 153:9, 153:17, 162:6, 164:20, 168:2, 169:5, 170:5, 170:7, 170:10, 174:7, 179:20, 181:3, 181:23, 182:1, 182:24, 183:4, 183:8, 184:12, 184:14, 187:4, 192:22, 194:4, 194:9, 195:21, 195:24, 196:4, 196:6, 196:15, 198:9, 198:17, 198:20, 198:25, 199:4, 199:10, 199:12, 203:16, 204:14, 204:17, 205:6, 205:11, 205:19, 206:13, 206:16, 213:20, 214:25, 216:14, 216:17, 216:19, 223:6, 223:12, 226:12, 226:15, 229:22, 229:25, 232:3, 232:14, 232:16, 233:20, 234:8, 241:21, 242:4, 242:15, 243:12, 243:19, 244:3, 245:4, 247:25, 249:12, 249:17, 249:19, 251:20, 252:11, 252:18, 253:21, 254:25, 257:22, 259:1, 259:8, 264:3, 264:9,

266:3, 267:18, 268:4, 268:12, 269:12, 269:21, 269:23, 270:2, 273:12, 273:23, 275:8, 275:17, 276:17, 277:8, 281:20, 282:4, 282:9, 284:25, 285:6, 285:13, 285:18, 285:22, 286:11, 286:20, 287:4, 288:14, 289:12, 289:16, 292:11, 292:18, 294:5, 295:12, 295:20, 297:7, 297:18, 297:21, 299:17, 301:7

**MS** [207] - 3:16, 6:12, 8:2, 8:23, 9:16, 10:13, 10:20, 12:22, 13:1, 13:25, 14:23, 15:3, 15:6, 16:8, 16:13, 17:1, 19:3, 19:19, 21:15, 21:18, 21:23, 26:22, 28:14, 28:21, 29:7, 32:7, 32:13, 32:17, 36:19, 36:24, 37:7, 38:2, 39:4, 43:19, 43:22, 45:11, 45:25, 46:23, 56:7, 57:1, 59:7, 61:23, 67:7, 70:18, 70:21, 71:1, 75:6, 75:9, 75:13, 75:24, 78:16, 85:16, 89:25, 90:3, 90:8, 90:14, 90:24, 92:3, 93:15, 94:1, 94:4, 94:6, 94:11, 99:12, 105:12, 107:15, 117:12, 118:15, 119:8, 120:12, 121:21, 125:18, 125:25, 126:23, 127:1, 127:4, 130:1, 131:1, 131:4, 135:12, 137:10, 143:16, 143:19, 143:24, 144:24, 145:10, 146:17, 146:19, 149:4, 149:15, 153:23, 162:3, 163:8, 168:7, 168:16, 169:15, 169:21, 170:19, 174:6, 175:9, 175:11, 179:19, 181:4, 182:3, 182:9, 183:10, 184:7, 184:16, 185:9, 186:3, 186:16, 186:22, 188:23, 193:7, 193:14, 193:23, 194:3, 194:25, 195:3, 195:8, 195:12, 196:17, 198:12, 204:19, 205:23, 206:10, 206:12, 213:21, 215:6, 215:9, 215:13, 215:15, 216:21, 221:12, 221:15, 221:17, 221:21, 221:25, 223:17, 225:18, 226:10, 230:1, 230:4, 230:7, 232:4, 232:13, 233:21, 242:17, 243:13, 243:22, 243:24, 248:9, 249:14, 252:12, 252:21, 253:22, 253:25, 254:3, 254:19, 255:2, 256:2, 257:16, 257:24, 259:2, 259:9, 264:1, 264:12, 266:6, 266:8, 267:10, 267:20, 269:13, 269:19, 273:13, 273:24, 275:9, 275:20, 276:18, 277:14, 277:17, 277:21, 281:21, 282:7, 285:1, 286:4, 286:24, 287:3, 288:7, 288:10, 288:18, 288:21, 289:20, 289:22, 292:12, 292:22, 293:2, 293:5, 293:9, 295:13, 296:1, 297:8, 297:15, 298:3, 300:9, 300:16, 300:24, 301:5

**MTA** [1] - 86:11

**mugged** [4] - 103:6, 122:9, 289:17, 291:2

**multimillion** [2] - 207:16, 207:18

**multimillion-dollar-a-year** [1] - 207:16

**multiple** [4] - 163:10, 164:2, 184:8

**municipal** [2] - 199:4, 201:11

**murderers** [1] - 201:23

**MUSOLF** [1] - 2:8
**must** [2] - 106:19, 158:21
**MYSLIWIEC** [1] - 2:1

# N

**nah** [2] - 278:22, 280:19
**name** [5] - 29:21, 220:20, 220:21, 254:7, 254:13
**names** [1] - 63:20
**nanny** [1] - 233:5
**nap** [1] - 295:6
**Narcos** [3] - 52:18, 52:19, 53:5
**narcotic** [1] - 57:22
**narcotics** [5] - 47:18, 49:19, 49:20, 55:9, 219:10
**Nassau** [3] - 126:19, 126:20, 177:23
**nation** [1] - 159:2
**naturally** [1] - 285:24
**nature** [6] - 26:8, 33:13, 76:18, 158:23, 210:14, 211:14
**nearby** [2] - 127:3, 128:16
**necessarily** [4] - 41:10, 61:2, 159:22, 177:13
**necessary** [6] - 3:13, 57:8, 90:15, 216:8, 300:15, 300:22
**need** [51] - 4:10, 5:12, 5:15, 7:23, 38:15, 51:3, 62:12, 76:1, 83:10, 93:9, 101:11, 106:8, 124:7, 125:11, 126:15, 128:20, 128:22, 142:2, 145:6, 156:21, 172:13, 174:12, 174:13, 180:5, 181:7, 181:8, 194:15, 194:22, 197:3, 197:4, 200:8, 200:15, 211:13, 212:2, 213:14, 214:17, 241:25, 253:15, 258:8, 261:18, 267:24, 272:7, 280:6, 281:24, 282:1, 282:4, 298:24, 299:22, 300:7, 300:25
**needed** [11] - 24:18, 34:21, 79:23, 126:4, 129:4, 154:25, 158:24, 195:6, 233:5, 299:18, 300:17
**needing** [1] - 236:13
**needs** [13] - 12:19, 79:8, 79:17, 115:19, 124:11, 125:12, 125:13, 128:19, 171:12, 196:12, 197:20, 209:15
**negative** [3] - 22:12, 88:20, 234:24
**negatively** [1] - 155:24
**neighbor** [3] - 93:3, 103:3, 228:17
**neighborhood** [1] - 228:20
**nephews** [1] - 231:14
**nervous** [8] - 23:7, 38:12, 44:16, 45:4, 162:18, 167:7, 168:21, 174:10
**nervousness** [1] - 241:5
**Netflix** [1] - 52:14
**neutral** [1] - 111:17
**never** [14] - 43:2, 64:3, 71:2, 76:1, 96:12, 104:5, 104:7, 119:1, 150:19, 150:20, 202:25, 209:20, 210:10, 277:22
**NEW** [1] - 1:1
**new** [6] - 141:7, 176:4, 179:4, 180:15, 207:21, 208:20
**New** [17] - 1:6, 1:17, 1:18, 1:22, 2:2, 2:5, 22:21, 27:5, 103:4, 207:25, 259:18, 264:24, 297:4, 297:5
**news** [26] - 22:24, 25:6, 25:11, 25:13, 25:20, 28:4, 162:11, 162:23, 178:7, 178:11, 178:20, 208:14, 228:3, 247:21, 247:23, 263:16, 277:1, 277:20, 277:22, 278:8, 280:8, 280:9, 280:14, 280:15, 291:21
**next** [26] - 16:2, 19:7, 26:9, 28:6, 28:19, 74:7, 83:7, 116:10, 146:13, 175:22, 183:17, 190:16, 193:13, 195:15, 218:22, 233:12, 233:15, 233:19, 238:23, 249:4, 268:16, 282:15, 282:17, 284:25, 288:6, 299:9
**Next** [2] - 16:12, 21:10
**nice** [2] - 119:13, 300:3
**niece** [1] - 262:13
**night** [8] - 93:8, 167:18, 167:19, 258:15, 258:18, 258:20, 274:23, 288:16
**nights** [3] - 274:24, 274:25, 288:15
**nine** [2] - 140:11, 180:20
**nine-year-old** [1] - 180:20
**Nixon** [1] - 234:17
**no-smoking** [1] - 190:18
**nobody** [7] - 68:7, 125:1, 194:21, 201:5, 213:12, 296:23
**nominal** [1] - 120:4
**non** [6] - 66:5, 91:10, 155:23, 161:25, 190:17, 265:8
**non-law** [1] - 91:10, 161:25, 265:8
**non-lawyers** [1] - 66:5
**non-masked** [1] - 190:17
**non-profit** [1] - 155:23
**none** [3] - 35:5, 169:5, 281:20
**noon** [1] - 134:8
**normal** [3] - 11:13, 40:18, 66:4
**normally** [3] - 7:2, 186:12, 285:10
**note** [8] - 126:23, 164:15, 185:22, 186:11, 276:25, 278:8, 278:15, 293:6
**noted** [1] - 170:20
**notes** [1] - 298:4
**nothing** [10] - 30:8, 69:6, 120:12, 122:12, 166:19, 256:15, 264:3, 278:12, 278:14, 297:18
**notice** [2] - 128:16, 276:7
**noticed** [2] - 8:24, 280:7
**notification** [2] - 178:15, 280:14
**notifications** [3] - 178:8, 178:12, 280:15
**notions** [1] - 113:21
**notwithstanding** [6] - 7:25, 42:11, 56:3, 111:14, 151:8, 247:7
**nuance** [1] - 170:9
**nullification** [2] - 164:12, 170:16
**number** [61] - 5:20, 15:18, 16:11, 17:4, 18:22, 19:21, 21:9, 22:2, 28:18, 29:10, 32:10, 32:24, 36:23, 76:6, 117:17, 118:3, 118:21, 120:15, 122:1, 122:3, 125:23, 127:10, 129:22, 131:8, 135:2, 135:14, 136:25, 137:16, 143:5, 144:2, 144:19, 145:11, 221:14, 221:24, 222:8, 223:9, 223:20, 226:8, 226:17, 229:15, 230:9, 232:9, 232:19, 234:2, 234:10, 242:2, 242:8, 242:12, 242:22, 243:16, 243:24, 244:2, 248:14, 249:17, 251:20, 254:25, 268:4, 276:7, 276:8, 299:13, 300:20
**Number** [6] - 15:6, 75:23, 216:21, 293:21, 294:5, 299:6
**numbers** [1] - 299:11
**nurse** [2] - 93:8, 258:7
**nursing** [6] - 200:1, 200:6, 205:25, 206:7, 216:6, 258:10
**NYPD** [13] - 70:12, 72:13, 72:16, 72:19, 73:9, 96:17, 160:16, 160:18, 160:22, 177:19, 177:23, 243:18, 283:13

# O

**o'clock** [2] - 270:15, 270:16
**object** [2] - 99:13, 239:11
**objection** [70] - 9:24, 10:1, 10:2, 10:20, 10:21, 10:22, 10:25, 11:20, 11:22, 16:7, 16:8, 36:18, 45:10, 45:11, 66:20, 93:14, 93:15, 99:12, 99:14, 117:12, 117:13, 117:19, 121:20, 121:21, 125:15, 125:16, 149:3, 149:4, 162:3, 162:5, 181:3, 181:4, 184:10, 184:12, 192:22, 194:23, 213:19, 213:21, 214:25, 215:10, 223:6, 232:3, 232:4, 233:20, 233:21, 243:12, 243:13, 247:25, 248:9, 253:21, 254:19, 259:1, 259:2, 267:18, 267:21, 269:12, 269:13, 273:12, 273:13, 275:8, 275:9, 276:17, 295:12, 295:13, 297:7, 297:8
**objections** [1] - 194:25
**objective** [2] - 239:11, 239:13
**objectively** [1] - 23:19
**objects** [1] - 10:7
**observation** [1] - 216:1
**observations** [1] - 193:8
**observe** [1] - 161:15
**obvious** [3] - 10:19, 11:16, 163:11
**obviously** [10] - 5:22, 16:15, 22:15, 22:24, 25:11, 53:16, 138:8, 148:6, 155:11, 167:8
**occurred** [6] - 6:6, 24:11, 81:22, 90:2, 196:3, 217:8
**occurs** [1] - 6:21
**odds** [1] - 159:1
**OF** [4] - 1:1, 1:3, 1:12, 1:21
**offender** [1] - 224:7
**offense** [3] - 10:11, 51:16
**offenses** [1] - 231:15
**offered** [1] - 115:11
**Office** [7] - 130:22, 132:5, 132:11, 132:13, 151:13, 204:4, 204:6
**office** [17] - 12:19, 25:10, 84:10, 98:2, 141:1, 145:21, 179:15, 197:15, 203:4,

203:22, 203:24, 204:12, 204:15, 207:25, 225:7, 267:23, 271:21

**officer** [20] - 43:20, 49:5, 69:1, 69:6, 72:20, 87:8, 89:17, 90:6, 97:1, 97:4, 97:13, 109:1, 109:5, 161:3, 177:24, 241:4, 251:4, 256:20, 256:23

**officers** [10] - 23:9, 48:19, 86:22, 88:7, 163:13, 165:10, 236:5, 260:8, 265:7, 284:8

**offices** [2] - 176:5, 204:8

**official** [6] - 198:15, 199:9, 199:11, 199:12, 201:9, 201:14

**officials** [1] - 198:21

**often** [5] - 9:20, 25:13, 79:10, 79:12, 124:10

**old** [6] - 92:18, 148:25, 180:19, 180:20, 233:2, 271:24

**older** [2] - 104:24, 271:10

**once** [3] - 12:3, 69:7, 146:15

**One** [3] - 18:8, 126:1, 135:22

**one** [154] - 5:3, 7:4, 9:4, 10:1, 10:7, 10:25, 11:1, 11:22, 14:7, 14:18, 14:19, 15:9, 16:14, 16:15, 16:16, 16:23, 17:23, 19:7, 22:24, 22:25, 23:16, 28:21, 29:7, 36:3, 37:3, 37:11, 40:5, 40:13, 40:25, 43:23, 44:12, 45:25, 47:11, 51:6, 56:16, 59:6, 63:15, 64:18, 65:3, 65:17, 66:9, 78:21, 84:4, 84:9, 85:5, 85:22, 85:23, 88:6, 88:11, 88:15, 90:4, 91:9, 92:20, 95:1, 95:21, 96:22, 97:13, 98:16, 100:14, 101:3, 102:2, 102:6, 102:21, 107:14, 114:17, 117:21, 127:20, 128:2, 129:18, 133:1, 133:2, 134:8, 135:3, 143:18, 143:25, 152:21, 153:17, 154:14, 156:15, 162:8, 162:17, 163:20, 166:21, 169:5, 169:6, 169:7, 170:17, 172:16, 172:25, 174:8, 180:18, 181:15, 182:4, 182:8, 183:16, 185:17, 190:3, 198:21, 203:3, 210:8, 211:25, 215:17, 221:12, 221:21, 227:14, 230:1, 230:2, 230:5, 231:8, 233:7, 233:13, 236:18, 241:12, 246:15, 251:22, 253:16, 254:25, 261:7, 261:11, 261:20, 262:20, 265:12, 268:7, 268:8, 269:1, 271:20, 271:22, 271:25, 272:1, 272:12, 272:18, 276:7, 277:8, 280:7, 283:11, 283:19, 285:1, 285:2, 285:12, 286:21, 299:6, 300:9

**ones** [7] - 9:2, 45:20, 57:22, 149:16, 178:16, 249:9, 255:21

**open** [15] - 3:1, 14:13, 27:18, 57:11, 66:22, 82:7, 82:9, 108:24, 148:14, 151:22, 159:16, 164:24, 178:15, 196:12, 292:5

**operates** [1] - 238:4

**operation** [1] - 62:12

**opinion** [7] - 27:3, 27:6, 27:10, 123:7, 151:7, 202:4

**opinions** [8] - 22:11, 22:21, 27:11,

27:14, 27:18, 27:20, 91:5, 160:25

**opportunity** [4] - 21:1, 28:24, 29:1, 233:15

**opposite** [1] - 130:6

**optional** [1] - 182:13

**or..** [1] - 261:6

**order** [8] - 5:3, 13:12, 43:16, 106:8, 136:11, 171:12, 187:15, 300:12

**orders** [3] - 119:24, 208:11, 208:12

**ordinarily** [1] - 110:13

**otherwise** [9] - 13:15, 24:15, 43:23, 75:25, 98:7, 129:24, 173:9, 260:7, 262:10

**Otherwise** [1] - 13:18

**out-of-state** [1] - 245:6

**outlier** [1] - 15:11

**outside** [18] - 6:4, 6:6, 6:22, 7:10, 9:5, 11:24, 21:21, 21:24, 24:2, 24:11, 24:20, 81:22, 106:16, 125:20, 157:3, 163:2, 206:17, 217:8

