302

1                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
2

   - - - - - - - - - - - - - - X
3

UNITED STATES OF AMERICA,    : 19-CR-00576(BMC)
4                       :
                       :
5                       :
      -against-         : United States Courthouse
6                       : Brooklyn, New York
7                       :
                       : January 18, 2023
8  GENARO GARCIA LUNA,       : 9:00 a.m.
                       :
9       Defendant.       :
                       :
10

   - - - - - - - - - - - - - - X
11

12      TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
       BEFORE THE HONORABLE HONORABLE PEGGY KUO
13         UNITED STATES MAGISTRATE JUDGE

14

15  A P P E A R A N C E S:

16  For the Government:  BREON PEACE
                  United States Attorney
17                 Eastern District of New York
                   271 Cadman Plaza East
18                   Brooklyn, New York 11201
               BY:  SARITHA KOMATIREDDY
19                   ERIN M. REID
                   PHILIP PILMAR
20                   MARIETOU E. DIOUF
                    Assistant United States Attorney
21

  For the Defendant:   THE LAW FIRM OF CESAR DE CASTRO, P.C.
22                   111 Fulton Street - 602
                   New York, New York 10038
23               BY:  CESAR DE CASTRO, ESQ.
                   SHANNON MICHAEL MCMANUS, ESQ.
24

25

303

1    (Continued)
                            MIEDEL & MYSLIWIEC, LLP
2                                80 Broad Street, Suite 1900
                                 New York, New York 10004
3                           BY:  FLORIAN MIEDEL, ESQ.

4
     For the Defendant:     GOTLIB LAW, PLLC
5                                225 Broadway, Suite 2815
                                 New York, New York 10038
6                           BY:  VALERIE ALICE GOTLIB, ESQ.

7
     Court Reporter:  Michele D. Lucchese, RPR, CRR
8                     Official Court Reporter
                      Phone:  718-613-2272
9                     E-mail: MLuccheseEDNY@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1              (In open court.)

 2              (Defendant present.)

 3              THE COURTROOM DEPUTY:  This is criminal cause for

 4    jury selection, docket 19-CR-576, United States versus Genaro

 5    Garcia Luna, Magistrate Judge Peggy Kuo presiding.

 6              Persons granted remote access to proceedings are

 7    reminded of the general prohibition against photographing,

 8    recording, and rebroadcasting of court proceedings.  Violation

 9    of these prohibitions may result in sanctions, including

10    removal of court issued media credentials, restricted entry to

11    future hearings, denial of entry to future hearings, or any

12    other sanctions deemed necessary by the court.

13              Counsel, starting with the Government, could you

14    please state your appearances for the record.

15              MS. KOMATIREDDY:  Good morning, Your Honor.  Saritha

16    Komatireddy for the United States.  I'm joined by my

17    colleagues Erin Reid, Phil Pilmar, Marietou Diouf, as well as

18    Special Agent James Cain of the Drug Enforcement

19    Administration.

20              MR.  PILMAR:  Good morning.

21              MR. DE CASTRO:  For Mr. Garcia Luna, Cesar de

22    Castro, Valerie Alice Gotlib, Florian Miedel, Shannon McManus,

23    and our paralegals Austin Dean and Kimberly Tabares.

24              THE COURT:  All right.  Good morning, everyone.  So

25    we have a couple of housekeeping matters I want to deal with

1   today.  The first is that yesterday, with regard to Juror No.

2   77, I had indicated that my staff gave me a note that that

3   juror said he had seen the news over the lunch break and when

4   he was being questioned, he didn't know it and denied it

5   happened.  It turns out that the juror number that was relayed

6   to me was incorrect, that it was actually Juror No. 27.  So,

7   unfortunately, that discrepancy may have played a role in the

8   parties' agreement to have that juror excused for cause.  I

9   don't know if we can do anything about that at this point.  He

10  has been dismissed.

11          We could try calling him back.  I don't know that he

12  would be happy about that.  But in any event, I wanted to let

13  you know.

14          The other consequences is that it is Juror No. 27.

15  So when Juror No. 27 comes in tomorrow, we should ask him

16  questions about what news he may have seen.  So I just wanted

17  to make that correction for you.

18          And the other thing is that there are several jurors

19  we had asked to find out about whether they would get paid.  I

20  think my deputy may have told you that we heard back from some

21  of them.

22          MR. DE CASTRO:  He mentioned it, Your Honor, but we

23  didn't --

24          THE COURT:  We can all look through those now since

25  we have a few minutes while the jurors are being brought up

Case 1:19-cr-00576-BMC   Document 227   Filed 02/28/23   Page 5 of 363 PageID #: 13973

1    from downstairs.

2            Juror No. 7 said the employer told that juror that

3    they will not be paid.

4            Juror No. 15 said that they be paid for the first

5    two weeks.

6            Juror No. 17 says they thinks they will be paid two

7    weeks, but will check on that.

8            And then 4, 19, 32 and 36 do not yet know.  So we

9    will get information from them.  I just wanted to give you an

10   update on that so you can consider what we should be doing.

11           If, by the end of the day, you have reached any

12   agreement or have any thoughts on whether 7 -- at the very

13   least, 7 and 15 have given us definitive answers and should be

14   excuse and that they don't need to come in on Thursday, but if

15   you want them to come in on Thursday, that's fine as well.  I

16   wanted to give you that information.

17           The other thing is that we had gotten a request for

18   Juror No. 105 about that juror's situation by chambers'

19   e-mail, and I believe the parties agreed that Juror No. 105

20   did not need to come in.  Can I confirm that?

21           MR. DE CASTRO:  That's correct.

22           MS. KOMATIREDDY:  That's correct, Your Honor.

23           THE COURT:  Juror No. 105 is excused.

24           We also got an indication this morning from Juror

25   No. 141 that that juror has something that needs to be

1   attended to today, and so we have agreed to let that juror be

2   questioned first so that the juror can go to the important

3   meeting later in the day.  After Juror No. 141, we will start

4   with the rest of the jurors.

5        I should also let you know that jurors 12 and 46

6   from yesterday did not show up today.  The jury office will be

7   contacting them.

8        So we will then start with Juror No. 86 and go

9   through Juror No. 123, hopefully, this morning, and then

10  resume in the afternoon up through Juror 162.  So, as I

11  mentioned yesterday, if we get to 40 today, great; if we

12  don't, I think we have another batch of questionnaires that

13  were filled out last week, another batch of jurors who filled

14  out questionnaires last week, so we can move on to that third

15  day's group.  And then we will see how we go.  I'm hopeful we

16  will finish Thursday morning.

17       So the question for the parties is whether you would

18  like to start the trial, if we finish, with opening statements

19  on Thursday afternoon or, since Judge Cogan will not be

20  sitting on Friday, just start on Monday with opening

21  statements?  You don't need to answer now.  You can think

22  about it.  I just wanted to put that out there.  We may not be

23  done by Thursday, but if we are done by Thursday morning,

24  please let me know that if you would like to start Thursday

25  afternoon.

1          MR. DE CASTRO:  Judge, we have actually started

2    talking about that.  I don't know that we have a definitive

3    answer, but I guess do you know what the Court wants to do,

4    what Judge Cogan wants to do or is he leaving it up to us?

5          THE COURT:  He's leaving it up to you.

6          MR. DE CASTRO:  That's helpful.

7          THE COURT:  But please let me know.  We won't know

8    -- if we get all 40 qualified jurors this afternoon, then I

9    think we'll be in a good position to know if it can go

10   forward.  If not, there's still some possibility we won't

11   finish Thursday.  It's a little uncertain.  But, like I said,

12   think about it.  Let me know by the end of the day what you

13   want to do.

14         MS. KOMATIREDDY:  We conferred.  I think we'll be

15   able to come to an agreement and let you know by the end of

16   the day.

17         THE COURT:  Okay.

18         MR. DE CASTRO:  Yes, and I think we'll be pretty

19   informed by the morning too.

20         THE COURT:  I agree.  Right now is too soon to know

21   for sure.  Okay.  So we will just wait a few minutes while the

22   jurors are brought up from the second floor and then we will

23   start with Juror No. 141.

24         Do you -- since we have a moment, want to point out

25   what questions you would like to focus on for this juror?

1              MR. DE CASTRO:  Sure.  There seems to be a bunch.

2   Obviously starting with the hardship, and then we had 35, 36,

3   42, 43, 44, 45, 47, 58, 59, 60 and 66.

4              MS. KOMATIREDDY:  And 43, Your Honor.

5              THE COURT:  Okay.  All right.  Then since we will

6   then be moving on to Juror No. 86, also 86.

7              MR. DE CASTRO:  43, 44, 66, and the hardship.

8              MS. KOMATIREDDY:  We would add 55 and 58.

9              THE COURT:  Let's take advantage of this lull and do

10  a couple more juror questions, so for juror 87.

11             MR. DE CASTRO:  We had just 45.

12             THE COURT:  Okay.

13             MS. KOMATIREDDY:  Same here.

14             THE COURT:  88?

15             MR. DE CASTRO:  Hardship, and 34, 35, 44, 55, 56 and

16  66.

17             MS. KOMATIREDDY:  And 52, Your Honor.

18             THE COURT:  Okay.  And Juror No. 89?

19             MR. DE CASTRO:  We had 44 and 47.

20             MS. KOMATIREDDY:  That covers us, Your Honor.

21             THE COURT:  89?

22             MS. KOMATIREDDY:  That covers us as well.

23             THE COURT:  90, I just had one, 62-C.

24             MR. DE CASTRO:  Nothing else for us.

25             THE COURT:  Okay.  Anything from the Government?

1              MS. KOMATIREDDY:  That's it.

2              THE COURT:  That was for juror 90.

3              MS. KOMATIREDDY:  Nothing in addition.

4              THE COURT:  How about for juror 91?

5              MR. DE CASTRO:  We have nothing.

6              MS. KOMATIREDDY:  We have nothing.

7              THE COURT:  93?

8              MR. DE CASTRO:  56.

9              MS. KOMATIREDDY:  4, 24 and 40.

10             THE COURT:  94?

11             MR. DE CASTRO:  We have 42, 44, 49, 50, 56, and

12   hardship 69 through 71.

13             MS. KOMATIREDDY:  That covers us as well, Your

14   Honor.

15             THE COURT:  All right.  Great.  I think the jurors

16   are here.

17             (Prospective Juror No. 141 enters.)

18             THE COURT:  Good morning, Juror No. 141.  Come up to

19   the podium, please.  And you can put your bag and your coat on

20   the chair if you would like.  You can also leave your mask on

21   if you want, or you don't if you feel more comfortable.

22             How are you doing today?

23             THE PROSPECTIVE JUROR:  Okay.  A little nervous.

24             THE COURT:  That's okay.  That's very natural.  We

25   are calling you first because you said you have something you

1    need to attend to this afternoon.

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  But, more importantly, you said that you

4    have some issues with serving on the jury in terms of your

5    timing?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Can you tell us about that?

8              THE PROSPECTIVE JUROR:  I just got hired at the

9    hospital where I'm working in late November and my department,

10   I'm a department of one for performance improvement and we

11   have the three-year survey for the joint commission at our

12   hospital for the first quarter and I have to provide all of

13   the hospital performance improvement projects to the CEO and

14   to the Board of Health and hospitals for the survey and it's

15   kind of like the timing.  I just have to be there, so it's

16   going to be hard to serve where I'm the only one to provide

17   all of that.

18             THE COURT:  Is there any possibility of the survey

19   being delayed?

20             THE PROSPECTIVE JUROR:  No.  They come every three

21   years to all the hospitals in New York City.  It's a state

22   vary, the Commission.

23             THE COURT:  When is it due?

24             THE PROSPECTIVE JUROR:  The survey, they can walk

25   into the hospital at any time between January to April.

1          THE COURT:  I see.  So you need to be prepared in

2   case --

3          THE PROSPECTIVE JUROR:  I have to prepare, I have to

4   -- yes, the survey comes and they're going to ask me for

5   reports.

6          THE COURT:  And there's no way to schedule it so

7   that they can tell you that this when they're coming in?

8          THE PROSPECTIVE JUROR:  You can ask the New York

9   City Health and Hospitals' Chairman, Mitchell Katz, he might

10  be able to redirect them, but I can't.

11         THE COURT:  But you can't?

12         THE PROSPECTIVE JUROR:  Yeah, because I can't.  I

13  just got hired.  I've only been there seven weeks.  So there's

14  a lot going on.  The meeting I have today, I have to get all

15  of the positions in a meeting that postponed, so....

16         MR. DE CASTRO:  We have no objection.

17         MS. KOMATIREDDY:  No objection, Your Honor.

18         THE COURT:  Thank you.  Thank you for letting us

19  know.  You are excused.

20         THE PROSPECTIVE JUROR:  Thank you.

21         THE COURT:  Go back to the second floor and let them

22  know.

23         (Prospective juror No. 141 excused.)

24         THE COURT:  We are ready for Juror No. 86.

25         (Prospective Juror No. 86 enters.)

Prospective Juror No. 86                              313

1          THE COURT:  Good morning, Juror No. 86.  Step up to

2    the podium, please, and you can put your bag and your coat on

3    the chair.

4          How are you today?

5          THE PROSPECTIVE JUROR:  Doing well.  Thanks.

6    Yourself?

7          THE COURT:  I'm good.  Thank you.  We have a couple

8    of follow-up questions based on the questionnaire answers that

9    you gave, and I will start with the hardship question.

10          You said you have some childcare issues.  Can you

11    tell us about that?

12          THE PROSPECTIVE JUROR:  Yeah, it's just my wife and

13    I are trying to take care of a two-year-old with full-time

14    jobs.

15          THE COURT:  And how do you manage now?

16          THE PROSPECTIVE JUROR:  He's in daycare.  We

17    alternate drop off and pick up.  Our work schedules fluctuate.

18          THE COURT:  So if you were -- what time do those

19    things need to happen?

20          THE PROSPECTIVE JUROR:  So, I try to get on a train

21    as early as possible and drop him off at 7:30.  Sometimes we

22    alternate and he gets dropped off later.  But a three-year-old

23    spending close to eight, nine hours in daycare, it's a little

24    bit much on him, I think.

25          THE COURT:  And so the pick up in the evenings is?

1           THE PROSPECTIVE JUROR:  It's like five o'clock.

2           THE COURT:  I see.  And there's nobody that could

3    help out?

4           THE PROSPECTIVE JUROR:  No, no.  Unfortunately, my

5    father, while he lives on Long Island, I don't trust him with

6    my son.  And my mother is in Florida and my wife's parents are

7    in Italy.

8           THE COURT:  And there are no neighbors or other

9    trusted friends who --

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  The drop off might not be a problem

12   because it's early.

13          THE PROSPECTIVE JUROR:  Unfortunately not, yeah.

14          MR. DE CASTRO:  No objection.

15          MS. KOMATIREDDY:  We would like further questioning,

16   Your Honor.

17          THE COURT:  Okay, let me ask you a couple of

18   questions about the other things that you indicated.  You said

19   that you have some friends and cousins who are police

20   department?

21          THE PROSPECTIVE JUROR:  Yeah, NYPD, yeah.

22          THE COURT:  Will that have an affect on your ability

23   to be fair and impartial in a criminal case?

24          THE PROSPECTIVE JUROR:  You know, as much as they

25   are police officers, I rarely speak to them.  I just answered

1  the question.  So, I don't think -- I don't think I will be

2  unfair or impartial based on that.

3          THE COURT:  So you would believe or not believe a

4  police officer just like any other witness?

5          THE PROSPECTIVE JUROR:  Sure.

6          THE COURT:  And then you also indicated that many

7  years ago you had spent overnight, you said, in jail.

8          THE PROSPECTIVE JUROR:  Yeah, yeah.

9          THE COURT:  Was there anything about that experience

10  that would cause you to be unfair?

11          THE PROSPECTIVE JUROR:  No, no.  Just, you know,

12  reckless, you know, I want to say child, but I was in my early

13  20s, but, you know, being young and stupid.

14          THE COURT:  Okay.  That's fine.  You also said that

15  you had some fear of sitting on this jury.  Can you tell us

16  about that?

17          THE PROSPECTIVE JUROR:  I mean, the case is a huge

18  case and I watch too much TV, so it's, you know, probably just

19  movie-driven fear, you know, that's when you if hear the word

20  cartel, it's like wow, it's big.

21          THE COURT:  Sure.

22          THE PROSPECTIVE JUROR:  You know.

23          THE COURT:  Do you think that thought would have any

24  affect on your ability to focus on the trial and render --

25          THE PROSPECTIVE JUROR:  No.

1           THE COURT:  -- a fair verdict?

2           THE PROSPECTIVE JUROR:  No, no, not really.

3           THE COURT:  So you would be able to focus and not

4   let any fear or outside concerns affect whether you render a

5   verdict of guilty or not guilty?

6           THE PROSPECTIVE JUROR:  Honestly, probably not, no.

7           THE COURT:  And it would be just based on the

8   evidence?

9           THE PROSPECTIVE JUROR:  Yeah, right.

10          THE COURT:  Okay.  And then there is some indication

11  that you or someone you knew had used drugs.

12          THE PROSPECTIVE JUROR:  Yeah.  Yes, I have.

13          THE COURT:  And does that -- do you think that will

14  affect your ability to sit on a drug case.

15          THE PROSPECTIVE JUROR:  I don't think so.  I mean,

16  it's so far in my past right now.  So, being, you know, a

17  father and a husband and a professional now, then it's all in

18  my past.

19          THE COURT:  Right.  Right.  Okay.  And then you said

20  you weren't sure if you would get paid, can you talk about

21  that?

22          THE PROSPECTIVE JUROR:  So I confirmed, I get 80

23  hours.

24          THE COURT:  80 hours.

25          THE PROSPECTIVE JUROR:  Yeah, so it's 10 days's pay

1    from my company.

2            THE COURT:  Right.  Okay.  And if you ended sitting

3    on this jury and it was eight weeks rather than ten days?

4            THE PROSPECTIVE JUROR:  That would be tough.  If it

5    wasn't eight weeks, I'd have to use paid time off, of course,

6    and, you know, I don't know what happens after that.

7            THE COURT:  And would that financial situation

8    affect your ability to be fair and focus on the trial?

9            THE PROSPECTIVE JUROR:  It could.  Yeah, I mean, it

10   would make me nervous to pay bills, you know, and, you know,

11   it's a month-to-month basis.  Even though I am fairly

12   successful professional, it's expensive.

13           THE COURT:  Right.  Okay.

14           THE PROSPECTIVE JUROR:  Life is expensive.

15           THE COURT:  Yes, it is.  Okay.  Any follow-up

16   questions?

17           MS. KOMATIREDDY:  No.  We have no objection, Your

18   Honor.

19           THE COURT:  So you are excused.

20           THE PROSPECTIVE JUROR:  Thank you.

21           THE COURT:  Thank you.  You can go back down to the

22   second floor.

23           Juror No. 87.

24           THE COURT:  Juror No. 87, please.

25           (Prospective Juror No. 87 enters.)

1           THE COURT:  Good morning, Juror No. 87, come to the

2    podium, please.

3           How are you doing?

4           THE PROSPECTIVE JUROR:  I'm good.  Thank you.

5           THE COURT:  Good.  You can put your coat on that

6    chair if you want and you can also keep your mask on if you'd

7    like, but you can also take it off.  So we just have a couple

8    of questions for you to follow up on the questionnaire.

9           And you indicated, when you were asked about whether

10   anyone has volunteered with any aspect of criminal defense

11   works that your wife volunteers with a group of tech people

12   and don't know really know the details of what she does.

13          THE PROSPECTIVE JUROR:  Not too much, no.

14          THE COURT:  So you characterized it as leftist

15   causes.  Do you know generally why you think they are leftist?

16          THE PROSPECTIVE JUROR:  Generally, the kind of

17   social justice fear.  I've heard things like -- I mean, the

18   details are fuzzy, but like search queries, that certain

19   search queries lead to like websites dominating certain end of

20   the political spectrum, but I don't know really know the

21   details.

22          THE COURT:  Do you and your wife talk about these

23   issues or --

24          THE PROSPECTIVE JUROR:  I mean, I think we are both

25   people of the left, generally, but I don't really know what

Prospective Juror No. 88                                319

1    she does in this capacity.

2              THE COURT:  Right.  And then when you say people of

3    the left, will that affect your ability to be fair and

4    impartial in a criminal case like this?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  So would you tend to favor the

7    prosecution or the defendant just without hearing the

8    evidence?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  So would you decide the case based just

11   on the evidence that you hear and be fair to both sides in

12   this case?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  All right.  Any follow-up questions?

15             MR. DE CASTRO:  No.

16             MS. KOMATIREDDY:  No.  Thank you, Judge.

17             THE COURT:  Thank you.  You can go back across the

18   hall.

19             (Prospective juror 87 exits.)

20             THE COURT:  We are ready for Juror No. 88.

21             Juror No. 88, you can step up, please.

22             (Prospective Juror No. 88 enters.)

23             THE COURT:  How are you doing?

24             THE PROSPECTIVE JUROR:  Over here?

25             THE COURT:  You can stand at the podium.  There is a

1   microphone there.  You can take your mask off if you are more

2   comfortable or you can leave it on.

3            We just had a couple of follow-up questions based on

4   the answers that you gave on the questionnaire.

5            You indicated that -- I'll start with your hardship

6   question.  You said you're nervous as a juror.

7            THE PROSPECTIVE JUROR:  Yeah.

8            THE COURT:  Can you talk about that a little bit?

9            THE PROSPECTIVE JUROR:  It's just something, you

10  know, I just -- I...I don't know, I don't know, I can't

11  explain it, just....

12           THE COURT:  Well, it's natural to be -- yeah, it's

13  natural to be nervous.  It's not a normal circumstance.

14           THE PROSPECTIVE JUROR:  Exactly.  It's not

15  something, you know, that I ever did before, so.

16           THE COURT:  We try our best to put people at ease.

17           THE PROSPECTIVE JUROR:  Thank you.

18           THE COURT:  And people will also explain things to

19  you so that you won't feel like you don't understand.  But

20  we're looking for people who can be fair and impartial and

21  will focus on the trial because it's important to everybody

22  involved.  We just want to make sure that, you know, you would

23  be an appropriate person under those circumstances.

24           THE PROSPECTIVE JUROR:  Right.

25           THE COURT:  So do you think the fact that this is a

1   drug-related crime would affect your ability to be fair to

2   both sides in this case?

3            THE PROSPECTIVE JUROR:  I mean, you know, I -- I see

4   what's going on in the world and what's going on in the

5   country with all the drugs coming in, you know, so I -- I

6   mean, I see that aspect of it, it's hard for me to be here at

7   this moment to say I will be fair or won't be fair.  I've

8   never been in that situation, so I really -- like, I'm being

9   as honest as I can.

10            THE COURT:  Sure.

11            THE PROSPECTIVE JUROR:  I can be listening and

12   something might be said and I might sway that way that I feel

13   he's guilty, you know.  I don't know.  I don't know, to be

14   honest with you.

15            But, you know, I see what's going on in this

16   country.  And my nephew is a cop and he tells me a lot of

17   what's going on on the streets with the drugs.

18            THE COURT:  Well, we all live in the world and it's

19   quite natural to see things --

20            THE PROSPECTIVE JUROR:  Right.  Right.

21            THE COURT:  -- and hear things --

22            THE PROSPECTIVE JUROR:  Right.

23            THE COURT:  -- and to believe things.  The issue is

24   whether you can set aside any preconceived ideas and be fair

25   to the parties.  And, so, when you said you might listen to

1  evidence and be swayed one way or the other, that's fine,

2  because you're suppose to consider the evidence and at some

3  point you'll make a decision.

4            THE PROSPECTIVE JUROR:  Right.

5            THE COURT:  And make a decision of choosing one side

6  over the over.  But as long as it is just based on the

7  evidence and not based on other outside things or improper

8  forces or preconceived notions that you can't set aside, then

9  that's fine.

10           THE PROSPECTIVE JUROR:  Yeah.  Like I said, it's

11 hard for me to say at this moment if that would be the case.

12 I'm being very honest.

13           THE COURT:  But will you keep an open mind and

14 listen to the evidence?

15           THE PROSPECTIVE JUROR:  Yeah.

16           THE COURT:  Okay.  You mentioned that your nephew is

17 a police officer.  Do you think the fact that you have a close

18 tie to somebody who's law enforcement will affect your ability

19 to be fair to both the prosecution and the defendant in this

20 case?

21           THE PROSPECTIVE JUROR:  You know, I mean, I see what

22 he's going through and I see how, you know, things with, you

23 know, the past administration, how the whole department has

24 been treated, so I have all of that in my head from him, so

25 that -- you know, that does have an effect on me because he

1   means so much to me and, you know, he tries do a good job in

2   the way that he's been treated, not that everyone treats him

3   unfairly, but the last couple years has been difficult on him

4   and on his department.

5               THE COURT:  Right.  And the issue would be if

6   somebody was law enforcement and testifying, whether you would

7   believe that person just because they are law enforcement or

8   would you treat them just like any other witness?

9               THE PROSPECTIVE JUROR:  To be honest, I would

10  probably look more to them as being more honest than anyone

11  else.

12              THE COURT:  Okay.  And would you listen and assess

13  their credibility to see if he were being honest on the stand

14  or would you just believe them?

15              THE PROSPECTIVE JUROR:  I, you know, I will try to

16  keep an open mind again, you know -- I -- it's hard -- I would

17  try to keep an open mind, I guess, but it's hard for me, you

18  know.

19              MS. KOMATIREDDY:  No objection, Your Honor.

20              MR. DE CASTRO:  No objection.

21              THE COURT:  Well, thank you for being so open with

22  us.  You're excused.

23              THE PROSPECTIVE JUROR:  Okay.

24              (Prospective juror 88 exits.)

25              THE COURT:  Juror 89, please.

Prospective Juror No. 89                              324

1          (Prospective Juror No. 89 enters.)

2          THE COURT:  Good morning, Juror No. 89.  You can

3    step up to this podium here.

4          THE PROSPECTIVE JUROR:  All the way?

5          THE COURT:  Yes.  You can put your bag and your coat

6    on the chair if you'd like.

7          THE PROSPECTIVE JUROR:  Okay.

8          THE COURT:  How are you doing today?

9          THE PROSPECTIVE JUROR:  I'm all right.  Thank you.

10         THE COURT:  Good.  We just had a few questions based

11   on the answers that you gave on the questionnaire.

12         You indicated that you or someone you know worked as

13   Port Authority Police and also as a court officer.  Are those

14   people --

15         MS. KOMATIREDDY:  No, no, no.  I said that I

16   applied.

17         THE COURT:  You applied?  Okay.  I'm sorry.  So you

18   applied for these positions?

19         THE PROSPECTIVE JUROR:  Yeah.

20         THE COURT:  And, so, the fact that you are

21   interested in becoming a Port Authority Police or a court

22   officer, do you think that would affect your ability to be

23   fair in a case that involved law enforcement.

24         THE PROSPECTIVE JUROR:  No.  I mean --

25         THE COURT:  Would you be fair?

1          THE PROSPECTIVE JUROR:  Yes, yes.

2          THE COURT:  Okay.  And if there were a witness who

3    was law enforcement and an another witness was not law

4    enforcement, would you tend to believe one over the other just

5    because of the --

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  -- who they are?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  All right.  You also mentioned you have

10   a cousin who is a lawyer.

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Do you ever talk about legal issues?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  Okay.  The question there would be

15   whether, when Judge Cogan instructs you on what the law is,

16   you would be affected by what somebody else told you the law

17   was.  Would you apply the law as Judge Cogan instructs you?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  All right.  Great.  It is there any

20   reason why you could not be a fair and impartial juror in this

21   case?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  All right.  Any follow up?

24         MR. DE CASTRO:  No.

25         MS. KOMATIREDDY:  37, Your Honor.

1          THE COURT:  37.

2          So you had served on a jury before, but you weren't

3  sure -- wait.  Let me just see.  You didn't indicate whether

4  you had reached a verdict or not.  This was in 2019.  Do you

5  remember whether you reached a verdict?

6          THE PROSPECTIVE JUROR:  2019, that was grand jury.

7          THE COURT:  Grand jury, so you wrote down murder,

8  murder --

9          THE PROSPECTIVE JUROR:  That was previous because I

10  was more than one jury.

11          THE COURT:  Okay.  Thank you for clarifying that.

12          In the murder trial, was there a verdict?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Don't tell me what it was.  I just

15  wanted to know if you had reached a verdict.  And, then, just

16  to let you know for a grand jury, the burden of proof is

17  probable cause.  In a trial like this, the burden of proof is

18  beyond a reasonable doubt.  It's higher.

19          THE PROSPECTIVE JUROR:  Okay.

20          THE COURT:  Can you apply a higher standard?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Great.  Anything else?

23          Thank you very much.  You can go back across the

24  hall.

25          THE PROSPECTIVE JUROR:  Thank you.

1              (Prospective juror 89 exits.)

2              THE PROSPECTIVE JUROR:  Juror No. 90.

3              (Prospective Juror No. 90 enters.)

4              THE COURT:  Hello.  You can step right up here.  You

5     can put your coat on the chair if you want.

6              THE PROSPECTIVE JUROR:  Over here?

7              THE COURT:  Yes.  And if you want to keep your mask

8     on, that's fine, or you can to take it off if you feel more

9     comfortable.

10             How are you doing today?

11             THE PROSPECTIVE JUROR:  How you doing?

12             THE COURT:  I'm good.  Thanks.

13             I have one question for you on the questionnaire,

14    you were asked about the possibility that there would be

15    Government be witnesses who testified --

16             THE PROSPECTIVE JUROR:  Right.

17             THE COURT:  -- pursuant to a cooperation agreement

18    with the Government, and you were asked whether you could

19    accept a rule of law that the Government does not have to

20    present a specific type of evidence.  I don't know whether you

21    meant to check off that you would have a problem with that,

22    but I just wanted to check with you.

23             Did you understand the question?

24             THE PROSPECTIVE JUROR:  Is that how I answered the

25    question?

Prospective Juror No. 90                          328

1              THE COURT:  It says yes or no and sometimes people

2     get mixed up.

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  So do you have a problem with accepting

5     that the Government does not have to provide a specific type

6     of evidence?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  Great.  Thank you for that

9     clarification.

10             Is there any reason that you could not be a fair and

11    impartial juror in this case?

12             THE PROSPECTIVE JUROR:  There's no reason.

13             THE COURT:  No reason.  Okay.  Great.  Any follow-up

14    questions?

15             MS. KOMATIREDDY:  No, Your Honor.  Thank you.

16             THE COURT:  All right.  Thank you very much.

17             THE PROSPECTIVE JUROR:  Okay.

18             THE COURT:  You can go back across the hall.

19             THE PROSPECTIVE JUROR:  Thank you.

20             (Prospective juror 90 exits.)

21             THE COURT:  The way the questionnaire is worded,

22    sometimes it's a little confusing.  So when they check off a

23    box that causes concern, I sometimes ask for clarification.

24    The yes and no's are reversed on occasion, so it's hard to

25    follow.

1          MS. KOMATIREDDY:  We do that on purpose, Your Honor,
2     to make sure they are paying attending.
3          THE COURT:  Sometimes they get tripped up.
4          So Juror No. 91.
5          (Prospective Juror No. 91 enters.)
6          THE COURT:  Hi, Juror No. 91, you can step up to the
7     podium.  And you can put your coat down on the chair if you
8     want.
9          THE PROSPECTIVE JUROR:  All right.
10          THE COURT:  Right here, try to make it easier for
11     you.  And you can keep your mask on if you want.
12          THE PROSPECTIVE JUROR:  Okay.
13          THE COURT:  So I saw that you were an alternate
14     juror in a civil case.
15          THE PROSPECTIVE JUROR:  Yeah.  Like I don't remember
16     the exact year.  It was like 2005, 2006, something like that,
17     out in Riverhead.
18          THE COURT:  That's okay.  You may have been
19     instructed that the burden of proof there is preponderance of
20     the evidence of the evidence.
21          THE PROSPECTIVE JUROR:  Uh-hum.
22          THE COURT:  In a criminal case, the burden of proof
23     is higher, it's beyond a reasonable doubt.
24          THE PROSPECTIVE JUROR:  Okay.
25          THE COURT:  Can you apply that higher standard?

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Okay.  And is there any reason that you

3    could not be a fair and impartial juror in this case?

4              THE PROSPECTIVE JUROR:  I don't think so.

5              THE COURT:  All right.  Is there anything that you

6    want to let the Court know about that you didn't have a chance

7    to tell us?

8              THE PROSPECTIVE JUROR:  Not really, other than it's

9    a really far travel for me.

10             THE COURT:  I'm sorry about that.

11             THE PROSPECTIVE JUROR:  Yeah.

12             THE COURT:  But we do appreciate your willingness to

13   serve on this case.  So if you could go back across the hall,

14   we'll get back to you.

15             THE PROSPECTIVE JUROR:  Okay.

16             THE COURT:  Thank you.

17             (Prospective juror 91 exits.)

18             THE COURT:  Juror No. 93.

19             MS. KOMATIREDDY:  Your Honor, some of these jurors

20   where there is not a lot of follow up for cause, if you

21   wouldn't mind asking general questions about what they read

22   just to get a sense of who they are.  It's hard to exercise

23   our peremptories.

24             THE COURT:  Okay.

25             MS. KOMATIREDDY:  Just hear them talk a little bit.

1          THE COURT:  Okay.  Juror No. 93.

2          (Prospective Juror No. 93 enters.)

3          THE COURT:  Good morning.  How are you doing?

4          THE PROSPECTIVE JUROR:  Good morning.

5          THE COURT:  So you can put your coat there.  Yes.

6          We had a couple of follow-up questions for you.

7          THE PROSPECTIVE JUROR:  Sure.  Should I be using

8    this?

9          THE COURT:  You can leave it there.  It will pick

10   up.  You don't need to do anything.

11         THE PROSPECTIVE JUROR:  All right.

12         THE COURT:  So you had a concern that you might need

13   to take a frequent bathroom breaks.

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  But that's fine.  Judge Cogan will

16   accommodate that.  You just need to let him know when you need

17   to take a break.  I know in the course of the trial the Court

18   takes a lot of breaks anyway:

19         THE PROSPECTIVE JUROR:  Uh-hum.

20         THE COURT:  You also indicated that you had traveled

21   to Mexico at some point.  Do you think that would affect your

22   ability to be fair in a case that involves Mexico?

23         THE PROSPECTIVE JUROR:  No problem.

24         THE COURT:  Okay.  You also indicated in that your

25   spouse had been assaulted at some point.

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Do you think that experience would

3    affect your ability to be fair?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Was there ever any report -- police

6    report made in that case?

7              THE PROSPECTIVE JUROR:  Yes.  The person was

8    arrested, held in, I think, the detention center.  I don't

9    know if it was Rikers, for two years, and then a deal was

10   struck up between the DA and the assailant's lawyers, a plea

11   bargaining.  We became aware of it the night before the

12   judgment and the judge was making the judgment wasn't even

13   aware that it was originally an assault, so we were not happy

14   with that.

15             THE COURT:  Right.  I'm sorry to hear that.

16             THE PROSPECTIVE JUROR:  Uh-hum.

17             THE COURT:  Do you think that experience would make

18   you not be fair in this case if you were to sit as a juror?

19             THE PROSPECTIVE JUROR:  No, probability THE

20   opposite.

21             THE COURT:  In what sense?

22             THE PROSPECTIVE JUROR:  I would want to have

23   justice.

24             THE COURT:  Okay.  So, would you keep an open mind

25   and listen to the evidence and render a verdict that's based

1    just on the evidence that's presented to you?

2              THE PROSPECTIVE JUROR:  Sure.

3              THE COURT:  Because you said justice, I want to make

4    sure that you will not rush to justice.

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  Okay.

7              THE PROSPECTIVE JUROR:  Just the opposite.

8              THE COURT:  Excellent.  Got it.

9              You indicated that you are not in favor of marijuana

10   being legal.

11             THE PROSPECTIVE JUROR:  No.

12             THE COURT:  Do you think -- this case involves

13   drugs, cocaine, not marijuana.  Do you think your views on

14   drugs will affect your ability to be fair in this case?

15             THE PROSPECTIVE JUROR:  As long as -- yeah, yeah,

16   fine.

17             THE COURT:  As long as, you said?

18             THE PROSPECTIVE JUROR:  It's understood that I don't

19   think the legalization of marijuana is correct.

20             THE COURT:  Great.  Like I said, the case involves

21   allegations of importation and distribution of cocaine.

22             THE PROSPECTIVE JUROR:  Uh-hum.

23             THE COURT:  That is illegal.

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  The question is whether there is

1  anything that would make you not be fair.

2          THE PROSPECTIVE JUROR:  Uh-hum.

3          THE COURT:  And you would apply the law as you're

4  instructed?

5          THE PROSPECTIVE JUROR:  Correct.

6          THE COURT:  All right.  Is there anything else that

7  you want to tell the Court that you weren't able to tell us in

8  the questionnaire?

9          THE PROSPECTIVE JUROR:  No, nothing that the Court

10 doesn't already know about the joy of commuting here.

11         THE COURT:  Okay.  I appreciate that hardship.

12 Would it affect your ability to sit on this jury?

13         THE PROSPECTIVE JUROR:  In the actual performance of

14 it, no.

15         THE COURT:  Okay.

16         THE PROSPECTIVE JUROR:  The coming here, very much

17 so.

18         THE COURT:  I know.  I know it's a large district

19 and you are traveling far.

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  So I appreciate your willingness.

22         THE PROSPECTIVE JUROR:  I'm basically retired and

23 getting up at 5:30 in the morning is not something I look

24 forward to.

25         THE COURT:  Thank you for your willingness to serve.

1          And my last question is, is there any reason you

2    could not be a fair and impartial juror?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Any questions?

5          MS. KOMATIREDDY:  Just follow up, Your Honor.  May I

6    ask the Court either for sidebar to do it privately?

7          THE COURT:  Sure.  One moment.  Let me talk to the

8    lawyers.

9          THE PROSPECTIVE JUROR:  Uh-hum.

10         (The following occurred at sidebar.)

11         THE COURT:  Yes.

12         MS. KOMATIREDDY:  The juror appeared to express some

13   negative view or disapproval of individuals who strike a plea

14   deal.  The witnesses in this case will be multiple cooperating

15   witnesses.  If you could please ask, Your Honor, does the fact

16   that a witness has entered into a plea deal with the

17   Government or a cooperation deal with the Government, would

18   that affect his ability to consider the witness' testimony

19   fairly and impartially just as he would have to consider

20   testimony of another witness.

21         THE COURT:  Okay.

22         (End of sidebar conference.)

23         (In open court.)

24         THE COURT:  I just had one follow-up question.

25         THE PROSPECTIVE JUROR:  Okay.

Prospective Juror No. 94                    336

1          THE COURT:  You expressed that in your wife's

2    assault case that you were unhappy that there had been a plea

3    deal struck in that case.  There may be witnesses in this case

4    who testify and will tell you that they entered into a plea

5    deal with the Government.

6          THE PROSPECTIVE JUROR:  Uh-hum.

7          THE COURT:  Would you hold that against that witness

8    or would you consider that witness' testimony just like

9    anybody else?

10         THE PROSPECTIVE JUROR:  No, my concern with the plea

11   deal is that it was done at the last minute without our

12   knowledge.

13         THE COURT:  Okay.  So you wouldn't hold it against

14   the person --

15         THE PROSPECTIVE JUROR:  No.

16         THE COURT:  -- who pled guilty?

17         Would you hold it against the Government that they

18   entered into a plea deal with somebody who is testifying?

19         THE PROSPECTIVE JUROR:  No.

20         THE COURT:  All right.  Anything else?

21         MS. KOMATIREDDY:  No.  Thank you, Judge.

22         THE COURT:  Thank you very much.  You can go back

23   across the hall.

24         THE PROSPECTIVE JUROR:  You're welcome.

25         (Prospective juror 93 exits.)

1              (Prospective Juror No. 94 enters.)

2              THE COURT:  Juror No. 94.  Good morning.  How are

3    you?

4              You're Juror No. 94?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  How are you doing?

7              THE PROSPECTIVE JUROR:  Good.  And you?

8              THE COURT:  You can put your bag down if that's more

9    comfortable for you.  We had a couple of follow-up questions

10   based on the answers that you gave on the questionnaire.  I'll

11   start with your childcare issue.  You said that that might be

12   a hardship for you if you were to sit on this jury.

13             THE PROSPECTIVE JUROR:  Yeah.  I'm mainly

14   responsible for watching my siblings while my parents are at

15   work.  They come on when I'm about to leave for work.

16             THE COURT:  How old are your siblings?

17             THE PROSPECTIVE JUROR:  Eight and thirteen.

18             THE COURT:  Okay.

19             So is there anyone else that might be to take over

20   for you if you were on the jury?

21             THE PROSPECTIVE JUROR:  I mean, it's a question --

22   it's a toss up.  If my aunt is going to be home certain days,

23   if we can get somebody home.  We don't have anyone guaranteed

24   who will always be available.

25             THE COURT:  All right.

Prospective Juror No. 97                    338

1           MS. KOMATIREDDY:  We have no objection, Your Honor.

2           MR. DE CASTRO:  We have no objection.

3           THE COURT:  So, you're excused.  You can go back to

4    the jury office on the second floor and let them know you have

5    been excused from this jury.

6           THE PROSPECTIVE JUROR:  Thank you.

7           THE COURT:  Thank you.

8           (Prospective juror 94 exits.)

9           THE COURT:  So for Juror 97, what should I focus on?

10   I see the hardship.

11          MR. DE CASTRO:  I have just the business trip.

12   Excuse me.  And the pay issue.

13          (Prospective Juror No. 97 enters.)

14          THE COURT:  Good morning, Juror No. 97, step up,

15   please.

16          How are you?

17          THE PROSPECTIVE JUROR:  I'm good.  How are you?

18          THE COURT:  All right.  You can put your coat down,

19   and you can keep your mask on of you can take it off, whatever

20   is comfortable.  You indicated that you might have a business

21   trip coming up.

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Can you tell us about that?

24          THE PROSPECTIVE JUROR:  I work for post office and

25   so far they have schedule some trainings for us and my name

Prospective Juror No. 97                              339

1   was on the list during the period -- of the trial, so I'm not

2   sure if it's going to be permanent or it's just going to be

3   like a set of people from the list and go, so that I cannot be

4   jury service.

5          THE COURT:  And the dates you have here are some

6   time between March 10th and April 5?

7          THE PROSPECTIVE JUROR:  Yeah.

8          THE COURT:  I mean, there is some possibility that

9   the trial will be finished by then, but it might go longer.

10  If the trial went into that period, is there any possibility

11  of you rescheduling it?

12         THE PROSPECTIVE JUROR:  I can talk to the managers

13  and see, because I mentioned that them.  So far they just say

14  we have to wait for the information and then I'm kind of

15  waiting for a notice.

16         THE COURT:  Right.  And then you also said you

17  weren't sure if you would be paid if you were sitting on this

18  jury for eight weeks.

19         THE PROSPECTIVE JUROR:  Yeah, I asked them about it

20  and they said I will be paid.

21         THE COURT:  You will be paid.  That's good to hear.

22         And you mentioned that you or someone you know had

23  contact with law enforcement either by being stopped,

24  prosecuted or arrested.  Can you tell us about that?

25         THE PROSPECTIVE JUROR:  Yes.  It's a family member,

1  my dad.  Before I moved to New York, we owned a restaurant

2  business and when he hires illegal aliens for cheap labor and

3  then one day the -- I guess the -- the law enforcement came to

4  the house, arrest my dad because they charge him for -- was it

5  human trafficking?  Because the law, if you're housing an

6  alien or transporting them to work, it counts as human

7  trafficking.

8           THE COURT:  Right.

9           THE PROSPECTIVE JUROR:  So my dad was sentenced for

10  that, but then he, under the law, he plead guilty, so they

11  kind of reduced the sentence, the punishment.  I think he has

12  fines and like year to two years of the -- what was it?  The

13  probation period.  That was it.

14           THE COURT:  All right.  Okay.  And, so, would the

15  experience that your father went through, that your family

16  went through, would that affect your ability to be fair and

17  impartial if you were sitting on a criminal trial like this?

18           THE PROSPECTIVE JUROR:  I believe so, because I

19  believe the law is kind of -- it's not there just to punish

20  people, just telling people what's right and what's wrong,

21  that won't affect me at all.

22           THE COURT:  So could you apply the law as the judge

23  in this case will instruct you and not say I think the law

24  should be something else?

25           THE PROSPECTIVE JUROR:  I definitely will apply the

1  law.

2          THE COURT:  Your hand is on the microphone.

3          THE PROSPECTIVE JUROR:  Sorry.

4          THE COURT:  That's all right.

5          Would you be -- do you have any feelings about the

6  way your father was treated that might affect your ability to

7  be fair to the Government in this case?

8          THE PROSPECTIVE JUROR:  Honestly, I believe I won't

9  have that much....

10          THE COURT:  That you don't have much what?

11          THE PROSPECTIVE JUROR:  I won't have -- how do I

12  explain this?  It probably would not affect me, but in my

13  point of view right is right, wrong is wrong.  Since we hired

14  illegal alien, we were wrong, so I definitely will apply the

15  law.

16          THE COURT:  Thank you for letting me know.

17          THE PROSPECTIVE JUROR:  Okay.

18          THE COURT:  Is there any reason that you could not

19  be fair and impartial if you were picked as a juror?

20          THE PROSPECTIVE JUROR:  No, I don't believe so.

21          THE COURT:  Any follow-up questions?

22          MS. KOMATIREDDY:  Yes, Your Honor.

23          THE COURT:  Is there a question number?

24          MS. KOMATIREDDY:  There are substantive questions.

25  Would you like me to approach?

1          THE COURT:  Yes.  Give us just a moment.

2          THE PROSPECTIVE JUROR:  All right.

3          THE COURT:  We will talk at sidebar.

4          (The following occurred at sidebar.)

5          MS. KOMATIREDDY:  We are curious --

6          THE COURT:  Keep your voice up.

7          MS. KOMATIREDDY:  We are curious what agency

8    arrested his father.  Homeland Security Investigations is one

9    of the case agencies in this case.  We also expect testimony

10   from either individuals in -- we expect testimony from

11   individuals in the Department of Homeland Security who handle

12   immigration matters, and one of the charges in this case

13   relates to a naturalization application.

14         THE COURT:  Okay.

15         MS. KOMATIREDDY:  And, so, our question is, one,

16   just a factual question of what agency arrested his father,

17   but also does the fact that HSI is involved in this

18   prosecution, would that affect his ability to be fair.  The

19   Government -- does he have any animus against the Government

20   or just ask specifically that would hinder his ability to hear

21   our evidence, our arguments.

22         THE COURT:  You said it is DHS?

23         MS. KOMATIREDDY:  It's a subset of DHS.  It is a HSI

24   case agent, Homeland Security Investigations case agent.  And

25   then there will be witnesses from U.S. CIS, United States

1   Citizenship and Immigration Services.

2          THE COURT:  So I will just say immigration.

3          MS. KOMATIREDDY:  Sure.

4          MR. DE CASTRO:  Did he say he worked for the post

5   office?  I just didn't hear.

6          MS. KOMATIREDDY:  He said he worked for the post

7   office.

8          THE COURT:  I can clarify.

9          MR. DE CASTRO:  Whether that has any effect.

10          THE COURT:  It's a U.S. agency.

11          MR. DE CASTRO:  I suppose.

12          THE COURT:  Thank you.

13          (End of sidebar conference.)

14          (In open court.)

15          (Prospective Juror No. 97 enters.)

16          THE COURT:  I just had a few follow-up questions.

17          THE PROSPECTIVE JUROR:  Sure.

18          THE COURT:  In your father's case, do you remember

19   or do you know the name of the agency that was involved in

20   that?

21          THE PROSPECTIVE JUROR:  Honestly, I don't remember.

22   All I remember was some form ... I don't remember ... I'm

23   sorry.  I don't recall.  It's been years.

24          THE COURT:  Could it have been the Department of

25   Homeland Security?

1    THE PROSPECTIVE JUROR:  Yeah, involved Homeland

2  Security.

3    THE COURT:  Or the immigration services?

4    THE PROSPECTIVE JUROR:  Yeah.

5    THE COURT:  Given your father's involvement in the

6  case, in a case where you might have officers of those

7  agencies or those types of agencies testifying, would you

8  treat their testimony like any other witness or would you have

9  some bias against them?

10    THE PROSPECTIVE JUROR:  I won't have any bias

11  against them.  I will just treat them like a regular witness.

12    THE COURT:  Okay.  And then you mentioned at one

13  point -- do you work for the post office?

14    THE PROSPECTIVE JUROR:  Yeah, I'm still working for

15  them right now.

16    THE COURT:  Is it the U.S. Postal Service?

17    THE PROSPECTIVE JUROR:  Yes.

18    THE COURT:  And that's a Government agency.

19    THE PROSPECTIVE JUROR:  Yes.

20    THE COURT:  Do you think you would tend to favor a

21  Government agency because you work for one or would you be

22  fair?

23    THE PROSPECTIVE JUROR:  I will be fair.

24    THE COURT:  Does that address the questions?

25    MS. KOMATIREDDY:  Thank you, Your Honor.

Prospective Juror No. 97                    345

1          THE COURT:  Great.  Thank you very much.  You can go

2    back across the hall.

3          THE PROSPECTIVE JUROR:  All right.

4          (Prospective juror 97 exits.)

5          THE COURT:  Juror 98 is not here, so it is juror 99.

6    All right.

7          (Continued on next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Prospective Juror No. 99 enters.)

2          THE COURT:  Good morning.  Come up to the podium,

3    please.

4          How are you doing?  Okay.  You're Juror No. 99 and

5    you can put your coat down if that's better for you and you

6    can leave your mask on or take it off, whatever is

7    comfortable.  We just have a couple of follow-up questions.

8          You put down that you have some hardship that would

9    prevent you from sitting on this case.  Can you tell us about

10   that?

11         THE PROSPECTIVE JUROR:  It's medical issues because

12   of -- I am diabetes and I have problems with my bladder.

13         THE COURT:  Okay.

14         THE PROSPECTIVE JUROR:  And this way, medication

15   which I'm taking, I have to, I feel uncomfortable, I have to

16   go often to restrooms.

17         THE COURT:  Okay.  During the trial, if you were a

18   juror, the judge would accommodate your needing to use the

19   bathroom.  They could take several breaks if you need to.  Is

20   it, you know, every hour?

21         THE PROSPECTIVE JUROR:  I would be uncomfortable.

22         THE COURT:  Yes, I know, I know, but could you sit

23   for a half hour, hour?

24         THE PROSPECTIVE JUROR:  Usually it takes me about

25   three times, sometimes more.

Prospective Juror No. 100                           347

1          THE COURT:  Three times --

2          THE PROSPECTIVE JUROR:  An hour.

3          THE COURT:  An hour?  I see.

4          MR. DE CASTRO:  No objection.

5          THE COURT:  That's fine.  So three times an hour you

6    need to use the bathroom.

7          MS. KOMATIREDDY:  No objection, Your Honor.

8          MR. DE CASTRO:  No objection.

9          THE COURT:  So thank you for letting us know.

10   You're excused.

11         THE PROSPECTIVE JUROR:  Thank you.

12         THE COURT:  Go down to the second floor and let them

13   know you're excused.

14         THE PROSPECTIVE JUROR:  Thank you.

15         (Prospective Juror No. 99 excused.)

16         So for Juror 100, what should I focus on?

17         MR. DE CASTRO:  We have 35, 44, 50, 56 and 61.

18         MS. KOMATIREDDY:  I concur with those as well,

19   Your Honor.

20         THE COURT:  Okay.

21         (Prospective Juror No. 100 enters.)

22         THE COURT:  Good morning, Juror No. 100.  Step right

23   up, please.  How are you doing?

24         THE PROSPECTIVE JUROR:  Good morning.

25         THE COURT:  We just had a few follow-up questions --

1        THE PROSPECTIVE JUROR:  Sure.

2        THE COURT:  -- based on the answers that you gave.

3        So I'll start with the answer you gave when you were

4   asked about law enforcement as witnesses and you said that law

5   enforcement professionals have a higher standing and

6   expertise.

7        THE PROSPECTIVE JUROR:  Yes.  I feel that -- I know

8   mechanics and I know transportation and stuff like that.

9   That's not my expertise.  Law enforcement, they're trained.

10  That's their profession.  I feel that their opinion and

11  finding should have a higher degree of weight than somebody

12  like me.

13       THE COURT:  But they wouldn't have a higher degree

14  of expertise in mechanics, for example?

15       THE PROSPECTIVE JUROR:  Right.

16       THE COURT:  You would have that.

17       THE PROSPECTIVE JUROR:  Yes, exactly.

18       THE COURT:  So do you think they have a higher

19  degree of honesty than regular people?

20       THE PROSPECTIVE JUROR:  Honesty?  No.

21       THE COURT:  So if they weren't asked to speak about

22  something that they had expertise in, you would judge them

23  like anyone else?

24       THE PROSPECTIVE JUROR:  Yes.

25       THE COURT:  And when you talk about expertise, is

1    there something you have in mind that they know better than

2    other people?

3              THE PROSPECTIVE JUROR:  Well, just, I guess, lack of

4    better words, mechanics of investigating, technical

5    investigating and following through to I guess bringing a

6    defendant to trial.

7              THE COURT:  And would you assume that they knew what

8    they were doing or would you wait to hear them actually talk

9    about it?

10             THE PROSPECTIVE JUROR:  I would probably assume they

11   would know what they were doing, yes.

12             THE COURT:  Okay.  So I see here also that you have

13   some family members who are NYPD and also your father, you

14   said, is with the Department of Homeland Security.

15             THE PROSPECTIVE JUROR:  Retired, yes.

16             THE COURT:  Retired.  So the fact that you have law

17   enforcement ties, would that affect your ability to be fair?

18             THE PROSPECTIVE JUROR:  No, it would not.

19             THE COURT:  But is that where you developed this

20   idea that law enforcement has expertise?

21             THE PROSPECTIVE JUROR:  Likely, yes.

22             THE COURT:  So you also said that the authorities

23   should do what they should, what's necessary to punish people

24   who bring drugs to the United States.

25             THE PROSPECTIVE JUROR:  Yes.

1              THE COURT:  Would you be inclined to vote in favor

2     of the government based on that or would you have an open mind

3     and be fair to both the defendant and the prosecution?

4              THE PROSPECTIVE JUROR:  I would try to have an open

5     mind first, yes.

6              THE COURT:  Do you think you would be successful?

7              THE PROSPECTIVE JUROR:  I think so, yes.  It's

8     something I think that certainly needs to be pursued but, yes,

9     I would have an open mind.

10             THE COURT:  Okay.  So I -- is there any reason that

11    you would not be fair if you were picked as a juror in this

12    case?

13             THE PROSPECTIVE JUROR:  No, I don't believe so.

14             THE COURT:  Are there any follow-up questions?

15             MR. DE CASTRO:  One second, Your Honor.

16             MS. KOMATIREDDY:  Your Honor, we would just ask that

17    you reask 59.

18             THE COURT:  Okay.  So you were asked about the

19    presumption of innocence, that every person is presumed

20    innocent until or unless proven guilty beyond a reasonable

21    doubt.  That means that the government has the burden of proof

22    at all times.

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Defendant does not have to prove

25    anything.  Are you able to accept that that's the case?

1        THE PROSPECTIVE JUROR:  Honestly, I don't know.

2        THE COURT:  All right.

3        THE PROSPECTIVE JUROR:  It's tough to say because

4  there's so much -- it just, I guess, in sort of like modern

5  society like the media and everything else, especially the way

6  things are tilted, you always assume things like guilty beyond

7  innocence.  We have a thing too where somebody gets charged at

8  work for violating something at work, they would say, well,

9  you're guilty, you have to prove yourself innocent.

10 Unfortunately, I think we're tainted that way a lot.

11       THE COURT:  Right.  Right.  Well, I understand what

12 you're saying.  In the court --

13       THE PROSPECTIVE JUROR:  Right.

14       THE COURT:  -- we try very hard to make sure that

15 people are presumed innocent.

16       THE PROSPECTIVE JUROR:  Yes.  I understand, yes,

17 hope so.

18       THE COURT:  At the beginning before any evidence has

19 been presented, the person is presumed innocent.

20       THE PROSPECTIVE JUROR:  Yes, I would hope so.

21       THE COURT:  And as evidence comes in, you may or may

22 not decide that that has changed and so the question is the

23 starting point --

24       THE PROSPECTIVE JUROR:  Yes.

25       THE COURT:  -- of innocence.  Are you able to accept

1   that?

2            THE PROSPECTIVE JUROR:  Yes, everybody is innocent

3   coming in.

4            THE COURT:  Yes.  Okay.  And then you can't find

5   that somebody's guilty unless you find that the government has

6   proven beyond a reasonable doubt that the person is guilty.

7            THE PROSPECTIVE JUROR:  Beyond reasonable doubt,

8   yes, I accept that.

9            THE COURT:  Can you accept that?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  And do you think you can apply that

12  standard?

13           THE PROSPECTIVE JUROR:  Yes.

14           THE COURT:  The Judge will instruct you on what it

15  means.

16           THE PROSPECTIVE JUROR:  Right.

17           THE COURT:  I just want to make sure that you

18  understand.

19           Did you have any questions to follow up?

20           MR. DE CASTRO:  No, no, Judge.

21           THE COURT:  All right.  Great.  Thank you very much.

22           THE PROSPECTIVE JUROR:  Have a good day.

23           THE COURT:  Was there any reason that you could not

24  be fair?

25           THE PROSPECTIVE JUROR:  No, no, Your Honor.

1          THE COURT:  Great.  So you can go back across the

2   hall.

3          THE PROSPECTIVE JUROR:  Have a wonderful day.

4          MR. DE CASTRO:  I do have one thing to raise.

5          THE COURT:  Okay.

6          (Prospective Juror No. 100 exits.)

7          THE COURT:  Go ahead.

8          MR. DE CASTRO:  Judge, this is a difficult one for

9   me.  I'm not really sure.  I mean, I think he's a cause.  The

10  answer that "I assume that law enforcement knows what they're

11  doing" I think just makes him a cause, makes him a cause

12  strike.

13         THE COURT:  Yes.  I tried to explore what he meant

14  by that.  I know he said from an honesty perspective, he would

15  be fair.  I was hoping to get a little guidance from the

16  parties as to what kind of expertise might law enforcement may

17  be called on to testify to.  So I'll hear from the government

18  on this issue.

19         MS. KOMATIREDDY:  Sure, Your Honor.  First, with

20  respect to the assumption, that's why I asked for the

21  follow-up of 59.  I wanted to make sure he could still apply

22  the standard of a presumption of innocence and I think

23  Your Honor made it clear that he could.  So I think our, the

24  only lack of clarity in my mind was whether there was an

25  assumption of guilt coming in and he made it clear that's

1   not --

2              THE COURT:  I don't think that's the issue.

3              MS. KOMATIREDDY:  Okay.

4              THE COURT:  The issue is what he said when I asked

5   about law enforcement and he said very clearly, "I believe

6   they have expertise, I believe they know what they're doing."

7              MS. KOMATIREDDY:  I understand.  We won't be calling

8   any law enforcement witness, expert to opine on the

9   defendant's guilt.

10             THE COURT:  Well, no, no.  Okay.  Let me back up.

11             If they're being called as an expert, of course you

12  can assess their expertise.

13             MS. KOMATIREDDY:  Right.

14             THE COURT:  The issue is whether he would assume, in

15  his words, "they know what they're doing."  And so if they're

16  being asked any questions where their expertise is not being

17  directly addressed and, therefore, talked about, but there's

18  some way in which people, someone like him would assume, as he

19  said, that the person knew, the law enforcement officer knew

20  what he was doing, that that would affect, that would be an

21  improper way of assessing that witness' testimony.

22             So can you think of what the law enforcement

23  officers will be testifying to and that might help assess

24  whether what he just said would be a problem?

25             MS. KOMATIREDDY:  Yes, Your Honor.  I may be a

1   little confused but I'll give you as much as I can as far as

2   the topic that you're asking about.

3            Law enforcement officers will be testifying as to

4   their observations.  They will be fact witnesses in this case.

5   And so I don't think it's a matter of an inference about

6   whether someone is good at what they're doing or not.  It's

7   more about -- it's fact testimony.  It's what they saw, what

8   they didn't see, what they heard, what they didn't hear.  As

9   long as he can weigh that, and he said he would think of fact

10  testimony and honesty in the same way he would with any other

11  witness, I think he's fine.

12           THE COURT:  All right.

13           MR. DE CASTRO:  Well, two things, Judge.  I mean the

14  expert piece which is, of course, the juror would be

15  instructed on the expert issue but going in, I assume

16  everything the expert says, okay, but putting that aside, this

17  table is also law enforcement.  So if this juror is going to

18  potentially believe, I assume, yes, these fact witnesses,

19  well, they know what they're doing, their operational

20  decisions make sense, their decisions to go after X target or

21  to do X, Y and Z, the government's decisions to enter into

22  agreements with particular witnesses, I assume they know what

23  they're doing and it's the right thing to do.

24           I think that is a cause challenge.

25           THE COURT:  Can you think of any questions that I

Jury Selection                                          356

1   should ask to flesh this out?

2          MR. DE CASTRO:  I mean my view is you tried.  You

3   tried several times.  I don't know what else you could ask.

4   You asked it several times different ways and he just --

5   again, I have no problem with him saying, I don't take honesty

6   at issue, people can be honest or dishonest.  I just assume

7   that what they do, they know what they're doing, I will just

8   accept that without, and that's the concern.  I don't know

9   what else you could ask.  You could ask it again.

10         MS. KOMATIREDDY:  I think Your Honor can ask exactly

11  this question which wasn't asked which is:  Understanding that

12  the government, the law enforcement officials on the

13  prosecution team have brought this prosecution.  Will you

14  assume -- you said that you assumed that they generally knew

15  what they were doing.  Would you assume they were correct in

16  the case, will you apply the presumption of innocence and

17  understand everyone is presumed innocent unless and until

18  proven guilty beyond a reasonable doubt and not apply any

19  default assumptions.

20         MR. DE CASTRO:  I don't have any problem with that

21  except for the compound situation where it's like mixing the

22  different questions.  I'd start --

23         MS. KOMATIREDDY:  The Judge is better at phrasing it

24  than I am.

25         THE COURT:  Please don't interrupt.

1              So what is your suggestion?

2              MR. DE CASTRO:  I just mean not pumping in the

3     presumption of innocence piece, like mixing it in, then I

4     think we're going to be here for another ten minutes with him.

5     So maybe we can do each one separate is my thought.  I don't

6     have any problems.

7              THE COURT:  Okay.  So what I'll ask is:  You said

8     that you would assume law enforcement knows what they're

9     doing.  The prosecution and agencies who have brought the case

10    here have brought the case.  Would you assume that they know

11    what they are doing and, therefore, that the person must be

12    guilty because they brought the case.  Something along those

13    lines?

14             MR. DE CASTRO:  That sounds fine.

15             THE COURT:  Okay.  So if Juror 100 is still there,

16    let's have him brought in.  Otherwise --

17             THE CLERK:  101 is here.  I can get 100 next.

18             THE COURT:  So let's do 101 because 101 is available

19    and then we can recall 100.

20             (Prospective Juror No. 101 enters.)

21             MR. DE CASTRO:  Judge, we only have 44 on this one.

22             THE COURT:  All right.  Juror No. 101, you can come

23    to the podium up here.  How are you?

24             THE PROSPECTIVE JUROR:  Good.  How are you?

25             THE COURT:  Good.  Thank you.  I just had a few

1   follow-up questions --

2            THE PROSPECTIVE JUROR:  Okay.

3            THE COURT:  -- based on the questionnaire answers

4   you gave.

5            You mentioned that you have an uncle who's NYPD and

6   an aunt who is an FBI agent.

7            THE PROSPECTIVE JUROR:  Correct, yes.

8            THE COURT:  So the fact that you have these law

9   enforcement members of the family, do you think that would

10  affect your ability to be fair in this case that is a criminal

11  case?

12           THE PROSPECTIVE JUROR:  It shouldn't.  No.  No.

13           THE COURT:  So if there were a witness who was

14  testifying who was law enforcement --

15           THE PROSPECTIVE JUROR:  Right.

16           THE COURT:  -- would you think just because the

17  person is law enforcement, that they're telling the truth, or

18  would you judge them just like any other witness?

19           THE PROSPECTIVE JUROR:  I'll judge them like any,

20  like any other witness.

21           THE COURT:  Okay.  Great.  And you mentioned that

22  you've been stopped in traffic situations by law enforcement.

23           THE PROSPECTIVE JUROR:  Yes, correct.

24           THE COURT:  Would any of those interactions affect

25  your ability to be fair in this case?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  No?  Okay.  Is there anything that you

3    haven't told or had the opportunity to tell the court that you

4    want to let us know in terms of your ability to be a juror?

5          THE PROSPECTIVE JUROR:  No.  I think everything,

6    everything I put on the questionnaire.

7          MR. DE CASTRO:  71, please.

8          THE COURT:  Okay.  And did you -- in terms of your

9    salary, you said you don't think you'll get paid if you're

10   sitting on the jury.

11         THE PROSPECTIVE JUROR:  Yeah, I won't.  I won't.

12         THE COURT:  Is that going to be a problem for you?

13         THE PROSPECTIVE JUROR:  It depends on how long the

14   case will go on for.

15         THE COURT:  Well, the case is anticipated to go on

16   for about eight weeks.

17         THE PROSPECTIVE JUROR:  Eight weeks?  Okay.  So

18   about two months?

19         THE COURT:  About two months.

20         THE PROSPECTIVE JUROR:  It shouldn't, it shouldn't,

21   but I'm not, I'm not entirely sure.

22         THE COURT:  Okay.  Well, you know, the jurors get

23   paid a jury fee.

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  But I don't know how much you're making

1    otherwise.  So if you're -- are you working -- if you were

2    sitting on the jury, would you not be able to work?  You have

3    here that you're self-employed.

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  So it's a little bit hard to say.

6              THE PROSPECTIVE JUROR:  So I wouldn't be able to

7    work if I'm here.

8              THE COURT:  But you say here you're an options

9    trader.  Is that something you would be doing at night?

10             THE PROSPECTIVE JUROR:  No, this is daytime.

11             THE COURT:  Daytime?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  So I just want to make sure that if

14   you're sitting on this eight-week jury, that you can focus --

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  -- on what's happening rather than be

17   worried about money.

18             THE PROSPECTIVE JUROR:  Right.

19             THE COURT:  Can you focus on the trial and be

20   present?

21             THE PROSPECTIVE JUROR:  Yeah, I, I should be able

22   to, I should be able to.

23             THE COURT:  Okay.  Do you have any doubts about

24   that?

25             THE PROSPECTIVE JUROR:  Any doubts?  Again, I

1   mean --

2            THE COURT:  You never know until you're there.

3            THE PROSPECTIVE JUROR:  Yes.

4            THE COURT:  But everybody wants to make sure that

5   people who are here, that the parties have your full

6   attention.

7            THE PROSPECTIVE JUROR:  Right.  Yes.

8            THE COURT:  Will they have your full attention?

9            THE PROSPECTIVE JUROR:  Yes, if I'm here, yes, they

10  would.

11           THE COURT:  Great.  Is there any reason you could

12  not be a fair and impartial juror?

13           THE PROSPECTIVE JUROR:  No.

14           THE COURT:  Great.  Any follow-up questions?

15           MR. DE CASTRO:  No, Your Honor.

16           MS. KOMATIREDDY:  No.  Thank you.

17           THE COURT:  Thank you so much.  You can go back

18  across the hall.

19           ( Prospective Juror No. 101 exits.)

20           THE COURT:  So let's have Juror 100 back.

21  Juror 100.

22           (Prospective Juror No. 100 enters.)

23           THE COURT:  Sorry to bring you back.  We just had a

24  follow-up question.

25           THE PROSPECTIVE JUROR:  Sure.

1          THE COURT:  So I wanted to ask you a little bit more

2     about the statement you made that you would assume that law

3     enforcement knows what they're doing.

4          THE PROSPECTIVE JUROR:  Okay.

5          THE COURT:  So the prosecutors here brought the case

6     based on an investigation by law enforcement.  They themselves

7     are considered law enforcement.  There will be people

8     testifying about their background as law enforcement officers.

9     So I wanted to know since they brought the case, whether you

10    would assume they knew what they were doing by bringing the

11    case and whether, notwithstanding what we discussed about the

12    presumption of innocence --

13         THE PROSPECTIVE JUROR:  Right.

14         THE COURT:   -- that you would assume that somebody

15    was guilty because the case was brought after the law

16    enforcement officers looked at the case and made an

17    assessment.

18         THE PROSPECTIVE JUROR:  I'm not sure, really, how to

19    sort of answer that, I guess, fairly because, like I said,

20    this is their profession, this is what they put their life's

21    work into and, like, they wouldn't have brought a defendant

22    forward if they didn't really believe that that defendant

23    committed whatever they're being charged with.  So it's almost

24    like -- it's like true, in their professional opinion, you

25    would say, almost like a doctor, in my opinion.  A doctor goes

Prospective Juror No. 100                                    363

1    through years of schooling and even, you know, for somebody in

2    a position as yourself, you don't get there just by waking up

3    one morning and saying I'm going to do this.

4            So for these people to do this and to be sure that

5    this particular person is guilty, is committing whatever

6    crimes they are, there's a good chance they did.

7            THE COURT:  Okay.  All right.  And there are

8    different standards.

9            THE PROSPECTIVE JUROR:  Right.

10           THE COURT:  So the standard for bringing a case is

11   probable case, it probably happened.  In order to convict, you

12   would have to find beyond a reasonable doubt.

13           THE PROSPECTIVE JUROR:  Yes.

14           THE COURT:  And so there is a difference and the

15   concern is whether you would say, well, because they're

16   professionals, they do this all the time, they're working in

17   good faith, that if they brought the charges, just because the

18   person they believe --

19           THE PROSPECTIVE JUROR:  Right.

20           THE COURT:  -- the person is probably guilty, I'm

21   going to defer to their judgment and then kind of go along

22   with them --

23           THE PROSPECTIVE JUROR:  Yes.

24           THE COURT:  -- and find the person guilty.  That

25   would be the concern.  Or whether you could --

1          THE PROSPECTIVE JUROR:  Understood.  And I don't

2     know how to assuage the attorneys that wouldn't happen.  You

3     know?  It's -- I never -- I'll be honest with you, I never sat

4     on a jury before, and I understand the premise behind it but

5     without doing -- I don't know.  I don't know how to answer

6     that.

7          THE COURT:  And maybe the question, like I said, the

8     concern would be if you went along with what they said --

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  -- or whether you could have exercise

11     independent critical judgment to say I don't know.

12          THE PROSPECTIVE JUROR:  Yes, I would listen to both

13     sides, of course, yes.  I would listen to both arguments.

14          THE COURT:  Okay.  And would you be able to say --

15          THE PROSPECTIVE JUROR:  If the defendant's argument

16     is more convincing, then yes.

17          THE COURT:  But the defendant doesn't have a burden

18     of proof.

19          THE PROSPECTIVE JUROR:  Right.

20          THE COURT:  So the defendant could just have no

21     argument and just sit there and say nothing and yet the

22     government could still fail in its burden of proof.

23          THE PROSPECTIVE JUROR:  Uh-huh.

24          THE COURT:  And the question is whether you would be

25     able to do that or whether you would say, come on, defendant,

1    how come you haven't said anything.

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  That would be a problem.

4              THE PROSPECTIVE JUROR:  I don't know.  I don't know.

5    I'm sorry.

6              THE COURT:  No, that's fine.  We want you to be as

7    open with us as possible.

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  So do you think you would be able to say

10   that it's the government's burden of proof?

11             THE PROSPECTIVE JUROR:  I might not be able to say

12   that wholly.  I apologize.

13             THE COURT:  That's fine.  So you think that you

14   might put the burden on the defendant --

15             THE PROSPECTIVE JUROR:  Possibly, yes.

16             THE COURT:  -- to do things?

17             All right.  So any follow-up?

18             All right.  So based on that, you're excused.

19             THE PROSPECTIVE JUROR:  Thank you.  I'm sorry.

20             THE COURT:  Thank you very much.  I appreciate your

21   candor.  I know it's difficult.

22             THE PROSPECTIVE JUROR:  Have a great day.  Take

23   care.

24             THE COURT:  Thank you.

25             (Prospective Juror No. 100 excused.)

1           MS. KOMATIREDDY:  Thank you for the follow-up

2    question, Your Honor.

3           THE COURT:  Okay.

4           Juror 102.

5           MR. DE CASTRO:  We have 58, 60, 61 and 62.

6           THE COURT:  Okay.

7           MS. KOMATIREDDY:  Same here, Your Honor.

8           THE COURT:  Okay.  And I think we have the same

9    possible confusion with the burden of proof on 59 so I'll ask

10   about that as well.  Juror 102.

11          (Prospective Juror No. 102 enters.)

12          THE COURT:  Hi, Juror No. 102.  Step right up,

13   please.

14          How are you doing?

15          THE PROSPECTIVE JUROR:  I'm fine, thank you, ma'am.

16          THE COURT:  Good.  We have a couple of follow-up

17   questions based on your questionnaire answers.

18          THE PROSPECTIVE JUROR:  Okay.

19          THE COURT:  So I'll start with the answer you gave

20   with regard to a law enforcement officer and I couldn't quite

21   figure out what you were, what your answer was that you wrote

22   down.  The question was that there would be several witnesses

23   who are law enforcement officers and would you judge their

24   testimony the same way as you would anyone else.  Can you tell

25   us?

1      THE PROSPECTIVE JUROR:  I think what I tried to say

2  was that law enforcement has more insight than, say, a

3  civilian.  So and they would have more, I guess, answers to

4  the questions.  So I think that was my answer.

5      THE COURT:  I see.  Okay.  And do you -- would you

6  judge their honesty the same way as anyone else or would you

7  tend to believe them more?

8      THE PROSPECTIVE JUROR:  I think you hold them to a

9  higher standard --

10      THE COURT:  Okay.

11      THE PROSPECTIVE JUROR:  -- because they're police

12  officers.

13      THE COURT:  So you would --

14      THE PROSPECTIVE JUROR:  -- hold them to a higher

15  standard, yes.

16      THE COURT:  So you would tend to not believe them

17  or believe them?

18      THE PROSPECTIVE JUROR:  No, I would believe them.

19      THE COURT:  I see.  Okay.

20      THE PROSPECTIVE JUROR:  Right.

21      THE COURT:  So you might tend to believe them more

22  than someone else?

23      THE PROSPECTIVE JUROR:  Probably, yes.

24      THE COURT:  Okay.  And you also said in answer to

25  the question about the defendant does not need to testify or

Prospective Juror No. 102                              368

1   present any evidence and you said follow the evidence.  So I

2   wasn't sure what you meant by that.

3            THE PROSPECTIVE JUROR:  So he doesn't have to defend

4   himself.  He doesn't have to show any proof.

5            THE COURT:  No, the burden of proof is on the

6   government.

7            THE PROSPECTIVE JUROR:  Right.

8            THE COURT:  Everybody is presumed innocent.

9            THE PROSPECTIVE JUROR:  Right.

10           THE COURT:  Okay?  And then the only time that you

11  can be found guilty is if the government presents enough proof

12  to prove beyond a reasonable doubt that you are guilty.  So in

13  that process, you don't have to say anything, you just, you

14  can wait for the government to present its proof and then say

15  that's not enough.

16           THE PROSPECTIVE JUROR:  Right.  Okay.

17           THE COURT:  Or you can also, if you want to, present

18  evidence but you don't have to.

19           THE PROSPECTIVE JUROR:  Right.

20           THE COURT:  So that is the concept.

21           THE PROSPECTIVE JUROR:  Innocent until proven

22  guilty.

23           THE COURT:  Correct.  But also that you don't have

24  to prove yourself innocent.

25           THE PROSPECTIVE JUROR:  Right.

1           THE COURT:  Right?  So sometimes people will think

2    if you don't testify, you must be guilty.  You're not allowed

3    to do that.

4           THE PROSPECTIVE JUROR:  Right.

5           THE COURT:  You're allowed to just sit there and say

6    nothing.  You're allowed to sit there with your arms folded

7    and not do anything.  If the government has proven its case,

8    then you can find the defendant not -- if the government has

9    proven its case, you can find the person guilty, but if the

10   government hasn't proven its case, then --

11          THE PROSPECTIVE JUROR:  Right.

12          THE COURT:  -- you would have to find not guilty.

13          THE PROSPECTIVE JUROR:  I understand, right.

14          THE COURT:  So could you follow that?  I wasn't sure

15   based on your answer.

16          THE PROSPECTIVE JUROR:  Sure.  Yes.

17          THE COURT:  You wouldn't hold it against somebody if

18   he didn't testify?

19          THE PROSPECTIVE JUROR:  No.  No.

20          THE COURT:  I also see in response to a question

21   about witnesses who might be testifying because they're

22   cooperating with the government --

23          THE PROSPECTIVE JUROR:  Right.

24          THE COURT:  -- you put down "dirty," and so I wasn't

25   sure what you meant.

1            THE PROSPECTIVE JUROR:  Plea bargaining, reduced

2    sentence, I think that's what they're doing.  I mean that's my

3    opinion, of course.

4            THE COURT:  Right.  And that does happen and so do

5    you think if somebody is testifying pursuant to a plea

6    agreement, that you would have problems?

7            THE PROSPECTIVE JUROR:  Not really.  I mean

8    self-defense, I guess.  Everyone, you know, like you said,

9    innocent until proven guilty.

10            THE COURT:  Right.  Well, in those cases, somebody

11   would admit their guilt and then enter into an agreement with

12   the government and provide testimony.

13            THE PROSPECTIVE JUROR:  Got you.  Right.

14            THE COURT:  So then the person would come and

15   testify and say certain things and it will also be part of

16   their testimony that they had an agreement with the government

17   to help the government and in exchange, the government would

18   give them a reduced sentence or some other things.

19            So the question is would you have a problem.  You

20   can take it into account --

21            THE PROSPECTIVE JUROR:  No, not really, I wouldn't,

22   no.

23            THE COURT:  So you wouldn't have a problem?

24            THE PROSPECTIVE JUROR:  No.

25            THE COURT:  And you would assess the cooperating

Prospective Juror No. 102                    371

1    witness just like anyone else?

2              THE PROSPECTIVE JUROR:  Yes.  Yes.

3              THE COURT:  Okay.  Let me just see.

4              You mentioned that your brother-in-law has had some

5    drug use issues?

6              THE PROSPECTIVE JUROR:  Incarcerated for half his

7    life, actually.

8              THE COURT:  And so this case involves allegations of

9    drug trafficking.

10             THE PROSPECTIVE JUROR:  Right.

11             THE COURT:  Do you think you could be fair in

12   assessing this case?

13             THE PROSPECTIVE JUROR:  Of course.  Of course.  It's

14   drug use.  Like anything else, I guess, I wouldn't judge

15   anyone because of that.

16             THE COURT:  It's a case that involves drug

17   trafficking.

18             THE PROSPECTIVE JUROR:  Right.

19             THE COURT:  So I just want to make sure that you

20   don't have -- the fact that your brother-in-law had these drug

21   use issues that affected his life, that it would affect your

22   view of whether somebody is guilty or not of drug trafficking.

23   Right?

24             THE PROSPECTIVE JUROR:  Right.  He was a user, not a

25   trafficker.  So ...

1           THE COURT:  Okay.  So you don't think his drug use
2    would be a problem?
3           THE PROSPECTIVE JUROR:  Not really, no.
4           THE COURT:  Okay.  That's fine.
5           Were there any questions I missed?
6           MS. KOMATIREDDY:  43, Your Honor.
7           THE COURT:  All right.  You also indicated that you
8    had been incarcerated at one point because you had a gun in
9    your home.
10          THE PROSPECTIVE JUROR:  My brother.
11          THE COURT:  Your brother?
12          THE PROSPECTIVE JUROR:  My brother.  Sorry.
13          THE COURT:  That's okay.  I misread it.  Is that the
14   same brother?
15          THE PROSPECTIVE JUROR:  No.  This is my actual
16   brother.
17          THE COURT:  Okay.
18          THE PROSPECTIVE JUROR:  The other one --
19          THE COURT:  Oh, the other one was a brother-in-law.
20          THE PROSPECTIVE JUROR:  Right.
21          THE COURT:  Sorry.  So the fact that your brother
22   had been incarcerated and accused of a crime, would that
23   affect your ability to be fair?
24          THE PROSPECTIVE JUROR:  No.  No.
25          THE COURT:  But was he convicted in that case?

1          THE PROSPECTIVE JUROR:  No.  He did, I think, like

2   four or five months and then he was released.

3          THE COURT:  Oh, okay.

4          THE PROSPECTIVE JUROR:  I guess responsibility, I

5   guess.  He had a license.

6          THE COURT:  It's hard to tell.

7          THE PROSPECTIVE JUROR:  Right.

8          THE COURT:  But do you have any feelings about the

9   way your brother was treated that would affect your ability to

10  be fair?

11         THE PROSPECTIVE JUROR:  No, not at all.

12         THE COURT:  Okay.

13         MS. KOMATIREDDY:  Your Honor, we would also just ask

14  if you could reask number 61.

15         THE COURT:  Okay.  So let me ask you about your view

16  on law enforcement.  So law enforcement includes police and

17  FBI and government agencies who are investigating.  It also

18  includes lawyers would work, you know, as part of law

19  enforcement like prosecutors.

20         THE PROSPECTIVE JUROR:  Right.

21         THE COURT:  And so you said that you thought they

22  had expertise and more insight and more answers to questions.

23  Would the fact that they've made a decision in this case to

24  bring charges against an individual, would you give deference

25  to that or would you just say, all right, they believe that

1    there's a case but I'm going to make a judgment independently

2    of the fact that they brought the case?

3            THE PROSPECTIVE JUROR:  I would just follow the

4    proof.

5            THE COURT:  All right.

6            THE PROSPECTIVE JUROR:  And I'm sure they clocked in

7    many hours of what they do.  I was in the Army for 12 years

8    so.

9            THE COURT:  Oh, okay.

10           THE PROSPECTIVE JUROR:  So more or less, I was a

11   police officer.

12           THE COURT:  You were a police officer, you said?

13           THE PROSPECTIVE JUROR:  MP.

14           THE COURT:  Okay.  MP.  So what -- you started to

15   say, and therefore --

16           THE PROSPECTIVE JUROR:  Yeah, you just got to follow

17   the leads and --

18           THE COURT:  Right.

19           THE PROSPECTIVE JUROR:  -- and catch them in the

20   act.

21           THE COURT:  Right.  And in this case, it's a little

22   bit different because you're a juror.

23           THE PROSPECTIVE JUROR:  Right.

24           THE COURT:  You're not police.

25           THE PROSPECTIVE JUROR:  No, I'm not judging.

1       THE COURT:  But you will be judging --

2       THE PROSPECTIVE JUROR:  Right.

3       THE COURT:  -- at some point when you hear the

4    evidence.

5       THE PROSPECTIVE JUROR:  Okay.

6       THE COURT:  And so even though the investigators are

7    following the proof and they reached a point where they're in

8    the courtroom, you as the juror need to look at it fresh.

9       THE PROSPECTIVE JUROR:  Right.  Okay.

10      THE COURT:  You need to look at just what they

11   present to you because at the end of the day, if they don't

12   proof, give you enough, you, as the juror, enough proof to

13   convince you that they have a case beyond a reasonable doubt,

14   then you should not find them guilty even if the law

15   enforcement thinks the person's guilty.

16      THE PROSPECTIVE JUROR:  Right.  Right.

17      THE COURT:  Can you do that?

18      THE PROSPECTIVE JUROR:  Yes.  Yes.

19      THE COURT:  So you would be looking at the case with

20   fresh eyes?

21      THE PROSPECTIVE JUROR:  Right.

22      THE COURT:  And not rely on the fact that law

23   enforcement said that they would bring the case?

24      THE PROSPECTIVE JUROR:  Keep an open mind, correct.

25      THE COURT:  Yes.  Can you do that?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  And be fair to both sides?

3          THE PROSPECTIVE JUROR:  Uh-huh.

4          THE COURT:  Okay.  And presume the person is

5    innocent?

6          THE PROSPECTIVE JUROR:  Until proven guilty,

7    correct.

8          THE COURT:  Until or unless, right?  They may not be

9    proven guilty.

10          THE PROSPECTIVE JUROR:  Right.

11          THE COURT:  Would you be able to render a verdict of

12    not guilty if you felt there was not enough proof?

13          THE PROSPECTIVE JUROR:  Yes.  I don't have a problem

14    with that.

15          THE COURT:  All right.  Thank you very much.  You

16    can go back across the hall.

17          THE PROSPECTIVE JUROR:  Thank you.

18          (Prospective Juror No. 102 exits.)

19          THE COURT:  I'm getting a little bit better at

20    asking that question.

21          All right.  So Juror No. 103.

22          MS. KOMATIREDDY:  I will say, Your Honor, I think

23    we're going at a good pace.  We do appreciate the questions.

24          THE COURT:  Yes.

25          MR. DE CASTRO:  We have 35, 44 and 47 for 103.

Prospective Juror No. 103                          377

1              THE COURT:  Okay.

2              (Prospective Juror No. 103 enters.)

3              THE COURT:  Hi, Juror No. 103.  Step up to the

4     podium.  How are you doing?

5              THE PROSPECTIVE JUROR:  Good.

6              THE COURT:  We had a few follow-up questions for

7     you.  You indicated on the questionnaire that you had applied

8     for the Department of Homeland Security --

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  -- at some point and also the Police

11    Department and Port Authority police.

12             So the fact that you're interested in joining law

13    enforcement, do you think that would affect your ability to be

14    fair in a criminal case that involved law enforcement?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  So if a law enforcement witness were

17    testifying, would you believe that person just because they're

18    law enforcement?

19             THE PROSPECTIVE JUROR:  No.

20             THE COURT:  Or judge them like everybody else?

21             THE PROSPECTIVE JUROR:  Like everyone else.

22             THE COURT:  Okay.  You, and the fact that you -- it

23    says, I'm sorry to bring it up, that you were not accepted at

24    law enforcement, your application, and also that you withdrew

25    some of your applications.

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Would that -- do you have any hard

3    feelings about law enforcement as a result?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  Okay.  You also mentioned that a friend

6    is a paralegal, a close friend?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Do you ever talk about law with that

9    friend?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  Okay.  If Judge Cogan instructed you as

12    to what the law is, would you follow that law or think

13    somebody else said the law is something else?

14          THE PROSPECTIVE JUROR:  No, I'd follow it.

15          THE COURT:  Great.  Was there anything that we

16    didn't ask you on the questionnaire that you think the court

17    should know in terms of your jury service?

18          THE PROSPECTIVE JUROR:  No.

19          MS. KOMATIREDDY:  Number 20, Your Honor, please.

20          THE COURT:  20?  What field -- are you a paralegal?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Okay.  Great.  So you're working with

23    lawyers all the time?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  And I'll just ask the question again.

1             If Judge Cogan told you this is what the law is,

2    would you be able to follow it or would you say that's not

3    what the lawyers that I work with tell me?

4             THE PROSPECTIVE JUROR:  I'd be able to follow it.

5             THE COURT:  You would follow what the judge says?

6             THE PROSPECTIVE JUROR:  Yes.

7             THE COURT:  Okay.  And then as far as whether you

8    are going to get paid while you're on jury duty, the jury duty

9    is likely to be eight weeks long.

10            THE PROSPECTIVE JUROR:  Okay.

11            THE COURT:  Have you checked with your employer to

12   see if you would get paid?

13            THE PROSPECTIVE JUROR:  I have not.

14            THE COURT:  Can you find out?

15            THE PROSPECTIVE JUROR:  Yes.

16            THE COURT:  All right.  Because you said you don't

17   know and so if there's a way, maybe during one of our breaks

18   today, just call them and say, Listen, this trial may be eight

19   weeks, the court wants to know if I would get paid for that

20   time?

21            THE PROSPECTIVE JUROR:  Yes.

22            THE COURT:  Is there any reason you could not be

23   fair and impartial if you're picked as a juror?

24            THE PROSPECTIVE JUROR:  No.

25            THE COURT:  Any questions?

Prospective Juror No. 107                 380

1              MR. DE CASTRO:  Can we just ask what type of work

2       the firm she works for does?

3              THE COURT:  Oh, yes.  What kind of law firm --

4              THE PROSPECTIVE JUROR:  Mostly landlord/tenant, real

5       estate.  That's about it.

6              THE COURT:  Great.  Thanks very much.  You can go

7       across the hall.

8              THE PROSPECTIVE JUROR:  Thank you.

9              (Prospective Juror No. 103 exits.)

10             THE COURT:  Juror 107.  What questions?

11             MR. DE CASTRO:  We have 3, 37 and 41.

12             MS. KOMATIREDDY:  Same here, Your Honor.

13             THE COURT:  Okay.  And then also 71.

14       Okay.  107.

15             (Prospective Juror 107 enters.)

16             THE COURT:  Hello.  How are you doing?

17             THE PROSPECTIVE JUROR:  Fine.

18             THE COURT:  Can you come up to the podium?  And you

19       can put your coat down if you want.

20             THE PROSPECTIVE JUROR:  Okay.

21             THE COURT:  All right.  We have a few questions for

22       you based on the answers you gave.

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  All right.  So you said that you have

25       some concerns about your English ability?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Can you tell us have you -- do you

3    understand what people are talking to you?

4          THE PROSPECTIVE JUROR:  I can communicate,

5    conversation, but real deep like about this, that

6    questionnaire, I don't quite understand and so I try my

7    best --

8          THE COURT:  Yes.

9          THE PROSPECTIVE JUROR:  -- to answer all the

10   question, but I don't think that English is not good enough to

11   be a good juror.

12         THE COURT:  Right.  Well, the -- you work in sales,

13   it says, right?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Do you work in English?

16         THE PROSPECTIVE JUROR:  Most like customers are

17   Chinese.

18         THE COURT:  What kind of store is it or what kind of

19   sales?

20         THE PROSPECTIVE JUROR:  Like life insurance.

21         THE COURT:  Okay.  And how long have you been -- it

22   says here that you were raised in Taiwan.

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  How long have you been in the United

25   States?

1          THE PROSPECTIVE JUROR:  Forty years.

2          THE COURT:  Fourteen?

3          THE PROSPECTIVE JUROR:  Forty.

4          THE COURT:  Forty?  Okay.  That's a long time.

5          THE PROSPECTIVE JUROR:  It is.

6          THE COURT:  Your English sounds good.

7          THE PROSPECTIVE JUROR:  That's why I say I can talk,

8    communication, but reading a lot of words, the questionnaire,

9    you know, I don't quite understand.

10         THE COURT:  Right.  Okay.  And did you have any

11   questions on the, about the questionnaire that you were not

12   able to understand?

13         THE PROSPECTIVE JUROR:  A lot of it I don't quite

14   understand.

15         THE COURT:  No?

16         THE PROSPECTIVE JUROR:  That's why I put the "yes"

17   or "no."  I cannot write down my own word --

18         THE COURT:  Right.

19         THE PROSPECTIVE JUROR:  -- in the, in the --

20         THE COURT:  I understand.  Yes, that can be hard.

21   And that's why we have "yes" or "no" so it makes it easier.

22         MR. DE CASTRO:  We have no objection.

23         MS. KOMATIREDDY:  We have no objection, Your Honor.

24         THE COURT:  All right.  So thank you for letting us

25   know and you are excused.

1           THE PROSPECTIVE JUROR:  Thank you.

2           THE COURT:  Okay.  You can go back to the second

3    floor.

4           (Prospective Juror No. 107 excused.)

5           THE COURT:  Juror 108.

6           MR. DE CASTRO:  We have 43, 47, 55, 56, 58 and 69

7    and 70, the hardships.

8           MS. KOMATIREDDY:  We would add 38.

9           THE COURT:  38?

10          MS. KOMATIREDDY:  Yes, Your Honor.

11          (Prospective Juror No. 108 enters.)

12          THE COURT:  Good morning.  How are you doing?

13          THE PROSPECTIVE JUROR:  Good.  How are you?

14          THE COURT:  You're Juror No. 108.  We had a few

15   follow-up questions for you.

16          THE PROSPECTIVE JUROR:  Okay.

17          THE COURT:  So I'll start with the hardship that you

18   indicated you might have if you were sitting on this jury.

19          You said you're a single mom with a two-year old?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Yes.  Can you tell us what issues you

22   have?

23          THE PROSPECTIVE JUROR:  Well, her father is

24   incarcerated right now.  I have a domestic violence case

25   against him and an order of protection as well.  So I'm just

1  taking care of her by myself now.

2              THE COURT:  I see.

3              THE PROSPECTIVE JUROR:  So childcare is hard.  I had

4  to find arrangements this morning as well for her to be picked

5  up in case I'm not there in time.

6              THE COURT:  Okay.

7              MR. DE CASTRO:  We have no objection.

8              MS. KOMATIREDDY:  No objection, Your Honor.

9              THE COURT:  All right.  Thank you for letting us

10  know.  You're excused.  You can go back to the second floor.

11             (Prospective Juror No. 107 excused.)

12             THE COURT:  I wanted to see if anybody wants to take

13  a break but I think we're doing okay for now.

14             MR. DE CASTRO:  We can use a break.  We're going

15  pretty fast.

16             THE COURT:  Why don't we take a break after the next

17  one.

18             MR. DE CASTRO:  Okay.

19             (Prospective Juror No. 109 enters.)

20             THE COURT:  So Juror No. 109, how are you doing?

21  Yes, that's fine.  You can stand there.

22             THE PROSPECTIVE JUROR:  Oh, stand there?

23             THE COURT:  Yes.  That's okay.  The chair is there

24  in case you want to put your coat or your bag on it.

25             THE PROSPECTIVE JUROR:  I've been sitting for a long

1    time so standing is fine.

2         THE COURT:  And you can take your mask off if you're

3    more comfortable or leave it on.

4         THE PROSPECTIVE JUROR:  All right.

5         THE COURT:  I see here that you're a retired

6    teacher?

7         THE PROSPECTIVE JUROR:  Yes.

8         THE COURT:  Okay.  So you indicated that you have,

9    your sister works in a law office?

10        THE PROSPECTIVE JUROR:  Yes, many years ago.

11        THE COURT:  Did you ever talk to her about law?

12        THE PROSPECTIVE JUROR:  Not really.

13        THE COURT:  Okay.  So did you have contact with

14   lawyers who would talk about law?

15        THE PROSPECTIVE JUROR:  Not really.  Also I forgot

16   to write that down.  One of my other sisters, she's working

17   for the law firm too.

18        THE COURT:  Okay.

19        THE PROSPECTIVE JUROR:  I think she's the billing

20   manager or something.

21        THE COURT:  Okay.  That's great.  Thank you for

22   letting us know.  And so if you had contact with lawyers, the

23   question is whether you, when Judge Cogan tells you what the

24   law is, you will follow the law as he tells you --

25        THE PROSPECTIVE JUROR:  Okay.

Prospective Juror No. 109                                386

1           THE COURT:  -- or whether you'll think some lawyer

2    told me that it's different and I'm going to do it

3    differently.

4           So would you follow the law as Judge Cogan instructs

5    you?

6           THE PROSPECTIVE JUROR:  Well, he's the judge so I

7    have to follow the judge, right?

8           THE COURT:  Okay.  That's good to know.

9           You mentioned that you had sat on a jury before in a

10   robbery case?

11          THE PROSPECTIVE JUROR:  Yes, many years ago.

12          THE COURT:  Was there anything about that experience

13   that makes it harder for you to be in this case?

14          THE PROSPECTIVE JUROR:  Well, because I was working

15   at that time and I had to leave my class for almost a month

16   and then this is, like, this is too much for me because, you

17   know, like, I really care about my students.  And then, you

18   know, like, you know, like every day is very intense.  You

19   know, I teach them a lot of things.  So if I have to leave

20   them for such a long period of time is not good for them.

21          THE COURT:  Right.

22          THE PROSPECTIVE JUROR:  So, but, you know, like, I

23   remember the attorney asked me who doesn't want to be a juror

24   and then I raised my mind and he said, Okay, you are in.

25          THE COURT:  Oh, my goodness.  All right.  But you're

Case 1:19-cr-00576-BMC   Document 227   Filed 02/28/23   Page 86 of 363 PageID #: 14054

1    retired now?

2              THE PROSPECTIVE JUROR:  Yes, I'm retired now.

3              THE COURT:  That's good.  So that's not a problem?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Wonderful.

6              (Continued on next page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Continuing.)

2          THE COURT:  What were you teaching?

3          THE PROSPECTIVE JUROR:  I was first and second

4    grade.

5          THE COURT:  Okay.  Great.  And I'm sure the students

6    appreciated having you there.

7          THE PROSPECTIVE JUROR:  Yeah.

8          THE COURT:  Okay.  You also mentioned that you had

9    seen somebody get kicked in the face on a train?

10          THE PROSPECTIVE JUROR:  Yeah, when I was riding the

11    train to work, and then out of the blue, somebody just came in

12    and just kicked the person across from me in the face, and

13    then just left, unprovoked.  So I was, like, so shocked.

14          THE COURT:  So is there anything about that

15    experience that would affect your ability to be fair in a

16    criminal case like this?

17          THE PROSPECTIVE JUROR:  I don't think so.  You know,

18    like -- I know because I work in the school system, and then I

19    saw that a lot of kids have issues, so and then they have

20    different kinds of issues.  So by the time they grow up, you

21    know, I think they all going to have, you know, like, issues

22    when they're adults too.  So, like, I don't know how many of

23    them is going to be walking around the street doing crazy

24    things.

25          THE COURT:  All right.  So thank you for sharing

1   that with us.  So I also wanted to understand your answer to a

2   question about witnesses and the kind of proof that the

3   Government needs to show.

4            So the Government, by law, does not have to use any

5   particular kind of evidence.  They have to present evidence,

6   but it's up to them what kind of evidence that they are going

7   to use.  And you wrote that there must be concrete evidence

8   presented of proof -- that proves beyond a reasonable doubt,

9   so I wanted to know what you meant by that, concrete evidence.

10           THE PROSPECTIVE JUROR:  Well, because I believe in

11  objective facts.  So if somebody can present some objective

12  facts that is proven without reasonable doubt, and then I will

13  buy that.

14           THE COURT:  Okay.  So the law says that it doesn't

15  have to be a particular type of evidence, like fingerprint

16  evidence.  You know, sometimes people say, it wasn't that kind

17  of evidence.  Testimony of a witness, even one witness might

18  be enough if it convinces you beyond a reasonable doubt of the

19  person's guilt.

20           So would you be able to accept that testimony alone,

21  even if it's one witness, and maybe the witness is cooperating

22  with the Government, that that might be enough and there

23  doesn't have to be any other type of evidence?

24           THE PROSPECTIVE JUROR:  So, I have to see what kind

25  of things he or she is going to say.  So it's hard for me to

1    judge right now.  So it depends what evidence do I hear at

2    that moment.

3              THE COURT:  Right.  Okay.  Great.  And you shouldn't

4    be judging it because you haven't heard any evidence.

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  But I just wanted to make sure that you

7    would accept that testimony alone, without other evidence,

8    it's possible for you to base a verdict based just on that.

9              THE PROSPECTIVE JUROR:  As long as her testimony is

10   reliable.

11             THE COURT:  Okay.  Great.  Any follow-up questions?

12             MR. De CASTRO:  No, Judge.

13             THE COURT:  Is there any reason that you could not

14   be a fair and impartial juror in this case?

15             THE PROSPECTIVE JUROR:  I'm not -- I don't know.

16             THE COURT:  Okay.  Well, then that's fine.  Then the

17   answer would be that you would be fair?

18             THE PROSPECTIVE JUROR:  Yes.

19             MS. KOMATIREDDY:  I have some follow up on a

20   substantive.  May I suggest a sidebar?

21             THE COURT:  Okay.  Give me a moment while I talk to

22   the lawyers, okay.

23             (Sidebar conference.)

24             (The following occurred at sidebar.)

25             MS. KOMATIREDDY:  Two things, Your Honor.  She used

1   the term objective fact and she used it in writing, as well.

2   I think Your Honor got to this, but if we could just do it in

3   a more pointed way.

4            Would she consider witness testimony an objective

5   fact, even in a case where that witness may have a motive to

6   lie?

7            THE COURT:  Okay.

8            MS. KOMATIREDDY:  And second, given that she's

9   previously been on a criminal robbery trial, I just wonder if

10  she would be comparing evidence, and so I would want to see if

11  we could ask her what was the nature of the evidence in that

12  case, and if she understands that different cases have

13  different types of evidence, so she shouldn't be comparing

14  evidence in this case with whatever the evidence was in that

15  case to determine whether it's sufficient.

16           I worry, for example, that there's a video of a

17  robbery, a surveillance video of a robbery from her prior

18  trial.  As I said before, there's no video in this case.

19           THE COURT:  I worry about getting too much into the

20  weeds about what was in the prior trial.  So that's why I

21  might not say, compare.

22           Is there another way to say what we've sort of been

23  exploring?

24           MS. KOMATIREDDY:  That she doesn't have expectations

25  from her prior case that she's bringing here, that she needs

1   treat it as a different case and with a clean slight.

2            THE COURT:  I see.  Every trial is different.

3            MR. MIEDEL:  On the first question, if you ask about

4   a witness who has a move to lie, obviously, a juror can take

5   into account a motive to lie, so that should be clear, as

6   well.

7            THE COURT:  Yes.  I think that's fair to say object

8   means different things.  But a witness is subjective, so...

9            MS. KOMATIREDDY:  Right.  Exactly.  That's why I'm

10  confused because she put objective.

11           THE COURT:  Okay.  Thank you.

12           (End of sidebar conference.)

13           (In open court; Prospective Juror present.)

14           THE COURT:  Thank you for your patience.  I have a

15  couple of follow-ups request.

16           So in response to one of my earlier questions, you

17  said you were looking for objective facts.  So when a witness

18  testifies, the witness is testifying as to what he or she

19  knows, and so you could say it's subjective because it's

20  coming from one person.

21           Would you be able to render a verdict based on

22  testimony, or would you be looking for something more?

23           THE PROSPECTIVE JUROR:  I have to see whether that

24  person, she sound or he sounds reliable or whether, you know,

25  like, he or she is being sincere, and then what is his and her

1    objective about giving those testimonies.

2            And do you mean there's only one witness in the

3    case?

4            THE COURT:  Well, the case is going to last for

5    eight weeks, so I don't think it's going to be one witness,

6    but there could be -- there are several counts, several things

7    that the defendant is charged with.  There could be parts of

8    it where the Government's prove is one witness testifying.

9    And so, you know, it'll be up to you whether you believe the

10   witness, whether you think the witness is reliable, whether

11   you think the witness has a basis to know the things that the

12   witness is testifying to.  All those things are fine, because

13   in the normal course of being a juror, you're listening -- in

14   fact, in normal course of your life, you're always assessing

15   whether to believe somebody or not.  And so that's fine for

16   you to make those assessments.

17           It's just that when you said objective proof, we

18   were wondering what you meant by objective proof, because when

19   a person says, I saw this, I heard that, technically, that's

20   subjective, because it's just that person.  But if you believe

21   the person and you found the person reliable and you took into

22   account, any motive to lie, things like that, and you decided

23   to accept that testimony, whether you would use that testimony

24   as the basis of your verdict or whether you would say, that's

25   not enough, I need to have scientific tests or some other

1    thanks are more objective.  So that's all wire we're trying to

2    figure out, because there could be instances -- you know,

3    probably not the whole trial, but certain parts of it where

4    the proof is a witness who's going to testify.

5                THE PROSPECTIVE JUROR:  So that's going to be the

6    major?

7                THE COURT:  There may be parts of it.

8                THE PROSPECTIVE JUROR:  So I have to, you know,

9    like, look at the whole thing.  You know, also besides the

10   person's subjective testimony, and also I want to see some

11   objective evidence too, like, from maybe the police officer or

12   from other people or witnesses or something so I can make a

13   better judgment.

14               THE COURT:  Right.  And sometimes that will exist

15   and sometimes it doesn't exist or it's not presented to you,

16   right.  So there's certain -- you can imagine circumstances in

17   life where there's one witness, right --

18               THE PROSPECTIVE JUROR:  That's true.  That's true.

19               THE COURT:  So it'll be up to you whether you accept

20   that witness' testimony or not.  But you know, you talked

21   about you were in another trial that involved a robbery.  We

22   don't know what the evidence was in that case.  It may be that

23   there was, you know, other evidence of video, something like

24   that.  But every case is going to be different.

25               THE PROSPECTIVE JUROR:  That's true.

1     THE COURT:  And every case will have different types

2  of evidence, and the jury will look at all of it, and make an

3  assessment as to whether it's enough.  But I just wanted to

4  find out whether if it turned out that it was only eyewitness

5  testimony, and maybe for that piece of it, only one witness,

6  whether you would be able to render a verdict just based on

7  that one witness or you would say, that's never enough.

8     THE PROSPECTIVE JUROR:  Well, I have to look at what

9  he or she is going to say, and then I have to figure out

10  whether it makes sense or not, you know.  So it depends, like,

11  I would not say for sure, but, you know, it all depends upon

12  that witness or that person who gives the testimony.

13     THE COURT:  Right.  Okay.  And if that was all there

14  was and you did say it made sense and I believe the person,

15  could you find that was enough or you would still say, but

16  it's not enough, because it's never enough that it's just a

17  person saying?

18     THE PROSPECTIVE JUROR:  If everything makes sense,

19  so if there's on top of that and that's going to be some other

20  evidence that proved that what she say is right or correct or

21  something like that, so it all depends.

22     THE COURT:  Right.  But if there wasn't other

23  evidence to prove that the person -- again, you can imagine a

24  scenario in your life where there's only one person who saw

25  it.

1     THE PROSPECTIVE JUROR:  That's true.  That's true.

2     THE COURT:  So that would that be enough or would

3  you say, I need to have corroboration?

4     THE PROSPECTIVE JUROR:  It's -- like I said, it all

5  depends what she's going to say, to see whether it's logical

6  or whether it makes sense or something like that.

7     THE COURT:  Right.  And if it was logical and it

8  made sense and it was reliable and you believed it, would that

9  be enough or would you still want somebody to corroborate it?

10     THE PROSPECTIVE JUROR:  I think that that's enough

11  if -- but if there's more evidence that is more helpful in

12  deciding --

13     THE COURT:  Okay.  But it if there wasn't more

14  evidence, would you say, that's enough, or would you say, it's

15  never enough?

16     THE PROSPECTIVE JUROR:  So it all depends what that

17  person is going to say.

18     THE COURT:  I see.  I know I keep asking the same

19  question, but I think you've answered it.  All right.

20     Anything else?

21     MR. De CASTRO:  Judge, there was a mention of, the

22  other objective evidence, and that it, like, a police

23  officer's testimony.

24     Can you ask about that?

25     THE COURT:  Right.  Okay.  So I wanted to find out

1    if there's a police officer that testifies, a police officer

2    is a person just like everyone else and they would be a

3    witness just like everyone else.

4            Would you be able to assess that officer's testimony

5    like any other witness or would you give it greater weight

6    than a non-police officer?

7            THE PROSPECTIVE JUROR:  I think I treat everybody

8    equally.  I don't make any judgment ahead of time.  So it all

9    depends what that person is going to be saying and to see

10   whether it's -- matches everything in the scenario.

11           THE COURT:  Right.  Okay.  And would you like that a

12   police officer's testimony was more objective than a

13   non-police officer's?

14           THE PROSPECTIVE JUROR:  Yeah, because he's a

15   professional, so they're used to, like, dealing with cases

16   like this.  So their evidence should be more reliable.

17           THE COURT:  And so if a police officer were

18   testifying one way and somebody who was not a police officer

19   testified a different way, would you believe the police

20   officer more because you think he's more reliable or would you

21   look at everything?

22           THE PROSPECTIVE JUROR:  I have to look at

23   everything.

24           THE COURT:  Okay.  And so would you give equal

25   weight to a police officer's testimony and a non-police

1    officer?

2              THE PROSPECTIVE JUROR:  Mm hm.

3              THE COURT:  Yes?

4              THE PROSPECTIVE JUROR:  Mm hm.

5              THE COURT:  Okay.  You said there would be

6    professional --

7              THE PROSPECTIVE JUROR:  So because the police

8    officer is a professional and then he or she is working in a

9    law-abiding, you know, profession, so I should give that

10   person more credence or -- for what he or she going to say.

11             THE COURT:  Right.  Okay.  And so when you say, give

12   more credence, do you think they're more believable than

13   someone else?

14             THE PROSPECTIVE JUROR:  Mm hm.

15             THE COURT:  Yes?

16             THE PROSPECTIVE JUROR:  Mm hm.

17             THE COURT:  So if a police officer testified and a

18   non-police officer testified, would you believe the officer

19   more than the non-officer?

20             THE PROSPECTIVE JUROR:  It all depends.

21             THE COURT:  Right.  I know.

22             THE PROSPECTIVE JUROR:  I have to hear and see

23   everything first, you know, so I cannot make any judgment.

24             THE COURT:  Sure.  Well, I think we're also -- I'm

25   trying to ask these questions to see if you're going to put

1   your thumb on the scale a little bit to say, well, police

2   officer, not police officer, police officer more credible,

3   more reliable if everything else is the same.

4            THE PROSPECTIVE JUROR:  Well, it's hard for me to

5   say for sure.  Like, you know, like, you say, do you trust all

6   the teachers.  But some teachers, you know, like, they

7   sexually molested some kids.  So when you say in general, I

8   have to look at a specific case, instead of, you know, saying,

9   oh, I trust all the teachers, you know, like, in general.  So,

10  but even in all professions, you know, there's always some bad

11  apples.  So it all depends.

12           THE COURT:  Okay.  So you would keep an open mind

13  and assess everybody's testimony?

14           THE PROSPECTIVE JUROR:  Yes.  Absolutely.

15           THE COURT:  All right.  Any other questions?

16           MR. De CASTRO:  No, Judge.

17           MS. KOMATIREDDY:  No.

18           THE COURT:  All right.  Wonderful.  Thank you so

19  much.  I'm sorry we took up so much time.  Go across the hall.

20           THE PROSPECTIVE JUROR:  Thank you, all.

21           THE COURT:  Thank you for your candor with us.

22           (Prospective Juror Number 109  exits the courtroom.)

23           THE COURT:  All right.  So maybe this is a good time

24  to take a break time?

25           MS. KOMATIREDDY:  Your Honor, we would move to

1    strike that juror for cause.  The juror articulated on three

2    separate occasions that she would require other evidence, that

3    she, in her own words, separated the person's testimony from

4    objective evidence.  I understand that the Court went back and

5    forth with the juror quite a few times, but in each case when

6    asked whether she could accept this basic principle of law

7    that a single cooperating witness' testimony can be

8    sufficient, she caveated it once by saying what I just

9    mentioned, another time by saying, she would want, on top of

10   that, some other evidence that proved that the witness is

11   right.  Again, in another caveat, she said that she would

12   listen to the witness, but it would be better if there was

13   more evidence that's more helpful in deciding.  I think she

14   was trying her best to answer the Court's question, but I

15   think her significant hesitancy and her demeanor undermines

16   our ability to have confidence in those ultimate assurances

17   and we would move to strike for cause.

18              MR. De CASTRO:  Judge, I don't think she's cause.  I

19   think that we spent a lot of time with her because she's

20   thoughtful and what did she say.  We could pick every little

21   answer where she wasn't sure about something, but that's what

22   a discussion is.  And I think at the end of the day, she said,

23   I can accept the witness as long as I believe them.  It would

24   be nice to have other stuff, and that's true, if I would think

25   anybody would answer that.  So I don't think it's cause.

1      THE COURT:  I spent a lot of time with her because

2  of that and she said there are bad apples in every profession.

3  I think she actually made statements the other that might

4  think that she would favor law enforcement, things, like, I

5  think that they're professionals, but -- and so I tried to

6  probe her both directions of whether she would put the thumb

7  on the scale in favor of law enforcement or require more from

8  law enforcement.  And even though she did say statements that

9  taken alone might seem to be unfair, I think upon probing, she

10  always was, like, but in a particular case, I would look at

11  the totality of the circumstance.  And so I don't think that

12  she is looking for more, that she would require more, because

13  I did ask her if that's all there was, because there's only a

14  witness presented, would you accept that, and she said, well,

15  as long as the witness is reliable and credible, and then went

16  back to all of the factors that she's supposed to be taking

17  into account.

18      So I understand the Government's argument, but I

19  think on the whole, I don't see a cause.  I don't think she's

20  biased one way or the other in this case, or in any event, the

21  statements she's made balance each other out.

22      MS. KOMATIREDDY:  Your Honor, with respect to the

23  statements about police officers, I was listening closely

24  there, as well.  In our view, two wrongs don't make a right.

25  That's not the same balance.  It is equally problematic that

1   she was hesitant in her ability to view law enforcement

2   testimony just like any other witness' testimony.  People

3   should be firm on that, and they should also be firm on their

4   ability to accept that there are not specific investigative

5   techniques required, and a single cooperating witness'

6   testimony is -- can be sufficient, and those are two separate

7   concepts.  People should be firm on both, not sort of hesitant

8   on both.  I don't think that --

9           THE COURT:  Well, I don't think that it's two wrongs

10  make a right.  I think what I'm saying is she has made

11  statements that could give pause, but that's why I kept asking

12  the questions.  We've spent 20 minutes on this witness or on

13  this juror, because there's been a lot of discussion because

14  she will say something and then when I ask her more, she'll

15  clarify what she said.

16          So for example, the use of the word objective, she

17  didn't mean objective the way we were or you are concerned

18  about objective.  I think she wanted to be, you know, to be

19  sure.  I think what she meant there was that it would be

20  something that she felt comfortable with, that it wasn't just

21  a person saying so because she wanted to make sure -- not

22  because she wanted someone else to say so, but she wanted to

23  make sure that person was reliable, sincere, had a good

24  objective -- she used the word objective there, but I think

25  she meant motive.  So I think she understands that every

1  assessment of every witness and every piece of evidence is

2  going to be complicated.  And so for you to say to be firm on

3  both things, the fact that somebody requires further

4  discussion doesn't make them not a good juror.  I think it

5  just means that they are a thoughtful one.  So I did not

6  assess that this is going to be a biased juror.

7          MS. KOMATIREDDY:  I think our concern, Your Honor,

8  is when -- is the weight given to hesitation to a juror's

9  hesitation in court and whether --

10         THE COURT:  The person can hesitate, but as long as

11 they come around to explaining what they mean, that is the

12 reason we have this.  Otherwise, we would simply go on the

13 questionnaire and strike people by virtue of their answering a

14 particular way in all instances.  We wouldn't have a

15 conversation.

16         MS. KOMATIREDDY:  I understand, Your Honor.  But in

17 what we're observing, when there is even the slightest the

18 hesitation that Mr. De Castro raises, that had been a basis

19 for striking a juror where -- it was a perfectly good juror

20 yesterday who was the elected official who said he could do

21 the job and answered every question fine, but the Court struck

22 him any way.  There was a juror early on --

23         THE COURT:  That was not the basis, as I recall.

24         The elected official was a different reason.

25         MS. KOMATIREDDY:  Your Honor surmised that he had

1  some distraction.

2          THE COURT:  The 99-year-old mother who just got

3  released from the hospital.

4          MS. KOMATIREDDY:  Your Honor, he did not articulate

5  that.  And earlier --

6          THE COURT:  No.  We're done, all right.  I've made

7  my ruling.  And if you want to make an issue and say that I'm

8  biased, go ahead.  But that was a completely different issue

9  and I am taking both sides into consideration and I have made

10 my assessment that this juror is not biased.

11         So we're going to take a break.  We'll come back at

12 11:30.

13         (A recess was taken.)

14         THE COURT:  Is there anything from the parties

15 before we call in Juror 110.

16         MR. De CASTRO:  Not from the defense.

17         THE COURT:  Which questions would you like me to

18 focus on?

19         MR. De CASTRO:  We have just 67 and then the

20 hardship, 69 through 71.

21         MS. KOMATIREDDY:  Same for us, Your Honor.

22         (Prospective Juror Number 110 enters the courtroom.)

23         THE COURT:  Good morning, Juror 110.  You can step

24 up.  You can leave your bag on the seat if you'd like, and you

25 can keep your mask on or you take off, whatever is comfortable

1   for you.

2           So you indicated that you work two jobs?

3           THE PROSPECTIVE JUROR:  Yes, I do.

4           THE COURT:  And that sitting on the jury would be a

5   hardship for you?

6           THE PROSPECTIVE JUROR:  Yes, ma'am.

7           THE COURT:  Can you tell us about that?

8           THE PROSPECTIVE JUROR:  Yes.  I'm a nurses.  I work

9   at Columbia University from 9:00 to 5:00, Monday through

10  Friday.  I work at nights, Monday night, Wednesday night, and

11  Thursday nights which I work 12-hour shift on a Thursday, and

12  I do two 8-hour shift Monday and Wednesday.

13          THE COURT:  All right.  And is it possible for to

14  you change shifts around?

15          THE PROSPECTIVE JUROR:  I can't because I work with

16  pediatric patients at night, and during the day, I'm the only

17  nurse that cover for the department of medicine.  I work with

18  over 120 doctors, so I'm the one that's responsible for

19  ordering all the supplies, giving out the injections, doing

20  patient teaching, teaching them use how to use their

21  medication.

22          MR. De CASTRO:  No objection.

23          MS. KOMATIREDDY:  No objection, Your Honor.

24          THE COURT:  All right.  Thank you for letting us

25  know.  You're excused.

1        THE PROSPECTIVE JUROR:  Okay.  Thank you.

2        THE COURT:  Go back to the second floor.  Thank you.

3        THE PROSPECTIVE JUROR:  Thank you.

4        (Prospective Juror Number 110  exits the courtroom.)

5        THE COURT:  Juror 111.

6        MR. De CASTRO:  I had just -- I think they marked

7   cause -- I mean hardship, Your Honor.

8        MS. KOMATIREDDY:  Same thing, Your Honor.

9        (Prospective Juror Number 112 enters the courtroom.)

10        THE COURT:  Good morning, Juror 111.  Come up to the

11   podium.

12        THE COURTROOM DEPUTY:  112.

13        THE COURT:  Oh, I'm sorry.  You're 112.  Okay.

14        MR. De CASTRO:  I'm sorry.

15        THE COURT:  So this is Juror 112.

16        How are you doing?

17        THE PROSPECTIVE JUROR:  I'm all right.

18        THE COURT:  So you indicated -- we just had a few

19   follow-up questions based on the answers you gave on your

20   questionnaire.

21        You said that you've been the witness -- you or

22   people you know have been the witnesses to or a victim of a

23   crime.  You talked about your car being stolen, your cousin's

24   house being broken in, cars being stolen from your work.

25        Were any of these cases -- did these result in court

Prospective Juror No. 112                      407

1    cases?

2              THE PROSPECTIVE JUROR:  Not one.

3              THE COURT:  And was there anything about those

4    experiences that would make you not be fair as a juror in a

5    criminal case?

6              THE PROSPECTIVE JUROR:  I don't know.  It depends on

7    the case.

8              THE COURT:  Okay.  Well you had a short description

9    of the case.

10             Can you tell me, do you think you could you could be

11   fair in this case?

12             THE PROSPECTIVE JUROR:  I didn't really pay

13   attention to this case.

14             THE COURT:  Well, there's nothing to pay attention

15   to yet.  If you were a juror, you would have all the evidence

16   presented to you in Court and you would make a decision based

17   just on what you heard in Court.  In fact, you're not supposed

18   to pay attention to the case outside the courtroom, all right.

19             So can you follow that rule?

20             THE PROSPECTIVE JUROR:  I could try.

21             THE COURT:  All right.  Do you think you could?

22             It would mean that if you heard something on the

23   news about this case, you'd have to turn off the T.V. or the

24   radio and not talk about the case.

25             Can you do that?

Prospective Juror No. 112                           408

1      THE PROSPECTIVE JUROR:  Would me talking about the
2   case affect the outcome?
3      THE COURT:  If you were a juror in the case, you
4   could not talk about the case until the case was over.  So
5   while the case was happening, the trial could last eight
6   weeks, so during that time, if you heard somebody talk about
7   the case on the news or, you know, on the subway, you would
8   have to turn off -- turn it off or leave or say, I can't
9   listen to this, please don't talk about it.
10      Could you do that?
11      THE PROSPECTIVE JUROR:  It's possible, yes.
12      THE COURT:  So I had mentioned those other crimes
13   that had happened to you and people you know.
14      Is there anything about your experience in those
15   cases, either with law enforcement or the way that the crimes
16   happened or were handled that would make it hard for to be
17   fair in this case?
18      This is a criminal case, that's why I'm asking.
19   It's not about stolen cars, you know, but it's a criminal
20   case.
21      THE PROSPECTIVE JUROR:  It's possible.  I'm -- in
22   that way, I would be really biased that way.
23      THE COURT:  You would be really biased which way?
24      THE PROSPECTIVE JUROR:  If they were stealing, yeah.
25   I'd be really biased that way.

1          THE COURT:  Well, if it were a case about stealing

2     and the Government presented you proof beyond a reasonable

3     doubt, that would be appropriate.  The issue is, in this case,

4     you haven't heard any evidence yet, and you should come in

5     with an open mind.

6          So the question is, whether you could do that or

7     whether you would favor one side or the other without having

8     heard the evidence?

9          THE PROSPECTIVE JUROR:  I'd probably favor the

10    prosecution side a little bit there.

11         THE COURT:  Okay.  Can you tell us why?

12         THE PROSPECTIVE JUROR:  I watch a lot of stuff.

13    Crime happen around me all the time.

14         THE COURT:  You need to slow down a little bit

15    because the court reporter needs to write it down.

16         THE PROSPECTIVE JUROR:  Listen man, things get steal

17    around me all the time, things happen around me all the time.

18    The cops when plainly when I report it, they can't do

19    anything.

20         THE COURT:  All right.  So it sounds like you're

21    frustrated that crimes happens --

22         THE PROSPECTIVE JUROR:  Very frustrated.

23         THE COURT:  Sure.  Okay.  So this in this case,

24    there is a crime that -- a case that's been brought against

25    somebody who's been accused of committing a crime.

Prospective Juror No. 112                    410

1              Do you automatically think the person did it?

2              THE PROSPECTIVE JUROR:  I don't think the cops would

3    spend the time if he didn't do it.

4              THE COURT:  Okay.  So would you presume somebody

5    innocent or you would not presume him innocent?

6              Only you can answer that.

7              THE PROSPECTIVE JUROR:  Do you think he's innocent?

8              THE COURT:  I'm sorry?

9              THE PROSPECTIVE JUROR:  All of this and you think

10   he's innocent?  I don't think so.

11             THE COURT:  Okay.  All right.

12             MR. De CASTRO:  No objection, Your Honor.

13             MS. KOMATIREDDY:  No objection, Your Honor.

14             THE COURT:  Okay.  Thank you for letting you us

15   know.  You are excused.  Go back to the second floor.

16             (Prospective Juror Number 112  exits the courtroom.)

17             THE COURT:  Juror 113 is not here either.  So let's

18   go to juror 114.

19             MR. De CASTRO:  Is it 114 that we're on?

20             THE COURT:  Yes.  I think it's juror 114 is the next

21   juror.

22             MR. De CASTRO:  I think we'd like an answer on the

23   hardship 69 and 71, and also follow up on 36 and 56.

24             MS. KOMATIREDDY:  That covers us as well, Your

25   Honor.

1           THE COURT:  Okay.  Juror Number 114.

2           (Prospective Juror Number 114 enters the courtroom.)

3           THE COURT:  Hello.  Juror 114.  How are you doing?

4           THE PROSPECTIVE JUROR:  I'm okay.

5           THE COURT:  Good.  You can stand at the podium.

6    There's a microphone there.  Right there.  There you go.  We

7    just had a few follow-up questions based on the answers you

8    gave on the questionnaire.

9           You mentioned that you have a cough, right, since

10   May and that -- does this bother you?

11          THE PROSPECTIVE JUROR:  A little bit.  From time to

12   time, it's getting worse, sometimes.  I just take some puff

13   and it helps me out to relief coughing (indicating).

14          THE COURT:  Okay.  Good.  So if you're sitting as a

15   juror, you mentioned that it might bother other people.

16          But if you take that medicine that helps you, right?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  And I think if you needed to take a

19   break, the judge would be able to give you a break.

20          Is that okay?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Okay.  Do you have any other health

23   concern about being able to sit as a juror?

24          THE PROSPECTIVE JUROR:  I'm okay.

25          THE COURT:  Great.  So you also answered a question

1    about whether you could sit in judgment of another person, and

2    you said ultimate judgment will be done by the board.

3            And the question is whether you could sit in a

4    criminal trial where you would have to render a verdict of

5    guilty or not guilty based on the evidence in this case.

6            So would you be able to do that?

7            THE PROSPECTIVE JUROR:  I could do that.

8            THE COURT:  And if the evidence showed beyond a

9    reasonable doubt that a person was guilty, would you be able

10   to come back with a verdict of guilty?

11           THE PROSPECTIVE JUROR:  If it is the whole truth and

12   it's beyond a reasonable doubt, I could.

13           THE COURT:  All right.  So that's the standard is

14   beyond a reasonable doubt.  Okay.

15           So there's no religious belief that would stop you

16   from doing that?

17           THE PROSPECTIVE JUROR:  No.

18           THE COURT:  You also said that you thought

19   legalizing drugs would corrupt our children?

20           THE PROSPECTIVE JUROR:  Right.

21           THE COURT:  Currently, drugs are -- or at least

22   cocaine which is the drug that is involved in this case is

23   illegal, and the allegations are of distribution and

24   trafficking in cocaine.

25           Do you think that you would be fair to both the

Prospective Juror No. 114                    413

1   defendant accused of this crime or these crimes, and the

2   Government that's bringing the case?

3        Would you be fair to both sides in a case that

4   involved drugs?

5        THE PROSPECTIVE JUROR:  If it is determined to be

6   the facts, based on the presented evidence, and witnesses, and

7   again, it has to be decided by the juror, based on those

8   presentations, whether who is telling the truth, the defense

9   or the prosecutor, and the juror will give their verdict based

10  on those.

11       THE COURT:  Right.  So if you were a juror, you

12  would have to make that decision.

13       THE PROSPECTIVE JUROR:  Yes.

14       THE COURT:  And we're looking for jurors who are

15  going to be fair to both sides.

16       Can you be that juror?

17       THE PROSPECTIVE JUROR:  Yes.

18       THE COURT:  Okay.

19       MR. De CASTRO:  Judge, could you follow up on the

20  burden piece?  Just that we don't have one.

21       THE COURT:  So you mentioned that the burden of

22  proof is beyond a reasonable doubt.

23       THE PROSPECTIVE JUROR:  Yes.

24       THE COURT:  Right.  Okay.  And so a person is

25  presumed innocent and the burden is on the Government to

1  present proof beyond a reasonable doubt.

2          THE PROSPECTIVE JUROR:  Correct.

3          THE COURT:  The defendant doesn't have to say

4  anything and doesn't have to present evidence.

5          Can you accept that?

6          THE PROSPECTIVE JUROR:  I accept that too.

7          THE COURT:  All right.  And you would be assessing

8  who's telling the truth.

9          Would you give the same assessment of who's telling

10  the truth, regardless of whether somebody is a law enforcement

11  officer or not?

12          THE PROSPECTIVE JUROR:  I mean, both sides, not only

13  the law enforcement, but also the defense.

14          THE COURT:  And you would judge a witness the same

15  way and not believe one person more just because of, you know,

16  the line of work they're in?

17          THE PROSPECTIVE JUROR:  Yes, ma'am.

18          MR. De CASTRO:  Just had the one.  That was it.

19          THE COURT:  Okay.  And then you have a job where you

20  said you are not sure if you would get paid.

21          Can you find out whether you would get paid if have

22  you to sit on this jury.

23          THE PROSPECTIVE JUROR:  I did ask my HR.  She still

24  has to find out.

25          THE COURT:  I see.  So when you find out, please let

1    the Court know.

2              THE PROSPECTIVE JUROR:  I will.

3              THE COURT:  Okay.  Any other follow-up questions?

4              MS. KOMATIREDDY:  No, Your Honor.

5              THE COURT:  Okay.  Thank you very much.  You can go

6    back across the hall.

7              (Prospective Juror Number 114  exits the courtroom.)

8              THE COURT:  Juror 116, I don't have anything.

9              MR. De CASTRO:  Neither do we, Judge.

10             MS. KOMATIREDDY:  Neither do we, Your Honor.

11             THE COURT:  Was there any particular area you wanted

12   me to follow up on, conversationally?

13             MS. KOMATIREDDY:  Conversationally, generally, the

14   news and television is good conversationally, Your Honor.

15             THE COURT:  Okay.

16             (Prospective Juror Number 116 enters the courtroom.)

17             THE COURT:  Hello.

18             THE PROSPECTIVE JUROR:  Hi.

19             THE COURT:  How are you doing?

20             THE PROSPECTIVE JUROR:  Good.

21             THE COURT:  Great.  So if you could just come up to

22   the podium, that would be fantastic.

23             So I wanted to find out if there was anything that

24   we didn't ask you about that you think the Court should know

25   about you?

1           THE PROSPECTIVE JUROR:  No.

2           THE COURT:  Is there any reason you could not be

3    fair and impartial if you were picked as a juror?

4           THE PROSPECTIVE JUROR:  No reason.

5           THE COURT:  You mentioned that you speak and

6    understand Spanish?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  There will be court interpreters who do

9    that.  Will you able to --

10          THE PROSPECTIVE JUROR:  English or Spanish is fine.

11   Yes.

12          THE COURT:  But will you able to accept what the

13   court interpreters tells you?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  You mentioned a couple of T.V. shows and

16   how you get the news.

17          Can you tell us a little bit about that?

18          THE PROSPECTIVE JUROR:  I've always enjoyed series,

19   especially, like crime, mystery, a little bit of everything,

20   really.  Romance, mysteries.

21          THE COURT:  So the crime shows that you mentioned

22   like CSI and Law and Order, those are fictional.  They're not

23   true.  They say they're based true, but they make things

24   different.

25          So do you know the difference between what you see

1    on T.V. and what is in real life?

2              THE PROSPECTIVE JUROR:  Right.  Yes.

3              THE COURT:  Because in T.V. they make things very

4    dramatic.  And sometimes they have somebody will confess or

5    something comes up.

6              Are you aware that in real life it's different?

7              THE PROSPECTIVE JUROR:  It's different, yes.

8              THE COURT:  And in real life, you could have the

9    testimony of one witness without physical evidence or other

10   things, and that would be enough to convict if it was proved

11   beyond a reasonable doubt.

12             Do you understand that?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Okay.  Any follow up?

15             MS. KOMATIREDDY:  No, thank you, Judge.

16             THE COURT:  Thank you very much.  Go back across the

17   hall.

18             (Prospective Juror Number 116  exits the courtroom.)

19             THE COURT:  Juror 117, what questions?

20             MR. De CASTRO:  Start with hardship.  Then 39, 40,

21   47, 55, 62, I think C and D, and 64.

22             THE COURT:  And 64?

23             MS. KOMATIREDDY:  That covers us, as well, Your

24   Honor.

25             (Prospective Juror Number 117 enters the courtroom.)

Prospective Juror No. 117                    418

1              THE COURT:  Hello, Juror 117.

2              THE PROSPECTIVE JUROR:  Hello.

3              THE COURT:  Come right up.  How are you doing?

4              THE PROSPECTIVE JUROR:  Okay.

5              THE COURT:  Great.  So I had some follow-up

6    questions for you, and I'll start with your answer to the

7    question about hardship.  You talked about needing to make

8    money and overtime.  So tell us about that.

9              THE PROSPECTIVE JUROR:  Well, basically ever time

10   I'm here, I'm not getting overtime.  So I already lost three

11   weeks worth of it.  Sometimes, I can make up on Saturdays,

12   sometimes I can't.

13             THE COURT:  And what kind of work do you do?

14             THE PROSPECTIVE JUROR:  I'm a machinist supervisor.

15             THE COURT:  Okay.  All right.  And you said you

16   can't make up that time.

17             Overtime is time that's beyond what a normal working

18   day is?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  So do you need to overtime pay?

21             THE PROSPECTIVE JUROR:  If I want to pay the

22   mortgage and other bills, yes.

23             THE COURT:  Right.  And there's no way you can get

24   around that that?

25             THE PROSPECTIVE JUROR:  Working Saturdays.

Avery N. Armstrong, RPR, Official Court Reporter

Prospective Juror No. 121                    419

1        THE COURT:  You're already working Saturdays?

2        THE PROSPECTIVE JUROR:  Yes.

3        MR. De CASTRO:  No objection.

4        MS. KOMATIREDDY:  No objection, Your Honor.

5        THE COURT:  Okay.  Thank you.  You're excused.  Go

6   back to the second floor.  Thank you very much.

7        (Prospective Juror Number 117  exits the courtroom.)

8        THE COURT:  Juror 120 is also not here, so we'll

9   skip to 121.

10        MR. De CASTRO:  I believe they also answered the

11   hardship question, and then we have 35, 39, 40, 42, 44, 49,

12   53, 56, 58, and 61.

13        MS. KOMATIREDDY:  That covers us, as well, Your

14   Honor.  Okay.

15        (Prospective Juror Number 121 enters the courtroom.)

16        THE COURT:  Hi, Juror 121.  Step right up, please.

17   We just had a few follow-up questions.  You can put your bag

18   on the chair if you want.  There's a microphone there even

19   though you can't see it.  There you go.  Leave it.  Yes.

20   Excellent.

21        THE PROSPECTIVE JUROR:  Sorry.

22        THE COURT:  That's okay.  That's okay.

23        So we just had a few follow-up questions and I'll

24   start with you mentioned to the Court that there's an MRI

25   coming up.

1          So tell me about that.

2          THE PROSPECTIVE JUROR:  My spouse is a -- she had

3    brain tumor surgery about 15 months ago, so she has quarterly

4    MRIs, neuro scans.  It's like a 25 to 50 percent chance the

5    tumor comes back within the first five years, so each one

6    matters.

7          THE COURT:  And do you need to be with your spouse

8    for the MRI?

9          THE PROSPECTIVE JUROR:  I would like to be with her

10   if they say the tumor is back.

11         THE COURT:  Right.  But the MRI itself, I'm not sure

12   what the process is.  Often you did go and then it's some time

13   before you get the result.

14         THE PROSPECTIVE JUROR:  Same day.

15         THE COURT:  Same day.  And do you have that

16   currently scheduled?

17         THE PROSPECTIVE JUROR:  It's Monday.

18         THE COURT:  Which day?

19         THE PROSPECTIVE JUROR:  Next Monday?

20         THE COURT:  Monday the 23rd?

21         THE PROSPECTIVE JUROR:  Yeah.  And I forgot to

22   mention, I also have a post-op appointment scheduled for, I

23   think, the 30th or 31st.  I forgot which day.

24         THE COURT:  What kind of appointment is it?

25         THE PROSPECTIVE JUROR:  I had a operation in

1   December.  It's a post-op.

2          THE COURT:  And that's not something that can be

3   rescheduled if necessary?

4          THE PROSPECTIVE JUROR:  I guess I can ask.  Yeah.

5          THE COURT:  Okay.  And so for your spouse and the

6   MRI, is it in the morning or the afternoon on the 23rd?

7          THE PROSPECTIVE JUROR:  The scan will be in the

8   morning, and we'll get the results by the afternoon.

9          THE COURT:  I see.

10          THE PROSPECTIVE JUROR:  Stay at the hospital the

11   whole time.

12          MR. De CASTRO:  Judge, we have no objection.

13          MS. KOMATIREDDY:  No objection, Your Honor.

14          THE COURT:  All right.  Thank you for letting us

15   know of these things.  You're excused.  You can go back to the

16   second floor.

17          THE PROSPECTIVE JUROR:  To the waiting room?

18          THE COURT:  To the second floor.  Back to the jury

19   room.

20          THE PROSPECTIVE JUROR:  Thank you.

21          (Prospective Juror Number 121  exits the courtroom.)

22          THE COURT:  Okay.  So the next juror will be 23, but

23   Juror 146, who is supposed to be in the afternoon group, just

24   arrived and wants to be seen early.  So we could see 122.  I

25   think that person is available, and then see 146 after that.

1   Are you prepared?  I know it's the afternoon batch.

2              MR. De CASTRO:  We're fine.

3              THE COURT:  Is the Government ready?

4              MS. KOMATIREDDY:  (Nonverbal gesture).

5              THE COURT:  So let's do 122 and then 146.

6              (Prospective Juror Number 122 enters the courtroom.)

7              THE COURT:  Juror 122.  Come right up to the podium

8   here.  Come more.  Come in closer.  There's a chair there, but

9   stand at the podium next to it.  The other side.  There you

10  go.

11             Okay.  How are you doing?

12             THE PROSPECTIVE JUROR:  I'm doing fine.

13             THE COURT:  Okay.  Great.

14             I see here that you're a retired physician?

15             THE PROSPECTIVE JUROR:  Huh?

16             THE COURT:  Are you a retired physician?

17             THE PROSPECTIVE JUROR:  Right.

18             THE COURT:  What kind of medicine did you used to

19  practice?

20             THE PROSPECTIVE JUROR:  Just a general practice.

21             THE COURT:  Great.  And how long have you been

22  retired?

23             THE PROSPECTIVE JUROR:  About 10 years.

24             THE COURT:  Okay.  Great.  So and what do you do in

25  your spare time?  What kinds of things do you do?  Do you have

1    any hobbies?

2            THE PROSPECTIVE JUROR:  Not anything special.

3            THE COURT:  Nothing?  Okay.  And it says here that

4    you like to watch T.V. and the internet.

5            Are there any shows that you like to watch in

6    particular?

7            THE PROSPECTIVE JUROR:  No.

8            THE COURT:  Where do you get your news?

9            THE PROSPECTIVE JUROR:  Huh?

10           THE COURT:  Do you watch -- you said you watch CNN.

11           Is that how you get the news?

12           THE PROSPECTIVE JUROR:  Just the news.

13           THE COURT:  What kind of movies do you like are?

14           THE PROSPECTIVE JUROR:  I don't like movies.

15           THE COURT:  You don't like movies?

16           THE PROSPECTIVE JUROR:  No.

17           THE COURT:  Do you read books?

18           THE PROSPECTIVE JUROR:  Huh?

19           THE COURT:  Do you read books.

20           THE PROSPECTIVE JUROR:  Read book?  Not really.

21           THE COURT:  No?  All right.

22           MR. De CASTRO:  Maybe number 25.

23           THE COURT:  Okay.

24
             (Continued on the following page.)
25

1    (Continuing)

2              THE COURT:  And you said here that you admire

3    President Carter, Jimmy Carter?

4              THE PROSPECTIVE JUROR:  Yeah.

5              THE COURT:  What do you admire about him?

6              THE PROSPECTIVE JUROR:  I put something there.

7              THE COURT:  But you can take any kind of person,

8    there are a million people.  What do you like about Jimmy

9    Carter?

10             THE PROSPECTIVE JUROR:  President.

11             THE COURT:  Was there anything about him that made

12   him more special than other presidents?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  And do you live with any family members?

15             THE PROSPECTIVE JUROR:  What is that?

16             THE COURT:  Do you live with family members?

17             THE PROSPECTIVE JUROR:  No, I live by myself.

18             THE COURT:  I see, okay.  And do you have close

19   friends?

20             THE PROSPECTIVE JUROR:  Friends?

21             THE COURT:  Who are retired.

22             THE PROSPECTIVE JUROR:  Just a few family members.

23             THE COURT:  Family members, okay.  Who is in your

24   family?  What family members are you in touch with?

25             THE PROSPECTIVE JUROR:  Just my sister.

1           THE COURT:  What kinds of things do you like to talk

2    about with your sisters?

3           THE PROSPECTIVE JUROR:  Hum?  Nothing special.

4           THE COURT:  Nothing special, okay.  So is there

5    anything that we didn't ask you about on the questionnaire

6    that you think we should know about you?

7           THE PROSPECTIVE JUROR:  No.

8           THE COURT:  Is there any reason you could not serve

9    as a juror in this case?

10          THE PROSPECTIVE JUROR:  If you want to, but I have

11   some health problem, diabetes, high blood pressure, high

12   cholesterol, glaucoma.  I have cataract.  I don't mind to

13   serve it, but I told you I have problem.

14          THE COURT:  Right, and these things are all being

15   managed?

16          THE PROSPECTIVE JUROR:  Huh?

17          THE COURT:  These medical issues, they're chronic?

18          THE PROSPECTIVE JUROR:  Yeah.

19          THE COURT:  And you are managing them okay?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  And you would be able to sit on a trial

22   for eight weeks?

23          THE PROSPECTIVE JUROR:  I hope so.

24          THE COURT:  Okay.  And would you be fair to both

25   sides?

1             THE PROSPECTIVE JUROR:  Yeah.

2             THE COURT:  And was there anything in your

3    interactions with law enforcement or criminal activity that

4    would make you not be fair?

5             THE PROSPECTIVE JUROR:  No.

6             THE COURT:  No?  Okay, great.

7             Any follow up?

8             MR. DE CASTRO:  No, Judge.

9             MS. KOMATIREDDY:  No thank you, Judge.

10            THE COURT:  Thank you very much.  You can go back

11   across the hall.

12            THE PROSPECTIVE JUROR:  Go back over there?

13            THE COURT:  Yes.

14            THE PROSPECTIVE JUROR:  Okay.

15            THE COURT:  Thanks.

16            (Prospective juror 122 exits courtroom.)

17            THE COURT:  So Juror 146 had mentioned anxiety, so I

18   will ask that first.

19            MR. DE CASTRO:  Yeah, and we had a bunch other -- do

20   you want the numbers?

21            THE COURT:  Yes.

22            MR. DE CASTRO:  Sure.  35, 36, 45.  Obviously 69 and

23   70 first.  45, 47, 48 and 58.

24            THE COURT:  And 50 --

25            MR. DE CASTRO:  58.

1          MS. KOMATIREDDY:  That covers us as well, Your

2    Honor.

3          THE COURT:  All right.

4          (Prospective Juror No. 146 present at sidebar.)

5          THE COURT:  Hello.  You're Juror No. 146?

6          THE PROSPECTIVE JUROR:  Hi.

7          THE COURT:  You can put your coat and your bag on

8    the chair.  How are you doing?

9          THE PROSPECTIVE JUROR:  I'm okay.  Thank you for

10   seeing me.

11         THE COURT:  I know you were supposed to come in the

12   afternoon and you're here early.

13         THE PROSPECTIVE JUROR:  I'm here early and I asked

14   to be seen earlier because one of my reasons why I don't think

15   I would be a good juror is because I have debilitating

16   anxiety.  I can control it in certain ways.  It's embarrassing

17   to say in a courtroom full of people, but that usually

18   requires a lot of methods for managing that being on a jury

19   would not allow me to do or manage.

20         THE COURT:  I'm sorry, did the Government say

21   anything or should we continue questions?

22         MS. KOMATIREDDY:  We have no objection, Your Honor.

23         THE COURT:  Thank you for letting us know.

24         THE PROSPECTIVE JUROR:  I appreciate it so much.

25   Thank you everyone.

Prospective Juror No. 123                          428

1        THE COURT:  Okay.

2        (Prospective juror 146 exits courtroom.)

3        THE COURT:  All right.  And then we have juror 123

4   and we're done for the morning.

5        MR. DE CASTRO:  For that juror, the defense has, I

6   think they answered to 69 and the explanation sheet, and 24,

7   36, 58, 62 and 66.

8        THE COURT:  And for the Government?

9        MS. KOMATIREDDY:  I believe Mr. de Castro described

10  62.  There are multiple subparts that are problematic of 62,

11  just to hit every one.

12       (Prospective Juror No. 123 enters.)

13       THE COURT:  Juror No. 123, how are you doing?

14       THE PROSPECTIVE JUROR:  Good.  Thank you.

15       THE COURT:  I have some follow-up questions for you

16  based on the questionnaire and I will start with, you have

17  told us about your travel plans.

18       THE PROSPECTIVE JUROR:  Yes.

19       THE COURT:  Could you tell us how that would impact

20  your ability to serve on this case.

21       THE PROSPECTIVE JUROR:  So I have a trip next week

22  for work and I travel about once a month for work out to the

23  west coast, so that would be a bit of a challenge.  I also

24  have a family reunion vacation booked in Florida for the week

25  of June 6th.

1        THE COURT:  June.  If we are still in trial, we are

2   in trouble.  But as far as next week, what days are you

3   planning to travel?

4        THE PROSPECTIVE JUROR:  I'm traveling Monday and

5   back on Saturday.

6        THE COURT:  All next week?

7        THE PROSPECTIVE JUROR:  Yes.

8        THE COURT:  Is that something that could be

9   re-scheduled?

10       THE PROSPECTIVE JUROR:  It would be very

11  challenging.  We have a lot of new folks starting at my

12  company that I am responsible for.  I'm kind of committed to

13  that.

14       THE COURT:  So that's not something you can do

15  remotely or schedule another time?

16       THE PROSPECTIVE JUROR:  No.  I mean, if I couldn't

17  make it, it would be a challenge, but I would do what I have

18  to do if I needed to be here.

19       THE COURT:  So if you had to, you could reschedule

20  it?

21       THE PROSPECTIVE JUROR:  Yes.  Yes.

22       THE COURT:  And then the once a month, what does

23  that entail?

24       THE PROSPECTIVE JUROR:  That is me going out to the

25  west coast to our Portland, Oregon office to manage the team

1    out there that I oversee.

2              THE COURT:  And again --

3              THE PROSPECTIVE JUROR:  There's a bit of flexibility

4    there.

5              THE COURT:  There is some flexibility?

6              THE PROSPECTIVE JUROR:  A little bit.

7              THE COURT:  You said your company is recovering from

8    COVID.

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  That is a challenge.  Although, in COVID

11   times people did everything remotely, so maybe there is some

12   flexibility still.

13             THE PROSPECTIVE JUROR:  A little bit but we're in

14   the event services business which suffered a lot during COVID,

15   but now we're starting to come out of it since COVID is

16   actually going down.

17             THE COURT:  You also weren't sure if you would be

18   paid for jury duty.

19             THE PROSPECTIVE JUROR:  I'll take PTO for a month,

20   although they would probably work with me on the actual --

21             THE COURT:  Okay.  And would these financial

22   concerns impact your ability to focus on the trial?

23             THE PROSPECTIVE JUROR:  I mean, it wouldn't be

24   ideal, but, again, my civic duty, I would do what I needed to

25   do.

Prospective Juror No. 123                    431

1    THE COURT:  Right.  So if you had to serve, you

2    would find a way to make it work?

3    THE PROSPECTIVE JUROR:  Yes.

4    THE COURT:  Let me ask you some of these other

5    questions.  You talked about hearing loss, but you could hear

6    me now, right?  It should be fine?

7    THE PROSPECTIVE JUROR:  It's improved.  It's

8    basically ringing in my ear and occasionally I get a little

9    vertigo.  It has gotten better since about last week.

10   THE COURT:  Great.  You also talked about your

11   father being a victim of elder abuse.  Tell me about that.

12   THE PROSPECTIVE JUROR:  Yeah.  Unfortunately my

13   father passed away in 2012 of COPD and his health deteriorated

14   during that time.  He did employ some folks to be with him to

15   take care of him that were not ideal, unfortunately.  They

16   were manipulating him and they kind of abused him and it was a

17   very unfortunate situation that I didn't have a lot of

18   influence or control over.  But they were also involved in the

19   drug trade.  It's a long history, but it wasn't ideal.

20   THE COURT:  I'm sorry to hear that about your

21   father.

22   THE PROSPECTIVE JUROR:  Thank you.

23   THE COURT:  The fact that this happened, do you

24   think that will impact your ability to sit and be fair and

25   impartial in a drug trafficking case?

1          THE PROSPECTIVE JUROR:  I would like to think I can

2     put my personal feelings aside and be impartial, but I can't

3     tell you 100 percent for sure that I would be able to.

4          THE COURT:  So how do you think that experience will

5     impact your service as a juror?

6          THE PROSPECTIVE JUROR:  It may influence me a little

7     bit just the memories that I have going through that whole

8     experience were not great.  So, again, I would try to put

9     aside my -- any bias I would have there.

10         THE COURT:  Okay.  When you say bias, do you know

11    which side you would be biased for or against?

12         THE PROSPECTIVE JUROR:  No, just to be honest with

13    you, I really don't.  I'm very -- I was a little -- it was an

14    emotional experience for me, so dealing with that whole

15    experience.

16         THE COURT:  So it is more about having to relive the

17    experience?

18         THE PROSPECTIVE JUROR:  Yeah, I think so.

19         THE COURT:  Well, this case wouldn't involve elder

20    abuse.  The allegations are of drug trafficking and cocaine

21    distribution.  Those kinds of things.  So do you think that

22    memory of what happened to your father would impact --

23         THE PROSPECTIVE JUROR:  Probably not.

24         THE COURT:  So, then, let me ask you also about your

25    answer to the question and I'll just get what you wrote

Prospective Juror No. 123                                    433

1  specifically so I can ask you about it.

2          You were asked about Government witnesses who might

3  testify who will say that they participated themselves in

4  crimes and that they now are testifying pursuant to an

5  agreement with the Government, and you said I would struggle

6  being impartial with known criminals.  Can you talk about

7  that?

8          THE PROSPECTIVE JUROR:  Yeah, I mean, I understand

9  that's the system and it would be a little challenging for me

10  just in general having known some of these folks might have

11  committed violent crime and now their sentence is reduced or

12  whatever to be a witness here.

13          THE COURT:  Right.

14          THE PROSPECTIVE JUROR:  So it would be difficult for

15  me.

16          THE COURT:  So do you think if somebody testified as

17  to certain facts and then said that she committed some serious

18  crime and the reason she was testifying was because the

19  Government promised she would get a reduced sentence or

20  something like that, do you think you would not then believe

21  that person?

22          THE PROSPECTIVE JUROR:  I would -- it would be

23  challenging for me, to be honest with you, yes.

24          THE COURT:  But could you --

25          THE PROSPECTIVE JUROR:  I could put aside my --

1    again, I would do the right thing for what my duty would be,

2    but I would struggle --

3              THE COURT:  Right.

4              THE PROSPECTIVE JUROR:  -- doing that.

5              THE COURT:  Well, you're allowed to take into

6    account a person's motive in assessing credibility and you

7    could decide to believe the person because you have taken

8    everything into account or, conversely, you could also, after

9    taking everything into account, decide not to believe the

10   person.  The question is whether you would be fair, right and

11   assess it that way instead of deciding immediately that you're

12   not going to believe the person.

13             THE PROSPECTIVE JUROR:  Right.

14             THE COURT:  Or you're not going to trust the person

15   because of the admitted criminal behavior or something like

16   that.

17             THE PROSPECTIVE JUROR:  Right.

18             THE COURT:  So all of those considerations are fine.

19   It's just whether you could be fair about it.  So do you think

20   you could be fair?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  And it may be that the evidence in the

23   case is, or, at least, for a particular charge, could just be

24   testimony.  And, so, could you convict just based on the

25   testimony of a cooperating witness or would you necessarily

Prospective Juror No. 123                    435

1    require more?

2              THE PROSPECTIVE JUROR:  I could convict on the facts

3    if -- yeah.

4              THE COURT:  On just the testimony of a cooperating

5    witness?  Yes?

6              THE PROSPECTIVE JUROR:  Yeah.

7              THE COURT:  And you also said you were nervous about

8    security.  So let's talk a little bit about that.

9              THE PROSPECTIVE JUROR:  Yes, just given the

10   high-profile nature of the case and what you've heard in the

11   news of certain elements, not necessarily this case, other

12   related cases.

13             THE COURT:  Is there anything in particular you're

14   concerned about or just generally because it's high profile?

15             THE PROSPECTIVE JUROR:  Just high profile and some

16   of the -- some of the -- on the Mexican side of the folks

17   involved are a little frightening, but....

18             THE COURT:  But there wasn't anything specific?

19             THE PROSPECTIVE JUROR:  Nothing specific.

20             THE COURT:  Okay.  You mentioned the Mexican side of

21   things.  You said your partner is Mexican?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  But you don't have any particular

24   feelings about Mexicans?

25             THE PROSPECTIVE JUROR:  No, not at all.

1           THE COURT:  Thank you.

2           Is there any follow up that you want me to ask

3    about?

4           MR. DE CASTRO:  I have none.

5           MS. KOMATIREDDY:  Your Honor, could we please have

6    follow up on 62-C?

7           THE COURT:  Okay.  Going back to the issue of the

8    cooperating witness, I asked you whether you could convict

9    just based on just the testimony of a cooperating witness, and

10   I'll just be more specific.  The Government is not required to

11   present any specific type of evidence.  All right.  They'll

12   present the evidence that they're going to present.

13          Can you -- would you require the Government to

14   present a specific type of evidence or could you, depending on

15   whenever the evidence is the Government gave you, still

16   convict if you found beyond a reasonable doubt?

17          THE PROSPECTIVE JUROR:  If it was evidence that the

18   Government presented, I would be able to do my job as a juror,

19   yes.

20          THE COURT:  So you wouldn't require that they have a

21   specific type of evidence?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  And testimony would be enough for you?

24          THE PROSPECTIVE JUROR:  Yes.

25          MR. DE CASTRO:  Could you just follow up on just

Prospective Juror No. 123                      437

1   phrasing, the phrasing do my job, just to make sure what that

2   job -- yeah.

3           THE COURT:  When you said do your job, what do you

4   mean?

5           THE PROSPECTIVE JUROR:  My job as a juror, what

6   we're required to do.

7           THE COURT:  Which, as you understand it, is to do

8   what?

9           THE PROSPECTIVE JUROR:  Listen to the facts and

10  basically help in the process of the system here.

11          THE COURT:  All right.  So would you listen to the

12  facts and assess the evidence and you would follow the law as

13  the judge will instruct?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  And then you would render a verdict that

16  is fair and just based on the evidence?

17          THE PROSPECTIVE JUROR:  Correct.

18          THE COURT:  Anything else?

19          MS. KOMATIREDDY:  No.  Thank you, Your Honor.

20          THE COURT:  Thank you very much.

21          THE PROSPECTIVE JUROR:  Thank you.

22          THE COURT:  Go back across the hall.

23          (Prospective juror 123 exits courtroom.)

24          THE COURT:  So, I think the afternoon jurors will be

25  here at 1 o'clock.  It is 12:15.  If we took an hour for

1  lunch, will that be enough time for everyone?

2          MR. DE CASTRO:  Yes.

3          THE COURT:  I hope everyone will be on time.  If

4  they are, we will start at 1:20 or so.  Why don't you be ready

5  at 1:20 and as soon as the jurors are here, or a critical mass

6  of them are here, we will get started.

7          Hold on a second.

8          Before we do that, are there any other for-cause

9  arguments either side wants to make?

10          MR. DE CASTRO:  No other for-cause arguments.

11          MS. KOMATIREDDY:  Your Honor, I would just move to

12  strike the juror that just came, Juror No. 123.  In response

13  to cooperator questions, he noted it would be challenging.  In

14  response to the Court's follow up of whether he could accept a

15  cooperator's testimony, he initially made an assurance, but

16  again caveated with I would struggle.  We believe that, in

17  connection with his demeanor, reflects a more deeply held

18  belief that is problematic in light of the evidence in this

19  case and we would ask to strike for cause.

20          THE COURT:  Well, I heard him say very clearly that

21  he would be, even though, as you said, he may have made

22  statements earlier that indicated, as you say, struggle.  If

23  you want me to ask a follow-up question, I can, but I was

24  listening very carefully for his assurances that he could be

25  fair.

1              MS. KOMATIREDDY:  In that case, Your Honor, yes, I

2     would like some additional follow up even though it may be

3     repetitive.  Your Honor has done that in other cases.  So I

4     think it would be helpful to have some additional follow up on

5     the cooperators and he said he would struggle, is there either

6     emotional or other gut-instinct reason that he can't accept

7     those witnesses's testimony with an open mind or hear those

8     witnesses's testimony with an open mind, and that would

9     prevent him from receiving the Government's evidence with an

10    open mind.

11             THE COURT:  So I will ask him what the nature of the

12    struggle is to the extent he used the word "struggle."  I'm

13    trying to remember the context, but I will use that word, and

14    whether he can accept and hear the testimony with an open mind

15    of a cooperating witness.

16             MS. KOMATIREDDY:  The phrase I have is he said it

17    would be challenging and I would struggle.

18             THE COURT:  Okay.  Can we have that juror come back,

19    please, Juror 123.  And then after this, I think we can

20    dismiss the other jurors and have them come back tomorrow

21    morning at 8:30 so they don't have to hang around for the rest

22    of the day.

23             Is that acceptable?

24             MR. DE CASTRO:  That works.

25             MS. KOMATIREDDY:  Yes, Your Honor.

1          (Prospective Juror No. 123 present at sidebar.)

2          THE COURT:  We had a couple of follow-up questions

3    that I didn't ask earlier.

4          THE PROSPECTIVE JUROR:  Okay.

5          THE COURT:  So I apologize if this sounds

6    repetitive, but we have a reason for asking the question.

7          THE PROSPECTIVE JUROR:  No problem.

8          THE COURT:  So I had asked you before about the

9    cooperating witnesses.

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  There might be people who testify that

12    committed crimes and they are testifying because they are

13    cooperating with the Government.  And I believe at one point

14    you said you would struggle with that, so I wanted to

15    understand what you meant by it.

16          THE PROSPECTIVE JUROR:  Yeah, I mean, having known

17    someone committed a crime in the past, personally, it might

18    affect my judgment, but after explaining to me, you know, how

19    important it is, you know, and thinking about it, probably I

20    would not let that affect my ability to do what is supposed to

21    be done as far as my duties as a juror.

22          THE COURT:  Okay.  And you said probably.  Do you

23    have doubts that you couldn't set that aside, those concerns,

24    or would you not be able to do that?

25          THE PROSPECTIVE JUROR:  I -- I can set -- I can set

1    those aside to do what I need.

2              THE COURT:  Okay.  Thank you.  And would you be able

3    to accept and hear the testimony of a cooperating witness with

4    an open mind?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  And I think at some point you might have

7    used the word challenging as well and I don't know if you

8    meant it in a different way or it's the same thing you

9    described.

10             THE PROSPECTIVE JUROR:  It's the same thing.  Yeah.

11             THE COURT:  Okay.  And even though you thought it

12   was one thing, after discussion and clarification in court

13   today, you can confidently say you can set aside --

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  -- questions you had.

16             THE PROSPECTIVE JUROR:  Yeah.

17             THE COURT:  All right.

18             MS. KOMATIREDDY:  Thank you, Judge.

19             THE COURT:  Thank you.

20             (Prospective juror 123 exits courtroom.)

21             THE COURT:  All right.  Why don't we have all of

22   those jurors come back here and let them know they are excused

23   for today and come back at 8:30.  So ask all of the jurors to

24   come in.

25             (Prospective jurors present.)

1           THE COURT:  You can sit wherever you'd like.  This

2    will only take a minute.

3           Good afternoon, everyone.  Thank you so much.  And

4    it is afternoon.  Thank you so much for your patience.  You've

5    all been wonderful and thank you for answering our questions

6    this morning.

7           So you are done for today.  You can go home, but

8    please come back tomorrow morning at 8:30.  We are hoping that

9    tomorrow we shall finish the jury selection, but we have

10   another group of people coming in this afternoon, you don't

11   have to be here for that.  You don't have to call in.  Just

12   show up tomorrow morning at 8:30 and we will continue with the

13   jury selection and hopefully finish it and then we'll know who

14   will be on the jury.  So thank you, everyone.  And have a nice

15   day.  We will see you tomorrow morning.

16           (Prospective jurors exit.)

17           THE COURT:  So I overheard one of the jurors asking

18   questions because he didn't hear.  I recall that juror.  We

19   can pull up the number and perhaps we can ask about hearing or

20   are you okay with that?

21           MR. DE CASTRO:  I believe that's number 122, if I am

22   correct.

23           MS. KOMATIREDDY:  Yes.

24           THE COURT:  The retired physician.

25           MR. DE CASTRO:  Our view is we should let him go, I

1    mean, he --

2              THE COURT:  Well, I'm not inviting for cause.  I'm

3    just saying that I heard some issue about hearing and I'm just

4    flagging it because I heard that.  So if you want to have a

5    follow-up questioning about whether there's a hearing issue.

6    You don't have to.  I'm just letting you know that I happened

7    to hear as the juror was walking out say I didn't hear what

8    the judge said and my law clerk explained to him what he said.

9              MS. KOMATIREDDY:  Yes, Your Honor.  I think based on

10   the current record, we don't see a basis.  But I understand

11   the reason for follow-up questioning.  If we can do that

12   follow-up questioning Thursday morning, that's fine with us.

13             THE COURT:  Of course.  Again, I couldn't help

14   overhearing.  I just wanted to flag the issue to the parties

15   in case they had a concerned.

16             Why don't we come back at 1:30 and whoever is

17   available as jurors, we can get started even if they're not

18   fully here just in the interest of getting through the full

19   group.  There were a couple of jurors from this morning who I

20   hope will show up this afternoon.  Again, we're trying to get

21   to 40.  So by the end of the day, we should figure out how

22   tomorrow is going to go.

23             MR. DE CASTRO:  Judge, our count is, if you include

24   the paid question marks, okay, is 40.  So, I think maybe we

25   should, over lunch, talk about what number we should go for.

1          THE COURT:  Why don't you do that, because the ones

2     who are question marks, if they come back as people that

3     should be excused, then we will not be at 40.  So please give

4     yourselves that room based on how many anticipated possible

5     people we will lose.  But whatever number you think we should

6     get to today should be fine, with the possibility that

7     tomorrow morning we will not have enough people.  And if it

8     means we have to get a few extra people just to get there,

9     that's fine too.  There's no harm in that.  All right.

10    Anything else?

11         MS. KOMATIREDDY:  Nothing from the Government.

12         MR. DE CASTRO:  No.

13         THE COURT:  Great.  I will see you all at 1:30.

14         (Lunch recess.)

15         (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

1              AFTERNOON SESSION

2          (In open court.)

3          (Defendant present.)

4          THE COURTROOM DEPUTY:  All rise.

5          THE COURT:  Please be seated.  We are back on the

6   record, and we can resume with jury selection with the jurors

7   who have been called in this afternoon.

8          My understanding is that the jurors who are called

9   in are all appear, so -- but not the ones who were supposed to

10  come in in the morning.  They still have not shown up.

11         MS. KOMATIREDDY:  Your Honor, we have a couple of

12  updates for you on the items you asked us to confer.

13         THE COURT:  Okay.

14         MS. KOMATIREDDY:  First of all, we've heard from

15  Judge Cogan's chambers he intends to start the trial on

16  Monday.

17         THE COURT:  Okay.

18         MS. KOMATIREDDY:  And with respect to the jurors who

19  appeared today for questioning, I think our preference is that

20  we go through the rest who are here, qualify as many as we

21  can.  Given the jury won't -- that the trial won't start until

22  Monday, sometimes you lose people over the weekend, it is a

23  good idea to have extras.

24         THE COURT:  All right.  I'm happy to do that.  Both

25  sides have agreed on it.  So that sounds good.

1          Let me put my papers together so we can go

2    efficiently.  Why don't we take the first couple of jurors and

3    you can tell me the questions I should focus on so we don't

4    have delay.  If Government would like to go first.  I know we

5    have been allowing the defendant to go first, tell me what

6    numbers you would like to focus on for Juror No. 124.

7               MS. KOMATIREDDY:  Juror No. 124, we have a number of

8    follow-ups.  The primary one is on several places, including

9    36, he references that his religion may prevent him from

10   sitting in judgment.

11              Otherwise, we also from follow-ups 37, 45, 56, 58,

12   62-B, 64.

13              MR. DE CASTRO:  And we have 48.

14              THE COURT:  And Juror No. 125?

15              MS. KOMATIREDDY:  36, 37, 44, and 59.  He actually

16   seems to write out at one point that he cannot do this.

17              MR. DE CASTRO:  We have 47 and 48.

18              THE COURT:  Okay.  126.

19              MS. KOMATIREDDY:  44, 56, 57, 58, 62, 66, and 69.

20              MR. DE CASTRO:  We have 47 and 52.

21              THE COURT:  Okay.  And 128.

22              MS. KOMATIREDDY:  40.  This one didn't have a lot of

23   narrative answers, so just some additional questions may be

24   helpful.

25              MR. DE CASTRO:  We have 44 and 47 on that juror as

1    well.

2              THE COURT:  Okay.  And 129.

3              MS. KOMATIREDDY:  36 and 40.

4              MR. DE CASTRO:  We have 35, 44, 56, 61, and I think

5    there is a hardship answer.

6              THE COURT:  Great.  Why don't we get going with

7    those.

8              Let's call in Juror No. 124.

9              (Prospective Juror No. 124 enters.)

10             THE COURT:  Good afternoon, how are you doing?

11             THE PROSPECTIVE JUROR:  Good.  Thank you.

12             THE COURT:  Good.  You can put your bag and coat on

13   that chair, if you'd like.  How are you doing?

14             THE PROSPECTIVE JUROR:  I'm great.  Thank you,

15   ma'am.

16             THE COURT:  Good.  So you indicated that you -- we

17   have some follow-up questions.

18             THE PROSPECTIVE JUROR:  Yes, ma'am.

19             THE COURT:  So you indicated on the questionnaire

20   that you may have an issue in sitting in judgment on another

21   person.

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  You mentioned that you are Buddhist.

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  We wanted to understand what your

1   concern is.

2           THE PROSPECTIVE JUROR:  Okay, I guess to sum it up

3   is I've been on a spiritual path for the past 15 years and,

4   you know, forgiveness is divine.  And I've had to do a lot of

5   forgiveness in my life to proceed on that spiritual path and

6   it's just that mindset has sustained me.  I think that pretty

7   much sums up, you know.

8           THE COURT:  Right.  As part of that forgiveness,

9   does that mean you could not render a verdict of guilty even

10  if you found evidence of proof beyond a reasonable doubt of

11  guilt?

12          THE PROSPECTIVE JUROR:  Every action has a reaction,

13  and it's just the law of karma for me.

14          THE COURT:  Okay.  So I'm not very familiar with

15  what that means.  When you say every action has a reaction and

16  how it affects your ability to render a verdict?

17          THE PROSPECTIVE JUROR:  Really going back to what I

18  said before:  Forgiveness is divine.

19          THE COURT:  Okay.  So does it mean that if there was

20  evidence presented to you that convinced you beyond a

21  reasonable doubt somebody committed a crime --

22          THE PROSPECTIVE JUROR:  Right.

23          THE COURT:  -- that you would still not render a

24  verdict of guilty?

25          THE PROSPECTIVE JUROR:  It would put me in a very

1  difficult position because I know -- I know with that what

2  that energy does; it comes back to you.

3          That's been my experience.

4          THE COURT:  I see.  Okay.  Sitting as a juror is

5  never easy.

6          THE PROSPECTIVE JUROR:  I know.  It's a difficult

7  position to be in.

8          THE COURT:  I mean, if you couldn't do it, if you

9  couldn't render a verdict of guilty just because --

10          THE PROSPECTIVE JUROR:  It would be a very difficult

11  situation for me.

12          MS. KOMATIREDDY:  We have no objection, Your Honor.

13          MR. DE CASTRO:  No objection.

14          THE COURT:  Thank you for letting us know.

15          THE PROSPECTIVE JUROR:  Thank you so much, Your

16  Honor.

17          (Prospective juror 124 exits.)

18          THE COURT:  Juror 125.

19          (Prospective Juror No. 125 enters.)

20          THE COURT:  Hi, you can come up to the podium.

21          THE COURTROOM DEPUTY:  Right here.  This podium.

22          THE COURT:  You can just put your coat on the chair

23  and stand at the podium and -- that's perfect.  How are you

24  doing?

25          THE PROSPECTIVE JUROR:  I'm good.

1              THE COURT:  Great.  We just have a few follow-up

2     questions.

3              THE PROSPECTIVE JUROR:  Uh-huh.

4              THE COURT:  So, on your questionnaire, you were

5     asked if you had friends and family members who are lawyers or

6     judges who are involved in the legal field.  You said you

7     didn't, but then you also -- when you were asked would it

8     affect your ability to be fair and impartial, you wrote I

9     cannot, and I wasn't sure if you meant to say something else.

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  What do you mean by you cannot?

12             THE PROSPECTIVE JUROR:  I cannot judge anybody, you

13    know, I can't be the one to say this person guilty, not

14    guilty.  That's not in me.

15             THE COURT:  Right.

16             THE PROSPECTIVE JUROR:  You know, I never do them

17    stuff and I cannot do it.  I was saying in the end, I lost my

18    wife with COVID, so right now my mind is not on nothing else.

19    When I go home -- I just go to work and go home and just

20    worrying about what's going on in my life.

21             THE COURT:  I'm sorry for your loss.

22             THE PROSPECTIVE JUROR:  Yeah.

23             MR. DE CASTRO:  No objection.

24             MS. KOMATIREDDY:  No objection, Your Honor.

25             THE COURT:  All right.  Thank you.  You're excused.

1           THE PROSPECTIVE JUROR:  All right.

2           THE COURT:  You can go back to the second floor.

3           THE PROSPECTIVE JUROR:  Thank you.

4           (Prospective juror 125 exits.)

5           THE COURT:  Hello.

6           (Prospective Juror No. 126 enters.)

7           THE COURT:  Juror No. 126, you can come up to the

8    podium and put your things on the chair.

9           How are you doing?

10          THE PROSPECTIVE JUROR:  Good.  How are you?

11          THE COURT:  Good.  We have some follow-up questions

12   for you based on the questionnaire, and you wrote that you

13   have a hardship.  So tell us about that.

14          THE PROSPECTIVE JUROR:  Well, it said in the

15   questionnaire that this could last up to eight weeks if I do

16   get placed on the jury and I teach at a college, so that would

17   eat up a huge part of the semester and I'm not quite sure how

18   I would get coverage because we're understaffed, but even if

19   we did, it would be pretty detrimental to the students because

20   I don't know how any -- - I wouldn't be there on the first

21   day.

22          THE COURT:  Are you teaching every day?

23          THE PROSPECTIVE JUROR:  I'm teaching Tuesdays and

24   Thursdays this semester.

25          THE COURT:  Okay.  And you also said that you have

1   some anxiety about making decisions.

2            THE PROSPECTIVE JUROR:  Yes, it is a personal fault

3   of mine.

4            THE COURT:  Tell me how that manifests.

5            THE PROSPECTIVE JUROR:  I don't know if you can tell

6   right now.  I just get like anxious and jittery, stuff like

7   that.  I don't know.  It's the way it is.

8            THE COURT:  It's natural to be nervous.

9            THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  People don't usually come to federal

11  court.

12           THE PROSPECTIVE JUROR:  I guess so.

13           THE COURT:  So I can understand that.  All right.

14  Let me ask you a couple more questions.

15           You mentioned that you have some close friends and

16  family members who are police officers and you have huge

17  respect for them.

18           THE PROSPECTIVE JUROR:  Yeah.

19           THE COURT:  Can you tell me if there were a case

20  that involved law enforcement witnesses, would you be able to

21  assess their testimony like everybody else?

22           THE PROSPECTIVE JUROR:  I'm not sure, to be honest.

23  I would hope so.  I would think so, but I don't know, you

24  know.  The two people I'm close with, they've been through a

25  lot, so I don't know if it would strike something.  It's hard

1    to tell.

2              THE COURT:  Are you saying that you would tend to

3    believe them over other people, or would you be able to assess

4    their testimony just like somebody else?

5              THE PROSPECTIVE JUROR:  I think I would be able to

6    assess it like anybody else.  I would hope so.  I'm not

7    entirely sure.

8              THE COURT:  You say you're not sure?

9              THE PROSPECTIVE JUROR:  I'm not sure.

10             THE COURT:  Okay.

11             MR. DE CASTRO:  Your Honor, we have no objection.

12             MS. KOMATIREDDY:  No objection, Your Honor.

13             THE COURT:  Thank you very much for your service.

14   You are excused.  So go back down to the second floor.

15             (Prospective juror 126 exits.)

16             (Prospective Juror No. 128 enters.)

17             THE COURT:  Hello.  Juror No. 128.  You can put your

18   bags and things on the chair, if you would like.  You can keep

19   your mask on or take your mask off if you'd like.  Whatever's

20   comfortable.

21             THE PROSPECTIVE JUROR:  Right there.

22             THE COURT:  Behind the podium.  We just have a few

23   follow-up questions for you based on your questionnaire.  The

24   first thing you mentioned is that your husband has a state

25   security license and was part-time security at a hospital.

Prospective Juror No. 128                          454

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  So does the fact that your husband was

3    involved in security and is in the security area, would that

4    affect you in any way in terms of sitting on a criminal case?

5              THE PROSPECTIVE JUROR:  I don't think so, no.

6              THE COURT:  And if there were witnesses who were law

7    enforcement, would you give them -- would you be able to

8    assess their witness testimony the same as everyone else?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  You also mentioned that you know a

11   federal judge, you did yoga with a federal judge for many

12   years.

13             THE PROSPECTIVE JUROR:  Yes, for many years.

14             THE COURT:  In the course of getting together, did

15   you talk about law or things like that?

16             THE PROSPECTIVE JUROR:  Very seldom, no.

17             THE COURT:  Okay.  Because if you were to sit on

18   this jury, Judge Cogan would instruct you on what the law is

19   and would you be able to follow what Judge Cogan tells you the

20   law is rather than remember what another judge might have

21   said?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Are there any issues that you didn't

24   have an opportunity to tell the Court about that you want to

25   bring up now?

1          THE PROSPECTIVE JUROR:  The only thing is having a

2    week now to computate on this two-month potential jury, I'm

3    just a little miffed that so many people perhaps commit --

4    maybe, I don't know if they're guilty or not.  But it imposes

5    a lot on our own lives when we try to be good people.  And I

6    understand as being a citizen of the U.S., it's my duty, and I

7    have sat on juries.  I find it very important, but I'm like

8    it's a lot of time.  I'm willing to give it.

9          There's a bit of -- I don't want to say resentment,

10   I live my life, ideally, by the law.  And yet we have to -- I

11   mean, it's been since before Christmas I haven't been able to

12   make any plans because I might have jury duty, I might have

13   jury duty, I might have jury duty, and now potentially for two

14   months.

15         I mean, I don't think honestly think it will affect

16   my ability to sit there and listen to evidence and come to a

17   decision, but there is a bit of me that's like wow this is

18   really an annoying thing that somebody is doing bad against

19   the law and people are trying to lead a life that's legal,

20   unable to make plans, unable to do their job.

21         Anyway, that giving me that week and two days to

22   stew on it for a potential eight-week trial, that's what --

23   so, anyway.  That was it.

24         THE COURT:  Thank you for letting us.

25         THE PROSPECTIVE JUROR:  It's an honest thing, but

1    you decide.

2              THE COURT:  Thank you for letting us know.  That's

3    always useful.  Sometimes it's not easy to say those things.

4              THE PROSPECTIVE JUROR:  No, and thank you for

5    listening.

6              THE COURT:  Yeah, I think everybody involved in the

7    judicial system understands and it's such an imposition.

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  We are in court all the time.

10             THE PROSPECTIVE JUROR:  I know, but -- I know it's a

11   lot and thank you for thanking us, you.

12             THE COURT:  Indicating my deputy.  I know he has

13   been lovely.

14             THE PROSPECTIVE JUROR:  He's been very wonderful.

15             THE COURT:  Given that, and given that we have a

16   system of justice that requires this --

17             THE PROSPECTIVE JUROR:  I do, I understand that.

18             THE COURT:  It's a system that --

19             THE PROSPECTIVE JUROR:  Uh-hum.

20             THE COURT:  -- we have decided and that we treasure.

21             THE PROSPECTIVE JUROR:  Yes.  Exactly.

22             THE COURT:  The alternative could be that decisions

23   are made without evidence.

24             THE PROSPECTIVE JUROR:  Arbitrarily and without

25   evidence.

1          THE COURT:  That's right.  And it could be that one

2   person makes the decision.

3          THE PROSPECTIVE JUROR:  It's very true.

4          THE COURT:  Yes.

5          THE PROSPECTIVE JUROR:  But you did ask.  I put it

6   out there.

7          THE COURT:  Let me ask the follow up.  You say feel

8   some resentment about this.  That's perfectly natural.

9          Are you likely to take it out on one side or the

10  other?

11         THE PROSPECTIVE JUROR:  I don't think so.  I mean, I

12  think now that I have expressed it, I feel a little better.

13         THE COURT:  Okay.

14         THE PROSPECTIVE JUROR:  It just had to come out.

15         THE COURT:  That's fair.  Thank you for saying it.

16  I'm sure lots of people are feeling it and not able to

17  suppress it.  Forgive me for asking.  So you said that you

18  might feel some resentment because you're living a law-abiding

19  life and people might be doing things against the law and

20  that's what might be causing all of this.

21         So, the defendant in this case is presumed innocent.

22         THE PROSPECTIVE JUROR:  Uh-hum.

23         THE COURT:  It's up to the Government to present

24  enough evidence to convince a jury beyond a reasonable doubt

25  of guilt.

1          THE PROSPECTIVE JUROR:  Uh-hum.

2          THE COURT:  Would you take it out on the defendant

3    your sense of resentment about having to devote time out of

4    your life to this trial?

5          THE PROSPECTIVE JUROR:  I would say no.

6          THE COURT:  Would you take it out on the Government

7    for bringing this case?

8          THE PROSPECTIVE JUROR:  I work for the -- I would

9    say no.

10          THE COURT:  The case -- I wish trials could be

11    faster, frankly, but sometimes it just takes time to get the

12    evidence.

13          THE PROSPECTIVE JUROR:  Right.  Right.

14          THE COURT:  And sometimes there are delays.

15          THE PROSPECTIVE JUROR:  Yes.  It's a process.

16          THE COURT:  And hopefully the case won't take longer

17    than eight weeks.  I know everybody is working diligently.

18    Things happen.  Would you take it out on the Government for

19    bringing the case?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  So you just have a general sense of why

22    do we have to do this.

23          THE PROSPECTIVE JUROR:  Now, that you said it, it's

24    like which side is -- no.  There is the person who does

25    something potentially and then there's the process.  I see

1   what you're saying.

2          THE COURT:  What we are hoping, and you should be

3   honest with us if you think you can't do it, right.  So we are

4   looking for jurors who can be fair and --

5          THE PROSPECTIVE JUROR:  Of course.

6          THE COURT:  -- we are going to give both sides in

7   this case a fair shake.

8          THE PROSPECTIVE JUROR:  No, that --

9          THE COURT:  However you decide, that's fine, and

10  however you feel about it --

11         THE PROSPECTIVE JUROR:  And I would listen to the

12  both sides and weigh the evidence.

13         THE COURT:  Okay.  Great.

14         Is there any follow up?

15         MS. KOMATIREDDY:  Not from the Government, Your

16  Honor.

17         MR. DE CASTRO:  No, Judge.

18         THE COURT:  I'm sorry, was there a no objection or

19  no questions?

20         MR. DE CASTRO:  No other questions.

21         THE COURT:  No questions.  Okay, thank you very

22  much.  You can go back across the hall.

23         THE PROSPECTIVE JUROR:  You're welcome.  Thank you.

24         (Prospective juror 128 exits.)

25         THE COURT:  Juror No. 129.

 1                (Prospective Juror No. 129 enters.)

 2                THE COURT:  We have two podiums.  We do that to make

 3     it confusing.  How are you?

 4                THE PROSPECTIVE JUROR:  Good.  How are you?

 5                THE COURT:  Good.  You tell us you have a vacation

 6     planned.

 7                THE PROSPECTIVE JUROR:  I do.

 8                THE COURT:  You said February 2nd to 5th?

 9                THE PROSPECTIVE JUROR:  Yes.

10                THE COURT:  So is there any flexibility in the

11     timing of that?

12                THE PROSPECTIVE JUROR:  It's already paid for.  The

13     Airbnb is booked and the flight is already booked and like

14     there's tickets to a game we're going to down there.

15                THE COURT:  The Court doesn't sit on Friday, but I

16     think that's a Thursday.

17                THE PROSPECTIVE JUROR:  Yeah.

18                THE COURT:  You said something else about

19     President's Day.

20                THE PROSPECTIVE JUROR:  That I haven't booked

21     anything yet.

22                THE COURT:  Okay.

23                MR. DE CASTRO:  No objection.

24                MS. KOMATIREDDY:  We'd like further questioning,

25     Your Honor.

1          THE COURT:  Okay.  So in response to another

2     question you said that you were a strong supporter of police

3     officers.

4          THE PROSPECTIVE JUROR:  Uh-hum.

5          THE COURT:  So would that affect your ability to be

6     fair and impartial if you were asked to be a juror in this

7     case because there may be police officers or law enforcement

8     officers?

9          THE PROSPECTIVE JUROR:  Right.  I think because I

10    come from a law enforcement family I do find myself being

11    supportive of them.  I would try not to be.  I can't -- I

12    don't know what the case details of it are.  So I wouldn't

13    want to tell you no.  I look up to police officers in my

14    family.  I would want it to be fair for them.  Yeah.

15         THE COURT:  Okay.  So when you're assessing the

16    testimony of a witness --

17         THE PROSPECTIVE JUROR:  Uh-hum.

18         THE COURT:  -- you're supposed to determine whether

19    the person's credible and reliable --

20         THE PROSPECTIVE JUROR:  Correct.

21         THE COURT:  And those things.  So, if you were

22    listening to somebody who was a law enforcement officer, do

23    you think you would assess the testimony of that person?

24         THE PROSPECTIVE JUROR:  I mean, I have to listen to

25    what they're telling me.  That's really all I could go off of,

1   but I just I wanted to be known that I am a supporter of law

2   enforcement just so it is fair.

3           THE COURT:  Sure.  And one can be a supporter and

4   still be --

5           THE PROSPECTIVE JUROR:  Right.

6           THE COURT:  -- maintain some critical distance in

7   the individual who's testifying?

8           THE PROSPECTIVE JUROR:  Correct.

9           THE COURT:  Would you be able to set aside that

10  general support and just listen to the --

11          THE PROSPECTIVE JUROR:  Of what's being said, yes.

12          THE COURT:  Okay.  And then, let me just see what

13  else you talk about.  You said you're a nurse.

14          THE PROSPECTIVE JUROR:  Uh-hum.

15          THE COURT:  So you see the potentially deadly

16  effects of drugs.  Would that affect your ability to sit as a

17  juror in a case that involved drug trafficking, allegations of

18  drug trafficking and distribution?

19          THE PROSPECTIVE JUROR:  I want to say no, but I do

20  know it's a problem out there.  It's something that I deal

21  with as a nurse on a daily basis, especially working in the

22  postoperative-care unit, we deal with a lot of pain management

23  issues, and I know there is issues out there with drug abuse

24  and stuff like that, so.  And, again, I can only listen to

25  what's being told to me and go off of that.

1           THE COURT:  Do you think knowing about the effects

2    of drugs would make you bias in any way?

3           THE PROSPECTIVE JUROR:  It could.  I see how it

4    affects people.  It definitely could.

5           THE COURT:  But you don't know whether a particular

6    individual, in this case, the defendant who is standing trial,

7    was involved at all?

8           THE PROSPECTIVE JUROR:  Right.

9           THE COURT:  You would have to listen to the

10   evidence.

11          THE PROSPECTIVE JUROR:  Right.

12          THE COURT:  The general idea that drugs are harmful,

13   do you think that will play a role in assessing whether the

14   person is guilty?

15          THE PROSPECTIVE JUROR:  Not this particular person

16   in particular, just drugs.

17          THE COURT:  So, again, do you think that would

18   affect you as a juror?

19          THE PROSPECTIVE JUROR:  I want to --

20          THE COURT:  -- in making your decision --

21          THE PROSPECTIVE JUROR:  I want to say, like

22   specifically to the person no, but just drugs overall, yeah.

23          THE COURT:  Drugs are illegal.

24          THE PROSPECTIVE JUROR:  Yeah, I know.

25          THE COURT:  Or, at least, the ones we are talking

1  about here.  Cocaine.  So it wouldn't be up to you to decide

2  that.  The question is whether it would affect your assessment

3  of the case because some people might say -- I'm not saying

4  it's you --

5          THE PROSPECTIVE JUROR:  Yeah.

6          THE COURT:  -- Drugs are so terrible so I'm going to

7  find a way to convict somebody.

8          THE PROSPECTIVE JUROR:  Not if there's not evidence

9  there, no.

10          THE COURT:  Would you still apply the burden of

11  proof, which is that the Government needs to prove its case

12  beyond a reasonable doubt?

13          THE PROSPECTIVE JUROR:  Of course.

14          THE COURT:  Okay.  Were there other follow-up

15  questions?

16          MR. DE CASTRO:  71, Judge.

17          THE COURT:  So you weren't sure whether you would

18  get paid if you were to sit on this jury and you mentioned you

19  know that it's a long trial.  Is there any way for you to find

20  out if you would get paid?

21          THE PROSPECTIVE JUROR:  I did inquire about it.  I

22  know they have to give you X amount of days, but because I'm a

23  nurse, and it only runs Monday through Thursday, my issue

24  would be are they going to make me schedule myself Friday,

25  Saturday, and Sunday, because I just don't work on Monday

1    through Friday, 9:00 to 5:00 job.  So, even if they say, yes,

2    of course, you can sit jury duty because I have to and they

3    have to let me do that, I would be working 7, 12-plus hours

4    shift, considering my commute from Long Island to here too.

5    So it's a lot.

6                THE COURT:  Would you able to do it?

7                THE PROSPECTIVE JUROR:  If I have to.  I mean, I

8    don't really have a choice.  It's not really ideal for me.

9                THE COURT:  And would that situation cause you not

10   to be able to focus here or at work?

11               THE PROSPECTIVE JUROR:  I mean, it's a lot of hours,

12   you're talking about.  It takes two hours in the morning to

13   get here, my drive home.  It's like a 12-plus hour day.  And

14   then with work, it's the same thing, it's 12-and-a-half-hour

15   shifts.  So it's -- that's seven days a week.  I think it can

16   burn me out either way.

17               THE COURT:  It is a lot.  Some people -- everybody

18   has a different breaking point.

19               THE PROSPECTIVE JUROR:  Yeah.

20               THE COURT:  I don't want you --

21               THE PROSPECTIVE JUROR:  For such a long time too.

22   I'm sure it would burn me out.  For eight-plus weeks, I'm sure

23   it will be exhausting.

24               THE COURT:  Thanks for letting us know that.

25               THE PROSPECTIVE JUROR:  No problem.

1          THE COURT:  Anything else from the Government?

2          MR. DE CASTRO:  I have no objection.

3          MS. KOMATIREDDY:  I just wanted to ask you a

4    question, Your Honor.

5          THE COURT:  Okay.  Sidebar?

6          MS. KOMATIREDDY:  Sure.

7          THE COURT:  One moment.

8          (The following occurred at sidebar.)

9          MS. KOMATIREDDY:  The juror indicated that she was

10   going to check, but I couldn't tell if she said she had

11   checked and they would make her work weekends or she wasn't

12   sure.

13         THE COURT:  I can confirm it.  I thought she said

14   she suspected that's what would happen that.  She would get

15   paid because of the re-scheduling, so she would still get to

16   work three days a week, but they would be long shifts to make

17   up for the weekdays that she was missing.

18         MS. KOMATIREDDY:  Yes.  I was wondering if she could

19   inquire with her employer.  It sounded tentative to me.

20   That's all.

21         THE COURT:  Yes.

22         (Sidebar concluded.)

23         THE COURT:  I just have a follow-up question.  You

24   mentioned that if you thought you were sitting on the jury

25   Monday through Thursday that your employer would change your

Prospective Juror No. 129                      467

1   shifts so that you were working Friday, Saturday and Sunday,

2   do you know that's what it they will do or do you think that's

3   what they will do.

4           THE PROSPECTIVE JUROR:  Going off how they are and

5   how short we are nursing-wise, it's probably something they

6   will do.  I only have my schedule until March 4th.  The

7   schedule is not even made after that point.  I'm sure whatever

8   my schedule is now, they wouldn't change it.  But after that,

9   they may say schedule yourself Friday, Saturday, and Sunday

10  because we're short.

11          THE COURT:  So what are you scheduled for between

12  now and --

13          THE PROSPECTIVE JUROR:  It's all different.  Like

14  next week is my four-day week.  I work tomorrow.  My schedule

15  flip-flops.  It's self-scheduling.

16          THE COURT:  So What happens if you're picked to sit

17  on this jury and trial starts on Monday and if you are already

18  scheduled to work on Monday?

19          THE PROSPECTIVE JUROR:  I think they would follow

20  through with that.  It's going forward.  If I am scheduled to

21  work on Friday, I would have to be here Monday through

22  Thursday, whether I'm at the hospital or here.  If I'm

23  scheduled for Friday, then I would have to work Friday at the

24  hospital.

25          And then after March 4th, I have no schedule.  So we

1  self-schedule ourselves.  So then I can see them saying we're

2  short, since you're not able to help us out.  Monday through

3  Thursday you have to schedule yourself.

4          THE COURT:  So since you would schedule yourself,

5  that's what you would --

6          THE PROSPECTIVE JUROR:  That's probably what they

7  would make me do.

8          THE COURT:  What's the other probability?

9          THE PROSPECTIVE JUROR:  I could put myself on.  Just

10  because I self-schedule doesn't mean my management can move

11  me.

12          THE COURT:  I see.  Is there a scenario where you

13  didn't have to work Friday, Saturday, and Sunday but you would

14  get paid anyway?

15          THE PROSPECTIVE JUROR:  No.  So we work three

16  twelves and then every six weeks we do an extra shift and it

17  all rotates.  It's not every week I work Monday, Tuesday,

18  Wednesday, flip, flop.

19          THE COURT:  And even though the schedule between now

20  and March 4th has already been set, if you were picked to be

21  on the jury, the hospital would scramble to cover for you for

22  the days?

23          THE PROSPECTIVE JUROR:  They would have to, yes.

24  But then if those shifts fall Friday, Saturday, and Sunday, I

25  would have to work.

1        THE COURT:  Okay.  So what they would do is would

2   reconfigure it?

3        THE PROSPECTIVE JUROR:  Probably.

4        THE COURT:  But you would then have to work?

5        THE PROSPECTIVE JUROR:  Yeah.

6        THE COURT:  But you don't envision a scenario some

7   people maybe they not one of the lucky ones, even though

8   you're not working, you still got paid?

9        THE PROSPECTIVE JUROR:  Not if -- if it's not on my

10  scheduled paid, then I don't get paid.  Like when I came in

11  last week, I didn't get paid for anything.

12       THE COURT:  Thank you for letting us know.

13       Any other questions?

14       MS. KOMATIREDDY:  Not right now, Your Honor.

15       (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

1   (Continuing.)

2           MS. KOMATIREDDY:  Not right now, Your Honor.

3           THE COURT:  Do you want further --

4           MS. KOMATIREDDY:  We just want to discuss it with

5   you afterwards.  We were just trying to figure something out.

6           THE COURT:  Okay.  So thank you very much.  You can

7   go across the hall.

8           THE PROSPECTIVE JUROR:  Thanks.

9           THE COURT:  All right.  What would you like to

10  discuss?

11          (Prospective Juror Number 129 exits the courtroom.)

12          THE COURT:  All right.  What would you like to

13  discuss?

14          MS. KOMATIREDDY:  We were just discussing it, Your

15  Honor.  We were trying to understand the scheduling.  But it

16  sounded -- and please correct me if I'm wrong, but it sounded

17  like if she's picked for the jury and the trial starts Monday,

18  the hospital would cover her for the duration until her next

19  shift schedule --

20          THE COURT:  No.  No.  What I heard her say was the

21  hospital would scramble to reschedule people so that somebody

22  was working Monday through Thursday if that's the shift that

23  she was supposed to work, and the consequence to her is that

24  she would then have to be scheduled Friday, Saturday, or

25  Sunday, or if she chose not to take those shifts, she would

1   not get paid, because she said very clearly, she doesn't get

2   paid for shifts she doesn't work.  So while it didn't sound

3   like, necessarily, she would be forced to work Friday,

4   Saturdays, and Sunday, she would not get paid for those shifts

5   that she did not work.

6           MR. De CASTRO:  So in other words, to do this trial,

7   she has to -- and actually still get paid, she has to work on

8   the weekends.  So we're going to have a juror that's going to

9   be working in Court for five days and working on the weekends

10  if she wants to pay her bills so she'll be working seven days

11  a week.  She will be -- and she said she will be burned out.

12          THE COURT:  Yeah.  That's what I heard her say, and

13  the alternative would be that she didn't work Friday,

14  Saturday, and Sunday, in which case she would not get paid.

15          MS. KOMATIREDDY:  I think we just understood it

16  differently.  But the articulation was very clear.

17          Can we just the have that follow-up question.  I

18  understood --

19          THE COURT:  What's not clear?

20          MS. KOMATIREDDY:  It sounded to me like at one point

21  in her statement, she said that she would -- that she would

22  get paid without doing weekends shift for the next four weeks

23  until March 4th --

24          THE COURT:  I can ask her that, but I definitely

25  heard her say at the end that she does not get paid for any

1    shift that she doesn't work, because I said to her, some

2    people are lucky and they will get paid even though they're

3    not working, are you wonderful though people, and she said,

4    no, she doesn't get paid unless she works.  And the only days

5    she would be available to work are the non-Monday through

6    Thursday days, but I can certainly bring her back and ask her

7    that.

8             MS. KOMATIREDDY:  Yeah, we just wanted to have her

9    back to clarify that.

10            THE COURT:  Okay.  Have the juror come back.

11            In the meantime, let's go through 130.

12            What questions do you want?  Ms. Komatireddy, we'll

13   start with you.

14            MS. KOMATIREDDY:  Forty, 49.

15            MR. De CASTRO:  This is 130?

16            THE COURT:  Yes.

17            MR. De CASTRO:  I think 66 ends the discussion.  I

18   think it's 66.

19            THE COURT:  Okay.

20            MS. KOMATIREDDY:  And 63.

21            MR. De CASTRO:  And 63.

22            (Prospective Juror Number 129 enters the courtroom.)

23            THE COURT:  All right.  Sorry to bring you back.

24            THE PROSPECTIVE JUROR:  That's okay.

25            THE COURT:  But we wanted to be clear because we

1   weren't sure we heard you correctly.

2          So if you're picked to sit on this jury, the jury

3   sits Monday through Thursday.  Regardless of how you've been

4   scheduled up to this point, you wouldn't be available to work

5   Monday through Thursday.

6          THE PROSPECTIVE JUROR:  Right.

7          THE COURT:  So does that mean you would be

8   rescheduled to work Friday, Saturday, and Sunday?

9          THE PROSPECTIVE JUROR:  It could be.  I don't know

10  what management is going to do, yeah.

11         THE COURT:  And what is the alternative if they

12  don't do that?

13         THE PROSPECTIVE JUROR:  If they don't schedule?  I

14  don't know what the alternative would be.

15         THE COURT:  Okay.  Is there an alternative for you,

16  they say, you were scheduled Monday through Thursday, you

17  can't work those days, we've already -- we're not going to

18  schedule you Friday, Saturday, and Sunday, but we'll pay you

19  any way?

20         THE PROSPECTIVE JUROR:  That would be very nice.  I

21  don't know be if it's going to happen, though.  I can't speak

22  for it.

23         THE COURT:  You don't know or you know?  Because at

24  one point you don't get paid for shifts --

25         THE PROSPECTIVE JUROR:  Well, I'm not going to get

1    paid if I'm not scheduled to work.

2              THE COURT:  But if you're scheduled to work --

3              THE PROSPECTIVE JUROR:  They'll have to pay me.

4              THE COURT:  They'll have to pay you?

5              THE PROSPECTIVE JUROR:  But my concern if this is

6    Monday through Thursday, I get picked for this, could my

7    management turn around and say, we're not paying you Monday

8    through Thursday, we're scheduling you to work Friday,

9    Saturday, and Sunday, instead.  That's what my concern would

10   be.

11             THE COURT:  So there is a scenario where you could

12   get paid because you've been scheduled, but you're not sure

13   that that would happen because they have a choice of

14   scheduling you Friday, Saturday, and Sunday?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  And if you then said I don't want to

17   work Friday, Saturday, and Sunday because I'm too tired --

18             THE PROSPECTIVE JUROR:  I don't know if that's an

19   option.  I don't know what would happen if I said that to

20   management.  I might be out of a job.  I have no idea.

21             THE COURT:  Okay.  So --

22             MR. De CASTRO:  And Judge, also after March 4th.

23             THE COURT:  Right.  So after March 4th, you said

24   that it hasn't been scheduled yet.

25             THE PROSPECTIVE JUROR:  Right.

1      THE COURT:  So is there a scenario if you're on the

2   jury and the case goes on beyond March 4th that management

3   would say you're not available Monday through Thursday, so

4   we're not scheduling you those days?

5      THE PROSPECTIVE JUROR:  Right.

6      THE COURT:  Could you choose to be scheduled Friday,

7   Saturday, and Sunday, or could you choose --

8      THE PROSPECTIVE JUROR:  No, they might make me work

9   Friday, Saturday, and Sunday.

10     THE COURT:  And if you said no --

11     THE PROSPECTIVE JUROR:  I think I would be out of a

12  job.

13     THE COURT:  Okay.  So --

14     THE PROSPECTIVE JUROR:  There's no saying what my

15  management would do.  I can't speak for them, and we're short

16  nursings-wise, so I can absolutely see them doing that to me.

17     THE COURT:  Is there a way for you to get more

18  clarity on the issue or you think it's not worth asking

19  because you pretty much know what they're going to do?

20     THE PROSPECTIVE JUROR:  I mean, I can definitely ask

21  them, but then they're going to ask me did you get picked for

22  it, and then I'm sure that they'll put me on, like I said,

23  Fridays, Saturdays, and Sundays.

24     THE COURT:  So if you don't mind, because it's a

25  little bit early in the afternoon, if there's somebody at your

Prospective Juror No. 130                              476

1   office that you could just ask and say, listen, the judge is

2   asking me this, and if they can give you a clearer answer,

3   that would be helpful.

4                THE PROSPECTIVE JUROR:  Okay.  Like go get my phone,

5   call management, and see what they say?

6                THE COURT:  Yes.  Just ask them, if you got picked

7   to sit on this jury that's eight weeks long, and we're sitting

8   Monday through Thursday, what happens to the days between now

9   and March 4th when you're already scheduled?

10               What's going to happen?  Are they going to pay you

11  or are they going to make you work on the weekend?

12               THE PROSPECTIVE JUROR:  Okay.

13               THE COURT:  And then after March 4th, if they can

14  give you a little idea of what's going to happen there.  If

15  they're just not going to schedule you, or they'll schedule

16  you for Friday, Saturday, and Sunday.

17               THE PROSPECTIVE JUROR:  All right.

18               THE COURT:  All right.  Thanks.

19               THE PROSPECTIVE JUROR:  Thank you very much.

20               (Prospective Juror Number 129  exits the courtroom.)

21               THE COURT:  All right.  130?

22               MR. De CASTRO:  Judge, I think the questionnaire

23  alone is cause.  On 63 and 66.

24               (Prospective Juror Number 130 enters the courtroom.)

25               THE COURT:  Hi.  How are you doing?

Avery N. Armstrong, RPR, Official Court Reporter

Prospective Juror No. 130                           477

1      THE PROSPECTIVE JUROR:  Very good.  Hello,

2  everybody.

3      THE COURT:  Hello.  So we just had a few follow-up

4  questions for you based on your answers.

5      THE PROSPECTIVE JUROR:  Sure.

6      THE COURT:  And I'll start with the answer you gave

7  to a question that asked you about personal views of -- toward

8  people of Mexican descent.  And I wanted you to talk a little

9  bit more about your answer there.

10     THE PROSPECTIVE JUROR:  Sure.

11     THE COURT:  Are okay.  So you said -- and I'll just

12  read it, due to drug human trafficking and sex slavery, some

13  Mexico individuals make the rest of the Spanish population

14  look bad.

15     So can you talk a little more about that view?

16     THE PROSPECTIVE JUROR:  Well, actually, when I got

17  home, I realized that it's not just Mexican.  It's a lot of

18  Spanish people.  I am from South America.  And just the fact

19  that hear news regarding the abusement a lot of people receive

20  because of certain Mexican individuals, are united by all

21  Mexicans, but just certain segments.

22     THE COURT:  So your concern is that the actions of

23  some Mexicans are making all South Americans look bad?

24     THE PROSPECTIVE JUROR:  Yes.  But unfortunately, all

25  segments of Latin America have the same problem.

Avery N. Armstrong, RPR, Official Court Reporter

Prospective Juror No. 130                        478

1    Unfortunately, it's been focused on Mexicans, and in this case

2    it's Mexicans, so I thought maybe I would be a little bit

3    biased.

4              THE COURT:  So do you think that if a Mexican person

5    is accused of criminal activity, they must have done it?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  So then tell me how you the bias will

8    affect your ability to be fair?

9              THE PROSPECTIVE JUROR:  Because of -- I think of

10   what we read, it's mainly Mexicans.  But I guess I was a

11   little bit rushed to give that answer.  I think I could be

12   fair.  He can be from anywhere.  He could be from where I come

13   from, Ecuador, he could be from Colombia.  He can be from

14   Mexico.  It's just at the moment I thought I would be a little

15   bit biased against him and I wouldn't want to be in that

16   situation.

17             THE COURT:  In which situation?

18             THE PROSPECTIVE JUROR:  Where I have to be involved

19   in the courtroom where there's a Mexican being accused of

20   something.

21             MS. KOMATIREDDY:  We have no objection, Your Honor.

22             THE COURT:  All right.  So thank you for letting us

23   know.  You're excused.  You can go back to the second floor

24   jury room and let them know that you've been excused from this

25   trial.

1              THE PROSPECTIVE JUROR:  Okay.

2              (Prospective Juror Number 130  exits the courtroom.)

3              THE COURT:  Juror Number 131, what question should I

4    focus on?

5              MS. KOMATIREDDY:  Forty, 43, and 55, Your Honor.

6              MR. De CASTRO:  We also had 44, 47, and 58, I

7    believe.

8              THE COURT:  Okay.  And I also showed a doctor's

9    appointment today, so I'll just ask and see if that's

10   something that is an issue now.

11             (Prospective Juror Number 131 enters the courtroom.)

12             THE COURT:  Hello.  Juror Number 131, come up to the

13   podium.  You can put your bag on the chair if you'd like, and

14   you can keep your mask on or you can take it off, whatever's

15   comfortable for you.  So we just had a follow-up questions for

16   you.  You said that you had a doctor's appointment today.

17             Were you able to make it?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  No?

20             THE PROSPECTIVE JUROR:  No.

21             THE COURT:  I'm sorry.  I hope it can be

22   rescheduled.

23             THE PROSPECTIVE JUROR:  I hope so.

24             THE COURT:  Okay.  Good.  So you mentioned that you

25   were mugged at one point?

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  And it went to court.

3            Was there a conviction in that case or what

4    happened?

5            THE PROSPECTIVE JUROR:  I don't recall.  It was

6    quite awhile ago.

7            THE COURT:  Right.  Did you have to testify?

8            THE PROSPECTIVE JUROR:  No.

9            THE COURT:  No, okay.  Sorry.  And you did that --

10   did that experience -- do you think that would affect your

11   ability to be fair in a criminal case here?

12           THE PROSPECTIVE JUROR:  I would hope not.  It was

13   quite awhile ago.

14           THE COURT:  Yeah, okay.  That's good to hear.

15           So you also said that you had an aunt who died at

16   Rikers?

17           THE PROSPECTIVE JUROR:  Yes, I did.

18           THE COURT:  Is there anything about that experience

19   that would make it hard for you to be fair and impartial in a

20   criminal case?

21           THE PROSPECTIVE JUROR:  Again, I would hope not.

22   But I don't know what could possibly be said during the trial

23   that may cause emotions to arise.

24           THE COURT:  Right.  And can you describe what you

25   think could happen?

1           THE PROSPECTIVE JUROR:  I think that if anybody was

2    hurt, that could cause some emotions to arise.

3           THE COURT:  Right.  Was she waiting for trial?  Was

4    she accused of something?  What was she accused of?

5           THE PROSPECTIVE JUROR:  Well, I guess it would be

6    stealing.  Yes.

7           THE COURT:  And did she ever have a trial?

8           THE PROSPECTIVE JUROR:  No.  She passed away before

9    the trial.

10           THE COURT:  I see.  Okay.  And do you have feelings

11    about the criminal justice system as a result of what happened

12    to your aunt?

13           THE PROSPECTIVE JUROR:  Well, I think they could

14    have taken better care of her.  But I should explain that my

15    aunt was a quadriplegic, so I don't really have any

16    expectations of the system being able to take care of somebody

17    who is disabled.

18           THE COURT:  All right.  So do you think what

19    happened to her, you would be thinking about it if you had to

20    sit as a juror in this case?

21           THE PROSPECTIVE JUROR:  I can't say that it wouldn't

22    cross my mind.

23           THE COURT:  Sure.  Well, thank you for your candor

24    on that.  It's often hard to predict how you'll react and

25    something like that, I'm sure was very difficult for your

Prospective Juror No. 131                    482

1   family.

2                  THE PROSPECTIVE JUROR:  Yes, it was.

3                  THE COURT:  Yeah.  And so what we're trying to do

4   here is make sure that we have a jury of people who are fair

5   and impartial who will listen to the evidence, you know, and

6   give both sides in this case a fair shake.  And so we want to

7   make sure that people don't come in with biases and things

8   like that which would make it unfair.

9                  THE PROSPECTIVE JUROR:  I understand.

10                  THE COURT:  So it's really all about fairness.

11                  And so is there any reason you could not be fair in

12   this case?

13                  THE PROSPECTIVE JUROR:  I don't think so.  I will

14   try to be fair.  I answered the question because -- in

15   honesty, because you asked -- it was asked that we -- you be

16   truthful in the responses to the questionnaire.

17                  THE COURT:  And I appreciate it.  So thank you for

18   that.

19                  So let me move on and, you have two friends who were

20   correction's officers?

21                  THE PROSPECTIVE JUROR:  Yes.

22                  THE COURT:  And so that counts as law enforcement.

23   And I wanted to see whether you, as a result of your

24   friendship with these two people, would assess the testimony

25   of law enforcement witnesses any differently from somebody

Avery N. Armstrong, RPR, Official Court Reporter

1    who's not law enforcement?

2          THE PROSPECTIVE JUROR:  No, I don't think so.  I

3    think that law enforcement people are called to be -- are

4    called upon to be fair and honest, as well.  Even though I'm

5    sure it must be challenging.

6          THE COURT:  Yeah.  Any witness who testifies, you're

7    supposed to assess their credibility because, you know, you

8    can believe them or not believe them, and you would be looking

9    at things like their ability, you know, to know what they're

10   testifying about, their motive for testifying, and whether you

11   thought they were credible, right.  And so once you looked at

12   all of those things, you would come to the conclusion of, I

13   accept this person's testimony or not.

14         It's important for jurors to assess every witness

15   the same way and not say, oh, you're law enforcement so I'm

16   going to believe you more or I'm going to believe you less.

17   You're not law enforcement, so I'm going to, you know, look at

18   it this way.  We want to make sure you're judging all the

19   witnesses in the same way.

20         Can you do that?

21         THE PROSPECTIVE JUROR:  I hope so.

22         THE COURT:  All right.  But you know yourself.  So

23   do you think you could do it?

24         THE PROSPECTIVE JUROR:  I think I could.

25         THE COURT:  Okay.  Great.

Prospective Juror No. 131                          484

1          And you said you have a friend who's a legal

2    secretary.

3          Do you ever talk about legal issues with her or him?

4          THE PROSPECTIVE JUROR:  From time to time.

5          THE COURT:  So the question is, whether -- Judge

6    Cogan will instruct you on what the law is, and do you think

7    you'll be able to follow his instruction and not think, well,

8    my friend told me something else?

9          THE PROSPECTIVE JUROR:  Yes, I would be able to

10   follow instructions.

11         THE COURT:  Okay.  Great.  And then you also talked

12   about you had a family member who abused illegal substances.

13         Do you think that would affect your ability to be

14   fair in this case that involves allegations of drug

15   trafficking?

16         THE PROSPECTIVE JUROR:  That would be kind of

17   challenging.  I think that the amount of drugs that are

18   filtered through this country would probably be less if there

19   was more stringent rules in keeping them out.  So it would

20   be -- it would diminish access.

21         THE COURT:  Okay.  So do you think that view and

22   that desire would affect your ability to be fair in this case

23   where a particular individual is accused of being involved in

24   drug trafficking?

25         THE PROSPECTIVE JUROR:  I can say I would be

1  challenged.  I don't know what particulars would really come

2  up during the trial.  I can only guess.

3          THE COURT:  Well, it is hard to predict because you

4  haven't heard the evidence yet.  But tell me what you mean by

5  challenging?

6          THE PROSPECTIVE JUROR:  Well, I think there would be

7  some conflict, that's what I'm trying to say.

8          THE COURT:  And conflict on the one side, what on

9  the other side?

10          THE PROSPECTIVE JUROR:  Conflict in terms of how I

11  would actually, like I say, judge the person's responses based

12  on whatever deeds they committed.

13          THE COURT:  Okay.  And I guess I'm trying to figure

14  out where the conflict is.

15          THE PROSPECTIVE JUROR:  Okay.  I'm trying to be

16  clear.

17          THE COURT:  Yeah, no, you know, it's hard for me --

18          THE PROSPECTIVE JUROR:  No, it's all right.  I'm

19  trying to answer the question, but not in a roundabout way,

20  because like I said, I don't know what could actually come up

21  during the course of the potential trial that would trigger

22  certain questions.

23          THE COURT:  Right.

24          THE PROSPECTIVE JUROR:  So to the best of my

25  ability, I would try to either respond, or you know,

1   participate in, say, the jury process to the best of my

2   ability.

3            THE COURT:  Okay.

4            MR. De CASTRO:  We have no objection, Judge.

5            MS. KOMATIREDDY:  No objection, Your Honor.

6            THE COURT:  So you're excused.  If you want to go

7   back to the jury room on the second floor, you can let them

8   know that you're excused from this trial.

9            THE PROSPECTIVE JUROR:  Okay.

10            THE COURT:  Okay.  Thank you.

11            (Prospective Juror Number 131  exits the courtroom.)

12            THE COURT:  So let's do a couple of jurors and tell

13   me what questions you'd like me to ask.  Juror 133.

14            MS. KOMATIREDDY:  The comprehension issue on 133.

15            THE COURT:  The comprehension of what, English?

16            MS. KOMATIREDDY:  English.  In multiple places, she

17   writes out, I do not understand, instead of actually checking

18   yes or no.  Rights narrative answers.  I don't totally know

19   what's going on there.

20            134.

21            THE COURT:  Wait.  Hold on a second.  We're still on

22   133.

23            MR. De CASTRO:  We have a number of others too --

24            THE COURT:  But the general --

25            MR. De CASTRO:  -- the general is three, and it

1    seems to be all over.

2              THE COURT:  So juror 134.

3              MS. KOMATIREDDY:  Thirty-nine and 40.

4              MR. De CASTRO:  Forty-four, 47, 52, and 56, as well.

5              THE COURT:  136.

6              MS. KOMATIREDDY:  Thirty-six and 37.

7              MR. De CASTRO:  And we have 47, 49, and 56.

8              THE COURT:  All right.  So I am told that Juror 129

9    is now back with an answer from her employer, so if she's

10   there, you can bring her back.  Otherwise, 133 is here.

11   Whoever is there, we'll take either of them.

12             (Prospective Juror Number 129 enters the courtroom.)

13             THE COURT:  Juror 129, that was fast.  Okay.  So

14   tell us what you heard.

15             THE PROSPECTIVE JUROR:  Okay.  So I called my

16   management.  She said for this schedule, if I'm scheduled

17   Monday through Thursday and it's like a regular shift of mine,

18   that gets paid.  If I'm scheduled for a Friday, Saturday,

19   Sunday, I'm expected to be at work in order to get paid.

20   After March 4th, she doesn't know.  She also doesn't know how

21   many jury duty days I'm allotted for my job.  I will say, when

22   I sat for civil it was only a week, and I did get paid for all

23   three of those days, but she's not sure what happens if it's

24   an eight-week trial.

25             THE COURT:  But if you, at least in the short term,

1   let's say, the first week, Monday through Thursday, if you

2   couldn't sit, you would still get paid, they wouldn't make you

3   work Friday, Saturday, and Sunday?

4           THE PROSPECTIVE JUROR:  If I'm not scheduled --

5           THE COURT:  They're in the --

6           (Simultaneous Crosstalk).

7           THE COURT:  They're not going to rearrange your

8   schedule?

9           THE PROSPECTIVE JUROR:  Not until -- I have my

10  schedule that's March 4th stays as is.

11          THE COURT:  Got it.  But notwithstanding that, you

12  said -- because between now and March 4th several weeks, and

13  so you don't know if at some point they -- you don't know how

14  many days they'll pay you?

15          THE PROSPECTIVE JUROR:  Right.

16          THE COURT:  So even though you're supposed to get

17  paid for the days you're scheduled, let's say you're

18  scheduled, just hypothetically, Monday through Friday this

19  week, one week, and then the second week, and then the third

20  week, would they still pay you because you're scheduled or

21  would some other policy kick in where, because it's jury duty,

22  they're not going to pay you?

23          THE PROSPECTIVE JUROR:  Right.  She wasn't sure how

24  many jury duty days I'm entitled to, I guess, if that's a

25  thing.

1           THE COURT:  And you don't know whether the policy

2    where they pay you what you're scheduled would prevail or the

3    other policy of they only pay you for X number of jury duty

4    days will prevail?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Any follow-up?

7           MS. KOMATIREDDY:  Can you find out?  Is there an

8    answer to that question?

9           THE PROSPECTIVE JUROR:  I mean, I called my

10   management and they don't know.  I would have to get in touch

11   with corporate HR, and I've literally sat on hold with them

12   for paycheck errors for hours.

13          MS. KOMATIREDDY:  Your Honor, I guess we would just

14   ask -- I know a love of jurors are going through this

15   situation, so we would just ask that the juror inquire with

16   her employer for a definitive answer.

17          THE COURT:  Okay.  Could you ask, just call whoever

18   you need to call to find out whether there are a limited

19   number of jury duty days that you would be paid beyond which

20   you would not get paid, even though you're scheduled?  And I

21   apologize you're on hold.

22          THE PROSPECTIVE JUROR:  Like, I don't even know if

23   I'm going to get an answer today for --

24          THE COURT:  That's fine.  If you don't get an

25   answer, you could always let you us know tomorrow.  That would

Prospective Juror No. 129                    490

1   be okay, as well?

2          THE PROSPECTIVE JUROR:  Like, call here tomorrow?

3          THE COURT:  If you don't get an answer today, you'll

4   be asked to come back tomorrow at 8:30, and so at that point,

5   we can call -- continue to call your employer and see if you

6   can get an answer.

7          THE PROSPECTIVE JUROR:  Okay.

8          MR. De CASTRO:  Judge, maybe it makes sense to ask

9   if she's already scheduled for the weekends already up to

10  March 4th.

11         THE COURT:  Okay.  Are you scheduled Monday through

12  Thursday?

13         THE PROSPECTIVE JUROR:  I have my planner.  I can

14  take it out and look at my dates.  I was, like, it's also in

15  my phone, but I don't have my phone.

16         THE COURT:  It's always good to have a paper backup.

17         THE PROSPECTIVE JUROR:  So my actual schedule, not

18  this weekend?

19         So I'm scheduled Friday, January 27th, I'm scheduled

20  February 12 at 7 a.m. and that's my vacation week, that second

21  vacation week, and then Friday, March 3rd.  And then that's

22  all I have my schedule until.

23         THE COURT:  When you say scheduled, is it just that

24  day or is it a couple of days?

25         THE PROSPECTIVE JUROR:  Sorry, I was just going off

Avery N. Armstrong, RPR, Official Court Reporter

1   of, like, what would affect here, Friday, Saturday, and

2   Sunday.

3            THE COURT:  So I don't think I'm following, because

4   you say you're scheduled Friday, January 27?

5            THE PROSPECTIVE JUROR:  Mm hm.

6            THE COURT:  And that day, it wouldn't matter because

7   there's no court, because it's a Friday.

8            THE PROSPECTIVE JUROR:  Right.  So they would make

9   me work that Friday.

10           THE COURT:  They would make you work on the 27th.

11           THE PROSPECTIVE JUROR:  Right.  Correct.  And then

12  the other weekend was February 12th, 7:00 a.m.  So I would

13  have to go to work on Sunday and then be here Monday, Tuesday,

14  Wednesday, Thursday, and then my vacation starts which was

15  that second vacation that I haven't booked yet, and then March

16  3rd is a Friday.  So I would be Monday through Thursday here,

17  Friday at work.

18           THE COURT:  Okay.  So the days that you're telling

19  us about are the days where you're scheduled where you would

20  be quote, unquote, forced to work, because you're already

21  scheduled and that would be in addition to the Monday through

22  Thursday that you're here?

23           THE PROSPECTIVE JUROR:  Right.

24           THE COURT:  Are you scheduled on any Mondays,

25  Tuesdays, Wednesdays, or Thursdays?

Prospective Juror No. 129                    492

1      THE PROSPECTIVE JUROR:  Yes.  So I have -- are you

2  ready?

3      THE COURT:  Yes.

4      THE PROSPECTIVE JUROR:  So tomorrow, Thursday, 1/19,

5  and then I'm scheduled Monday, 1/23, Tuesday 1/24, Wednesday

6  1/25, Friday 1/27.  Monday 1/30.  Tuesday 1/31, Wednesday 2/1.

7  And then that's when I'm supposed to go to Florida.  That's

8  booked 12/2 to 12/5.  Then I work 2/6, 2/7, and 2/8 which is a

9  Monday, Tuesday, Wednesday, and then I go back again Sunday

10 the 12th.  Monday February 13th, Tuesday the 14th.  Then

11 that's my week off of work.  And then I come back.  I have a

12 holiday on March 1st which is just, like, an extra day to add

13 to my vacation, and then I work March 2nd, March 3rd.

14     THE COURT:  Okay.  So if your employer's policy were

15 to pay you, let's say, for 10 jury duty days, then you would

16 run out of days by February 14?

17     THE PROSPECTIVE JUROR:  Yes.

18     THE COURT:  So the question is, what happens for the

19 days that you're scheduled February 14 and then March 2nd?

20 Those are days you're scheduled to work, but you wouldn't be

21 able to work because you're here --

22     THE PROSPECTIVE JUROR:  Right.

23     THE COURT:  And if the policy were, hypothetically,

24 only 10 days, there are two days beyond that.  So the question

25 is would you get paid for those days.

1              THE PROSPECTIVE JUROR:  Right.

2              THE COURT:  So that's the question, would you get

3      paid --

4              THE PROSPECTIVE JUROR:  I don't know the answer.

5              THE COURT:  -- for the days that you're on jury duty

6      and scheduled even after their policy on the days they'll pay

7      you for jury duty expires?

8              THE PROSPECTIVE JUROR:  Right.  Okay.

9              THE COURT:  So we'll permit you to go back, get your

10     phone, and make the call.  Just come back here if you're still

11     on hold.

12             THE PROSPECTIVE JUROR:  Okay.

13             THE COURT:  Just make sure you come back by

14     5:00 o'clock just so we can figure out what's going on.

15             THE PROSPECTIVE JUROR:  So we want to make sure that

16     I'm getting paid for jury duty days, would they make me work

17     Friday, Saturday, Sunday, because if I already have corporate

18     on the phone, I might as well ask that, and if there's, like,

19     unlimited days, or if there's, like, you said --

20             THE COURT:  Unlimited, yes.  Because you said there

21     are two policies.  You said the policy is they're paying you

22     if you're scheduled, but they also have a policy of maybe at

23     some point they stop paying you jury duty days?

24             THE PROSPECTIVE JUROR:  Right.

25             THE COURT:  So if you run out of jury duty days but

1   you're still scheduled, are they going to pay you for those.

2   That is the question.

3                THE PROSPECTIVE JUROR:  Right.

4                THE COURT:  Were there any other questions?

5                MS. KOMATIREDDY:  No.  Thank you, Judge.

6                THE COURT:  Again, sorry.  You'll get your phone so

7   you can make the call.

8                THE PROSPECTIVE JUROR:  Thank you.

9                (Prospective Juror Number 129  exits the courtroom.)

10                THE COURT:  All right.  Juror 133.

11                (Prospective Juror Number 133 enters the courtroom.)

12                THE COURT:  Hi.  How are you?

13                THE PROSPECTIVE JUROR:  Hello.

14                THE COURT:  You can put your bag and your coat on

15   the chair, if you want.  Right to your right or whenever it's

16   comfortable.  We put the chair there for you.

17                Okay.  How are you doing?

18                THE PROSPECTIVE JUROR:  I'm fine.

19                THE COURT:  Okay.  If you want to take your mask off

20   and you're comfortable, that's fine.

21                Great.  So we have some questions for you based on

22   your questionnaire.

23                THE PROSPECTIVE JUROR:  My what?

24                THE COURT:  The questionnaire that you filled out,

25   we have some questions for you.

1              THE PROSPECTIVE JUROR:  Okay.

2              THE COURT:  Okay.

3              THE PROSPECTIVE JUROR:  I don't hear too well, so --

4              THE COURT:  That's okay.

5         So you put down, in response to many of the

6    questions, that you didn't understand.

7              THE PROSPECTIVE JUROR:  Mm hm.

8              THE COURT:  So is it because you don't understand

9    English or there's something we can explain to you to help

10   you?

11             THE PROSPECTIVE JUROR:  Maybe if you can explain,

12   then I could.

13             THE COURT:  Okay.  So let me go through this and see

14   if I can explain some of these questions to you.

15        So there is a question, for example -- for the

16   parties, it's question number 40.  You were asked whether you

17   or a family member or close friend has ever been a witness to

18   or a victim of a crime.

19             THE PROSPECTIVE JUROR:  If I was a witness to a

20   crime?

21             THE COURT:  Yes.  Have you ever been a witness to a

22   crime?

23             THE PROSPECTIVE JUROR:  No.

24             THE COURT:  Have you been a victim to a crime?

25             THE PROSPECTIVE JUROR:  No.

1         THE COURT:  And does anybody close to you, like,

2    family members that you've talked about, maybe, like,

3    something happened to them and you don't know about it, but

4    maybe something you know about?

5         THE PROSPECTIVE JUROR:  I don't know because I'm not

6    close with my family.

7         THE COURT: I see.  That's fine.  And then let me

8    see about -- so is the issue that because the questions always

9    asked about family members, since you're not in contact with

10   them, you don't think you can answer the question?

11        THE PROSPECTIVE JUROR:  Yeah, I can't answer it.  I

12   don't know.

13        THE COURT:  That's fine.  And really the question is

14   about whether there are people that you have contact with, so

15   that's why we say friends and family.

16        THE PROSPECTIVE JUROR:  Oh.

17        THE COURT:  But if you don't have contact with them,

18   that's okay.  A lot of people don't have contact with family

19   members.  So it would just be about you.

20        THE PROSPECTIVE JUROR:  But I wasn't involved in

21   anything, like, violent.

22        THE COURT:  Okay.  Great.  So let me pick another

23   question.

24        What kind of work do you do?

25        THE PROSPECTIVE JUROR:  I work with the Board of Ed

Prospective Juror No. 133                    497

1  in the food service.  I cook for the children in the school.

2           THE COURT:  Okay.  Is it the Board of Education?

3           THE PROSPECTIVE JUROR:  Huh?

4           THE COURT:  Is it the Board of Education?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  It's a public school?

7           THE PROSPECTIVE JUROR:  Public school, yes, yes.

8           THE COURT:  So you had said your English wasn't

9  great, but your English sounds perfect.

10           THE PROSPECTIVE JUROR:  Read and write.

11           THE COURT:  Yeah, reading and writing, okay.  But

12  you were able to answer -- were you able to answer, you could

13  read and write English on the questionnaire, right?

14           THE PROSPECTIVE JUROR:  To the best of my ability.

15           THE COURT:  And you did great.

16           THE PROSPECTIVE JUROR:  Thank you.

17           THE COURT:  So let me look at some of these other

18  questions.

19           So you had one question where you said you didn't

20  understand.  So let me ask you the question and maybe I could

21  explain it for you.

22           So this is question 49, and the question is, do you

23  have any opinions or beliefs concerning law enforcement, law

24  enforcement --

25           THE PROSPECTIVE JUROR:  Repeat that.

1          THE COURT:  Do you have any opinions about law

2    enforcement, and law enforcement would be things like the

3    police or the prosecutor or federal agency like the FBI.

4          THE PROSPECTIVE JUROR:  If I have any belief in

5    them?

6          THE COURT:  Yeah.  Do you have any feelings about

7    them that might make it hard for you to be fair in a case

8    where investigative agencies might be involved?

9          THE PROSPECTIVE JUROR:  Oh, I don't know.  Because I

10   don't know their work, so I can't comment on their rules and

11   regulations.  So I don't know what to say.

12         THE COURT:  Okay.  So then you don't have any

13   opinions about them?

14         THE PROSPECTIVE JUROR:  No, because I don't know

15   their rules and regulations.

16         THE COURT:  Yeah.  And if you were a juror, you

17   would hear testimony from people who would describe what they

18   do, and maybe somebody from the FBI will testify about what he

19   or she did.

20         Would you be able to listen to them and decide

21   whether to believe them and accept their testimony?

22         THE PROSPECTIVE JUROR:  If I hear what they're

23   saying.

24         THE COURT:  Okay.  And do you think you would be

25   fair to somebody who was law enforcement the same way that

1   there's a witness who's not law enforcement?

2            THE PROSPECTIVE JUROR:  I think if I don't see

3   something or hear for myself, it's hard to believe.

4            THE COURT:  I see.  So if somebody came to court and

5   testified under oath that they saw something, would you -- you

6   know, would you be able to accept that testimony or would you

7   say, if I can't see it or I can't hear it, I don't believe it

8   happened?

9            THE PROSPECTIVE JUROR:  I don't know.  I don't know.

10  I don't -- how should I say?  I don't try not to get involved

11  in something that I don't know.  I don't want to put finger at

12  someone and then I'm apart of something what is negative or

13  positive.

14           THE COURT:  Right.

15           MR. De CASTRO:  No objection.

16           MS. KOMATIREDDY:  No, objection, Your Honor.

17           THE COURT:  So thank you very much.  You're excused.

18  So you can go down to the second floor and tell the jury

19  office that the judge excused you from this trial.

20           THE PROSPECTIVE JUROR:  Tell the judge what?

21           THE COURT:  That you're excused.

22           THE PROSPECTIVE JUROR:  Excused?

23           THE COURT:  Yeah.  You don't have to stay on this

24  case.

25           THE PROSPECTIVE JUROR:  Okay.  Thank you.

1            THE COURT:  Just make sure you stop on the second

2     floor and let them know that before you go.

3            THE PROSPECTIVE JUROR:  The second floor?

4            THE COURT:  The second floor.

5            THE PROSPECTIVE JUROR:  Okay.  Thank you.

6            (Prospective Juror Number 133  exits the courtroom.)

7
             (Continued on the following page.)
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           (Prospective Juror No. 134 enters.)

2           THE COURT:  Hello.  Juror Number 134.  How are you

3    doing?

4           THE PROSPECTIVE JUROR:  I'm well.  Thank you.  How

5    are you?

6           THE COURT:  Good.  Thank you for your patience.

7           THE PROSPECTIVE JUROR:  You're welcome.

8           THE COURT:  We had a few follow-up questions for you

9    based on the questionnaire.

10          THE PROSPECTIVE JUROR:  Surely.

11          THE COURT:  You mentioned that you have some friends

12   and family members including a nephew who is a police officer.

13          THE PROSPECTIVE JUROR:  That too.

14          THE COURT:  Do you have a lot of contact with them?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  So there will likely be witnesses in

17   this case who are law enforcement.  Will you be able to assess

18   their testimony just like any other witness who's not law

19   enforcement?

20          THE PROSPECTIVE JUROR:  I don't see why not, yeah.

21          THE COURT:  Would you have any bias for or against

22   law enforcement people?

23          THE PROSPECTIVE JUROR:  I would hope not but, you

24   know, maybe it would depend on the particulars of --

25          THE COURT:  Right.

1            THE PROSPECTIVE JUROR:  -- you know, the individual,

2     the statement at the time but, in general, probably not.

3            THE COURT:  And the particulars are exactly what you

4     should be focused on.

5            THE PROSPECTIVE JUROR:  Yes.  Yes.

6            THE COURT:  Because it's about a particular person

7     whose standing trial.

8            THE PROSPECTIVE JUROR:  Sure.

9            THE COURT:  And a particular case that the

10    government is bringing so you need to look at the particulars.

11           THE PROSPECTIVE JUROR:  Yes, no question.

12           THE COURT:  And if you form an opinion based on the

13    particulars, that's okay.  The question is whether you have

14    already decided or you have a preconception or you have a bias

15    before the trial starts.

16           THE PROSPECTIVE JUROR:  No.

17           THE COURT:  So do you think you can be fair and

18    impartial in this case?

19           THE PROSPECTIVE JUROR:  I think so, yeah.

20           THE COURT:  Okay.  You mentioned that you have a

21    friend or friends who are lawyers but they are involved in

22    real estate and tax.

23           THE PROSPECTIVE JUROR:  Yes.

24           THE COURT:  Do you talk about legal issues with

25    them?

1        THE PROSPECTIVE JUROR:  No.  That stuff is very

2   boring to me so I try not to, no.

3        THE COURT:  Okay.  Well, at some point, if you're

4   picked to be a juror in this case, Judge Cogan will instruct

5   you on what the law is.

6        THE PROSPECTIVE JUROR:  Sure.

7        THE COURT:  And would you be able to follow

8   Judge Cogan's instruction?

9        THE PROSPECTIVE JUROR:  Yes.

10        THE COURT:  You also talked about your family being

11   robbed at gunpoint in the '70s.

12        THE PROSPECTIVE JUROR:  Yes.

13        THE COURT:  Or family member.

14        THE PROSPECTIVE JUROR:  Yes.

15        THE COURT:  So do you think that experience -- there

16   was in arrest, you said?

17        THE PROSPECTIVE JUROR:  No.

18        THE COURT:  Is there anything about that experience

19   that would make you not fair in this case?

20        THE PROSPECTIVE JUROR:  No.

21        THE COURT:  You also mentioned that you had been

22   sued by a customer.

23        THE PROSPECTIVE JUROR:  Yes.

24        THE COURT:  That's a civil case, not a criminal

25   case.

1             THE PROSPECTIVE JUROR:  Yes.

2             THE COURT:  But does that lead you to have any

3    feelings about the judicial system that would not make you not

4    fair?

5             THE PROSPECTIVE JUROR:  No, no, not at all.

6             THE COURT:  Okay.  And you've sat on a jury before,

7    right?

8             THE PROSPECTIVE JUROR:  Yes, twice, yes.

9             THE COURT:  Okay.  And one of them was a civil case

10   and you also sat on a criminal case so you know that there's a

11   difference in the standard of proof --

12            THE PROSPECTIVE JUROR:  Yes.

13            THE COURT:  -- in that this is a criminal case.  The

14   standard of proof is beyond a reasonable doubt.

15            THE PROSPECTIVE JUROR:  Uh-huh.

16            THE COURT:  Okay.  Then you said you've heard of

17   El Chapo and you've been to the Mexico City airport.

18            THE PROSPECTIVE JUROR:  Multiple times, yeah.

19            THE COURT:  Do you think that -- let's start with

20   Mexico City.  The fact that you've been to Mexico, will that

21   affect your ability to be fair in this case?

22            THE PROSPECTIVE JUROR:  It might.  It was -- it was

23   I don't want to say upsetting but it was, it was tough.  I

24   mean I went there on business and the people from my company

25   said, you know, Only look for us, don't get in a taxi, don't

1    speak to anybody in there.  And, you know, there was armed

2    militia on every street corner.

3            When I went into the office building to meet with

4    the customer who we were supposed to be meeting with, I had to

5    give up my passport in order to get into the building.  And

6    the office was a converted bank and the executives that we

7    were meeting with were on a floor with the bank vault so that

8    if anybody came to kidnap them, they looked themselves in the

9    vault.  That was just so foreign to me and it was -- it kind

10   of leads you to believe, you know, why am I even here.  So it

11   was, it was an eye-opener, that's for sure.

12           THE COURT:  Well, it's always an eye-opener to

13   travel to different countries, different societies.

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  People in different parts of the world

16   do different things.

17           THE PROSPECTIVE JUROR:  Sure.

18           THE COURT:  And they react to different things in

19   different ways.  You can imagine what somebody from a

20   different country coming here might think based on what they

21   see.

22           THE PROSPECTIVE JUROR:  Sure.

23           THE COURT:  So the question is whether that has

24   caused you to form an opinion that would affect your ability

25   to be fair in this case where one particular individual has

1   had criminal allegations lodged against him, you know, or not.

2   So that's the real question, whether you can be fair to the

3   government in this case that has brought the charges and also

4   to the defendant who's accused.

5            THE PROSPECTIVE JUROR:  Well, knowing what I was

6   told at the time as to why kind of the environment there was

7   the way it was is kind of related to, you know, what we are

8   here for in terms of drugs and corruption and things like

9   that.  So I did -- it still has -- you know, it's hard to just

10  disregard totally for me.

11           THE COURT:  Right.  Right.  So even though that's

12  sort of the general background of what was happening at the

13  time that you went there --

14           THE PROSPECTIVE JUROR:  Right, right.

15           THE COURT:  -- and the individuals who were reacting

16  to a situation, could you be fair in this case when it's not

17  about the society, it's not about corruption generally or drug

18  trade generally.  It's about whether one person was involved

19  enough that there is a case beyond a reasonable doubt against

20  that person.

21           Do you think you could set aside those things and be

22  fair in this case to the government and to this one person?

23           THE PROSPECTIVE JUROR:  I would hope so.  It's

24  like -- yeah.  I -- the intellectual side of me says yes, I

25  can, but until, until I'm actually hearing it.  I would be

1    untruthful right now if I would say 100 percent, definitely no

2    problem.

3              THE COURT:  Right.  Okay.  And since you've

4    mentioned that you had been in Mexico and you had seen these

5    things, do you think even if there was no evidence presented

6    of what you described, that you would be using that as

7    additional information about what was happening?

8              THE PROSPECTIVE JUROR:  I would hope not.

9              THE COURT:  It's an exercise of putting things out

10   of your mind.

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  And sometimes you can do it and

13   sometimes you can't.

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  So the question is whether you could.

16             THE PROSPECTIVE JUROR:  Again, I would hope so.  I'm

17   not trying to be evasive.

18             THE COURT:  No.  No.  That's fine.  We want you be

19   to be honest.  These are really hard questions.

20             THE PROSPECTIVE JUROR:  I would hope I would but ...

21             MR. DE CASTRO:  No objection from the defense.  I'm

22   sorry, Judge.  No objection.

23             THE COURT:  Thank you.

24             MS. KOMATIREDDY:  We just want you to complete your

25   questioning, Your Honor.

Prospective Juror No. 134                    508

1          THE COURT:  So thank you for letting me know those

2    things.

3          Then you mentioned you knew or you had heard about

4    El Chapo.  This case, his name is likely to come up in the

5    course of this case.  So do you think that you would be able

6    to put those things out of your mind and just listen to the

7    evidence in this case?

8          THE PROSPECTIVE JUROR:  Yes, definitely, yes.

9          THE COURT:  What additional questions have I missed?

10         MS. KOMATIREDDY:  Nothing from the government,

11   Your Honor.

12         THE COURT:  All right.  Well, actually, you had one

13   more response about drug policy and you said that you would

14   support legalizing drugs if it meant that the product would be

15   safer.

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  And there would be tax revenue from it.

18         Can you just -- so cocaine which is the subject of

19   this, the allegations here, is illegal.

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  And so would you be able to accept that

22   as part of your analysis of the case or would you be thinking,

23   well, it should be legalized?

24         THE PROSPECTIVE JUROR:  Well, it's not up to me to

25   decide what's legal or not, but if the government decides to

Prospective Juror No. 134                    509

1   legalize drugs, then I think it's a good thing for society for

2   that particular drug, but I'm not if they've done it for some,

3   they should do it for all, no.

4              THE COURT:  But in this case, the way it's been

5   charged, cocaine is illegal, distributing cocaine is illegal,

6   trafficking cocaine is illegal.

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  So would you be able to follow the law?

9              THE PROSPECTIVE JUROR:  Of course, yes.

10             THE COURT:  Were there other questions?

11             MS. KOMATIREDDY:  Your Honor, if we can have one

12  more follow-up regarding the trip to Mexico, whether he can be

13  fair and impartial in regards to that.

14             THE COURT:  Okay.

15        So how long were you in Mexico?

16             THE PROSPECTIVE JUROR:  I was there probably five or

17  six times, each time for two to three days.

18             THE COURT:  Okay.  And it sounds like you were there

19  for work.

20             THE PROSPECTIVE JUROR:  For business, yes.

21             THE COURT:  And in that business environment, were

22  you -- what you described, was that the case every time you

23  went or did it change over time?

24             THE PROSPECTIVE JUROR:  No.  It was all within

25  probably a four or five month period so it was pretty

1    constant.

2              THE COURT:  And when was the last time you were

3    there or what was the time period when you were there?  It

4    doesn't have to be precise.  Just the year.

5              THE PROSPECTIVE JUROR:  It was before 9/11 so it was

6    probably 2000, 2001.

7              THE COURT:  Well, that's some time ago.

8              THE PROSPECTIVE JUROR:  It was.

9              THE COURT:  So do you know how things are now?

10             THE PROSPECTIVE JUROR:  I don't.  I haven't been

11   there since, no.

12             THE COURT:  Okay.  So if there's testimony that

13   things are not that way, would that be -- would you say, I was

14   there, I beg to differ?

15             THE PROSPECTIVE JUROR:  No.  I mean, if it's stuff

16   that happened today, I wouldn't just assume things are the

17   same.

18             THE COURT:  Okay.  And if it happened some short

19   time after that but not exactly in that time period, would you

20   still maybe put your own picture of what it was like there or

21   would you say --

22             THE PROSPECTIVE JUROR:  I would hope not, I would

23   hope not, but ...

24             THE COURT:  Okay.  You know yourself better than

25   anybody else so I'll take your word for it but I just need to

1   know if you think you could rather than hope.

2            THE PROSPECTIVE JUROR:  It's a little -- I can't say

3   definitively, I can't.  I would hope I wouldn't but ...

4            THE COURT:  Right.  Right.

5            THE PROSPECTIVE JUROR:  It's like somebody saying

6   if I was ever in a situation where somebody came in to rob the

7   place, I would knock the guy out.  I don't know.  I could be

8   curled up in a corner wetting myself.

9            THE COURT:  That's fair.

10           THE PROSPECTIVE JUROR:  You would hope you would do

11  the right thing at the time but ...

12           THE COURT:  It's hard to say.

13           THE PROSPECTIVE JUROR:  It would be hard to say.

14           THE COURT:  And the scenario you're talking about, I

15  totally agree with you.  People say I would do this and you

16  don't know.

17           THE PROSPECTIVE JUROR:  Yes.  Yes.

18           THE COURT:  But that's an exceptional circumstance.

19  So what you're talking about here is sort of more everyday

20  life where when you're asked to make an important decision,

21  you kind of know how you would make decisions and so there's a

22  little bit more predictability to this.

23           THE PROSPECTIVE JUROR:  Yes.  Yes.

24           THE COURT:  So given that you would be approaching

25  this as another important decision in your life and you would

1   look at all the evidence, consider all the different angles,

2   hear what other people had to say about it, decide what to

3   accept, what to reject, what to believe, what not to believe,

4   and you put it all together, do you think you could be fair in

5   a case that involved allegations of drug trafficking involving

6   Mexico?

7          THE PROSPECTIVE JUROR:  Yes, I could.

8          THE COURT:  Okay.  All right.  And what you know

9   about from your trip, would you be able to set that aside and

10  just say, well, you know, that's, that was my experience.

11         THE PROSPECTIVE JUROR:  At that point in time,

12  right.

13         THE COURT:  Yes, and maybe other, I only got a small

14  piece of it so I don't know the full picture or other people

15  had a different experience, you know, would you be able to

16  allow for that?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  So you could be a fair and impartial

19  juror for this case.

20         THE PROSPECTIVE JUROR:  Yes.

21         MR. DE CASTRO:  Judge, can we have a sidebar?

22         THE COURT:  Sure.

23         (The following occurred at sidebar.)

24         MR. DE CASTRO:  You gave the juror a scenario where

25  it was sort of slightly after he was there.  This actually

```
                        Sidebar                          513
```

1  overlaps the time that my client who was an official in the
2  government and they're accusing him of being corrupt.  And
3  what he said, I don't think he fully got it out but he said
4  that the people at the meeting said that there was corruption.
5  And so he is going -- literally the case is from this time
6  period.
7          THE COURT:  Okay.
8          MR. DE CASTRO:  My client was in government from
9  late '90s until 2012.
10          THE COURT:  I was thinking about 2002.  Okay.
11          MR. DE CASTRO:  Yes.
12          THE COURT:  So I can ask him -- it's not impossible
13  for someone to put those things out of their head.
14          MR. DE CASTRO:  Yes.
15          THE COURT:  So I'll clarify that the time period may
16  overlap and then the hearsay statements that the people he was
17  dealing with might have said about their opinion and whether
18  he could keep those out of his mind.
19          MR. DE CASTRO:  And if you can also maybe mention
20  that he is a law enforcement official, at the time, he was a
21  law enforcement --
22          THE COURT:  A government --
23          MR. DE CASTRO:  A government, a Mexican government
24  law enforcement official at the time.
25          THE COURT:  Okay.  I'll ask that.

```
                        Sidebar                        514
```

1          MS. KOMATIREDDY:  The charges are 2001 to 2020 but

2     Mr. De Castro is right, there will be evidence --

3          THE COURT:  There's some --

4          MS. KOMATIREDDY:  -- there will be evidence that

5     Mr. Garcia Luna was in the intelligence community in the '90s,

6     not quite, but sure.

7          MR. DE CASTRO:  Sort of.

8          MS. KOMATIREDDY:  So I think --

9          THE COURT:  Let me get that straight.  So we're

10    talking about the time period from '90s?

11         MS. KOMATIREDDY:  The charges are 2001 to 2020, the

12    charged conduct, but Mr. Garcia Luna was a government official

13    in the intelligence agency prior to that.  He was in law

14    enforcement starting in 2001.

15         THE COURT:  So intelligence and in law enforcement.

16         MS. KOMATIREDDY:  I think to the extent that he made

17    a reference to, he made a reference to corruption generally --

18         MR. DE CASTRO:  Yes, he just sort of said --

19         MS. KOMATIREDDY:  I don't know that there's going to

20    be any dispute that there's corruption, that some people in

21    the Mexican government are corrupt.  I think the question is

22    can he decide if this individual was one of those people even

23    if he believed other people were, they're not part of the

24    trial.

25         MR. DE CASTRO:  Because this person's -- we're

Prospective Juror No. 134                        515

1   hiding in our vault because the entire law enforcement

2   community is corrupt, that's a problem.

3          THE COURT:  Right.  Although people can overreact.

4          MR. DE CASTRO:  Sure.  Of course.

5          THE COURT:  That's why I asked about the scenario in

6   the United States where terrorist acts are occurring every

7   day.

8          MR. DE CASTRO:  Well, I think we can ask the

9   question.

10         THE COURT:  So I'll ask about the time period, I'll

11  clarify the time period, and then I'll mention the defendant

12  was a particular government official in intelligence and law

13  enforcement during this time period.  And was there anything

14  else?

15         MS. KOMATIREDDY:  Similar to the questions you've

16  been asking about when people say drugs are terrible and you

17  say, well, the question is was this person involved in what

18  you think is terrible, it may be you're against corruption but

19  the question here is whether he was involved in it.

20         THE COURT:  Yes.  Okay.  Great.  Thanks.

21         (In open court; sidebar ends.)

22         THE COURT:  Thank you for your patience.  You've

23  given us a lot to think about and I wanted to clarify a couple

24  of things I said.

25         THE PROSPECTIVE JUROR:  Sure.

Prospective Juror No. 134                    516

1        THE COURT:  So I talked about the things here

2   happening after the time period you're talking about but, in

3   fact, there will be some overlap in the time period.

4        THE PROSPECTIVE JUROR:  Okay.

5        THE COURT:  The charges here stem from 2001 to 2020.

6   And then there will be testimony about the defendant's

7   involvement as a government official of the Mexican government

8   in intelligence and law enforcement as early as the 1990s.

9   Okay?

10        THE PROSPECTIVE JUROR:  All right.

11        THE COURT:  So there is some overlap and I didn't

12   want to give you the wrong impression.  So notwithstanding

13   there was an overlap in the time that you experienced and is

14   being alleged here, would you be able to put your specific

15   experience out of your mind, listen to just the evidence

16   that's presented here and judge the case on the specifics of

17   this case?

18        THE PROSPECTIVE JUROR:  With him, it's from the

19   '90s?

20        THE COURT:  Yes.

21        THE PROSPECTIVE JUROR:  I think so, yes.

22        THE COURT:  In other words, you're one person.

23        THE PROSPECTIVE JUROR:  Right.

24        THE COURT:  You were there for a particular purpose

25   at a particular time.  You met particular people.  Particular

1   people may have particular experiences --

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  -- and beliefs and they might react in a

4   certain way, but would you be able to say that was specific to

5   that, my experience, but I'm going to listen to what people

6   are telling me in court that might have a different experience

7   or different view and accept that for purposes of this

8   purpose?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  So you can put that --

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  -- put your own personal experience

13  aside and judge just based on what is presented to you in

14  court?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Was there any other follow-up?

17          MS. KOMATIREDDY:  Not from the government,

18  Your Honor.

19          THE COURT:  Okay.  Wonderful.  Thank you so much and

20  I appreciate your spending so much time with us.

21          THE PROSPECTIVE JUROR:  Thank you.

22          THE COURT:  These are difficult issues.  So go back

23  across the hall and we'll get back in touch with you.

24          THE PROSPECTIVE JUROR:  Thank you.

25          (Prospective Juror No. 134 exits.)

1          THE COURT:  Juror 136.

2          (Prospective Juror 136 enters.)

3          THE COURT:  Hello.  How are you doing?  Come up to

4    the podium.  You can put your bag on the chair.  You can keep

5    your mask on or you can take it off, whatever is comfortable

6    for you.

7          THE PROSPECTIVE JUROR:  Okay.

8          THE COURT:  That's the microphone so don't touch it.

9    It's picking up what you're saying.

10          THE PROSPECTIVE JUROR:  Okay.

11          THE COURT:  How are you doing?

12          THE PROSPECTIVE JUROR:  Pretty good, thank God.

13          THE COURT:  Okay.  Good.  So I understand you're a

14    retired nurse?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Okay.  How long have you been retired?

17          THE PROSPECTIVE JUROR:  The first COVID, I was there

18    and the second one, I decide to, you know, so roughly like two

19    years.

20          THE COURT:  Right.  Okay.  Good.

21          So we had a couple of questions for you.  Okay?  So

22    on the questionnaire, you said that you found that laws are

23    complicated and so you might have a problem sitting in

24    judgment of another person.

25          THE PROSPECTIVE JUROR:  Yes.

1        THE COURT:  Can you explain that a little bit?

2        THE PROSPECTIVE JUROR:  Well, it depends on

3   situations because there might be a case where that person is

4   guilty, let's say, but according to the rules of the law, they

5   may end up being not guilty.  So it's, sometimes it's a little

6   confusing.

7        THE COURT:  Okay.  And so -- thank you for

8   explaining that.

9        THE PROSPECTIVE JUROR:  I mean it's just my view.  I

10  might be wrong.

11       THE COURT:  Of course, yes, yes.  So if you are a

12  juror, you will listen to evidence and you can make decisions

13  about, you know, whether somebody is credible and whether the

14  evidence has shown certain things.  Judge Cogan will tell you

15  what the rules are and what the law is.  All right?  And so if

16  Judge Cogan tells you what the law is, would you be able to

17  follow what he tells you?

18       THE PROSPECTIVE JUROR:  I guess so.

19       THE COURT:  Yes?  Okay.  And so whether a person is

20  guilty or not is both a question of fact, right, did he do it,

21  and also a question of law whether it is a crime.  And so when

22  you said you might think somebody is guilty but according to

23  the rules, he's not guilty, really, you can't find somebody

24  guilty unless he both did it and it's against the law.  Do you

25  see what I'm saying?

1      So would you be able, even if you believe somebody

2  did something and you thought it was wrong, if Judge Cogan

3  told you that wasn't against the law, what the person did, but

4  maybe something else is, would you be able to say, okay, I'm

5  going to follow what Judge Cogan told me and I'm not going to

6  find the person guilty even though I think he did it?

7           THE PROSPECTIVE JUROR:  I can try.

8           THE COURT:  You can try?

9           THE PROSPECTIVE JUROR:  Uh-huh.

10          THE COURT:  Okay.  Do you think you'll be able to?

11          THE PROSPECTIVE JUROR:  Yes.  If the judge has come,

12  the judge came up with the facts and it looks as if, well,

13  it's the facts, we'll have to follow that facts.

14          THE COURT:  Okay.  Well, as a juror, you would find

15  what the facts are.

16          THE PROSPECTIVE JUROR:  Well, yes.

17          THE COURT:  So you would hear the evidence and the

18  jurors will testify and like I said, you can believe or not

19  believe the juror based on what you see and hear and then

20  you'll have evidence, you may have other evidence or you may

21  not, and then you can decide what happened.  Okay?  So that's

22  up to you.  The judge won't tell you what happened.  The judge

23  will just let the evidence come in.  So you will decide what

24  happened, but the judge will tell you whether certain things

25  are legal or not.  So certain things may be against the law

1    while other things aren't and so Judge Cogan will tell you

2    what things need to be proven before you can find somebody

3    guilty.

4              So I just wanted to make sure that you could follow

5    what Judge Cogan tells you.  So they say you need to find this

6    thing and this thing and that thing, and you only found that

7    the first two things happened but not the third, then you

8    would have to find not guilty.  Even though you found that the

9    person did something, you couldn't find the person guilty

10   because it's not a crime unless those, all of those things are

11   found.  Do you follow?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Do you think you can do that?

14             THE PROSPECTIVE JUROR:  Yes, I'll try.

15             THE COURT:  Okay.  Great.

16             So you said that you had some concerns about some

17   government agencies.  There was a list that included the NYPD

18   and the FBI and you said some of them, not all, act very

19   biased toward their fellow man.  So can you tell me how that

20   might affect your ability to be a juror?

21             THE PROSPECTIVE JUROR:  Well, I was never arrested

22   or anything, thank God, but I had an, my -- this is my

23   personal experience with a police officer.

24             THE COURT:  Okay.

25             THE PROSPECTIVE JUROR:  And that's -- I'm telling

1  you the truth, that's exactly how I felt.  I -- my husband

2  died in 9/11.

3          THE COURT:  I'm so sorry.

4          THE PROSPECTIVE JUROR:  He was my lawyer -- well,

5  you know, we made decisions together, let's say, not in the

6  court.  He was my mechanic, my tailor, everything.  And I had

7  an old car that I used to drive to work because I worked at

8  Brooklyn for 20 something years and I said, Oh, my God, my

9  husband is gone now, I need to get a good mechanic, let me get

10  me something comfortable that I can drive to last me a number

11  of years so I don't have to hurt my head.

12          And there was a little party for the senior citizens

13  at the job and I decide to buy the ladies pizza.  So in my

14  area, I live Canarsie, there's a Pizza Hut there.  That was

15  years ago.  That was closed now.  I said let me drive in there

16  and pick up at least, according to the numbers, I'll pick up,

17  like, five boxes of pizza that I can take for them.  Prior to

18  that, I had bought myself a brand new car.  It was a

19  Mercedes-Benz.

20          So I bought the pizzas, went in, put it in the back

21  seat, went into the car.  This is in, like, a little mini

22  mall-like compound, and I didn't have my -- after I went into

23  the car, I started the car.  I started to put on my seatbelt

24  rolling not as far as that wall.  I buckled up.  There comes

25  the cop behind me, stops me.  He said, Ma'am, I'd like to see

1   your registration and your documents.  I took it out and I

2   gave it to him.  He said, well, I have to give you a ticket,

3   I'm going to charge you because you weren't wearing your

4   seatbelt.

5         I should have had it on but I just move off and I

6   explained to him, in other words, like begging him, Oh, I'm

7   sorry, I'm sorry.  I'm not even out on to Flatlands yet.  He

8   said, No, he can't do anything about that.  He said, But you

9   don't have -- You're driving a brand new Mercedes-Benz and

10  you're not wearing your seatbelt, he said.  I didn't want to

11  argue with him.  I didn't want to fight so I took the ticket.

12        It affect my license because it was a moving

13  violation and I was really, really mad.  It's not to say -- I

14  mean according to the law, I should have been wearing my

15  seatbelt.  I just moved off.  I didn't even reach out of the

16  mall yet, mini mall, the small area to turn on to Flatlands

17  which starts by that mall and he comes and he gives me a

18  ticket.  I don't think that was fair.

19             THE COURT:  Yes, I could understand why you --

20             THE PROSPECTIVE JUROR:  So like that, I always keep

21  this in the back of my head.

22             THE COURT:  Yes, okay.  So how do you think that

23  might affect you if you were a juror?

24             THE PROSPECTIVE JUROR:  Well, it depends.

25             THE COURT:  It depends on what?

1      THE PROSPECTIVE JUROR:  It depends on the situation,

2  I mean, the evidence, the case.

3      THE COURT:  Okay.  And so as long as you're deciding

4  the case based just on what you see in court and the evidence

5  that's presented to you in court without thinking about other

6  things that may have happened in your life, then it sounds

7  like you can be fair.

8          What we don't want is for somebody to be biased

9  against one side or the other because of something not that

10  they did but that, something that happened many years ago to

11  you.  It's not the same police officer.  It's someone else.

12  So the question for you is are you going to hold that against

13  other law enforcement officers what that one officer did to

14  you?

15      THE PROSPECTIVE JUROR:  It always keeps popping up

16  in my mind but if I'm chosen, I'll do my best.

17      THE COURT:  Can you put that out of your mind?

18      THE PROSPECTIVE JUROR:  Yes, I try.

19      THE COURT:  And be fair towards a police officer?

20  Do you think you could do it?  Do you think you would be able

21  to?

22      THE PROSPECTIVE JUROR:  Well, yes.

23      THE COURT:  Okay.  And so if a police officer

24  testified, would you judge his testimony differently because

25  it's a police officer and you had that bad experience or would

1   you judge it the same way you would for any other witness?

2           THE PROSPECTIVE JUROR:  Well, if the case is there,

3   the facts is there, the officer is in his rights, I'll have to

4   go by that, putting everything behind.

5           THE COURT:  I'm sorry?

6           THE PROSPECTIVE JUROR:  Putting everything behind.

7           THE COURT:  I see.  Okay.  Is there any reason you

8   think you could not be fair and impartial if you were a juror?

9           THE PROSPECTIVE JUROR:  No, I'll be fair.

10          THE COURT:  Okay.  Great.  So let me just see if

11  there was anything else.

12          You mentioned that you have a son-in-law or a cousin

13  who is involved in the legal profession.

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Do you ever talk --

16          THE PROSPECTIVE JUROR:  My, my son-in-law's first

17  cousin.

18          THE COURT:  I see, okay.

19          THE PROSPECTIVE JUROR:  He is a lawyer.

20          THE COURT:  What kind of law is that, do you know?

21          THE PROSPECTIVE JUROR:  I'm not sure and I don't

22  want to commit myself.

23          THE COURT:  That's okay.  Do you ever talk to that

24  person about law?

25          THE PROSPECTIVE JUROR:  Not really.  For the

1  holidays, during the Christmas but no, just time to hang out

2  and enjoy the season and the good food that I cook.

3          THE COURT:  It sounds wonderful.

4          So I think I asked you already but if Judge Cogan

5  instructs you on what the law is, would you be able to follow

6  that law and not worry about what somebody else might have

7  explained the law was?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Okay.  Great.

10         Are there any follow-up questions?

11         MR. DE CASTRO:  No, Your Honor.

12         MS. KOMATIREDDY:  No thank you, Judge.

13         THE COURT:  Thank you very much.  You can go back

14  across the hall.

15         THE PROSPECTIVE JUROR:  You're very welcome.  Thank

16  you.

17         (Prospective Juror No. 136 exits.)

18         THE COURT:  All right.  So Juror Number 137, what

19  should I focus on?

20         MS. KOMATIREDDY:  71, Your Honor.

21         MR. DE CASTRO:  I think we have 47 as well.

22         THE COURT:  Juror 137.

23         (Prospective Juror No. 137 enters.)

24         THE COURT:  Come up to the podium, please.

25         How are you doing?  You can put your bag down if you

1    want.  How are you?

2          THE PROSPECTIVE JUROR:  Good.  Good afternoon.

3          THE COURT:  We have a few follow-up questions for

4    you based on your questionnaire.  Okay?

5          THE PROSPECTIVE JUROR:  Okay.

6          THE COURT:  So the first thing is that you said that

7    your company has a three day jury duty paid leave policy.

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  So after three days, you wouldn't get

10   paid?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  And would that be a hardship for you?

13         THE PROSPECTIVE JUROR:  Of course.  I work by the

14   hour.

15         THE COURT:  I see.  What kind of work do you do?

16         THE PROSPECTIVE JUROR:  I'm a warehouse associate.

17   I'm a shipping coordinator.

18         MR. DE CASTRO:  We have no objection.

19         MS. KOMATIREDDY:  No objection, Your Honor.

20         THE COURT:  So thank you for letting us know.

21   You're excused.

22         THE PROSPECTIVE JUROR:  Thank you.

23         (Prospective Juror No. 137 excused.)

24         THE COURT:  So should we take a break?  We've gone

25   for almost two hours.  I'm intending to go to 5:30.  I think

Jury Selection                                    528

1   we should finish by then.  So let's take a break and come back

2   at 3:35 and then we'll resume with 138.

3              MS. KOMATIREDDY:  Thank you, Judge.

4              (Recess taken.)  (Court resumed.)

5              THE COURT:  We are back on the record.

6              Let's do four more jurors, 138, 142, 143 and 144.

7              Juror 129 said she made some phone calls.  She

8   doesn't have a complete set of answers but if we want to have

9   her call in at that point, we can do that.  All right?  So

10  that's my proposal.

11             Tell me what you would like me to ask, which

12  questions you would like me to focus on?

13             THE INTERPRETER:  Is your microphone on?

14             THE COURT:  It is.  Do I need to repeat anything?

15             THE INTERPRETER:  Yes, please.

16             THE COURT:  It's making noise.  Is this better?  It

17  is a little bit softer.  Is that okay?

18             THE INTERPRETER:  Yes.

19             THE COURT:  So I wanted to let the parties know that

20  Juror 129 made some phone calls and had some answers for us,

21  not complete answers.  So I propose that we go through four

22  jurors and then call 129 and see at that point.

23             Can the interpreters hear me?

24             THE INTERPRETER:  We can.  It's distorted.

25             THE COURT:  I can hear it go in and out a little

1   bit.

2              THE INTERPRETER:  There's an echo.

3              THE COURT:  It's because I don't have the cover but

4   when I put the cover on, is that better?

5              MR. DE CASTRO:  It was actually better before this

6   last try.

7              THE COURT:  There's usually a foam cover on this

8   which makes the microphone work well.  It disintegrated

9   yesterday.  It's shedding all over the bench so it was removed

10  without a replacement so I can't tell if that is causing a

11  problem.  As I speak now, are you hearing me?  So maybe -- I

12  have a volunteer for a new foam cover.

13             Is this better?

14             MS. KOMATIREDDY:  Yes, Judge.

15             THE COURT:  Can you hear me?  Okay.  Problem solved.

16  Thank you very much.  I'm going to put this back on.  Is that

17  okay?  All right.

18             Okay.  So the next juror is Number 137.

19             MS. KOMATIREDDY:  We struck 137.  I believe we're at

20  138.

21             THE COURT:  Yes.

22             MS. KOMATIREDDY:  And our main question on this was

23  the hardship.

24             THE COURT:  All right.  Anything else?

25             MR. DE CASTRO:  Judge, yes, we have hardship but

1   also 44, 52, 55 and 56.

2          THE COURT:  And then for Juror 142?

3          MS. KOMATIREDDY:  36, 42, 44, 49, 50, 62 and 66,

4   please.

5          MR. DE CASTRO:  Sorry.  I didn't hear some of those.

6          THE COURT:  Just tell me what you --

7          MR. DE CASTRO:  Sorry about that.  36, 38, 40, 42,

8   43, 44 through 48.  This is for Juror 142.  Correct?

9          THE COURT:  Yes.

10         MR. DE CASTRO:  59, 59 through 62 and 66.

11         THE COURT:  IT is here to check the mic.  We're off

12  the record while we test the microphone.

13         (Discussion off the record.)

14         THE COURT:  So let's go back on the record.  Thank

15  you.

16         Let's call in Juror 138.

17         (Prospective Juror No. 138 enters.)

18         THE COURT:  Good afternoon, Juror 138.  Come up to

19  the podium, please.  Thank you.

20         We have a couple of follow-up questions based on the

21  answers you gave in the questionnaire.  We'll start with your

22  hardship.

23         You mentioned that you and your wife have

24  responsibility for your two children.

25         THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Can you tell us a little bit about that?

2          THE PROSPECTIVE JUROR:  Yes.  So we do hybrid work.

3   So my wife works in the hospital so we take turns.  We split

4   the days, two and three days.  Two days, I go in, and then

5   three days, she goes in.  We need the time in the morning,

6   afternoon to drop off our children at school which are 4 and 5

7   and pick them up at the end of the day.

8          THE COURT:  Okay.  And what time -- you say you

9   share that with your wife now?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  And if you were to sit on the jury

12   Monday through Thursday, what effect would that have?

13          THE PROSPECTIVE JUROR:  So my wife wouldn't be able

14   to go into the office and she essentially can't work very

15   effectively in that situation.

16          THE COURT:  What kind of work does she do?

17          THE PROSPECTIVE JUROR:  She's, she runs a research

18   program at the hospital and she sees patients in, with, for

19   elderly patients, assessing them for dementia.

20          (Continued on next page.)

21

22

23

24

25

1   (continuing)

2            THE COURT:  But you said you're doing hybrid work?

3            THE PROSPECTIVE JUROR:  Yes.  She also runs a

4   research program.  So in the days that she's not seeing

5   patients, she does the research to write grants for funding.

6            THE COURT:  Right, is she doing that work at home?

7            THE PROSPECTIVE JUROR:  Yes.  She does that at home.

8   When she needs to see patients she goes into the office.  From

9   Monday to Thursday, if she had to not go in, then she wouldn't

10  be able to see the patient during that period of time.

11           THE COURT:  Right.  Do you know if there are people

12  who could take up some of that work if she's not there or

13  she's late maybe because she needs to drop off your children,

14  she could go in for part of time.

15           THE PROSPECTIVE JUROR:  We don't have any

16  arrangements right now.  We would have to find something, but

17  currently we don't have any arrangements otherwise.

18           THE COURT:  Okay.  So, I recognize that being on

19  jury duty could be an hardship.  But if there was any way, if

20  you got picked to be on this jury, to make those arrangements

21  for the time on the jury, would you be able to manage?

22           THE PROSPECTIVE JUROR:  Like anyone in life, you

23  have to deal with what your given.  So, I mean, if that

24  happens, I'm sure we would find a way, but the -- it would be

25  very difficult, and very stressful in that process.

1          THE COURT:  Right.  And would that stress distract

2    you from paying attention as a juror or once it is done it is

3    done?

4          THE PROSPECTIVE JUROR:  Possibly, because if we

5    couldn't find something, we would probably be put into a

6    situation where she would have to go in and just hope for the

7    best kind of situations, and that's -- that is a stressful

8    situation.  That would play a burden on my mind.

9          THE COURT:  Not to plan your life for you, but

10   sometimes if it's dropping off kids, if there is somebody else

11   at the school who can temporarily take your children until you

12   got home because there wouldn't be any over time here.

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  You can pick them up, that might work.

15   Do you think you can make those arrangements to focus on the

16   trial?

17         THE PROSPECTIVE JUROR:  Possibly, yeah.

18         THE COURT:  Great.  Thank you for letting us know.

19         I had a couple of other questions.  You said that

20   you have some family and friends who are NYPD.

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  So some of the witnesses in this case

23   will be law enforcement.  Will you be able to assess their

24   testimony the same way you would a non-law enforcement

25   witness?

1              THE PROSPECTIVE JUROR:  Yeah.

2              THE COURT:  Do you have any bias for or against the

3     police based on you knowing police officers?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  You said that you have heard on 1010

6     News about the Mexican drug cartel and the arrest of El Chapo.

7     Do you agree anything that you have heard about the drug

8     cartels would affect your ability to be fair to this

9     defendant?

10             THE PROSPECTIVE JUROR:  Well, I mean, any

11    unconscious bias aside, I guess I could assess any facts in

12    the best way that I could.  Yeah.  Yeah.

13             THE COURT:  Sometimes the way to deal with

14    unconscious bias is to make it conscious, which is to say I

15    heard this but I'm going to put it out of my mind so I can

16    focus on this and focus on the trial.  Do you believe you can

17    do that?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Well, you were asked the question about

20    the United States prosecuting crimes that where some things

21    happened outside the country and you asked, or you said that

22    you felt only the things that need to be done should be

23    prosecuted in the United States.

24             THE PROSPECTIVE JUROR:  Right.

25             THE COURT:  Do you remember that question?

1          THE PROSPECTIVE JUROR:  Right.

2          THE COURT:  So the issue of whether things can be

3    prosecuted in the United States even if they occurred outside

4    is an issue that a judge in this case has decided and that's

5    why we are having the trial here in the United States.  So

6    would you be able to accept that, that that's just the way it

7    is?

8          THE PROSPECTIVE JUROR:  Yeah.

9          THE COURT:  Would you be able to follow a judge's

10   instruction?  If Judge Cogan tells you these are the things

11   for you to consider and these are the things that you don't

12   need to consider, can you do that?

13         THE PROSPECTIVE JUROR:  Yeah.

14         THE COURT:  Good.  And then you also said that less

15   harmful drugs should be legalized, like marijuana, but

16   controlled with its disbursement.  This is a case that

17   involves cocaine, and allegations of cocaine trafficking.  So,

18   do you think that your views on marijuana might affect your

19   ability to be fair in a case that involves cocaine?

20         THE PROSPECTIVE JUROR:  Yeah.  I suppose so.  I

21   hadn't really given drug enforcement around cocaine any much

22   thought.  So I suppose I could be as unbiased as I can.

23         THE COURT:  Because cocaine is still illegal and

24   trafficking cocaine is illegal so you would only be assessing

25   whether the Government has proven its case beyond a reasonable

1   doubt.

2           THE PROSPECTIVE JUROR:  Right.

3           THE COURT:  I want to make sure your views on

4   marijuana would not affect a case that involved cocaine.

5           THE PROSPECTIVE JUROR:  No, it wouldn't.

6           THE COURT:  Great.  Is there any reason you could

7   not be a fair and impartial juror in this case?

8           THE PROSPECTIVE JUROR:  No.  No.

9           THE COURT:  Okay, any follow-up questions?

10          MR. DE CASTRO:  Just 71, Judge.

11          THE COURT:  So, you stated that you weren't sure if

12   you would get paid if you were sitting on the jury.  Is there

13   any way for you to check with your employer to find out?

14          THE PROSPECTIVE JUROR:  I verified after that day I

15   would be paid.

16          THE COURT:  You would be paid?

17          THE PROSPECTIVE JUROR:  Yeah.

18          THE COURT:  For the whole time?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Great.  Thank you so much.

21          THE PROSPECTIVE JUROR:  Uh-hum.

22          THE COURT:  Anything?

23          MR. DE CASTRO:  No, Judge.

24          MS. KOMATIREDDY:  No.  Thank you, Judge.

25          THE COURT:  Thank you.  You can go back across the

1  hall.

2            (Prospective juror 138 exits courtroom.)

3            (Prospective Juror No. 142 enters.)

4            THE COURT:  Hi, Juror No. 142, how are you doing?

5            THE PROSPECTIVE JUROR:  Good you.  Thank you.

6            THE COURT:  If you want to put your bag on that

7  chair, you can.  Make yourself comfortable.  How are you

8  doing?

9            THE PROSPECTIVE JUROR:  Good.  Thank you.

10           THE COURT:  We have some follow-up questions for you

11  based on the answers you gave on usual questionnaire and I

12  will start with the answer that you gave with regard to

13  federal agencies.  You said that you had some doubts about the

14  FBI, especially not providing or withholding evidence, so can

15  you talk about that a little bit.

16           THE PROSPECTIVE JUROR:  Just an example, the Hunter

17  Biden laptop story that's been out in the news knowing that

18  the FBI had that in their possession and didn't let the public

19  know bothers me.

20           THE COURT:  How do you think that would affect your

21  assessment of a case where there may be some FBI agents who

22  testified?

23           THE PROSPECTIVE JUROR:  It would affect my opinion

24  for sure.

25           THE COURT:  How so?

1          THE PROSPECTIVE JUROR:  I would probably not trust

2     totally what the testimony may be from agents.

3          THE COURT:  You'll be instructed that for each

4     witness who testifies you will have to assess their

5     credibility and you have to look at things like their motive

6     to lie.

7          THE PROSPECTIVE JUROR:  Uh-hum.

8          THE COURT:  And their ability to observe.  So if you

9     take all of those things into account, do you think you would

10    still not trust them?

11         THE PROSPECTIVE JUROR:  Yes, I would not.

12         THE COURT:  Just because they are FBI?

13         THE PROSPECTIVE JUROR:  I think a lot of things we

14    hear about in the news lately comes from the top, so, yes,

15    that's correct.  Not the individual agent so much, but from

16    the top, so I think it kind of comes from that.

17         THE COURT:  When you say it comes from the top, from

18    the top of the FBI?

19         THE PROSPECTIVE JUROR:  Well, I think it comes from

20    maybe not the agent in the field, so to say, but maybe

21    leadership.

22         THE COURT:  And, so, you think that the leadership

23    might be telling agents to say things that are not truthful?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  And you think that the agents would do

1  that?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  And do you think you could assess them

4  just by watching them and listening to them to figure out if

5  they're telling the truth and/or think they are not going to

6  be telling the truth?

7          THE PROSPECTIVE JUROR:  I think they can be

8  convincing at the time, but I would have doubts about what

9  they are saying.

10         THE COURT:  Would you be able to put those doubts

11  aside?

12         THE PROSPECTIVE JUROR:  Not necessarily.

13         MS. KOMATIREDDY:  No objection, Your Honor.

14         MR. DE CASTRO:  No objection.

15         THE COURT:  So you are excused, so you can go back

16  to the second floor and let the jury office know that you have

17  been excused from this trial.

18         THE PROSPECTIVE JUROR:  Okay, thank you.

19         THE COURT:  Thank you.

20         (Prospective juror 142 exits courtroom.)

21         THE COURT:  Juror No. 143.

22         (Prospective Juror No. 143 present at sidebar.)

23         THE COURT:  Yes, come up here.

24         How are you doing?

25         THE PROSPECTIVE JUROR:  Doing well.  Thank you.

Prospective Juror No. 143                    540

1          THE COURT:  Good.  I had some follow-up questions

2  for you.

3          THE PROSPECTIVE JUROR:  Excuse me?

4          THE COURT:  I have some questions for you.

5          THE PROSPECTIVE JUROR:  Okay.

6          THE COURT:  To follow up on your questionnaire.

7          THE PROSPECTIVE JUROR:  Okay.

8          THE COURT:  So you mentioned that you have some

9  travel coming up.  I will start there.  On January 26 and 27?

10         THE PROSPECTIVE JUROR:  26 and 27, yes.

11         THE COURT:  Okay.  Where are you going?

12         THE PROSPECTIVE JUROR:  Going to Boston.  It's a

13 Christmas gift.  I'm going to a Celtic's/Knicks' game.

14         THE COURT:  It's next Thursday and Friday; is that

15 right?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  So the trial is not happening on Friday.

18 So if you left after court was out on Thursday, could you make

19 it?

20         THE PROSPECTIVE JUROR:  If court -- if I left, what

21 time would court be out.

22         THE COURT:  Around 5:00 or 5:30.

23         THE PROSPECTIVE JUROR:  I doubt it.  I'm not sure

24 what time the game starts.

25         THE COURT:  Celtics game is on Thursday.

1          THE PROSPECTIVE JUROR:  Thursday, yes.

2          THE COURT:  You're trying to get up to Boston?

3          THE PROSPECTIVE JUROR:  For an evening game.

4          THE COURT:  And the tickets are non-refundable?

5          THE PROSPECTIVE JUROR:  I don't think so, my

6   daughter bought them for me.

7          THE COURT:  I see.  All right.  Let me ask you a

8   couple more questions.

9          THE PROSPECTIVE JUROR:  Sure.

10          THE COURT:  You said that you have a nephew's friend

11   is NYPD; is that right?

12          THE PROSPECTIVE JUROR:  A nephew...

13          THE COURT:  A nephew and a friend?

14          THE PROSPECTIVE JUROR:  A nephew and a friend, yes.

15   Well....

16          THE COURT:  The fact that you have these law

17   enforcement ties, do you think that would affect your ability

18   to be fair?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  And you also talked about your brother's

21   experience in college, specifically he had some drug charges

22   against him.  Do you think that that would affect your ability

23   to be fair in this case that involves drug trafficking?

24          THE PROSPECTIVE JUROR:  No, I don't think so.

25          THE COURT:  You also mentioned that you had heard

1   about El Chapo and that his girlfriend had helped him escape.

2   His name is likely to come up in this case.

3            THE PROSPECTIVE JUROR:  Right.

4            THE COURT:  Do you think what you know about El

5   Chapo --

6            THE PROSPECTIVE JUROR:  That's about all I know.

7            THE COURT:  Great.

8            You said you don't know if you would be paid, but

9   you're retired.

10            THE PROSPECTIVE JUROR:  No, no, there is no issue

11   with getting paid.

12            THE COURT:  No issue.  Great.

13            Is there any reason you could not be fair and

14   impartial in this case?

15            THE PROSPECTIVE JUROR:  I can't think of any.

16            THE COURT:  Great.  Is there any follow-up

17   questioning?

18            MS. KOMATIREDDY:  Just number 37, Your Honor.

19            THE COURT:  Okay.  So you sat on a civil jury trial

20   once before and you said you did not reach a verdict.  Do you

21   know --

22            THE PROSPECTIVE JUROR:  Yes, I got selected, I guess

23   you call it impanelled, and then I guess they settled out of

24   court.

25            THE COURT:  Did you actually listen to evidence?

1          THE PROSPECTIVE JUROR:  No.  We didn't even get

2     started, I just got seated.

3          THE COURT:  Excellent.  Is there anything about that

4     experience that would make it difficult for you to serve in

5     this case?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Anything else?

8          MR. DE CASTRO:  Judge, can we find out who he is

9     rooting for?

10         THE COURT:  No.

11         MR. DE CASTRO:  Just a joke.

12         THE PROSPECTIVE JUROR:  Can I answer it anyway?

13         THE COURT:  Thank you very much.  You can go back

14    across the hall.

15         THE PROSPECTIVE JUROR:  Thank you.

16         (Prospective juror 143 exits courtroom.)

17         THE COURT:  Let's go through a batch of the jurors

18    starting with 144.  What should I be focusing on?

19         MS. KOMATIREDDY:  62, primarily, Your Honor, 56, and

20    43.  38 and 43, same thing.

21         MR. DE CASTRO:  I think 58.  We would have 58.

22    That's it.

23         THE COURT:  How about Juror No. 145?

24         MS. KOMATIREDDY:  66, that's all from us.

25         MR. DE CASTRO:  We have 40, 52, 53, 54 and 58.

Case 1:19-cr-00576-BMC   Document 227   Filed 02/28/23   Page 243 of 363 PageID #: 14211

1           THE COURT:  Juror No. 147.

2           MS. KOMATIREDDY:  69, please.

3           MR. DE CASTRO:  Same.

4           THE COURT:  148.

5           MS. KOMATIREDDY:  36 and 42, please.

6           MR. DE CASTRO:  64 and 71.

7           THE COURT:  And 149.

8           MS. KOMATIREDDY:  40, 44, 50, 55, 56, and 69,

9    please.

10          MR. DE CASTRO:  Agreed.

11          THE COURT:  Okay.  At that point, we will have 129,

12   so we are going to go through 144, 145, 147, 148, 149, and

13   then we will have 129.

14          MS. KOMATIREDDY:  Okay.

15          THE COURT:  So we will bring in juror 144.

16          (Prospective Juror No. 144 enters.)

17          THE COURT:  Hello, how are you?

18          THE PROSPECTIVE JUROR:  Good.  Thank you.

19          THE COURT:  Stand at the podium.  We have follow-up

20   questions for you based on your answers to the questionnaire.

21   You can keep your mask off or talk it off, whatever you are

22   comfortable with.

23          So the question there was about some government

24   witnesses who may testify pursuant to an agreement with the

25   Government.

1    THE PROSPECTIVE JUROR:  Yes.

2    THE COURT:  And you said that you would not believe

3  or trust in what the witness' testimony is and then you also

4  said that it's hard for you to think that the case cannot be

5  proved beyond a reasonable doubt.  So can you explain that?

6    THE PROSPECTIVE JUROR:  Well, for the first one,

7  it's hard for me to take what they're saying as truth because

8  they want a little more -- some time off of their case, so I

9  can't believe what they are saying to me because I think it's

10  a lie.

11    And the second one, can you repeat that again for

12  me, please?

13    THE COURT:  The question is:  It says the law does

14  not require the Government use any specific investigative

15  technique or present a specific type of evidence to prove its

16  case.

17    THE PROSPECTIVE JUROR:  I misread the question.  I

18  didn't understand the question when I read it.

19    THE COURT:  Okay.

20    THE PROSPECTIVE JUROR:  But I believe they should

21  have that right.

22    THE COURT:  Well, I think the question is related to

23  the cooperating witness.  So let me start with your first

24  question and answer.  So you said it would be hard to believe

25  somebody who's trying to get someone off the case.

1              THE PROSPECTIVE JUROR:  Right.

2              THE COURT:  For every witness you're going to have

3    to decide whether to believe him or her.

4              THE PROSPECTIVE JUROR:  Correct.

5              THE COURT:  For every witness you'll be watching

6    them and listening.

7              THE PROSPECTIVE JUROR:  Okay, but for me it was

8    because they are already incarcerated, so they want an

9    opportunity to get some time cut off of their case.

10             THE COURT:  Right.

11             THE PROSPECTIVE JUROR:  That's what I was referring

12   to.

13             THE COURT:  Right.

14             THE PROSPECTIVE JUROR:  I wasn't referring to a

15   witness that actually saw what happened, you know.

16             THE COURT:  Okay.  Well, okay.  So the witness will

17   testify about certain things.

18             THE PROSPECTIVE JUROR:  Yes, and it may include what

19   they saw.

20             THE COURT:  Yes.  As with every witness, you would

21   assess their credibility because lots of people who are not

22   incarcerated might have a motive to say certain things,

23   including lie; right?

24             THE PROSPECTIVE JUROR:  That's true.  That's true.

25             THE COURT:  So you would take that into

1   consideration?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  And sometimes people who might have a

4   motive to life could tell the truth?

5              THE PROSPECTIVE JUROR:  That's true.  That's very

6   true.

7              THE COURT:  Your job as a juror is to consider all

8   these things, and there are things in our life that we do, and

9   it may be that you believe the person, or it could be that you

10  just say I'm never going to leave believe that person.

11             THE PROSPECTIVE JUROR:  That's true.

12             THE COURT:  We are trying to figure out which one it

13  is for you.  Could you believe that person or would you just

14  not believe them?

15             THE PROSPECTIVE JUROR:  A witness that's not

16  incarcerated, I can believe them.  I can believe the

17  possibility of what they're saying, but someone who is already

18  incarcerated it's hard for me because they want more time --

19  they want to get time off their case, so they will say what

20  they need to say in order to get that time knocked off.

21             THE COURT:  So you think that motive to lie will

22  override everything else?

23             THE PROSPECTIVE JUROR:  Exactly.

24             THE COURT:  So even if they're telling the truth,

25  you wouldn't believe them?

1           THE PROSPECTIVE JUROR:  It would be hard for me to

2    believe.  It really would be hard for me to believe.

3           THE COURT:  Because you can imagine a scenario where

4    a person is telling the truth?

5           THE PROSPECTIVE JUROR:  Yes, yes.

6           THE COURT:  But you're saying you just wouldn't

7    believe them?

8           THE PROSPECTIVE JUROR:  Yes.

9           MS. KOMATIREDDY:  No objection.

10          MR. DE CASTRO:  No objection.

11          THE COURT:  Thank you for your candor.

12          THE PROSPECTIVE JUROR:  Thank you.

13          THE COURT:  You are excused.  Go back to the second

14   floor.

15          (Prospective juror No. 144 excused.)

16          THE COURT:  Juror No. 145.

17          (Prospective Juror No. 145 enters.)

18          THE COURT:  Come up to the podium and you can put

19   your bag down on the chair.  How are you doing?

20          THE PROSPECTIVE JUROR:  Okay.  Anxious, nervous.

21          THE COURT:  Thank you being patient.  I know it's

22   been a long day.

23          THE PROSPECTIVE JUROR:  It's okay.

24          THE COURT:  I just had a few follow-up questions for

25   you.  I will start with the question where you told the Court

1 that you are nervous about being on this jury.

2     THE PROSPECTIVE JUROR:  Yes.

3     THE COURT:  Okay.

4     THE PROSPECTIVE JUROR:  One thing that I definitely

5 suffer from is anxiety and panic attacks.  So even just being

6 here today has been stressful and challenging.  But when the

7 questionnaire was given and some of the parties and other

8 information that I am aware of through other cases in the past

9 in the news, I just find the matter of this case to be

10 challenging for me to be involved with.

11     THE COURT:  Right.  Right.  Well, it would be

12 challenging for anyone.

13     THE PROSPECTIVE JUROR:  Agreed.  Understood.

14     THE COURT:  And then, but the question is whether it

15 is a particular hardship for you and also whether it would

16 cause you not to be fair because all that people are looking

17 for is a jury of fair people because they want a fair trial.

18 Both sides want a fair trial.

19     THE PROSPECTIVE JUROR:  Uh-hum.

20     THE COURT:  So, you know, it is very uncomfortable

21 for people to be in federal court and especially when you got

22 other things going on in your life.

23     THE PROSPECTIVE JUROR:  Yeah.

24     THE COURT:  Are you seeking treatment for anxiety?

25     THE PROSPECTIVE JUROR:  Yes, I see a therapist for

1    it.  I've had panic attacks for about 20 years.  They started

2    in my first year of teaching.  I taught in a challenging

3    neighborhood in Bronxville, Brooklyn.  I'm a special-ed

4    teacher and it was a violent, weapons, fights all the time,

5    challenging environment to be in that I was in for about two

6    years.  I'm in a different school environment now that is less

7    challenging in terms of that because I've always work with

8    children with behavior problems.  But in other disadvantaged

9    neighborhoods, it tends to be a little bit more challenging.

10   So my panic attacks started with that experience in my life

11   and now it's something that I just continually manage and work

12   with.

13              THE COURT:  And how do you manage to work with it in

14   your work because it does sound very challenging and

15   stressful?

16              THE PROSPECTIVE JUROR:  Yeah, I have learned a bunch

17   of strategies through therapy.  I have my water bottle with me

18   right now and I certain things that I do.  Sometimes

19   medication, Xanax, if I'm having a panic attack that I am not

20   able to kind of quiet with just breathing exercises and other

21   things.

22              THE COURT:  Okay.  Could you apply those same

23   techniques if you --

24              THE PROSPECTIVE JUROR:  I can try.  I can try, but

25   it is definitely challenging for me.  Like sometimes I avoid

Prospective Juror No. 145                    551

1    riding the subway if I get really claustrophobic.  I will have

2    weeks that I won't ride the subway because I don't like when

3    it stops in between stations because I feel trapped.  And also

4    sometimes when you're having panic attacks, disassociate a

5    little bit, and kind of have a hard time coming back.  So I

6    rely on those things for that, but it can be challenging

7    sometimes.

8              THE COURT:  And if you are in a vehicle, does that

9    cause claustrophobia?

10             THE PROSPECTIVE JUROR:  It can.  And sometimes

11   flying can.

12             THE COURT:  If you are in a car or a van, is that

13   okay?

14             THE PROSPECTIVE JUROR:  It depends on also how I've

15   been doing.  I tend to have been having quite a few more panic

16   attacks, that can become harder.  There are other times in my

17   life.  You know, it's been going on for 20 years.  There are

18   good times and not the best.

19             THE COURT:  And how have you been so far this

20   afternoon?

21             THE PROSPECTIVE JUROR:  Today has been challenging

22   for me.  I didn't sleep well last night, and I've been anxious

23   waiting just because this is all unknown and new for me in

24   terms of this many people.

25             And I sat in one trial before that was in Manhattan

 1   that was a much smaller scenario.

 2          THE COURT:  Right.  So do you think, despite you not

 3   getting a lot of sleep last night, you're able to focus on

 4   what's happening today?

 5          THE PROSPECTIVE JUROR:  It's hard.  It's hard to

 6   think clearly and straight.

 7          THE COURT:  If you were asked to sit on the jury, do

 8   you think you can give it your full attention?

 9          THE PROSPECTIVE JUROR:  I think it would be

10   challenging for me.

11          THE COURT:  We have a lot of things in life that are

12   challenging.

13          THE PROSPECTIVE JUROR:  Understood.  Thank you.

14          THE COURT:  We have a lot of things in life

15   challenging and sometimes we do it successfully.  And, so, the

16   question is whether you could be a fair juror in this case and

17   you could sit through the trial and listen to it and assess it

18   and make a decision.  Do you think you could do that?

19          THE PROSPECTIVE JUROR:  I think it would be

20   difficult for me.

21          THE COURT:  Okay.  So let me ask you a couple of

22   other questions if you don't mind.

23          THE PROSPECTIVE JUROR:  Sure.

24          THE COURT:  You talk about the media coming in this

25   case.  Is there anything about the media coverage that causes

1    you concern?

2         THE PROSPECTIVE JUROR:  I was aware of the El Chapo

3    trial and that name was on the list, when it was in Brooklyn a

4    couple of years ago and that that was -- I believe that there

5    were some concerns for the jury involved in that, I mean, what

6    I have read in the news, I wasn't there, that that was

7    concerning.

8         And I also know recently in the news that El Chapo's

9    son was arrested and there was a lot of eruption of violence

10   around that in Mexico, so that is....

11        THE COURT:  Right.

12        THE PROSPECTIVE JUROR:  Anxiety producing.

13        THE COURT:  You can rest assure with the El Chapo

14   trial here in Brooklyn everything security-wise went smoothly.

15        THE PROSPECTIVE JUROR:  It's good to know.

16        THE COURT:  Were there follow-up questions?

17        MS. KOMATIREDDY:  Would Your Honor mind asking about

18   34?

19        THE COURT:  34?

20        MS. KOMATIREDDY:  Yes, please.

21        THE COURT:  Okay.  So you put down in your

22   questionnaire that you like to watch certain TV programs.

23        THE PROSPECTIVE JUROR:  Correct.

24        THE COURT:  And some of these are about true crimes,

25   Narcos.

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  So Narcos in particular is -- and Wire,

3    you said is your favorite show.  Those are fictionalized

4    versions of things.

5           THE PROSPECTIVE JUROR:  Yeah.

6           THE COURT:  You know a lot of what you're seeing

7    there is just not true?

8           THE PROSPECTIVE JUROR:  Correct.

9           THE COURT:  And you would know that real life is

10   different in many ways, right?

11          THE PROSPECTIVE JUROR:  Sure.

12          THE COURT:  Does watching those things cause you

13   anxiety?

14          THE PROSPECTIVE JUROR:  Not necessarily because,

15   like I said, it's fictional, and it's a television show that

16   you're watching for enjoyment or just -- I mean, I loved the

17   Wire for just how intelligently it was put together.

18          Season four showed school experiences which was very

19   similar to what I experienced so it was kind of comforting to

20   see that type of representation.  That felt similar to

21   something that I experienced as teacher.

22          THE COURT:  But the true crime documentaries and the

23   serial podcasts, those are not fictionalized, right?

24          THE PROSPECTIVE JUROR:  Correct.

25          THE COURT:  Did those cause you anxiety?

Prospective Juror No. 145                          555

1          THE PROSPECTIVE JUROR:  I mean, I consume a lot of

2     news and information, so it's just kind of something that I

3     would like to be aware of what's going on in the world.  I

4     don't think particularly that those cases or the information

5     caused me anxiety, but they are also not present in my life at

6     the moment.  It's something that I am consuming and informing

7     myself about.

8          THE COURT:  So I'm not saying that sitting as a

9     juror in a trial is like watching these things.

10         THE PROSPECTIVE JUROR:  Understood.

11         THE COURT:  To the extent that you are able to watch

12    documentaries about violent crimes and things like that, do

13    you think that you would you be able to sit on a jury and

14    listen to testimony and assess evidence?

15         THE PROSPECTIVE JUROR:  Yes, the anxiety part makes

16    -- I mean, sometimes I'm not aware of when things are going to

17    trigger me.  That can be an unknown for me sometimes.

18         THE COURT:  And what happens if you are triggered?

19         THE PROSPECTIVE JUROR:  I get a little bit of out of

20    body experience.  I can sometimes turn bright red and get

21    very, very overheated.  I have shallow breathing, which I have

22    to focus on to bring my breathing back because you don't

23    realize that you have kind of stopped breathing.  Sometimes

24    tingling in my fingers and toes and a very strong feeling of

25    wanting to exit whatever the scenario is, fight or flight.

1    Not fight.  It's always flight for me, no fight.

2            THE COURT:  Okay.  If that were to happen in the

3    middle of a trial, then we can take a break.

4            THE PROSPECTIVE JUROR:  Okay.

5            THE COURT:  You could relax.

6            THE PROSPECTIVE JUROR:  That's comforting.

7            THE COURT:  Takes breaths and come back.  Could you

8    do that?

9            THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Any follow up?

11           MS. KOMATIREDDY:  No.  Thank you, Judge.

12           THE COURT:  Great.  You can go back across the hall.

13           THE PROSPECTIVE JUROR:  Thank you.

14           (Prospective Juror No. 147 enters.)

15           THE COURT:  Hello.  You can come up here.  There is

16   a podium and a chair where you could put your bag.

17           How are you doing?

18           THE PROSPECTIVE JUROR:  I'm doing great.  How are

19   you?

20           THE COURT:  Good.  You're Juror No. 147.

21           THE PROSPECTIVE JUROR:  Yes.

22           THE COURT:  You have a mask on.  If you want to keep

23   your mask on, that's fine.  If you want to take your mask off

24   because it's more comfortable, that's fine too.

25           You said you have a family emergency.  Can you tell

1    us about that?  Come a little bit closer to the podium so we

2    can hear you.

3              THE PROSPECTIVE JUROR:  Sorry.  My brother passed

4    away, so I will be going back there for his memorial service.

5              THE COURT:  Where would you be traveling?

6              THE PROSPECTIVE JUROR:  To Guyana.

7              THE COURT:  To Guyana?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  When is that memorial service?

10             THE PROSPECTIVE JUROR:  In September.

11             THE COURT:  In?

12             THE PROSPECTIVE JUROR:  September.

13             THE COURT:  In September?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Well, our trial will not go to

16   September.

17             THE PROSPECTIVE JUROR:  Okay.

18             THE COURT:  So you would be available from now until

19   sometime in March?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Yes?

22             THE PROSPECTIVE JUROR:  Uh-hum.

23             THE COURT:  That's good to hear.

24             THE PROSPECTIVE JUROR:  Okay.

25             THE COURT:  So let me ask you a little bit more.

1   You were asked about a legal principle that everyone is

2   presumed innocent until the Government has presented enough

3   evidence beyond a reasonable doubt that somebody is guilty and

4   the question was will you accept and apply this rule of law.

5   You said no, and I don't know -- you just checked it, so I

6   don't know if that's what you meant by that.

7            Can you explain?

8            THE PROSPECTIVE JUROR:  I think it's supposed to be

9   a yes, sorry, not a no.

10            THE COURT:  It's not no?

11            THE PROSPECTIVE JUROR:  No.

12            THE COURT:  So you could accept that?

13            THE PROSPECTIVE JUROR:  Yes.

14            THE COURT:  That everyone is presumed innocent?

15            THE PROSPECTIVE JUROR:  Yes.

16            THE COURT:  Then you also had a question where you

17   said the Government has the burden of proving guilt beyond a

18   reasonable doubt.  The defendant does not have to prove

19   anything and the defendant does not have to testify.  If a

20   defendant decided not to testify, would you hold it against

21   him or would you accept that he does not have to testify?

22            THE PROSPECTIVE JUROR:  I accept that he does not

23   have to testify.

24            THE COURT:  Thank you.

25            You were also asked about law enforcement officers

1    as witnesses.  There are likely to be people who are law

2    enforcement, like FBI, who testify in this case and you, as a

3    juror, would have to assess their testimony and decide whether

4    to believe them or not and whether to accept their testimony

5    or not.

6              Can you do that the same way that you would with

7    somebody who was not a law enforcement officer?

8              THE PROSPECTIVE JUROR:  No.

9              (Continued on next page.)

1           (Continuing.)

2           THE COURT:  Can you tell me why not?  Would you

3    treat them differently just because they're a law enforcement

4    officer, or would they be the same?

5           THE PROSPECTIVE JUROR:  No.  The same.  The same,

6    sorry.

7           THE COURT:  All right.  So I didn't ask the question

8    properly.  I apologize.

9           And then you also said that you would not be paid

10   while you're on jury duty.

11          What kind of work do you do?

12          THE PROSPECTIVE JUROR:  Accountant.

13          THE COURT:  You're an accountant?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  And so do you know from your employer

16   whether you would be paid or not?

17          THE PROSPECTIVE JUROR:  That, I'm not sure.

18          THE COURT:  You're not sure.

19          Is there someone you could call to find out if you

20   would get paid while you're on jury duty?

21          THE PROSPECTIVE JUROR:  Yes, but he's on vacation at

22   the moment.  That's my boss.

23          THE COURT:  I see.  Okay.

24          THE PROSPECTIVE JUROR:  That's for this week.

25          THE COURT:  I see.  There's no one else you can ask?

1          THE PROSPECTIVE JUROR:  I'm the payroll person, no.

2     I'm the payroll person, no.

3          THE COURT:  You're the payroll, but you don't know

4     the answer?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  Is there any way for you to e-mail your

7     boss and just say the Court wants to know whether you would

8     get paid?

9          THE PROSPECTIVE JUROR:  Yes, I can do that.

10          THE COURT:  Why don't you do that?

11          And you've never asked that question, whether you

12     would be paid while you're on jury duty?

13          THE PROSPECTIVE JUROR:  No.  I never, no.

14          THE COURT:  So ask if you'll get paid, and if so,

15     for how many days, because this trial may go on for eight

16     weeks.

17          THE PROSPECTIVE JUROR:  Okay.

18          THE COURT:  So two months.  And so sometimes people

19     will pay a certain amount of time, but not --

20          THE PROSPECTIVE JUROR:  -- all the time.

21          THE COURT:  -- all the time.  So we just need to

22     know the answer to that.

23          THE PROSPECTIVE JUROR:  Okay.  Yeah, I'll do it.

24          THE COURT:  So why don't you -- you can get your

25     phone now downstairs and send an e-mail, and if you don't get

1   a response until tomorrow, that's okay, because you'll come

2   back tomorrow and let us know.

3              THE PROSPECTIVE JUROR:  Okay.

4              THE COURT:  Okay.  And if you don't know, that's

5   fine too.  Just send the e-mail so that you've asked the

6   question, because maybe your boss will respond.

7              THE PROSPECTIVE JUROR:  Yeah.  Okay.

8              THE COURT:  Great.  Are there any other questions?

9              MR. DE CASTRO:  No, Your Honor.

10             MS. KOMATIREDDY:  Your Honor, if I could, on 62C,

11  please.

12             THE COURT:  So you were asked whether you would --

13  the question says that the Government does not have to use a

14  specific investigative technique or present a specific type of

15  evidence to prove its case.  And the question was can you

16  accept and apply this rule of law.

17             So in other words, a witness may testify as to

18  certain things, and if you believe that witness and you accept

19  the testimony, then that could be enough for the Government to

20  prove its case.  The Government does not have to prove the

21  case by presenting anything specific.

22             Okay.  So can you accept that, that there could be a

23  conviction based just on testimony, as long as it proves the

24  case beyond a reasonable doubt and the Government does not

25  have to offer any specific type of evidence?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Yeah.

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Okay.  Great.  Thank you.  Anything

5    else?

6          MS. KOMATIREDDY:  Nothing from the Government.

7    Thank you, Your Honor.

8          THE COURT:  Thank you.  So go ahead and get your

9    phone and send the e-mail, and then go back across the hall.

10          THE PROSPECTIVE JUROR:  Okay.  Thank you.

11          THE COURT:  Thank you.

12          (Prospective Juror Number 147 exits the courtroom.)

13          (Prospective Juror Number 148 enters the courtroom.)

14          THE COURT:  Hi, Juror 148.  Come right up.  And if

15    you want to put your bag on the chair, that's why it's there.

16          How are you doing?

17          THE PROSPECTIVE JUROR:  Very well.  Thank you.

18          THE COURT:  We just had a few questions for you

19    based on the answers you gave on the questionnaire.  And I'll

20    start with the question where you were asked if there was

21    anything in terms of your personal, political, or religious

22    beliefs that would prevent you from sitting in judgment on

23    another person.  And you said, by nature, I do not like

24    judging people.  I do not know how to do it.

25          THE PROSPECTIVE JUROR:  That's correct.

1            THE COURT:  So can you tell us about that?

2            THE PROSPECTIVE JUROR:  Usually, our parents teach

3    us --

4            THE COURT:  Say that again.

5            THE PROSPECTIVE JUROR:  Our parents teach us don't

6    judge anyone, just judge yourself and try to be nice person in

7    your life.  Try to be -- try to do everything in a good way,

8    to be as an example for the people who you're around.  And me

9    just growing up with that.  And in my life, just me, neither

10   judge anyone.  I try to understand everybody, the reason why

11   they're doing something wrong or do something right.  But

12   neither stop in that way, because if I'm starting to judge

13   anyone, like, usually in their life, I feel not very well

14   inside.  Yeah, I -- I'm just thinking all the time, maybe I'm

15   wrong.  And this feeling is not just giving me ease in my

16   life.

17           THE COURT:  Okay.  Thank you.

18           THE PROSPECTIVE JUROR:  You're welcome.

19           THE COURT:  And that makes a lot of sense.  I hear

20   that a lot too, you know, don't judge people, understand them,

21   but sometimes -- and most of the time, that's appropriate.

22   You live your life and they live their lives.  But for

23   example, I'm a judge, so that's my job. I'm judging all the

24   time.  But I'm not judging in the sense of saying you're a bad

25   person.  But I'm making assessments about whether somebody

1    broke the law, what they did, did they do it, didn't they do

2    it, and is that illegal.  And so it's not only judges that do

3    that, sometimes we ask jurors to make those assessments

4    because it's important for people in the community to do that.

5    So if you were called upon to be a juror, and do that in a

6    case, could you do it?

7            THE PROSPECTIVE JUROR:  I don't know.

8            THE COURT:  You don't know.  Okay.  That's fine.

9            THE PROSPECTIVE JUROR:  If I will be correct, if I

10   will be right.

11           THE COURT:  Well, people make important decisions in

12   their life all the time, and I know sometimes people make a

13   decision and then go back and think, did I do the right thing,

14   but that's just normal.

15           So the best that people could ask of jurors is that

16   they be fair, that they pay attention to the case, that they

17   follow the law, and that they reach a decision that's based on

18   the evidence in the court.  Not other stuff, but what they see

19   in front of them, what they hear and what they understand.

20           So you know, it's a specific question in this case,

21   is this defendant guilty of the crimes charged.  And the

22   Government has to prove it beyond a reasonable doubt in order

23   for the jury to find him guilty, and if the Government doesn't

24   prove it beyond a reasonable doubt, then the jury would find

25   the person not guilty.

Prospective Juror No. 148                    566

1          So do you think you could make that kind of decision
2   in a jury?
3          THE PROSPECTIVE JUROR:  I think not.
4          THE COURT:  Why not?
5          THE PROSPECTIVE JUROR:  I don't know.
6          THE COURT:  Okay.  It may be that you've never done
7   it before.
8          THE PROSPECTIVE JUROR:  Maybe it is that.
9          THE COURT:  Right.  But sometimes, you know, you
10  just never had the opportunity.  So if you're given the
11  opportunity to sit on a jury with other people, a jury box
12  behind you, and there's evidence presented and people come and
13  testify and you listen and then talk with the other people and
14  come up with a decision about whether somebody is guilty or
15  not guilty, could you do it?
16         THE PROSPECTIVE JUROR:  I don't know.  I'm not that
17  feeling inside.
18         MS. KOMATIREDDY:  We have no objection, Your Honor.
19         MR. DE CASTRO:  No objection.
20         THE COURT:  Thank you very much.  So you're excused.
21  You don't to serve on this trial.  Go down to the second floor
22  and let the jury office know that you've been excused.
23         THE PROSPECTIVE JUROR:  Thank you very much.
24         THE COURT:  Thank you very much.
25         (Prospective Juror Number 148 exits the courtroom.)

Avery N. Armstrong, RPR, Official Court Reporter

Prospective Juror No. 129                          567

1          THE COURT:  Juror 149 and then 129 after that.

2          (Prospective Juror Number 149 enters the courtroom.)

3          THE COURT:  Hello, Juror 149.  Just come up to the

4    podium please and you can put your bag on that chair.  So I

5    have some follow-up questions for you based on your answers to

6    the questionnaire.  I'll start with your hardship question or

7    answer.  You said you have IVF that's happening in that

8    timing.

9          So tell us a little bit more about the timing.

10         THE PROSPECTIVE JUROR:  Yes, ma'am.  I'm currently

11   undergoing treatments.  I expect doing a procedure next week.

12   Everything depends on timing, including medications, scheduled

13   doctor's visits, and when to begin medications, and stuff like

14   that.

15         MR. DE CASTRO:  No objection.

16         MS. KOMATIREDDY:  No objection, Your Honor.

17         THE COURT:  All right.  Thank you for letting us

18   know.  You're excused.  So go back down to the second floor

19   and let them know you don't have to serve on this trial.  Good

20   luck.

21         (Prospective Juror Number 149  exits the courtroom.)

22         THE COURT:  Okay.  Juror 129 is coming back.

23         (Prospective Juror Number 129 enters the courtroom.)

24         THE COURT:  Juror 129, thank you so much.  I know

25   we've been making you do a lot of work, but I understand that

1    you have something to report.

2           THE PROSPECTIVE JUROR:  Okay.  Yes.  So I called

3    corporate HR.  My schedule that's up until March 4th,

4    management cannot move.  If I'm scheduled for Friday Saturday

5    Sunday, I have to work, but they will pay for Monday through

6    Thursday for jury duty if the shift falls on those days.

7    Friday, Saturday, Sunday I would have to go to work.  Then

8    after March 4th when the new schedule comes out, I confirmed

9    with NYSNA because I'm in a union, so I confirmed with the

10   union rep and management.  My manager is allowed to put me on

11   every Friday, Saturday, Sunday.  So I wouldn't be paid Monday

12   through Thursday because I'm not available to work, I'm on

13   jury duty.  I would work Friday, Saturday, Sunday, at my job

14   and get paid for that.

15          THE COURT:  And when will the schedule come out the

16   time after March 4th?

17          THE PROSPECTIVE JUROR:  I don't know.  We sign up

18   usually within, like, the next week or two, but I would be on

19   every Friday, Saturday, or Sunday.  So I wouldn't really have

20   to sign up, management kind of already knows those are the

21   days they'd have to put me on for.  So I don't even know if

22   they would have me physically have me fill that in since

23   everyone's on board with it.

24          THE COURT:  Got it.  But in any event from now until

25   March 4th, you would get paid for any days that you were

1  scheduled to work Monday to Thursday?

2          THE PROSPECTIVE JUROR:  Correct.

3          THE COURT:  Okay.  That's great.  And then the other

4  -- there are a couple of days where you would have to -- it

5  would be difficult for you just because you have to work the

6  Friday or the Saturday or the Sunday.  But what you showed me

7  was that, in fact, it's a day here and a day there that

8  doesn't seem to be three days in a row where you would be

9  working that nightmare scenario.

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  So is that manageable for you?

12         THE PROSPECTIVE JUROR:  For this schedule, not for

13 March 4th and on.

14         THE COURT:  Up to March 4th?

15         THE PROSPECTIVE JUROR:  Yes.

16         MR. SPEAKER TS:  And then beyond March 4th, it might

17 be that you would -- we don't know when the trial is going to

18 go.  We're hoping it'll be done early March. So maybe there's

19 a -- you would sign up for Friday, Saturday, Sunday, for the

20 month of March, but because the trial is done before the end

21 of March, there will be some time where you're not -- there

22 might be a very short time when you're working that nightmare

23 scenario.

24         But beyond that, you would simply have signed up for

25 Friday, Saturday, and Sunday for a couple of weeks and then go

1    back to normal.

2              Does that --

3              THE PROSPECTIVE JUROR:  It's not ideal.

4              THE COURT:  It's not ideal.

5              THE PROSPECTIVE JUROR:  It's not ideal at all.

6    Like, I deal with patients.  To be burnt out working here

7    Monday through Thursday and then dealing with people's lives

8    Friday, Saturday, and Sunday, I don't take that lightly.

9    That's not something I would want to do.

10             THE COURT:  I understand.  The lawyers and I will

11   have further discussions, but for now, if you would just stay

12   with us.

13             THE PROSPECTIVE JUROR:  Okay.

14             THE COURT:  So why don't you go back to the room

15   across the hall and thank you very much for all that work.

16   I'm glad you got some answers.

17             THE PROSPECTIVE JUROR:  Thank you.

18             (Prospective Juror Number 129  exits the courtroom.)

19             MR. DE CASTRO:  Judge, does it make sense for us to

20   discuss this?

21             THE COURT:  Yes.  Is there a move to strike?

22             MR. DE CASTRO:  Our view is this -- I mean, so

23   she'll -- she should be pretty good until March 4th.  The

24   problem is we anticipate we're going into middle March, right?

25             MS. KOMATIREDDY:  My expectations would be that

1   we're going to closing right -- it depends on the defense

2   case, but if there's a defense case, that -- but I think

3   even -- we are expecting we would be in closings around then.

4   So of course, it's an estimate.  But that's what we expect.

5           MR. DE CASTRO:  Well, okay.  I mean, it's hard for

6   me to say, because I know the Government hasn't given us sort

7   of the final say.  But we have notice of 70-something

8   witnesses, so I don't -- I think it's safe to say, okay, eight

9   weeks.  Then we may have a case, then deliberations.

10          The thought of a juror working seven days a week and

11  having to deliberate and working in life and death over the

12  weekend, I mean, let's give the lady a break here.  I think

13  let's let her go and let's have somebody that we know is not

14  going to be stressing out about this during the trial.

15          THE COURT:  So she said it's not ideal, but I didn't

16  hear her say that it wasn't going to work.  She said it would

17  be difficult.  We've been telling all the jurors eight weeks,

18  so I'm a little surprised to hear that eight weeks is just the

19  Government case.  But I assumed that it was eight weeks with

20  the whole trial.

21          MR. DE CASTRO:  You know, and I know the

22  Government's working on pairing some things down, but their

23  witness list got bigger, so I don't know.

24          But I also heard burnout.  And when I hear burnout

25  several times, I think that's just -- I think we're just -- my

1  view is we might as well just get ready for an alternate, and

2  that doesn't seem ideal.

3          THE COURT:  That may be the case, but I don't see a

4  for-cause strike, so I will deny that motion.  All right.

5          So let's move on then to jurors 150 and beyond.  I

6  think -- I still think we can get through them.  So tell me

7  what questions I should focus on for 150.

8          MS. KOMATIREDDY:  Your Honor, for 150, 35, 39, 40,

9  43, 44, and 56, please.

10         MR. DE CASTRO:  I think 22 and 58, as well.  That's

11  what I have on my list.

12         THE COURT:  151.

13         MR. DE CASTRO:  We have to 62 for that.

14         MS. KOMATIREDDY:  Same, Your Honor.

15         THE COURT:  Juror 153.

16         MR. DE CASTRO:  None from the defense.

17         MS. KOMATIREDDY:  For 153, Your Honor?

18         THE COURT:  Yes.

19         MS. KOMATIREDDY:  There's a lot of blank -- there's

20  a lot of questions that they did not answer, so I can go

21  through them, but I guess maybe just a intro question of

22  whether why they didn't answer the questions.

23         THE COURT:  Well, this juror checked off three for

24  English.

25         Can you give me an example of a question that was

1   not answered?

2          MS. KOMATIREDDY:  Yes, Your Honor.  On the more sort

3   of questions regarding their life --

4          THE COURT:  Twenty-four, says have you traveled

5   outside of the U.S.

6          MS. KOMATIREDDY:  I apologize.  Twenty-five, 26, 27,

7   and then with respect to the other questions --

8          THE COURT:  Twenty-five was, name a person who

9   admire, and it's left blank.  Twenty-five says, do you

10  volunteer, and I assume that if it's blank, it's no, and then

11  other than English, what language do you speak, that's 27

12  again.  If there is no other language.

13         MS. KOMATIREDDY:  Sure, Your Honor.  And actually,

14  that was it.  They didn't have issues on legal principles.  It

15  looks like they filled that out.

16         MR. De CASTRO:  I'll start with three.  I missed

17  that one.

18         THE COURT:  Okay.  And then for juror 154.  I

19  have --

20         MR. De CASTRO:  We have 71 too.

21         MS. KOMATIREDDY:  That's all for us, Your Honor.

22         THE COURT:  Juror 156.  There is a issue of the CAT

23  scan.

24         MS. KOMATIREDDY:  As well as 62D, please, Your

25  Honor.

1          MR. De CASTRO:  And 43, I believe.

2          THE COURT:  And 158.

3          MR. De CASTRO:  We don't anything further.

4          MS. KOMATIREDDY:  I think -- I apologize.  I don't

5   think we got that far.  Sixty-nine and 37.  No concerns on 37

6   just to understand more about the experience.

7          THE COURT:  So let's call in this batch.  So Juror

8   150.

9          (Prospective Juror Number 150 enters the courtroom.)

10          THE COURT:  Hello.  How  are you doing?

11          THE PROSPECTIVE JUROR:  Good.  How are you?

12          THE COURT:  I'm good.  Thank you.  You can put your

13   bag on the chair.  Thank you.

14          So we had some follow-up questions for you.  There's

15   a microphone there, so don't lean on it.  That's better.

16   Okay.

17          So you mentioned in your answers to the

18   questionnaire that you have some people in your life who are

19   law enforcement?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Right.  So can you tell us about that?

22          THE PROSPECTIVE JUROR:  My dad was a correction

23   officer.  He retired a number of years ago.  I have a cousin

24   who was a correction officer who also retired, and another

25   cousin who is currently serving as a correction officer.  My

Prospective Juror No. 150                    575

1    partner works for -- currently works for law enforcement, but

2    as an engineer.

3              THE COURT:  Given that you have these law

4    enforcement ties, do you think that you could be fair and

5    impartial in a case where there are some witnesses who are law

6    enforcement officers?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Do you think that you can assess their

9    testimony in the same way that you would assess any other

10   witness' testimony?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Would you give it any greater weight?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  Would you give it any lesser weight?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  You also talked about your stepbrother

17   was shot and killed?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  And the perpetrator was prosecuted,

20   right?

21             THE PROSPECTIVE JUROR:  Well, my brother was

22   committing a crime at the time.  So while he was attempting to

23   mug someone, they shot him.  So the person was arrested, but

24   did not have to serve time.

25             THE COURT:  Okay.  And is there anything about that

1    experience that might cause you not to be fair in a criminal

2    case?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  So you also talked about a cousin who

5    was incarcerated for murdering her cousin -- for murdering her

6    boyfriend?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Is that something that would affect your

9    ability to be fair in this case?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  And you also said that you had testified

12   in a civil case?

13             THE PROSPECTIVE JUROR:  Yes.  For my company.

14             THE COURT:  Yeah.  Was there anything about that

15   experience that would cause you not to be fair?

16             THE PROSPECTIVE JUROR:  No.

17             THE COURT:  So you know what it's like to be a

18   witness?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  And so do you think you would be able to

21   be on the other side of it and be a juror listening to a

22   witness' testimony.

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  You mention that you think that harmful

25   drugs should not be legalized, but it was okay for marijuana

Prospective Juror No. 150                577

1   to be legalized, as long as it was for private use.

2               THE PROSPECTIVE JUROR:  Yes.

3               THE COURT:  This is a case that involves allegations

4   of trafficking cocaine.  So is there anything about that, the

5   subject matter of this case that would be hard for you as a

6   juror?

7               THE PROSPECTIVE JUROR:  So I have some pretty strong

8   feelings about thanks alter people's thinking, and you know,

9   how they approach things.  I have a lot of concerns about

10  that.

11              THE COURT:  And how does that play out?

12              THE PROSPECTIVE JUROR:  So I think it could be

13  harmful to communities.  It's harmful to society.  It causes

14  people to do things that they may not have done if they had

15  not consumed substances that, you know, make them only think

16  about that substance, not think about their families, not

17  think about their lives, not think about their children, they

18  only think about that substance.  So I have very strong

19  feelings about that.

20              THE COURT:  Right.  And so that's understandable.

21  The question is whether you could be fair to both the

22  Government that has made an accusation against somebody and

23  the person who's being accused with regard to drug

24  trafficking.  So you don't know what happened or didn't happen

25  in this case.  You will hear evidence about the allegations,

Prospective Juror No. 150                     578

1   and so if you could focus on what's happening here or what's

2   being presented to you and just answer the question of whether

3   this defendant is guilty of what the Government accuses him

4   of, then that's the kind of juror that people are looking for

5   here, that you could be fair.  But if you think your feelings

6   about drug use and it's effect on society might affect your

7   decision, guilty or not guilty in this case, then we'd like to

8   know about it.

9            So do you think that your strong feelings about the

10  negative effects of drugs on society would affect your ability

11  to be fair and impartial in this case?

12           THE PROSPECTIVE JUROR:  No.  You make judgments

13  based upon the facts that are presented to you.  But if you're

14  asking me what my thoughts are about those substances, that's

15  my thoughts.

16           THE COURT:  Thank you for letting us know.  We did

17  ask that question, so that is an appropriate answer.

18           And let me just make sure I have everything.

19           MR. De CASTRO:  Thirty-five, Your Honor.

20           THE COURT:  You have a cousin who's in the DEA and

21  you also mentioned your partner is in law enforcement.

22           THE PROSPECTIVE JUROR:  Mm hm.

23           THE COURT:  So there may be DEA agents who testify

24  in this case.  So it's not just law enforcement, but

25  specifically, that agency.  So the fact that you have a cousin

1    who's in the DEA, would that affect your ability to be fair?

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  All right.  So you would judge a DEA

4    agent's testimony with the same degree of scrutiny that you

5    would anyone else?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  And this is just a follow-up because you

8    answered this question as well, about a cousin who uses or

9    used drugs and that it has hindered his growth.

10             So is that the same issue?

11             THE PROSPECTIVE JUROR:  That is the -- yes.

12             THE COURT:  Was there any other question?

13             MS. KOMATIREDDY:  Not from the Government, Your

14   Honor.

15             MR. De CASTRO:  No, Your Honor.

16             THE COURT:  Thank you so much.  You can just go back

17   across the hall.

18             (Prospective Juror Number 150  exits the courtroom.)

19             THE COURT:  Juror 151.

20             (Prospective Juror Number 151 enters the courtroom.)

21             THE COURT:  Hello.  You can step up to this podium

22   here, please.

23             How are you doing?

24             THE PROSPECTIVE JUROR:  Good.  How are you?

25             THE COURT:  I'm good.  Thank you.

1          So we have a couple of follow-up questions for you.

2          THE PROSPECTIVE JUROR:  Sure.

3          THE COURT:  On the questionnaire, you were asked

4   about how you would assess the testimony of a Government

5   witness who was testifying pursuant to a cooperation

6   agreement.

7          THE PROSPECTIVE JUROR:  Okay.

8          THE COURT:  And you wrote down a couple of times

9   that you would have to take that testimony with a grain of

10  salt if that witness were testifying -- if the testimony would

11  benefit that witness in any way.  And so I just wanted to

12  understand that answer.

13         THE PROSPECTIVE JUROR:  Oh, yeah.  I mean, I guess

14  kind of, if it's to benefit someone who's already, like, might

15  have done something illegal to help them out, and I don't

16  know, like lessening their jail sentence.

17         THE COURT:  Right.  So when you're -- in the course

18  of a trial, you'll hear testimony from a lot of witnesses, and

19  for each witness, you'll need to assess their credibility,

20  right.

21         THE PROSPECTIVE JUROR:  Right.

22         THE COURT:  Because even though people take an oath,

23  you still need to figure out if you believe them or not.  And

24  you'll be instructed that you can take into consideration

25  things like their ability to see what they're testifying to

Prospective Juror No. 151                                  581

1  and whether they have a motive to lie, whether they have a

2  relationship with the people that they're testifying about.

3  And so you know, the -- for a cooperating witness, it can

4  include whether the person has a motive to lie, right.  That's

5  perfectly fine.  You're supposed to take being that into

6  account.  So the question for you is whether you could make

7  that assessment or whether you would just say, I'm never going

8  to believe that person.

9           THE PROSPECTIVE JUROR:  Oh.  Yeah, I could make that

10  assessment if that's the case.

11           THE COURT:  Okay.  So you know, motive is one of the

12  things you would take into account.

13           THE PROSPECTIVE JUROR:  Right.

14           THE COURT:  But you could also kind of look at other

15  things.

16           THE PROSPECTIVE JUROR:  Kind motive and then motive

17  is what the benefit is, the past, the --

18           THE COURT:  Because what you're concerned about

19  isn't if they have a motive to testify and they testify

20  truthfully, because then that's -- you know, you can accept

21  their testimony.  I think what you're worried about is

22  somebody who's testifying just to get a benefit?

23           THE PROSPECTIVE JUROR:  Yeah --

24           THE COURT:  Even though it's not true.

25           I'm sorry, we're cutting each other off.  So let me

1    backtrack and I'll speak more slowly.  This glass sometimes

2    makes it hard to hear.

3            So if a witness testifies and has a motive to

4    testifying, who wouldn't otherwise want to testify, and are

5    told if you testify truthfully, we will, let's say, reduce

6    your sentence, right, if you listen to that person and the

7    person sounds like they're telling the truth to you, and you

8    decide that that person is credible, then you could use that

9    evidence in your verdict.

10           THE PROSPECTIVE JUROR:  Right.  Yeah.

11           THE COURT:  Okay.  So what it sounds like is if what

12   you're worried about when you have a cooperating witness is

13   that the person is lying, he's testifying even though it's not

14   true, just because he wants to get a benefit from the

15   Government, right?

16           THE PROSPECTIVE JUROR:  Right.

17           THE COURT:  Okay.  And so you will hear what that

18   agreement is with the Government, and then you can assess

19   whether the person is still telling the truth or whether you

20   think the person is lying.

21           THE PROSPECTIVE JUROR:  Right.

22           THE COURT:  Okay.  So I just want to make sure that

23   you understand that when somebody is cooperating, it's just

24   all part of the thing that you need to consider.

25           THE PROSPECTIVE JUROR:  Right.

1          THE COURT:  And can you do that?

2          THE PROSPECTIVE JUROR:  Yup.  I think so.

3          THE COURT:  Okay.  And then I'll just add one more

4    thing which is that usually when somebody is cooperating under

5    those circumstances, that person himself has committed a

6    crime, right, and so just because somebody committed a crime,

7    would you not believe that witness or would you also take that

8    into account in the whole assessment of the witness'

9    testimony?

10         THE PROSPECTIVE JUROR:  To the same extent it would

11   have to be taken into account if they're benefiting from

12   testifying in some way from, I guess, the Government.

13         THE COURT:  Okay.  So it's just one of the things

14   you would consider, but you wouldn't just not believe the

15   person because they have committed a crime?

16         THE PROSPECTIVE JUROR:  Right.

17         THE COURT:  Okay.  Great.  I just wanted to clarify.

18   It's a little bit confusing, and so thank you for clarifying.

19         So then one more question you answered was that you

20   didn't believe you could convict someone without evidence more

21   than a single person's words.  So the question that you were

22   being asked was whether you would require the Government to

23   present specific types of evidence, and you know, sometimes it

24   could be that there isn't a specific type of evidence, but

25   there's testimony from somebody.

1           And so the question is whether you could convict

2    somebody based on just the testimony of somebody and, let's

3    say, that person was a cooperating witness, if you believed

4    the person and you felt that the Government, therefore, proved

5    its case beyond a reasonable doubt, would you be able to

6    convict based on that evidence or would you say, I can't

7    because it's just one person testifying, I need more?

8           THE PROSPECTIVE JUROR:  Yeah, I would stick with I

9    would need to be convinced by more evidence than one person's

10   word just as, like, I guess a trust thing of not really -- I

11   don't know who's giving the testimony.

12          THE COURT:  That's fine.  In our normal everyday

13   lives, we often take the word of one person, and even in

14   making important decisions.

15          So would you treat this trial differently and

16   require more evidence or would you be able to accept one

17   person's truthful testimony?

18          THE PROSPECTIVE JUROR:  I think, typically, I don't

19   trust the word of one person solely.  That's where that comes

20   from.  I kind of need to be convinced myself by more than just

21   what one person says.

22          THE COURT:  I see.  So are you saying that you would

23   require the Government to present more evidence than one

24   person.

25          THE PROSPECTIVE JUROR:  Than one person's testimony.

1        MS. KOMATIREDDY:  No objection, Your Honor.

2        MR. De CASTRO:  No objection.

3        THE COURT:  All right.  So thank you for clarifying

4   these things.  You're excused.  You don't to sit on this jury.

5   So go down to the second floor and tell them that you're

6   excused.

7        THE PROSPECTIVE JUROR:  Okay.

8        THE COURT:  Thank you.

9        THE PROSPECTIVE JUROR:  All right.  Thank you.

10       (Prospective Juror Number 151 exits the courtroom.)

11       (Continued on next page.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  All right.  Juror 153.

2          (Prospective Juror No. 153 enters.)

3          THE COURT:  Good afternoon, ma'am.

4          THE PROSPECTIVE JUROR:  Good afternoon.

5          THE COURT:  You can step up to the podium.  If you

6     want to put your bag down, you're free.

7          We had just a few questions for you.  Okay?

8          THE PROSPECTIVE JUROR:  Okay.

9          THE COURT:  So you indicated that you had some

10    issues with English so I'd like to understand that.

11         THE PROSPECTIVE JUROR:  Yes, because I'm from

12    Nigeria.  If I'm speaking some English, it's difficult for

13    people to understand.

14         THE COURT:  And it says you're working in security.

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  So do you speak English at work?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  And you communicate with people?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  So have we said anything in court today

21    that you don't understand?

22         THE PROSPECTIVE JUROR:  No, I understand.

23         THE COURT:  Okay.  Great.

24         So let me ask you a couple of things.  And also

25    sometimes people think they don't understand because, you

1    know, especially with legal terms, but if you're not a lawyer,

2    you're not expected to understand legal terms.  The judge and

3    the lawyers will help you understand these things.

4            THE PROSPECTIVE JUROR:  Okay.

5            THE COURT:  Okay?  So as long as you understand what

6    we're saying, then that should be fine.

7            THE PROSPECTIVE JUROR:  Okay.

8            THE COURT:  So you had, you were asked -- there were

9    a couple of things that you didn't answer and I would just

10   like to ask you.  Okay?

11           THE PROSPECTIVE JUROR:  Okay.

12           THE COURT:  So you were asked to name a person who

13   you admire and you didn't put a person down.  Can you think of

14   somebody that you admire?

15           THE PROSPECTIVE JUROR:  My daughter.

16           THE COURT:  Your daughter?

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  That's wonderful.  What do you admire

19   about her?

20           THE PROSPECTIVE JUROR:  Because she's very

21   intelligent.

22           THE COURT:  She's very --

23           THE PROSPECTIVE JUROR:  Intelligent.  Yes.

24           THE COURT:  What does she do?

25           THE PROSPECTIVE JUROR:  She is in college.

1          THE COURT:  And what is she studying in?

2          THE PROSPECTIVE JUROR:  Medicine.

3          THE COURT:  Wonderful.  So she wants to be a doctor?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  That's great.  And then you were asked

6    if you volunteer for any organizations.  Do you do any

7    volunteer work like with a church or the community?

8          THE PROSPECTIVE JUROR:  Yes, yes, church, yes.

9          THE COURT:  What did you do with the church?

10         THE PROSPECTIVE JUROR:  Sometimes I work with kids.

11         THE COURT:  And what do you do with the kids?

12         THE PROSPECTIVE JUROR:  If they want to go to bible

13   study, we have to take them inside the room for them to study

14   the bible.

15         THE COURT:  I see.  Okay.  And do you teach?

16         THE PROSPECTIVE JUROR:  No.  No.

17         THE COURT:  Okay.  And you said you don't like to

18   watch TV shows but you get your news --

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  -- including through News 12, right, on

21   TV?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  And you love Facebook.

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  What kinds of things do you post on

Prospective Juror No. 153                    589

1  Facebook?

2          THE PROSPECTIVE JUROR:  Like if I go to a party, I

3  post those things, yes.

4          THE COURT:  Right.  And have you had any experiences

5  with law enforcement or the police or anything like that,

6  either as a witness or a victim or --

7          THE PROSPECTIVE JUROR:  No, because I think on the

8  28 of November, I moved to a new apartment so it look like the

9  neighbor upstairs maybe have people and they were doing coke

10  in my hallway so I'm calling the cops, yes.

11          THE COURT:  And what happened?

12          THE PROSPECTIVE JUROR:  So when I call the cops, I

13  don't know, maybe they talk to her so she stop.

14          THE COURT:  And so does that lead you to have any

15  views about law enforcement that would affect your ability to

16  be fair?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  So do you think you can be fair and

19  impartial if you're picked as a juror?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Okay.  Great.  Do you know if you would

22  be paid while you're on jury duty?

23          THE PROSPECTIVE JUROR:  I don't know about that

24  because this is my first time.

25          THE COURT:  What do you mean, it's your face time?

CMH        OCR        RDR        FCRR

Prospective Juror No. 153                    590

1    Oh, your first time?

2              THE PROSPECTIVE JUROR:  Yes.  Yes.

3              THE COURT:  Did you ask your employer if you would

4    be paid?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  So if you didn't get paid -- well, what

7    kind of shifts do you work?

8              THE PROSPECTIVE JUROR:  I work in the morning, I

9    start at 4:00 a.m. to 12:30 p.m.

10              THE COURT:  And if you had to sit on this jury, the

11   jury, the trial is likely to go for eight weeks so about two

12   months.  Do you know if you'll get paid for that time you're

13   not working?

14              THE PROSPECTIVE JUROR:  I don't know.  Maybe I'm

15   going to tell the manager to see.

16              THE COURT:  Okay.

17              THE PROSPECTIVE JUROR:  Because I don't know.

18              THE COURT:  Right.  Why don't you ask?

19              THE PROSPECTIVE JUROR:  Yes, I'm going to ask.

20              THE COURT:  So find out tonight.  Maybe you can call

21   or send an e-mail or text and let them know that the judge

22   wants to know --

23              THE PROSPECTIVE JUROR:  Okay.

24              THE COURT:  -- if you are sitting on an eight-week

25   trial, whether they can pay you.

1            THE PROSPECTIVE JUROR:  Okay.

2            THE COURT:  And then tomorrow when you come in, you

3    can let us know.  Okay?

4            THE PROSPECTIVE JUROR:  Okay.

5            THE COURT:  All right.  Great.  Were there any

6    follow-up questions?

7            MR. DE CASTRO:  No, Your Honor.

8            MS. KOMATIREDDY:  No thank you, Judge.

9            THE COURT:  Thank you.  So why don't you go back

10   across the hall and we'll be with you in a few minutes.

11           THE PROSPECTIVE JUROR:  Okay.

12           (Prospective Juror No. 153 exits.)

13           THE COURT:  Juror 154.

14           (Prospective Juror No. 154 enters.)

15           THE COURT:  Hi.  Come on up.  There's a podium here

16   with a chair.  Where you can put -- you don't have anything.

17   You can leave your mask on or take it off if you're more

18   comfortable.  It's up to you.

19           THE PROSPECTIVE JUROR:  Good.

20           THE COURT:  Breathe, right?

21           THE PROSPECTIVE JUROR:  Yes.

22           THE COURT:  So you said on your questionnaire that

23   you have a son who's a paralegal.

24           THE PROSPECTIVE JUROR:  My father, yes.

25           THE COURT:  And how -- do you talk about legal

1    things?

2              THE PROSPECTIVE JUROR:  Hmm?

3              THE COURT:  Do you talk about the law?

4              THE PROSPECTIVE JUROR:  No.  My father is deceased.

5              THE COURT:  I see.  Let me just see.  So your father

6    was the paralegal?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  I see.  Okay.  And when he was alive,

9    did you talk about law?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  And if the judge in this case instructed

12   you on what the law is, would you be able to follow the law?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Okay.  You mentioned that you are a

15   salesperson.

16             THE PROSPECTIVE JUROR:  Uh-huh.

17             THE COURT:  Do you know if you would get paid if

18   you're working, if you're sitting as a juror?

19             THE PROSPECTIVE JUROR:  I checked last week and they

20   said they pay whatever the state mandatory was, that's what

21   they pay.

22             THE COURT:  Okay.  And I don't know what the state

23   mandatory is.  Do you know?

24             THE PROSPECTIVE JUROR:  I think they said, I don't

25   remember offhand, but I think it was about $40 a day for three

1  days or something like that, something like that.

2              THE COURT:  Right.

3              THE PROSPECTIVE JUROR:  Whatever the state law was,

4  yes.

5              THE COURT:  Well, the court pays jurors a fee --

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  -- if your employer doesn't pay for that

8  day but I don't, I'm not aware of the employer being required

9  to pay a certain amount.

10             THE PROSPECTIVE JUROR:  Okay.  So they probably

11 don't.

12             THE COURT:  What kind of shifts do you work?

13             THE PROSPECTIVE JUROR:  I work from 8 to 6, Monday,

14 Tuesday, Thursday, Friday, 8 to 5 on Saturday, and 8 to 1 on

15 Wednesday.

16             THE COURT:  Okay.  On Wednesday?

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  So do the parties think we need to make

19 inquiry to the employer or is this answer clear enough?

20             MS. KOMATIREDDY:  Sorry, Your Honor.  If we can just

21 confer.

22             THE COURT:  That's fine.

23             (Pause.)

24             MS. KOMATIREDDY:  Your Honor, we're just trying to

25 figure out what the state mandatory period is.

1           THE COURT:  Well, Ryan just looked it up.  So what
2   I'm told is the state law says the employer of ten or more
3   employees must pay $40 for the first three days and beyond
4   that, they're not obliged to pay anything.
5           MS. KOMATIREDDY:  In that case, we have no
6   objection.
7           MR. DE CASTRO:  No objection.
8           THE COURT:  Thank you very much.  You are free to
9   go.  You don't have to sit on this jury and you should report
10  to the 2nd floor.
11          THE PROSPECTIVE JUROR:  Second floor?
12          THE COURT:  Yes.
13          THE PROSPECTIVE JUROR:  When?  Today?
14          THE COURT:  Yes, right now, you can go.
15          THE PROSPECTIVE JUROR:  Okay.
16          THE COURT:  Thanks.
17          (Prospective Juror No. 154 excused.)
18          THE COURT:  It's pretty much not paying.  So when
19  people say according to the state law, that's it, so this is
20  what we're dealing with unless in your research you find
21  something else but that's what we found.
22          MR. DE CASTRO:  My understanding is it's unpaid
23  leave, that they have to give people time to do jury service.
24  They can't fire you.
25          THE COURT:  Okay.

1              (Prospective Juror No. 156 enters.)

2              THE COURT:  Hello, Juror No. 156.  How are you

3      doing?

4              THE PROSPECTIVE JUROR:  I'm okay.

5              THE COURT:  You can leave your mask on or take it

6      off, whatever you want, and you can also put your bag down.

7      We want you to be comfortable.

8              So you told us in your questionnaire that in

9      January -- well, it says on January 6th, you had to cancel a

10     CAT scan and then you have it rescheduled for the 22nd or

11     23rd.

12             THE PROSPECTIVE JUROR:  It's really -- the exact

13     date is the 24th.

14             THE COURT:  Oh, okay.

15             THE PROSPECTIVE JUROR:  But I have a doctor's

16     appointment for Friday the 20th.

17             THE COURT:  Okay.

18             THE PROSPECTIVE JUROR:  And I have to do that CT

19     scan the 24th.

20             THE COURT:  Got it.

21             THE PROSPECTIVE JUROR:  Because I postponed it

22     already, I cannot postpone it again.

23             THE COURT:  Right.  Okay.  And so the doctor's

24     appointment is a Friday.  The court is not sitting on Friday.

25     The CAT scan you said is on the 24th.  That's a Tuesday.

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Yes, and you said you can't miss it.

3           THE PROSPECTIVE JUROR:  I cannot cancel it again

4    because I canceled it the 6th.

5           THE COURT:  I see.  Okay.

6           THE PROSPECTIVE JUROR:  Because I came the 4th or

7    the 3rd, I was supposed to come in.  So I had to cancel it

8    because I had already rescheduled it for that day.

9           THE COURT:  Right.

10           MR. DE CASTRO:  We have no objection.

11           MS. KOMATIREDDY:  We would ask for some

12    clarification an 32D, please, Your Honor, and 43.

13           THE COURT:  Thank you for letting us know.  I had a

14    couple more questions for you.

15           THE PROSPECTIVE JUROR:  Okay.

16           THE COURT:  So there was a question that said that

17    the testimony of a single witness even if the person is a

18    cooperating witness could be enough to convict a defendant of

19    a crime.  Do you have any opinions or beliefs about

20    cooperating witnesses that would prevent you from applying

21    this rule?

22           THE PROSPECTIVE JUROR:  When you say cooperating

23    witness, what do you mean?

24           THE COURT:  It's somebody who committed a crime but

25    enters into an agreement with the government --

1              THE PROSPECTIVE JUROR:  Okay.

2              THE COURT:  -- to provide testimony and usually the

3    government says you have to provide truthful testimony.

4              THE PROSPECTIVE JUROR:  Okay.

5              THE COURT:  And in exchange, they'll get something

6    like a reduced sentence.

7              THE PROSPECTIVE JUROR:  Okay.

8              THE COURT:  Okay?  So if you hear testimony, if you

9    hear testimony from a witness, you'll hear the agreement with

10   the government --

11             THE PROSPECTIVE JUROR:  Right.

12             THE COURT:  -- and what they're getting in exchange

13   and you can decide if they're telling the truth or not.

14             THE PROSPECTIVE JUROR:  Right.

15             THE COURT:  But if you decide that they are telling

16   the truth, that can be enough to convict somebody.

17             THE PROSPECTIVE JUROR:  Okay.

18             THE COURT:  So we want to make sure that, we want to

19   find out whether you can accept that.

20             THE PROSPECTIVE JUROR:  I would.

21             THE COURT:  Or the flip side of it is whether you

22   would require that the government give you something more.

23             THE PROSPECTIVE JUROR:  It all depends on what he

24   says to what the government is going to say.

25             THE COURT:  Right.  And so, you know, when you say

Prospective Juror No. 156                              598

1  it depends, you're supposed to look at the whole situation.

2           THE PROSPECTIVE JUROR:  Right.

3           THE COURT:  You don't have to accept the person's

4  testimony.  You can decide if the person is not telling the

5  truth or you can, you know, decide it's not reliable but if

6  you decide it's credible and if you decide it's reliable, and

7  if you think the government has proven its case beyond a

8  reasonable doubt, the question is whether you would say, I'm

9  convinced by this testimony but I'm not going to convict

10 because it's only testimony from one witness.

11          It's a difficult question but do you understand what

12 I mean?

13          THE PROSPECTIVE JUROR:  Not really because I'm not

14 really familiar with the court system as to, you know.

15          THE COURT:  Okay.  So the court system -- so

16 sometimes on TV, you see crime shows and they're presenting

17 all kind of evidence, fingerprints, DNA, there's a lot of

18 evidence.

19          MS. KOMATIREDDY:  Your Honor, we don't have an

20 objection.

21          THE COURT:  No objection?

22          MS. KOMATIREDDY:  No objection.

23          THE COURT:  Okay.  So given what you've told us

24 about your medical examination, you're excused.  Okay?

25          THE PROSPECTIVE JUROR:  All right.

1        THE COURT:  So you're free to go and you can go to

2   the second floor and let them know that you're excused from

3   this trial.

4        THE PROSPECTIVE JUROR:  Okay.  Thank you.

5        THE COURT:  Thank you.

6        (Prospective Juror No. 156 excused.)

7        MS. KOMATIREDDY:  Sorry, Judge.

8        THE COURT:  That's okay.  I told you I'm just going

9   to keep going until you stop me.  So as soon as you decide

10  that you want the juror excused for cause, you should say "no

11  objection" and I'll stop.  That's part of the purpose of that

12  procedure.

13        (Prospective Juror No. 158 enters.)

14        THE COURT:  Hi.  Juror No. 158.  How are you doing?

15        THE PROSPECTIVE JUROR:  Very good.  Thank you.  How

16  are you?

17        THE COURT:  Thank you.  I know we are getting late

18  in the day so we can wrap up.  You mentioned that your

19  daughter had surgery planned and that was yesterday?

20        THE PROSPECTIVE JUROR:  Yesterday, yes.

21        THE COURT:  So how is she doing?

22        THE PROSPECTIVE JUROR:  Very good.  Thank you.

23        THE COURT:  I'm glad.  And you said your husband has

24  surgery March 24th.

25        THE PROSPECTIVE JUROR:  Yes, we're a surgical

Prospective Juror No. 158                    600

1  family.

2          THE COURT:  It's good that we have those options.

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  So I think that that is probably safe.

5          THE PROSPECTIVE JUROR:  Okay.

6          THE COURT:  We're not anticipating that the case

7  will go into that period.

8          THE PROSPECTIVE JUROR:  Okay.

9          THE COURT:  I had another question about your prior

10  jury service.  You said you had sat on a civil case and a

11  criminal case.

12          THE PROSPECTIVE JUROR:  Uh-huh.

13          THE COURT:  And in both cases, there was a verdict.

14  So is there anything about your prior service of jury duty

15  that would make you not be fair in this case?

16          THE PROSPECTIVE JUROR:  No.

17          THE COURT:  You've had experience.

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  So you know how it goes.

20          THE PROSPECTIVE JUROR:  Not in federal court though.

21          THE COURT:  Okay.  All right.  Great.

22          So in a civil case, you know that the standard of

23  proof is preponderance of evidence.  In a criminal case, it's

24  beyond a reasonable doubt.  It's the same in state court, in

25  federal court as in state court.

1           THE PROSPECTIVE JUROR:  Okay.

2           THE COURT:  Can you apply that higher standard?

3           THE PROSPECTIVE JUROR:  Yes.

4           THE COURT:  Is there anything about the fact that

5     this case is in federal court that makes you not comfortable?

6           THE PROSPECTIVE JUROR:  Not at all, no.

7           THE COURT:  Can you think of any reason that you

8     wouldn't be a fair and impartial juror in this case?

9           THE PROSPECTIVE JUROR:  No.

10          THE COURT:  And is there anything that you wanted to

11    tell the court that you didn't have the opportunity to tell

12    us?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Any other questions?

15          MS. KOMATIREDDY:  No thank you, Judge.

16          THE COURT:  All right.  Thank you very much.  You

17    can go back across the hall.

18          (Prospective Juror No. 158 exits.)

19          THE COURT:  So let's talk about the next, the last

20    three jurors.

21          For 159, what should I focus on?

22          MS. KOMATIREDDY:  159, Your Honor, said that they

23    knew what AFI was.  AFI is one of the agencies the defendant

24    used to work at.  He was the head of it.  Agencia Federal de

25    Investigacion.

1              THE COURT:  A-F-I?

2              MS. KOMATIREDDY:  AFI, yes.

3              THE COURT:  Okay.

4              MR. DE CASTRO:  I'll tell you my numbers.  35, 38,

5     40 and 71.

6              THE COURT:  All right.  So then for 160?  I have

7     travel.

8              MR. DE CASTRO:  Travel in the middle of the trial.

9              THE COURT:  Yes.

10             MS. KOMATIREDDY:  And on number 59, I think this is

11    clear, but there appeared to be some scratching off so perhaps

12    just make sure that it's a firm answer.

13             THE COURT:  0162?

14             MR. DE CASTRO:  There's also a medical procedure,

15    pending outcome.  That was -- who knows.  Also 71 on that one

16    too.

17             THE COURT:  Anything from the government?

18             MR. DE CASTRO:  We're on 162, right?

19             THE COURT:  Yes.

20             MR. DE CASTRO:  I have 43, 47, 59 and 71.

21             MS. KOMATIREDDY:  We have the same, Your Honor.

22             THE COURT:  So let's call in Juror 159.

23             (Prospective Juror No. 159 enters.)

24             THE COURT:  Hello.  Juror 159.  How are you doing?

25             THE PROSPECTIVE JUROR:  Good.  Good evening.

1          THE COURT:  Good.  So we just have a few questions

2    based on your answers to the questionnaires.

3          THE PROSPECTIVE JUROR:  Sure.

4          THE COURT:  You said that you have two high school

5    friends who are NYPD?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Does the fact that you have friends in

8    law enforcement affect your ability to be fair in this case?

9          THE PROSPECTIVE JUROR:  No.

10         THE COURT:  Would you be able to assess the

11   testimony of law enforcement officer witnesses just like any

12   other witness?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  And would you tend to favor the law

15   enforcement or not favor them just because they're law

16   enforcement?

17         THE PROSPECTIVE JUROR:  Not, not biased.

18         THE COURT:  You also said that your mother's

19   accountant filed an appeal against the IRS on your mother's

20   behalf on a tax dispute.  Do you think the fact that this

21   happened affects your ability to be fair when there are

22   government agencies involved in this case?

23         THE PROSPECTIVE JUROR:  No, it won't affect me.

24         THE COURT:  And then you also said you are a victim

25   of a robbery in 2013 and no one was arrested.  Does that

1   affect your ability to be fair in this case?

2           THE PROSPECTIVE JUROR:  No.

3           THE COURT:  Does it cause you to have any feelings

4   about the work that the police do?  And, you know, this is a

5   criminal case.

6           THE PROSPECTIVE JUROR:  Yes.  So I've had actually a

7   positive experience with police.  They're caring.  They drove

8   me around in a car and then they helped me ID or tried to help

9   me ID the person.  So, no, no bad experience.

10          THE COURT:  So the flip side of it is do you have,

11  because of that positive experience, would you tend to favor

12  the police?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Okay.  Great.  Then you also said that

15  you know what the, you circled Mexican Government Federal

16  Investigation Agency, AFI, that you know them.  How do you

17  know them?

18          THE PROSPECTIVE JUROR:  Oh, no, I saw it in the

19  news.  I think I saw the AFI sign on like a Mexican kind of

20  FBI police force.  So I don't personally know anyone from AFI.

21          THE COURT:  Okay.  So you just know what it stands

22  for?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Do you think that knowledge will affect

25  your ability to be fair in this case?

Prospective Juror No. 159                                   605

1           THE PROSPECTIVE JUROR:  No, it won't affect me.

2           THE COURT:  Okay.  And then the last question is

3    whether you know if you are going to be paid while you're on

4    jury duty.

5           THE PROSPECTIVE JUROR:  Yeah.  So my employer covers

6    up to ten days of jury duty and after ten days, I have to use

7    my own personal vacation days or just take unpaid leave.

8           THE COURT:  And if that were to happen, would it be

9    a hardship on you?

10          THE PROSPECTIVE JUROR:  It might.  Like, I guess I

11   would be paid the rate for the, like, jury duty service.  It's

12   $40 a day?  I might have some problem with mortgage payments

13   because I earn, I guess, a decent wage now so I'm depending on

14   that to pay my mortgage and whatever, property tax bills.  So

15   for eight weeks, I think maybe a little bit.  I would try to

16   like defer payments if I can or something like that.

17          THE COURT:  Do you -- what days a week do you work

18   now?

19          THE PROSPECTIVE JUROR:  Monday to Friday.

20          THE COURT:  And is there an option of switching

21   shifts to weekends?

22          THE PROSPECTIVE JUROR:  Yes.  So I can work from

23   home.  So I don't think my workload would change so I can

24   probably, after the jury duty hours, I can work from home,

25   catch up on work, e-mails, and work Friday and weekends.

Prospective Juror No. 160                    606

1          THE COURT:  Right.  Okay.  Because you said here

2    you're willing to work nights, Fridays and weekends.

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  So it sounds like you can accommodate

5    what's happening.  Well, I appreciate your willingness to do

6    that.

7          THE PROSPECTIVE JUROR:  Of course.

8          THE COURT:  Does anybody have any questions?

9          MS. KOMATIREDDY:  No, Judge.  Thank you.

10         THE COURT:  Mr. de Castro?

11         MR. DE CASTRO:  No, Judge.

12         THE COURT:  Thank you.  You can go across the hall.

13         (Prospective Juror No. 159 exits.)

14         THE COURT:  Prospective Juror 160.

15         (Prospective Juror No. 160 enters.)

16         THE COURT:  Hi.  There's a podium right here.

17         THE PROSPECTIVE JUROR:  Okay.

18         THE COURT:  Hi.  How are you doing?

19         THE PROSPECTIVE JUROR:  I'm doing okay.  How are

20   you?

21         THE COURT:  I'm good.  Thank you.  So you said that

22   you have travel plans coming up.

23         THE PROSPECTIVE JUROR:  Correct.

24         THE COURT:  To the Dominican Republic from

25   February 9th to February 12th?

1           THE PROSPECTIVE JUROR:  Correct.

2           THE COURT:  So part of that is over a weekend.

3    February 9th is a Thursday.

4           THE PROSPECTIVE JUROR:  Yes.

5           THE COURT:  Are you leaving in the morning or the

6    evening?

7           THE PROSPECTIVE JUROR:  I think in the morning, the

8    morning, yes.

9           THE COURT:  And are these plans that you can change

10   if you have to?

11          THE PROSPECTIVE JUROR:  Well, that depends on the

12   wife so, you know ...

13          THE COURT:  Are these tickets that you can refund

14   and change?

15          THE PROSPECTIVE JUROR:  I don't think so.  It was

16   already rescheduled, I guess.

17          THE COURT:  And is it a holiday?

18          THE PROSPECTIVE JUROR:  It's tickets that were going

19   to expire because it was canceled last time so we got to use

20   it or lose it, I guess.

21          THE COURT:  Okay.  Is that the last date that you

22   can use it?

23          THE PROSPECTIVE JUROR:  Pretty much, yes, pretty

24   much.

25          THE COURT:  Okay.  So let me ask you a couple of

Prospective Juror No. 160                    608

1    other questions.

2              THE PROSPECTIVE JUROR:  Sure.

3              THE COURT:  You were asked about the presumption of

4    innocence.

5              THE PROSPECTIVE JUROR:  Okay.

6              THE COURT:  The question was that the defendant is

7    presumed innocent and can only be found guilty if the

8    government proves its case beyond a reasonable doubt.  It

9    wasn't clear because you crossed things out whether you said

10   you could accept that a person is presumed innocent or not.

11   So can you presume somebody innocent?

12             THE PROSPECTIVE JUROR:  Absolutely.  I mean you've

13   got to go by the facts, right?  Absolutely.

14             THE COURT:  And can you accept September the

15   government has to prove its case beyond a reasonable doubt?

16             THE PROSPECTIVE JUROR:  Of course.

17             THE COURT:  And you also said you have a

18   brother-in-law who's an FBI agent?

19             THE PROSPECTIVE JUROR:  Correct.

20             THE COURT:  And does the fact that you have a family

21   member who is in law enforcement, would this affect your

22   ability to be fair and impartial to law enforcement witnesses

23   as well as non-law enforcement witnesses?

24             THE PROSPECTIVE JUROR:  Absolutely not.

25             THE COURT:  Okay.  So is there any reason you think

1   that you could not be fair if you were picked as a juror?

2         THE PROSPECTIVE JUROR:  Not that I can think of

3   right now so I don't think so.

4         THE COURT:  You also mentioned that you had some law

5   enforcement contact.

6         MR. DE CASTRO:  Your Honor, I'm sorry to interrupt.

7   If you don't mind, maybe follow up because the FBI is involved

8   in this case.

9         THE COURT:  Yes.

10         More specifically, the FBI is one of the agencies

11   that would be, that is involved in an investigation in this

12   case.

13         THE PROSPECTIVE JUROR:  Okay.

14         THE COURT:  So you're likely to hear about what the

15   FBI did and you're likely to hear testimony from FBI agents.

16         THE PROSPECTIVE JUROR:  Okay.

17         THE COURT:  Would you be able to assess the

18   testimony of an FBI agent just like any other witness?

19         THE PROSPECTIVE JUROR:  Absolutely, yes.

20         THE COURT:  Notwithstanding that you have a family

21   member who's FBI?

22         THE PROSPECTIVE JUROR:  No, no, not at all.

23         THE COURT:  All right.  Sir, the question was about

24   law enforcement contact.

25         THE PROSPECTIVE JUROR:  Okay.

Prospective Juror No. 160                    610

1      THE COURT:  You said that you or someone you know
2  had been stopped, questioned, investigated or arrested.  Just
3  some contact with law enforcement.  You said yes but you
4  didn't say what it was and then you said it wouldn't affect
5  your ability to be fair.  So I just want to know what the
6  contact is.
7      THE PROSPECTIVE JUROR:  I'm trying to think.
8  Probably something minor, broken taillight or something, you
9  know, nothing major.
10      THE COURT:  Okay.  That's fine.
11      MS. KOMATIREDDY:  Number 40, please, Your Honor.
12      THE COURT:  You also said yes when you were asked if
13  you or someone you know was a witness to or a victim of a
14  crime.  You said the family member was a victim of immigration
15  fraud.
16      THE PROSPECTIVE JUROR:  Correct.  Correct.
17      THE COURT:  What happened?
18      THE PROSPECTIVE JUROR:  I guess, years ago, I think
19  my mom was involved in some sort of -- she, I guess she was
20  scammed by an immigration person who posed as some sort of
21  immigration agent that he supposedly can get family members
22  over, I guess he somehow knows some people to expedite the
23  situation, you know.  So I think that went to federal court
24  also, that was a federal case, and I guess he got locked up.
25  So yes.

1           THE COURT:  So charges were brought against the
2    person?
3           THE PROSPECTIVE JUROR:  Absolutely.
4           THE COURT:  And was the person posing as an
5    immigration lawyer?
6           THE PROSPECTIVE JUROR:  I think it was an
7    immigration lawyer.
8           THE COURT:  I see.
9           THE PROSPECTIVE JUROR:  I think it turned out he
10   worked for immigration and, you know, I guess he worked for
11   the office or something and he claimed that he can, you know,
12   bring the family over.  There's a lot of gullible people out
13   there, you know.
14          THE COURT:  Well, in this case, one of the
15   investigative agencies is also an immigration agency.
16          THE PROSPECTIVE JUROR:  Okay.
17          THE COURT:  So there is likely to be testimony from
18   immigration agents.
19          THE PROSPECTIVE JUROR:  Okay.
20          THE COURT:  So could you assess their testimony just
21   like anyone else?
22          THE PROSPECTIVE JUROR:  Yes, absolutely.
23          THE COURT:  Okay.  Would you be concerned that they
24   were -- would you be thinking about the scammer who was --
25          THE PROSPECTIVE JUROR:  No, I don't think so.  I

1   don't think it has anything to do with the agency itself, but

2   the person itself.

3              THE COURT:  So would you assess their testimony just

4   like any other witness?

5              THE PROSPECTIVE JUROR:  Correct.

6              THE COURT:  Okay.  Any follow-up questions?

7              MS. KOMATIREDDY:  No thank you, Judge.

8              MR. DE CASTRO:  No thank you.

9              THE COURT:  Thank you very much.

10             THE PROSPECTIVE JUROR:  You're welcome.

11             THE COURT:  You can go across the hall.

12             (Prospective Juror 160 exits.)

13             THE COURT:  And the last juror, 162.

14             (Prospective Juror No. 162 enters.)

15             THE COURT:  Hi.  Juror 162.  How are you doing?

16             THE PROSPECTIVE JUROR:  All right.  Yourself?

17             THE COURT:  Good.  So you can put your bag on that

18   chair.

19             THE PROSPECTIVE JUROR:  Sure.

20             THE COURT:  So you had put on your questionnaire

21   that you had a biopsy coming up on January 12th.  That's

22   passed.

23             THE PROSPECTIVE JUROR:  I just had it, yes.

24             THE COURT:  And have you gotten the results?

25             THE PROSPECTIVE JUROR:  No, I have not.

1          THE COURT:  Do you know when you would get the

2    results?

3          THE PROSPECTIVE JUROR:  They said three to five days

4    so because of the holiday, I'm assuming that's the delay in

5    getting the results.

6          THE COURT:  Okay.  So are you -- will they just call

7    you and tell you the result?

8          THE PROSPECTIVE JUROR:  Yes, they're supposed to

9    call.

10          THE COURT:  Okay.  One of these days?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Okay.  So hopefully they'll -- you'll

13    know, by this week and then, and hopefully everything is fine.

14          THE PROSPECTIVE JUROR:  Thank you.

15          THE COURT:  And so then you would be available to

16    serve on the jury if the trial starts on Monday?

17          THE PROSPECTIVE JUROR:  Yes, depending on the

18    outcome.

19          THE COURT:  Yes.  We're all hoping and praying for a

20    good outcome for you.

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Okay.  So I just wanted to address that.

23          You said that your mentor was a lawyer?

24          THE PROSPECTIVE JUROR:  Yes.  Yes.

25          THE COURT:  What kind of law was that?

1        THE PROSPECTIVE JUROR:  It was criminal law.

2        THE COURT:  And did you talk about criminal law?

3        THE PROSPECTIVE JUROR:  Basically I don't have any

4   real experience with it but I was interested in trying to

5   learn how to help individuals, you know, that had maybe a

6   criminal background or whatever, learning what's the process

7   of that.

8        THE COURT:  And did anything ever come of that?

9        THE PROSPECTIVE JUROR:  No because I changed

10  careers.  That was where I was leaning at first to go towards

11  that but then I changed and started doing something else.

12       THE COURT:  Okay.  And you're a medical

13  administrative assistant?

14       THE PROSPECTIVE JUROR:  I am.

15       THE COURT:  So did you -- if you're picked as a

16  juror, you will be asked to, you will be instructed on what

17  the law is.  Do you think you can follow the judge's

18  instruction on the law or would you be thinking about what

19  this lawyer told you the law was?

20       THE PROSPECTIVE JUROR:  Oh, no, I could follow

21  instructions.

22       THE COURT:  Okay.  You also said that your son was

23  unfortunately incarcerated?

24       THE PROSPECTIVE JUROR:  That's correct.

25       THE COURT:  And so do you think that experience

Prospective Juror No. 162                615

1   would affect your ability to be fair in this case?

2          THE PROSPECTIVE JUROR:  No, I have no problem being

3   fair.

4          THE COURT:  Okay.  And you had sat on a civil trial

5   before as a juror?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  So the burden of proof there is lower.

8   It's the preponderance of the evidence.  Here, it's beyond a

9   reasonable doubt because it's a criminal trial.

10          THE PROSPECTIVE JUROR:  Okay.

11          THE COURT:  Could you apply that higher standard?

12          THE PROSPECTIVE JUROR:  Yes, I could.

13          THE COURT:  Okay.  Can you think of any reason why

14   you would not be a fair and impartial juror if you were

15   picked?

16          THE PROSPECTIVE JUROR:  No, I cannot.

17          THE COURT:  And you said you're not sure if you

18   would get paid.

19          THE PROSPECTIVE JUROR:  I'm not sure.

20          THE COURT:  Okay.  Can you find out from your

21   employer?

22          THE PROSPECTIVE JUROR:  I will.

23          THE COURT:  Good.  I'm going to ask everybody to

24   come back tomorrow at 8:30 so, hopefully, you'll have some

25   answer by then.

Jury Selection                                    616

1          THE PROSPECTIVE JUROR:  Okay.

2          THE COURT:  So why don't you go back, let me talk to

3    the lawyers for a bit and then I'll ask everyone to come back

4    in a few minutes.

5          THE PROSPECTIVE JUROR:  Okay.

6          (Prospective Juror No. 162 exits.)

7          MS. KOMATIREDDY:  Your Honor, we're tracking 54 with

8    11 pay issues.  Is that right?

9          MS. GOTLIB:  There's also one to follow-up, he saw

10   the news.

11         THE COURT:  You're correct about the 11 pay issues

12   and then there's one with the hearing and then there's one

13   with the news but I don't have 54.  We have 52.

14         MS. GOTLIB:  I have 54:  26 yesterday and 28 today.

15         MS. KOMATIREDDY:  Yes, Your Honor.

16         THE COURT:  Okay.  So the chart that I have, I'll

17   just read out the numbers and you can follow.  I'll just read

18   out the numbers of everyone that remains and then I'll read

19   out the numbers of the people who we might have an issue with.

20         Does that make sense?

21         MR. DE CASTRO:  Sure.

22         THE COURT:  So I have 3, 4, 6, 7, 9, 13, 15, 17, 18,

23   19, 21, 27, 30, 31, 32, 35, 36, 41, 45, 56, 61, 64, 67, 78,

24   80, 83, 87, 89, 90, 91, 93, 97, 101, 102, 103, 109, 114, 116,

25   122, 123, 128, 134, 136 --

Jury Selection                            617

1            MR. DE CASTRO:  Judge, it's 129.

2            THE COURT:  129, okay.  134, 136, 138, 143, 145,

3    147.  Actually, 129 I had out of order.  After 147, 150, 153,

4    158, 159, 160, 162.

5            MS. KOMATIREDDY:  Yes that's what we have,

6    Your Honor.

7            MR. DE CASTRO:  Yes.

8            THE COURT:  So 54.  Before we go further, I want to

9    excuse the jurors.  The question is whether you want to hear

10   from 122, the person with the hearing -- wait.  That was the

11   morning, right?  So I think we can let the afternoon people go

12   unless you have for cause.

13           MS. KOMATIREDDY:  Not from us, Your Honor.

14           THE COURT:  So why don't we release them so we can

15   let them go home and we can continue talking.

16           (Prospective Jurors enter.)

17           THE COURT:  You can sit anywhere.

18           Thank you, everybody, for your patience.  I know

19   it's been a long day.  It's already past 5:30.  My microphone

20   was not on.

21           Thank you, everybody, for your patience.  You've

22   been wonderful.  It's now past 5:30 so we're done for the day.

23   What I would like is for you all to come back tomorrow morning

24   at 8:30 and we're going to complete the jury selection at that

25   point.

Jury Selection                                     618

1          So by tomorrow morning, you know, once everybody is

2     here, there's some other jurors who we spoke to yesterday and

3     in the morning, so everybody will gather and then we will pick

4     the people who will be sitting as the jury and whoever is not

5     picked will be free to go.

6          I know some of you were asked to make some calls or

7     send e-mails to find out certain answers to questions so

8     tomorrow morning, if you could, when you check in, let the

9     jury office know whether you have an answer and then we'll

10    talk to you about what your answer is.  Okay?

11         So we'll have that little piece of it and then the

12    lawyers will make their final decisions and we'll know by the

13    end of the morning who will be on the jury, but it's important

14    for you to be here on time so we can get that process going

15    and, you know, be able to finish everything.  Okay?

16         So have a good evening and I'll see you tomorrow

17    morning at 8:30.  Report to the jury office on the second

18    floor when you come in tomorrow morning.

19         Thank you very much.

20         (Prospective Jurors exit.)

21         THE COURT:  All right.  Please be seated.

22         If our calculations are correct, we are at 41 -- and

23    if everybody who is asking their employers about pay comes

24    back with the bad news, then we will be at 41.  So the

25    question is whether we should call in any additional jurors

1   from the list off the questionnaire.

2          So we've gone through 120 or so or there's some

3   people who didn't show up but I know we've got some more

4   questionnaires available.  I don't think we need to call in 30

5   but I wonder if you think it makes sense to call in a few more

6   in case we hear more bad news.

7          (Continued on next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   (Continuing)

2           MS. KOMATIREDDY:  We think it does, Your Honor.  We

3   would suggest calling in a morning session, so I think that is

4   30, if Your Honor doesn't mind, just in case.

5           MR. DE CASTRO:  I don't think we are going to need

6   them, but call them in.  They can hang out for the morning and

7   leave.  I think that makes sense for everybody.

8           THE COURT:  So why don't we ask the jury office to

9   call in 30 additional jurors in case we need them.  So we will

10  just see in the morning if we have the 40 that we need.  And

11  if you do, then you can exercise your peremptories.  If you

12  don't, then we will question as many as jurors as we need to

13  get us to 40.  I don't anticipate that will take a lot, and

14  I'm hoping we don't need to do that.  But I do think the

15  prudent thing to do to call them in.

16          So tomorrow morning, did you give any more thought

17  to my silent peremptory challenge proposal or do you want to

18  do this at sidebar where we do it orally?  Either way is fine.

19          MS. KOMATIREDDY:  Sidebar.  I would like to do it at

20  sidebar.

21          MR. DE CASTRO:  I'm up to trying something I've

22  never done, but that's fine.  Sidebar is great.

23          THE COURT:  That's fine.  We will do that here.  You

24  will tell me who you're striking.  I will have all of the 40

25  jurors here so you can look up and see who they are.  Ryan can

1  we have them seated in order so you can identify who they are.

2           MR. DE CASTRO:  That would be great.

3           MS. KOMATIREDDY:  Yes, thank you, Judge.

4           THE COURT:  And once we know who they are, we will

5  come up with a chart with 40 seats and then you can see who

6  the jurors are, because the numbers are going to be all over

7  the place, but we will do it sequentially so they are in the

8  proper order.

9           MR. DE CASTRO:  Will they still have their --

10          THE COURT:  Yes.

11          MR. DE CASTRO:  That will be helpful.

12          THE COURT:  Once we square away the 40 people, we

13 will give the parties half hour about what they want to do.

14 Then we'll gather at sidebar, we will do the challenges here.

15 If there are going to be any Batson challenges, please raise

16 them immediately, because if you wait until the end, it's

17 going to be hard.  I think it makes sense to raise them.

18 Sometimes the decision -- we will work out how the timing of

19 the decisions might end up being, but I would urge you to

20 raise them on the spot.

21          Are there any other issues we need to discuss?

22          MS. KOMATIREDDY:  Not from the Government, Your

23 Honor.

24          MR. DE CASTRO:  No, Your Honor.

25          THE COURT:  Good.

1          Let's gather at 9 o'clock sharp.  We need to get the

2    answer from the jurors -- the outstanding answers, so

3    hopefully they will have conveyed that to the jury department

4    and then we can call them in to question them if we want to.

5    Jurors 27 and 122, we need to question.  So if they are here,

6    regardless of whether the others are here, I would ask to have

7    them brought up so we can get that done.  And then we will see

8    where we are.  Hopefully everything will go smoothly and we

9    will do everything lockstep.

10         Once you exercise the peremptory challenges, what I

11   will do is to seat the jurors in this jury box.  There are 18

12   seats.  That will fill the twelve jurors and then the six

13   alternates.  Then you can tell me if it's acceptable or not.

14   Right.

15         So I understand from Judge Cogan he will start trial

16   on Monday.  We will just work toward that.

17         Any questions?

18         MR. DE CASTRO:  None.

19         MS. KOMATIREDDY:  No.  Thank you, Judge.

20         THE COURT:  I will see everybody tomorrow morning.

21         (Pause.)

22         THE COURT:  I'm sorry, I got a note.

23         We are back on the record for a moment.  I got a

24   note that Juror No. 7 tested positive for COVID.  Now we are

25   at potentially exactly 40.  I have been calling in those extra

1    people.  I think that would be the prudent thing to do.

2              MR. DE CASTRO:  Judge, No.  7 is also not going to

3    get paid, so.

4              THE COURT:  All right.  Anyway, I think we should

5    tell that juror to stay home.

6              MR. DE CASTRO:  Agreed.

7              THE COURT:  We are going to strike seven for cause

8    for testing positive for COVID.

9              Anything else?

10             Did the Government want to say anything?

11             MS. KOMATIREDDY:  I'm sorry, I just want to ask my

12   colleagues something.

13             No objection, Your Honor.

14             THE COURT:  We will let the jury office that that

15   juror is excused.  All right.  Thank you everybody.  Now we

16   are adjourned.

17                  (Matter adjourned to January 19, 2023 at 9:00 a.m.)

18

19                           ooo0ooo

20

21

22

23

24

25

**$**

**$40** [3] - 592:25, 594:3, 605:12

**'**

**'70s** [1] - 503:11
**'90s** [4] - 513:9, 514:5, 514:10, 516:19

**0**

**0162** [1] - 602:13

**1**

**1** [2] - 437:25, 593:14
**1/19** [1] - 492:4
**1/23** [1] - 492:5
**1/24** [1] - 492:5
**1/25** [1] - 492:6
**1/27** [1] - 492:6
**1/30** [1] - 492:6
**1/31** [1] - 492:6
**10** [4] - 316:25, 422:23, 492:15, 492:24
**100** [13] - 347:16, 347:21, 347:22, 353:6, 357:15, 357:17, 357:19, 361:20, 361:21, 361:22, 365:25, 432:3, 507:1
**10004** [1] - 303:2
**10038** [2] - 302:22, 303:5
**101** [7] - 357:17, 357:18, 357:20, 357:22, 361:19, 616:24
**1010** [1] - 534:5
**102** [6] - 366:4, 366:10, 366:11, 366:12, 376:18, 616:24
**103** [6] - 376:21, 376:25, 377:2, 377:3, 380:9, 616:24
**105** [3] - 306:18, 306:19, 306:23
**107** [5] - 380:10, 380:14, 380:15, 383:4, 384:11
**108** [3] - 383:5, 383:11, 383:14
**109** [4] - 384:19, 384:20, 399:22, 616:24
**10th** [1] - 339:6
**11** [2] - 616:8, 616:11
**110** [4] - 404:15, 404:22, 404:23, 406:4
**111** [3] - 302:22, 406:5, 406:10
**112** [5] - 406:9, 406:12, 406:13, 406:15, 410:16
**11201** [1] - 302:18
**113** [1] - 410:17
**114** [8] - 410:18, 410:19, 410:20, 411:1, 411:2, 411:3, 415:7, 616:24
**116** [4] - 415:8, 415:16, 417:18, 616:24
**117** [4] - 417:19, 417:25, 418:1, 419:7
**11:30** [1] - 404:12
**12** [4] - 307:5, 374:7, 490:20, 588:20
**12-and-a-half-hour** [1] - 465:14
**12-hour** [1] - 405:11
**12-plus** [2] - 465:3, 465:13
**12/2** [1] - 492:8
**12/5** [1] - 492:8

**120** [3] - 405:18, 419:8, 619:2
**121** [4] - 419:9, 419:15, 419:16, 421:21
**122** [9] - 421:24, 422:5, 422:6, 422:7, 426:16, 442:21, 616:25, 617:10, 622:5
**123** [10] - 307:9, 428:3, 428:12, 428:13, 437:23, 438:12, 439:19, 440:1, 441:20, 616:25
**124** [5] - 446:6, 446:7, 447:8, 447:9, 449:17
**125** [4] - 446:14, 449:18, 449:19, 451:4
**126** [4] - 446:18, 451:6, 451:7, 453:15
**128** [5] - 446:21, 453:16, 453:17, 459:24, 616:25
**129** [23] - 447:2, 459:25, 460:1, 470:11, 472:22, 476:20, 487:8, 487:12, 487:13, 494:9, 528:7, 528:20, 528:22, 544:11, 544:13, 567:1, 567:22, 567:23, 567:24, 570:18, 617:1, 617:2, 617:3
**12:15** [1] - 437:25
**12:30** [1] - 590:9
**12th** [4] - 491:12, 492:10, 606:25, 612:21
**13** [1] - 616:22
**130** [5] - 472:11, 472:15, 476:21, 476:24, 479:2
**131** [4] - 479:3, 479:11, 479:12, 486:11
**133** [7] - 486:13, 486:14, 486:22, 487:10, 494:10, 494:11, 500:6
**134** [7] - 486:20, 487:2, 501:1, 501:2, 517:25, 616:25, 617:2
**136** [6] - 487:5, 518:1, 518:2, 526:17, 616:25, 617:2
**137** [6] - 526:18, 526:22, 526:23, 527:23, 529:18, 529:19
**138** [8] - 528:2, 528:6, 529:20, 530:16, 530:17, 530:18, 537:2, 617:2
**13th** [1] - 492:10
**14** [2] - 492:16, 492:19
**141** [6] - 306:25, 307:3, 308:23, 310:17, 310:18, 312:23
**142** [6] - 528:6, 530:2, 530:8, 537:3, 537:4, 539:20
**143** [5] - 528:6, 539:21, 539:22, 543:16, 617:2
**144** [6] - 528:6, 543:18, 544:12, 544:15, 544:16, 548:15
**145** [5] - 543:23, 544:12, 548:16, 548:17, 617:2
**146** [7] - 421:23, 421:25, 422:5, 426:17, 427:4, 427:5, 428:2
**147** [7] - 544:1, 544:12, 556:14, 556:20, 563:12, 617:3
**148** [5] - 544:4, 544:12, 563:13, 563:14, 566:25
**149** [6] - 544:7, 544:12, 567:1, 567:2, 567:3, 567:21
**14th** [1] - 492:10
**15** [5] - 306:4, 306:13, 420:3, 448:3, 616:22

**150** [7] - 572:5, 572:7, 572:8, 574:8, 574:9, 579:18, 617:3
**151** [4] - 572:12, 579:19, 579:20, 585:10
**153** [6] - 572:15, 572:17, 586:1, 586:2, 591:12, 617:3
**154** [4] - 573:18, 591:13, 591:14, 594:17
**156** [4] - 573:22, 595:1, 595:2, 599:6
**158** [5] - 574:2, 599:13, 599:14, 601:18, 617:4
**159** [7] - 601:21, 601:22, 602:22, 602:23, 602:24, 606:13, 617:4
**160** [5] - 602:6, 606:14, 606:15, 612:12, 617:4
**162** [7] - 307:10, 602:18, 612:13, 612:14, 612:15, 616:6, 617:4
**17** [3] - 302:7, 306:6, 616:22
**18** [2] - 616:22, 622:11
**19** [3] - 306:8, 616:23, 623:17
**19-CR-00576(BMC** [1] - 302:3
**19-CR-576** [1] - 304:4
**1900** [1] - 303:2
**1990s** [1] - 516:8
**1:20** [2] - 438:4, 438:5
**1:30** [2] - 443:16, 444:13
**1st** [1] - 492:12

**2**

**2/1** [1] - 492:6
**2/6** [1] - 492:8
**2/7** [1] - 492:8
**2/8** [1] - 492:8
**20** [6] - 378:19, 378:20, 402:12, 522:8, 550:1, 551:17
**2000** [1] - 510:6
**2001** [5] - 510:6, 514:1, 514:11, 514:14, 516:5
**2002** [1] - 513:10
**2005** [1] - 329:16
**2006** [1] - 329:16
**2012** [2] - 431:13, 513:9
**2013** [1] - 603:25
**2019** [2] - 326:4, 326:6
**2020** [3] - 514:1, 514:11, 516:5
**2023** [2] - 302:7, 623:17
**20s** [1] - 315:13
**20th** [1] - 595:16
**21** [1] - 616:23
**22** [1] - 572:10
**225** [1] - 303:5
**22nd** [1] - 595:10
**23** [1] - 421:22
**23rd** [2] - 420:20, 421:6, 595:11
**24** [2] - 310:9, 428:6
**24th** [4] - 595:13, 595:19, 595:25, 599:24
**25** [2] - 420:4, 423:22
**26** [4] - 540:9, 540:10, 573:6, 616:14
**27** [10] - 305:6, 305:14, 305:15, 491:4,

540:9, 540:10, 573:6, 573:11, 616:23, 622:5

**271** [1] - 302:17

**27th** [2] - 490:19, 491:10

**28** [2] - 589:8, 616:14

**2815** [1] - 303:5

**2nd** [4] - 460:8, 492:13, 492:19, 594:10

## 3

**3** [2] - 380:11, 616:22

**30** [4] - 616:23, 619:4, 620:4, 620:9

**30th** [1] - 420:23

**31** [1] - 616:23

**31st** [1] - 420:23

**32** [2] - 306:8, 616:23

**32D** [1] - 596:12

**34** [3] - 309:15, 553:18, 553:19

**35** [10] - 309:2, 309:15, 347:17, 376:25, 419:11, 426:22, 447:4, 572:8, 602:4, 616:23

**36** [12] - 306:8, 309:2, 410:23, 426:22, 428:7, 446:9, 446:15, 447:3, 530:3, 530:7, 544:5, 616:23

**37** [9] - 325:25, 326:1, 380:11, 446:11, 446:15, 487:6, 542:18, 574:5

**38** [5] - 383:8, 383:9, 530:7, 543:20, 602:4

**39** [3] - 417:20, 419:11, 572:8

**3:35** [1] - 528:2

**3rd** [4] - 490:21, 491:16, 492:13, 596:7

## 4

**4** [4] - 306:8, 310:9, 531:6, 616:22

**40** [24] - 307:11, 308:8, 310:9, 417:20, 419:11, 443:21, 443:24, 444:3, 446:22, 447:3, 487:3, 495:16, 530:7, 543:25, 544:8, 572:8, 602:5, 610:11, 620:10, 620:13, 620:24, 621:5, 621:12, 622:25

**41** [4] - 380:11, 616:23, 618:22, 618:24

**42** [6] - 309:3, 310:11, 419:11, 530:3, 530:7, 544:5

**43** [13] - 309:3, 309:4, 309:7, 372:6, 383:6, 479:5, 530:8, 543:20, 572:9, 574:1, 596:12, 602:20

**44** [19] - 309:3, 309:7, 309:15, 309:19, 310:11, 347:17, 357:21, 376:25, 419:11, 446:15, 446:19, 446:25, 447:4, 479:6, 530:1, 530:3, 530:8, 544:8, 572:9

**45** [6] - 309:3, 309:11, 426:22, 426:23, 446:11, 616:23

**46** [1] - 307:5

**47** [14] - 309:3, 309:19, 376:25, 383:6, 417:21, 426:23, 446:17, 446:20, 446:25, 479:6, 487:4, 487:7, 526:21, 602:20

**48** [4] - 426:23, 446:13, 446:17, 530:8

**49** [6] - 310:11, 419:11, 472:14, 487:7, 497:22, 530:3

**4:00** [1] - 590:9

**4th** [22] - 467:6, 467:25, 468:20, 471:23, 474:22, 474:23, 475:2, 476:9, 476:13, 487:20, 488:10, 488:12, 490:10, 568:3, 568:8, 568:16, 568:25, 569:13, 569:14, 569:16, 570:23, 596:6

## 5

**5** [3] - 339:6, 531:6, 593:14

**50** [6] - 310:11, 347:17, 420:4, 426:24, 530:3, 544:8

**52** [6] - 309:17, 446:20, 487:4, 530:1, 543:25, 616:13

**53** [2] - 419:12, 543:25

**54** [5] - 543:25, 616:7, 616:13, 616:14, 617:8

**55** [7] - 309:8, 309:15, 383:6, 417:21, 479:5, 530:1, 544:8

**56** [17] - 309:15, 310:8, 310:11, 347:17, 383:6, 410:23, 419:12, 446:11, 446:19, 447:4, 487:4, 487:7, 530:1, 543:19, 544:8, 572:9, 616:23

**57** [1] - 446:19

**58** [15] - 309:3, 309:8, 366:5, 383:6, 419:12, 426:23, 426:25, 428:7, 446:11, 446:19, 479:6, 543:21, 543:25, 572:10

**59** [9] - 309:3, 350:17, 353:21, 366:9, 446:15, 530:10, 602:10, 602:20

**5:00** [4] - 405:9, 465:1, 493:14, 540:22

**5:30** [5] - 334:23, 527:25, 540:22, 617:19, 617:22

**5th** [1] - 460:8

## 6

**6** [2] - 593:13, 616:22

**60** [2] - 309:3, 366:5

**602** [1] - 302:22

**61** [6] - 347:17, 366:5, 373:14, 419:12, 447:4, 616:23

**62** [10] - 366:5, 417:21, 428:7, 428:10, 446:19, 530:3, 530:10, 543:19, 572:13

**62-B** [1] - 446:12

**62-C** [2] - 309:23, 436:6

**62C** [1] - 562:10

**62D** [1] - 573:24

**63** [3] - 472:20, 472:21, 476:23

**64** [5] - 417:21, 417:22, 446:12, 544:6, 616:23

**66** [11] - 309:3, 309:7, 309:16, 428:7, 446:19, 472:17, 472:18, 476:23, 530:3, 530:10, 543:24

**67** [2] - 404:19, 616:23

**69** [9] - 310:12, 383:6, 404:20, 410:23, 426:22, 428:6, 446:19, 544:2, 544:8

**6th** [3] - 428:25, 595:9, 596:4

## 7

**7** [8] - 306:2, 306:12, 306:13, 465:3, 490:20, 616:22, 622:24, 623:2

**70** [2] - 383:7, 426:23

**70-something** [1] - 571:7

**71** [13] - 310:12, 359:7, 380:13, 404:20, 410:23, 464:16, 526:20, 536:10, 544:6, 573:20, 602:5, 602:15, 602:20

**718-613-2272** [1] - 303:8

**77** [1] - 305:2

**78** [1] - 616:23

**7:00** [1] - 491:12

**7:30** [1] - 313:21

## 8

**8** [3] - 593:13, 593:14

**8-hour** [1] - 405:12

**80** [4] - 303:2, 316:22, 316:24, 616:24

**83** [1] - 616:24

**86** [6] - 307:8, 309:6, 312:24, 312:25, 313:1

**87** [7] - 309:10, 317:23, 317:24, 317:25, 318:1, 319:19, 616:24

**88** [5] - 309:14, 319:20, 319:21, 319:22, 323:24

**89** [7] - 309:18, 309:21, 323:25, 324:1, 324:2, 327:1, 616:24

**8:30** [8] - 439:21, 441:23, 442:8, 442:12, 490:4, 615:24, 617:24, 618:17

## 9

**9** [2] - 616:22, 622:1

**9/11** [2] - 510:5, 522:2

**90** [6] - 309:23, 310:2, 327:2, 327:3, 328:20, 616:24

**91** [6] - 310:4, 329:4, 329:5, 329:6, 330:17, 616:24

**93** [6] - 310:7, 330:18, 331:1, 331:2, 336:25, 616:24

**94** [5] - 310:10, 337:1, 337:2, 337:4, 338:8

**97** [6] - 338:9, 338:13, 338:14, 343:15, 345:4, 616:24

**98** [1] - 345:5

**99** [4] - 345:5, 346:1, 346:4, 347:15

**99-year-old** [1] - 404:2

**9:00** [4] - 302:8, 405:9, 465:1, 623:17

**9th** [2] - 606:25, 607:3

## A

**a.m** [5] - 302:8, 490:20, 491:12, 590:9, 623:17

**abiding** [2] - 398:9, 457:18

**ability** [66] - 314:22, 315:24, 316:14, 317:8, 319:3, 321:1, 322:18, 324:22, 331:22, 332:3, 333:14, 334:12,

335:18, 340:16, 341:6, 342:18,
342:20, 349:17, 358:10, 358:25,
359:4, 372:23, 373:9, 377:13, 380:25,
388:15, 400:16, 402:1, 402:4, 428:20,
430:22, 431:24, 440:20, 448:16,
450:8, 455:16, 461:5, 462:16, 478:8,
480:11, 483:9, 484:13, 484:22,
485:25, 486:2, 497:14, 504:21,
505:24, 521:20, 534:8, 535:19, 538:8,
541:17, 541:22, 576:9, 578:10, 579:1,
580:25, 589:15, 603:8, 603:21, 604:1,
604:25, 608:22, 610:5, 615:1
**able** [86] - 308:15, 312:10, 316:3, 334:7,
350:25, 351:25, 360:2, 360:6, 360:21,
360:22, 364:14, 364:25, 365:9,
365:11, 376:11, 379:2, 379:4, 382:12,
389:20, 392:21, 395:6, 397:4, 411:19,
411:23, 412:6, 412:9, 416:9, 416:12,
425:21, 432:3, 436:18, 440:24, 441:2,
452:20, 453:3, 453:5, 454:7, 454:19,
455:11, 457:16, 462:9, 465:6, 465:10,
468:2, 479:17, 481:16, 484:7, 484:9,
492:21, 497:12, 498:20, 499:6,
501:17, 503:7, 508:5, 508:21, 509:8,
512:9, 512:15, 516:14, 517:4, 519:16,
520:1, 520:4, 520:10, 524:20, 526:5,
531:13, 532:10, 532:21, 533:23,
535:6, 535:9, 539:10, 550:20, 552:3,
555:11, 555:13, 576:20, 584:5,
584:16, 592:12, 603:10, 609:17,
618:15
**absolutely** [6] - 475:16, 608:12, 608:24,
609:19, 611:3, 611:22
**Absolutely** [2] - 399:14, 608:13
**abuse** [3] - 431:11, 432:20, 462:23
**abused** [2] - 431:16, 484:12
**abusement** [1] - 477:19
**accept** [42] - 327:19, 350:25, 351:25,
352:8, 352:9, 356:8, 389:20, 390:7,
393:23, 394:19, 400:6, 400:23,
401:14, 402:4, 414:5, 414:6, 416:12,
438:14, 439:6, 439:14, 441:3, 483:13,
498:21, 499:6, 508:21, 512:3, 517:7,
535:6, 558:4, 558:12, 558:21, 558:22,
559:4, 562:16, 562:18, 562:22,
581:20, 584:16, 597:19, 598:3,
608:10, 608:14
**acceptable** [2] - 439:23, 622:13
**accepted** [1] - 377:23
**accepting** [1] - 328:4
**access** [2] - 304:6, 484:20
**accommodate** [3] - 331:16, 346:18,
606:4
**according** [5] - 519:4, 519:22, 522:16,
523:14, 594:19
**account** [12] - 370:20, 392:5, 393:22,
401:17, 434:6, 434:8, 434:9, 538:9,
581:6, 581:12, 583:8, 583:11
**Accountant** [1] - 560:12
**accountant** [2] - 560:13, 603:19

**accusation** [1] - 577:22
**accused** [10] - 372:22, 409:25, 413:1,
478:5, 478:19, 481:4, 484:23, 506:4,
577:23
**accuses** [1] - 578:3
**accusing** [1] - 513:2
**act** [2] - 374:20, 521:18
**action** [2] - 448:12, 448:15
**actions** [1] - 477:22
**activity** [2] - 426:3, 478:5
**acts** [1] - 515:6
**actual** [4] - 334:13, 372:15, 430:20,
490:17
**add** [4] - 309:8, 383:8, 492:12, 583:3
**addition** [2] - 310:3, 491:21
**additional** [7] - 439:2, 439:4, 446:23,
507:7, 508:9, 618:25, 620:9
**address** [2] - 344:24, 613:22
**addressed** [1] - 354:17
**adjourned** [2] - 623:16, 623:17
**administration** [1] - 322:23
**Administration** [1] - 304:19
**administrative** [1] - 614:13
**admire** [6] - 424:2, 424:5, 573:9,
587:13, 587:14, 587:18
**admit** [1] - 370:11
**admitted** [1] - 434:15
**adults** [1] - 388:22
**advantage** [1] - 309:9
**affect** [68] - 314:22, 315:24, 316:4,
316:14, 317:8, 319:3, 321:1, 322:18,
324:22, 331:21, 332:3, 333:14,
334:12, 335:18, 340:16, 340:21,
341:6, 341:12, 342:18, 349:17,
354:20, 358:10, 358:24, 371:21,
372:23, 373:9, 377:13, 388:15, 408:2,
440:18, 440:20, 450:8, 454:4, 455:15,
461:5, 462:16, 463:18, 464:2, 478:8,
480:10, 484:13, 484:22, 491:1,
504:21, 505:24, 521:20, 523:12,
523:23, 534:8, 535:18, 536:4, 537:20,
537:23, 541:17, 541:22, 576:8, 578:6,
578:10, 579:1, 589:15, 603:8, 603:23,
604:1, 604:24, 605:1, 608:21, 610:4,
615:1
**affected** [2] - 325:16, 371:21
**affects** [3] - 448:16, 463:4, 603:21
**AFI** [7] - 601:23, 602:1, 602:2, 604:16,
604:19, 604:20
**afternoon** [25] - 307:10, 307:19, 307:25,
308:8, 311:1, 421:6, 421:8, 421:23,
422:1, 427:12, 437:24, 442:3, 442:4,
442:10, 443:20, 445:7, 447:10,
475:25, 527:2, 530:18, 531:6, 551:20,
586:3, 586:4, 617:11
**AFTERNOON** [1] - 445:1
**afterwards** [1] - 470:5
**Agencia** [1] - 601:24
**agencies** [12] - 342:9, 344:7, 357:9,
373:17, 498:8, 521:17, 537:13,

601:23, 603:22, 609:10, 611:15
**Agency** [1] - 604:16
**agency** [11] - 342:7, 342:16, 343:10,
343:19, 344:18, 344:21, 498:3,
514:13, 578:25, 611:15, 612:1
**Agent** [1] - 304:18
**agent** [8] - 342:24, 358:6, 538:15,
538:20, 608:18, 609:18, 610:21
**agent's** [1] - 579:4
**agents** [7] - 537:21, 538:2, 538:23,
538:25, 578:23, 609:15, 611:18
**ago** [12] - 315:7, 385:10, 386:11, 420:3,
480:6, 480:13, 510:7, 522:15, 524:10,
553:4, 574:23, 610:18
**agree** [3] - 308:20, 511:15, 534:7
**agreed** [6] - 306:19, 307:1, 445:25,
544:10, 549:13, 623:6
**agreement** [13] - 305:8, 306:12, 308:15,
327:17, 370:6, 370:11, 370:16, 433:5,
544:24, 580:6, 582:18, 596:25, 597:9
**agreements** [1] - 355:22
**ahead** [4] - 353:7, 397:8, 404:8, 563:8
**Airbnb** [1] - 460:13
**airport** [1] - 504:17
**ALERIE** [1] - 303:6
**Alerie** [1] - 304:22
**ALICE** [1] - 303:6
**Alice** [1] - 304:22
**alien** [2] - 340:6, 341:14
**aliens** [1] - 340:2
**alive** [1] - 592:8
**allegations** [12] - 333:21, 371:8, 412:23,
432:20, 462:17, 484:14, 506:1,
508:19, 512:5, 535:17, 577:3, 577:25
**alleged** [1] - 516:14
**allotted** [1] - 487:21
**allow** [2] - 427:19, 512:16
**allowed** [5] - 369:2, 369:5, 369:6, 434:5,
568:10
**allowing** [1] - 446:5
**almost** [4] - 362:23, 362:25, 386:15,
527:25
**alone** [4] - 389:20, 390:7, 401:9, 476:23
**alter** [1] - 577:8
**alternate** [4] - 313:17, 313:22, 329:13,
572:1
**alternates** [1] - 622:13
**alternative** [5] - 456:22, 471:13, 473:11,
473:14, 473:15
**AMERICA** [1] - 302:3
**America** [2] - 477:18, 477:25
**Americans** [1] - 477:23
**amount** [4] - 464:22, 484:17, 561:19,
593:9
**analysis** [1] - 508:22
**angles** [1] - 512:1
**animus** [1] - 342:19
**annoying** [1] - 455:18
**answer** [57] - 307:21, 308:3, 348:3,

353:10, 362:19, 364:5, 366:19,
366:21, 367:4, 367:24, 369:15, 381:9,
389:1, 390:17, 400:14, 400:21,
400:25, 410:6, 410:22, 418:6, 432:25,
447:5, 476:2, 477:6, 477:9, 478:11,
485:19, 487:9, 489:8, 489:16, 489:23,
489:25, 490:3, 490:6, 493:4, 496:10,
496:11, 497:12, 537:12, 543:12,
545:24, 561:4, 561:22, 567:7, 572:20,
572:22, 578:2, 578:17, 580:12, 587:9,
593:19, 602:12, 615:25, 618:9,
618:10, 622:2
**answered** [11] - 314:25, 327:24, 396:19,
403:21, 411:25, 419:10, 428:6,
482:14, 573:1, 579:8, 583:19
**answering** [2] - 403:13, 442:5
**answers** [29] - 306:13, 313:8, 320:4,
324:11, 337:10, 348:2, 358:3, 366:17,
367:3, 373:22, 380:22, 406:19, 411:7,
446:23, 477:4, 486:18, 528:8, 528:20,
528:21, 530:21, 537:11, 544:20,
563:19, 567:5, 570:16, 574:17, 603:2,
618:7, 622:2
**anticipate** [2] - 570:24, 620:13
**anticipated** [2] - 359:15, 444:4
**anticipating** [1] - 600:6
**anxiety** [10] - 426:17, 427:16, 452:1,
549:5, 549:24, 553:12, 554:13,
554:25, 555:5, 555:15
**anxious** [3] - 452:6, 548:20, 551:22
**anyway** [6] - 331:18, 455:21, 455:23,
468:14, 543:12, 623:4
**apart** [1] - 499:12
**apartment** [1] - 589:8
**apologize** [6] - 365:12, 440:5, 489:21,
560:8, 573:6, 574:4
**appeal** [1] - 603:19
**appear** [1] - 445:9
**appearances** [1] - 304:14
**appeared** [3] - 335:12, 445:19, 602:11
**apples** [2] - 399:11, 401:2
**application** [2] - 342:13, 377:24
**applications** [1] - 377:25
**applied** [4] - 324:16, 324:17, 324:18,
377:7
**apply** [17] - 325:17, 326:20, 329:25,
334:3, 340:22, 340:25, 341:14,
352:11, 353:21, 356:16, 356:18,
464:10, 550:22, 558:4, 562:16, 601:2,
615:11
**applying** [1] - 596:20
**appointment** [6] - 420:22, 420:24,
479:9, 479:16, 595:16, 595:24
**appreciate** [9] - 330:12, 334:11, 334:21,
365:20, 376:23, 427:24, 482:17,
517:20, 606:5
**appreciated** [1] - 388:6
**approach** [2] - 341:25, 577:9
**approaching** [1] - 511:24
**appropriate** [4] - 320:23, 409:3, 564:21,

578:17
**April** [2] - 311:25, 339:6
**arbitrarily** [1] - 456:24
**area** [4] - 415:11, 454:3, 522:14, 523:16
**argue** [1] - 523:11
**argument** [2] - 364:15, 364:21, 401:18
**arguments** [4] - 342:21, 364:13, 438:9,
438:10
**arise** [2] - 480:23, 481:2
**armed** [1] - 505:1
**arms** [1] - 369:6
**Army** [1] - 374:7
**arrangements** [5] - 384:4, 532:16,
532:17, 532:20, 533:15
**arrest** [3] - 340:4, 503:16, 534:6
**arrested** [9] - 332:8, 339:24, 342:8,
342:16, 521:21, 553:9, 575:23,
603:25, 610:2
**arrived** [1] - 421:24
**articulate** [1] - 404:4
**articulated** [1] - 400:1
**articulation** [1] - 471:16
**aside** [15] - 321:24, 322:8, 355:16,
432:2, 432:9, 433:25, 440:23, 441:1,
441:13, 462:9, 506:21, 512:9, 517:13,
534:11, 539:11
**aspect** [2] - 318:10, 321:6
**assailant's** [1] - 332:10
**assault** [2] - 332:13, 336:2
**assaulted** [1] - 331:25
**assess** [35] - 323:12, 354:12, 354:23,
370:25, 397:4, 399:13, 403:6, 434:11,
437:12, 452:21, 453:3, 453:6, 454:8,
461:23, 482:24, 483:7, 483:14,
501:17, 533:23, 534:11, 538:4, 539:3,
546:21, 552:17, 555:14, 559:3, 575:8,
575:9, 580:4, 580:19, 582:18, 603:10,
609:17, 611:20, 612:3
**assessing** [9] - 354:21, 371:12, 393:14,
414:7, 434:6, 461:15, 463:13, 531:19,
535:24
**assessment** [10] - 362:17, 395:3, 403:1,
404:10, 414:9, 464:2, 537:21, 581:7,
581:10, 583:8
**assessments** [3] - 393:16, 564:25,
565:3
**assistant** [1] - 614:13
**Assistant** [1] - 302:20
**associate** [1] - 527:16
**assuage** [1] - 364:2
**assume** [19] - 349:7, 349:10, 351:6,
353:10, 354:14, 354:18, 355:15,
355:18, 355:22, 356:6, 356:14,
356:15, 357:8, 357:10, 362:2, 362:10,
362:14, 510:16, 573:10
**assumed** [2] - 356:14, 571:19
**assuming** [1] - 613:4
**assumption** [2] - 353:20, 353:25
**assumptions** [1] - 356:19
**assurance** [1] - 438:15

**assurances** [2] - 400:16, 438:24
**assure** [1] - 553:13
**attack** [1] - 550:19
**attacks** [5] - 549:5, 550:1, 550:10,
551:4, 551:16
**attempting** [1] - 575:22
**attend** [1] - 311:1
**attended** [1] - 307:1
**attending** [1] - 329:2
**attention** [8] - 361:6, 361:8, 407:13,
407:14, 407:18, 533:2, 552:8, 565:16
**attorney** [1] - 386:23
**Attorney** [2] - 302:16, 302:20
**attorneys** [1] - 364:2
**aunt** [5] - 337:22, 358:6, 480:15, 481:12,
481:15
**Austin** [1] - 304:23
**authorities** [1] - 349:22
**Authority** [3] - 324:13, 324:21, 377:11
**automatically** [1] - 410:1
**available** [9] - 337:24, 357:18, 421:25,
443:17, 472:5, 473:4, 475:3, 557:18,
568:12, 613:15, 619:4
**avoid** [1] - 550:25
**aware** [8] - 332:11, 332:13, 417:6,
549:8, 553:2, 555:3, 555:16, 593:8
**awhile** [2] - 480:6, 480:13

## B

**background** [3] - 362:8, 506:12, 614:6
**backtrack** [1] - 582:1
**backup** [1] - 490:16
**bad** [10] - 399:10, 401:2, 455:18,
477:14, 477:23, 524:25, 564:24,
604:9, 618:24, 619:6
**bag** [22] - 310:19, 313:2, 324:5, 337:8,
384:24, 404:24, 419:17, 427:7,
447:12, 479:13, 494:14, 518:4,
526:25, 537:6, 548:19, 556:16,
563:15, 567:4, 574:13, 586:6, 595:6,
612:17
**bags** [1] - 453:18
**balance** [2] - 401:2, 401:25
**bank** [2] - 505:6, 505:7
**bargaining** [2] - 332:11, 370:1
**base** [1] - 390:8
**based** [59] - 313:8, 315:2, 316:7,
319:10, 320:3, 322:6, 322:7, 324:10,
332:25, 337:10, 348:2, 350:2, 358:3,
362:6, 365:18, 366:17, 369:15,
380:22, 390:8, 392:21, 395:6, 406:19,
407:16, 411:7, 412:5, 413:6, 413:7,
413:9, 416:23, 428:16, 434:24, 436:9,
437:16, 443:9, 444:4, 451:12, 453:23,
477:4, 485:11, 494:21, 501:9, 502:12,
505:20, 517:13, 520:19, 524:4, 527:4,
530:20, 534:3, 537:11, 544:20,
562:23, 563:19, 565:17, 567:5,
578:13, 584:2, 584:6, 603:2

**basic** [1] - 400:6
**basis** [7] - 317:11, 393:11, 393:24, 403:18, 403:23, 443:10, 462:21
**batch** [5] - 307:12, 307:13, 422:1, 543:17, 574:7
**bathroom** [3] - 331:13, 346:19, 347:6
**Batson** [1] - 621:15
**became** [1] - 332:11
**become** [1] - 551:16
**becoming** [1] - 324:21
**BEFORE** [1] - 302:12
**beg** [1] - 510:14
**begging** [1] - 523:6
**begin** [1] - 567:13
**beginning** [1] - 351:18
**behalf** [1] - 603:20
**behavior** [1] - 434:15, 550:8
**behind** [6] - 364:4, 453:22, 522:25, 525:4, 525:6, 566:12
**belief** [3] - 412:15, 438:18, 498:4
**beliefs** [4] - 497:23, 517:3, 563:22, 596:19
**believable** [1] - 398:12
**bench** [1] - 529:9
**benefit** [5] - 580:11, 580:14, 581:17, 581:22, 582:14
**benefiting** [1] - 583:11
**Benz** [2] - 522:19, 523:9
**best** [11] - 320:16, 381:7, 400:14, 485:24, 486:1, 497:14, 524:16, 533:7, 534:12, 551:18, 565:15
**better** [16] - 346:5, 349:1, 349:4, 356:23, 376:19, 394:13, 400:12, 431:9, 457:12, 481:14, 510:24, 528:16, 529:4, 529:5, 529:13, 574:15
**between** [9] - 311:25, 332:10, 339:6, 416:25, 467:11, 468:19, 476:8, 488:12, 551:3
**beyond** [47] - 326:18, 329:23, 350:20, 351:6, 352:6, 352:7, 356:18, 363:12, 368:12, 375:13, 389:8, 389:18, 409:2, 412:8, 412:12, 412:14, 413:22, 414:1, 417:11, 418:17, 436:16, 448:10, 448:20, 457:24, 464:12, 475:2, 489:19, 492:24, 504:14, 506:19, 535:25, 545:5, 558:3, 558:17, 562:24, 565:22, 565:24, 569:16, 569:24, 572:5, 584:5, 594:3, 598:7, 600:24, 608:8, 608:15, 615:8
**bias** [11] - 344:9, 344:10, 432:9, 432:10, 463:2, 478:7, 501:21, 502:14, 534:2, 534:11, 534:14
**biased** [13] - 401:20, 403:6, 404:8, 404:10, 408:22, 408:23, 408:25, 432:11, 478:3, 478:15, 521:19, 524:8, 603:17
**biases** [1] - 482:7
**bible** [2] - 588:12, 588:14
**Biden** [1] - 537:17
**big** [1] - 315:20

**bigger** [1] - 571:23
**billing** [1] - 385:19
**bills** [4] - 317:10, 418:22, 471:10, 605:14
**biopsy** [1] - 612:21
**bit** [41] - 313:24, 320:8, 330:25, 360:5, 362:1, 374:22, 376:19, 399:1, 409:10, 409:14, 411:11, 416:17, 416:19, 428:23, 430:3, 430:6, 430:13, 432:7, 435:8, 455:9, 455:17, 475:25, 477:9, 478:2, 478:11, 478:15, 511:22, 519:1, 528:17, 529:1, 531:1, 537:15, 550:9, 551:5, 555:19, 557:1, 557:25, 567:9, 583:18, 605:15, 616:3
**bladder** [1] - 346:12
**blank** [3] - 572:19, 573:9, 573:10
**blood** [1] - 425:11
**blue** [1] - 388:11
**board** [2] - 412:2, 568:23
**Board** [4] - 311:14, 496:25, 497:2, 497:4
**body** [1] - 555:20
**book** [1] - 423:20
**booked** [6] - 428:24, 460:13, 460:20, 491:15, 492:8
**books** [2] - 423:17, 423:19
**boring** [1] - 503:2
**boss** [3] - 560:22, 561:7, 562:6
**Boston** [2] - 540:12, 541:2
**bother** [2] - 411:10, 411:15
**bothers** [1] - 537:19
**bottle** [1] - 550:17
**bought** [3] - 522:18, 522:20, 541:6
**box** [3] - 328:23, 566:11, 622:11
**boxes** [1] - 522:17
**boyfriend** [1] - 576:6
**brain** [1] - 420:3
**brand** [2] - 522:18, 523:9
**break** [13] - 305:3, 331:17, 384:13, 384:14, 384:16, 399:24, 404:11, 411:19, 527:24, 528:1, 556:3, 571:12
**breaking** [1] - 465:18
**breaks** [4] - 331:13, 331:18, 346:19, 379:17
**breathe** [1] - 591:20
**breathing** [4] - 550:20, 555:21, 555:22, 555:23
**breaths** [1] - 556:7
**BREON** [1] - 302:16
**bright** [1] - 555:20
**bring** [12] - 349:24, 361:23, 373:24, 375:23, 377:23, 454:25, 472:6, 472:23, 487:10, 544:15, 555:22, 611:12
**bringing** [8] - 349:5, 362:10, 363:10, 391:25, 413:2, 458:7, 458:19, 502:10
**Broad** [1] - 303:2
**Broadway** [1] - 303:5
**broke** [1] - 565:1
**broken** [2] - 406:24, 610:8

**Bronxville** [1] - 550:3
**Brooklyn** [6] - 302:6, 302:18, 522:8, 550:3, 553:3, 553:14
**brother** [13] - 371:4, 371:20, 372:10, 372:11, 372:12, 372:14, 372:16, 372:19, 372:21, 373:9, 557:3, 575:21, 608:18
**brother's** [1] - 541:20
**brother-in-law** [4] - 371:4, 371:20, 372:19, 608:18
**brought** [17] - 305:25, 308:22, 356:13, 357:9, 357:10, 357:12, 357:16, 362:5, 362:9, 362:15, 362:21, 363:17, 374:2, 409:24, 506:3, 611:1, 622:7
**buckled** [1] - 522:24
**Buddhist** [1] - 447:23
**building** [2] - 505:3, 505:5
**bunch** [3] - 309:1, 426:19, 550:16
**burden** [18] - 326:16, 326:17, 329:19, 329:22, 350:21, 364:17, 364:22, 365:10, 365:14, 366:9, 368:5, 413:20, 413:21, 413:25, 464:10, 533:8, 558:17, 615:7
**burn** [2] - 465:16, 465:22
**burned** [1] - 471:11
**burnout** [2] - 571:24
**burnt** [1] - 570:6
**business** [7] - 338:11, 338:20, 340:2, 430:14, 504:24, 509:20, 509:21
**but...** [1] - 435:17
**buy** [2] - 389:13, 522:13
**BY** [4] - 302:18, 302:23, 303:3, 303:6

## C

**Cadman** [1] - 302:17
**Cain** [1] - 304:18
**calculations** [1] - 618:22
**Canarsie** [1] - 522:14
**cancel** [3] - 595:9, 596:3, 596:7
**canceled** [2] - 596:4, 607:19
**candor** [4] - 365:21, 399:21, 481:23, 548:11
**cannot** [13] - 339:3, 382:17, 398:23, 446:16, 450:9, 450:11, 450:12, 450:17, 545:4, 568:4, 595:22, 596:3, 615:16
**capacity** [1] - 319:1
**car** [8] - 406:23, 522:7, 522:18, 522:21, 522:23, 551:12, 604:8
**care** [8] - 313:13, 365:23, 384:1, 386:17, 431:15, 462:22, 481:14, 481:16
**careers** [1] - 614:10
**carefully** [1] - 438:24
**caring** [1] - 604:7
**cars** [2] - 406:24, 408:19
**cartel** [2] - 315:20, 534:6
**cartels** [1] - 534:8
**Carter** [3] - 424:3, 424:9
**case** [261] - 312:2, 314:23, 315:17,

315:18, 316:14, 319:4, 319:10,
319:12, 321:2, 322:11, 322:20,
324:23, 325:21, 328:11, 329:14,
329:22, 330:3, 330:13, 331:22, 332:6,
332:18, 333:12, 333:14, 333:20,
335:14, 336:2, 336:3, 340:23, 341:7,
342:9, 342:12, 342:24, 343:18, 344:6,
346:9, 350:12, 350:25, 355:4, 356:16,
357:9, 357:10, 357:12, 358:10,
358:11, 358:25, 359:14, 359:15,
362:5, 362:9, 362:11, 362:15, 362:16,
363:10, 363:11, 369:7, 369:9, 369:10,
371:8, 371:12, 371:16, 372:25,
373:23, 374:1, 374:2, 374:21, 375:13,
375:19, 375:23, 377:14, 383:24,
384:5, 384:24, 386:10, 386:13,
388:16, 390:14, 391:5, 391:12,
391:14, 391:15, 391:18, 391:25,
392:1, 393:3, 393:4, 394:22, 394:24,
395:1, 399:8, 400:5, 401:10, 401:20,
407:5, 407:7, 407:9, 407:11, 407:13,
407:18, 407:23, 407:24, 408:2, 408:3,
408:4, 408:5, 408:7, 408:17, 408:18,
408:20, 409:1, 409:3, 409:23, 409:24,
412:5, 412:22, 413:2, 413:3, 425:9,
428:20, 431:25, 432:19, 434:23,
435:10, 435:11, 438:19, 439:1,
443:15, 452:19, 454:4, 457:21, 458:7,
458:10, 458:16, 458:19, 459:7, 461:7,
461:12, 462:17, 463:6, 464:3, 464:11,
471:14, 475:2, 478:1, 480:3, 480:11,
480:20, 481:20, 482:6, 482:12,
484:14, 484:22, 498:7, 499:24,
501:17, 502:9, 502:18, 503:4, 503:19,
503:24, 503:25, 504:9, 504:10,
504:13, 504:21, 505:25, 506:3,
506:16, 506:19, 506:22, 508:4, 508:5,
508:7, 508:22, 509:4, 509:22, 512:5,
512:19, 513:5, 516:16, 516:17, 519:3,
524:2, 524:4, 525:2, 533:22, 535:4,
535:16, 535:19, 535:25, 536:4, 536:7,
537:21, 541:23, 542:2, 542:14, 543:5,
545:4, 545:8, 545:16, 545:25, 546:9,
547:19, 549:9, 552:16, 552:25, 559:2,
562:15, 562:20, 562:21, 562:24,
565:6, 565:16, 565:20, 571:2, 571:9,
571:19, 572:3, 575:5, 576:2, 576:9,
576:12, 577:3, 577:5, 577:25, 578:7,
578:11, 578:24, 581:10, 584:5,
592:11, 594:5, 598:7, 600:6, 600:10,
600:11, 600:15, 600:22, 600:23,
601:5, 601:8, 603:8, 603:22, 604:1,
604:5, 604:25, 608:8, 608:15, 609:8,
609:12, 610:24, 611:14, 615:1, 619:6,
620:4, 620:9
**cases** [11] - 370:10, 391:12, 397:15,
406:25, 407:1, 408:15, 435:12, 439:3,
549:8, 555:4, 600:13
**Castro** [5] - 304:22, 403:18, 428:9,
514:2, 606:10
**CASTRO** [186] - 302:21, 302:23, 304:21,

305:22, 306:21, 308:1, 308:6, 308:18,
309:1, 309:7, 309:11, 309:15, 309:19,
309:24, 310:5, 310:8, 310:11, 312:16,
314:14, 319:15, 323:20, 325:24,
338:2, 338:11, 343:4, 343:9, 343:11,
347:4, 347:8, 347:17, 350:15, 352:20,
353:4, 353:8, 355:13, 356:2, 356:20,
357:2, 357:14, 357:21, 359:7, 361:15,
366:5, 376:25, 380:1, 380:11, 382:22,
383:6, 384:7, 384:14, 384:18, 390:12,
396:21, 399:16, 400:18, 404:16,
404:19, 405:22, 406:6, 406:14,
410:12, 410:19, 410:22, 413:19,
414:18, 415:9, 417:20, 419:3, 419:10,
421:12, 422:2, 423:22, 426:8, 426:19,
426:22, 426:25, 428:5, 436:4, 436:25,
438:2, 438:10, 439:24, 442:21,
442:25, 443:23, 444:12, 446:13,
446:17, 446:20, 446:25, 447:4,
449:13, 450:23, 453:11, 459:17,
459:20, 460:23, 464:16, 466:2, 471:6,
472:15, 472:17, 472:21, 474:22,
476:22, 479:6, 486:4, 486:23, 486:25,
487:4, 487:7, 490:8, 499:15, 507:21,
512:21, 512:24, 513:8, 513:11,
513:14, 513:19, 513:23, 514:7,
514:18, 514:25, 515:4, 515:8, 526:11,
526:21, 527:18, 529:5, 529:25, 530:5,
530:7, 530:10, 536:10, 536:23,
539:14, 543:8, 543:11, 543:21,
543:25, 544:3, 544:6, 544:10, 548:10,
562:9, 566:19, 567:15, 570:19,
570:22, 571:5, 571:21, 572:10,
572:13, 572:16, 573:16, 573:20,
574:1, 574:3, 578:19, 579:15, 585:2,
591:7, 594:7, 594:22, 596:10, 602:4,
602:8, 602:14, 602:18, 602:20,
606:11, 609:6, 612:8, 616:21, 617:1,
617:7, 620:5, 620:21, 621:2, 621:9,
621:11, 621:24, 622:18, 623:2, 623:6
**CAT** [3] - 573:22, 595:10, 595:25
**cataract** [1] - 425:12
**catch** [2] - 374:19, 605:25
**CAUSE** [1] - 302:12
**caused** [2] - 505:24, 555:5
**causes** [4] - 318:15, 328:23, 552:25,
577:13
**causing** [2] - 457:20, 529:10
**caveat** [1] - 400:11
**caveated** [2] - 400:8, 438:16
**Celtic's/Knicks'** [1] - 540:13
**Celtics** [1] - 540:25
**center** [1] - 332:8
**CEO** [1] - 311:13
**certain** [24] - 318:18, 318:19, 337:22,
370:15, 394:3, 394:16, 427:16,
433:17, 435:11, 477:20, 477:21,
485:22, 517:4, 519:14, 520:24,
520:25, 546:17, 546:22, 550:18,
553:22, 561:19, 562:18, 593:9, 618:7

**certainly** [2] - 350:8, 472:6
**CESAR** [2] - 302:21, 302:23
**Cesar** [1] - 304:21
**chair** [26] - 310:20, 313:3, 318:6, 324:6,
327:5, 329:7, 384:23, 419:18, 422:8,
427:8, 447:13, 449:22, 451:8, 453:18,
479:13, 494:15, 494:16, 518:4, 537:7,
548:19, 556:16, 563:15, 567:4,
574:13, 591:16, 612:18
**Chairman** [1] - 312:9
**challenge** [5] - 355:24, 428:23, 429:17,
430:10, 620:17
**challenged** [1] - 485:1
**challenges** [3] - 621:14, 621:15, 622:10
**challenging** [23] - 429:11, 433:9,
433:23, 438:13, 439:17, 441:7, 483:5,
484:17, 485:5, 549:6, 549:10, 549:12,
550:2, 550:5, 550:7, 550:9, 550:14,
550:25, 551:6, 551:21, 552:10,
552:12, 552:15
**chambers** [1] - 445:15
**chambers'** [1] - 306:18
**chance** [3] - 330:6, 363:6, 420:4
**change** [7] - 405:14, 466:25, 467:8,
509:23, 605:23, 607:9, 607:14
**changed** [3] - 351:22, 614:9, 614:11
**Chapo** [7] - 504:17, 508:4, 534:6, 542:1,
542:5, 553:2, 553:13
**Chapo's** [1] - 553:8
**characterized** [1] - 318:14
**charge** [3] - 340:4, 434:23, 523:3
**charged** [6] - 351:7, 362:23, 393:7,
509:5, 514:12, 565:21
**charges** [9] - 342:12, 363:17, 373:24,
506:3, 514:1, 514:11, 516:5, 541:21,
611:1
**chart** [2] - 616:16, 621:5
**cheap** [1] - 340:2
**check** [8] - 306:7, 327:21, 327:22,
328:22, 466:10, 530:11, 536:13, 618:8
**checked** [5] - 379:11, 466:11, 558:5,
572:23, 592:19
**checking** [1] - 486:17
**child** [1] - 315:12
**childcare** [2] - 313:10, 337:11, 384:3
**children** [8] - 412:19, 497:1, 530:24,
531:6, 532:13, 533:11, 550:8, 577:17
**Chinese** [1] - 381:17
**choice** [2] - 465:8, 474:13
**cholesterol** [1] - 425:12
**choose** [2] - 475:6, 475:7
**choosing** [1] - 322:5
**chose** [1] - 470:25
**chosen** [1] - 524:16
**Christmas** [3] - 455:11, 526:1, 540:13
**chronic** [1] - 425:17
**church** [3] - 588:7, 588:8, 588:9
**circled** [1] - 604:15
**circumstance** [3] - 320:13, 401:11,
511:18

**circumstances** [3] - 320:23, 394:16, 583:5
**CIS** [1] - 342:25
**citizen** [1] - 455:6
**citizens** [1] - 522:12
**Citizenship** [1] - 343:1
**City** [4] - 311:21, 312:9, 504:17, 504:20
**civic** [1] - 430:24
**civil** [9] - 329:14, 487:22, 503:24, 504:9, 542:19, 576:12, 600:10, 600:22, 615:4
**civilian** [1] - 367:3
**claimed** [1] - 611:11
**clarification** [4] - 328:9, 328:23, 441:12, 596:12
**clarify** [7] - 343:8, 402:15, 472:9, 513:15, 515:11, 515:23, 583:17
**clarifying** [3] - 326:11, 583:18, 585:3
**clarity** [2] - 353:24, 475:18
**class** [1] - 386:15
**claustrophobia** [1] - 551:9
**claustrophobic** [1] - 551:1
**clean** [1] - 392:1
**clear** [10] - 353:23, 353:25, 392:5, 471:16, 471:19, 472:25, 485:16, 593:19, 602:11, 608:9
**clearer** [1] - 476:2
**clearly** [4] - 354:5, 438:20, 471:1, 552:6
**clerk** [1] - 443:8
**CLERK** [1] - 357:17
**client** [2] - 513:1, 513:8
**clocked** [1] - 374:6
**close** [9] - 313:23, 322:17, 378:6, 424:18, 452:15, 452:24, 495:17, 496:1, 496:6
**closed** [1] - 522:15
**closely** [1] - 401:23
**closer** [2] - 422:8, 557:1
**closing** [1] - 571:1
**closings** [1] - 571:3
**CNN** [1] - 423:10
**coast** [2] - 428:23, 429:25
**coat** [15] - 310:19, 313:2, 318:5, 324:5, 327:5, 329:7, 331:5, 338:18, 346:5, 380:19, 384:24, 427:7, 447:12, 449:22, 494:14
**cocaine** [18] - 333:13, 333:21, 412:22, 412:24, 432:20, 464:1, 508:18, 509:5, 509:6, 535:17, 535:19, 535:21, 535:23, 535:24, 536:4, 577:4
**Cogan** [22] - 307:19, 308:4, 325:15, 325:17, 331:15, 378:11, 379:1, 385:23, 386:4, 454:18, 454:19, 484:6, 503:4, 519:14, 519:16, 520:2, 520:5, 521:1, 521:5, 526:4, 535:10, 622:15
**Cogan's** [2] - 445:15, 503:8
**coke** [1] - 589:9
**colleagues** [2] - 304:17, 623:12
**college** [3] - 451:16, 541:21, 587:25
**Colombia** [1] - 478:13

**Columbia** [1] - 405:9
**comfortable** [21] - 310:21, 320:2, 327:9, 337:9, 338:20, 346:7, 385:3, 402:20, 404:25, 453:20, 479:15, 494:16, 494:20, 518:5, 522:10, 537:7, 544:22, 556:24, 591:18, 595:7, 601:5
**comforting** [1] - 554:19, 556:6
**coming** [16] - 312:7, 321:5, 334:16, 338:21, 352:3, 353:25, 392:20, 419:25, 442:10, 505:20, 540:9, 551:5, 552:24, 567:22, 606:22, 612:21
**comment** [1] - 498:10
**commission** [1] - 311:11
**Commission** [1] - 311:22
**commit** [2] - 455:3, 525:22
**committed** [7] - 362:23, 429:12, 433:11, 433:17, 440:12, 440:17, 448:21, 485:12, 583:5, 583:6, 583:15, 596:24
**committing** [3] - 363:5, 409:25, 575:22
**communicate** [2] - 381:4, 586:18
**communication** [1] - 382:8
**communities** [1] - 577:13
**community** [4] - 514:5, 515:2, 565:4, 588:7
**commute** [1] - 465:4
**commuting** [1] - 334:10
**company** [6] - 317:1, 429:12, 430:7, 504:24, 527:7, 576:13
**compare** [1] - 391:21
**comparing** [2] - 391:10, 391:13
**complete** [4] - 507:24, 528:8, 528:21, 617:24
**completely** [1] - 404:8
**complicated** [2] - 403:2, 518:23
**compound** [2] - 356:21, 522:22
**comprehension** [2] - 486:14, 486:15
**computate** [1] - 455:2
**concept** [1] - 368:20
**concepts** [1] - 402:7
**concern** [14] - 328:23, 331:12, 336:10, 356:8, 363:15, 363:25, 364:8, 403:7, 411:23, 448:1, 474:5, 474:9, 477:22, 553:1
**concerned** [5] - 402:17, 435:14, 443:15, 581:18, 611:23
**concerning** [2] - 497:23, 553:7
**concerns** [8] - 316:4, 380:25, 430:22, 440:23, 521:16, 553:5, 574:5, 577:9
**concluded** [1] - 466:22
**conclusion** [1] - 483:12
**concrete** [2] - 389:7, 389:9
**concur** [1] - 347:18
**conduct** [1] - 514:12
**confer** [2] - 445:12, 593:21
**conference** [4] - 335:22, 343:13, 390:23, 392:12
**conferred** [1] - 308:14
**confess** [1] - 417:4

**confidence** [1] - 400:16
**confidently** [1] - 441:13
**confirm** [2] - 306:20, 466:13
**confirmed** [2] - 316:22, 568:8, 568:9
**conflict** [3] - 485:7, 485:8, 485:14
**Conflict** [1] - 485:10
**confused** [2] - 355:1, 392:10
**confusing** [4] - 328:22, 460:3, 519:6, 583:18
**confusion** [1] - 366:9
**connection** [1] - 438:17
**conscious** [1] - 534:14
**consequence** [1] - 470:23
**consequences** [1] - 305:14
**consider** [12] - 306:10, 322:2, 335:18, 335:19, 336:8, 391:4, 512:1, 535:11, 535:12, 547:7, 582:24, 583:14
**consideration** [3] - 404:9, 547:1, 580:24
**considerations** [1] - 434:18
**considered** [1] - 362:7
**considering** [1] - 465:4
**constant** [1] - 510:1
**consume** [1] - 555:1
**consumed** [1] - 577:15
**consuming** [1] - 555:6
**contact** [12] - 339:23, 385:13, 385:22, 496:9, 496:14, 496:17, 496:18, 501:14, 609:5, 609:24, 610:3, 610:6
**contacting** [1] - 307:7
**context** [1] - 439:13
**continually** [1] - 550:11
**continue** [4] - 427:21, 442:12, 490:5, 617:15
**continued** [3] - 387:6, 531:20, 619:7
**Continued** [4] - 303:1, 345:7, 423:24, 444:15, 469:15, 500:7, 559:9, 585:11
**Continuing** [5] - 388:1, 424:1, 470:1, 560:1, 620:1
**continuing** [1] - 532:1
**control** [2] - 427:16, 431:18
**controlled** [1] - 535:16
**conversation** [2] - 381:5, 403:15
**conversationally** [2] - 415:12, 415:14
**Conversationally** [1] - 415:13
**conversely** [1] - 434:8
**converted** [1] - 505:6
**conveyed** [1] - 622:3
**convict** [13] - 363:11, 417:10, 434:24, 435:2, 436:8, 436:16, 464:7, 583:20, 584:1, 584:6, 596:18, 597:16, 598:9
**convicted** [1] - 372:25
**conviction** [2] - 480:3, 562:23
**convince** [2] - 375:13, 457:24
**convinced** [4] - 448:20, 584:9, 584:20, 598:9
**convinces** [1] - 389:18
**convincing** [2] - 364:16, 539:8
**cook** [2] - 497:1, 526:2
**cooperating** [23] - 335:14, 369:22,

370:25, 389:21, 400:7, 402:5, 434:25, 435:4, 436:8, 436:9, 439:15, 440:9, 440:13, 441:3, 545:23, 581:3, 582:12, 582:23, 583:4, 584:3, 596:18, 596:20, 596:22

**cooperation** [3] - 327:17, 335:17, 580:5
**cooperator** [1] - 438:13
**cooperator's** [1] - 438:15
**cooperators** [1] - 439:5
**coordinator** [1] - 527:17
**cop** [2] - 321:16, 522:25
**COPD** [1] - 431:13
**cops** [4] - 409:18, 410:2, 589:10, 589:12
**corner** [2] - 505:2, 511:8
**corporate** [3] - 489:11, 493:17, 568:3
**Correct** [3] - 414:2, 491:11, 569:2
**correct** [33] - 306:21, 306:22, 333:19, 334:5, 356:15, 358:7, 358:23, 368:23, 375:24, 376:7, 395:20, 437:17, 442:22, 461:20, 462:8, 470:16, 530:8, 538:15, 546:4, 553:23, 554:8, 554:24, 563:25, 565:9, 606:23, 607:1, 608:19, 610:16, 612:5, 614:24, 616:11, 618:22
**correction** [4] - 305:17, 574:22, 574:24, 574:25
**correction's** [1] - 482:20
**correctly** [1] - 473:1
**corroborate** [1] - 396:9
**corroboration** [1] - 396:3
**corrupt** [4] - 412:19, 513:2, 514:21, 515:2
**corruption** [6] - 506:8, 506:17, 513:4, 514:17, 514:20, 515:18
**cough** [1] - 411:9
**coughing** [1] - 411:13
**counsel** [1] - 304:13
**count** [1] - 443:23
**countries** [1] - 505:13
**country** [5] - 321:5, 321:16, 484:18, 505:20, 534:21
**counts** [3] - 340:6, 393:6, 482:22
**couple** [35] - 304:25, 309:10, 313:7, 314:17, 318:7, 320:3, 323:3, 331:6, 337:9, 346:7, 366:16, 392:15, 416:15, 440:2, 443:19, 445:11, 446:2, 452:14, 486:12, 490:24, 515:23, 518:21, 530:20, 533:19, 541:8, 552:21, 553:4, 569:4, 569:25, 580:1, 580:8, 586:24, 587:9, 596:14, 607:25
**course** [25] - 317:5, 331:17, 354:11, 355:14, 364:13, 370:3, 371:13, 393:13, 393:14, 443:13, 454:14, 459:5, 464:13, 465:2, 485:21, 508:5, 509:9, 515:4, 519:11, 527:13, 571:4, 580:17, 606:7, 608:16
**Court** [20] - 303:7, 303:8, 308:3, 330:6, 331:17, 334:7, 334:9, 335:6, 400:4, 403:21, 407:16, 407:17, 415:1, 415:24, 419:24, 454:24, 460:15, 471:9, 548:25, 561:7

**COURT** [1686] - 302:1, 304:24, 305:24, 306:23, 308:5, 308:7, 308:17, 308:20, 309:5, 309:9, 309:12, 309:14, 309:18, 309:21, 309:23, 309:25, 310:2, 310:4, 310:7, 310:10, 310:15, 310:18, 310:24, 311:3, 311:7, 311:18, 311:23, 312:1, 312:6, 312:11, 312:18, 312:21, 312:24, 313:1, 313:7, 313:15, 313:18, 313:25, 314:2, 314:8, 314:11, 314:17, 314:22, 315:3, 315:6, 315:9, 315:14, 315:21, 315:23, 316:1, 316:3, 316:7, 316:10, 316:13, 316:19, 316:24, 317:2, 317:7, 317:13, 317:15, 317:19, 317:21, 317:24, 318:1, 318:5, 318:14, 318:22, 319:2, 319:6, 319:10, 319:14, 319:17, 319:20, 319:23, 319:25, 320:8, 320:12, 320:16, 320:18, 320:25, 321:10, 321:18, 321:21, 321:23, 322:5, 322:13, 322:16, 323:5, 323:12, 323:21, 323:25, 324:2, 324:5, 324:8, 324:10, 324:17, 324:20, 324:25, 325:2, 325:7, 325:9, 325:12, 325:14, 325:19, 325:23, 326:1, 326:7, 326:11, 326:14, 326:20, 326:22, 327:4, 327:7, 327:12, 327:17, 328:1, 328:4, 328:8, 328:13, 328:16, 328:18, 328:21, 329:3, 329:6, 329:10, 329:13, 329:18, 329:22, 329:25, 330:2, 330:5, 330:10, 330:12, 330:16, 330:18, 330:24, 331:1, 331:3, 331:5, 331:9, 331:12, 331:15, 331:20, 331:24, 332:2, 332:5, 332:15, 332:17, 332:21, 332:24, 333:3, 333:6, 333:8, 333:12, 333:17, 333:20, 333:23, 333:25, 334:3, 334:6, 334:11, 334:15, 334:18, 334:21, 334:25, 335:4, 335:7, 335:11, 335:21, 335:24, 336:1, 336:7, 336:13, 336:16, 336:20, 336:22, 337:2, 337:6, 337:8, 337:16, 337:18, 337:25, 338:3, 338:7, 338:9, 338:14, 338:18, 338:23, 339:5, 339:8, 339:16, 339:21, 340:8, 340:14, 340:22, 341:2, 341:4, 341:10, 341:16, 341:18, 341:21, 341:23, 342:1, 342:3, 342:6, 342:14, 342:22, 343:2, 343:8, 343:10, 343:12, 343:16, 343:18, 343:24, 344:3, 344:5, 344:12, 344:16, 344:18, 344:20, 344:24, 345:1, 345:5, 346:2, 346:13, 346:17, 346:22, 347:1, 347:3, 347:5, 347:9, 347:12, 347:20, 347:22, 347:25, 348:2, 348:13, 348:16, 348:18, 348:21, 348:25, 349:7, 349:12, 349:16, 349:19, 349:22, 350:1, 350:6, 350:10, 350:14, 350:18, 350:24, 351:2, 351:11, 351:14, 351:18, 351:21, 351:25, 352:4, 352:9, 352:11, 352:14, 352:17, 352:21, 352:23, 353:1, 353:5, 353:7, 353:13, 354:2, 354:4, 354:10, 354:14, 355:12, 355:25, 356:25, 357:7, 357:15, 357:18, 357:22, 357:25, 358:3, 358:8,

358:13, 358:16, 358:21, 358:24, 359:2, 359:8, 359:12, 359:15, 359:19, 359:22, 359:25, 360:5, 360:8, 360:11, 360:13, 360:16, 360:19, 360:23, 361:2, 361:4, 361:8, 361:11, 361:14, 361:17, 361:20, 361:23, 362:1, 362:5, 362:14, 363:7, 363:10, 363:14, 363:20, 363:24, 364:7, 364:10, 364:14, 364:17, 364:20, 364:24, 365:3, 365:6, 365:9, 365:13, 365:16, 365:20, 365:24, 366:3, 366:6, 366:8, 366:12, 366:16, 366:19, 367:5, 367:10, 367:13, 367:16, 367:19, 367:21, 367:24, 368:5, 368:8, 368:10, 368:17, 368:20, 368:23, 369:1, 369:5, 369:12, 369:14, 369:17, 369:20, 369:24, 370:4, 370:10, 370:14, 370:23, 370:25, 371:3, 371:8, 371:11, 371:16, 371:19, 372:1, 372:4, 372:7, 372:11, 372:13, 372:17, 372:19, 372:21, 372:25, 373:3, 373:6, 373:8, 373:12, 373:15, 373:21, 374:5, 374:9, 374:12, 374:14, 374:18, 374:21, 374:24, 375:1, 375:3, 375:6, 375:10, 375:17, 375:19, 375:22, 375:25, 376:2, 376:4, 376:8, 376:11, 376:15, 376:19, 376:24, 377:1, 377:3, 377:6, 377:10, 377:16, 377:20, 377:22, 378:2, 378:5, 378:8, 378:11, 378:15, 378:20, 378:22, 378:25, 379:5, 379:7, 379:11, 379:14, 379:16, 379:22, 379:25, 380:3, 380:6, 380:10, 380:13, 380:16, 380:18, 380:21, 380:24, 381:2, 381:8, 381:12, 381:15, 381:18, 381:21, 381:24, 382:2, 382:4, 382:6, 382:10, 382:15, 382:18, 382:20, 382:24, 383:2, 383:5, 383:9, 383:12, 383:14, 383:17, 383:21, 384:2, 384:6, 384:9, 384:12, 384:16, 384:20, 384:23, 385:2, 385:5, 385:8, 385:11, 385:13, 385:18, 385:21, 386:1, 386:8, 386:12, 386:21, 386:25, 387:3, 387:5, 388:2, 388:5, 388:8, 388:14, 388:25, 389:14, 390:3, 390:6, 390:11, 390:13, 390:16, 390:21, 391:7, 391:19, 392:2, 392:7, 392:11, 392:14, 393:4, 394:7, 394:14, 394:19, 395:1, 395:13, 395:22, 396:2, 396:7, 396:13, 396:18, 396:25, 397:11, 397:17, 397:24, 398:3, 398:5, 398:11, 398:15, 398:17, 398:21, 398:24, 399:12, 399:15, 399:18, 399:21, 399:23, 401:1, 402:9, 403:10, 403:23, 404:2, 404:6, 404:14, 404:17, 404:23, 405:4, 405:7, 405:13, 405:24, 406:2, 406:5, 406:10, 406:13, 406:15, 406:18, 407:3, 407:8, 407:14, 407:21, 408:3, 408:12, 408:23, 409:1, 409:11, 409:14, 409:20, 409:23, 410:4, 410:8, 410:11, 410:14, 410:17, 410:20, 411:1, 411:3, 411:5, 411:14, 411:18, 411:22, 411:25, 412:8,

412:13, 412:18, 412:21, 413:11,
413:14, 413:18, 413:21, 413:24,
414:3, 414:7, 414:14, 414:19, 414:25,
415:3, 415:5, 415:8, 415:11, 415:15,
415:17, 415:19, 415:21, 416:2, 416:5,
416:8, 416:12, 416:15, 416:21, 417:3,
417:8, 417:14, 417:16, 417:19,
417:22, 418:1, 418:3, 418:5, 418:13,
418:15, 418:20, 418:23, 419:1, 419:5,
419:8, 419:16, 419:22, 420:7, 420:11,
420:15, 420:18, 420:20, 420:24,
421:2, 421:5, 421:9, 421:14, 421:18,
421:22, 422:3, 422:5, 422:7, 422:13,
422:16, 422:18, 422:21, 422:24,
423:3, 423:8, 423:10, 423:13, 423:15,
423:17, 423:19, 423:21, 423:23,
424:2, 424:5, 424:7, 424:11, 424:14,
424:16, 424:18, 424:21, 424:23,
425:1, 425:4, 425:8, 425:14, 425:17,
425:19, 425:21, 425:24, 426:2, 426:6,
426:10, 426:13, 426:15, 426:17,
426:21, 426:24, 427:3, 427:5, 427:7,
427:11, 427:20, 427:23, 428:1, 428:3,
428:8, 428:13, 428:15, 428:19, 429:1,
429:6, 429:8, 429:14, 429:19, 429:22,
430:2, 430:5, 430:7, 430:10, 430:17,
430:21, 431:1, 431:4, 431:10, 431:20,
431:23, 432:4, 432:10, 432:16,
432:19, 432:24, 433:13, 433:16,
433:24, 434:3, 434:5, 434:14, 434:18,
434:22, 435:4, 435:7, 435:13, 435:18,
435:20, 435:23, 436:1, 436:7, 436:20,
436:23, 437:3, 437:7, 437:11, 437:15,
437:18, 437:20, 437:22, 437:24,
438:3, 438:20, 439:11, 439:18, 440:2,
440:5, 440:8, 440:11, 440:22, 441:2,
441:6, 441:11, 441:15, 441:17,
441:19, 441:21, 442:1, 442:17,
442:24, 443:2, 443:13, 444:1, 444:13,
445:5, 445:13, 445:17, 445:24,
446:14, 446:18, 446:21, 447:2, 447:6,
447:10, 447:12, 447:16, 447:19,
447:23, 447:25, 448:8, 448:14,
448:19, 448:23, 449:4, 449:8, 449:14,
449:18, 449:20, 449:22, 450:1, 450:4,
450:11, 450:15, 450:21, 450:25,
451:2, 451:5, 451:7, 451:11, 451:22,
451:25, 452:4, 452:8, 452:10, 452:13,
452:19, 453:2, 453:8, 453:10, 453:13,
453:17, 453:22, 454:2, 454:6, 454:10,
454:14, 454:17, 454:23, 455:24,
456:2, 456:6, 456:9, 456:12, 456:15,
456:18, 456:20, 456:22, 457:1, 457:4,
457:7, 457:13, 457:15, 457:23, 458:2,
458:6, 458:10, 458:14, 458:16,
458:21, 459:2, 459:6, 459:9, 459:13,
459:18, 459:21, 459:25, 460:2, 460:5,
460:8, 460:10, 460:15, 460:18,
460:22, 461:1, 461:5, 461:15, 461:18,
461:21, 462:3, 462:6, 462:9, 462:12,
462:15, 463:1, 463:5, 463:9, 463:12,

463:17, 463:20, 463:23, 463:25,
464:6, 464:10, 464:14, 464:17, 465:6,
465:9, 465:17, 465:20, 465:24, 466:1,
466:5, 466:7, 466:13, 466:21, 466:23,
467:11, 467:16, 468:4, 468:8, 468:12,
468:19, 469:1, 469:4, 469:6, 469:12,
470:3, 470:6, 470:9, 470:12, 470:20,
471:12, 471:19, 471:24, 472:10,
472:16, 472:19, 472:23, 472:25,
473:7, 473:11, 473:15, 473:23, 474:2,
474:4, 474:11, 474:16, 474:21,
474:23, 475:1, 475:6, 475:10, 475:13,
475:17, 475:24, 476:6, 476:13,
476:18, 476:21, 476:25, 477:3, 477:6,
477:11, 477:22, 478:4, 478:7, 478:17,
478:22, 479:3, 479:8, 479:12, 479:19,
479:21, 479:24, 480:2, 480:7, 480:9,
480:14, 480:18, 480:24, 481:3, 481:7,
481:10, 481:18, 481:23, 482:3,
482:10, 482:17, 482:22, 483:6,
483:22, 483:25, 484:5, 484:11,
484:21, 485:3, 485:8, 485:13, 485:17,
485:23, 486:3, 486:6, 486:10, 486:12,
486:15, 486:21, 486:24, 487:2, 487:5,
487:8, 487:13, 487:25, 488:5, 488:7,
488:11, 488:16, 489:1, 489:6, 489:17,
489:24, 490:3, 490:11, 490:16,
490:23, 491:3, 491:6, 491:10, 491:18,
491:24, 492:3, 492:14, 492:18,
492:23, 493:2, 493:5, 493:9, 493:13,
493:20, 493:25, 494:4, 494:6, 494:10,
494:12, 494:14, 494:19, 494:24,
495:2, 495:4, 495:8, 495:13, 495:21,
495:24, 496:1, 496:7, 496:13, 496:17,
496:22, 497:2, 497:4, 497:6, 497:8,
497:11, 497:15, 497:17, 498:1, 498:6,
498:12, 498:16, 498:24, 499:4,
499:14, 499:17, 499:21, 499:23,
500:1, 500:4, 501:2, 501:6, 501:8,
501:11, 501:14, 501:16, 501:21,
501:25, 502:3, 502:6, 502:9, 502:12,
502:17, 502:20, 502:24, 503:3, 503:7,
503:10, 503:13, 503:15, 503:18,
503:21, 503:24, 504:2, 504:6, 504:9,
504:13, 504:16, 504:19, 505:12,
505:15, 505:18, 505:23, 506:11,
506:15, 507:3, 507:9, 507:12, 507:15,
507:18, 507:23, 508:1, 508:9, 508:12,
508:17, 508:21, 509:4, 509:8, 509:10,
509:14, 509:18, 509:21, 510:2, 510:7,
510:9, 510:12, 510:18, 510:24, 511:4,
511:9, 511:12, 511:14, 511:18,
511:24, 512:8, 512:13, 512:18,
512:22, 513:7, 513:10, 513:12,
513:15, 513:22, 513:25, 514:3, 514:9,
514:15, 515:3, 515:5, 515:10, 515:20,
515:22, 516:1, 516:5, 516:11, 516:20,
516:22, 516:24, 517:3, 517:10,
517:12, 517:16, 517:19, 517:22,
518:1, 518:3, 518:8, 518:11, 518:13,
518:16, 518:20, 519:1, 519:7, 519:11,

519:19, 520:8, 520:10, 520:14,
520:17, 521:13, 521:15, 521:24,
522:3, 523:19, 523:22, 523:25, 524:3,
524:17, 524:19, 524:23, 525:5, 525:7,
525:10, 525:15, 525:18, 525:20,
525:23, 526:3, 526:9, 526:13, 526:18,
526:22, 526:24, 527:3, 527:6, 527:9,
527:12, 527:15, 527:20, 527:24,
528:5, 528:14, 528:16, 528:19,
528:25, 529:3, 529:7, 529:15, 529:21,
529:24, 530:2, 530:6, 530:9, 530:11,
530:14, 530:18, 531:1, 531:8, 531:11,
531:16, 532:2, 532:6, 532:11, 532:18,
533:1, 533:9, 533:14, 533:18, 533:22,
534:2, 534:5, 534:13, 534:19, 534:25,
535:2, 535:9, 535:14, 535:23, 536:3,
536:6, 536:9, 536:11, 536:16, 536:18,
536:20, 536:22, 536:25, 537:4, 537:6,
537:10, 537:20, 537:25, 538:3, 538:8,
538:12, 538:17, 538:22, 538:25,
539:3, 539:10, 539:15, 539:19,
539:21, 539:23, 540:1, 540:4, 540:6,
540:8, 540:11, 540:14, 540:17,
540:22, 540:25, 541:2, 541:4, 541:7,
541:10, 541:13, 541:16, 541:20,
541:25, 542:4, 542:7, 542:12, 542:16,
542:19, 542:25, 543:3, 543:7, 543:10,
543:13, 543:17, 543:23, 544:1, 544:4,
544:7, 544:11, 544:15, 544:17,
544:19, 545:2, 545:13, 545:19,
545:22, 546:2, 546:5, 546:10, 546:13,
546:16, 546:20, 546:25, 547:3, 547:7,
547:12, 547:21, 547:24, 548:3, 548:6,
548:11, 548:13, 548:16, 548:18,
548:21, 548:24, 549:3, 549:11,
549:14, 549:20, 549:24, 550:13,
550:22, 551:8, 551:12, 551:19, 552:2,
552:7, 552:11, 552:14, 552:21,
552:24, 553:11, 553:13, 553:16,
553:19, 553:21, 553:24, 554:2, 554:6,
554:9, 554:12, 554:22, 554:25, 555:8,
555:11, 555:18, 556:2, 556:5, 556:7,
556:10, 556:12, 556:15, 556:20,
556:22, 557:5, 557:7, 557:9, 557:11,
557:13, 557:15, 557:18, 557:21,
557:23, 557:25, 558:10, 558:12,
558:14, 558:16, 558:24, 560:2, 560:7,
560:13, 560:15, 560:18, 560:23,
560:25, 561:3, 561:6, 561:10, 561:14,
561:18, 561:21, 561:24, 562:4, 562:8,
562:12, 563:2, 563:4, 563:8, 563:11,
563:14, 563:18, 564:1, 564:4, 564:17,
564:19, 565:8, 565:11, 566:4, 566:6,
566:9, 566:20, 566:24, 567:1, 567:3,
567:17, 567:22, 567:24, 568:15,
568:24, 569:3, 569:11, 569:14, 570:4,
570:10, 570:14, 570:21, 571:15,
572:3, 572:12, 572:15, 572:18,
572:23, 573:4, 573:8, 573:18, 573:22,
574:2, 574:7, 574:10, 574:12, 574:21,
575:3, 575:8, 575:12, 575:14, 575:16,

575:19, 575:25, 576:4, 576:8, 576:11,
576:14, 576:17, 576:20, 576:24,
577:3, 577:11, 577:20, 578:16,
578:20, 578:23, 579:3, 579:7, 579:12,
579:16, 579:19, 579:21, 579:25,
580:3, 580:8, 580:17, 580:22, 581:11,
581:14, 581:18, 581:24, 582:11,
582:17, 582:22, 583:1, 583:3, 583:13,
583:17, 584:12, 584:22, 585:3, 585:8,
586:1, 586:3, 586:5, 586:9, 586:14,
586:16, 586:18, 586:20, 586:23,
587:5, 587:8, 587:12, 587:16, 587:18,
587:22, 587:24, 588:1, 588:3, 588:5,
588:9, 588:11, 588:15, 588:17,
588:20, 588:23, 588:25, 589:4,
589:11, 589:14, 589:18, 589:21,
589:25, 590:3, 590:6, 590:10, 590:16,
590:18, 590:20, 590:24, 591:2, 591:5,
591:9, 591:13, 591:15, 591:20,
591:22, 591:25, 592:3, 592:5, 592:8,
592:11, 592:14, 592:17, 592:22,
593:2, 593:5, 593:7, 593:12, 593:16,
593:18, 593:22, 594:1, 594:8, 594:12,
594:14, 594:16, 594:18, 594:25,
595:2, 595:5, 595:14, 595:17, 595:20,
595:23, 596:2, 596:5, 596:9, 596:13,
596:16, 596:24, 597:2, 597:5, 597:8,
597:12, 597:15, 597:18, 597:21,
597:25, 598:3, 598:15, 598:21,
598:23, 599:1, 599:5, 599:8, 599:14,
599:17, 599:21, 599:23, 600:2, 600:4,
600:6, 600:9, 600:13, 600:17, 600:19,
600:21, 601:2, 601:4, 601:7, 601:10,
601:14, 601:16, 601:19, 602:1, 602:3,
602:6, 602:9, 602:13, 602:17, 602:19,
602:22, 602:24, 603:1, 603:4, 603:7,
603:10, 603:14, 603:18, 603:24,
604:3, 604:10, 604:14, 604:21,
604:24, 605:2, 605:8, 605:17, 605:20,
606:1, 606:4, 606:8, 606:10, 606:12,
606:14, 606:16, 606:18, 606:21,
606:24, 607:2, 607:5, 607:9, 607:13,
607:17, 607:21, 607:25, 608:3, 608:6,
608:14, 608:17, 608:20, 608:25,
609:4, 609:9, 609:14, 609:17, 609:20,
609:23, 610:1, 610:10, 610:12,
610:17, 611:1, 611:4, 611:8, 611:14,
611:17, 611:20, 611:23, 612:3, 612:6,
612:9, 612:11, 612:13, 612:15,
612:17, 612:20, 612:24, 613:1, 613:6,
613:10, 613:12, 613:15, 613:19,
613:22, 613:25, 614:2, 614:8, 614:12,
614:15, 614:22, 614:25, 615:4, 615:7,
615:11, 615:13, 615:17, 615:20,
615:23, 616:2, 616:11, 616:16,
616:22, 617:2, 617:8, 617:14, 617:17,
618:21, 620:8, 620:23, 621:4, 621:10,
621:12, 621:25, 622:20, 622:22,
623:4, 623:7, 623:14
**court** [50] - 304:1, 304:8, 304:10,
304:12, 324:13, 324:21, 335:23,

343:14, 351:12, 359:3, 378:16,
379:19, 392:13, 403:9, 406:25,
409:15, 416:8, 416:13, 441:12, 445:2,
452:11, 456:9, 480:2, 491:7, 499:4,
515:21, 517:6, 517:14, 522:6, 524:4,
524:5, 528:4, 540:18, 540:20, 540:21,
542:24, 549:21, 565:18, 586:20,
593:5, 595:24, 598:14, 598:15,
600:20, 600:24, 600:25, 601:5,
601:11, 610:23
**Court's** [2] - 400:14, 438:14
**Courthouse** [1] - 302:5
**courtroom** [47] - 375:8, 399:22, 404:22,
406:4, 406:9, 407:18, 410:16, 411:2,
415:7, 415:16, 417:18, 417:25, 419:7,
419:15, 421:21, 422:6, 426:16,
427:17, 428:2, 437:23, 441:20,
470:11, 472:22, 476:20, 476:24,
478:19, 479:2, 479:11, 486:11,
487:12, 494:9, 494:11, 500:6, 537:2,
539:20, 543:16, 563:12, 563:13,
566:25, 567:2, 567:21, 567:23,
570:18, 574:9, 579:18, 579:20, 585:10
**COURTROOM** [4] - 304:3, 406:12,
445:4, 449:21
**cousin** [10] - 325:10, 525:12, 525:17,
574:23, 574:25, 576:4, 576:5, 578:20,
578:25, 579:8
**cousin's** [1] - 406:23
**cousins** [1] - 314:19
**cover** [7] - 405:17, 468:21, 470:18,
529:3, 529:4, 529:7, 529:12
**coverage** [2] - 451:18, 552:25
**covers** [8] - 309:20, 309:22, 310:13,
410:24, 417:23, 419:13, 427:1, 605:5
**COVID** [7] - 430:8, 430:10, 430:14,
430:15, 450:18, 518:17, 622:24, 623:8
**crazy** [1] - 388:23
**credence** [2] - 398:10, 398:12
**credentials** [1] - 304:10
**credibility** [6] - 323:13, 434:6, 483:7,
538:5, 546:21, 580:19
**credible** [7] - 399:2, 401:15, 461:19,
483:11, 519:13, 582:8, 598:6
**crime** [27] - 321:1, 372:22, 406:23,
409:24, 409:25, 413:1, 416:19,
416:21, 433:11, 433:18, 440:17,
448:21, 495:18, 495:20, 495:22,
495:24, 519:21, 521:10, 554:22,
575:22, 583:6, 583:15, 596:19,
596:24, 598:16, 610:14
**Crime** [1] - 409:13
**crimes** [11] - 363:6, 408:12, 408:15,
409:21, 413:1, 433:4, 440:12, 534:20,
553:24, 555:12, 565:21
**CRIMINAL** [1] - 302:12
**criminal** [33] - 304:3, 314:23, 318:10,
319:4, 329:22, 340:17, 358:10,
377:14, 388:16, 391:9, 407:5, 408:18,
408:19, 412:4, 426:3, 434:15, 454:4,

478:5, 480:11, 480:20, 481:11,
503:24, 504:10, 504:13, 506:1, 576:1,
600:11, 600:23, 604:5, 614:1, 614:2,
614:6, 615:9
**criminals** [1] - 433:6
**critical** [3] - 364:11, 438:5, 462:6
**cross** [1] - 481:22
**crossed** [1] - 608:9
**Crosstalk** [1] - 488:6
**CRR** [1] - 303:7
**CSI** [1] - 416:22
**CT** [1] - 595:18
**curious** [2] - 342:5, 342:7
**curled** [1] - 511:8
**current** [1] - 443:10
**customer** [2] - 503:22, 505:4
**customers** [1] - 381:16
**cut** [1] - 546:9
**cutting** [1] - 581:25

# D

**DA** [1] - 332:10
**dad** [4] - 340:1, 340:4, 340:9, 574:22
**daily** [1] - 462:21
**date** [2] - 595:13, 607:21
**dates** [2] - 339:5, 490:14
**daughter** [4] - 541:6, 587:15, 587:16,
599:19
**day's** [1] - 307:15
**daycare** [2] - 313:16, 313:23
**days** [60] - 317:3, 337:22, 429:2, 455:21,
464:22, 465:15, 466:16, 468:22,
471:9, 471:10, 472:4, 472:6, 473:17,
475:4, 476:8, 487:21, 487:23, 488:14,
488:17, 488:24, 489:4, 489:19,
490:24, 491:18, 491:19, 492:15,
492:16, 492:19, 492:20, 492:24,
492:25, 493:5, 493:6, 493:16, 493:19,
493:23, 493:25, 509:17, 527:9, 531:4,
531:5, 532:4, 561:15, 568:6, 568:21,
568:25, 569:4, 569:8, 571:10, 593:1,
594:3, 605:6, 605:7, 605:17, 613:3,
613:10
**days's** [1] - 316:25
**daytime** [2] - 360:10, 360:11
**De** [1] - 304:21
**DE** [144] - 302:21, 302:23, 304:21,
305:22, 306:21, 308:1, 308:6, 308:18,
309:1, 309:7, 309:11, 309:15, 309:19,
309:24, 310:5, 310:8, 310:11, 312:16,
314:14, 319:15, 323:20, 325:24,
338:2, 338:11, 343:4, 343:9, 343:11,
347:4, 347:8, 347:17, 350:15, 352:20,
353:4, 353:8, 355:13, 356:2, 356:20,
357:2, 357:14, 357:21, 359:7, 361:15,
366:5, 376:25, 380:1, 380:11, 382:22,
383:6, 384:7, 384:14, 384:18, 426:8,
426:19, 426:22, 426:25, 428:5, 436:4,
436:25, 438:2, 438:10, 439:24,

442:21, 442:25, 443:23, 444:12, 446:13, 446:17, 446:20, 446:25, 447:4, 449:13, 450:23, 453:11, 459:17, 459:20, 460:23, 464:16, 466:2, 507:21, 512:21, 512:24, 513:8, 513:11, 513:14, 513:19, 513:23, 514:7, 514:18, 514:25, 515:4, 515:8, 526:11, 526:21, 527:18, 529:5, 529:25, 530:5, 530:7, 530:10, 536:10, 536:23, 539:14, 543:8, 543:11, 543:21, 543:25, 544:3, 544:6, 544:10, 548:10, 562:9, 566:19, 567:15, 570:19, 570:22, 571:5, 571:21, 572:10, 572:13, 572:16, 591:7, 594:7, 594:22, 596:10, 602:4, 602:8, 602:14, 602:18, 602:20, 606:11, 609:6, 612:8, 616:21, 617:1, 617:7, 620:5, 620:21, 621:2, 621:9, 621:11, 621:24, 622:18, 623:2, 623:6

**de** [47] - 390:12, 396:21, 399:16, 400:18, 403:18, 404:16, 404:19, 405:22, 406:6, 406:14, 410:12, 410:19, 410:22, 413:19, 414:18, 415:9, 417:20, 419:3, 419:10, 421:12, 422:2, 423:22, 428:9, 471:6, 472:15, 472:17, 472:21, 474:22, 476:22, 479:6, 486:4, 486:23, 486:25, 487:4, 487:7, 490:8, 499:15, 514:2, 573:16, 573:20, 574:1, 574:3, 578:19, 579:15, 585:2, 601:24, 606:10

**DEA** [4] - 578:20, 578:23, 579:1, 579:3
**deadly** [1] - 462:15
**deal** [14] - 304:25, 332:9, 335:14, 335:16, 335:17, 336:3, 336:5, 336:11, 336:18, 462:20, 462:22, 532:23, 534:13, 570:6
**dealing** [5] - 397:15, 432:14, 513:17, 570:7, 594:20
**Dean** [1] - 304:23
**death** [1] - 571:11
**debilitating** [1] - 427:15
**deceased** [1] - 592:4
**December** [1] - 421:1
**decent** [1] - 605:13
**decide** [25] - 319:10, 351:22, 434:7, 434:9, 456:1, 459:9, 464:1, 498:20, 508:25, 512:2, 514:22, 518:18, 520:21, 520:23, 522:13, 546:3, 559:3, 582:8, 597:13, 597:15, 598:4, 598:5, 598:6, 599:9
**decided** [6] - 393:22, 413:7, 456:20, 502:14, 535:4, 558:20
**decides** [1] - 508:25
**deciding** [4] - 396:12, 400:13, 434:11, 524:3
**decision** [17] - 322:3, 322:5, 373:23, 407:16, 413:12, 455:17, 457:2, 463:20, 511:20, 511:25, 552:18, 565:13, 565:17, 566:1, 566:14, 578:7, 621:18

**decisions** [12] - 355:20, 355:21, 452:1, 456:22, 511:21, 519:12, 522:5, 565:11, 584:14, 618:12, 621:19
**deeds** [1] - 485:12
**deemed** [1] - 304:12
**deep** [1] - 381:5
**deeply** [1] - 438:17
**default** [1] - 356:19
**defend** [1] - 368:3
**defendant** [34] - 302:9, 304:2, 319:7, 322:19, 349:6, 350:3, 350:24, 362:21, 362:22, 364:17, 364:20, 364:25, 365:14, 367:25, 369:8, 393:7, 413:1, 414:3, 445:3, 446:5, 457:21, 458:2, 463:6, 506:4, 515:11, 534:9, 558:18, 558:19, 558:20, 565:21, 578:3, 596:18, 601:23, 608:6
**Defendant** [2] - 302:21, 303:4
**defendant's** [1] - 354:9, 364:15, 516:6
**defense** [10] - 318:10, 370:8, 404:16, 413:8, 414:13, 428:5, 507:21, 571:1, 571:2, 572:16
**defer** [2] - 363:21, 605:16
**deference** [1] - 373:24
**definitely** [9] - 340:25, 341:14, 463:4, 471:24, 475:20, 507:1, 508:8, 549:4, 550:25
**definitive** [3] - 306:13, 308:2, 489:16
**definitively** [1] - 511:3
**degree** [4] - 348:11, 348:13, 348:19, 579:4
**delay** [2] - 446:4, 613:4
**delayed** [1] - 311:19
**delays** [1] - 458:14
**deliberate** [1] - 571:11
**deliberations** [1] - 571:9
**demeanor** [2] - 400:15, 438:17
**dementia** [1] - 531:19
**denial** [1] - 304:11
**denied** [1] - 305:4
**deny** [1] - 572:4
**department** [7] - 311:9, 311:10, 314:20, 322:23, 323:4, 405:17, 622:3
**Department** [5] - 342:11, 343:24, 349:14, 377:8, 377:11
**DEPUTY** [4] - 304:3, 406:12, 445:4, 449:21
**deputy** [2] - 305:20, 456:12
**descent** [1] - 477:8
**describe** [2] - 480:24, 498:17
**described** [4] - 428:9, 441:9, 507:6, 509:22
**description** [1] - 407:8
**desire** [1] - 484:22
**despite** [1] - 552:2
**details** [4] - 318:12, 318:18, 318:21, 461:12
**detention** [1] - 332:8
**deteriorated** [1] - 431:13

**determine** [2] - 391:15, 461:18
**determined** [1] - 413:5
**detrimental** [1] - 451:19
**developed** [1] - 349:19
**devote** [1] - 458:3
**DHS** [2] - 342:22, 342:23
**diabetes** [2] - 346:12, 425:11
**died** [2] - 480:15, 522:2
**differ** [1] - 510:14
**difference** [3] - 363:14, 416:25, 504:11
**different** [35] - 356:4, 356:22, 363:8, 374:22, 386:2, 388:20, 391:12, 391:13, 392:1, 392:2, 392:8, 394:24, 395:1, 397:19, 403:24, 404:8, 416:24, 417:6, 417:7, 441:8, 465:18, 467:13, 505:13, 505:15, 505:16, 505:18, 505:19, 505:20, 512:1, 512:15, 517:6, 517:7, 550:6, 554:10
**differently** [6] - 386:3, 471:16, 482:25, 524:24, 560:3, 584:15
**difficult** [16] - 323:3, 353:8, 365:21, 433:14, 449:1, 449:6, 449:10, 481:25, 517:22, 532:25, 543:4, 552:20, 569:5, 571:17, 586:12, 598:11
**diligently** [1] - 458:17
**diminish** [1] - 484:20
**DIOUF** [1] - 302:20
**Diouf** [1] - 304:17
**directions** [1] - 401:6
**directly** [1] - 354:17
**dirty** [1] - 369:24
**disabled** [1] - 481:17
**disadvantaged** [1] - 550:8
**disapproval** [1] - 335:13
**disassociate** [1] - 551:4
**disbursement** [1] - 535:16
**discrepancy** [1] - 305:7
**discuss** [5] - 470:4, 470:10, 470:13, 570:20, 621:21
**discussed** [1] - 362:11
**discussing** [1] - 470:14
**Discussion** [1] - 530:13
**discussion** [5] - 400:22, 402:13, 403:4, 441:12, 472:17
**discussions** [1] - 570:11
**dishonest** [1] - 356:6
**disintegrated** [1] - 529:8
**dismiss** [1] - 439:20
**dismissed** [1] - 305:10
**dispute** [2] - 514:20, 603:20
**disregard** [1] - 506:10
**distance** [1] - 462:6
**distorted** [1] - 528:24
**distract** [1] - 533:1
**distraction** [1] - 404:1
**distributing** [1] - 509:5
**distribution** [4] - 333:21, 412:23, 432:21, 462:18
**DISTRICT** [2] - 302:1, 302:1

district [1] - 334:18
District [1] - 302:17
divine [2] - 448:4, 448:18
DNA [1] - 598:17
docket [1] - 304:4
doctor [3] - 362:25, 588:3
doctor's [5] - 479:8, 479:16, 567:13, 595:15, 595:23
doctors [1] - 405:18
documentaries [2] - 554:22, 555:12
documents [1] - 523:1
domestic [1] - 383:24
dominating [1] - 318:19
Dominican [1] - 606:24
done [22] - 307:23, 336:11, 404:6, 412:2, 428:4, 439:3, 440:21, 442:7, 478:5, 509:2, 533:2, 533:3, 534:22, 566:6, 569:18, 569:20, 577:14, 580:15, 617:22, 620:22, 622:7
doubt [40] - 326:18, 329:23, 350:21, 352:6, 352:7, 356:18, 363:12, 368:12, 375:13, 389:8, 389:12, 389:18, 409:3, 412:9, 412:12, 412:14, 413:22, 414:1, 417:11, 436:16, 448:10, 448:21, 457:24, 464:12, 504:14, 506:19, 536:1, 540:23, 545:5, 558:3, 558:18, 562:24, 565:22, 565:24, 584:5, 598:8, 600:24, 608:8, 608:15, 615:9
doubts [6] - 360:23, 360:25, 440:23, 537:13, 539:8, 539:10
down [31] - 317:21, 326:7, 329:7, 337:8, 338:18, 346:5, 346:8, 347:12, 366:22, 369:24, 380:19, 382:17, 385:16, 409:14, 409:15, 430:16, 453:14, 460:14, 495:5, 499:18, 526:25, 548:19, 553:21, 566:21, 567:18, 571:22, 580:8, 585:5, 586:6, 587:13, 595:6
downstairs [2] - 306:1, 561:25
dramatic [1] - 417:4
drive [4] - 465:13, 522:7, 522:10, 522:15
driven [1] - 315:19
driving [1] - 523:9
drop [5] - 313:17, 313:21, 314:11, 531:6, 532:13
dropped [1] - 313:22
dropping [1] - 533:10
drove [1] - 604:7
drug [30] - 316:14, 321:1, 371:5, 371:9, 371:14, 371:16, 371:20, 371:22, 372:1, 412:22, 431:19, 431:25, 432:20, 462:17, 462:18, 462:23, 477:12, 484:14, 484:24, 506:17, 508:13, 509:2, 512:5, 534:6, 534:7, 535:21, 541:21, 541:23, 577:23, 578:6
Drug [1] - 304:18
drug-related [1] - 321:1
drugs [25] - 316:11, 321:5, 321:17, 333:13, 333:14, 349:24, 412:19, 412:21, 413:4, 462:16, 463:2, 463:12,

463:16, 463:22, 463:23, 464:6, 484:17, 506:8, 508:14, 509:1, 515:16, 535:15, 576:25, 578:10, 579:9
due [2] - 311:23, 477:12
duration [1] - 470:18
during [14] - 339:1, 346:17, 379:17, 405:16, 408:6, 430:14, 431:14, 480:22, 485:2, 485:21, 515:13, 526:1, 532:10, 571:14
duties [1] - 440:21
duty [34] - 379:8, 430:18, 430:24, 434:1, 455:6, 455:12, 455:13, 465:2, 487:21, 488:21, 488:24, 489:3, 489:19, 492:15, 493:5, 493:7, 493:16, 493:23, 493:25, 527:7, 532:19, 560:10, 560:20, 561:12, 568:6, 568:13, 589:22, 600:14, 605:4, 605:6, 605:11, 605:24

## E

E-mail [1] - 303:9
e-mail [6] - 306:19, 561:6, 561:25, 562:5, 563:9, 590:21
e-mails [2] - 605:25, 618:7
ear [1] - 431:8
early [10] - 313:21, 314:12, 315:12, 403:22, 421:24, 427:12, 427:13, 475:25, 516:8, 569:18
earn [1] - 605:13
ease [2] - 320:16, 564:15
easier [2] - 329:10, 382:21
East [1] - 302:17
EASTERN [1] - 302:1
Eastern [1] - 302:17
easy [2] - 449:5, 456:3
eat [1] - 451:17
echo [1] - 529:2
Ecuador [1] - 478:13
Ed [1] - 496:25
ed [1] - 550:3
Education [2] - 497:2, 497:4
effect [4] - 322:25, 343:9, 531:12, 578:6
effectively [1] - 531:15
effects [3] - 462:16, 463:1, 578:10
efficiently [1] - 446:2
eight [27] - 313:23, 317:3, 317:5, 337:17, 339:18, 359:16, 359:17, 360:14, 379:9, 379:18, 393:5, 408:5, 425:22, 451:15, 455:22, 458:17, 465:22, 476:7, 487:24, 561:15, 571:8, 571:17, 571:18, 571:19, 590:11, 590:24, 605:15
eight-plus [1] - 465:22
eight-week [4] - 360:14, 455:22, 487:24, 590:24
either [12] - 335:6, 339:23, 342:10, 408:15, 410:17, 438:9, 439:5, 465:16, 485:25, 487:11, 589:6, 620:18
EI [8] - 504:17, 508:4, 534:6, 542:1,

542:4, 553:2, 553:8, 553:13
elder [2] - 431:11, 432:19
elderly [1] - 531:19
elected [2] - 403:20, 403:24
elements [1] - 435:11
embarrassing [1] - 427:16
emergency [1] - 556:25
emotional [2] - 432:14, 439:6
emotions [2] - 480:23, 481:2
employ [1] - 431:14
employed [1] - 360:3
employees [1] - 594:3
employer [16] - 306:2, 379:11, 466:19, 466:25, 487:9, 489:16, 490:5, 536:13, 560:15, 590:3, 593:7, 593:8, 593:19, 594:2, 605:5, 615:21
employer's [1] - 492:14
employers [1] - 618:23
end [15] - 306:11, 308:12, 308:15, 318:19, 375:11, 400:22, 443:21, 450:17, 471:25, 519:5, 531:7, 569:20, 618:13, 621:16, 621:19
End [3] - 335:22, 343:13, 392:12
ended [1] - 317:2
ends [2] - 472:17, 515:21
energy [1] - 449:2
enforcement [110] - 322:18, 323:6, 323:7, 324:23, 325:3, 325:4, 339:23, 340:3, 348:4, 348:5, 348:9, 349:17, 349:20, 353:10, 353:16, 354:5, 354:8, 354:19, 354:22, 355:3, 355:17, 356:12, 357:8, 358:9, 358:14, 358:17, 358:22, 362:3, 362:6, 362:7, 362:8, 362:16, 366:20, 366:23, 367:2, 373:16, 373:19, 375:15, 375:23, 377:13, 377:14, 377:16, 377:18, 377:24, 378:3, 401:4, 401:7, 401:8, 402:1, 408:15, 414:10, 414:13, 426:3, 452:20, 454:7, 461:7, 461:10, 461:22, 462:2, 482:22, 482:25, 483:1, 483:3, 483:15, 483:17, 497:23, 497:24, 498:2, 498:25, 499:1, 501:17, 501:19, 501:22, 513:20, 513:21, 513:24, 514:14, 514:15, 515:1, 515:13, 516:8, 524:13, 533:23, 533:24, 535:21, 541:17, 558:25, 559:2, 559:7, 560:3, 574:19, 575:1, 575:4, 575:6, 578:21, 578:24, 589:5, 589:15, 603:8, 603:11, 603:15, 603:16, 608:21, 608:22, 608:23, 609:5, 609:24, 610:3
Enforcement [1] - 304:18
engineer [1] - 575:2
English [16] - 380:25, 381:10, 381:15, 382:6, 416:10, 486:15, 486:16, 495:9, 497:8, 497:9, 497:13, 572:24, 573:11, 586:10, 586:12, 586:16
enjoy [1] - 526:2
enjoyed [1] - 416:18
enjoyment [1] - 554:16
entail [1] - 429:23

enter [3] - 355:21, 370:11, 617:16
entered [3] - 335:16, 336:4, 336:18
enters [59] - 310:17, 312:25, 317:25, 319:22, 324:1, 327:3, 329:5, 331:2, 337:1, 338:13, 343:15, 346:1, 347:21, 357:20, 361:22, 366:11, 377:2, 380:15, 383:11, 384:19, 404:22, 406:9, 411:2, 415:16, 417:25, 419:15, 422:6, 428:12, 447:9, 449:19, 451:6, 453:16, 460:1, 472:22, 476:24, 479:11, 487:12, 494:11, 501:1, 518:2, 526:23, 530:17, 537:3, 544:16, 548:17, 556:14, 563:13, 567:2, 567:23, 574:9, 579:20, 586:2, 591:14, 595:1, 596:25, 599:13, 602:23, 606:15, 612:14
entire [1] - 515:1
entirely [2] - 359:21, 453:7
entitled [1] - 488:24
entry [2] - 304:10, 304:11
environment [4] - 506:6, 509:21, 550:5, 550:6
envision [1] - 469:6
equal [1] - 397:24
equally [2] - 397:8, 401:25
Erin [1] - 304:17
ERIN [1] - 302:19
errors [1] - 489:12
eruption [1] - 553:9
escape [1] - 542:1
especially [6] - 351:5, 416:19, 462:21, 537:14, 549:21, 587:1
ESQ [4] - 302:23, 302:23, 303:3, 303:6
essentially [1] - 531:14
estate [2] - 380:5, 502:22
estimate [1] - 571:4
evasive [1] - 507:17
evening [4] - 541:3, 602:25, 607:6, 618:16
evenings [1] - 313:25
event [4] - 305:12, 401:20, 430:14, 568:24
everyday [2] - 511:19, 584:12
evidence [119] - 316:8, 319:8, 319:11, 322:1, 322:2, 322:7, 322:14, 327:20, 328:6, 329:20, 332:25, 333:1, 342:21, 351:18, 351:21, 368:1, 368:18, 375:4, 389:5, 389:6, 389:7, 389:9, 389:15, 389:16, 389:17, 389:23, 390:1, 390:4, 390:7, 391:10, 391:11, 391:13, 391:14, 394:11, 394:22, 394:23, 395:2, 395:20, 395:23, 396:11, 396:14, 396:22, 397:16, 400:2, 400:4, 400:10, 400:13, 403:1, 407:15, 409:4, 409:8, 412:5, 412:8, 413:6, 414:4, 417:9, 434:22, 436:11, 436:12, 436:14, 436:15, 436:17, 436:21, 437:12, 437:16, 438:18, 439:9, 448:10, 448:20, 455:16, 456:23, 456:25, 457:24, 458:12, 459:12,

463:10, 464:8, 482:5, 485:4, 507:5, 508:7, 512:1, 514:2, 514:4, 516:15, 519:12, 519:14, 520:17, 520:20, 520:23, 524:2, 524:4, 537:14, 542:25, 545:15, 555:14, 558:3, 562:15, 562:25, 565:18, 566:12, 577:25, 582:9, 583:20, 583:23, 583:24, 584:6, 584:9, 584:16, 584:23, 598:17, 598:18, 600:23, 615:8
exact [2] - 329:16, 595:12
Exactly [1] - 392:9
exactly [9] - 320:14, 348:17, 356:10, 456:21, 502:3, 510:19, 522:1, 547:23, 622:25
examination [1] - 598:24
example [8] - 348:14, 391:16, 402:16, 495:15, 537:16, 564:8, 564:23, 572:25
excellent [2] - 333:8, 543:3
Excellent [1] - 419:20
except [1] - 356:21
exceptional [1] - 511:18
exchange [3] - 370:17, 597:5, 597:12
excuse [4] - 306:14, 338:12, 540:3, 617:9
excused [49] - 305:8, 306:23, 312:19, 312:23, 317:19, 323:22, 338:3, 338:5, 347:10, 347:13, 347:15, 365:18, 365:25, 382:25, 383:4, 384:10, 384:11, 405:25, 410:15, 419:5, 421:15, 441:22, 444:3, 450:25, 453:14, 478:23, 478:24, 486:6, 486:8, 499:17, 499:19, 499:21, 527:21, 527:23, 539:15, 539:17, 548:13, 548:15, 566:20, 566:22, 567:18, 585:4, 585:6, 594:17, 598:24, 599:2, 599:6, 599:10, 623:15
Excused [1] - 499:22
executives [1] - 505:6
exercise [5] - 330:22, 364:10, 507:9, 620:11, 622:10
exercises [1] - 550:20
exhausting [1] - 465:23
exist [2] - 394:14, 394:15
exit [3] - 442:16, 555:25, 618:20
exits [49] - 319:19, 323:24, 327:1, 328:20, 330:17, 336:25, 338:8, 345:4, 353:6, 361:19, 376:18, 380:9, 399:22, 406:4, 410:16, 415:7, 417:18, 419:7, 421:21, 426:16, 428:2, 437:23, 441:20, 449:17, 451:4, 453:15, 459:24, 470:11, 476:20, 479:2, 486:11, 494:9, 500:6, 517:25, 526:17, 537:2, 539:20, 543:16, 563:12, 566:25, 567:21, 570:18, 579:18, 585:10, 591:12, 601:18, 606:13, 612:12, 616:6
expect [4] - 342:9, 342:10, 567:11, 571:4
expectations [3] - 391:24, 481:16, 570:25

expected [2] - 487:19, 587:2
expecting [1] - 571:3
expedite [1] - 610:22
expensive [2] - 317:12, 317:14
experience [38] - 315:9, 332:2, 332:17, 340:15, 386:12, 388:15, 408:14, 432:4, 432:8, 432:14, 432:15, 432:17, 449:3, 480:10, 480:18, 503:15, 503:18, 512:10, 512:15, 516:15, 517:5, 517:6, 517:12, 521:23, 524:25, 541:21, 543:4, 550:10, 555:20, 574:6, 576:1, 576:15, 600:17, 604:7, 604:9, 604:11, 614:4, 614:25
experienced [2] - 516:13, 554:19, 554:21
experiences [4] - 407:4, 517:1, 554:18, 589:4
expert [5] - 354:8, 354:11, 355:14, 355:15, 355:16
expertise [11] - 348:6, 348:9, 348:14, 348:22, 348:25, 349:20, 353:16, 354:6, 354:12, 354:16, 373:22
expire [1] - 607:19
expires [1] - 493:7
explain [11] - 320:11, 320:18, 341:12, 481:14, 495:9, 495:11, 495:14, 497:21, 519:1, 545:5, 558:7
explained [3] - 443:8, 523:6, 526:7
explaining [3] - 403:11, 440:18, 519:8
explanation [1] - 428:6
explore [1] - 353:13
exploring [1] - 391:23
express [1] - 335:12
expressed [2] - 336:1, 457:12
extent [4] - 439:12, 514:16, 555:11, 583:10
extra [4] - 444:8, 468:16, 492:12, 622:25
extras [1] - 445:23
eye [2] - 505:11, 505:12
eye-opener [2] - 505:11, 505:12
eyes [1] - 375:20
eyewitness [1] - 395:4

# F

face [3] - 388:9, 388:12, 589:25
Facebook [2] - 588:23, 589:1
fact [36] - 320:25, 322:17, 324:20, 335:15, 342:17, 349:16, 355:4, 355:7, 355:9, 355:18, 358:8, 371:20, 372:21, 373:23, 374:2, 375:22, 377:12, 377:22, 391:1, 391:5, 393:14, 403:3, 407:17, 431:23, 454:2, 477:18, 504:20, 516:3, 519:20, 541:16, 569:7, 578:25, 601:4, 603:7, 603:20, 608:20
factors [1] - 401:16
facts [16] - 389:11, 389:12, 392:17, 413:6, 433:17, 435:2, 437:9, 437:12, 520:12, 520:13, 520:15, 525:3, 534:11, 578:13, 608:13

**factual** [1] - 342:16
**fail** [1] - 364:22
**fair** [132] - 314:23, 316:1, 317:8, 319:3, 319:11, 320:20, 321:1, 321:7, 321:24, 322:19, 324:23, 324:25, 325:20, 328:10, 330:3, 331:22, 332:3, 332:18, 333:14, 334:1, 335:2, 340:16, 341:7, 341:19, 342:18, 344:22, 344:23, 349:17, 350:3, 350:11, 352:24, 353:15, 358:10, 358:25, 361:12, 371:11, 372:23, 373:10, 376:2, 377:14, 379:23, 388:15, 390:14, 390:17, 392:7, 407:4, 407:11, 408:17, 412:25, 413:3, 413:15, 416:3, 425:24, 426:4, 431:24, 434:10, 434:19, 434:20, 437:16, 438:25, 450:8, 457:15, 459:4, 459:7, 461:6, 461:14, 462:2, 478:8, 478:12, 480:11, 480:19, 482:4, 482:6, 482:11, 482:14, 483:4, 484:14, 484:22, 498:7, 498:25, 502:17, 503:19, 504:4, 504:21, 505:25, 506:2, 506:16, 506:22, 509:13, 511:9, 512:4, 512:18, 523:18, 524:7, 524:19, 525:8, 525:9, 534:8, 535:19, 536:7, 541:18, 541:23, 542:13, 549:16, 549:17, 549:18, 552:16, 565:16, 575:4, 576:1, 576:9, 576:15, 577:21, 578:5, 578:11, 579:1, 589:16, 589:18, 600:15, 601:8, 603:8, 603:21, 604:1, 604:25, 608:22, 609:1, 610:5, 615:1, 615:3, 615:14
**fairly** [3] - 317:11, 335:19, 362:19
**fairness** [1] - 482:10
**faith** [1] - 363:17
**fall** [1] - 468:24
**falls** [1] - 568:6
**familiar** [2] - 448:14, 598:14
**families** [1] - 577:16
**family** [34] - 339:25, 340:15, 349:13, 358:9, 424:14, 424:16, 424:22, 424:23, 424:24, 428:24, 450:5, 452:16, 461:10, 461:14, 482:1, 484:12, 495:17, 496:2, 496:6, 496:9, 496:15, 496:18, 501:12, 503:10, 503:13, 533:20, 556:25, 600:1, 608:20, 609:20, 610:14, 610:21, 611:12
**fantastic** [1] - 415:22
**far** [12] - 316:16, 330:9, 334:19, 338:25, 339:13, 355:1, 379:7, 429:2, 440:21, 522:24, 551:19, 574:5
**fast** [2] - 384:15, 487:13
**faster** [1] - 458:11
**father** [15] - 314:5, 316:17, 340:15, 341:6, 342:8, 342:16, 349:13, 383:23, 431:11, 431:13, 431:21, 432:22, 591:24, 592:4, 592:5
**father's** [2] - 343:18, 344:5
**fault** [1] - 452:2
**favor** [11] - 319:6, 333:9, 344:20, 350:1,

401:4, 401:7, 409:7, 409:9, 603:14, 603:15, 604:11
**favorite** [1] - 554:3
**FBI** [19] - 358:6, 373:17, 498:3, 498:18, 521:18, 537:14, 537:18, 537:21, 538:12, 538:18, 559:2, 604:20, 608:18, 609:7, 609:10, 609:15, 609:18, 609:21
**fear** [4] - 315:15, 315:19, 316:4, 318:17
**February** [9] - 460:8, 490:20, 491:12, 492:10, 492:16, 492:19, 606:25, 607:3
**Federal** [2] - 601:24, 604:15
**federal** [11] - 452:10, 454:11, 498:3, 537:13, 549:21, 600:20, 600:25, 601:5, 610:23, 610:24
**fee** [2] - 359:23, 593:5
**feelings** [13] - 341:5, 373:8, 378:3, 432:2, 435:24, 481:10, 498:6, 504:3, 577:8, 577:19, 578:5, 578:9, 604:3
**fellow** [1] - 521:19
**felt** [6] - 376:12, 402:20, 522:1, 534:22, 554:20, 584:4
**few** [29] - 305:25, 308:21, 324:10, 343:16, 347:25, 357:25, 377:6, 380:21, 383:14, 400:5, 406:18, 411:7, 419:17, 419:23, 424:22, 444:8, 450:1, 453:22, 477:3, 501:8, 527:3, 548:24, 551:15, 563:18, 586:7, 591:10, 603:1, 616:4, 619:5
**fictional** [2] - 416:22, 554:15
**fictionalized** [2] - 554:3, 554:23
**field** [3] - 378:20, 450:6, 538:20
**fight** [4] - 523:11, 555:25, 556:1
**fights** [1] - 550:4
**figure** [11] - 366:21, 394:2, 395:9, 443:21, 470:5, 485:13, 493:14, 539:4, 547:12, 580:23, 593:25
**filed** [1] - 603:19
**fill** [2] - 568:22, 622:12
**filled** [4] - 307:13, 494:24, 573:15
**filtered** [1] - 484:18
**final** [2] - 571:7, 618:12
**financial** [2] - 317:7, 430:21
**fine** [49] - 306:15, 315:14, 322:1, 322:9, 327:8, 331:15, 333:16, 347:5, 355:11, 357:14, 365:6, 365:13, 366:15, 372:4, 380:17, 384:21, 385:1, 390:16, 393:12, 393:15, 403:21, 416:10, 422:2, 422:12, 431:6, 434:18, 443:12, 444:6, 444:9, 459:9, 489:24, 494:18, 494:20, 496:7, 496:13, 507:18, 556:23, 556:24, 562:5, 565:8, 581:5, 584:12, 587:6, 593:22, 610:10, 613:13, 620:18, 620:22, 620:23
**fines** [1] - 340:12
**finger** [1] - 499:11
**fingerprint** [1] - 389:15
**fingerprints** [1] - 598:17
**fingers** [1] - 555:24
**finish** [7] - 307:16, 307:18, 308:11,

442:9, 442:13, 528:1, 618:15
**finished** [1] - 339:9
**fire** [1] - 594:24
**firm** [8] - 380:2, 380:3, 385:17, 402:3, 402:7, 403:2, 602:12
**FIRM** [1] - 302:21
**First** [1] - 445:14
**first** [30] - 305:1, 306:4, 307:2, 310:25, 311:12, 350:5, 353:19, 388:3, 392:3, 398:23, 420:5, 426:18, 426:23, 446:2, 446:4, 446:5, 451:20, 453:24, 488:1, 518:17, 521:7, 525:16, 527:6, 545:6, 545:23, 550:2, 589:24, 590:1, 594:3, 614:10
**five** [12] - 314:1, 373:2, 420:5, 471:9, 509:16, 509:25, 522:17, 573:6, 573:8, 573:9, 578:19, 613:3
**flag** [1] - 443:14
**flagging** [1] - 443:4
**Flatlands** [2] - 523:7, 523:16
**flesh** [1] - 356:1
**flexibility** [4] - 430:3, 430:5, 430:12, 460:10
**flight** [3] - 460:13, 555:25, 556:1
**flip** [4] - 467:15, 468:18, 597:21, 604:10
**flip-flops** [1] - 467:15
**floor** [30] - 308:22, 312:21, 317:22, 338:4, 347:12, 383:3, 384:10, 406:2, 410:15, 419:6, 421:16, 421:18, 451:2, 453:14, 478:23, 486:7, 499:18, 500:2, 500:3, 500:4, 505:7, 539:16, 548:14, 566:21, 567:18, 585:5, 594:10, 594:11, 599:2, 618:18
**flop** [1] - 468:18
**flops** [1] - 467:15
**Florian** [1] - 304:22
**FLORIAN** [1] - 303:3
**Florida** [3] - 414:6, 428:24, 492:7
**fluctuate** [1] - 313:17
**flying** [1] - 551:11
**foam** [2] - 529:7, 529:12
**focus** [25] - 308:25, 315:24, 316:3, 317:8, 320:21, 338:9, 347:16, 360:14, 360:19, 404:18, 430:22, 446:3, 446:6, 465:10, 479:4, 526:19, 528:12, 533:15, 534:16, 552:3, 555:22, 572:7, 578:1, 601:21
**focused** [2] - 478:1, 502:4
**focusing** [1] - 543:18
**folded** [1] - 369:6
**folks** [4] - 429:11, 431:14, 433:10, 435:16
**follow** [123] - 313:8, 317:15, 318:8, 319:14, 320:3, 325:23, 328:13, 328:25, 330:20, 331:6, 335:5, 335:24, 337:9, 341:21, 343:16, 346:7, 347:25, 350:14, 352:19, 353:21, 358:1, 361:14, 361:24, 365:17, 366:1, 366:16, 368:1, 369:14, 374:3, 374:16, 377:6, 378:12, 378:14, 379:2, 379:4,

379:5, 383:15, 385:24, 386:4, 386:7, 390:11, 390:19, 392:15, 406:19, 407:19, 410:23, 411:7, 413:19, 415:3, 415:12, 417:14, 418:5, 419:17, 419:23, 426:7, 428:15, 436:2, 436:6, 436:25, 437:12, 438:14, 438:23, 439:2, 439:4, 440:2, 443:5, 443:11, 443:12, 446:8, 446:11, 447:17, 450:1, 451:11, 453:23, 454:19, 457:7, 459:14, 464:14, 466:23, 467:19, 471:17, 477:3, 479:15, 484:7, 484:10, 489:6, 501:8, 503:7, 509:8, 509:12, 517:16, 519:17, 520:5, 520:13, 521:4, 521:11, 526:5, 526:10, 527:3, 530:20, 535:9, 536:9, 537:10, 540:1, 540:6, 542:16, 544:19, 548:24, 553:16, 556:10, 565:17, 567:5, 574:14, 579:7, 580:1, 591:6, 592:12, 609:7, 612:6, 614:17, 614:20, 616:9, 616:17

**follow-up** [65] - 313:8, 317:15, 319:14, 320:3, 328:13, 331:6, 335:24, 337:9, 341:21, 343:16, 346:7, 347:25, 350:14, 353:21, 358:1, 361:14, 361:24, 365:17, 366:1, 366:16, 377:6, 383:15, 390:11, 406:19, 411:7, 415:3, 418:5, 419:17, 419:23, 428:15, 438:23, 440:2, 443:5, 443:11, 443:12, 447:17, 450:1, 451:11, 453:23, 464:14, 466:23, 471:17, 477:3, 479:15, 489:6, 501:8, 509:12, 517:16, 526:10, 527:3, 530:20, 536:9, 537:10, 540:1, 542:16, 544:19, 548:24, 553:16, 567:5, 574:14, 579:7, 580:1, 591:6, 612:6, 616:9

**follow-ups** [1] - 392:15, 446:8, 446:11

**following** [10] - 335:10, 342:4, 349:5, 375:7, 390:24, 423:24, 466:8, 491:3, 500:7, 512:23

**food** [2] - 497:1, 526:2

**FOR** [1] - 302:12

**for-cause** [3] - 438:8, 438:10, 572:4

**force** [1] - 604:20

**forced** [2] - 471:3, 491:20

**forces** [1] - 322:8

**foreign** [1] - 505:9

**forgive** [1] - 457:17

**forgiveness** [4] - 448:4, 448:5, 448:8, 448:18

**forgot** [1] - 385:15, 420:21, 420:23

**form** [3] - 343:22, 502:12, 505:24

**forth** [1] - 400:5

**Forty** [3] - 472:14, 479:5, 487:4

**forty** [3] - 382:1, 382:3, 382:4

**Forty-four** [1] - 487:4

**forward** [4] - 308:10, 334:24, 362:22, 467:20

**four** [9] - 373:2, 467:14, 471:22, 487:4, 509:25, 528:6, 528:21, 554:18, 573:4

**four-day** [1] - 467:14

**fourteen** [1] - 382:2

**frankly** [1] - 458:11

**fraud** [1] - 610:15

**free** [4] - 586:6, 594:8, 599:1, 618:5

**frequent** [1] - 331:13

**fresh** [2] - 375:8, 375:20

**Friday** [53] - 307:20, 405:10, 460:15, 464:24, 465:1, 467:1, 467:9, 467:21, 467:23, 468:13, 468:24, 470:24, 471:3, 471:13, 473:8, 473:18, 474:8, 474:14, 474:17, 475:6, 475:9, 476:16, 487:18, 488:3, 488:18, 490:19, 490:21, 491:1, 491:4, 491:7, 491:9, 491:16, 491:17, 492:6, 493:17, 540:14, 540:17, 568:4, 568:7, 568:11, 568:13, 568:19, 569:6, 569:19, 569:25, 570:8, 593:14, 595:16, 595:24, 605:19, 605:25

**Fridays** [2] - 475:23, 606:2

**friend** [10] - 378:5, 378:6, 378:9, 484:1, 484:8, 495:17, 502:21, 541:10, 541:13, 541:14

**friends** [13] - 314:9, 314:19, 424:19, 424:20, 450:5, 452:15, 482:19, 496:15, 501:11, 502:21, 533:20, 603:5, 603:7

**friendship** [1] - 482:24

**frightening** [1] - 435:17

**front** [1] - 565:19

**frustrated** [2] - 409:21, 409:22

**full** [7] - 313:13, 361:5, 361:8, 427:17, 443:18, 512:14, 552:8

**full-time** [1] - 313:13

**fully** [2] - 443:18, 513:3

**Fulton** [1] - 302:22

**funding** [1] - 532:5

**future** [2] - 304:11

**fuzzy** [1] - 318:18

## G

**game** [5] - 460:14, 540:13, 540:24, 540:25, 541:3

**GARCIA** [1] - 302:8

**Garcia** [4] - 304:5, 304:21, 514:5, 514:12

**gather** [3] - 618:3, 621:14, 622:1

**GENARO** [1] - 302:8

**Genaro** [1] - 304:4

**general** [13] - 304:7, 330:21, 399:7, 399:9, 422:20, 433:10, 458:21, 462:10, 463:12, 486:24, 486:25, 502:2, 506:12

**generally** [6] - 318:15, 316:18, 318:25, 356:14, 415:13, 435:14, 506:17, 506:18, 514:17

**gesture)** [1] - 422:4

**gift** [1] - 540:13

**girlfriend** [1] - 542:1

**Given** [1] - 575:3

**given** [16] - 306:13, 344:5, 391:8, 403:8,

435:9, 445:21, 456:15, 511:24, 515:23, 532:23, 535:21, 549:7, 566:10, 571:6, 598:23

**glad** [2] - 570:16, 599:23

**glass** [1] - 582:1

**glaucoma** [1] - 425:12

**God** [3] - 518:12, 521:22, 522:8

**goodness** [1] - 386:25

**Gotlib** [1] - 304:22

**GOTLIB** [4] - 303:4, 303:6, 616:9, 616:14

**Government** [68] - 302:16, 304:13, 309:25, 327:15, 327:18, 327:19, 328:5, 335:17, 336:5, 336:17, 341:7, 342:19, 344:18, 344:21, 389:3, 389:4, 389:22, 409:2, 413:2, 413:25, 422:3, 427:20, 428:8, 433:2, 433:5, 433:19, 436:10, 436:13, 436:15, 436:18, 440:13, 444:11, 446:4, 457:23, 458:6, 458:18, 459:15, 464:11, 466:1, 535:25, 544:25, 545:14, 558:2, 558:17, 562:13, 562:19, 562:20, 562:24, 563:6, 565:22, 565:23, 571:6, 571:19, 577:22, 578:3, 579:13, 580:4, 582:15, 582:18, 583:12, 583:22, 584:4, 584:23, 604:15, 621:22, 623:10

**government** [46] - 350:2, 350:21, 352:5, 353:17, 356:12, 364:22, 368:6, 368:11, 368:14, 369:7, 369:8, 369:10, 369:22, 370:12, 370:16, 370:17, 373:17, 502:10, 506:3, 506:22, 508:10, 508:25, 513:2, 513:8, 513:22, 513:23, 514:12, 514:21, 515:12, 516:7, 517:17, 521:17, 544:23, 596:25, 597:3, 597:10, 597:22, 597:24, 598:7, 602:17, 603:22, 608:8, 608:15

**Government's** [4] - 393:8, 401:18, 439:9, 571:22

**government's** [2] - 355:21, 365:10

**grade** [1] - 388:4

**grain** [1] - 580:9

**grand** [3] - 326:6, 326:7, 326:16

**granted** [1] - 304:6

**grants** [1] - 532:5

**great** [49] - 307:11, 310:15, 325:19, 326:22, 328:8, 328:13, 333:20, 345:1, 352:21, 353:1, 358:21, 361:11, 361:14, 365:22, 378:15, 378:22, 380:6, 385:21, 426:6, 431:10, 432:8, 444:13, 447:6, 447:14, 450:1, 459:13, 497:9, 497:15, 515:20, 521:15, 525:10, 526:9, 533:18, 536:6, 536:20, 542:7, 542:12, 542:16, 556:12, 556:18, 569:3, 586:23, 588:5, 589:21, 591:5, 600:21, 604:14, 620:22, 621:2

**Great** [16] - 388:5, 390:3, 390:11, 411:25, 415:21, 418:5, 422:13, 422:21, 422:24, 483:25, 484:11, 494:21, 496:22, 562:8, 563:4, 583:17

**greater** [2] - 397:5, 575:12
**group** [5] - 307:15, 318:11, 421:23, 442:10, 443:19
**grow** [1] - 388:20
**growing** [1] - 564:9
**growth** [1] - 579:9
**guaranteed** [1] - 337:23
**guess** [38] - 308:3, 323:17, 340:3, 349:3, 349:5, 351:4, 362:19, 367:3, 370:8, 371:14, 373:4, 373:5, 421:4, 448:2, 452:12, 478:10, 481:5, 485:2, 485:13, 488:24, 489:13, 519:18, 534:11, 542:22, 542:23, 572:21, 580:13, 583:12, 584:10, 605:10, 605:13, 607:16, 607:20, 610:18, 610:19, 610:22, 610:24, 611:10
**guidance** [1] - 353:15
**guilt** [7] - 353:25, 354:9, 370:11, 389:19, 448:11, 457:25, 558:17
**guilty** [60] - 316:5, 321:13, 336:16, 340:10, 350:20, 351:6, 351:9, 352:5, 352:6, 356:18, 357:12, 362:15, 363:5, 363:20, 363:24, 368:11, 368:12, 368:22, 369:2, 369:9, 369:12, 370:9, 371:22, 375:14, 375:15, 376:6, 376:9, 376:12, 412:5, 412:9, 412:10, 448:9, 448:24, 449:9, 450:13, 450:14, 455:4, 463:14, 519:4, 519:5, 519:20, 519:22, 519:23, 519:24, 520:6, 521:3, 521:8, 521:9, 558:3, 565:21, 565:23, 565:25, 566:14, 566:15, 578:3, 578:7, 608:7
**gullible** [1] - 611:12
**gun** [1] - 372:8
**gunpoint** [1] - 503:11
**gut** [1] - 439:6
**gut-instinct** [1] - 439:6
**guy** [1] - 511:7
**Guyana** [2] - 557:6, 557:7

## H

**half** [3] - 346:23, 371:6, 621:13
**hall** [29] - 319:18, 326:24, 328:18, 330:13, 336:23, 345:2, 353:2, 361:18, 376:16, 380:7, 399:19, 415:6, 417:17, 426:11, 437:22, 459:22, 470:7, 517:23, 526:14, 537:1, 543:14, 556:12, 563:9, 570:15, 579:17, 591:10, 601:17, 606:12, 612:11
**hallway** [1] - 589:10
**hand** [1] - 341:2
**handle** [1] - 342:11
**handled** [1] - 408:16
**hang** [3] - 439:21, 526:1, 620:6
**happy** [1] - 305:12, 332:13, 445:24
**hard** [40] - 311:16, 321:6, 322:11, 323:16, 323:17, 328:24, 330:22, 351:14, 360:5, 373:6, 378:2, 382:20, 384:3, 389:25, 399:4, 408:16, 452:25, 480:19, 481:24, 485:3, 485:17, 498:7,

499:3, 506:9, 507:19, 511:12, 511:13, 545:4, 545:7, 545:24, 547:18, 548:1, 548:2, 551:5, 552:5, 571:5, 577:5, 582:2, 621:17
**harder** [2] - 386:13, 551:16
**hardship** [28] - 309:2, 309:7, 309:15, 310:12, 313:9, 320:5, 334:11, 337:12, 338:10, 346:8, 383:17, 404:20, 405:5, 406:7, 410:23, 417:20, 418:7, 419:11, 447:5, 451:13, 527:12, 529:23, 529:25, 530:22, 532:19, 549:15, 567:6, 605:9
**hardships** [1] - 383:7
**harm** [1] - 444:9
**harmful** [5] - 463:12, 535:15, 576:24, 577:13
**head** [5] - 322:24, 513:13, 522:11, 523:21, 601:24
**Health** [2] - 311:14, 312:9
**health** [3] - 411:22, 425:11, 431:13
**hear** [55] - 315:19, 319:11, 321:21, 330:25, 332:15, 339:21, 342:20, 343:5, 349:8, 353:17, 355:8, 375:3, 390:1, 398:22, 431:5, 431:20, 439:7, 439:14, 441:3, 442:18, 443:7, 477:19, 480:14, 495:3, 498:17, 498:22, 499:3, 499:7, 512:2, 520:17, 520:19, 528:23, 528:25, 529:15, 530:5, 538:14, 557:2, 557:23, 564:19, 565:19, 571:16, 571:18, 571:24, 577:25, 580:18, 582:2, 582:17, 597:8, 597:9, 609:14, 609:15, 617:9, 619:6
**heard** [28] - 305:20, 318:17, 355:8, 390:4, 393:19, 407:17, 407:22, 408:6, 409:4, 409:8, 435:10, 438:20, 443:3, 443:4, 445:14, 470:20, 471:12, 471:25, 473:1, 485:4, 487:14, 504:16, 508:3, 534:5, 534:7, 534:15, 541:25, 571:24
**hearing** [9] - 319:7, 431:5, 442:19, 443:3, 443:5, 506:25, 529:11, 616:12, 617:10
**hearings** [2] - 304:11
**hearsay** [1] - 513:16
**held** [2] - 332:8, 438:17
**Hello** [11] - 411:3, 415:17, 418:1, 418:2, 477:1, 477:3, 479:12, 494:13, 567:3, 574:10, 579:21
**hello** [11] - 327:4, 380:16, 427:5, 451:5, 453:17, 501:2, 518:3, 544:17, 556:15, 595:2, 602:24
**help** [11] - 314:3, 354:23, 370:17, 437:10, 443:13, 468:2, 495:9, 580:15, 587:3, 604:8, 614:5
**helped** [2] - 542:1, 604:8
**helpful** [7] - 308:6, 396:11, 400:13, 439:4, 446:24, 476:3, 621:11
**helps** [2] - 411:13, 411:16
**hesitancy** [1] - 400:15
**hesitant** [2] - 402:1, 402:7

**hesitate** [1] - 403:10
**hesitation** [3] - 403:8, 403:9, 403:18
**hi** [11] - 329:6, 366:12, 377:3, 427:6, 449:20, 537:4, 591:15, 599:14, 606:16, 606:18, 612:15
**Hi** [6] - 415:18, 419:16, 476:25, 494:12, 563:14
**hiding** [1] - 515:1
**high** [6] - 425:11, 435:10, 435:14, 435:15, 603:4
**high-profile** [1] - 435:10
**higher** [12] - 326:18, 326:20, 329:23, 329:25, 348:5, 348:11, 348:13, 348:18, 367:9, 367:14, 601:2, 615:11
**himself** [2] - 368:4, 583:5
**hinder** [1] - 342:20
**hindered** [1] - 579:9
**hired** [3] - 311:8, 312:13, 341:13
**hires** [1] - 340:2
**history** [1] - 431:19
**hit** [1] - 428:11
**hm** [7] - 398:2, 398:4, 398:14, 398:16, 491:5, 495:7, 578:22
**hmm** [1] - 592:2
**hobbies** [1] - 423:1
**hold** [12] - 336:7, 336:13, 336:17, 367:8, 367:14, 369:17, 438:7, 489:11, 489:21, 493:11, 524:12, 558:20
**Hold** [1] - 486:21
**holiday** [3] - 492:12, 607:17, 613:4
**holidays** [1] - 526:1
**home** [15] - 337:22, 337:23, 372:9, 442:7, 450:19, 465:13, 477:17, 532:6, 532:7, 533:12, 605:23, 605:24, 617:15, 623:5
**Homeland** [7] - 342:8, 342:11, 342:24, 343:25, 344:1, 349:14, 377:8
**honest** [15] - 321:9, 321:14, 322:12, 323:9, 323:10, 323:13, 356:6, 364:3, 432:12, 433:23, 452:22, 455:25, 459:3, 483:4, 507:19
**honestly** [5] - 316:6, 341:8, 343:21, 351:1, 455:15
**honesty** [7] - 348:19, 348:20, 353:14, 355:10, 356:5, 367:6, 482:15
**Honor** [133] - 304:15, 305:22, 306:22, 309:4, 309:17, 309:20, 310:14, 312:17, 314:16, 317:18, 323:19, 325:25, 328:15, 329:1, 330:19, 335:5, 335:15, 338:1, 341:22, 344:25, 347:7, 347:19, 350:15, 350:16, 352:25, 353:19, 353:23, 354:25, 356:10, 361:15, 366:2, 366:7, 372:6, 373:13, 376:22, 378:19, 380:12, 382:23, 383:10, 384:8, 390:25, 391:2, 399:25, 401:22, 403:7, 403:16, 403:25, 404:4, 404:21, 405:23, 406:7, 406:8, 410:12, 410:13, 410:25, 415:10, 415:14, 415:10, 415:14, 417:24, 419:4, 419:14, 421:13, 427:2, 427:22, 436:5, 437:19,

438:11, 439:1, 439:3, 439:25, 443:9,
445:11, 449:12, 449:16, 450:24,
453:11, 453:12, 459:16, 460:25,
466:4, 469:14, 470:2, 470:15, 478:21,
479:5, 486:5, 489:13, 499:16, 507:25,
508:11, 509:11, 517:18, 526:11,
526:20, 527:19, 539:13, 542:18,
543:19, 553:17, 562:9, 562:10, 563:7,
566:18, 567:16, 572:8, 572:14,
572:17, 573:2, 573:13, 573:21,
573:25, 578:19, 579:14, 579:15,
585:1, 591:7, 593:20, 593:24, 596:12,
598:19, 601:22, 602:21, 609:6,
610:11, 616:7, 616:15, 617:6, 617:13,
620:2, 620:4, 621:23, 621:24, 623:13
**HONORABLE** [2] - 302:12
**hope** [23] - 351:17, 351:20, 425:23,
438:3, 443:20, 452:23, 453:6, 479:21,
479:23, 480:12, 480:21, 483:21,
501:23, 506:23, 507:8, 507:16,
507:20, 510:22, 510:23, 511:1, 511:3,
511:10, 533:6
**hopeful** [1] - 307:15
**hopefully** [8] - 307:9, 442:13, 458:16,
613:12, 613:13, 615:24, 622:3, 622:8
**hoping** [6] - 353:15, 442:8, 459:2,
569:18, 613:19, 620:14
**hospital** [14] - 311:9, 311:12, 311:13,
311:25, 404:3, 421:10, 453:25,
467:22, 467:24, 468:21, 470:18,
470:21, 531:3, 531:18
**hospitals** [2] - 311:14, 311:21
**Hospitals'** [1] - 312:9
**hour** [10] - 346:20, 346:23, 347:2, 347:3,
347:5, 437:25, 466:13, 527:14, 621:13
**hours** [10] - 313:23, 316:23, 316:24,
374:7, 465:3, 465:11, 465:12, 489:12,
527:25, 605:24
**house** [2] - 340:4, 406:24
**housekeeping** [1] - 304:25
**housing** [1] - 340:5
**HR** [3] - 414:23, 489:11, 568:3
**HSI** [2] - 342:17, 342:23
**huge** [3] - 315:17, 451:17, 452:16
**hum** [18] - 329:21, 331:19, 332:16,
333:22, 334:2, 335:9, 336:6, 425:3,
456:19, 457:22, 458:1, 461:4, 461:17,
462:14, 536:21, 538:7, 549:19, 557:22
**human** [3] - 340:5, 340:6, 477:12
**Hunter** [1] - 537:16
**hurt** [2] - 481:2, 522:11
**husband** [6] - 316:17, 453:24, 454:2,
522:1, 522:9, 599:23
**Hut** [1] - 522:14
**hybrid** [2] - 531:2, 532:2
**hypothetically** [2] - 488:18, 492:23

## I

**I...I** [1] - 320:10

**ID** [2] - 604:8, 604:9
**idea** [5] - 349:20, 445:23, 463:12,
474:20, 476:14
**ideal** [9] - 430:24, 431:15, 431:19,
465:8, 570:3, 570:4, 570:5, 571:15,
572:2
**ideally** [1] - 455:10
**ideas** [1] - 321:24
**identify** [1] - 621:1
**illegal** [14] - 333:23, 340:2, 341:14,
412:23, 463:23, 484:12, 508:19,
509:5, 509:6, 535:23, 535:24, 565:2,
580:15
**imagine** [4] - 394:16, 395:23, 505:19,
548:3
**immediately** [4] - 434:11, 621:16
**immigration** [11] - 342:12, 343:2, 344:3,
610:14, 610:20, 610:21, 611:5, 611:7,
611:10, 611:15, 611:18
**Immigration** [1] - 343:1
**impact** [5] - 428:19, 430:22, 431:24,
432:5, 432:22
**impanelled** [1] - 542:23
**impartial** [33] - 314:23, 315:2, 319:4,
320:20, 325:20, 328:11, 330:3, 335:2,
340:17, 341:19, 361:12, 379:23,
390:14, 416:3, 431:25, 432:2, 433:6,
450:8, 461:6, 480:19, 482:5, 502:18,
509:13, 512:18, 525:8, 536:7, 542:14,
575:5, 578:11, 589:19, 601:8, 608:22,
615:14
**impartially** [1] - 335:19
**important** [11] - 307:2, 320:21, 440:19,
455:7, 483:14, 511:20, 511:25, 565:4,
565:11, 584:14, 618:13
**importantly** [1] - 311:3
**importation** [1] - 333:21
**imposes** [1] - 455:4
**imposition** [1] - 456:7
**impossible** [1] - 513:12
**impression** [1] - 516:12
**improper** [2] - 322:7, 354:21
**improved** [1] - 431:7
**improvement** [2] - 311:10, 311:13
**incarcerated** [10] - 371:6, 372:8,
372:22, 383:24, 546:8, 546:22,
547:16, 547:18, 576:5, 614:23
**inclined** [1] - 350:1
**include** [3] - 443:23, 546:18, 581:4
**included** [1] - 521:17
**includes** [2] - 373:16, 373:18
**including** [6] - 304:9, 446:8, 501:12,
546:23, 567:12, 588:20
**incorrect** [1] - 305:6
**independent** [1] - 364:11
**independently** [1] - 374:1
**indicate** [1] - 326:3
**indicated** [21] - 305:2, 314:18, 315:6,
318:9, 320:5, 324:12, 331:20, 331:24,
333:9, 338:20, 372:7, 377:7, 383:18,

385:8, 405:2, 406:18, 438:22, 447:16,
447:19, 466:9, 586:9
**indicating** [1] - 456:12
**indicating)** [1] - 411:13
**indication** [2] - 306:24, 316:10
**individual** [8] - 373:24, 462:7, 463:6,
484:23, 502:1, 505:25, 514:22, 538:15
**individuals** [7] - 335:13, 342:10,
342:11, 477:13, 477:20, 506:15, 614:5
**inference** [1] - 355:5
**influence** [2] - 431:18, 432:6
**information** [7] - 306:9, 306:16, 339:14,
507:7, 549:8, 555:2, 555:4
**informed** [1] - 308:19
**informing** [1] - 555:6
**injections** [1] - 405:19
**innocence** [8] - 350:19, 351:7, 351:25,
353:22, 356:16, 357:3, 362:12, 608:4
**innocent** [22] - 350:20, 351:9, 351:15,
351:19, 352:2, 356:17, 368:8, 368:21,
368:24, 370:9, 376:5, 410:5, 410:7,
410:10, 413:25, 457:21, 558:2,
558:14, 608:7, 608:10, 608:11
**inquire** [3] - 464:21, 466:19, 489:15
**inquiry** [1] - 593:19
**inside** [3] - 564:14, 566:17, 588:13
**insight** [2] - 367:2, 373:22
**instances** [2] - 394:2, 403:14
**instead** [4] - 399:8, 434:11, 474:9,
486:17
**instinct** [1] - 439:6
**instruct** [6] - 340:23, 352:14, 437:13,
454:18, 484:6, 503:4
**instructed** [8] - 329:19, 334:4, 355:15,
378:11, 538:3, 580:24, 592:11, 614:16
**instruction** [4] - 484:7, 503:8, 535:10,
614:18
**instructions** [2] - 484:10, 614:21
**instructs** [4] - 325:15, 325:17, 386:4,
526:5
**insurance** [1] - 381:20
**intellectual** [1] - 506:24
**intelligence** [5] - 514:5, 514:13, 514:15,
515:12, 516:8
**intelligent** [2] - 587:21, 587:23
**intelligently** [1] - 554:17
**intending** [1] - 527:25
**intends** [1] - 445:15
**intense** [1] - 386:18
**interactions** [2] - 358:24, 426:3
**interest** [1] - 443:18
**interested** [3] - 324:21, 377:12, 614:4
**internet** [1] - 423:4
**INTERPRETER** [5] - 528:13, 528:15,
528:18, 528:24, 529:2
**interpreters** [3] - 416:8, 416:13, 528:23
**interrupt** [2] - 356:25, 609:6
**intro** [1] - 572:21
**Investigacion** [1] - 601:25

**investigated** [1] - 610:2
**investigating** [3] - 349:4, 349:5, 373:17
**Investigation** [1] - 604:16
**investigation** [2] - 362:6, 609:11
**Investigations** [2] - 342:8, 342:24
**investigative** [5] - 402:4, 498:8, 545:14, 562:14, 611:15
**investigators** [1] - 375:6
**inviting** [1] - 443:2
**involve** [1] - 432:19
**involved** [35] - 320:22, 324:23, 342:17, 343:19, 344:1, 377:14, 394:21, 412:22, 413:4, 431:18, 435:17, 450:6, 452:20, 454:3, 456:6, 462:17, 463:7, 478:18, 484:23, 496:20, 498:8, 499:10, 502:21, 506:18, 512:5, 515:17, 515:19, 525:13, 536:4, 549:10, 553:5, 603:22, 609:7, 609:11, 610:19
**involvement** [2] - 344:5, 516:7
**involves** [10] - 331:22, 333:12, 333:20, 371:8, 371:16, 484:14, 535:17, 535:19, 541:23, 577:3
**involving** [1] - 512:5
**IRS** [1] - 603:19
**is...** [1] - 553:10
**Island** [2] - 314:5, 465:4
**issue** [30] - 321:23, 323:5, 337:11, 338:12, 353:18, 354:2, 354:4, 354:14, 355:15, 356:6, 404:7, 404:8, 409:3, 436:7, 443:3, 443:5, 443:14, 447:20, 464:23, 475:18, 479:10, 486:14, 496:8, 535:2, 535:4, 542:10, 542:12, 573:22, 579:10, 616:19
**issued** [1] - 304:10
**issues** [23] - 311:4, 313:10, 318:23, 325:12, 346:11, 371:5, 371:21, 383:21, 388:19, 388:20, 388:21, 425:17, 454:23, 462:23, 484:3, 502:24, 517:22, 573:14, 586:10, 616:8, 616:11, 621:21
**IT** [1] - 530:11
**it'll** [3] - 393:9, 394:19, 569:18
**Italy** [1] - 314:7
**items** [1] - 445:12
**itself** [3] - 420:11, 612:1, 612:2
**IVF** [1] - 567:7

## J

**jail** [2] - 315:7, 580:16
**James** [1] - 304:18
**January** [9] - 302:7, 311:25, 490:19, 491:4, 540:9, 595:9, 612:21, 623:17
**Jimmy** [2] - 424:3, 424:8
**jittery** [1] - 452:6
**job** [17] - 323:1, 403:21, 414:19, 436:18, 437:1, 437:2, 437:3, 437:5, 455:20, 465:1, 474:20, 475:12, 487:21, 522:13, 547:7, 564:23, 568:13

**jobs** [2] - 313:14, 405:2
**joined** [1] - 304:16
**joining** [1] - 377:12
**joint** [1] - 311:11
**joke** [1] - 543:11
**joy** [1] - 334:10
**JUDGE** [1] - 302:13
**judge** [52] - 332:12, 340:22, 346:18, 348:22, 353:8, 357:21, 358:18, 358:19, 366:23, 367:6, 371:14, 377:20, 379:5, 386:6, 386:7, 390:1, 411:19, 414:14, 437:13, 443:8, 450:12, 454:11, 454:20, 476:1, 485:11, 499:19, 499:20, 512:21, 516:16, 517:13, 520:11, 520:12, 520:22, 520:24, 524:24, 525:1, 529:25, 535:4, 543:8, 564:6, 564:10, 564:12, 564:20, 564:23, 579:3, 587:2, 590:21, 592:11, 623:2
**Judge** [69] - 304:5, 307:19, 308:1, 308:4, 319:16, 325:15, 325:17, 331:15, 336:21, 352:14, 352:20, 355:13, 356:23, 378:11, 379:1, 385:23, 386:4, 390:12, 396:21, 399:16, 400:18, 413:19, 415:9, 417:15, 421:12, 426:8, 426:9, 441:18, 443:23, 445:15, 454:18, 454:19, 459:17, 464:16, 474:22, 476:22, 484:5, 486:4, 490:8, 494:5, 503:4, 503:8, 507:22, 519:14, 519:16, 520:2, 520:5, 521:1, 521:5, 526:4, 526:12, 528:3, 529:14, 535:10, 536:10, 536:23, 536:24, 556:11, 570:19, 591:8, 599:7, 601:15, 606:9, 606:11, 612:7, 617:1, 621:3, 622:15, 622:19
**judge's** [2] - 535:9, 614:17
**judges** [2] - 450:6, 565:2
**judging** [7] - 374:25, 375:1, 390:4, 483:18, 563:24, 564:23, 564:24
**judgment** [15] - 332:12, 363:21, 364:11, 374:1, 394:13, 397:8, 398:23, 412:1, 412:2, 440:18, 446:10, 447:20, 518:24, 563:22
**judgments** [1] - 578:12
**judicial** [2] - 456:7, 504:3
**June** [2] - 428:25, 429:1
**juries** [1] - 455:7
**Juror** [216] - 305:1, 305:6, 305:14, 305:15, 306:2, 306:4, 306:6, 306:18, 306:19, 306:23, 306:24, 307:3, 307:8, 307:9, 307:10, 308:23, 309:6, 309:18, 310:17, 310:18, 312:24, 312:25, 313:1, 317:23, 317:24, 317:25, 318:1, 319:20, 319:21, 319:22, 324:1, 324:2, 327:2, 327:3, 329:4, 329:5, 329:6, 330:18, 331:1, 331:2, 337:1, 337:2, 337:4, 338:9, 338:13, 338:14, 343:15, 346:1, 346:4, 347:15, 347:16, 347:21, 347:22, 353:6, 357:15, 357:20, 357:22, 361:19, 361:20, 361:21,

361:22, 365:25, 366:4, 366:10, 366:11, 366:12, 376:18, 376:21, 377:2, 377:3, 380:9, 380:10, 380:15, 383:4, 383:5, 383:11, 383:14, 384:11, 384:19, 384:20, 392:13, 399:22, 404:15, 404:22, 404:23, 406:4, 406:5, 406:9, 406:10, 406:15, 410:16, 410:17, 411:1, 411:2, 411:3, 415:7, 415:8, 415:16, 417:18, 417:19, 417:25, 418:1, 419:7, 419:8, 419:15, 419:16, 421:21, 421:23, 422:6, 422:7, 426:17, 427:4, 427:5, 428:12, 428:13, 438:12, 439:19, 440:1, 446:6, 446:7, 446:14, 447:8, 447:9, 449:19, 451:6, 451:7, 453:16, 453:17, 459:25, 460:1, 470:11, 472:22, 476:20, 476:24, 479:2, 479:3, 479:11, 479:12, 486:11, 486:13, 487:8, 487:12, 487:13, 494:9, 494:10, 494:11, 500:6, 501:1, 517:25, 518:1, 518:2, 526:17, 526:18, 526:22, 526:23, 527:23, 528:7, 528:20, 530:2, 530:8, 530:16, 530:17, 530:18, 537:3, 537:4, 539:21, 539:22, 543:23, 544:1, 544:16, 548:16, 548:17, 556:14, 556:20, 563:12, 563:13, 563:14, 566:25, 567:1, 567:2, 567:3, 567:21, 567:22, 567:23, 567:24, 570:18, 572:15, 573:22, 574:7, 574:9, 579:18, 579:19, 579:20, 585:10, 586:1, 586:2, 591:12, 591:13, 591:14, 594:17, 595:1, 595:2, 599:6, 599:13, 601:18, 602:22, 602:23, 602:24, 606:13, 606:14, 606:15, 612:12, 612:14, 612:15, 616:6, 622:24
**juror** [147] - 304:4, 305:3, 305:5, 305:8, 306:2, 306:25, 307:1, 307:2, 308:25, 309:10, 310:2, 310:4, 312:23, 319:19, 320:6, 323:24, 323:25, 325:20, 327:1, 328:11, 328:20, 329:14, 330:3, 330:17, 332:18, 335:2, 335:12, 336:25, 338:8, 341:19, 345:4, 345:5, 346:18, 350:11, 355:14, 355:17, 359:4, 361:12, 374:22, 375:8, 375:12, 379:23, 381:11, 386:23, 390:14, 392:4, 393:13, 400:1, 400:5, 402:13, 403:4, 403:6, 403:19, 403:22, 404:10, 407:4, 407:15, 408:3, 410:18, 410:20, 410:21, 411:15, 411:23, 413:7, 413:9, 413:11, 413:16, 416:3, 421:22, 425:9, 426:16, 427:15, 428:2, 428:3, 428:5, 432:5, 436:18, 437:5, 437:23, 438:12, 439:18, 440:21, 441:20, 442:18, 443:7, 446:25, 449:4, 449:17, 449:18, 451:4, 453:15, 459:24, 461:6, 462:17, 463:18, 466:9, 471:8, 472:10, 481:20, 487:2, 489:15, 498:16, 501:2, 503:4, 512:19, 512:24, 519:12, 520:14, 520:19, 521:20, 523:23, 525:8, 529:18, 533:2, 536:7, 537:2, 539:20, 543:16, 544:15, 547:7, 548:15, 552:16, 555:9, 559:3, 565:5, 571:10,

572:23, 573:18, 576:21, 577:6, 578:4,
589:19, 592:18, 599:10, 599:14,
601:8, 609:1, 612:13, 614:16, 615:5,
615:14, 623:5, 623:15

**JUROR** [1330] - 310:23, 311:2, 311:6,
311:8, 311:20, 311:24, 312:3, 312:8,
312:12, 312:20, 313:5, 313:12,
313:16, 313:20, 314:1, 314:4, 314:10,
314:13, 314:21, 314:24, 315:5, 315:8,
315:11, 315:17, 315:22, 315:25,
316:2, 316:6, 316:9, 316:12, 316:15,
316:22, 316:25, 317:4, 317:9, 317:14,
317:20, 318:4, 318:13, 318:16,
318:24, 319:5, 319:9, 319:13, 319:24,
320:7, 320:9, 320:14, 320:17, 320:24,
321:3, 321:11, 321:20, 321:22, 322:4,
322:10, 322:15, 322:21, 323:9,
323:15, 323:23, 324:4, 324:7, 324:9,
324:19, 324:24, 325:1, 325:6, 325:8,
325:11, 325:13, 325:18, 325:22,
326:6, 326:9, 326:13, 326:19, 326:21,
326:25, 327:2, 327:6, 327:11, 327:16,
327:24, 328:3, 328:7, 328:12, 328:17,
328:19, 329:9, 329:12, 329:15,
329:21, 329:24, 330:1, 330:4, 330:8,
330:11, 330:15, 331:4, 331:7, 331:11,
331:14, 331:19, 331:23, 332:1, 332:4,
332:7, 332:16, 332:19, 332:22, 333:2,
333:5, 333:7, 333:11, 333:15, 333:18,
333:22, 333:24, 334:2, 334:5, 334:9,
334:13, 334:16, 334:20, 334:22,
335:3, 335:9, 335:25, 336:6, 336:10,
336:15, 336:19, 336:24, 337:5, 337:7,
337:13, 337:17, 337:21, 338:6,
338:17, 338:22, 338:24, 339:7,
339:12, 339:19, 339:25, 340:9,
340:18, 340:25, 341:3, 341:8, 341:11,
341:17, 341:20, 342:2, 343:17,
343:21, 344:1, 344:4, 344:10, 344:14,
344:17, 344:19, 344:23, 345:3,
346:11, 346:14, 346:21, 346:24,
347:2, 347:11, 347:14, 347:24, 348:1,
348:7, 348:15, 348:17, 348:20,
348:24, 349:3, 349:10, 349:15,
349:18, 349:21, 349:25, 350:4, 350:7,
350:13, 350:23, 351:1, 351:3, 351:13,
351:16, 351:20, 351:24, 352:2, 352:7,
352:10, 352:13, 352:16, 352:22,
352:25, 353:3, 357:24, 358:2, 358:7,
358:12, 358:15, 358:19, 358:23,
359:1, 359:5, 359:11, 359:13, 359:17,
359:20, 359:24, 360:4, 360:6, 360:10,
360:12, 360:15, 360:18, 360:21,
360:25, 361:3, 361:7, 361:9, 361:13,
361:25, 362:4, 362:13, 362:18, 363:9,
363:13, 363:19, 363:23, 364:1, 364:9,
364:12, 364:15, 364:19, 364:23,
365:2, 365:4, 365:8, 365:11, 365:15,
365:19, 365:22, 366:15, 366:18,
367:1, 367:8, 367:11, 367:14, 367:18,
367:20, 367:23, 368:3, 368:7, 368:9,

368:16, 368:19, 368:21, 368:25,
369:4, 369:11, 369:13, 369:16,
369:19, 369:23, 370:1, 370:7, 370:13,
370:21, 370:24, 371:2, 371:6, 371:10,
371:13, 371:18, 371:24, 372:3,
372:10, 372:12, 372:15, 372:18,
372:20, 372:24, 373:1, 373:4, 373:7,
373:11, 373:20, 374:3, 374:6, 374:10,
374:13, 374:16, 374:19, 374:23,
374:25, 375:2, 375:5, 375:9, 375:16,
375:18, 375:21, 375:24, 376:1, 376:3,
376:6, 376:10, 376:13, 376:17, 377:5,
377:9, 377:15, 377:19, 377:21, 378:1,
378:4, 378:7, 378:10, 378:14, 378:18,
378:21, 378:24, 379:4, 379:6, 379:10,
379:13, 379:15, 379:21, 379:24,
380:4, 380:8, 380:17, 380:20, 380:23,
381:1, 381:4, 381:9, 381:14, 381:16,
381:20, 381:23, 382:1, 382:3, 382:5,
382:7, 382:13, 382:16, 382:19, 383:1,
383:13, 383:16, 383:20, 383:23,
384:3, 384:22, 384:25, 385:4, 385:7,
385:10, 385:12, 385:15, 385:19,
385:25, 386:6, 386:11, 386:14,
386:22, 387:2, 387:4, 388:3, 388:7,
388:10, 388:17, 389:10, 389:24,
390:5, 390:9, 390:15, 390:18, 392:23,
394:5, 394:8, 394:18, 394:25, 395:8,
395:18, 396:1, 396:4, 396:10, 396:16,
397:7, 397:14, 397:22, 398:2, 398:4,
398:7, 398:14, 398:16, 398:20,
398:22, 399:4, 399:14, 399:20, 405:3,
405:6, 405:8, 405:15, 406:1, 406:3,
406:17, 407:2, 407:6, 407:12, 407:20,
408:1, 408:11, 408:21, 408:24, 409:9,
409:12, 409:16, 409:22, 410:2, 410:7,
410:9, 411:4, 411:11, 411:17, 411:21,
411:24, 412:7, 412:11, 412:17,
412:20, 413:5, 413:13, 413:17,
413:23, 414:2, 414:6, 414:12, 414:17,
414:23, 415:2, 415:18, 415:20, 416:1,
416:4, 416:7, 416:10, 416:14, 416:18,
417:2, 417:7, 417:13, 418:2, 418:4,
418:9, 418:14, 418:19, 418:21,
418:25, 419:2, 419:21, 420:2, 420:9,
420:14, 420:17, 420:19, 420:21,
420:25, 421:4, 421:7, 421:10, 421:17,
421:20, 422:12, 422:15, 422:17,
422:20, 422:23, 423:2, 423:7, 423:9,
423:12, 423:14, 423:16, 423:18,
423:20, 424:4, 424:6, 424:10, 424:13,
424:15, 424:17, 424:20, 424:22,
424:25, 425:3, 425:7, 425:10, 425:16,
425:18, 425:20, 425:23, 426:1, 426:5,
426:12, 426:14, 427:6, 427:9, 427:13,
427:24, 428:14, 428:18, 428:21,
429:4, 429:7, 429:10, 429:16, 429:21,
429:24, 430:3, 430:6, 430:9, 430:13,
430:19, 430:23, 431:3, 431:7, 431:12,
431:22, 432:1, 432:6, 432:12, 432:18,
432:23, 433:8, 433:14, 433:22,

433:25, 434:4, 434:13, 434:17,
434:21, 435:2, 435:6, 435:9, 435:15,
435:19, 435:22, 435:25, 436:17,
436:22, 436:24, 437:5, 437:9, 437:14,
437:17, 437:21, 440:4, 440:7, 440:10,
440:16, 440:25, 441:5, 441:10,
441:14, 441:16, 447:11, 447:14,
447:18, 447:22, 447:24, 448:2,
448:12, 448:17, 448:22, 448:25,
449:6, 449:10, 449:15, 449:25, 450:3,
450:10, 450:12, 450:16, 450:22,
451:1, 451:3, 451:10, 451:14, 451:23,
452:2, 452:5, 452:9, 452:12, 452:18,
452:22, 453:5, 453:9, 453:21, 454:1,
454:5, 454:9, 454:13, 454:16, 454:22,
455:1, 455:25, 456:4, 456:8, 456:10,
456:14, 456:17, 456:19, 456:21,
456:24, 457:3, 457:5, 457:11, 457:14,
457:22, 458:1, 458:5, 458:8, 458:13,
458:15, 458:20, 458:23, 459:5, 459:8,
459:11, 459:23, 460:4, 460:7, 460:9,
460:12, 460:17, 460:20, 461:4, 461:9,
461:17, 461:20, 461:24, 462:5, 462:8,
462:11, 462:14, 462:19, 463:3, 463:8,
463:11, 463:15, 463:19, 463:21,
463:24, 464:5, 464:8, 464:13, 464:21,
465:7, 465:11, 465:19, 465:21,
465:25, 467:4, 467:13, 467:19, 468:6,
468:9, 468:15, 468:23, 469:3, 469:5,
469:9, 470:8, 472:24, 473:6, 473:9,
473:13, 473:20, 473:25, 474:3, 474:5,
474:15, 474:18, 474:25, 475:5, 475:8,
475:11, 475:14, 475:20, 476:4,
476:12, 476:17, 476:19, 477:1, 477:5,
477:10, 477:16, 477:24, 478:6, 478:9,
478:18, 479:1, 479:18, 479:20,
479:23, 480:1, 480:5, 480:8, 480:12,
480:17, 480:21, 481:1, 481:5, 481:8,
481:13, 481:21, 482:2, 482:9, 482:13,
482:21, 483:2, 483:21, 483:24, 484:4,
484:9, 484:16, 484:25, 485:6, 485:10,
485:15, 485:18, 485:24, 486:9,
487:15, 488:4, 488:9, 488:15, 488:23,
489:5, 489:9, 489:22, 490:2, 490:7,
490:13, 490:17, 490:25, 491:5, 491:8,
491:11, 491:23, 492:1, 492:4, 492:17,
492:22, 493:1, 493:4, 493:8, 493:12,
493:15, 493:24, 494:3, 494:8, 494:13,
494:18, 494:23, 495:1, 495:3, 495:7,
495:11, 495:19, 495:23, 495:25,
496:5, 496:11, 496:16, 496:20,
496:25, 497:3, 497:5, 497:7, 497:10,
497:14, 497:16, 497:25, 498:4, 498:9,
498:14, 498:22, 499:2, 499:9, 499:20,
499:22, 499:25, 500:3, 500:5, 501:4,
501:7, 501:10, 501:13, 501:15,
501:20, 501:23, 502:1, 502:5, 502:8,
502:11, 502:16, 502:19, 502:23,
503:1, 503:6, 503:9, 503:12, 503:14,
503:17, 503:20, 503:23, 504:1, 504:5,
504:8, 504:12, 504:15, 504:18,

504:22, 505:14, 505:17, 505:22,
506:5, 506:14, 506:23, 507:8, 507:11,
507:14, 507:16, 507:20, 508:8,
508:16, 508:20, 508:24, 509:7, 509:9,
509:16, 509:20, 509:24, 510:5, 510:8,
510:10, 510:15, 510:22, 511:2, 511:5,
511:10, 511:13, 511:17, 511:23,
512:7, 512:11, 512:17, 512:20,
515:25, 516:4, 516:10, 516:18,
516:21, 516:23, 517:2, 517:9, 517:11,
517:15, 517:21, 517:24, 518:7,
518:10, 518:12, 518:15, 518:17,
518:25, 519:2, 519:9, 519:18, 520:7,
520:9, 520:11, 520:16, 521:12,
521:14, 521:21, 521:25, 522:4,
523:20, 523:24, 524:1, 524:15,
524:18, 524:22, 525:2, 525:6, 525:9,
525:14, 525:16, 525:19, 525:21,
525:25, 526:8, 526:15, 527:2, 527:5,
527:8, 527:11, 527:13, 527:16,
527:22, 530:25, 531:2, 531:10,
531:13, 531:17, 532:3, 532:7, 532:15,
532:22, 533:4, 533:13, 533:17,
533:21, 534:1, 534:4, 534:10, 534:18,
534:24, 535:1, 535:8, 535:13, 535:20,
536:2, 536:5, 536:8, 536:14, 536:17,
536:19, 536:21, 537:5, 537:9, 537:16,
537:23, 538:1, 538:7, 538:11, 538:13,
538:19, 538:24, 539:2, 539:7, 539:12,
539:18, 539:25, 540:3, 540:5, 540:7,
540:10, 540:12, 540:16, 540:20,
540:23, 541:1, 541:3, 541:5, 541:9,
541:12, 541:14, 541:19, 541:24,
542:3, 542:6, 542:10, 542:15, 542:22,
543:1, 543:6, 543:12, 543:15, 544:18,
545:1, 545:6, 545:17, 545:20, 546:1,
546:4, 546:7, 546:11, 546:14, 546:18,
546:24, 547:2, 547:5, 547:11, 547:15,
547:23, 548:1, 548:5, 548:8, 548:12,
548:20, 548:23, 549:2, 549:4, 549:13,
549:19, 549:23, 549:25, 550:16,
550:24, 551:10, 551:14, 551:21,
552:5, 552:9, 552:13, 552:19, 552:23,
553:2, 553:12, 553:15, 553:23, 554:1,
554:5, 554:8, 554:11, 554:14, 554:24,
555:1, 555:10, 555:15, 555:19, 556:4,
556:6, 556:9, 556:13, 556:18, 556:21,
557:3, 557:6, 557:8, 557:10, 557:12,
557:14, 557:17, 557:20, 557:22,
557:24, 558:8, 558:11, 558:13,
558:15, 558:22, 559:8, 560:5, 560:12,
560:14, 560:17, 560:21, 560:24,
561:1, 561:5, 561:9, 561:13, 561:17,
561:20, 561:23, 562:3, 562:7, 563:1,
563:3, 563:10, 563:17, 563:25, 564:2,
564:5, 564:18, 565:7, 565:9, 566:3,
566:5, 566:8, 566:16, 566:23, 567:10,
568:2, 568:17, 569:2, 569:10, 569:12,
569:15, 570:3, 570:5, 570:13, 570:17,
574:11, 574:20, 574:22, 575:7,
575:11, 575:13, 575:15, 575:18,

575:21, 576:3, 576:7, 576:10, 576:13,
576:16, 576:19, 576:23, 577:2, 577:7,
577:12, 578:12, 578:22, 579:2, 579:6,
579:11, 579:24, 580:2, 580:7, 580:13,
580:21, 581:9, 581:13, 581:16,
581:23, 582:10, 582:16, 582:21,
582:25, 583:2, 583:10, 583:16, 584:8,
584:18, 584:25, 585:7, 585:9, 586:4,
586:8, 586:11, 586:15, 586:17,
586:19, 586:22, 587:4, 587:7, 587:11,
587:15, 587:17, 587:20, 587:23,
587:25, 588:2, 588:4, 588:8, 588:10,
588:12, 588:16, 588:19, 588:22,
588:24, 589:2, 589:7, 589:12, 589:17,
589:20, 589:23, 590:2, 590:5, 590:8,
590:14, 590:17, 590:19, 590:23,
591:1, 591:4, 591:11, 591:19, 591:21,
591:24, 592:2, 592:4, 592:7, 592:10,
592:13, 592:16, 592:19, 592:24,
593:3, 593:6, 593:10, 593:13, 593:17,
594:11, 594:13, 594:15, 595:4,
595:12, 595:15, 595:18, 595:21,
596:1, 596:3, 596:6, 596:15, 596:22,
597:1, 597:4, 597:7, 597:11, 597:14,
597:17, 597:20, 597:23, 598:2,
598:13, 598:25, 599:4, 599:15,
599:20, 599:22, 599:25, 600:3, 600:5,
600:8, 600:12, 600:16, 600:18,
600:20, 601:1, 601:3, 601:6, 601:9,
601:13, 602:25, 603:3, 603:6, 603:9,
603:13, 603:17, 603:23, 604:2, 604:6,
604:13, 604:18, 604:23, 605:1, 605:5,
605:10, 605:19, 605:22, 606:3, 606:7,
606:17, 606:19, 606:23, 607:1, 607:4,
607:7, 607:11, 607:15, 607:18,
607:23, 608:2, 608:5, 608:12, 608:16,
608:19, 608:24, 609:2, 609:13,
609:16, 609:19, 609:22, 609:25,
610:7, 610:16, 610:18, 611:3, 611:6,
611:9, 611:16, 611:19, 611:22,
611:25, 612:5, 612:10, 612:16,
612:19, 612:23, 612:25, 613:3, 613:8,
613:11, 613:14, 613:17, 613:21,
613:24, 614:1, 614:3, 614:9, 614:14,
614:20, 614:24, 615:2, 615:6, 615:10,
615:12, 615:16, 615:19, 615:22,
616:1, 616:5
**juror's** [2] - 306:18, 403:8
**jurors** [50] - 305:18, 305:25, 307:4,
307:5, 307:13, 308:8, 308:22, 310:15,
330:19, 359:22, 413:14, 437:24,
438:5, 439:20, 441:22, 441:23,
441:25, 442:16, 442:17, 443:17,
443:19, 445:6, 445:8, 445:18, 446:2,
459:4, 483:14, 486:12, 489:14,
520:18, 528:6, 528:22, 543:17, 565:3,
565:15, 571:17, 572:5, 593:5, 601:20,
617:9, 618:2, 618:25, 620:9, 620:12,
620:25, 621:6, 622:2, 622:5, 622:11,
622:12
**Jurors** [2] - 617:16, 618:20

**JURY** [1] - 302:12
**jury** [117] - 307:6, 311:4, 315:15, 317:3,
326:2, 326:6, 326:7, 326:10, 326:16,
334:12, 337:12, 337:20, 338:4, 338:5,
339:4, 339:18, 359:10, 359:23, 360:2,
360:14, 364:4, 378:17, 379:8, 383:18,
386:9, 395:2, 405:4, 414:22, 421:18,
427:18, 430:18, 442:9, 442:13,
442:14, 445:6, 445:21, 451:16,
454:18, 455:2, 455:12, 455:13,
457:24, 464:18, 465:2, 466:24,
467:17, 468:21, 470:17, 473:2, 475:2,
476:7, 478:24, 482:4, 486:1, 486:7,
487:21, 488:21, 488:24, 489:3,
489:19, 492:15, 493:5, 493:7, 493:16,
493:23, 493:25, 499:18, 504:6, 527:7,
531:11, 532:19, 532:20, 532:21,
536:12, 539:16, 542:19, 549:1,
549:17, 552:7, 553:5, 555:13, 560:10,
560:20, 561:12, 565:23, 565:24,
566:2, 566:11, 566:22, 568:6, 568:13,
585:4, 589:22, 590:10, 590:11, 594:9,
594:23, 600:10, 600:14, 605:4, 605:6,
605:11, 605:24, 613:16, 617:24,
618:4, 618:9, 618:13, 618:17, 620:8,
622:3, 622:11, 623:14
**just...** [1] - 320:11
**justice** [6] - 318:17, 332:23, 333:3,
333:4, 456:16, 481:11

# K

**karma** [1] - 448:13
**Katz** [1] - 312:9
**keep** [21] - 318:6, 322:13, 323:16,
323:17, 327:7, 329:11, 332:24,
338:19, 342:6, 375:24, 396:18,
399:12, 404:25, 453:18, 479:14,
513:18, 518:4, 523:20, 544:21,
556:22, 599:9
**keeping** [1] - 484:19
**keeps** [1] - 524:15
**kept** [1] - 402:11
**kick** [1] - 488:21
**kicked** [2] - 388:9, 388:12
**kidnap** [1] - 505:8
**kids** [5] - 388:19, 399:7, 533:10, 588:10,
588:11
**killed** [1] - 575:17
**Kimelar** [1] - 304:23
**Kind** [1] - 581:16
**kind** [50] - 311:15, 318:16, 339:14,
340:11, 340:19, 353:16, 363:21,
380:3, 381:18, 389:2, 389:5, 389:6,
389:16, 389:24, 418:13, 420:24,
422:18, 423:13, 424:7, 429:12,
431:16, 484:16, 496:24, 505:9, 506:6,
506:7, 511:21, 525:20, 527:15,
531:16, 533:7, 538:16, 550:20, 551:5,
554:19, 555:2, 555:23, 560:11, 566:1,

568:20, 578:4, 580:14, 581:14, 584:20, 590:7, 593:12, 598:17, 604:19, 613:25

**kinds** [5] - 388:20, 422:25, 425:1, 432:21, 588:25

**knock** [1] - 511:7

**knocked** [1] - 547:20

**knowing** [4] - 463:1, 506:5, 534:3, 537:17

**knowledge** [2] - 336:12, 604:24

**known** [4] - 433:6, 433:10, 440:16, 462:1

**knows** [7] - 353:10, 357:8, 362:3, 392:19, 568:20, 602:15, 610:22

**KOMATIREDDY** [213] - 302:18, 304:15, 306:22, 308:14, 309:4, 309:8, 309:13, 309:17, 309:20, 309:22, 310:1, 310:3, 310:6, 310:9, 310:13, 312:17, 314:15, 317:17, 319:16, 323:19, 324:15, 325:25, 328:15, 329:1, 330:19, 330:25, 335:5, 335:12, 336:21, 338:1, 341:22, 341:24, 342:5, 342:7, 342:15, 342:23, 343:3, 343:6, 344:25, 347:7, 347:18, 350:16, 353:19, 354:3, 354:7, 354:13, 354:25, 356:10, 356:23, 361:16, 366:1, 366:7, 372:6, 373:13, 376:22, 378:19, 380:12, 382:23, 383:8, 383:10, 384:8, 390:19, 390:25, 391:8, 391:24, 392:9, 399:17, 399:25, 401:22, 403:7, 403:16, 403:25, 404:4, 404:21, 405:23, 406:8, 410:13, 410:24, 415:4, 415:10, 415:13, 417:15, 417:23, 419:4, 419:13, 421:13, 422:4, 426:9, 427:1, 427:22, 428:9, 436:5, 437:19, 438:11, 439:1, 439:16, 439:25, 441:18, 442:23, 443:9, 444:11, 445:11, 445:14, 445:18, 446:7, 446:15, 446:19, 446:22, 447:3, 449:12, 450:24, 453:12, 459:15, 460:24, 466:3, 466:6, 466:9, 466:18, 469:14, 470:2, 470:4, 470:14, 471:15, 471:20, 472:8, 472:14, 472:20, 478:21, 479:5, 486:5, 486:14, 486:16, 487:3, 487:6, 489:7, 489:13, 494:5, 499:16, 507:24, 508:10, 509:11, 514:1, 514:4, 514:8, 514:11, 514:16, 514:19, 515:15, 517:17, 526:12, 526:20, 527:19, 528:3, 529:14, 529:19, 529:22, 530:3, 536:24, 539:13, 542:18, 543:19, 543:24, 544:2, 544:5, 544:8, 544:14, 548:9, 553:17, 553:20, 556:11, 562:10, 563:6, 566:18, 567:16, 570:25, 572:8, 572:14, 572:17, 572:19, 573:2, 573:6, 573:13, 573:21, 573:24, 574:4, 579:13, 585:1, 591:8, 593:20, 593:24, 594:5, 596:11, 598:19, 598:22, 599:7, 601:15, 601:22, 602:2, 602:10, 602:21, 606:9, 610:11, 612:7, 616:7, 616:15, 617:5,

617:13, 620:2, 620:19, 621:3, 621:22, 622:19, 623:11

**Komatireddy** [2] - 304:16, 472:12

**Kuo** [1] - 304:5

**KUO** [1] - 302:12

# L

**labor** [1] - 340:2

**lack** [2] - 349:3, 353:24

**ladies** [1] - 522:13

**lady** [1] - 571:12

**landlord/tenant** [1] - 380:4

**language** [2] - 573:11, 573:12

**laptop** [1] - 537:17

**large** [1] - 334:18

**last** [21] - 307:13, 307:14, 323:3, 335:1, 336:11, 393:4, 408:5, 431:9, 451:15, 469:11, 510:2, 522:10, 529:6, 551:22, 552:3, 592:19, 601:19, 605:2, 607:19, 607:21, 612:13

**late** [4] - 311:9, 513:9, 532:13, 599:17

**lately** [1] - 588:14

**Latin** [1] - 477:25

**Law** [1] - 416:22

**law** [187] - 322:18, 323:6, 323:7, 324:23, 325:3, 325:15, 325:16, 325:17, 327:19, 334:3, 339:23, 340:3, 340:5, 340:10, 340:19, 340:22, 340:23, 341:1, 341:15, 348:4, 348:9, 349:16, 349:20, 353:10, 353:16, 354:5, 354:8, 354:19, 354:22, 355:3, 355:17, 356:12, 357:8, 358:8, 358:14, 358:17, 358:22, 362:2, 362:6, 362:7, 362:8, 362:15, 366:20, 366:23, 367:2, 371:4, 371:20, 372:19, 373:16, 373:18, 375:14, 375:22, 377:12, 377:14, 377:16, 377:18, 377:24, 378:3, 378:8, 378:12, 378:13, 379:1, 380:3, 385:9, 385:11, 385:14, 385:17, 385:24, 386:4, 389:4, 389:14, 398:9, 400:6, 401:4, 401:7, 401:8, 402:1, 408:15, 414:10, 414:13, 426:3, 437:12, 443:8, 448:13, 452:20, 454:6, 454:15, 454:18, 454:20, 455:10, 455:19, 457:18, 457:19, 461:7, 461:10, 461:22, 462:1, 482:22, 482:25, 483:1, 483:3, 483:15, 483:17, 484:6, 497:23, 498:1, 498:2, 498:25, 499:1, 501:17, 501:18, 501:22, 503:5, 509:8, 513:20, 513:21, 513:24, 514:13, 514:15, 515:1, 515:12, 516:8, 519:4, 519:15, 519:16, 519:21, 519:24, 520:3, 520:25, 523:14, 524:13, 525:12, 525:20, 525:24, 526:5, 526:6, 526:7, 533:23, 533:24, 541:16, 545:13, 558:4, 558:25, 559:1, 559:7, 560:3, 562:16, 565:1, 565:17, 574:19, 575:1, 575:3, 575:5, 578:21, 578:24, 589:5, 589:15, 592:3, 592:9, 592:12, 593:3,

594:2, 594:19, 603:8, 603:11, 603:14, 603:15, 608:18, 608:21, 608:22, 608:23, 609:4, 609:24, 610:3, 613:25, 614:1, 614:2, 614:17, 614:18, 614:19

**LAW** [2] - 302:21, 303:4

**law's** [1] - 525:16

**law-abiding** [2] - 398:9, 457:18

**laws** [1] - 518:22

**lawyer** [9] - 325:10, 386:1, 522:4, 525:19, 587:1, 611:5, 611:7, 613:23, 614:19

**lawyers** [14] - 332:10, 335:8, 373:18, 378:23, 379:3, 385:14, 385:22, 390:22, 450:5, 502:21, 570:10, 587:3, 616:3, 618:12

**lead** [4] - 318:19, 455:19, 504:2, 589:14

**leadership** [2] - 538:21, 538:22

**leads** [2] - 374:17, 505:10

**lean** [1] - 574:15

**leaning** [1] - 614:10

**learn** [1] - 614:5

**learned** [1] - 550:16

**learning** [1] - 614:6

**least** [6] - 306:13, 412:21, 434:23, 463:25, 487:25, 522:16

**leave** [17] - 310:20, 320:2, 331:9, 337:15, 346:6, 385:3, 386:15, 386:19, 404:24, 408:8, 527:7, 547:10, 591:17, 594:23, 595:5, 605:7, 620:7

**Leave** [1] - 419:19

**leaving** [3] - 308:4, 308:5, 607:5

**left** [6] - 318:25, 319:3, 388:13, 540:18, 540:20, 573:9

**leftist** [2] - 318:14, 318:15

**legal** [15] - 325:12, 333:10, 450:6, 455:19, 484:1, 484:3, 502:24, 508:25, 520:25, 525:13, 558:1, 573:14, 587:1, 587:2, 591:25

**legalization** [1] - 333:19

**legalize** [1] - 509:1

**legalized** [4] - 508:23, 535:15, 576:25, 577:1

**legalizing** [2] - 412:19, 508:14

**less** [5] - 374:10, 483:16, 484:18, 535:14, 550:6

**lessening** [1] - 580:16

**lesser** [1] - 575:14

**letting** [23] - 312:18, 341:16, 347:9, 382:24, 384:9, 385:22, 405:24, 410:14, 421:14, 427:23, 443:6, 449:14, 455:24, 456:2, 465:24, 469:12, 478:22, 508:1, 527:20, 533:18, 567:17, 578:16, 596:13

**license** [3] - 373:5, 453:25, 523:12

**lie** [10] - 391:6, 392:4, 392:5, 393:22, 538:6, 545:10, 546:23, 547:21, 581:1, 581:4

**life** [39] - 317:14, 371:7, 371:21, 381:20, 393:14, 394:17, 395:24, 417:1, 417:6, 417:8, 448:5, 450:20, 455:10, 455:19,

457:19, 458:4, 511:20, 511:25, 524:6, 532:22, 533:9, 547:4, 547:8, 549:22, 550:10, 551:17, 552:11, 552:14, 554:9, 555:5, 564:7, 564:9, 564:13, 564:16, 564:22, 565:12, 571:11, 573:3, 574:18
**life's** [1] - 362:20
**light** [1] - 438:18
**lightly** [1] - 570:8
**likely** [11] - 349:21, 379:9, 457:9, 501:16, 508:4, 542:2, 559:1, 590:11, 609:14, 609:15, 611:17
**limited** [1] - 489:18
**line** [1] - 414:16
**lines** [1] - 357:13
**list** [7] - 339:1, 339:3, 521:17, 553:3, 571:23, 572:11, 619:1
**listen** [28] - 321:25, 322:14, 323:12, 332:25, 364:12, 364:13, 400:12, 408:9, 437:9, 437:11, 455:16, 459:11, 461:24, 462:10, 462:24, 463:9, 476:1, 482:5, 498:20, 508:6, 516:15, 517:5, 519:12, 542:25, 552:17, 555:14, 566:13, 582:6
**Listen** [2] - 379:18, 409:16
**listening** [9] - 321:11, 393:13, 401:23, 438:24, 456:5, 461:22, 539:4, 546:6, 576:21
**literally** [2] - 489:11, 513:5
**live** [8] - 321:18, 424:14, 424:16, 424:17, 455:10, 522:14, 564:22
**lives** [6] - 314:5, 455:5, 564:22, 570:7, 577:17, 584:13
**living** [1] - 457:18
**LLP** [1] - 303:1
**locked** [1] - 610:24
**lockstep** [1] - 622:9
**lodged** [1] - 506:1
**logical** [2] - 396:5, 396:7
**look** [26] - 305:24, 323:10, 334:23, 375:8, 375:10, 394:9, 395:2, 395:8, 397:21, 397:22, 399:8, 401:10, 461:13, 477:14, 477:23, 483:17, 490:14, 497:17, 502:10, 504:25, 512:1, 538:5, 581:14, 589:8, 598:1, 620:25
**looked** [4] - 362:16, 483:11, 505:8, 594:1
**looking** [10] - 320:20, 375:19, 392:17, 392:22, 401:12, 413:14, 459:4, 483:8, 549:16, 578:4
**looks** [2] - 520:12, 573:15
**lose** [3] - 444:5, 445:22, 607:20
**loss** [2] - 431:5, 450:21
**lost** [2] - 418:10, 450:17
**love** [2] - 489:14, 588:23
**loved** [1] - 554:16
**lovely** [1] - 456:13
**lower** [1] - 615:7
**Lucchese** [1] - 303:7

**luck** [1] - 567:20
**lucky** [2] - 469:7, 472:2
**lull** [1] - 309:9
**LUNA** [1] - 302:8
**Luna** [4] - 304:5, 304:21, 514:5, 514:12
**lunch** [1] - 305:3, 438:1, 443:25
**Lunch** [1] - 444:14
**lying** [2] - 582:13, 582:20

## M

**ma'am** [7] - 366:15, 405:6, 414:17, 447:15, 447:18, 567:10, 586:3
**Ma'am** [1] - 522:25
**machinist** [1] - 418:14
**mad** [1] - 523:13
**MAGISTRATE** [1] - 302:13
**Magistrate** [1] - 304:5
**mail** [7] - 303:9, 306:19, 561:6, 561:25, 562:5, 563:9, 590:21
**mails** [2] - 605:25, 618:7
**main** [1] - 529:22
**maintain** [1] - 462:6
**major** [2] - 394:6, 610:9
**mall** [4] - 522:22, 523:16, 523:17
**mall-like** [1] - 522:22
**man** [2] - 409:16, 521:19
**manage** [6] - 313:15, 427:19, 429:25, 532:21, 550:11, 550:13
**manageable** [1] - 569:11
**managed** [1] - 425:15
**management** [13] - 462:22, 468:10, 473:10, 474:7, 474:20, 475:2, 475:15, 476:5, 487:16, 489:10, 568:4, 568:10, 568:20
**manager** [3] - 385:20, 568:10, 590:15
**managers** [1] - 339:12
**managing** [2] - 425:19, 427:18
**mandatory** [3] - 592:20, 592:23, 593:25
**Manhattan** [1] - 551:25
**manifests** [1] - 452:4
**manipulating** [1] - 431:16
**March** [34] - 339:6, 467:6, 467:25, 468:20, 471:23, 474:22, 474:23, 475:2, 476:9, 476:13, 487:20, 488:10, 488:12, 490:10, 490:21, 491:15, 492:12, 492:13, 492:19, 557:19, 568:3, 568:8, 568:16, 568:25, 569:13, 569:14, 569:16, 569:18, 569:20, 569:21, 570:23, 570:24, 599:24
**MARIETOU** [1] - 302:20
**Marietou** [1] - 304:17
**marijuana** [7] - 333:9, 333:13, 333:19, 535:15, 535:18, 536:4, 576:25
**marked** [1] - 406:6
**marks** [2] - 443:24, 444:2
**mask** [20] - 310:20, 318:6, 320:1, 327:7, 329:11, 338:19, 346:6, 385:2, 404:25, 453:19, 479:14, 494:19, 518:5, 544:21, 556:22, 556:23, 591:17, 595:5

**mass** [1] - 438:5
**matches** [1] - 397:10
**matter** [4] - 355:5, 491:6, 549:9, 577:5
**Matter** [1] - 623:17
**matters** [3] - 304:25, 342:12, 420:6
**MCMANUS** [1] - 302:23
**McManus** [1] - 304:22
**mean** [64] - 315:17, 316:15, 317:9, 318:17, 318:24, 321:3, 321:6, 322:21, 324:24, 337:21, 339:8, 353:9, 355:13, 356:2, 357:2, 361:1, 370:2, 370:7, 393:2, 402:17, 403:11, 406:7, 407:22, 414:12, 429:16, 430:23, 433:8, 437:4, 440:16, 443:1, 448:9, 448:19, 449:8, 450:11, 455:11, 455:15, 457:11, 461:24, 465:7, 465:11, 468:10, 473:7, 475:20, 485:4, 489:9, 504:24, 510:15, 519:9, 523:14, 524:2, 532:23, 534:10, 553:5, 554:16, 555:1, 555:16, 570:22, 571:5, 571:12, 580:13, 589:25, 596:23, 598:12, 608:12
**means** [7] - 323:1, 350:21, 352:15, 392:8, 403:5, 444:8, 448:15
**meant** [12] - 327:21, 353:13, 368:2, 369:25, 389:9, 393:18, 402:19, 402:25, 440:15, 441:8, 450:9, 508:14, 558:6
**meantime** [1] - 472:11
**mechanic** [2] - 522:6, 522:9
**mechanics** [3] - 348:8, 348:14, 349:4
**media** [4] - 304:10, 351:5, 552:24, 552:25
**medical** [5] - 346:11, 425:17, 598:24, 602:14, 614:12
**medication** [3] - 346:14, 405:21, 550:19
**medications** [2] - 567:12, 567:13
**medicine** [4] - 405:17, 411:16, 422:18, 588:2
**meet** [1] - 505:3
**meeting** [6] - 307:3, 312:14, 312:15, 505:4, 505:7, 513:4
**member** [7] - 339:25, 484:12, 495:17, 503:13, 608:21, 609:21, 610:14
**members** [14] - 349:13, 358:9, 424:14, 424:16, 424:22, 424:23, 424:24, 450:5, 452:16, 496:2, 496:9, 496:19, 501:12, 610:21
**memorial** [2] - 557:4, 557:9
**memories** [1] - 432:7
**memory** [1] - 432:22
**mention** [5] - 396:21, 420:22, 513:19, 515:11, 576:24
**mentioned** [45] - 305:22, 307:11, 322:16, 325:9, 339:13, 339:22, 344:12, 358:5, 358:21, 371:4, 378:5, 386:9, 388:8, 400:9, 408:12, 411:9, 411:15, 413:21, 416:5, 416:15, 416:21, 419:24, 426:17, 435:20, 447:23, 452:15, 453:24, 454:10, 464:18, 466:24, 479:24, 501:11,

502:20, 503:21, 507:4, 508:3, 525:12, 530:23, 540:8, 541:25, 574:17, 578:21, 592:14, 599:18, 609:4
**mentor** [1] - 613:23
**Mercedes** [2] - 522:19, 523:9
**Mercedes-Benz** [2] - 522:19, 523:9
**met** [1] - 516:25
**methods** [1] - 427:18
**Mexican** [14] - 435:16, 435:20, 435:21, 477:8, 477:17, 477:20, 478:4, 478:19, 513:23, 514:21, 516:7, 534:6, 604:15, 604:19
**Mexicans** [6] - 435:24, 477:21, 477:23, 478:1, 478:2, 478:10
**Mexico** [12] - 331:21, 331:22, 477:13, 478:14, 504:17, 504:20, 507:4, 509:12, 509:15, 512:6, 553:10
**mic** [1] - 530:11
**MICHAEL** [1] - 302:23
**Michele** [1] - 303:7
**microphone** [10] - 320:1, 341:2, 411:6, 419:18, 518:8, 528:13, 529:8, 530:12, 574:15, 617:19
**middle** [3] - 556:3, 570:24, 602:8
**Miedel** [1] - 304:22
**MIEDEL** [3] - 303:1, 303:3, 392:3
**miffed** [1] - 455:3
**might** [70] - 312:9, 314:11, 321:12, 321:25, 331:12, 337:11, 337:19, 338:20, 339:9, 341:6, 344:6, 353:16, 354:23, 365:11, 365:14, 367:21, 369:21, 383:18, 389:17, 389:22, 391:21, 401:3, 401:9, 411:15, 433:2, 433:10, 440:11, 440:17, 441:6, 454:20, 455:12, 455:13, 457:18, 457:19, 457:20, 464:3, 474:20, 475:8, 493:18, 498:7, 498:8, 504:22, 505:20, 513:17, 517:3, 517:6, 518:23, 519:3, 519:10, 519:22, 521:20, 523:23, 526:6, 533:14, 535:18, 538:23, 546:22, 547:3, 569:16, 569:22, 572:1, 576:1, 578:6, 580:14, 605:10, 605:12, 616:19, 621:19
**militia** [1] - 505:2
**million** [1] - 424:8
**mind** [35] - 322:13, 323:16, 323:17, 330:21, 332:24, 349:1, 350:2, 350:5, 350:9, 353:24, 375:24, 386:24, 399:12, 409:5, 425:12, 439:7, 439:8, 439:10, 439:14, 441:4, 450:18, 475:24, 481:22, 507:10, 508:6, 513:18, 516:15, 524:16, 524:17, 533:8, 534:15, 552:22, 553:17, 609:7, 620:4
**mindset** [1] - 448:6
**mine** [2] - 452:3, 487:17
**mini** [2] - 522:21, 523:16
**minor** [1] - 610:8
**minute** [2] - 336:11, 442:2
**minutes** [6] - 305:25, 308:21, 357:4,

402:12, 591:10, 616:4
**misread** [2] - 372:13, 545:17
**miss** [1] - 596:2
**missed** [3] - 372:5, 508:9, 573:16
**missing** [1] - 466:17
**Mitchell** [1] - 312:9
**mixed** [1] - 328:2
**mixing** [2] - 356:21, 357:3
**MLuccheseEDNY@gmail.com** [1] - 303:9
**modern** [1] - 351:4
**molested** [1] - 399:7
**mom** [2] - 383:19, 610:19
**moment** [12] - 308:24, 321:7, 322:11, 335:7, 342:1, 390:2, 390:21, 466:7, 478:14, 555:6, 560:22, 622:23
**Monday** [49] - 307:20, 405:9, 405:10, 405:12, 420:17, 420:19, 420:20, 429:4, 445:16, 445:22, 464:23, 464:25, 466:25, 467:17, 467:18, 467:21, 468:2, 468:17, 470:17, 470:22, 472:5, 473:3, 473:5, 473:16, 474:6, 474:7, 475:3, 476:8, 487:17, 488:1, 488:18, 490:11, 491:13, 491:16, 491:21, 492:5, 492:6, 492:9, 492:10, 531:12, 532:9, 568:5, 568:11, 569:1, 570:7, 593:13, 605:19, 613:16, 622:16
**Mondays** [1] - 491:24
**money** [2] - 360:17, 418:8
**month** [9] - 317:11, 386:15, 428:22, 429:22, 430:19, 455:2, 509:25, 569:20
**month-to-month** [1] - 317:11
**months** [7] - 359:18, 359:19, 373:2, 420:3, 455:14, 561:18, 590:12
**morning** [56] - 304:15, 304:20, 304:24, 306:24, 307:9, 307:16, 307:23, 308:19, 310:18, 313:1, 318:1, 324:2, 331:3, 331:4, 334:23, 337:2, 338:14, 346:2, 347:22, 347:24, 363:3, 383:12, 384:4, 404:23, 406:10, 421:6, 421:8, 428:4, 439:21, 442:6, 442:8, 442:12, 442:15, 443:12, 443:19, 444:7, 445:10, 465:12, 531:5, 590:8, 607:5, 607:7, 607:8, 617:11, 617:23, 618:1, 618:3, 618:8, 618:13, 618:17, 618:18, 620:3, 620:6, 620:10, 620:16, 622:20
**mortgage** [3] - 418:22, 605:12, 605:14
**most** [2] - 381:16, 564:21
**mostly** [1] - 380:4
**mother** [2] - 314:6, 404:2
**mother's** [2] - 603:18, 603:19
**motion** [1] - 572:4
**motive** [17] - 391:5, 392:5, 393:22, 402:25, 434:6, 483:10, 538:5, 546:22, 547:4, 547:21, 581:1, 581:4, 581:11, 581:16, 581:19, 582:3
**move** [11] - 307:14, 392:4, 399:25, 400:17, 438:11, 468:10, 482:19, 523:5, 568:4, 570:21, 572:5

**moved** [3] - 340:1, 523:15, 589:8
**movie** [1] - 315:19
**movie-driven** [1] - 315:19
**movies** [3] - 423:13, 423:14, 423:15
**moving** [2] - 309:6, 523:12
**MP** [2] - 374:13, 374:14
**MR** [187] - 304:20, 304:21, 305:22, 306:21, 308:1, 308:6, 308:18, 309:1, 309:7, 309:11, 309:15, 309:19, 309:24, 310:5, 310:8, 310:11, 312:16, 314:14, 319:15, 323:20, 325:24, 338:2, 338:11, 343:4, 343:9, 343:11, 347:4, 347:8, 347:17, 350:15, 352:20, 353:4, 353:8, 355:13, 356:2, 356:20, 357:2, 357:14, 357:21, 359:7, 361:15, 366:5, 376:25, 380:1, 380:11, 382:22, 383:6, 384:7, 384:14, 384:18, 390:12, 392:3, 396:21, 399:16, 400:18, 404:16, 404:19, 405:22, 406:6, 406:14, 410:12, 410:19, 410:22, 413:19, 414:18, 415:9, 417:20, 419:3, 419:10, 421:12, 422:2, 423:22, 426:8, 426:19, 426:22, 426:25, 428:5, 436:4, 436:25, 438:2, 438:10, 439:24, 442:21, 442:25, 443:23, 444:12, 446:13, 446:17, 446:20, 446:25, 447:4, 449:13, 450:23, 453:11, 459:17, 459:20, 460:23, 464:16, 466:2, 471:6, 472:15, 472:17, 472:21, 474:22, 476:22, 479:6, 486:4, 486:23, 486:25, 487:4, 487:7, 490:8, 499:15, 507:21, 512:21, 512:24, 513:8, 513:11, 513:14, 513:19, 513:23, 514:7, 514:18, 514:25, 515:4, 515:8, 526:11, 526:21, 527:18, 529:5, 529:25, 530:5, 530:7, 530:10, 536:10, 536:23, 539:14, 543:8, 543:11, 543:21, 543:25, 544:3, 544:6, 544:10, 548:10, 562:9, 566:19, 567:15, 569:16, 570:19, 570:22, 571:5, 571:21, 572:10, 572:13, 572:16, 573:16, 573:20, 574:1, 574:3, 578:19, 579:15, 585:2, 591:7, 594:7, 594:22, 596:10, 602:4, 602:8, 602:14, 602:18, 602:20, 606:11, 609:6, 612:8, 616:21, 617:1, 617:7, 620:5, 620:21, 621:2, 621:9, 621:11, 621:24, 622:18, 623:2, 623:6
**MRI** [4] - 419:24, 420:8, 420:11, 421:6
**MRIs** [1] - 420:4
**MS** [214] - 304:15, 306:22, 308:14, 309:4, 309:8, 309:13, 309:17, 309:20, 309:22, 310:1, 310:3, 310:6, 310:9, 310:13, 312:17, 314:15, 317:17, 319:16, 323:19, 324:15, 325:25, 328:15, 329:1, 330:19, 330:25, 335:5, 335:12, 336:21, 338:1, 341:22, 341:24, 342:5, 342:7, 342:15, 342:23, 343:3, 343:6, 344:25, 347:7, 347:18, 350:16, 353:19, 354:3, 354:7, 354:13,

354:25, 356:10, 356:23, 361:16, 366:1, 366:7, 372:6, 373:13, 376:22, 378:19, 380:12, 382:23, 383:8, 383:10, 384:8, 390:19, 390:25, 391:8, 391:24, 392:9, 399:17, 399:25, 401:22, 403:7, 403:16, 403:25, 404:4, 404:21, 405:23, 406:8, 410:13, 410:24, 415:4, 415:10, 415:13, 417:15, 417:23, 419:4, 419:13, 421:13, 422:4, 426:9, 427:1, 427:22, 428:9, 436:5, 437:19, 438:11, 439:1, 439:16, 439:25, 441:18, 442:23, 443:9, 444:11, 445:11, 445:14, 445:18, 446:7, 446:15, 446:19, 446:22, 447:3, 449:12, 450:24, 453:12, 459:15, 460:24, 466:3, 466:6, 466:9, 466:18, 469:14, 470:2, 470:4, 470:14, 471:15, 471:20, 472:8, 472:14, 472:20, 478:21, 479:5, 486:5, 486:14, 486:16, 487:3, 487:6, 489:7, 489:13, 494:5, 499:16, 507:24, 508:10, 509:11, 514:1, 514:4, 514:8, 514:11, 514:16, 514:19, 515:15, 517:17, 526:12, 526:20, 527:19, 528:3, 529:14, 529:19, 529:22, 530:3, 536:24, 539:13, 542:18, 543:19, 543:24, 544:2, 544:5, 544:8, 544:14, 548:9, 553:17, 553:20, 556:11, 562:10, 563:6, 566:18, 567:16, 570:25, 572:8, 572:14, 572:17, 572:19, 573:2, 573:6, 573:13, 573:21, 573:24, 574:4, 579:13, 585:1, 591:8, 593:20, 593:24, 594:5, 596:11, 598:19, 598:22, 599:7, 601:15, 601:22, 602:2, 602:10, 602:21, 606:9, 610:11, 612:7, 616:7, 616:9, 616:14, 616:15, 617:5, 617:13, 620:2, 620:19, 621:3, 621:22, 622:19, 623:11
**much...** [1] - 341:9
**mug** [1] - 575:23
**mugged** [1] - 479:25
**multiple** [4] - 335:14, 428:10, 486:16, 504:18
**murder** [3] - 326:7, 326:8, 326:12
**murdering** [2] - 576:5
**must** [6] - 357:11, 369:2, 389:7, 478:5, 483:5, 594:3
**MYSLIWIEC** [1] - 303:1
**mysteries** [1] - 416:20
**mystery** [1] - 416:19

# N

**name** [7] - 338:25, 343:19, 508:4, 542:2, 553:3, 573:8, 587:12
**Narcos** [2] - 553:25, 554:2
**narrative** [2] - 446:23, 486:18
**natural** [6] - 310:24, 320:12, 320:13, 321:19, 452:8, 457:8
**naturalization** [1] - 342:13

**nature** [4] - 391:11, 435:10, 439:11, 563:23
**necessarily** [5] - 434:25, 435:11, 471:3, 539:12, 554:14
**necessary** [3] - 304:12, 349:23, 421:3
**need** [49] - 306:14, 306:20, 307:21, 311:1, 312:1, 313:19, 331:10, 331:12, 331:16, 346:19, 347:6, 367:25, 375:8, 375:10, 393:25, 396:3, 409:14, 418:20, 420:7, 441:1, 489:18, 502:10, 510:25, 521:2, 521:5, 522:9, 528:14, 531:5, 534:22, 535:12, 547:20, 561:21, 580:19, 580:23, 582:24, 584:7, 584:9, 584:20, 593:18, 619:4, 620:5, 620:9, 620:10, 620:12, 620:14, 621:21, 622:1, 622:5
**needed** [3] - 411:18, 429:18, 430:24
**needing** [2] - 346:18, 418:7
**needs** [8] - 306:25, 350:8, 389:3, 391:25, 409:15, 464:11, 532:8, 532:13
**negative** [3] - 335:13, 499:12, 578:10
**neighbor** [1] - 589:9
**neighborhood** [1] - 550:3
**neighborhoods** [1] - 550:9
**neighbors** [1] - 314:8
**nephew** [5] - 321:16, 322:16, 501:12, 541:13, 541:14
**nephew's** [1] - 541:10
**nephew..** [1] - 541:12
**nervous** [8] - 310:23, 317:10, 320:6, 320:13, 435:7, 452:8, 548:20, 549:1
**neuro** [1] - 420:4
**never** [17] - 321:8, 361:2, 364:3, 395:7, 395:16, 396:15, 449:5, 450:16, 521:21, 547:10, 561:11, 561:13, 566:6, 566:10, 581:7, 620:22
**new** [7] - 429:11, 522:18, 523:9, 529:12, 551:23, 568:8, 589:8
**NEW** [1] - 302:1
**New** [12] - 302:6, 302:17, 302:18, 302:22, 303:2, 303:5, 311:21, 312:8, 340:1
**news** [23] - 305:3, 305:16, 407:23, 408:7, 415:14, 416:16, 423:8, 423:11, 423:12, 435:11, 477:19, 537:17, 538:14, 549:9, 553:6, 553:8, 555:2, 588:18, 604:19, 616:10, 616:13, 618:24, 619:6
**News** [2] - 534:6, 588:20
**next** [24] - 345:7, 357:17, 384:16, 387:6, 410:20, 421:22, 422:9, 428:21, 429:2, 429:6, 444:15, 467:14, 469:15, 470:18, 471:22, 529:18, 531:20, 540:14, 559:9, 567:11, 568:18, 585:11, 601:19, 619:7
**Next** [1] - 420:19
**nice** [4] - 400:24, 442:14, 473:20, 564:6
**Nigeria** [1] - 586:12
**night** [7] - 332:11, 360:9, 405:10, 405:16, 551:22, 552:3

**nightmare** [2] - 569:9, 569:22
**nights** [3] - 405:10, 405:11, 606:2
**nine** [3] - 313:23, 487:3, 574:5
**no's** [1] - 328:24
**nobody** [1] - 314:2
**noise** [1] - 528:16
**non** [9] - 397:6, 397:13, 397:25, 398:18, 398:19, 472:5, 533:24, 541:4, 608:23
**non-law** [1] - 533:24, 608:23
**non-Monday** [1] - 472:5
**non-officer** [1] - 398:19
**non-police** [4] - 397:6, 397:13, 397:25, 398:18
**non-refundable** [1] - 541:4
**none** [2] - 436:4, 622:18
**None** [1] - 572:16
**Nonverbal** [1] - 422:4
**normal** [7] - 320:13, 393:13, 393:14, 418:17, 565:14, 570:1, 584:12
**note** [3] - 305:2, 622:22, 622:24
**noted** [1] - 438:13
**Nothing** [2] - 423:3, 563:6
**nothing** [15] - 309:24, 310:3, 310:5, 310:6, 334:9, 364:21, 369:6, 407:14, 425:3, 425:4, 435:19, 444:11, 450:18, 508:10, 610:9
**notice** [2] - 339:15, 571:7
**notions** [1] - 322:8
**notwithstanding** [4] - 362:11, 488:11, 516:12, 609:20
**November** [2] - 311:9, 589:8
**Number** [42] - 399:22, 404:22, 406:4, 406:9, 410:16, 411:1, 411:2, 415:7, 415:16, 417:18, 417:25, 419:7, 419:15, 421:21, 422:6, 470:11, 472:22, 476:20, 476:24, 479:2, 479:3, 479:11, 479:12, 486:11, 487:12, 494:9, 494:11, 500:6, 501:2, 526:18, 529:18, 563:12, 563:13, 566:25, 567:2, 567:21, 567:23, 570:18, 574:9, 579:18, 579:20, 585:10
**number** [19] - 305:5, 341:23, 373:14, 378:19, 423:22, 442:19, 442:21, 443:25, 444:5, 446:7, 486:23, 489:3, 489:19, 495:16, 522:10, 542:18, 574:23, 602:10, 610:11
**numbers** [8] - 426:20, 446:6, 522:16, 602:4, 616:17, 616:18, 616:19, 621:6
**nurse** [5] - 405:17, 462:13, 462:21, 464:23, 518:14
**nurses** [1] - 405:8
**nursing** [1] - 467:5
**nursing-wise** [1] - 467:5
**nursings** [1] - 475:16
**nursings-wise** [1] - 475:16
**NYPD** [7] - 314:21, 349:13, 358:5, 521:17, 533:20, 541:11, 603:5
**NYSNA** [1] - 568:9

## O

**o'clock** [4] - 314:1, 437:25, 493:14, 622:1
**oath** [2] - 499:5, 580:22
**object** [1] - 392:7
**objection** [60] - 312:16, 312:17, 314:14, 317:17, 323:19, 323:20, 338:1, 338:2, 347:4, 347:7, 347:8, 382:22, 382:23, 384:7, 384:8, 405:22, 405:23, 410:12, 410:13, 419:3, 419:4, 421:12, 421:13, 427:22, 449:12, 449:13, 450:23, 450:24, 453:11, 453:12, 459:18, 460:23, 466:2, 478:21, 486:4, 486:5, 499:15, 499:16, 507:21, 507:22, 527:18, 527:19, 539:13, 539:14, 548:9, 548:10, 566:18, 566:19, 567:15, 567:16, 585:1, 585:2, 594:6, 594:7, 596:10, 598:20, 598:21, 598:22, 599:11, 623:13
**objective** [19] - 389:11, 391:1, 391:4, 392:10, 392:17, 393:1, 393:17, 393:18, 394:1, 394:11, 396:22, 397:12, 400:4, 402:16, 402:17, 402:18, 402:24
**obliged** [1] - 594:4
**observations** [1] - 355:4
**observe** [1] - 538:8
**observing** [1] - 403:17
**obviously** [3] - 309:2, 392:4, 426:22
**occasion** [1] - 328:24
**occasionally** [1] - 431:8
**occasions** [1] - 400:2
**occurred** [6] - 335:10, 342:4, 390:24, 466:8, 512:23, 535:3
**occurring** [1] - 515:6
**OF** [4] - 302:1, 302:3, 302:12, 302:21
**offer** [1] - 562:25
**offhand** [1] - 592:25
**office** [21] - 307:6, 338:4, 338:24, 343:5, 343:7, 344:13, 385:9, 429:25, 476:1, 499:19, 505:3, 505:6, 531:14, 532:8, 539:16, 566:22, 611:11, 618:9, 618:17, 620:8, 623:14
**officer** [40] - 315:4, 322:17, 324:13, 324:22, 354:19, 366:20, 374:11, 374:12, 394:11, 397:1, 397:6, 397:17, 397:18, 397:20, 398:1, 398:8, 398:17, 398:18, 398:19, 399:2, 414:11, 461:22, 501:12, 521:23, 524:11, 524:13, 524:19, 524:23, 524:25, 525:3, 559:7, 560:4, 574:23, 574:24, 574:25, 603:11
**officer's** [5] - 396:23, 397:4, 397:12, 397:13, 397:25
**officers** [19] - 314:25, 344:6, 354:23, 355:3, 362:8, 362:16, 366:23, 367:12, 401:23, 452:16, 461:3, 461:7, 461:8, 461:13, 482:20, 524:13, 534:3, 558:25, 575:6

**Official** [1] - 303:8
**official** [8] - 403:20, 403:24, 513:1, 513:20, 513:24, 514:12, 515:12, 516:7
**officials** [1] - 356:12
**often** [3] - 346:16, 481:24, 584:13
**Often** [1] - 420:12
**old** [5] - 313:13, 313:22, 337:16, 383:19, 522:7
**once** [10] - 400:8, 428:22, 429:22, 483:11, 533:2, 542:20, 618:1, 621:4, 621:12, 622:10
**one** [110] - 309:23, 311:10, 311:16, 322:1, 322:5, 325:4, 326:10, 327:13, 335:7, 335:24, 340:3, 342:8, 342:12, 342:15, 344:12, 344:21, 350:15, 353:4, 353:8, 357:5, 357:21, 363:3, 372:8, 372:18, 372:19, 379:17, 384:17, 385:16, 389:17, 389:21, 392:16, 392:20, 393:2, 393:5, 393:8, 394:17, 395:5, 395:7, 395:24, 397:18, 401:20, 403:5, 405:18, 407:2, 409:7, 413:20, 414:15, 414:18, 417:9, 420:5, 427:14, 428:11, 440:13, 441:12, 442:17, 446:8, 446:16, 446:22, 450:13, 457:1, 457:9, 462:3, 466:7, 469:7, 471:20, 473:24, 479:25, 485:8, 488:19, 497:19, 504:9, 505:25, 506:18, 506:22, 508:12, 509:11, 514:22, 516:22, 518:18, 524:9, 524:13, 545:6, 545:11, 547:12, 549:4, 551:25, 560:25, 573:17, 581:11, 583:3, 583:13, 583:19, 584:7, 584:9, 584:13, 584:16, 584:19, 584:21, 584:23, 584:25, 598:10, 601:23, 602:15, 603:25, 609:10, 611:14, 613:10, 616:9, 616:12
**ones** [4] - 444:1, 445:9, 463:25, 469:7
**oooOooo** [1] - 623:19
**op** [2] - 420:22, 421:1
**open** [23] - 304:1, 322:13, 323:16, 323:17, 323:21, 332:24, 335:23, 343:14, 350:2, 350:4, 350:9, 365:7, 375:24, 392:13, 399:12, 409:5, 439:7, 439:8, 439:10, 439:14, 441:4, 445:2, 515:21
**opener** [2] - 505:11, 505:12
**opening** [2] - 307:18, 307:20
**operation** [1] - 420:25
**operational** [1] - 355:19
**opine** [1] - 354:8
**opinion** [8] - 348:10, 362:24, 362:25, 370:3, 502:12, 505:24, 513:17, 537:23
**opinions** [4] - 497:23, 498:1, 498:13, 596:19
**opportunity** [6] - 359:3, 454:24, 546:9, 566:10, 566:11, 601:11
**opposite** [2] - 332:20, 333:7
**option** [2] - 474:19, 605:20
**options** [2] - 360:8, 600:2
**orally** [1] - 620:18

**Order** [1] - 416:22
**order** [9] - 363:11, 383:25, 487:19, 505:5, 547:20, 565:22, 617:3, 621:1, 621:8
**ordering** [1] - 405:19
**Oregon** [1] - 429:25
**organizations** [1] - 588:6
**originally** [1] - 332:13
**otherwise** [5] - 357:16, 360:1, 446:11, 532:17, 582:4
**Otherwise** [2] - 403:12, 487:10
**ourselves** [1] - 468:1
**outcome** [4] - 408:2, 602:15, 613:18, 613:20
**outside** [6] - 316:4, 322:7, 407:18, 534:21, 535:3, 573:5
**outstanding** [1] - 622:2
**overall** [1] - 463:22
**overheard** [1] - 442:17
**overhearing** [1] - 443:14
**overheated** [1] - 555:21
**overlap** [4] - 513:16, 516:3, 516:11, 516:13
**overlaps** [1] - 513:1
**overnight** [1] - 315:7
**overreact** [1] - 515:3
**override** [1] - 547:22
**oversee** [1] - 430:1
**overtime** [3] - 418:8, 418:10, 418:20
**Overtime** [1] - 418:17
**own** [8] - 382:17, 400:3, 455:5, 510:20, 517:12, 605:7
**owned** [1] - 340:1

## P

**P.C** [1] - 302:21
**p.m** [1] - 590:9
**pace** [1] - 376:23
**page** [10] - 345:7, 387:6, 423:24, 444:15, 469:15, 500:7, 531:20, 559:9, 585:11, 619:7
**paid** [74] - 305:19, 306:3, 306:4, 306:6, 316:20, 317:5, 339:17, 339:20, 339:21, 359:9, 359:23, 379:8, 379:12, 379:19, 414:20, 414:21, 430:18, 443:24, 460:12, 464:18, 464:20, 466:15, 468:14, 469:8, 469:10, 469:11, 471:1, 471:2, 471:4, 471:7, 471:14, 471:22, 471:25, 472:2, 472:4, 473:24, 474:1, 474:12, 487:18, 487:19, 487:22, 488:2, 488:17, 489:19, 489:20, 492:25, 493:3, 493:16, 527:7, 527:10, 536:12, 536:15, 536:16, 542:8, 542:11, 560:9, 560:16, 560:20, 561:8, 561:12, 561:14, 568:11, 568:14, 568:25, 589:22, 590:4, 590:6, 590:12, 592:17, 605:3, 605:11, 615:18, 623:3
**pain** [1] - 462:22

**pairing** [1] - 571:22
**panic** [6] - 549:5, 550:1, 550:10, 550:19, 551:4, 551:15
**paper** [1] - 490:16
**papers** [1] - 446:1
**paralegal** [4] - 378:6, 378:20, 591:23, 592:6
**paralegals** [1] - 304:23
**parents** [4] - 314:6, 337:14, 564:2, 564:5
**part** [12] - 370:15, 373:18, 448:8, 451:17, 453:25, 508:22, 514:23, 532:14, 555:15, 582:24, 599:11, 607:2
**part-time** [1] - 453:25
**participate** [1] - 486:1
**participated** [1] - 433:3
**particular** [27] - 355:22, 363:5, 389:5, 389:15, 401:10, 403:14, 415:11, 423:6, 434:23, 435:13, 435:23, 463:5, 463:15, 463:16, 484:23, 502:6, 502:9, 505:25, 509:2, 515:12, 516:24, 516:25, 517:1, 549:15, 554:2
**particularly** [1] - 555:4
**particulars** [5] - 485:1, 501:24, 502:3, 502:10, 502:13
**parties** [12] - 306:19, 307:17, 321:25, 353:16, 361:5, 404:14, 443:14, 495:16, 528:19, 549:7, 593:18, 621:13
**parties'** [1] - 305:8
**partner** [3] - 435:21, 575:1, 578:21
**parts** [4] - 393:7, 394:3, 394:7, 505:15
**party** [2] - 522:12, 589:2
**passed** [4] - 431:13, 481:8, 557:3, 612:22
**passport** [1] - 505:5
**past** [9] - 316:16, 316:18, 322:23, 440:17, 448:3, 549:8, 581:17, 617:19, 617:22
**path** [1] - 448:3, 448:5
**patience** [6] - 392:14, 442:4, 501:6, 515:22, 617:18, 617:21
**patient** [3] - 405:20, 532:10, 548:21
**patients** [6] - 405:16, 531:18, 531:19, 532:5, 532:8, 570:6
**Pause** [2] - 593:23, 622:21
**pause** [1] - 402:11
**pay** [35] - 316:25, 317:10, 338:12, 407:12, 407:14, 407:18, 418:20, 418:21, 471:10, 473:18, 474:3, 474:4, 476:10, 488:14, 488:20, 488:22, 489:2, 489:3, 492:15, 493:6, 494:1, 561:19, 565:16, 568:5, 590:25, 592:20, 592:21, 593:7, 593:9, 594:3, 594:4, 605:14, 616:8, 616:11, 618:23
**paycheck** [1] - 489:12
**paying** [6] - 329:2, 474:7, 493:21, 493:23, 533:2, 594:18
**payments** [2] - 605:12, 605:16
**payroll** [3] - 561:1, 561:2, 561:3
**pays** [1] - 593:5

**PEACE** [1] - 302:16
**pediatric** [1] - 405:16
**Peggy** [1] - 304:5
**PEGGY** [1] - 302:12
**pending** [1] - 602:15
**people** [117] - 318:11, 318:25, 319:2, 320:16, 320:18, 320:20, 324:14, 328:1, 339:3, 340:20, 348:19, 349:2, 349:23, 351:15, 354:18, 356:6, 361:5, 362:7, 363:4, 369:1, 381:3, 389:16, 394:12, 403:13, 406:22, 408:13, 411:15, 424:8, 427:17, 430:11, 440:11, 442:10, 444:2, 444:5, 444:7, 444:8, 445:22, 452:10, 452:24, 453:3, 455:3, 455:5, 455:19, 457:16, 457:19, 463:4, 464:3, 465:17, 469:7, 470:21, 472:2, 472:3, 477:8, 477:18, 477:19, 482:4, 482:7, 482:24, 483:3, 496:14, 496:18, 498:17, 501:22, 504:24, 505:15, 511:15, 512:2, 512:14, 513:4, 513:16, 514:20, 514:22, 514:23, 515:3, 515:16, 516:25, 517:1, 517:5, 532:11, 546:21, 547:3, 549:16, 549:17, 549:21, 551:24, 559:1, 561:18, 563:24, 564:8, 564:20, 565:4, 565:11, 565:12, 565:15, 566:11, 566:12, 566:13, 574:18, 577:14, 578:4, 580:22, 581:2, 586:13, 586:18, 586:25, 589:9, 594:19, 594:23, 610:22, 611:12, 616:19, 617:11, 618:4, 619:3, 621:12, 623:1
**People** [2] - 402:2, 402:7
**people's** [2] - 570:7, 577:8
**percent** [3] - 420:4, 432:3, 507:1
**peremptories** [2] - 330:23, 620:11
**peremptory** [2] - 620:17, 622:10
**perfect** [2] - 449:23, 497:9
**perfectly** [3] - 403:19, 457:8, 581:5
**performance** [3] - 311:10, 311:13, 334:13
**perhaps** [3] - 442:19, 455:3, 602:11
**period** [18] - 339:1, 339:10, 340:13, 386:20, 509:25, 510:3, 510:19, 513:6, 513:15, 514:10, 515:10, 515:11, 515:13, 516:2, 516:3, 532:10, 593:25, 600:7
**permanent** [1] - 339:2
**permit** [1] - 493:9
**perpetrator** [1] - 575:19
**person** [113] - 320:23, 323:7, 332:7, 336:14, 350:19, 351:19, 352:6, 354:19, 357:11, 358:17, 363:5, 363:18, 363:20, 363:24, 369:9, 370:14, 376:4, 377:17, 388:12, 392:20, 392:24, 393:19, 393:20, 393:21, 395:12, 395:14, 395:17, 395:23, 395:24, 396:17, 397:2, 397:9, 398:10, 402:21, 402:23, 403:10, 410:1, 412:1, 412:9, 413:24, 414:15, 421:25, 424:7, 433:21, 434:7, 434:10,

434:12, 434:14, 447:21, 450:13, 457:2, 458:24, 461:23, 463:14, 463:15, 463:22, 478:4, 502:6, 506:18, 506:20, 506:22, 515:17, 516:22, 518:24, 519:3, 519:19, 520:3, 520:6, 521:9, 525:24, 547:9, 547:10, 547:13, 548:4, 561:1, 561:2, 563:23, 564:6, 564:25, 565:25, 573:8, 575:23, 577:23, 581:4, 581:8, 582:6, 582:7, 582:8, 582:13, 582:19, 582:20, 583:5, 583:15, 584:3, 584:4, 584:7, 584:13, 584:19, 584:21, 584:24, 587:12, 587:13, 596:17, 598:4, 604:9, 608:10, 610:20, 611:2, 611:4, 612:2, 617:10
**person's** [14] - 375:15, 389:19, 394:10, 400:3, 434:6, 461:19, 483:13, 485:11, 514:25, 583:21, 584:9, 584:17, 584:25, 598:3
**personal** [7] - 432:2, 452:2, 477:7, 517:12, 521:23, 563:21, 605:7
**personally** [2] - 440:17, 604:20
**Persons** [1] - 304:6
**perspective** [1] - 353:14
**Phil** [1] - 304:17
**PHILIP** [1] - 302:19
**phone** [10] - 476:4, 490:15, 493:10, 493:18, 494:6, 528:7, 528:20, 561:25, 563:9
**Phone** [1] - 303:8
**photographing** [1] - 304:7
**phrase** [1] - 439:16
**phrasing** [3] - 356:23, 437:1
**physical** [1] - 417:9
**physically** [1] - 568:22
**physician** [3] - 422:14, 422:16, 442:24
**pick** [10] - 313:17, 313:25, 331:9, 400:20, 496:22, 522:16, 531:7, 533:14, 618:3
**picked** [19] - 341:19, 350:11, 379:23, 384:4, 416:3, 467:16, 468:20, 470:17, 473:2, 474:6, 475:21, 476:6, 503:4, 532:20, 589:19, 609:1, 614:15, 615:15, 618:5
**picking** [1] - 518:9
**picture** [2] - 510:20, 512:14
**piece** [7] - 355:14, 357:3, 395:5, 403:1, 413:20, 512:14, 618:11
**PILMAR** [2] - 302:19, 304:20
**Pilmar** [1] - 304:17
**pizza** [2] - 522:13, 522:17
**Pizza** [1] - 522:14
**pizzas** [1] - 522:20
**place** [2] - 511:7, 621:7
**placed** [1] - 451:16
**places** [2] - 446:8, 486:16
**plainly** [1] - 409:18
**plan** [1] - 533:9
**planned** [2] - 460:6, 599:19
**planner** [1] - 490:13
**planning** [1] - 429:3

**plans** [5] - 428:17, 455:12, 455:20, 606:22, 607:9
**play** [3] - 463:13, 533:8, 577:11
**played** [1] - 305:7
**Plaza** [1] - 302:17
**plea** [9] - 332:10, 335:13, 335:16, 336:2, 336:4, 336:10, 336:18, 370:1, 370:5
**plead** [1] - 340:10
**pled** [1] - 336:16
**PLLC** [1] - 303:4
**plus** [1] - 465:22
**podcasts** [1] - 554:23
**podium** [33] - 310:19, 313:2, 318:2, 319:25, 324:3, 329:7, 346:2, 372:3, 377:4, 380:18, 406:11, 411:5, 415:22, 422:7, 422:9, 449:20, 449:21, 449:23, 451:8, 453:22, 479:13, 518:4, 526:24, 530:19, 544:19, 548:18, 556:16, 557:1, 567:4, 579:21, 586:5, 591:15, 606:16
**podiums** [1] - 460:2
**point** [30] - 305:9, 308:24, 322:3, 331:21, 331:25, 341:13, 344:13, 351:23, 372:8, 375:3, 375:7, 377:10, 440:13, 441:6, 446:16, 465:18, 467:7, 471:20, 473:4, 473:24, 479:25, 488:13, 490:4, 493:23, 503:3, 512:11, 528:9, 528:22, 544:11, 617:25
**pointed** [1] - 391:3
**Police** [3] - 324:13, 324:21, 377:10
**police** [48] - 314:19, 314:25, 315:4, 322:17, 332:5, 367:11, 373:16, 374:11, 374:12, 374:24, 377:11, 394:11, 396:22, 397:1, 397:6, 397:12, 397:13, 397:17, 397:18, 397:19, 397:25, 398:7, 398:17, 398:18, 399:1, 399:2, 401:23, 452:16, 461:2, 461:7, 461:13, 498:3, 501:12, 521:23, 524:11, 524:19, 524:23, 524:25, 534:3, 589:5, 604:4, 604:7, 604:12, 604:20
**policies** [1] - 493:21
**policy** [10] - 488:21, 489:1, 489:3, 492:14, 492:23, 493:6, 493:21, 493:22, 508:13, 527:7
**political** [2] - 318:20, 563:21
**popping** [1] - 524:15
**population** [1] - 477:13
**Port** [3] - 324:13, 324:21, 377:11
**Portland** [1] - 429:25
**posed** [1] - 610:20
**posing** [1] - 611:4
**position** [4] - 308:9, 363:2, 449:1, 449:7
**positions** [2] - 312:15, 324:18
**positive** [5] - 499:13, 604:7, 604:11, 622:24, 623:8
**possession** [1] - 537:18
**possibility** [7] - 308:10, 311:18, 327:14, 339:8, 339:10, 444:6, 547:17
**possible** [8] - 313:21, 365:7, 366:9,

390:8, 405:13, 408:11, 408:21, 444:4
**possibly** [4] - 365:15, 480:22, 533:4, 533:17
**post** [8] - 338:24, 343:4, 343:6, 344:13, 420:22, 421:1, 588:25, 589:3
**post-op** [2] - 420:22, 421:1
**Postal** [1] - 344:16
**postoperative** [1] - 462:22
**postoperative-care** [1] - 462:22
**postpone** [1] - 595:22
**postponed** [2] - 312:15, 595:21
**potential** [3] - 455:2, 455:22, 485:21
**potentially** [5] - 355:18, 455:13, 458:25, 462:15, 622:25
**practice** [2] - 422:19, 422:20
**praying** [1] - 613:19
**precise** [1] - 510:4
**preconceived** [2] - 321:24, 322:8
**preconception** [1] - 502:14
**predict** [2] - 481:24, 485:3
**predictability** [1] - 511:22
**preference** [1] - 445:19
**premise** [1] - 364:4
**prepare** [1] - 312:3
**prepared** [2] - 312:1, 422:1
**preponderance** [3] - 329:19, 600:23, 615:8
**present** [27] - 304:2, 327:20, 360:20, 368:1, 368:14, 368:17, 375:11, 389:5, 389:11, 392:13, 414:1, 414:4, 427:4, 436:11, 436:12, 436:14, 440:1, 441:25, 445:3, 457:23, 539:22, 545:15, 555:5, 562:14, 583:23, 584:23
**presentations** [1] - 413:8
**presented** [18] - 333:1, 351:19, 389:8, 394:15, 401:14, 407:16, 409:2, 413:6, 436:18, 448:20, 507:5, 516:16, 517:13, 524:5, 558:2, 566:12, 578:2, 578:13
**presenting** [2] - 562:21, 598:16
**presents** [1] - 368:11
**President** [1] - 424:3
**president** [1] - 424:10
**President's** [1] - 460:19
**presidents** [1] - 424:12
**presiding** [1] - 304:5
**pressure** [1] - 425:11
**presume** [4] - 376:4, 410:4, 410:5, 608:11
**presumed** [11] - 350:19, 351:15, 351:19, 356:17, 368:8, 413:25, 457:21, 558:2, 558:14, 608:7, 608:10
**presumption** [6] - 350:19, 353:22, 356:16, 357:3, 362:12, 608:3
**pretty** [12] - 308:18, 384:15, 448:6, 451:19, 475:19, 509:25, 518:12, 570:23, 577:7, 594:18, 607:23
**prevail** [2] - 489:2, 489:4
**prevent** [5] - 346:9, 439:9, 446:9, 563:22, 596:20

**previous** [1] - 326:9
**previously** [1] - 391:9
**primarily** [1] - 543:19
**primary** [1] - 446:8
**principle** [2] - 400:6, 558:1
**principles** [1] - 573:14
**private** [1] - 577:1
**privately** [1] - 335:6
**probability** [2] - 332:19, 468:8
**probable** [2] - 326:17, 363:11
**probation** [1] - 340:13
**probe** [1] - 401:6
**probing** [1] - 401:9
**problem** [28] - 314:11, 327:21, 328:4, 331:23, 354:24, 356:5, 356:20, 359:12, 365:3, 370:19, 370:23, 372:2, 376:13, 387:3, 425:11, 425:13, 440:7, 462:20, 465:25, 477:25, 507:2, 515:2, 518:23, 529:11, 529:15, 570:24, 605:12, 615:2
**problematic** [3] - 401:25, 428:10, 438:18
**problems** [4] - 346:12, 357:6, 370:6, 550:8
**procedure** [3] - 567:11, 599:12, 602:14
**proceed** [1] - 448:5
**proceedings** [2] - 304:6, 304:8
**process** [9] - 368:13, 420:12, 437:10, 458:15, 458:25, 486:1, 532:25, 614:6, 618:14
**producing** [1] - 553:12
**product** [1] - 508:14
**profession** [5] - 348:10, 362:20, 398:9, 401:2, 525:13
**professional** [6] - 316:17, 317:12, 362:24, 397:15, 398:6, 398:8
**professionals** [3] - 348:5, 363:16, 401:5
**professions** [1] - 399:10
**profile** [3] - 435:10, 435:14, 435:15
**program** [2] - 531:18, 532:4
**programs** [1] - 553:22
**prohibition** [1] - 304:7
**prohibitions** [1] - 304:9
**projects** [1] - 311:13
**promised** [1] - 433:19
**proof** [32] - 326:16, 326:17, 329:19, 329:22, 350:21, 364:18, 364:22, 365:10, 366:9, 368:4, 368:5, 368:11, 368:14, 374:4, 375:7, 375:12, 376:12, 389:2, 389:8, 393:17, 393:18, 394:4, 409:2, 413:22, 414:1, 448:10, 464:11, 504:11, 504:14, 600:23, 615:7
**proper** [1] - 621:8
**properly** [1] - 560:8
**property** [1] - 605:14
**proposal** [2] - 528:10, 620:17
**propose** [1] - 528:21
**prosecuted** [4] - 339:24, 534:23, 535:3, 575:19

**prosecuting** [1] - 534:20

**prosecution** [8] - 319:7, 322:19, 342:18, 350:3, 356:13, 357:9, 409:10

**prosecutor** [2] - 413:9, 498:3

**prosecutors** [2] - 362:5, 373:19

**prospective** [9] - 347:15, 347:21, 357:20, 365:25, 366:11, 380:15, 442:16, 617:16, 618:20

**PROSPECTIVE** [1330] - 310:23, 311:2, 311:6, 311:8, 311:20, 311:24, 312:3, 312:8, 312:12, 312:20, 313:5, 313:12, 313:16, 313:20, 314:1, 314:4, 314:10, 314:13, 314:21, 314:24, 315:5, 315:8, 315:11, 315:17, 315:22, 315:25, 316:2, 316:6, 316:9, 316:12, 316:15, 316:22, 316:25, 317:4, 317:9, 317:14, 317:20, 318:4, 318:13, 318:16, 318:24, 319:5, 319:9, 319:13, 319:24, 320:7, 320:9, 320:14, 320:17, 320:24, 321:3, 321:11, 321:20, 321:22, 322:4, 322:10, 322:15, 322:21, 323:9, 323:15, 323:23, 324:4, 324:7, 324:9, 324:19, 324:24, 325:1, 325:6, 325:8, 325:11, 325:13, 325:18, 325:22, 326:6, 326:9, 326:13, 326:19, 326:21, 326:25, 327:2, 327:6, 327:11, 327:16, 327:24, 328:3, 328:7, 328:12, 328:17, 328:19, 329:9, 329:12, 329:15, 329:21, 329:24, 330:1, 330:4, 330:8, 330:11, 330:15, 331:4, 331:7, 331:11, 331:14, 331:19, 331:23, 332:1, 332:4, 332:7, 332:16, 332:19, 332:22, 333:2, 333:5, 333:7, 333:11, 333:15, 333:18, 333:22, 333:24, 334:2, 334:5, 334:9, 334:13, 334:16, 334:20, 334:22, 335:3, 335:9, 335:25, 336:6, 336:10, 336:15, 336:19, 336:24, 337:5, 337:7, 337:13, 337:17, 337:21, 338:6, 338:17, 338:22, 338:24, 339:7, 339:12, 339:19, 339:25, 340:9, 340:18, 340:25, 341:3, 341:8, 341:11, 341:17, 341:20, 342:2, 343:17, 343:21, 344:1, 344:4, 344:10, 344:14, 344:17, 344:19, 344:23, 345:3, 346:11, 346:14, 346:21, 346:24, 347:2, 347:11, 347:14, 347:24, 348:1, 348:7, 348:15, 348:17, 348:20, 348:24, 349:3, 349:10, 349:15, 349:18, 349:21, 349:25, 350:4, 350:7, 350:13, 350:23, 351:1, 351:3, 351:13, 351:16, 351:20, 351:24, 352:2, 352:7, 352:10, 352:13, 352:16, 352:22, 352:25, 353:3, 357:24, 358:2, 358:7, 358:12, 358:15, 358:19, 358:23, 359:1, 359:5, 359:11, 359:13, 359:17, 359:20, 359:24, 360:4, 360:6, 360:10, 360:12, 360:15, 360:18, 360:21, 360:25, 361:3, 361:7, 361:9, 361:13, 361:25, 362:4, 362:13, 362:18, 363:9, 363:13, 363:19, 363:23, 364:1, 364:9,

364:12, 364:15, 364:19, 364:23, 365:2, 365:4, 365:8, 365:11, 365:15, 365:19, 365:22, 366:15, 366:18, 367:1, 367:8, 367:11, 367:14, 367:18, 367:20, 367:23, 368:3, 368:7, 368:9, 368:16, 368:19, 368:21, 368:25, 369:4, 369:11, 369:13, 369:16, 369:19, 369:23, 370:1, 370:7, 370:13, 370:21, 370:24, 371:2, 371:6, 371:10, 371:13, 371:18, 371:24, 372:3, 372:10, 372:12, 372:15, 372:18, 372:20, 372:24, 373:1, 373:4, 373:7, 373:11, 373:20, 374:3, 374:6, 374:10, 374:13, 374:16, 374:19, 374:23, 374:25, 375:2, 375:5, 375:9, 375:16, 375:18, 375:21, 375:24, 376:1, 376:3, 376:6, 376:10, 376:13, 376:17, 377:5, 377:9, 377:15, 377:19, 377:21, 378:1, 378:4, 378:7, 378:10, 378:14, 378:18, 378:21, 378:24, 379:4, 379:6, 379:10, 379:13, 379:15, 379:21, 379:24, 380:4, 380:8, 380:17, 380:20, 380:23, 381:1, 381:4, 381:9, 381:14, 381:16, 381:20, 381:23, 382:1, 382:3, 382:5, 382:7, 382:13, 382:16, 382:19, 383:1, 383:13, 383:16, 383:20, 383:23, 384:3, 384:22, 384:25, 385:4, 385:7, 385:10, 385:12, 385:15, 385:19, 385:25, 386:6, 386:11, 386:14, 386:22, 387:2, 387:4, 388:3, 388:7, 388:10, 388:17, 389:10, 389:24, 390:5, 390:9, 390:15, 390:18, 392:23, 394:5, 394:8, 394:18, 394:25, 395:8, 395:18, 396:1, 396:4, 396:10, 396:16, 397:7, 397:14, 397:22, 398:2, 398:4, 398:7, 398:14, 398:16, 398:20, 398:22, 399:4, 399:14, 399:20, 405:3, 405:6, 405:8, 405:15, 406:1, 406:3, 406:17, 407:2, 407:6, 407:12, 407:20, 408:1, 408:11, 408:21, 408:24, 409:9, 409:12, 409:16, 409:22, 410:2, 410:7, 410:9, 411:4, 411:11, 411:17, 411:21, 411:24, 412:7, 412:11, 412:17, 412:20, 413:5, 413:13, 413:17, 413:23, 414:2, 414:6, 414:12, 414:17, 414:23, 415:2, 415:18, 415:20, 416:1, 416:4, 416:7, 416:10, 416:14, 416:18, 417:2, 417:7, 417:13, 418:2, 418:4, 418:9, 418:14, 418:19, 418:21, 418:25, 419:2, 419:21, 420:2, 420:9, 420:14, 420:17, 420:19, 420:21, 420:25, 421:4, 421:7, 421:10, 421:17, 421:20, 422:12, 422:15, 422:17, 422:20, 422:23, 423:2, 423:7, 423:9, 423:12, 423:14, 423:16, 423:18, 423:20, 424:4, 424:6, 424:10, 424:13, 424:15, 424:17, 424:20, 424:22, 424:25, 425:3, 425:7, 425:10, 425:16, 425:18, 425:20, 425:23, 426:1, 426:5, 426:12, 426:14, 427:6, 427:9, 427:13, 427:24, 428:14, 428:18, 428:21,

429:4, 429:7, 429:10, 429:16, 429:21, 429:24, 430:3, 430:6, 430:9, 430:13, 430:19, 430:23, 431:3, 431:7, 431:12, 431:22, 432:1, 432:6, 432:12, 432:18, 432:23, 433:8, 433:14, 433:22, 433:25, 434:4, 434:13, 434:17, 434:21, 435:2, 435:6, 435:9, 435:15, 435:19, 435:22, 435:25, 436:17, 436:22, 436:24, 437:5, 437:9, 437:14, 437:17, 437:21, 440:4, 440:7, 440:10, 440:16, 440:25, 441:5, 441:10, 441:14, 441:16, 447:11, 447:14, 447:18, 447:22, 447:24, 448:2, 448:12, 448:17, 448:22, 448:25, 449:6, 449:10, 449:15, 449:25, 450:3, 450:10, 450:12, 450:16, 450:22, 451:1, 451:3, 451:10, 451:14, 451:23, 452:2, 452:5, 452:9, 452:12, 452:18, 452:22, 453:5, 453:9, 453:21, 454:1, 454:5, 454:9, 454:13, 454:16, 454:22, 455:1, 455:25, 456:4, 456:8, 456:10, 456:14, 456:17, 456:19, 456:21, 456:24, 457:3, 457:5, 457:11, 457:14, 457:22, 458:1, 458:5, 458:8, 458:13, 458:15, 458:20, 458:23, 459:5, 459:8, 459:11, 459:23, 460:4, 460:7, 460:9, 460:12, 460:17, 460:20, 461:4, 461:9, 461:17, 461:20, 461:24, 462:5, 462:8, 462:11, 462:14, 462:19, 463:3, 463:8, 463:11, 463:15, 463:19, 463:21, 463:24, 464:5, 464:8, 464:13, 464:21, 465:7, 465:11, 465:19, 465:21, 465:25, 467:4, 467:13, 467:19, 468:6, 468:9, 468:15, 468:23, 469:3, 469:5, 469:9, 470:8, 472:24, 473:6, 473:9, 473:13, 473:20, 473:25, 474:3, 474:5, 474:15, 474:18, 474:25, 475:5, 475:8, 475:11, 475:14, 475:20, 476:4, 476:12, 476:17, 476:19, 477:1, 477:5, 477:10, 477:16, 477:24, 478:6, 478:9, 478:18, 479:1, 479:18, 479:20, 479:23, 480:1, 480:5, 480:8, 480:12, 480:17, 480:21, 481:1, 481:5, 481:8, 481:13, 481:21, 482:2, 482:9, 482:13, 482:21, 483:2, 483:21, 483:24, 484:4, 484:9, 484:16, 484:25, 485:6, 485:10, 485:15, 485:18, 485:24, 486:9, 487:15, 488:4, 488:9, 488:15, 488:23, 489:5, 489:9, 489:22, 490:2, 490:7, 490:13, 490:17, 490:25, 491:5, 491:8, 491:11, 491:23, 492:1, 492:4, 492:17, 492:22, 493:1, 493:4, 493:8, 493:12, 493:15, 493:24, 494:3, 494:8, 494:13, 494:18, 494:23, 495:1, 495:3, 495:7, 495:11, 495:19, 495:23, 495:25, 496:5, 496:11, 496:16, 496:20, 496:25, 497:3, 497:5, 497:7, 497:10, 497:14, 497:16, 497:25, 498:4, 498:9, 498:14, 498:22, 499:2, 499:9, 499:20, 499:22, 499:25, 500:3, 500:5, 501:4, 501:7, 501:10, 501:13, 501:15,

501:20, 501:23, 502:1, 502:5, 502:8, 502:11, 502:16, 502:19, 502:23, 503:1, 503:6, 503:9, 503:12, 503:14, 503:17, 503:20, 503:23, 504:1, 504:5, 504:8, 504:12, 504:15, 504:18, 504:22, 505:14, 505:17, 505:22, 506:5, 506:14, 506:23, 507:8, 507:11, 507:14, 507:16, 507:20, 508:8, 508:16, 508:20, 508:24, 509:7, 509:9, 509:16, 509:20, 509:24, 510:5, 510:8, 510:10, 510:15, 510:22, 511:2, 511:5, 511:10, 511:13, 511:17, 511:23, 512:7, 512:11, 512:17, 512:20, 515:25, 516:4, 516:10, 516:18, 516:21, 516:23, 517:2, 517:9, 517:11, 517:15, 517:21, 517:24, 518:7, 518:10, 518:12, 518:15, 518:17, 518:25, 519:2, 519:9, 519:18, 520:7, 520:9, 520:11, 520:16, 521:12, 521:14, 521:21, 521:25, 522:4, 523:20, 523:24, 524:1, 524:15, 524:18, 524:22, 525:2, 525:6, 525:9, 525:14, 525:16, 525:19, 525:21, 525:25, 526:8, 526:15, 527:2, 527:5, 527:8, 527:11, 527:13, 527:16, 527:22, 530:25, 531:2, 531:10, 531:13, 531:17, 532:3, 532:7, 532:15, 532:22, 533:4, 533:13, 533:17, 533:21, 534:1, 534:4, 534:10, 534:18, 534:24, 535:1, 535:8, 535:13, 535:20, 536:2, 536:5, 536:8, 536:14, 536:17, 536:19, 536:21, 537:5, 537:9, 537:16, 537:23, 538:1, 538:7, 538:11, 538:13, 538:19, 538:24, 539:2, 539:7, 539:12, 539:18, 539:25, 540:3, 540:5, 540:7, 540:10, 540:12, 540:16, 540:20, 540:23, 541:1, 541:3, 541:5, 541:9, 541:12, 541:14, 541:19, 541:24, 542:3, 542:6, 542:10, 542:15, 542:22, 543:1, 543:6, 543:12, 543:15, 544:18, 545:1, 545:6, 545:17, 545:20, 546:1, 546:4, 546:7, 546:11, 546:14, 546:18, 546:24, 547:2, 547:5, 547:11, 547:15, 547:23, 548:1, 548:5, 548:8, 548:12, 548:20, 548:23, 549:2, 549:4, 549:13, 549:19, 549:23, 549:25, 550:16, 550:24, 551:10, 551:14, 551:21, 552:5, 552:9, 552:13, 552:19, 552:23, 553:2, 553:12, 553:15, 553:23, 554:1, 554:5, 554:8, 554:11, 554:14, 554:24, 555:1, 555:10, 555:15, 555:19, 556:4, 556:6, 556:9, 556:13, 556:18, 556:21, 557:3, 557:6, 557:8, 557:10, 557:12, 557:14, 557:17, 557:20, 557:22, 557:24, 558:8, 558:11, 558:13, 558:15, 558:22, 559:8, 560:5, 560:12, 560:14, 560:17, 560:21, 560:24, 561:1, 561:5, 561:9, 561:13, 561:17, 561:20, 561:23, 562:3, 562:7, 563:1, 563:3, 563:10, 563:17, 563:25, 564:2, 564:5, 564:18, 565:7, 565:9, 566:3,

566:5, 566:8, 566:16, 566:23, 567:10, 568:2, 568:17, 569:2, 569:10, 569:12, 569:15, 570:3, 570:5, 570:13, 570:17, 574:11, 574:20, 574:22, 575:7, 575:11, 575:13, 575:15, 575:18, 575:21, 576:3, 576:7, 576:10, 576:13, 576:16, 576:19, 576:23, 577:2, 577:7, 577:12, 578:12, 578:22, 579:2, 579:6, 579:11, 579:24, 580:2, 580:7, 580:13, 580:21, 581:9, 581:13, 581:16, 581:23, 582:10, 582:16, 582:21, 582:25, 583:2, 583:10, 583:16, 584:8, 584:18, 584:25, 585:7, 585:9, 586:4, 586:8, 586:11, 586:15, 586:17, 586:19, 586:22, 587:4, 587:7, 587:11, 587:15, 587:17, 587:20, 587:23, 587:25, 588:2, 588:4, 588:8, 588:10, 588:12, 588:16, 588:19, 588:22, 588:24, 589:2, 589:7, 589:12, 589:17, 589:20, 589:23, 590:2, 590:5, 590:8, 590:14, 590:17, 590:19, 590:23, 591:1, 591:4, 591:11, 591:19, 591:21, 591:24, 592:2, 592:4, 592:7, 592:10, 592:13, 592:16, 592:19, 592:24, 593:3, 593:6, 593:10, 593:13, 593:17, 594:11, 594:13, 594:15, 595:4, 595:12, 595:15, 595:18, 595:21, 596:1, 596:3, 596:6, 596:15, 596:22, 597:1, 597:4, 597:7, 597:11, 597:14, 597:17, 597:20, 597:23, 598:2, 598:13, 598:25, 599:4, 599:15, 599:20, 599:22, 599:25, 600:3, 600:5, 600:8, 600:12, 600:16, 600:18, 600:20, 601:1, 601:3, 601:6, 601:9, 601:13, 602:25, 603:3, 603:6, 603:9, 603:13, 603:17, 603:23, 604:2, 604:6, 604:13, 604:18, 604:23, 605:1, 605:5, 605:10, 605:19, 605:22, 606:3, 606:7, 606:17, 606:19, 606:23, 607:1, 607:4, 607:7, 607:11, 607:15, 607:18, 607:23, 608:2, 608:5, 608:12, 608:16, 608:19, 608:24, 609:2, 609:13, 609:16, 609:19, 609:22, 609:25, 610:7, 610:16, 610:18, 611:3, 611:6, 611:9, 611:16, 611:19, 611:22, 611:25, 612:5, 612:10, 612:16, 612:19, 612:23, 612:25, 613:3, 613:8, 613:11, 613:14, 613:17, 613:21, 613:24, 614:1, 614:3, 614:9, 614:14, 614:20, 614:24, 615:2, 615:6, 615:10, 615:12, 615:16, 615:19, 615:22, 616:1, 616:5

**Prospective** [116] - 310:17, 312:23, 312:25, 317:25, 319:19, 319:22, 323:24, 324:1, 327:1, 327:3, 328:20, 329:5, 330:17, 331:2, 336:25, 337:1, 338:8, 338:13, 343:15, 345:4, 346:1, 353:6, 361:19, 361:22, 376:18, 377:2, 380:9, 383:4, 383:11, 384:11, 384:19, 392:13, 399:22, 404:22, 406:4, 406:9, 410:16, 411:2, 415:7, 415:16, 417:18,

417:25, 419:7, 419:15, 421:21, 422:6, 426:16, 427:4, 428:2, 428:12, 437:23, 440:1, 441:20, 441:25, 447:9, 449:17, 449:19, 451:4, 451:6, 453:15, 453:16, 459:24, 460:1, 470:11, 472:22, 476:20, 476:24, 479:2, 479:11, 486:11, 487:12, 494:9, 494:11, 500:6, 501:1, 517:25, 518:2, 526:17, 526:23, 527:23, 530:17, 537:2, 537:3, 539:20, 539:22, 543:16, 544:16, 548:15, 548:17, 556:14, 563:12, 563:13, 566:25, 567:2, 567:21, 567:23, 570:18, 574:9, 579:18, 579:20, 585:10, 586:2, 591:12, 591:14, 594:17, 595:1, 599:6, 599:13, 601:18, 602:23, 606:13, 606:14, 606:15, 612:12, 612:14, 616:6
**protection** [1] - 383:25
**prove** [15] - 350:24, 351:9, 368:12, 368:24, 393:8, 395:23, 464:11, 545:15, 558:18, 562:15, 562:20, 565:22, 565:24, 608:15
**proved** [5] - 395:20, 400:10, 417:10, 545:5, 584:4
**proven** [14] - 350:20, 352:6, 356:18, 368:21, 369:7, 369:9, 369:10, 370:9, 376:6, 376:9, 389:12, 521:2, 535:25, 598:7
**proves** [3] - 389:8, 562:23, 608:8
**provide** [6] - 311:12, 311:16, 328:5, 370:12, 597:2, 597:3
**providing** [1] - 537:14
**proving** [1] - 558:17
**prudent** [2] - 620:15, 623:1
**PTO** [1] - 430:19
**public** [2] - 497:6, 537:18
**Public** [1] - 497:7
**puff** [1] - 411:12
**pull** [1] - 442:19
**pumping** [1] - 357:2
**punish** [2] - 340:19, 349:23
**punishment** [1] - 340:11
**purpose** [4] - 329:1, 516:24, 517:8, 599:11
**purposes** [1] - 517:7
**pursuant** [5] - 327:17, 370:5, 433:4, 544:24, 580:5
**pursued** [1] - 350:8
**put** [76] - 307:22, 310:19, 313:2, 318:5, 320:16, 324:5, 327:5, 329:7, 331:5, 337:8, 338:18, 346:5, 346:8, 359:6, 362:20, 365:14, 369:24, 380:19, 382:16, 384:24, 392:10, 398:25, 401:6, 419:17, 424:6, 427:7, 432:2, 432:8, 433:25, 446:1, 447:12, 448:25, 449:22, 451:8, 453:17, 457:5, 468:9, 475:22, 479:13, 494:14, 494:16, 495:5, 499:11, 508:6, 510:20, 512:4, 513:13, 516:14, 517:10, 517:12, 518:4, 522:20, 522:23, 524:17,

526:25, 529:4, 529:16, 533:5, 534:15, 537:6, 539:10, 548:18, 553:21, 554:17, 556:16, 563:15, 567:4, 568:10, 568:21, 574:12, 586:6, 587:13, 591:16, 595:6, 612:17, 612:20
**putting** [4] - 355:16, 507:9, 525:4, 525:6

## Q

**quadriplegic** [1] - 481:15
**qualified** [1] - 308:8
**qualify** [1] - 445:20
**quarter** [1] - 311:12
**quarterly** [1] - 420:3
**queries** [2] - 318:18, 318:19
**questioned** [3] - 305:4, 307:2, 610:2
**questioning** [8] - 314:15, 443:5, 443:11, 443:12, 445:19, 460:24, 507:25, 542:17
**questionnaire** [48] - 313:8, 318:8, 320:4, 324:11, 327:13, 328:21, 334:8, 337:10, 358:3, 359:6, 366:17, 377:7, 378:16, 381:6, 382:8, 382:11, 403:13, 406:20, 411:8, 425:5, 428:16, 447:19, 450:4, 451:12, 451:15, 453:23, 476:22, 482:16, 494:22, 494:24, 497:13, 501:9, 518:22, 527:4, 530:21, 537:11, 540:6, 544:20, 549:7, 553:22, 563:19, 567:6, 574:18, 580:3, 591:22, 595:8, 612:20, 619:1
**questionnaires** [4] - 307:12, 307:14, 603:2, 619:4
**questions** [124] - 305:16, 308:25, 309:10, 313:8, 314:18, 317:16, 318:8, 319:14, 320:3, 324:10, 328:14, 330:21, 331:6, 335:4, 337:9, 341:21, 341:24, 343:16, 344:24, 346:7, 347:25, 350:14, 352:19, 354:16, 355:25, 356:22, 358:1, 361:14, 366:17, 367:4, 372:5, 373:22, 376:23, 377:6, 379:25, 380:10, 380:21, 382:11, 383:15, 390:11, 392:16, 398:25, 399:15, 402:12, 404:17, 406:19, 411:7, 415:3, 417:19, 418:6, 419:17, 419:23, 427:21, 428:15, 431:5, 438:13, 440:2, 441:15, 442:5, 442:18, 446:3, 446:23, 447:17, 450:2, 451:11, 452:14, 453:23, 459:19, 459:20, 459:21, 464:15, 469:13, 472:12, 477:4, 479:15, 485:22, 486:13, 494:4, 494:21, 494:25, 495:6, 495:14, 496:8, 497:18, 501:8, 507:19, 508:9, 509:10, 515:15, 518:21, 526:10, 527:3, 528:12, 530:20, 533:19, 536:9, 537:10, 540:1, 540:4, 541:8, 544:20, 548:24, 552:22, 553:16, 562:8, 563:18, 567:5, 572:7, 572:20, 572:22, 573:3, 573:7, 574:14, 580:1, 586:7, 591:6, 596:14, 601:14, 603:1, 606:8, 608:1, 612:6, 618:7,
622:17
**quiet** [1] - 550:20
**quite** [11] - 321:19, 366:20, 381:6, 382:9, 382:13, 400:5, 451:17, 480:6, 480:13, 514:6, 551:15
**quote** [1] - 491:20

## R

**radio** [1] - 407:24
**raise** [4] - 353:4, 621:15, 621:17, 621:20
**raised** [2] - 381:22, 386:24
**raises** [1] - 403:18
**rarely** [1] - 314:25
**rate** [1] - 605:11
**rather** [4] - 317:3, 360:16, 454:20, 511:1
**re** [2] - 429:9, 466:15
**re-scheduled** [1] - 429:9
**re-scheduling** [1] - 466:15
**reach** [3] - 523:15, 542:20, 565:17
**reached** [4] - 306:11, 326:4, 326:5, 326:15, 375:7
**react** [2] - 481:24, 505:18, 517:3
**reacting** [1] - 506:15
**reaction** [2] - 448:12, 448:15
**Read** [2] - 423:20, 497:10
**read** [11] - 330:21, 423:17, 423:19, 477:12, 478:10, 497:13, 545:18, 553:6, 616:17, 616:18
**reading** [2] - 382:8, 497:11
**ready** [6] - 312:24, 319:20, 422:3, 438:4, 492:2, 572:1
**real** [9] - 380:4, 381:5, 417:1, 417:6, 417:8, 502:22, 506:2, 554:9, 614:4
**realize** [1] - 555:23
**realized** [1] - 477:17
**really** [45] - 316:2, 318:12, 318:20, 318:25, 321:8, 330:8, 330:9, 353:9, 362:18, 362:22, 370:7, 370:21, 372:3, 385:12, 385:15, 386:17, 407:12, 408:22, 408:23, 408:25, 416:20, 423:20, 432:13, 448:17, 455:18, 461:25, 465:8, 481:15, 482:10, 485:1, 496:13, 507:19, 519:23, 523:13, 525:25, 535:21, 548:2, 551:1, 568:19, 584:10, 595:12, 598:13, 598:14
**rearrange** [1] - 488:7
**reask** [2] - 350:17, 373:14
**reason** [29] - 325:20, 328:10, 328:12, 328:13, 330:2, 335:1, 341:18, 350:10, 352:23, 361:11, 379:22, 390:13, 403:12, 403:24, 416:2, 416:4, 425:8, 433:18, 439:6, 440:6, 443:11, 482:11, 525:7, 536:6, 542:13, 564:10, 601:7, 608:25, 615:13
**reasonable** [39] - 326:18, 329:23, 350:20, 352:6, 352:7, 356:18, 363:12, 368:12, 375:13, 389:8, 389:12, 389:18, 409:2, 412:9, 412:12, 412:14, 413:22, 414:1, 417:11, 436:16,
448:10, 448:21, 457:24, 464:12, 504:14, 506:19, 535:25, 545:5, 558:3, 558:18, 562:24, 565:22, 565:24, 584:5, 598:8, 600:24, 608:8, 608:15, 615:9
**reasons** [1] - 427:14
**rebroadcasting** [1] - 304:8
**receive** [1] - 477:19
**receiving** [1] - 439:9
**recently** [1] - 553:8
**recess** [2] - 404:13, 444:14
**Recess** [1] - 528:4
**reckless** [1] - 315:12
**recognize** [1] - 532:18
**reconfigure** [1] - 469:2
**record** [6] - 304:14, 443:10, 445:6, 528:5, 530:12, 530:13, 530:14, 622:23
**recording** [1] - 304:8
**recovering** [1] - 430:7
**red** [1] - 555:20
**redirect** [1] - 312:10
**reduce** [1] - 582:5
**reduced** [6] - 340:11, 370:1, 370:18, 433:11, 433:19, 597:6
**reference** [2] - 514:17
**references** [1] - 446:9
**referring** [2] - 546:11, 546:14
**reflects** [1] - 438:17
**refund** [1] - 607:13
**refundable** [1] - 541:4
**regard** [4] - 305:1, 366:20, 537:12, 577:23
**regarding** [3] - 477:19, 509:12, 573:3
**regardless** [2] - 414:10, 622:6
**Regardless** [1] - 473:3
**regards** [1] - 509:13
**registration** [1] - 523:1
**regular** [3] - 344:11, 348:19, 487:17
**regulations** [2] - 498:11, 498:15
**REID** [1] - 302:19
**Reid** [1] - 304:17
**reject** [1] - 512:3
**related** [4] - 321:1, 435:12, 506:7, 545:22
**relates** [1] - 342:13
**relationship** [1] - 581:2
**relax** [1] - 556:5
**relayed** [1] - 305:5
**release** [1] - 617:14
**released** [2] - 373:2, 404:3
**reliable** [13] - 390:10, 392:24, 393:10, 393:21, 396:8, 397:16, 397:20, 399:3, 401:15, 402:23, 461:19, 598:5, 598:6
**relief** [1] - 411:13
**religion** [1] - 446:9
**religious** [2] - 412:15, 563:21
**relive** [1] - 432:16
**rely** [2] - 375:22, 551:6
**remains** [1] - 616:18

**remember** [11] - 326:5, 329:15, 343:18, 343:21, 343:22, 386:23, 439:13, 454:20, 534:25, 592:25
**reminded** [1] - 304:7
**remote** [1] - 304:6
**remotely** [2] - 429:15, 430:11
**removal** [1] - 304:10
**removed** [1] - 529:9
**render** [12] - 315:24, 316:4, 332:25, 376:11, 392:21, 395:6, 412:4, 437:15, 448:9, 448:16, 448:23, 449:9
**rep** [1] - 568:10
**Repeat** [1] - 497:25
**repeat** [2] - 528:14, 545:11
**repetitive** [2] - 439:3, 440:6
**replacement** [1] - 529:10
**report** [6] - 332:5, 332:6, 409:18, 568:1, 594:9, 618:17
**reporter** [1] - 409:15
**Reporter** [2] - 303:7, 303:8
**reports** [1] - 312:5
**representation** [1] - 554:20
**Republic** [1] - 606:24
**request** [2] - 306:17, 392:15
**require** [11] - 400:2, 401:7, 401:12, 435:1, 436:13, 436:20, 545:14, 583:22, 584:16, 584:23, 597:22
**required** [4] - 402:5, 436:10, 437:6, 593:8
**requires** [3] - 403:3, 427:18, 456:16
**reschedule** [2] - 429:19, 470:21
**rescheduled** [6] - 421:3, 473:8, 479:22, 595:10, 596:8, 607:16
**rescheduling** [1] - 339:11
**research** [4] - 531:17, 532:4, 532:5, 594:20
**resentment** [4] - 455:9, 457:8, 457:18, 458:3
**respect** [5] - 353:20, 401:22, 445:18, 452:17, 573:7
**respond** [2] - 485:25, 562:6
**response** [8] - 369:20, 392:16, 438:12, 438:14, 461:1, 495:5, 508:13, 562:1
**responses** [2] - 482:16, 485:11
**responsibility** [2] - 373:4, 530:24
**responsible** [3] - 337:14, 405:18, 429:12
**rest** [5] - 307:4, 439:21, 445:20, 477:13, 553:13
**restaurant** [1] - 340:1
**restricted** [1] - 304:10
**restrooms** [1] - 346:16
**result** [7] - 304:9, 378:3, 406:25, 420:13, 481:11, 482:23, 613:7
**results** [4] - 421:8, 612:24, 613:2, 613:5
**resume** [3] - 307:10, 445:6, 528:2
**resumed** [1] - 528:4
**retired** [16] - 334:22, 349:15, 349:16, 385:5, 387:1, 387:2, 422:14, 422:16,

422:22, 424:21, 442:24, 518:14, 518:16, 542:9, 574:23, 574:24
**reunion** [1] - 428:24
**revenue** [1] - 508:17
**reversed** [1] - 328:24
**ride** [1] - 551:2
**riding** [2] - 388:10, 551:1
**rights** [1] - 525:3
**Rights** [1] - 486:18
**Rikers** [2] - 332:9, 480:16
**ringing** [1] - 431:8
**rise** [1] - 445:4
**Riverhead** [1] - 329:17
**rob** [1] - 511:6
**robbed** [1] - 503:11
**robbery** [6] - 386:10, 391:9, 391:17, 394:21, 603:25
**role** [2] - 305:7, 463:13
**rolling** [1] - 522:24
**Romance** [1] - 416:20
**room** [7] - 421:17, 421:19, 444:4, 478:24, 486:7, 570:14, 588:13
**rooting** [1] - 543:9
**rotates** [1] - 468:17
**roughly** [1] - 518:18
**roundabout** [1] - 485:19
**row** [1] - 569:8
**RPR** [1] - 303:7
**rule** [5] - 327:19, 407:19, 558:4, 562:16, 596:21
**rules** [6] - 484:19, 498:10, 498:15, 519:4, 519:15, 519:23
**ruling** [1] - 404:7
**run** [2] - 492:16, 493:25
**runs** [3] - 464:23, 531:17, 532:3
**rush** [1] - 333:4
**rushed** [1] - 478:11
**Ryan** [2] - 594:1, 620:25

---

## S

**safe** [2] - 571:8, 600:4
**safer** [1] - 508:15
**salary** [1] - 359:9
**sales** [2] - 381:12, 381:19
**salesperson** [1] - 592:15
**salt** [1] - 580:10
**sanctions** [2] - 304:9, 304:12
**SARITHA** [1] - 302:18
**Saritha** [1] - 304:15
**sat** [11] - 364:3, 386:9, 455:7, 487:22, 489:11, 504:6, 504:10, 542:19, 551:25, 600:10, 615:4
**Saturday** [30] - 429:5, 464:25, 467:1, 467:9, 468:13, 468:24, 470:24, 471:14, 473:8, 473:18, 474:9, 474:14, 474:17, 475:7, 475:9, 476:16, 487:18, 488:3, 491:1, 493:17, 568:4, 568:7, 568:11, 568:13, 568:19, 569:6, 569:19, 569:25, 570:8, 593:14

**Saturdays** [5] - 418:11, 418:25, 419:1, 471:4, 475:23
**saw** [11] - 329:13, 355:7, 388:19, 393:19, 395:24, 499:5, 546:15, 546:19, 604:18, 604:19, 616:9
**scale** [2] - 399:1, 401:7
**scammed** [1] - 610:20
**scammer** [1] - 611:24
**scan** [5] - 421:7, 573:23, 595:10, 595:19, 595:25
**scans** [1] - 420:4
**scenario** [14] - 395:24, 397:10, 468:12, 469:6, 474:11, 475:1, 511:14, 512:24, 515:5, 548:3, 552:1, 555:25, 569:9, 569:23
**schedule** [29] - 312:6, 338:25, 429:15, 464:24, 467:6, 467:7, 467:8, 467:9, 467:14, 467:25, 468:1, 468:3, 468:4, 468:10, 468:19, 470:19, 473:13, 473:18, 476:15, 487:16, 488:8, 488:10, 490:17, 490:22, 568:3, 568:8, 568:15, 569:12
**scheduled** [43] - 420:16, 420:22, 429:9, 467:11, 467:18, 467:20, 467:23, 469:10, 470:24, 473:4, 473:16, 474:1, 474:2, 474:12, 474:24, 475:6, 476:9, 487:16, 487:18, 488:4, 488:17, 488:18, 488:20, 489:2, 489:20, 490:9, 490:11, 490:19, 490:23, 491:4, 491:19, 491:21, 491:24, 492:5, 492:19, 492:20, 493:6, 493:22, 494:1, 567:12, 568:4, 569:1
**schedules** [1] - 313:17
**scheduling** [6] - 466:15, 467:15, 470:15, 474:8, 474:14, 475:4
**school** [9] - 388:18, 497:1, 497:6, 497:7, 531:6, 533:11, 550:6, 554:18, 603:4
**schooling** [1] - 363:1
**scientific** [1] - 393:25
**scramble** [2] - 468:21, 470:21
**scratching** [1] - 602:11
**scrutiny** [1] - 579:4
**search** [2] - 318:18, 318:19
**season** [2] - 526:2, 554:18
**seat** [3] - 404:24, 522:21, 622:11
**seatbelt** [2] - 522:23, 523:4, 523:10, 523:15
**seated** [4] - 445:5, 543:2, 618:21, 621:1
**seats** [2] - 621:5, 622:12
**second** [38] - 308:22, 312:21, 317:22, 338:4, 347:12, 350:15, 383:2, 384:10, 388:3, 391:8, 406:2, 410:15, 419:6, 421:16, 421:18, 438:7, 451:2, 453:14, 478:23, 486:7, 486:21, 488:19, 490:20, 491:15, 499:18, 500:1, 500:3, 500:4, 518:18, 539:16, 545:11, 548:13, 566:21, 567:18, 585:5, 594:11, 599:2, 618:17
**secretary** [1] - 484:2
**security** [7] - 435:8, 453:25, 454:3,

553:14, 586:14
**Security** [7] - 342:8, 342:11, 342:24, 343:25, 344:2, 349:14, 377:8
**security-wise** [1] - 553:14
**see** [101] - 307:15, 312:1, 314:2, 321:3, 321:6, 321:15, 321:19, 322:21, 322:22, 323:13, 326:3, 338:10, 339:13, 347:3, 349:12, 355:8, 367:5, 367:19, 369:20, 371:3, 379:12, 384:2, 384:12, 385:5, 389:24, 391:10, 392:2, 392:23, 394:10, 396:5, 396:18, 397:9, 398:22, 398:25, 401:19, 414:25, 416:25, 419:19, 421:9, 421:24, 421:25, 422:14, 424:18, 442:15, 443:10, 444:13, 449:4, 458:25, 462:12, 462:15, 463:3, 468:1, 468:12, 475:16, 476:5, 479:9, 481:10, 482:23, 490:5, 495:13, 496:7, 496:8, 499:2, 499:4, 499:7, 501:20, 505:21, 519:25, 520:19, 522:25, 524:4, 525:7, 525:10, 525:18, 527:15, 528:22, 532:8, 532:10, 541:7, 549:25, 554:20, 560:23, 560:25, 565:18, 572:3, 580:25, 584:22, 588:15, 590:15, 592:5, 592:8, 596:5, 598:16, 611:8, 618:16, 620:10, 620:25, 621:5, 622:7, 622:20
**seeing** [3] - 427:10, 532:4, 554:6
**seeking** [1] - 549:24
**seem** [3] - 401:9, 569:8, 572:2
**sees** [1] - 531:18
**segments** [2] - 477:21, 477:25
**seldom** [1] - 454:16
**selected** [1] - 542:22
**selection** [5] - 304:4, 442:9, 442:13, 445:6, 617:24
**SELECTION** [1] - 302:12
**self** [5] - 360:3, 370:8, 467:15, 468:1, 468:10
**self-defense** [1] - 370:8
**self-employed** [1] - 360:3
**self-schedule** [2] - 468:1, 468:10
**self-scheduling** [1] - 467:15
**semester** [2] - 451:17, 451:24
**send** [5] - 561:25, 562:5, 563:9, 590:21, 618:7
**senior** [1] - 522:12
**sense** [18] - 330:22, 332:21, 355:20, 395:10, 395:14, 395:18, 396:6, 396:8, 458:3, 458:21, 490:8, 564:19, 564:24, 570:19, 616:20, 619:5, 620:7, 621:17
**sentence** [8] - 340:11, 370:2, 370:18, 433:11, 433:19, 580:16, 582:6, 597:6
**sentenced** [1] - 340:9
**separate** [3] - 357:5, 400:2, 402:6
**separated** [1] - 400:3
**September** [5] - 557:10, 557:12, 557:13, 557:16, 608:14
**sequentially** [1] - 621:7
**serial** [1] - 554:23

**series** [1] - 416:18
**serious** [1] - 433:17
**serve** [12] - 311:16, 330:13, 334:25, 425:8, 425:13, 428:20, 431:1, 543:4, 566:21, 567:19, 575:24, 613:16
**served** [1] - 326:2
**Service** [1] - 344:16
**service** [11] - 339:4, 378:17, 432:5, 453:13, 497:1, 557:4, 557:9, 594:23, 600:10, 600:14, 605:11
**Services** [1] - 343:1
**services** [2] - 344:3, 430:14
**serving** [2] - 311:4, 574:25
**SESSION** [1] - 445:1
**session** [1] - 620:3
**set** [12] - 321:24, 322:8, 339:3, 440:23, 440:25, 441:13, 462:9, 468:20, 506:21, 512:9, 528:8
**settled** [1] - 542:23
**seven** [5] - 312:13, 465:15, 471:10, 571:10, 623:7
**several** [10] - 305:18, 346:19, 356:3, 356:4, 366:22, 393:6, 446:8, 488:12, 571:25
**sex** [1] - 477:12
**sexually** [1] - 399:7
**shake** [2] - 459:7, 482:6
**shall** [1] - 442:9
**shallow** [1] - 555:21
**SHANNON** [1] - 302:23
**Shannon** [1] - 304:22
**share** [1] - 531:9
**sharing** [1] - 388:25
**sharp** [1] - 622:1
**shedding** [1] - 529:9
**sheet** [1] - 428:6
**shift** [10] - 405:11, 405:12, 465:4, 468:16, 470:19, 470:22, 471:22, 472:1, 487:17, 568:6
**shifts** [12] - 405:14, 465:15, 466:16, 467:1, 468:24, 470:25, 471:2, 471:4, 473:24, 590:7, 593:12, 605:21
**shipping** [1] - 527:17
**shocked** [1] - 388:13
**short** [8] - 407:8, 467:5, 467:10, 468:2, 475:15, 487:25, 510:18, 569:22
**shot** [2] - 575:17, 575:23
**show** [8] - 307:6, 368:4, 389:3, 442:12, 443:20, 554:3, 554:15, 619:3
**showed** [4] - 412:8, 479:8, 554:18, 569:6
**shown** [2] - 445:10, 519:14
**shows** [5] - 416:15, 416:21, 423:5, 588:18, 598:16
**siblings** [2] - 337:14, 337:16
**side** [17] - 322:5, 409:7, 409:10, 422:9, 432:11, 435:16, 435:20, 438:9, 457:9, 458:24, 485:8, 485:9, 506:24, 524:9, 576:21, 597:21, 604:10
**Sidebar** [2] - 390:23, 466:22

**sidebar** [22] - 335:6, 335:10, 335:22, 342:3, 342:4, 343:13, 390:20, 390:24, 392:12, 427:4, 440:1, 466:5, 466:8, 512:21, 512:23, 515:21, 539:22, 620:18, 620:19, 620:20, 620:22, 621:14
**sides** [14] - 319:11, 321:2, 364:13, 376:2, 404:9, 413:3, 413:15, 414:12, 425:25, 445:25, 459:6, 459:12, 482:6, 549:18
**sign** [4] - 568:17, 568:20, 569:19, 604:19
**signed** [1] - 569:24
**significant** [1] - 400:15
**silent** [1] - 620:17
**similar** [3] - 515:15, 554:19, 554:20
**simply** [2] - 403:12, 569:24
**Simultaneous** [1] - 488:6
**sincere** [2] - 392:25, 402:23
**single** [5] - 383:19, 400:7, 402:5, 583:21, 596:17
**sister** [2] - 385:9, 424:25
**sisters** [2] - 385:16, 425:2
**sit** [35] - 316:14, 332:18, 334:12, 337:12, 346:22, 364:21, 369:5, 369:6, 411:23, 412:1, 412:3, 414:22, 425:21, 431:24, 442:1, 454:17, 455:16, 460:15, 462:16, 464:18, 465:2, 467:16, 473:2, 476:7, 481:20, 488:2, 531:11, 552:7, 552:17, 555:13, 566:11, 585:4, 590:10, 594:9, 617:17
**sits** [1] - 473:3
**sitting** [27] - 307:20, 315:15, 317:2, 339:17, 340:17, 346:9, 359:10, 360:2, 360:14, 383:18, 384:25, 405:4, 411:14, 446:10, 447:20, 449:4, 454:4, 466:24, 476:7, 518:23, 536:12, 555:8, 563:22, 590:24, 592:18, 595:24, 618:4
**situation** [10] - 306:18, 317:7, 321:8, 356:21, 431:17, 449:11, 465:9, 478:16, 478:17, 489:15, 506:16, 511:6, 524:1, 531:15, 533:6, 533:8, 598:1, 610:23
**situations** [3] - 358:22, 519:3, 533:7
**six** [4] - 468:16, 487:6, 509:17, 622:12
**Sixty** [1] - 574:5
**Sixty-nine** [1] - 574:5
**skip** [1] - 419:9
**slavery** [1] - 477:12
**sleep** [2] - 551:22, 552:3
**slight** [1] - 392:1
**slightest** [1] - 403:17
**slightly** [1] - 512:25
**slow** [1] - 409:14
**slowly** [1] - 582:1
**small** [2] - 512:13, 523:16
**smaller** [1] - 552:1
**smoothly** [2] - 553:14, 622:8
**so..** [1] - 392:8
**so...** [1] - 312:15

**social** [1] - 318:17
**societies** [1] - 505:13
**society** [6] - 351:5, 506:17, 509:1, 577:13, 578:6, 578:10
**softer** [1] - 528:17
**solely** [1] - 584:19
**solved** [1] - 529:15
**someone** [20] - 316:11, 324:12, 339:22, 354:18, 355:6, 367:22, 398:13, 402:22, 440:17, 499:12, 513:13, 524:11, 545:25, 547:17, 560:19, 575:23, 580:14, 583:20, 610:1, 610:13
**sometime** [1] - 557:19
**sometimes** [44] - 313:21, 328:1, 328:22, 328:23, 329:3, 346:25, 369:1, 389:16, 394:14, 394:15, 411:12, 417:4, 418:12, 445:22, 456:3, 458:11, 458:14, 507:12, 507:13, 519:5, 533:10, 534:13, 547:3, 550:18, 550:25, 551:4, 551:7, 551:10, 552:15, 555:16, 555:17, 555:20, 555:23, 561:18, 564:21, 565:3, 565:12, 566:9, 582:1, 583:23, 586:25, 588:10, 598:16, 621:18
**Sometimes** [1] - 418:11
**son** [6] - 314:6, 525:12, 525:16, 553:9, 591:23, 614:22
**son-in-law** [1] - 525:12
**son-in-law's** [1] - 525:16
**soon** [3] - 308:20, 438:5, 599:9
**Sorry** [4] - 419:21, 472:23, 480:9, 490:25
**sorry** [37] - 324:17, 330:10, 332:15, 341:3, 343:23, 361:23, 365:5, 365:19, 372:12, 372:21, 377:23, 399:19, 406:13, 406:14, 410:8, 427:20, 431:20, 450:21, 459:18, 479:21, 494:6, 507:22, 522:3, 523:7, 525:5, 530:5, 530:7, 557:3, 558:9, 560:6, 581:25, 593:20, 599:7, 609:6, 622:22, 623:11
**sort** [13] - 351:4, 362:19, 391:22, 402:7, 506:12, 511:19, 512:25, 514:7, 514:18, 571:6, 573:2, 610:19, 610:20
**sound** [3] - 392:24, 471:2, 550:14
**sounded** [4] - 466:19, 470:16, 471:20
**sounds** [13] - 357:14, 382:6, 392:24, 409:20, 440:5, 445:25, 497:9, 509:18, 524:6, 526:3, 582:7, 582:11, 606:4
**South** [2] - 477:18, 477:23
**Spanish** [4] - 416:6, 416:10, 477:13, 477:18
**spare** [1] - 422:25
**SPEAKER** [1] - 569:16
**speaking** [1] - 586:12
**Special** [1] - 304:18
**special** [5] - 423:2, 424:12, 425:3, 425:4, 550:3
**special-ed** [1] - 550:3
**specific** [21] - 327:20, 328:5, 399:8,

402:4, 435:18, 435:19, 436:10, 436:11, 436:14, 436:21, 516:14, 517:4, 545:14, 545:15, 562:14, 562:21, 562:25, 565:20, 583:23, 583:24
**specifically** [6] - 342:20, 433:1, 463:22, 541:21, 578:25, 609:10
**specifics** [1] - 516:16
**spectrum** [1] - 318:20
**spend** [1] - 410:3
**spending** [2] - 313:23, 517:20
**spent** [4] - 315:7, 400:19, 401:1, 402:12
**spiritual** [2] - 448:3, 448:5
**split** [1] - 531:3
**spot** [1] - 621:20
**spouse** [4] - 331:25, 420:2, 420:7, 421:5
**square** [1] - 621:12
**staff** [1] - 305:2
**stand** [8] - 319:25, 323:13, 384:21, 384:22, 411:5, 422:9, 449:23, 544:19
**standard** [13] - 326:20, 329:25, 352:12, 353:22, 363:10, 367:9, 367:15, 412:13, 504:11, 504:14, 600:22, 601:2, 615:11
**standards** [1] - 363:8
**standing** [4] - 348:5, 385:1, 463:6, 502:7
**stands** [1] - 604:21
**start** [32] - 307:3, 307:8, 307:18, 307:20, 307:24, 308:23, 313:9, 320:5, 337:11, 348:3, 356:22, 366:19, 383:17, 418:6, 419:24, 428:16, 438:4, 445:15, 445:21, 472:13, 477:6, 504:19, 530:21, 537:12, 540:9, 545:23, 548:25, 563:20, 567:6, 573:16, 590:9, 622:15
**Start** [1] - 417:20
**started** [10] - 308:1, 374:14, 438:6, 443:17, 522:23, 543:2, 550:1, 550:10, 614:11
**starting** [8] - 304:13, 309:2, 351:23, 429:11, 430:15, 514:14, 543:18, 564:12
**starts** [7] - 467:17, 470:17, 491:14, 502:15, 523:17, 540:24, 613:16
**state** [11] - 304:14, 311:21, 453:24, 592:20, 592:22, 593:3, 593:25, 594:2, 594:19, 600:24, 600:25
**statement** [3] - 362:2, 471:21, 502:2
**statements** [9] - 307:18, 307:21, 401:3, 401:8, 401:21, 401:23, 402:11, 438:22, 513:16
**STATES** [3] - 302:1, 302:3, 302:13
**States** [13] - 302:5, 302:16, 302:20, 304:4, 304:16, 342:25, 349:24, 381:25, 515:6, 534:20, 534:23, 535:3, 535:5
**stations** [1] - 551:3
**stay** [3] - 499:23, 570:11, 623:5
**Stay** [1] - 421:10

**stays** [1] - 488:10
**steal** [1] - 409:16
**stealing** [3] - 408:24, 409:1, 481:6
**stem** [1] - 516:5
**step** [12] - 313:1, 319:21, 324:3, 327:4, 329:6, 338:14, 347:22, 366:12, 377:3, 404:23, 579:21, 586:5
**Step** [1] - 419:16
**stepbrother** [1] - 575:16
**stew** [1] - 455:22
**stick** [1] - 584:8
**still** [31] - 308:10, 344:14, 353:21, 357:15, 364:22, 395:15, 396:9, 414:23, 429:1, 430:12, 436:15, 445:10, 448:23, 462:4, 464:10, 466:15, 469:8, 471:7, 486:21, 488:2, 488:20, 493:10, 494:1, 506:9, 510:20, 535:23, 538:10, 572:6, 580:23, 582:19, 621:9
**stolen** [3] - 406:23, 406:24, 408:19
**stop** [7] - 412:15, 493:23, 500:1, 564:12, 589:13, 599:9, 599:11
**stopped** [4] - 339:23, 358:22, 555:23, 610:2
**stops** [2] - 522:25, 551:3
**store** [1] - 381:18
**story** [1] - 537:17
**straight** [2] - 514:9, 552:6
**strategies** [1] - 550:17
**street** [2] - 388:23, 505:2
**Street** [2] - 302:22, 303:2
**streets** [1] - 321:17
**stress** [1] - 533:1
**stressful** [4] - 532:25, 533:7, 549:6, 550:15
**stressing** [1] - 571:14
**strike** [11] - 335:13, 353:12, 400:1, 400:17, 403:13, 438:12, 438:19, 452:25, 570:21, 572:4, 623:7
**striking** [2] - 403:19, 620:24
**stringent** [1] - 484:19
**strong** [5] - 461:2, 555:24, 577:7, 577:18, 578:9
**struck** [4] - 332:10, 336:3, 403:21, 529:19
**struggle** [9] - 433:5, 434:2, 438:16, 438:22, 439:5, 439:12, 439:17, 440:14
**students** [3] - 386:17, 388:5, 451:19
**study** [1] - 588:13
**studying** [1] - 588:1
**stuff** [10] - 348:8, 400:24, 409:12, 450:17, 452:6, 462:24, 503:1, 510:15, 565:18, 567:13
**stupid** [1] - 315:13
**subject** [2] - 508:18, 577:5
**subjective** [4] - 392:8, 392:19, 393:20, 394:10
**subparts** [1] - 428:10
**subset** [1] - 342:23
**substance** [2] - 577:16, 577:18

substances [3] - 484:12, 577:15, 578:14
substantive [2] - 341:24, 390:20
subway [3] - 408:7, 551:1, 551:2
successful [2] - 317:12, 350:6
successfully [1] - 552:15
sued [1] - 503:22
suffer [1] - 549:5
suffered [1] - 430:14
sufficient [3] - 391:15, 400:8, 402:6
suggest [2] - 390:20, 620:3
suggestion [1] - 357:1
Suite [2] - 303:2, 303:5
sum [1] - 448:2
sums [1] - 448:7
Sunday [31] - 464:25, 467:1, 467:9,
468:13, 468:24, 470:25, 471:4,
471:14, 473:8, 473:18, 474:9, 474:14,
474:17, 475:7, 475:9, 476:16, 487:19,
488:3, 491:2, 491:13, 492:9, 493:17,
568:5, 568:7, 568:11, 568:13, 568:19,
569:6, 569:19, 569:25, 570:8
Sundays [1] - 475:23
supervisor [1] - 418:14
supplies [1] - 405:19
support [2] - 462:10, 508:14
supporter [3] - 461:2, 462:1, 462:3
supportive [1] - 461:11
suppose [4] - 322:2, 343:11, 535:20,
535:22
supposed [17] - 401:16, 407:17, 421:23,
427:11, 440:20, 445:9, 461:18,
470:23, 483:7, 488:16, 492:7, 505:4,
558:8, 581:5, 596:7, 598:1, 613:8
supposedly [1] - 610:21
suppress [1] - 457:17
surely [1] - 501:10
surgery [3] - 420:3, 599:19, 599:24
surgical [1] - 599:25
surmised [1] - 403:25
surprised [1] - 571:18
surveillance [1] - 391:17
survey [5] - 311:11, 311:14, 311:18,
311:24, 312:4
suspected [1] - 466:14
sustained [1] - 448:6
sway [1] - 321:12
swayed [1] - 322:1
switching [1] - 605:20
system [11] - 388:18, 433:9, 437:10,
456:7, 456:16, 456:18, 481:11,
481:16, 504:3, 598:14, 598:15

## T

T.V [5] - 407:23, 416:15, 417:1, 417:3,
423:4
Tabares [1] - 304:23
table [1] - 355:17
taillight [1] - 610:8
tailor [1] - 522:6

tainted [1] - 351:10
Taiwan [1] - 381:22
target [1] - 355:20
taught [1] - 550:2
tax [4] - 502:22, 508:17, 603:20, 605:14
taxi [1] - 504:25
teach [5] - 386:19, 451:16, 564:2, 564:5,
588:15
teacher [3] - 385:6, 550:4, 554:21
teachers [3] - 399:6, 399:9
teaching [6] - 388:2, 405:20, 451:22,
451:23, 550:2
team [2] - 356:13, 429:25
tech [1] - 318:11
technical [1] - 349:4
technically [1] - 393:19
technique [2] - 545:15, 562:14
techniques [2] - 402:5, 550:23
television [2] - 415:14, 554:15
temporarily [1] - 533:11
ten [5] - 317:3, 357:4, 594:2, 605:6
tend [10] - 319:6, 325:4, 344:20, 367:7,
367:16, 367:21, 453:2, 551:15,
603:14, 604:11
tends [1] - 550:9
tentative [1] - 466:19
term [2] - 391:1, 487:25
terms [12] - 311:4, 359:4, 359:8, 378:17,
454:4, 485:10, 506:8, 550:7, 551:24,
563:21, 587:1, 587:2
terrible [1] - 464:6, 515:16, 515:18
terrorist [1] - 515:6
test [1] - 530:12
tested [1] - 622:24
testified [9] - 327:15, 397:19, 398:17,
398:18, 433:16, 499:5, 524:24,
537:22, 576:11
testifies [5] - 392:18, 397:1, 483:6,
538:4, 582:3
testify [26] - 336:4, 353:17, 367:25,
369:2, 369:18, 370:15, 394:4, 433:3,
440:11, 480:7, 498:18, 520:18,
544:24, 546:17, 558:19, 558:20,
558:21, 558:23, 559:2, 562:17,
566:13, 578:23, 581:19, 582:4, 582:5
testifying [29] - 323:6, 336:18, 344:7,
354:23, 355:3, 358:14, 362:8, 369:21,
370:5, 377:17, 392:18, 393:8, 393:12,
397:18, 433:4, 433:18, 440:12, 462:7,
483:10, 580:5, 580:10, 580:25, 581:2,
581:22, 582:4, 582:13, 583:12, 584:7
testimonies [1] - 393:1
testimony [95] - 335:18, 335:20, 336:8,
342:9, 342:10, 344:8, 354:21, 355:7,
355:10, 366:24, 370:12, 370:16,
389:20, 390:7, 390:9, 391:4, 392:22,
393:23, 394:10, 394:20, 395:5,
395:12, 396:23, 397:4, 397:12,
397:25, 399:13, 400:3, 400:7, 402:2,
402:6, 417:9, 434:24, 434:25, 435:4,

436:9, 436:23, 438:15, 439:7, 439:8,
439:14, 441:3, 452:21, 453:4, 454:8,
461:16, 461:23, 482:24, 483:13,
498:17, 498:21, 499:6, 501:18,
510:12, 516:6, 524:24, 533:24, 538:2,
545:3, 555:14, 559:3, 559:4, 562:19,
562:23, 575:9, 575:10, 576:22, 579:4,
580:4, 580:9, 580:10, 580:18, 581:21,
583:9, 583:25, 584:2, 584:11, 584:17,
584:25, 596:17, 597:2, 597:3, 597:8,
597:9, 598:4, 598:9, 598:10, 603:11,
609:15, 609:18, 611:17, 611:20, 612:3
Testimony [1] - 389:17
testing [1] - 623:8
tests [1] - 393:25
text [1] - 590:21
thanking [1] - 456:11
THE [3028] - 302:12, 302:21, 304:3,
304:24, 305:24, 306:23, 308:5, 308:7,
308:17, 308:20, 309:5, 309:9, 309:12,
309:14, 309:18, 309:21, 309:23,
309:25, 310:2, 310:4, 310:7, 310:10,
310:15, 310:18, 310:23, 310:24,
311:2, 311:3, 311:6, 311:7, 311:8,
311:18, 311:20, 311:23, 311:24,
312:1, 312:3, 312:6, 312:8, 312:11,
312:12, 312:18, 312:20, 312:21,
312:24, 313:1, 313:5, 313:7, 313:12,
313:15, 313:16, 313:18, 313:20,
313:25, 314:1, 314:2, 314:4, 314:8,
314:10, 314:11, 314:13, 314:17,
314:21, 314:22, 314:24, 315:3, 315:5,
315:6, 315:8, 315:9, 315:11, 315:14,
315:17, 315:21, 315:22, 315:23,
315:25, 316:1, 316:2, 316:3, 316:6,
316:7, 316:9, 316:10, 316:12, 316:13,
316:15, 316:19, 316:22, 316:24,
316:25, 317:2, 317:4, 317:7, 317:9,
317:13, 317:14, 317:15, 317:19,
317:20, 317:21, 317:24, 318:1, 318:4,
318:5, 318:13, 318:14, 318:16,
318:22, 318:24, 319:2, 319:5, 319:6,
319:9, 319:10, 319:13, 319:14,
319:17, 319:20, 319:23, 319:24,
319:25, 320:7, 320:8, 320:9, 320:12,
320:14, 320:16, 320:17, 320:18,
320:24, 320:25, 321:3, 321:10,
321:11, 321:18, 321:20, 321:21,
321:22, 321:23, 322:4, 322:5, 322:10,
322:13, 322:15, 322:16, 322:21,
323:5, 323:9, 323:12, 323:15, 323:21,
323:23, 323:25, 324:2, 324:4, 324:5,
324:7, 324:8, 324:9, 324:10, 324:17,
324:19, 324:20, 324:24, 324:25,
325:1, 325:2, 325:6, 325:7, 325:8,
325:9, 325:11, 325:12, 325:13,
325:14, 325:18, 325:19, 325:22,
325:23, 326:1, 326:6, 326:7, 326:9,
326:11, 326:13, 326:14, 326:19,
326:20, 326:21, 326:22, 326:25,

327:2, 327:4, 327:6, 327:7, 327:11,
327:12, 327:16, 327:17, 327:24,
328:1, 328:3, 328:4, 328:7, 328:8,
328:12, 328:13, 328:16, 328:17,
328:18, 328:19, 328:21, 329:3, 329:6,
329:9, 329:10, 329:12, 329:13,
329:15, 329:18, 329:21, 329:22,
329:24, 329:25, 330:1, 330:2, 330:4,
330:5, 330:8, 330:10, 330:11, 330:12,
330:15, 330:16, 330:18, 330:24,
331:1, 331:3, 331:4, 331:5, 331:7,
331:9, 331:11, 331:12, 331:14,
331:15, 331:19, 331:20, 331:23,
331:24, 332:1, 332:2, 332:4, 332:5,
332:7, 332:15, 332:16, 332:17,
332:19, 332:21, 332:22, 332:24,
333:2, 333:3, 333:5, 333:6, 333:7,
333:8, 333:11, 333:12, 333:15,
333:17, 333:18, 333:20, 333:22,
333:23, 333:24, 333:25, 334:2, 334:3,
334:5, 334:6, 334:9, 334:11, 334:13,
334:15, 334:16, 334:18, 334:20,
334:21, 334:22, 334:25, 335:3, 335:4,
335:7, 335:9, 335:11, 335:21, 335:24,
335:25, 336:1, 336:6, 336:7, 336:10,
336:13, 336:15, 336:16, 336:19,
336:20, 336:22, 336:24, 337:2, 337:5,
337:6, 337:7, 337:8, 337:13, 337:16,
337:17, 337:18, 337:21, 337:25,
338:3, 338:6, 338:7, 338:9, 338:14,
338:17, 338:18, 338:22, 338:23,
338:24, 339:5, 339:7, 339:8, 339:12,
339:16, 339:19, 339:21, 339:25,
340:8, 340:9, 340:14, 340:18, 340:22,
340:25, 341:2, 341:3, 341:4, 341:8,
341:10, 341:11, 341:16, 341:17,
341:18, 341:20, 341:21, 341:23,
342:1, 342:2, 342:3, 342:6, 342:14,
342:22, 343:2, 343:8, 343:10, 343:12,
343:16, 343:17, 343:18, 343:21,
343:24, 344:1, 344:3, 344:4, 344:5,
344:10, 344:12, 344:14, 344:16,
344:17, 344:18, 344:19, 344:20,
344:23, 344:24, 345:1, 345:3, 345:5,
346:2, 346:11, 346:13, 346:14,
346:17, 346:21, 346:22, 346:24,
347:1, 347:2, 347:3, 347:5, 347:9,
347:11, 347:12, 347:14, 347:20,
347:22, 347:24, 347:25, 348:1, 348:2,
348:7, 348:13, 348:15, 348:16,
348:17, 348:18, 348:20, 348:21,
348:24, 348:25, 349:3, 349:7, 349:10,
349:12, 349:15, 349:16, 349:18,
349:19, 349:21, 349:22, 349:25,
350:1, 350:4, 350:6, 350:7, 350:10,
350:13, 350:14, 350:18, 350:23,
350:24, 351:1, 351:2, 351:3, 351:11,
351:13, 351:14, 351:16, 351:18,
351:20, 351:21, 351:24, 351:25,
352:2, 352:4, 352:7, 352:9, 352:10,
352:11, 352:13, 352:14, 352:16,

352:17, 352:21, 352:22, 352:23,
352:25, 353:1, 353:3, 353:5, 353:7,
353:13, 354:2, 354:4, 354:10, 354:14,
355:12, 355:25, 356:25, 357:7,
357:15, 357:17, 357:18, 357:22,
357:24, 357:25, 358:2, 358:3, 358:7,
358:8, 358:12, 358:13, 358:15,
358:16, 358:19, 358:21, 358:23,
358:24, 359:1, 359:2, 359:5, 359:8,
359:11, 359:12, 359:13, 359:15,
359:17, 359:19, 359:20, 359:22,
359:24, 359:25, 360:4, 360:5, 360:6,
360:8, 360:10, 360:11, 360:12,
360:13, 360:15, 360:16, 360:18,
360:19, 360:21, 360:23, 360:25,
361:2, 361:3, 361:4, 361:7, 361:8,
361:9, 361:11, 361:13, 361:14,
361:17, 361:20, 361:23, 361:25,
362:1, 362:4, 362:5, 362:13, 362:14,
362:18, 363:7, 363:9, 363:10, 363:13,
363:14, 363:19, 363:20, 363:23,
363:24, 364:1, 364:7, 364:9, 364:10,
364:12, 364:14, 364:15, 364:17,
364:19, 364:20, 364:23, 364:24,
365:2, 365:3, 365:4, 365:6, 365:8,
365:9, 365:11, 365:13, 365:15,
365:16, 365:19, 365:20, 365:22,
365:24, 366:3, 366:6, 366:8, 366:12,
366:15, 366:16, 366:18, 366:19,
367:1, 367:5, 367:8, 367:10, 367:11,
367:13, 367:14, 367:16, 367:18,
367:19, 367:20, 367:21, 367:23,
367:24, 368:3, 368:5, 368:7, 368:8,
368:9, 368:10, 368:16, 368:17,
368:19, 368:20, 368:21, 368:23,
368:25, 369:1, 369:4, 369:5, 369:11,
369:12, 369:13, 369:14, 369:16,
369:17, 369:19, 369:20, 369:23,
369:24, 370:1, 370:4, 370:7, 370:10,
370:13, 370:14, 370:21, 370:23,
370:24, 370:25, 371:2, 371:3, 371:6,
371:8, 371:10, 371:11, 371:13,
371:16, 371:18, 371:19, 371:24,
372:1, 372:3, 372:4, 372:7, 372:10,
372:11, 372:12, 372:13, 372:15,
372:17, 372:18, 372:19, 372:20,
372:21, 372:24, 372:25, 373:1, 373:3,
373:4, 373:6, 373:7, 373:8, 373:11,
373:12, 373:15, 373:20, 373:21,
374:3, 374:5, 374:6, 374:9, 374:10,
374:12, 374:13, 374:14, 374:16,
374:18, 374:19, 374:21, 374:23,
374:24, 374:25, 375:1, 375:2, 375:3,
375:5, 375:6, 375:9, 375:10, 375:16,
375:17, 375:18, 375:19, 375:21,
375:22, 375:24, 375:25, 376:1, 376:2,
376:3, 376:4, 376:6, 376:8, 376:10,
376:11, 376:13, 376:15, 376:17,
376:19, 376:24, 377:1, 377:3, 377:5,
377:6, 377:9, 377:10, 377:15, 377:16,
377:19, 377:20, 377:21, 377:22,

378:1, 378:2, 378:4, 378:5, 378:7,
378:8, 378:10, 378:11, 378:14,
378:15, 378:18, 378:20, 378:21,
378:22, 378:24, 378:25, 379:4, 379:5,
379:6, 379:7, 379:10, 379:11, 379:13,
379:14, 379:15, 379:16, 379:21,
379:22, 379:24, 379:25, 380:3, 380:4,
380:6, 380:8, 380:10, 380:13, 380:16,
380:17, 380:18, 380:20, 380:21,
380:23, 380:24, 381:1, 381:2, 381:4,
381:8, 381:9, 381:12, 381:14, 381:15,
381:16, 381:18, 381:20, 381:21,
381:23, 381:24, 382:1, 382:2, 382:3,
382:4, 382:5, 382:6, 382:7, 382:10,
382:13, 382:15, 382:16, 382:18,
382:19, 382:20, 382:24, 383:1, 383:2,
383:5, 383:9, 383:12, 383:13, 383:14,
383:16, 383:17, 383:20, 383:21,
383:23, 384:2, 384:3, 384:6, 384:9,
384:12, 384:16, 384:20, 384:22,
384:23, 384:25, 385:2, 385:4, 385:5,
385:7, 385:8, 385:10, 385:11, 385:12,
385:13, 385:15, 385:18, 385:19,
385:21, 385:25, 386:1, 386:6, 386:8,
386:11, 386:12, 386:14, 386:21,
386:22, 386:25, 387:2, 387:3, 387:4,
387:5, 388:2, 388:3, 388:5, 388:7,
388:8, 388:10, 388:14, 388:17,
388:25, 389:10, 389:14, 389:24,
390:3, 390:5, 390:6, 390:9, 390:11,
390:13, 390:15, 390:16, 390:18,
390:21, 391:7, 391:19, 392:2, 392:7,
392:11, 392:14, 392:23, 393:4, 394:5,
394:7, 394:8, 394:14, 394:18, 394:19,
394:25, 395:1, 395:8, 395:13, 395:18,
395:22, 396:1, 396:2, 396:4, 396:7,
396:10, 396:13, 396:16, 396:18,
396:25, 397:7, 397:11, 397:14,
397:17, 397:22, 397:24, 398:2, 398:3,
398:4, 398:5, 398:7, 398:11, 398:14,
398:15, 398:16, 398:17, 398:20,
398:21, 398:22, 398:24, 399:4,
399:12, 399:14, 399:15, 399:18,
399:20, 399:21, 399:23, 401:1, 402:9,
403:10, 403:23, 404:2, 404:6, 404:14,
404:17, 404:23, 405:3, 405:4, 405:6,
405:7, 405:8, 405:13, 405:15, 405:24,
406:1, 406:2, 406:3, 406:5, 406:10,
406:12, 406:13, 406:15, 406:17,
406:18, 407:2, 407:3, 407:6, 407:8,
407:12, 407:14, 407:20, 407:21,
408:1, 408:3, 408:11, 408:12, 408:21,
408:23, 408:24, 409:1, 409:9, 409:11,
409:12, 409:14, 409:16, 409:20,
409:22, 409:23, 410:2, 410:4, 410:7,
410:8, 410:9, 410:11, 410:14, 410:17,
410:20, 411:1, 411:3, 411:4, 411:5,
411:11, 411:14, 411:17, 411:18,
411:21, 411:22, 411:24, 411:25,
412:7, 412:8, 412:11, 412:13, 412:17,
412:18, 412:20, 412:21, 413:5,

413:11, 413:13, 413:14, 413:17,
413:18, 413:21, 413:23, 413:24,
414:2, 414:3, 414:6, 414:7, 414:12,
414:14, 414:17, 414:19, 414:23,
414:25, 415:2, 415:3, 415:5, 415:8,
415:11, 415:15, 415:17, 415:18,
415:19, 415:20, 415:21, 416:1, 416:2,
416:4, 416:5, 416:7, 416:8, 416:10,
416:12, 416:14, 416:15, 416:18,
416:21, 417:2, 417:3, 417:7, 417:8,
417:13, 417:14, 417:16, 417:19,
417:22, 418:1, 418:2, 418:3, 418:4,
418:5, 418:9, 418:13, 418:14, 418:15,
418:19, 418:20, 418:21, 418:23,
418:25, 419:1, 419:2, 419:5, 419:8,
419:16, 419:21, 419:22, 420:2, 420:7,
420:9, 420:11, 420:14, 420:15,
420:17, 420:18, 420:19, 420:20,
420:21, 420:24, 420:25, 421:2, 421:4,
421:5, 421:7, 421:9, 421:10, 421:14,
421:17, 421:18, 421:20, 421:22,
422:3, 422:5, 422:7, 422:12, 422:13,
422:15, 422:16, 422:17, 422:18,
422:20, 422:21, 422:23, 422:24,
423:2, 423:3, 423:7, 423:8, 423:9,
423:10, 423:12, 423:13, 423:14,
423:15, 423:16, 423:17, 423:18,
423:19, 423:20, 423:21, 423:23,
424:2, 424:4, 424:5, 424:6, 424:7,
424:10, 424:11, 424:13, 424:14,
424:15, 424:16, 424:17, 424:18,
424:20, 424:21, 424:22, 424:23,
424:25, 425:1, 425:3, 425:4, 425:7,
425:8, 425:10, 425:14, 425:16,
425:17, 425:18, 425:19, 425:20,
425:21, 425:23, 425:24, 426:1, 426:2,
426:5, 426:6, 426:10, 426:12, 426:13,
426:14, 426:15, 426:17, 426:21,
426:24, 427:3, 427:5, 427:6, 427:7,
427:9, 427:11, 427:13, 427:20,
427:23, 427:24, 428:1, 428:3, 428:8,
428:13, 428:14, 428:15, 428:18,
428:19, 428:21, 429:1, 429:4, 429:6,
429:7, 429:8, 429:10, 429:14, 429:16,
429:19, 429:21, 429:22, 429:24,
430:2, 430:3, 430:5, 430:6, 430:7,
430:9, 430:10, 430:13, 430:17,
430:19, 430:21, 430:23, 431:1, 431:3,
431:4, 431:7, 431:10, 431:12, 431:20,
431:22, 431:23, 432:1, 432:4, 432:6,
432:10, 432:12, 432:16, 432:18,
432:19, 432:23, 432:24, 433:8,
433:13, 433:14, 433:16, 433:22,
433:24, 433:25, 434:3, 434:4, 434:5,
434:13, 434:14, 434:17, 434:18,
434:21, 434:22, 435:2, 435:4, 435:6,
435:7, 435:9, 435:13, 435:15, 435:18,
435:19, 435:20, 435:22, 435:23,
435:25, 436:1, 436:7, 436:17, 436:20,
436:22, 436:23, 436:24, 437:3, 437:5,
437:7, 437:9, 437:11, 437:14, 437:15,

437:17, 437:18, 437:20, 437:21,
437:22, 437:24, 438:3, 438:20,
439:11, 439:18, 440:2, 440:4, 440:5,
440:7, 440:8, 440:10, 440:11, 440:16,
440:22, 440:25, 441:2, 441:5, 441:6,
441:10, 441:11, 441:14, 441:15,
441:16, 441:17, 441:19, 441:21,
442:1, 442:17, 442:24, 443:2, 443:13,
444:1, 444:13, 445:4, 445:5, 445:13,
445:17, 445:24, 446:14, 446:18,
446:21, 447:2, 447:6, 447:10, 447:11,
447:12, 447:14, 447:16, 447:18,
447:19, 447:22, 447:23, 447:24,
447:25, 448:2, 448:8, 448:12, 448:14,
448:17, 448:19, 448:22, 448:23,
448:25, 449:4, 449:6, 449:8, 449:10,
449:14, 449:15, 449:18, 449:20,
449:21, 449:22, 449:25, 450:1, 450:3,
450:4, 450:10, 450:11, 450:12,
450:15, 450:16, 450:21, 450:22,
450:25, 451:1, 451:2, 451:3, 451:5,
451:7, 451:10, 451:11, 451:14,
451:22, 451:23, 451:25, 452:2, 452:4,
452:5, 452:8, 452:9, 452:10, 452:12,
452:13, 452:18, 452:19, 452:22,
453:2, 453:5, 453:8, 453:9, 453:10,
453:13, 453:17, 453:21, 453:22,
454:1, 454:2, 454:5, 454:6, 454:9,
454:10, 454:13, 454:14, 454:16,
454:17, 454:22, 454:23, 455:1,
455:24, 455:25, 456:2, 456:4, 456:6,
456:8, 456:9, 456:10, 456:12, 456:14,
456:15, 456:17, 456:18, 456:19,
456:20, 456:21, 456:22, 456:24,
457:1, 457:3, 457:4, 457:5, 457:7,
457:11, 457:13, 457:14, 457:15,
457:22, 457:23, 458:1, 458:2, 458:5,
458:6, 458:8, 458:10, 458:13, 458:14,
458:15, 458:16, 458:20, 458:21,
458:23, 459:2, 459:5, 459:6, 459:8,
459:9, 459:11, 459:13, 459:18,
459:21, 459:23, 459:25, 460:2, 460:4,
460:5, 460:7, 460:8, 460:9, 460:10,
460:12, 460:15, 460:17, 460:18,
460:20, 460:22, 461:1, 461:4, 461:5,
461:9, 461:15, 461:17, 461:18,
461:20, 461:21, 461:24, 462:3, 462:5,
462:6, 462:8, 462:9, 462:11, 462:12,
462:14, 462:15, 462:19, 463:1, 463:3,
463:5, 463:8, 463:9, 463:11, 463:12,
463:15, 463:17, 463:19, 463:20,
463:21, 463:23, 463:24, 463:25,
464:5, 464:6, 464:8, 464:10, 464:13,
464:14, 464:17, 464:21, 465:6, 465:7,
465:9, 465:11, 465:17, 465:19,
465:20, 465:21, 465:24, 465:25,
466:1, 466:5, 466:7, 466:13, 466:21,
466:23, 467:4, 467:11, 467:13,
467:16, 467:19, 468:4, 468:6, 468:8,
468:9, 468:12, 468:15, 468:19,
468:23, 469:1, 469:3, 469:4, 469:5,

469:6, 469:9, 469:12, 470:3, 470:6,
470:8, 470:9, 470:12, 470:20, 471:12,
471:19, 471:24, 472:10, 472:16,
472:19, 472:23, 472:24, 472:25,
473:6, 473:7, 473:9, 473:11, 473:13,
473:15, 473:20, 473:23, 473:25,
474:2, 474:3, 474:4, 474:5, 474:11,
474:15, 474:16, 474:18, 474:21,
474:23, 474:25, 475:1, 475:5, 475:6,
475:8, 475:10, 475:11, 475:13,
475:14, 475:17, 475:20, 475:24,
476:4, 476:6, 476:12, 476:13, 476:17,
476:18, 476:19, 476:21, 476:25,
477:1, 477:3, 477:5, 477:6, 477:10,
477:11, 477:16, 477:22, 477:24,
478:4, 478:6, 478:7, 478:9, 478:17,
478:18, 478:22, 479:1, 479:3, 479:8,
479:12, 479:18, 479:19, 479:20,
479:21, 479:23, 479:24, 480:1, 480:2,
480:5, 480:7, 480:8, 480:9, 480:12,
480:14, 480:17, 480:18, 480:21,
480:24, 481:1, 481:3, 481:5, 481:7,
481:8, 481:10, 481:13, 481:18,
481:21, 481:23, 482:2, 482:3, 482:9,
482:10, 482:13, 482:17, 482:21,
482:22, 483:2, 483:6, 483:21, 483:22,
483:24, 483:25, 484:4, 484:5, 484:9,
484:11, 484:16, 484:21, 484:25,
485:3, 485:6, 485:8, 485:10, 485:13,
485:15, 485:17, 485:18, 485:23,
485:24, 486:3, 486:6, 486:9, 486:10,
486:12, 486:15, 486:21, 486:24,
487:2, 487:5, 487:8, 487:13, 487:15,
487:25, 488:4, 488:5, 488:7, 488:9,
488:11, 488:15, 488:16, 488:23,
489:1, 489:5, 489:6, 489:9, 489:17,
489:22, 489:24, 490:2, 490:3, 490:7,
490:11, 490:13, 490:16, 490:17,
490:23, 490:25, 491:3, 491:5, 491:6,
491:8, 491:10, 491:11, 491:18,
491:23, 491:24, 492:1, 492:3, 492:4,
492:14, 492:17, 492:18, 492:22,
492:23, 493:1, 493:2, 493:4, 493:5,
493:8, 493:9, 493:12, 493:13, 493:15,
493:20, 493:24, 493:25, 494:3, 494:4,
494:6, 494:8, 494:10, 494:12, 494:13,
494:14, 494:18, 494:19, 494:23,
494:24, 495:1, 495:2, 495:3, 495:4,
495:7, 495:8, 495:11, 495:13, 495:19,
495:21, 495:23, 495:24, 495:25,
496:1, 496:5, 496:7, 496:11, 496:13,
496:16, 496:17, 496:20, 496:22,
496:25, 497:2, 497:3, 497:4, 497:5,
497:6, 497:7, 497:8, 497:10, 497:11,
497:14, 497:15, 497:16, 497:17,
497:25, 498:1, 498:4, 498:6, 498:9,
498:12, 498:14, 498:16, 498:22,
498:24, 499:2, 499:4, 499:9, 499:14,
499:17, 499:20, 499:21, 499:22,
499:23, 499:25, 500:1, 500:3, 500:4,
500:5, 501:2, 501:4, 501:6, 501:7,

501:8, 501:10, 501:11, 501:13,
501:14, 501:15, 501:16, 501:20,
501:21, 501:23, 501:25, 502:1, 502:3,
502:5, 502:6, 502:8, 502:9, 502:11,
502:12, 502:16, 502:17, 502:19,
502:20, 502:23, 502:24, 503:1, 503:3,
503:6, 503:7, 503:9, 503:10, 503:12,
503:13, 503:14, 503:15, 503:17,
503:18, 503:20, 503:21, 503:23,
503:24, 504:1, 504:2, 504:5, 504:6,
504:8, 504:9, 504:12, 504:13, 504:15,
504:16, 504:18, 504:19, 504:22,
505:12, 505:14, 505:15, 505:17,
505:18, 505:22, 505:23, 506:5,
506:11, 506:14, 506:15, 506:23,
507:3, 507:8, 507:9, 507:11, 507:12,
507:14, 507:15, 507:16, 507:18,
507:20, 507:23, 508:1, 508:8, 508:9,
508:12, 508:16, 508:17, 508:20,
508:21, 508:24, 509:4, 509:7, 509:8,
509:9, 509:10, 509:14, 509:16,
509:18, 509:20, 509:21, 509:24,
510:2, 510:5, 510:7, 510:8, 510:9,
510:10, 510:12, 510:15, 510:18,
510:22, 510:24, 511:2, 511:4, 511:5,
511:9, 511:10, 511:12, 511:13,
511:14, 511:17, 511:18, 511:23,
511:24, 512:7, 512:8, 512:11, 512:13,
512:17, 512:18, 512:20, 512:22,
513:7, 513:10, 513:12, 513:15,
513:22, 513:25, 514:3, 514:9, 514:15,
515:3, 515:5, 515:10, 515:20, 515:22,
515:25, 516:1, 516:4, 516:5, 516:10,
516:11, 516:18, 516:20, 516:21,
516:22, 516:23, 516:24, 517:2, 517:3,
517:9, 517:10, 517:11, 517:12,
517:15, 517:16, 517:19, 517:21,
517:22, 517:24, 518:1, 518:3, 518:7,
518:8, 518:10, 518:11, 518:12,
518:13, 518:15, 518:16, 518:17,
518:20, 518:25, 519:1, 519:2, 519:7,
519:9, 519:11, 519:18, 519:19, 520:7,
520:8, 520:9, 520:10, 520:11, 520:14,
520:16, 520:17, 521:12, 521:13,
521:14, 521:15, 521:21, 521:24,
521:25, 522:3, 522:4, 523:19, 523:20,
523:22, 523:24, 523:25, 524:1, 524:3,
524:15, 524:17, 524:18, 524:19,
524:22, 524:23, 525:2, 525:5, 525:6,
525:7, 525:9, 525:10, 525:14, 525:15,
525:16, 525:18, 525:19, 525:20,
525:21, 525:23, 525:25, 526:3, 526:8,
526:9, 526:13, 526:15, 526:18,
526:22, 526:24, 527:2, 527:3, 527:5,
527:6, 527:8, 527:9, 527:11, 527:12,
527:13, 527:15, 527:16, 527:20,
527:22, 527:24, 528:5, 528:13,
528:14, 528:15, 528:16, 528:18,
528:19, 528:24, 528:25, 529:2, 529:3,
529:7, 529:15, 529:21, 529:24, 530:2,
530:6, 530:9, 530:11, 530:14, 530:18,

530:25, 531:1, 531:2, 531:8, 531:10,
531:11, 531:13, 531:16, 531:17,
532:2, 532:3, 532:6, 532:7, 532:11,
532:15, 532:18, 532:22, 533:1, 533:4,
533:9, 533:13, 533:14, 533:17,
533:18, 533:21, 533:22, 534:1, 534:2,
534:4, 534:5, 534:10, 534:13, 534:18,
534:19, 534:24, 534:25, 535:1, 535:2,
535:8, 535:9, 535:13, 535:14, 535:20,
535:23, 536:2, 536:3, 536:5, 536:6,
536:8, 536:9, 536:11, 536:14, 536:16,
536:17, 536:18, 536:19, 536:20,
536:21, 536:22, 536:25, 537:4, 537:5,
537:6, 537:9, 537:10, 537:16, 537:20,
537:23, 537:25, 538:1, 538:3, 538:7,
538:8, 538:11, 538:12, 538:13,
538:17, 538:19, 538:22, 538:24,
538:25, 539:2, 539:3, 539:7, 539:10,
539:12, 539:15, 539:18, 539:19,
539:21, 539:23, 539:25, 540:1, 540:3,
540:4, 540:5, 540:6, 540:7, 540:8,
540:10, 540:11, 540:12, 540:14,
540:16, 540:17, 540:20, 540:22,
540:23, 540:25, 541:1, 541:2, 541:3,
541:4, 541:5, 541:7, 541:9, 541:10,
541:12, 541:13, 541:14, 541:16,
541:19, 541:20, 541:24, 541:25,
542:3, 542:4, 542:6, 542:7, 542:10,
542:12, 542:15, 542:16, 542:19,
542:22, 542:25, 543:1, 543:3, 543:6,
543:7, 543:10, 543:12, 543:13,
543:15, 543:17, 543:23, 544:1, 544:4,
544:7, 544:11, 544:15, 544:17,
544:18, 544:19, 545:1, 545:2, 545:6,
545:13, 545:17, 545:19, 545:20,
545:22, 546:1, 546:2, 546:4, 546:5,
546:7, 546:10, 546:11, 546:13,
546:14, 546:16, 546:18, 546:20,
546:24, 546:25, 547:2, 547:3, 547:5,
547:7, 547:11, 547:12, 547:15,
547:21, 547:23, 547:24, 548:1, 548:3,
548:5, 548:6, 548:8, 548:11, 548:12,
548:13, 548:16, 548:18, 548:20,
548:21, 548:23, 548:24, 549:2, 549:3,
549:4, 549:11, 549:13, 549:14,
549:19, 549:20, 549:23, 549:24,
549:25, 550:13, 550:16, 550:22,
550:24, 551:8, 551:10, 551:12,
551:14, 551:19, 551:21, 552:2, 552:5,
552:7, 552:9, 552:11, 552:13, 552:14,
552:19, 552:21, 552:23, 552:24,
553:2, 553:11, 553:12, 553:13,
553:15, 553:16, 553:19, 553:21,
553:23, 553:24, 554:1, 554:2, 554:5,
554:6, 554:8, 554:9, 554:11, 554:12,
554:14, 554:22, 554:24, 554:25,
555:1, 555:8, 555:10, 555:11, 555:15,
555:18, 555:19, 556:2, 556:4, 556:5,
556:6, 556:7, 556:9, 556:10, 556:12,
556:13, 556:15, 556:18, 556:20,
556:21, 556:22, 557:3, 557:5, 557:6,

557:7, 557:8, 557:9, 557:10, 557:11,
557:12, 557:13, 557:14, 557:15,
557:17, 557:18, 557:20, 557:21,
557:22, 557:23, 557:24, 557:25,
558:8, 558:10, 558:11, 558:12,
558:13, 558:14, 558:15, 558:16,
558:22, 558:24, 559:8, 560:2, 560:5,
560:7, 560:12, 560:13, 560:14,
560:15, 560:17, 560:18, 560:21,
560:23, 560:24, 560:25, 561:1, 561:3,
561:5, 561:6, 561:9, 561:10, 561:13,
561:14, 561:17, 561:18, 561:20,
561:21, 561:23, 561:24, 562:3, 562:4,
562:7, 562:8, 562:12, 563:1, 563:2,
563:3, 563:4, 563:8, 563:10, 563:11,
563:14, 563:17, 563:18, 563:25,
564:1, 564:2, 564:4, 564:5, 564:17,
564:18, 564:19, 565:7, 565:8, 565:9,
565:11, 566:3, 566:4, 566:5, 566:6,
566:8, 566:9, 566:16, 566:20, 566:23,
566:24, 567:1, 567:3, 567:10, 567:17,
567:22, 567:24, 568:2, 568:15,
568:17, 568:24, 569:2, 569:3, 569:10,
569:11, 569:12, 569:14, 569:15,
570:3, 570:4, 570:5, 570:10, 570:13,
570:14, 570:17, 570:21, 571:15,
572:3, 572:12, 572:15, 572:18,
572:23, 573:4, 573:8, 573:18, 573:22,
574:2, 574:7, 574:10, 574:11, 574:12,
574:20, 574:21, 574:22, 575:3, 575:7,
575:8, 575:11, 575:12, 575:13,
575:14, 575:15, 575:16, 575:18,
575:19, 575:21, 575:25, 576:3, 576:4,
576:7, 576:8, 576:10, 576:11, 576:13,
576:14, 576:16, 576:17, 576:19,
576:20, 576:23, 576:24, 577:2, 577:3,
577:7, 577:11, 577:12, 577:20,
578:12, 578:16, 578:20, 578:22,
578:23, 579:2, 579:3, 579:6, 579:7,
579:11, 579:12, 579:16, 579:19,
579:21, 579:24, 579:25, 580:2, 580:3,
580:7, 580:8, 580:13, 580:17, 580:21,
580:22, 581:9, 581:11, 581:13,
581:14, 581:16, 581:18, 581:23,
581:24, 582:10, 582:11, 582:16,
582:17, 582:21, 582:22, 582:25,
583:1, 583:2, 583:3, 583:10, 583:13,
583:16, 583:17, 584:8, 584:12,
584:18, 584:22, 584:25, 585:3, 585:7,
585:8, 585:9, 586:1, 586:3, 586:4,
586:5, 586:8, 586:9, 586:11, 586:14,
586:15, 586:16, 586:17, 586:18,
586:19, 586:20, 586:22, 586:23,
587:4, 587:5, 587:7, 587:8, 587:11,
587:12, 587:15, 587:16, 587:17,
587:18, 587:20, 587:22, 587:23,
587:24, 587:25, 588:1, 588:2, 588:3,
588:4, 588:5, 588:8, 588:9, 588:10,
588:11, 588:12, 588:15, 588:16,
588:17, 588:19, 588:20, 588:22,
588:23, 588:24, 588:25, 589:2, 589:4,

589:7, 589:11, 589:12, 589:14,
589:17, 589:18, 589:20, 589:21,
589:23, 589:25, 590:2, 590:3, 590:5,
590:6, 590:8, 590:10, 590:14, 590:16,
590:17, 590:18, 590:19, 590:20,
590:23, 590:24, 591:1, 591:2, 591:4,
591:5, 591:9, 591:11, 591:13, 591:15,
591:19, 591:20, 591:21, 591:22,
591:24, 591:25, 592:2, 592:3, 592:4,
592:5, 592:7, 592:8, 592:10, 592:11,
592:13, 592:14, 592:16, 592:17,
592:19, 592:22, 592:24, 593:2, 593:3,
593:5, 593:6, 593:7, 593:10, 593:12,
593:13, 593:16, 593:17, 593:18,
593:22, 594:1, 594:8, 594:11, 594:12,
594:13, 594:14, 594:15, 594:16,
594:18, 594:25, 595:2, 595:4, 595:5,
595:12, 595:14, 595:15, 595:17,
595:18, 595:20, 595:21, 595:23,
596:1, 596:2, 596:3, 596:5, 596:6,
596:9, 596:13, 596:15, 596:16,
596:22, 596:24, 597:1, 597:2, 597:4,
597:5, 597:7, 597:8, 597:11, 597:12,
597:14, 597:15, 597:17, 597:18,
597:20, 597:21, 597:23, 597:25,
598:2, 598:3, 598:13, 598:15, 598:21,
598:23, 598:25, 599:1, 599:4, 599:5,
599:8, 599:14, 599:15, 599:17,
599:20, 599:21, 599:22, 599:23,
599:25, 600:2, 600:3, 600:4, 600:5,
600:6, 600:8, 600:9, 600:12, 600:13,
600:16, 600:17, 600:18, 600:19,
600:20, 600:21, 601:1, 601:2, 601:3,
601:4, 601:6, 601:7, 601:9, 601:10,
601:13, 601:14, 601:16, 601:19,
602:1, 602:3, 602:6, 602:9, 602:13,
602:17, 602:19, 602:22, 602:24,
602:25, 603:1, 603:3, 603:4, 603:6,
603:7, 603:9, 603:10, 603:13, 603:14,
603:17, 603:18, 603:23, 603:24,
604:2, 604:3, 604:6, 604:10, 604:13,
604:14, 604:18, 604:21, 604:23,
604:24, 605:1, 605:2, 605:5, 605:8,
605:10, 605:17, 605:19, 605:20,
605:22, 606:1, 606:3, 606:4, 606:7,
606:8, 606:10, 606:12, 606:14,
606:16, 606:17, 606:18, 606:19,
606:21, 606:23, 606:24, 607:1, 607:2,
607:4, 607:5, 607:7, 607:9, 607:11,
607:13, 607:15, 607:17, 607:18,
607:21, 607:23, 607:25, 608:2, 608:3,
608:5, 608:6, 608:12, 608:14, 608:16,
608:17, 608:19, 608:20, 608:24,
608:25, 609:2, 609:4, 609:9, 609:13,
609:14, 609:16, 609:17, 609:19,
609:20, 609:22, 609:23, 609:25,
610:1, 610:7, 610:10, 610:12, 610:16,
610:17, 610:18, 611:1, 611:3, 611:4,
611:6, 611:8, 611:9, 611:14, 611:16,
611:17, 611:19, 611:20, 611:22,
611:23, 611:25, 612:3, 612:5, 612:6,

612:9, 612:10, 612:11, 612:13,
612:15, 612:16, 612:17, 612:19,
612:20, 612:23, 612:24, 612:25,
613:1, 613:3, 613:6, 613:8, 613:10,
613:11, 613:12, 613:14, 613:15,
613:17, 613:19, 613:21, 613:22,
613:24, 613:25, 614:1, 614:2, 614:3,
614:8, 614:9, 614:12, 614:14, 614:15,
614:20, 614:22, 614:24, 614:25,
615:2, 615:4, 615:6, 615:7, 615:10,
615:11, 615:12, 615:13, 615:16,
615:17, 615:19, 615:20, 615:22,
615:23, 616:1, 616:2, 616:5, 616:11,
616:16, 616:22, 617:2, 617:8, 617:14,
617:17, 618:21, 620:8, 620:23, 621:4,
621:10, 621:12, 621:25, 622:20,
622:22, 623:4, 623:7, 623:14
themselves [3] - 362:6, 433:3, 505:8
therapist [1] - 549:25
therapy [1] - 550:17
therefore [4] - 354:17, 357:11, 374:15,
584:4
they've [3] - 373:23, 452:24, 509:2
thinking [9] - 440:19, 481:19, 508:22,
513:10, 524:5, 564:14, 577:8, 611:24,
614:18
thinks [2] - 306:6, 375:15
third [3] - 307:14, 488:19, 521:7
thirteen [1] - 337:17
Thirty [3] - 487:3, 487:6, 578:19
Thirty-five [1] - 578:19
Thirty-nine [1] - 487:3
Thirty-six [1] - 487:6
thoughtful [2] - 400:20, 403:5
thoughts [3] - 306:12, 578:14, 578:15
three [24] - 311:11, 311:20, 313:22,
346:25, 347:1, 347:5, 400:1, 418:10,
466:16, 468:15, 486:25, 487:23,
509:17, 527:7, 527:9, 531:4, 531:5,
569:8, 572:23, 573:16, 592:25, 594:3,
601:20, 613:3
three-year [1] - 311:11
three-year-old [1] - 313:22
thumb [2] - 399:1, 401:6
Thursday [44] - 306:14, 306:15, 307:16,
307:19, 307:23, 307:24, 308:11,
405:11, 443:12, 460:16, 464:23,
466:25, 467:22, 468:3, 470:22, 472:6,
473:3, 473:5, 473:16, 474:6, 474:8,
475:3, 476:8, 487:17, 488:1, 490:12,
491:14, 491:16, 491:22, 492:4,
531:12, 532:9, 540:14, 540:18,
540:25, 541:1, 568:6, 568:12, 569:1,
570:7, 593:14, 607:3
Thursdays [2] - 451:24, 491:25
ticket [3] - 523:2, 523:11, 523:18
tickets [4] - 460:14, 541:4, 607:13,
607:18
tie [1] - 322:18
ties [3] - 349:17, 541:17, 575:4

tilted [1] - 351:6
timing [7] - 311:5, 311:15, 460:11,
567:8, 567:9, 567:12, 621:18
tingling [1] - 555:24
tired [1] - 474:17
today [26] - 305:1, 307:1, 307:6, 307:11,
310:22, 312:14, 313:4, 324:8, 327:10,
379:18, 441:13, 441:23, 442:7, 444:6,
445:19, 479:9, 479:16, 489:23, 490:3,
510:16, 549:6, 551:21, 552:4, 586:20,
594:13, 616:14
toes [1] - 555:24
together [5] - 446:1, 454:14, 512:4,
522:5, 554:17
tomorrow [24] - 305:15, 439:20, 442:8,
442:9, 442:12, 442:15, 443:22, 444:7,
467:14, 489:25, 490:2, 490:4, 492:4,
562:1, 562:2, 591:2, 615:24, 617:23,
618:1, 618:8, 618:16, 618:18, 620:16,
622:20
tonight [1] - 590:20
took [5] - 393:21, 399:19, 437:25, 523:1,
523:11
top [6] - 395:19, 400:9, 538:14, 538:16,
538:17, 538:18
topic [1] - 355:2
toss [1] - 337:22
totality [1] - 401:11
totally [4] - 486:18, 506:10, 511:15,
538:2
touch [4] - 424:24, 489:10, 517:23,
518:8
tough [3] - 317:4, 351:3, 504:23
toward [3] - 477:7, 521:19, 622:16
towards [2] - 524:19, 614:10
tracking [1] - 616:7
trade [2] - 431:19, 506:18
trader [1] - 360:9
traffic [1] - 358:22
trafficker [1] - 371:25
trafficking [20] - 340:5, 340:7, 371:9,
371:17, 371:22, 412:24, 431:25,
432:20, 462:17, 462:18, 477:12,
484:15, 484:24, 509:6, 512:5, 535:17,
535:24, 541:23, 577:4, 577:24
train [3] - 313:20, 388:9, 388:11
trained [1] - 348:9
trainings [1] - 338:25
TRANSCRIPT [1] - 302:12
transportation [1] - 348:8
transporting [1] - 340:6
trapped [1] - 551:3
travel [9] - 330:9, 428:17, 428:22, 429:3,
505:13, 540:9, 602:7, 602:8, 606:22
traveled [2] - 331:20, 573:4
traveling [3] - 334:19, 429:4, 557:5
treasure [1] - 456:20
treat [7] - 323:8, 344:8, 344:11, 392:1,
397:7, 560:3, 584:15
treated [4] - 322:24, 323:2, 341:6, 373:9

treatment [1] - 549:24
treatments [1] - 567:11
treats [1] - 323:2
trial [80] - 307:18, 315:24, 317:8, 320:21, 326:12, 326:17, 331:17, 339:1, 339:9, 339:10, 340:17, 346:17, 349:6, 360:19, 379:18, 391:9, 391:18, 391:20, 392:2, 394:3, 394:21, 408:5, 412:4, 425:21, 429:1, 430:22, 445:15, 445:21, 455:22, 458:4, 463:6, 464:19, 467:17, 470:17, 471:6, 478:25, 480:22, 481:3, 481:7, 481:9, 485:2, 485:21, 486:8, 487:24, 499:19, 502:7, 502:15, 514:24, 533:16, 534:16, 535:5, 539:17, 540:17, 542:19, 549:17, 549:18, 551:25, 552:17, 553:3, 553:14, 555:9, 556:3, 557:15, 561:15, 566:21, 567:19, 569:17, 569:20, 571:14, 571:20, 580:18, 584:15, 590:11, 590:25, 599:3, 602:8, 613:16, 615:4, 615:9, 622:15
trials [1] - 458:10
tried [6] - 353:13, 356:2, 356:3, 367:1, 401:5, 604:8
tries [1] - 323:1
trigger [2] - 485:21, 555:17
triggered [1] - 555:18
trip [5] - 338:11, 338:21, 428:21, 509:12, 512:9
tripped [1] - 329:3
trouble [1] - 429:2
true [20] - 362:24, 394:18, 394:25, 396:1, 400:24, 416:23, 457:3, 546:24, 547:5, 547:6, 547:11, 553:24, 554:7, 554:22, 581:24, 582:14
trust [9] - 314:5, 399:5, 399:9, 434:14, 538:1, 538:10, 545:3, 584:10, 584:19
trusted [1] - 314:9
truth [17] - 358:17, 412:11, 413:8, 414:8, 414:10, 522:1, 539:5, 539:6, 545:7, 547:4, 547:24, 548:4, 582:7, 582:19, 597:13, 597:16, 598:5
truthful [4] - 482:16, 538:23, 584:17, 597:3
truthfully [2] - 581:20, 582:5
try [28] - 305:11, 313:20, 320:16, 323:15, 323:17, 329:10, 350:4, 351:14, 381:6, 407:20, 432:8, 455:5, 461:11, 482:14, 485:25, 499:10, 503:2, 520:7, 520:8, 521:14, 524:18, 529:6, 550:24, 564:6, 564:7, 564:10, 605:15
Try [1] - 564:7
trying [22] - 313:13, 394:1, 398:25, 400:14, 439:13, 443:20, 455:19, 470:5, 470:15, 482:3, 485:7, 485:13, 485:15, 485:19, 507:17, 541:2, 545:25, 547:12, 593:24, 610:7, 614:4, 620:21
TS [1] - 569:16

Tuesday [8] - 468:17, 491:13, 492:5, 492:6, 492:9, 492:10, 593:14, 595:25
Tuesdays [2] - 451:23, 491:25
tumor [3] - 420:3, 420:5, 420:10
turn [6] - 407:23, 408:8, 474:7, 523:16, 555:20
turned [2] - 395:4, 611:9
turns [2] - 305:5, 531:3
TV [5] - 315:18, 553:22, 588:18, 588:21, 598:16
twelve [1] - 622:12
twelves [1] - 468:16
Twenty [4] - 573:4, 573:6, 573:8, 573:9
Twenty-five [3] - 573:6, 573:8, 573:9
Twenty-four [1] - 573:4
twice [1] - 504:8
Two [1] - 390:25
two [36] - 306:5, 306:6, 313:13, 332:9, 340:12, 355:13, 359:18, 359:19, 383:19, 401:24, 402:6, 402:9, 405:2, 405:12, 452:24, 455:2, 455:13, 455:21, 460:2, 465:12, 482:19, 482:24, 492:24, 493:21, 509:17, 518:18, 521:7, 527:25, 530:24, 531:4, 550:5, 561:18, 568:18, 590:11, 603:4
two-month [1] - 455:2
two-year [1] - 383:19
two-year-old [1] - 313:13
type [13] - 327:20, 328:5, 380:1, 389:15, 389:23, 436:11, 436:14, 436:21, 545:15, 554:20, 562:14, 562:25, 583:24
types [4] - 344:7, 391:13, 395:1, 583:23
typically [1] - 584:18

# U

U.S [5] - 342:25, 343:10, 344:16, 455:6, 573:5
uh-hum [17] - 329:21, 331:19, 332:16, 333:22, 334:2, 335:9, 336:6, 456:19, 457:22, 458:1, 461:4, 461:17, 462:14, 536:21, 538:7, 549:19, 557:22
ultimate [2] - 400:16, 412:2
unable [2] - 455:20
unbiased [1] - 535:22
uncertain [1] - 308:11
uncle [1] - 358:5
uncomfortable [3] - 346:15, 346:21, 549:20
unconscious [2] - 534:11, 534:14
under [4] - 320:23, 340:10, 499:5, 583:4
undergoing [1] - 567:11
undermines [1] - 400:15
understaffed [1] - 451:18
understandable [1] - 577:20
understood [7] - 333:18, 364:1, 471:15, 471:18, 549:13, 552:13, 555:10
unfair [4] - 315:2, 315:10, 401:9, 482:8
unfairly [1] - 323:3

unfortunate [1] - 431:17
Unfortunately [1] - 478:1
unfortunately [8] - 305:7, 314:4, 314:13, 351:10, 431:12, 431:15, 477:24, 614:23
unhappy [1] - 336:2
union [2] - 568:9, 568:10
unit [1] - 462:22
united [1] - 477:20
UNITED [3] - 302:1, 302:3, 302:13
United [13] - 302:5, 302:16, 302:20, 304:4, 304:16, 342:25, 349:24, 381:24, 515:6, 534:20, 534:23, 535:3, 535:5
University [1] - 405:9
unknown [2] - 501:23, 555:17
unless [9] - 350:20, 352:5, 356:17, 376:8, 472:4, 519:24, 521:10, 594:20, 617:12
unlimited [1] - 493:19
Unlimited [1] - 491:20
unpaid [2] - 594:22, 605:7
unprovoked [1] - 388:13
unquote [1] - 491:20
untruthful [1] - 507:1
up [205] - 305:25, 307:6, 307:10, 308:4, 308:5, 308:22, 310:18, 313:1, 313:8, 313:17, 313:25, 317:15, 318:8, 319:14, 319:21, 320:3, 324:3, 325:23, 327:4, 328:2, 328:13, 329:3, 329:6, 330:20, 331:6, 331:10, 332:10, 334:23, 335:5, 335:24, 337:9, 337:22, 338:14, 338:21, 341:21, 342:6, 343:16, 346:2, 346:7, 347:23, 347:25, 350:14, 352:19, 353:21, 354:10, 357:23, 358:1, 361:14, 361:24, 363:2, 365:17, 366:1, 366:12, 366:16, 377:3, 377:6, 377:23, 380:18, 383:15, 384:5, 388:20, 389:6, 390:11, 390:19, 393:9, 394:19, 399:19, 404:24, 406:10, 406:19, 410:23, 411:7, 413:19, 415:3, 415:12, 415:21, 417:5, 417:14, 418:3, 418:5, 418:11, 418:16, 419:16, 419:17, 419:23, 419:25, 422:7, 426:7, 428:15, 436:2, 436:6, 436:25, 438:14, 438:23, 439:2, 439:4, 440:2, 442:12, 442:19, 443:5, 443:11, 443:12, 443:20, 445:10, 447:17, 448:2, 448:7, 449:20, 450:1, 451:7, 451:11, 451:15, 451:17, 453:23, 454:25, 457:7, 457:23, 459:14, 461:13, 464:1, 464:14, 466:17, 466:23, 471:17, 473:4, 477:3, 479:12, 479:15, 485:2, 485:20, 489:6, 490:9, 501:8, 505:5, 508:4, 508:24, 509:12, 511:8, 517:16, 518:3, 518:9, 519:5, 520:12, 520:22, 522:16, 522:24, 524:15, 526:10, 526:24, 527:3, 530:18, 530:20, 531:7, 532:12, 533:14, 536:9, 537:10, 539:23, 540:1, 540:6, 540:9, 541:2,

542:2, 542:16, 544:19, 548:18,
548:24, 553:16, 556:10, 556:15,
563:14, 564:9, 566:14, 567:3, 567:5,
568:3, 568:17, 568:20, 569:19,
569:24, 574:14, 579:7, 579:21, 580:1,
586:5, 591:6, 591:15, 591:18, 594:1,
599:18, 605:6, 605:25, 606:22, 609:7,
610:24, 612:6, 612:21, 616:9, 619:3,
620:21, 620:25, 621:5, 621:19, 622:7
**Up** [1] - 569:14
**update** [1] - 306:10
**updates** [1] - 445:12
**ups** [3] - 392:15, 446:8, 446:11
**upsetting** [1] - 504:23
**upstairs** [1] - 589:9
**urge** [1] - 621:19
**useful** [1] - 456:3
**user** [1] - 371:24
**uses** [1] - 579:8
**usual** [1] - 537:11

## V

**vacation** [9] - 428:24, 460:5, 490:20,
490:21, 491:14, 491:15, 492:13,
560:21, 605:7
**van** [1] - 551:12
**vary** [1] - 311:22
**vault** [3] - 505:7, 505:9, 515:1
**vehicle** [1] - 551:8
**verdict** [23] - 316:1, 316:5, 326:4, 326:5,
326:12, 326:15, 332:25, 376:11,
390:8, 392:21, 393:24, 395:6, 412:4,
412:10, 413:9, 437:15, 448:9, 448:16,
448:24, 449:9, 542:20, 582:9, 600:13
**verified** [1] - 536:14
**versions** [1] - 554:4
**versus** [1] - 304:4
**vertigo** [1] - 431:9
**victim** [8] - 406:22, 431:11, 495:18,
495:24, 589:6, 603:24, 610:13, 610:14
**video** [4] - 391:16, 391:17, 391:18,
394:23
**view** [14] - 335:13, 341:13, 356:2,
371:22, 373:15, 401:24, 402:1,
442:25, 477:15, 484:21, 517:7, 519:9,
570:22, 572:1
**views** [5] - 333:13, 477:7, 535:18,
536:3, 589:15
**violating** [1] - 351:8
**Violation** [1] - 304:8
**violation** [1] - 523:13
**violence** [2] - 383:24, 553:9
**violent** [4] - 433:11, 496:21, 550:4,
555:12
**virtue** [1] - 403:13
**visits** [1] - 567:13
**voice** [1] - 342:6
**volunteer** [4] - 529:12, 573:10, 588:6,
588:7

**volunteered** [1] - 318:10
**volunteers** [1] - 318:11
**vote** [1] - 350:1

## W

**wage** [1] - 605:13
**Wait** [1] - 486:21
**wait** [7] - 308:21, 326:3, 339:14, 349:8,
368:14, 617:10, 621:16
**waiting** [4] - 339:15, 421:17, 481:3,
551:23
**waking** [1] - 363:2
**walk** [1] - 311:24
**walking** [2] - 388:23, 443:7
**wall** [1] - 522:24
**wants** [12] - 308:3, 308:4, 361:4, 379:19,
384:12, 421:24, 438:9, 471:10, 561:7,
582:14, 588:3, 590:22
**warehouse** [1] - 527:16
**watch** [9] - 315:18, 409:12, 423:4,
423:5, 423:10, 553:22, 555:11, 588:18
**watching** [6] - 337:14, 539:4, 546:5,
554:12, 554:16, 555:9
**water** [1] - 550:17
**ways** [4] - 356:4, 427:16, 505:19, 554:10
**weapons** [1] - 550:4
**wearing** [3] - 523:3, 523:10, 523:14
**websites** [1] - 318:19
**Wednesday** [9] - 405:10, 405:12,
468:18, 491:14, 492:5, 492:6, 492:9,
593:15, 593:16
**Wednesdays** [1] - 491:25
**weeds** [1] - 391:20
**week** [36] - 307:13, 307:14, 360:14,
428:21, 428:24, 429:2, 429:6, 431:9,
455:2, 455:21, 455:22, 465:15,
466:16, 467:14, 468:17, 469:11,
471:11, 487:22, 487:24, 488:1,
488:19, 488:20, 490:20, 490:21,
492:11, 560:24, 567:11, 568:18,
571:10, 590:24, 592:19, 605:17,
613:13
**weekdays** [1] - 466:17
**weekend** [6] - 445:22, 476:11, 490:18,
491:12, 571:12, 607:2
**weekends** [4] - 466:11, 471:8, 471:9,
471:22, 490:9, 605:21, 605:25, 606:2
**weeks** [30] - 306:5, 306:7, 312:13,
317:3, 317:5, 339:18, 359:16, 359:17,
379:9, 379:19, 393:5, 408:6, 418:11,
425:22, 451:15, 458:17, 465:22,
468:16, 471:22, 476:7, 488:12, 551:2,
561:16, 569:25, 571:9, 571:17,
571:18, 571:19, 590:11, 605:15
**weigh** [2] - 355:9, 459:12
**weight** [6] - 348:11, 397:5, 397:25,
403:8, 575:12, 575:14
**welcome** [5] - 336:24, 459:23, 501:7,
526:15, 564:18, 612:10

**well...** [1] - 541:15
**west** [2] - 428:23, 429:25
**wetting** [1] - 511:8
**whatever's** [2] - 453:19, 479:14
**whole** [12] - 322:23, 394:3, 394:9,
401:19, 412:11, 421:11, 432:7,
432:14, 536:18, 571:20, 583:8, 598:1
**wholly** [1] - 365:12
**wife** [9] - 313:12, 318:11, 318:22,
450:18, 530:23, 531:3, 531:9, 531:13,
607:12
**wife's** [2] - 314:6, 336:1
**willing** [2] - 455:8, 606:2
**willingness** [4] - 330:12, 334:21,
334:25, 606:5
**wire** [1] - 394:1
**Wire** [2] - 554:2, 554:17
**wise** [3] - 467:5, 475:16, 553:14
**wish** [1] - 458:10
**withdrew** [1] - 377:24
**withholding** [1] - 537:14
**witness** [99] - 315:4, 323:8, 325:2,
325:3, 335:16, 335:20, 336:7, 344:8,
344:11, 354:8, 355:11, 358:13,
358:18, 358:20, 371:1, 377:16,
389:17, 389:21, 391:4, 391:5, 392:4,
392:8, 392:17, 392:18, 393:2, 393:5,
393:8, 393:10, 393:11, 393:12, 394:4,
394:17, 395:5, 395:7, 395:12, 397:3,
397:5, 400:10, 400:12, 400:23,
401:14, 401:15, 402:12, 403:1,
406:21, 414:14, 417:9, 433:12,
434:25, 435:5, 436:8, 436:9, 439:15,
441:3, 454:8, 461:16, 483:6, 483:14,
495:17, 495:19, 495:21, 499:1,
501:18, 525:1, 533:25, 538:4, 545:23,
546:2, 546:5, 546:15, 546:16, 546:20,
547:15, 562:17, 562:18, 571:23,
576:18, 580:5, 580:10, 580:11,
580:19, 581:3, 582:3, 582:12, 583:7,
584:3, 589:6, 596:17, 596:18, 596:23,
597:9, 598:10, 603:12, 609:18,
610:13, 612:4
**witness'** [11] - 335:18, 336:8, 354:21,
394:20, 400:7, 402:2, 402:5, 545:3,
575:10, 576:22, 583:8
**witnesses** [32] - 327:15, 335:14, 335:15,
336:3, 342:25, 348:4, 355:4, 355:18,
355:22, 366:22, 369:21, 389:2,
394:12, 406:22, 413:6, 433:2, 440:9,
452:20, 454:6, 482:25, 483:19,
501:16, 533:22, 544:24, 559:1, 571:8,
575:5, 580:18, 596:20, 603:11,
608:22, 608:23
**witnesses's** [2] - 439:7, 439:8
**wonder** [2] - 391:9, 619:5
**Wonderful** [1] - 399:18
**wonderful** [10] - 353:3, 387:5, 442:5,
456:14, 472:3, 517:19, 526:3, 587:18,
588:3, 617:22

**wondering** [2] - 393:18, 466:18

**word** [11] - 315:19, 382:17, 402:16, 402:24, 439:12, 439:13, 441:7, 510:25, 584:10, 584:13, 584:19

**worded** [1] - 328:21

**words** [9] - 349:4, 354:15, 382:8, 400:3, 471:6, 516:22, 523:6, 562:17, 583:21

**workload** [1] - 605:23

**works** [8] - 318:11, 380:2, 385:9, 439:24, 472:4, 531:3, 575:1

**world** [4] - 321:4, 321:18, 505:15, 555:3

**worried** [3] - 360:17, 581:21, 582:12

**worry** [3] - 391:16, 391:19, 526:6

**worrying** [1] - 450:20

**worse** [1] - 411:12

**worth** [2] - 418:11, 475:18

**wow** [2] - 315:20, 455:17

**wrap** [1] - 599:18

**write** [7] - 382:17, 385:16, 409:15, 446:16, 497:10, 497:13, 532:5

**writes** [1] - 486:17

**writing** [2] - 391:1, 497:11

**wrongs** [2] - 401:24, 402:9

**wrote** [7] - 326:7, 366:21, 389:7, 432:25, 450:8, 451:12, 580:8

---

## X

**Xanax** [1] - 550:19

---

## Y

**year** [8] - 311:11, 313:13, 313:22, 329:16, 340:12, 383:19, 510:4, 550:2

**years** [27] - 311:21, 315:7, 323:3, 332:9, 340:12, 343:23, 363:1, 374:7, 382:1, 385:10, 386:11, 420:5, 422:23, 448:3, 454:12, 454:13, 518:19, 522:8, 522:11, 522:15, 524:10, 550:1, 550:6, 551:17, 553:4, 574:23, 610:18

**yesterday** [9] - 305:1, 307:6, 307:11, 403:20, 529:9, 599:19, 599:20, 616:14, 618:2

**yoga** [1] - 454:11

**YORK** [1] - 302:1

**York** [12] - 302:6, 302:17, 302:18, 302:22, 303:2, 303:5, 311:21, 312:8, 340:1

**young** [1] - 315:13

**yourself** [12] - 313:6, 351:9, 363:2, 368:24, 467:9, 468:3, 468:4, 483:22, 510:24, 537:7, 564:6, 612:16

**yourselves** [1] - 444:4

**Yup** [1] - 583:2