624

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      : 19-CR-00576(BMC)
                               :
                               :
                               :
      -against-                : United States Courthouse
                               : Brooklyn, New York
                               :
                               :
                               : January 19, 2023
GENARO GARCIA LUNA,            : 9:00 a.m.
                               :
          Defendant.           :
                               :

- - - - - - - - - - - - - X

        TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
        BEFORE THE HONORABLE HONORABLE PEGGY KUO
              UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S :

For the Government:  BREON PEACE
                     United States Attorney
                     Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                     BY:  SARITHA KOMATIREDDY
                          ERIN M. REID
                          PHILIP PILMAR
                          MARIETOU E. DIOUF
                            Assistant United States Attorney

For the Defendant:   THE LAW FIRM OF CESAR DE CASTRO, P.C.
                        111 Fulton Street - 602
                        New York, New York 10038
                     BY:  CESAR DE CASTRO, ESQ.
                          SHANNON MICHAEL MCMANUS, ESQ.

625

1    (Continued)
                          MIEDEL & MYSLIWIEC, LLP
2                             80 Broad Street, Suite 1900
                            New York, New York 10004
3                         BY:  FLORIAN MIEDEL, ESQ.

4
     For the Defendant:    GOTLIB LAW, PLLC
5                             225 Broadway, Suite 2815
                            New York, New York 10038
6                         BY:  VALERIE ALICE GOTLIB, ESQ.

7
     Court Reporter:  Michele D. Lucchese, RPR, CRR
8                     Official Court Reporter
                      Phone:  718-613-2272
9                     E-mail: MLuccheseEDNY@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (In open court.)

2          (Defendant present.)

3          THE COURTROOM DEPUTY:  All rise.

4          THE COURT:  Please be seated.

5          THE COURTROOM DEPUTY:  This is criminal cause for

6    jury selection, docket 19-CR-576, United States versus Genaro

7    Garcia Luna, Magistrate Judge Peggy Kuo presiding.

8          Persons granted remote access to proceedings are

9    reminded of the general prohibition against photographing,

10   recording, and rebroadcasting of court proceedings.  Violation

11   of these prohibitions may result in sanctions, including

12   removal of court issued media credentials, restricted entry to

13   future hearings, denial of entry to future hearings, or any

14   other sanctions deemed necessary by the court.

15         Counsel, starting with the Government, could you

16   please state your appearances for the record.

17         MS. KOMATIREDDY:  Good morning, Your Honor.  Saritha

18   Komatireddy, for the United States, I'm joined by my

19   co-counsel, Erin Reid, Phil Pilmar, and Marietou Diouf, as

20   well our case agent Special Agent James Cain of the Drug

21   Enforcement Administration.

22         THE COURT:  Good morning.

23         MR. DE CASTRO:  Good morning, Your Honor.  Cesar De

24   Castro, Valerie Gotlib, Florian Miedel, Shannon McManus,

25   Shannon McManus for Mr. Garcia Luna.

Jury Selection                                    627

1          THE COURT:  We have the jurors that we asked to

2     provide us more information are ready for us to hear from

3     them.  I also understand that there was some health update

4     that the defense wanted to let me know about.

5          MR. DE CASTRO:  Sure, Judge.  Just a member of the

6     defense team tested positive for COVID last night, our

7     paralegal who is not in court today, obviously.  He is not

8     exhibiting symptoms and neither is anybody else on the team.

9     Of course we're being careful, but we wanted to let the Court

10    know.  And we also let the Government know earlier.

11         THE COURT:  Okay.

12         MR. DE CASTRO:  And the interpreters.

13         THE COURT:  Okay.  I note that as far as the jurors,

14    we have been careful to keep them separate from the parties in

15    this case, so I don't think that there are at any heightened

16    risk.

17         I would caution people as we continue with this case

18    to take safety precautions, and we can discuss this further

19    with Judge Cogan, but it's better to be safe than sorry.  To

20    the extent you can distance or wear masks when not speaking or

21    other things, I think that's helpful.

22         I was not aware of the jurors in the other room are

23    not consistently wearing masks.  So, again, this is something

24    for Judge Cogan to address with them, especially when they are

25    sitting in the box.

1          I recall one of the jurors had expressed the concern

2     about being around unmasked people.  So please just be mindful

3     because it is still -- COVID is still with us.

4          MR. DE CASTRO:  I guess, Judge, I should also just

5     note I also advised chambers, Judge Cogan's chambers.

6          THE COURT:  Yes.

7          MS. KOMATIREDDY:  Your Honor, may I add a data point

8     on that?

9          THE COURT:  Yes.

10         MS. KOMATIREDDY:  I remember one of the jurors had

11    expressed concern about the COVID.  As we were thinking about

12    it further, because this is a partially sequestered jury, they

13    will be having lunch together every day back in the jury room.

14    So I just wanted to add that as a different additional

15    environmental factor that would be in this case.

16         THE COURT:  Well, I think there are lots of spaces

17    in the courthouse.  For example, I did a jury trial in the

18    middle of COVID last summer and the jurors were given access

19    to a courtroom, a full courtroom next door.

20         MS. KOMATIREDDY:  Right.

21         THE COURT:  So then if there are 18 people sitting

22    in the room eating, they should space out.  So, obviously, the

23    jury room itself, the jury deliberation room is small.  But

24    that is something that you might want to consider.  Again,

25    bring it up with Judge Cogan and see if accommodations can be

Prospective Juror No. 4                         629

1   made.

2           MS. KOMATIREDDY:  Thank you, Judge.

3           THE COURT:  In addition to the jurors we wanted to

4   speak to again, jurors 93 and 123 approached my chamber's

5   staff and said they wanted to address the Court again.  I'm

6   not sure what they want to talk about, but I will add them to

7   the list.

8           I would suggest that we bring the jurors in one by

9   one sequentially to ask follow-up questions.  The jurors this

10  morning will be 4, 15, 17, 19.

11          27 is the one who may have inadvertently been

12  exposed to news.

13          32, 35, 76, 93, who was the new -- the juror who

14  wants to speak to us.

15          103, 114.

16          122 is the juror who might have a hearing issue.

17          123 is also a juror with a new request to speak to

18  us.

19          147, 153, and 162.

20          All right.  So let's bring in Juror No. 4.

21          (Prospective Juror No. 4 enters.)

22          THE COURT:  Good morning.

23          THE PROSPECTIVE JUROR:  Good morning.

24          THE COURT:  Juror No. 4, good to see you again.  We

25  had asked you to find out from your employer whether you would

Prospective Juror No. 15                              630

1  get paid.

2            THE PROSPECTIVE JUROR:  Yes.

3            THE COURT:  And you now have information?

4            THE PROSPECTIVE JUROR:  Yes.

5            THE COURT:  Yes.

6            THE PROSPECTIVE JUROR:  Yes, I was be paid.

7            THE COURT:  You will be paid.

8            THE PROSPECTIVE JUROR:  Yes, full salary.

9            THE COURT:  Okay.

10            THE PROSPECTIVE JUROR:  I was very relieved to hear

11  that.

12            THE COURT:  Thank you for letting us know.  You can

13  go back across the hall.

14            THE PROSPECTIVE JUROR:  Thank you.

15            THE COURT:  Thank you.

16            (Prospective juror 4 exits.)

17            THE COURT:  Juror No. 15.

18            (Prospective Juror No. 15 enters.)

19            THE COURT:  Good morning.

20            THE PROSPECTIVE JUROR:  Good morning.

21            THE COURT:  Good to see you again.  We had asked you

22  to find out whether you would get paid.

23            THE PROSPECTIVE JUROR:  Yes.

24            THE COURT:  And Did you get any further information?

25            THE PROSPECTIVE JUROR:  They said for the first two

Prospective Juror No. 17                              631

1   weeks I get paid.

2          THE COURT:  And then after that?

3          THE PROSPECTIVE JUROR:  After that, I don't get

4   paid.

5          MR. DE CASTRO:  No objection.

6          THE COURT:  Would that create a hardship for you?

7          THE PROSPECTIVE JUROR:  Yes.

8          MR. DE CASTRO:  No objection.

9          MS. KOMATIREDDY:  No objection, Your Honor.

10         THE COURT:  Thank you.  You are excused.

11         THE PROSPECTIVE JUROR:  Thank you.

12         THE COURT:  You can go back to the second floor.

13         THE PROSPECTIVE JUROR:  Okay, thank you.

14         (Prospective juror 15 excused.)

15         THE COURT:  Juror 17.

16         (Prospective Juror No. 17 enters.)

17         THE COURT:  Good morning.

18         THE PROSPECTIVE JUROR:  Hi.

19         THE COURT:  Good morning, juror 17.  We asked you to

20   find out if you would get paid.

21         THE PROSPECTIVE JUROR:  Yes, I asked.  I'm going to

22   get paid 10 days.

23         THE COURT:  You get paid 10 days?

24         THE PROSPECTIVE JUROR:  Yeah.

25         THE COURT:  After that?

Prospective Juror No. 19                                632

1          THE PROSPECTIVE JUROR:  They won't pay me.

2          THE COURT:  Will that cause a hardship to you if

3     they won't pay you?

4          THE PROSPECTIVE JUROR:  Yes, of course.

5          MR. DE CASTRO:  No objection.

6          MS. KOMATIREDDY:  No objection, Your Honor.

7          THE COURT:  You are excused.  You can go back to the

8     second floor and let them know that you don't have to serve on

9     this jury.

10         THE PROSPECTIVE JUROR:  Thank you.

11         THE COURT:  Thank you.

12         (Prospective juror 17 excused.)

13         THE COURT:  Juror 19.

14         (Prospective Juror No. 19 enters.)

15         THE COURT:  Good morning.

16         THE PROSPECTIVE JUROR:  Good morning.

17         THE COURT:  Juror No. 19.  Good to see you again.

18         THE PROSPECTIVE JUROR:  Hi.

19         THE COURT:  We asked you to find out whether you

20    would get paid if you had to serve on jury duty.  Did you find

21    out?

22         THE PROSPECTIVE JUROR:  Yes, I will not be getting

23    paid.

24         THE COURT:  You will not be paid at all.

25         THE PROSPECTIVE JUROR:  Yeah.

Prospective Juror No. 27                              633

1          THE COURT:  All right.  And would that create a

2     hardship for you?

3          THE PROSPECTIVE JUROR:  Yes.

4          MR. DE CASTRO:  No objection.

5          THE COURT:  Originally you had told us that you

6     thought might be get paid up to three days.

7          THE PROSPECTIVE JUROR:  Yeah, this is the third day.

8          THE COURT:  I see.

9          MS. KOMATIREDDY:  No objection, Your Honor.

10          THE COURT:  You are excused.  So you can go back to

11     the second floor and let them know that you don't have to

12     serve on this jury.

13          THE PROSPECTIVE JUROR:  Thank you so much.

14          THE COURT:  Thank you very much.

15          (Prospective juror 19 excused.)

16          THE COURT:  Juror 27.

17          (Prospective Juror No. 27 enters.)

18          THE COURT:  Good morning.  You're Juror No. 27.

19          THE PROSPECTIVE JUROR:  Hi.  How are you doing?

20          THE COURT:  Good.  Thanks.  We wanted to speak to

21     you again because we understand that after lunch on the first

22     day you let one of my staff know that you might have heard

23     something on the news.

24          THE PROSPECTIVE JUROR:  Yes.  I was home for lunch

25     and I heard something and I didn't realize it was about this

1  case, which I inadvertently heard it and then I realized that

2  the press out there is here for that.

3         The other thing is I was kind of casual about COVID

4  and I really, you know, I would say I'm freaking out about it.

5  I slept like three, four hours' tonight, so I'm concerned

6  about that, you know, if I am picked, I will serve.  I'm a

7  little bit worried about my sleep.

8         THE COURT:  Right.

9         THE PROSPECTIVE JUROR:  Other than that, yeah, I had

10  told someone that I heard it on WINS on Saturday -- on

11  Tuesday, so.

12         THE COURT:  Let me just ask about that a little bit.

13  How much did you hear?

14         THE PROSPECTIVE JUROR:  I heard that there may be

15  some cartel witnesses and I don't know if it's for -- you

16  know, for or against and a little bit about the description

17  that he was a captain in the police department, and he was

18  involved in drugs smuggling, and that's pretty much about it.

19  I didn't really hear anything other than that.  It was like a

20  two-minute piece on WINS.

21         THE COURT:  You did the right thing about letting

22  the Court know.

23         THE PROSPECTIVE JUROR:  Yeah.

24         THE COURT:  And about stopping listening to it, is

25  there anything else you have heard about the allegation that

Prospective Juror No. 27                               635

1    would affect --

2              THE PROSPECTIVE JUROR:  No.  It was just pretty

3    minimal, that there was going to be cartel witnesses, but I'm

4    more concerned about COVID as well.  But I did hear about it.

5              THE COURT:  Thank you.  When you said you were

6    freaking out, what do you mean?

7              THE PROSPECTIVE JUROR:  I almost feel like I'm on

8    trial, if I get chosen, I'm nervous about it, but if I am

9    picked, I think I can be partial.  I'm freaked out about it,

10   people coughing downstairs in the room.  I was like -- it

11   looks like there is no COVID protocol here, so it's a little

12   concerning.

13             THE COURT:  Do you think that your concern about

14   COVID will distract you from being --

15             THE PROSPECTIVE JUROR:  I worry about my lack of

16   sleep.  I woke up like 5:00 this morning and I live like two

17   blocks away and I was up since like 5:00 or 5:30 this morning.

18   That's about the only good thing.  I live just down block, so

19   it's not a long trip if I am chosen, but I am a little

20   concerned.

21             THE COURT:  In terms of the COVID protocol in other

22   people are wearing masks, would that alleviate it --

23             THE PROSPECTIVE JUROR:  You know, I was thinking

24   about that.  I'm retired, so I live by myself, if anyone's

25   interested.  I'm not totally quarantined.  I go shopping,

1   stuff like that.  But I'm not really used to hanging out with,

2   you know, a lot of people.  And when I go supermarket, I'm

3   almost amazed how many people aren't wearing masks.  And even,

4   you know, in the jury room hardly anyone has masks on.  So, I

5   don't know if it's my age.  I haven't had COVID yes.  I'm

6   hoping I don't get it.  It's a little concerning to me.  I

7   don't know if I will sleep any better once I'm on the case or

8   not on the case.

9           THE COURT:  Thank you for letting us know.

10          Does anyone have anything else to add?

11          MS. KOMATIREDDY:  We defer to the Court, Your Honor.

12          MR. DE CASTRO:  The same, Judge.

13          THE COURT:  So why don't you go back across the hall

14   and we will let you know.

15          THE PROSPECTIVE JUROR:  Thank you.

16          (Prospective juror 27 exits.)

17          THE COURT:  Hold on a second.  Just wait.

18          I want to talk to the lawyers.

19          So when the parties say you defer to the Court, I

20   heard the parties say you defer court to the Court, does that

21   mean no one is moving to strike for cause?

22          MS. KOMATIREDDY:  We don't have an objection to

23   striking for cause.  I know, Your Honor, we discussed it

24   before.  We have a view.  We defer to you for that.

25          MR. DE CASTRO:  Just one more second, Judge.  We are

Prospective Juror No. 32                               637

1    talking.

2              THE COURT:  Yes.

3              (Pause.)

4              MR. DE CASTRO:  We think we should let him go,

5    Judge.

6              THE COURT:  Is there any objection?

7              MS. KOMATIREDDY:  No, Your Honor.

8              THE COURT:  So, we can excuse that juror.  If he is

9    still out there, then bring him back in after the next juror.

10             So the next juror is 32.

11             (Prospective Juror No. 32 enters.)

12             THE COURT:  Thank you.  Juror No. 32.  Good to see

13   you again.

14             THE PROSPECTIVE JUROR:  Good to see you.

15             THE COURT:  We had asked you to find out if you

16   would get paid if you were serving on this jury.

17             THE PROSPECTIVE JUROR:  Yes.  So I find out from

18   work, I find out from work.  And for the jury duty service, we

19   get paid up to ten days.  So I'm assuming I'll be here, it's

20   my third day here, seven days left, I assume.  This is the

21   policy at work.

22             THE COURT:  What happens after those 10 days?

23             THE PROSPECTIVE JUROR:  So after these 10 days, it's

24   my PTO, which is like for, in my case, it's something like

25   undetermined.  My PTO is when I meet my performance at work.

1    Once I have my work done, I can take the days off with

2    agreement with the manager.  This is how it works for me.

3              THE COURT:  All right.

4              THE PROSPECTIVE JUROR:  And then, I don't know, I'd

5    probably have to be here and work afterwards.  I don't know.

6              THE COURT:  So would that create a financial

7    hardship for you?

8              THE PROSPECTIVE JUROR:  If I won't be working and

9    not getting paid, definitely, yes, I won't be able to.

10             MR. DE CASTRO:  No objection.

11             MS. KOMATIREDDY:  No objection, Your Honor.

12             THE COURT:  Thank you for letting us know.  You are

13   excused.

14             THE PROSPECTIVE JUROR:  Thank you so much.

15             THE COURT:  You don't have to sit on this trial.  Go

16   back to the second floor.

17             THE PROSPECTIVE JUROR:  Thank you.

18             (Prospective juror 32 excused.)

19             (Prospective Juror No. 27 enters.)

20             THE COURT:  Juror No. 27?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  You don't have to walk up.  I just

23   wanted to let you know you are excused.

24             THE PROSPECTIVE JUROR:  Thank you.  Thank you.

25             THE COURT:  Thank you for your service.

Prospective Juror No. 35                           639

1          (Prospective juror 27 excused.)

2          THE COURT:  All right.  Juror No. 35.

3          (Prospective Juror No. 35 enters.)

4          THE COURT:  Hello.  You are Juror No. 35.

5          THE PROSPECTIVE JUROR:  Hello, Judge.

6          THE COURT:  Nice to see you again.

7          THE PROSPECTIVE JUROR:  Nice to see you too.

8          THE COURT:  We asked you to find out if you would

9   get paid while you were on jury duty.

10         THE PROSPECTIVE JUROR:  Yes.  I thought I told you

11  last time.  I'm sorry.  I will get paid.

12         THE COURT:  The full time?

13         THE PROSPECTIVE JUROR:  I believe.  The policy

14  didn't say anything about the timeframe.

15         THE COURT:  Were there any follow-up questions for

16  this juror?

17         MR. DE CASTRO:  No, Judge.

18         MS. KOMATIREDDY:  No.

19         THE COURT:  All right.  Thanks very much.

20         THE PROSPECTIVE JUROR:  Thank you.

21         (Prospective juror 35 exits.)

22         MR. DE CASTRO:  Judge, I have it as 36 as the follow

23  up.  I didn't have her as a paid follow up.

24         THE COURT:  Okay.

25         MR. DE CASTRO:  I have it as 36.

1          (Prospective Juror No. 36 enters.)

2          THE COURT:  Hello, Juror No. 36.

3          THE PROSPECTIVE JUROR:  Hello.

4          THE COURT:  Good to see you again.  We asked you to

5     find out if you would get paid for jury duty.

6          THE PROSPECTIVE JUROR:  That's correct.  I would

7     just be losing the pay that -- I get the fee from the Court,

8     and then the transportation, because I'm coming from Nassau

9     County, so I would just lose that from my gross pay if that

10    makes sense.

11         THE COURT:  So your employer will pay you your

12    regular salary?

13         THE PROSPECTIVE JUROR:  Correct.  They would just

14    subtract what I get if I attended the Court.

15         THE COURT:  But the Court isn't going to pay you if

16    your employer is paying you?

17         THE PROSPECTIVE JUROR:  Okay.

18         THE COURT:  So you would get your salary and nothing

19    else.

20         THE PROSPECTIVE JUROR:  Correct.

21         THE COURT:  If you got reimbursed for your

22    transportation, they would subtract it?

23         THE PROSPECTIVE JUROR:  Correct.

24         THE COURT:  So if you didn't get reimbursed, then --

25         THE PROSPECTIVE JUROR:  Correct.

1           THE COURT:  And that would be for the full time?

2           THE PROSPECTIVE JUROR:  Correct.

3           THE COURT:  Great.

4           Any follow-up questions?

5           MR. DE CASTRO:  No, Judge.

6           THE COURT:  Thank you.

7           THE PROSPECTIVE JUROR:  I do have a letter that I

8    was told to present to you.

9           THE COURT:  What is it about?

10          THE PROSPECTIVE JUROR:  It is from my employer.  I

11   don't know if you want me to take that out.

12          THE COURT:  I'm happy to see it.

13          THE PROSPECTIVE JUROR:  Thank you.

14          THE COURT:  What you have handed to me is a letter

15   addressed to the Court from your employer who is letting the

16   Court know that this is the busiest time of year for the

17   business because the business provides tax services.  And it

18   states, "We need to meet specific Federal and State deadlines.

19   To meet these deadlines, the juror and others in our firm work

20   longer hours in a short period of time.  This disruption would

21   delay timely compliance for our clients and would be a serious

22   inconvenience to the business."

23          It says, "I hope you will consider this unique

24   situation of busy season within our industry, where jury

25   service can substantially disrupt our client deadlines and the

Prospective Juror No. 36                                      642

1  production of our business and see fit to grant the employer's

2  request for this juror's excusal from jury duty at this time.

3          "Thank you very much."

4          THE PROSPECTIVE JUROR:  Correct.

5          THE COURT:  Did anybody want to ask any further

6  questions of this juror?

7          MS. KOMATIREDDY:  Not from the Government, Your

8  Honor.  Thank you.

9          THE COURT:  Did you have questions?

10         MR. DE CASTRO:  Judge, I would just follow up how

11  that would affect, if it would affect during service.

12         THE COURT:  So, knowing that your employer is asking

13  the Court to excuse you, would that affect your ability to

14  focus on this case if you were picked as a juror?

15         THE PROSPECTIVE JUROR:  Well, I think there were

16  some miscommunication last time because there are two tax

17  deadlines.  There's one that falls March 15th.  The last time

18  you spoke, you said I would have the month after the service

19  was over until April 18th.  While that's true, March 15th is

20  for businesses, multiple member LLC's, S-corporations that I

21  also prepare and, like I said, that deadline is March 15th.

22  The individuals and trusts, that falls on April 18th, but we

23  continuously do preparation for those clients from next week

24  until April and then businesses from next week until

25  mid-March.

1          THE COURT:  Right.  Thank you for that

2    clarification.

3          THE PROSPECTIVE JUROR:  You're welcome.

4          THE COURT:  So your employer takes special care to

5    say that you personally are interested in fulfilling your

6    civic duties and we appreciate that.

7          THE PROSPECTIVE JUROR:  Uh-hum.

8          THE COURT:  And we know you will do your best.

9          The question is knowing that your employer has

10   stated that they need you for work and that your being here

11   would create a hardship for them, would that impact your

12   ability to focus on this case if you were picked as a juror?

13         THE PROSPECTIVE JUROR:  Yes, I think so because I

14   would have to work night hours between Monday and Thursday, as

15   you said.  Friday we don't meet.  So, after court was in

16   session, I would have to get on the train, go home, and then

17   start work around 7 o'clock at night, work until at least

18   midnight Monday through Thursday, just to get those five hours

19   of work.  That would be about 20 hours Monday through

20   Thursday.  And then I would have to -- our minimum required

21   hours is 60.  So, between Friday and Sunday, I would have to

22   make up those 40 hours.  That would be 12-plus hour days if

23   you do the math.  So, it's about 13.3.  So, I do think that it

24   would be.

25         THE COURT:  Well, you said 60 hours.  I assume that

1   you at that point would be doing the work necessary to get the

2   job done more than logging in the specific time because your

3   employer has committed to paying --

4           THE PROSPECTIVE JUROR:  Correct.  Yes.  Like I said,

5   that's just the minimum expected hours.  I'm sure in this

6   circumstance it would be, you know, extremely difficult to hit

7   those 60 hours considering the length of time that this case

8   is expected to take.

9           THE COURT:  But you could do it, it would just be

10  hard?

11          THE PROSPECTIVE JUROR:  Yeah, I guess, so, it would

12  just be a lot of hours.

13          THE COURT:  A challenge.

14          THE PROSPECTIVE JUROR:  Correct.

15          THE COURT:  All right.  Just to get back to the

16  issue of fairness, would you -- understanding that you would

17  be working hard, would that affect your performance as a juror

18  in this case?

19          THE PROSPECTIVE JUROR:  I don't think so.  Like I

20  said, just long hours between here and work.

21          THE COURT:  Okay.

22          THE PROSPECTIVE JUROR:  But I don't think so.

23          THE COURT:  Thank you.

24          THE PROSPECTIVE JUROR:  You're welcome.

25          THE COURT:  Any other follow up?

1          MS. KOMATIREDDY:  No.

2          THE COURT:  Thanks so much.  Why don't you go back

3     across the hall.

4          THE PROSPECTIVE JUROR:  Thanks so much.

5          (Prospective juror 36 exits.)

6          THE COURT:  This is Juror No. 93.

7          (Prospective Juror No. 93 enters.)

8          THE COURT:  Hello.

9          THE PROSPECTIVE JUROR:  Hello, Your Honor.

10          THE COURT:  You are Juror No. 93, and you wanted to

11     talk to the Court about something.

12          THE PROSPECTIVE JUROR:  Yes, I do.

13          THE COURT:  Yes.

14          THE PROSPECTIVE JUROR:  There is an internal battle

15     that I am having because -- first of all, I'll give a funny

16     answer.  I speak -- I answer to a higher authority.

17          THE COURT:  I'm sorry, say that again.

18          THE PROSPECTIVE JUROR:  I answer to a higher

19     authority and that's my wife.

20          THE COURT:  Okay.

21          THE PROSPECTIVE JUROR:  Who has been telling me

22     since day one, no, no, no.  And the reason is that she knows

23     me pretty well.  If this had been ten years ago, I would paid

24     to be here as opposed to you guys paying me to be here because

25     of my mindset, being very methodical, systems analyst type of

1   person, and having been on the court -- a two-week court case

2   where I was the foreman, I enjoyed it non-stop, all the way

3   through.  But, unfortunately, as I mentioned yesterday, the

4   commute is way too much for me.  I think if I were on the case

5   two weeks down the road, I would have to be taken out on a

6   stretcher.  I'm too worn out.  I'm going to be 70 years this

7   year, 70 years old.  I think that's the main reason.  I wish I

8   had better reasons, but I thought I would say that beforehand,

9   before we got further down the road.

10              THE COURT:  Thank you for letting us know.

11              So when you talk about the commute, are you driving?

12              THE PROSPECTIVE JUROR:  It doesn't matter.  It turns

13   out to be exactly the same thing.

14              The first day I drove here it was an hour and a

15   half, incredible traffic downtown into Brooklyn.  The next day

16   I came by Long Island Railroad, get up, drive to the station,

17   get on the train, get off, take the subway, come to Brooklyn,

18   get off, walk, and it's always been an hour and a half, no

19   matter what happens.

20              THE COURT:  Okay.

21              THE PROSPECTIVE JUROR:  So three hours a day to

22   commute here back and forth would be -- that's why my wife

23   said by the time you get home, your out, and that's the case.

24              THE COURT:  Is it the time or the -- you know,

25   hypothetically, if someone were driving you, would that be

1    better, or would that make it work so you didn't have to drive

2    and you wouldn't have to be on the subway?

3              THE PROSPECTIVE JUROR:  That would be the case and

4    the fact that I have to get up at 5:30, 6 o'clock to the

5    morning to be here at 8:30.  I doubt very much anyone is going

6    to start the case at 1 o'clock in the afternoon.

7              THE COURT:  I understand that.

8              THE PROSPECTIVE JUROR:  But thank you for suggesting

9    that.

10             THE COURT:  I'm trying to figure out, you know,

11   people have different situations.

12             THE PROSPECTIVE JUROR:  Sure.  Sure.

13             THE COURT:  If there was a way to make things easier

14   for you to address that point.  So if you needed to be in

15   court hypothetically at 8:30 --

16             THE PROSPECTIVE JUROR:  Yeah.

17             THE COURT:  -- and it took an hour and a half to get

18   here, then you would be leaving at 7 o'clock.

19             THE PROSPECTIVE JUROR:  As it is now, I leave 10 to

20   7:00 from home.

21             THE COURT:  Is that too difficult for you from a

22   health perspective if, again, we were somehow able to

23   accommodate you?

24             THE PROSPECTIVE JUROR:  All I can tell you, by the

25   time I get on the train, I'm ready to collapse because my

1   normal lifestyle for the last seven years is to get up at 7:30

2   to say goodbye to wife, get up at 9:00 say goodbye to son, get

3   up at 10:00 and start my work, meaning websites and things

4   like that.  So, to go from waking up at 10:00 to waking up at

5   5:30 on the morning is a big drag on the body.

6           THE COURT:  I understand.

7           THE PROSPECTIVE JUROR:  I wish it was something more

8   dramatic.

9           THE COURT:  We don't want anything more dramatic.

10          THE PROSPECTIVE JUROR:  Trust me.  I loved my

11  experience and it would be great.

12          THE COURT:  I understand.  So that's why I am

13  exploring --

14          THE PROSPECTIVE JUROR:  Sure.

15          THE COURT:  -- whether there are accommodations that

16  could be made.

17          THE PROSPECTIVE JUROR:  Understood.  Understood.

18          THE COURT:  Hypothetically, if you had door-to-door

19  service --

20          THE PROSPECTIVE JUROR:  Wow.

21          THE COURT:  -- would that be an issue?

22          THE PROSPECTIVE JUROR:  Like I said, I'm split down

23  the middle.  Half of me says be there, be there; the other

24  says no.

25          THE COURT:  How would your wife view that?

Prospective Juror No. 93                    649

1          THE PROSPECTIVE JUROR:  Oh, she would not change her

2    mine at all.  I can't pull a fast one on her, I know, you want

3    to be there, you want to be there, I said yeah.

4          THE COURT:  Well.

5          MR. DE CASTRO:  Judge, we have no objection.

6          MS. KOMATIREDDY:  We defer to the Court.  It's a

7    tough call, Your Honor.

8          THE COURT:  Yes, so your wife is not here under oath

9    and you're the one who's going to be the juror.

10          THE PROSPECTIVE JUROR:  Uh-hum.

11          THE COURT:  Like I said, if it's just a question of

12    you being worn out by having to drive and sit in traffic --

13          THE PROSPECTIVE JUROR:  Uh-hum.

14          THE COURT:  -- be on the train.  If there was a way

15    that you could be picked up and then dropped off.

16          THE PROSPECTIVE JUROR:  Understood.

17          THE COURT:  If that would address it, then we can

18    discuss something.  But it's just that you have to get up so

19    early in order to make that, then it might be something that

20    we can't help you on.

21          THE PROSPECTIVE JUROR:  I understand.

22          THE COURT:  What is your view?  And then, more

23    importantly, whether that stress, you know, would create a

24    distraction such that you could not be a good juror.

25          THE PROSPECTIVE JUROR:  Well, from the original

1  conversation that was given to us as jurors was told to us

2  this case may go two months.  If you were to tell me this case

3  were to go three weeks, the half of me that says yes, might

4  win out.  But two months is just too much.  Yeah.

5          THE COURT:  So even for you, not withstanding more --

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  So two months of getting to court early

8  would be too much?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  I'm going to talk with the lawyers.

11  Thank you for letting us know.

12          THE PROSPECTIVE JUROR:  My pleasure.  I'm sorry.

13  I'm sorry to have to say that.

14          THE COURT:  I appreciate you letting us know.  It's

15  always good to have more information.

16          THE PROSPECTIVE JUROR:  Okay.  Thank you.

17          THE COURT:  Go back across the hall and we will be

18  in touch.

19          THE PROSPECTIVE JUROR:  Thanks.

20          (Prospective juror 93 exits.)

21          THE COURT:  So I heard from defense that you wanted

22  to have the juror stricken for cause the Government doesn't

23  take a position.

24          MS. KOMATIREDDY:  Your Honor, his concerns seem

25  sincere, Your Honor.  Because he is retired, it's kind of hard

1   to give him a pass when we are probing into people who are not

2   retired.  I'm on the fence, Your Honor.  I apologize.

3           THE COURT:  That's fine.  And the issue about his

4   commute -- we had this discussion about what it means to be

5   semi-sequestered, so he would get transportation, right?

6           MS. KOMATIREDDY:  I have to check with the marshals

7   on how that works.  They do do part of the transport.

8           THE COURT:  What does that mean, part of it?

9           MS. KOMATIREDDY:  They don't disclose that to us,

10  Your Honor.

11          THE COURT:  Well, I don't want to offer door-to-door

12  services if that's not going to happen.

13          MS. KOMATIREDDY:  Thank you.  My co-counsel just

14  informed me, I believe they have the jurors meet them -- I'm

15  sorry I don't think I'm allowed to say that in open court.

16          THE COURT:  It's not door to door, all you have to

17  say is it's not door to door.

18          MS. KOMATIREDDY:  I apologize.  I'm sorry, Your

19  Honor.

20          THE COURT:  If it's not door to door, I don't know

21  it either, and so I made potentially certain representations

22  to this juror as an accommodation.  If that's not something

23  that can be done, I would retract that and say that the

24  commute issue is --

25          MS. KOMATIREDDY:  Yes, Your Honor, it's not door to

Jury Selection                                          652

1    door.

2          THE COURT:  Okay.  That is all I need to know.  I

3    don't want to know anything else.

4          MR. DE CASTRO:  Judge, what you're saying is that

5    would be the biggest accommodation anyway and even then he is

6    saying the time period would just wear him down.  So I think

7    that's something, to me.

8          THE COURT:  And --

9          MR. DE CASTRO:  And, you know, the other thing is he

10   served before, I feel -- I joined with the Government that he

11   is sincere about this.

12         THE COURT:  Yes.  I do not believe that this juror

13   is trying to get out of jury service and he also was very

14   clear that were it not two months that he would be willing to

15   go through with it.  So the question is whether there's a

16   for-cause reason, such as unfairness, unusual hardship.

17         I'm going to have to think about it.  So let me just

18   defer ruling on it until we get to the rest of the group.

19         So let's move on to Juror 103.

20         (Prospective Juror No. 103 enters.)

21         THE COURT:  Good morning.

22         THE PROSPECTIVE JUROR:  Good morning.

23         THE COURT:  You're Juror No. 103.  I think we asked

24   you to let us know about whether your employer will pay you.

25         THE PROSPECTIVE JUROR:  No, I will not be paid.

1           THE COURT:  You will not be paid at all?

2           THE PROSPECTIVE JUROR:  No.

3           THE COURT:  And would that create a hardship for

4      you?

5           THE PROSPECTIVE JUROR:  Yes.

6           MR. DE CASTRO:  No objection.

7           MS. KOMATIREDDY:  No objection, Your Honor.

8           THE COURT:  Thank you for finding out.  You are

9      excused then.

10          THE PROSPECTIVE JUROR:  Thank you.

11          THE COURT:  You can go back to the second floor.

12          (Prospective juror 103 excused.)

13          THE COURT:  Juror No. 114.

14          MS. KOMATIREDDY:  I would just note, Your Honor,

15     that that juror worked form a law firm.

16          THE COURT:  I'm sorry?

17          MS. KOMATIREDDY:  I would just note that that juror

18     worked for a law firm.

19          THE COURT:  114.

20          (Prospective Juror No. 114 enters.)

21          THE PROSPECTIVE JUROR:  Good morning.

22          THE COURT:  You are Juror No. 114.  You were going

23     to find out whether you get paid.

24          THE PROSPECTIVE JUROR:  I asked yesterday, two

25     weeks.

Prospective Juror No. 122                        654

```
 1          THE COURT:  And then after two weeks, what happens?
 2          THE PROSPECTIVE JUROR:  No more.
 3          THE COURT:  Would that create a hardship for you
 4   financially.
 5          THE PROSPECTIVE JUROR:  Of course, it will break my
 6   budget.
 7          MR. DE CASTRO:  No objection.
 8          MS. KOMATIREDDY:  No objection, Your Honor.
 9          THE COURT:  You are excused then.  You can go back
10   to the second floor.  You don't have to serve on this jury.
11          THE PROSPECTIVE JUROR:  Thank you, Your Honor.
12          THE COURT:  Thank you.
13          (Prospective juror 114 excused.)
14          THE COURT:  Juror No. 122 is the one that we have
15   concerns about hearing.
16          (Prospective Juror No. 122 enters.)
17          THE COURT:  Good morning, sir.  How are you doing?
18          THE PROSPECTIVE JUROR:  I'm fine.
19          THE COURT:  We wanted to talk to you again.
20          THE PROSPECTIVE JUROR:  Yeah.
21          THE COURT:  Because we wanted to make sure you can
22   hear we are doing.  Can you hear me?
23          THE PROSPECTIVE JUROR:  Yeah, I have partial
24   deafness, so sometimes I have to ask them to repeat the
25   question again.
```

1      THE COURT:  Right.  Okay. And, so, we're wondering

2  how that will affect your ability to listen as a juror.

3      THE PROSPECTIVE JUROR:  It depends on you, but I

4  have a partial deafness.

5      THE COURT:  Okay.  So do you have a hearing aid?

6      THE PROSPECTIVE JUROR:  No.  I don't have a hearing

7  aid.  Like on the phone, if regular phone, I cannot hear it.

8  But if it's on the speaker, I can hear it.

9      THE COURT:  So the other day when I excused

10 everybody to go home, I heard you speaking to one of my people

11 saying that you didn't hear me.

12     THE PROSPECTIVE JUROR:  Yeah.  So that's why I say I

13 didn't hear it.  I asked you to repeat it a few times.

14     THE COURT:  Sorry.  And I'm just a little bit

15 concerned because in the course of the trial, you won't -- if

16 you are a juror, you won't be able to say I can't hear you, so

17 you need to be able to hear consistently when the judge is

18 talking, when the lawyers are talking, when the witness is

19 testifying.

20     Do you think you can do that or will there be times

21 that you won't hear?

22     THE PROSPECTIVE JUROR:  Well, it depends on you.

23     THE COURT:  I think everybody tries their best.

24     THE PROSPECTIVE JUROR:  Even the age limit too?

25     THE COURT:  I'm sorry?

1          THE PROSPECTIVE JUROR:  Even age limit?

2          THE COURT:  Is there an age limit?  No.

3          THE PROSPECTIVE JUROR:  Oh, okay.

4          THE COURT:  If you can hear everything, then it

5    doesn't matter how old you are.

6          THE PROSPECTIVE JUROR:  Oh, okay.

7          THE COURT:  But the question is whether you can hear

8    consistently enough.

9          THE PROSPECTIVE JUROR:  All right.

10          THE COURT:  That you can follow the trial because

11   you can't turn and ask the juror next to you what did he say

12   and it would also be hard for you to raise your hand and say I

13   can't hear you too much.  So that's why we want to ask you.

14          THE PROSPECTIVE JUROR:  Right.  That's a little bit

15   of problem.  So, it depends on you, whatever you want to do.

16          THE COURT:  Okay.

17          MR. DE CASTRO:  No objection.

18          THE COURT:  Do you want to have any further

19   questioning?

20          MS. KOMATIREDDY:  Could we just discuss it, Your

21   Honor.

22          THE COURT:  Yes.

23          MS. KOMATIREDDY:  With the Court as well.

24          THE COURT:  We appreciate your willingness to serve.

25   Just hold on a moment.

Prospective Juror No. 122                                   657

1          MS. KOMATIREDDY:  Your Honor, I would just ask, if

2     you don't mind, sorry, Your Honor, if the juror has heard

3     everything that you have asked this morning, that's fine.  So

4     long as someone is speaking into a microphone, can he hear it?

5     Is the issue the volume?

6          THE COURT:  So, sir, have you heard everything I

7     have said to you?

8          THE PROSPECTIVE JUROR:  What did you say?

9          THE COURT:  When I am speaking now, can you hear me?

10         THE PROSPECTIVE JUROR:  Yeah.

11         MS. KOMATIREDDY:  No objection.  I'm sorry.

12         THE COURT:  Great.  Thank you so much.  We think

13    it's better for you not to sit on this jury, but you can sit

14    on another jury, possibly, so go down to the second floor --

15         THE PROSPECTIVE JUROR:  Okay.

16         THE COURT:  -- and let them know that that you are

17    excused from this trial.

18         THE PROSPECTIVE JUROR:  Tell them what?

19         THE COURT:  That you are excused from this trial.

20    You don't have to sit in this case.

21         THE PROSPECTIVE JUROR:  Okay.

22         THE COURT:  Go down to the second floor.

23         THE PROSPECTIVE JUROR:  Okay.

24         THE COURT:  Tell them that you are excused.

25         THE PROSPECTIVE JUROR:  Okay, thank you.

1        THE COURT:  Have a great day.  Thank you.

2        THE PROSPECTIVE JUROR:  Okay.

3        (Prospective juror 122 excused.)

4        THE COURT:  Juror No. 123.

5        (Prospective Juror No. 123 enters.)

6        THE COURT:  Juror 123.  How are you doing?

7        THE PROSPECTIVE JUROR:  Good.  I'm well.  How are

8  you?

9        THE COURT:  Good.  Thank you.  You wanted to talk to

10  us again.

11        THE PROSPECTIVE JUROR:  Yes, I wanted to clarify a

12  couple of points yesterday related to my company's policy on

13  jury duty.  I think I said I would figure out the payment if I

14  were picked, but they will only pay for three days of jury

15  duty; the rest would be unpaid.

16        THE COURT:  All right.  And would that create a

17  financial hardship for you?

18        THE PROSPECTIVE JUROR:  It would be -- yes, because

19  I have bills that I have to pay, so it would be a bit of a

20  challenge.

21        MR. DE CASTRO:  No objection.

22        MS. KOMATIREDDY:  No objection, Your Honor.

23        THE COURT:  All right.  So thank you for letting us

24  know.  You are excused.

25        THE PROSPECTIVE JUROR:  Thank you.

1           (Prospective juror No. 123 excused.)

2           THE COURT:  Juror No. 147.

3           (Prospective Juror No. 147 enters.)

4           THE COURT:  Good morning.

5           THE PROSPECTIVE JUROR:  Good morning.

6           THE COURT:  You're Juror No. 147?

7           THE PROSPECTIVE JUROR:  Yes, ma'am.

8           THE COURT:  We asked you to find out from your

9    employer if you would get paid.

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Can you tell us what you found out?

12          THE PROSPECTIVE JUROR:  Unfortunately, I will not be

13   paid.

14          THE COURT:  Okay.  So they won't pay you at all?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Would that create a financial hardship

17   for you?

18          THE PROSPECTIVE JUROR:  Yes.

19          MR. DE CASTRO:  No objection.

20          MS. KOMATIREDDY:  No objection, Your Honor.

21          THE COURT:  All right.  You are excused then.  You

22   can go back to the second floor.

23          THE PROSPECTIVE JUROR:  Thank you so much.

24          THE COURT:  Thank you.

25          (Prospective juror 147 excused.)

1               (Prospective Juror No. 153 enters.)

2               THE COURT:  Hello.

3               THE PROSPECTIVE JUROR:  Good morning.

4               THE COURT:  You are Juror No. 153?

5               THE PROSPECTIVE JUROR:  Yes.

6               THE COURT:  We asked you to find out from our

7     employer if you would get paid.

8               THE PROSPECTIVE JUROR:  Yes, I send a message

9     yesterday to see what I am going to get paid.  This morning I

10    sent message again, the judge want to know 8:30 but I don't

11    know what reply because my phone.

12              THE COURT:  So you don't know yet?

13              THE PROSPECTIVE JUROR:  I don't know about reply

14    this morning.

15              THE COURT:  And your understanding -- hold on a

16    second.  Let me just see.  You don't know at all if you're

17    going to get paid?

18              THE PROSPECTIVE JUROR:  Yes.

19              THE COURT:  Any follow-up questions?

20              MS. KOMATIREDDY:  Your Honor, maybe would it be

21    possible to follow up again.  Is the issue that she doesn't

22    have access to her phone?

23              THE COURT:  Okay.  So I don't remember because we

24    have had so many jurors.  Is your employer -- can you call

25    your employer or is your employer unavailable by phone?

Prospective Juror No. 162                                    661

1          THE PROSPECTIVE JUROR:  Yes.  When I call, I don't

2    know that going to pick up.  I just want to see the message,

3    reply.

4          THE COURT:  But is it possible to reach your

5    employer by telephone?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Can you try that this morning?

8          THE PROSPECTIVE JUROR:  So I have to --

9          THE COURT:  Go back downstairs, get your phone, and

10   call and just let them know that the Court wants to know

11   whether you'll get paid if you're pick to sit on this jury for

12   eight weeks.

13         THE PROSPECTIVE JUROR:  Okay.

14         THE COURT:  And then whatever they tell you, let us

15   know.  And then if you still can't reach them, let us know

16   that you can't.

17         THE PROSPECTIVE JUROR:  Thank you.

18         THE COURT:  But we still would like you to try by

19   phone.

20         THE PROSPECTIVE JUROR:  Okay.

21         THE COURT:  Thank you.

22         (Prospective juror 153 exits.)

23         THE COURT:  And juror 162.

24         (Prospective Juror No. 162 enters.)

25         THE COURT:  Hi.  Good morning.

Prospective Juror No. 162                                    662

1          THE PROSPECTIVE JUROR:  Good morning.

2          THE COURT:  You're juror 162.  We wanted to find out

3     if you will get paid if you are on this jury.

4          THE PROSPECTIVE JUROR:  Yes, I will.

5          THE COURT:  So you found out from your employer that

6     you would get paid?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Even though it could be eight weeks?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Wonderful.

11         Any follow up?

12         MR. DE CASTRO:  No, Judge.

13         MS. KOMATIREDDY:  No, Judge.

14         THE COURT:  Thanks.

15         THE PROSPECTIVE JUROR:  So did you want to know

16    about my medical?

17         THE COURT:  Sure.  Tell us.

18         THE PROSPECTIVE JUROR:  So, I received information

19    from my chart, but I haven't been able to talk to the doctor

20    to see what the follow up would be as far as the biopsy.  So I

21    don't know, you know, if there would be any required follow

22    up.

23         THE COURT:  Okay.

24         THE PROSPECTIVE JUROR:  That information.  I

25    couldn't find out because my phone.  I don't have access to

1   talk to the doctor.

2          THE COURT:  Well, could you call now and find out?

3          THE PROSPECTIVE JUROR:  Yes, but -- yeah, I can get

4   my phone.

5          THE COURT:  Why don't you go back and make a phone

6   call.  Obviously your health is very important.

7          THE PROSPECTIVE JUROR:  Yes, it is.

8          THE COURT:  It may be possible that you could speak

9   to the doctor in the next couple of days.  The trial won't

10  start until Monday.

11         THE PROSPECTIVE JUROR:  Okay.

12         THE COURT:  And then, certainly, if it has to be

13  next week, maybe you can schedule a call on Friday.  There is

14  some room.  If you can talk to the doctor today and let us

15  know what the situation it, that would be great.  So go down,

16  get your phone, call the doctor, and then let us know what you

17  hear.

18         THE PROSPECTIVE JUROR:  Okay.  Thank you.

19         (Prospective juror 162 exits.)

20         THE COURT:  All right.  So we have heard from

21  everyone, right?  Is there anybody else?

22         MR. MIEDEL:  Your Honor --

23         THE COURT:  Juror --

24         MR. MIEDEL:  I'm sorry.  Go ahead.

25         THE COURT:  -- Juror No. 145 also wants to speak to

1   us.  Did you have --

2           MR. MIEDEL:  We will talk about that after.

3           THE COURT:  Okay.

4           (Prospective Juror No. 145 enters.)

5           THE COURT:  Good morning.

6           THE PROSPECTIVE JUROR:  Hi.

7           THE COURT:  You're juror 145.  I understand you want

8   to speak to us further.

9           THE PROSPECTIVE JUROR:  Yes.  Sorry.

10          I just had some hardship issues come up.  My

11  domestic partner was diagnosed with duodenal cancer about a

12  year and a half ago.  His last treatment was in August, but he

13  just had some doctors' appointments this week, and he is now

14  going to have surgery to have his gallbladder most likely

15  removed and he is having kidney issues.  He is having

16  early-stage renal failure.

17          THE COURT:  I'm sorry.

18          THE PROSPECTIVE JUROR:  It's okay.  I'm sorry.  We

19  thought this appointment was going to be better.  I haven't

20  really brought it up because things were looking good in the

21  fall.

22          And, so, I'm nervous because this is also like a

23  two-month trial, what might be happening, and like if he has

24  gallbladder surgery also, I would be the one who would -- they

25  won't release him when he has his other procedures, someone

Prospective Juror No. 145                              665

1    has to pick him up.

2              THE COURT:  Of course.

3              THE PROSPECTIVE JUROR:  And what not.  so, yeah.

4              THE COURT:  Do you know when the surgery is

5    scheduled for?

6              THE PROSPECTIVE JUROR:  We don't know yet.  He just

7    found this out in the past two days.  So they're working on

8    that right now.  We have to figure that out.

9              The other complication is I'm a full-time school

10   teacher and we also own a bar/tavern together.  He is our main

11   employee.  So we have to figure out what that looks like also

12   with all of these things going on, which would be a challenge

13   for me to be here.  At least when I am at school, I can answer

14   my phone and other things.  That's concerning for me as well.

15             MS. KOMATIREDDY:  We have no objection.

16             MR. DE CASTRO:  No objection.

17             THE COURT:  Thank you for letting us know.  Thank

18   you for telling us.  I'm sorry to hear about all of those

19   health issues.  You're excused.  Go back to the second floor.

20             THE PROSPECTIVE JUROR:  Thank you.

21             THE COURT:  Thank you.

22             (Prospective juror 145 excused.)

23             (Continued on next page.)

24

25

 1    (Continuing.)

 2            MR. MIEDEL:  Your Honor, we had qualified a couple

 3    of people who had trips planned with unrefundable tickets.  I

 4    can think of a couple, 129 and 143.

 5            We haven't checked with Judge Cogan whether he would

 6    be okay with suspending the trial if these people have to go

 7    on a trip for a day.  I suspect that the answer to that is no.

 8    So, we probably need to ask those people if they are okay with

 9    losing their trip or if that's going to cause a hardship for

10    them.

11            THE COURT:  All right.

12            MS. KOMATIREDDY:  Your Honor, the approach we were

13    taking, as we had discussed earlier, is if it's one day, if

14    it's one trial day, that that would be okay.  We should check

15    with Judge Cogan, I agree, but we were waiting to see how many

16    of these people actually made it on to the list of 40 that

17    we're picking from.  I don't think that they all will.  I

18    think we're down to one or two.

19            So, in my view, one or two trial days is not a big

20    deal, I would just want to ask Judge Cogan if he's okay with

21    that.

22            THE COURT:  I think you're saying the same thing,

23    which is that if Judge Cogan was willing to accommodate them,

24    then that would be fine.  But if you are hearing from

25    Judge Cogan that he will not, we're going to go full sped

1   ahead, then that could be a problem.

2          I do recall that there was -- 143 was the Boston

3   Celtics game and it would require a Thursday.

4          MR. MIEDEL:  And 129 was the nurse who had a trip

5   scheduled for next week, I think next Thursday.

6          THE COURT:  And then there was another one yesterday

7   afternoon, the Dominican Republic.  I don't remember the

8   number.  That was a trip as well.

9          MR. DECASTRO:  I believe 35 --

10         THE COURT:  160 was the Dominican Republic travel.

11         MR. DECASTRO:  35 we believe was a bachelorette

12   party, sister's bachelorette party, leaving on Thursday.

13         THE COURT:  I can't answer that question, so how do

14   you want to handle it?

15         MS. KOMATIREDDY:  We could take a short break and

16   ask Judge Cogan's deputy; would that be possible?

17         THE COURT:  We could do that.  So, I think -- yes,

18   let's go ahead and do that.

19         We'll take a ten-minute break, and when we reconvene

20   I'll let you know my ruling on Juror 93; hopefully, we'll get

21   some information for the two jurors who are going to make

22   further phone calls; and then you'll also be able to tell me

23   what we're going to do about the people with the trips that

24   might require a delay of a day.

25         So, let's take a ten-minute break and I'll have my

Jury Selection                                          668

1    deputy contact Judge Cogan.

2             MS. KOMATIREDDY:  10:20, your Honor?

3             THE COURT:  10:20.

4             (Recess taken.)

5             MS. KOMATIREDDY:  Your Honor, we have a couple

6    updates for you when you're ready.

7             THE COURT:  We're back on the record.

8             MS. KOMATIREDDY:  First of all, we did speak with

9    Judge Cogan's deputy, and our collective impression was that

10   one day or half a day off would be accommodated, so we're not

11   seeking to re-interview those four jurors that were discussed

12   before the break.

13            THE COURT:  All right.

14            How do you propose we convey to the jurors if they

15   are picked that they don't -- that we might be able to

16   accommodate them?

17            I'm worried because I have an update for you as well

18   about communications with the jurors.  So, my law clerk

19   indicates that she was approached by four jurors who want to

20   talk to us:  129 says that her union may be going on strike;

21   Juror No. 159 has a new vacation issue; 150 states they really

22   don't want to be here; and 143 had a travel reminder.

23            So, in the event that any of the jurors who told us

24   about travel get picked, I'm concerned that they will be very

25   angry and think that they have to travel their travel plans

Jury Selection                                      669

1   when they told us it was important to them.  I don't know that

2   I can assure them that they don't have to cancel their plans.

3           So, how do you suggest I handle that?

4           MS. KOMATIREDDY:  I think based on our conversation,

5   I think that your Honor can say that we will accommodate those

6   plans and you don't have to cancel those plans.

7           THE COURT:  Since I haven't had a chance to confirm

8   with Judge Cogan, I would want to speak to him and just make

9   sure that I can say that.  Because if the general impression

10  is that it's possible, I can't give an assurance that it will

11  be possible unless I know that that's the case.

12          But as to the other jurors who want to talk to us, I

13  think we should call them in.

14          MS. KOMATIREDDY:  Yes, your Honor.

15          THE COURT:  129 is the one we made go back several

16  times to get information about whether she'll get paid or not

17  and switching around of schedules and things like that.  But I

18  don't know how a strike would effect her, so we'll call her

19  in.

20          MS. KOMATIREDDY:  Your Honor, may I put something on

21  the record please.

22          THE COURT:  Yes.

23          MS. KOMATIREDDY:  Yesterday, after court, as

24  everyone was walking out of the courtroom, Special Agent Cain,

25  an individual who was a woman approached -- they were walking

1   out of the courtroom together.  The individual said, "Hey, how

2   are you?"  Special Agent Cain said, "Hey, how are you?"

3           And then as that individual turned, he noticed her

4   juror badge.  And she asked him, "Should I introduce myself?"

5   and he responded, "No, ma'am, you shouldn't," and then walked

6   away.

7           That was the extent of the interaction.  We wanted

8   to make sure we put it on the record, of course.  We believe

9   it's de minimis and not an issue.

10          We did attempt to identify which juror this is.  We

11  don't know which juror this is, but we wanted to make sure we

12  put it on the record.

13          THE COURT:  It was this courtroom?

14          MS. KOMATIREDDY:  Downstairs --

15          THE COURT:  You said courtroom, so I don't know what

16  courtroom you're talking about.

17          MS. KOMATIREDDY:  Sorry.  Downstairs walking out of

18  the courthouse.

19          THE COURT:  Courthouse.

20          MS. KOMATIREDDY:  Yes, in the lobby when everyone

21  was filtering out at the end of the day.

22          THE COURT:  So, let me understand that more.

23          Special Agent Cain was walking out, a person said,

24  "Hi, how are you doing?"  The person appeared to have a jury

25  badge, and that was -- Special Agent Cain said I'm fine or

1    something innocuous like that, and that's it.

2              Is that right?

3              MS. KOMATIREDDY:  Essentially, your Honor, yes.

4    When he noticed the jury badge, he walked away and said, "No,

5    ma'am," and apologized and he went away.

6              MR. DECASTRO:  No issue, Judge.

7              THE COURT:  Then no need for follow-up, counselor.

8              MS. KOMATIREDDY:  Thank you.

9              THE COURT:  Thank you for letting us know about

10   that.

11             MS. KOMATIREDDY:  Of course.

12             THE COURT:  All right.  So, let's just take a quick

13   break so I can confirm with Judge Cogan what we've heard, what

14   our understanding is, so that I can convey that to the jurors.

15             (Recess taken.)

16             THE COURT:  We're back on the record.

17             I spoke with Judge Cogan, and he has assured me that

18   he will be flexible depending on how the parties want to

19   proceed.

20             He also said that I can assure the juror, if any of

21   these jurors get picked and express concern about their

22   vacation, to say that we will accommodate them as best we can

23   and if they wanted to bring it up with him on Monday and get

24   the assurance directly from him that would be fine.

25             But it seems pretty firm, so I feel comfortable

1   conveying that information.

2            MR. DECASTRO:  Judge, I just might suggest that if

3   there's a juror that has that on there, they may not want to

4   say anything, but just assure them anyway.

5            THE COURT:  Yes, yes.

6            Once we have the jury seated, I have a list of the

7   people.  And if any of them are on the list, I'll just say

8   generally I know some of you may have told us about this, and,

9   rest assured, you're fine.

10           So, I would suggest that we call in 129; 159 has the

11   new vacation issue; 150 doesn't want to be here; 143 has the

12   travel reminder.

13           I suppose since that person took the trouble of

14   bringing it to us, we can have that person brought in and

15   assure him that it'll be fine, okay?

16           So, 129, 159, 150, and 143.  And, also, we got word

17   that 153 got an answer from the employer, so we can add 153 as

18   well.

19           (Prospective Juror No. 129 enters.)

20           THE COURT:  Good morning.  Good to see you again.

21           I understand there's something you want to tell us.

22           THE PROSPECTIVE JUROR:  Yes.

23           When I left yesterday, my manager pretty much texted

24   me the same exact thing I told you guys yesterday.

25           I'm from a union hospital.  It's NYSNA.  So, if

Prospective Juror No. 129                   673

1  you've seen on the news, the city hospitals have been on

2  strike.  And they've actually declared, like, a ten-day notice

3  to my hospital, which means my hospital will go on strike, the

4  nurses for NYSNA.  Since I'm a NYSNA member, I am expected to

5  be there during the strike.

6           And it is also unpaid for me.  So, even if am here

7  and my hospital is on strike, I'm expected to be there and it

8  is unpaid.

9           THE COURT:  So, your union is going on strike.

10          THE PROSPECTIVE JUROR:  Correct.

11          THE COURT:  And you need to be there to be on strike

12 with them.

13          THE PROSPECTIVE JUROR:  Correct.

14          THE COURT:  And during that time you would not be

15 paid.

16          THE PROSPECTIVE JUROR:  Correct.

17          THE COURT:  But if you were on the jury, you

18 couldn't be forced to be there with them on strike.

19          THE PROSPECTIVE JUROR:  I would still not be paid.

20          THE COURT:  But whether you're there or here, you

21 would still not be paid.  I'm just trying to figure out the

22 situation.

23          THE PROSPECTIVE JUROR:  Right.  So, what I'm saying

24 is this is my future.  This is my job.  I cannot jeopardize

25 that being here and I cannot do seven-day weeks towards the

1    end of this case.

2          There's no guarantee in eight weeks this will be

3    finished, correct?

4          I was just asking.  I don't want to make an

5    assumption.

6          THE COURT:  There are never guarantees.  That's our

7    best estimate.

8          THE PROSPECTIVE JUROR:  So, it could definitely go

9    passed eight weeks.

10         Is there a possibility this person might do, like, a

11   plea deal and it could end in a week or is that not an option?

12         THE COURT:  Anything is possible.

13         THE PROSPECTIVE JUROR:  I did not sleep last night.

14   I'm extremely stressed out about this.  Like, this would be a

15   real big financial burden on me.  I'm out $1,500 for that

16   vacation, I'm going to be unpaid, and then I have to work to

17   get paid after that March date that we talked about yesterday.

18         THE COURT:  Right.

19         THE PROSPECTIVE JUROR:  I literally would not be

20   able.  It's $800 in parking, which I know I would get back,

21   but it's not immediate back.

22         I have to fill up my car with gas every day.  I'm in

23   a rental right now 'cause I was in a car accident in December.

24   It's not even my car.  And I'm filling it up with gas every

25   other day just to get here.  It's a long commute.

1          THE COURT:  Right.  So, I'm sorry to keep asking

2     these questions --

3          THE PROSPECTIVE JUROR:  Yeah, no, I understand.

4          THE COURT:  Originally, you told us that because

5     you're already scheduled for certain days, the fact that

6     you're here on jury duty wouldn't effect whether you got paid

7     for those days because you're already scheduled in the

8     agreement with your employer that you have to get paid if

9     you're scheduled.

10         THE PROSPECTIVE JUROR:  Correct.

11         THE COURT:  Now, if there's a strike, or it sounds

12    like there is a strike --

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  There's definitely a strike.

15         During the strike, for days that you are scheduled,

16    you're not working because you're on strike and you're

17    supposed to be there with your co-union members --

18         THE PROSPECTIVE JUROR:  Right.

19         THE COURT:  -- if you were here instead because you

20    were picked to be on this jury, you likewise wouldn't get

21    paid.

22         THE PROSPECTIVE JUROR:  Correct.

23         THE COURT:  But you wouldn't get paid anyway because

24    you're on strike.

25         THE PROSPECTIVE JUROR:  Right, but I would be out

1   those -- I'm taking from my savings right now to get here.

2   Like, it's not going to be a feasible option.

3           If they're on strike, it could be three, four days,

4   like how the City's were, it could be a month.  Which would

5   mean all those days sitting here would still be unpaid days.

6           THE COURT:  But you wouldn't get paid even if you

7   weren't on jury duty because you're on strike.

8           THE PROSPECTIVE JUROR:  Right, but it's my right to

9   be there.  That's my union.  That's my future.  That's safe

10  patient staffing.

11          THE COURT:  So what you're saying is you want to be

12  there --

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  -- with your union.

15          THE PROSPECTIVE JUROR:  Absolutely.

16          THE COURT:  Because they're on strike and you need

17  to support them.

18          THE PROSPECTIVE JUROR:  Correct.

19          THE COURT:  And if you weren't there to support

20  them, that would be bad because of your career.

21          THE PROSPECTIVE JUROR:  Correct.

22          THE COURT:  Okay.  Remind me, your vacation is what

23  time?

24          THE PROSPECTIVE JUROR:  The second to the fifth is

25  what's booked that I would be able to show you stuff if I had

1    to e-mail something in, nonrefundable.

2              And then I had a week off, Presidents' week, that I

3    have not planned anything yet because I didn't want to be out

4    more money that I don't have.

5              THE COURT:  So, for the second to the fifth, my

6    understanding from Judge Cogan is that there's some

7    flexibility in terms of taking a day off from trial because a

8    juror has a vacation day or two.  So, I think if you are

9    picked to be on this jury, you wouldn't have to worry about a

10   vacation, it's the other things that we would need to have

11   some discussion about, your being with your union during the

12   strike.

13             Were there any follow-up questions?

14             Otherwise, we can have a discussion.

15             MS. KOMATIREDDY:  Not from the Government, your

16   Honor.

17             MR. DECASTRO:  No, your Honor.

18             THE COURT:  Why don't you step outside while I talk

19   to the lawyers?

20             THE PROSPECTIVE JUROR:  Yeah, yeah.

21             (Prospective Juror No. 129 exits.)

22             THE COURT:  Does anybody want to say anything?

23             I know the defense had asked for her to be stricken

24   for cause.

25             MR. DECASTRO:  Our position is the same.

1          MS. KOMATIREDDY:  Your Honor, we just think it's a

2    tough call because it seems like -- we think it's a tough

3    call.  But given the level of resentment she appears to be

4    exhibiting at this process, I think we should probably let her

5    go.

6          THE COURT:  So, have her come back.

7          (Prospective Juror No. 129 enters.)

8          THE COURT:  Juror No. 129, thank you for your

9    update.  You're excused.

10          THE PROSPECTIVE JUROR:  Thank you so much.

11          THE COURT:  Thank you.

12          (Prospective Juror No. 129 excused.)

13          THE COURT:  159?

14          THE LAW CLERK:  We have 143.

15          THE COURT:  Okay, yes, 143.

16          (Prospective Juror No. 143 enters.)

17          THE COURT:  Good morning.

18          THE PROSPECTIVE JUROR:  Good morning.

19          THE COURT:  You wanted to talk to us?

20          THE PROSPECTIVE JUROR:  Well, I guess we spoke

21    yesterday about my plans next week.

22          THE COURT:  Yes.

23          THE PROSPECTIVE JUROR:  And I just didn't know if a

24    decision had been made on that.

25          THE COURT:  This is your trip to Boston.

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  So, I have been assured by Judge Cogan,

3    who will be presiding over the case, that if any juror needs

4    to take a day off and the parties agree to it, which the

5    parties have told me they're flexible, then it would be

6    possible for you to go on the trip.

7            THE PROSPECTIVE JUROR:  Okay.

8            THE COURT:  So, if that is the only concern that you

9    have, then it can be accommodated.

10           THE PROSPECTIVE JUROR:  Okay, great.  Thank you.

11           THE COURT:  Thank you.

12           (Prospective Juror No. 143 exits.)

13           THE COURT:  150 or 159, whoever is there.

14           (Prospective Juror No. 150 enters.)

15           THE COURT:  Good morning.

16      You're Juror No. 150.

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  You wanted to talk to us again.

19           THE PROSPECTIVE JUROR:  Yes.

20           So, you asked me a question yesterday.  I had some

21   very strong feelings about substances that alter the mind.

22   And I thought a lot about it.  Yesterday when we spoke, I was

23   very sure and very certain that it would not impact my ability

24   to make a fair decision.

25           And I thought about that all night long, just that

Prospective Juror No. 150                          680

1    one particular question, and I no longer feel that way.  I

2    strongly no longer feel that way.  I thought about all through

3    school and starting junior high school, people getting

4    involved with that stuff and what happened to them.  I thought

5    about high school and the impact.

6              THE COURT:  Thank you for being so thoughtful and

7    I'm sorry that you had a sleepless night.

8              How do you think that would affect your deliberation

9    as a juror in this case where the question isn't whether drugs

10   are bad but whether this particular individual is guilty of

11   the crimes that are alleged?

12             THE PROSPECTIVE JUROR:  So, I'm not sure.  I'm

13   honestly not sure.

14             THE COURT:  Okay.

15             THE PROSPECTIVE JUROR:  Because you're talking about

16   something that destroys lives, period.

17             THE COURT:  Right.

18             THE PROSPECTIVE JUROR:  And I have seen that within

19   my own family.

20             THE COURT:  Right.

21             THE PROSPECTIVE JUROR:  So, I'm honestly not sure.

22   I'm sitting in that room, I'm getting more and more anxious, I

23   thought about it all night.

24             I've served on a jury before for the state, so I'm

25   not opposed to serving on a jury.  But with this particular

1   thing, it's really bothering me.

2          THE COURT:  And I'm sorry to probe so much, but your

3   anxiety is about whether you could be fair or --

4          THE PROSPECTIVE JUROR:  Whether I can be fair.  I

5   don't know if I can do that.

6          THE COURT:  Let me just maybe say some things and

7   you can tell me if it assures you.

8          Like I said, the issue at the trial is not going to

9   be whether drugs are bad for society.

10         THE PROSPECTIVE JUROR:  Right.

11         THE COURT:  The law, as it currently stands, is that

12  distribution of cocaine, drug trafficking, those kinds of

13  things, importation of cocaine, they are all illegal.

14         The only question will be whether this person is

15  guilty of committing any of those crimes that are alleged.

16  So, the evidence will be about what this person may or may not

17  have done.

18         THE PROSPECTIVE JUROR:  Okay.

19         THE COURT:  So, you'll be looking at evidence about

20  things that people did -- that he might have done, that other

21  people might have done.

22         THE PROSPECTIVE JUROR:  Okay.

23         THE COURT:  And at the end of it, you'll decide

24  whether he did those things, whether other people did those

25  things, and whether those things constitute a crime based on

1  what Judge Cogan will instruct you are the elements of a

2  criminal act.

3             THE PROSPECTIVE JUROR:  Okay.

4             THE COURT:  And then you'll just decide whether he

5  did those things and is guilty or not and that's it.

6             So, I think there isn't going to be debate about

7  whether drugs are good or bad, it's going to just be drugs

8  were involved in the things that are alleged and you'll just

9  have to decide whether this person is guilty of those crimes

10  or not.

11             THE PROSPECTIVE JUROR:  I understand.  And I want to

12  be honest here.

13             THE COURT:  Yes.

14             THE PROSPECTIVE JUROR:  So, I hear you, I understand

15  what you're saying, and I am telling you that I feel that I'm

16  not sure if I can separate the two.

17             And I want to be very clear about that.  I am not

18  sure.

19             THE COURT:  So, are you saying you're not sure if

20  you could be fair?

21             THE PROSPECTIVE JUROR:  For that particular reason,

22  yes.

23             MS. KOMATIREDDY:  No objection, your Honor.

24             MR. DECASTRO:  No objection.

25             THE COURT:  Thank you for letting us know.  You're

1    excused from this trial.  Thank you for coming in all these

2    days and for letting the Court know of your concerns.

3              THE PROSPECTIVE JUROR:  Thank you.

4              THE COURT:  You can go back to the second floor.

5              (Prospective Juror No. 150 excused.)

6              THE COURT:  And I think 159 has a new vacation

7    issue.

8              (Prospective Juror No. 159 enters.)

9              THE COURT:  Good morning.

10             THE PROSPECTIVE JUROR:  Good morning, Judge.

11             THE COURT:  You're Juror No. 159.

12             You wanted to talk to us?

13             THE PROSPECTIVE JUROR:  Yeah.

14             So, I had a planned vacation that I didn't mention

15   in my questionnaire which I thought I should have.  It's

16   towards the end of March --

17             THE COURT:  I'm sorry, speak a little more loudly.

18             THE PROSPECTIVE JUROR:  Oh, I'm sorry.

19             I have a planned vacation that I didn't mention in

20   questionnaire but I thought I should have.  So, it's towards

21   the end of March.  Hopefully, the trial will be over by then,

22   but it's from March 28 to April 2.

23             THE COURT:  All right, great.  Thank you.  That's

24   useful to know.

25             I think everybody's best estimate is that it will be

1   done by then.

2            THE PROSPECTIVE JUROR:  It's like right the tail end

3   of it.

4            THE COURT:  Thank you.

5            (Prospective Juror No. 159 exits.)

6            THE COURT:  So, I'm just going to take a minute and

7   see where we are.

8            I owe you a ruling on 93.  I think it is a close

9   call.  But given that the main concern seems to be the

10  commute, that we can accommodate to address those concerns, so

11  I will not strike him for cause.

12           There was the juror who had the answer on the

13  employer.  I think that was 153?

14           We can have 153 come in and just tell us what she

15  learned.

16           (Prospective Juror No. 153 enters.)

17           THE COURT:  Hi, Juror No. 153.

18           I understand you did call your employer and you got

19  some information?

20           THE PROSPECTIVE JUROR:  Yeah, when I went back, they

21  said yes, you get paid.  But I called to make sure it went on

22  for the eight weeks but never replied.  I said for eight weeks

23  but he never replied.

24           THE COURT:  So, you would be paid but couldn't get

25  assurance of whether you will get paid for eight weeks or not.

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Any follow-up questions?

3          MS. KOMATIREDDY:  Your Honor, if you wouldn't mind

4     asking if she weren't paid for the full eight weeks, would

5     that be a hardship?

6          THE COURT:  I'm sorry, I can't hear you.

7          MS. KOMATIREDDY:  If you wouldn't mind asking if the

8     juror were not paid for the full eight weeks, would that be a

9     hardship.

10         THE COURT:  So, if it turns out you were not paid

11    for the full eight weeks, would that be a financial hardship

12    on you?

13         THE PROSPECTIVE JUROR:  Yes.

14         MR. DECASTRO:  Judge, just so we get a sense, how

15    big the company is where she works, big or small?

16         THE COURT:  So, I understand you work in security.

17    Don't tell us the name of the company, but how big is it?

18         Is it a large company or a small one?

19         THE PROSPECTIVE JUROR:  Large.

20         THE COURT:  Large company.

21         THE PROSPECTIVE JUROR:  Yes.

22         MS. KOMATIREDDY:  We could discuss it afterwards,

23    your Honor.

24         THE COURT:  Thank you for getting that information.

25    Why don't you go back across the hall and I'll talk with the

1    lawyers.  Thank you.

2              (Prospective Juror No. 153 exits.)

3              MS. KOMATIREDDY:  Your Honor, we were just thinking

4    since we're going to have to interview additional jurors

5    anyway, if we could just wait a little longer to get that

6    answer.

7              We don't have enough to go through.  We're right at

8    40, I think.

9              Are we at 39 or 40?

10             40 with two question marks.

11             THE COURT:  Hold on a second.  Let me just confirm.

12             (Pause in proceedings.)

13             THE COURT:  By my calculation, if 153 and 162 are

14   qualified, then we have 40.  If they are not, we are at 38.

15             So, since those are still open questions, I think we

16   do need to start questioning those additional jurors that we

17   called in with the thought that we would at least get two and

18   then we wouldn't have to worry about these two, right?

19             So, what I propose is we bring up a batch of ten and

20   then we'll just go through however many we need.  And if that

21   doesn't do the trick, we'll get the next batch of ten.  They

22   are currently downstairs, so we'll bring them upstairs.  We're

23   going to have them seated in a separate area so we can get

24   them in and out quickly.

25             So, that group will be starting with 1656, right?

1           (Pause in proceedings.)

2           THE COURT:  Since this may take time, if the parties

3    want to take a stretch break of five minutes, that's fine.

4           (Recess taken.)

5           THE COURT:  My understanding is Juror No. 162 has

6    some information to convey to us.  So, we'll start with that

7    juror and then we'll continue with the list.

8           (Prospective Juror No. 162 enters.)

9           THE COURT:  Good morning again.  Thank you so much

10   for making the phone call.

11          THE PROSPECTIVE JUROR:  You're welcome.

12          THE COURT:  I understand you have some information

13   for us.  What did you find out?

14          THE PROSPECTIVE JUROR:  So, I spoke to the doctor.

15   He told me that underneath the nipple there's some carcinoma.

16   So, he said that I might need to follow up with a breast

17   surgeon.

18          THE COURT:  Do you have a timetable or as soon as

19   possible?

20          THE PROSPECTIVE JUROR:  He didn't say a specific

21   time.  He said at some point I would need to follow up.

22          THE COURT:  Again, it's hard to say what the

23   timetable is.

24          THE PROSPECTIVE JUROR:  Yeah.

25          THE COURT:  So, is it the kind of thing where you

1   anticipate you'll need to do something in the next eight weeks

2   or is it something that you think could wait?

3            THE PROSPECTIVE JUROR:  I'm not sure how to answer

4   that.

5            THE COURT:  I know that's hard to say.  But thank

6   you for that information.

7            Did the doctor sound like you need to do this right

8   away?

9            THE PROSPECTIVE JUROR:  Basically, what he said was

10  that, you know, there's -- because it was biopsy on two sites.

11  One site was okay, you know, but the other one he was saying

12  that he might need to do some follow-up.  That's basically how

13  he expressed it.  I might need to consult with a breast

14  surgeon.

15           THE COURT:  How do you feel about serving on the

16  jury under these circumstances?

17           Do you think you could do it?

18           THE PROSPECTIVE JUROR:  To be honest, I'm a little

19  worried about my health.

20           THE COURT:  Yeah.

21           THE PROSPECTIVE JUROR:  So, my focus may not be, you

22  know, completely there.

23           MR. DECASTRO:  No objection.

24           MS. KOMATIREDDY:  No objection, your Honor.

25           THE COURT:  Thank you for letting us know.  Good

Prospective Juror No. 165                             689

1    luck.

2              THE PROSPECTIVE JUROR:  Thank you so much.

3              THE COURT:  And you're excused from this jury.

4              THE PROSPECTIVE JUROR:  Thank you so much.

5              (Prospective Juror No. 162 excused.)

6              THE COURT:  Let's have Juror No. 165.

7              (Prospective Juror No. 165 enters.)

8              THE COURT:  Good morning.  Come up to this podium,

9    please.

10             THE PROSPECTIVE JUROR:  Thank you.

11             THE COURT:  You're Juror No. 165?

12             THE PROSPECTIVE JUROR:  Yes, ma'am.

13             THE COURT:  We just have some follow-up questions

14   for you.

15             You said that you have some concerns about being

16   nervous.  Tell us about that.

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  You can take your mask off if you're

19   comfortable with that.

20             THE PROSPECTIVE JUROR:  All right.  Sorry about

21   that.

22             THE COURT:  No, that's okay.

23             What is your concern?

24             THE PROSPECTIVE JUROR:  The nervous?  Basically,

25   when many people is on top of me looking at me, I just

1  sometimes cannot talk because I feel the pressure.  That's

2  what it is.

3          THE COURT:  Right.  As a juror, you wouldn't be

4  speaking in the courtroom, you would be listening.

5          THE PROSPECTIVE JUROR:  Yeah.

6          THE COURT:  Is that going to be a problem for you?

7          THE PROSPECTIVE JUROR:  Yeah, I just kind of -- I

8  don't look like, but I'm mostly kind of shy person.  I just

9  want to be, like, under the radar, I guess I can say.

10          THE COURT:  All right.

11          And again, the trial is for the parties and for the

12  lawyers to do things.  As a juror, you would listen and watch.

13  And then at the end of it, you'll deliberate with the other

14  jurors but you'll do that privately in a room with just that

15  group of 12 people.

16          THE PROSPECTIVE JUROR:  Okay, then.

17          THE COURT:  Could you do that?

18          THE PROSPECTIVE JUROR:  I don't know if you read the

19  paper, but I was, like, kind of nervous.  I was basically

20  starting a new job, so I was kind of worried about that.

21          THE COURT:  Tell us about that.

22          THE PROSPECTIVE JUROR:  I started, like, two months

23  ago, maybe three months ago, probation.  And then, like I said

24  in the paper, I was the only one working in the house, so I'm

25  the one supporting my mom and myself.

Prospective Juror No. 165                    691

1          I don't know how long it's going to be, this court
2  jury and everything.
3          THE COURT:  Do you know if you would get paid if
4  you're not working?
5          THE PROSPECTIVE JUROR:  I work at NYU, so probably
6  they gonna pay me, but I'm still not sure because I'm still,
7  like, a part-time and everything.  I have to fix a lot of
8  things with schedule.  Honestly, I don't know how it's going
9  to be, the time.
10          THE COURT:  Are you already scheduled for -- you
11  said you're only working part-time?
12          THE PROSPECTIVE JUROR:  I'm in certain way a
13  part-time, but I'm still working as a full-time because I
14  already have schedule for the weeks.
15          THE COURT:  Can you find out from your employer
16  whether you would get paid?
17          The trial might go for eight weeks.  And if you got
18  paid during that time, then maybe it's not a problem.  If you
19  didn't get paid, then we can talk about that further.
20          Could you do that?
21          THE PROSPECTIVE JUROR:  Yeah, I will ask, no
22  problem.
23          Just quick question, the trial is going to be, like,
24  every day?
25          THE COURT:  Monday through Thursday.

1           THE PROSPECTIVE JUROR:  Monday through Thursday.

2           THE COURT:  Not Friday and not on the weekend.

3           THE PROSPECTIVE JUROR:  Okay, that's the thing.

4    Like, what I was saying, as a part-time, so, basically, I have

5    schedule for two days, but they tell me to come, like, three

6    days extra.  That's why with that kind of stuff, working extra

7    days, that's what's paying everything in the house.

8           But if you want, I can ask them if they let me do

9    it.  Sorry.

10          THE COURT:  If there's a financial hardship, we

11   would understand.

12          We've had several jurors tell us that their employer

13   will pay them even if they're not working and they're sitting

14   in on jury duty.  So, if your employer is one of those, then

15   you wouldn't have a financial hardship.

16          THE PROSPECTIVE JUROR:  I will ask them if you let

17   me.

18          THE COURT:  Yes, okay.

19          THE PROSPECTIVE JUROR:  As I'm starting, my hourly

20   has basically two days, not Saturdays and Sundays.  But all

21   the three days I've been doing is overtime because they ask me

22   to come.  So, if I'm going on jury, basically they're going to

23   take me off the schedule and basically I'll be working

24   Saturdays and Sundays.

25          THE COURT:  I see.  What you're saying is if you're

Prospective Juror No. 165                    693

1   on jury duty, you wouldn't be available for overtime.

2           THE PROSPECTIVE JUROR:  Exactly.  I probably

3   wouldn't be on the schedule for Monday through Thursday.

4           THE COURT:  But you could then be on the schedule

5   for Friday, Saturday, and Sunday.

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  Would that be enough?

8           THE PROSPECTIVE JUROR:  Not really because,

9   basically, I'm paying all the rent, food, and all the bills in

10  the house.  It's only me and my mom.

11          THE COURT:  So, if you're on jury duty Monday

12  through Thursday, what you're saying is you would be scheduled

13  Friday, Saturday, Sunday, and then you wouldn't be

14  scheduled --

15          THE PROSPECTIVE JUROR:  For the other days.

16          THE COURT:  -- for other days and, therefore, you

17  wouldn't get paid for those other days.

18          THE PROSPECTIVE JUROR:  Yes, that's pretty much --

19          THE COURT:  Okay.  I'm just trying to understand.

20          THE PROSPECTIVE JUROR:  That's fine because that's

21  what I'm saying, I'm still on probation so I'm not really a

22  full-time person.

23          MR. DECASTRO:  No objection.

24          THE COURT:  Do you want further questions?

25          Do you have anything you want me to ask?

1           MS. KOMATIREDDY:  If the juror wouldn't mind

2    checking with their employer and whether they will get paid, I

3    just wanted --

4           THE COURT:  My understanding is he gets paid for the

5    shifts he's working.  So, even if he's scheduled Monday

6    through Thursday and he's here instead, he would be working

7    Friday, Saturday, Sunday and, therefore, not paid Monday

8    through Thursday.  So, he's depending on overtime to make ends

9    meet.

10          So, the answer to your question would not impact the

11   financial burden on this juror.

12          MS. KOMATIREDDY:  I understand.

13          In that case, we have no objection, your Honor.

14          THE COURT:  Thank you for letting us know.  You're

15   excused.

16          THE PROSPECTIVE JUROR:  You're welcome.  Sorry.

17          THE COURT:  No, that's okay.  Thank you for your

18   willingness to serve.

19          THE PROSPECTIVE JUROR:  I really wanted, but it's

20   kind of, like, complicated.

21          THE COURT:  There may be another trial that's

22   shorter and that might be easier for you.

23          THE PROSPECTIVE JUROR:  Thank you.

24          THE COURT:  Thank you for your service.

25          THE PROSPECTIVE JUROR:  Thank you.

1           (Prospective Juror No. 165 excused.)

2           THE COURT:  Juror No. 168 is retired, so let's see

3    how this goes.

4           Are there numbers in particular?

5           MR. DECASTRO:  4 and 43.

6           MS. KOMATIREDDY:  37 and 39.

7           (Prospective Juror No. 168 enters.)

8           THE COURT:  Juror No. 168, come up, please.

9           How are you doing?

10          THE PROSPECTIVE JUROR:  I'm good.

11          THE COURT:  Good.  We had a couple of questions for

12   you to follow up on what you put down on the questionnaire.

13          And I'll just start with you said that you have a

14   hearing aid that helps you listen.  Can you hear me?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  So, you're okay as long as you've got

17   the hearing aid going, right?

18          THE PROSPECTIVE JUROR:  Yes, once you use the mic.

19          THE COURT:  Yes, and we'll make sure everybody

20   useless the mic.

21          And you also said that you had been a juror before

22   and it might have been a medical case.

23          You sat on a jury?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  You said that it was about ten years

1    ago.  You were not chosen to serve but --

2            THE PROSPECTIVE JUROR:  I was chosen to serve, but

3    when it was time to go in, I went to the bathroom.  When I

4    came out the door, the judge say, "Please walk out the jury."

5            THE COURT:  And you heard the trial, though.

6            THE PROSPECTIVE JUROR:  No, no, no, no, I didn't.

7            THE COURT:  So, you weren't picked.

8            You don't know.

9            THE PROSPECTIVE JUROR:  Well, I think so because --

10   yes, because the lawyers spoke to me.

11           THE COURT:  Did you hear people testify?

12           THE PROSPECTIVE JUROR:  No, no, I didn't reach that

13   far.

14           THE COURT:  Got it.

15           THE PROSPECTIVE JUROR:  Because it seem as if in the

16   beginning, when they were going to go in, yeah, that's when I

17   went in the bathroom.  So, the other jurors went in.  So, I

18   didn't get the chance to witness the procedure.

19           THE COURT:  Thank you for letting us know that.

20           And you said you, yourself -- have you testified in

21   a court before?

22           THE PROSPECTIVE JUROR:  No.

23           THE COURT:  You never testified.  All right.

24           You mentioned that somebody -- you mentioned a name.

25   Don't tell us the name, but you said something about somebody

1    was a juror and did service and may have testified.

2              No?  Okay, that's fine.

3              The question was whether you or a member of your

4    family or anyone close to you has ever been a witness in a

5    court proceeding.

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  That's fine.

8              THE PROSPECTIVE JUROR:  Oh, yes, yes.  My husband.

9    Sorry.

10             THE COURT:  What role did your husband play?

11             THE PROSPECTIVE JUROR:  ███████████, he's my

12   husband.

13             THE COURT:  That's fine.

14             What did your husband do, was he a juror or was he a

15   witness?

16             THE PROSPECTIVE JUROR:  He was a juror.

17             THE COURT:  And was there anything about his jury

18   service that affects your ability to be a fair juror in this

19   case?

20             THE PROSPECTIVE JUROR:  No, no.

21             THE COURT:  Great.  And then the last question, you

22   said that you were present when somebody stabbed somebody; is

23   that right?

24             The question was whether you or a close friend or

25   family member has ever been incarcerated, and you said, "I

1    think he was charged.  Been present with friends who stabbed

2    someone with a knife."

3            THE PROSPECTIVE JUROR:  My husband's cousin.

4            THE COURT:  So, what happened to him?

5            THE PROSPECTIVE JUROR:  He's still incarcerated.

6            THE COURT:  Is there anything about the fact that

7    your husband's cousin is incarcerated because of a crime that

8    would make you not be fair in this case?

9            THE PROSPECTIVE JUROR:  No.

10           THE COURT:  So, would you be fair to the Government

11   that has brought the charges as well as the Defendant who is

12   being charged?

13           THE PROSPECTIVE JUROR:  Yes, ma'am.

14           THE COURT:  Is there any reason you could not be a

15   fair and impartial juror?

16           THE PROSPECTIVE JUROR:  No.

17           THE COURT:  Okay, great.

18           And let me just ask you about TV shows that you

19   watch.  You said you like to watch criminal justice shows.

20           THE PROSPECTIVE JUROR:  Yes, but the ones like Judge

21   Judy or, you know, those type.

22           THE COURT:  Okay, fantastic.  So, you're interested

23   in court things.

24           THE PROSPECTIVE JUROR:  I do.  I don't do much of

25   it, but I like to -- you know, I don't do much of it.

1          THE COURT:  So, I just want to warn you that real
2   life is not like TV.  And, so, sometimes the things you see on
3   TV --
4          THE PROSPECTIVE JUROR:  Yeah.
5          THE COURT:  -- are not real or they're very unusual.
6          So, can you keep those things apart?
7          THE PROSPECTIVE JUROR:  Yes, ma'am.
8          THE COURT:  And you'll decide the case based only on
9   what you see and hear in court and nothing else?
10         THE PROSPECTIVE JUROR:  Yes, ma'am.
11         THE COURT:  Any follow-up questions?
12         MR. DECASTRO:  No, your Honor.
13         MS. KOMATIREDDY:  No, your Honor.  If we could just
14   discuss it afterwards, that would be great.
15         THE COURT:  You don't have any follow-up questions?
16         MS. KOMATIREDDY:  No.
17         THE COURT:  Thank you.  You can go back outside.
18         THE PROSPECTIVE JUROR:  Thank you.
19         (Prospective Juror No. 168 exits.)
20         THE COURT:  What do you want to discuss?
21         MS. KOMATIREDDY:  Your Honor, we're just concerned
22   about anonymity, and I wasn't sure if the individual's
23   husband's name was actually captured on the record.  I
24   understand that there's an overflow room with press in it and
25   I want to understand if that person's anonymity has just been

1    compromised.

2           THE COURT:  I told her not to mention the name.  The

3    name was written down, so I specifically said don't say the

4    name.

5           THE COURTROOM DEPUTY:  She said the name.

6           THE COURT:  I know she said it.

7           How do you feel about it?

8           MS. KOMATIREDDY:  Could I just ask the court

9    reporter to check if it was captured on the record?

10           THE COURT REPORTER:  If I heard her correctly it

11   was.

12           MS. KOMATIREDDY:  Your Honor, we would move to

13   strike.

14           MR. DECASTRO:  I guess I don't know if that's the

15   ground...

16           MS. KOMATIREDDY:  Should we talk about it?

17           MR. DECASTRO:  Sure.

18           THE COURT:  It's written on the questionnaire too if

19   you wanted to confirm the name.

20           (Pause in proceedings.)

21           THE COURT:  The other thing is that I can ask the

22   court reporter to redact the name in any transcript.

23           MR. DECASTRO:  We're in agreement we can let her go

24   based on that.

25           THE COURT:  You can bring her in, and I'll let her

1   know that.  Juror No. 168 is excused.

2              (Prospective Juror No 168 enters.)

3              THE COURT:  Juror No. 168, thank you for your

4   willingness to serve.  You are excused.  You can go back

5   downstairs to the second floor.

6              THE PROSPECTIVE JUROR:  All right.

7              THE COURT:  Thank you.

8              (Prospective Juror No. 168 excused.)

9              MR. DECASTRO:  Your Honor, do you want to know what

10  we have for the next one?

11             THE COURT:  Yes.

12             MR. DECASTRO:  We have for 169 32, 45, 40, and 71.

13             MS. KOMATIREDDY:  We also have 47 and 48.

14             (Prospective Juror No. 169 enters.)

15             THE COURT:  Hello, Juror No. 169.  Come up to this

16  podium.  You can keep your mask on or take it off if you're

17  more comfortable.  It's up to you.

18             THE PROSPECTIVE JUROR:  Thank you.

19             THE COURT:  We just had a few follow-up questions

20  for you.

21             You said that your father was a federal ADA?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  A prosecutor.

24             THE PROSPECTIVE JUROR:  Yeah, I believe so.  All

25  that was before I was born.

1          THE COURT:  Okay.  So, your father practiced law.

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Did you talk about law?

4          THE PROSPECTIVE JUROR:  Not too much.

5          I mean after he retired from that, he was in a

6    different kind of occupation with investigating cargo thefts.

7    So, we would discuss that.  Otherwise, he had a side practice

8    which was mostly real estate and wills.

9          THE COURT:  I see.  We're always concerned when a

10   juror is being instructed on what the law is, if they're close

11   to people who are lawyers, that they might -- when they hear

12   what the judge says the law is, might think, well, someone

13   else I know said something different.  So, we want to make

14   sure that somebody who is a juror will follow the law as the

15   judge instructs and not apply a different standard.

16         Can you do that?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  You also said that your father was

19   investigating thefts.  It sounds like he would be working with

20   law enforcement to do those things.

21         THE PROSPECTIVE JUROR:  I believe he might have.  He

22   would not talk to us about that.

23         THE COURT:  Okay.  That's good.

24         Would you be fair -- if there were a witness who was

25   a law enforcement officer and another witness who was not,

1   would you give them the same consideration?

2          THE PROSPECTIVE JUROR:  I hope so.

3          THE COURT:  Do you think you could?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  You also indicated that you had a nephew

6   who unfortunately was killed in a drunk driving incident and

7   the person pled guilty --

8          THE PROSPECTIVE JUROR:  It was not drunk, it was

9   driving under the influence.

10         THE COURT:  A DUI, you said.

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Does that experience affect your ability

13  to be fair and impartial in a criminal trial?

14         THE PROSPECTIVE JUROR:  I don't think so.  I think I

15  could be fair.

16         THE COURT:  You mentioned it was drug use.  So, this

17  case involves allegations of drug trafficking.

18         THE PROSPECTIVE JUROR:  Right.

19         THE COURT:  Do you think that experience would

20  affect your ability to be fair in this case?

21         THE PROSPECTIVE JUROR:  I don't know.  I don't think

22  it would but, you know, you never know, like, how your past

23  could affect you in the future.

24         THE COURT:  Sure, sure.  And you haven't heard the

25  evidence, right?

1          THE PROSPECTIVE JUROR:  Right, right.

2          THE COURT:  And we don't want you to prejudge the

3   case.

4          THE PROSPECTIVE JUROR:  Right, right.

5          THE COURT:  And you know yourself better than anyone

6   else.

7          THE PROSPECTIVE JUROR:  Right.

8          THE COURT:  So, the issue is whether you could be

9   fair and impartial in this case.

10          THE PROSPECTIVE JUROR:  I believe I could.

11          THE COURT:  You also indicated that you thought

12  marijuana legalization was okay.  This case involves cocaine,

13  not marijuana.

14          Would your view on marijuana affect your ability to

15  be fair in a case that involved drugs?

16          THE PROSPECTIVE JUROR:  No.

17          THE COURT:  Now, you also mentioned that you would

18  not be paid while you're on jury duty.

19          THE PROSPECTIVE JUROR:  Correct.

20          THE COURT:  Were you already told that that's the

21  case?

22          THE PROSPECTIVE JUROR:  No, but I'm a part-timer.

23          THE COURT:  Okay.

24          THE PROSPECTIVE JUROR:  And we only get paid for the

25  hours we actually work.

Prospective Juror No. 169                          705

1          THE COURT:  I see.  So, if you were to sit on this

2   jury and not be paid for that time, is that a hardship on you?

3          THE PROSPECTIVE JUROR:  I don't think so.

4          THE COURT:  No?  All right.  Thank you.

5          Is there any follow-up questioning?

6          MR. DECASTRO:  No, your Honor.

7          MS. KOMATIREDDY:  No, thank you, Judge.

8          THE COURT:  Thank you so much.  You can go back to

9   the jury room.

10          (Prospective Juror No. 169 exits.)

11

12          (Continued on the following page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Prospective Juror No. 170                         706

1          THE COURT:  Number 170.

2          MR. DE CASTRO:  69, 71, 63.

3          MS. KOMATIREDDY:  We have 62(c), sixty -- and the

4   others were covered by Mr. de Castro.

5          (Prospective Juror No. 170 enters.)

6          THE COURT:  Hello, Juror 170.

7          You can put your bag on the chair.

8          And you are free to keep your mask on or take it

9   off, whatever you're comfortable with.

10          We just had a few followup questions for you.

11          You talked about some hardship with regard to

12   sitting on the jury.  You talked about your commute and you

13   also talked about helping your parents and also working.

14          So, can you tell us about those concerns?

15          THE PROSPECTIVE JUROR:  Yeah.

16          I guess my first point, I do live pretty far from

17   here and it's over an hour one way, a total of almost three

18   hours to get here, so it would be difficult for me to come

19   here every day.

20          The second part, my parents are retired, at least my

21   dad is right now.  My mom owns her own business, so I act as a

22   translator for a lot of their needs throughout the day.  So

23   usually I need to be on the phone for them, so it would be

24   difficult if I can't have access to the phone.

25          And then the last point...

1           Yeah, work.  So I do work full time.  And because my

2    work is remote, there is some flexibility in terms that I can

3    work after I attend jury duty.  So it would be difficult

4    having two jobs at the same time, so I would prefer if I

5    didn't have two responsibilities, but yeah.

6           THE COURT:  Okay.  Thank you.

7           So for your work, you indicated that you are

8    involved in a -- you're a software engineer?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  And so you could do work after hours?

11          THE PROSPECTIVE JUROR:  Yeah.  Well, most of my team

12   are on the West Coast, so, I mean, if I --

13          THE COURT:  Perfect.

14          THE PROSPECTIVE JUROR:  It depends on what time, I

15   guess, jury duty ends, but there is a little flexibility

16   there.

17          THE COURT:  Right.

18          And the Court would not be sitting on Friday, so

19   Friday is also another possible workday for you.

20          Would you lose any income if you were sitting on the

21   jury or would your employer pay you?

22          THE PROSPECTIVE JUROR:  That I haven't talked to

23   them about, so I'm not sure.

24          THE COURT:  Right.  Okay.  And especially if you end

25   up working in the evening, I would hope you got paid for it.

1   But we would like to know if you would lose any money by

2   sitting here Monday through Thursday during the day.

3                THE PROSPECTIVE JUROR:  Yeah, I have no idea.

4                THE COURT:  We might ask you to ask your employer.

5   Okay?

6                And as far as helping your parents with translation.

7   You said your father is retired.  How often does he end up

8   needing you to help him in a given day?

9                THE PROSPECTIVE JUROR:  Yeah, I would say not every

10  day, but at least a couple of times throughout the week.  And

11  it would happen sort of randomly.  Like if goes to the doctor

12  and he doesn't understand something, I would have to translate

13  for him.  Or if he was attending some ad hoc meetings with

14  people, I would sort of have to translate too.  I need to help

15  communicate for them.

16               THE COURT:  Are you the only person who could do

17  that?  Do you have siblings?

18               THE PROSPECTIVE JUROR:  I have siblings.  But my

19  brother is in school; he can't really help him.  His schedule

20  isn't as flexible as mine.

21               THE COURT:  All right.  But if you were on the jury

22  and couldn't answer the phone at that particular moment, it

23  sounds like it's infrequently enough that your brother could

24  handle that, right?

25               THE PROSPECTIVE JUROR:  Um, I would not know because

Prospective Juror No. 170                    709

1    I don't know my brother's schedule as well.

2              But I started taking that responsibility because I'm

3    the older one.

4              THE COURT:  I understand.

5              And then as far as your mother's situation with --

6    you said she runs the store herself?

7              THE PROSPECTIVE JUROR:  Yeah.  She runs the

8    business, yeah.  It's a kitchen appliance business.  So her

9    clientele is usually Chinese, but there is occasions where

10   there is English speakers.  And she's not a native English

11   speaker, so she wouldn't understand, I have to help her.

12   There is other cases where if she had to do something with a

13   third party to help with her with the business, I would have

14   to translate for her.

15             THE COURT:  And how often?  Is that on a daily basis

16   or just a few times a week?

17             THE PROSPECTIVE JUROR:  It would be around a daily

18   basis.  Random things happen.  Like if her internet wasn't

19   working, I'd have to help her figure it out and call the

20   mobile service.  Or like if she has, like, garbage pickup, all

21   these things she has to do for her business, I have to help

22   her with those things.  They're also really random, not on a

23   schedule kind of thing.

24             THE COURT:  But again, since your brother might be

25   able to help out, to the extent that it happens sporadically,

1  maybe he could pick up the phone for those times and Fridays

2  you would be available.

3          THE PROSPECTIVE JUROR:  That would be something we

4  have to coordinate.

5          THE COURT:  You have to work out.

6          I appreciate your willingness to work with the Court

7  to make that happen.

8          Let me ask you a couple of questions about your

9  understanding of legal theories in this case.

10          Let me just ask.  Ms. Komatireddy, you said 62.  I

11  wanted to know which part of 62 in particular.

12          MS. KOMATIREDDY:  62(c), Your Honor.

13          It may just have been an errant mark, we just want

14  to check.

15          THE COURT:  So you were asked -- it's just a

16  question about whether we're reading what you wrote correctly.

17  Okay?  It's nothing about you in particular.

18          So the question that was asked was, the government

19  bears the burden of proof beyond a reasonable doubt and the

20  law does not require that the government use any specific

21  investigative techniques or present a specific type of

22  evidence to prove its case.  The question was, can you accept

23  and apply this rule of law?  And maybe you could say -- you

24  could answer now and then we would know.

25          THE PROSPECTIVE JUROR:  Yeah, I think I can accept.

Prospective Juror No. 170                               711

1          THE COURT:  Yes?  Okay, great.  Thank you.

2          Okay.  So then the last question is, you were asked

3    about any personal views about people of Mexican descent and

4    you mentioned that you grew up with neighbors and friends who

5    are Mexican and you have parents who work with Mexicans, but I

6    want to explore a little bit more about your views that you

7    think might impact your ability to serve in this case.

8          THE PROSPECTIVE JUROR:  Sure.

9          Yeah, I mean, the Mexican people that I've

10   encountered, they've all been really friendly.  I've had

11   positive interactions with them.  I would say growing up with

12   them, you know, they're friends that come from that descent

13   that were certainly family to me because we were kids and we

14   lived so close to each other, we spent time together.  So I

15   have close friends that are from Mexico and so, you know, my

16   view was mostly positive.  Very family-oriented.

17         My dad, he's a construction worker and so, like, he

18   did work with other Mexicans while he was doing his

19   construction work and he also shares similar views about how

20   friendly they are.  And, you know, when we do sort of like

21   gatherings with his coworkers, you know, he brings up their

22   family life, because their family might not be present, and so

23   I think we all share a very, like, community or friendly

24   family vibe.

25         THE COURT:  Okay.  That sounds wonderful.

Prospective Juror No. 170                          712

1          So do you think those interactions with individuals

2  of Mexican descent would impact your ability to be fair and

3  impartial in a case where you might hear testimony about

4  people from Mexico or things that were happening in Mexico?

5          THE PROSPECTIVE JUROR:  It might, only because I

6  think my views are a lot more positive than maybe some of the

7  other things that are going on in Mexico.

8          THE COURT:  Right.

9          THE PROSPECTIVE JUROR:  But I guess it's hard for me

10  to say.

11          THE COURT:  And since you haven't heard the evidence

12  yet, it's appropriate that you not have a view on this case.

13  The issue is whether you would be fair and impartial as a

14  juror.  You know a little bit about what the case involves and

15  so if you had any concerns about not being fair, it would be

16  appropriate to raise them.  But if you think you could be

17  fair, then that's fine.

18          THE PROSPECTIVE JUROR:  I think I can be fair.  I

19  only hesitate because of -- like, I don't think I have any

20  negative, like, feelings towards one way, more so positive,

21  and I don't know if that would hinder my position.  But I

22  don't think I have been placed in that position to know that.

23  I guess I could try my best.

24          THE COURT:  Let me ask it to you this way.  Okay?

25          Given that you say you have positive feelings

1  towards people of Mexican descent, if there were a witness who

2  were of Mexican descent and a witness not of Mexican descent,

3  would you treat them any differently?

4            THE PROSPECTIVE JUROR:  I don't think so.

5            THE COURT:  Would you tend to believe somebody of

6  Mexican descent more than somebody who is not of Mexican

7  descent?

8            THE PROSPECTIVE JUROR:  Um, probably not.  I think

9  it would depend on what they say.

10            THE COURT:  Exactly.

11            So if it depends on what they say and you take into

12  account everything about them, that's what a juror is supposed

13  to do.  The problem would be if you would automatically give

14  more weight to somebody just because of their national origin

15  as opposed to someone else.  And it sounds like you wouldn't;

16  is that right?

17            THE PROSPECTIVE JUROR:  I would think so, yeah.

18            THE COURT:  Okay.  You keep hesitating, so I'm just

19  trying to figure out why you're hesitating.

20            THE PROSPECTIVE JUROR:  I'm thinking if I was placed

21  in the position, like there's always biases in the back of

22  your mind that might not be apparent or, like, you don't

23  intend to but you think back about your past encounters.  So

24  that's why I hesitate, because I don't know if I was put in

25  that position and I would sort of, you know, give a little

Prospective Juror No. 170                           714

1    more favor to someone only because, you know, I haven't had a

2    negative encounter with someone.

3              THE COURT:  Yes.  And we're all human and we have to

4    overcome the biases and bring them to the front of our minds

5    so that they're not, you know, subconscious biases.  And it

6    sounds like you're a thoughtful person, so you are aware of

7    those things.

8              So do you have any concern about being an impartial

9    juror in this case?

10             THE PROSPECTIVE JUROR:  Um, I wouldn't say so.  I

11   guess -- I don't know, I would say, like, I can be fair.  I

12   don't know a reason with it.  But yeah, I don't know.

13             THE COURT:  Okay.  If there isn't a specific reason

14   that you could think of that you wouldn't be fair, that's

15   fine.

16             THE PROSPECTIVE JUROR:  No, not that comes to mind

17   at the moment.  Just, I guess, the nature of what I brought up

18   earlier.

19             THE COURT:  Okay, great.

20             Were there any followup questions?

21             MS. KOMATIREDDY:  Not from the government,

22   Your Honor.

23             MR. DE CASTRO:  No, Judge.

24             THE COURT:  All right.  Thanks very much.  You can

25   go back outside.

Andronikh M. Barna, Official Court Reporter, RPR, CRR

1              (Prospective Juror No. 170 exits.)

2              MR. DE CASTRO:  Judge, I think maybe we were going

3      to remind her to ask her employer.

4              THE COURT:  Yes.

5              Let's talk to 171, and then.

6              MR. DE CASTRO:  Yes.

7              THE COURT:  We'll have 171, but we want to ask 170 a

8      question, so have her lined up for the next.

9              MS. KOMATIREDDY:  171, Your Honor, we have 62, 66,

10     69.  And page 27, she circled one of the individuals listed

11     there.

12             (Prospective Juror No. 171 enters.)

13             THE PROSPECTIVE JUROR:  You want me in this box?

14     You want me in that chair?

15             Just show me, sir, where I'm going.

16             THE COURTROOM DEPUTY:  Put your belongings here.

17             THE PROSPECTIVE JUROR:  Oh, okay.

18             THE COURT:  Hello.  How are you doing?

19             THE PROSPECTIVE JUROR:  Okay.

20             THE COURT:  You can take your mask off if you're

21     more comfortable or you can leave it on, whatever is

22     comfortable for you.

23             THE PROSPECTIVE JUROR:  I work for NYU.  They tell

24     us we have to wear it while we're in public places.

25             THE COURT:  Okay, good.

1           So I just have a few followup questions --

2           THE PROSPECTIVE JUROR:  Sure.

3           THE COURT:  -- based on your questionnaire.

4           You were asked a question about whether you would be

5    willing or you would be able to accept that a defendant is

6    presumed innocent and can only be found guilty if the

7    government proves its case beyond a reasonable doubt, and you

8    said you couldn't apply this rule of law, but you said it

9    seems unlikely based on --

10          THE PROSPECTIVE JUROR:  Pages.

11          THE COURT:  -- pages of the attachment.

12          So let me just say, the attachment just is a list of

13   names and places.

14          THE PROSPECTIVE JUROR:  Oh, good.

15          THE COURT:  Okay?  And so, you know, it doesn't mean

16   anything.

17          THE PROSPECTIVE JUROR:  Okay.

18          THE COURT:  It's just a list of things that may come

19   up and we want to make sure people aren't familiar with them

20   because that could be an issue.  We want jurors who don't know

21   anything about the particular case.  And so just because there

22   is a long list of names of people who might be mentioned

23   doesn't mean somebody is guilty and it really should have no

24   influence.  It's just that it's going to be a long trial and

25   there will be a lot of names mentioned.

Prospective Juror No. 171                    717

1          So do you think that you would be able to start off
2     with the presumption that the defendant is innocent?
3          THE PROSPECTIVE JUROR:  Well, I think that's
4     expected, right?
5          THE COURT:  Yes.
6          THE PROSPECTIVE JUROR:  The expectation of a juror?
7          THE COURT:  Yes.  And that's why we're asking you.
8          THE PROSPECTIVE JUROR:  Oh, okay.
9          THE COURT:  Could you presume the defendant
10    innocent?
11         THE PROSPECTIVE JUROR:  Sure.
12         THE COURT:  Okay, great.
13         And you said, in response to another question, that
14    you generally believe law enforcement is working to protect
15    the public and you're concerned about disrespect of police
16    officers and other law enforcement.
17         Can you tell us what you mean by that?
18         THE PROSPECTIVE JUROR:  Well, I think there was a
19    lot of things going on, you know, in the pandemic and I think
20    law enforcement was not being respected and, you know, people
21    were out of hand and -- I'm not sure.
22         THE COURT:  Okay.
23         THE PROSPECTIVE JUROR:  Well, you see on the news
24    what we're seeing, police not being respected, people crossing
25    police lines, people vandalizing police cars, jumping on cars.

1   This kind of thing.

2           THE COURT:  Right.

3           THE PROSPECTIVE JUROR:  And also, you see it all

4   over social media.

5           THE COURT:  Yes, yes.

6           And so specific to this trial, there may be

7   witnesses who are law enforcement.  And I want to ask if you

8   would consider their testimony the same way you would somebody

9   who was not law enforcement; in other words, that you wouldn't

10  give greater or lesser weight to somebody just because they're

11  law enforcement or not law enforcement.

12          THE PROSPECTIVE JUROR:  Well, it's true because even

13  in law enforcement we have rotten eggs, right?  So, you know,

14  each person has to be treated individually.

15          THE COURT:  Okay.  And would you be able to do that

16  in this case?

17          THE PROSPECTIVE JUROR:  I think so.

18          THE COURT:  Okay.  And you also said that you had

19  some concerns about whether you could be fair, so I'd like to

20  find out what you mean by that.  You said you weren't sure if

21  there was anything about this case --

22          THE PROSPECTIVE JUROR:  A lot of questions I

23  answered "not sure."

24          THE COURT:  Okay.

25          THE PROSPECTIVE JUROR:  Right?

1          Because I told you what I thought.

2          THE COURT:  Yes.

3          THE PROSPECTIVE JUROR:  And not knowing specifics of

4    the case, I'm not really able to decide where I stand on that.

5          THE COURT:  Right.  Okay.

6          And that may end up being a very good thing because

7    we don't want jurors who have already made up their mind, so

8    somebody who has an open mind like you're describing is great.

9          THE PROSPECTIVE JUROR:  Okay.

10          THE COURT:  And so somebody who is impartial and

11    will be fair is great.

12          What we are concerned about is somebody who, before

13    the trial has started, already has ideas and beliefs that they

14    won't be able to set aside and focus on this case and be fair

15    to both parties in this case.

16          So, is there anything that you want to bring to the

17    Court's attention that you think might make you not be fair?

18          THE PROSPECTIVE JUROR:  Not sure.  That's what I

19    wrote on -- I was writing that.  That was what I'm saying, you

20    know.

21          THE COURT:  No, if you can't think of anything --

22          THE PROSPECTIVE JUROR:  I have to listen and hear

23    and come to my own conclusions.

24          THE COURT:  Exactly.

25          And if you can't think of anything, that's fine, do

Prospective Juror No. 171                    720

1    not make up anything.  Because if you cannot think of anything

2    that would make you not be fair, that's perfectly fine.

3                THE PROSPECTIVE JUROR:  Okay.

4                THE COURT:  Okay?  Is that what you meant when you

5    said "not sure"?

6                THE PROSPECTIVE JUROR:  I guess.  Right.

7                THE COURT:  Yes, okay.

8                THE PROSPECTIVE JUROR:  Yeah.

9                THE COURT:  That's fine.

10               THE PROSPECTIVE JUROR:  That makes sense to me.

11   What you're saying makes sense.

12               THE COURT:  Yes.

13               If there is something that concerns you that you

14   want to discuss with the Court, I am here to listen.  If there

15   is not anything, then that is fine.

16               THE PROSPECTIVE JUROR:  Okay.

17               THE COURT:  Okay, great.

18               You also said you weren't sure if you would be paid.

19   You said NYU was your employer?

20               THE PROSPECTIVE JUROR:  I also work for --

21               THE COURT:  Oh, don't tell me the names.

22               THE PROSPECTIVE JUROR:  Oh, I'm sorry.

23               THE COURT:  That's okay.

24               THE PROSPECTIVE JUROR:  But I do work for a school.

25               THE COURT:  For a school.

1          THE PROSPECTIVE JUROR:  And I found out since then

2    that I would be paid.

3          THE COURT:  You would be paid?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And your other job you would be paid?

6    Or just one job?

7          THE PROSPECTIVE JUROR:  The other job is weekends

8    and holidays.  We're not going to be open.

9          THE COURT: I see.  Perfect.  Okay, excellent.

10          So then you also were asked about corroborating

11   witness.  You were told that there may be some government

12   witnesses who testify that they participated in serious crimes

13   and they are testifying -- they may tell you that they're

14   testifying pursuant to an agreement with the government in the

15   hopes that their sentences --

16          THE PROSPECTIVE JUROR:  I think it's to be expected.

17          THE COURT:  Yes, okay.

18          And so you can take into account, when you're

19   assessing the credibility of a witness, everything about that

20   witness, including the demeanor, whether what they're saying

21   makes sense and whether they have a motive to lie.  And so if

22   you thought that they had a motive to lie because of the

23   agreement with the government, it is fair for you to take that

24   into account.  Okay?

25          So just so you know, that --

1           THE PROSPECTIVE JUROR:  Repeat that.

2           THE COURT:  So every witness that testifies, the

3    juror will make a decision whether to believe that witness,

4    right?

5           THE PROSPECTIVE JUROR:  Okay.

6           THE COURT:  The witness will take an oath to tell

7    the truth, but you still are allowed to believe or not believe

8    the witness.  And in the course of hearing the witness

9    testimony, the witness may tell you:  I committed a crime and

10   I have an agreement with the government to cooperate and the

11   government has promised that I will get a reduced sentence, or

12   something like that, in return for my cooperation.  Okay?

13   That may happen.  And you are allowed to take into

14   consideration all those things when you decide whether to

15   believe that witness or not.

16          THE PROSPECTIVE JUROR:  Okay.

17          THE COURT:  You still with me?

18          THE PROSPECTIVE JUROR:  Yes, now I'm with you.  Took

19   a minute.

20          THE COURT:  It may be that the government's evidence

21   on a particular charge rests on the testimony of one person

22   and that person is a cooperating witness.  And the law says

23   that may be enough for a conviction if the jury finds that

24   that evidence is -- satisfies the burden of beyond a

25   reasonable doubt.

1          The question is, are you going to want or require --

2     are you going to need more than the testimony of one witness

3     even though the law says that that is enough?  In other words,

4     sometimes jurors will say I am not going to convict unless I

5     have X, Y, Z additional evidence.

6          THE PROSPECTIVE JUROR:  I don't have any experience

7     as a juror.

8          THE COURT:  Okay.

9          THE PROSPECTIVE JUROR:  I'll put it out there.  I do

10    not have experience as a juror.

11         And I don't know, when I saw pages and pages of

12    people, I just assumed there will be more than one witness.

13         THE COURT:  Well, there will be.  But there are many

14    charges.  And so for a particular charge, there might just be

15    one witness.

16         THE PROSPECTIVE JUROR:  Oh.

17         THE COURT:  So the question is whether you're

18    somebody who will follow the law.  And if the law is you could

19    convict based on the testimony -- convict on that charge on

20    the testimony of one witness, even if that person is a

21    cooperating witness, or whether you're going to say I need

22    more, I just -- even though the law says I can do this, I'm

23    going to require more.

24         THE PROSPECTIVE JUROR:  I don't think so.  I don't

25    think so.

1        THE COURT:  Okay.  So just to clarify --

2        THE PROSPECTIVE JUROR:  Of course I hear what you're

3  saying, but it's hard to put yourself in that situation.

4        THE COURT:  Yes.  And it's also very abstract.

5        THE PROSPECTIVE JUROR:  Yes.

6        THE COURT:  So I apologize for that.

7        THE PROSPECTIVE JUROR:  I feel like I need training.

8        But go ahead.

9        THE COURT:  Yes, all the people in the room with you

10  are in similar situations because they don't know anything

11  about the case.

12        THE PROSPECTIVE JUROR:  Okay.

13        THE COURT:  They're -- I don't remember if any of

14  them are lawyers.

15        THE PROSPECTIVE JUROR:  I need training as a juror.

16        THE COURT:  And you will get instruction.  Judge

17  Cogan will give a lot of instructions on how to consider

18  things.

19        THE PROSPECTIVE JUROR:  Fine.

20        THE COURT:  The important thing is whether you will

21  follow his instruction.  Because sometimes there are people

22  who say:  I don't care what the law is, I'm going to do it my

23  way.

24        THE PROSPECTIVE JUROR:  You have the wrong person.

25        THE COURT:  You're not that, right?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Will you follow the law?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  And will you listen to the law?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  And if the instruction is you may

7    convict based on the testimony of one witness, will you follow

8    the law or will you say:  I still require more?

9          THE PROSPECTIVE JUROR:  I don't think -- I think

10   that we can follow the law.

11         THE COURT:  That you can follow?

12         THE PROSPECTIVE JUROR:  And that's your job, too,

13   you know, to make sure we're on the straight and narrow.

14         THE COURT:  Exactly, yes.  The Judge's role is to

15   make things clear and the lawyers are also here to make things

16   clear.  And so all of those things will be explained.  It's

17   just that sometimes we have jurors who just say:  Doesn't

18   matter, I'm going to do things my way.  And if you're not that

19   kind of juror, that's good to know.

20         THE PROSPECTIVE JUROR:  Okay.

21         THE COURT:  Okay?

22         So will you follow the law as it's explained to you?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  And if you disagree with it, will you

25   still follow the law?

1          THE PROSPECTIVE JUROR:  We have to.  That's
2     something I have -- you know, that you have to do.  In life
3     you might not agree with things, but you're expected to
4     follow.
5          THE COURT:  Right.
6          And so you would follow the law?
7          THE PROSPECTIVE JUROR:  Yes.
8          THE COURT:  Great.  That's good to hear.
9          I'm sorry this is all very abstract and I appreciate
10    that it's difficult.  I'm doing my best to explain.
11         THE PROSPECTIVE JUROR:  That's okay.
12         THE COURT:  And then you made a statement here that
13    you trust the lawyers and the Judge to make an appropriate
14    decision.  Ultimately, the Judge will instruct you on what the
15    law is, but the decision about whether to convict or not is up
16    to you.
17         THE PROSPECTIVE JUROR:  Okay.
18         THE COURT:  So even though someone has made a
19    decision to charge someone, you can say:  I still find not
20    guilty.
21         THE PROSPECTIVE JUROR:  Okay.
22         THE COURT:  And even if somebody argues the person
23    is guilty or not guilty, the decision is up to you.  So, you
24    know, I just want to make sure that you know that as a juror
25    you would have the responsibility to make that decision.

1          Do you understand?

2          THE PROSPECTIVE JUROR:  Okay.

3          THE COURT:  Okay?

4          And do you think you will defer to one side or the

5    other just because they say so or will you make an independent

6    decision on guilt and not guilty?

7          THE PROSPECTIVE JUROR:  I would think I would make

8    an independent decision.

9          THE COURT:  Based on the evidence?

10         THE PROSPECTIVE JUROR:  Right.

11         THE COURT:  Okay.

12         THE PROSPECTIVE JUROR:  But based on my personal

13   experience, I am leaning against anything that would involve

14   bringing illegal drugs into our country.

15         THE COURT:  Right.  And so when you say "leaning

16   against," I know bringing illegal drugs into the country is

17   illegal.

18         THE PROSPECTIVE JUROR:  Right.

19         THE COURT:  But you don't know the facts of this

20   case and you don't know whether this person --

21         THE PROSPECTIVE JUROR:  I don't.

22         THE COURT:   -- did anything to be involved in that.

23   And so the question will be limited to whether this person is

24   guilty of a crime or not.  So you can be against something but

25   still be fair.  And the question is -- but some people can't.

Prospective Juror No. 171                728

1          So the question is whether you could be fair to this
2     person who is accused.
3          THE PROSPECTIVE JUROR:  I will listen to all the
4     evidence.
5          THE COURT:  Correct.
6          THE PROSPECTIVE JUROR:  And be fair.
7          THE COURT:  Correct.
8     Can you?
9          THE PROSPECTIVE JUROR:  I'll do my best.
10         THE COURT:  Do you think you could?
11         THE PROSPECTIVE JUROR:  I will try.
12         THE COURT:  You know better than anyone else whether
13    you would be able to do it.
14         Do you think you could do it and be fair?
15         THE PROSPECTIVE JUROR:  Sure.
16         THE COURT:  Okay.  Any followup questions?
17         MR. DE CASTRO:  No objection.
18         MS. KOMATIREDDY:  We don't have any followup
19    questions, Your Honor.
20         THE COURT:  So why don't you go back to the other
21    room.
22         MR. DE CASTRO:  Judge, we actually do have a
23    question.  I forgot.
24         THE COURT:  Oh, okay.
25         MR. DE CASTRO:  Numbers 54 and 55.

1           THE COURT:  Oh, okay.  Hold on.

2           Sorry, before you go, I missed a question.

3           MR. DE CASTRO:  41, 54.  And 55.

4           THE COURT:  All right.  So you also said that you

5     had an experience where you were robbed at knifepoint?

6           THE PROSPECTIVE JUROR:  Mm-hm.

7           THE COURT:  So the fact that you were a victim of a

8     crime, would that affect your ability to be fair in this case,

9     which is a criminal case?

10          THE PROSPECTIVE JUROR:  I probably answered "not

11    sure," right?  What did I answer?  I don't have my answers in

12    front of me.

13          THE COURT:  You said "not sure."

14          THE PROSPECTIVE JUROR:  Yeah.

15          THE COURT:  How do you think it would affect you?

16          What makes you unsure?

17          Do you think it would make you likely to convict

18    even if the evidence didn't prove the case beyond a reasonable

19    doubt?

20          THE PROSPECTIVE JUROR:  No, I don't think -- what

21    did you say?  Say the question again.

22          THE COURT:  Do you think because you were a victim

23    of a crime, that you would be -- that you would convict

24    someone even if the evidence didn't show -- prove the case

25    beyond a reasonable doubt?

1          THE PROSPECTIVE JUROR:  No, I don't think I would

2    convict someone if it wasn't proved beyond a reasonable doubt.

3          THE COURT:  Okay.  So let me move on to a different

4    question.

5          You were asked about whether you follow media

6    coverage of allegations of corruption in the Mexican

7    government.  You said you don't follow it very closely, but

8    you also added:  This is often discussed with immigration on

9    Fox News.

10         THE PROSPECTIVE JUROR:  That was Trump's whole thing

11   with bringing in people who have criminal histories, if you

12   remember a few years back, you know.  So, you know -- I don't

13   follow it, no.

14         THE COURT:  Okay.

15         THE PROSPECTIVE JUROR:  But I've heard different

16   headlines.

17         THE COURT:  And the fact that you heard headlines

18   about -- what were the headlines that you heard about?

19         THE PROSPECTIVE JUROR:  That Mexico was sending

20   their criminals.

21         THE COURT:  Okay.

22         THE PROSPECTIVE JUROR:  This was our president.

23         THE COURT:  And so the fact that you heard those

24   things, does it affect your ability to be fair in a case --

25         THE PROSPECTIVE JUROR:  I don't -- you know what, I

Prospective Juror No. 171                    731

1  work with a lot of immigrants and I do not feel like they're

2  sending all their criminals to the United States.

3              THE COURT:  Okay.  And given that, do you think you

4  could be fair in a case that involves allegations involving

5  Mexican people?

6              THE PROSPECTIVE JUROR:  Sure.

7              I have a good friend who is Mexican.

8              THE COURT:  And do you think that would affect your

9  ability to be fair in a case that involves allegations about

10  what the Mexican government did or didn't do?

11             THE PROSPECTIVE JUROR:  I have no idea.

12             THE COURT:  All right.

13             THE PROSPECTIVE JUROR:  This is beyond me here.

14             THE COURT:  Would you keep an open mind here?

15             THE PROSPECTIVE JUROR:  Sure.

16             THE COURT:  Or would you be thinking that the former

17  president said certain things, therefore that affects my

18  assessment of what os being said in court?

19             THE PROSPECTIVE JUROR:  I didn't necessarily agree

20  with everything the former president said.

21             THE COURT:  So could you keep an open mind in a case

22  that involved evidence about the Mexican government?

23             THE PROSPECTIVE JUROR:  Sure.

24             THE COURT:  And then the last thing is, you said

25  that you have a long commute.  So tell us about what your

Prospective Juror No. 171                    732

1    concern is there.

2           THE PROSPECTIVE JUROR:  I'm not supposed to say

3    where I live.

4           THE COURT:  No, don't say where you live.

5           THE PROSPECTIVE JUROR:  It takes about 25 minutes to

6    get to a train station.  And then I don't have a parking

7    permit for that train station, so I need someone to bring me

8    to that train station.  Then I would have to take a train to

9    Jamaica or I could take the one that goes into Brooklyn and

10   then I have to commute here.  So I've enlisted my husband as a

11   driver.

12          THE COURT:  Okay.  Thank you.

13          MR. DE CASTRO:  Your Honor, could you do 45?

14          THE COURT:  So the question was about any -- you or

15   a family member being employed by or volunteering in criminal

16   defense work.  You said not that you're aware, but you said

17   your son and daughter-in-law are both lawyers, you have a

18   first cousin who is a lawyer.  And so can you tell me -- and

19   again you said you weren't sure if this would affect your

20   ability to be fair.

21          THE PROSPECTIVE JUROR:  Right.  I don't know what

22   they did in their training, I have no idea.  But what did I

23   put down?  Somebody's in international tax.  The other lawyer

24   is -- works for Bank of America, I think credit cards.  And

25   the other one works in environment law.  But I have no idea

1    what their history is.

2              THE COURT:  Okay.  And did any of them work in

3    criminal law, as far as you know?

4              THE PROSPECTIVE JUROR:  Not -- I don't know what

5    they did in their training.  If you could enlighten me.  I

6    have no idea.

7              THE COURT:  I don't know either.

8              But their current practice is not criminal law?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  And are you aware if they volunteer for

11   any criminal defense work?

12             THE PROSPECTIVE JUROR:  I have no knowledge.

13             THE COURT:  Okay, that's fine.  And we don't need

14   for you to pry.  Sometimes if people know, it will affect

15   them.

16             So you don't think that any of their activities

17   affects your ability to be fair?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  No.  Okay.

20             And then also the fact that they're lawyers, if

21   Judge Cogan instructs you on what the law is, will you follow

22   his instruction rather than think wait a second, my son said

23   something else about what the law is?

24             THE PROSPECTIVE JUROR:  Yeah, I -- we really don't

25   discuss law.  It's way beyond my scope.

Proceedings                                        734

1           THE COURT:  Okay, that's good.  Thank you.

2           Anything else?

3           MR. DE CASTRO:  No.

4           MS. KOMATIREDDY:  No, thank you, Judge.

5           THE COURT:  Okay, great.

6           Thank you so much.  Now you're excused to go back

7   outside.

8           THE PROSPECTIVE JUROR:  Okay.  Thank you.

9           (Prospective Juror No. 171 exits.)

10          MR. DE CASTRO:  Judge, I raise a cause challenge for

11  a couple of reasons.

12          One, you started with the presumption piece.  Her

13  answers on the questionnaire were referencing the exhibit

14  list:  Well, look at the names.  And then I think you did

15  great on those questionings.  The problem is, her answer was

16  "sure" at the end of the day and it was sort of sure, if you

17  say so.  That's my concern.  That didn't strike me as an

18  unequivocal I will be fair and give my client the presumption

19  of innocence.

20          Furthermore, I think on personal experience about

21  drugs being illegal in the country, her answer was:  I'll do

22  my best.  Again, I don't think that was an unequivocal, I will

23  put that out of my mind and be fair in this circumstance.

24          I think her questionnaire, taken with her hesitation

25  here, is a reason to strike her for cause.

Proceedings                                    735

1          THE COURT:  All right.

2          MS. KOMATIREDDY:  Your Honor, we oppose.

3          We think your thorough questioning actually got to

4  all of the issues.  And I think the juror actually articulated

5  in her own words multiple times what a good juror would do:

6  Look at the evidence, listen to the evidence, follow the law,

7  follow the Judge's instructions.  That gave us confidence.

8          I understand it was helpful to be able to talk to

9  her because there were various answers on her questionnaire

10  that we didn't understand.  But now, based on my perception,

11  that when she stated "not sure," that was really just an

12  indication that something was outside the scope of her

13  knowledge and that she was prepared to listen to the evidence

14  and follow the Judge's instructions.

15          To the extent that there's a concern that the answer

16  "sure" is not unequivocal, we would just ask that the juror be

17  brought back in and asked to answer yes or no; can you be fair

18  and impartial to this defendant in this case, yes or no?

19          THE COURT:  So I did hear the "sure."  I took it as

20  a yes, but I can have her come back and say more clearly.

21  We've had jurors say:  I'll do my best, I'll try, and then I

22  always say you know yourself.

23          MR. DE CASTRO:  Yes.

24          THE COURT:  That basically trying is not good

25  enough.  Can you?  And when they say I think so, then we have

1   found that to be enough.  So I can certainly see if she'll say

2   that.

3            MR. DE CASTRO:  My concern was, to me -- I mean,

4   again, this is all somewhat subjective.  So the "sure" was not

5   very confident.

6            And second, I wouldn't put it as fair and impartial.

7   We're talking about the presumption of innocence.  My concern

8   is she's saying look at the list, much like the juror

9   yesterday that said all of this for not guilty.  So that's my

10  concern.

11           THE COURT:  Yes.  And I think once I explained it --

12  I think she misunderstood what the list was.

13           MR. DE CASTRO:  Yes.

14           THE COURT:  And so once I explained it, I think she

15  got that.  But I can certainly focus on the can you presume

16  the defendant innocent and get her to say, at least, I think

17  so.

18           MR. DE CASTRO:  Appreciate it.

19           THE COURT:  So let's get the next juror because I

20  think that juror is lined up and ready to go and then we can

21  have 171 back.  So let's get 172 here and then 171 can come

22  back and answer questions.

23           Oh, I'm sorry 172 is not here, right?

24           THE CLERK:  Judge, you asked for 170 to come back

25  next.

Prospective Juror No. 170                    737

1              MR. DE CASTRO:  Pay.  Pay.

2              THE COURT:  Yes, thank you.  170.  We wanted that

3     juror to ask about her pay.

4              (Prospective Juror No. 170 enters.)

5              THE COURT:  Hi.

6              THE PROSPECTIVE JUROR:  Hi.

7              THE COURT:  We had a request for you.

8              THE PROSPECTIVE JUROR:  Okay.

9              THE COURT:  You said you weren't sure if you would

10    get paid if you were required to sit on this jury and so we

11    want you to find out if you can call or e-mail or text your

12    employer and just find out, if you were chosen to sit on a

13    jury for up to eight weeks, whether you would get paid for any

14    portion of that.

15             THE PROSPECTIVE JUROR:  Okay.

16             THE COURT:  So why don't you do that.  You can go

17    downstairs and get your phone if you need to make a phone

18    call.

19             THE PROSPECTIVE JUROR:  Oh.  You need the answer

20    right now?

21             THE COURT:  As soon as possible, if you can.

22             THE PROSPECTIVE JUROR:  All right.

23             THE COURT:  Okay?  I mean, if you can't, you can't.

24    But if you make the effort, make the call or send a text.

25             THE PROSPECTIVE JUROR:  I don't know if my manager

1    will be available to give me an answer right now.

2              THE COURT:  Yes, that's fine.  Why don't you make

3    the effort and then if you find out, you can let us know.  And

4    if not, we'll work from that.

5              THE PROSPECTIVE JUROR:  So I just go downstairs?

6              THE COURT:  Yes.  My clerk will tell you what to do

7    specifically.  All right?  So just find out about the pay.

8              THE PROSPECTIVE JUROR:  Okay.

9              (Prospective Juror No. 170 exits.)

10             THE COURT:  Is this 171?  If 171 is available, we

11   can have her back.  If not, 173 is the next juror.

12             (Prospective Juror No. 173 enters.)

13             THE COURT:  Hello, Juror 173.  How are you doing?

14             THE PROSPECTIVE JUROR:  Good.  How are you?

15             THE COURT:  I'm good.  Thank you.

16             We had a few followup questions for you.

17             THE PROSPECTIVE JUROR:  Okay.

18             THE COURT:  You were asked a question about -- you

19   said that you work with your family's small business and you

20   witnessed theft and counterfeit money.  And you were asked

21   whether this would affect your ability to be fair and

22   impartial in the case and you said it's possible.  And you

23   said that given the seriousness of the charges, you may assume

24   the evidence provided is enough.

25             So, can you just tell us a little bit about that?

1           THE PROSPECTIVE JUROR:  Yes, sure.

2           I used to work for my family's small businesses and

3    so I have seen, you know, theft and some maybe shady people.

4    So, you know, just given the seriousness of it, I felt like

5    that was something that should be shared in the document.  And

6    I have never been a party to something like this, so I can't

7    say yes or no if it would affect me, but it's possible.

8           THE COURT:  Right.  Okay.

9           And so when you say it's possible, have you --

10           THE PROSPECTIVE JUROR:  Perhaps I could be, like,

11   swayed by somebody's demeanor or something like that.  I'm not

12   sure.

13           THE COURT:  So as a juror, you're supposed to be

14   fair and impartial.

15           THE PROSPECTIVE JUROR:  Right.

16           THE COURT:  But at the end of the trial, you're

17   supposed to make a decision.

18           THE PROSPECTIVE JUROR:  Right.

19           THE COURT:  And so when you make a decision, you're

20   going to believe some witnesses and maybe not believe other

21   witnesses.  And how their demeanor is when they testify and

22   their motive for testifying, all those things are fair game.

23           THE PROSPECTIVE JUROR:  Okay.

24           THE COURT:  Okay?  So you're supposed to use your

25   judgment and decide.

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Because ultimately you have to make a

3   decision.  And so even though you're going to start out

4   impartial, at some point you're going to go someplace else so

5   that you end up with a guilty or not guilty.

6          THE PROSPECTIVE JUROR:  Okay.

7          THE COURT:  So as long as you're impartial --

8          THE PROSPECTIVE JUROR:  Got it.

9          THE COURT:  -- and going in you don't have any

10  ideas, thoughts about where things should end up, then that's

11  great.

12         THE PROSPECTIVE JUROR:  Okay.

13         THE COURT:  Okay?  Is that where you are?

14         THE PROSPECTIVE JUROR:  Yeah, I would say so.

15         THE COURT:  Okay.

16         And so you talked about the seriousness of the

17  charges.  What role does that play in your thinking, if any?

18         THE PROSPECTIVE JUROR:  I guess it just makes me

19  nervous to be somebody that would be part of making that

20  decision.

21         THE COURT:  What makes you nervous?

22         THE PROSPECTIVE JUROR:  You know, somebody's life.

23         THE COURT:  Well, you won't be the only person

24  making the decision.  There will be a group of jurors that you

25  will deliberate with.

1          And it's perfectly normal to be nervous coming into

2  federal court.  Most people don't come in here every day like

3  we do.

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And so we do our best to put you at

6  ease.

7          But if it's really just about making the decision

8  and it's important, it's probably good that you recognize that

9  it's an important decision.

10         Beyond that, is there any other concern that you

11 have about serving?

12         THE PROSPECTIVE JUROR:  No.

13         THE COURT:  No?  Okay.

14         So you mentioned that you heard about El Chapo.  His

15 name is likely to come up.  Do you think anything you've heard

16 so far about that person and what he may have done, would that

17 affect your ability to be fair in this case?  He's not on

18 trial.  It's somebody else.

19         THE PROSPECTIVE JUROR:  I don't know.  I don't think

20 so.  It's just I had heard that name before.  So yeah, I know

21 the questionnaire asked that.  I just heard it.  I'm not

22 somebody that follows these sorts of things, so that was the

23 only name.

24         THE COURT:  That's great.  And I'm glad you paid

25 attention and told us about that.

Prospective Juror No. 173                    742

1        So I see that you also answered -- you were asked a

2   question about law enforcement officers being witnesses and

3   you were asked if you would accept and apply the law that says

4   that you should treat their testimony just like anybody

5   else's.

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  And you said you felt it was possible

8   that you would not.  You said:  I feel it's possible I could

9   find this testimony biased, based on the officer's demeanor.

10  I could be judgmental in that regard.

11             THE PROSPECTIVE JUROR:  Yeah.

12             THE COURT:  So I just want to make sure what you

13  mean by that.

14             THE PROSPECTIVE JUROR:  It was funny because I had

15  just watched, like, a television program where there was like

16  a DEA being interviewed, agent.  And they were going after --

17  it was like a show about Playboy and they were going after

18  Playboy.  But they went after Hugh Hefner's, like, secretary

19  for having a small amount of cocaine.  And I had just watched

20  that and I thought to myself, oh, it feels, like, so unfair

21  the way that they treated that woman.  So when I read that

22  question and then, you know, things that have happened with

23  the recent de-fund the police and whatnot, there is a bit of,

24  like, maybe unconscious bias there that I wanted to share.

25  Just, you know.

1          THE COURT:  Right.

2          THE PROSPECTIVE JUROR:  So I had just watched that,

3     so that's why I was like, oh, maybe.

4          THE COURT:  Okay, great.  Well, again, thank you for

5     bringing that to our attention.

6          So you mentioned de-fund the police.  Do you think

7     that that would make you biased against law enforcement, so

8     that if somebody were testifying and she were law enforcement

9     that you would then believe her testimony less than somebody

10    else?

11         THE PROSPECTIVE JUROR:  Honestly, I mean, like,

12    possibly.

13         THE COURT:  Yes?

14         THE PROSPECTIVE JUROR:  Yeah.  Just that everything

15    that goes on.  I'm not saying I'm like an overly political

16    person, but it is something, you know, that's been kind of in

17    the psyche.  So that's definitely something I keep in the back

18    of my mind.

19         THE COURT:  Right.

20         THE PROSPECTIVE JUROR:  Like I said, an unconscious

21    bias.

22         THE COURT:  Yes.  And there's nothing wrong with

23    critically assessing every witness because, like I said, as a

24    juror you're free to believe or not believe any particular

25    witness.  And so how the person testifies, what they say, and

1    the motives and background and all those things are fine.

2              THE PROSPECTIVE JUROR:  Okay.

3              THE COURT:  The only question is whether you would

4    unfairly weigh one witness's testimony more or less than

5    someone else just because they're law enforcement.

6              THE PROSPECTIVE JUROR:  Mm-hm.

7              THE COURT:  So all these things that you've talked

8    about, demeanor, like I said, that's fair game.

9              THE PROSPECTIVE JUROR:  Yeah.

10             THE COURT:  But it's whether you would be unfair,

11   right?  And so that you would believe somebody just because

12   they're law enforcement or not believe them just because

13   they're law enforcement, that's the question.

14             THE PROSPECTIVE JUROR:  Okay.  Yeah, I mean, I would

15   try to be as fair as possible.

16             (Continued on the next page.)

17

18

19

20

21

22

23

24

25

Prospective Juror No. 173                    745

1   ((Continuing)

2          THE PROSPECTIVE JUROR:  Yeah, of course I would try

3   to be as fair as possible, I see myself as a fair person, so,

4   yeah.

5          THE COURT:  And do you think you could be fair?

6          THE PROSPECTIVE JUROR:  Yes, I think I could be.

7          THE COURT:  All right.  Are you doing any activities

8   with regard to --

9          THE PROSPECTIVE JUROR:  No.

10         THE COURT:  -- defunding the police?

11         THE PROSPECTIVE JUROR:  No, no, not anything like

12  that.

13         THE COURT:  You said it is like psyche?

14         THE PROSPECTIVE JUROR:  It's something I would

15  perhaps consider.

16         THE COURT:  Is there any follow-up questioning I

17  should do?

18         MS. KOMATIREDDY:  Can we have a brief sidebar for a

19  minute.

20         THE COURT:  Okay.  I need to talk not lawyers for a

21  minute.

22         THE PROSPECTIVE JUROR:  Okay.

23         (The following occurred at sidebar.)

24         MS. KOMATIREDDY:  Your Honor, the juror noted --

25  she made the comments that she was a little nervous about

1  making a decision where someone's life is in the balance.  We

2  would like a follow up on can she accept the principle that

3  punishment is a matter for the judge.  Here her only role is

4  to decide whether guilt or not guilty, not to concern herself

5  with the consequences of that verdict.

6          THE COURT:  Okay.

7          MR. DE CASTRO:  Judge, just one second.

8          THE COURT:  Yes.

9          (Pause.)

10          MR. DE CASTRO:  Judge, you may want to on questions

11 67, which is like can you not follow media.  I think she might

12 have misunderstood the question because she mentioned her

13 husband would be isolated.  You can watch the media and watch

14 movies, just stay away.

15          THE COURT:  Yes.

16          MR. DE CASTRO:  Okay.

17          (End of sidebar conference.)

18          (In open court.)

19          THE COURT:  Just two follow-up questions.

20          THE PROSPECTIVE JUROR:  Okay.

21          THE COURT:  So you said earlier that you were

22 nervous making a decision when somebody's life is in the

23 balance.  Something to that effect.

24          THE PROSPECTIVE JUROR:  Uh-hum.

25          THE COURT:  I want you to understand the decision

1   that the jury makes is as to guilty or not guilty.

2          THE PROSPECTIVE JUROR:  Uh-hum.

3          THE COURT:  And whether there's a particular kind of

4   punishment is something the judge will decide later --

5          THE PROSPECTIVE JUROR:  Uh-hum.

6          THE COURT:  -- if there is a guilty verdict.  It's

7   not something that the jury is going to deal with.

8          THE PROSPECTIVE JUROR:  Right.

9          THE COURT:  So you shouldn't be concerned about any

10  issues of punishment.

11         THE PROSPECTIVE JUROR:  Okay.

12         THE COURT:  It wouldn't be the jurors' obligation to

13  decide punishment.

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Do you understand that?

16         THE PROSPECTIVE JUROR:  I understand that.  If

17  somebody is guilty, they will obviously be punished in some

18  way.

19         THE COURT:  You don't know how and there are

20  different degrees of punishment.  That's up to the judge.

21         THE PROSPECTIVE JUROR:  Yeah.

22         THE COURT:  So we want to make sure that you

23  understand as a juror making a decision on whether somebody is

24  guilty or not, you should not be --

25         THE PROSPECTIVE JUROR:  Right.

1          THE COURT:  -- concerned with the issues of

2   punishment because you don't know what the punishment will

3   look like.

4          THE PROSPECTIVE JUROR:  All right.

5          THE COURT:  Can you follow that?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  All right.  So then the other question I

8   have is you mentioned, you were concerned about media.  I

9   wanted to clarify for you, if you were picked to sit on this

10  jury, it doesn't mean that you can't watch anything on TV.

11         THE PROSPECTIVE JUROR:  Okay.

12         THE COURT:  It doesn't mean you can't go on the

13  internet, it just means, number one, you shouldn't

14  specifically follow the news on this case --

15         THE PROSPECTIVE JUROR:  Okay.

16         THE COURT:  -- or do any reach on this case.

17         THE PROSPECTIVE JUROR:  Okay.

18         THE COURT:  If you inadvertently come across it, you

19  would turn it off immediately and go away.

20         THE PROSPECTIVE JUROR:  Okay.

21         THE COURT:  If you were watching the news and it was

22  about other things and the minute they say now we have an

23  update on this issue, you have to turn it off.

24         THE PROSPECTIVE JUROR:  Got it.  When I read that,

25  it's very general.

1          THE COURT:  I think it is pretty harsh to make

2    people do a complete media block out.  As long as you are

3    diligent to not being exposed about news in this case or this

4    trial, that would be enough.  Can you do that?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Were there any our follow-up questions?

7          MR. DE CASTRO:  No, Judge.

8          MS. KOMATIREDDY:  No, Your Honor.

9          THE COURT:  Thank you very much.

10         THE PROSPECTIVE JUROR:  Thank you.

11         (Prospective Juror 173 exits.)

12         THE COURT:  Okay.  171 back.

13         (Prospective Juror No. 171 present at sidebar.)

14         THE COURT:  Hello, again.  Sorry to bring you back.

15         THE PROSPECTIVE JUROR:  It's okay.

16         THE COURT:  We like talking to you.

17         THE PROSPECTIVE JUROR:  Sure.

18         THE COURT:  I have a couple of things I wanted to

19   follow up on.  We talked about this and I just wanted to make

20   sure I understand what you were saying.

21         So originally you said you saw there were five pages

22   of names and places and you thought that that might mean that

23   somebody is guilty.  The law says a person is presumed

24   innocent.

25         THE PROSPECTIVE JUROR:  Correct.

1          THE COURT:  So they start innocent --

2          THE PROSPECTIVE JUROR:  Okay.

3          THE COURT:  -- until evidence has been presented and

4    the jury makes the decision that the Government has proven the

5    case beyond a reasonable doubt that the person is guilty.  All

6    right?

7          So you always start at presumed innocent and until

8    the evidence has been presented, and no evidence has been

9    presented at this point, all right.  And even when evidence is

10   presented, the volume of the evidence isn't the issue, it's

11   what you consider to be evidence that tends to show, and

12   eventually may show that the Government has met its burden of

13   proof.  Then and only then, can the jury find the person

14   guilty.  Okay?

15         So, if you start out thinking the person is guilty

16   or might be guilty because of the evidence, then you haven't

17   presumed them innocent.  And at the end of the trial, if the

18   Government hasn't convinced you that the person is guilty

19   beyond a reasonable doubt, then the person is still not

20   guilty, okay?

21         So I just wanted to let you know --

22         THE PROSPECTIVE JUROR:  Reframe it for me.

23         THE COURT:  Reframe it for you so you understand it.

24         THE PROSPECTIVE JUROR:  I still have a problem with

25   the O.J. Simpson case, honestly.

1           THE COURT:  Okay.

2           THE PROSPECTIVE JUROR:  Because he was not -- right,

3    the jury didn't convict him of a crime, except in a civil suit

4    he was guilty.  So I still have a problem with that.

5           THE COURT:  So let me take a moment to explain that

6    the civil trial has a different burden of proof.

7           THE PROSPECTIVE JUROR:  Right.  And the other trial.

8    Right --

9           THE COURT:  It's the preponderance of the evidence.

10          THE PROSPECTIVE JUROR:  Right.

11          THE COURT:  And it's beyond a reasonable doubt, that

12   jury --

13          THE PROSPECTIVE JUROR:  Wasn't -- that jury didn't

14   find him guilty beyond a reasonable doubt.

15          THE COURT:  That's right.  And that jury was sitting

16   in the courtroom and watching the entire trial, you know.

17          THE PROSPECTIVE JUROR:  Yeah.

18          THE COURT:  And there is a difference between being

19   in the courtroom and watching a trial and sitting at home and

20   watching excerpts of the trial.

21          THE PROSPECTIVE JUROR:  Yeah.

22          THE COURT:  And you are certainly free to have your

23   opinion about that case, but I just want to make sure that you

24   understand that there is a difference in the law in terms of

25   the burden of proof and that's why there's -- potentially

1    explains the difference.  But, also, you are entitled to your

2    view of the trial.

3              THE PROSPECTIVE JUROR:  I'm not a lawyer.

4              THE COURT:  Of course.  That's fine.  You're not the

5    juror in that case, and this is going to be a case.

6              THE PROSPECTIVE JUROR:  Okay.

7              THE COURT:  So you shouldn't worry what happened to

8    O.J. Simpson or not.  That's a different case.

9              THE PROSPECTIVE JUROR:  Correct.

10             THE COURT:  You would just have to watch the

11   evidence in this case and as the juror you will be focused on

12   this case.  But I just want you -- just to be clear, the law

13   says every person is presumed innocent.

14             THE PROSPECTIVE JUROR:  Yeah.

15             THE COURT:  That's where you start.

16             THE PROSPECTIVE JUROR:  Uh-hum.

17             THE COURT:  You can't start with the person, gosh,

18   hearing this case or looking at the person, I already think he

19   is guilty.  That wouldn't be impartial.

20             THE PROSPECTIVE JUROR:  Correct.

21             THE COURT:  Because you haven't heard the trial yet.

22             THE PROSPECTIVE JUROR:  Right.

23             THE COURT:  So it wouldn't be fair to judge the

24   person at the beginning.  You understand?

25             THE PROSPECTIVE JUROR:  I understand.  I do

1    understand.

2             THE COURT:  When you have a questionnaire that has a

3    list of names and you don't know what's that about --

4             THE PROSPECTIVE JUROR:  And I go through them name

5    by name, and honestly, of course, I know some of those names

6    because they're my students, but they wouldn't be a

7    10-year-old, you know, a 6-year-old wouldn't be on that list.

8             THE COURT:  Of course.

9             THE PROSPECTIVE JUROR:  So --

10            THE COURT:  Right.  So I saw you circled a first

11   name.

12            THE PROSPECTIVE JUROR:  Because I know someone with

13   a very similar name.

14            THE COURT:  And if it's a child --

15            THE PROSPECTIVE JUROR:  That one wasn't a child.

16   That one is --

17            THE COURT:  But it's not the same last name?

18            THE PROSPECTIVE JUROR:  It's the same last name.

19   This person's name was Linda and that was a different name.

20   Very close.

21            THE COURT:  Very close but not the same name.

22            THE PROSPECTIVE JUROR:  Right.

23            THE COURT:  That's fine.

24            THE PROSPECTIVE JUROR:  So I went through.  I'm very

25   methodical.

```
 1              THE COURT:  That's good.  We want methodical jurors.
 2              THE PROSPECTIVE JUROR:  Yeah.
 3              THE COURT:  But the question, again, because you
 4    answered it and I hope I explained it, but after you heard my
 5    explanation, I want to make sure you understand and can
 6    presume somebody innocent.
 7              Have you presumed the defendant in this case
 8    innocent --
 9              THE PROSPECTIVE JUROR:  Yes.
10              THE COURT:  -- as you stand here?
11              THE PROSPECTIVE JUROR:  Yes.  That's what the law
12    says, right, presumed innocent until proven guilty.  Okay.
13              THE COURT:  Yes.  Do you presume the defendant
14    innocent in this case?
15              THE PROSPECTIVE JUROR:  Uh-hum.  Yes.
16              THE COURT:  Okay.  And can -- we talked a bit about
17    whether you can be a fair and impartial juror.  So I just need
18    to hear more clearly from you, because I don't think I wrote
19    it down right.  Can you be a fair and impartial juror in this
20    case?
21              THE PROSPECTIVE JUROR:  Yes.  Yes.
22              THE COURT:  Great.
23              THE PROSPECTIVE JUROR:  Do I want to be a fair and
24    impartial juror in this case?
25              THE COURT:  Uh-huh.
```

1            THE PROSPECTIVE JUROR:  No.

2            THE COURT:  Well, you don't want to be a juror in

3    this case.

4            THE PROSPECTIVE JUROR:  Probably not.  Okay.

5            THE COURT:  But if you were asked --

6            THE PROSPECTIVE JUROR:  If I am asked to do it,

7    it's -- you know, and by the time I get here, I'm already,

8    because I've had to commute.  So whatever.

9            THE COURT:  I understand you don't want to be a

10   juror because of the inconvenience.

11           THE PROSPECTIVE JUROR:  Yes.

12           THE COURT:  But if you were called upon to be a

13   juror --

14           THE PROSPECTIVE JUROR:  To do my service I will do

15   my service to the best to my ability, to be fair,

16   non-judgmental and impartial.

17           THE COURT:  Okay.  And forgive me if it sounds like

18   I'm repeating, but I just -- could you be a fair and impartial

19   juror in this case?

20           THE PROSPECTIVE JUROR:  Yes.

21           THE COURT:  All right.  Any follow-up questions?

22           MR. DE CASTRO:  No, Judge.

23           THE COURT:  Thank you very much.  Thank you for your

24   patience.

25           THE PROSPECTIVE JUROR:  Okay.  Thank you.

1          (Prospective juror 171 exits courtroom.)

2          MR. DE CASTRO:  Judge, I'm sorry.

3          THE COURT:  Yes, Mr. de Castro.

4          MR. DE CASTRO:  I mean, one, I don't think you have

5    ruled on the cause challenge, but I would reiterate it and I

6    would add to the challenge that I just -- I know she said the

7    words.  She's been all over the map on this, and when we are

8    talking about the presumption of innocence and she disagrees

9    in her view with the application of the presumption of

10   innocence in the O.J. trial, I know complete tangent and I

11   have no idea what was going on there, but my interpretation is

12   yeah, there was a presumption of innocence applied over there

13   too and I totally disagree.  I think this is a person who does

14   not want to, as she said, be -- I don't know even know what to

15   take of can I be fair and impartial, yes, with eye roll, do I

16   want to?  No.

17         THE COURT:  I took the "I want to" as I don't want

18   to be a juror, I don't think she meant I don't want to be fair

19   and impartial.

20         MR. DE CASTRO:  I get it.  I understood that to be a

21   take away, this is a very precise juror with very precise

22   language all over.  She heard those words and she chose to

23   answer in that.  I think this is a terrible cause record and I

24   think that she's a cause challenge.

25         THE COURT:  Well, I understood the discussion of

1   O.J. Simpson in the context of the presumption of innocent is

2   that a person is presumed innocent at the beginning of a

3   trial.  In his case, the trial occurred.  So if at the end of

4   the trial, having watched the evidence on TV, she came to a

5   different conclusion about his guilt or innocence, that's

6   different from presuming somebody innocent at the beginning.

7   So if he had not -- if O.J. Simpson had not yet stood trial

8   and she said he was guilty, then I might have a problem.

9            But his trial was conducted and at the end of it,

10  she disagreed with the verdict.  She's entitled to disagree

11  with the verdict.  I asked her pointedly can she accept the

12  defendant is innocent as he is here today and she said yes.

13  You may have your doubt, but the record is that she said yes.

14  So I don't think there is a cause -- a basis for granting a

15  cause challenge.

16           Now, we are very close to having 40.

17           I'm going to -- the 20 jurors who were not called

18  upstairs are on the second floor.  Are you comfortable sending

19  them to lunch?

20           MR. DE CASTRO:  We have -- we have three more,

21  right, from the 10?

22           THE COURT:  We have three more.

23           MR. DE CASTRO:  And that doesn't even count the

24  potential fourth, who is the pay person.

25           THE COURT:  So do you want to keep going?  The

Prospective Juror No. 170                          758

1  people we asked this morning to call their employers, I'm not

2  confident they will be able to get an answer to us.

3              MR. DE CASTRO:  Right.

4              THE COURT:  If they don't come back with an answer,

5  we can excuse them and presume a hardship.  I think we have

6  three more to go through.

7              MS. KOMATIREDDY:  We're just trying to track our

8  numbers, Your Honor.  We're tracking that we have seated 43

9  with two question marks from the morning and one question mark

10  from the afternoon.  Is that right?  I think in that case,

11  we're done.

12              THE COURT:  That's what I have too because I just

13  denied the strike on 171.

14              MS. KOMATIREDDY:  If we get answers from those three

15  people, then we will know.  And even if the answers are

16  negative, we're okay.

17              MR. DE CASTRO:  Yes.

18              THE COURT:  So I actually think we are okay with the

19  40.

20              MS. KOMATIREDDY:  It would be great to ask the

21  others to hang around just in case, but I think we are okay.

22              THE COURT:  So 170 has some answers.  Let's talk to

23  170.

24              (Prospective Juror No. 170 present at sidebar.)

25              THE COURT:  Hello, Juror 170.

Prospective Juror No. 170                    759

1       I understand that you have some answers for us as
2  far as your employer.
3           THE PROSPECTIVE JUROR:  Yes, so I don't have a
4  definitive answer, because I couldn't reach my manager, but I
5  was able to find an article in the internal chat in my
6  company, I think it says that it only pays me for 10 days of
7  jury duty, so that means I only have eight more days because I
8  took two days, for last time and today.
9           THE COURT:  Thank you.
10          MR. DE CASTRO:  No objection.
11          MS. KOMATIREDDY:  Your Honor, since we are taking a
12  lunch break, could we just wait to see.
13          THE COURTROOM DEPUTY:  Microphone.
14          MS. KOMATIREDDY:  Sorry.
15          THE COURT:  You want -- you want to wait for the
16  employer to contact this juror with a definitive answer even
17  though the internal manual says 10 days?
18          MS. KOMATIREDDY:  Oh, it's an internal manual.
19          THE PROSPECTIVE JUROR:  It's internal chat, but it
20  has a manual about it.
21          MS. KOMATIREDDY:  Then no objection, Your Honor.
22          THE COURT:  Thank you so much.  Go down to the
23  second floor.
24          THE PROSPECTIVE JUROR:  Okay.
25          (Prospective juror 170 exits courtroom.)

1      THE COURT:  So there are a couple of scheduling

2   things.  One option is to say we're done and that we've got 40

3   jurors that we can start with the peremptory strikes.  Why

4   don't we do that?  Let's go through the list and make sure we

5   are on the same page as to who has been qualified.

6          If there is a discrepancy and we need to question

7   more jurors, we will do so.  If not, I think we can let the 20

8   who are downstairs go, because we don't need them.  Or we can

9   ask them to come back in case we need them.

10          Let's do this first.  Ryan, if we can wait a few

11   minutes on letting them go.  We will have a better idea.

12          So, let me read out the numbers and you tell me if I

13   have right.  3, 4, 6, 9, 13, 18, 21, 30, 31, 35, 36, 41, 45,

14   56, 61, 64, 67, 78, 80, 83, 87, 89, 90, 91, 93, 97, 101, 102,

15   109, 116, 128, 134, 136, 138, 143, 158, 159, 160, 169, and

16   171.

17          MR. DE CASTRO:  153, we are waiting for a follow up.

18          MS. KOMATIREDDY:  We agree, yes.

19          MR. DE CASTRO:  And then 173 as well, the last one,

20   am I right?

21          THE COURT:  Well, 173 wouldn't be included on this.

22          MR. DE CASTRO:  I'm sorry, because the 40.  I'm

23   sorry, Judge.

24          THE COURT:  We are just getting to 40.

25          MR. DE CASTRO:  173 is the 41st.  Got it.

1              THE COURT:  Any disagreement?

2              MS. KOMATIREDDY:  We agree, Your Honor.

3              THE COURT:  And we have these three other jurors who

4  we have not questioned who are in the batch of 10.  So are you

5  comfortable excusing the 20 who are downstairs or do you want

6  them to go to lunch and come back?  Because if we, for some

7  reason, in the course of the peremptory -- well, let me do

8  another question.

9              Do the parties want to do the peremptory challenges

10 after a lunch break or do you want to go right into it?

11             MS. KOMATIREDDY:  I think we would prefer a lunch

12 break.

13             MR. DE CASTRO:  Do a lunch break and we will work

14 and be ready to rock when we come back.

15             THE COURT:  Are you comfortable excusing the 20

16 entirely or do you want them to come back from lunch?

17             MS. KOMATIREDDY:  Just to be safe, we would rather

18 have them come back.  I realize it is an inconvenience.  It is

19 a couple of hours.

20             MR. DE CASTRO:  Agreed.

21             THE COURT:  Ryan, if you can tell those jurors to

22 come back at 1:45.

23             So I will have the jurors, the remaining 23 jurors

24 that we haven't questioned go to lunch and come back at 1:45.

25 We will meet back here at 1:30 so you can tell me what you're

1    planning to do.

2          Try to be on time so that we can get started because

3    then we will bring the 40 and seat them so that you can start

4    exercising your peremptories.

5          We'll create a chart of the 40 so that you could see

6    them where they are seated and that might help you.  But I

7    think we should move swiftly at that point.  All right.  Then

8    hopefully there won't be any late-breaking developments during

9    lunch.

10         MS. KOMATIREDDY:  Thank you, Judge.

11         THE COURT:  See you at 1:30.

12         (Lunch recess.)

13         (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

1                          AFTERNOON SESSION

2              (In open court.)

3              (Defendant present.)

4              THE COURTROOM DEPUTY:  All rise.

5              THE COURT:  Please be seated.

6              We are back on the record for jury selection.

7              Over the lunch break, Juror 101 contacted my law

8    clerk and says that that juror would like to speak with us.

9    So I think 101 is already waiting outside.  As soon as I see

10   somebody there, I will waive to them to make sure they bring

11   the person in.

12             In the mean time, I trust you've all received a list

13   of the qualified jurors.  In the event that there is a problem

14   with Juror 101, we will swap in Juror 173, who was previously

15   qualified, so that we have 40 jurors.

16             There is also a schematic that my deputy made that

17   will show where the jurors are going to be seated in the

18   courtroom as you're exercising your strikes.

19             As soon as we are done speaking with 101, I will

20   have the 40 jurors brought in and seated in the way that I

21   have indicated to you.  Then we will start exercising the

22   strikes here at sidebar.

23             MR. DE CASTRO:  Your Honor, I think a couple of

24   things we addressed when you were not here.  I think the

25   Government wants to.  Maybe we will do the paper pass.

1          THE COURT:  Okay.

2          MR. DE CASTRO:  Do it that way so we don't have to

3     do the sidebar part of it.

4          THE COURT:  That's fine.

5          MR. DE CASTRO:  The other thing, 153, I think --

6          THE COURT:  153 is not part of group of qualified

7     jurors.

8          MR. DE CASTRO:  Right.  That was the one that we

9     were waiting for on pay, right?

10         THE COURT:  We did not hear back.

11         MR. DE CASTRO:  We have no answer.  I just wanted to

12    clarify that.

13         THE COURT:  Yes.  I'm not sure how I'm supposed to

14    communicate that all of my staff has left the courtroom.

15    Perhaps one of the agents can go back and see if my law clerk

16    is there.

17         (Pause.)

18         THE COURT:  Was somebody out there?

19         U.S. MARSHAL:  No, Your Honor.  Your Honor, he went

20    to go get the jurors.

21         (Pause.)

22         THE COURT:  Hello, Juror No. 101.

23         (Prospective Juror No. 101 enters.)

24         THE COURT:  Come up to the podium.  You mentioned

25    that you wanted to talk to us.

1          THE PROSPECTIVE JUROR:  I was thinking about the

2    question you asked me yesterday and my ability to focus on the

3    trial.  My financial health, and as a result of my being here,

4    I won't be able to generate any income.  I don't think I will

5    be able to do that.  I was thinking about it, you know, like

6    part of my cost rises, variable costs come up, that, you know,

7    will take away from, you know, my ability to concentrate on

8    the case and, you know, lead to any distractions.  I just

9    wanted to flag that.

10         THE COURT:  Right.  You indicated on the

11   questionnaire that you are self-employed.

12         THE PROSPECTIVE JUROR:  Yeah.  Correct.

13         THE COURT:  So is it the kind of work that you could

14   do in the evening?

15         THE PROSPECTIVE JUROR:  No.  It's from 9:30 to 4:00.

16         THE COURT:  All right.  And --

17         THE PROSPECTIVE JUROR:  Monday through Fridays.

18         THE COURT:  So you if you were able to monitor

19   things on Friday all day --

20         THE PROSPECTIVE JUROR:  Yeah.

21         THE COURT:  -- but not on Monday through Thursday,

22   what effect would that have on your financial situation?

23         THE PROSPECTIVE JUROR:  It probably wouldn't affect

24   fixed costs, but the variable cost, it may give issue to.  But

25   having the day, it does help.

1           THE COURT:  I'm sorry, I didn't understand what you

2    mean by fixed costs.

3           THE PROSPECTIVE JUROR:  Costs that are already

4    preestablished for the month, you know, any bills, car

5    insurance, things that I know -- I know in advance, car

6    repairs, you know, like gas costs, having to travel, any costs

7    that come up.

8           THE COURT:  Let me see if I understand what you're

9    saying.  So the things that have to be paid, you have already

10   taken care of?

11          THE PROSPECTIVE JUROR:  Correct.

12          THE COURT:  The things for which might come up to

13   make extra money, you're not sure you would be able to meet

14   that?

15          THE PROSPECTIVE JUROR:  Not sure, and the amount

16   too, what it might come out to.

17          THE COURT:  I guess I'm not sure I understand where

18   your income is coming from.

19          THE PROSPECTIVE JUROR:  Right.

20          THE COURT:  Such that you would have a decrease in

21   income by not being available Monday through Thursday during

22   the day.

23          THE PROSPECTIVE JUROR:  So it comes from my ability

24   to generate profits from the market.

25          THE COURT:  So are you buying and selling all the

```
                        Sidebar                        767
```

1    time?

2            THE PROSPECTIVE JUROR:  Yeah, buying and selling

3    also.  Yeah.  Correct, buying and selling.

4            THE COURT:  So if you weren't available during the

5    day Monday through Thursday, you're saying you might miss

6    opportunities?

7            THE PROSPECTIVE JUROR:  Correct, yeah.

8            THE COURT:  Because it's not like a salary where you

9    would --

10           THE PROSPECTIVE JUROR:  It's not fixed, yes.

11           THE COURT:  So --

12           MR. DE CASTRO:  We have no objection, Judge.

13           MS. KOMATIREDDY:  Can we have a brief sidebar, Your

14   Honor.

15           THE COURT:  Let me just talk to the lawyers for a

16   minute.

17           (The following occurred at sidebar.)

18           MS. KOMATIREDDY:  The reason for the follow up, Your

19   Honor, is just on the questionnaire, although he noted he's a

20   self-employed option trader, he also said it would not pose a

21   hardship.  I just wondering if Your Honor could ask does he

22   live month to month?

23           THE COURT:  That's what's going on.

24           MR. DE CASTRO:  And the markets are only open during

25   work hours, so he would have one day of training.

1          MS. KOMATIREDDY:  If Your Honor wouldn't mind

2     confirming that.  I was under the impression that he had

3     savings.

4          THE COURT:  What was unclear?

5          MS. KOMATIREDDY:  That does he live month to month.

6          MR. MIEDEL:  I think a juror shouldn't be expected

7     to dip into their savings if they can't survive during the

8     trial.

9          THE COURT:  I don't think the savings is the

10    question.  It's the lack of income.

11         MR. MIEDEL:  He can't make income if he is not

12    trading.  His job is to be a day trader.

13         MS. KOMATIREDDY:  I understand, Your Honor.  I guess

14    my understanding of trading is usually they make quite a bit

15    of income over time.  It's not an hourly job where they have

16    to show up to a shift and they get paid for the hours of the

17    day.

18         THE COURT:  I will ask the question.

19         MS. KOMATIREDDY:  Yes.

20         (End of sidebar conference.)

21         (In open court.)

22         THE COURT:  So can you tell us what effect there

23    will be on your life --

24         THE PROSPECTIVE JUROR:  Right.

25         THE COURT:  -- if you can't work Monday through

1   Thursday?

2          THE PROSPECTIVE JUROR:  The affect on my life.  Yes,

3   as far as things cost, so I pretty much have that nailed down,

4   so that wouldn't be affected.  It's like, you know, my gas,

5   car repairs.  My car is due for a repair, I think March, March

6   or April, I don't know what that costs comes out to.

7          Like I said, medical bills come up, gas.  But as far

8   as any like direct impact on my life from not being able to

9   show up either.  To specify now, I don't know what can arise.

10         THE COURT:  What I am hearing you say is you won't

11  get kicked out of your house because you can make the payment.

12         THE PROSPECTIVE JUROR:  I won't.

13         THE COURT:  And you can probably keep your car, you

14  won't lose your car.

15         THE PROSPECTIVE JUROR:  Yeah.

16         THE COURT:  But beyond that, the income you would

17  otherwise get, you won't get?

18         THE PROSPECTIVE JUROR:  Yeah, I won't get.

19         THE COURT:  I hate for you to put a dollar amount on

20  it.  Could you estimate how much money you would not make by

21  not working?

22         THE PROSPECTIVE JUROR:  Yes, it fluctuates.

23         THE COURT:  Is it hundreds, thousands?

24         THE PROSPECTIVE JUROR:  It fluctuates.  To average

25  it out, I -- it's probably in the -- probably mid-five, 500,

1    600 per week of extra income I wouldn't be able to earn.

2              THE COURT:  Because also there's -- in that line of

3    work, there is a possibility you would lose money as well.

4              THE PROSPECTIVE JUROR:  Yeah.  Yeah.  I'm trying to

5    average it out.  That's probably what it would amount to.

6              THE COURT:  So then, stepping back from that, you

7    talked about your ability to focus.  Tell me about that.

8              THE PROSPECTIVE JUROR:  Yes.  Because, again, the

9    nature of what I do is not consistent.  So like part of what

10   would be on my mind is to concentrate, if I'm here for this

11   amount of time, when I do eventually come back, like what kind

12   of impact would that have on my ability to get back in the

13   grove of things, based on Monday through Friday.  And, again,

14   like the inconsistency, or eventually, like, because my mind

15   tries to find ways where I could like establish okay, if I do

16   this, do this, do this, this will likely come out to this,

17   right now, it's like, it cloud things up there.

18             THE COURT:  So, would you be able to concentrate on

19   the evidence that's being presented?

20             THE PROSPECTIVE JUROR:  Yeah, I think -- I think I

21   should.  I just wanted to bring it up.

22             THE COURT:  Right.

23             THE PROSPECTIVE JUROR:  Because I was thinking about

24   it last night and I thought to myself if I'm thinking about it

25   tonight, it's probably something that I will think about later

1  on in the case.  I just wanted to flag it.

2          THE COURT:  Yeah, I appreciate you letting us know.

3  Just to dig a little bit more.

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  If you are sitting at trial and

6  listening to the evidence, you told me that you could focus on

7  the evidence, concentrate and make assessments and hear the

8  evidence.

9          THE PROSPECTIVE JUROR:  Yeah.

10          THE COURT:  You know you're going to have a lunch

11  break.  You might have a break.  Do you feel like you're going

12  to be running to --

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  -- to your device?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  So you would be fully here?

17          THE PROSPECTIVE JUROR:  Yeah.  I'm not a media guy.

18          THE COURT:  Could you get by if you had to sit here

19  for eight weeks.

20          THE PROSPECTIVE JUROR:  My fixed costs, I have that

21  nailed down.  Anything like unexpected, things might pop up,

22  this is what I'm really, really worried about.

23          THE COURT:  So If your car broke down during those

24  eight weeks, would it cause you to panic because you don't

25  have the money for that?

1           THE PROSPECTIVE JUROR:  Panic, yeah.  Yeah.  It
2    depends, like, what the costs would amount to.  Yeah.  It will
3    cause me some level of distress.  But panic -- yeah.
4           THE COURT:  Right.  Okay.  That's useful to know to.
5    Is there any follow-up question?
6           MS. KOMATIREDDY:  No, Your Honor.
7           THE COURT:  Thank you for letting us know.
8           THE PROSPECTIVE JUROR:  Thank you.
9           (Prospective juror 101 exits courtroom.)
10          THE COURT:  All right.  Any discussions on 101?
11          MS. KOMATIREDDY:  No.  Thank you, Your Honor.
12          MR. DE CASTRO:  Judge, it sounds to me he can focus
13   but it's a financial hardship to him.  I think the
14   Government's concern is is he living month to month.  I think
15   essentially that's what he's got for the next eight weeks, he
16   has his rent and I guess he can eat, to pay for.
17          Anything else depends upon him trading.  Being when
18   the markets are open, I don't know why we want to put a juror
19   through that financial hardship or uncertainty.  I think he is
20   going to be distracted despite his assurances.
21          THE COURT:  Let me hear from the Government.
22          MS. KOMATIREDDY:  Thank you, Your Honor.  I think
23   the things he's describing are things that might come up and
24   it could come up for any juror, unexpected health, bills -- or
25   unexpected medical bills, or unexpectedly -- having a car

1   breakdown.  Those are points of stress for any juror.  You

2   know, life happens, obviously.  But it seems like he has

3   planned out -- he's a detailed guy and has planned out his

4   expenses for these two months.  So I think he was being

5   conscientious in raising it with the Court, but he's also

6   being conscientious in saying he could be focused and he

7   wouldn't be running out because of a personal financial

8   emergency.

9           THE COURT:  I did try to probe as far as whether he

10  could focus and he said he could, he just wanted to let us

11  know, that he would have Fridays available, and he didn't call

12  it a hardship.  So I know there will be some financial

13  downsides for him, but it doesn't sound like that he is asking

14  for an accommodation for that.

15          I guess I didn't ask him if it was a hardship.

16  Maybe I should ask him because I did ask the other jurors.

17          MR. DE CASTRO:  I also feel like he feels like he is

18  imposing by saying this would be bad for me, and that's why he

19  raised it overnight.  He said it bothered him last night.

20          "THE COURT:  Let's have him back one more time so I

21  can ask if it would be a hardship.

22          (Prospective Juror No. 101 enters.)

23          THE COURT:  Thanks for coming back.  I just wanted

24  to follow up with you.

25          You said basically by missing those days of being

1  able to work you may lose money, and I wanted to find out

2  whether that poses a hardship on you.

3           THE PROSPECTIVE JUROR:  Hardship, yeah, it can, it

4  can, depending on -- like depending on any of costs that might

5  come up.  I will probably be scrambling to find funds to cover

6  that.

7           THE COURT:  Okay.  So, you're describing it as fixed

8  and then a --

9           THE PROSPECTIVE JUROR:  Yeah.  Yeah.

10          THE COURT:  So, you know, we don't require that

11  somebody be on the verge of losing their home to be a

12  hardship.

13          THE PROSPECTIVE JUROR:  Yeah.

14          THE COURT:  So tell me -- can you be a little more

15  specific about what the hardship would be to you?

16          THE PROSPECTIVE JUROR:  Hardship to be:  Inability

17  to -- again, if my car needs repair, I probably wouldn't be

18  able to fix that.  That would be parked for a while.  I would

19  have to commute by bus.  Living situation, I'll be fine, I own

20  a home.  That will be fine.  I just -- mainly transportation,

21  transportation.

22          THE COURT:  Are you willing to serve as a juror

23  notwithstanding that?

24          THE PROSPECTIVE JUROR:  Notwithstanding that, yeah,

25  yeah.  Again, I just wanted to flag that.  I was thinking

1    about it late last night, I was like my mind is racing now.

2    If something actually does come up, especially given the

3    length of time.  I didn't really appreciate that the last time

4    I was here, the eight weeks.  I really thought about it last

5    night, anything could pop up in between that amount of time.

6              THE COURT:  Right.

7              THE PROSPECTIVE JUROR:  I just wanted to let the

8    Court know.

9              THE COURT:  All right.

10             THE PROSPECTIVE JUROR:  Yeah.  Yeah.  Yeah.

11             THE COURT:  And you would be willing to serve

12   notwithstanding that?

13             THE PROSPECTIVE JUROR:  Yeah.  Yeah.  I'm willing to

14   serve.

15             THE COURT:  And I appreciate that.  And sometimes

16   people forget to say something and they want to bring it to

17   the Court's attention.

18             THE PROSPECTIVE JUROR:  Yeah.

19             THE COURT:  Now that you have brought it to our

20   attention, I thank you for that.

21             THE PROSPECTIVE JUROR:  All right.

22             THE COURT:  Thanks very much.

23             THE PROSPECTIVE JUROR:  Thanks.

24             (Prospective juror 101 exits courtroom.)

25             THE COURT:  Yes.  Well, he said two different

1    things.  He said both, that it would be a hardship and that he

2    would be willing to serve.  So since it's so rare to find

3    people who are willing to serve, I think we can keep him on.

4    Okay.

5             So we have our group of 40.  Is there any reason we

6    shouldn't bring them in at this point?

7             MS. KOMATIREDDY:  Not at all, Your Honor.  I just

8    want to confirm that we're going from 3 to 102.  That's the

9    first 28, within -- just to confirm the procedure that we are

10   going to be striking from the first 28 first and then from 109

11   to 171 for the alternates?

12            THE COURT:  So that is my understanding as well.  So

13   when we finish with the 12 jurors, then the alternates will be

14   stricken from 109 to 171.

15            MS. KOMATIREDDY:  Thank you, Judge.

16            THE COURT:  Then I should also let you know when we

17   have the jurors, I will seat them in reverse order just

18   because of the way the jurors are getting into the jury box.

19   I will call the alternates first and then I will call the

20   jurors.

21            I ask the parties once you have made your strikes on

22   the 12 jurors to come up and let me see it before you go into

23   the alternates.

24

25            (Continued on next page.)

Jury Selection                                    777

1  (Continuing.)

2           (Prospective jurors enter.)

3           THE COURT:  Good afternoon, everybody.  It's great

4  to see you all again.

5           So, we're entering the next phase of the jury

6  selection.  This is where the lawyers get an opportunity to

7  strike people for reasons that they don't have to give

8  anybody.  So, they'll just make their choices and each side

9  will get turns and, so, you'll see them discussing and passing

10  a piece of paper back and forth.  They'll mark down the

11  numbers of the jurors.

12           I want to assure you, I know there are several of

13  you among this group who have told us of vacation plans.  We

14  haven't ignored you or we haven't ignored what you told us.

15  I've been assured by Judge Cogan, when he conducts the trial,

16  for those of you who have preexisting plans that you told us

17  about -- and I think there might be, like, a Thursday where

18  you need to go on a trip, where you'll be away for Thursday,

19  Friday, Saturday, Sunday and Thursday you won't be

20  available -- trial simply will not go forward on that day.

21           So, I think all of those things will be ironed out

22  at the beginning of the case when Judge Cogan meets with you

23  on Monday to figure out what those days are.  But I don't want

24  you to be sitting there nervous that you might have to cancel

25  your travel plans.  We heard you and that's been taken into

1   account.

2            We'll just ask you -- this may be slightly

3   uncomfortable because the lawyers will be looking at you and

4   may be staring at you as they make their choices.  People are

5   not going to be talking.  You don't need to talk, this will be

6   a silent process.  At some point, they'll confer with me and

7   tell me what the final composition looks like.  And once that

8   has happened, I will announce the twelve jurors and six

9   alternates.

10           So, all you have to do for this time is to sit

11  quietly as the lawyers make their decisions.  Since you're all

12  sitting so close together, if anybody wants a mask, raise your

13  hand and we'll hand you one.  It's up to you.

14           Why don't the lawyers start?

15           I think the peremptory challenge sheet is --

16  actually, it should start with the Government and then pass it

17  over when you exercise your strikes.

18           (Silent strikes exercised.)

19           (The following occurred at sidebar.)

20           THE COURT:  So, I see that the Government struck 6,

21  the Defendant struck 4 and 13; then the Defendant struck 78

22  and 80 and the Government struck 35; then the Government

23  struck 9, the Defendant struck 41 and 93; then the Defendant

24  struck 18 and 91, the Government struck 87; then the

25  Government struck 31, Defendant struck 36; Defendant struck 3,

```
                        Sidebar                      779
```

1    Government struck 97.

2           So, I'm just going to mark this on my sheet to see

3    who is left.  I have 21, 30, 45, 56, 61, 64, 67, 83, 89, 90,

4    101, 102.

5           Right?

6           MS. KOMATIREDDY:  Your Honor, I'll just check with

7    my notes.  I didn't bring them up here, if you don't mind.

8    Thank you.

9           (Pause in proceedings.)

10          THE COURT:  So, you can resume with the alternate

11   strikes starting from 109.

12          MS. KOMATIREDDY:  Thank you, Judge.

13          (Sidebar ends; silent strikes exercised.)

14          (The following occurred at sidebar.)

15          THE COURT:  For the alternates, I see the Government

16   struck 109 and the defense struck 116 and 128; then the

17   Government struck 136 and 138 and the defense struck 134.

18          So, the alternates will be 143, 158, 159, 160, 169,

19   and 171, in that order.

20          MS. KOMATIREDDY:  Thank you, Judge.

21          THE COURT:  I'll seat them in reverse order because

22   of way the box is set up.

23          Is there anything else?

24          MS. KOMATIREDDY:  Can we inquire as to procedure at

25   this point?

1          THE COURT:  Once I seat the jurors, I'll ask if

2     they're acceptable to you, and you'll hopefully say yes, and

3     I'll excuse all the other jurors.  And Ryan will escort those

4     selected jurors to the jury room and they will be briefed on

5     what happens next.

6          MS. KOMATIREDDY:  Okay.  We understand that the

7     marshals will have some sort of briefing procedures.

8          THE COURT:  Yes.

9          MS. KOMATIREDDY:  Just wanted to confirm.  Thank

10    you.

11         THE COURT:  There are no *Batson* challenges?

12         MS. KOMATIREDDY:  Not from the Government, your

13    Honor.

14         MR. DECASTRO:  Not from the defense.

15         THE COURT:  Thank you.

16         (Sidebar ends; in open court.)

17         THE COURT:  All right, so, we have our jury picked.

18    When I call your number, come up here, and Ryan will show you

19    the seat that you'll be seated in.  Because of the way of the

20    jury box is set up, I will be going backwards, basically, from

21    the back to the front.

22         Just hold on a second.

23         (Pause in proceedings.)

24         THE COURT:  Alternate Juror No.6 will be Juror 171.

25         Juror 169, you will be Alternate Juror No. 5.

Jury Selection                                        781

1              Juror 169?

2              In the back, are you Juror 169?

3              THE PROSPECTIVE JUROR:  No, that's not me.

4              THE COURT:  Where is Juror 169?

5              Oh, dear.  Juror 169 is not here.

6              THE COURTROOM DEPUTY:  Want me to check outside?

7              THE COURT:  Yes, could you do that?

8              Sir, what number are you?

9              THE PROSPECTIVE JUROR:  160.

10             THE COURT:  Okay.  Never a dull moment.

11             (Pause in proceedings.)

12             THE COURT:  So, Juror 169 was seated outside.  Let

13    me just check with the parties to make sure there wasn't any

14    confusion about her not being present here.

15             (The following occurred at sidebar.)

16             THE COURT:  I apologize for that.  I thought

17    everybody was accounted for.

18             Does this make a difference in your choices?

19             MS. KOMATIREDDY:  No, Judge.

20             MR. DECASTRO:  No, Judge.

21             THE COURT:  Good.  Thank you.

22             (Sidebar ends; in open court.)

23             THE COURT:  Notwithstanding this, we're fine.

24             Juror No. 169, you are chosen as Alternate No. 5.

25    Ryan will show you where to go.

1          THE COURTROOM DEPUTY:  I'll show you where to sit.

2          THE COURT:  And Juror 160, you're Alternate No. 4.

3   Sir, you're Alternate No. 4.

4          Juror 159, you're Alternate No. 3.

5          Juror 158, you're Alternate Juror No. 2.

6          And Juror 143, you are Alternate Juror No. 1.

7          Then we will get to the twelve jurors.  Again, I'll

8   be going backwards.

9          Juror 102, yes, come up please.

10          Juror 101, Juror 90 --

11          Juror 90?  Okay.

12          Juror 89, Juror 83, Juror 67, Juror 64, Juror 61,

13   Juror 56, Juror 45, Juror 30, Juror 21.

14          I feel like we're missing one.  Let me read out the

15   numbers.

16          Juror 21, raise your hand, please?

17          30, 45, 56, 61, 64, 67, 83, 89, 90, 101, and 102.

18          Then 143, 158, 159, 160, 169, and 171.

19          Great.

20          Is this jury acceptable to the Government?

21          MS. KOMATIREDDY:  Yes, your Honor.  Thank you very

22   much.

23          THE COURT:  Is this jury acceptable to the defense?

24          MR. DECASTRO:  Yes, Judge.

25          THE COURT:  Thank you very much.

1           For those of you whose numbers I did not call, thank

2    you so much for your patience and participation in this

3    process.  You are now free to go.  You can report to the

4    second floor.

5           Thank you again very much for your patience and your

6    participation and your service.

7           (Prospective jurors excused.)

8           THE COURT:  For those of you in the jury box,

9    congratulations.  Thank you for your willingness to serve and;

10   thank you in advance for the full attention that I know that

11   you will be giving to this case.  The case is important to all

12   the parties involved.

13          And I know that this is an imposition because it's a

14   lengthy trial, and I, on behalf of the court, truly appreciate

15   your being willing to serve.  And the fact that you've been

16   chosen means that the parties and the Court have full faith in

17   you that you will be impartial and fair jurors in this case

18   and that you will render a fair verdict.

19          So, the next thing is that Ryan will escort you to

20   the back and you'll see where the jury room is and then you'll

21   get some briefings about what the next steps are.

22          So, you'll escort them.

23          THE COURTROOM DEPUTY:  Yes, jurors.

24          All rise for the jury.

25          (Jury exits.)

Jury Selection                                      784

1          THE COURT:  All right.  Thank you, everybody.

2          Were there any loose ends?

3          I think Judge Cogan expects you to be ready for

4    trial Monday morning with your opening statements and then

5    your first witnesses.

6          Anything else?

7          MS. KOMATIREDDY:  Not from the Government, your

8    Honor.  Thank you very much and thank you for your patience

9    during this process.

10          MS. GOTLIB:  Thank you, your Honor.

11          MR. DECASTRO:  No, Judge.  Thank you so much.

12          THE COURT:  Thank you, everybody.

13

14          (Matter concluded.)

15

16

17

18

19

20

21

22

23

24

25

## $

**$1,500** [1] - 674:15
**$800** [1] - 674:20

## 1

**1** [2] - 647:6, 782:6
**10** [9] - 631:22, 631:23, 637:22, 637:23, 647:19, 757:21, 759:6, 759:17, 761:4
**10-year-old** [1] - 753:7
**10004** [1] - 625:2
**10038** [2] - 624:22, 625:5
**101** [14] - 760:14, 763:7, 763:9, 763:14, 763:19, 764:22, 764:23, 772:9, 772:10, 773:22, 775:24, 779:4, 782:10, 782:17
**102** [5] - 760:14, 776:8, 779:4, 782:9, 782:17
**103** [5] - 629:15, 652:19, 652:20, 652:23, 653:12
**109** [5] - 760:15, 776:10, 776:14, 779:11, 779:16
**10:00** [2] - 648:3, 648:4
**10:20** [2] - 668:2, 668:3
**111** [1] - 624:22
**11201** [1] - 624:18
**114** [6] - 629:15, 653:13, 653:19, 653:20, 653:22, 654:13
**116** [2] - 760:15, 779:16
**12** [3] - 690:15, 776:13, 776:22
**12-plus** [1] - 643:22
**122** [4] - 629:16, 654:14, 654:16, 658:3
**123** [6] - 629:4, 629:17, 658:4, 658:5, 658:6, 659:1
**128** [2] - 760:15, 779:16
**129** [11] - 666:4, 667:4, 668:20, 669:15, 672:10, 672:16, 672:19, 677:21, 678:7, 678:8, 678:12
**13** [2] - 760:13, 778:21
**13.3** [1] - 643:23
**134** [2] - 760:15, 779:17
**136** [2] - 760:15, 779:17
**138** [2] - 760:15, 779:17
**143** [13] - 666:4, 667:2, 668:22, 672:11, 672:16, 678:14, 678:15, 678:16, 679:12, 760:15, 779:18, 782:6, 782:18
**145** [4] - 663:25, 664:4, 664:7, 665:22
**147** [5] - 629:19, 659:2, 659:3, 659:6, 659:25
**15** [4] - 629:10, 630:17, 630:18, 631:14
**150** [7] - 668:21, 672:11, 672:16, 679:13, 679:14, 679:16, 683:5
**153** [15] - 629:19, 660:1, 660:4, 661:22, 672:17, 684:13, 684:14, 684:16, 684:17, 686:2, 686:13, 760:17, 764:5, 764:6
**158** [4] - 760:15, 779:18, 782:5, 782:18
**159** [13] - 668:21, 672:10, 672:16, 678:13, 679:13, 683:6, 683:8, 683:11,

684:5, 760:15, 779:18, 782:4, 782:18
**15th** [3] - 642:17, 642:19, 642:21
**160** [6] - 667:10, 760:15, 779:18, 781:9, 782:2, 782:18
**162** [9] - 629:19, 661:23, 661:24, 662:2, 663:19, 686:13, 687:5, 687:8, 689:5
**165** [4] - 689:6, 689:7, 689:11, 695:1
**1656** [1] - 686:25
**168** [8] - 695:2, 695:7, 695:8, 699:19, 701:1, 701:2, 701:3, 701:8
**169** [14] - 701:12, 701:14, 701:15, 705:10, 760:15, 779:18, 780:25, 781:1, 781:2, 781:4, 781:5, 781:12, 781:24, 782:18
**17** [5] - 629:10, 631:15, 631:16, 631:19, 632:12
**170** [14] - 706:1, 706:5, 706:6, 715:1, 715:7, 736:24, 737:2, 737:4, 738:9, 758:22, 758:23, 758:24, 758:25, 759:25
**171** [19] - 715:5, 715:7, 715:9, 715:12, 734:9, 736:21, 738:10, 749:12, 749:13, 756:1, 758:13, 760:16, 776:11, 776:14, 779:19, 780:24, 782:18
**172** [2] - 736:21, 736:23
**173** [8] - 738:11, 738:12, 738:13, 749:11, 760:19, 760:21, 760:25, 763:14
**18** [3] - 628:21, 760:13, 778:24
**18th** [2] - 642:19, 642:22
**19** [6] - 624:7, 629:10, 632:13, 632:14, 632:17, 633:15
**19-CR-00576(BMC** [1] - 624:3
**19-CR-576** [1] - 626:6
**1900** [1] - 625:2
**1:30** [2] - 761:25, 762:11
**1:45** [2] - 761:22, 761:24

## 2

**2** [2] - 683:22, 782:5
**20** [5] - 643:19, 757:17, 760:7, 761:5, 761:15
**2023** [1] - 624:7
**21** [4] - 760:13, 779:3, 782:13, 782:16
**225** [1] - 625:5
**23** [1] - 761:23
**25** [1] - 732:5
**27** [9] - 629:11, 633:16, 633:17, 633:18, 636:16, 638:19, 638:20, 639:1, 715:10
**271** [1] - 624:17
**28** [3] - 683:22, 776:9, 776:10
**2815** [1] - 625:5

## 3

**3** [4] - 760:13, 776:8, 778:25, 782:4
**30** [4] - 760:13, 779:3, 782:13, 782:17
**31** [2] - 760:13, 778:25

**32** [6] - 629:13, 637:10, 637:11, 637:12, 638:18, 701:12
**35** [9] - 629:13, 639:2, 639:3, 639:4, 639:21, 667:9, 667:11, 760:13, 778:22
**36** [7] - 639:22, 639:25, 640:1, 640:2, 645:5, 760:13, 778:25
**37** [1] - 695:6
**38** [1] - 686:14
**39** [2] - 686:9, 695:6

## 4

**4** [10] - 629:10, 629:20, 629:21, 629:24, 630:16, 695:5, 760:13, 778:21, 782:2, 782:3
**40** [17] - 643:22, 666:16, 686:8, 686:9, 686:10, 686:14, 701:12, 757:16, 758:19, 760:2, 760:22, 760:24, 762:3, 762:5, 763:15, 763:20, 776:5
**41** [3] - 729:3, 760:13, 778:23
**41st** [1] - 760:25
**43** [2] - 695:5, 758:8
**45** [6] - 701:12, 732:13, 760:13, 779:3, 782:13, 782:17
**47** [1] - 701:13
**48** [1] - 701:13
**4:00** [1] - 765:15

## 5

**5** [2] - 780:25, 781:24
**500** [1] - 769:25
**54** [2] - 728:25, 729:3
**55** [2] - 728:25, 729:3
**56** [4] - 760:14, 779:3, 782:13, 782:17
**5:00** [2] - 635:16, 635:17
**5:30** [3] - 635:17, 647:4, 648:5

## 6

**6** [3] - 647:4, 760:13, 778:20
**6-year-old** [1] - 753:7
**60** [3] - 643:21, 643:25, 644:7
**600** [1] - 770:1
**602** [1] - 624:22
**61** [4] - 760:14, 779:3, 782:12, 782:17
**62** [3] - 710:10, 710:11, 715:9
**62(c** [2] - 706:3, 710:12
**63** [1] - 706:2
**64** [4] - 760:14, 779:3, 782:12, 782:17
**66** [1] - 715:9
**67** [5] - 746:11, 760:14, 779:3, 782:12, 782:17
**69** [2] - 706:2, 715:10

## 7

**7** [2] - 643:17, 647:18
**70** [2] - 646:6, 646:7
**71** [2] - 701:12, 706:2

**718-613-2272** [1] - 625:8
**76** [1] - 629:13
**78** [2] - 760:14, 778:21
**7:00** [1] - 647:20
**7:30** [1] - 648:1

## 8

**80** [3] - 625:2, 760:14, 778:22
**83** [4] - 760:14, 779:3, 782:12, 782:17
**87** [2] - 760:14, 778:24
**89** [4] - 760:14, 779:3, 782:12, 782:17
**8:30** [3] - 647:5, 647:15, 660:10

## 9

**9** [2] - 760:13, 778:23
**90** [5] - 760:14, 779:3, 782:10, 782:11, 782:17
**91** [2] - 760:14, 778:24
**93** [10] - 629:4, 629:13, 645:6, 645:7, 645:10, 650:20, 667:20, 684:8, 760:14, 778:23
**97** [2] - 760:14, 779:1
**9:00** [2] - 624:8, 648:2
**9:30** [1] - 765:15

## A

**a.m** [1] - 624:8
**ability** [23] - 642:13, 643:12, 655:2, 679:23, 697:18, 703:12, 703:20, 704:14, 711:7, 712:2, 729:8, 730:24, 731:9, 732:20, 733:17, 738:21, 741:17, 755:15, 765:2, 765:7, 766:23, 770:7, 770:12
**able** [28] - 638:9, 647:22, 655:16, 655:17, 662:19, 667:22, 668:15, 674:20, 676:25, 709:25, 716:5, 717:1, 718:15, 719:4, 719:14, 728:13, 735:8, 758:2, 759:5, 765:4, 765:5, 765:18, 766:13, 769:8, 770:1, 770:18, 774:1, 774:18
**Absolutely** [1] - 676:15
**abstract** [2] - 724:4, 726:9
**accept** [6] - 710:22, 710:25, 716:5, 742:3, 746:2, 757:11
**acceptable** [3] - 780:2, 782:20, 782:23
**access** [5] - 626:8, 628:18, 660:22, 662:25, 706:24
**accident** [1] - 674:23
**accommodate** [6] - 647:23, 666:23, 668:16, 669:5, 671:22, 684:10
**accommodated** [2] - 668:10, 679:9
**accommodation** [3] - 651:22, 652:5, 773:14
**accommodations** [2] - 628:25, 648:15
**account** [4] - 713:12, 721:18, 721:24, 778:1
**accounted** [1] - 781:17

**accused** [1] - 728:2
**act** [2] - 682:2, 706:21
**activities** [2] - 733:16, 745:7
**ad** [1] - 708:13
**ADA** [1] - 701:21
**add** [6] - 628:7, 628:14, 629:6, 636:10, 672:17, 756:6
**added** [1] - 730:8
**addition** [1] - 629:3
**additional** [4] - 628:14, 686:4, 686:16, 723:5
**address** [5] - 627:24, 629:5, 647:14, 649:17, 684:10
**addressed** [2] - 641:15, 763:24
**Administration** [1] - 626:21
**advance** [2] - 766:5, 783:10
**advised** [1] - 628:5
**affect** [22] - 635:1, 642:11, 642:13, 644:17, 655:2, 680:8, 703:12, 703:20, 703:23, 704:14, 729:8, 729:15, 730:24, 731:8, 732:19, 733:14, 738:21, 739:7, 741:17, 765:23, 769:2
**affected** [1] - 769:4
**affects** [3] - 697:18, 731:17, 733:17
**afternoon** [4] - 647:6, 667:7, 758:10, 777:3
**AFTERNOON** [1] - 763:1
**afterwards** [3] - 638:5, 685:22, 699:14
**age** [4] - 636:5, 655:24, 656:1, 656:2
**agent** [2] - 626:20, 742:16
**Agent** [5] - 626:20, 669:24, 670:2, 670:23, 670:25
**agents** [1] - 764:15
**ago** [5] - 645:23, 664:12, 690:23, 696:1
**agree** [6] - 666:15, 679:4, 726:3, 731:19, 760:18, 761:2
**agreed** [1] - 761:20
**agreement** [6] - 638:2, 675:8, 700:23, 721:14, 721:23, 722:10
**ahead** [4] - 663:24, 667:1, 667:18, 724:8
**aid** [4] - 655:5, 655:7, 695:14, 695:17
**ALICE** [1] - 625:6
**allegation** [1] - 634:25
**allegations** [4] - 703:17, 730:6, 731:4, 731:9
**alleged** [3] - 680:11, 681:15, 682:8
**alleviate** [1] - 635:22
**allowed** [3] - 651:15, 722:7, 722:13
**almost** [3] - 635:7, 636:3, 706:17
**alter** [1] - 679:21
**alternate** [1] - 779:10
**Alternate** [8] - 780:24, 780:25, 781:24, 782:2, 782:3, 782:4, 782:5, 782:6
**alternates** [7] - 776:11, 776:13, 776:19, 776:23, 778:9, 779:15, 779:18
**amazed** [1] - 636:3
**AMERICA** [1] - 624:3
**America** [1] - 732:24
**amount** [7] - 742:19, 766:15, 769:19,

770:5, 770:11, 772:2, 775:5
**analyst** [1] - 645:25
**angry** [1] - 668:25
**announce** [1] - 778:8
**anonymity** [2] - 699:22, 699:25
**answer** [27] - 645:16, 645:18, 665:13, 666:7, 667:13, 672:17, 684:12, 686:6, 688:3, 694:10, 708:22, 710:24, 729:11, 734:15, 734:21, 735:15, 735:17, 736:22, 737:19, 738:1, 756:23, 758:2, 758:4, 759:4, 759:16, 764:11
**answered** [4] - 718:23, 729:10, 742:1, 754:4
**answers** [7] - 729:11, 734:13, 735:9, 758:14, 758:15, 758:22, 759:1
**anticipate** [1] - 688:1
**anxiety** [1] - 681:3
**anxious** [1] - 680:22
**anyway** [4] - 652:5, 672:4, 675:23, 686:5
**apart** [1] - 699:6
**apologize** [4] - 651:2, 651:18, 724:6, 781:16
**apologized** [1] - 671:5
**apparent** [1] - 713:22
**appearances** [1] - 626:16
**appeared** [1] - 670:24
**appliance** [1] - 709:8
**application** [1] - 756:9
**applied** [1] - 756:12
**apply** [4] - 702:15, 710:23, 716:8, 742:3
**appointment** [1] - 664:19
**appointments** [1] - 664:13
**appreciate** [10] - 643:6, 650:14, 656:24, 710:6, 726:9, 736:18, 771:2, 775:3, 775:15, 783:14
**approach** [1] - 666:12
**approached** [3] - 629:4, 668:19, 669:25
**appropriate** [3] - 712:12, 712:16, 726:13
**April** [5] - 642:19, 642:22, 642:24, 683:22, 769:6
**area** [1] - 686:23
**argues** [1] - 726:22
**arise** [1] - 769:9
**article** [1] - 759:5
**articulated** [1] - 735:4
**aside** [1] - 719:14
**assessing** [2] - 721:19, 743:23
**assessment** [1] - 731:18
**assessments** [1] - 771:7
**Assistant** [1] - 624:20
**assume** [3] - 637:20, 643:25, 738:23
**assumed** [1] - 723:12
**assuming** [1] - 637:19
**assumption** [1] - 674:5
**assurance** [3] - 669:10, 671:24, 684:25
**assurances** [1] - 772:20
**assure** [5] - 669:2, 671:20, 672:4,

672:15, 777:12
**assured** [4] - 671:17, 672:9, 679:2, 777:15
**assures** [1] - 681:7
**attachment** [2] - 716:11, 716:12
**attempt** [1] - 670:10
**attend** [1] - 707:3
**attended** [1] - 640:14
**attending** [1] - 708:13
**attention** [6] - 719:17, 741:25, 743:5, 775:17, 775:20, 783:10
**Attorney** [2] - 624:16, 624:20
**August** [1] - 664:12
**authority** [2] - 645:16, 645:19
**automatically** [1] - 713:13
**available** [8] - 693:1, 710:2, 738:1, 738:10, 766:21, 767:4, 773:11, 777:20
**average** [2] - 769:24, 770:5
**aware** [4] - 627:22, 714:6, 732:16, 733:10

## B

**bachelorette** [2] - 667:11, 667:12
**background** [1] - 744:1
**backwards** [2] - 780:20, 782:8
**bad** [5] - 676:20, 680:10, 681:9, 682:7, 773:18
**badge** [3] - 670:4, 670:25, 671:4
**bag** [1] - 706:7
**balance** [2] - 746:1, 746:23
**Bank** [1] - 732:24
**bar/tavern** [1] - 665:10
**based** [13] - 669:4, 681:25, 699:8, 700:24, 716:3, 716:9, 723:19, 725:7, 727:9, 727:12, 735:10, 742:9, 770:13
**basis** [3] - 709:15, 709:18, 757:14
**batch** [3] - 686:19, 686:21, 761:4
**bathroom** [2] - 696:3, 696:17
**Batson** [1] - 780:11
**battle** [1] - 645:14
**bears** [1] - 710:19
**BEFORE** [1] - 624:12
**beforehand** [1] - 646:8
**beginning** [5] - 696:16, 752:24, 757:2, 757:6, 777:22
**behalf** [1] - 783:14
**beliefs** [1] - 719:13
**belongings** [1] - 715:16
**best** [12] - 643:8, 655:23, 671:22, 674:7, 683:25, 712:23, 726:10, 728:9, 734:22, 735:21, 741:5, 755:15
**better** [9] - 627:19, 636:7, 646:8, 647:1, 657:13, 664:19, 704:5, 728:12, 760:11
**between** [5] - 643:14, 643:21, 644:20, 751:18, 775:5
**beyond** [14] - 710:19, 716:7, 722:24, 729:18, 729:25, 730:2, 731:13, 733:25, 741:10, 750:5, 750:19, 751:11, 751:14, 769:16

**bias** [2] - 742:24, 743:21
**biased** [2] - 742:9, 743:7
**biases** [3] - 713:21, 714:4, 714:5
**big** [6] - 648:5, 666:19, 674:15, 685:15, 685:17
**biggest** [1] - 652:5
**bills** [6] - 658:19, 693:9, 766:4, 769:7, 772:24, 772:25
**biopsy** [2] - 662:20, 688:10
**bit** [13] - 634:7, 634:12, 634:16, 655:14, 656:14, 658:19, 711:6, 712:14, 738:25, 742:23, 754:16, 768:14, 771:3
**block** [2] - 635:18, 749:2
**blocks** [1] - 635:17
**body** [1] - 648:5
**booked** [1] - 676:25
**born** [1] - 701:25
**Boston** [2] - 667:2, 678:25
**bothered** [1] - 773:19
**bothering** [1] - 681:1
**box** [6] - 627:25, 715:13, 776:18, 779:22, 780:20, 783:8
**break** [14] - 654:5, 667:15, 667:19, 667:25, 668:12, 671:13, 687:3, 759:12, 761:10, 761:12, 761:13, 763:7, 771:11
**breakdown** [1] - 773:1
**breaking** [1] - 762:8
**breast** [2] - 687:16, 688:13
**BREON** [1] - 624:16
**brief** [2] - 745:18, 767:13
**briefed** [1] - 780:4
**briefing** [1] - 780:7
**briefings** [1] - 783:21
**bring** [18] - 628:25, 629:8, 629:20, 637:9, 671:23, 686:19, 686:22, 700:25, 714:4, 719:16, 732:7, 749:14, 762:3, 763:10, 770:21, 775:16, 776:6, 779:7
**bringing** [5] - 672:14, 727:14, 727:16, 730:11, 743:5
**brings** [1] - 711:21
**Broad** [1] - 625:2
**Broadway** [1] - 625:5
**broke** [1] - 771:23
**Brooklyn** [5] - 624:6, 624:18, 646:15, 646:17, 732:9
**brother** [3] - 708:19, 708:23, 709:24
**brother's** [1] - 709:1
**brought** [7] - 664:20, 672:14, 698:11, 714:17, 735:17, 763:20, 775:19
**budget** [1] - 654:6
**burden** [7] - 674:15, 694:11, 710:19, 722:24, 750:12, 751:6, 751:25
**bus** [1] - 774:19
**busiest** [1] - 641:16
**business** [10] - 641:17, 641:22, 642:1, 706:21, 709:8, 709:13, 709:21, 738:19
**businesses** [3] - 642:20, 642:24, 739:2

**busy** [1] - 641:24
**buying** [3] - 766:25, 767:2, 767:3
**BY** [4] - 624:18, 624:23, 625:3, 625:6

## C

**Cadman** [1] - 624:17
**Cain** [5] - 626:20, 669:24, 670:2, 670:23, 670:25
**calculation** [1] - 686:13
**cancel** [2] - 669:2, 669:6, 777:24
**cancer** [1] - 664:11
**cannot** [5] - 655:7, 673:24, 673:25, 690:1, 720:1
**captain** [1] - 634:17
**captured** [2] - 699:23, 700:9
**car** [12] - 674:22, 674:23, 674:24, 766:4, 766:5, 766:9, 769:13, 769:14, 771:23, 772:25, 774:17
**carcinoma** [1] - 687:15
**cards** [1] - 732:24
**care** [3] - 643:4, 724:22, 766:10
**career** [1] - 676:20
**careful** [2] - 627:9, 627:14
**cargo** [1] - 702:6
**cars** [2] - 717:25
**cartel** [3] - 634:15, 635:3
**case** [91] - 626:20, 627:15, 627:17, 628:15, 634:1, 636:7, 636:8, 637:24, 642:14, 643:12, 644:7, 644:18, 646:1, 646:4, 646:23, 647:3, 647:6, 650:2, 657:20, 669:11, 674:1, 679:3, 680:9, 694:13, 695:22, 697:19, 698:8, 699:8, 703:17, 703:20, 704:3, 704:9, 704:12, 704:15, 704:21, 710:9, 710:22, 711:7, 712:3, 712:12, 712:14, 714:9, 716:7, 716:21, 718:16, 718:21, 719:4, 719:14, 719:15, 724:11, 727:20, 729:8, 729:9, 729:18, 729:24, 730:24, 731:4, 731:9, 731:21, 735:18, 738:22, 741:17, 748:14, 748:16, 749:3, 750:5, 750:25, 751:23, 752:5, 752:8, 752:11, 752:12, 752:18, 754:7, 754:14, 754:20, 754:24, 755:3, 755:19, 757:3, 758:10, 758:21, 760:9, 765:8, 771:1, 777:22, 783:11, 783:17
**cases** [1] - 709:12
**CASTRO** [73] - 624:21, 624:23, 626:23, 627:5, 627:12, 628:4, 631:5, 631:8, 632:5, 633:4, 636:12, 636:25, 637:4, 638:10, 639:17, 639:22, 639:25, 641:5, 642:10, 649:5, 652:4, 652:9, 653:6, 654:7, 656:17, 658:21, 659:19, 662:12, 665:16, 706:2, 714:23, 715:2, 715:6, 728:17, 728:22, 728:25, 729:3, 732:13, 734:3, 734:10, 735:23, 736:3, 736:13, 736:18, 737:1, 746:7, 746:10, 746:16, 749:7, 755:22, 756:2, 756:4, 756:20, 757:20, 757:23, 758:3, 758:17, 759:10, 760:17, 760:19,

760:22, 760:25, 761:13, 761:20, 763:23, 764:2, 764:5, 764:8, 764:11, 767:12, 767:24, 772:12, 773:17
**Castro** [3] - 626:24, 706:4, 756:3
**casual** [1] - 634:3
**CAUSE** [1] - 624:12
**caution** [1] - 627:17
**Celtics** [1] - 667:3
**certain** [5] - 651:21, 675:5, 679:23, 691:12, 731:17
**certainly** [5] - 663:12, 711:13, 736:1, 736:15, 751:22
**Cesar** [1] - 626:23
**CESAR** [2] - 624:21, 624:23
**chair** [2] - 706:7, 715:14
**challenge** [9] - 644:13, 658:20, 665:12, 734:10, 756:5, 756:6, 756:24, 757:15, 778:15
**challenges** [2] - 761:9, 780:11
**chamber's** [1] - 629:4
**chambers** [2] - 628:5
**chance** [2] - 669:7, 696:18
**change** [1] - 649:1
**Chapo** [1] - 741:14
**charge** [4] - 722:21, 723:14, 723:19, 726:19
**charged** [2] - 698:1, 698:12
**charges** [4] - 698:11, 723:14, 738:23, 740:17
**chart** [2] - 662:19, 762:5
**chat** [2] - 759:5, 759:19
**check** [7] - 651:6, 666:14, 700:9, 710:14, 779:6, 781:6, 781:13
**checked** [1] - 666:5
**checking** [1] - 694:2
**child** [2] - 753:14, 753:15
**Chinese** [1] - 709:9
**choices** [3] - 777:8, 778:4, 781:18
**chose** [1] - 756:22
**chosen** [7] - 635:8, 635:19, 696:1, 696:2, 737:12, 781:24, 783:16
**circled** [2] - 715:10, 753:10
**circumstance** [2] - 644:6, 734:23
**circumstances** [1] - 688:16
**city** [1] - 673:1
**City's** [1] - 676:4
**civic** [1] - 643:6
**civil** [2] - 751:3, 751:6
**clarification** [1] - 643:2
**clarify** [4] - 658:11, 724:1, 748:9, 764:12
**clear** [5] - 652:14, 682:17, 725:15, 725:16, 752:12
**clearly** [2] - 735:20, 754:18
**clerk** [4] - 668:18, 738:6, 763:8, 764:15
**CLERK** [2] - 678:14, 736:24
**client** [2] - 641:25, 734:18
**clientele** [1] - 709:9
**clients** [2] - 641:21, 642:23
**close** [10] - 684:8, 697:4, 697:24,

702:10, 711:14, 711:15, 753:20, 753:21, 757:16, 778:12
**closely** [1] - 730:7
**cloud** [1] - 770:17
**co** [3] - 626:19, 651:13, 675:17
**co-counsel** [2] - 626:19, 651:13
**co-union** [1] - 675:17
**Coast** [1] - 707:12
**cocaine** [4] - 681:12, 681:13, 704:12, 742:19
**Cogan** [20] - 627:19, 627:24, 628:25, 666:5, 666:15, 666:20, 666:23, 666:25, 668:1, 669:8, 671:13, 671:17, 677:6, 679:2, 682:1, 724:17, 733:21, 777:15, 777:22, 784:3
**Cogan's** [3] - 625:8, 667:16, 668:9
**collapse** [1] - 647:25
**collective** [1] - 668:9
**comfortable** [9] - 671:25, 689:19, 701:17, 706:9, 715:21, 715:22, 757:18, 761:5, 761:15
**coming** [5] - 640:8, 683:1, 741:1, 766:18, 773:23
**comments** [1] - 745:25
**committed** [2] - 644:3, 722:9
**committing** [1] - 681:15
**communicate** [2] - 708:15, 764:14
**communications** [1] - 668:18
**community** [1] - 711:23
**commute** [12] - 646:4, 646:11, 646:22, 651:4, 651:24, 674:25, 684:10, 706:12, 731:25, 732:10, 755:8, 774:19
**company** [5] - 685:15, 685:17, 685:18, 685:20, 759:6
**company's** [1] - 658:12
**complete** [2] - 749:2, 756:10
**completely** [1] - 688:22
**compliance** [1] - 641:21
**complicated** [1] - 694:20
**complication** [1] - 665:9
**composition** [1] - 773:7
**compromised** [1] - 700:1
**concentrate** [4] - 765:7, 770:10, 770:18, 771:7
**concern** [17] - 628:1, 628:11, 635:13, 671:21, 679:8, 684:9, 689:23, 714:8, 732:1, 734:17, 735:15, 736:3, 736:7, 736:10, 741:10, 746:4, 772:14
**concerned** [12] - 634:5, 635:4, 635:20, 655:15, 668:24, 699:21, 702:9, 717:15, 719:12, 747:9, 748:1, 748:8
**concerning** [2] - 635:12, 636:6, 665:14
**concerns** [9] - 650:24, 654:15, 683:2, 684:10, 689:15, 706:14, 712:15, 718:19, 720:13
**concluded** [1] - 784:14
**conclusion** [1] - 757:5
**conclusions** [1] - 719:23
**conducted** [1] - 757:9
**conducts** [1] - 777:15

**confer** [1] - 778:6
**conference** [2] - 746:17, 768:20
**confidence** [1] - 735:7
**confident** [2] - 736:5, 758:2
**confirm** [7] - 669:7, 671:13, 686:11, 700:19, 776:8, 776:9, 780:9
**confirming** [1] - 768:2
**confusion** [1] - 781:14
**congratulations** [1] - 783:9
**conscientious** [2] - 773:5, 773:6
**consequences** [1] - 746:5
**consider** [6] - 628:24, 641:23, 718:8, 724:17, 745:15, 750:11
**consideration** [2] - 703:1, 722:14
**considering** [1] - 644:7
**consistent** [1] - 770:9
**consistently** [3] - 627:23, 655:17, 656:8
**constitute** [1] - 681:25
**construction** [2] - 711:17, 711:19
**consult** [1] - 688:13
**contact** [2] - 668:1, 759:16
**contacted** [1] - 763:7
**context** [1] - 757:1
**continue** [2] - 627:17, 687:7
**Continued** [6] - 625:1, 665:23, 705:12, 744:16, 762:13, 776:25
**Continuing** [3] - 666:1, 745:1, 777:1
**continuously** [1] - 642:23
**conversation** [2] - 650:1, 669:4
**convey** [3] - 668:14, 671:14, 687:6
**conveying** [1] - 672:1
**convict** [9] - 723:4, 723:19, 725:7, 726:15, 729:17, 729:23, 730:2, 751:3
**conviction** [1] - 722:23
**convinced** [1] - 750:18
**cooperate** [1] - 722:10
**cooperating** [2] - 722:22, 723:21
**cooperation** [1] - 722:12
**coordinate** [1] - 710:4
**corporations** [1] - 642:20
**Correct** [9] - 673:10, 673:13, 673:16, 675:10, 675:22, 676:18, 676:21, 704:19
**correct** [19] - 640:6, 640:13, 640:20, 640:23, 640:25, 641:2, 642:4, 644:4, 644:14, 674:3, 728:5, 728:7, 749:25, 752:9, 752:20, 765:12, 766:11, 767:3, 767:7
**correctly** [2] - 700:10, 710:16
**corroborating** [1] - 721:10
**corruption** [1] - 730:6
**cost** [3] - 765:6, 765:24, 769:3
**costs** [10] - 765:6, 765:24, 766:2, 766:3, 766:6, 769:6, 771:20, 772:2, 774:4
**coughing** [1] - 635:10
**counsel** [3] - 626:15, 626:19, 651:13
**counselor** [1] - 671:7
**count** [1] - 757:23
**counterfeit** [1] - 738:20

**country** [3] - 727:14, 727:16, 734:21
**County** [1] - 640:9
**couple** [13] - 658:12, 663:9, 666:2, 666:4, 668:5, 695:11, 708:10, 710:8, 734:11, 749:18, 760:1, 761:19, 763:23
**course** [14] - 627:9, 632:4, 654:5, 655:15, 665:2, 670:8, 671:11, 722:8, 724:2, 745:2, 752:4, 753:5, 753:8, 761:7
**COURT** [792] - 624:1, 626:4, 626:22, 627:1, 627:11, 627:13, 628:6, 628:9, 628:16, 628:21, 629:3, 629:22, 629:24, 630:3, 630:5, 630:7, 630:9, 630:12, 630:15, 630:17, 630:19, 630:21, 630:24, 631:2, 631:6, 631:10, 631:12, 631:15, 631:17, 631:19, 631:23, 631:25, 632:2, 632:7, 632:11, 632:13, 632:15, 632:17, 632:19, 632:24, 633:1, 633:5, 633:8, 633:10, 633:14, 633:16, 633:18, 633:20, 634:8, 634:12, 634:21, 634:24, 635:5, 635:13, 635:21, 636:9, 636:13, 636:17, 637:2, 637:6, 637:8, 637:12, 637:15, 637:22, 638:3, 638:6, 638:12, 638:15, 638:20, 638:22, 638:25, 639:2, 639:4, 639:6, 639:8, 639:12, 639:15, 639:19, 639:24, 640:2, 640:4, 640:11, 640:15, 640:18, 640:21, 640:24, 641:1, 641:3, 641:6, 641:9, 641:12, 641:14, 642:5, 642:9, 642:12, 643:1, 643:4, 643:8, 643:25, 644:9, 644:13, 644:15, 644:21, 644:23, 644:25, 645:2, 645:6, 645:8, 645:10, 645:13, 645:17, 645:20, 646:10, 646:20, 646:24, 647:7, 647:10, 647:13, 647:17, 647:21, 648:6, 648:9, 648:12, 648:15, 648:18, 648:21, 648:25, 649:4, 649:8, 649:11, 649:14, 649:17, 649:22, 650:5, 650:7, 650:10, 650:14, 650:17, 650:21, 651:3, 651:8, 651:11, 651:16, 651:20, 652:2, 652:8, 652:12, 652:21, 652:23, 653:1, 653:3, 653:8, 653:11, 653:13, 653:16, 653:19, 653:22, 654:1, 654:3, 654:9, 654:12, 654:14, 654:17, 654:19, 654:21, 655:1, 655:5, 655:9, 655:14, 655:23, 655:25, 656:2, 656:4, 656:7, 656:10, 656:16, 656:18, 656:22, 656:24, 657:6, 657:9, 657:12, 657:16, 657:19, 657:22, 657:24, 658:1, 658:4, 658:6, 658:9, 658:16, 658:23, 659:2, 659:4, 659:6, 659:8, 659:11, 659:14, 659:16, 659:21, 659:24, 660:2, 660:4, 660:6, 660:12, 660:15, 660:19, 660:23, 661:4, 661:7, 661:9, 661:14, 661:18, 661:21, 661:23, 661:25, 662:2, 662:5, 662:8, 662:10, 662:14, 662:17, 662:23, 663:2, 663:5, 663:8, 663:12, 663:20, 663:23, 663:25, 664:3, 664:5, 664:7, 664:17, 665:2,

665:4, 665:17, 665:21, 666:11, 666:22, 667:6, 667:10, 667:13, 667:17, 668:3, 668:7, 668:13, 669:7, 669:15, 669:22, 670:13, 670:15, 670:19, 670:22, 671:7, 671:9, 671:12, 671:16, 672:5, 672:20, 673:9, 673:11, 673:14, 673:17, 673:20, 674:6, 674:12, 674:18, 675:1, 675:4, 675:11, 675:14, 675:19, 675:23, 676:6, 676:11, 676:14, 676:16, 676:19, 676:22, 677:5, 677:18, 677:22, 678:6, 678:8, 678:11, 678:13, 678:15, 678:17, 678:19, 678:22, 678:25, 679:2, 679:8, 679:11, 679:13, 679:15, 679:18, 680:6, 680:14, 680:17, 680:20, 681:2, 681:6, 681:11, 681:19, 681:23, 682:4, 682:13, 682:19, 682:25, 683:4, 683:6, 683:9, 683:11, 683:17, 683:23, 684:4, 684:6, 684:17, 684:24, 685:2, 685:6, 685:10, 685:16, 685:20, 685:24, 686:11, 686:13, 687:2, 687:5, 687:9, 687:12, 687:18, 687:22, 687:25, 688:5, 688:15, 688:20, 688:25, 689:3, 689:6, 689:8, 689:11, 689:13, 689:18, 689:22, 690:3, 690:6, 690:10, 690:17, 690:21, 691:3, 691:10, 691:15, 691:25, 692:2, 692:10, 692:18, 692:25, 693:4, 693:7, 693:11, 693:16, 693:19, 693:24, 694:4, 694:14, 694:17, 694:21, 694:24, 695:2, 695:8, 695:11, 695:16, 695:19, 695:25, 696:5, 696:7, 696:11, 696:14, 696:19, 696:23, 697:7, 697:10, 697:13, 697:17, 697:21, 698:4, 698:6, 698:10, 698:14, 698:17, 698:22, 699:1, 699:5, 699:8, 699:11, 699:15, 699:17, 699:20, 700:2, 700:6, 700:10, 700:18, 700:21, 700:25, 701:3, 701:7, 701:11, 701:15, 701:19, 701:23, 702:1, 702:3, 702:9, 702:18, 702:23, 703:3, 703:5, 703:10, 703:12, 703:16, 703:19, 703:24, 704:2, 704:5, 704:8, 704:11, 704:17, 704:20, 704:23, 705:1, 705:4, 705:8, 706:1, 706:6, 707:6, 707:10, 707:13, 707:17, 707:24, 708:4, 708:16, 708:21, 709:4, 709:15, 709:24, 710:5, 710:15, 711:1, 711:25, 712:8, 712:11, 712:24, 713:5, 713:10, 713:18, 714:3, 714:13, 714:19, 714:24, 715:4, 715:7, 715:18, 715:20, 715:25, 716:3, 716:11, 716:15, 716:18, 717:5, 717:7, 717:9, 717:12, 717:22, 718:2, 718:5, 718:15, 718:18, 718:24, 719:2, 719:5, 719:10, 719:21, 719:24, 720:4, 720:7, 720:9, 720:12, 720:17, 720:21, 720:23, 720:25, 721:3, 721:5, 721:9, 721:17, 722:2, 722:6, 722:17, 722:20, 723:8, 723:13, 723:17, 724:1, 724:4, 724:6, 724:9, 724:13, 724:16, 724:20, 724:25, 725:2, 725:4, 725:6, 725:11,

725:14, 725:21, 725:24, 726:5, 726:8, 726:12, 726:18, 726:22, 727:3, 727:9, 727:11, 727:15, 727:19, 727:22, 728:5, 728:7, 728:10, 728:12, 728:16, 728:20, 728:24, 729:1, 729:4, 729:7, 729:13, 729:15, 729:22, 730:3, 730:14, 730:17, 730:21, 730:23, 731:3, 731:8, 731:12, 731:14, 731:16, 731:21, 731:24, 732:4, 732:12, 732:14, 733:2, 733:7, 733:10, 733:13, 733:19, 734:1, 734:5, 735:1, 735:19, 735:24, 736:11, 736:14, 736:19, 737:2, 737:5, 737:7, 737:9, 737:16, 737:21, 737:23, 738:2, 738:6, 738:10, 738:13, 738:15, 738:18, 739:8, 739:13, 739:16, 739:19, 739:24, 740:2, 740:7, 740:9, 740:13, 740:15, 740:21, 740:23, 741:5, 741:13, 741:24, 742:7, 742:12, 743:1, 743:4, 743:13, 743:19, 743:22, 744:3, 744:7, 744:10, 745:5, 745:7, 745:10, 745:13, 745:16, 745:20, 746:6, 746:8, 746:15, 746:19, 746:21, 746:25, 747:3, 747:6, 747:9, 747:12, 747:15, 747:19, 747:22, 748:1, 748:5, 748:7, 748:12, 748:16, 748:18, 748:21, 749:1, 749:6, 749:9, 749:12, 749:14, 749:16, 749:18, 750:1, 750:3, 750:23, 751:1, 751:5, 751:9, 751:11, 751:15, 751:18, 751:22, 752:4, 752:7, 752:10, 752:15, 752:17, 752:21, 752:23, 753:2, 753:8, 753:10, 753:14, 753:17, 753:21, 753:23, 754:1, 754:3, 754:10, 754:13, 754:16, 754:22, 754:25, 755:2, 755:5, 755:9, 755:12, 755:17, 755:21, 755:23, 756:3, 756:17, 756:25, 757:22, 757:25, 758:4, 758:12, 758:18, 758:22, 758:25, 759:9, 759:15, 759:22, 760:1, 760:21, 760:24, 761:1, 761:3, 761:15, 761:21, 762:11, 763:5, 764:1, 764:4, 764:6, 764:10, 764:13, 764:18, 764:22, 764:24, 765:10, 765:13, 765:16, 765:18, 765:21, 766:1, 766:8, 766:12, 766:17, 766:20, 766:25, 767:4, 767:8, 767:11, 767:15, 767:23, 768:4, 768:9, 768:18, 768:22, 768:25, 769:10, 769:13, 769:16, 769:19, 769:23, 770:2, 770:6, 770:18, 770:22, 771:2, 771:5, 771:10, 771:14, 771:16, 771:18, 771:23, 772:4, 772:7, 772:10, 772:21, 773:9, 773:20, 773:23, 774:7, 774:10, 774:14, 774:22, 775:6, 775:9, 775:11, 775:15, 775:19, 775:22, 775:25, 776:12, 776:16, 777:3, 778:20, 779:10, 779:15, 779:21, 780:1, 780:8, 780:11, 780:15, 780:17, 780:24, 781:4, 781:7, 781:10, 781:12, 781:16, 781:21, 781:23, 782:2, 782:23, 782:25, 783:8, 784:1, 784:12
**Court** [25] - 625:7, 625:8, 627:9, 629:5,

634:22, 636:11, 636:19, 636:20, 640:7, 640:14, 640:15, 641:15, 641:16, 642:13, 645:11, 649:6, 656:23, 661:10, 683:2, 707:18, 710:6, 720:14, 773:5, 775:8, 783:16

**court** [28] - 626:1, 626:10, 626:12, 626:14, 627:7, 636:20, 643:15, 646:1, 647:15, 650:7, 651:15, 669:23, 691:1, 696:21, 697:5, 698:23, 699:9, 700:8, 700:22, 731:18, 741:2, 746:18, 763:2, 768:21, 780:16, 781:22, 783:14

**Court's** [2] - 719:17, 775:17

**courthouse** [2] - 628:17, 670:18

**Courthouse** [2] - 624:5, 670:19

**courtroom** [16] - 628:19, 669:24, 670:1, 670:13, 670:15, 670:16, 690:4, 751:16, 751:19, 756:1, 759:25, 763:18, 764:14, 772:9, 775:24

**COURTROOM** [9] - 626:3, 626:5, 700:5, 715:16, 759:13, 763:4, 781:6, 782:1, 783:23

**cousin** [3] - 698:3, 698:7, 732:18

**cover** [1] - 774:5

**coverage** [1] - 730:6

**covered** [1] - 706:4

**COVID** [10] - 627:6, 628:3, 628:11, 628:18, 634:3, 635:4, 635:11, 635:14, 635:21, 636:5

**coworkers** [1] - 711:21

**create** [10] - 631:6, 633:1, 638:6, 643:11, 649:23, 653:3, 654:3, 658:16, 659:16, 762:5

**credentials** [1] - 626:12

**credibility** [1] - 721:19

**credit** [1] - 732:24

**crime** [7] - 681:25, 698:7, 722:9, 727:24, 729:8, 729:23, 751:3

**crimes** [4] - 680:11, 681:15, 682:9, 721:12

**criminal** [10] - 626:5, 682:2, 698:19, 703:13, 729:9, 730:11, 732:15, 733:3, 733:8, 733:11

**CRIMINAL** [1] - 624:12

**criminals** [2] - 730:20, 731:2

**critically** [1] - 743:23

**crossing** [1] - 717:24

**CRR** [1] - 625:7

**current** [1] - 733:8

## D

**dad** [2] - 706:21, 711:17

**daily** [2] - 709:15, 709:17

**data** [1] - 628:7

**date** [1] - 674:17

**daughter** [1] - 732:17

**daughter-in-law** [1] - 732:17

**days** [34] - 631:22, 631:23, 633:6, 637:19, 637:20, 637:22, 637:23, 638:1, 643:22, 658:14, 663:9, 665:7,

666:19, 675:5, 675:7, 675:15, 676:3, 676:5, 683:2, 692:5, 692:6, 692:7, 692:20, 692:21, 693:15, 693:16, 693:17, 759:6, 759:7, 759:8, 759:17, 773:25, 777:23

**DE** [73] - 624:21, 624:23, 626:23, 627:5, 627:12, 628:4, 631:5, 631:8, 632:5, 633:4, 636:12, 636:25, 637:4, 638:10, 639:17, 639:22, 639:25, 641:5, 642:10, 649:5, 652:4, 652:9, 653:6, 654:7, 656:17, 658:21, 659:19, 662:12, 665:16, 706:2, 714:23, 715:2, 715:6, 728:17, 728:22, 728:25, 729:3, 732:13, 734:3, 734:10, 735:23, 736:3, 736:13, 736:18, 737:1, 746:7, 746:10, 746:16, 749:7, 755:22, 756:2, 756:4, 756:20, 757:20, 757:23, 758:3, 758:17, 759:10, 760:17, 760:19, 760:22, 760:25, 761:13, 761:20, 763:23, 764:2, 764:5, 764:8, 764:11, 767:12, 767:24, 772:12, 773:17

**De** [1] - 626:23

**de** [5] - 670:9, 706:4, 742:23, 743:6, 756:3

**de-fund** [2] - 742:23, 743:6

**DEA** [1] - 742:16

**deadline** [1] - 642:21

**deadlines** [4] - 641:18, 641:19, 641:25, 642:17

**deafness** [2] - 654:24, 655:4

**deal** [3] - 666:20, 674:11, 747:7

**dear** [1] - 781:5

**debate** [1] - 682:6

**DECASTRO** [22] - 667:9, 667:11, 671:6, 672:2, 677:17, 677:25, 682:24, 685:14, 688:23, 693:23, 695:5, 699:12, 700:14, 700:17, 700:23, 701:9, 701:12, 705:6, 780:14, 781:20, 782:24, 784:11

**December** [1] - 674:23

**decide** [10] - 681:23, 682:4, 682:9, 699:8, 719:4, 722:14, 739:25, 746:4, 747:4, 747:13

**decision** [22] - 678:24, 679:24, 722:3, 726:14, 726:15, 726:19, 726:23, 726:25, 727:6, 727:8, 739:17, 739:19, 740:3, 740:20, 740:24, 741:7, 741:9, 746:1, 746:22, 746:25, 747:23, 750:4

**decisions** [1] - 778:11

**declared** [1] - 673:2

**decrease** [1] - 766:20

**deemed** [1] - 626:14

**defendant** [11] - 624:9, 626:2, 716:5, 717:2, 717:9, 735:18, 736:16, 754:7, 754:13, 757:12, 763:3

**Defendant** [2] - 624:21, 625:4, 698:11, 778:21, 778:23, 778:25

**defense** [10] - 627:4, 627:6, 650:21, 677:23, 732:16, 733:11, 779:16, 779:17, 780:14, 782:23

**defer** [7] - 636:11, 636:19, 636:20, 636:24, 649:6, 652:18, 727:4

**definitely** [4] - 638:9, 674:8, 675:14, 743:17

**definitive** [2] - 759:4, 759:16

**defunding** [1] - 745:10

**degrees** [1] - 747:20

**delay** [2] - 641:21, 667:24

**deliberate** [2] - 690:13, 740:25

**deliberation** [2] - 628:23, 680:8

**demeanor** [5] - 721:20, 739:11, 739:21, 742:9, 744:8

**denial** [1] - 626:13

**denied** [1] - 758:13

**department** [1] - 634:17

**deputy** [4] - 667:16, 668:1, 668:9, 763:16

**DEPUTY** [9] - 626:3, 626:5, 700:5, 715:16, 759:13, 763:4, 781:6, 782:1, 783:23

**descent** [6] - 711:3, 711:12, 712:2, 713:1, 713:2, 713:6, 713:7

**describing** [3] - 719:8, 772:23, 774:7

**description** [1] - 634:16

**despite** [1] - 772:20

**destroys** [1] - 680:16

**detailed** [1] - 773:3

**developments** [1] - 762:8

**device** [1] - 771:14

**diagnosed** [1] - 664:11

**difference** [4] - 751:18, 751:24, 752:1, 781:18

**different** [14] - 628:14, 647:11, 702:6, 702:13, 702:15, 730:3, 730:15, 747:20, 751:6, 752:8, 753:19, 757:5, 757:6, 775:25

**differently** [1] - 713:3

**difficult** [6] - 644:6, 647:21, 706:18, 706:24, 707:3, 726:10

**dig** [1] - 771:3

**diligent** [1] - 749:3

**Diouf** [1] - 626:19

**DIOUF** [1] - 624:20

**dip** [1] - 768:7

**direct** [1] - 769:8

**directly** [1] - 671:24

**disagree** [3] - 725:24, 756:13, 757:10

**disagreed** [1] - 757:10

**disagreement** [1] - 761:1

**disagrees** [1] - 756:8

**disclose** [1] - 651:9

**discrepancy** [1] - 760:6

**discuss** [9] - 627:18, 649:18, 656:20, 685:22, 699:14, 699:20, 702:7, 720:14, 733:25

**discussed** [4] - 636:23, 666:13, 668:11, 730:8

**discussing** [1] - 777:9

**discussion** [4] - 651:4, 677:11, 677:14,

756:25
**discussions** [1] - 772:10
**disrespect** [1] - 717:15
**disrupt** [1] - 641:25
**disruption** [1] - 641:20
**distance** [1] - 627:20
**distract** [1] - 635:14
**distracted** [1] - 772:20
**distraction** [1] - 649:24
**distractions** [1] - 765:8
**distress** [1] - 772:3
**distribution** [1] - 681:12
**DISTRICT** [2] - 624:1, 624:1
**District** [1] - 624:17
**docket** [1] - 626:6
**doctor** [8] - 662:19, 663:1, 663:9, 663:14, 663:16, 687:14, 688:7, 708:11
**doctors'** [1] - 664:13
**document** [1] - 739:5
**dollar** [1] - 769:19
**domestic** [1] - 664:11
**Dominican** [2] - 667:7, 667:10
**done** [11] - 638:1, 644:2, 651:23, 681:17, 681:20, 681:21, 684:1, 741:16, 758:11, 760:2, 763:19
**door** [14] - 628:19, 648:18, 651:11, 651:16, 651:17, 651:20, 651:25, 652:1, 696:4
**door-to-door** [2] - 648:18, 651:11
**doubt** [7] - 647:5, 710:19, 716:7, 722:25, 729:19, 729:25, 730:2, 750:5, 750:19, 751:11, 751:14, 757:13
**down** [18] - 635:18, 646:5, 646:9, 648:22, 652:6, 657:14, 657:22, 663:15, 666:18, 695:12, 700:3, 732:23, 754:19, 759:22, 769:3, 771:21, 771:23, 777:10
**downsides** [1] - 773:13
**Downstairs** [2] - 670:14, 670:17
**downstairs** [8] - 635:10, 661:9, 686:22, 701:5, 737:17, 738:5, 760:8, 761:5
**downtown** [1] - 646:15
**drag** [1] - 648:5
**dramatic** [2] - 648:8, 648:9
**drive** [3] - 646:16, 647:1, 649:12
**driver** [1] - 732:11
**driving** [4] - 646:11, 646:25, 703:6, 703:9
**dropped** [1] - 649:15
**drove** [1] - 646:14
**drug** [3] - 681:12, 703:16, 703:17
**Drug** [1] - 626:20
**drugs** [9] - 634:18, 680:9, 681:9, 682:7, 704:15, 727:14, 727:16, 734:21
**drunk** [2] - 703:6, 703:8
**due** [1] - 769:5
**DUI** [1] - 703:10
**dull** [1] - 781:10
**duodenal** [1] - 664:11

**During** [1] - 675:15
**during** [13] - 642:11, 673:5, 673:14, 677:11, 691:18, 708:2, 762:8, 766:21, 767:4, 767:24, 768:7, 771:23, 784:9
**duties** [1] - 643:6
**duty** [16] - 632:20, 637:18, 639:9, 640:5, 642:2, 658:13, 658:15, 675:6, 676:7, 692:14, 693:1, 693:11, 704:18, 707:3, 707:15, 759:7

# E

**e-mail** [2] - 677:1, 737:11
**E-mail** [1] - 625:9
**early** [3] - 649:19, 650:7, 664:16
**early-stage** [1] - 664:16
**earn** [1] - 770:1
**ease** [1] - 741:6
**easier** [2] - 647:13, 694:22
**East** [1] - 624:17
**EASTERN** [1] - 624:1
**Eastern** [1] - 624:17
**eat** [1] - 772:16
**eating** [1] - 628:22
**effect** [5] - 669:18, 675:6, 746:23, 765:22, 768:22
**effort** [2] - 737:24, 738:3
**eggs** [1] - 718:13
**eight** [18] - 661:12, 662:8, 674:2, 674:9, 684:22, 684:25, 685:4, 685:8, 685:11, 688:1, 691:17, 737:13, 759:7, 771:19, 771:24, 772:15, 775:4
**either** [3] - 651:21, 733:7, 769:9
**EI** [1] - 741:14
**elements** [1] - 682:1
**emergency** [1] - 773:8
**employed** [3] - 732:15, 765:11, 767:20
**employee** [1] - 665:11
**employer** [32] - 629:25, 640:11, 640:16, 641:10, 641:15, 642:12, 643:4, 643:9, 644:3, 652:24, 659:9, 660:7, 660:24, 660:25, 661:5, 662:5, 672:17, 675:8, 684:13, 684:18, 691:15, 692:12, 692:14, 694:2, 707:21, 708:4, 715:3, 720:19, 737:12, 759:2, 759:16
**employer's** [1] - 642:1
**employers** [1] - 758:1
**encounter** [1] - 714:2
**encountered** [1] - 711:10
**encounters** [1] - 713:23
**End** [2] - 746:17, 768:20
**end** [18] - 670:21, 674:1, 674:11, 681:23, 683:16, 683:21, 684:2, 690:13, 707:24, 708:7, 719:6, 734:16, 739:16, 740:5, 740:10, 750:17, 757:3, 757:9
**ends** [6] - 694:8, 707:15, 779:13, 780:16, 781:22, 784:2
**enforcement** [16] - 702:20, 702:25, 717:14, 717:16, 717:20, 718:7, 718:9,

718:11, 718:13, 742:2, 743:7, 743:8, 744:5, 744:12, 744:13
**Enforcement** [1] - 626:21
**engineer** [1] - 707:8
**English** [2] - 709:10
**enjoyed** [1] - 646:2
**enlighten** [1] - 733:5
**enlisted** [1] - 732:10
**enter** [1] - 777:2
**entering** [1] - 777:5
**enters** [35] - 629:21, 630:18, 631:16, 632:14, 633:17, 637:11, 638:19, 639:3, 640:1, 645:7, 652:20, 653:20, 654:16, 658:5, 659:3, 660:1, 661:24, 664:4, 672:19, 678:7, 678:16, 679:14, 683:8, 684:16, 687:8, 689:7, 695:7, 701:2, 701:14, 706:5, 715:12, 737:4, 738:12, 764:23, 773:22
**entire** [1] - 751:16
**entirely** [1] - 761:16
**entitled** [2] - 752:1, 757:10
**entry** [2] - 626:12, 626:13
**environment** [1] - 732:25
**environmental** [1] - 628:15
**ERIN** [1] - 624:19
**Erin** [1] - 626:19
**errant** [1] - 710:13
**escort** [2] - 780:3, 783:19, 783:22
**especially** [3] - 627:24, 707:24, 775:2
**ESQ** [4] - 624:23, 624:23, 625:3, 625:6
**essentially** [1] - 772:15
**Essentially** [1] - 671:3
**establish** [1] - 770:15
**estate** [1] - 702:8
**estimate** [3] - 674:7, 683:25, 769:20
**evening** [2] - 707:25, 765:14
**event** [2] - 668:23, 763:13
**eventually** [3] - 750:12, 770:11, 770:14
**evidence** [31] - 681:16, 681:19, 703:25, 710:22, 712:11, 722:20, 722:24, 723:5, 727:9, 728:4, 729:18, 729:24, 731:22, 735:6, 735:13, 738:24, 750:3, 750:8, 750:9, 750:10, 750:11, 750:16, 751:9, 752:11, 757:4, 770:19, 771:6, 771:7, 771:8
**exact** [1] - 672:24
**Exactly** [1] - 693:2
**exactly** [4] - 646:13, 713:10, 719:24, 725:14
**example** [1] - 628:17
**excellent** [1] - 721:9
**except** [1] - 751:3
**excerpts** [1] - 751:20
**excusal** [1] - 642:2
**excuse** [4] - 637:8, 642:13, 758:5, 780:3
**excused** [38] - 631:10, 631:14, 632:7, 632:12, 633:10, 633:15, 638:13, 638:18, 638:23, 639:1, 653:9, 653:12, 654:9, 654:13, 655:9, 657:17, 657:19, 657:24, 658:3, 658:24, 659:1, 659:21,

659:25, 665:19, 665:22, 678:9,
678:12, 683:1, 683:5, 689:3, 689:5,
694:15, 695:1, 701:1, 701:4, 701:8,
734:6, 783:7
**excusing** [2] - 761:5, 761:15
**exercise** [1] - 778:17
**exercised** [2] - 778:18, 779:13
**exercising** [3] - 762:4, 763:18, 763:21
**exhibit** [1] - 734:13
**exhibiting** [2] - 627:8, 678:4
**exits** [22] - 630:16, 636:16, 639:21,
645:5, 650:20, 661:22, 663:19,
677:21, 679:12, 684:5, 686:2, 699:19,
705:10, 715:1, 734:9, 738:9, 749:11,
756:1, 759:25, 772:9, 775:24, 783:25
**expectation** [1] - 717:6
**expected** [8] - 644:5, 644:8, 673:4,
673:7, 717:4, 721:16, 726:3, 768:6
**expects** [1] - 784:3
**expenses** [1] - 773:4
**experience** [8] - 648:11, 703:12, 703:19,
723:6, 723:10, 727:13, 729:5, 734:20
**explain** [2] - 726:10, 751:5
**explained** [5] - 725:16, 725:22, 736:11,
736:14, 754:4
**explains** [1] - 752:1
**explanation** [1] - 754:5
**explore** [1] - 711:6
**exploring** [1] - 648:13
**exposed** [2] - 629:12, 749:3
**express** [1] - 671:21
**expressed** [3] - 628:1, 628:11, 688:13
**extent** [4] - 627:20, 670:7, 709:25,
735:15
**extra** [4] - 692:6, 766:13, 770:1
**extremely** [2] - 644:6, 674:14
**eye** [1] - 756:15

## F

**fact** [8] - 647:4, 675:5, 698:6, 729:7,
730:17, 730:23, 733:20, 783:15
**factor** [1] - 628:15
**facts** [1] - 727:19
**failure** [1] - 664:16
**fair** [60] - 679:24, 681:3, 681:4, 682:20,
697:18, 698:8, 698:10, 698:15,
702:24, 703:13, 703:15, 703:20,
704:9, 704:15, 712:2, 712:13, 712:15,
712:17, 712:18, 714:11, 714:14,
718:19, 719:11, 719:14, 719:17,
720:2, 721:23, 727:25, 728:1, 728:6,
728:14, 729:8, 730:24, 731:4, 731:9,
732:20, 733:17, 734:18, 734:23,
735:17, 736:6, 738:21, 739:14,
739:22, 741:17, 744:8, 744:15, 745:3,
745:5, 752:23, 754:17, 754:19,
754:23, 755:15, 755:18, 756:15,
756:18, 783:17, 783:18
**fairness** [1] - 644:16

**faith** [1] - 783:16
**fall** [1] - 664:21
**falls** [2] - 642:17, 642:22
**familiar** [1] - 716:19
**family** [9] - 680:19, 697:4, 697:25,
711:13, 711:16, 711:22, 711:24,
732:15
**family's** [2] - 738:19, 739:2
**family-oriented** [1] - 711:16
**fantastic** [1] - 698:22
**far** [12] - 627:13, 662:20, 696:13,
706:16, 708:6, 709:5, 733:3, 741:16,
759:2, 769:3, 769:7, 773:9
**fast** [1] - 649:2
**father** [4] - 701:21, 702:1, 702:18, 708:7
**favor** [1] - 714:1
**feasible** [1] - 676:2
**federal** [2] - 701:21, 741:2
**Federal** [1] - 641:18
**fee** [1] - 640:7
**feelings** [3] - 679:21, 712:20, 712:25
**felt** [2] - 739:4, 742:7
**fence** [1] - 651:2
**few** [8] - 655:13, 701:19, 706:10,
709:16, 716:1, 730:12, 738:16, 760:10
**fifth** [2] - 676:24, 677:5
**figure** [8] - 647:10, 658:13, 665:8,
665:11, 673:21, 709:19, 713:19,
777:23
**fill** [1] - 674:22
**filling** [1] - 674:24
**filtering** [1] - 670:21
**final** [1] - 778:7
**financial** [14] - 638:6, 658:17, 659:16,
674:15, 685:11, 692:10, 692:15,
694:11, 765:3, 765:22, 772:13,
772:19, 773:7, 773:12
**financially** [1] - 654:4
**fine** [29] - 651:3, 654:18, 657:3, 666:24,
670:25, 671:24, 672:9, 672:15, 687:3,
693:20, 692:7, 697:7, 697:13, 712:17,
714:15, 719:25, 720:2, 720:9, 720:15,
724:19, 733:13, 738:2, 744:1, 752:4,
753:23, 764:4, 774:19, 774:20, 781:23
**finish** [1] - 776:13
**finished** [1] - 674:3
**FIRM** [1] - 624:21
**firm** [4] - 641:19, 653:15, 653:18, 671:25
**First** [1] - 668:8
**first** [13] - 630:25, 633:21, 645:15,
646:14, 706:16, 732:18, 753:10,
760:10, 776:9, 776:10, 776:19, 784:5
**fit** [1] - 642:1
**five** [4] - 643:18, 687:3, 749:21, 769:25
**fix** [2] - 691:7, 774:18
**fixed** [5] - 765:24, 766:2, 767:10,
771:20, 774:7
**flag** [1] - 765:9, 771:1, 774:25
**flexibility** [3] - 677:7, 707:2, 707:15

**flexible** [3] - 671:18, 679:5, 708:20
**floor** [15] - 631:12, 632:8, 633:11,
638:16, 653:11, 654:10, 657:14,
657:22, 659:22, 665:19, 683:4, 701:5,
757:18, 759:23, 783:4
**FLORIAN** [1] - 625:3
**Florian** [1] - 626:24
**fluctuates** [2] - 769:22, 769:24
**focus** [10] - 642:14, 643:12, 688:21,
719:14, 736:15, 765:2, 770:7, 771:6,
772:12, 773:10
**focused** [2] - 752:11, 773:6
**follow** [56] - 629:9, 639:15, 639:22,
639:23, 641:4, 642:10, 644:25,
656:10, 660:19, 660:21, 662:11,
662:20, 662:21, 671:7, 677:13, 685:2,
687:16, 687:21, 688:12, 689:13,
695:12, 699:11, 699:15, 701:19,
702:14, 705:5, 723:18, 724:21, 725:2,
725:7, 725:10, 725:11, 725:22,
725:25, 726:4, 726:6, 730:5, 730:7,
730:13, 733:21, 735:6, 735:7, 735:14,
745:16, 746:2, 746:11, 746:19, 748:5,
748:14, 749:6, 749:19, 755:21,
760:17, 767:18, 772:5, 773:24
**follow-up** [18] - 629:9, 639:15, 641:4,
660:19, 671:7, 677:13, 685:2, 688:12,
689:13, 699:11, 699:15, 701:19,
705:5, 745:16, 746:19, 749:6, 755:21,
772:5
**following** [6] - 705:12, 745:23, 767:17,
778:19, 779:14, 781:15
**follows** [1] - 741:22
**followup** [6] - 706:10, 714:20, 716:1,
728:16, 728:18, 738:16
**food** [1] - 693:9
**FOR** [1] - 624:12
**for-cause** [1] - 652:16
**forced** [1] - 673:18
**foreman** [1] - 646:2
**forget** [1] - 775:16
**forgive** [1] - 755:17
**forgot** [1] - 728:23
**form** [1] - 653:15
**former** [2] - 731:16, 731:20
**forth** [2] - 646:22, 777:10
**forward** [1] - 777:20
**four** [4] - 634:5, 668:11, 668:19, 676:3
**fourth** [1] - 757:24
**Fox** [1] - 730:9
**freaked** [1] - 635:9
**freaking** [2] - 634:4, 635:6
**free** [4] - 706:8, 743:24, 751:22, 783:3
**Friday** [12] - 643:15, 643:21, 663:13,
692:2, 693:5, 693:13, 694:7, 707:18,
707:19, 765:19, 770:13, 777:19
**Fridays** [3] - 710:1, 765:17, 773:11
**friend** [2] - 697:24, 731:7
**friendly** [3] - 711:10, 711:20, 711:23
**friends** [4] - 698:1, 711:4, 711:12,

711:15
**front** [3] - 714:4, 729:12, 780:21
**fulfilling** [1] - 643:5
**full** [14] - 628:19, 630:8, 639:12, 641:1, 665:9, 666:25, 685:4, 685:8, 685:11, 691:13, 693:22, 707:1, 783:10, 783:16
**full-time** [3] - 665:9, 691:13, 693:22
**fully** [1] - 771:16
**Fulton** [1] - 624:22
**fund** [2] - 742:23, 743:6
**funds** [1] - 774:5
**funny** [2] - 645:15, 742:14
**furthermore** [1] - 734:20
**future** [5] - 626:13, 673:24, 676:9, 703:23

## G

**gallbladder** [2] - 664:14, 664:24
**game** [3] - 667:3, 739:22, 744:8
**garbage** [1] - 709:20
**Garcia** [2] - 626:7, 626:25
**GARCIA** [1] - 624:8
**gas** [5] - 674:22, 674:24, 766:6, 769:4, 769:7
**gatherings** [1] - 711:21
**Genaro** [1] - 626:6
**GENARO** [1] - 624:8
**general** [3] - 626:9, 669:9, 748:25
**generally** [2] - 672:8, 717:14
**generate** [2] - 765:4, 766:24
**given** [10] - 628:18, 650:1, 678:3, 684:9, 708:8, 712:25, 731:3, 738:23, 739:4, 775:2
**glad** [1] - 741:24
**gonna** [1] - 691:6
**goodbye** [2] - 648:2
**gosh** [1] - 752:17
**Gotlib** [1] - 626:24
**GOTLIB** [3] - 625:4, 625:6, 784:10
**Government** [25] - 624:16, 626:15, 627:10, 642:7, 650:22, 652:10, 677:15, 698:10, 750:4, 750:12, 750:18, 763:25, 772:21, 778:16, 778:20, 778:22, 778:24, 778:25, 779:1, 779:15, 779:17, 780:12, 782:20, 784:7
**government** [12] - 710:18, 710:20, 714:21, 716:7, 721:11, 721:14, 721:23, 722:10, 722:11, 730:7, 731:10, 731:22
**Government's** [1] - 772:14
**government's** [1] - 722:20
**grant** [1] - 642:1
**granted** [1] - 626:8
**granting** [1] - 757:14
**Great** [2] - 697:21, 782:19
**great** [24] - 641:3, 648:11, 657:12, 658:1, 663:15, 679:10, 683:23, 698:17, 699:14, 711:1, 714:19,

717:12, 719:8, 719:11, 720:17, 726:8, 734:5, 734:15, 740:11, 741:24, 743:4, 754:22, 758:20, 777:3
**greater** [1] - 718:10
**grew** [1] - 711:4
**gross** [1] - 640:9
**ground.-** [1] - 700:15
**group** [7] - 652:18, 686:25, 690:15, 740:24, 764:6, 776:5, 777:13
**grove** [1] - 770:13
**growing** [1] - 711:11
**guarantee** [1] - 674:2
**guarantees** [1] - 674:6
**guess** [17] - 628:4, 644:11, 678:20, 690:9, 700:14, 706:16, 707:15, 712:9, 712:23, 714:11, 714:17, 720:6, 740:18, 766:17, 768:13, 772:16, 773:15
**guilt** [3] - 727:6, 746:4, 757:5
**guilty** [33] - 680:10, 681:15, 682:5, 682:9, 703:7, 716:6, 716:23, 726:20, 726:23, 727:6, 727:24, 736:9, 740:5, 746:4, 747:1, 747:6, 747:17, 747:24, 749:23, 750:5, 750:14, 750:15, 750:16, 750:18, 750:20, 751:4, 751:14, 752:19, 754:12, 757:8
**guy** [2] - 771:17, 773:3
**guys** [2] - 645:24, 672:24

## H

**half** [7] - 646:15, 646:18, 647:17, 648:23, 650:3, 664:12, 668:10
**hall** [5] - 630:13, 636:13, 645:3, 650:17, 685:25
**hand** [5] - 656:12, 717:21, 778:13, 782:16
**handed** [1] - 641:14
**handle** [3] - 667:14, 669:3, 708:24
**hang** [1] - 758:21
**hanging** [1] - 636:1
**happy** [1] - 641:12
**hard** [8] - 644:10, 644:17, 650:25, 656:12, 687:22, 688:5, 712:9, 724:3
**hardly** [1] - 636:4
**hardship** [32] - 631:6, 632:2, 633:2, 638:7, 643:11, 652:16, 653:3, 654:3, 658:17, 659:16, 664:10, 666:9, 685:5, 685:9, 685:11, 692:10, 692:15, 705:2, 706:11, 758:5, 767:21, 772:13, 772:19, 773:12, 773:15, 773:21, 774:2, 774:3, 774:12, 774:15, 774:16, 776:1
**harsh** [1] - 749:1
**hate** [1] - 769:19
**headlines** [3] - 730:16, 730:17, 730:18
**health** [7] - 627:3, 647:22, 663:6, 665:19, 688:19, 765:3, 772:24
**hear** [36] - 627:2, 630:10, 634:13, 634:19, 635:4, 654:22, 655:7, 655:8,

655:11, 655:13, 655:16, 655:17, 655:21, 656:4, 656:7, 656:13, 657:4, 657:9, 663:17, 665:18, 682:14, 685:6, 695:14, 696:11, 699:9, 702:11, 712:3, 719:22, 724:2, 726:8, 735:19, 754:18, 764:10, 771:7, 772:21
**heard** [29] - 633:22, 633:25, 634:1, 634:10, 634:14, 634:24, 636:20, 650:21, 655:10, 657:2, 657:6, 663:20, 671:13, 696:5, 700:10, 703:24, 712:11, 730:15, 730:17, 730:18, 730:23, 741:14, 741:15, 741:20, 741:21, 752:21, 754:4, 756:22, 777:25
**hearing** [10] - 629:16, 654:15, 655:5, 655:6, 666:24, 695:14, 695:17, 722:8, 752:18, 769:10
**hearings** [2] - 626:13
**Hefner's** [1] - 742:18
**heightened** [1] - 627:15
**Hello** [3] - 639:4, 639:5, 701:15
**hello** [11] - 640:2, 640:3, 645:8, 645:9, 660:2, 706:6, 715:18, 738:13, 749:14, 758:25, 764:22
**help** [11] - 649:20, 708:8, 708:14, 708:19, 709:11, 709:13, 709:19, 709:21, 709:25, 762:6, 765:25
**helpful** [2] - 627:21, 735:8
**helping** [2] - 706:13, 708:6
**helps** [1] - 695:14
**herself** [2] - 709:6, 746:4
**hesitate** [2] - 712:19, 713:24
**hesitating** [2] - 713:18, 713:19
**hesitation** [1] - 734:24
**Hi** [5] - 631:18, 632:18, 664:6, 670:24, 684:17
**hi** [4] - 633:19, 661:25, 737:5, 737:6
**high** [2] - 680:3, 680:5
**higher** [2] - 645:16, 645:18
**hinder** [1] - 712:21
**histories** [1] - 730:11
**history** [1] - 733:1
**hit** [1] - 644:6
**hm** [2] - 729:6, 744:6
**hoc** [1] - 708:13
**Hold** [1] - 686:11
**hold** [5] - 636:17, 656:25, 660:15, 729:1, 780:22
**holidays** [1] - 721:8
**home** [8] - 633:24, 643:16, 646:23, 647:20, 655:10, 751:19, 774:11, 774:20
**honest** [2] - 682:12, 688:18
**Honestly** [1] - 691:8
**honestly** [5] - 680:13, 680:21, 743:11, 750:25, 753:5
**Honor** [82] - 626:17, 626:23, 628:7, 631:9, 632:6, 633:9, 636:11, 636:23, 637:7, 638:11, 642:8, 645:9, 649:7, 650:24, 650:25, 651:2, 651:10, 651:19, 651:25, 653:7, 653:14, 654:8,

654:11, 656:21, 657:1, 657:2, 658:22, 659:20, 660:20, 663:22, 666:2, 666:12, 668:2, 668:5, 669:5, 669:14, 669:20, 671:3, 677:16, 677:17, 678:1, 682:23, 685:3, 685:23, 686:3, 688:24, 694:13, 699:12, 699:13, 699:21, 700:12, 701:9, 705:6, 710:12, 714:22, 715:9, 728:19, 732:13, 735:2, 745:24, 749:8, 758:8, 759:11, 759:21, 761:2, 763:23, 764:19, 767:14, 767:19, 767:21, 768:1, 768:13, 772:6, 772:11, 772:22, 776:7, 779:6, 780:13, 782:21, 784:8, 784:10

**HONORABLE** [2] - 624:12

**hope** [4] - 641:23, 703:2, 707:25, 754:4

**Hopefully** [1] - 683:21

**hopefully** [3] - 667:20, 762:8, 780:2

**hopes** [1] - 721:15

**hoping** [1] - 636:6

**hospital** [4] - 672:25, 673:3, 673:7

**hospitals** [1] - 673:1

**hour** [5] - 643:22, 646:14, 646:18, 647:17, 706:17

**hourly** [2] - 692:19, 768:15

**hours** [18] - 641:20, 643:14, 643:18, 643:19, 643:21, 643:22, 643:25, 644:5, 644:7, 644:12, 644:20, 646:21, 704:25, 706:18, 707:10, 761:19, 767:25, 768:16

**hours'** [1] - 634:5

**house** [4] - 690:24, 692:7, 693:10, 769:11

**Hugh** [1] - 742:18

**hum** [8] - 643:7, 649:10, 649:13, 746:24, 747:2, 747:5, 752:16, 754:15

**human** [1] - 714:3

**hundreds** [1] - 769:23

**husband** [6] - 697:8, 697:10, 697:12, 697:14, 732:10, 746:13

**husband's** [3] - 698:3, 698:7, 699:23

**hypothetically** [3] - 646:25, 647:15, 648:18

---

### I

**idea** [7] - 708:3, 731:11, 732:22, 732:25, 733:6, 756:11, 760:11

**ideas** [2] - 719:13, 740:10

**identify** [1] - 670:10

**ignored** [5] - 777:14

**illegal** [5] - 681:13, 727:14, 727:16, 727:17, 734:21

**immediate** [1] - 674:21

**immediately** [1] - 748:19

**immigrants** [1] - 731:1

**immigration** [1] - 730:8

**impact** [8] - 643:11, 679:23, 680:5, 694:10, 711:7, 712:2, 769:8, 770:12

**impartial** [22] - 698:15, 703:13, 704:9, 712:3, 712:13, 714:8, 719:10, 735:18,

---

736:6, 738:22, 739:14, 740:4, 740:7, 752:19, 754:17, 754:19, 754:24, 755:16, 755:18, 756:15, 756:19, 783:17

**important** [6] - 663:6, 669:1, 724:20, 741:8, 741:9, 783:11

**importantly** [1] - 649:23

**importation** [1] - 681:13

**imposing** [1] - 773:18

**imposition** [1] - 783:13

**impression** [3] - 668:9, 669:9, 768:2

**inability** [1] - 774:16

**inadvertently** [5] - 629:11, 634:1, 748:18

**incarcerated** [3] - 697:25, 698:5, 698:7

**incident** [1] - 703:6

**included** [1] - 760:21

**including** [2] - 626:11, 721:20

**income** [9] - 707:20, 765:4, 766:18, 766:21, 768:10, 768:11, 768:15, 769:16, 770:1

**inconsistency** [1] - 770:14

**inconvenience** [3] - 641:22, 755:10, 761:18

**incredible** [1] - 646:15

**independent** [2] - 727:5, 727:8

**indicated** [5] - 703:5, 704:11, 707:7, 763:21, 765:10

**indicates** [1] - 668:19

**indication** [1] - 735:12

**individual** [4] - 669:25, 670:1, 670:3, 680:10

**individual's** [1] - 699:22

**individually** [1] - 718:14

**individuals** [3] - 642:22, 712:1, 715:10

**industry** [1] - 641:24

**influence** [2] - 703:9, 716:24

**information** [14] - 627:2, 630:3, 630:24, 650:15, 662:18, 662:24, 667:21, 669:16, 672:1, 684:19, 685:24, 687:6, 687:12, 688:6

**informed** [1] - 651:14

**infrequently** [1] - 708:23

**innocence** [6] - 734:19, 736:7, 756:8, 756:10, 756:12, 757:5

**innocent** [17] - 716:6, 717:2, 717:10, 736:16, 749:24, 750:1, 750:7, 750:17, 752:13, 754:6, 754:8, 754:12, 754:14, 757:1, 757:2, 757:6, 757:12

**innocuous** [1] - 671:1

**inquire** [1] - 779:24

**instead** [2] - 675:19, 694:6

**instruct** [2] - 682:1, 726:14

**instructed** [1] - 702:10

**instruction** [4] - 724:16, 724:21, 725:6, 733:22

**instructions** [3] - 724:17, 735:7, 735:14

**instructs** [2] - 702:15, 733:21

**insurance** [1] - 766:5

---

**intend** [1] - 713:23

**interaction** [1] - 670:7

**interactions** [2] - 711:11, 712:1

**interested** [3] - 635:25, 643:5, 698:22

**internal** [5] - 645:14, 759:5, 759:17, 759:18, 759:19

**international** [1] - 732:23

**internet** [2] - 709:18, 748:13

**interpretation** [1] - 756:11

**interpreters** [1] - 627:12

**interview** [2] - 668:11, 686:4

**interviewed** [1] - 742:16

**introduce** [1] - 670:4

**investigating** [2] - 702:6, 702:19

**investigative** [1] - 710:21

**involve** [1] - 723:13

**involved** [8] - 634:18, 680:4, 682:8, 704:15, 707:8, 727:22, 731:22, 783:12

**involves** [5] - 703:17, 704:12, 712:14, 731:4, 731:9

**involving** [1] - 731:4

**ironed** [1] - 777:21

**Island** [1] - 646:16

**isolated** [1] - 746:13

**issue** [19] - 629:16, 644:16, 648:21, 651:3, 651:24, 657:5, 660:21, 668:21, 670:9, 671:6, 672:11, 681:8, 683:7, 704:8, 712:13, 716:20, 748:23, 750:10, 765:24

**issued** [1] - 626:12

**issues** [6] - 664:10, 664:15, 665:19, 735:4, 747:10, 748:1

**it'll** [1] - 672:15

**itself** [1] - 628:23

---

### J

**Jamaica** [1] - 732:9

**James** [1] - 626:20

**January** [1] - 624:7

**jeopardize** [1] - 673:24

**job** [9] - 644:2, 673:24, 690:20, 721:5, 721:6, 721:7, 725:12, 768:12, 768:15

**jobs** [1] - 707:4

**joined** [2] - 626:18, 652:10

**Judge** [58] - 626:7, 627:5, 627:19, 627:24, 628:4, 628:5, 628:25, 629:2, 636:12, 636:25, 637:5, 639:5, 639:17, 639:22, 641:5, 662:12, 662:13, 666:5, 666:15, 666:20, 666:23, 666:25, 667:16, 668:1, 668:9, 669:8, 671:6, 671:13, 671:17, 672:2, 677:6, 679:2, 682:1, 683:10, 685:14, 698:20, 705:7, 714:23, 724:16, 726:13, 726:14, 733:21, 734:4, 749:7, 755:22, 760:23, 762:10, 767:12, 776:15, 777:15, 777:22, 779:12, 779:20, 781:19, 781:20, 782:24, 784:3, 784:11

**judge** [20] - 642:10, 649:5, 652:4, 655:17, 660:10, 696:4, 702:12,

702:15, 715:2, 728:22, 734:10,
736:24, 746:3, 746:7, 746:10, 747:4,
747:20, 752:23, 756:2, 772:12
**JUDGE** [1] - 624:13
**Judge's** [3] - 725:14, 735:7, 735:14
**judgment** [1] - 739:25
**judgmental** [2] - 742:10, 755:16
**Judy** [1] - 698:21
**jumping** [1] - 717:25
**junior** [1] - 680:3
**Juror** [125] - 629:20, 629:21, 629:24,
630:17, 630:18, 631:16, 632:14,
632:17, 633:17, 633:18, 637:11,
637:12, 638:19, 638:20, 639:2, 639:3,
639:4, 640:1, 640:2, 645:6, 645:7,
645:10, 652:19, 652:20, 652:23,
653:13, 653:20, 653:22, 654:14,
654:16, 658:4, 658:5, 659:2, 659:3,
659:6, 660:1, 660:4, 661:24, 663:25,
664:4, 667:20, 668:21, 672:19,
677:21, 678:7, 678:8, 678:12, 678:16,
679:12, 679:14, 679:16, 683:5, 683:8,
683:11, 684:5, 684:16, 684:17, 686:2,
687:5, 687:8, 689:5, 689:6, 689:7,
689:11, 695:1, 695:2, 695:7, 695:8,
699:19, 701:1, 701:2, 701:3, 701:8,
701:14, 701:15, 705:10, 706:5, 706:6,
715:1, 715:12, 734:9, 737:4, 738:9,
738:12, 738:13, 749:11, 749:13,
758:24, 758:25, 763:7, 763:14,
764:22, 764:23, 773:22, 780:24,
780:25, 781:1, 781:2, 781:4, 781:5,
781:12, 781:24, 782:2, 782:4, 782:5,
782:6, 782:9, 782:10, 782:11, 782:12,
782:13, 782:16
**juror** [117] - 629:13, 629:16, 629:17,
630:16, 631:14, 631:15, 631:19,
632:12, 632:13, 633:15, 633:16,
636:16, 637:8, 637:9, 637:10, 638:18,
639:1, 639:16, 639:21, 641:19, 642:6,
642:14, 643:12, 644:17, 645:5, 649:9,
649:24, 650:20, 650:22, 651:22,
652:12, 653:12, 653:15, 653:17,
654:13, 655:2, 655:16, 656:11, 657:2,
658:3, 658:6, 659:1, 659:25, 661:22,
661:23, 662:2, 663:19, 663:23, 664:7,
665:22, 670:4, 670:10, 670:11,
671:20, 672:3, 677:8, 679:3, 680:9,
684:12, 685:8, 687:7, 690:3, 690:12,
694:1, 694:11, 695:21, 697:1, 697:14,
697:16, 697:18, 698:15, 702:10,
702:14, 712:14, 713:12, 714:9, 717:6,
722:3, 723:7, 723:10, 724:15, 725:19,
726:24, 735:4, 735:5, 735:16, 736:8,
736:19, 736:20, 737:3, 738:11,
739:13, 743:24, 745:24, 747:23,
752:5, 752:11, 754:17, 754:19,
754:24, 755:2, 755:10, 755:13,
755:19, 756:1, 756:18, 756:21,
759:16, 759:25, 763:8, 768:6, 772:9,

772:18, 772:24, 773:1, 774:22, 775:24
**JUROR** [585] - 629:23, 630:2, 630:4,
630:6, 630:8, 630:10, 630:14, 630:20,
630:23, 630:25, 631:3, 631:7, 631:11,
631:13, 631:18, 631:21, 631:24,
632:1, 632:4, 632:10, 632:16, 632:18,
632:22, 632:25, 633:3, 633:7, 633:13,
633:19, 633:24, 634:9, 634:14,
634:23, 635:2, 635:7, 635:15, 635:23,
636:15, 637:14, 637:17, 637:23,
638:4, 638:8, 638:14, 638:17, 638:21,
638:24, 639:5, 639:7, 639:10, 639:13,
639:20, 640:3, 640:6, 640:13, 640:17,
640:20, 640:23, 640:25, 641:2, 641:7,
641:10, 641:13, 642:4, 642:15, 643:3,
643:7, 643:13, 644:4, 644:11, 644:14,
644:19, 644:22, 644:24, 645:4, 645:9,
645:12, 645:14, 645:18, 645:21,
646:12, 646:21, 647:3, 647:8, 647:12,
647:16, 647:19, 647:24, 648:7,
648:10, 648:14, 648:17, 648:20,
648:22, 649:1, 649:10, 649:13,
649:16, 649:21, 649:25, 650:6, 650:9,
650:12, 650:16, 650:19, 652:22,
652:25, 653:2, 653:5, 653:10, 653:21,
653:24, 654:2, 654:5, 654:11, 654:18,
654:20, 654:23, 655:3, 655:6, 655:12,
655:22, 655:24, 656:1, 656:3, 656:6,
656:9, 656:14, 657:8, 657:10, 657:15,
657:18, 657:21, 657:23, 657:25,
658:2, 658:7, 658:11, 658:18, 658:25,
659:5, 659:7, 659:10, 659:12, 659:15,
659:18, 659:23, 660:3, 660:5, 660:8,
660:13, 660:18, 661:1, 661:6, 661:8,
661:13, 661:17, 661:20, 662:1, 662:4,
662:7, 662:9, 662:15, 662:18, 662:24,
663:3, 663:7, 663:11, 663:18, 664:6,
664:9, 664:18, 665:3, 665:6, 665:20,
672:22, 673:10, 673:13, 673:16,
673:19, 673:23, 674:8, 674:13,
674:19, 675:3, 675:10, 675:13,
675:18, 675:22, 675:25, 676:8,
676:13, 676:15, 676:18, 676:21,
676:24, 677:20, 678:10, 678:18,
678:20, 678:23, 679:1, 679:7, 679:10,
679:17, 679:19, 680:12, 680:15,
680:18, 680:21, 681:4, 681:10,
681:18, 681:22, 682:3, 682:11,
682:14, 682:21, 683:3, 683:10,
683:13, 683:18, 684:2, 684:20, 685:1,
685:13, 685:19, 685:21, 687:11,
687:14, 687:20, 687:24, 688:3, 688:9,
688:18, 688:21, 689:2, 689:4, 689:10,
689:12, 689:17, 689:20, 689:24,
690:5, 690:7, 690:16, 690:18, 690:22,
691:5, 691:12, 691:21, 692:1, 692:3,
692:16, 692:19, 693:2, 693:6, 693:8,
693:15, 693:18, 693:20, 694:16,
694:19, 694:23, 694:25, 695:10,
695:15, 695:18, 695:24, 696:2, 696:6,
696:9, 696:12, 696:15, 696:22, 697:6,

697:8, 697:11, 697:16, 697:20, 698:3,
698:5, 698:9, 698:13, 698:16, 698:20,
698:24, 699:4, 699:7, 699:10, 699:18,
701:6, 701:18, 701:22, 701:24, 702:2,
702:4, 702:17, 702:21, 703:2, 703:4,
703:8, 703:11, 703:14, 703:18,
703:21, 704:1, 704:4, 704:7, 704:10,
704:16, 704:19, 704:22, 704:24,
705:3, 706:15, 707:9, 707:11, 707:14,
707:22, 708:3, 708:9, 708:18, 708:25,
709:7, 709:17, 710:3, 710:25, 711:8,
712:5, 712:9, 712:18, 713:4, 713:8,
713:17, 713:20, 714:10, 714:16,
715:13, 715:17, 715:19, 715:23,
716:2, 716:10, 716:14, 716:17, 717:3,
717:6, 717:8, 717:11, 717:18, 717:23,
718:3, 718:12, 718:17, 718:22,
718:25, 719:3, 719:9, 719:18, 719:22,
720:3, 720:6, 720:8, 720:10, 720:16,
720:20, 720:22, 720:24, 721:1, 721:4,
721:7, 721:16, 722:1, 722:5, 722:16,
722:18, 723:6, 723:9, 723:16, 723:24,
724:2, 724:5, 724:7, 724:12, 724:15,
724:19, 724:24, 725:1, 725:3, 725:5,
725:9, 725:12, 725:20, 725:23, 726:1,
726:7, 726:11, 726:17, 726:21, 727:2,
727:7, 727:10, 727:12, 727:18,
727:21, 728:3, 728:6, 728:9, 728:11,
728:15, 729:6, 729:10, 729:14,
729:20, 730:1, 730:10, 730:15,
730:19, 730:22, 730:25, 731:6,
731:11, 731:13, 731:15, 731:19,
731:23, 732:2, 732:5, 732:21, 733:4,
733:9, 733:12, 733:18, 733:24, 734:8,
737:6, 737:8, 737:15, 737:19, 737:22,
737:25, 738:5, 738:8, 738:14, 738:17,
739:1, 739:10, 739:15, 739:18,
739:23, 740:1, 740:6, 740:8, 740:12,
740:14, 740:18, 740:22, 741:4,
741:12, 741:19, 742:6, 742:11,
742:14, 743:2, 743:11, 743:14,
743:20, 744:2, 744:6, 744:9, 744:14,
745:2, 745:6, 745:9, 745:11, 745:14,
745:22, 746:20, 746:24, 747:2, 747:5,
747:8, 747:11, 747:14, 747:16,
747:21, 747:25, 748:4, 748:6, 748:11,
748:15, 748:17, 748:20, 748:24,
749:5, 749:10, 749:15, 749:17,
749:25, 750:2, 750:22, 750:24, 751:2,
751:7, 751:10, 751:13, 751:17,
751:21, 752:3, 752:6, 752:9, 752:14,
752:16, 752:20, 752:22, 752:25,
753:4, 753:9, 753:12, 753:15, 753:18,
753:22, 753:24, 754:2, 754:9, 754:11,
754:15, 754:21, 754:23, 755:1, 755:4,
755:6, 755:11, 755:14, 755:20,
755:25, 759:3, 759:19, 759:24, 765:1,
765:12, 765:15, 765:17, 765:20,
765:23, 766:3, 766:11, 766:15,
766:19, 766:23, 767:2, 767:7, 767:10,
768:24, 769:2, 769:12, 769:15,

769:18, 769:22, 769:24, 770:4, 770:8,
770:20, 770:23, 771:4, 771:9, 771:13,
771:15, 771:17, 771:20, 772:1, 772:8,
774:3, 774:9, 774:13, 774:16, 774:24,
775:7, 775:10, 775:13, 775:18,
775:21, 775:23, 781:3, 781:9

**juror's** [1] - 642:2

**jurors** [63] - 627:1, 627:13, 627:22,
628:1, 628:10, 628:18, 629:3, 629:4,
629:8, 629:9, 650:1, 651:14, 660:24,
667:21, 668:11, 668:14, 668:18,
668:19, 668:23, 669:12, 671:14,
671:21, 684:4, 686:16, 690:14,
692:12, 696:17, 716:20, 719:7, 723:4,
725:17, 735:21, 740:24, 754:1,
757:17, 760:3, 760:7, 761:3, 761:21,
761:23, 763:13, 763:15, 763:17,
763:20, 764:7, 764:20, 773:16,
776:13, 776:17, 776:18, 776:20,
776:22, 777:2, 777:11, 778:8, 780:1,
780:3, 780:4, 782:7, 783:7, 783:17,
783:23

**jurors'** [1] - 747:12

**jury** [76] - 626:6, 628:12, 628:13,
628:17, 628:23, 632:9, 632:20,
633:12, 636:4, 637:16, 637:18, 639:9,
640:5, 641:24, 642:2, 652:13, 654:10,
657:13, 657:14, 658:13, 658:14,
661:11, 662:3, 670:24, 671:4, 672:6,
673:17, 675:6, 675:20, 676:7, 677:9,
680:24, 680:25, 688:16, 689:3, 691:2,
692:14, 692:22, 693:1, 693:11,
695:23, 696:4, 697:17, 704:18, 705:2,
705:9, 706:12, 707:3, 707:15, 707:21,
708:21, 722:23, 737:10, 737:13,
747:1, 747:7, 748:10, 750:4, 750:13,
751:3, 751:12, 751:13, 751:15, 759:7,
763:6, 776:18, 777:5, 780:4, 780:17,
780:20, 782:20, 782:23, 783:8,
783:20, 783:24

**Jury** [1] - 783:25

**JURY** [1] - 624:12

**justice** [1] - 698:19

# K

**keep** [12] - 627:14, 675:1, 699:6, 701:16,
706:8, 713:18, 731:14, 731:21,
743:17, 757:25, 769:13, 776:3

**kicked** [1] - 769:11

**kidney** [1] - 664:15

**kids** [1] - 711:13

**killed** [1] - 703:6

**kind** [17] - 634:3, 650:25, 687:25, 690:7,
690:8, 690:19, 690:20, 692:6, 694:20,
702:6, 709:23, 718:1, 725:19, 743:16,
747:3, 765:13, 770:11

**kinds** [1] - 681:12

**kitchen** [1] - 709:8

**knife** [1] - 698:2

**knifepoint** [1] - 729:5

**knowing** [3] - 642:12, 643:9, 719:3

**knowledge** [2] - 733:12, 735:13

**knows** [1] - 645:22

**KOMATIREDDY** [113] - 624:18, 626:17,
628:7, 628:10, 628:20, 629:2, 631:9,
632:6, 633:9, 636:11, 636:22, 637:7,
638:11, 639:18, 642:7, 645:1, 649:6,
650:24, 651:6, 651:9, 651:13, 651:18,
651:25, 653:7, 653:14, 653:17, 654:8,
656:20, 656:23, 657:1, 657:11,
658:22, 659:20, 660:20, 662:13,
665:15, 666:12, 667:15, 668:2, 668:5,
668:8, 669:4, 669:14, 669:20, 669:23,
670:14, 670:17, 670:20, 671:3, 671:8,
671:11, 677:15, 678:1, 682:23, 685:3,
685:7, 685:22, 686:3, 688:24, 694:1,
694:12, 695:6, 699:13, 699:16,
699:21, 700:8, 700:12, 700:16,
701:13, 705:7, 706:3, 710:12, 714:21,
715:9, 728:18, 734:4, 735:2, 745:18,
745:24, 749:8, 758:7, 758:14, 758:20,
759:11, 759:14, 759:18, 759:21,
760:18, 761:2, 761:11, 761:17,
762:10, 767:13, 767:18, 768:1, 768:5,
768:13, 768:19, 772:6, 772:11,
772:22, 776:7, 776:15, 779:6, 779:12,
779:20, 779:24, 780:6, 780:9, 780:12,
781:19, 782:21, 784:7

**Komatireddy** [2] - 626:18, 710:10

**KUO** [1] - 624:12

**Kuo** [1] - 626:7

# L

**lack** [2] - 635:15, 768:10

**language** [1] - 756:22

**large** [1] - 685:18

**Large** [2] - 685:19, 685:20

**last** [21] - 627:6, 628:18, 639:11, 642:16,
642:17, 648:1, 664:12, 674:13,
697:21, 706:25, 711:2, 731:24,
753:17, 753:18, 759:8, 760:19,
770:24, 773:19, 775:1, 775:3, 775:4

**late** [2] - 762:8, 775:1

**late-breaking** [1] - 762:8

**law** [57] - 653:15, 653:18, 668:18,
681:11, 702:1, 702:3, 702:10, 702:12,
702:14, 702:20, 702:25, 710:20,
710:23, 716:8, 717:14, 717:16,
717:20, 718:7, 718:9, 718:11, 718:13,
722:22, 723:3, 723:18, 723:22,
724:22, 725:2, 725:4, 725:8, 725:10,
725:22, 725:25, 726:6, 726:15,
732:17, 732:25, 733:3, 733:8, 733:21,
733:23, 733:25, 735:6, 742:2, 742:3,
743:7, 743:8, 744:5, 744:12, 744:13,
749:23, 751:24, 752:12, 754:11,
763:7, 764:15

**LAW** [3] - 624:21, 625:4, 678:14

**lawyer** [3] - 732:18, 732:23, 752:3

**lawyers** [19] - 636:18, 650:10, 655:18,
677:19, 686:1, 690:12, 696:10,
702:11, 724:14, 725:15, 726:13,
732:17, 733:20, 745:20, 767:15,
777:6, 778:3, 778:11, 778:14

**lead** [1] - 765:8

**leaning** [2] - 727:13, 727:15

**learned** [1] - 684:15

**least** [6] - 643:17, 665:13, 686:17,
706:20, 708:10, 736:16

**leave** [2] - 647:19, 715:21

**leaving** [2] - 647:18, 667:12

**left** [4] - 637:20, 672:23, 764:14, 779:3

**legal** [1] - 710:9

**legalization** [1] - 704:12

**length** [2] - 644:7, 775:3

**lengthy** [1] - 783:14

**less** [2] - 743:9, 744:4

**lesser** [1] - 718:10

**letter** [2] - 641:7, 641:14

**letting** [19] - 630:12, 634:21, 636:9,
638:12, 641:15, 646:10, 650:11,
650:14, 658:23, 665:17, 671:9,
682:25, 683:2, 688:25, 694:14,
696:19, 760:11, 771:2, 772:7

**level** [2] - 678:3, 772:3

**lie** [2] - 721:21, 721:22

**life** [10] - 699:2, 711:22, 726:2, 740:22,
746:1, 746:22, 768:23, 769:2, 769:8,
773:2

**lifestyle** [1] - 648:1

**likely** [4] - 664:14, 729:17, 741:15,
770:16

**likewise** [1] - 675:20

**limit** [3] - 655:24, 656:1, 656:2

**limited** [1] - 727:23

**Linda** [1] - 753:19

**line** [1] - 770:2

**lined** [2] - 715:8, 736:20

**lines** [1] - 717:25

**list** [15] - 629:7, 666:16, 672:6, 672:7,
687:7, 716:12, 716:18, 716:22,
734:14, 736:8, 736:12, 753:3, 753:7,
760:4, 763:12

**listed** [1] - 715:10

**listen** [9] - 655:2, 690:12, 695:14,
719:22, 720:14, 725:4, 728:3, 735:6,
735:13

**listening** [3] - 634:24, 690:4, 771:6

**literally** [1] - 674:19

**live** [8] - 635:16, 635:18, 635:24,
706:16, 732:3, 732:4, 767:22, 768:5

**lived** [1] - 711:14

**lives** [1] - 680:16

**living** [2] - 772:14, 774:19

**LLC's** [1] - 642:20

**LLP** [1] - 625:1

**lobby** [1] - 670:20

**logging** [1] - 644:2
**look** [5] - 690:8, 734:14, 735:6, 736:8, 748:3
**looking** [5] - 664:20, 681:19, 689:25, 752:18, 778:3
**looks** [3] - 635:11, 665:11, 778:7
**loose** [1] - 784:2
**lose** [6] - 640:9, 707:20, 708:1, 769:14, 770:3, 774:1
**losing** [3] - 640:7, 666:9, 774:11
**loudly** [1] - 683:17
**loved** [1] - 648:10
**Lucchese** [1] - 625:7
**luck** [1] - 689:1
**LUNA** [1] - 624:8
**Luna** [2] - 626:7, 626:25
**lunch** [15] - 628:13, 633:21, 633:24, 757:19, 759:12, 761:6, 761:10, 761:11, 761:13, 761:16, 761:24, 762:9, 762:12, 763:7, 771:10

## M

**ma'am** [7] - 659:7, 670:5, 671:5, 689:12, 698:13, 699:7, 699:10
**MAGISTRATE** [1] - 624:13
**Magistrate** [1] - 626:7
**mail** [3] - 625:9, 677:1, 737:11
**main** [3] - 646:7, 665:10, 684:9
**manager** [4] - 638:2, 672:23, 737:25, 759:4
**manual** [3] - 759:17, 759:18, 759:20
**map** [1] - 756:7
**March** [10] - 642:17, 642:19, 642:21, 642:25, 674:17, 683:16, 683:21, 683:22, 769:5
**Marietou** [1] - 626:19
**MARIETOU** [1] - 624:20
**marijuana** [2] - 704:12, 704:13, 704:14
**mark** [4] - 710:13, 758:9, 777:10, 779:2
**market** [1] - 766:24
**markets** [2] - 767:24, 772:18
**marks** [2] - 686:10, 758:9
**MARSHAL** [1] - 764:19
**marshals** [2] - 651:6, 780:7
**mask** [5] - 689:18, 701:16, 706:8, 715:20, 778:12
**masks** [5] - 627:20, 627:23, 635:22, 636:3, 636:4
**math** [1] - 643:23
**matter** [5] - 646:12, 646:19, 656:5, 725:18, 746:3
**Matter** [1] - 784:14
**MCMANUS** [1] - 624:23
**McManus** [2] - 626:24, 626:25
**mean** [22] - 635:6, 636:21, 651:8, 676:5, 702:5, 707:12, 711:9, 716:15, 716:23, 717:17, 718:20, 736:3, 737:23, 742:13, 743:11, 744:14, 748:10, 748:12, 749:22, 756:4, 763:12, 766:2

**meaning** [1] - 648:3
**means** [5] - 651:4, 673:3, 748:13, 759:7, 783:16
**meant** [2] - 720:4, 756:18
**media** [8] - 626:12, 718:4, 730:5, 746:11, 746:13, 748:8, 749:2, 771:17
**medical** [4] - 662:16, 695:22, 769:7, 772:25
**meet** [8] - 637:25, 641:18, 641:19, 643:15, 651:14, 694:9, 761:25, 766:13
**meetings** [1] - 708:13
**meets** [1] - 777:22
**member** [6] - 627:5, 642:20, 673:4, 697:3, 697:25, 732:15
**members** [1] - 675:17
**mention** [3] - 683:14, 683:19, 700:2
**mentioned** [13] - 646:3, 696:24, 703:16, 704:17, 711:4, 716:22, 716:25, 741:14, 743:6, 746:12, 748:8, 764:24
**message** [3] - 660:8, 660:10, 661:2
**met** [1] - 750:12
**methodical** [3] - 645:25, 753:25, 754:1
**Mexican** [14] - 711:3, 711:5, 711:9, 712:2, 713:1, 713:2, 713:6, 730:6, 731:5, 731:7, 731:10, 731:22
**Mexicans** [2] - 711:5, 711:18
**Mexico** [5] - 711:15, 712:4, 712:7, 730:19
**mic** [2] - 695:18, 695:20
**MICHAEL** [1] - 624:23
**Michele** [1] - 625:7
**microphone** [2] - 657:4, 759:13
**mid** [2] - 642:25, 769:25
**mid-five** [1] - 769:25
**mid-March** [1] - 642:25
**middle** [2] - 628:18, 648:23
**midnight** [1] - 643:18
**Miedel** [1] - 626:24
**MIEDEL** [9] - 625:1, 625:3, 663:22, 663:24, 664:2, 666:2, 667:4, 768:6, 768:11
**might** [47] - 628:24, 629:16, 633:6, 633:22, 649:19, 650:3, 664:23, 667:24, 668:15, 672:2, 674:10, 681:20, 681:21, 687:16, 688:12, 688:13, 691:17, 694:22, 695:22, 702:11, 702:12, 702:21, 708:4, 709:24, 711:7, 711:22, 712:3, 712:5, 713:22, 716:22, 719:17, 723:14, 726:3, 746:11, 749:22, 750:16, 757:8, 762:6, 766:12, 766:16, 767:5, 771:11, 771:21, 772:23, 774:4, 777:17, 777:24
**mind** [18] - 657:2, 679:21, 685:3, 685:7, 694:1, 713:22, 714:16, 719:7, 719:8, 731:14, 731:21, 734:23, 743:18, 768:1, 770:10, 770:14, 775:1, 779:7
**mindful** [1] - 628:2
**minds** [1] - 714:4
**mindset** [1] - 645:25
**mine** [2] - 649:2, 708:20

**minimal** [1] - 635:3
**minimis** [1] - 670:9
**minimum** [2] - 643:20, 644:5
**minute** [9] - 634:20, 667:19, 667:25, 684:6, 722:19, 745:19, 745:21, 748:22, 767:16
**minutes** [3] - 687:3, 732:5, 760:11
**miscommunication** [1] - 642:16
**miss** [1] - 767:5
**missed** [1] - 729:2
**missing** [2] - 773:25, 782:14
**misunderstood** [2] - 736:12, 746:12
**MLuccheseEDNY@gmail.com** [1] - 625:9
**mm-hm** [1] - 729:6, 744:6
**mobile** [1] - 709:20
**mom** [3] - 690:25, 693:10, 706:21
**moment** [5] - 656:25, 708:22, 714:17, 751:5, 781:10
**Monday** [20] - 643:14, 643:18, 643:19, 663:10, 671:23, 691:25, 692:1, 693:3, 693:11, 694:5, 694:7, 708:2, 765:17, 765:21, 766:21, 767:5, 768:25, 770:13, 777:23, 784:4
**money** [8] - 677:4, 708:1, 738:20, 766:13, 769:20, 770:3, 771:25, 774:1
**monitor** [1] - 765:18
**month** [10] - 642:18, 664:23, 676:4, 766:4, 767:22, 768:5, 772:14
**months** [7] - 650:2, 650:4, 650:7, 652:14, 690:22, 690:23, 773:4
**morning** [42] - 626:17, 626:22, 626:23, 629:10, 629:22, 629:23, 630:19, 630:20, 631:17, 631:19, 632:15, 632:16, 633:18, 635:16, 635:17, 647:5, 648:5, 652:21, 652:22, 653:21, 654:17, 657:3, 659:4, 659:5, 660:3, 660:9, 660:14, 661:7, 661:25, 662:1, 664:5, 672:20, 678:17, 678:18, 679:15, 683:9, 683:10, 687:9, 689:8, 758:1, 758:9, 784:4
**most** [3] - 664:14, 707:11, 741:2
**mostly** [3] - 690:8, 702:8, 711:16
**mother's** [1] - 709:5
**motive** [3] - 721:21, 721:22, 739:22
**motives** [1] - 744:1
**move** [4] - 652:19, 700:12, 730:3, 762:7
**movies** [1] - 716:7
**moving** [1] - 636:21
**MR** [100] - 626:23, 627:5, 627:12, 628:4, 631:5, 631:8, 632:5, 633:4, 636:12, 636:25, 637:4, 638:10, 639:17, 639:22, 639:25, 641:5, 642:10, 649:5, 652:4, 652:9, 653:6, 654:7, 656:17, 658:21, 659:19, 662:12, 663:22, 663:24, 664:2, 665:16, 666:2, 667:4, 667:9, 667:11, 671:6, 672:2, 677:17, 677:25, 682:24, 685:14, 688:23, 693:23, 695:5, 699:12, 700:14, 700:17, 700:23, 701:9, 701:12, 705:6,

Case 1:19-cr-00576-BMC   Document 228   Filed 02/28/23   Page 175 of 184 PageID #: 14506
All Word // 01192023 US v Luna 19-cr-576 Jury Selection

14

706:2, 714:23, 715:2, 715:6, 728:17,
728:22, 728:25, 729:3, 732:13, 734:3,
734:10, 735:23, 736:3, 736:13,
736:18, 737:1, 746:7, 746:10, 746:16,
749:7, 755:22, 756:2, 756:4, 756:20,
757:20, 757:23, 758:3, 758:17,
759:10, 760:17, 760:19, 760:22,
760:25, 761:13, 761:20, 763:23,
764:2, 764:5, 764:8, 764:11, 767:12,
767:24, 768:6, 768:11, 772:12,
773:17, 780:14, 781:20, 782:24,
784:11

**MS** [113] - 626:17, 628:7, 628:10,
628:20, 629:2, 631:9, 632:6, 633:9,
636:11, 636:22, 637:7, 638:11,
639:18, 642:7, 645:1, 649:6, 650:24,
651:6, 651:9, 651:13, 651:18, 651:25,
653:7, 653:14, 653:17, 654:8, 656:20,
656:23, 657:1, 657:11, 658:22,
659:20, 660:20, 662:13, 665:15,
666:12, 667:15, 668:2, 668:5, 668:8,
669:4, 669:14, 669:20, 669:23,
670:14, 670:17, 670:20, 671:3, 671:8,
671:11, 677:15, 678:1, 682:23, 685:3,
685:7, 685:22, 686:3, 688:24, 694:1,
694:12, 695:6, 699:13, 699:16,
699:21, 700:8, 700:12, 700:16,
701:13, 705:7, 706:3, 710:12, 714:21,
715:9, 728:18, 734:4, 735:2, 745:18,
745:24, 749:8, 758:7, 758:14, 758:20,
759:11, 759:14, 759:18, 759:21,
760:18, 761:2, 761:11, 761:17,
762:10, 767:13, 767:18, 768:1, 768:5,
768:13, 768:19, 772:6, 772:11,
772:22, 776:7, 776:15, 779:6, 779:12,
779:20, 779:24, 780:6, 780:9, 780:12,
781:19, 782:21, 784:7, 784:10
**multiple** [2] - 642:20, 735:5
**MYSLIWIEC** [1] - 625:1

## N

**nailed** [2] - 769:3, 771:21
**name** [22] - 685:17, 696:24, 696:25,
699:23, 700:2, 700:3, 700:4, 700:5,
700:19, 700:22, 741:15, 741:20,
741:23, 753:4, 753:5, 753:11, 753:13,
753:17, 753:18, 753:19, 753:21
**names** [8] - 716:13, 716:22, 716:25,
720:21, 734:14, 749:22, 753:3, 753:5
**narrow** [1] - 725:13
**Nassau** [1] - 640:8
**national** [1] - 713:14
**native** [1] - 709:10
**nature** [2] - 714:17, 770:9
**necessarily** [1] - 731:19
**necessary** [2] - 626:14, 644:1
**need** [34] - 641:18, 643:10, 652:2,
655:17, 666:8, 671:7, 673:11, 676:16,
677:10, 686:16, 686:20, 687:16,

687:21, 688:1, 688:7, 688:12, 688:13,
706:23, 708:14, 723:2, 723:21, 724:7,
724:15, 732:7, 733:13, 737:17,
737:19, 745:20, 754:17, 760:6, 760:8,
760:9, 777:18, 778:5
**needed** [1] - 647:14
**needing** [1] - 708:8
**needs** [3] - 679:3, 706:22, 774:17
**negative** [3] - 712:20, 714:2, 758:16
**neighbors** [1] - 711:4
**nephew** [1] - 703:5
**nervous** [11] - 635:8, 664:22, 689:16,
689:24, 690:19, 740:19, 740:21,
741:1, 745:25, 746:22, 777:24
**Never** [1] - 781:10
**never** [6] - 674:6, 684:22, 684:23,
696:23, 703:22, 739:6
**new** [6] - 629:13, 629:17, 668:21,
672:11, 683:6, 690:20
**NEW** [1] - 624:1
**New** [9] - 624:6, 624:17, 624:18, 624:22,
625:2, 625:5
**News** [1] - 730:9
**news** [7] - 629:12, 633:23, 673:1,
717:23, 748:14, 748:21, 749:3
**next** [28] - 628:19, 637:9, 637:10,
642:23, 642:24, 646:15, 656:11,
663:9, 663:13, 665:23, 667:5, 678:21,
686:21, 688:1, 701:10, 715:8, 736:19,
736:25, 738:11, 744:16, 762:13,
772:15, 776:25, 777:5, 780:5, 783:19,
783:21
**Nice** [1] - 639:6
**nice** [1] - 639:7
**night** [11] - 627:6, 643:14, 643:17,
674:13, 679:25, 680:7, 680:23,
770:24, 773:19, 775:1, 775:5
**nipple** [1] - 687:15
**No.6** [1] - 780:24
**non** [2] - 646:2, 755:16
**non-judgmental** [1] - 755:16
**non-stop** [1] - 646:2
**nonrefundable** [1] - 677:1
**normal** [2] - 648:1, 741:1
**note** [4] - 627:13, 628:5, 653:14, 653:17
**noted** [2] - 745:24, 767:19
**notes** [1] - 779:7
**nothing** [4] - 640:18, 699:9, 710:17,
743:22
**notice** [1] - 673:2
**noticed** [2] - 670:3, 671:4
**notwithstanding** [3] - 774:23, 774:24,
775:12
**Notwithstanding** [1] - 781:23
**Number** [1] - 706:1
**number** [4] - 667:8, 748:13, 780:18,
781:8
**numbers** [7] - 695:4, 728:25, 758:8,
760:12, 777:11, 782:15, 783:1
**nurse** [1] - 667:4

**nurses** [1] - 673:4
**NYSNA** [3] - 672:25, 673:4
**NYU** [3] - 691:5, 715:23, 720:19

## O

**o'clock** [4] - 643:17, 647:4, 647:6,
647:18
**O.J** [5] - 750:25, 752:8, 756:10, 757:1,
757:7
**oath** [2] - 649:8, 722:6
**objection** [34] - 631:5, 631:8, 631:9,
632:5, 632:6, 633:4, 633:9, 636:22,
637:6, 638:10, 638:11, 649:5, 653:6,
653:7, 654:7, 654:8, 656:17, 657:11,
658:21, 658:22, 659:19, 659:20,
665:15, 665:16, 682:23, 682:24,
688:23, 688:24, 693:23, 694:13,
728:17, 759:10, 759:21, 767:12
**obligation** [1] - 747:12
**obviously** [5] - 627:7, 628:22, 663:6,
747:17, 773:2
**occasions** [1] - 709:9
**occupation** [1] - 702:6
**occurred** [6] - 745:23, 757:3, 767:17,
778:19, 779:14, 781:15
**OF** [4] - 624:1, 624:3, 624:12, 624:21
**offer** [1] - 651:11
**officer** [1] - 702:25
**officer's** [1] - 742:9
**officers** [2] - 717:16, 742:2
**Official** [1] - 625:8
**often** [3] - 708:7, 709:15, 730:8
**old** [2] - 646:7, 656:5
**older** [1] - 709:3
**Once** [2] - 672:6, 780:1
**once** [5] - 636:7, 638:1, 695:18, 736:11,
736:14, 776:21, 778:7
**one** [59] - 628:1, 628:10, 629:8, 629:9,
629:11, 633:22, 636:21, 636:25,
642:17, 645:22, 649:2, 649:9, 654:14,
655:10, 664:24, 666:13, 666:14,
666:18, 666:19, 667:6, 668:10,
669:15, 680:1, 685:18, 688:11,
690:24, 690:25, 692:14, 701:10,
706:17, 709:3, 712:20, 715:10, 721:6,
722:21, 723:2, 723:12, 723:15,
723:20, 725:7, 727:4, 732:9, 732:25,
734:12, 744:4, 746:7, 748:13, 753:15,
753:16, 756:4, 758:9, 760:2, 760:19,
764:8, 764:15, 767:25, 773:20,
778:13, 782:14
**One** [1] - 688:11
**ones** [1] - 698:20
**open** [14] - 626:1, 651:15, 686:15,
719:8, 721:8, 731:14, 731:21, 746:18,
763:2, 767:24, 768:21, 772:18,
780:16, 781:22
**opening** [1] - 784:4
**opinion** [1] - 751:23

**opportunities** [1] - 767:6
**opportunity** [1] - 777:6
**oppose** [1] - 735:2
**opposed** [3] - 645:24, 680:25, 713:15
**option** [4] - 674:11, 676:2, 760:2, 767:20
**order** [4] - 649:19, 776:17, 779:19, 779:21
**oriented** [1] - 711:16
**origin** [1] - 713:14
**original** [1] - 649:25
**originally** [2] - 633:5, 749:21
**Originally** [1] - 675:4
**os** [1] - 731:18
**Otherwise** [2] - 677:14, 702:7
**otherwise** [1] - 769:17
**outside** [8] - 677:18, 699:17, 714:25, 734:7, 735:12, 763:9, 781:6, 781:12
**overcome** [1] - 714:4
**overflow** [1] - 699:24
**overly** [1] - 743:15
**overnight** [1] - 773:19
**overtime** [3] - 692:21, 693:1, 694:8
**owe** [1] - 684:8
**own** [6] - 665:10, 680:19, 706:21, 719:23, 735:5, 774:19
**owns** [1] - 706:21

## P

**P.C** [1] - 624:21
**page** [7] - 665:23, 705:12, 715:10, 744:16, 760:5, 762:13, 776:25
**pages** [5] - 716:10, 716:11, 723:11, 749:21
**paid** [69] - 630:1, 630:6, 630:7, 630:22, 631:1, 631:4, 631:20, 631:22, 631:23, 632:20, 632:23, 632:24, 633:6, 637:16, 637:19, 638:9, 639:9, 639:11, 639:23, 640:5, 645:23, 652:25, 653:1, 653:23, 659:9, 659:13, 660:7, 660:9, 660:17, 661:11, 662:3, 662:6, 669:16, 673:15, 673:19, 673:21, 674:17, 675:6, 675:8, 675:21, 675:23, 676:6, 684:21, 684:24, 684:25, 685:4, 685:8, 685:10, 691:3, 691:16, 691:18, 691:19, 693:17, 694:2, 694:4, 694:7, 704:18, 704:24, 705:2, 707:25, 720:18, 721:2, 721:3, 721:5, 737:10, 737:13, 741:24, 766:9, 768:16
**pandemic** [1] - 717:19
**panic** [3] - 771:24, 772:1, 772:3
**paper** [4] - 690:19, 690:24, 763:25, 777:10
**paralegal** [1] - 627:7
**parents** [4] - 706:13, 706:20, 708:6, 711:5
**parked** [1] - 774:18
**parking** [2] - 674:20, 732:6
**part** [14] - 651:7, 651:8, 691:7, 691:11,

691:13, 692:4, 704:22, 706:20, 710:11, 740:19, 764:3, 764:6, 765:6, 770:9
**part-time** [4] - 691:7, 691:11, 691:13, 692:4
**part-timer** [1] - 704:22
**partial** [1] - 635:9, 654:23, 655:4
**partially** [1] - 628:12
**participated** [1] - 721:12
**participation** [2] - 783:2, 783:6
**particular** [13] - 680:1, 680:10, 680:25, 682:21, 695:4, 708:22, 710:11, 710:17, 716:21, 722:21, 723:14, 743:24, 747:3
**parties** [14] - 627:14, 636:19, 636:20, 671:18, 679:4, 679:5, 687:2, 690:11, 719:15, 761:9, 776:21, 781:13, 783:12, 783:16
**partner** [1] - 664:11
**party** [4] - 667:12, 709:13, 739:6
**pass** [3] - 651:1, 763:25, 778:16
**passed** [1] - 674:9
**passing** [1] - 777:9
**past** [3] - 665:7, 703:22, 713:23
**patience** [4] - 755:24, 783:2, 783:5, 784:8
**patient** [1] - 676:10
**Pause** [10] - 637:3, 686:12, 687:1, 700:20, 746:9, 764:17, 764:21, 779:9, 780:23, 781:11
**pay** [20] - 632:1, 632:3, 640:7, 640:9, 640:11, 640:15, 652:24, 658:14, 658:19, 659:14, 691:6, 692:13, 707:21, 737:1, 737:3, 738:7, 757:24, 764:9, 772:16
**paying** [6] - 640:16, 644:3, 645:24, 692:7, 693:9
**payment** [2] - 658:13, 769:11
**pays** [1] - 759:6
**PEACE** [1] - 624:16
**Peggy** [1] - 626:7
**PEGGY** [1] - 624:12
**people** [49] - 627:17, 628:2, 628:21, 635:10, 635:22, 636:2, 636:3, 647:11, 651:1, 655:10, 666:3, 666:6, 666:8, 666:16, 667:23, 672:7, 680:3, 681:20, 681:21, 681:24, 689:25, 690:15, 696:11, 702:11, 708:14, 711:3, 711:9, 712:4, 713:1, 716:19, 716:22, 717:20, 717:24, 717:25, 723:12, 724:9, 724:21, 727:25, 730:11, 731:5, 733:14, 739:3, 741:2, 749:2, 758:1, 758:15, 775:16, 776:3, 777:7
**People** [1] - 778:4
**per** [1] - 770:1
**perception** [1] - 735:10
**peremptories** [1] - 762:4
**peremptory** [4] - 760:3, 761:7, 761:9, 778:15
**perfect** [2] - 707:13, 721:9

**perfectly** [2] - 720:2, 741:1
**performance** [2] - 637:25, 644:17
**perhaps** [3] - 739:10, 745:15, 764:15
**period** [3] - 641:20, 652:6, 680:16
**permit** [1] - 732:7
**person** [42] - 646:1, 670:23, 670:24, 672:13, 672:14, 674:10, 681:14, 681:16, 682:9, 690:8, 693:22, 703:7, 708:16, 714:6, 718:14, 722:21, 722:22, 723:20, 724:24, 726:22, 727:20, 727:23, 728:2, 740:23, 741:16, 743:16, 743:25, 745:3, 749:23, 750:5, 750:13, 750:15, 750:18, 750:19, 752:13, 752:17, 752:18, 752:24, 756:13, 757:2, 757:24, 763:11
**person's** [2] - 699:25, 753:19
**personal** [4] - 711:3, 727:12, 734:20, 773:7
**personally** [1] - 643:5
**Persons** [1] - 626:8
**perspective** [1] - 647:22
**phase** [1] - 777:5
**Phil** [1] - 626:19
**PHILIP** [1] - 624:19
**phone** [20] - 655:7, 660:11, 660:22, 660:25, 661:9, 661:19, 662:25, 663:4, 663:5, 663:16, 665:14, 667:22, 687:10, 706:23, 706:24, 708:22, 710:1, 737:17
**Phone** [1] - 625:8
**photographing** [1] - 626:9
**pick** [4] - 661:2, 661:11, 665:1, 710:1
**picked** [14] - 634:6, 635:9, 642:14, 643:12, 649:15, 658:14, 668:15, 668:24, 671:21, 675:20, 677:9, 696:7, 748:9, 780:17
**picking** [1] - 666:17
**pickup** [1] - 709:20
**piece** [3] - 634:20, 734:12, 777:10
**PILMAR** [1] - 624:19
**Pilmar** [1] - 626:19
**placed** [2] - 712:22, 713:20
**places** [3] - 715:24, 716:13, 749:22
**planned** [6] - 666:3, 677:3, 683:14, 683:19, 773:3
**planning** [1] - 762:1
**plans** [8] - 668:25, 669:2, 669:6, 678:21, 777:13, 777:16, 777:25
**play** [2] - 697:10, 740:17
**Playboy** [2] - 742:17, 742:18
**Plaza** [1] - 624:17
**plea** [1] - 674:11
**pleasure** [1] - 650:12
**pled** [1] - 703:7
**PLLC** [1] - 625:4
**podium** [3] - 689:8, 701:16, 764:24
**point** [11] - 628:7, 644:1, 647:14, 687:21, 706:16, 740:4, 750:9, 762:7, 776:6, 778:6, 779:25

**point..** [1] - 706:25
**pointedly** [1] - 757:11
**points** [2] - 658:12, 773:1
**police** [8] - 634:17, 717:15, 717:24, 717:25, 742:23, 743:6, 745:10
**policy** [3] - 637:21, 639:13, 658:12
**political** [1] - 743:15
**pop** [2] - 771:21, 775:5
**portion** [1] - 737:14
**pose** [1] - 767:20
**poses** [1] - 774:2
**position** [6] - 650:23, 677:25, 712:21, 712:22, 713:21, 713:25
**positive** [6] - 627:6, 711:11, 711:16, 712:6, 712:20, 712:25
**possibility** [2] - 674:10, 770:3
**possible** [18] - 660:21, 661:4, 663:8, 667:16, 669:10, 669:11, 674:12, 679:6, 687:19, 707:19, 737:21, 738:22, 739:7, 739:9, 742:7, 742:8, 744:15, 745:3
**possibly** [2] - 657:14, 743:12
**potential** [1] - 757:24
**potentially** [2] - 651:21, 751:25
**practice** [2] - 702:7, 733:8
**practiced** [1] - 702:1
**precautions** [1] - 627:18
**precise** [2] - 756:21
**preestablished** [1] - 766:4
**preexisting** [1] - 777:16
**prefer** [2] - 707:4, 761:11
**prejudge** [1] - 704:2
**preparation** [1] - 642:23
**prepare** [1] - 642:21
**prepared** [1] - 735:13
**preponderance** [1] - 751:9
**present** [10] - 626:2, 641:8, 697:22, 698:1, 710:21, 711:22, 749:13, 758:24, 763:3, 781:14
**presented** [5] - 750:3, 750:8, 750:9, 750:10, 770:19
**president** [3] - 730:22, 731:17, 731:20
**Presidents'** [1] - 677:2
**presiding** [2] - 626:7, 679:3
**press** [2] - 634:2, 699:24
**pressure** [1] - 690:1
**presume** [5] - 717:9, 736:15, 754:6, 754:13, 758:5
**presumed** [8] - 716:6, 749:23, 750:7, 750:17, 752:13, 754:7, 754:12, 757:2
**presuming** [1] - 757:6
**presumption** [8] - 717:2, 734:12, 734:18, 736:7, 756:8, 756:9, 756:12, 757:1
**pretty** [9] - 634:18, 635:2, 645:23, 671:25, 672:23, 693:18, 706:16, 749:1, 769:3
**previously** [1] - 763:14
**principle** [1] - 746:2

**privately** [1] - 690:14
**probation** [2] - 690:23, 693:21
**probe** [2] - 681:2, 773:9
**probing** [1] - 651:1
**problem** [11] - 656:15, 667:1, 690:6, 691:18, 691:22, 713:13, 734:15, 750:24, 751:4, 757:8, 763:13
**procedure** [3] - 696:18, 776:9, 779:24
**procedures** [2] - 664:25, 780:7
**proceed** [1] - 671:19
**proceeding** [1] - 697:5
**proceedings** [9] - 626:8, 626:10, 686:12, 687:1, 700:20, 779:9, 780:23, 781:11
**process** [4] - 678:4, 778:6, 783:3, 784:9
**production** [1] - 642:1
**profits** [1] - 766:24
**program** [1] - 742:15
**prohibition** [1] - 626:9
**prohibitions** [1] - 626:11
**promised** [1] - 722:11
**proof** [4] - 710:19, 750:13, 751:6, 751:25
**propose** [2] - 668:14, 686:19
**prosecutor** [1] - 701:23
**prospective** [5] - 715:12, 734:9, 737:4, 738:9, 738:12
**Prospective** [71] - 629:21, 630:16, 630:18, 631:14, 631:16, 632:12, 632:14, 633:15, 633:17, 636:16, 637:11, 638:18, 638:19, 639:1, 639:3, 639:21, 640:1, 645:5, 645:7, 650:20, 652:20, 653:12, 653:20, 654:13, 654:16, 658:3, 658:5, 659:1, 659:3, 659:25, 660:1, 661:22, 661:24, 663:19, 664:4, 665:22, 672:19, 677:21, 678:7, 678:12, 678:16, 679:12, 679:14, 683:5, 683:8, 684:5, 684:16, 686:2, 687:8, 689:5, 689:7, 695:1, 695:7, 699:19, 701:2, 701:8, 701:14, 705:10, 706:5, 715:1, 749:11, 749:13, 756:1, 758:24, 759:25, 764:23, 772:9, 773:22, 775:24, 777:2, 783:7
**PROSPECTIVE** [585] - 629:23, 630:2, 630:4, 630:6, 630:8, 630:10, 630:14, 630:20, 630:23, 630:25, 631:3, 631:7, 631:11, 631:13, 631:18, 631:21, 631:24, 632:1, 632:4, 632:10, 632:16, 632:18, 632:22, 632:25, 633:3, 633:7, 633:13, 633:19, 633:24, 634:9, 634:14, 634:23, 635:2, 635:7, 635:15, 635:23, 636:15, 637:14, 637:17, 637:23, 638:4, 638:8, 638:14, 638:17, 638:21, 638:24, 639:5, 639:7, 639:10, 639:13, 639:20, 640:3, 640:6, 640:13, 640:17, 640:20, 640:23, 640:25, 641:2, 641:7, 641:10, 641:13, 642:4, 642:15, 643:3, 643:7, 643:13, 644:4, 644:11, 644:14, 644:19, 644:22,

644:24, 645:4, 645:9, 645:12, 645:14, 645:18, 645:21, 646:12, 646:21, 647:3, 647:8, 647:12, 647:16, 647:19, 647:24, 648:7, 648:10, 648:14, 648:17, 648:20, 648:22, 649:1, 649:10, 649:13, 649:16, 649:21, 649:25, 650:6, 650:9, 650:12, 650:16, 650:19, 652:22, 652:25, 653:2, 653:5, 653:10, 653:21, 653:24, 654:2, 654:5, 654:11, 654:18, 654:20, 654:23, 655:3, 655:6, 655:12, 655:22, 655:24, 656:1, 656:3, 656:6, 656:9, 656:14, 657:8, 657:10, 657:15, 657:18, 657:21, 657:23, 657:25, 658:2, 658:7, 658:11, 658:18, 658:25, 659:5, 659:7, 659:10, 659:12, 659:15, 659:18, 659:23, 660:3, 660:5, 660:8, 660:13, 660:18, 661:1, 661:6, 661:8, 661:13, 661:17, 661:20, 662:1, 662:4, 662:7, 662:9, 662:15, 662:18, 662:24, 663:3, 663:7, 663:11, 663:18, 664:6, 664:9, 664:18, 665:3, 665:6, 665:20, 672:22, 673:10, 673:13, 673:16, 673:19, 673:23, 674:8, 674:13, 674:19, 675:3, 675:10, 675:13, 675:18, 675:22, 675:25, 676:8, 676:13, 676:15, 676:18, 676:21, 676:24, 677:20, 678:10, 678:18, 678:20, 678:23, 679:1, 679:7, 679:10, 679:17, 679:19, 680:12, 680:15, 680:18, 680:21, 681:4, 681:10, 681:18, 681:22, 682:3, 682:11, 682:14, 682:21, 683:3, 683:10, 683:13, 683:18, 684:2, 684:20, 685:1, 685:13, 685:19, 685:21, 687:11, 687:14, 687:20, 687:24, 688:3, 688:9, 688:18, 688:21, 689:2, 689:4, 689:10, 689:12, 689:17, 689:20, 689:24, 690:5, 690:7, 690:16, 690:18, 690:22, 691:5, 691:12, 691:21, 692:1, 692:3, 692:16, 692:19, 693:2, 693:6, 693:9, 693:12, 693:16, 693:18, 693:20, 694:16, 694:19, 694:23, 694:25, 695:10, 695:15, 695:18, 695:24, 696:2, 696:6, 696:9, 696:12, 696:15, 696:22, 697:6, 697:8, 697:11, 697:16, 697:20, 698:3, 698:5, 698:9, 698:13, 698:16, 698:20, 698:24, 699:4, 699:7, 699:10, 699:18, 701:6, 701:18, 701:22, 701:24, 702:2, 702:4, 702:17, 702:21, 703:2, 703:4, 703:8, 703:11, 703:14, 703:18, 703:21, 704:1, 704:4, 704:7, 704:10, 704:16, 704:19, 704:22, 704:24, 705:3, 706:15, 707:9, 707:11, 707:14, 707:22, 708:3, 708:9, 708:18, 708:25, 709:7, 709:17, 710:3, 710:25, 711:8, 712:5, 712:9, 712:18, 713:4, 713:8, 713:17, 713:20, 714:10, 714:16, 715:13, 715:17, 715:19, 715:23, 716:2, 716:10, 716:14, 716:17, 717:3, 717:6, 717:8, 717:11, 717:18, 717:23,

**pry** [1] - 733:14
**psyche** [2] - 743:17, 745:13
**PTO** [2] - 637:24, 637:25
**public** [2] - 715:24, 717:15
**pull** [1] - 649:2
**punished** [1] - 747:17
**punishment** [7] - 746:3, 747:4, 747:10, 747:13, 747:20, 748:2
**pursuant** [1] - 721:14
**put** [15] - 669:20, 670:8, 670:12, 695:12, 706:7, 713:24, 715:16, 723:9, 724:3, 732:23, 734:23, 736:6, 741:5, 769:19, 772:18

**Q**

**qualified** [6] - 666:2, 686:14, 760:5, 763:13, 763:15, 764:6
**quarantined** [1] - 635:25
**questioned** [2] - 761:4, 761:24
**questioning** [5] - 656:19, 686:16, 705:5, 735:3, 745:16
**questionings** [1] - 734:15
**questionnaire** [12] - 683:15, 683:20, 695:12, 700:18, 716:3, 734:13, 734:24, 735:9, 741:21, 753:2, 765:11, 767:19
**questions** [29] - 629:9, 639:15, 641:4, 642:6, 642:9, 660:19, 675:2, 677:13, 685:2, 686:15, 689:13, 693:24, 695:11, 699:11, 699:15, 701:19, 706:10, 710:8, 714:20, 716:1, 718:22, 728:16, 728:19, 736:22, 738:16, 746:10, 746:19, 749:6, 755:21
**quick** [2] - 671:12, 691:23
**quickly** [1] - 686:24
**quietly** [1] - 778:11
**quite** [1] - 768:14

**R**

**racing** [1] - 775:1
**radar** [1] - 690:9
**Railroad** [1] - 646:16
**raise** [5] - 656:12, 712:16, 734:10, 778:12, 782:16
**raised** [1] - 773:19
**raising** [1] - 773:5
**random** [2] - 709:18, 709:22
**randomly** [1] - 708:11
**rare** [1] - 776:2
**rather** [2] - 733:22, 761:17
**re** [1] - 668:11
**re-interview** [1] - 668:11
**reach** [5] - 661:4, 661:15, 696:12, 748:16, 759:4
**read** [5] - 690:18, 742:21, 748:24, 760:12, 782:14
**reading** [1] - 710:16
**ready** [6] - 627:2, 647:25, 668:6, 736:20,

**pry** section continued in middle column above

**real** [4] - 674:15, 699:1, 699:5, 702:8
**realize** [2] - 633:25, 761:18
**realized** [1] - 634:1
**really** [21] - 634:4, 634:19, 636:1, 664:20, 668:21, 681:1, 693:8, 693:21, 694:19, 708:19, 709:22, 711:10, 716:23, 719:4, 733:24, 735:11, 741:7, 771:22, 775:3, 775:4
**reason** [11] - 645:22, 646:7, 652:16, 682:21, 698:14, 714:12, 714:13, 734:25, 761:7, 767:18, 776:5
**reasonable** [10] - 710:19, 716:7, 722:25, 729:18, 729:25, 730:2, 750:5, 750:19, 751:11, 751:14
**reasons** [3] - 646:8, 734:11, 777:7
**rebroadcasting** [1] - 626:10
**received** [2] - 662:18, 763:12
**recent** [1] - 742:23
**Recess** [3] - 668:4, 671:15, 687:4
**recess** [1] - 762:12
**recognize** [1] - 741:8
**reconvene** [1] - 667:19
**record** [11] - 626:16, 668:7, 669:21, 670:8, 670:12, 671:16, 699:23, 700:9, 756:23, 757:13, 763:6
**recording** [1] - 626:10
**redact** [1] - 700:22
**reduced** [1] - 722:11
**referencing** [1] - 734:13
**reframe** [2] - 750:22, 750:23
**regard** [3] - 706:11, 742:10, 745:8
**regular** [2] - 640:12, 655:7
**REID** [1] - 624:19
**Reid** [1] - 626:19
**reimbursed** [2] - 640:21, 640:24
**reiterate** [1] - 756:5
**related** [1] - 658:12
**release** [1] - 664:25
**relieved** [1] - 630:10
**remaining** [1] - 761:23
**remember** [5] - 628:10, 660:23, 667:7, 724:13, 730:12
**remind** [1] - 715:3
**Remind** [1] - 676:22
**reminded** [1] - 626:9
**reminder** [2] - 668:22, 672:12
**remote** [2] - 626:8, 707:2
**removal** [1] - 626:12
**removed** [1] - 664:15
**renal** [1] - 664:16
**render** [1] - 783:18
**rent** [2] - 693:9, 772:16
**rental** [1] - 674:23
**repair** [2] - 769:5, 774:17
**repairs** [2] - 766:6, 769:5
**repeat** [3] - 654:24, 655:13, 722:1
**repeating** [1] - 755:18
**replied** [2] - 684:22, 684:23

**718:3**, 718:12, 718:17, 718:22, 718:25, 719:3, 719:9, 719:18, 719:22, 720:3, 720:6, 720:8, 720:10, 720:16, 720:20, 720:22, 720:24, 721:1, 721:4, 721:7, 721:16, 722:1, 722:5, 722:16, 722:18, 723:6, 723:9, 723:16, 723:24, 724:2, 724:5, 724:7, 724:12, 724:15, 724:19, 724:24, 725:1, 725:3, 725:5, 725:9, 725:12, 725:20, 725:23, 726:1, 726:7, 726:11, 726:17, 726:21, 727:2, 727:7, 727:10, 727:12, 727:18, 727:21, 728:3, 728:6, 728:9, 728:11, 728:15, 729:6, 729:14, 729:17, 729:20, 730:1, 730:10, 730:15, 730:19, 730:22, 730:25, 731:6, 731:11, 731:13, 731:15, 731:19, 731:23, 732:2, 732:5, 732:21, 733:4, 733:9, 733:12, 733:18, 733:24, 734:8, 737:6, 737:8, 737:15, 737:19, 737:22, 737:25, 738:5, 738:8, 738:14, 738:17, 739:1, 739:10, 739:15, 739:18, 739:23, 740:1, 740:6, 740:8, 740:12, 740:14, 740:18, 740:22, 741:4, 741:12, 741:19, 742:6, 742:11, 742:14, 742:3, 743:11, 743:14, 743:20, 744:2, 744:6, 744:9, 744:14, 745:2, 745:6, 745:9, 745:11, 745:14, 745:22, 746:20, 746:24, 747:2, 747:5, 747:8, 747:11, 747:14, 747:16, 747:21, 747:25, 748:4, 748:6, 748:11, 748:15, 748:17, 748:20, 748:24, 749:5, 749:10, 749:15, 749:17, 749:25, 750:2, 750:22, 750:24, 751:2, 751:7, 751:10, 751:13, 751:17, 751:21, 752:3, 752:6, 752:9, 752:14, 752:16, 752:20, 752:22, 752:25, 753:4, 753:9, 753:12, 753:15, 753:18, 753:22, 753:24, 754:2, 754:9, 754:11, 754:15, 754:21, 754:23, 755:1, 755:4, 755:6, 755:11, 755:14, 755:20, 755:25, 759:3, 759:19, 759:24, 765:1, 765:12, 765:15, 765:17, 765:20, 765:23, 766:3, 766:11, 766:15, 766:19, 766:23, 767:2, 767:7, 767:10, 768:24, 769:2, 769:12, 769:15, 769:18, 769:22, 769:24, 770:4, 770:8, 770:20, 770:23, 771:4, 771:9, 771:13, 771:15, 771:17, 771:20, 772:1, 772:8, 774:3, 774:9, 774:13, 774:16, 774:24, 775:7, 775:10, 775:13, 775:18, 775:21, 775:23, 781:3, 781:9
**protect** [1] - 717:14
**protocol** [2] - 635:11, 635:21
**prove** [3] - 710:22, 729:18, 729:24
**proved** [1] - 730:2
**proven** [2] - 750:4, 754:12
**proves** [1] - 716:7
**provide** [1] - 627:2
**provided** [1] - 738:24
**provides** [1] - 641:17

**reply** [3] - 660:11, 660:13, 661:3
**report** [1] - 783:3
**reporter** [2] - 700:9, 700:22
**Reporter** [2] - 625:7, 625:8
**REPORTER** [1] - 700:10
**representations** [1] - 651:21
**Republic** [2] - 667:7, 667:10
**request** [3] - 629:17, 642:2, 737:7
**require** [7] - 667:3, 667:24, 710:20, 723:1, 723:23, 725:8, 774:10
**required** [3] - 643:20, 662:21, 737:10
**resentment** [1] - 678:3
**respected** [2] - 717:20, 717:24
**responded** [1] - 670:5
**response** [1] - 717:13
**responsibilities** [1] - 707:5
**responsibility** [2] - 709:2, 726:25
**rest** [3] - 652:18, 658:15, 672:9
**restricted** [1] - 626:12
**rests** [1] - 722:21
**result** [2] - 626:11, 765:3
**resume** [1] - 779:10
**retired** [7] - 635:24, 650:25, 651:2, 695:2, 702:5, 706:20, 708:7
**retract** [1] - 651:23
**return** [1] - 722:12
**reverse** [2] - 776:17, 779:21
**rise** [3] - 626:3, 763:4, 783:24
**rises** [1] - 765:6
**risk** [1] - 627:16
**road** [2] - 646:5, 646:9
**robbed** [1] - 729:5
**rock** [1] - 761:14
**role** [4] - 697:10, 725:14, 740:17, 746:3
**roll** [1] - 756:15
**room** [16] - 627:22, 628:13, 628:22, 628:23, 635:10, 636:4, 663:14, 680:22, 690:14, 699:24, 705:9, 724:9, 728:21, 780:4, 783:20
**rotten** [1] - 718:13
**RPR** [1] - 625:7
**rule** [2] - 710:23, 716:8
**ruled** [1] - 756:5
**ruling** [3] - 652:18, 667:20, 684:8
**running** [2] - 771:12, 773:7
**runs** [2] - 709:6, 709:7
**Ryan** [6] - 760:10, 761:21, 780:3, 780:18, 781:25, 783:19

## S

**S-corporations** [1] - 642:20
**safe** [3] - 627:19, 676:9, 761:17
**safety** [1] - 627:18
**salary** [4] - 630:8, 640:12, 640:18, 767:8
**sanctions** [2] - 626:11, 626:14
**SARITHA** [1] - 624:18
**Saritha** [1] - 626:17
**sat** [1] - 695:23

**satisfies** [1] - 722:24
**Saturday** [5] - 634:10, 693:5, 693:13, 694:7, 777:19
**Saturdays** [2] - 692:20, 692:24
**savings** [4] - 676:1, 768:3, 768:7, 768:9
**saw** [3] - 723:11, 749:21, 753:10
**schedule** [10] - 663:13, 691:8, 691:14, 692:5, 692:23, 693:3, 693:4, 708:19, 709:1, 709:23
**scheduled** [10] - 665:5, 667:5, 675:5, 675:7, 675:9, 675:15, 691:10, 693:12, 693:14, 694:5
**schedules** [1] - 669:17
**scheduling** [1] - 760:1
**schematic** [1] - 763:16
**school** [8] - 665:9, 665:13, 680:3, 680:5, 708:19, 720:24, 720:25
**scope** [2] - 733:25, 735:12
**scrambling** [1] - 774:5
**season** [1] - 641:24
**seat** [5] - 762:3, 776:17, 779:21, 780:1, 780:19
**seated** [10] - 626:4, 672:6, 686:23, 758:8, 762:6, 763:5, 763:17, 763:20, 780:19, 781:12
**second** [26] - 631:12, 632:8, 633:11, 636:17, 636:25, 638:16, 653:11, 654:10, 657:14, 657:22, 659:22, 660:16, 665:19, 676:24, 677:5, 683:4, 686:11, 701:5, 706:20, 733:22, 736:6, 746:7, 757:18, 759:23, 780:22, 783:4
**secretary** [1] - 742:18
**security** [1] - 685:16
**see** [44] - 628:25, 629:24, 630:21, 632:17, 633:8, 637:12, 637:14, 639:6, 639:7, 640:4, 641:12, 642:1, 660:9, 660:16, 661:2, 662:20, 666:15, 672:20, 684:7, 692:25, 695:2, 699:2, 699:9, 702:9, 705:1, 717:23, 718:3, 721:9, 736:1, 742:1, 745:3, 759:12, 762:5, 762:11, 763:9, 764:15, 766:8, 776:22, 777:4, 777:9, 778:20, 779:2, 779:15, 783:20
**seeing** [1] - 717:24
**seeking** [1] - 668:11
**seem** [2] - 650:24, 696:15
**selected** [1] - 780:4
**selection** [3] - 626:6, 763:6, 777:6
**SELECTION** [1] - 624:12
**self** [2] - 765:11, 767:20
**self-employed** [2] - 765:11, 767:20
**selling** [3] - 766:25, 767:2, 767:3
**semi** [1] - 651:5
**semi-sequestered** [1] - 651:5
**send** [2] - 660:8, 737:24
**sending** [3] - 730:19, 731:2, 757:18
**sense** [5] - 640:10, 685:14, 720:10, 720:11, 721:21
**sent** [1] - 660:10
**sentence** [1] - 722:11

**sentences** [1] - 721:15
**separate** [3] - 627:14, 682:16, 686:23
**sequentially** [1] - 629:9
**sequestered** [2] - 628:12, 651:5
**serious** [2] - 641:21, 721:12
**seriousness** [3] - 738:23, 739:4, 740:16
**serve** [18] - 632:8, 632:20, 633:12, 634:6, 654:10, 656:24, 694:18, 696:1, 696:2, 701:4, 711:7, 774:22, 775:11, 775:14, 776:2, 776:3, 783:9, 783:15
**served** [2] - 652:10, 680:24
**service** [14] - 637:18, 638:25, 641:25, 642:11, 642:18, 648:19, 652:13, 694:24, 697:1, 697:18, 709:20, 755:14, 755:15, 783:6
**services** [2] - 641:17, 651:12
**serving** [4] - 637:16, 680:25, 688:15, 741:11
**SESSION** [1] - 763:1
**session** [1] - 643:16
**set** [3] - 719:14, 779:22, 780:20
**seven** [3] - 637:20, 648:1, 673:25
**seven-day** [1] - 673:25
**several** [3] - 669:15, 692:12, 777:12
**shady** [1] - 739:3
**SHANNON** [1] - 624:23
**Shannon** [2] - 626:24, 626:25
**share** [2] - 711:23, 742:24
**shared** [1] - 739:5
**shares** [1] - 711:19
**sheet** [2] - 778:15, 779:2
**shift** [1] - 768:16
**shifts** [1] - 694:5
**shopping** [1] - 635:25
**short** [2] - 641:20, 667:15
**shorter** [1] - 694:22
**show** [12] - 676:25, 715:15, 729:24, 742:17, 750:11, 750:12, 763:17, 768:16, 769:9, 780:18, 781:25, 782:1
**shows** [2] - 698:18, 698:19
**shy** [1] - 690:8
**siblings** [2] - 708:17, 708:18
**side** [3] - 702:7, 727:4, 777:8
**sidebar** [13] - 745:18, 745:23, 746:17, 749:13, 758:24, 763:22, 764:3, 767:13, 767:17, 768:20, 778:19, 779:14, 781:15
**Sidebar** [3] - 779:13, 780:16, 781:22
**silent** [2] - 778:6, 779:13
**Silent** [1] - 778:18
**similar** [3] - 711:19, 724:10, 753:13
**simply** [1] - 777:20
**Simpson** [4] - 750:25, 752:8, 757:1, 757:7
**sincere** [2] - 650:25, 652:11
**sister's** [1] - 667:12
**sit** [13] - 638:15, 649:12, 657:13, 657:20, 661:11, 705:1, 737:10, 737:12, 748:9, 771:18, 778:10, 782:1

**site** [1] - 688:11
**sites** [1] - 688:10
**sitting** [14] - 627:25, 628:21, 676:5, 680:22, 692:13, 706:12, 707:18, 707:20, 708:2, 751:15, 751:19, 771:5, 777:24, 778:12
**situation** [7] - 641:24, 663:15, 673:22, 709:5, 724:3, 765:22, 774:19
**situations** [2] - 647:11, 724:10
**six** [1] - 778:8
**sixty** [1] - 706:3
**sleep** [4] - 634:7, 635:16, 636:7, 674:13
**sleepless** [1] - 680:7
**slept** [1] - 634:5
**slightly** [1] - 778:2
**small** [6] - 628:23, 685:15, 685:18, 738:19, 739:2, 742:19
**smuggling** [1] - 634:18
**social** [1] - 718:4
**society** [1] - 681:9
**software** [1] - 707:8
**someone** [16] - 634:10, 646:25, 657:4, 664:25, 698:2, 702:12, 713:15, 714:1, 714:2, 726:18, 726:19, 729:24, 730:2, 732:7, 744:5, 753:12
**someplace** [1] - 740:4
**sometimes** [8] - 654:24, 690:1, 699:2, 723:4, 724:21, 725:17, 733:14, 775:15
**somewhat** [1] - 736:4
**son** [3] - 648:2, 732:17, 733:22
**soon** [4] - 687:18, 737:21, 763:9, 763:19
**Sorry** [5] - 670:17, 689:20, 692:9, 694:16, 697:9
**sorry** [33] - 627:19, 639:11, 645:17, 650:12, 650:13, 651:15, 651:18, 653:16, 655:14, 655:25, 657:2, 657:11, 663:24, 664:9, 664:17, 664:18, 665:18, 675:1, 680:7, 681:2, 683:17, 683:18, 685:6, 720:22, 726:9, 729:2, 736:23, 749:14, 756:2, 759:14, 760:22, 760:23, 766:1
**sort** [6] - 708:11, 708:14, 711:20, 713:25, 734:16, 780:7
**sorts** [1] - 741:22
**sound** [2] - 688:7, 773:13
**sounds** [8] - 675:11, 702:19, 708:23, 711:25, 713:15, 714:6, 755:17, 772:12
**space** [1] - 628:22
**spaces** [1] - 628:16
**speaker** [2] - 655:8, 709:11
**speakers** [1] - 709:10
**speaking** [6] - 627:20, 655:10, 657:4, 657:9, 690:4, 763:19
**Special** [5] - 626:20, 669:24, 670:2, 670:23, 670:25
**special** [1] - 643:4
**specific** [8] - 641:18, 644:2, 687:20, 710:20, 710:21, 714:13, 718:6, 774:15
**specifically** [3] - 700:3, 738:7, 748:14
**specifics** [1] - 719:3

**specify** [1] - 769:9
**sped** [1] - 666:25
**spent** [1] - 711:14
**split** [1] - 648:22
**sporadically** [1] - 709:25
**stabbed** [2] - 697:22, 698:1
**staff** [3] - 629:5, 633:22, 764:14
**staffing** [1] - 676:10
**stage** [1] - 664:16
**stand** [2] - 719:4, 754:10
**standard** [1] - 702:15
**stands** [1] - 681:11
**staring** [1] - 778:4
**start** [19] - 643:17, 647:6, 648:3, 663:10, 686:16, 687:6, 695:13, 717:1, 740:3, 750:1, 750:7, 750:15, 752:15, 752:17, 760:3, 762:3, 763:21, 778:14, 778:16
**started** [5] - 690:22, 709:2, 719:13, 734:12, 762:2
**starting** [6] - 626:15, 680:3, 686:25, 690:20, 692:19, 779:11
**State** [1] - 641:18
**state** [2] - 626:16, 680:24
**statement** [1] - 726:12
**statements** [1] - 784:4
**STATES** [3] - 624:1, 624:3, 624:13
**states** [2] - 641:18, 668:21
**States** [6] - 624:5, 624:16, 624:20, 626:6, 626:18, 731:2
**station** [4] - 646:16, 732:6, 732:7, 732:8
**stay** [1] - 746:14
**step** [1] - 677:18
**stepping** [1] - 770:6
**steps** [1] - 783:21
**still** [23] - 628:3, 637:9, 661:15, 661:18, 673:19, 673:21, 676:5, 686:15, 691:6, 691:13, 693:21, 698:5, 722:7, 722:17, 725:8, 725:25, 726:19, 727:25, 750:19, 750:24, 751:4
**stood** [1] - 757:7
**stop** [1] - 646:2
**stopping** [1] - 634:24
**store** [1] - 709:6
**straight** [1] - 725:13
**Street** [2] - 624:22, 625:2
**stress** [2] - 649:23, 773:11
**stressed** [1] - 674:14
**stretch** [1] - 687:3
**stretcher** [1] - 646:6
**stricken** [1] - 650:22, 677:23, 776:14
**strike** [26] - 636:21, 668:20, 669:18, 673:2, 673:3, 673:5, 673:7, 673:9, 673:11, 673:18, 675:11, 675:12, 675:14, 675:15, 675:16, 675:24, 676:3, 676:7, 676:16, 677:12, 684:11, 700:13, 734:17, 734:25, 758:13, 777:7
**strikes** [8] - 760:3, 763:18, 763:22, 776:21, 778:17, 778:18, 779:11, 779:13

**striking** [2] - 636:23, 776:10
**strong** [1] - 679:21
**strongly** [1] - 680:2
**struck** [16] - 778:20, 778:21, 778:22, 778:23, 778:24, 778:25, 779:1, 779:16, 779:17
**students** [1] - 753:6
**stuff** [4] - 636:1, 676:25, 680:4, 692:6
**subconscious** [1] - 714:5
**subjective** [1] - 736:4
**substances** [1] - 679:21
**substantially** [1] - 641:25
**subtract** [2] - 640:14, 640:22
**subway** [2] - 646:17, 647:2
**suggest** [4] - 629:8, 669:3, 672:2, 672:10
**suggesting** [1] - 647:8
**suit** [1] - 751:3
**Suite** [2] - 625:2, 625:5
**summer** [1] - 628:18
**Sunday** [5] - 643:21, 693:5, 693:13, 694:7, 777:19
**Sundays** [2] - 692:20, 692:24
**supermarket** [1] - 636:2
**support** [2] - 676:17, 676:19
**supporting** [1] - 690:25
**suppose** [1] - 672:13
**supposed** [7] - 675:17, 713:12, 732:2, 739:13, 739:17, 739:24, 764:13
**surgeon** [2] - 687:17, 688:14
**surgery** [3] - 664:14, 664:24, 665:4
**survive** [1] - 768:7
**suspect** [1] - 666:7
**suspending** [1] - 666:6
**swap** [1] - 763:14
**swayed** [1] - 739:11
**swiftly** [1] - 762:7
**switching** [1] - 669:17
**symptoms** [1] - 627:8
**systems** [1] - 645:25

## T

**tail** [1] - 684:2
**tangent** [1] - 756:10
**tax** [3] - 641:17, 642:16, 732:23
**teacher** [1] - 665:10
**team** [3] - 627:6, 627:8, 707:11
**techniques** [1] - 710:21
**telephone** [1] - 661:5
**television** [1] - 742:15
**ten** [8] - 637:19, 645:23, 667:19, 667:25, 673:2, 686:19, 686:21, 695:25
**ten-day** [1] - 673:2
**ten-minute** [2] - 667:19, 667:25
**tend** [1] - 713:5
**tends** [1] - 750:11
**terms** [4] - 635:21, 677:7, 707:2, 751:24
**terrible** [1] - 756:23

**tested** [1] - 627:6
**testified** [3] - 696:20, 696:23, 697:1
**testifies** [2] - 722:2, 743:25
**testify** [3] - 696:11, 721:12, 739:21
**testifying** [5] - 655:19, 721:13, 721:14, 739:22, 743:8
**testimony** [12] - 712:3, 718:8, 722:9, 722:21, 723:2, 723:19, 723:20, 725:7, 742:4, 742:9, 743:9, 744:4
**text** [2] - 737:11, 737:24
**texted** [1] - 672:23
**THE** [1389] - 624:12, 624:21, 626:3, 626:4, 626:5, 626:22, 627:1, 627:11, 627:13, 628:6, 628:9, 628:16, 628:21, 629:3, 629:22, 629:23, 629:24, 630:2, 630:3, 630:4, 630:5, 630:6, 630:7, 630:8, 630:9, 630:10, 630:12, 630:14, 630:15, 630:17, 630:19, 630:20, 630:21, 630:23, 630:24, 630:25, 631:2, 631:3, 631:6, 631:7, 631:10, 631:11, 631:12, 631:13, 631:15, 631:17, 631:18, 631:19, 631:21, 631:23, 631:24, 631:25, 632:1, 632:2, 632:4, 632:7, 632:10, 632:11, 632:13, 632:15, 632:16, 632:17, 632:18, 632:19, 632:22, 632:24, 632:25, 633:1, 633:3, 633:5, 633:7, 633:8, 633:10, 633:13, 633:14, 633:16, 633:18, 633:19, 633:20, 633:24, 634:8, 634:9, 634:12, 634:14, 634:21, 634:23, 634:24, 635:2, 635:5, 635:7, 635:13, 635:15, 635:21, 635:23, 636:9, 636:13, 636:15, 636:17, 637:2, 637:6, 637:8, 637:12, 637:14, 637:15, 637:17, 637:22, 637:23, 638:3, 638:4, 638:6, 638:8, 638:12, 638:14, 638:15, 638:17, 638:20, 638:21, 638:22, 638:24, 638:25, 639:2, 639:4, 639:5, 639:6, 639:7, 639:8, 639:10, 639:12, 639:13, 639:15, 639:19, 639:20, 639:24, 640:2, 640:3, 640:4, 640:6, 640:11, 640:13, 640:15, 640:17, 640:18, 640:20, 640:21, 640:23, 640:24, 640:25, 641:1, 641:2, 641:3, 641:6, 641:7, 641:9, 641:10, 641:12, 641:13, 641:14, 642:4, 642:5, 642:9, 642:12, 642:15, 643:1, 643:3, 643:4, 643:7, 643:8, 643:13, 643:25, 644:4, 644:9, 644:11, 644:13, 644:14, 644:15, 644:19, 644:21, 644:22, 644:23, 644:24, 644:25, 645:2, 645:4, 645:6, 645:8, 645:9, 645:10, 645:12, 645:13, 645:14, 645:17, 645:18, 645:20, 645:21, 646:10, 646:12, 646:20, 646:21, 646:24, 647:3, 647:7, 647:8, 647:10, 647:12, 647:13, 647:16, 647:17, 647:19, 647:21, 647:24, 648:6, 648:7, 648:9, 648:10, 648:12, 648:14, 648:15, 648:17, 648:18, 648:20, 648:21, 648:22,

648:25, 649:1, 649:4, 649:8, 649:10, 649:11, 649:13, 649:14, 649:16, 649:17, 649:21, 649:22, 649:25, 650:5, 650:6, 650:7, 650:9, 650:10, 650:12, 650:14, 650:16, 650:17, 650:19, 650:21, 651:3, 651:8, 651:11, 651:16, 651:20, 652:2, 652:8, 652:12, 652:21, 652:22, 652:23, 652:25, 653:1, 653:2, 653:3, 653:5, 653:8, 653:10, 653:11, 653:13, 653:16, 653:19, 653:21, 653:22, 653:24, 654:1, 654:2, 654:3, 654:5, 654:9, 654:11, 654:12, 654:14, 654:17, 654:18, 654:19, 654:20, 654:21, 654:23, 655:1, 655:3, 655:5, 655:6, 655:9, 655:12, 655:14, 655:22, 655:23, 655:24, 655:25, 656:1, 656:2, 656:3, 656:4, 656:6, 656:7, 656:9, 656:10, 656:14, 656:16, 656:18, 656:22, 656:24, 657:6, 657:8, 657:9, 657:10, 657:12, 657:15, 657:16, 657:18, 657:19, 657:21, 657:22, 657:23, 657:24, 657:25, 658:1, 658:2, 658:4, 658:6, 658:7, 658:9, 658:11, 658:16, 658:18, 658:23, 658:25, 659:2, 659:4, 659:5, 659:6, 659:7, 659:8, 659:10, 659:11, 659:12, 659:14, 659:15, 659:16, 659:18, 659:21, 659:23, 659:24, 660:2, 660:3, 660:4, 660:5, 660:6, 660:8, 660:12, 660:13, 660:15, 660:18, 660:19, 660:23, 661:1, 661:4, 661:6, 661:7, 661:8, 661:9, 661:13, 661:14, 661:17, 661:18, 661:20, 661:21, 661:23, 661:25, 662:1, 662:2, 662:4, 662:5, 662:7, 662:8, 662:9, 662:10, 662:14, 662:15, 662:17, 662:18, 662:23, 662:24, 663:2, 663:3, 663:5, 663:7, 663:8, 663:11, 663:12, 663:18, 663:20, 663:23, 663:25, 664:3, 664:5, 664:6, 664:7, 664:9, 664:17, 664:18, 665:2, 665:3, 665:4, 665:6, 665:17, 665:20, 665:21, 666:11, 666:22, 667:6, 667:10, 667:13, 667:17, 668:3, 668:7, 668:13, 669:7, 669:15, 669:22, 670:13, 670:15, 670:19, 670:22, 671:7, 671:9, 671:12, 671:16, 672:5, 672:20, 672:22, 673:9, 673:10, 673:11, 673:13, 673:14, 673:16, 673:17, 673:19, 673:20, 673:23, 674:6, 674:8, 674:12, 674:13, 674:18, 674:19, 675:1, 675:3, 675:4, 675:10, 675:11, 675:13, 675:14, 675:18, 675:19, 675:22, 675:23, 675:25, 676:6, 676:8, 676:11, 676:13, 676:14, 676:15, 676:16, 676:18, 676:19, 676:21, 676:22, 676:24, 677:5, 677:18, 677:20, 677:22, 678:6, 678:8, 678:10, 678:11, 678:13, 678:14, 678:15, 678:17, 678:18, 678:19, 678:20, 678:22, 678:23, 678:25,

679:1, 679:2, 679:7, 679:8, 679:10, 679:11, 679:13, 679:15, 679:17, 679:18, 679:19, 680:6, 680:12, 680:14, 680:15, 680:17, 680:18, 680:20, 680:21, 681:2, 681:4, 681:6, 681:10, 681:11, 681:18, 681:19, 681:22, 681:23, 682:3, 682:4, 682:11, 682:13, 682:14, 682:19, 682:21, 682:25, 683:3, 683:4, 683:6, 683:9, 683:10, 683:11, 683:13, 683:17, 683:18, 683:23, 684:2, 684:4, 684:6, 684:17, 684:20, 684:24, 685:1, 685:2, 685:6, 685:10, 685:13, 685:16, 685:19, 685:20, 685:21, 685:24, 686:11, 686:13, 687:2, 687:5, 687:9, 687:11, 687:12, 687:14, 687:18, 687:20, 687:22, 687:24, 687:25, 688:3, 688:5, 688:9, 688:15, 688:18, 688:20, 688:21, 688:25, 689:2, 689:3, 689:4, 689:6, 689:8, 689:10, 689:11, 689:12, 689:13, 689:17, 689:18, 689:20, 689:22, 689:24, 690:3, 690:5, 690:6, 690:7, 690:10, 690:16, 690:17, 690:18, 690:21, 690:22, 691:3, 691:5, 691:10, 691:12, 691:15, 691:21, 691:25, 692:1, 692:2, 692:3, 692:10, 692:16, 692:18, 692:19, 692:25, 693:2, 693:4, 693:6, 693:7, 693:8, 693:11, 693:15, 693:16, 693:18, 693:19, 693:20, 693:24, 694:4, 694:14, 694:16, 694:17, 694:19, 694:21, 694:23, 694:24, 694:25, 695:2, 695:8, 695:10, 695:11, 695:15, 695:16, 695:18, 695:19, 695:24, 695:25, 696:2, 696:5, 696:6, 696:7, 696:9, 696:11, 696:12, 696:14, 696:15, 696:19, 696:22, 696:23, 697:6, 697:7, 697:8, 697:10, 697:11, 697:13, 697:16, 697:17, 697:20, 697:21, 698:3, 698:4, 698:5, 698:6, 698:9, 698:10, 698:13, 698:14, 698:16, 698:17, 698:20, 698:22, 698:24, 699:1, 699:4, 699:5, 699:7, 699:8, 699:10, 699:11, 699:15, 699:17, 699:18, 699:20, 700:2, 700:5, 700:6, 700:10, 700:18, 700:21, 700:25, 701:3, 701:6, 701:7, 701:11, 701:15, 701:18, 701:19, 701:22, 701:23, 701:24, 702:1, 702:2, 702:3, 702:4, 702:9, 702:17, 702:18, 702:21, 702:23, 703:2, 703:3, 703:4, 703:5, 703:8, 703:10, 703:11, 703:12, 703:14, 703:16, 703:18, 703:19, 703:21, 703:24, 704:1, 704:2, 704:4, 704:5, 704:7, 704:8, 704:10, 704:11, 704:16, 704:17, 704:19, 704:20, 704:22, 704:23, 704:24, 705:1, 705:3, 705:4, 705:8, 706:1, 706:6, 706:15, 707:6, 707:9, 707:10, 707:11, 707:13, 707:14, 707:17, 707:22, 707:24, 708:3, 708:4, 708:9, 708:16, 708:18,

708:21, 708:25, 709:4, 709:7, 709:15,
709:17, 709:24, 710:3, 710:5, 710:15,
710:25, 711:1, 711:8, 711:25, 712:5,
712:8, 712:9, 712:11, 712:18, 712:24,
713:4, 713:5, 713:8, 713:10, 713:17,
713:18, 713:20, 714:3, 714:10,
714:13, 714:16, 714:19, 714:24,
715:4, 715:7, 715:13, 715:16, 715:17,
715:18, 715:19, 715:20, 715:23,
715:25, 716:2, 716:3, 716:10, 716:11,
716:14, 716:15, 716:17, 716:18,
717:3, 717:5, 717:6, 717:7, 717:8,
717:9, 717:11, 717:12, 717:18,
717:22, 717:23, 718:2, 718:3, 718:5,
718:12, 718:15, 718:17, 718:18,
718:22, 718:24, 718:25, 719:2, 719:3,
719:5, 719:9, 719:10, 719:18, 719:21,
719:22, 719:24, 720:3, 720:4, 720:6,
720:7, 720:8, 720:9, 720:10, 720:12,
720:16, 720:17, 720:20, 720:21,
720:22, 720:23, 720:24, 720:25,
721:1, 721:3, 721:4, 721:5, 721:7,
721:9, 721:16, 721:17, 722:1, 722:2,
722:5, 722:6, 722:16, 722:17, 722:18,
722:20, 723:6, 723:8, 723:9, 723:13,
723:16, 723:17, 723:24, 724:1, 724:2,
724:4, 724:5, 724:6, 724:7, 724:9,
724:12, 724:13, 724:15, 724:16,
724:19, 724:20, 724:24, 724:25,
725:1, 725:2, 725:3, 725:4, 725:5,
725:6, 725:9, 725:11, 725:12, 725:14,
725:20, 725:21, 725:23, 725:24,
726:1, 726:5, 726:7, 726:8, 726:11,
726:12, 726:17, 726:18, 726:21,
726:22, 727:2, 727:3, 727:7, 727:9,
727:10, 727:11, 727:12, 727:15,
727:18, 727:19, 727:21, 727:22,
728:3, 728:5, 728:6, 728:7, 728:9,
728:10, 728:11, 728:12, 728:15,
728:16, 728:20, 728:24, 729:1, 729:4,
729:6, 729:7, 729:10, 729:13, 729:14,
729:15, 729:20, 729:22, 730:1, 730:3,
730:10, 730:14, 730:15, 730:17,
730:19, 730:21, 730:22, 730:23,
730:25, 731:3, 731:6, 731:8, 731:11,
731:12, 731:13, 731:14, 731:15,
731:16, 731:19, 731:21, 731:23,
731:24, 732:2, 732:4, 732:5, 732:12,
732:14, 732:21, 733:2, 733:4, 733:7,
733:9, 733:10, 733:12, 733:13,
733:18, 733:19, 733:24, 734:1, 734:5,
734:8, 735:1, 735:19, 735:24, 736:11,
736:14, 736:19, 736:24, 737:2, 737:5,
737:6, 737:7, 737:8, 737:9, 737:15,
737:16, 737:19, 737:21, 737:22,
737:23, 737:25, 738:2, 738:5, 738:6,
738:8, 738:10, 738:13, 738:14,
738:15, 738:17, 738:18, 739:1, 739:8,
739:10, 739:13, 739:15, 739:16,
739:18, 739:19, 739:23, 739:24,
740:1, 740:2, 740:6, 740:7, 740:8,

740:9, 740:12, 740:13, 740:14,
740:15, 740:18, 740:21, 740:22,
740:23, 741:4, 741:5, 741:12, 741:13,
741:19, 741:24, 742:6, 742:7, 742:11,
742:12, 742:14, 743:1, 743:2, 743:4,
743:11, 743:13, 743:14, 743:19,
743:20, 743:22, 744:2, 744:3, 744:6,
744:7, 744:9, 744:10, 744:14, 745:2,
745:5, 745:6, 745:7, 745:9, 745:10,
745:11, 745:13, 745:14, 745:16,
745:20, 745:22, 746:6, 746:8, 746:15,
746:19, 746:20, 746:21, 746:24,
746:25, 747:2, 747:3, 747:5, 747:6,
747:8, 747:9, 747:11, 747:12, 747:14,
747:15, 747:16, 747:19, 747:21,
747:22, 747:25, 748:1, 748:4, 748:5,
748:6, 748:7, 748:11, 748:12, 748:15,
748:16, 748:17, 748:18, 748:20,
748:21, 748:24, 749:1, 749:5, 749:6,
749:9, 749:10, 749:12, 749:14,
749:15, 749:16, 749:17, 749:18,
749:25, 750:1, 750:2, 750:3, 750:22,
750:23, 750:24, 751:1, 751:2, 751:5,
751:7, 751:9, 751:10, 751:11, 751:13,
751:15, 751:17, 751:18, 751:21,
751:22, 752:3, 752:4, 752:6, 752:7,
752:9, 752:10, 752:14, 752:15,
752:16, 752:17, 752:20, 752:21,
752:22, 752:23, 752:25, 753:2, 753:4,
753:8, 753:9, 753:10, 753:12, 753:14,
753:15, 753:17, 753:18, 753:21,
753:22, 753:23, 753:24, 754:1, 754:2,
754:3, 754:9, 754:10, 754:11, 754:13,
754:15, 754:16, 754:21, 754:22,
754:23, 754:25, 755:1, 755:2, 755:4,
755:5, 755:6, 755:9, 755:11, 755:12,
755:14, 755:17, 755:20, 755:21,
755:23, 755:25, 756:3, 756:17,
756:25, 757:22, 757:25, 758:4,
758:12, 758:18, 758:22, 758:25,
759:3, 759:9, 759:13, 759:15, 759:19,
759:22, 759:24, 760:1, 760:21,
760:24, 761:1, 761:3, 761:15, 761:21,
762:11, 763:4, 763:5, 764:1, 764:4,
764:6, 764:10, 764:13, 764:18,
764:22, 764:24, 765:1, 765:10,
765:12, 765:13, 765:15, 765:16,
765:17, 765:18, 765:20, 765:21,
765:23, 766:1, 766:3, 766:8, 766:11,
766:12, 766:15, 766:17, 766:19,
766:20, 766:23, 766:25, 767:2, 767:4,
767:7, 767:8, 767:10, 767:11, 767:15,
767:23, 768:4, 768:9, 768:18, 768:22,
768:24, 768:25, 769:2, 769:10,
769:12, 769:13, 769:15, 769:16,
769:18, 769:19, 769:22, 769:23,
769:24, 770:2, 770:4, 770:6, 770:8,
770:18, 770:20, 770:22, 770:23,
771:2, 771:4, 771:5, 771:9, 771:10,
771:13, 771:14, 771:15, 771:16,
771:17, 771:18, 771:20, 771:23,

772:1, 772:4, 772:7, 772:8, 772:10,
772:21, 773:9, 773:20, 773:23, 774:3,
774:7, 774:9, 774:10, 774:13, 774:14,
774:16, 774:22, 774:24, 775:6, 775:7,
775:9, 775:10, 775:11, 775:13,
775:15, 775:18, 775:19, 775:21,
775:22, 775:23, 775:25, 776:12,
776:16, 777:3, 778:20, 779:10,
779:15, 779:21, 780:1, 780:8, 780:11,
780:15, 780:17, 780:24, 781:3, 781:4,
781:6, 781:7, 781:9, 781:10, 781:12,
781:16, 781:21, 781:23, 782:1, 782:2,
782:23, 782:25, 783:8, 783:23, 784:1,
784:12

**theft** [2] - 738:20, 739:3
**thefts** [2] - 702:6, 702:19
**theories** [1] - 710:9
**therefore** [3] - 693:16, 694:7, 731:17
**they've** [2] - 673:2, 711:10
**thinking** [12] - 628:11, 635:23, 686:3,
   713:20, 731:16, 740:17, 750:15,
   765:1, 765:5, 770:23, 770:24, 774:25
**third** [3] - 633:7, 637:20, 709:13
**thorough** [1] - 735:3
**thoughtful** [2] - 680:6, 714:6
**thoughts** [1] - 740:10
**thousands** [1] - 769:23
**three** [15] - 633:6, 634:5, 646:21, 650:3,
   658:14, 676:3, 690:23, 692:5, 692:21,
   706:17, 757:20, 757:22, 758:6,
   758:14, 761:3
**throughout** [2] - 706:22, 708:10
**Thursday** [20] - 643:14, 643:18, 643:20,
   667:3, 667:5, 667:12, 691:25, 692:1,
   693:3, 693:12, 694:6, 694:8, 708:2,
   765:21, 766:21, 767:5, 769:1, 777:17,
   777:18, 777:19
**tickets** [1] - 666:3
**timeframe** [1] - 639:14
**timely** [1] - 641:21
**timer** [1] - 704:22
**timetable** [2] - 687:18, 687:23
**today** [4] - 627:7, 663:14, 757:12, 759:8
**together** [5] - 628:13, 665:10, 670:1,
   711:14, 778:12
**tonight** [2] - 634:5, 770:25
**took** [6] - 647:17, 672:13, 722:18,
   735:19, 756:17, 759:8
**top** [1] - 689:25
**total** [1] - 706:17
**totally** [2] - 635:25, 756:13
**touch** [1] - 650:18
**tough** [3] - 649:7, 678:2
**towards** [5] - 673:25, 683:16, 683:20,
   712:20, 713:1
**track** [1] - 758:7
**tracking** [1] - 758:8
**trader** [2] - 767:20, 768:12
**trading** [3] - 768:12, 768:14, 772:17
**traffic** [2] - 646:15, 649:12

**trafficking** [2] - 681:12, 703:17
**train** [8] - 643:16, 646:17, 647:25, 649:14, 732:6, 732:7, 732:8
**training** [5] - 724:7, 724:15, 732:22, 733:5, 767:25
**transcript** [1] - 700:22
**TRANSCRIPT** [1] - 624:12
**translate** [3] - 708:12, 708:14, 709:14
**translation** [1] - 708:6
**translator** [1] - 706:22
**transport** [1] - 651:7
**transportation** [5] - 640:8, 640:22, 651:5, 774:20, 774:21
**travel** [8] - 667:10, 668:22, 668:24, 668:25, 672:12, 766:6, 777:25
**treat** [2] - 713:3, 742:4
**treated** [2] - 718:14, 742:21
**treatment** [1] - 664:12
**trial** [49] - 628:17, 635:8, 638:15, 655:15, 656:10, 657:17, 657:19, 663:9, 664:23, 666:6, 666:14, 666:19, 677:7, 681:8, 683:1, 683:21, 690:11, 691:17, 691:23, 694:21, 696:5, 703:13, 716:24, 718:6, 719:13, 739:16, 741:18, 749:4, 750:17, 751:6, 751:7, 751:16, 751:19, 751:20, 752:2, 752:21, 756:10, 757:3, 757:4, 757:7, 757:9, 765:3, 768:8, 771:5, 777:15, 777:20, 783:14, 784:4
**trick** [1] - 686:21
**tries** [2] - 655:23, 770:15
**trip** [8] - 635:19, 666:7, 666:9, 667:4, 667:8, 678:25, 679:6, 777:18
**trips** [2] - 666:3, 667:23
**trouble** [1] - 672:13
**true** [2] - 642:19, 718:12
**truly** [1] - 783:14
**Trump's** [1] - 730:10
**trust** [3] - 648:10, 726:13, 763:12
**trusts** [1] - 642:22
**truth** [1] - 722:7
**try** [9] - 661:7, 661:18, 712:23, 728:11, 735:21, 744:15, 745:2, 762:2, 773:9
**trying** [8] - 647:10, 652:13, 673:21, 693:19, 713:19, 735:24, 758:7, 770:4
**Tuesday** [1] - 634:11
**turn** [3] - 656:11, 748:19, 748:23
**turned** [1] - 670:3
**turns** [3] - 646:12, 685:10, 777:9
**TV** [5] - 698:18, 699:2, 699:3, 748:10, 757:4
**twelve** [2] - 778:8, 782:7
**two** [33] - 630:25, 634:20, 635:16, 642:16, 646:1, 646:5, 650:2, 650:4, 650:7, 652:14, 653:24, 654:1, 664:23, 665:7, 666:18, 666:19, 667:21, 677:8, 682:16, 686:10, 686:17, 686:18, 688:10, 690:22, 692:5, 692:20, 707:4, 707:5, 746:19, 758:9, 759:8, 773:4, 775:25

**two-minute** [1] - 634:20
**two-month** [1] - 664:23
**two-week** [1] - 646:1
**type** [3] - 645:25, 698:21, 710:21

## U

**U.S** [1] - 764:19
**uh-hum** [8] - 643:7, 649:10, 649:13, 746:24, 747:2, 747:5, 752:16, 754:15
**ultimately** [2] - 726:14, 740:2
**unavailable** [1] - 660:25
**uncertainty** [1] - 772:19
**unclear** [1] - 768:4
**uncomfortable** [1] - 778:3
**unconscious** [2] - 742:24, 743:20
**under** [5] - 649:8, 688:16, 690:9, 703:9, 768:2
**underneath** [1] - 687:15
**understood** [5] - 648:17, 649:16, 756:20, 756:25
**undetermined** [1] - 637:25
**unequivocal** [2] - 734:18, 734:22, 735:16
**unexpected** [3] - 771:21, 772:24, 772:25
**unexpectedly** [1] - 772:25
**unfair** [2] - 742:20, 744:10
**unfairly** [1] - 744:4
**unfairness** [1] - 652:16
**unfortunately** [3] - 646:3, 659:12, 703:6
**union** [7] - 668:20, 672:25, 673:9, 675:17, 676:9, 676:14, 677:11
**unique** [1] - 641:23
**UNITED** [3] - 624:1, 624:3, 624:13
**United** [6] - 624:5, 624:16, 624:20, 626:6, 626:18, 731:2
**unless** [2] - 669:11, 723:4
**unlikely** [1] - 716:9
**unmasked** [1] - 628:2
**unpaid** [5] - 658:15, 673:6, 673:8, 674:16, 676:5
**unrefundable** [1] - 666:3
**unsure** [1] - 729:16
**unusual** [2] - 652:16, 699:5
**up** [104] - 628:25, 629:9, 633:6, 635:16, 635:17, 637:19, 638:22, 639:15, 639:23, 641:4, 642:10, 643:22, 644:25, 646:16, 647:4, 648:1, 648:2, 648:3, 648:4, 649:15, 649:18, 660:19, 660:21, 661:2, 662:11, 662:20, 662:22, 664:10, 664:20, 665:1, 671:7, 671:23, 674:22, 674:24, 677:13, 685:2, 686:19, 687:16, 687:21, 688:12, 689:8, 689:13, 695:8, 695:12, 699:11, 699:15, 701:15, 701:17, 701:19, 705:5, 707:25, 708:7, 710:1, 711:4, 711:11, 711:21, 714:17, 715:8, 716:19, 719:6, 719:7, 720:1, 726:15, 726:23, 736:20, 737:13, 740:5,

740:10, 741:15, 745:16, 746:2, 746:19, 747:20, 749:6, 749:19, 755:21, 760:17, 764:24, 765:6, 766:7, 766:12, 767:18, 768:16, 769:7, 769:9, 770:17, 770:21, 771:21, 772:5, 772:23, 772:24, 773:24, 774:5, 775:2, 775:5, 776:22, 778:13, 779:7, 779:22, 780:18, 780:20, 782:9
**update** [4] - 627:3, 668:17, 678:9, 748:23
**updates** [1] - 668:6
**upstairs** [2] - 686:22, 757:18
**useful** [2] - 683:24, 772:4
**useless** [1] - 695:20

## V

**vacation** [11] - 668:21, 671:22, 672:11, 674:16, 676:22, 677:8, 677:10, 683:6, 683:14, 683:19, 777:13
**VALERIE** [1] - 625:6
**Valerie** [1] - 626:24
**vandalizing** [1] - 717:25
**variable** [2] - 765:6, 765:24
**various** [1] - 735:9
**verdict** [5] - 746:5, 747:6, 757:10, 757:11, 783:18
**verge** [1] - 774:11
**versus** [1] - 626:6
**vibe** [1] - 711:24
**victim** [2] - 729:7, 729:22
**view** [9] - 636:24, 648:25, 649:22, 666:19, 704:14, 711:16, 712:12, 752:2, 756:9
**views** [4] - 711:3, 711:6, 711:19, 712:6
**Violation** [1] - 626:10
**volume** [2] - 657:5, 750:10
**volunteer** [1] - 733:10
**volunteering** [1] - 732:15

## W

**wait** [7] - 636:17, 686:5, 688:2, 733:22, 759:12, 759:15, 760:10
**waiting** [4] - 666:15, 760:17, 763:9, 764:9
**waive** [1] - 763:10
**waking** [2] - 648:4
**walk** [3] - 638:22, 646:18, 696:4
**walked** [2] - 670:5, 671:4
**walking** [4] - 669:24, 669:25, 670:17, 670:23
**wants** [6] - 629:14, 661:10, 663:25, 763:25, 778:12
**warn** [1] - 699:1
**watch** [7] - 690:12, 698:19, 746:13, 748:10, 752:10
**watched** [4] - 742:15, 742:19, 743:2, 757:4
**watching** [4] - 748:21, 751:16, 751:19,

751:20
**ways** [1] - 770:15
**wear** [3] - 627:20, 652:6, 715:24
**wearing** [3] - 627:23, 635:22, 636:3
**websites** [1] - 648:3
**week** [13] - 642:23, 642:24, 646:1, 663:13, 664:13, 667:5, 674:11, 677:2, 678:21, 708:10, 709:16, 770:1
**weekend** [1] - 692:2
**weekends** [1] - 721:7
**weeks** [24] - 631:1, 646:5, 650:3, 653:25, 654:1, 661:12, 662:8, 673:25, 674:2, 674:9, 684:22, 684:25, 685:4, 685:8, 685:11, 688:1, 691:14, 691:17, 737:13, 771:19, 771:24, 772:15, 775:4
**weigh** [1] - 744:4
**weight** [2] - 713:14, 718:10
**welcome** [4] - 643:3, 644:24, 687:11, 694:16
**West** [1] - 707:12
**whatnot** [1] - 742:23
**whole** [1] - 730:10
**wife** [5] - 645:19, 646:22, 648:2, 648:25, 649:8
**willing** [9] - 652:14, 666:23, 716:5, 774:22, 775:11, 775:13, 776:2, 776:3, 783:15
**willingness** [5] - 656:24, 694:18, 701:4, 710:6, 783:9
**wills** [1] - 702:8
**win** [1] - 650:4
**WINS** [2] - 634:10, 634:20
**wish** [2] - 646:7, 648:7
**withstanding** [1] - 650:5
**witness** [27] - 655:18, 696:18, 697:4, 697:15, 702:24, 702:25, 713:1, 713:2, 721:11, 721:19, 721:20, 722:2, 722:3, 722:6, 722:8, 722:9, 722:15, 722:22, 723:2, 723:12, 723:15, 723:20, 723:21, 725:7, 743:23, 743:25
**witness's** [1] - 744:4
**witnessed** [1] - 738:20
**witnesses** [8] - 634:15, 635:3, 718:7, 721:12, 739:20, 739:21, 742:2, 784:5
**woke** [1] - 635:16
**woman** [2] - 669:25, 742:21
**wonderful** [2] - 662:10, 711:25
**wondering** [2] - 655:1, 767:21
**word** [1] - 672:16
**words** [5] - 718:9, 723:3, 735:5, 756:7, 756:22
**workday** [1] - 707:19
**worker** [1] - 711:17
**works** [5] - 638:2, 651:7, 685:15, 732:24, 732:25
**worn** [2] - 646:6, 649:12
**worried** [5] - 634:7, 668:17, 688:19, 690:20, 771:22
**worry** [4] - 635:15, 677:9, 686:18, 752:7
**wow** [1] - 648:20

**writing** [1] - 719:19
**written** [2] - 700:3, 700:18
**wrote** [3] - 710:16, 719:19, 754:18

## Y

**year** [3] - 641:16, 646:7, 664:12
**years** [6] - 645:23, 646:6, 646:7, 648:1, 695:25, 730:12
**Yesterday** [2] - 669:23, 679:22
**yesterday** [12] - 646:3, 653:24, 658:12, 660:9, 667:6, 672:23, 672:24, 674:17, 678:21, 679:20, 736:9, 765:2
**YORK** [1] - 624:1
**York** [9] - 624:6, 624:17, 624:18, 624:22, 625:2, 625:5
**yourself** [4] - 696:20, 704:5, 724:3, 735:22