U.S. Department of Justice

United States Attorney
Eastern District of New York

SK/RCH/EMR/PP/AA
F. #2019R00927

271 Cadman Plaza East
Brooklyn, New York 11201

June 6, 2024

By ECF

U.S. Probation Officer Gregory Giblin
United States Probation Department
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

   Re: United States v. Genaro Garcia Luna
      Criminal Docket No. 19-576 (S-1) (BMC)

Dear Probation Officer Giblin:

  The government writes in response to the defendant's May 31, 2024, objections to the Presentence Investigation Report dated April 19, 2024 ("PSR"), each addressed below:

- Paragraphs 15-18: The defendant objects to the description of the offense conduct, arguing that he "did not assist any drug cartels." ECF No. 260 at 1. As the government amply proved at trial, and the jury found beyond a reasonable doubt, the defendant conspired with the Sinaloa Cartel and accepted tens of millions of dollars of bribes in exchange for assisting the Sinaloa Cartel with importing large quantities of cocaine into the United States. Accordingly, the government respectfully requests that the Probation Department decline to modify these paragraphs of the PSR.

- Paragraph 20: The defendant objects to the PSR's description of his attempt to obstruct justice by bribing or otherwise corruptly convincing inmates to file false affidavits in support of his Rule 33 motion for a new trial and "denies the allegations." ECF No. 260 at 1. As set forth in the government's March 1, 2024, opposition to the defendant's Rule 33 motion, see ECF Nos. 253, 254, the government has obtained ample evidence establishing that the defendant corruptly solicited and then filed a false affidavit in support of his Rule 33 motion and schemed to obstruct justice and suborn perjury by seeking to bribe or corruptly convince multiple inmates at the MDC to attest to these same false allegations. See ECF No. 253 at 26-37. Evidence of the plot includes, but is not limited to:

(a) at least two witnesses (Individual 2 and Juan Carlos Nava Valencia) who learned of these efforts at the time of their commission; (b) the contemporaneous notes taken by Individual 2 memorializing his conversations with the defendant about these efforts; (c) an audio recording of a conversation between the defendant and Individual 2 where the defendant coached Individual 2, and by extension Individual 1, on what allegations they should levy against Juan Carlos Nava Valencia, Oscar Nava Valencia, and Edgar Veytia; and (d) instructions contained in a document that were passed to Individual 1 on behalf of the defendant to craft false allegations. See id. Accordingly, the government respectfully requests that the Probation Department decline to modify Paragraph 20 of the PSR.

- Paragraphs 24, 29, 38, 46, 48, 51 and 86: The defendant objects to the base offense level and total offense level, as well as the final Guidelines calculation, arguing that certain enhancements discussed below do not apply. For the reasons set forth below, the PSR correctly applies the Guidelines enhancements and, accordingly, correctly calculates the base offense level, total offense level, and Guidelines range. The government respectfully requests that the Probation Department decline to modify these paragraphs of the PSR.

- Paragraphs 28 and 37: The defendant objects to the two-point enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. For the reasons set forth in the government's opposition to the defendant's Rule 33 motion and discussed supra, the government has proved, by at least a preponderance of the evidence, that the defendant attempted to obstruct justice in connection with his Rule 33 motion by seeking to bribe or corruptly convince multiple inmates at the MDC to submit false allegations in an attempt to convince the Court to overturn his jury verdict. The government respectfully requests that the Probation Department decline to modify these paragraphs of the PSR.

- Paragraph 31: The defendant objects to the two-point enhancement for a dangerous weapon or firearm being possessed pursuant to U.S.S.G. § 2D.1.1(b)(1), claiming that he "did not provide armed guards for the Sinaloa Cartel." ECF No. 260 at 2. The government proved at trial that the defendant and his co-conspirators corruptly assisted the Cartel by providing armed police officers to support the Cartel's illegal activities. For example, Sergio Villarreal Barragan testified that Sinaloa Cartel leaders discussed with the defendant operations conducted by the defendant's federal police officers to kill rivals. See Trial Tr. at 90. Villarreal Barragan also testified that federal police worked directly with the Sinaloa Cartel's armed hitmen to kill rivals. See Trial Tr. at 133. And the fact that the defendant himself did not use a weapon in furtherance of the criminal conduct is of no import since he not only knew of the firearms used by other members of the conspiracy but directed his armed police officers to conduct operations on behalf of the cartel. See United States v. Wynn, 37 F.4th 63, 67 (2d Cir. 2022) ("[T]he defendant need not have had personal possession, or even actual knowledge of the weapon's presence in order to compel the application of section 2D1.1(b)(1)'s enhancement. . . . The enhancement is required so long as

the possession of the firearm was reasonably foreseeable to the defendant." (citations and internal quotation marks omitted)).

- Paragraph 32: The defendant objects to the two-point enhancement for engaging in the criminal conduct as a livelihood, pursuant to U.S.S.G. § 2D.1.1(b)(16), arguing that he was "a full time official in the Mexican government." ECF No. 260 at 2. Under U.S.S.G. § 4B1.3 Application Note 2, which provides the definition of criminal livelihood, "'engaged in as a livelihood' means that (A) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for the defendant's criminal conduct)." In assessing the totality of the circumstances of whether the criminal conduct was the defendant's primary occupation, courts consider, for example, "the proportion of income a defendant derived from criminal as opposed to legitimate sources." United States v. Pristell, 941 F.3d 44, 55 (2d Cir. 2019). Here, the defendant earned tens of millions of dollars from the Sinaloa Cartel in bribes, in comparison to the salary he earned as a Mexican government official. And the defendant's position in the Mexican presidential cabinet was a front for the defendant's membership in the Sinaloa Cartel because the defendant used his official position to covertly and corruptly further the Sinaloa Cartel's criminal goals. Thus, the evidence shows that the defendant engaged in this criminal conduct as a livelihood.

- The government does not object to the defendant's corrections regarding his personal history.

Respectfully submitted,

BREON PEACE
United States Attorney

By: _____/s/_____
Saritha Komatireddy
Erin M. Reid
Ryan C. Harris
Philip Pilmar
Adam Amir
Assistant U.S. Attorneys
(718) 254-7000

cc: The Hon. Brian M. Cogan (by ECF)
Counsel of Record (by ECF)