**outstanding** [1] - 127:9

**overall** [3] - 8:3, 33:13, 141:2

**overcome** [1] - 262:2

**oversee** [1] - 258:24

**oversees** [1] - 176:5

**overshot** [1] - 107:24

**oversight** [1] - 141:7

**overwhelmingly** [1] - 25:3

**own** [14] - 35:8, 101:11, 108:20, 111:4, 111:18, 112:6, 114:7, 149:25, 212:11, 212:13, 295:22, 296:21, 296:22

**owner** [1] - 16:1

# P

**P.C** [1] - 1:21

**p.m** [2] - 244:19, 258:18

**Pablo** [1] - 4:13

**PABLO** [1] - 4:15

**packaging** [1] - 209:15

**packet** [1] - 178:13

**page** [11] - 37:23, 74:7, 105:12, 116:10, 183:17, 218:22, 248:19, 269:24, 269:25, 280:18, 282:17

**paid** [49] - 19:14, 20:8, 20:20, 37:13, 68:12, 68:17, 70:7, 71:11, 71:12, 71:14, 71:16, 71:17, 83:4, 83:14, 84:5, 93:22, 94:22, 98:1, 98:25, 123:14, 127:8, 129:14, 137:15, 139:17, 139:21, 140:15, 141:13, 141:14, 141:19, 142:3, 142:17, 143:21, 144:10, 155:14, 155:16, 178:25, 183:13, 197:9, 209:19, 220:17, 225:2, 225:9, 225:15, 244:17, 250:4, 250:10, 250:12, 299:19

**Pakistan** [2] - 272:18, 272:25

**paper** [5] - 13:10, 13:12, 209:14, 230:21

**paperwork** [1] - 47:17

**paralegal** [1] - 4:5

**parent** [3] - 20:22, 79:4, 124:5

**parents** [3] - 157:25, 158:1, 288:15

**parse** [1] - 171:23

**part** [11] - 16:4, 27:6, 38:10, 101:22, 105:20, 185:6, 186:11, 188:10, 239:10, 240:7

**partial** [2] - 293:6, 293:9

**partially** [3] - 151:6, 184:20, 191:11

**participate** [1] - 246:10

**particular** [22] - 21:21, 23:12, 23:13, 27:23, 31:16, 51:1, 54:1, 55:21, 55:22, 59:20, 90:18, 100:6, 111:12, 112:17, 151:3, 156:7, 157:1, 157:22, 197:22, 202:13, 202:20

**particularly** [4] - 36:6, 51:25, 155:24, 174:1

**parties** [29] - 5:17, 6:5, 7:3, 8:5, 9:21, 14:7, 14:9, 14:17, 14:20, 18:23, 26:21, 31:21, 54:22, 55:16, 56:2, 74:1, 117:18, 118:14, 189:22, 191:17, 193:25, 205:3, 205:17, 206:9, 229:9, 242:4, 249:6, 252:10, 282:7

**partner** [4] - 25:12, 25:25, 26:1, 28:7

**party** [7] - 10:7, 166:2, 166:4, 166:5, 167:22, 169:4, 277:7

**pass** [1] - 13:12

**passed** [4] - 203:21, 214:22, 215:19, 224:7

**past** [4] - 119:8, 176:9, 243:7

**Patchogue** [1] - 274:19

**patience** [7] - 127:11, 175:2, 250:1, 268:24, 296:9, 298:13, 299:1

**patiently** [2] - 195:19, 196:20

**Patrol** [1] - 103:6

**Pause** [3] - 3:23, 14:6, 14:15, 268:15, 282:5

**pause** [1] - 286:3

**paused** [1] - 164:22

**pay** [32] - 37:5, 70:1, 70:14, 75:21, 76:3, 83:8, 83:25, 95:9, 95:14, 118:24, 119:16, 119:17, 119:19, 120:3, 120:21, 121:3, 121:4, 121:6, 121:9, 121:16, 121:18, 123:23, 129:23, 130:13, 155:17, 179:9, 196:8, 197:12, 211:1, 220:24, 269:23

**paying** [2] - 113:24, 211:3

**payroll** [1] - 258:24

**PD** [1] - 283:15

**PEACE** [1] - 1:16

**Peggy** [1] - 3:4

**PEGGY** [1] - 1:12

**pending** [9] - 52:3, 52:10, 133:11, 133:12, 133:17, 203:22, 229:24, 230:16, 289:22

**people** [99] - 5:4, 6:2, 6:6, 7:18, 9:6, 12:10, 12:17, 12:20, 14:12, 18:9, 18:24, 25:4, 26:25, 31:7, 31:8, 34:4, 35:3, 35:5, 35:25, 37:8, 37:21, 40:2, 40:6, 42:20, 45:8, 50:25, 53:15, 68:6, 68:7, 68:10, 76:21, 77:2, 77:4, 77:14, 84:18, 84:22, 88:18, 90:16, 91:4, 91:6,

91:11, 98:15, 104:22, 110:14, 111:6,
112:12, 114:16, 140:6, 141:3, 141:8,
141:11, 141:23, 148:11, 148:12,
155:17, 156:1, 156:3, 157:16, 158:17,
159:7, 161:8, 164:5, 167:8, 176:6,
176:11, 179:8, 182:19, 182:20,
186:12, 186:21, 189:16, 190:3,
190:10, 190:17, 192:2, 192:8, 193:4,
193:19, 195:16, 196:8, 196:9, 196:13,
208:17, 208:21, 209:25, 219:7,
219:13, 222:2, 222:12, 222:18, 236:9,
246:5, 247:13, 260:2, 269:4, 273:1,
299:7

**People** [1] - 239:17

**people's** [2] - 19:14, 85:6

**peoples'** [1] - 31:7

**per** [1] - 175:25

**percent** [3] - 211:12, 211:18, 213:5

**peremptories** [1] - 194:17

**peremptory** [6] - 8:8, 13:3, 13:4, 13:9,
169:12, 300:2

**perfectly** [2] - 101:24, 284:20

**perhaps** [2] - 27:22, 239:19

**period** [4] - 120:24, 120:25, 121:2,
202:3

**periodically** [1] - 266:21

**permissible** [4] - 186:2, 186:3, 186:4,
186:14

**permission** [1] - 200:8

**permits** [2] - 169:24, 210:24

**person** [65] - 5:6, 10:23, 22:16, 28:23,
31:11, 37:13, 37:15, 40:10, 54:1,
55:22, 57:3, 60:15, 60:19, 60:22,
60:23, 61:2, 64:23, 65:16, 66:15,
66:16, 67:24, 82:11, 87:17, 89:18,
97:3, 97:5, 100:3, 101:10, 101:17,
101:19, 103:17, 112:25, 113:5, 117:6,
137:8, 154:18, 155:3, 159:14, 159:16,
159:20, 160:3, 172:16, 174:9, 175:2,
192:13, 198:14, 211:25, 212:12,
213:9, 213:10, 213:12, 215:21,
237:22, 238:10, 238:11, 251:5, 254:6,
254:10, 261:11, 274:21, 283:24,
284:25, 293:21

**person's** [2] - 116:2, 166:21

**Personal** [1] - 173:9

**personal** [12] - 18:5, 24:17, 27:15,
81:21, 117:10, 135:22, 160:25,
183:11, 215:16, 217:6, 237:20, 252:1

**personally** [4] - 42:6, 117:7, 173:15,
210:20

**personnel** [2] - 62:17, 151:13

**persons** [1] - 3:6

**perspective** [3] - 37:22, 293:15, 295:20

**pertaining** [1] - 150:1

**PHILIP** [1] - 1:19

**Philip** [1] - 3:18

**phone** [10] - 98:10, 123:20, 142:15,
142:20, 142:25, 178:11, 205:15,
205:21, 206:5, 280:12

**Phone** [1] - 2:8

**photographing** [1] - 3:8

**physical** [5] - 37:19, 96:22, 188:11,
211:7, 211:24

**physically** [1] - 167:23

**physiologically** [1] - 23:17

**pick** [15] - 12:16, 39:17, 92:18, 93:7,
93:9, 145:3, 145:15, 145:22, 180:25,
181:1, 195:10, 198:1, 205:16, 276:12,
300:4

**picked** [27] - 20:17, 68:23, 78:5, 79:21,
83:25, 84:1, 89:1, 96:10, 98:1, 117:3,
118:23, 132:18, 136:4, 136:18,
141:14, 178:22, 214:12, 219:14,
220:17, 258:19, 265:20, 271:12,
279:24, 280:21, 281:4, 287:20, 290:15

**picking** [3] - 93:4, 145:12, 195:9

**picture** [2] - 116:6, 160:25

**piece** [3] - 13:10, 13:12, 162:23

**Pilmar** [1] - 3:18

**PILMAR** [1] - 1:19

**place** [5] - 37:17, 77:9, 217:9, 218:9,
218:12

**placed** [1] - 208:11

**places** [4] - 15:7, 106:7, 247:13, 292:18

**plan** [1] - 209:2

**planned** [5] - 17:9, 44:25, 165:24,
242:13, 243:2

**plans** [2] - 127:24, 169:2

**play** [2] - 127:2, 192:11

**played** [2] - 177:22, 262:21

**Plaza** [1] - 1:17

**pleasant** [2] - 174:1, 198:1

**pled** [1] - 94:8

**PLLC** [1] - 2:4

**plus** [2] - 244:19, 266:4

**pod** [1] - 25:11

**pod-casts** [1] - 25:11

**podium** [49] - 5:7, 17:5, 20:1, 39:8, 44:1,
47:2, 67:12, 71:5, 76:10, 78:20, 85:21,
92:9, 94:15, 100:11, 100:15, 107:21,
107:23, 122:4, 131:10, 135:16,
135:17, 137:18, 137:23, 147:2, 155:6,
180:1, 207:1, 216:25, 223:22, 230:11,
234:12, 234:20, 244:6, 249:23, 253:5,
255:6, 259:13, 264:18, 266:11,
268:20, 270:4, 274:2, 278:1, 283:2,
287:8, 287:14, 290:1, 294:4, 296:6

**point** [18] - 11:18, 13:5, 13:21, 26:10,
34:6, 93:5, 118:1, 127:7, 135:9,
168:17, 172:25, 185:7, 218:5, 243:8,
249:5, 249:8, 293:18, 298:21

**pointing** [1] - 216:9

**Police** [3] - 86:11, 122:21, 259:18

**police** [26] - 43:20, 87:8, 87:17, 87:19,
87:23, 97:1, 97:12, 109:1, 109:5,
122:11, 122:20, 122:22, 177:20,
177:23, 203:5, 241:4, 256:13, 256:17,
256:20, 257:2, 257:3, 260:8, 269:5,
269:7, 284:8

**policies** [3] - 160:16, 182:19, 193:9

**policy** [6] - 155:17, 179:5, 182:12,
183:6, 192:4, 235:25

**political** [1] - 237:21

**polyvinyl** [1] - 209:10

**pool** [1] - 7:4

**position** [4] - 44:13, 67:21, 117:22,
184:8

**positive** [1] - 25:3

**possession** [2] - 88:2, 133:15

**possible** [18] - 10:14, 58:5, 108:25,
129:11, 166:18, 167:10, 167:18,
167:21, 167:24, 170:22, 170:24,
171:9, 171:10, 171:14, 171:21,
239:11, 248:7, 299:21

**possibly** [2] - 233:14, 246:24

**postponed** [1] - 177:1

**Potential** [1] - 129:22

**POTENTIAL** [109] - 15:20, 15:25, 17:7,
17:10, 17:12, 17:18, 17:22, 17:25,
18:5, 18:8, 18:14, 20:5, 25:8, 36:22,
117:5, 117:9, 118:7, 118:10, 118:20,
120:23, 121:11, 121:17, 121:22,
122:6, 122:14, 122:17, 122:20,
122:25, 123:2, 123:12, 123:15,
123:19, 123:24, 124:3, 124:6, 124:18,
124:21, 124:25, 125:3, 125:7, 125:10,
125:13, 125:22, 127:13, 127:16,
127:19, 127:22, 128:4, 128:6, 128:17,
128:25, 129:2, 129:6, 129:12, 129:16,
129:20, 131:11, 131:15, 131:18,
131:22, 131:25, 132:3, 132:8, 132:16,
132:24, 133:1, 133:9, 133:12, 133:19,
133:24, 134:1, 134:4, 134:11, 134:13,
134:15, 134:17, 134:24, 135:19,
136:5, 136:8, 136:13, 136:16, 136:20,
137:21, 138:1, 138:7, 138:18, 138:24,
139:4, 139:7, 139:15, 139:18, 139:25,
140:8, 140:16, 140:24, 141:1, 141:6,
141:16, 141:19, 142:6, 142:11,
142:18, 142:20, 143:4, 144:6, 144:11,
144:13, 144:18

**potential** [3] - 164:21, 174:10, 182:17

**potentially** [8] - 17:23, 29:3, 56:23,
177:3, 233:14, 236:10, 267:8, 283:19

**power** [2] - 200:6, 269:4

**practitioner** [1] - 258:8

**prebooked** [1] - 16:14

**precautions** [1] - 105:1

**preconceived** [2] - 113:21, 114:9

**preconceptions** [1] - 23:1

**predict** [1] - 205:4

**predispose** [1] - 160:21

**predisposed** [1] - 228:7

**predisposition** [2] - 185:1, 241:12

**prefer** [5] - 9:7, 31:8, 75:13, 75:16,
221:22

**preferable** [1] - 167:24

**prejudged** [1] - 202:19

**prejudiced** [1] - 202:4

**prepaid** [1] - 11:14
**prepare** [2] - 33:11, 140:3
**prepared** [1] - 75:15
**preparing** [1] - 33:23
**preplanned** [1] - 164:15
**preponderance** [1] - 284:3
**presence** [1] - 11:25
**present** [4] - 33:13, 146:8, 202:8, 249:1
**presented** [8] - 27:21, 65:8, 116:2, 171:17, 185:25, 219:22, 239:17, 252:5
**presenting** [1] - 189:22
**President** [1] - 234:17
**President's** [1] - 16:20, 17:13, 17:15
**presiding** [2] - 3:5, 183:5
**press** [1] - 185:7
**pressure** [4] - 38:6, 38:8, 124:9, 128:22
**presumed** [2] - 73:11, 77:15
**pretty** [7] - 11:15, 12:1, 13:17, 145:5, 147:15, 240:5, 271:23
**prevent** [3] - 81:2, 237:21, 259:22
**previous** [1] - 170:20
**previously** [3] - 27:4, 50:2, 136:7
**pride** [1] - 108:18
**primary** [1] - 6:13
**principle** [1] - 7:12
**prison** [1] - 231:15
**private** [5] - 14:9, 95:4, 119:3, 119:4
**privileged** [1] - 157:17
**privy** [2] - 110:3, 110:12
**probability** [1] - 293:20
**probable** [2] - 136:10, 292:24
**probation** [1] - 227:15
**probe** [3] - 58:4, 165:15, 200:21
**probed** [1] - 58:13
**probing** [1] - 117:25
**problem** [32] - 11:14, 26:7, 26:13, 48:9, 48:17, 67:17, 67:22, 70:15, 99:7, 99:9, 123:25, 139:20, 177:10, 194:10, 194:21, 206:8, 246:23, 247:2, 247:5, 249:11, 249:12, 272:10, 272:14, 272:15, 272:16, 272:23, 280:1, 283:21, 287:24, 288:11, 296:14, 301:2
**problematic** [1] - 25:23
**problems** [5] - 25:5, 30:23, 39:22, 72:9, 138:16
**procedure** [3] - 253:8, 253:14, 253:17
**proceeding** [1] - 133:17
**proceedings** [8] - 3:7, 3:9, 3:23, 4:23, 14:6, 14:15, 37:15, 286:3
**Proceedings** [1] - 2:10
**process** [7] - 13:9, 16:5, 96:24, 161:21, 196:24, 197:6, 298:21
**produce** [3] - 208:25, 209:5, 209:13
**produced** [1] - 2:11
**production** [3] - 208:25, 209:11, 209:12
**productive** [1] - 299:4
**products** [2] - 208:8, 209:16
**professional** [1] - 24:15
**professionally** [1] - 279:11

**proficiency** [1] - 70:24
**profit** [2] - 155:23, 192:2
**profiting** [1] - 192:9
**profits** [1] - 192:3
**prohibition** [1] - 3:7
**Prohibition** [1] - 191:24
**prohibitions** [1] - 3:9
**prohibitive** [1] - 233:6
**Project** [1] - 99:2
**project** [6] - 37:18, 154:13, 154:15, 174:11, 233:11
**projects** [5] - 33:16, 37:3, 37:9, 137:3, 233:12
**prompt** [1] - 11:4
**proof** [17] - 136:10, 136:15, 170:23, 170:24, 170:25, 171:9, 171:10, 171:13, 171:16, 171:18, 172:7, 186:20, 219:22, 269:18, 284:2
**proofs** [1] - 73:7
**proper** [1] - 106:3
**properly** [3] - 106:2, 106:17, 156:22
**properties** [1] - 150:1
**proposal** [3] - 12:14, 13:22, 14:21
**propose** [3] - 9:22, 146:5, 249:4
**proposed** [1] - 9:15
**proposing** [1] - 13:4
**prosecute** [4] - 6:21, 217:10, 217:15, 218:9
**prosecuted** [7] - 6:4, 42:1, 106:17, 217:14, 217:17, 218:12, 218:18
**prosecuting** [6] - 6:7, 7:11, 49:16, 49:19, 217:7, 281:2
**prosecution** [11] - 7:14, 47:20, 50:15, 73:16, 81:21, 81:24, 108:10, 109:6, 203:13, 203:25, 229:3
**prosecutions** [1] - 24:2
**prosecutor** [7] - 48:7, 50:11, 58:2, 132:6, 132:8, 132:10, 262:17
**Prosecutor's** [2] - 132:11, 132:12
**prosecutors** [2] - 262:19, 265:9
**prosecutors'** [1] - 204:8
**PROSPECTIVE** [965] - 18:17, 18:20, 19:23, 19:25, 20:3, 20:9, 20:12, 20:19, 21:3, 21:6, 21:8, 22:4, 22:14, 23:5, 23:14, 23:25, 24:4, 24:8, 24:14, 24:22, 25:1, 25:16, 26:5, 26:16, 26:19, 27:3, 27:25, 28:5, 28:17, 29:12, 29:14, 29:20, 30:1, 30:5, 30:8, 30:14, 30:17, 30:19, 30:22, 31:4, 31:6, 31:13, 31:19, 31:25, 32:4, 33:2, 33:8, 33:22, 34:6, 34:11, 34:13, 34:23, 35:3, 35:7, 35:15, 35:19, 36:2, 36:6, 36:12, 36:16, 39:10, 39:14, 39:18, 39:21, 39:25, 40:8, 40:12, 40:20, 41:2, 41:6, 41:9, 41:12, 41:17, 41:23, 42:3, 42:7, 42:13, 42:17, 43:1, 43:6, 43:11, 44:5, 44:11, 44:23, 45:3, 45:6, 45:15, 46:10, 46:13, 46:16, 47:3, 47:6, 47:8, 47:13, 47:15, 47:23, 48:4, 48:8, 48:13, 48:22, 49:1, 49:4, 49:6, 49:17, 49:21, 49:25, 50:4, 50:7,

50:13, 50:16, 50:19, 50:22, 51:2, 51:4, 51:9, 51:11, 51:13, 51:22, 51:25, 52:4, 52:6, 52:8, 52:11, 52:16, 52:18, 52:21, 52:24, 53:2, 53:8, 53:14, 53:20, 54:3, 54:8, 54:11, 54:14, 54:20, 54:23, 55:1, 55:6, 55:10, 55:14, 55:19, 55:25, 56:5, 56:10, 59:24, 60:6, 60:9, 60:13, 60:17, 60:25, 61:6, 61:12, 61:18, 62:3, 62:6, 62:10, 62:14, 63:2, 63:5, 63:10, 63:12, 63:17, 63:19, 63:25, 64:2, 64:9, 64:15, 64:19, 64:22, 65:6, 65:10, 65:13, 65:20, 65:22, 65:24, 66:3, 66:7, 66:13, 66:23, 67:14, 67:18, 67:20, 67:25, 68:3, 68:6, 68:9, 68:13, 68:15, 68:18, 68:21, 68:24, 69:2, 69:5, 69:9, 69:15, 69:18, 69:21, 69:24, 70:5, 70:8, 71:8, 71:13, 71:17, 71:20, 71:23, 72:3, 72:5, 72:7, 72:11, 72:14, 72:16, 72:23, 72:25, 73:4, 73:6, 73:12, 73:14, 73:17, 73:20, 73:23, 76:13, 76:17, 76:25, 77:5, 77:13, 77:16, 77:18, 77:23, 78:1, 78:3, 78:6, 78:24, 79:6, 79:11, 79:15, 79:18, 79:24, 80:6, 80:12, 80:16, 80:19, 80:22, 81:6, 81:18, 82:2, 82:9, 82:13, 82:17, 82:22, 82:25, 83:2, 83:5, 83:10, 83:15, 83:18, 83:21, 84:2, 84:7, 84:12, 86:2, 86:6, 86:9, 86:12, 86:15, 86:19, 86:24, 87:6, 87:9, 87:12, 87:15, 87:21, 87:25, 88:4, 88:9, 88:13, 88:16, 88:24, 89:2, 89:4, 89:7, 89:14, 89:19, 89:23, 91:14, 91:17, 91:19, 92:8, 92:12, 92:15, 92:17, 92:22, 92:24, 93:4, 93:11, 93:17, 94:18, 94:24, 95:4, 95:6, 95:10, 95:16, 95:21, 95:25, 96:2, 96:6, 96:9, 96:11, 96:13, 96:18, 96:21, 97:7, 97:10, 97:14, 97:19, 97:23, 98:4, 98:9, 98:13, 98:18, 98:20, 99:20, 99:23, 100:14, 100:16, 100:18, 100:25, 101:4, 101:7, 101:15, 101:21, 101:25, 102:5, 102:10, 102:16, 102:19, 102:25, 103:8, 103:13, 103:19, 103:25, 104:5, 104:10, 104:14, 104:18, 105:6, 105:9, 105:15, 105:19, 106:1, 106:5, 106:11, 106:13, 106:18, 106:23, 107:3, 107:5, 108:1, 108:6, 108:11, 108:14, 108:17, 109:3, 109:8, 109:15, 109:20, 109:23, 110:1, 110:6, 110:11, 110:20, 110:23, 111:9, 111:16, 112:2, 112:6, 112:9, 112:14, 112:18, 112:24, 113:2, 113:4, 113:10, 113:13, 113:16, 114:2, 114:5, 114:12, 114:21, 114:23, 115:3, 115:6, 115:16, 115:20, 115:22, 116:5, 118:12, 121:8, 122:10, 123:6, 123:17, 124:8, 124:11, 124:14, 128:13, 129:21, 132:12, 132:19, 133:15, 134:21, 137:24, 139:1, 143:1, 147:4, 147:6, 147:10, 147:14, 148:2, 148:9, 148:19, 148:24, 149:8, 149:20, 149:24, 150:3, 150:7, 150:10, 150:15, 150:18, 150:20, 150:25, 151:5, 151:12, 151:16,

151:18, 152:1, 152:7, 152:9, 152:12, 152:15, 152:20, 152:23, 153:3, 153:7, 153:12, 154:2, 154:5, 154:8, 154:12, 154:20, 155:1, 155:5, 155:8, 155:11, 155:15, 155:22, 156:8, 156:15, 157:5, 157:9, 157:15, 157:20, 157:23, 158:1, 158:5, 158:8, 158:11, 158:22, 159:5, 159:9, 159:15, 159:21, 159:24, 160:2, 160:5, 160:10, 160:14, 160:20, 161:5, 161:17, 161:22, 162:2, 162:12, 162:15, 162:21, 163:1, 163:4, 165:22, 165:25, 166:5, 166:9, 166:12, 166:17, 167:2, 167:5, 167:16, 167:20, 168:4, 171:7, 171:15, 171:20, 171:22, 171:25, 172:6, 172:15, 172:19, 172:24, 173:7, 173:12, 173:20, 173:25, 174:3, 174:8, 174:18, 174:23, 175:19, 175:21, 176:3, 176:8, 176:16, 176:21, 176:23, 176:25, 177:2, 177:7, 177:11, 177:14, 177:21, 178:3, 178:6, 178:10, 178:19, 178:21, 178:23, 179:1, 179:3, 179:10, 179:17, 179:22, 180:4, 180:8, 180:11, 180:13, 181:7, 181:10, 181:13, 181:15, 181:17, 188:1, 188:7, 188:17, 188:21, 189:3, 189:6, 189:9, 189:17, 189:24, 190:4, 190:11, 190:16, 190:21, 190:23, 191:4, 191:13, 191:19, 191:21, 191:23, 192:7, 192:17, 192:20, 193:1, 199:18, 199:25, 200:5, 200:12, 200:19, 201:1, 201:12, 201:18, 202:1, 202:7, 202:10, 202:17, 202:21, 202:25, 203:10, 203:14, 203:20, 204:1, 204:5, 204:13, 204:22, 204:24, 207:6, 207:11, 207:14, 207:18, 207:23, 208:3, 208:5, 208:11, 208:18, 208:24, 209:5, 209:7, 209:9, 209:12, 209:20, 210:1, 210:5, 210:13, 210:19, 210:25, 211:5, 211:10, 211:17, 211:19, 211:22, 212:3, 212:7, 212:9, 212:15, 212:21, 212:23, 213:2, 213:16, 213:24, 214:5, 214:15, 215:3, 217:2, 217:11, 217:19, 217:22, 218:2, 218:4, 218:10, 218:14, 218:17, 218:20, 219:5, 219:17, 219:19, 220:2, 220:4, 220:7, 220:12, 220:15, 220:19, 220:23, 221:1, 221:6, 221:9, 222:17, 222:22, 223:1, 224:3, 224:5, 224:13, 224:20, 224:25, 225:3, 225:5, 225:8, 225:12, 225:14, 225:22, 226:2, 226:7, 226:19, 227:2, 227:4, 227:8, 227:11, 227:17, 227:20, 227:23, 228:2, 228:8, 228:16, 228:24, 229:4, 229:8, 229:12, 229:14, 230:14, 230:20, 231:1, 231:4, 231:10, 231:12, 231:21, 232:7, 232:22, 232:25, 233:4, 233:10, 233:24, 234:1, 234:5, 234:22, 235:8, 235:17, 235:21, 236:3, 236:7, 236:11, 236:18, 236:24, 237:4, 237:12, 237:15, 237:17, 238:1, 238:16, 238:20, 238:25, 239:4, 239:8, 239:23,

240:3, 240:10, 240:16, 240:20, 240:24, 241:3, 241:8, 241:16, 242:24, 243:4, 243:7, 243:10, 244:9, 244:12, 244:15, 244:23, 245:1, 245:7, 245:10, 245:13, 245:16, 245:19, 245:23, 245:25, 246:3, 246:8, 246:11, 246:14, 246:19, 246:22, 247:4, 247:10, 247:20, 248:4, 248:6, 248:13, 249:22, 249:25, 250:3, 250:6, 250:10, 250:14, 250:19, 250:25, 251:6, 251:9, 251:14, 251:19, 252:3, 252:8, 252:15, 252:25, 253:4, 253:10, 253:13, 253:18, 254:8, 254:12, 254:17, 254:22, 255:9, 255:13, 255:16, 255:18, 256:1, 256:7, 256:11, 256:15, 256:19, 256:22, 256:25, 257:3, 257:6, 257:8, 257:11, 257:14, 257:19, 258:6, 258:9, 258:17, 258:21, 259:4, 259:15, 259:20, 259:24, 260:4, 260:11, 260:16, 260:23, 261:1, 261:10, 261:14, 261:17, 261:21, 261:25, 262:3, 262:6, 262:9, 262:15, 262:18, 262:22, 262:25, 263:2, 263:5, 263:8, 263:10, 263:16, 263:21, 263:24, 264:6, 264:21, 265:1, 265:5, 265:11, 265:18, 265:21, 265:25, 266:12, 266:14, 266:17, 266:20, 267:7, 267:12, 267:16, 267:25, 268:23, 269:4, 269:9, 270:7, 270:12, 270:14, 270:18, 270:20, 270:23, 270:25, 271:2, 271:4, 271:6, 271:9, 271:15, 271:17, 271:19, 271:25, 272:3, 272:5, 272:8, 272:11, 272:15, 272:17, 272:24, 273:3, 273:8, 273:11, 273:16, 273:20, 274:5, 274:8, 274:14, 274:18, 274:22, 274:24, 275:2, 275:6, 275:11, 275:14, 275:24, 276:3, 276:6, 276:21, 278:3, 278:10, 278:12, 278:14, 278:19, 278:22, 278:25, 279:4, 279:7, 279:9, 279:12, 279:15, 279:18, 279:21, 279:23, 280:2, 280:4, 280:11, 280:13, 280:15, 280:19, 280:22, 280:25, 281:5, 281:8, 281:12, 281:18, 281:24, 283:6, 283:11, 283:20, 283:25, 284:6, 284:10, 284:15, 284:18, 284:23, 287:11, 287:21, 287:25, 288:3, 289:1, 289:4, 289:7, 290:3, 290:9, 290:11, 290:18, 290:21, 290:24, 291:4, 291:7, 291:12, 291:18, 291:21, 291:25, 292:3, 292:6, 292:9, 292:15, 294:3, 294:10, 294:13, 294:16, 294:23, 295:1, 295:4, 295:15, 295:17, 296:8, 296:15, 296:17, 296:22, 296:25, 297:2, 297:4

**prospective** [45] - 76:8, 78:11, 78:19, 84:14, 85:20, 91:22, 92:6, 93:20, 94:13, 98:22, 100:9, 107:6, 107:19, 187:16, 188:25, 189:1, 190:25, 191:1, 191:6, 191:7, 193:2, 195:17, 198:3, 199:15, 205:1, 206:24, 214:6, 214:8, 215:5, 216:23, 283:1, 284:24, 286:14,

286:17, 287:9, 288:12, 289:9, 289:25, 292:16, 294:1, 295:18, 296:4, 297:12, 298:8, 299:2

**Prospective** [104] - 15:18, 16:11, 17:4, 18:22, 19:21, 21:9, 22:2, 28:18, 29:10, 32:10, 32:24, 36:23, 39:6, 43:12, 43:25, 45:16, 46:8, 46:17, 46:25, 56:11, 59:15, 61:19, 62:1, 67:1, 67:10, 70:10, 71:4, 73:25, 99:18, 99:25, 117:17, 118:3, 118:21, 120:15, 122:1, 122:3, 125:23, 127:10, 131:8, 135:2, 135:14, 136:25, 137:16, 143:5, 144:2, 144:19, 147:1, 149:9, 149:18, 153:13, 153:25, 163:5, 165:19, 168:5, 171:4, 174:24, 175:13, 179:23, 179:25, 181:18, 221:24, 222:8, 223:9, 223:20, 226:8, 226:17, 229:15, 230:9, 232:9, 232:19, 234:2, 234:10, 242:2, 242:8, 242:12, 242:22, 243:16, 244:2, 248:14, 249:20, 252:16, 252:23, 254:23, 255:5, 257:20, 258:1, 259:6, 259:11, 264:7, 264:16, 266:1, 266:9, 268:2, 268:19, 269:16, 270:3, 273:21, 274:1, 275:15, 275:22, 276:23, 277:25, 282:2, 288:24

**prospects** [1] - 290:10

**protect** [1] - 88:8

**protocol** [1] - 104:16

**proud** [1] - 299:5

**prove** [4] - 82:18, 87:3, 89:21, 171:12

**proved** [2] - 86:25, 102:23

**proven** [6] - 55:17, 55:20, 89:8, 220:10, 260:7, 261:3

**provide** [1] - 300:12

**providing** [1] - 76:20

**PTO** [1] - 177:3

**public** [12] - 14:9, 18:3, 18:9, 18:10, 18:12, 22:16, 95:3, 102:13, 119:2, 158:3, 206:3, 206:4

**publishing** [2] - 33:15, 37:2

**pull** [1] - 294:4

**pulled** [2] - 42:8, 241:4

**pulling** [1] - 33:24

**punched** [1] - 150:12

**punish** [1] - 157:16

**punished** [3] - 31:9, 31:15, 156:2

**purpose** [2] - 101:11, 234:23

**put** [54] - 6:20, 7:19, 20:2, 21:24, 22:25, 31:20, 33:18, 47:5, 55:15, 62:4, 67:12, 71:5, 76:10, 78:21, 85:23, 85:25, 88:7, 94:16, 97:2, 103:14, 107:21, 135:16, 137:18, 152:12, 154:3, 156:10, 156:12, 157:7, 157:22, 160:23, 164:6, 165:23, 175:14, 177:15, 180:2, 180:18, 199:19, 207:2, 215:25, 222:18, 222:20, 223:22, 229:19, 230:20, 237:7, 251:1, 259:13, 261:19, 261:24, 266:13, 274:3, 283:3, 287:13, 290:4

**putting** [3] - 52:11, 59:8, 163:18

## Q

**qualified** [4] - 249:7, 299:12, 299:16, 301:4
**qualify** [1] - 12:23
**quarters** [1] - 105:3
**Queens** [3] - 130:21, 132:5, 134:5
**questionable** [1] - 192:10
**questioned** [1] - 41:25
**questioning** [14] - 5:12, 5:13, 5:24, 5:25, 11:8, 137:11, 145:21, 146:20, 165:12, 168:18, 169:22, 249:10, 254:2, 267:19
**questionnaire** [42] - 8:6, 11:12, 15:7, 20:7, 22:8, 27:11, 29:16, 39:12, 46:2, 47:10, 62:9, 63:20, 64:5, 64:10, 65:14, 72:9, 76:16, 79:2, 84:25, 86:8, 92:11, 103:14, 105:21, 108:5, 122:8, 135:22, 138:3, 138:16, 147:8, 147:11, 149:23, 156:16, 164:25, 199:22, 223:24, 234:14, 255:12, 276:1, 277:5, 283:7, 292:21, 294:11
**questionnaires** [6] - 5:1, 5:14, 6:2, 8:21, 299:23, 300:11
**questions** [122] - 5:8, 5:25, 7:18, 7:23, 8:2, 8:18, 9:8, 9:13, 9:15, 11:17, 11:22, 12:2, 12:4, 13:23, 17:1, 26:21, 28:3, 28:20, 29:5, 29:16, 43:13, 44:6, 47:9, 58:9, 59:17, 61:15, 61:20, 62:8, 63:15, 64:10, 67:2, 71:10, 72:10, 73:21, 75:18, 78:7, 79:1, 84:3, 86:7, 88:6, 89:13, 89:24, 92:10, 94:19, 99:10, 100:23, 105:8, 107:12, 108:4, 108:21, 117:19, 117:20, 122:7, 130:13, 131:14, 132:25, 135:21, 135:22, 136:21, 138:3, 143:8, 143:14, 146:16, 147:7, 149:22, 153:15, 154:6, 156:9, 163:21, 164:22, 165:21, 168:1, 169:13, 171:6, 174:5, 175:16, 179:18, 185:18, 187:18, 191:9, 192:5, 199:21, 201:8, 203:2, 207:5, 210:8, 212:25, 217:4, 221:11, 223:24, 225:17, 226:10, 226:21, 230:15, 231:8, 232:24, 234:13, 241:20, 243:1, 244:11, 245:3, 246:16, 251:22, 255:11, 258:5, 259:16, 263:12, 264:23, 268:25, 269:1, 270:9, 278:7, 280:7, 283:5, 286:19, 288:2, 289:15, 292:10, 296:11, 298:19, 300:7
**quick** [5] - 8:14, 144:7, 181:19, 195:24, 287:1
**quickly** [3] - 12:20, 134:3, 233:16
**quit** [2] - 67:21, 67:24
**quite** [4] - 44:16, 147:18, 164:24, 185:22
**quote** [1] - 118:24
**quotes** [1] - 189:18

## R

**races** [1] - 156:3

**radio** [3] - 25:20, 25:25, 228:12
**rage** [1] - 147:15
**raise** [3] - 19:12, 32:2, 105:4
**raised** [1] - 126:11
**raising** [1] - 92:25
**rampant** [1] - 81:10
**rate** [1] - 145:17
**rather** [14] - 5:20, 5:24, 10:6, 30:13, 36:10, 66:11, 133:22, 163:13, 167:19, 182:21, 198:24, 233:16, 285:21, 291:15
**re** [1] - 166:4
**re-schedule** [1] - 166:4
**reach** [2] - 95:19, 200:15
**reached** [1] - 301:3
**reaction** [2] - 23:16, 65:1
**read** [19] - 22:20, 25:14, 27:5, 39:25, 44:16, 45:6, 64:5, 66:15, 66:16, 77:4, 77:5, 78:13, 80:2, 80:10, 80:14, 133:3, 162:22, 202:23, 280:16
**reading** [9] - 8:20, 27:4, 27:15, 63:20, 64:4, 64:10, 65:14, 66:17, 131:7
**ready** [8] - 75:14, 163:3, 194:16, 194:17, 194:18, 195:11, 287:6, 287:7
**real** [6] - 15:11, 30:3, 37:19, 52:25, 150:1, 247:23
**realize** [4] - 129:8, 146:7, 175:1, 180:20
**really** [32] - 8:14, 23:7, 30:24, 35:10, 36:2, 37:16, 44:14, 56:24, 62:16, 63:13, 89:9, 95:1, 103:25, 138:18, 165:3, 167:7, 168:10, 178:15, 181:10, 199:1, 207:20, 211:12, 230:22, 234:25, 235:3, 246:23, 277:22, 285:10, 286:21, 293:8, 293:18
**reason** [39] - 8:19, 10:4, 18:15, 20:16, 43:5, 48:5, 68:22, 72:18, 78:4, 82:3, 82:23, 82:25, 88:25, 94:8, 97:21, 126:7, 132:17, 132:22, 136:17, 190:14, 204:20, 215:18, 215:21, 220:13, 221:7, 225:20, 229:10, 229:17, 239:2, 257:1, 257:12, 263:22, 265:19, 280:20, 284:16, 287:2, 287:19, 292:7
**reasonable** [26] - 55:21, 82:15, 82:19, 87:1, 87:4, 89:21, 102:23, 136:11, 163:24, 170:23, 170:25, 171:11, 171:18, 172:1, 172:2, 172:4, 172:5, 172:14, 172:16, 192:13, 211:16, 211:21, 219:23, 220:11, 284:4
**reasons** [2] - 163:10, 164:13
**rebroadcasting** [1] - 3:8
**receiving** [1] - 115:24
**Recent** [1] - 143:19
**recently** [2] - 84:18, 294:16
**Recess** [1] - 74:6
**recess** [2] - 145:24, 248:18
**recognize** [1] - 37:12
**recognized** [2] - 29:20, 29:21
**record** [14] - 3:15, 3:24, 4:1, 4:10, 14:16, 58:23, 75:1, 90:11, 146:4, 146:9,

170:10, 205:7, 215:25, 249:3
**recorded** [1] - 2:10
**recording** [1] - 3:8
**recovering** [4] - 33:17, 34:9, 34:15, 38:16
**recovery** [2] - 111:5, 114:6
**reference** [3] - 185:21, 286:6, 289:22
**referenced** [1] - 27:4
**referring** [2] - 237:19, 240:2
**reflect** [1] - 164:23
**reform** [1] - 236:13
**refundable** [1] - 243:6
**refunding** [1] - 243:8
**regard** [4] - 56:3, 101:2, 187:20, 235:22
**regarding** [3] - 135:23, 150:5, 206:17
**registry** [2] - 224:7, 224:16
**regular** [5] - 32:19, 40:18, 72:1, 114:7, 239:15
**regularly** [1] - 37:12
**rehabilitated** [1] - 164:21
**REID** [2] - 1:19, 90:24
**Reid** [1] - 3:18
**relate** [1] - 197:16
**related** [4] - 29:22, 178:13, 231:15, 240:14
**relates** [1] - 19:14
**relations** [1] - 235:25
**relationship** [1] - 167:21
**released** [2] - 199:25, 216:5
**reliable** [1] - 144:20
**religious** [1] - 237:20
**remain** [1] - 254:10
**remark** [1] - 185:25
**remember** [8] - 178:12, 182:22, 224:6, 228:8, 240:4, 278:18, 299:13
**remind** [3] - 4:20, 84:18, 193:17
**reminded** [1] - 3:7
**reminder** [1] - 3:6
**remote** [1] - 3:6
**remotely** [1] - 38:4
**removal** [1] - 3:10
**remove** [1] - 277:3
**removed** [1] - 282:8
**render** [16] - 64:17, 65:3, 66:10, 77:12, 81:17, 82:16, 82:20, 87:2, 87:4, 89:22, 112:20, 113:17, 188:2, 192:15, 238:14, 260:22
**rent** [1] - 119:20
**reorganizing** [1] - 16:2
**repeat** [2] - 280:25, 281:12
**repeatedly** [2] - 185:10, 185:17
**repeating** [2] - 157:19, 175:10
**repercussions** [1] - 235:2
**replacement** [2] - 67:23, 67:25
**report** [7] - 25:21, 26:9, 28:6, 122:11, 150:16, 227:3, 278:23
**reported** [4] - 12:7, 87:17, 150:19, 150:20
**Reporter** [1] - 2:8

**reporter** [1] - 162:16
**reporting** [2] - 277:2, 278:17
**reports** [1] - 28:4
**represented** [1] - 204:10
**representing** [4] - 3:20, 51:5, 51:6, 151:13
**represents** [1] - 48:11
**reputation** [1] - 247:16
**request** [7] - 17:2, 59:8, 145:22, 146:20, 170:20, 182:4, 205:19
**requesting** [1] - 130:17
**requests** [1] - 135:11
**require** [5] - 8:17, 102:8, 163:16, 193:9, 200:4
**required** [7] - 23:6, 26:5, 27:12, 90:10, 119:16, 163:22
**requirement** [4] - 33:9, 35:15, 119:18, 165:7
**requires** [1] - 154:15
**requiring** [3] - 33:10, 168:22, 211:6
**reschedule** [3] - 35:10, 35:18, 166:6
**rescheduled** [3] - 35:13, 246:2, 253:12
**research** [1] - 33:24
**reshuffling** [1] - 193:12
**respect** [8] - 70:21, 126:2, 126:7, 182:6, 183:12, 184:16, 184:21, 193:7
**respective** [1] - 239:9
**response** [11] - 163:12, 164:6, 165:12, 184:21, 185:18, 207:8, 235:23, 246:15, 251:22, 254:4, 269:1
**responsibility** [1] - 273:5
**responsible** [6] - 33:15, 111:4, 151:7, 184:20, 191:11, 206:1
**rest** [5] - 7:3, 142:4, 145:3, 197:19, 197:22
**restricted** [1] - 3:11
**result** [4] - 3:9, 197:17, 213:9, 253:19
**resume** [4] - 146:4, 146:10, 196:23, 197:5
**resumed** [1] - 215:19
**retired** [6] - 43:19, 76:3, 78:2, 100:7, 241:2, 295:7
**returns** [1] - 292:24
**revealing** [1] - 198:19
**reversed** [1] - 270:19
**reviewed** [1] - 299:23
**rib** [3] - 33:17, 34:10, 38:17
**ride** [1] - 134:6
**ring** [1] - 247:17
**rise** [3] - 146:2, 148:10, 249:2
**risk** [1] - 216:9
**risking** [1] - 56:24
**road** [1] - 147:15
**road-rage** [1] - 147:15
**robbed** [1] - 150:12
**robberies** [2] - 226:23, 264:14
**robbery** [1] - 226:24
**Robbery** [1] - 227:15
**role** [3] - 127:2, 258:24, 262:21

**room** [20] - 4:22, 21:7, 28:16, 29:5, 32:9, 43:10, 45:13, 46:15, 65:16, 65:18, 73:24, 78:10, 91:20, 107:2, 107:3, 134:25, 214:3, 226:4, 248:12, 273:15
**roommate** [3] - 158:3, 158:19, 177:19
**roommates** [1] - 18:8
**roster** [1] - 145:20
**round** [1] - 19:1
**RPR** [1] - 2:8
**ruins** [1] - 31:6
**rule** [4] - 158:24, 165:1, 168:14, 168:21
**rule-follower** [1] - 168:14
**rules** [2] - 159:1, 185:24
**run** [6] - 126:17, 158:5, 175:23, 207:16, 296:13, 296:20
**running** [2] - 203:4, 300:21
**runs** [1] - 295:22
**Russia** [2] - 138:6, 138:8
**Ryan** [1] - 12:11

**S**

**sad** [1] - 205:11
**safe** [2] - 104:25, 145:15
**safety** [4] - 76:18, 76:21, 76:23, 105:4
**salary** [5] - 68:12, 68:17, 83:4, 178:25, 250:2
**sales** [1] - 246:4
**sample** [1] - 236:19
**sanctions** [2] - 3:10, 3:12
**Sanitation** [3] - 69:10, 69:11, 100:7
**Saritha** [1] - 3:17
**SARITHA** [1] - 1:18
**sat** [2] - 136:7, 284:1
**Saturday** [1] - 258:12
**saw** [15] - 25:20, 52:14, 162:16, 164:22, 165:23, 178:12, 178:15, 197:1, 212:13, 213:11, 288:14
**scale** [1] - 261:19
**scared** [1] - 64:23
**scary** [2] - 23:7, 66:18
**scenario** [1] - 214:23
**schedule** [8] - 34:1, 166:4, 221:2, 250:8, 250:16, 267:17, 290:12, 290:16
**scheduled** [3] - 84:19, 176:14, 177:3
**schedules** [1] - 35:8
**scheduling** [6] - 32:21, 33:6, 36:15, 229:6, 253:7, 258:24
**school** [20] - 18:9, 18:10, 44:17, 44:19, 44:20, 47:16, 88:19, 92:18, 93:6, 94:24, 95:3, 95:4, 119:2, 119:3, 119:4, 180:19, 203:19, 276:11
**schools** [2] - 58:1, 58:21
**science** [1] - 239:11
**scores** [1] - 58:20
**search** [4] - 144:21, 144:23, 184:1, 233:12
**season** [4] - 175:18, 175:22, 179:11, 274:10
**seat** [2] - 107:2, 298:9

**seated** [4] - 19:5, 28:24, 146:3, 193:17
**sec** [1] - 59:6
**second** [38] - 16:10, 45:13, 46:14, 65:6, 66:24, 84:9, 84:10, 93:19, 98:2, 98:10, 98:15, 98:17, 99:24, 117:15, 121:24, 149:6, 176:4, 182:8, 185:21, 191:3, 192:24, 214:4, 232:8, 233:25, 242:10, 248:12, 259:5, 265:13, 269:15, 273:15, 273:18, 275:13, 276:22, 277:8, 286:16, 289:5, 295:16, 297:10
**seconds** [4] - 9:14, 9:16, 10:19, 25:24
**secretary** [2] - 43:20, 132:9
**section** [2] - 190:17, 190:18
**security** [5] - 76:21, 77:9, 77:10, 271:21, 296:17
**Security** [1] - 3:21
**see** [68] - 4:23, 5:14, 8:17, 12:7, 13:6, 19:6, 34:25, 37:16, 43:19, 50:22, 53:14, 60:1, 71:19, 75:4, 76:14, 80:7, 81:9, 85:13, 91:5, 91:12, 95:23, 101:15, 114:25, 115:9, 117:18, 125:9, 127:25, 145:4, 148:15, 150:21, 162:8, 165:16, 169:19, 178:11, 179:13, 193:21, 194:22, 195:18, 196:7, 197:20, 198:23, 200:20, 201:22, 203:17, 205:17, 219:5, 235:4, 239:21, 242:20, 245:18, 249:6, 253:16, 253:20, 256:14, 256:21, 272:13, 273:6, 274:21, 277:5, 280:17, 283:20, 284:18, 286:9, 292:22, 293:23, 297:6, 298:24, 301:1
**seeing** [2] - 63:19, 212:11
**sees** [1] - 58:7
**segment** [1] - 162:17
**select** [1] - 290:13
**selected** [3] - 27:12, 104:18, 199:13
**selection** [10] - 3:3, 11:13, 12:21, 75:2, 105:2, 146:4, 196:24, 197:6, 298:17, 300:5
**SELECTION** [1] - 1:12
**Selection** [4] - 136:25, 143:6, 144:19, 248:15
**self** [2] - 147:23, 147:24
**self-defense** [2] - 147:23, 147:24
**selling** [2] - 53:15, 57:23
**send** [3] - 20:14, 134:17, 176:17
**senior** [1] - 141:10
**sense** [13] - 8:25, 10:12, 11:17, 19:2, 54:11, 54:23, 55:3, 90:23, 126:22, 160:4, 173:17, 196:7, 205:10
**sensitive** [1] - 208:25
**sent** [2] - 208:22, 208:23
**sentence** [2] - 39:23, 40:4
**separate** [2] - 60:16, 60:17
**separated** [1] - 189:25
**separately** [1] - 61:1
**sequestered** [2] - 293:6, 293:10
**serve** [9] - 70:7, 77:21, 88:8, 98:1, 176:7, 229:11, 266:19, 267:24, 281:10
**Service** [1] - 25:9

**service** [20] - 37:5, 37:13, 38:7, 38:10, 94:3, 118:17, 135:9, 138:22, 149:6, 175:5, 181:14, 197:9, 215:24, 223:7, 242:10, 243:15, 248:11, 268:1, 273:15, 275:12

**services** [3] - 45:14, 154:14, 256:9

**serving** [4] - 44:8, 154:11, 176:9, 182:14

**SESSION** [1] - 146:1

**session** [2] - 28:25, 279:17

**sessions** [1] - 32:21

**set** [19] - 27:18, 27:20, 28:10, 41:15, 50:17, 53:25, 77:11, 112:15, 113:8, 114:17, 148:21, 163:11, 183:6, 185:4, 191:16, 235:5, 239:20, 247:8, 288:10

**settled** [2] - 94:8, 217:14

**seven** [2] - 15:6, 92:17

**seven-year** [1] - 92:17

**several** [3] - 83:25, 209:25, 276:3

**severe** [1] - 173:14

**severely** [1] - 208:12

**sex** [1] - 224:7

**shall** [1] - 198:4

**Shannon** [1] - 4:4

**SHANNON** [1] - 1:23

**shape** [1] - 145:5

**sheet** [1] - 100:3

**shifts** [4] - 258:15, 258:16, 258:17, 258:20

**ship** [2] - 208:12, 209:1

**shipments** [1] - 209:1

**shop** [1] - 30:9

**short** [5] - 19:9, 117:20, 187:14, 273:22, 276:7

**shortage** [1] - 258:10

**shorter** [2] - 38:20, 126:9

**shortly** [1] - 249:5

**shot** [1] - 126:21

**show** [9] - 52:14, 52:15, 145:20, 194:8, 229:18, 229:19, 231:17, 280:6, 299:6

**showing** [1] - 155:23

**shown** [2] - 5:5, 159:16

**shows** [1] - 82:14

**shut** [1] - 28:7

**sick** [1] - 95:1

**side** [35] - 10:1, 10:20, 10:25, 11:19, 11:22, 13:11, 28:12, 47:24, 50:23, 51:6, 51:7, 53:18, 53:19, 53:20, 79:7, 88:11, 88:12, 90:4, 91:9, 91:10, 97:17, 115:13, 128:19, 145:15, 254:13, 254:16, 261:20, 262:20, 283:13, 283:14, 283:19, 285:12, 293:22

**sidebar** [11] - 13:19, 14:10, 14:12, 89:25, 90:2, 91:1, 195:25, 196:3, 196:18, 221:20, 241:21

**sidebars** [1] - 13:20

**sides** [11] - 11:20, 18:13, 23:3, 51:7, 73:15, 88:14, 97:18, 108:10, 148:23, 151:15, 246:23, 261:16, 261:18, 262:23, 265:10, 281:4

**silent** [2] - 13:9, 254:10

**silly** [1] - 154:13

**similar** [5] - 53:7, 231:5, 231:6, 235:24, 240:1

**similarly** [1] - 298:1

**simple** [1] - 266:21

**simply** [1] - 7:9

**Sinaloa** [2] - 201:23, 247:16

**single** [12] - 20:22, 57:3, 169:24, 170:2, 172:9, 172:11, 210:9, 210:10, 210:13, 210:23, 270:11, 270:21

**sister** [11] - 92:25, 124:15, 125:4, 126:15, 127:15, 167:22, 229:24, 230:16, 231:4, 262:13, 291:10

**sister's** [5] - 166:1, 167:17, 169:4, 177:23, 231:25

**sister-in-law** [6] - 124:15, 125:4, 126:15, 127:15, 262:13, 291:10

**sister-in-law's** [1] - 92:25

**sit** [30] - 20:10, 25:6, 38:19, 62:25, 64:17, 68:17, 95:15, 113:16, 117:3, 123:14, 124:23, 126:1, 141:15, 142:1, 154:23, 166:11, 177:9, 190:16, 192:12, 195:4, 195:10, 208:15, 226:3, 258:19, 271:12, 272:14, 279:24, 290:16, 296:14, 298:12

**sitting** [25] - 15:24, 24:24, 32:18, 33:21, 65:7, 95:8, 110:21, 112:19, 128:1, 129:15, 142:12, 142:23, 174:15, 174:16, 175:17, 193:20, 207:9, 220:25, 221:5, 225:2, 237:21, 250:17, 276:1, 279:3, 295:3

**situation** [21] - 64:3, 115:9, 126:3, 126:10, 152:17, 152:18, 152:19, 184:20, 191:12, 197:23, 200:23, 212:16, 214:11, 214:14, 216:2, 216:4, 216:6, 232:1, 233:9, 269:10, 274:15

**situational** [1] - 211:10

**situations** [3] - 6:12, 166:19, 267:3

**six** [8] - 87:16, 176:9, 196:9, 215:17, 229:21, 243:23, 253:13, 270:16

**size** [1] - 141:25

**skeptical** [1] - 157:12

**skepticism** [2] - 99:4, 161:11

**skip** [1] - 298:7

**skipped** [1] - 194:6

**slight** [2] - 260:6, 261:23

**slight..** [1] - 260:5

**slightly** [1] - 38:11

**slipped** [2] - 15:9, 46:1

**small** [5] - 68:9, 99:1, 208:21, 271:20, 300:20

**smaller** [1] - 209:16

**smell** [4] - 228:16, 228:17, 228:18, 228:19

**smoking** [1] - 190:18

**so...** [1] - 269:6

**social** [4] - 22:17, 58:1, 271:21, 280:17

**society** [2] - 22:24, 111:8

**sold** [1] - 55:13

**sole** [1] - 57:2

**solely** [1] - 111:4

**solve** [1] - 247:2

**solved** [1] - 246:24

**someone** [23] - 8:3, 16:15, 28:23, 32:21, 40:19, 41:25, 48:24, 48:25, 60:2, 81:22, 87:22, 90:17, 101:9, 186:19, 206:3, 215:23, 217:7, 226:22, 227:6, 246:2, 254:15, 256:3

**Sometime** [1] - 127:22

**sometime** [3] - 12:16, 35:13, 70:3

**sometimes** [17] - 42:20, 77:1, 79:11, 79:18, 85:6, 108:23, 115:14, 156:4, 157:16, 157:18, 161:7, 206:8, 211:7, 215:20, 228:12, 241:10, 244:16

**Sometimes** [1] - 244:17

**somewhat** [2] - 27:6, 190:6

**somewhere** [1] - 224:8

**son** [9] - 44:16, 44:18, 133:4, 133:17, 134:10, 203:18, 203:23, 204:2, 233:2

**son's** [1] - 204:8

**soon** [3] - 25:24, 140:17, 184:6

**sorry** [46] - 6:25, 21:13, 32:13, 49:9, 49:10, 49:11, 65:11, 80:6, 109:23, 112:24, 115:3, 128:5, 128:10, 130:2, 131:1, 131:4, 137:7, 146:7, 147:25, 153:19, 155:8, 157:20, 171:5, 172:16, 172:17, 195:21, 195:22, 196:4, 196:19, 200:3, 204:17, 213:17, 215:6, 216:17, 232:14, 245:4, 245:19, 253:22, 255:10, 267:20, 276:5, 277:16, 285:2, 288:7, 297:23, 299:7

**Sorry** [6] - 4:7, 23:6, 120:16, 223:3, 223:17, 230:7

**sort** [10] - 110:4, 111:20, 113:13, 115:11, 130:9, 164:25, 183:1, 198:21, 200:24, 285:23

**sound** [5] - 91:9, 126:4, 128:18, 173:25, 200:22

**sounded** [1] - 218:2

**sounds** [10] - 63:16, 119:15, 121:15, 125:25, 126:4, 154:13, 155:2, 172:3, 210:4, 267:4

**sources** [2] - 25:18, 277:20

**space** [1] - 189:20

**Spanish** [1] - 4:9

**speaks** [1] - 49:12

**special** [1] - 86:23

**Special** [1] - 3:19

**specific** [16] - 8:18, 26:12, 32:20, 38:15, 38:16, 163:18, 163:21, 163:25, 169:22, 189:7, 207:25, 231:11, 239:16, 239:17, 249:14, 252:7

**specifically** [4] - 54:7, 58:24, 169:23, 202:15

**spectators** [1] - 4:21

**spent** [1] - 147:17

**split** [1] - 171:23

**spoken** [1] - 42:17

**sponte** [1] - 163:24

**sports** [1] - 177:22

**spread** [1] - 298:10
**squared** [1] - 147:21
**St** [1] - 274:9
**stabbed** [2] - 147:17, 147:21
**stable** [4] - 201:2, 205:24, 215:22, 216:7
**staff** [10] - 5:2, 9:4, 84:5, 98:16, 129:18, 142:19, 197:10, 197:24, 278:23
**stage** [1] - 276:4
**stake** [1] - 167:8
**stand** [9] - 20:1, 47:4, 94:15, 113:1, 135:17, 137:23, 155:6, 178:17, 253:5
**standard** [13] - 135:10, 136:15, 163:15, 163:18, 163:23, 170:23, 170:25, 171:1, 171:11, 211:16, 284:4, 284:5
**standards** [2] - 156:4, 164:5
**standing** [5] - 39:17, 151:4, 152:21, 212:10, 212:12
**star** [1] - 100:19
**start** [48] - 5:9, 5:18, 6:9, 7:1, 9:9, 12:4, 12:12, 14:5, 22:9, 22:14, 26:14, 43:22, 44:7, 45:23, 62:11, 67:16, 79:2, 86:10, 92:4, 101:1, 103:10, 147:9, 153:15, 153:20, 154:9, 165:14, 177:13, 181:22, 194:11, 195:6, 198:8, 199:23, 206:23, 207:8, 229:7, 233:1, 234:4, 234:6, 234:15, 243:25, 244:13, 250:2, 262:1, 266:15, 268:25, 270:10, 275:1, 296:12
**started** [6] - 26:1, 28:8, 58:14, 147:15, 207:21, 227:13
**starting** [1] - 3:14
**starts** [2] - 175:22, 243:2
**state** [5] - 3:14, 3:25, 200:24, 201:11, 245:6
**statement** [10] - 60:7, 60:12, 60:15, 61:1, 61:5, 61:8, 62:11, 178:13, 234:15, 292:23
**statements** [2] - 185:23, 187:6
**Staten** [1] - 296:18
**STATES** [3] - 1:1, 1:3, 1:13
**States** [31] - 1:5, 1:16, 1:20, 3:3, 3:17, 6:4, 6:7, 6:16, 6:22, 7:10, 21:21, 24:3, 24:7, 24:12, 24:20, 27:1, 27:9, 105:14, 106:3, 106:16, 138:13, 151:11, 152:3, 156:17, 156:20, 157:2, 157:3, 191:11, 217:7, 217:8, 218:12
**States'** [1] - 235:23
**stating** [1] - 163:13
**statute** [1] - 121:2
**statutory** [1] - 119:23
**stay** [4] - 79:19, 121:18, 134:7
**staying** [1] - 298:14
**stays** [1] - 104:25
**steady** [1] - 200:24
**stenography** [1] - 2:10
**step** [18] - 10:15, 11:2, 11:24, 15:17, 34:5, 36:20, 39:7, 71:5, 92:9, 96:22, 96:24, 125:20, 163:2, 216:25, 221:19, 241:24, 278:1, 287:14
**still** [32] - 23:23, 32:19, 42:11, 64:16,

68:20, 102:7, 106:17, 123:6, 127:8, 128:4, 128:6, 128:13, 133:13, 141:20, 145:5, 148:4, 173:24, 179:4, 183:2, 188:15, 188:20, 196:9, 208:15, 212:14, 217:16, 219:16, 222:18, 254:12, 258:11, 274:17, 300:13, 300:22
**Still** [1] - 128:13
**stop** [7] - 11:8, 98:17, 133:21, 234:23, 238:17, 276:11, 284:8
**stopped** [2] - 41:25, 227:7
**stops** [1] - 42:3
**store** [4] - 272:25, 273:2, 273:7, 273:10
**story** [3] - 254:14, 254:16, 293:22
**straightforward** [2] - 121:17, 147:19
**strange** [1] - 282:12
**streamed** [1] - 14:8
**Street** [2] - 1:22, 2:2
**street** [1] - 147:22
**streets** [2] - 111:6, 234:24
**stress** [1] - 142:8
**stressful** [1] - 63:6
**stretch** [1] - 74:5
**stricken** [7] - 9:23, 9:25, 10:3, 10:8, 10:9, 11:17, 38:21
**strike** [15] - 8:4, 9:22, 10:7, 10:21, 15:12, 18:24, 28:24, 29:1, 46:1, 99:15, 163:7, 168:8, 169:11, 185:2, 215:21
**strikes** [9] - 8:8, 13:7, 13:10, 13:11, 19:1, 75:5, 75:10, 146:14, 300:2
**striking** [1] - 10:23, 28:22, 99:13
**stroke** [1] - 79:7
**strong** [6] - 30:24, 31:1, 112:12, 114:16, 228:22, 240:25
**strongly** [4] - 27:6, 155:19, 159:6, 239:19
**struck** [4] - 16:16, 163:9, 164:14, 242:5
**structural** [1] - 22:18
**struggled** [1] - 232:11
**student** [2] - 274:8, 279:9
**students** [1] - 53:11
**studied** [1] - 22:17
**study** [1] - 274:7
**stuff** [15] - 114:10, 135:16, 139:11, 148:25, 156:10, 157:17, 158:13, 160:23, 172:21, 191:24, 228:4, 249:24, 253:1, 258:25, 263:17
**sua** [1] - 163:24
**subjugate** [3] - 219:6, 222:2, 222:12
**subjugation** [1] - 219:13
**substance** [6] - 5:21, 5:22, 6:8, 30:23, 110:19, 111:1
**substances** [2] - 53:11, 53:17
**substantial** [1] - 20:21
**substantive** [1] - 221:15
**subway** [2] - 150:12, 275:7
**successful** [2] - 114:19, 161:25
**suffer** [1] - 235:2
**suffering** [1] - 229:1

**sufficient** [6] - 169:25, 186:8, 186:13, 186:19, 187:1, 188:14
**Suffolk** [4] - 47:18, 48:12, 177:23, 283:15
**sugar** [1] - 125:14
**suggest** [4] - 8:23, 9:1, 145:15, 205:7
**suggestion** [1] - 6:18
**Suite** [2] - 2:2, 2:5
**sum** [1] - 113:23
**summoned** [1] - 4:25
**summonsed** [1] - 299:7
**Sunday** [2] - 166:1, 258:13
**support** [8] - 70:12, 72:13, 72:16, 72:18, 73:5, 73:9, 134:11, 134:12
**supporting** [1] - 210:16
**supportive** [1] - 203:6
**suppose** [3] - 199:4, 269:9, 277:10
**supposed** [6] - 40:9, 84:23, 101:18, 197:7, 238:23, 243:3
**supposedly** [1] - 115:24
**surely** [1] - 63:21
**surgery** [2] - 180:7, 180:13
**surgical** [1] - 258:22
**surmise** [1] - 5:15
**surmising** [1] - 37:7
**surprises** [1] - 186:12
**surrounded** [1] - 158:17
**surrounding** [3] - 111:2, 111:5, 111:22
**survive** [1] - 189:18
**survivor** [2] - 294:18, 294:19
**switch** [1] - 128:1
**switching** [1] - 154:14
**sworn** [3] - 4:10, 4:14, 4:15
**synopsis** [1] - 44:16
**system** [14] - 22:22, 132:2, 133:5, 148:7, 148:8, 156:2, 157:12, 157:16, 164:4, 164:6, 224:12, 231:2, 231:13, 255:19

# T

**T.V** [3] - 25:20, 228:11, 247:24
**table** [1] - 4:4
**tainting** [1] - 7:3
**Tavares** [1] - 4:5
**tax** [6] - 175:18, 175:23, 176:15, 179:11, 274:9, 274:10
**teach** [1] - 279:8
**teacher** [2] - 44:9, 44:12
**team** [8] - 16:4, 20:14, 35:4, 37:8, 62:16, 141:8, 208:21, 258:23
**teammates** [1] - 177:22
**teams** [1] - 33:10
**technical** [2] - 4:8, 4:18
**technically** [1] - 258:13
**teen** [1] - 289:18
**teenager** [1] - 291:3
**teenagers** [2] - 272:4, 272:5
**television** [1] - 66:17

**ten** [2] - 144:8, 248:16
**ten-minute** [1] - 248:16
**tenants** [2] - 150:4, 184:18
**tend** [7] - 161:3, 203:25, 260:2, 267:6, 267:14, 269:1, 269:4
**tends** [1] - 157:16
**terminated** [1] - 240:8
**terms** [24] - 8:13, 9:6, 15:23, 17:1, 32:2, 32:20, 38:2, 51:15, 72:2, 76:20, 77:21, 104:15, 138:10, 138:12, 138:14, 139:13, 153:6, 154:10, 160:9, 200:4, 251:17, 266:18, 295:2, 300:4
**terrible** [1] - 60:20
**terrific** [1] - 112:11
**testified** [8] - 48:19, 49:3, 72:20, 97:3, 102:7, 102:22, 213:8, 213:10
**testifies** [2] - 101:17, 115:18
**testify** [5] - 101:9, 101:14, 109:19, 188:4, 254:5
**testifying** [4] - 97:17, 103:16, 161:3, 213:9
**testimony** [45] - 23:15, 23:19, 24:11, 40:3, 72:22, 72:25, 73:1, 86:21, 97:4, 101:23, 102:2, 102:15, 109:13, 115:5, 161:21, 165:9, 166:15, 169:24, 170:2, 170:4, 172:11, 186:8, 186:25, 187:1, 188:10, 188:13, 188:14, 203:7, 203:11, 210:9, 210:18, 210:23, 211:23, 211:24, 212:2, 212:6, 222:15, 231:18, 236:5, 251:3, 260:1, 260:14, 261:8, 265:7, 269:8
**THE** [2615] - 1:12, 1:21, 3:2, 3:24, 4:7, 4:12, 4:13, 4:16, 6:23, 7:8, 7:17, 8:10, 8:15, 9:3, 9:19, 10:17, 10:22, 10:25, 11:5, 11:7, 11:10, 12:6, 12:25, 13:2, 14:1, 14:3, 14:7, 14:16, 15:1, 15:5, 15:13, 15:16, 15:19, 15:20, 15:21, 15:25, 16:9, 16:12, 16:18, 16:25, 17:3, 17:7, 17:8, 17:10, 17:11, 17:12, 17:16, 17:18, 17:19, 17:22, 17:23, 17:25, 18:1, 18:5, 18:7, 18:8, 18:11, 18:14, 18:15, 18:17, 18:18, 18:20, 18:21, 18:23, 19:6, 19:8, 19:9, 19:16, 19:20, 19:22, 19:23, 19:24, 19:25, 20:1, 20:3, 20:4, 20:5, 20:6, 20:9, 20:10, 20:12, 20:16, 20:19, 20:25, 21:3, 21:5, 21:6, 21:7, 21:8, 21:10, 21:13, 21:17, 21:20, 22:1, 22:3, 22:4, 22:6, 22:14, 22:23, 23:5, 23:8, 23:14, 23:21, 23:25, 24:1, 24:4, 24:5, 24:8, 24:9, 24:14, 24:19, 24:22, 24:23, 25:1, 25:5, 25:8, 25:15, 25:16, 25:19, 26:5, 26:8, 26:16, 26:18, 26:19, 26:20, 26:23, 27:3, 27:17, 27:25, 28:1, 28:5, 28:11, 28:15, 28:17, 28:19, 29:1, 29:9, 29:11, 29:12, 29:13, 29:14, 29:15, 29:20, 29:24, 30:1, 30:2, 30:5, 30:7, 30:8, 30:10, 30:14, 30:15, 30:17, 30:18, 30:19, 30:20, 30:22, 31:1, 31:4, 31:5, 31:6, 31:10, 31:13, 31:14, 31:19, 31:20, 31:25, 32:1, 32:4,

32:5, 32:8, 32:11, 32:14, 32:16, 32:23, 32:25, 33:2, 33:3, 33:8, 33:19, 33:22, 34:4, 34:6, 34:9, 34:11, 34:12, 34:13, 34:18, 34:23, 35:2, 35:3, 35:5, 35:7, 35:12, 35:15, 35:17, 35:19, 35:23, 35:25, 36:2, 36:5, 36:6, 36:7, 36:12, 36:14, 36:16, 36:17, 36:20, 36:22, 37:6, 38:13, 39:3, 39:5, 39:7, 39:10, 39:11, 39:14, 39:16, 39:18, 39:19, 39:21, 39:22, 39:25, 40:5, 40:8, 40:9, 40:12, 40:13, 40:20, 40:25, 41:2, 41:3, 41:6, 41:7, 41:9, 41:10, 41:12, 41:15, 41:17, 41:19, 41:23, 41:24, 42:3, 42:5, 42:7, 42:10, 42:13, 42:14, 42:17, 42:19, 43:1, 43:4, 43:6, 43:7, 43:9, 43:11, 43:13, 43:17, 43:24, 44:1, 44:5, 44:6, 44:11, 44:22, 44:23, 45:2, 45:3, 45:5, 45:6, 45:12, 45:15, 45:17, 45:21, 46:5, 46:9, 46:10, 46:11, 46:13, 46:14, 46:16, 46:18, 46:21, 46:24, 47:1, 47:3, 47:4, 47:6, 47:7, 47:8, 47:9, 47:13, 47:14, 47:15, 47:19, 47:23, 47:25, 48:4, 48:5, 48:8, 48:10, 48:13, 48:16, 48:22, 48:23, 49:1, 49:2, 49:4, 49:5, 49:6, 49:7, 49:10, 49:14, 49:17, 49:19, 49:21, 49:22, 49:25, 50:3, 50:4, 50:6, 50:7, 50:8, 50:13, 50:14, 50:16, 50:17, 50:19, 50:21, 50:22, 50:25, 51:2, 51:3, 51:4, 51:5, 51:9, 51:10, 51:11, 51:12, 51:13, 51:14, 51:22, 51:23, 51:25, 52:1, 52:4, 52:5, 52:6, 52:7, 52:8, 52:9, 52:11, 52:13, 52:16, 52:17, 52:18, 52:20, 52:21, 52:22, 52:24, 53:1, 53:2, 53:4, 53:8, 53:10, 53:14, 53:19, 53:20, 53:23, 54:3, 54:6, 54:8, 54:9, 54:11, 54:13, 54:14, 54:16, 54:20, 54:21, 54:23, 54:25, 55:1, 55:4, 55:6, 55:7, 55:10, 55:11, 55:14, 55:15, 55:19, 55:20, 55:25, 56:2, 56:5, 56:6, 56:9, 56:10, 56:12, 56:14, 56:17, 57:19, 58:4, 58:24, 59:3, 59:5, 59:12, 59:16, 59:24, 59:25, 60:6, 60:8, 60:9, 60:11, 60:13, 60:14, 60:17, 60:19, 60:25, 61:4, 61:6, 61:7, 61:12, 61:14, 61:17, 61:18, 61:20, 61:25, 62:2, 62:3, 62:4, 62:6, 62:7, 62:10, 62:11, 62:14, 62:23, 63:2, 63:3, 63:5, 63:8, 63:10, 63:11, 63:12, 63:14, 63:17, 63:18, 63:19, 63:23, 63:25, 64:1, 64:2, 64:8, 64:9, 64:12, 64:15, 64:16, 64:19, 64:21, 64:22, 65:2, 65:6, 65:7, 65:10, 65:12, 65:13, 65:18, 65:20, 65:21, 65:22, 65:23, 65:24, 65:25, 66:3, 66:4, 66:7, 66:8, 66:13, 66:21, 66:23, 66:24, 67:2, 67:6, 67:9, 67:11, 67:14, 67:15, 67:18, 67:19, 67:20, 67:23, 67:25, 68:1, 68:3, 68:4, 68:6, 68:7, 68:9, 68:11, 68:13, 68:14, 68:15, 68:16, 68:18, 68:19, 68:21, 68:22, 68:24, 68:25, 69:2, 69:3, 69:5, 69:7, 69:9, 69:12, 69:15, 69:16, 69:18, 69:19,

69:21, 69:22, 69:24, 69:25, 70:3, 70:5, 70:6, 70:8, 70:9, 70:11, 70:15, 70:20, 70:24, 71:3, 71:5, 71:8, 71:9, 71:13, 71:15, 71:17, 71:19, 71:20, 71:21, 71:23, 71:25, 72:3, 72:4, 72:5, 72:6, 72:7, 72:8, 72:11, 72:12, 72:14, 72:15, 72:16, 72:19, 72:23, 72:24, 72:25, 73:1, 73:4, 73:5, 73:6, 73:8, 73:12, 73:13, 73:14, 73:15, 73:17, 73:18, 73:20, 73:21, 73:23, 73:24, 74:1, 74:4, 75:1, 75:3, 75:7, 75:12, 75:14, 75:17, 75:22, 76:1, 76:7, 76:9, 76:13, 76:14, 76:17, 76:19, 76:25, 77:3, 77:5, 77:7, 77:13, 77:14, 77:16, 77:17, 77:18, 77:19, 77:23, 77:25, 78:1, 78:2, 78:3, 78:4, 78:6, 78:7, 78:9, 78:12, 78:17, 78:20, 78:24, 78:25, 79:6, 79:10, 79:11, 79:13, 79:15, 79:16, 79:18, 79:21, 79:24, 79:25, 80:6, 80:7, 80:12, 80:13, 80:16, 80:17, 80:19, 80:21, 80:22, 80:23, 81:6, 81:11, 81:18, 81:19, 82:2, 82:5, 82:9, 82:10, 82:13, 82:14, 82:17, 82:18, 82:22, 82:23, 82:25, 83:1, 83:2, 83:3, 83:5, 83:8, 83:10, 83:13, 83:15, 83:16, 83:18, 83:20, 83:21, 83:23, 84:2, 84:3, 84:7, 84:9, 84:12, 84:13, 84:16, 84:20, 84:24, 85:2, 85:8, 85:12, 85:17, 85:21, 86:2, 86:3, 86:6, 86:7, 86:9, 86:10, 86:12, 86:13, 86:15, 86:16, 86:19, 86:20, 86:24, 86:25, 87:6, 87:7, 87:9, 87:10, 87:12, 87:13, 87:15, 87:16, 87:21, 87:22, 87:25, 88:1, 88:4, 88:5, 88:9, 88:10, 88:13, 88:14, 88:16, 88:17, 88:24, 88:25, 89:2, 89:3, 89:4, 89:5, 89:7, 89:10, 89:14, 89:15, 89:19, 89:20, 89:23, 89:24, 90:1, 90:7, 90:12, 90:20, 90:22, 90:25, 91:2, 91:14, 91:15, 91:17, 91:18, 91:19, 91:20, 91:23, 92:2, 92:4, 92:7, 92:8, 92:9, 92:12, 92:13, 92:15, 92:16, 92:17, 92:20, 92:22, 92:23, 92:24, 93:2, 93:4, 93:9, 93:11, 93:12, 93:16, 93:17, 93:18, 93:21, 93:24, 94:2, 94:5, 94:9, 94:12, 94:14, 94:18, 94:19, 94:24, 95:3, 95:4, 95:5, 95:6, 95:7, 95:10, 95:13, 95:16, 95:17, 95:21, 95:23, 95:25, 96:1, 96:2, 96:4, 96:6, 96:8, 96:9, 96:10, 96:11, 96:12, 96:13, 96:14, 96:18, 96:19, 96:21, 96:25, 97:7, 97:9, 97:10, 97:11, 97:14, 97:15, 97:19, 97:20, 97:23, 97:24, 98:4, 98:6, 98:9, 98:12, 98:13, 98:14, 98:18, 98:19, 98:20, 98:21, 98:23, 99:8, 99:15, 99:19, 99:20, 99:21, 99:23, 99:24, 100:1, 100:5, 100:10, 100:14, 100:15, 100:16, 100:17, 100:18, 100:20, 100:25, 101:1, 101:4, 101:5, 101:7, 101:13, 101:15, 101:17, 101:21, 101:22, 101:25, 102:1, 102:5, 102:6, 102:10, 102:14, 102:16,

102:17, 102:19, 102:21, 102:25,
103:1, 103:8, 103:9, 103:13, 103:15,
103:19, 103:23, 103:25, 104:1, 104:5,
104:8, 104:10, 104:11, 104:14,
104:17, 104:18, 104:25, 105:6, 105:7,
105:9, 105:10, 105:13, 105:15,
105:16, 105:19, 105:24, 106:1, 106:2,
106:5, 106:6, 106:11, 106:12, 106:13,
106:15, 106:18, 106:20, 106:23,
106:24, 107:3, 107:4, 107:5, 107:7,
107:11, 107:17, 107:20, 107:23,
107:24, 108:1, 108:3, 108:6, 108:7,
108:11, 108:12, 108:14, 108:16,
108:17, 108:23, 109:3, 109:4, 109:8,
109:10, 109:15, 109:18, 109:20,
109:21, 109:23, 109:24, 110:1, 110:5,
110:6, 110:7, 110:11, 110:16, 110:20,
110:21, 110:23, 111:7, 111:9, 111:10,
111:16, 111:25, 112:2, 112:3, 112:6,
112:8, 112:9, 112:11, 112:14, 112:15,
112:18, 112:22, 112:24, 112:25,
113:2, 113:3, 113:4, 113:8, 113:10,
113:12, 113:13, 113:15, 113:16,
114:1, 114:2, 114:4, 114:5, 114:11,
114:12, 114:14, 114:21, 114:22,
114:23, 114:24, 115:3, 115:4, 115:6,
115:15, 115:16, 115:18, 115:20,
115:21, 115:22, 116:1, 116:5, 116:8,
117:2, 117:5, 117:8, 117:9, 117:14,
117:18, 117:24, 118:4, 118:7, 118:9,
118:10, 118:11, 118:12, 118:13,
118:18, 118:20, 118:22, 119:4,
119:13, 119:21, 120:5, 120:11,
120:14, 120:16, 120:23, 121:1, 121:8,
121:10, 121:11, 121:15, 121:17,
121:22, 121:23, 122:2, 122:4, 122:6,
122:7, 122:10, 122:11, 122:14,
122:15, 122:17, 122:19, 122:20,
122:21, 122:25, 123:1, 123:2, 123:3,
123:6, 123:9, 123:12, 123:13, 123:15,
123:16, 123:17, 123:18, 123:19,
123:20, 123:24, 124:2, 124:3, 124:5,
124:6, 124:7, 124:8, 124:10, 124:11,
124:13, 124:14, 124:17, 124:18,
124:19, 124:21, 124:23, 124:25,
125:1, 125:3, 125:5, 125:7, 125:9,
125:10, 125:11, 125:13, 125:16,
125:20, 125:22, 125:24, 126:19,
126:25, 127:3, 127:6, 127:11, 127:13,
127:14, 127:16, 127:17, 127:19,
127:21, 127:22, 127:25, 128:4, 128:5,
128:6, 128:8, 128:13, 128:15, 128:17,
128:18, 128:21, 128:23, 128:25,
129:1, 129:2, 129:4, 129:6, 129:7,
129:12, 129:13, 129:16, 129:17,
129:20, 129:21, 129:23, 130:4, 130:8,
130:12, 130:16, 130:20, 130:23,
131:6, 131:9, 131:11, 131:13, 131:15,
131:16, 131:18, 131:19, 131:22,
131:23, 131:25, 132:1, 132:3, 132:4,
132:8, 132:11, 132:12, 132:14,

132:16, 132:17, 132:19, 132:21,
132:24, 132:25, 133:1, 133:7, 133:9,
133:11, 133:12, 133:14, 133:15,
133:16, 133:19, 133:23, 133:24,
133:25, 134:1, 134:3, 134:4, 134:9,
134:11, 134:12, 134:13, 134:14,
134:15, 134:16, 134:17, 134:20,
134:21, 134:23, 134:24, 134:25,
135:3, 135:5, 135:8, 135:13, 135:15,
135:19, 135:20, 136:5, 136:6, 136:8,
136:9, 136:13, 136:14, 136:16,
136:17, 136:20, 136:21, 137:1, 137:8,
137:11, 137:14, 137:17, 137:21,
137:22, 137:24, 137:25, 138:1, 138:2,
138:7, 138:11, 138:18, 138:21,
138:24, 138:25, 139:1, 139:3, 139:4,
139:5, 139:7, 139:9, 139:15, 139:16,
139:18, 139:23, 139:25, 140:5, 140:8,
140:14, 140:16, 140:22, 140:24,
140:25, 141:1, 141:4, 141:6, 141:12,
141:16, 141:17, 141:19, 141:23,
142:6, 142:9, 142:11, 142:14, 142:18,
142:19, 142:20, 142:21, 142:23,
143:1, 143:2, 143:4, 143:9, 143:11,
143:13, 143:18, 143:20, 143:25,
144:6, 144:9, 144:11, 144:12, 144:13,
144:15, 144:18, 144:20, 145:1,
145:16, 146:2, 146:3, 146:9, 146:18,
146:21, 146:25, 147:2, 147:4, 147:5,
147:6, 147:7, 147:10, 147:11, 147:14,
147:25, 148:2, 148:4, 148:9, 148:13,
148:19, 148:21, 148:24, 149:2, 149:5,
149:8, 149:10, 149:14, 149:16,
149:19, 149:20, 149:21, 149:24,
149:25, 150:3, 150:6, 150:7, 150:8,
150:10, 150:11, 150:15, 150:16,
150:18, 150:19, 150:20, 150:21,
150:25, 151:1, 151:5, 151:8, 151:12,
151:13, 151:16, 151:17, 151:18,
151:20, 152:1, 152:2, 152:7, 152:8,
152:9, 152:10, 152:12, 152:14,
152:15, 152:18, 152:20, 152:21,
152:23, 152:24, 153:3, 153:4, 153:7,
153:8, 153:10, 153:12, 153:14,
153:22, 153:24, 154:1, 154:2, 154:3,
154:5, 154:6, 154:8, 154:9, 154:12,
154:18, 154:20, 154:23, 155:1, 155:2,
155:5, 155:6, 155:8, 155:10, 155:11,
155:13, 155:15, 155:18, 155:22,
156:5, 156:8, 156:13, 156:15, 156:23,
157:5, 157:6, 157:9, 157:10, 157:15,
157:19, 157:20, 157:21, 157:23,
157:24, 158:1, 158:3, 158:5, 158:7,
158:8, 158:9, 158:11, 158:14, 158:22,
159:3, 159:5, 159:6, 159:9, 159:11,
159:15, 159:19, 159:21, 159:22,
159:24, 159:25, 160:2, 160:3, 160:5,
160:6, 160:10, 160:13, 160:14,
160:15, 160:20, 161:1, 161:5, 161:12,
161:17, 161:18, 161:22, 161:24,
162:2, 162:4, 162:7, 162:12, 162:13,

162:15, 162:20, 162:21, 162:24,
163:1, 163:2, 163:4, 163:6, 164:17,
165:5, 165:20, 165:22, 165:23,
165:25, 166:3, 166:5, 166:7, 166:9,
166:11, 166:12, 166:13, 166:17,
166:23, 167:2, 167:3, 167:5, 167:12,
167:16, 167:17, 167:20, 167:25,
168:3, 168:4, 168:6, 168:13, 169:1,
169:13, 169:16, 170:6, 170:8, 170:15,
171:2, 171:5, 171:7, 171:8, 171:15,
171:16, 171:20, 171:21, 171:22,
171:24, 171:25, 172:3, 172:6, 172:8,
172:15, 172:18, 172:19, 172:23,
172:24, 172:25, 173:7, 173:11,
173:12, 173:18, 173:20, 173:22,
173:25, 174:2, 174:3, 174:4, 174:8,
174:14, 174:18, 174:22, 174:23,
174:25, 175:4, 175:10, 175:12,
175:14, 175:19, 175:20, 175:21,
176:1, 176:3, 176:6, 176:8, 176:14,
176:16, 176:20, 176:21, 176:22,
176:23, 176:24, 176:25, 177:1, 177:2,
177:5, 177:7, 177:11, 177:12, 177:14,
177:16, 177:21, 177:25, 178:3, 178:4,
178:6, 178:7, 178:10, 178:17, 178:19,
178:20, 178:21, 178:22, 178:23,
178:24, 179:1, 179:2, 179:3, 179:7,
179:10, 179:14, 179:17, 179:18,
179:21, 179:22, 179:24, 180:1, 180:4,
180:5, 180:8, 180:10, 180:11, 180:12,
180:13, 181:5, 181:7, 181:8, 181:10,
181:12, 181:13, 181:14, 181:15,
181:16, 181:17, 181:19, 181:25,
182:2, 182:8, 182:18, 183:2, 183:5,
183:9, 184:1, 184:13, 184:15, 185:3,
186:2, 186:10, 186:21, 187:3, 187:9,
187:17, 188:1, 188:6, 188:7, 188:9,
188:17, 188:19, 188:21, 188:22,
188:24, 189:2, 189:3, 189:4, 189:6,
189:7, 189:9, 189:15, 189:17, 189:21,
189:24, 190:2, 190:4, 190:9, 190:11,
190:12, 190:16, 190:19, 190:21,
190:22, 190:23, 190:24, 191:2, 191:4,
191:5, 191:8, 191:13, 191:14, 191:19,
191:20, 191:21, 191:22, 191:23,
192:4, 192:7, 192:11, 192:17, 192:18,
192:20, 192:21, 192:23, 193:1, 193:3,
193:11, 193:16, 193:24, 194:8,
194:10, 195:2, 195:5, 195:9, 195:13,
195:18, 195:23, 196:1, 196:5, 196:14,
196:16, 196:19, 198:4, 198:11,
198:14, 198:19, 198:23, 199:2, 199:7,
199:11, 199:14, 199:16, 199:18,
199:19, 199:25, 200:3, 200:5, 200:10,
200:12, 200:17, 200:19, 200:20,
201:1, 201:7, 201:12, 201:13, 201:18,
201:20, 202:1, 202:6, 202:7, 202:9,
202:10, 202:12, 202:17, 202:19,
202:21, 202:22, 202:25, 203:1,
203:10, 203:12, 203:14, 203:15,
203:17, 203:20, 203:21, 204:1, 204:2,

204:5, 204:7, 204:13, 204:16, 204:18, 204:20, 204:22, 204:23, 204:24, 204:25, 205:2, 205:10, 205:14, 206:5, 206:11, 206:15, 206:19, 206:25, 207:2, 207:4, 207:6, 207:7, 207:11, 207:13, 207:14, 207:17, 207:18, 207:22, 207:23, 208:2, 208:3, 208:4, 208:5, 208:9, 208:11, 208:14, 208:18, 208:22, 208:24, 209:4, 209:5, 209:6, 209:7, 209:8, 209:9, 209:11, 209:12, 209:18, 209:20, 209:23, 210:1, 210:4, 210:5, 210:7, 210:13, 210:17, 210:19, 210:22, 210:25, 211:3, 211:5, 211:6, 211:10, 211:15, 211:17, 211:18, 211:19, 211:20, 211:22, 211:23, 212:3, 212:5, 212:7, 212:8, 212:9, 212:12, 212:15, 212:19, 212:21, 212:22, 212:23, 212:24, 213:2, 213:7, 213:16, 213:18, 213:22, 213:24, 214:2, 214:5, 214:7, 214:9, 214:15, 214:24, 215:1, 215:3, 215:4, 215:8, 215:11, 215:14, 215:25, 216:13, 216:16, 216:18, 216:20, 216:22, 216:24, 217:2, 217:3, 217:11, 217:12, 217:19, 217:21, 217:22, 217:25, 218:2, 218:3, 218:4, 218:5, 218:10, 218:11, 218:14, 218:15, 218:17, 218:18, 218:20, 219:2, 219:5, 219:14, 219:17, 219:18, 219:19, 219:20, 220:2, 220:3, 220:4, 220:5, 220:7, 220:8, 220:12, 220:13, 220:15, 220:16, 220:19, 220:21, 220:23, 220:24, 221:1, 221:4, 221:6, 221:7, 221:9, 221:10, 221:14, 221:16, 221:18, 221:23, 222:7, 222:9, 222:17, 222:20, 222:22, 222:24, 223:1, 223:4, 223:7, 223:10, 223:15, 223:19, 223:21, 224:3, 224:4, 224:5, 224:11, 224:13, 224:17, 224:20, 224:23, 224:25, 225:1, 225:3, 225:4, 225:5, 225:6, 225:8, 225:10, 225:12, 225:13, 225:14, 225:15, 225:20, 225:22, 225:25, 226:2, 226:4, 226:7, 226:9, 226:13, 226:16, 226:18, 226:19, 226:20, 227:2, 227:3, 227:4, 227:5, 227:8, 227:9, 227:11, 227:14, 227:17, 227:18, 227:20, 227:21, 227:23, 227:24, 228:2, 228:5, 228:8, 228:12, 228:16, 228:21, 228:24, 228:25, 229:4, 229:5, 229:8, 229:9, 229:12, 229:13, 229:14, 229:16, 229:18, 229:19, 229:21, 229:23, 230:2, 230:5, 230:8, 230:10, 230:14, 230:15, 230:20, 230:23, 231:1, 231:3, 231:4, 231:7, 231:10, 231:11, 231:12, 231:17, 231:21, 232:5, 232:7, 232:8, 232:10, 232:15, 232:17, 232:20, 232:22, 232:23, 232:25, 233:1, 233:4, 233:8, 233:10, 233:22, 233:24, 233:25, 234:1, 234:3, 234:5, 234:7, 234:9, 234:11, 234:22, 235:4, 235:8,

235:9, 235:17, 235:19, 235:21, 235:22, 236:3, 236:4, 236:7, 236:8, 236:11, 236:12, 236:18, 236:20, 236:24, 236:25, 237:4, 237:9, 237:12, 237:14, 237:15, 237:16, 237:17, 237:18, 238:1, 238:7, 238:16, 238:17, 238:20, 238:21, 238:25, 239:1, 239:4, 239:6, 239:8, 239:14, 239:23, 239:24, 240:3, 240:9, 240:10, 240:13, 240:16, 240:18, 240:20, 240:22, 240:24, 240:25, 241:3, 241:7, 241:8, 241:10, 241:16, 241:19, 241:23, 242:3, 242:6, 242:9, 242:13, 242:20, 242:23, 242:24, 242:25, 243:4, 243:5, 243:7, 243:9, 243:10, 243:11, 243:14, 243:17, 243:21, 243:23, 243:25, 244:5, 244:9, 244:10, 244:12, 244:13, 244:15, 244:21, 244:23, 244:24, 245:1, 245:2, 245:5, 245:7, 245:8, 245:10, 245:11, 245:13, 245:14, 245:16, 245:18, 245:19, 245:20, 245:23, 245:24, 245:25, 246:1, 246:3, 246:7, 246:8, 246:9, 246:11, 246:12, 246:14, 246:15, 246:19, 246:21, 246:22, 247:3, 247:4, 247:7, 247:10, 247:11, 247:20, 248:1, 248:4, 248:5, 248:6, 248:10, 248:13, 248:16, 249:2, 249:3, 249:13, 249:16, 249:18, 249:21, 249:22, 249:23, 249:25, 250:1, 250:3, 250:4, 250:6, 250:9, 250:10, 250:12, 250:14, 250:16, 250:19, 250:20, 250:25, 251:3, 251:6, 251:7, 251:9, 251:10, 251:14, 251:16, 251:19, 251:21, 252:3, 252:6, 252:8, 252:10, 252:13, 252:15, 252:17, 252:20, 252:22, 252:24, 252:25, 253:1, 253:4, 253:5, 253:10, 253:11, 253:13, 253:16, 253:18, 253:20, 253:24, 254:2, 254:4, 254:8, 254:9, 254:12, 254:15, 254:17, 254:20, 254:22, 254:24, 255:1, 255:4, 255:6, 255:9, 255:10, 255:13, 255:14, 255:16, 255:17, 255:18, 255:22, 256:1, 256:3, 256:7, 256:10, 256:11, 256:14, 256:15, 256:16, 256:19, 256:21, 256:22, 256:23, 256:25, 257:1, 257:3, 257:4, 257:6, 257:7, 257:8, 257:9, 257:11, 257:12, 257:14, 257:15, 257:17, 257:19, 257:21, 257:25, 258:2, 258:6, 258:7, 258:9, 258:15, 258:17, 258:19, 258:21, 259:3, 259:4, 259:5, 259:7, 259:10, 259:12, 259:15, 259:16, 259:20, 259:21, 259:24, 259:25, 260:4, 260:9, 260:11, 260:13, 260:16, 260:19, 260:23, 260:25, 261:1, 261:7, 261:10, 261:11, 261:14, 261:15, 261:17, 261:18, 261:21, 261:23, 261:25, 262:1, 262:3, 262:5, 262:6, 262:8, 262:9, 262:11, 262:15, 262:16, 262:18, 262:19, 262:22, 262:23,

262:25, 263:1, 263:2, 263:3, 263:5, 263:6, 263:8, 263:9, 263:10, 263:11, 263:16, 263:18, 263:21, 263:22, 263:24, 263:25, 264:4, 264:6, 264:8, 264:11, 264:14, 264:17, 264:21, 264:22, 265:1, 265:2, 265:5, 265:6, 265:11, 265:12, 265:18, 265:19, 265:21, 265:23, 265:25, 266:2, 266:5, 266:7, 266:10, 266:12, 266:13, 266:14, 266:15, 266:17, 266:18, 266:20, 267:4, 267:7, 267:11, 267:12, 267:13, 267:16, 267:19, 267:22, 267:25, 268:1, 268:3, 268:6, 268:8, 268:10, 268:11, 268:14, 268:16, 268:17, 268:18, 268:20, 268:23, 268:24, 269:4, 269:7, 269:9, 269:11, 269:14, 269:17, 269:22, 269:25, 270:4, 270:7, 270:9, 270:12, 270:13, 270:14, 270:16, 270:18, 270:19, 270:20, 270:21, 270:23, 270:24, 270:25, 271:1, 271:2, 271:3, 271:4, 271:5, 271:6, 271:7, 271:9, 271:12, 271:15, 271:16, 271:17, 271:18, 271:19, 271:24, 271:25, 272:2, 272:3, 272:4, 272:5, 272:6, 272:8, 272:9, 272:11, 272:13, 272:15, 272:16, 272:17, 272:22, 272:24, 273:1, 273:3, 273:6, 273:8, 273:9, 273:11, 273:14, 273:16, 273:18, 273:20, 273:22, 273:25, 274:2, 274:5, 274:6, 274:8, 274:12, 274:14, 274:15, 274:18, 274:21, 274:22, 274:23, 274:24, 274:25, 275:2, 275:4, 275:6, 275:10, 275:11, 275:12, 275:14, 275:16, 275:18, 275:21, 275:23, 275:24, 275:25, 276:3, 276:5, 276:6, 276:16, 276:19, 276:21, 276:22, 276:24, 277:12, 277:16, 277:18, 277:24, 278:1, 278:3, 278:4, 278:10, 278:11, 278:12, 278:13, 278:14, 278:15, 278:19, 278:21, 278:22, 278:23, 278:25, 279:1, 279:4, 279:5, 279:7, 279:8, 279:9, 279:10, 279:12, 279:14, 279:15, 279:16, 279:18, 279:19, 279:21, 279:22, 279:23, 279:24, 280:2, 280:3, 280:4, 280:5, 280:11, 280:12, 280:13, 280:14, 280:15, 280:17, 280:19, 280:20, 280:22, 280:23, 280:25, 281:1, 281:5, 281:6, 281:8, 281:9, 281:12, 281:13, 281:18, 281:19, 281:22, 281:24, 281:25, 282:3, 282:6, 282:10, 283:2, 283:6, 283:7, 283:11, 283:16, 283:20, 283:22, 283:25, 284:1, 284:6, 284:7, 284:10, 284:11, 284:15, 284:16, 284:18, 284:20, 284:23, 285:4, 285:9, 285:16, 285:19, 286:2, 286:9, 286:12, 286:15, 286:18, 286:23, 287:1, 287:5, 287:10, 287:11, 287:12, 287:21, 287:22, 287:25, 288:1, 288:3, 288:4, 288:9, 288:11, 288:13, 288:17,

288:20, 288:22, 288:25, 289:1, 289:2, 289:4, 289:5, 289:7, 289:8, 289:10, 289:14, 289:17, 289:21, 289:24, 290:1, 290:3, 290:4, 290:9, 290:10, 290:11, 290:15, 290:18, 290:19, 290:21, 290:22, 290:24, 291:1, 291:4, 291:5, 291:7, 291:9, 291:12, 291:13, 291:18, 291:19, 291:21, 291:23, 291:25, 292:1, 292:3, 292:5, 292:6, 292:7, 292:9, 292:10, 292:13, 292:15, 292:17, 292:25, 293:4, 293:8, 293:12, 294:2, 294:3, 294:4, 294:7, 294:10, 294:11, 294:13, 294:15, 294:16, 294:20, 294:23, 294:24, 295:1, 295:2, 295:4, 295:10, 295:14, 295:15, 295:16, 295:17, 295:19, 295:24, 296:3, 296:5, 296:8, 296:9, 296:15, 296:16, 296:17, 296:21, 296:22, 296:23, 296:25, 297:1, 297:2, 297:3, 297:4, 297:6, 297:9, 297:13, 297:17, 297:20, 297:24, 298:5, 298:9, 299:3, 299:20, 300:15, 300:18, 300:25, 301:6, 301:8

**therapy** [2] - 23:17, 45:8

**therefore** [6] - 60:15, 60:21, 126:25, 127:1, 220:1, 236:23

**they've** [3] - 42:8, 118:24, 239:18

**thinking** [5] - 50:10, 55:23, 65:15, 152:16, 174:20

**thinks** [2] - 121:16, 285:19

**third** [2] - 276:13, 300:22

**Thirty** [3] - 135:3, 137:4, 243:23

**Thirty-one** [1] - 135:3

**Thirty-six** [1] - 243:23

**Thirty-two** [1] - 137:4

**thorough** [1] - 58:12

**thoughtful** [1] - 164:25

**thoughts** [2] - 59:13, 169:3

**threat** [2] - 202:8, 224:9

**threatening** [1] - 255:21

**three** [20] - 52:19, 68:10, 77:24, 83:6, 83:8, 83:17, 84:1, 85:11, 92:25, 118:8, 120:24, 121:12, 124:20, 137:4, 137:7, 147:19, 208:21, 228:10, 266:25, 296:18

**Three** [1] - 118:9

**throughout** [2] - 200:11, 200:12

**throw** [1] - 133:6

**thumb** [1] - 261:19

**Thursday** [27] - 128:10, 165:25, 167:18, 167:19, 177:12, 194:17, 194:20, 195:10, 195:14, 196:23, 197:5, 197:21, 198:2, 249:8, 298:1, 298:7, 298:16, 298:20, 298:22, 298:24, 299:15, 299:25, 300:1, 300:5, 300:23, 301:3

**Thursdays** [1] - 127:13

**ticket** [1] - 167:21

**tickets** [2] - 166:3, 243:6

**tie** [2] - 259:21, 265:3

**ties** [6] - 7:25, 87:11, 89:16, 103:9, 103:11, 177:18

**timeframe** [1] - 44:24, 62:18

**timing** [3] - 32:11, 287:23, 287:24

**to..** [1] - 106:19

**today** [19] - 5:1, 5:6, 13:2, 19:24, 21:1, 21:4, 70:4, 98:7, 140:11, 140:12, 145:23, 178:17, 180:6, 249:9, 258:13, 285:3, 295:4, 298:19, 301:1

**Today's** [1] - 245:11

**together** [2] - 14:21, 33:25

**toilet** [1] - 209:14

**tomorrow** [30] - 12:18, 21:4, 95:11, 98:5, 98:8, 145:7, 145:8, 145:9, 145:19, 145:21, 145:22, 194:15, 194:16, 194:22, 196:11, 196:22, 197:2, 197:3, 249:9, 258:14, 270:25, 298:7, 298:16, 298:18, 298:22, 298:23, 299:8, 299:24, 300:19, 301:8

**tomorrow's** [1] - 300:20

**tongue** [1] - 262:9

**tonight** [1] - 300:13

**tons** [1] - 57:23

**took** [6] - 177:2, 214:22, 215:19, 217:9, 218:9, 253:13

**top** [2] - 175:21, 242:15

**topic** [1] - 102:15

**total** [1] - 113:23

**totality** [1] - 216:9

**totally** [2] - 174:12, 193:14

**touch** [5] - 47:16, 117:7, 117:10, 200:14, 300:3

**touches** [1] - 81:12

**tough** [4] - 56:16, 129:12, 236:18, 237:4

**toward** [1] - 226:5

**towards** [1] - 222:13

**towels** [1] - 209:14

**town** [2] - 201:12, 201:13

**track** [2] - 193:20, 299:12

**tracking** [1] - 269:19

**trade** [3] - 31:3, 31:8, 219:24

**traffic** [3] - 42:3, 52:7, 284:8

**traffickers** [1] - 57:6

**trafficking** [19] - 59:10, 59:21, 88:23, 111:13, 112:23, 123:11, 136:2, 150:9, 160:8, 191:18, 192:14, 236:6, 236:10, 247:9, 251:11, 255:23, 265:15, 284:14

**tragic** [2] - 147:9, 263:3

**trainee** [2] - 296:19, 296:24

**training** [3] - 22:16, 207:21, 208:19

**trains** [1] - 275:7

**Transcript** [1] - 2:10

**TRANSCRIPT** [1] - 1:12

**transcript** [1] - 280:5

**Transcription** [1] - 2:11

**translating** [1] - 4:19

**transmitter** [1] - 268:7

**transportation** [1] - 293:14

**trauma** [1] - 258:23

**travel** [6] - 21:20, 21:23, 24:23, 169:2, 245:4, 245:12

**traveled** [2] - 24:20, 77:20

**traveling** [4] - 245:5, 245:14, 245:22, 292:25

**treat** [9] - 88:14, 97:4, 97:7, 97:9, 103:20, 156:12, 161:20, 163:13, 163:14

**treated** [3] - 131:24, 224:12, 227:21

**treating** [1] - 148:11

**treatment** [1] - 237:23

**trial** [79] - 16:15, 16:16, 16:23, 19:4, 25:6, 25:21, 26:9, 31:11, 38:20, 42:22, 44:21, 44:24, 52:3, 58:25, 59:19, 59:23, 60:2, 65:7, 66:10, 67:22, 68:17, 76:18, 83:24, 84:19, 92:19, 95:8, 96:5, 105:24, 113:1, 116:7, 118:16, 118:23, 119:11, 120:19, 121:5, 126:8, 126:9, 126:17, 132:7, 133:11, 136:10, 141:15, 147:18, 147:22, 151:4, 152:22, 154:11, 158:14, 162:14, 168:24, 169:5, 169:7, 169:9, 174:17, 176:14, 177:13, 186:4, 195:6, 201:15, 207:9, 214:19, 214:23, 215:16, 215:18, 215:20, 227:1, 228:5, 235:7, 238:8, 244:18, 260:20, 261:16, 263:19, 265:6, 274:11, 284:1, 292:19

**trials** [1] - 167:8

**tried** [5] - 58:10, 105:14, 106:2, 106:4, 156:8

**trip** [7] - 164:15, 164:17, 165:6, 165:24, 167:17, 276:7, 276:14

**trouble** [5] - 16:23, 227:13, 256:8, 256:9, 257:4

**true** [5] - 61:1, 115:22, 150:25, 261:4, 296:15

**trust** [6] - 231:7, 231:9, 231:14, 231:16, 231:17, 269:2

**trusting** [1] - 231:1

**truth** [10] - 40:7, 40:10, 40:19, 40:21, 41:4, 53:3, 103:21, 238:10, 238:11, 241:17

**truthful** [2] - 115:2, 223:5

**try** [34] - 9:12, 38:6, 41:14, 41:17, 51:11, 58:4, 58:13, 64:20, 66:14, 66:19, 72:5, 100:17, 113:18, 113:24, 114:18, 126:21, 138:12, 145:23, 152:12, 156:10, 160:24, 161:10, 161:22, 165:14, 168:19, 185:19, 222:22, 222:23, 234:23, 239:9, 239:11, 239:12, 246:19

**trying** [12] - 66:12, 116:6, 125:5, 140:18, 142:7, 175:1, 175:2, 175:4, 192:2, 260:19, 260:24, 295:8

**Tuesday** [4] - 16:20, 17:21, 127:23, 197:24

**Tuesdays** [1] - 127:13

**tunnel** [1] - 263:17

**turn** [5] - 25:22, 25:24, 26:14, 162:14, 214:22

**turned** [2] - 26:9, 210:22
**turns** [3] - 179:9, 210:17, 217:12
**TV** [1] - 53:9
**twice** [3] - 44:24, 267:1, 292:21
**twins** [1] - 244:15
**two** [41] - 4:9, 8:21, 16:16, 24:18, 25:23, 60:16, 68:10, 69:5, 83:6, 85:5, 85:8, 120:19, 123:22, 124:17, 125:6, 126:24, 128:6, 128:13, 134:5, 134:6, 134:8, 137:4, 141:8, 141:10, 176:21, 176:22, 177:4, 182:3, 182:19, 183:9, 185:16, 246:23, 251:20, 261:16, 270:23, 271:22, 273:6, 275:7, 276:8, 292:18
**Two** [2] - 124:14, 125:7
**two-hour** [1] - 134:6
**two-month** [1] - 16:16
**type** [6] - 148:6, 150:6, 163:21, 169:22, 206:4, 232:1
**types** [4] - 7:23, 8:2, 163:18, 163:25

## U

**U.S** [18] - 6:21, 81:21, 81:22, 81:23, 82:3, 82:4, 105:17, 150:24, 151:6, 155:25, 156:18, 184:20, 204:4, 204:5, 204:15, 255:15, 256:25, 286:7
**Uber** [1] - 292:25
**uh-hum** [17] - 39:21, 40:12, 48:22, 49:18, 50:7, 51:9, 52:4, 55:14, 60:13, 61:6, 63:17, 173:11, 177:11, 179:10, 261:17, 261:25, 280:2
**ultimately** [4] - 57:24, 58:13, 58:16, 164:8
**umm** [1] - 210:6
**unable** [2] - 34:12, 150:23
**uncle** [4] - 69:16, 87:8, 283:13, 283:14
**unclear** [1] - 182:7
**uncomfortable** [3] - 37:15, 45:7, 182:21
**uncorroborated** [1] - 166:25
**under** [6] - 64:16, 119:18, 173:16, 185:24, 207:15, 275:7
**understandable** [1] - 77:4
**understood** [4] - 14:17, 59:18, 138:21, 138:24
**undivided** [1] - 174:19
**unemployed** [1] - 225:12
**unequivocal** [1] - 185:20
**unfairly** [1] - 224:12, 227:22
**unfolded** [2] - 180:15, 181:11
**unfortunately** [1] - 62:16
**Unfortunately** [1] - 15:25
**unions** [1] - 203:5
**unique** [1] - 208:7
**unit** [1] - 258:22
**UNITED** [3] - 1:1, 1:3, 1:13
**United** [32] - 1:5, 1:16, 1:20, 3:3, 3:17, 6:4, 6:7, 6:16, 6:22, 7:10, 21:21, 24:3, 24:7, 24:12, 24:20, 27:1, 27:9, 105:14, 106:3, 106:16, 138:13, 151:10, 152:3,

156:17, 156:19, 157:2, 157:3, 191:11, 217:7, 217:8, 218:12, 235:23
**University** [1] - 274:9
**unless** [6] - 10:3, 12:14, 158:25, 212:10, 260:7, 262:10
**unlike** [1] - 206:1
**unlikely** [3] - 55:4, 299:21, 300:25
**unpredictability** [1] - 35:9
**unquote** [1] - 118:24
**unreliable** [1] - 210:15
**unsure** [1] - 191:22
**unwinnable** [1] - 246:16
**up** [215] - 5:5, 5:15, 5:19, 5:22, 5:25, 7:1, 7:21, 8:13, 8:17, 8:22, 9:10, 9:13, 9:15, 10:8, 10:14, 11:13, 12:16, 15:17, 16:22, 17:1, 17:5, 22:9, 28:12, 29:5, 32:6, 32:25, 35:1, 36:17, 38:15, 39:7, 39:13, 39:17, 41:14, 43:7, 43:14, 44:1, 45:20, 47:1, 47:9, 49:12, 54:18, 55:12, 56:6, 56:19, 56:21, 57:7, 58:9, 59:3, 59:17, 61:15, 62:4, 62:8, 62:12, 62:20, 63:15, 67:11, 67:15, 69:7, 69:10, 69:25, 71:1, 71:5, 71:10, 72:17, 75:5, 76:9, 78:20, 82:6, 84:19, 85:21, 92:9, 92:18, 93:5, 93:7, 93:10, 94:15, 95:11, 99:22, 100:10, 100:12, 104:21, 105:3, 106:21, 107:20, 121:18, 122:4, 122:7, 125:18, 130:13, 130:17, 130:25, 131:2, 131:9, 131:13, 132:21, 135:15, 135:21, 136:21, 137:17, 138:3, 143:7, 145:3, 145:12, 145:20, 145:22, 147:2, 147:18, 148:25, 149:22, 151:23, 153:8, 154:6, 155:4, 156:1, 158:13, 165:5, 165:6, 165:14, 165:21, 166:22, 167:25, 169:13, 169:22, 171:8, 173:18, 174:4, 175:16, 179:18, 180:1, 180:25, 181:1, 182:4, 182:6, 182:17, 187:9, 187:13, 191:8, 193:16, 193:18, 194:8, 197:20, 198:1, 199:16, 205:17, 205:20, 206:14, 206:25, 216:25, 221:11, 222:10, 223:21, 223:23, 225:17, 226:20, 227:25, 229:19, 230:5, 230:10, 230:15, 231:18, 232:20, 232:23, 233:16, 233:17, 234:11, 234:13, 238:2, 240:12, 241:20, 242:25, 244:10, 249:7, 249:23, 253:1, 255:6, 255:11, 257:15, 258:2, 258:4, 259:12, 259:16, 263:25, 264:17, 264:22, 266:10, 268:20, 268:25, 270:4, 270:9, 274:2, 276:12, 276:14, 277:11, 278:1, 278:7, 278:24, 279:21, 279:22, 279:25, 280:6, 281:19, 283:2, 287:8, 290:1, 292:1, 293:24, 294:4, 295:5, 295:6, 296:5, 297:14, 299:6, 300:4
**upfront** [1] - 213:22
**ups** [1] - 147:7
**upsetting** [2] - 38:12, 173:15
**uptick** [1] - 53:15
**usage** [2] - 123:8, 209:13

**useful** [2] - 142:5, 179:16
**uses** [3] - 135:10, 172:1, 209:17

## V

**vacation** [10] - 11:14, 16:14, 16:19, 17:8, 176:20, 226:14, 229:6, 242:13, 242:18, 243:1
**vacations** [1] - 25:2
**vague** [2] - 133:4, 238:1
**Valerie** [1] - 4:3
**value** [1] - 269:2
**varies** [1] - 209:13
**various** [2] - 209:9, 209:17
**vary** [1] - 176:17
**venire** [1] - 168:25
**verdict** [21] - 64:17, 65:3, 66:11, 77:12, 81:17, 82:16, 82:20, 87:2, 87:4, 89:22, 94:7, 94:10, 95:19, 106:9, 113:17, 151:24, 171:13, 192:15, 238:14, 238:19, 260:22
**Vermont** [2] - 176:24, 177:8
**versus** [4] - 3:3, 166:21, 217:20, 219:21
**vibe** [1] - 205:17
**victim** [2] - 226:22, 226:24
**video** [2] - 4:22, 170:3
**view** [14] - 8:5, 16:15, 16:17, 57:3, 87:19, 88:10, 122:22, 123:9, 135:7, 163:9, 178:18, 185:11, 201:21, 204:12
**views** [18] - 22:25, 31:14, 31:21, 51:1, 88:21, 90:18, 91:5, 99:3, 132:1, 152:3, 164:4, 164:6, 228:15, 228:23, 239:9, 251:12, 255:23, 265:15
**violation** [4] - 49:8, 52:2, 52:7, 227:15
**Violation** [1] - 3:9
**virtually** [1] - 246:10
**visibly** [1] - 168:20
**visit** [3] - 180:16, 266:25, 267:1
**voiced** [1] - 6:3
**volume** [1] - 34:24

## W

**waffling** [1] - 56:19
**wait** [3] - 58:15, 194:18, 203:3
**waiting** [9] - 9:5, 59:12, 82:11, 133:12, 144:24, 148:14, 195:19, 196:20, 197:16
**wake** [1] - 295:6
**walk** [2] - 180:17, 253:17
**walking** [1] - 99:22
**walks** [1] - 28:23
**wants** [4] - 37:10, 187:8, 196:12, 228:18
**War** [8] - 26:24, 27:1, 27:23, 99:3, 234:15, 234:23, 235:6, 246:16
**war** [3] - 155:20, 155:24, 157:13
**wary** [1] - 101:12
**watch** [4] - 25:20, 271:14, 272:9, 277:22
**watched** [1] - 52:18
**watching** [2] - 25:6, 297:25

**water** [1] - 74:5
**waving** [1] - 197:12
**ways** [4] - 22:18, 182:19, 183:9, 184:8
**wear** [6] - 104:20, 104:22, 182:15, 182:20, 190:15, 193:10
**wearing** [7] - 182:12, 182:16, 189:16, 189:19, 189:23, 189:25, 190:5
**weather** [1] - 247:23
**website** [1] - 238:4
**Wednesday** [3] - 274:24, 274:25, 301:11
**weed** [2] - 237:5, 237:7
**week** [21] - 16:15, 67:21, 118:16, 118:23, 127:12, 141:15, 175:23, 175:25, 177:13, 215:19, 238:23, 243:4, 243:5, 244:17, 245:17, 245:21, 246:7, 258:11, 266:25, 267:1, 300:23
**weekend** [2] - 17:13, 242:18
**weekends** [5] - 62:20, 63:4, 175:25, 258:12
**weeks** [45] - 35:1, 71:18, 83:25, 84:19, 85:2, 85:4, 85:10, 85:11, 95:8, 95:17, 98:1, 98:2, 98:18, 98:19, 120:20, 121:5, 121:9, 121:16, 121:18, 123:22, 123:25, 124:25, 126:8, 126:10, 126:14, 129:6, 129:15, 130:7, 139:20, 139:23, 140:2, 142:17, 145:15, 147:19, 169:6, 177:4, 207:10, 210:4, 214:20, 215:22, 220:25, 233:13, 279:19
**weigh** [2] - 12:20, 260:22
**weight** [6] - 109:12, 109:14, 180:18, 203:9, 236:6, 236:10
**welcome** [2] - 21:6, 134:24
**whereas** [1] - 255:20
**whichever** [2] - 120:23, 221:21
**white** [1] - 108:20
**whoever's** [1] - 115:12
**whole** [9] - 34:1, 34:2, 100:4, 164:4, 219:9, 246:7, 272:19, 299:14
**wide** [1] - 246:5
**wife** [6] - 93:8, 244:16, 244:20, 276:9, 296:19, 296:24
**wife's** [1] - 283:13
**willing** [1] - 126:9
**witness** [59] - 23:12, 40:9, 48:21, 61:7, 61:9, 61:10, 86:22, 89:16, 97:6, 101:2, 101:3, 101:5, 101:8, 101:12, 101:18, 102:2, 102:6, 102:7, 102:21, 102:22, 103:15, 103:20, 109:11, 109:12, 109:13, 109:16, 110:3, 115:18, 115:23, 119:16, 133:8, 161:6, 161:20, 163:15, 166:25, 167:4, 167:13, 168:12, 168:22, 169:24, 169:25, 172:9, 172:11, 172:12, 174:5, 178:5, 186:8, 186:25, 187:1, 203:8, 210:9, 210:10, 211:8, 213:8, 283:23, 283:24
**witness'** [6] - 72:21, 161:13, 167:14, 167:15, 170:2
**witness's** [4] - 101:23, 109:13, 168:11,

186:7
**witnesses** [29] - 23:2, 23:3, 39:20, 40:1, 57:20, 97:17, 101:12, 101:14, 115:1, 115:5, 115:14, 148:15, 162:1, 163:14, 163:19, 166:16, 182:16, 185:12, 187:21, 189:22, 210:14, 222:5, 222:15, 250:24, 260:1, 260:22, 261:9, 269:8
**witnessing** [2] - 110:2, 115:10
**WNYC** [2] - 25:9, 162:16
**wonder** [2] - 8:18, 39:23
**Wonderful** [1] - 229:13
**wonderful** [6] - 105:10, 107:1, 197:25, 225:25, 250:9, 284:20
**wondering** [3] - 196:6, 244:3, 277:21
**wood** [2] - 104:23, 189:11
**word** [11] - 64:14, 66:16, 163:17, 168:11, 168:19, 181:8, 208:8, 260:6, 262:4, 262:5, 262:7
**words** [3] - 66:15, 71:24, 188:10
**wore** [1] - 182:21
**workday** [2] - 140:11, 258:13
**worker** [2] - 58:1, 240:1
**workers** [1] - 35:2
**workload** [1] - 34:24
**works** [16] - 7:16, 11:25, 47:16, 48:6, 95:2, 104:6, 124:15, 125:4, 127:19, 127:20, 155:23, 192:5, 267:8, 267:15, 288:15, 288:16
**World** [1] - 25:8
**world** [3] - 141:3, 206:17, 239:9
**worldwide** [3] - 207:24, 209:1
**worried** [9] - 37:18, 121:7, 142:10, 142:11, 142:12, 174:16, 175:5, 182:10, 189:9
**worry** [4] - 139:14, 157:18, 285:16, 293:15
**worse** [1] - 236:1
**worst** [2] - 214:22, 214:23
**worth** [4] - 84:17, 137:11, 144:24, 145:12
**wrap** [1] - 297:14
**write** [4] - 44:15, 143:14, 185:5, 197:13
**written** [3] - 235:18, 236:25, 237:13
**wrote** [5] - 156:16, 187:23, 201:22, 217:9, 238:22

## Y

**year** [11] - 30:6, 44:12, 92:17, 147:17, 176:4, 180:19, 180:20, 207:16, 207:17, 224:8, 224:9
**year-old** [1] - 180:19
**years** [13] - 42:18, 70:23, 87:16, 88:2, 111:2, 112:7, 114:6, 131:17, 139:8, 215:22, 228:3, 228:10, 291:8
**yeses** [1] - 45:18
**yields** [1] - 300:20
**YORK** [1] - 1:1
**York** [14] - 1:6, 1:17, 1:18, 1:22, 2:2, 2:5,

103:4, 207:25, 259:18, 264:24, 297:4
**younger** [2] - 271:19, 272:1
**yourself** [6] - 26:4, 40:10, 109:2, 112:3, 114:18, 201:10
**yourselves** [1] - 4:10
**youths** [1] - 53:22
**Yup** [2] - 226:13, 234:1
**yup** [2] - 93:23, 189:6